GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:      (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:     (415) 393-8200
Facsimile:      (415) 393-8306

TRENTON J. VAN OSS (*pro hac vice*)
tvanoss@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:     (202) 955-8500
Facsimile:      (202) 467-0539

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAMERON J. CLARK (SBN 313039)
cclark@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, on behalf of himself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>META PLATFORMS, INC.,<br><br>                    Defendant. | Case No. 3:22-cv-3580-WHO<br><br>**JOINT RULE 26(f) REPORT**<br><br>Action Filed:  June 17, 2022<br><br>Honorable Judge William H. Orrick |

Plaintiffs John Doe, Jane Doe I, Jane Doe II, and John Doe II ("Plaintiffs") and Defendant Meta Platforms, Inc. ("Meta") (collectively, the "Parties"), by and through their respective counsel of record, hereby submit the following Joint Case Management Statement and Rule 26(f) Report pursuant to Federal Rule of Civil Procedure 26, Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California, in advance of the Case Management Conference scheduled in the above-captioned case for October 5, 2022 at 2:00 P.M. before the Honorable William H. Orrick, in Courtroom 2, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102.

## 1. JURISDICTION AND SERVICE

Plaintiffs allege that the Court has subject-matter jurisdiction over this action because Plaintiffs allege violations of federal law, including 18 U.S.C. section 2510, et. seq. (the Electronic Communications Privacy Act), giving rise to jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §1332(d) (the Class Action Fairness Act), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and a member of the class is a citizen of a state different from any Defendant. Plaintiffs allege that the Court further has subject-matter jurisdiction because they have sufficiently pleaded injury in fact such that they have standing under Article III of the U.S. Constitution.

Plaintiffs allege that the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367, because the state law claims form part of the same case or controversy under Article III of the United States Constitution.

The Parties agree that no issues exist regarding personal jurisdiction or venue and that Meta has been served. There are no other defendants in this action at this time.

Meta reserves its objections to subject-matter jurisdiction.

## 2. FACTS

### *Plaintiffs' Statement:*

Plaintiffs bring this action on behalf of themselves and millions of other Americans whose medical privacy has been violated by Meta's Pixel tracking tool. As described by Meta, the "Meta Pixel is a snippet of JavaScript code that … track[s] visitor activity" on non-Meta websites. The Meta Pixel itself is "invisible to the human eye" and is used by Meta to collect: (1) "HTTP headers," including "IP addresses, information about the web browser, page location, document, referrer and

person using the website"; (2) "Pixel-specific Data," i.e. a "Pixel ID and the Facebook Cookie"; (3) "Button Click Data," which "[i]ncludes any buttons clicked by site visitors, the labels of those buttons and any pages visited as a result of button clicks"; and, in some circumstances, (4) optional values and form field names, including emails and addresses. The "Button Click Data" is called a "SubscribedButtonClick Event," which "fire[s] on every click a user performs" on a web property where the Meta Pixel is present, "sending the button text as a parameter (buttonText)."

Meta permits the tracking Pixel to be deployed on healthcare websites which causes the re-direction of patient portal login communications to itself via a "SubscribedButtonClick" transmission that includes, among other things:  (1) the patient's identity in the form of cookies, IP address, and User- Agent identifiers; (2) content of the button ("Log in"); (3) content of the page from which the patient clicked to Login to the patient portal; and (4) content of the page the patient will land as a result of clicking to Login to the patient portal.

As explained in the operative First Amended Complaint, Meta knows (or should have known) that its Pixel tracking tool is being improperly used on hospital websites resulting in the wrongful, contemporaneous, re-direction to Meta of patient communications to register as a patient, sign-in or out of a supposedly "secure" patient portal, request or set appointments, or call their provider via their computing device.  This disclosure, tracking, and use of Plaintiffs' sensitive medical information for marketing is all done without Plaintiffs' knowledge or consent, in violation of their privacy rights, and in violation of Meta's Terms of Use.  Indeed, Meta represents to its users that it *requires* partners using the Pixel to have the right to collect and share the data at issue.  In reality, Meta does not require, let alone enforce, any such thing for any developers – much less medical providers who are never mentioned in any Meta disclosure to consumers.  Instead, Meta receives patient medical information via the Meta Pixel without obtaining consent to do the same – and without requiring any medical provider to obtain the requisite consent either.

The information at issue is protected by the common law, as well as federal and state statutes. FAC ¶¶37-48.  For these and the reasons set forth below, *Smith v. Facebook* is inapposite because it involved a different type of plaintiff class (*i.e.* it included non-patients), different web-properties (*i.e.* non-providers), different technology (visible button v. invisible pixel), and a different Meta contract.

