Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:      212-784-6400
Fax:      212-213-5949


Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:      310-854-4444
Fax:      310-854-0812



*Attorneys for Plaintiffs*
JOHN DOE, JANE DOE I, JANE DOE II, and
JOHN DOE II, and DOE, on behalf of
themselves and all others similarly situated

[*Additional counsel listed on signature page*]

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:      202-408-4600
Fax:      202-408-4699

Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:      206-816-6603
Fax:      206-319-5450

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:      510-350-9700
Fax:      510-350-9701

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | **Case No. 3:22-cv-03580-WHO** |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **PLAINTIFFS' NOTICE OF MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL AND MEMORANDUM IN SUPPORT** |
| All Actions | |
| | Date:   November 21, 2022 |
| | Time:  2:00 p.m. |
| | Ctrm.: 2, 17th Floor |
| | Judge: Hon. William H. Orrick |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 21, 2022, at 2:00 p.m., in the courtroom of the Hon. William H. Orrick of the United States District Court of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, 17th Floor, Courtroom 2, or via Zoom platform as circumstances require, Plaintiffs John Doe, Jane Doe I, Jane Doe II, and John Doe II[1] and Plaintiff Doe[2] (collectively the "Moving Plaintiffs") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(g)(3), to appoint Jay Barnes of Simmons Hanly Conroy LLC and Geoffrey Graber of Cohen Milstein Sellers & Toll PLLC, as interim co-lead counsel, and an Executive Committee comprised of Beth Terrell of Terrell Marshall Law Group PLLC, Jeffrey Koncius of Kiesel Law LLP, and Andre Mura of Gibbs Law Group (collectively, "Proposed Interim Counsel").

As set forth in the accompanying Memorandum in Support, Proposed Interim Counsel (i) have devoted considerable effort to organizing the litigation and identifying and investigating potential claims, including conducting proprietary expert analysis related to the claims, (ii) have extensive experience handling complex class actions and the types of claims asserted in the litigation, (iii) are knowledgeable of the applicable law, and (iv) have the resources to efficiently and effectively prosecute this case on behalf of the proposed Class. Additionally, Proposed Interim Counsel have developed a proposed case management plan tailored to this litigation, and have already taken initiative to engage counsel for Defendant Meta Platforms, Inc. in meet and confers pursuant to Federal Rule of Civil Procedure 26(f), including discussions related to preservation and production, propounded Requests for Production and filed a Motion for Preliminary Injunction supported by a more than 100 page expert report. Proposed Interim Counsel are committed to pursuing this action to successful final resolution for the Class. Accordingly, Proposed Interim Counsel are well qualified and suited to be appointed interim lead counsel.

---

[1] The named Plaintiffs in the lead case of *John Doe v. Meta Platforms, Inc.*, Case No. 3:22-cv-03580-WHO.
[2] The named Plaintiff in *Doe v. Meta Platforms Inc.*, Case No. 3:22-cv-04680-WHO.

This Motion is based on this notice, the accompanying memorandum of law and declarations submitted in support, all records and papers on file in this action, and such other materials and argument as may be presented before or at the hearing.

Dated: October 19, 2022

SIMMONS HANLY CONROY LLC

By:  /s/ Jason "Jay" Barnes
       Jason "Jay" Barnes

SIMMONS HANLY CONROY LLC
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
Jennifer Paulson (admitted *pro hac vice*)

Attorneys for Plaintiffs in
*John Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-03580-WHO

COHEN MILSTEIN SELLERS & TOLL PLLC

By:  /s/ Geoffrey Graber
       Geoffrey Graber

COHEN MILSTEIN SELLERS & TOLL PLLC
Geoffrey Graber, State Bar No. 211547
Eric Kafka (admitted *pro hac vice*)

Attorneys for Plaintiff in
*Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-04680-WHO

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Beth E. Terrell
       Beth E. Terrell

TERRELL MARSHALL LAW GROUP PLLC
Beth E. Terrell

Attorneys for Plaintiffs in
*John Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-03580-WHO

KIESEL LAW LLP

By:  /s/ Jeffrey A. Koncius
       Jeffrey A. Koncius

3

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
Paul R. Kiesel, State Bar No. 119854
Nicole Ramirez, State Bar No. 279017

Attorneys for Plaintiffs in
*John Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-03580-WHO

**GIBBS LAW GROUP**

By:    */s/ Andre Mura*
          Andre Mura

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
Rosemary M. Rivas, State Bar No. 209147
Hanne Jensen, State Bar No. 336045

Attorneys for Plaintiff in
*Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-04680-WHO

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.    INTRODUCTION..................................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND............................................................3

    A.    The Allegations ..........................................................................................................3

    B.    The Procedural History and Proposed Interim Counsel's Ongoing
        Successful Coordination with the Related Cases and Facebook's Counsel...............4

III.  ARGUMENT .........................................................................................................................6

    A.    The Court Should Appoint the Proposed Interim Counsel .........................................6

        1.    Proposed Interim Counsel Have Done Extensive Work in
               Identifying and Investigating the Potential Claims .......................................7

        2.    Proposed Interim Counsel Bring a Wealth of Experience Litigating
               Complex Privacy Cases and Against Facebook..............................................8

               a.    Jay Barnes of Simmons Hanly Conroy LLC......................................8

               b.    Geoffrey Graber of Cohen Milstein Sellers & Toll...........................9

               c.    Beth Terrell of Terrell Marshall Law Group PLLC ........................12

               d.    Jeffrey A. Koncius of Kiesel Law LLP............................................13

               e.    Andre Mura of Gibbs Law Group .....................................................15

        3.    Proposed Interim Counsel Have Extensively Litigated the
               Applicable Law and Recently Created Important Ninth Circuit
               Internet Privacy Law .....................................................................................17

        4.    Proposed Interim Counsel Have the Resources to Commit to
               Represent the Class .......................................................................................17

        5.    Proposed Interim Counsel Will Work Cooperatively with All Other
               Interested Counsel as they Have in the Past so as to Achieve the
               Best Result Possible for the Class..................................................................18

IV.   PROPOSED CASE MANAGEMENT PLAN AND OBLIGATIONS OF
    PROPOSED INTERIM COUNSEL .....................................................................................19

V.    CONCLUSION ....................................................................................................................20

i

# TABLE OF AUTHORITIES

Cases

*Azpeitia v. Tesoro Ref. & Mktg. Co. Llc*
  2017 U.S. Dist. LEXIS 149444 (N.D. Cal. Sep. 14, 2017).................................................. 6

*Brooks v. Thomson Reuters Corp.*
  No. 3:16-cv-01418-EMC (N.D. Cal.) ............................................................... 16

*Calhoun v. Google, LLC*
  Case No. 5:20-cv-05146-LHK (N.D. Cal.) ........................................................... 9

*Clergy Cases I, II, & III*
  California JCCPs 4286, 4297, and 4359 (L.A.S.C.) ............................................... 14

*Colella v. Atkins Nutritionals, Inc.*
  Case No. 17-cv-5867 (KAM) (E.D.N.Y.) ............................................................ 9

