Paul R. Kiesel, State Bar No. 119854
  kiesel@kiesel.law
Jeffrey A. Koncius, State Bar No. 189803
  koncius@kiesel.law
Nicole Ramirez, State Bar No. 279017
  ramirez@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel.:   310-854-4444
Fax:   310-854-0812

Jason 'Jay' Barnes (admitted *pro hac vice*)
  jaybarnes@simmonsfirm.com
An Truong (admitted *pro hac vice*)
  atruong@simmonsfirm.com
Eric Johnson (admitted *pro hac vice*)
  ejohnson@simmonsfirm.com
Jennifer Paulson (admitted *pro hac vice*)
  jpaulson@simmonsfirm.com
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.:   212-784-6400
Fax:   212-213-5949

Stephen M. Gorny (admitted *pro hac vice*)
  steve@gornylawfirm.com
**GORNY DANDURAND, LC**
4330 Belleview Avenue, Suite 200
Kansas City, MO 64111
Tel.:   816-756-5071
Fax:   816-756-5067

Amy Gunn (admitted *pro hac vice*)
  agunn@simonlawpc.com
Elizabeth S. Lenivy (admitted *pro hac vice*)
  elenivy@simonlawpc.com
**THE SIMON LAW FIRM, P.C.**
800 Market St., Suite 1700
St. Louis, MO 63101
Tel.:   314-241-2929
Fax:   314-241-2029

*Attorneys for Plaintiffs*
JOHN DOE, JANE DOE I, JANE DOE II, and
JOHN DOE II, on behalf of themselves and all
others similarly situated

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | **Case No. 3:22-cv-03580-WHO**<br><br>CLASS ACTION |
| This Document Relates To:<br><br>*Doe v. Meta Platforms, Inc.*, Case No. 3:22-cv-03580-WHO | **\*\*REDACTED VERSION\*\***<br><br>**DECLARATION OF CHRISTOPHER "CHRISTO" WILSON IN SUPPORT OF PLAINTIFFS' REPLY TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   November 9, 2022<br>Time:  2:00 p.m.<br>Ctrm.:  2, 17th Floor<br>Judge: Hon. William H. Orrick |

## I. QUALIFICATIONS

1. My name is Christopher "Christo" Wilson. I am a tenured Associate Professor in the Khoury College of Computer Sciences at Northeastern University in Boston, MA. I am a founding member of the Cybersecurity and Privacy Institute at Northeastern University, and Director of Khoury College's Bachelors in Cybersecurity program. I am an Affiliate member of the Center for Law, Information, and Creativity in the Northeastern University School of Law, and I am a Faculty Associate at the Berkman Klein Center for Internet & Society at Harvard University.

2. My research broadly focuses on digital consumer protection issues, spanning specific topics like online tracking and privacy, fairness and bias in machine learning systems, black-box algorithm auditing, online mis- and dis-information, and deceptive "dark patterns" in user interfaces. I have studied Facebook (the social network, not the company as a whole) in the past, starting in 2008. Relevant peer-reviewed publications include:

- *User Interactions in Social Networks and their Implications*, Christo Wilson and Bryce Boe and Alessandra Sala and Krishna P. N. Puttaswamy and Ben Y. Zhao. In EUROSYS, 2009.
- *Detecting and Characterizing Social Spam Campaigns*, Hongyu Gao and Jun Hu and Christo Wilson and Zhichun Li and Yan Chen and Ben Y. Zhao. In IMC, 2010.
- *Tracing Information Flows Between Ad Exchanges Using Retargeted Ads*, Muhammad Ahmad Bashir and Sajjad Arshad and William Robertson and Christo Wilson. In Usenix Security, 2016.
- *Should You Use the App for That? Comparing the Privacy Implications of Web- and App-based Online Services*, Christophe Leung and Jingjing Ren and David Choffnes and Christo Wilson. In IMC, 2016.
- *Diffusion of User Tracking Data in the Online Advertising Ecosystem*, Muhammad Ahmad Bashir and Christo Wilson. In PoPETS 2018(4), 2018.
- *Quantity vs. Quality: Evaluating User Interest Profiles Using Ad Preference Managers*, Muhammad Ahmad Bashir and Umar Farooq and Maryam Shahid and Muhammad Fareed Zaffar and Christo Wilson. In NDSS, 2019.
- *A Longitudinal Analysis of the ads.txt Standard*, Muhammad Ahmad Bashir and Sajjad Arshad and Wil Robertson and Engin Kirda and Christo Wilson. In IMC, 2019.
- *A Comparative Study of Dark Patterns Across Mobile and Web Modalities*, Johanna Gunawan and Amogh Pradeep and David Choffnes and Woodrow Hartzog and Christo Wilson. In Proceedings of the ACM: HCI 5(CSCW2), 2021.

1

DECLARATION OF CHRISTOPHER "CHRISTO" WILSON IN SUPPORT OF PLAINTIFFS' REPLY TO MOTION FOR PRELIMINARY INJUNCTION (CONSOLIDATED CASE NO. 3:22-CV-03580-WHO)

- *Setting the Bar Low: Are Websites Complying With the Minimum Requirements of the CCPA?*, Maggie Van Nortwick and Christo Wilson. In PoPETS 2022(1), 2022.

