UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 22-cv-03580-WHO<br><br>**ORDER APPOINTING INTERIM CLASS COUNSEL**<br><br>Re: Dkt. Nos. 80, 86, 120 |

## INTRODUCTION

There are currently seven cases consolidated before me involving a tracking tool known as the Meta Pixel, through which defendant Meta Platforms, Inc. allegedly receives the health information of millions of Facebook users in the United States. Since I consolidated the cases in October, counsel from nine different firms have sought appointment as interim class counsel in three different motions. All of the applicants are capable and experienced.

For the reasons described below, after considering the motions and the factors set forth in Rule 23(g)(1), I find that the interests of the class would be best served by a leadership team consisting of Jay Barnes of Simmons Hanly Conroy LLC and Geoffrey Graber of Cohen Milstein Sellers & Toll PLLC, as Interim Co-Lead Class Counsel, with Beth Terrell of Terrell Marshall Law Group PLLC, Jeffrey A. Koncius of Kiesel Law LLP, and Andre Mura of Gibbs Law Group on the Executive Committee. This Order explains why and what I expect moving forward.

## BACKGROUND

In June of 2022, plaintiff John Doe (represented by Simmons Hanly and Kiesel Law, among others) brought the first case against Meta arising from the Pixel's alleged interception and transmission of protected health information. *See* Complaint [Dkt. 1]. Beginning in late July and throughout October, other plaintiffs began filing similar cases against Meta and, in some cases,

healthcare providers that allegedly used the Meta Pixel tool. *See, e.g.*, *Jane Doe v. Meta Platforms, Inc., et al.*, No. 22-cv-04293-WHO (N.D. Cal.); *Krackenberger v. Northwestern Memorial Hospital, et al.*, No. 22-cv-04203 (N.D. Ill.); *Doe v. Meta Platforms, Inc.*, No. 22-cv-04680-WHO (N.D. Cal.); *Jane Doe v. Meta Platforms, Inc.*, No. 22-cv-04963-WHO (N.D. Cal.). In total, there are seven cases pending in the Northern District of California alleging Pixel-related claims against Meta that have been assigned to me.

While cases continued to be filed over the summer, plaintiffs in the first-filed case pressed forward. In late July, plaintiffs served discovery requests on Meta, and in August, plaintiffs moved for a preliminary injunction. *See* Simmons Hanly / Cohen Milstein Motion for Appointment of Interim Lead Counsel ("Simmons Cohen Mot.") [Dkt. 80] at 5.

At the end of August, plaintiffs from one of the later-filed cases moved to consolidate all of the related actions against Meta. *Doe v. Meta Platforms, Inc.*, No. 22-cv-04680-WHO (N.D. Cal.); Dkt. 21. In October, I granted the motion to consolidate and set a briefing schedule for the appointment of interim class counsel. *John Doe v. Meta Platforms, Inc.*, No. 22-cv-3580-WHO; Dkt. 73 at 3.

Three sets of law firms have proposed leadership teams for me to consider. The first group asks me to appoint Jay Barnes of Simmons Hanley Conroy and Geoffrey Graber of Cohen Milstein Sellers & Toll as interim co-lead counsel, and to create an executive committee comprised of Beth Terrell of Terrell Marshall Law Group, Jeffrey Koncius of Kiesel Law Group, and Andre Mura of Gibbs Law Group.[1] *See* Simmons Cohen Mot. at 5. Non-moving counsel from two of the consolidated cases filed statements of support for the Simmons Cohen team. *See* Dkt. Nos. 106, 108.

The second group proposes that I appoint two attorneys each from three different law firms as interim co-lead counsel. *See* Motion to Appoint Lowey Dannenberg, Lynch Carpenter, and Lockridge Grindal Nauen as Interim Class Counsel ("Lowey Lynch Lockridge Mot.") [Dkt. 86] at 1. They nominate Margaret MacLean and Amanda Fiorilla of Lowey Dannenberg, Eddie Jae Kim

---

[1] For convenience, I refer to these five firms collectively as "Simmons Cohen."

2

and Hannah Barnett of Lynch Carpenter, and Karen Riebel and Kate Baxter-Kauf of Lockridge Grindal Nauen.[2] *Id.*

Finally, Rebecca Gilliland of Beasley Allen seeks appointment as either a co-lead counsel or to the executive committee. *See* Motion to Appoint Beasley Allen as Interim Class Counsel ("Beasley Allen Mot.") [Dkt. 120] at 2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(g)(3) authorizes courts to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Although Rule 23(g)(3) does not provide a standard for appointment of interim counsel, "courts in this district typically consider the factors set forth in 23(g)(1)." *Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 WL 4932292, at *7 (N.D. Cal. Aug. 18, 2015) (citing *Paraggua v. LinkedIn Corp.*, No. 12-cv-03088-EJD, 2012 WL 3763889, at *1 (N.D. Cal. Aug. 29, 2012)). Under that section, I must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. Proc. 23(g)(1)(A). I may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. Proc. 23(g)(1)(B).

