Pages 1 - 19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK

IN RE META PIXEL HEALTHCARE        )
LITIGATION,                        )  No. C 22-3580 WHO
                                   )
                                   )  San Francisco, California
                                   )  Wednesday
                                   )  December 14, 2022
_____    )  2:00 p.m.

**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES**:

**For Plaintiffs:**        LYNCH CARPENTER, LLP
                          117 E. Colorado Boulevard
                          Suite 600
                          Pasadena, California 91105
                   BY:  **EDDIE JAE KIM, ESQ.**


                          LYNCH CARPENTER, LLP
                          1133 Penn Avenue
                          5th Floor
                          Pittsburgh, Pennsylvania 15222
                   BY:  **HANNAH N. BARNETT, ESQ.**


                          COHEN MILSTEIN SELLERS & TOLL, PLLC
                          1100 New York Avenue NW
                          Suite 500, West Tower
                          Washington, DC 20005
                   BY:  **GEOFFREY A. GRABER, ESQ.**


        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Reported By:    *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                *Official Reporter - US District Court*
                *Computerized Transcription By Eclipse*

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

**APPEARANCES:   (CONTINUED)**

**For Plaintiffs:**        SIMMONS HANLY CONROY, LLC
                           112 Madison Avenue
                           7th Floor
                           New York, New York 10016
                     BY:   **JAY BARNES, ESQ.**


                           LOWEY DANNENBERG, PC
                           44 South Broadway
                           Suite 1100
                           White Plains, New York 10601
                     BY:   **MARGARET C. MACLEAN, ESQ.**
                           **AMANDA G. FIORILLA, ESQ.**


                           LOCKRIDGE GRINDAL NAUEN, PLLP
                           100 Washington Avenue South
                           Suite 2200
                           Minneapolis, Minnesota 55401
                     BY:   **KATE BAXTER-KAUF, ESQ.**


                           BEASLEY ALLEN CROW METHVIN PORTIS &
                             MILES, PC
                           272 Commerce Street
                           Montgomery, Alabama 36104
                     BY:   **REBECCA D. GILLILAND, ESQ.**


                           TERRELL MARSHALL LAW GROUP, PLLC
                           936 North 34th Street
                           Suite 300
                           Seattle, Washington 98103
                     BY:   **BETH E. TERRELL, ESQ.**


                           GIBBS LAW GROUP, LLP
                           1111 Broadway
                           Suite 2100
                           Oakland, California 94607
                     BY:   **ANDRE MURA, ESQ.**



                 **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

**APPEARANCES:   (CONTINUED)**


For Plaintiffs:          KIESEL LAW, LLP
                         8648 Wilshire Boulevard
                         Beverly Hills, California 90211
                    BY:  **JEFFREY KONCIUS, ESQ.**


For Defendant:           GIBSON DUNN & CRUTCHER, LLP
                         200 Park Avenue
                         New York, New York 10166
                    BY:  **LAUREN R. GOLDMAN, ESQ.**


                              _   _   _

**Wednesday - December 14, 2022**                    **2:48 p.m.**

                    **P R O C E E D I N G S**

                         ---oOo---

THE CLERK:  So we will get started of in the Doe versus Meta Platform cases.  That is lead Case No. 22-3580.

And, counsel, if you would please state your appearance for the record.

MR. KIM:  Hi.  My name is Eddie Jae Kim from the law firm of Lynch Carpenter on behalf of Plaintiff Smidga and representing the Lowey, Lynch, Lockridge group.

MR. GRABER:  Good afternoon, Your Honor.  Geoffrey Graber from Cohen Milstein on behalf of Plaintiff Doe and proposed interim counsel team.

MR. BARNES:  Good afternoon, Your Honor.  J. Barnes from Simmons Hanly Conroy on behalf of Plaintiff Doe and the team suggested by Mr. Graber.

MS. MACLEAN:  Good afternoon, Your Honor.  Margaret MacLean from Lowey Dannenberg on behalf of Plaintiff Jane Doe and the Lowey, Lynch, Lockridge group.

