May 1, 2023

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

    Re: *In re Meta Pixel Healthcare Litigation*, **Case No. 22-cv-03580-WHO (VKD)**

Dear Judge DeMarchi,

  Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

  **A.** **STATEMENT OF THE DISPUTE**

  The Healthcare Plaintiffs ("Plaintiffs") and Meta (collectively, the "parties") present three discovery disputes to the Court for resolution regarding Meta's discovery responses to Plaintiffs' Requests for Production and Interrogatories.

  This letter addresses the first of those three disputes: What is the appropriate time period for Meta's discovery responses to Plaintiffs' Requests for Production and Interrogatories?

  **B.** **PLAINTIFFS' POSITION**

***The Court Should Order Meta to Produce Documents Created on or After April 14, 2014 and Respond to Interrogatories for This Time Period***

  The Parties have reached impasse regarding the appropriate time period for Meta's discovery responses. Plaintiffs' position is that Meta should produce documents created or modified on or after April 14, 2014 and respond to interrogatories based on information from that time period.

  Meta objected to the time period for all of Plaintiffs' Requests for Production and Interrogatories and refused to produce documents created before April 1, 2018 or after February 21, 2023. *See* Exs. 1*;*2 Plaintiffs' First Set of RFPS & Rogs; Exs. 3;4 Meta's Objections. Meta has stood on that objection with one minor exception: Meta is willing to produce some "event data" through April 1, 2023. For its proposed front-end cutoff of April 1, 2018, *Meta has never compromised.*

  An April 1, 2018 cutoff is not appropriate for this matter. Because the Meta Pixel began being placed on websites on or around October 14, 2015, Plaintiffs' putative class includes Facebook users whose information was intercepted since approximately October 14, 2015.[1]

---

[1] *See* https://developers.facebook.com/ads/blog/post/v2/2015/10/14/announcing-facebook-pixel/

1

Plaintiffs seek documents beginning at a reasonable time period (18 months) before the Meta Pixel was launched.

Pre-April 2018 documents will provide important evidence of the intent, knowledge, and willfulness elements of Plaintiffs' claims. *See, e.g.*, Consolidated Class Complaint, ECF No. ¶ 335 (alleging violation of Electronic Communications Privacy Act because Meta "intentionally intercepted electronic communications"); ¶¶ 365-366 (alleging violation of California Invasion of Privacy Act because Meta acting "willfully"); ¶ 469 (alleging violation of California Comprehensive Computer Data Access and Fraud Act because Meta acted "knowingly"). Meta's early conversations regarding the use of the Pixel on healthcare websites and applications are highly relevant to Meta's knowledge and intent to intercept class members' health information.

Meta's back-end cutoff of February 21, 2023 is also inappropriate. Plaintiffs seek injunctive relief to stop Meta's ongoing interception of class members' health information. Plaintiffs moved for a preliminary injunction, which was denied (without prejudice) so that Plaintiffs could seek discovery on Meta's ongoing practices. *See* Order Denying Preliminary Injunction, ECF No. 159 at 11; 32-33. Under these circumstances, an arbitrary cutoff of February 21, 2023 will be prejudicial to Plaintiffs.

Instead of setting the final deadline for the discovery time period now, Plaintiffs propose a compromise: Meta's first collection will include documents created or modified from April 14, 2014 to April 28, 2023 (the date of this filing). Later in the litigation, the parties should confer about the scope and timing of the productions of documents created after April 28, 2023 as discovery clarifies the relevant scope of post-April 2023 documents.

### 1. *April 14, 2014 Is an Appropriate Start Date for the Discovery Time Period*

Plaintiffs propose April 14, 2014 as the start date for discovery. This is 18 months before the Pixel was deployed on or about October 14, 2015.[2] Because of Plaintiffs' tolling allegations, the class period starts around October 14, 2015 (the date the Pixel was deployed). *See* ECF No. 185 at ¶¶ 281-285. Imposing Meta's April 1, 2018 cutoff would deprive class members whose claims arose from October 2015 to April 2018 of discovery from the time their claims arose.