Moreover, *Smith* is an unreported decision from 2018.  The Ninth Circuit precedent that matters here is *In re Facebook Internet Tracking Litigation*, 956 F.3d 580 (9th Cir. 2020).

| Issue | *Smith v. Facebook* | *John Doe v. Meta Platforms, Inc.* |
|---|---|---|
| Plaintiffs | Anyone who visited site | Patients of HIPAA-covered entities |
| Web-properties | Any "medical" website | HIPAA-covered medical providers |
| Technology | Visible 'Share' or 'Like' button | Invisible tracking pixels |
| Patient-Status Nexus | None | Patient portal log-ins and logouts |
| Facebook Contract Term | N/A | Meta promises that it "requires" partners to obtain consent |
| Law | 2018 unreported Ninth Circuit decision; *Smith v. Facebook*, 745 F.App'x 8 (9th Cir. 2018) | 2020, reported Ninth Circuit decision, *In re FB Internet Tracking Litig.*, 956 F.3d 580 (9th Cir. 2020), cert. denied. sub nom. *Facebook v. Davis*, 141 S.Ct. 1684 (2021) |

Indeed, to Plaintiffs' knowledge, Meta's argument that disclosure of patient portal log-ins and log-outs on medical provider web-properties was the same as *Smith* has been rejected by every court that has considered it.  *See Doe v. Virginia Mason*, 2020 WL 1983046 (Wash. Super. Feb. 12, 2020); *Doe v. Medstar*, Case No. 24-C-20-000591 (Baltimore City, Maryland); *Doe v. Mercy Health*, Case No. A 2002633 (Hamilton County, Ohio); *Doe v. Partners*, Case No. 1984-CV-01651 (Suffolk County, Massachusetts).  Plaintiffs submit that *Smith* will be rejected again—particularly when the Court considers that the Meta privacy policy at  issue here is different than the one at issue in *Smith*.

**Meta's Statement:**

This case challenges Meta's alleged receipt and use of information about Plaintiffs' activity on third-party healthcare providers' websites.  It is a copycat of a case that was filed, and then dismissed, in 2017.  *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).  Plaintiffs' argument that *Smith* does not govern is unavailing on both the law and the facts, as Meta will set forth in detail in its forthcoming motion to dismiss.

Here, Plaintiffs' claims are *both* factually incorrect and legally insufficient.  The Pixel—a tool used across the web and offered by companies other than Meta—is a free, publicly available piece of code that third-party website developers can choose to install and use on their websites to measure certain actions taken on their own websites.  Meta's Pixel is available to website developers across industries.  Although Plaintiffs speculate otherwise, Meta does not want to receive health information through its Pixel and it takes numerous measures to block the transmission of such data.

First, Meta requires developers who choose to use the Pixel tool to warrant that they have the legal right to share any information they choose to share with Meta, and it expressly prohibits developers from sending it health or otherwise sensitive information (including any information defined as sensitive under applicable law). These provisions are set forth in clear and direct terms. For example, before integrating the Meta Pixel code, website developers must agree to the Facebook Business Tools Terms, which require developers to, among other things: (1) warrant that they have "all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines)" to disclose the information they are sending to Meta; (2) refrain from sending Meta any "sensitive information," specifically including personal health information; (3) provide to their users "robust and sufficiently prominent notice regarding the . . . collection, sharing and usage" of data via Meta's Business Tools; and (4) explain how and where users can opt out of the collection and sharing of their information via Meta's Business Tools for ad targeting purposes. Additionally, Meta's Commercial Terms, which all developers also must accept before using Meta for a business purpose, provide that developers cannot send Meta any "information that . . . includes health, financial, biometrics, or other categories of similarly sensitive information (including any information defined as sensitive under applicable law)." Meta also reminds developers not to send this information, including during the Meta Pixel ID creation process—a necessary step to install and use the Meta Pixel—when developers are told not to send Meta sensitive user data, and are provided a link to Meta's Business Help Center content about restricted data.

Second, in addition to requiring developers to agree not to send Meta any information they do not have the legal right to share, Meta has implemented a filtering mechanism to screen out potentially sensitive data it detects. Meta developed the filter to detect data sent through the Pixel that it categorizes as potentially sensitive data, including health data, and the filter prevents that detected data from being ingested into Meta's ads ranking and optimization systems. When Meta's systems remove data detected as potentially sensitive, Meta sends notifications to the developer about the removed data and instructs the developer to check its Meta Pixel code to ensure it is not sending prohibited sensitive data.