*De La Torre v. CashCall*
  5 Cal. 5th 966 (2018)................................................................................ 17

*Doe v. Partners, et. al.*
  Case No. 1984-CV- 01651 (Suffolk County, Massachusetts 2019) .................................... 9

*DZ Reserve, et al. v. Facebook*
  3:18-cv-04978 (N.D. Cal.) .......................................................................... 10

*Fernandez v. Atkins Nutritionals, Inc.*
  Case No. 3:17-cv-01628-GPC-WVG (S.D. Cal.) ...................................................... 9

*Gjonbalaj, et al. v. Volkswagen of America, et al.*
  2:19-cv-07165-BMC (E.D.N.Y.) ...................................................................... 9

*In re Facebook Internet Tracking Litig.*
  Case No. 5:12-md-02314-EJD (N.D. Cal.) ........................................................ 2, 14

*In re Facebook, Inc. Internet Tracking Litig.*
  956 F.3d 589 (9th Cir. 2020)...................................................................... 2, 9

*In re Google Cookie Placement Consumer Privacy Litig.*
  806 F.3d 125 (3d Cir. 2015)......................................................................... 9

*In re Lenovo Adware Litig.*
  No. 15-md-02624-RMW/HSG (N.D. Cal.) ............................................................. 15

*In re Nickelodeon Consumer Privacy Litig.*
  827 F.3d 262 (3d Cir. 2016)......................................................................... 9

*In re Vizio Consumer Privacy Litig.*
  No. 8:16-ml-02693 (C.D. Cal.) ..................................................................... 15

ii

*In re: 3M Combat Arms Earplug Prods. Liab. Litig.*
No. 3:19-md-2885-MCR (N.D. Fla.) ............................................................................. 16

*In re: National Prescription Opiate Litigation*
MDL 2804 (N.D. Ohio)..................................................................................................... 8

*In re: Taxotere (Docetaxel) Prods. Liab. Litig.*
26 F.4th 256 (5th Cir. 2022).......................................................................................... 16

*In re: Wright Medical Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*
MDL No. 2329 (N.D. Ga.) .............................................................................................. 14

*J. McIntyre Machinery, Ltd. v. Nicastro*
131 S. Ct. 2780 (2011) ................................................................................................... 16

*Jane Doe I v. Sutter Health*
Case No. 34-2019-00258072-CU-BT-GDS (State of California, Sacramento
Superior Court)................................................................................................................. 2

*Jane Doe v. Medstar Health, Inc., et al.*
Case No. 24-C-20-000591 OG (State of Maryland, Circuit Court of Maryland for
Baltimore City)............................................................................................................. 2, 9

*Jane Doe v. Virginia Mason Medical Center, et al.*
Case No. 19-2-26674-1 SEA (State of Washington, King Superior Court) .................... 2, 9

*Janson v. LegalZoom*
802 F.Supp.2d 1053 (W.D. Mo. 2011)............................................................................. 9

*John Doe v. Partners Healthcare System, Inc., et al.*
Case No. 1984CV01651 (Commonwealth of Massachusetts, Suffolk Superior
Court) ............................................................................................................................... 2

*JUUL Labs Product Cases*
California JCCP 5052, Lead Case No. 19STCV22935 (L.A.S.C.).................................... 14

*Kevin Risto v. Screen Actors Guild – Am. Fed'n. of TV & Radio Artists*
Case No. 2:18-cv-07241-CAS-PLAx (C.D. Cal.)............................................................. 14

*LLE One v. Facebook*
4:16-cv-06232 (N.D. Cal.) ............................................................................................. 10

*Smith v. Atkins Nutritionals, Inc.*
Case No. 2:18-cv-04004-MDH(W.D. Mo.) ...................................................................... 9

*Southern California Gas Leak Cases*
California JCCP No. 4861 (L.A.S.C.)............................................................................... 14

*The Rick Nelson Co., LLC v. Sony Music Entm't*
Case No. 1:18-cv-08791-LLS (S.D.N.Y.)......................................................................... 14

*Wilcosky v. Amazon.com, Inc.*
Case No. 19-cv-05061, *slip op.* (N.D. Ill. May 16, 2022).............................................. 18

Other Authorities

1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:85 (6th ed. 2022).......... 6

Manual for Complex Litig. (Fourth) § 21.11 (2004)................................................................... 6

Moore's Federal Practice § 23.120[3][a] (3d ed. 2022) ............................................................... 7


Rules

Fed. R. Civ. P. 23(g).................................................................................................................. 1

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................................ 6

Fed. R. Civ. P. 23(g)(1)(B)..................................................................................................... 6, 18

Fed. R. Civ. P. 23(g)(3) ............................................................................................................. 6

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether, under Fed. R. Civ. P. 23(g), the Court should appoint Jay Barnes of Simmons Hanly Conroy LLC and Geoffrey Graber of Cohen Milstein Sellers & Toll, as interim co-lead counsel, and an Executive Committee comprised of Beth Terrell of Terrell Marshall Law Group PLLC, Jeffrey Koncius of Kiesel Law LLP, and Andre Mura of Gibbs Law Group (together, "Proposed Interim Counsel").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Counsel in two of the consolidated actions jointly move to be appointed Proposed Interim Counsel.[3] While these two actions were initially filed separately, counsel in each case have joined together to propose a leadership structure that will provide the strongest possible representation for the putative Class. Counsel proposes one co-lead counsel from each action – Jay Barnes of Simmons Hanly Conroy and Geoffrey Graber of Cohen Milstein. Counsel also proposes three Executive Committee members from the two actions – Beth Terrell of Terrell Marshall Group PLLC, Jeffrey Koncius of Kiesel Law LLP, and Andre Mura of Gibbs Law Group. The five-member Proposed Interim Counsel provide the excellent and well-rounded representation necessary to prosecute this action against the world's largest social media company which has already retained two of the largest and most sophisticated defense firms in the country.

Together, Proposed Interim Counsel include the first-filed action, and the only two complaints that cite proprietary expert analysis. In addition, Proposed Interim Counsel bring a wealth of experience litigating privacy cases, cases regarding the Facebook Pixel, and successfully prosecuting class action cases against Facebook. Proposed Interim Counsel include a diverse set of attorneys at large, nationally recognized law firms based around the country, including in the Northern District of California, and each are experienced in litigating class actions in this courthouse. / / /

---

[3] The two consolidated actions are the lead case of *John Doe v. Meta Platforms, Inc.*, Case No. 3:22-cv-03580-WHO and *Doe v. Meta Platforms Inc.*, Case No. 3:22-cv-04680-WHO.