3. I have received a number of awards in relation to research. I am a 2019 Sloan Fellow, and my paper *Diffusion of User Tracking Data in the Online Advertising Ecosystem* was awarded a Privacy Papers for Policymakers Award by the Future of Privacy Forum. My publications have also received awards from various computer science conferences and professional societies, including the AAAI International Conference on Weblogs and Social Media, the Internet Society, the ACM Conference on Computer Supported Cooperative Work, the ACM Conference on Computer Human Interaction, and the IEEE Conference on Secure Development.

4. My research is financially supported by the U.S. National Science Foundation, a Sloan Fellowship, the Mozilla Foundation, the Knight Foundation, the Russell Sage Foundation, the Democracy Fund, the Anti-Defamation League, the Data Transparency Lab, the European Commission, Google, Pymetrics, and Verisign Labs.

## II.   ASSIGNMENT & SUMMARY OF OPINIONS

5. I have been retained as an expert by Plaintiffs' counsel in this action.

6. For purposes of this report, I have been asked to provide an opinion as to whether it would be possible for Meta (formerly known as "Facebook") to comply with an order from this Court that Meta (1) stop intercepting patient information and communications from HIPAA-covered entities through its use of the Meta Pixel; and (2) not disseminate and/or use patient information and communications that it has intercepted from HIPAA-covered entities through its use of the Meta Pixel.

7. It is my opinion that, with slight modifications, Meta can use its existing filtering tools and web-crawlers to comply with a Court order that Meta: (1) stop intercepting the patient information at issue in this case; (2) not disseminate and/or use patient information at issue in this case.

8. In reaching this conclusion, I have relied upon my knowledge and experience in large-scale data systems and filtering tools, as well as Meta's descriptions of its filtering tools contained in briefing in this case, including the Wooldridge Declaration.

9. I reserve the right to amend, supplement or modify this report should new and additional information become available to me.

### III. ANALYSIS

10. Meta has represented that it has developed and deployed filtering systems that screen out potentially sensitive data that is uploaded via Pixels.[1] ███████████████████████ ███████████████████████████████████████████████████████████ Meta represents that it notifies developers when the screening system detects that a Pixel it owns is uploading sensitive data.[2]

11. The concept underlying Meta's screening system is sound, ███████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████████

12. To the best of my knowledge, Meta has never disclosed the accuracy or error rates of its screening system. Further, to the best of my knowledge, Meta has never disclosed ███████ ██████████████████████████████████████████████████████████

13. ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████████████████████████

14. ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████

---

[1] Wooldridge Declaration, ¶ 9.
[2] Wooldridge Declaration, ¶ 9.

████████████████████████████████████████████████████████

15. After Meta modifies the ████████████████████████████ ████ Meta could retroactively apply the system to historical data collected via Pixels. Patient data identified by this scan could be deleted from Meta's advertising-related systems, and the relevant developers could be notified (assuming their Pixel is still active).

16. Meta could also take immediate remediation steps against Pixels that repeatedly trigger patient data screening mechanisms. Meta could immediately disable any Pixel that it finds have sent patient data in the past, in addition to their existing practice of notifying the developer who created the Pixel. To avoid concerns about potential false positives (i.e., situations where Meta's systems identify Pixel data as patient data but the developer disagrees) Meta could provide developers whose Pixel was disabled because the filtering system flagged it for uploading patient data an opportunity to appeal the decision, by demonstrating either that the data in question is not patient data or that the developer has obtained proper consent.

17. Meta could also take concrete remediation steps against Pixel owners that fail to comply with Meta's stated policies. For example, if a developer repeatedly deployed Pixels that trigger the patient data screening system, Meta could disable all Pixels owned by developers who repeatedly violate these policies and ban these developers from creating new Pixels in the future.

18. The remediation steps I propose here are very similar to the strikes system that Meta uses to police content on Facebook and Instagram, i.e., repeated violators of Meta's Community Guidelines face temporary or permanent bans from the platform. Furthermore, Meta represents that it may already block Pixels under certain circumstances,[3] so it clearly has the infrastructure necessary to implement these proposals.

19. In cases where a Pixel or developer is disabled due to policy violations, Meta could delete all data uploaded by the Pixel(s) from within Meta's advertising-related systems. For purposes of this case, Meta could also segregate and store such data separately for use only in this case.

---

[3] https://www.facebook.com/business/help/851247612299604

4

DECLARATION OF CHRISTOPHER "CHRISTO" WILSON IN SUPPORT OF PLAINTIFFS' REPLY TO MOTION FOR PRELIMINARY INJUNCTION (CONSOLIDATED CASE NO. 3:22-CV-03580-WHO)

## IV. CONCLUSION

20. In my expert opinion, I conclude that Meta could reasonably comply with an order consistent with Plaintiffs' filed Motion for Preliminary Injunction. Indeed, the proposals I make above could be carried out by any technology firm with reasonable engineering resources.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 26, 2022, at Boston, Massachusetts.


                                                   */s/ Christopher "Christo" Wilson*
                                                   Christopher "Christo" Wilson


### **CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Jeffrey A. Koncius, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: October 26, 2022                                      */s/ Jeffrey A. Koncius*
                                                                            Jeffrey A. Koncius