## DISCUSSION

To determine who to appoint as interim class counsel, I begin by analyzing the four mandatory Rule 23(g)(1)(A) factors. Next, I consider other relevant factors under Rule 23(g)(1)(B): namely, the statements of support submitted by other counsel in the consolidated cases, the proposed leadership structure, and diversity.

### I.   RULE 23(g)(1)(A) FACTORS

Although all the moving firms are qualified to lead the consolidated matters, the Rule

---

[2] I refer to these three firms collectively as "Lowey Lynch Lockridge."

3

23(g)(1)(A) factors favor the Simmons Cohen group.

First, the Simmons Cohen group has done the most work to identify and investigate the potential claims. *See* Fed. R. Civ. P. 23(g)(1)(A)(i). In addition to filing the first complaint and moving for a preliminary injunction, the Simmons Cohen group has discussed the preservation and production of relevant information with Meta, propounded written discovery, proposed an expert stipulation, conducted conferences pursuant to Fed. R. Civ. P. Rule 26(f), served initial disclosures, and took the lead at the initial conference. *See* Declaration of Jeffrey Koncius ("Koncius Decl.") [Dkt. 84] ¶ 9; Declaration of Geoffrey Graber ("Graber Decl.") [Dkt. 82] ¶ 14. And as part of the preliminary injunction briefing, counsel worked with a computer expert for weeks to prepare the motion and supporting expert report. Koncius Decl. ¶ 2. Counsel also successfully opposed Meta's efforts to delay the preliminary injunction hearing. *See* Simmons Cohen Opposition ("Simmons Cohen Opp.") [Dkt. 113] at 5.

Second, the Simmons Cohen group has the advantage when it comes to experience and knowledge that is highly relevant to this action. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii). Members of the Simmons Cohen team were the first to sue healthcare providers over their use of the Pixel; since June 2019, the Simmons Cohen group has filed at least eight such cases in state and federal courts across the country. *See* Declaration of Jay Barnes ("Barnes Decl.") [Dkt. 81] ¶ 5. Members of the Simmons Cohen team serve as lead counsel for the already-certified patient class in one of the medical provider cases in Washington. *Id.* ¶ 6. Additionally, attorneys from the Simmons Cohen group held leadership roles in *In re Facebook Internet Tracking Litig.*, 12-md-02314-EJD (N.D. Cal.), which recently settled after more than a decade of litigation. Barnes Decl. ¶ 7; Koncius Decl. ¶ 2. While *Facebook* and the cases brought against medical providers implicate different facts and issues, they are highly pertinent to the present matter. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 596, 601 (9th Cir. 2020) (finding that plaintiffs stated claims for invasion of privacy, intrusion upon seclusion, breach of contract, and claims under the Wiretap Act and CIPA where Facebook allegedly tracked users' browsing histories via plug-ins). The putative class will benefit from the knowledge and experience that Simmons Cohen gained from these cases.

4

1    Finally, the Simmons Cohen group has committed considerable resources towards the
2    litigation. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). Each firm has designated a primary team of
3    attorneys who will work on the case. Simmons Cohen Mot. at 17; *see also* Simmons Cohen Reply
4    [Dkt. 145] at 5–7 (describing the team of associates). The five firms routinely advance the costs
5    of litigation and all expressed their willingness to dedicate substantial resources to the instant case.
6    *See* Graber Decl. ¶ 13; Koncius Decl. ¶ 13; Declaration of Beth Terrell ("Terrell Decl.") [Dkt. 83]
7    ¶ 8; Declaration of Andre Mura ("Mura Decl.") [Dkt. 85] ¶ 2; Barnes Decl. ¶ 9.

8    The other firms seeking appointment have put forward experienced class action and data
9    privacy attorneys who have much to offer this case. For instance, the Lowey Lynch Lockridge
10   group has litigated data privacy cases in this District and in the Third Circuit that may yield useful
11   insight into the instant case. *See* Lowey Lynch Lockridge Mot. at 4–5; Lowey Lynch Lockridge
12   Reply [Dkt. 112] at 3–4. And counsel from Beasley Allen can draw on years of experience
13   litigating against high-profile defendants. Beasley Allen Mot. [Dkt. 120] at 5. My consideration
14   of the Rule 23(g)(1)(A) factors leads me to conclude, though, that the interests of the putative class
15   would best be served by appointing the Simmons Cohen group to be interim class counsel.