MS. FIORILLA:  Hello, Your Honor.  Amanda Fiorilla, also from Lowey Dannenberg, in support of the Lowey, Lynch, Lockridge group.

MS. BAXTER-KAUF:  Good afternoon, Your Honor.  I'm Kate Baxter-Kauf from Lockridge Grindal Nauen, also with the Lowey, Lynch, Lockridge group.

**MS. HARNETT:** Good afternoon, Your Honor. Hannah Barnett, also with Lynch Carpenter in the Lowey, Lynch, Lockridge.

**MS. GILLILAND:** Good afternoon, Your Honor. Rebecca Gilliland from Beasley Allen.

**MS. GOLDMAN:** Good afternoon, Your Honor. Lauren Goldman for defendant Meta.

**THE COURT:** Okay. Good afternoon.

**MR. MURA:** Good afternoon, Your Honor. Andre Mura from Gibbs Law Group.

**MS. TERRELL:** And good afternoon, Your Honor. Beth Terrell, Terrell Marshall Law Group, with Simmons Hanly Conroy and Cohen Milstein.

**MR. KONCIUS:** And I think I'm in the caboose, Your Honor. Good afternoon. Jeffrey Koncius, K-O-N-C-I-U-S, from Kiesel Law on behalf of plaintiffs in the Doe matter with the Cohen Milstein group.

**THE COURT:** All right. Good afternoon everybody.

I'm always -- when I do these counsel selections, I'm always very impressed by the skills that everybody presents, the experience that they have, and this is no exception.

I look at this these cases differently than selecting counsel in an MDL for several reasons, but I -- I do basically look at the teams that are proposed because I figure you all have your own relationships and have figured out how best to

proceed.  So I am looking at those teams.

So then I look at the factors in Rule 23(g)(1)(A).  And so I'm going to give you my tentative view.  I'll hear from you, but I'm going to have some questions.

I do think with respect to those factors, the work investigating, the experience in similar cases, knowledge of the law and resources, while both of the teams have good points, I think the Simmons Cohen group has the upper hand in all of those factors.  And I am also aware of and appreciate the support of the uninvolved firms that also supported that team.

I'm going to -- I have some questions for either Mr. Barnes or Mr. Graber.  I don't -- I'm not sure about the structure that you are proposing.  Tell me -- tell me why you've chosen it and how it's -- how it's going to work effectively for the class if you are appointed.

**MR. GRABER:**  Good afternoon, Your Honor.  I can address that and my co-counsel, Mr. Barnes, might have had some further thoughts on that.

Your Honor, I think the Court is right.  This is not like an MDL where you have, you know, vast case -- you know, constellation of cases involving, you know, personal injury and class action.  It's not like the *Juul* case.  This is against, you know, one defendant.

So it's important to strike the right balance between

experience and efficiencies, and we had extensive conversations among ourselves and, quite frankly, with all counsel present here today, and after all those discussions we believe that our team strikes the right balance.

We have, you know, counsel who have litigated against Meta before.  That would -- you know, and are litigating right now against Meta.  That would include, for example, Cohen Milstein and my team as well as Mr. Mura.  We litigated together against Meta in the *Video Metrics* case.

Mr. Barnes, his team, Jeffrey Koncius have litigated these types of cases extensively in the past and are currently litigating these types of cases.  And Beth Terrell brings a wealth of experience.

And we think that, you know, this team in the current structure provides the right balance to prosecute the case.

I'm happy to talk in more detail about our thoughts on it. Of course, there has been no appointment, but, you know, we think we have the right team to, you know, brief the motions. There will be complicated areas of law.  To aggressively litigate this on the discovery.

Intent would be an issue and, therefore, it needs to be -- it's -- this is not going to be a -- you know, a case -- an open-and-shut case.  You know, we're going to have to conduct extensive discovery and we have the resources and the right people to do that.

And there's going to be what lot of expert work, and we have the right people to handle that as well.

So I'm happy to address this question, you know, in further detail if the Court would like or if -- or perhaps Mr. Barnes could address the matter further.

**THE COURT:**  Go ahead, Mr. Barnes.  And maybe you can answer the question of why five firms are necessary to attack this case.