Plaintiffs' approach is appropriate. Courts routinely order discovery periods to begin three or four years prior to the start of the class period. *See e.g., In re Toyota Motor Corp. Secs. Litig.*, No. CV 10–922 DSF (AJWx), 2012 WL 3791716, at *2-3 (C.D. Cal. Mar. 12, 2012) (ordering that the applicable time period for discovery begin more than four years prior to beginning on class period); *Zamora v. D'Arrigo Bros. Co. of Cal.*, No. C04-00047 JW (HRL), 2006 WL 931728, at *1 (N.D. Cal. Apr. 11, 2006) (3-year pre-class discovery period was appropriate to establish background evidence)**.**

Even putting aside Plaintiffs' tolling allegations, the Court should order the discovery time period to begin in April 2014 because pre-class period discovery is highly relevant to the scienter, intent, and knowledge elements of Plaintiffs' claims. Courts in the Ninth Circuit have "repeatedly" ordered discovery to begin before the class period where like here, "scienter, intent, and

---

[2] *See* note 1.

knowledge" are at issue. *Toyota Motor Corp. Secs. Litig.*, 2012 WL 3791716, at *4 ("[C]ommon sense dictates that facts relevant to scienter will ordinarily date before any alleged misrepresentations.") (internal citations omitted). Meta's intent, knowledge, or willfulness in intercepting class health information is relevant to many of Plaintiffs' claims, including claims under the Electronic Communications Privacy Act, the California Invasion of Privacy Act, and California Comprehensive Computer Data Access and Fraud Act. *See* ECF No. 185 at ¶¶ 335; 365-366; 469.

Meta's early conversations, both internal and with health providers, regarding the use of the Pixel on healthcare websites and applications are highly relevant to Meta's knowledge and intent to intercept class members' health information. For example, Meta's communications regarding the use of the Pixel on healthcare websites prior to the launch of the Pixel will shed light on whether Meta intended to intercept class members' health information. Meta's initial marketing of the Pixel to healthcare advertisers will be similarly relevant. Meta and healthcare providers or developers are also likely to have had substantive conversations about appropriate uses of the Pixel on or before the time the Pixel was initially set up on their websites. Plaintiffs will not have access to any of these conversations if Meta's April 1, 2018 cut-off is imposed.

Discussions regarding the development and design of the Pixel are also relevant to intent and knowledge. For instance, Meta may have considered multiple designs for the Pixel, and ultimately made choices that reflect knowledge or intent that the Pixel would transmit sensitive health information to Meta. Furthermore, when it was originally designed, the Pixel likely went through a multi-level review and approval process that will provide additional relevant evidence of Meta's knowledge or intent.

Because pre-class period discovery is "otherwise relevant to the issues in the case," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) supports Plaintiffs' position.

Finally, Meta repeatedly portrays Plaintiffs' claims as narrower than alleged in the Consolidated Complaint. But Plaintiffs' claims are neither legally limited to a breach of contract claim nor factually limited to the "SubscribedButtonClick" event. Plaintiffs have alleged 12 other causes of action and identified health data (beyond the "SubscribedButtonClick" event) that was transmitted to Meta. *See e.g,.* Dkt. 185 at ¶ 79-(a),(c-h), ¶81(a),(c-h).

### 2. Meta's Ongoing Conduct is Relevant and Thus Meta's Discovery Obligations Cannot be Cut Off at February 21, 2023

As Judge Orrick has previously recognized, discovery involving Meta's ongoing conduct is critical to Plaintiffs' injunction remedy, either in the form of a second motion for a preliminary injunction or the ultimate permanent injunction remedy. As Judge Orrick stated at the hearing "My decision to deny the pending motion is based on . . . the need for discovery to clarify both the scope of the problems and potential solutions . . ." ECF No. 159 at 11. Judge Orrick denied Plaintiffs' motion for a preliminary injunction without prejudice, anticipating that Plaintiffs would seek discovery on Meta's ongoing practices. *See* ECF No. 159 at 11; 32-33.