Third, each Plaintiff is a Facebook user (Complaint ¶¶ 32-35) who has consented to Meta's use of the Pixel tool, and has been provided *control* over the use of off-Facebook activity (such as activity on third-party websites) for advertising purposes.  Meta takes numerous steps to ensure that its users are informed of and agree to the information that can be shared with Meta.  Meta's Data Policy, for example, which all users consent to, discloses that "[a]dvertisers, app developers, and publishers can send us information through Meta Business Tools they use, including . . . the Meta pixel," and "[t]hese partners provide information about your activities off of our Products—including information about your device, websites you visit, purchases you make, the ads you see, and how you use their services— whether or not you have an account or are logged into our Products."  Meta users also agree, via the Meta Terms of Service, that their personal data can be used to provide targeted ads:  "you agree that we can show you ads that businesses and organizations pay us to promote on and off the Facebook Company Products.  We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you."

Fourth, Meta provides clear, comprehensive resources for its users to understand Meta's advertising practices, the data that ads can be based on, and the ability for users to adjust their ads preferences.  For example, Meta users can view a list of apps and websites that share their information with Meta, as well as a summary of the information shared, and also allows users to disconnect their account from information shared by apps and websites.  In addition, Meta's "Ad Preferences" page provides users with controls over how their data is used for advertising, and "Ad Settings" allow users to opt out of receiving personalized advertisements based on their activity on third-party websites, apps, or offline, among other things.  Notably, in a user's "Ads Preferences," the "Data About Your Activity From Partners" tool allows users to choose whether data that third parties share with Meta about their activities on other websites and apps, as well as certain offline interactions, can be used to show them personalized advertisements (e.g., retargeting advertisements based on Event Data sent to Meta via the Meta Pixel).

In sum, third-party developers decide what information, if any, to share with Meta via the Pixel tool; Meta contractually prohibits those developers from sending it sensitive data; Meta cannot exercise complete control over how third parties use the Pixel, but it takes multiple steps to educate and prevent

those third parties from using the Pixel tool in a way that could share sensitive information; Meta has implemented a filter, to further help prevent against it receiving any sensitive information, and notifies developers when Meta's systems remove data detected as potentially sensitive; Meta users can control whether their activity on third-party websites is used by Meta for advertising purposes; and Meta discloses and obtains consent from all of its users for its data and advertising practices, including the use of the Pixel tool.  For these reasons, Plaintiffs' claims are meritless, and should be dismissed on the pleadings.

### 3.  LEGAL ISSUES

*Plaintiffs' Statement:*

The following is a brief statement of the legal issues in dispute:

1.     Whether the Meta Terms and Privacy Notice are valid contracts;

2.     Whether Meta failed to require medical providers to have lawful rights to share patient data with Meta before deploying the Meta Pixel;

3.     Whether Meta acquired the content of patient communications;

4.     Whether the patient class provided Meta with authorization to acquire their communications with their medical providers, including through the patient portal, appointment forms, and phone calls;

5.     Whether the Meta Pixel's presence and use on medical provider websites where it discloses actions that patients take relating to patient portals, appointments, and phone calls to their medical providers is highly offensive;

6.     Whether Meta's acquisition of the content of communications between patients and their medical providers occurred contemporaneous to their making;

7.     Whether Meta breached its contract with users;

8.     Whether the information at issue has economic value;

9.     Whether Meta violated state and/or federal law by tracking, intercepting, acquiring, and using for targeted advertising, Plaintiffs' sensitive medical communications and PII;

10.     Whether Meta unjustly profited from its collection of patient portal, appointment, and phone call information; and

11.     Whether the proposed class can be certified under Rule 23 of the Federal Rules of Civil Procedure.

**Meta's Statement:**

Meta denies that it has violated any laws, denies that Plaintiffs have stated a claim under any legal theory, and denies that Plaintiffs may pursue claims on behalf of any putative class.  The primary legal issues at this stage include:

(1) Whether Plaintiffs consented to the conduct complained of;

(2) Whether Plaintiffs have alleged facts sufficient to establish the essential elements of their statutory, common law, and constitutional claims, including facts sufficient to establish statutory and Article III standing;

(3) Whether Plaintiffs adequately allege that Meta breached the terms of its user agreements.

Additional legal issues may be presented, particularly, if the case progresses past the pleading stage.