1

The Moving Plaintiffs have sued Meta Platforms, Inc. ("Defendant" or "Facebook") on behalf of themselves and millions of other Americans whose medical privacy has been violated by Facebook's Pixel tracking tool. As explained below, in the *John Doe* Plaintiffs' First Amended Complaint [ECF No. 22] (hereinafter "*John Doe* FAC"), and in the First Amended Complaint in *Doe v. Meta Platforms, Inc.*, No. 3:22-cv-04680-WHO, ECF No. 26 (hereinafter "*Doe* FAC"), Facebook knows (or should have known) that its Pixel tracking tool is being improperly used on hospital websites resulting in the wrongful, contemporaneous, re-direction to Facebook of patient communications to register as a patient, sign-in or out of a supposedly "secure" patient portal, request or set appointments, or call their provider via their computing device. *John Doe* FAC ¶ 1; *Doe* FAC ¶¶ 52-63. This unlawful collection of data is done without the knowledge or authorization of patients, like Plaintiffs, in violation of federal and state laws as well as Facebook's own contract with its users. *Id.*

This action follows multiple other actions that have been filed by certain members of the Proposed Interim Counsel in state and federal courts across the country relating to disclosures to Facebook by medical providers. *See, e.g.*, *Jane Doe I v. Sutter Health*, Case No. 34-2019-00258072-CU-BT-GDS (State of California, Sacramento Superior Court); *Jane Doe v. Virginia Mason Medical Center, et al.*, Case No. 19-2-26674-1 SEA (State of Washington, King Superior Court); *John Doe v. Partners Healthcare System, Inc., et al.*, Case No. 1984CV01651 (Commonwealth of Massachusetts, Suffolk Superior Court); *Jane Doe v. Medstar Health, Inc., et al.*, Case No. 24-C-20-000591 OG (State of Maryland, Circuit Court of Maryland for Baltimore City).

Further, two of the Proposed Interim Counsel are in leadership of the recently settled case of *In re Facebook Internet Tracking Litig.*, Case No. 5:12-md-02314-EJD (N.D. Cal.), which received Preliminary Approval and on which defense counsel in this case were also counsel for the defense there. Notably, the *In re Facebook Internet Tracking* case was litigated for more than ten years by counsel with a trip to the Ninth Circuit resulting in a ground-breaking opinion on privacy rights in the digital age and which has been cited by courts more than 85 times since it was issued. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). Thus, members of Proposed Interim Counsel have spent years researching, investigating and developing the factual and legal

claims asserted in the *John Doe* FAC. Indeed, members of Proposed Interim Counsel worked extensively with experts and a variety of software tools to meticulously analyze the underlying code and flow of patient data captured by Facebook across hundreds of websites, ultimately identifying 664 hospitals that have the Facebook Pixel on their websites. After this case was filed, members of Proposed Interim Counsel continued their diligent efforts to protect the proposed Class, working closely with a computer expert for weeks to prepare the pending Motion for Preliminary Injunction and the supporting expert report. *See* Declaration of Jeffrey A. Koncius ("Koncius Decl.") ¶ 2.

Members of Proposed Interim Counsel, continuing their commitment to efficient and effective prosecution of the claims, acted swiftly to engage counsel for Facebook and position and organize the litigation to proceed economically, while continuing to press for preliminary relief to protect proposed Class members' interests. And they are well suited to do so. Each of the Proposed Interim Counsel are partners at reputable, national law firms with many years of experience prosecuting complex class actions. Further, the designated lead attorneys from each firm are and continue to be experts and trailblazers in the field of data privacy litigation, successfully litigating the types of privacy and data claims asserted in this case. Proposed Interim Counsel have the experience, resources and commitment necessary to vigorously prosecute the case and protect the interests of the proposed Class to final resolution. In sum, this Motion should be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Allegations

When a patient communicates with a health care provider's website where the Facebook Pixel is present on the patient portal login page, the Facebook Pixel source code causes the exact content of the patient's communication with their health care provider to be re-directed to Facebook in a fashion that identifies them as a patient. This is due to no fault of the named Plaintiffs or the patients who are members of the proposed Class, because the presence of the Pixel is known only to the hospital and to Facebook who developed it.

Patient-status is protected by HIPAA, which requires a valid HIPAA-compliant authorization before protected health information, like patient status, is collected by Facebook. *John Doe* FAC ¶ 10; *Doe* FAC ¶¶ 47-49. However, neither Facebook nor any of the hospitals that deployed the

Facebook Pixel on their web properties procured HIPAA authorizations for the disclosure of patient status and health information to Facebook. *John Doe* FAC ¶ 11; *Doe* FAC ¶¶ 50-51. Facebook's collection of patient status and the content of patient communications with their medical providers, including when they register, log-in and logout of patient portals and set up appointments, in the absence of a HIPAA authorization, violates Facebook's privacy promises to users which states that "publishers can send us information through Meta Business Tools [such as] the Meta Pixel" but Facebook "require[s] each of these partners to have lawful rights to collect, use, and share your data before providing any data to us." *John Doe* FAC ¶¶ 12-13; *Doe* FAC ¶¶ 106-07.

Nevertheless, however, Facebook knowingly receives patient data—including patient portal usage information—from many hundreds of medical providers in the United States that have deployed the Facebook Pixel on their web properties. *John Doe* FAC ¶ 14. To date, through experts, Plaintiffs have identified at least 664 hospital systems or medical provider web properties where Facebook has received patient data via the Facebook Pixel. *Id.* ¶ 15. Despite knowingly receiving health-related information from medical providers, Facebook has not taken any action to enforce or validate its requirement that medical providers obtain adequate consent from patients before providing patient data to Facebook. *John Doe* FAC ¶ 16; *Doe* FAC ¶¶ 62-63. Further, Facebook monetizes the information it receives through the Facebook Pixel deployed on medical providers' web properties by using it to generate highly-profitable targeted advertising on and off Facebook. *John Doe* FAC ¶ 17; *Doe* FAC ¶¶ 59-60. The targeted advertising Facebook offers for sale includes the ability to target patients based on specific actions that a patient has taken on the medical providers' websites. *John Doe* FAC ¶ 18; *Doe* FAC ¶¶ 59-60.

**B.   The Procedural History and Proposed Interim Counsel's Ongoing Successful Coordination with the Related Cases and Facebook's Counsel**

On June 17, 2022, some of the Moving Plaintiffs filed the first class action against Facebook relating to its Pixel. The filing was not pursuant to any public announcement, but rather the result of intensive work by counsel, including independent investigation and expert analysis, to fully vet, review and develop accurate and viable legal claims. The action, pursued without public fanfare, alleges that Facebook's behavior summarized above gives rise to causes of action for: (1) Breach of

4

Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Intrusion Upon Seclusion; (4) Violation of the Electronic Communications Privacy Act; (5) Violation of the California Invasion of Privacy Act; (6) Negligent Misrepresentation; (7) Violation of California's Unfair Competition Law; and (8) Trespass (added in the *John Doe* FAC). The Plaintiffs in the first case brought these claims on behalf of themselves and a proposed Class of "All Facebook users who are current or former patients of medical providers in the United States with web properties through which Facebook acquired patient communications relating to medical provider patient portals, appointments, phone calls, and communications associated with patient portal users, for which neither the medical provider nor Facebook obtained a HIPAA, or any other valid, consent." *John Doe* FAC ¶ 96.