16   **II.    RULE 23(g)(1)(B) FACTORS**

17   I turn now to the "other matter[s] pertinent to counsel's ability to fairly and adequately
18   represent the interests of the class" under Rule 23(g)(1)(B). Here, I consider the statements of
19   support issued by non-moving counsel, the relative merits of the different leadership structures,
20   and the diversity of the proposed interim counsel.

21   To start, two of the non-moving firms filed statements of support for the Simmons Cohen
22   leadership team. *See* Dkts. 106; 108. The Morgan & Morgan and the Casey Gerry Schenk
23   Francavilla Blatt & Penfield firms describe the Simmons Cohen team as knowledgeable and
24   experienced, and praise the group for its frank and direct communications. *Id.* These statements
25   merit weight.

26   The leadership structures put forward by Simmons Cohen and Lowey Lynch Lockridge are
27   different. As noted above, the Simmons Cohen group proposes appointing two co-lead interim
28   class counsel and creating a three-member executive committee, whereas the Lowey Lynch

5

1  Lockridge group asks me to appoint six co-lead attorneys from three different firms.  *See*
2  Simmons Cohen Mot. at 1; Lowey Lynch Lockridge Mot. at 1.  Simmons Cohen asserts that their
3  structure is superior because it "is designed to provide clear leadership and effective
4  decisionmaking by the co-leads while ensuring that attorneys with the necessary skills and
5  resources are available to successfully prosecute this case."  Simmons Cohen Reply at 4.  The
6  Simmons Cohen group further maintains that they "know from experience that this matter is not
7  one to be lightly resourced and leanly staffed by only four partners and two associates."  *Id.* at 7.
8  The Lowey Lynch Lockridge group, on the other hand, contends that their proposed leadership
9  structure is superior because it promotes efficiency and will expedite the litigation.  Lowey Lynch
10 Lockridge Mot. at 19–20.  Lowey Lynch Lockridge warns that a "bloated, oversized executive
11 committee" may create "duplication of work product, unnecessary billing, and outrageous
12 lodestar."  *Id.* at 1.

13 As I explained during the hearing, this case is not analogous to multi-district litigation:
14 while Meta is admittedly a high-profile defendant with ample resources, these cases raise similar
15 claims and remain single-defendant matters.  I am not going to mix and match firms or structures:
16 I am going to choose one team.  I am somewhat skeptical that the leadership team necessarily
17 requires five firms, as Simmons Cohen proposes.  But I recognize that this case will likely involve
18 many discrete topics that may be parceled out among firms, and that litigating against Meta in a
19 case this significant will certainly demand a deep bench and substantial resources, which the
20 Simmons Cohen group has.  Assuming that interim class counsel meet their responsibilities to
21 delegate appropriately and carefully monitor and approve time records to avoid  duplication of
22 work product or unnecessary billing, the Simmons Cohen group's proposed structure will offer
23 potential benefits with few disadvantages.

24 Diversity is also a factor that I weigh carefully, as do my colleagues in this District and
25 across the nation.  *See, e.g.*, *In re JUUL Labs, Inc. Marketing, Sales Practices and Products*
26 *Liability Litig.*, No. 19-md-02913 (N.D. Cal.), Dkt. 821 at 16:3-5 ("I'd like to see what your
27 suggestions are as far as leadership, who are the people who are going to be responsible in a way
28 that enhances the strengths you have in diversity"); *In re Stubhub Refund Litig.*, No. 20-md-

6

02951-HSG, 2020 WL 8669823, at *1 (appointing as co-lead interim counsel applicants who "demonstrated careful attention to creating a diverse team"); *In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 WL 7330596, at *2 (noting the need for diversity and how "the attorneys running this litigation should reflect the diversity of the proposed national class"); *Sayce v. Forescout Technologies, Inc.*, No. 20-cv-00076-SI, 2020 WL 6802469, at *9 (N.D. Cal. Nov. 19, 2020) (noting "the apparent lack of diversity, including by female lawyers" among co-lead counsel and "strongly urg[ing] all parties to this case to make meaningful litigation opportunities available to junior and underrepresented lawyers throughout the pendency of this action") (emphasis omitted). It matters to me that lawyers from groups that have been historically underrepresented in the legal profession have meaningful opportunities to participate in this type of litigation.