**MR. BARNES:**  Thank you, Your Honor.

And I think for a number of reasons.

One, this is going to be a large case.  We would expect very large document productions.  We also -- because we have identified over 600 hospital properties across the internet where this is occurring.  That's going to be a large discovery undertaking.

We also know that these back-end systems for companies like Facebook are complicated.  I've spent a decade litigating these cases, including a decade litigating a case against Facebook that involves some discovery into back-end systems and how data flows through these systems, as well as cases against Google that involve these data flows.  And those are not issues that lend themselves well to a one, two or three-lawyer approach.

It's no -- there's no surprise that Meta is well resourced.  Ms. Goldman and Mr. Rhodes, I have litigated the

other case against them for 11 years.  They are very capable. And so I think the five makes sense.

And the way I think about these cases and how they've worked is there are some areas of discovery that are pretty -- they are large, but discrete.  So, for example, the data flow in technology is a discovery area that it makes sense to put one person in charge of that being overseen by an executive committee.

The consent issues is another discovery area, that it makes sense to have somebody dedicated to that one issue.

Damages issues are another category of discovery that I've seen.

Making those assignments to make sure you are on top of everything and litigating the case efficiently and quickly on behalf of the class requires having multiple people making sure you're pushing forward on discovery.

**THE COURT:**  Okay.  All right.  Well, so the one area where -- so I've told you the -- where I think you're ahead on -- with respect to the factors and something I care a lot about is diversity.  And your team is certainly not as diverse as the Lowey Dannenberg team.

So tell me what commitment you would be making with respect to the inclusion of women and other -- the whole, the entire array of diversity when it comes to litigating this case.

**MR. GRABER:**  Your Honor, I can address that initially.

You know, we put together a diverse team.  We have a deep bench in terms of substantive experience.  And we have a diverse and inclusive team of attorneys from historically underrepresented backgrounds, varying levels of experience, and prior roles played in different geographic locations playing, you know, important roles.

Our team consists of female attorneys, attorneys of color and LGBT.  So, you know, I think that we have a diverse team all around.

I don't know if my co-counsel, Mr. Barnes, would like to further address it.

**MR. BARNES:**  Yes.  Thank you, Mr.Graber.

Your Honor, I think that to your question, we've already demonstrated that at least in one way, I think, we were there at the motion for a preliminary injunction.

Ms. Terrell and I have co-counseled together on a number of different cases, and it's not an accident that we've co-counseled together because she's a fabulous lawyer and. That's why when you asked about how are you going to ensure diversity and actual diverse experience in litigating this case, you saw it at the very first hearing, where the division of responsibility for the motion for preliminary injunction was divided between myself and Ms. Terrell.  And whatever happens

in the motion, I think we did a great job.  I think Ms. Terrell did a fantastic job.  And that's what you're going to continue to see from us for the rest of the case.

THE COURT:  Are you committing to use -- you've added on, I think, in your reply a nice long list of diverse-sounding individuals who would be working on this case.  Are you committing to that those people are going to be significantly involved in the litigation of this matter?

MR. BARNES:  Absolutely.  Yes, Your Honor.

MS. TERRELL:  And, Your Honor, could I speak up just briefly?

THE COURT:  Please.

MS. TERRELL:  So I've enjoined working very much with Jay and members of his firm on a number of different cases, including this one.

So I'm a named partner at a 15-attorney law firm in Seattle.  95 percent of my attorneys are female, and about 98 percent of my staff is female.

I've also been involved in a lot of non-profit board work, as I mentioned in my presentation.  And I have been involved in sometimes aggressively ensuring that organizations and firms deepen their diversity across the board.

And so although I don't have any concern about whether Mr. Barnes or Mr. Graber or the other members of our team are likewise committed, I certainly have been, and I'm certainly no

shrinking violet when it comes to those issues.

I've worked with a number of the women and other individuals that we referenced in our reply brief, and they are not just there as tokens.  Those are very good lawyers, who do have less experience than the other -- than some of us here, but they know this area of law.  They are good lawyers.  They are dedicated to this case, and we're going to make good use of them, and then they can be the folks who are maybe arguing motions like this in five to seven years.  That would be our hope.