For example, Judge Orrick noted that Plaintiffs' discovery regarding Meta's filtration systems may cause "the balance of the equities" to "tilt in favor of an injunction." *Id.* at 32. Judge

Orrick specifically noted that he "expect[s] Meta to continue to refine its filtration systems to address the issues raised by this case." *Id.* And, Meta put its ongoing changes to its filtration systems in-issue by providing a declaration asserting it is "currently working on additional measures with the goal of blocking the kinds of data at issue in this case." *See id*. at 32, fn. 18.

But, under Meta's proposal, other than certain unspecified event-data, Plaintiffs will not gain any discovery regarding Meta's health filter or any other issues after February 21, 2023. This will prejudice Plaintiffs in pursuing injunctive relief for the class. Furthermore, because Meta's practices are ongoing, Plaintiffs seek discovery after February 21, 2023 to support the claims of class members whose health data was intercepted after that date. *See Allen v. Similasan Corp.*, No. 12-cv-376–BTM (JLB), 2014 WL 1672594, at *2 (S.D. Cal. Apr. 28, 2014) (discovery until the present day was relevant where Plaintiffs alleged Defendant's conduct was ongoing).

Finally, Plaintiffs are cognizant of the Court's guidance that there must be a cut-off date for document collection. 4/20/23 Hearing Transcript at 118:6-7; 119:7-8. However, instead of setting the final deadline now, Plaintiffs propose a compromise: Meta's first collection will include documents created or modified from April 14, 2014 to April 28, 2023 (the date of this filing). Later in the litigation, the parties should confer about the scope and timing of the productions of documents created after April 28, 2023 as discovery clarifies the relevant scope of post-April 2023 documents.

### C. META'S POSITION

At the April 20, 2023 discovery conference, this Court recognized that determining the appropriate discovery time period requires a "nuanced discussion," and encouraged the parties to continue negotiating. Despite Meta's efforts to propose a reasonable compromise, the parties are at an impasse.

Meta's proposed discovery start date is April 1, 2018, a date that tracks Plaintiffs' own allegations. The first claim in the Consolidated Complaint, for breach of contract, is premised on the assertion that Meta amended its contractual policies in April 2018 and added a statement that "did not exist prior to" that point requiring that third party developers have the "lawful right[]" to collect and transmit data to Meta. *See* ¶¶ 112, 300 & n.52.[3] Importantly, there is *no allegation* in the Consolidated Complaint regarding specific conduct that occurred prior to 2018, with the sole exception of the observation that Meta was subject to a 2011 FTC Consent Decree unrelated to this case. ¶¶ 259–61. As for the discovery end date, Meta has proposed that custodial discovery, *i.e.*, documents and communications belonging to identified custodians, end on the date the Consolidated Complaint was filed, and for "event data" discovery, *i.e.*, non-custodial data that Meta received from web developers via the Pixel, on April 1, 2023.

In their initial discovery requests, Plaintiffs asserted that the relevant time period "for all areas of inquiry" should run "from the date when Meta released the Meta Pixel," and that Meta should also be required to locate and produce all documents "created outside of the time period" that relate to practices or documents created during the relevant time period. *See* Ex. 1 at 7. More

---

[3] All paragraph citations in Meta's section are to the Consolidated Complaint unless otherwise specified.

4

recently, Plaintiffs have expanded that period even further. Now, Plaintiffs say the relevant time period for all their requests should extend back *18 months prior* to the Pixel's 2015 release—*i.e.*, they are requesting that Meta produce documents for an approximately nine-year period. And that time period should continue, Plaintiffs say, indefinitely into the future, such that Meta is under a continuing obligation to produce documents with no discernable cutoff date.

After Plaintiffs rejected Meta's proposal that discovery run through the filing of the Consolidated Complaint, Meta offered a compromise. Under Meta's compromise proposal, while the end date for custodial data would remain the date of the Consolidated Complaint, the end date for event data would run to April 1, 2023. Plaintiffs have refused to engage in a discussion about this compromise.