## 4.  MOTIONS

**Prior Motions:**

Plaintiff in *Jane Doe v. Meta Platforms et al*, Case No. 3:22-cv-04293-WHO filed an Administrative Motion to Consider Whether Cases Should Be Related on August 8, 2022 (ECF No. 35).  The Court granted the motion to relate this action to *Jane Doe* on August 15, 2022 (ECF No. 41).  Plaintiff in *Doe v. Meta Platforms*, Case No. 3:22-cv-04680-WHO filed an Administrative Motion to Consider Whether Cases Should Be Related on August 19, 2022 (ECF No. 43).  The Court granted the motion to relate this action to *Doe* on August 23, 2022 (ECF No. 45).  On September 8, 2022, Meta filed an Administrative Motion to Consider Whether Cases Should Be Related (ECF No. 59).  The Court granted the motion to relate this action to *Jane Doe v. Meta Platforms*, Case No. 3:22-cv-04963-WHO, on September 16, 2022 (ECF No. 60).

**Pending Motions:**

On August 25, 2022, Plaintiffs filed a Notice of Motion and Motion for Preliminary Injunction (ECF No. 46).  On September 2, 2022, the Parties filed a stipulated request asking the Court to continue the hearing on Plaintiffs' Motion for Preliminary Injunction to November 9, 2022 (ECF No. 56).  The

Court granted the Parties' request to continue the hearing and response dates (ECF No. 57).  On September 23, 2022, Meta filed a motion to enlarge the time for briefing and hearing on the preliminary injunction motion after Plaintiffs refused to grant Meta's extension request (ECF No. 63).  Meta filed this motion requesting a 30-day extension because the preliminary injunction motion will be mooted by a consolidated complaint and it would be profoundly inefficient and a waste of the Court's and parties' resources to procced with this motion now.  Plaintiffs oppose the request given the time sensitive nature of the Motion; the significant extension of time Plaintiffs already stipulated to; and the lack of any relation between the pending Motion to Consolidate and the Motion for Preliminary Injunction.  The Court has not yet decided the motion for enlargement of time or the preliminary injunction motion.

On August 30, 2022, Plaintiff in a related action *Doe v. Meta Platforms*, Case No. 3:22-cv-04680-WHO, filed a Motion to Consolidate the Related Actions *(Doe*, ECF No. 21).  On September 13, 2022, Meta filed a response to Plaintiff Doe's Motion to Consolidate (*Doe*, ECF No. 27) in which Meta stated that it does not oppose consolidation of the related cases.  That same day, Defendant Dignity Health Medical Center in the other related action *Jane Doe v. Meta Platforms et al*, Case No. 3:22-cv-04293, filed an Ex Parte Motion to Intervene to Respond to Plaintiff Doe's Motion to Consolidate (*Doe*, ECF No. 28) in which Dignity Health Medical Center stated its position that it does not oppose Plaintiff Doe's Motion to Consolidate but instead identifies issues that are unique to Dignity Health Medical Center which may affect scheduling issues.  Plaintiff Doe filed a Reply in support of its Motion to Consolidate on September 20, 2022 (*Doe*, ECF No. 32).  Plaintiffs did not file anything in response to Plaintiff Doe's Motion to Consolidate the Related Actions.

*Anticipated Motions:*

Plaintiffs anticipate filing a motion for interim lead class counsel due to the presence of similar cases against Meta that were filed after this case was filed and have since been related.  Plaintiffs also anticipate filing a motion for class certification.

Meta intends to file, by October 17, 2022, a motion to dismiss Plaintiffs' First Amended Complaint, unless the Court grants Plaintiff Doe's Motion to Consolidate the Related Actions, in which

case Meta will file a motion to dismiss the forthcoming consolidated complaint.  Meta believes that additional motion practice is contingent on the Court's ruling on the motion(s) to dismiss.

## 5.  AMENDMENT OF PLEADINGS

The Parties agree a deadline for the amendment of pleadings should not be set until the Court has appointed lead counsel for Plaintiffs and ruled on the Motion to Consolidate the Related Actions. The Parties agree to meet and confer to set a deadline for amendment of the pleadings at the appropriate time.

At this time, Plaintiffs do not intend to further amend their pleading, however, they request that they have the right to do so pursuant to the Rules as necessary as this action proceeds.

Meta notes that Plaintiffs have already amended their complaint once, which is what is allowed, as of right, under the Federal Rules of Civil Procedure.  Plaintiffs should be required to make the requisite showing before being allowed to amend  their complaint again.

## 6.  EVIDENCE PRESERVATION

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and have begun the meet and confer process pursuant to Fed. R. Civ. P. 26(f).  The Parties are also aware of and taking reasonable steps to comply with their evidence preservation obligations under the Federal Rules of Civil Procedure, including the rules governing electronic discovery.  Meta believes it is premature to have a detailed discussion about discovery until the pleadings are settled.

## 7.  DISCLOSURES

The Parties served initial disclosures on September 21, 2022.  The disclosures included the topics enumerated in Fed. R. Civ. P. 26(a)(1).  The Parties do not believe any changes need to be made in the form or requirement of the disclosures.