On June 24, 2022, Facebook was served and shortly thereafter, on July 5, 2022, two of the Proposed Interim Counsel had an initial conference call with Michael G. Rhodes of Cooley LLP and Lauren Goldman of Gibson, Dunn & Crutcher LLP, both of whom were known to Plaintiffs from previous litigation involving Facebook as set out above. Koncius Decl. ¶ 3. On July 11, 2022, the parties stipulated to an extension of time for Facebook to respond and on July 15, 2022, Plaintiffs filed their FAC. On July 29, 2022, Plaintiffs in this matter served 17 Requests for Production on Facebook. *Id.* at ¶ 4. On August 25, 2022, certain members of Proposed Interim Counsel filed a Motion for Preliminary Injunction [ECF No. 46] which is set to be heard on November 9, 2022.

On August 15, 2022, Plaintiff Doe (represented by some of the Proposed Interim Counsel) in Case No. 3:22-cv-04680 filed an action against Facebook challenging its use of the tracking pixel, and asserted claims for: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) invasion of privacy under the California Constitution; (iv) common law intrusion upon seclusion; (v) violation of the California Invasion of Privacy Act; (vi) violation of the Federal Wiretap Act; (vii) violation of the Comprehensive Computer Access and Fraud Act; (viii) violation of the California Unfair Competition Law; and (ix) Quantum Meruit to Recover Sums Had by Unjust Enrichment. Plaintiff Doe subsequently filed an amended complaint, adding proprietary source code analysis demonstrating how Facebook's tracking pixel intercepts patient communications. On August 30, 2022, Plaintiff Doe filed a motion to consolidate all of the related actions pending in the

5

Northern District of California alleging similar claims against Facebook related to its tracking pixel. On October 12, 2022, the Court granted Plaintiff Doe's motion to consolidate.

## III.   ARGUMENT

### A.   The Court Should Appoint the Proposed Interim Counsel

Federal Rule of Civil Procedure 23(g)(3) authorizes courts to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." As explained by the Manual for Complex Litigation, the "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litig.* (Fourth) § 21.11 (2004). Courts appointing interim class counsel consider the following factors:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *see also*, *Azpeitia v. Tesoro Ref. & Mktg. Co. Llc*, No. 17-cv-00123-JST, 2017 U.S. Dist. LEXIS 149444, at *6 (N.D. Cal. Sep. 14, 2017) (noting while those factors are listed in context of certification of a class the "Court looks to those factors in designating interim class counsel as well"); 1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:85 (6th ed. 2022) (observing while neither Rule 23(g) nor its Advisory Committee notes explicitly state "whether the factors outlined in subsection 23(g)(1) apply to a court's appointment of interim counsel, courts have held that these requirements do apply and have accordingly employed them in appointing interim counsel"). Courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Each of the Rule 23(g) factors supports Proposed Interim Counsel's application for appointment as counsel for the class.

/ / /

/ / /

### 1.    Proposed Interim Counsel Have Done Extensive Work in Identifying and Investigating the Potential Claims

The first factor to be analyzed in determining interim counsel weighs toward the granting of this Motion:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who have not undertaken those tasks. If, however, the applying attorney filed a simple complaint, or filed a complaint that was merely copied from another similar action, and did not devote any substantial efforts to the identification and investigation of potential claims before filing the complaint, the fact that the applicant filed the action should not weigh as heavily in the appointment decision.

Moore's Federal Practice § 23.120[3][a] (3d ed. 2022). Suffice it to say, the initial *John Doe* and *Doe* complaints, *John Doe* and *Doe* FAC, and Motion for Preliminary Injunction demonstrate the extensive investigatory and analytical effort.

Proposed Interim Counsel have done the most extensive work to identify and investigate the potential claims. For example, the only two complaints that cite proprietary expert analysis are the *John Doe* and *Doe* complaints. The Class will be well-served by being represented by Counsel who have already devoted substantial time and resources working with experts to investigate the Class claims.

Before filing the first-filed action, counsel investigated the underlying conduct and the potential legal claims, including extensive investigation and review of Facebook's various policies related to privacy and data collection in addition to reviewing dozens of such policies for health care entities. Koncius Decl. ¶ 5. Further, counsel analyzed the underlying code and worked extensively with specific tools and experts to further understand the flow of data that Facebook was capturing as a result of its Pixel being present on certain health care facility websites. *Id.* at ¶ 6. Additionally, members of Proposed Interim Counsel, along with their experts, thoroughly investigated which health care facilities used (and did not use) the Pixel causing disclosures of sensitive patient

information to Facebook.[4] *Id*. at ¶ 7. This analysis built on the years of litigation that counsel has invested in prosecuting similar claims against hospitals in state courts around the country including the states of California, Washington, Illinois, Missouri, Maryland and Massachusetts. *Id*. at ¶ 8.

Once the litigation commenced and counsel for Facebook was identified, members of Proposed Interim Counsel promptly engaged Facebook's attorneys in discussions regarding preservation and production of relevant information, propounded written discovery, proposed an expert stipulation, conducted conferences pursuant to Fed. R. Civ. P. Rule 26(f), served initial disclosures, and took the lead at the initial conference. *Id*. at ¶ 9; Graber Decl. at ¶ 14. All of this work is to the benefit of the proposed Class members, with a view towards avoiding duplication of effort or the need for judicial intervention.

### 2.    Proposed Interim Counsel Bring a Wealth of Experience Litigating Complex Privacy Cases and Against Facebook

Proposed Interim Counsel have extensive experience in litigating consumer protection and privacy cases, achieved significant relief for class members through settlement and trial, and capably served in leadership positions in consumer protection and privacy class actions throughout the country. And many of the Proposed Interim Counsel have previously litigated cases against Facebook and continue to litigate state court matters relating to the Pixel.

#### a.    *Jay Barnes of Simmons Hanly Conroy LLC*

Simmons Hanly Conroy ("SHC") is a national litigation firm with offices in Illinois, Missouri, New York, and California. Since its founding in 1999, SHC has recovered over $9 billion in verdicts and settlements for its clients. In the class action field, SHC members have served as class counsel or co-counsel on a number of cases, and currently serve as co-lead counsel in the national opioid litigation, *In re: National Prescription Opiate Litigation,* MDL 2804 (N.D. Ohio).

---

[4] Of note, at the initial hearing on this matter, counsel for one hospital, Dignity Health, raised the issue that one of the after-filed actions (*Jane Doe v. Meta Platforms et al*., Case No. 3:22-cv-04293-WHO, filed by Wagstaffe, Von Loewenfeldt, Busch & Radwick LLP and Lowey Dannenberg PC) apparently sued Dignity despite its not using the Pixel and having an operative arbitration provision. *See* Oct. 5, 2022 Hearing Tr. at 11:1-3 ("I think we're puzzled by how we fit into this. You know, all the more so because DHMF didn't actually use a pixel on either its public-facing or patient portal. But we also have this arbitration issue.").

PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

Shareholder Jay Barnes has over 15 years of legal experience representing classes and individual clients in consumer and privacy cases. He is a member in good standing of the State bar of Missouri since 2005, and is admitted to practice in the United States Supreme Court and the United States Court of Appeals, Second, Third and Ninth Circuits. As a shareholder of SHC, Mr. Barnes has held significant leadership roles in directing the litigation of several class action cases, including *Fernandez v. Atkins Nutritionals, Inc.*, Case No. 3:17-cv-01628-GPC-WVG (S.D. Cal.); *Smith v. Atkins Nutritionals, Inc.*, Case No. 2:18-cv-04004-MDH(W.D. Mo.); *Colella v. Atkins Nutritionals, Inc.,* Case No. 17-cv-5867 (KAM) (E.D.N.Y.); *Janson v. LegalZoom*, 802 F.Supp.2d 1053 (W.D. Mo. 2011); *Gjonbalaj, et al. v. Volkswagen of America, et al.*, 2:19-cv-07165-BMC (E.D.N.Y.). Of particular relevance, Mr. Barnes has demonstrated capable leadership by obtaining successful outcomes in several key privacy class actions. *See, e.g. In re Google Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015) (establishing, *inter alia,* precedent that common law intrusion upon seclusion is actionable against Internet companies that mislead consumers about privacy practices); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) (establishing, *inter alia*, first post-*Spokeo* precedent that privacy injury is sufficient to confer Article III Standing); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (establishing, *inter alia,* that a defendant's monetization of unlawfully collected data can constitute an economic injury); *see also Calhoun v. Google*, *LLC,* Case No. 5:20-cv-05146-LHK (N.D. Cal.); *Doe v. Partners, et. al.*, Case No. 1984-CV- 01651 (Suffolk County, Massachusetts 2019); *Doe v. Medstar, Inc.*, Case No. 24-C-20-000591 (Baltimore City, Maryland 2019); *Doe v. Virginia Mason,* Case No. 19-2-26674-1 SE (Kings County, Washington).

Additional information regarding SHC and the qualifications of Mr. Barnes is attached as Exhibit A to the Barnes Declaration.

### b.    Geoffrey Graber of Cohen Milstein Sellers & Toll

Mr. Graber has significant experience prosecuting class actions and other complex litigation. (Graber Decl. ¶¶ 2-7.) Mr. Graber has been an attorney for over 22 years, first working as a commercial litigator at large defense firm (Morrison & Foerster LLP), then in government at the United States Department of Justice, and finally as a plaintiff's attorney at Cohen Milstein. *Id.*

9

At Cohen Milstein, Mr. Graber represents consumers in several substantial, complex class action cases involving issues of privacy and data breaches, false advertising, fraud, and other forms of unfair business practices. *Id.* at ¶ 3. These cases include *In re Anthem, Inc. Data Breach Litig.* (N.D. Cal.), where Mr. Graber worked on the lead counsel team at Cohen Milstein representing a class of nearly 80 million Americans whose information was hacked. The case settled for $115 million -- the largest data breach settlement at the time. Mr. Graber is also leading the firm's litigation efforts in *Ariza, et al. v. Luxottica Retail N. Amer., Inc.* d/b/a LensCrafters (E.D.N.Y.), a certified multi-state class action alleging various violations of consumer protection statutes, including California's Unfair Competition Law.[5]

Mr. Graber has also successfully litigated against Facebook in this district. Mr. Graber serves as co-lead counsel in *DZ Reserve, et al. v. Facebook*, 3:18-cv-04978 (N.D. Cal.), which challenges Facebook's deliberate inflation of its core "Potential Reach" metric used by advertisers, and he successfully obtained class certification in March 2022 on behalf of millions of advertisers. Mr. Graber led the firm's successful litigation efforts against Facebook in a class action challenging Facebook's systemic inflation of its video advertising metrics, *LLE One v. Facebook*, 4:16-cv-06232 (N.D. Cal.) which settled for $40 million.

Prior to joining Cohen Milstein in 2015, Mr. Graber had a distinguished career at the United States Department of Justice (DOJ), where he led some of the largest and most important federal enforcement actions in recent history. *Id.* at ¶ 5. At DOJ, Mr. Graber served as Deputy Associate Attorney General and Director of the Residential Mortgage-Backed Securities Working Group. *Id.* In that role, Mr. Graber oversaw DOJ's nationwide investigation into the packaging and sale of mortgage-backed securities, leading up to the financial crisis. *Id.* He supervised more than 100 DOJ prosecutors, lawyers, investigators and analysts and worked closely with senior officials from the SEC, Department of Housing and Urban Development, Inspector General's Office for the Federal Finance Agency, and more than 10 state attorneys general offices. *Id.* The DOJ investigations overseen by Mr. Graber ultimately recovered more than $36 billion. *Id.* These recoveries include

---

[5]  Cohen Milstein is sole lead counsel in *Ariza*.

the record-breaking $16.65 billion settlement reached in August 2014 with Bank of America – the largest settlement with a single entity in U.S. history – as well as settlements with Citigroup ($7 billion) and JP Morgan ($13 billion). *Id.* In 2014, Mr. Graber received the Attorney General's Distinguished Service Award.

Earlier in his career at DOJ, Mr. Graber served as Counsel in the Civil Division, where he led the three-year investigation of Standard & Poor's (S&P) and its ratings of structured finance products in the lead up to the financial crisis. *Id.* at ¶ 6. Mr. Graber oversaw the investigation and supervised a team of more than 50 prosecutors, DOJ lawyers, investigators and analysts. *Id.* The investigation, which made groundbreaking use of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, resulted in the largest enforcement action filed by the United States concerning the financial crisis (*United States v. Standard & Poor's*). *Id.* In 2015, as a result of his successful work on S&P, Mr. Graber again received the Attorney General's Distinguished Service Award. Prior to his service in government, Mr. Graber worked as a commercial litigator at Morrison & Foerster LLP in San Francisco and Los Angeles. *Id.*

Cohen Milstein is one of the largest, most successful, and most respected plaintiffs' class action firms in the country. Cohen Milstein has earned recognition as a "class-action powerhouse" (*Forbes*), "the most effective law firm in the U.S. for lawsuits with a strong social and political component" (*Corporate Legal Times*), one of "America's 25 Most Influential Law Firms" (*The Trial Lawyer*), and one of the "Most Feared Plaintiffs Law Firms" (*Law360*). Cohen Milstein's reputation is reflected in the firm's successes. For over 45 years, Cohen Milstein has recovered tens of billions of dollars on behalf of injured plaintiffs. *Id.* at ¶ 10. Some examples include: *In re Lidoderm Antitrust Litigation* (N.D. Cal.) ($104.75 million settlement for end-payors alleging delay in generic launch); *In re Flint Water Cases* (E.D. Mich.) ($625 million settlement for Flint residents in environmental toxic tort class action); *Khoday v. Symantec Corp.* (D. Minn.) (class action on behalf purchasers of e-commerce sellers that resulted in a $60 million settlement); *In re Urethane Antitrust Litig.* (D. Kan.) ($835 million class action settlement after obtaining the largest price-fixing jury verdict in U.S. history); and *In re Electronic Books Antitrust Litig.* (S.D.N.Y.) ($566 million class action settlement).