Without doubt, the Lowey Lynch Lockridge team is more diverse in terms of gender, race, experience, and age. There is a meaningful difference between having an underrepresented attorney serve in a behind-the-scenes role and seeking to have such an attorney appointed as co-lead counsel. I commend the Lowey Lynch Lockridge group for assembling such a diverse group of counsel. The Simmons Cohen leadership group is somewhat diverse and has identified an array of diverse attorneys to whom it has commited to delegate significant work. Had my analysis of the Rule 23(g)(1)(A) factors come out differently, Lowey Lynch Lockridge's focus on diversity may well have put that group over the top. But the factors are not equal, and I will not emphasize diversity to the exclusion of my analysis of the other Rule 23(g)(1) factors.

My analysis of the "other matter[s]" under Rule 23(g)(1)(B) tilts in favor of appointing the Simmons Cohen group, as do the Rule 23(g)(1)(B) factors. Accordingly, I appoint Jay Barnes of Simmons Hanly Conroy LLC and Geoffrey Graber of Cohen Milstein Sellers & Toll PLLC as Interim Co-Lead Class Counsel, and Beth Terrell of Terrell Marshall Law Group PLLC, Jeffrey A. Koncius of Kiesel Law LLP, and Andre Mura of Gibbs Law Group as members of the Executive Committee.

## OBLIGATIONS

It should go without saying that I expect the highest level of professionalism, courtesy and collaboration from any lawyer appearing in cases before me. But as an issue was raised in the

briefing of a perhaps misunderstood comment from a lawyer that falls below that standard, I reiterate my expectations for all counsel involved in this case. And interim means interim: I will not hesitate to replace lawyers in the leadership group who do not comply with the standards I expect.

In general, Interim Co-Lead Counsel are responsible for coordinating the activities of plaintiffs during the pretrial proceedings. They shall, among other duties as are necessary for effective and efficient coordination of plaintiffs' pretrial activities:

- Coordinate the scheduling and conduct of discovery on behalf of plaintiffs consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(2), and 26(g), as well as the preparation of protocols for discovery and the development of platforms to allow for equitable and efficient use of discovery;
- Suggest, in consultation with Meta, the ordering, priority and response to pending and anticipated motions;
- Conduct settlement negotiations on behalf of plaintiffs but not enter binding agreements except to the extent expressly authorized;
- Delegate specific tasks to other counsel in a manner that ensures that pretrial preparation for the plaintiffs is conducted efficiently and effectively;
- Enter into stipulations with opposing counsel as necessary for the conduct of the litigation;
- Prepare and distribute periodic status reports to me and the parties;
- Monitor time and expenses of all plaintiffs' counsel to ensure that the litigation moves forward expeditiously while avoiding unnecessary expenditures of time and funds. In this regard, Interim Co-Lead Counsel shall familiarize themselves with the timekeeping and expenses protocol I am utilizing in *In Re Juul Labs, Inc., Marketing, Sales Practices and Products Liability Litigation*, 19-md-2913-WHO (N.D. Cal.), Dkts. 352, 381, 1202 and 2307. I will apply the expense reimbursement requirements adopted there if plaintiffs are entitled to costs in this case. I have found the timekeeping protocols helpful and suggest that they, or something consistent with them, be followed in this case for submission to me if plaintiffs are entitled to fees in this case.

- File *ex parte* a diversity report on a quarterly basis as described in the last paragraph of the Third Amendment To Case Management Order No. 5 in *In Re Juul Labs, Inc., Marketing, Sales Practices and Products Liability Litigation*, 19-md-2913-WHO (N.D. Cal.), Dkt. 2307.

The appointment to Interim Co-Lead Counsel and Executive Committee is a personal appointment. The appointees cannot be substituted by other attorneys, including members of the appointee's law firm, except with my prior approval.

## CONCLUSION

For the foregoing reasons, I **GRANT** Simmons Cohen's motion for appointment as interim class counsel and **APPOINT** interim class counsel as indicated above. A Case Management Conference is set for January 17, 2023, at 2 p.m. The Joint Case Management Statement, due January 10, 2023, should address any matters that may help this litigation to proceed expeditiously and efficiently. If Interim Co-Lead Class Counsel wish to suggest any deviations from the timekeeping and expense protocols discussed above, they should do so as an Addendum to the Joint Statement.

**IT IS SO ORDERED.**

Dated: December 21, 2022



William H. Orrick
United States District Judge