**THE COURT:**  All right.  So let me turn to the Lower Dannenberg, whoever is going to be the lead speaker for that.

Mr. Kim.  And take on the factors in a collegial and polite way.  Tell me why you're better than the -- why you're better than the Simmons Cohen group.

**MR. COHEN:**  Sure, sure.  Good afternoon, Your Honor.  My name is Eddie J. Kim from Lynch Carpenter.  I'm a California attorney based out in Pasadena.  I have been practicing for 18 years and a significant portion of that has been in the Northern District of California here.

And I'd like to touch on a few of the specific points Your Honor mentioned.

The first thing is that, as everyone has acknowledged, this isn't an MDL.  It's a single class action case.  And as such, we don't think it's necessary to have a very substantial,

large leadership group in this type of case.

All of the three firms in our group, we have a great deal of experience working with just one or two other firms in single defendant class action cases, including a very large one that resulted in multi -- you know, $100 million verdicts or settlements.

So we do think that our group is by far more streamlined in terms of having just the three firms; appointing three more experienced attorneys, three lesser experienced attorneys, and having it where you don't duplicate the work, where we have appropriate level billing for -- based on the nature of the work.

In terms of the experience, we think that we have as much of a leg up on the experience level as the other group. We have the -- we have -- the Lowey Dannenberg firm is working on the *Frasco versus Flo Health* case, which is almost an identical case as this case. It's much further along. It's through discovery. They are dealing with exactly the same legal and technical issues that are involved in this case, have had experts in place, have already explored issues regarding Meta's filtration system. So they are the firm here that has experience directly litigating against Meta in this case.

I will also mention, my own firm, we have a significant Third Circuit ruling in the case *Kopa versus Harry Reid Gifts*, where it involves the same thing. It's scraping --

intercepting data when customers use a retail website and using third party-scripting and for them to be able to reconstruct and replay the customer's use of the website. So we got a ruling that that violates the wiretap rule. So we think that the collective experience that our group brings is at least as equal.

And in terms of diversity, I guess I don't know how much I need to state the obvious, but there is a meaningful difference between having diverse people participating in a lawsuit versus having diverse people actually receiving appointments in cases like this.

I know Your Honor, based on your prior orders, have been very cognizant of the fact of the lack of diversity. And let me just say, I flew up here for the preliminary injunction hearing, and I genuinely meant it when I spoke with Jay Barnes and Beth Terrell afterwards and congratulated them on a really nice job in their presentation, and I know that sentiment is shared by our entire group.

Certainly, we can appreciate, you know, Mr. Barnes being up there with a fantastic female attorney, Ms. Terrell, and with the coordinators.

But, you know, just to state the obvious, our group of six people, two from each firm, we're talking about a group of six people, where five of them are women. Where we are from the east coast, the midwest and the west coast. Where we have a

large age difference, a large range of age differences.  And we include people of color.  Both myself and Ms. Barnett are from Lynch Carpenter.

So I think there is a meaningful difference to that.  And, you know, I don't think I need to belabor the obvious points you already know.

**THE COURT:**  All right.  So who is it that -- who is from Beasley Allen?

**MS. GILLILAND:**  That's me, Your Honor.  Rebecca Gilliland.

**THE COURT:**  Let's see.  Oh, there you are.  Okay.

What would you like to add to this conversation?

**MS. GILLILAND:**  Your Honor, I just wanted to start by thanking everybody for letting us participate today.  We recognize that we were a little bit late in filing and joining -- you know, coming to the table, I would say.

So before we filed our motion for leadership, we did actually speak with someone from both slates, because we didn't think it was appropriate to ask them amend.

So I don't think the fact that we are not currently included in one of the slates that's before the Court means that we should automatically be excluded.

So I wanted to point out that both counsel from the different slates have mentioned certain factors that they think favor them or that they think are lacking in the other side,

but I think my firm, and myself personally, tick off all of those.