The Court should adopt Meta's proposal because it is reasonable, proportionate, and tethered to Plaintiffs' own allegations in the Consolidated Complaint.

***Discovery Start Date.*** Plaintiffs assert that there are class members whose claims arose prior to April 1, 2018. But there are no allegations in the Consolidated Complaint to support this claim. Even for the named Plaintiffs, the Consolidated Complaint fails to include the dates they allegedly accessed the patient portals at issue. ¶¶ 24–28.

Plaintiffs also speculated during a recent meet and confer that there might be "discussions around what type of data Meta wants and doesn't want during the lead up to release of the Pixel." But Plaintiffs' own technical expert declared that the Pixel functionality that forms the basis of Plaintiffs' Complaint—the "SubscribedButtonClick" event—was not added until *May 2017*. *See* Dkt. 49 ¶¶ 5, 12–14; *see* Compl. ¶¶ 79–82 (alleged data transmissions for named Plaintiffs all relate to this function); *see* Dkt. 159 at 4, 12 (Judge Orrick describing how it is the "'SubscribedButtonClick' transmission" that allegedly sends patient information to Meta when a patient logs into a "patient portal").[4] Any probative value in discussions occurring years before the complained of functionality was even added to the Pixel is far outweighed by the extraordinary burden inherent in reviewing and producing *nine* years of custodial data. *See, e.g.*, Ex. 1 at RFP 17 (requesting "[a]ll Communications exchanged with Web-Property administrators . . . for any Medical Providers' Web-Properties . . . Regarding the Meta Pixel")); *id.* No. 10 (requesting "[d]ocuments sufficient to identify all Facebook Users associated with a SubscribedButtonClick transmission from a Medical Provider Web-Property").

Extending the discovery period so far back would also be inconsistent with the statutes of limitations. The longest limitations period for any of Plaintiffs' claims is *four years*. Assuming the relevant date for the limitations period is the date the first complaint was filed (June 2022), that brings the relevant timeframe back to June 2018, which is consistent with Meta's proposal. *See*

---

[4] Plaintiffs misstate their own allegations by claiming they are not "factually limited to the 'SubscribedButtonClick'" event. The transmissions they reference all allegedly come from that event. *See* ¶ 81 (alleging Jane Doe I's data was sent "to Meta when she clicked" the "log in" button for the relevant patient portal); *see* ¶¶ 79–80 (same).

*Carlos v. Wal-Mart Assocs., Inc.*, 2021 WL 6751918, at *3 n.2 (C.D. Cal. Dec. 3, 2021) (limiting discovery to class period based on the statute of limitations).

Plaintiffs summarily allege that they are entitled to sprawling discovery because "all applicable statutes of limitations have been tolled based on the discovery rule and Meta's concealment." ¶ 285. But there is no support for that assertion, as the Consolidated Complaint does not actually make any specific allegations of concealment by Meta. Meta has publicly disclosed its policies regarding the Pixel for years, and the only allegation Plaintiffs offer in support of tolling rests on *April 19, 2018* changes to Meta's policies, which cannot support tolling beyond that date. *See* ¶ 283.

Plaintiffs argue in the alternative that documents created before the statute of limitations *could* be relevant to conduct occurring within the limitations period. But this *could* be the case in every litigation. There are *no allegations* in the Consolidated Complaint describing relevant conduct before 2018,[5] and as mentioned above, the relevant Pixel functionality did not even allegedly exist until 2017. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) ("It is proper to deny discovery . . . to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to the issues in the case").

**Discovery End Date.** It is common for the discovery period to end on the date the complaint was filed. *See, e.g.*, *Waidhofer v. Cloudflare, Inc.*, 2021 WL 8532942, at *2 (C.D. Cal. Mar. 10, 2021). Meta has proposed a discovery end date over eight months *after* the first complaint was filed in this case. *See* Dkt. 1. Plaintiffs have argued that without indefinite, continuing discovery "regarding Meta's health filter or any other issues" they will be prejudiced "in pursuing injunctive relief." But if that were the standard, there would never be an end date prior to the discovery cutoff in civil cases involving a request for injunctive relief. This inefficient and disproportionately burdensome approach would lead to a persistent stream of document collection, review, and production up until the fact discovery cutoff.