## 8.  DISCOVERY

Plaintiffs served their first set of Requests for Production on July 29, 2022.  The Parties agreed to extend the deadline for Meta to respond to Plaintiffs' first set of Requests for Production to October 30, 2022, without prejudice to Meta's position that discovery should be stayed until the Court rules on Meta's forthcoming motion(s) to dismiss.  The Parties agreed to meet and confer after the October 5, 2022 case management conference.

***Timing/Scope of Anticipated Discovery:***

***Plaintiffs' Statement:***

Plaintiffs' position is that discovery should take place pursuant to the timing set forth in Rule 26 of the Federal Rules of Civil Procedure, subject to reasonable extensions of time to respond to discovery agreed upon by the parties throughout the course of this litigation.  Plaintiffs anticipate taking discovery regarding the following types of evidence:

1.   log files of all communications in Meta databases regarding communications with health care entities using the Pixel;

2.   drafting of Meta's terms of use;

3.   internal communications regarding the use of the Pixel on health care websites;

4.   internal documents and communications regarding medical interest targeting;

5.   all communications with any of the health care entities using the Pixel or about the Pixel;

6.   all medical interest category databases;

7.   all marketing of medical interest categories to third parties;

8.   all compensation received by Meta through marketing;

9.   all communications (including internal communications and those with health care entities) regarding Meta's requirement that medical providers to have lawful rights to share patient data with Meta before deploying the Pixel;

10.   internal documents and communications regarding Meta's requirement that medical providers to have lawful rights to share patient data with Meta before deploying the Pixel; and

11.   how Meta tracks users through the Pixel.

Plaintiffs request that they be permitted to propound 50 interrogatories.  Plaintiffs do not anticipate that they will need to take more than fifteen depositions of the Defendant.

Plaintiffs propose that fact and expert discovery be conducted pursuant to the Rules.  Plaintiffs further propose that merits and class discovery not be conducted in phases.  Plaintiffs propose the following timelines for completion of discovery:

1.   Factual discovery to be completed by June 5, 2023;

2.      Expert report(s) due on August 5, 2023;

3.      Expert depositions to be completed by October 5, 2023; and

4.      Dispositive motions to be served within 30 days of completion of discovery.

***Meta's Statement:***

Meta opposes all of Plaintiffs' discovery requests that go beyond the limits prescribed in the Federal Rules of Civil Procedure, including but not limited to their request to seek additional interrogatories and depositions.  Plaintiffs have failed to make any showing that discovery beyond those limits is appropriate or necessary here.  Meta believes that it is premature to set any deadlines for discovery or to decide whether discovery should be conducted in phases before a consolidated amended complaint is filed.

Meta believes that it is most efficient for discovery to be stayed until the Court rules on Meta's forthcoming motion(s) to dismiss.  That motion is potentially dispositive of the Amended Complaint in its entirety or could substantially narrow the issues in the case.  Additionally, seeking discovery on the basis of the current Amended Complaint is premature in light of the pending Motion to Consolidate the Related Actions (ECF No. 21) which, if granted, would require Plaintiffs to file a consolidated amended complaint.  Under these circumstances, a stay of discovery will promote judicial economy and avoid waste of the Parties' resources.  Courts in this District have recognized that a stay of expensive and burdensome discovery is appropriate while a court considers the merits of substantial motions to dismiss.  *See, e.g.*, *In re Nexus 6p Products Liability Litig*., 2017 WL 3581188, at *1-2 (N.D. Cal. Aug. 18, 2017) (staying discovery pending resolutions of motions to dismiss that involved case dispositive issues and other issues that "would limit the scope of discovery"); *Cellwitch, Inc. v. Tile, Inc., No. 4:19-CV-01315*, 2019 WL 5394848, at *2 (N.D. Cal. Oct. 22, 2019) (granting stay of discovery pending a decision on upcoming motion to dismiss in "the interest of judicial efficiency and conserving the Court's resources"); *Yamasaki v. Zicam LLC*, No. 21-CV-02596-HSG, 2021 WL 3675214, at *2 (N.D. Cal. Aug. 19, 2021) ("the Court finds in its discretion that both party and judicial resources will be most efficiently used if discovery is stayed until the Court decides the pending motion to dismiss"); *California Crane Sch., Inc. v. Google LLC*, 2022 WL 1271010, at *1 (N.D. Cal. Apr. 28, 2022) ("forcing Defendants to spend time and resources on the kind of discovery that Plaintiff seeks

1   … before the Court has an opportunity to assess whether Plaintiff has pled any plausible claims against

2   them may subject Defendants to undue burden and expense.").  Meta is willing to meet and confer with

3   Plaintiffs to discuss the timing and potential sequencing of discovery after the motion(s) to dismiss are

4   ruled upon.