                         *c.*       *Beth Terrell of Terrell Marshall Law Group PLLC*

Terrell Marshall is a law firm in Seattle, Washington, that focuses on complex civil and commercial litigation with an emphasis on consumer protection, product defect, civil rights, and wage and hour cases. Terrell Marshall has been appointed lead or co-lead counsel representing multi-state and nationwide classes in state and federal court in Washington and throughout the United States. Since its founding in 2008, the attorneys at Terrell Marshall have represented scores of classes, tried class actions in state and federal court, and obtained hundreds of millions of dollars in monetary relief to workers, consumers, and other individuals. Declaration of Beth Terrell ("Terrell Decl.") ¶ 2.

Beth Terrell is a founding member of Terrell Marshall with over twenty years of experience, litigating consumer protection, privacy, defective product, and wage and hour class actions. Ms. Terrell has served as co-lead counsel for classes in multi-state, multi-district, and nationwide class actions that have resulted in hundreds of millions of dollars in settlements for consumers and workers. Some of the privacy class actions Ms. Terrell has co-led are:

- *Doe v. Virginia Mason Medical Center* is a proposed class action currently pending in King County Superior Court on behalf of a proposed class of Washington of patients whose identities and confidential communications were routed to third-party digital marketing companies through source code, like the Facebook Pixel, embedded in the Hospital's website. The King County Superior Court certified the Class on September 27, 2021, and discretionary review of the certification order is pending in the Washington State Court of Appeals.

- *Tokarski v. Med-Data, Inc.*—Filed in April 2021 on behalf of a nationwide class of consumers whose personal and medical information was compromised as a result of a breach of defendant's electronic information systems. Plaintiff defeated motions seeking a change of forum, and defendant's motion to dismiss is pending before the Western District of Washington.

- *Wise v. Ring LLC* is a proposed class action filed in July 2020 on behalf of Illinois residents whose biometric data defendant allegedly collected using facial recognition software in violation of the Illinois Biometric Information Privacy Act. The case survived a motion to dismiss and is currently pending in the Western District of Washington.

- *In re Capital One Telephone Consumer Protection Act Litigation* was a multidistrict class action in which Ms. Terrell served as Co-Lead Counsel. In February 2015, the Northern District of Illinois approved a $75 million settlement on behalf of a nationwide class of consumers who received automated, prerecorded telephone calls.

- *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation* was a multidistrict class action in which Ms. Terrell served as Co-Lead Counsel. In

June 2018, the Northern District of West Virginia approved a $28 million settlement on behalf of consumers who received automated, prerecorded solicitation telephone calls.

Additional cases Terrell Marshall has litigated to successful conclusion and in which Ms. Terrell has served in leadership positions are described in Ms. Terrell's declaration, along with the qualifications of the team of Terrell Marshall attorneys assigned to this case. *See* Terrell Decl. ¶¶ 3–7.

Ms. Terrell has tried and won cases in state and federal courts and has argued before the Washington State Court of Appeals, the Washington State Supreme Court, and several federal circuit level courts. She served as President of the Public Justice Foundation Board of Directors, serves on the Equal Justice Works' Board of Counselors, is Chair of the Northwest Consumer Law Center and the Washington Employment Lawyers Association, and Co-Chairs PLI's Consumer Financial Services Institute. She frequently presents on a variety topics including class actions, consumer protection, legal ethics, gender equity, and electronic discovery. Terrell Decl. ¶ 3.

### d.     Jeffrey A. Koncius of Kiesel Law LLP

The attorneys at Kiesel Law LLP ("KL") have wide-ranging experience in the areas of complex actions in both State and Federal Courts. They have held lead, liaison or co-lead positions in several mass tort and class action cases. KL's extensive experience in class action law, combined with its knowledge, experience, and expertise in similar cases, and the privacy arena in particular, demonstrates its unique qualifications to serve as a member of Proposed Interim Counsel. Courts throughout the country have appointed KL and its attorneys as class counsel in numerous class and coordinated actions, including in this district. Koncius Decl. ¶ 11, Ex. B. In such cases, and individual ones, KL has recovered millions of dollars for aggrieved class members and consumers generally. *Id.* As just one example, KL, acting as liaison counsel in the Talcum Powder JCCP, was part of the trial team that obtained a record-setting jury award of $417 million against Johnson & Johnson and its subsidiary. *Id.* As a result, Class members in this case will benefit from the appointment of a member of Proposed Interim Counsel who has the experience of taking cases through trial, as well as devising fair settlement structures in similar cases should this matter resolve before trial. And, not only is KL highly competent, but Nicole Ramirez and Jeffrey Koncius of the

13

firm have developed a particular expertise in privacy actions through extensive investigation of the industry, consultation with industry professionals, and the prosecution of similar cases. *Id.* at ¶ 10, Ex. B. KL's experience is described in further detail below:

- *In re Facebook Internet Tracking Litig.*, United States District Court, Case No. 5:12-md-02314 (N.D. Cal.): KL appointed to Plaintiffs Steering Committee in class action alleging interception of Facebook users' internet communications and activity after logging out of Facebook. The matter has been settled and preliminary approval recently granted for settlement providing for $90 million and deletion of the data.

- *Southern California Gas Leak Cases*, California JCCP No. 4861 (L.A.S.C.): The Porter Ranch gas leak has widely been reported as the single worst natural gas leak in U.S. history. The Court appointed KL as Liaison Counsel for the private plaintiffs, which includes the business class action complaints filed by local businesses for economic losses, individual class action complaints, and more than 38,000 individual plaintiffs' claims. The matter has been settled for approximately $1.8 billion.

- *John Doe v. Partners Healthcare System, Inc., et al.* (Suffolk Superior Court, Mass.): Class counsel in privacy action alleging Defendant medical providers did not obtain sufficient consent when placing third-party analytics tools, cookies, and pixels on their websites. Plaintiffs further alleged that the code caused browsers to disclose information about their internet use to third-parties through these analytics tools, cookies, pixels, and related technologies. Settlement of $18.4 million approved.

- *JUUL Labs Product Cases*, California JCCP 5052, Lead Case No. 19STCV22935 (L.A.S.C.): KL appointed Co-Lead Plaintiffs' Counsel for Private Plaintiffs in this JCCP where there are thousands of cases pending.

- *Kevin Risto v. Screen Actors Guild – Am. Fed'n. of TV & Radio Artists*, United States District Court, Case No. 2:18-cv-07241-CAS-PLAx (C.D. Cal.): KL appointed Class Counsel on a contested motion for class certification for artists who alleged breach of fiduciary duties by nonprofit tasked with distributing their royalty payments under the Copyright Act. The claims specifically concerned an agreement between the nonprofit's board of directors which deducted a percentage of the streaming royalties and paid it to those Unions as a service fee before the remaining balance was distributed to artists. The class settlement, reached days before trial, of more than $10 million in monetary and non-monetary relief received final approval.