For one, Mr. Kim just noted that they come from the east coast, the west coast and the midwest.  Well, I'm from the south.  So nobody has anybody from the south.  I do say "you all," so I'm sorry.  You just kind of have to deal -- I don't have an accent, but I do say "you all."

And then I wanted to add that we certainly have the leadership experience.  I personally -- this will be my first appointment.  So I personally have the time to devote to be individually involved in this litigation.

I have class action trial experience.  We recently took a class to trial and received a jury verdict in front of Judge Chen in the Northern District of California.  I did handle a large portion of the briefing, the arguing and taking witnesses live at trial.  So I personally have the experience to add to this.

And I do think Your Honor is familiar with our firm as well.  Mr. Joseph Van Zandt, for example, I know he has been before Your Honor in the *Juul* case quite a bit, but he also was just appointed to a PSC leadership position in the *In Re Social Media* case, which does not relate to the *Meta Pixel*, but obviously it's involving some of the same defendants.

So I do think that my firm not only brings the experience, I bring the diversity that one slate or the other is missing

either from a gender position or from a regional position.

And I also bring the fact that I'm a brand new first time appointment of leadership. I do have extensive experience working on multi district litigation and class actions. I have the full support of a very large firm that is behind me fully, not only in helping manage the voluminous records that we're expecting in this case, but also just the workload generally. I have personally managed document review products with, you know, 12-, 15-, 20 million documents, some of them thousand pages.

So I do bring experience to the table. I can certainly add to the efficiency.

I am a prior defense attorney, so working 200-something hours a month is not new to me. I'm very familiar with billing practices, and I'll make sure everybody stays on top of that and does that correctly.

So I do think we bring a lot to the table. I think that we would be a great addition to either slate. We don't take a position on who is going to satisfy the requirements better. I think both teams are certainly capable. We're really just looking forward to the opportunity to work with everybody.

**THE COURT:** All right. Thank you all very much.

So I'll tell you -- I'm not going to decide this right now. I'm going to just sit on it a night or two, but then I'll get an order out, I think, within the week.

What matters to me, I just told you one thing. Besides the skill that you bring to the table and the 23(g)(1)(A) factors, as I think I've made clear, diversity matters a lot. I will require whoever I appoint to report on diversity, what the hours are, the people and the tasks that people are doing, and I'll probably ask for a quarterly report on that.

I'm obviously -- as with any case, I will be requiring that the lead counsel or the co-lead counsel monitor the time records. Sign off on who is doing what. Sign off on the time that's being -- that somebody wants to bill to the task to make sure that the billing is reasonable and efficient.

I care a ton about collaboration and civility. And there was a stray comment that fell below what I'm interested in hearing for the rest of the case in the briefing. I want -- between plaintiff's counsel, with plaintiffs and the defendants, I expect just the highest levels of professionalism, and it really bothers me when things fall below that. So that matters. And I care also about efficiency.

So when I shoot out the order, I will list the things that I'm looking for, and I will -- if I choose the Lowey Dannenberg team, you have three different firms, and I'll just require the leads to do those things.

If I choose the Simmons Cohen group, I would just have Mr. Barnes and Mr. Graber be responsible for it. And then

you'd have to take responsibility for the executive committee members doing what they need to do with respect to their firms.

And Ms. Gilliland, I don't know what to do with you.  So I'm going to let that be the -- see what happens as the case moves forward.

**MS. GILLILAND:**  I hear that a lot, Your Honor.

**THE COURT:**  So, but I appreciate your presentation.

So I will -- I'll get something out shortly.  And then this case needs to proceed.

And, Ms. Goldman, I know, is ready to negotiate all of the things and provide all of the discovery that is necessary to move this case right along.

**MS. GOLDMAN:**  There may be a Motion to Dismiss first, Your Honor.  We'll see.

**THE COURT:**  Maybe.  But I am expecting that the same kind of collaboration and civility and professionalism that I was just describing to everybody else on the screen to go double for -- for the representation of Meta.

**MS. GOLDMAN:**  Of course, Your Honor.  Thank you.

**THE COURT:**  Thank you all very much.

(Proceedings adjourned.)

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, January 13, 2023