While in this letter Plaintiffs have acknowledged the need for a discovery "cut-off date," they are unwilling to set one until some indefinite point in the future, which is the functional equivalent of having no cut-off date. Plaintiffs say they need the discovery end date to extend indefinitely because, in their view, (1) all event data Meta continues to receive is relevant; and (2) there might be discussions between Meta engineers about "fixing the problem" of Meta receiving sensitive data. As to the first category, Meta proposed a compromise in which it would produce event data up to April 1, 2023. Plaintiffs have articulated no incremental benefit to receiving additional event data when Meta has already proposed a discovery period lasting *five years*. *See Miller v. York Risk Servs. Grp.*, 2015 WL 11120713, at *2 (D. Ariz. Jan. 12, 2015) (ordering discovery into ongoing conduct but noting that the "relevant time frame is not ever-expanding and

---

[5] This distinguishes *In re Toyota Motor Corp. Secs. Litig.*, 2012 WL 3791716 on which Plaintiffs rely, because there the plaintiffs *had* alleged specific, relevant facts preceding the class period that bore on defendants' alleged knowledge (*id.* at *3, *5–6).

limitless simply because the [conduct] remains in effect," and holding that data created past the filing of the complaint would be "needlessly cumulative").

As to the second category, this is a relatively confined topic that can be addressed on a narrow basis and does not require extending the discovery end date for *all* of Plaintiffs' discovery requests. Meta is amenable to conferring further on this specific issue with Plaintiffs.

Meta's discovery time frame proposal is reasonable and fair. But if the Court is disinclined to accept it, Meta asks that the Court leave the discovery period as ending on the date the Consolidated Complaint was filed, but allow Plaintiffs to extend that cutoff for specific requests for which Plaintiffs are able to articulate legitimate reasons. The parties can confer on those requests and bring any further disputes to Your Honor as necessary.

### D. NEED FOR A HEARING

The parties agree that a hearing would be helpful in resolving this issue.

### E. CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

No cut-off dates for fact or expert discovery have been set in this case.

### F. STATEMENT RE: COMPLIANCE WITH STANDING ORDER

Plaintiffs and Meta confirm that the parties have complied with the Court's discovery dispute resolution procedures. Jay Barnes and Lauren Goldman, lead counsel for Plaintiffs and Meta, respectively, met and conferred regarding this dispute via videoconference on April 18, 2023.

### G. ATTACHMENTS

The following discovery requests and responses are attached to this letter:

- Exhibit 1: Plaintiffs' First Set of Requests for Production
- Exhibit 2: Plaintiffs' First Set of Interrogatories
- Exhibit 3: Meta's Objections and Responses to Plaintiffs' First Set of Requests for Production
- Exhibit 4: Meta's Objections and Responses to Plaintiffs' First Set of Interrogatories

Dated: May 1, 2023	**GIBSON, DUNN & CRUTCHER LLP**

By:	*/s/ Lauren Goldman*
	Lauren Goldman

**COOLEY LLP**

By:	*/s/ Michael G. Rhodes*
	Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

Dated: May 1, 2023	By:	*/s/ Jason "Jay" Barnes*
	Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
  jaybarnes@simmonsfirm.com
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:	212-784-6400
Fax:	212-213-5949


By:	*/s/ Geoffrey Graber*
	Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  ggraber@cohenmilstein.com
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:	202-408-4600
Fax:	202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  koncius@kiesel.law
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:	310-854-4444
Fax:	310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181

8

*bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:   206-816-6603
Fax:   206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:   510-350-9700
Fax:   510-350-9701

*Attorneys for Plaintiffs and the Putative Class*

## **CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Jeffrey A. Koncius, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: May 1, 2023                    By:    */s/ Jeffrey A. Koncius*

                                                            Jeffrey A. Koncius