5       Once discovery proceeds, Meta anticipates requesting discovery from Plaintiffs on their claims,

6   including but not limited to the following:  (i) any materials related to Plaintiffs' use of Meta products;

7   (ii) any materials related to Plaintiffs' use of Medstar Health System, Rush University System for

8   Health, and UK Healthcare patient portals; (iii) any materials relating to Plaintiffs' dissemination of

9   information about their health; and (iv) any materials related to Plaintiffs' alleged damages.  Meta also

10  reserves the right to seek third-party discovery.

11      ***Protective Order:***

12      The Parties anticipate stipulating to a protective order governing the handling of confidential

13  materials.

14      Plaintiffs' position is that a protective order should ensure that the class representatives' real

15  names are redacted from all public documents so as to maintain their privacy and confidentiality.

16  Plaintiffs also take the position that the protective order should be submitted to the Court before the

17  Initial Case Management Conference.

18      Meta believes that the Parties should begin to negotiate a protective order immediately after

19  the Court rules on Meta's forthcoming motion(s) to dismiss.

20      ***Electronic Discovery:***

21      The Parties anticipate stipulating to a protocol governing ESI discovery in this matter.

22      Plaintiffs' position is that the Parties should begin negotiating an ESI protocol now with the

23  goal of submitting it to the Court before the Initial Case Management Conference.

24      Meta believes that the Parties should begin to negotiate an ESI protocol promptly after the

25  Court rules on Meta's forthcoming motion(s) to dismiss.

26

27

28

*Limitations or Modifications:*

The Parties consent and agree, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), that service may be made by electronic mail, with copies sent to all attorneys of record for the party served.

Plaintiffs have provided Meta with a proposed stipulation regarding the scope of expert discovery. Meta believes that Plaintiffs' proposal is premature and reiterates its position that the Parties should discuss the scope of discovery (including expert discovery) after the Court rules on Meta's forthcoming motion(s) to dismiss.

Each party reserves the right to seek the other's consent and, as necessary, to seek leave for further such modifications.

### 9.  CLASS ACTIONS

*Plaintiffs' Statement:*

In Section 19 below, Plaintiffs set forth the disclosures required in a class action pursuant to Local Rule 16-9(b), including a proposal for how and when the class will be certified.

*Meta's Statement:*

Meta disputes that Plaintiffs may establish a basis for class certification under Fed. R. Civ. P. 23, or that Plaintiffs will be able to show a classwide basis for awarding damages. Meta does not believe that it is necessary for the Court to address Plaintiffs' Rule 16-9(b) statement or class allegations until after it rules on Meta's forthcoming motion(s) to dismiss.

### 10. RELATED CASES

The following cases have been related by order of this Court:  *Jane Doe v. Meta Platforms, Inc. et al.*, Case No. 3:22-cv-04293-AGT (N.D. Cal. July 25, 2022); *Doe v. Meta Platforms, Inc.*, Case No. 3:22-cv-04680-WHO (N.D. Cal. August 15, 2022); *Jane Doe v. Meta Platforms, Inc.*, Case No. 3:22-cv-04963 (N.D. Cal. August 30, 2022).

The following additional cases have been identified by the Parties under Civ. L.R. 3-12: *Krackenberger v. Northwestern Memorial Hospital, et al.*, Case No. 1:22-cv-04203 (N.D. Ill. August 10, 2022); *Smidga v. Meta Platforms, Inc., et al.*, Case No. 2:22-cv-01231-MPK (W.D. Pa. August 25, 2022); *Naugle, et al. v. Meta Platforms, Inc., et al.*, Case No. 1:22-cv-00727 (M.D.N.C. September 1, 2022).

The court in *Krackenberger v. Northwestern Memorial Hospital, et al.*, granted the parties' joint motion to sever and transfer the claims against Meta to the Northern District of California on September 21, 2022 (*Krackenberger*, ECF No. 35).

**11. RELIEF**

*Plaintiffs' Statement:*

Plaintiffs are seeking the following relief from Defendant in this action:

1.       Compensatory damages, including statutory damages where available, to Plaintiffs and the class against Defendant for all damages sustained as a result of its wrongdoing, in an amount to be proven at trial, including interest thereon;

2.       Punitive damages on the causes of action that allow for them and in an amount that will deter Defendant and others from like conduct;

3.       Attorneys' fees and costs, as allowed by law including, but not limited to, California Code of Civil Procedure section 1021.5;

4.       Pre-judgment and post-judgment interest, as provided by law;

5.       An order that Defendant delete the data it unlawfully collected; and

6.       Such further relief as the Court deems appropriate.

Plaintiffs are unable to provide an estimate on the amount of damages at issue at this time because this case is a class action and the information necessary to calculate the total damages owed to Plaintiffs and the classes is in the possession of Defendant.  However, generally, Plaintiffs calculate that they are entitled to damages of between $100 to $10,000 per class member based upon Meta's terms of use and statutory damages.