- *The Rick Nelson Co., LLC v. Sony Music Entm't*, United States District Court, Case No. 1:18-cv-08791-LLS (S.D.N.Y.): KL appointed class counsel for artists who alleged that Sony improperly reduced and failed to adequately pay foreign streaming royalties for use of their artistic works. Class settlement of more than $12 million in cash and an increase of royalty rates for future foreign streaming approved.

- *Clergy Cases I, II, & III*, California JCCPs 4286, 4297, and 4359 (L.A.S.C.): KL litigated childhood sexual abuse cases against Los Angeles Archdiocese with total settlement exceeding $1.2 billion.

- *In re: Wright Medical Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*, MDL No. 2329 (N.D. Ga.): KL appointed Co-Lead Counsel in MDL arising out of injuries sustained as a result of defective metal-on-metal hip devices. KL was then part of bellwether trial team that obtained an $11 million verdict in Atlanta, GA, in November 2015, including $10 million in punitive damages.

14

Additional information regarding KL and the qualifications of its attorneys is attached as Exhibit B to the Koncius Decl.

e.    *Andre Mura of Gibbs Law Group*

Founded in 2014 in Oakland, California, Gibbs Law Group is a national litigation firm with thirty-two attorneys representing plaintiffs in class and collective actions in state and federal courts, and in arbitration. Declaration of Andre Mura ("Mura Decl.") at ¶ 2. Andre Mura is a partner at the firm and represents plaintiffs in consumer privacy class actions and mass torts, among other areas. Mura Decl. at ¶ 1.

Andre played a lead role in multi-district litigation against a television manufacturer accused of collecting and selling data about consumers' viewing habits without their consent, in violation of federal wiretap and California privacy laws (among others). *In re Vizio Consumer Privacy Litig.*, No. 8:16-ml-02693 (C.D. Cal.) (Staton, J.). He led briefing on plaintiffs' dispositive motions and was the only attorney to argue them. He also briefed and argued every discovery motion except for one informal telephone conference. Judge Staton appointed Andre co-lead counsel for the settlement class after he (and co-counsel) negotiated monetary relief and significant business practice changes that a leading privacy expert heralded. His work was well received. *See* Second Mot. to Dismiss H'rg Tr. 28:18-21 (May 26, 2017) ("As usual, regardless of how I rule on this, I am always thrilled to have you all in front of me, because you do such a good job in arguing these points."); Preliminary Approval H'rg Tr. 3:14-17 (Dec. 7, 2018) ("And you did a very good job on these papers, by the way, so I'm glad I appointed all of you as lead counsel, because – it probably is the best set of papers I've had on preliminary approval. . .").

Andre also assumed a lead role in multi-district litigation against a technology company accused of preinstalling software on laptops that allegedly caused performance, privacy, and security issues for consumers. *In re Lenovo Adware Litig.*, No. 15-md-02624-RMW/HSG (N.D. Cal.) (Whyte, J. (ret.) and Gilliam, J.). He successfully briefed and argued a motion to dismiss and a motion to certify a nationwide litigation class for monetary damages. The case later settled on a nationwide basis.

/ / /

15

More recently, Andre joined with a coalition of privacy attorneys to pursue class action claims against Thomson Reuters, alleging the company violates California law by collecting and selling millions of Californians' data through its CLEAR database without consent. *Brooks v. Thomson Reuters Corp.*, No. 3:16-cv-01418-EMC (N.D. Cal.) (Chen, J.). The complaint survived a motion to dismiss that raised an immunity defense under the Communications Decency Act of 1996, 47 U.S.C. § 230, and proceeds with UCL public injunction and monetary unjust enrichment claims. Andre presented oral argument for plaintiffs on the motion to dismiss and is now leading class certification briefing.

Andre's other practice areas include mass torts. Judge Rodgers of the Northern District of Florida appointed him to a law-and-briefing subcommittee in multi-district litigation on behalf of military servicemembers and veterans who suffered injuries due to defective 3M earplugs, which were standard-issue for U.S. military members for more than a decade. *In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885-MCR (N.D. Fla.). And Judge Milazzo appointed Andre to the plaintiffs' steering committee and as co-chair of a law-and-briefing committee in multi-district litigation on behalf of breast cancer survivors who suffered permanent hair loss after using the Taxotere chemotherapy drug. *In re: Taxotere (Docetaxel) Prods. Liab. Litig*., No. 16-md-02740 (E.D. La.). Because good work begets more work, Andre was added to multiple trial teams in both these MDLs. He also obtained a unanimous decision from the Fifth Circuit granting a new bellwether trial in the *Taxotere* MDL, an appeal which he briefed and argued. *In re: Taxotere (Docetaxel) Prods. Liab. Litig*., 26 F.4th 256 (5th Cir. 2022).

Before joining Gibbs Law Group, Andre was an attorney at the Center for Constitutional Litigation in Washington, D.C. Mura Decl. at ¶ 5. While there, he briefed and argued high-stakes appeals and dispositive motions in trial courts, in the areas of preemption, qualified immunity, and federal jurisdiction. He was the lead author of merits briefing addressing whether personal jurisdiction exists over a foreign manufacturer in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). The Center also represented the American Association for Justice when it appeared as an amicus curiae before the U.S. Supreme Court. Since leaving the Center, Andre has maintained an amicus curiae practice. Recently, he represented a bipartisan group of former members of the

16

U.S. Senate and House of Representatives before the U.S. Supreme Court in *Trump v. Mazars USA, LLP*, No. 19-715.

Lastly, Andre was recognized as a Top Plaintiff Lawyers in California for 2021 by Daily Journal; received a 2019 California Lawyer Attorney of the Year Award for his work in the California Supreme Court in *De La Torre v. CashCall*, 5 Cal. 5th 966 (2018); and was named a top cybersecurity and privacy attorney under 40 by Law360 (Rising Stars) in 2017. Andre is also active in the legal community. He serves on the board of the Civil Justice Research Initiative of Berkeley Law, is a member of the Lawyers Committee of the National Center for State Courts, and recently served as chair of the American Association for Justice's LGBT Caucus. Mura Decl. at ¶¶ 7-8.

### 3. Proposed Interim Counsel Have Extensively Litigated the Applicable Law and Recently Created Important Ninth Circuit Internet Privacy Law

As set forth above, Proposed Interim Counsel are law firms with a national reputation for excellence and success in complex consumer litigation. The firms have a strong background in consumer protection and privacy law, a demonstrated ability to manage intensive and complex fact and expert discovery, and have successfully litigated class actions in the field of data privacy. The lead attorneys from each firm have been and continue to be at the forefront of privacy and data litigation and are well-versed in the technology and data at issue. Accordingly, they have the requisite knowledge of the applicable facts and law necessary to navigate the challenges that will arise in these types of litigation.