*Meta's Statement:*

Meta contends that Plaintiffs are not entitled to any relief from Meta and that Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted.  At this stage in the litigation, Meta is not in a position to describe the bases on which any alleged damages should be calculated in the event liability were to be established (which Meta contests).  Meta has not yet filed any counterclaims but reserves the right to do so when it responds to Plaintiffs' Amended Complaint.

## 12. SETTLEMENT AND ADR

Plaintiffs are willing to participate in ADR.  Meta believes it is premature to engage in ADR or settlement discussions at this time.  Per ADR L.R. 3-5., the Parties have read the handbook entitled "Dispute Resolution Procedures in the Northern District of California," available at www.adr.cand.uscourts.gov.

## 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

This item is irrelevant as the case has been assigned to Judge Orrick.

## 14. OTHER REFERENCES

The Parties agree that this case is not suitable for reference to binding arbitration, a special master, or referral to the Judicial Panel on Multidistrict Litigation at this time.  Meta reserves its rights on the suitability of these mechanisms if facts or circumstances change.

## 15. NARROWING OF ISSUES

The Parties are not presently aware of any issues that can be narrowed by agreement.  Meta believes that its forthcoming motion(s) to dismiss are likely to narrow or eliminate issues for trial.

## 16. EXPEDITED TRIAL PROCEDURE

The Parties agree that this case is not appropriate for the Expedited Trial Procedure of General Order No. 64 Attachment A.

## 17. SCHEDULING

***Plaintiffs' Statement:***

Plaintiffs propose discovery cutoffs according to section 5 of this Joint Case Management Statement.  Plaintiffs propose that the trial date and other scheduling dates be set following a ruling on class certification.

***Meta's Statement:***

Meta reiterates its position that it premature to set a case schedule before the filing of a consolidated amended complaint, which will define the scope of this case.  Meta proposes that the parties meet and confer to discuss a case schedule after the Court has ruled on Meta's motion(s) to dismiss.

-15-

## 18. TRIAL

Plaintiffs have requested a trial by jury and anticipate it to last approximately two weeks.  Meta does not believe it is possible to estimate the length of the trial before resolution of Meta's forthcoming motion(s) to dismiss.

## 19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiffs filed their Certification of Interested Entities or Persons on July 29, 2022 (ECF No. 30) which stated that, other than the named Parties, there is no such interest to report.  Meta filed its Certification of Interested Entities or Persons on August 8, 2022 (ECF No. 34) which stated there is no such interest to report.

## 20. PROFESSIONAL CONDUCT

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## 21. OTHER

Plaintiffs propose a further status conference 120 days from the date of the Initial Case Management Conference.  Meta believes that a further status conference should be held 60 days from the filing of a consolidated amended complaint.

## 22. PLAINTIFFS' DISCLOSURES REQUIRED IN CLASS ACTIONS UNDER LOCAL RULE 16-9(B)

### A.      Plaintiffs' Position on the Paragraphs of Fed. R. Civ. Proc. 23 Under Which the Action Is Maintainable as a Class Action

Plaintiffs assert that this action can be maintained as a class action because it satisfies each of the requirements of Rule 23(a) and the requirements of Rules 23(b)(1), 23(b)(2), and 23(b)(3) or, if necessary, 23(c)(4).  Defendants deny each of the allegations set forth below and deny that Plaintiffs can satisfy the legal requirements for class certification.

### B.      Plaintiffs' Description of Class

The Class is currently defined as follows although this might be modified at the time of moving for class certification:

> All Facebook users who are current or former patients of medical providers in the United States with web properties through which Facebook acquired patient communications relating to medical provider patient portals, appointments, phone calls, and communications associated with patient portal users, for which neither the medical provider nor Facebook obtained a HIPAA, or any other valid, consent.

In Plaintiffs' operative Complaint, Defendant is referred to by its previous name of "Facebook."