### 4. Proposed Interim Counsel Have the Resources to Commit to Represent the Class

The firms have the resources necessary to lead this litigation and have extensive experience successfully managing complex, resource-intensive cases. *See* Barnes Decl. ¶ 9; Graber Decl. ¶ 13; Terrell Decl. ¶ 8; Koncius Decl. ¶¶ 10-13; Mura Decl. ¶ 2. The firms have or are well-versed in the necessary technology to handle voluminous and complex discovery, including discovery of the scope and nature anticipated in this case. They further have sufficient attorneys and other professionals to staff this case and each firm has designated a primary team of attorneys who will bring their unique skills and experience to representing the proposed Class. The firms routinely

17

advance the costs of litigation and have demonstrated an ability and willingness to dedicate substantial resources to vigorously prosecute the claims. *See id.* at ¶ 9 (Barnes); ¶ 13 (Graber); ¶ 8 (Terrell); ¶ 13 (Koncius); ¶ 2 (Mura).

The firms are prepared to commit the resources necessary to prosecute this case to successful conclusion. The proposed leadership structure is ideally suited to the particular circumstances here, which will require a team of dedicated lawyers with sufficient resources to pursue litigation against a sophisticated defendant, one who is arguably the largest data company in the world. The firms are well established, reputable, and have demonstrated that they are capable of handling the challenges of this litigation and committing the necessary resources to represent the proposed class.

Finally, this case, in particular, requires a team of attorneys from large, sophisticated, and well-resourced Plaintiffs' firms. Facebook is the world's largest social media company. Facebook's retention of two of the largest and most sophisticated defense firms in the country only underscores Facebook's intent to litigate this case aggressively, and the need for the Plaintiffs and the putative class to be represented by large, sophisticated, and well-resourced Plaintiffs' firms.

### 5. Proposed Interim Counsel Will Work Cooperatively with All Other Interested Counsel as they Have in the Past so as to Achieve the Best Result Possible for the Class

The court may also consider any other factors that are relevant to the appointment of interim counsel. Fed. R. Civ. Proc. 23(g)(1)(B). For example, it is important that the Court appoint leadership that has already demonstrated the ability to build consensus and work cooperatively and cohesively. Here, Proposed Interim Counsel have a demonstrated ability to work efficiently and cooperatively with other counsel. *See* Koncius Decl. ¶ 14; Barnes Decl. ¶ 10. Notably, this Motion is being brought by firms who filed two separate cases but, nevertheless, were able to join forces in their claims against Facebook relating to the Pixel. And the leadership structure proposed here enjoys support from the clear majority of plaintiffs and firms. *Wilcosky v. Amazon.com, Inc.,* Case No. 19-cv-05061, *slip op.* (N.D. Ill. May 16, 2022) (appointing leadership that "majority of plaintiffs and firms support[ed]" and noting that "acquir[ing] the confidence and trust of its colleagues … is no small feat.").

/ / /

Additionally, Proposed Interim Counsel have shown such qualities in working with a diverse group of attorneys in other complex litigation. As demonstrated in their firm resumes, Proposed Interim Counsel have worked in a leadership capacity on numerous nationwide cases involving a number of firms to successful outcomes. Therefore, by appointing Proposed Interim Counsel this Court will be assured that such counsel have the knowledge and standing necessary to include any other potentially interested parties and act upon consensus views thereby minimizing conflicts that can otherwise hamper complex, nationwide litigation such as this.

The Proposed Interim Counsel are a diverse group of attorneys, including a renowned female attorney (Beth Terrell) and LGBT attorney (Andre Mura). This diversity is another important strength of the Proposed Interim Counsel.

## IV.    PROPOSED CASE MANAGEMENT PLAN AND OBLIGATIONS OF PROPOSED INTERIM COUNSEL

As the first order of business, Proposed Interim Counsel anticipate filing a consolidated complaint and severing any existing claims against hospital defendants so that this matter pursues Facebook only and hospital claims proceed separately.[6] As just one example, Proposed Interim Counsel believe the claims against Dignity Health (in the case *Jane Doe v. Meta Platforms et al.*, Case No. 3:22-cv-04293-WHO) should be severed from this litigation for reasons including, but not limited to, the fact that such hospital's counsel has represented on the record that: (1) the Pixel was not present on its public-facing or patient portal websites; and (2) there is an arbitration provision in the contract governing the relationship between Dignity Health and its patients. *See* Oct 5, 2022 Hearing Tr. at 11:1-3.

Next, Proposed Interim Counsel envision that specific members of their firms will oppose the anticipated pleading challenges to the consolidated complaint. At the same time, other members of their firms will pursue discovery with attorneys tasked with specific discovery responsibilities and motion practice relative to such discovery where necessary. Discovery teams relating to third-party discovery will also be deployed. Proposed Interim Counsel will work diligently to assign work

---

[6] The cases filed by Proposed Interim Counsel allege claims against Facebook only.

19

in a manner so as to limit the number of time keepers involved and avoid duplication of work. Further, Proposed Interim Counsel have already begun developing experts to aid in the prosecution of this matter, as is demonstrated by the more than 100 page expert declaration already submitted in support of Plaintiffs' Motion for Preliminary Injunction.

## V.    CONCLUSION

Based on the foregoing, Moving Plaintiffs respectfully request that the Court appoint Jay Barnes of Simmons Hanly Conroy LLC and Geoffrey Graber of Cohen Milstein, as interim co-lead counsel, and an Executive Committee comprised of Beth Terrell of Terrell Marshall Law Group PLLC, Jeffrey A. Koncius of Kiesel Law LLP and Andre Mura of Gibbs Law Group.

Dated: October 19, 2022

**SIMMONS HANLY CONROY LLC**

By:    */s/ Jason "Jay" Barnes*
          Jason "Jay" Barnes

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
Jennifer Paulson (admitted *pro hac vice*)

Attorneys for Plaintiffs in
*John Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-03580-WHO

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By:    */s/ Geoffrey Graber*
          Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
Eric Kafka (admitted *pro hac vice*)

Attorneys for Plaintiff in
*Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-04680-WHO

**TERRELL MARSHALL LAW GROUP PLLC**

By:    */s/ Beth E. Terrell*
          Beth E. Terrell

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell

Attorneys for Plaintiffs in
*John Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-03580-WHO

**KIESEL LAW LLP**

By:    */s/ Jeffrey A. Koncius*
        Jeffrey A. Koncius

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
Paul R. Kiesel, State Bar No. 119854
Nicole Ramirez, State Bar No. 279017

Attorneys for Plaintiffs in
*John Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-03580-WHO

**GIBBS LAW GROUP**

By:    */s/ Andre Mura*
        Andre Mura

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
Rosemary M. Rivas, State Bar No. 209147
Hanne Jensen, State Bar No. 336045

Attorneys for Plaintiff in
*Doe v. Meta Platforms, Inc.*,
Case No. 3:22-cv-04680-WHO

21

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Jeffrey A. Koncius, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: October 19, 2022                          */s/ Jeffrey A. Koncius*
                                                 Jeffrey A. Koncius