**C.    Plaintiffs' View of the Facts Showing that the Party Is Entitled to Maintain the Action Under Fed. R. Civ. Proc. 23(a) and (b)**

Plaintiffs submit that certification of a class under Federal Rule of Civil Procedure 23(a) is appropriate because the members of the classes are so numerous that individual joinder of all members is impractical.  Upon information and belief Defendant tracked and intercepted communications of millions of users across at least 664 health websites.  Further, the members of the classes are ascertainable from Defendant's records.  Also, Plaintiffs submit that there are questions of law and fact common to the class that predominate over any questions affecting only individual members of the class including, but not limited to, the following:

1.    Whether the Meta Pixel is designed to send individually identifiable information to Meta;

2.    Whether Meta's Terms and Privacy Notice are valid contracts;

3.    Whether Meta failed to require medical providers to have lawful rights to share patient data with Meta before deploying the Pixel;

4.    Whether Meta acquired the content of patient communications;

5.    Whether the patient class provided Meta with authorization to acquire their communications with their medical providers, including through the patient portal, appointment forms, and phone calls;

6.    Whether the Pixel's presence and use on medical provider websites where it discloses actions that patients take relating to patient portals, appointments, and phone calls to their medical providers is highly offensive;

7.    Whether Meta's acquisition of the content of communications between patients and their medical providers occurred contemporaneous to their making;

8.    Whether Meta breached its contract with users;

-17-

9.      Whether the information at issue has economic value; and

10.     Whether Meta unjustly profited from its collection of patient portal, appointment, and phone call information.

Plaintiffs submit that their claims are typical of those of the members of the class and are based on the same legal and factual theories.  Plaintiffs themselves have been subjected to the same conduct complained of herein and have suffered similar injury as the members of the class.  As a result, Plaintiffs will fairly and adequately represent the absent members of the class.  Class counsel are adequate as well as they are experienced in complex litigation such as this.

As set forth above, Plaintiffs assert that there are many common issues of fact and law in this case, including whether Defendant violated various laws by receiving the communications between patients and their medical providers and what is the proper measure and appropriate statutory formula to be applied in determining damages for the members of the class.  There can be no dispute that these liability issues are common to Plaintiffs and all members of the proposed class – and, in fact, if every class member were to bring an individual action, they all would be required to prove the existence of the same wrongful course of conduct on the part of Defendant in order to prove liability.  Indeed, it is difficult to discern any liability issues that are not common to the claims of all members of the class.

Plaintiffs submit that certification of a class under Federal Rule of Civil Procedure 23(b)(2) is appropriate because the Defendant has acted on grounds that apply generally to the class such that final injunctive relief is appropriate respecting the class as a whole.

Plaintiffs submit that certification of a class under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that the Plaintiffs and the members of the class seek monetary damages, common questions predominate over any individual questions, and a class action is superior for the fair and efficient adjudication of this controversy.

Alternatively, Plaintiffs submit that certification of a plaintiff class under Federal Rule of Civil Procedure 23(b)(1) is appropriate in that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the Defendant or adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of the other members not parties to the adjudication or would substantially impair or

impede their ability to protect their interests.

**D.    Proposed Date for the Court to Consider Whether the Action should Be Maintained as Class Action**

Plaintiffs propose serving their motion for class certification in August 2023, or approximately nine months after discovery responses are received, unless discovery is stayed.   Defendant submits that decisions regarding the timing of any such motion would be premature until its anticipated motion to dismiss is resolved.

Dated: September 28, 2022                    **GIBSON, DUNN & CRUTCHER LLP**

By:   */s/ Lauren Goldman*
      Lauren Goldman

**COOLEY LLP**

By:   */s/ Michael G. Rhodes*
      Michael G. Rhodes
*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

Dated: September 28, 2022                    **KIESEL LAW LLP**

By:   */s/ Nicole Ramirez*
      Nicole Ramirez
      Paul R. Kiesel
      Jeffrey A. Koncius

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)

**GORNY DANDURAND, LC**
Stephen M. Gorny (admitted *pro hac vice*)

**THE SIMON LAW FIRM, P.C.**
Amy Gunn (admitted *pro hac vice*)
Elizabeth S. Lenivy (admitted *pro hac vice*)

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell
*Attorneys for Plaintiffs John Doe, Jane Doe I, Jane Doe II, and John Doe II, on behalf of themselves and all others similarly situated*

-19-

1

## <u>CIVIL L.R. 5-1(h)(3) ATTESTATION</u>

2          Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren Goldman, hereby attest under penalty of

3   perjury that concurrence in the filing of this document has been obtained from all signatories.

4

5

6   Dated: September 28, 2022                    GIBSON, DUNN & CRUTCHER LLP

7                                                By:  */s/ Lauren Goldman*
8                                                     Lauren Goldman

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>CASE MANAGEMENT ORDER</u>

2

     The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is

3

approved as the Case Management Order for this case and all Parties shall comply with its provisions.

4

5

IT IS SO ORDERED.

6

Dated:

7

8

                                              _____

9

                                                UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28