May 1, 2023

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)

Dear Judge DeMarchi,

Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

### A.    STATEMENT OF THE DISPUTE

This is the third of three disputes.

*Plaintiffs' position*: This letter raises two issues: First, should Meta be compelled to respond to Interrogatory Nos. 1 and 3? Second, should Meta be compelled to use the following definition of "Medical Provider" in response to discovery: "healthcare providers and covered entities under HIPAA or the CMIA"?

*Meta's position*: This letter addresses whether Meta must, in response to Interrogatory Nos. 1 and 3, identify (a) all medical providers that have used the Pixel and are subject to HIPAA or CMIA; and (b) on which specific webpage URLs those medical providers deployed the Pixel.

### B.    PLAINTIFFS' POSITION

**I.    The Discovery at Issue Seeks Meta's Answers Regarding the Scope of Its Conduct**

Plaintiffs allege that Meta collected "health information" without authorization from "Meta health care 'Partner' websites" and "covered entities" through the Meta Pixel and other advertising products. CCAC, Dkt. 185 ¶ 1. "Covered entities" are businesses covered by HIPAA or the CMIA. *Id.* ¶¶ 20-21. The putative class is defined as "All Facebook users whose health information was obtained by Meta from their health care provider or covered entity." *Id.* ¶ 274.

Consistent with this, Plaintiffs seek discovery regarding the scope of Meta's conduct. For example:

- Interrogatory No. 1 asks Meta to "[i]dentify all web-properties with a HIPAA Notice that contained the Meta Pixel during the Relevant Time Period."

- Interrogatory No. 3 asks Meta to "[i]dentify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property."

- Request for Production No. 9 seeks "data that Meta received via the Meta Pixel from Medical Provider Web-Properties."

## II.  Meta's Responses and Objections

Meta objected that "Plaintiffs' definition of 'Medical Provider' was vague, ambiguous, overbroad and unduly burdensome" and announced that it would "construe this term to refer to" just five Medical Providers. In subsequent correspondence, Meta stated:

> Meta would consider construing the term 'Medical Provider[s]' in Plaintiffs' discovery request to mean the patient portals (or their analogues, if any, of the 664 websites that appear in Plaintiffs' Exhibit A to their First Set of Requests for Production. For Meta to produce this discovery, however, Plaintiffs would first need to identify the specific URLs corresponding to the patient portal for each of these websites.

Meta Letter of Apr. 12, 2023 at 6.[1]

In response to Interrogatory No. 1, Meta stated that "Meta . . . does not have data identifying 'Web-Properties with a HIPAA Notice' . . . within its possession, custody, or control."

In response to Interrogatory No. 3, Meta answered that MedStar and Rush did not have the Pixel on their respective patient portals—and did not conduct any further investigation.

## III.  The Court Should Order Meta to Answer Discovery Seeking Information About the Scope of Its Alleged Misconduct

Meta should answer discovery seeking information about the scope of its misconduct for three reasons.

*First*, Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Here, there is no dispute that the list of covered entities from which Meta collected health information is relevant to claims and defenses. In fact, the Court has already held as much, explaining that its "decision to deny" Plaintiffs' motion for preliminary injunction was based on (1) "Meta's evidence that it is doing all it can to minimize the problems raised by plaintiffs" and (2) "the need for discovery to clarify both the scope of the problems and the potential solutions for them." Order, Dkt. 159 at 11. The Court further explained that Plaintiffs' motion described "a potentially serious problem." *Id.* at 32. But at this stage in the litigation, the Court acknowledged "the precise contours of this problem— the number of HIPAA-entities current sending patient information to Meta [and] the amount of data that seeps through the filtration systems . . . remain unknown." *Id.* The Court expressly contemplated that discovery will "eliminate some of these unknowns." *Id.* Plaintiffs' discovery seeks to "eliminate … these unknowns."

*Second*, although "[p]arties are under a duty to complete a reasonable investigation when

---

[1] Meta's improper limitation to patient portals is the subject of a separate motion.

presented with the opposing party's interrogatories and discovery requests," Meta has made no such effort here. *3M Innovative Props. Co. v. Tomar Elec.*, No. 05–756(MJD/AJB), 2006 WL 2670038, at *6 (D. Minn. Sept. 18, 2006); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 16-cv-06370-EJD (VKD), 2020 WL 2838806, at *3 (N.D. Cal. Jun. 1, 2020) (referencing requirements of Rule 26(g)); *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) ("reasonable effort to respond must be made"). Here, there is no indication that Meta made any investigation. To the contrary, it objects to Interrogatory No. 1 that it does not an answer currently "within its possession, custody, or control," which is not a valid objection to an interrogatory. Similarly, Meta unilaterally announced that it would limit its response to Interrogatory No. 3 to just MedStar and Rush, without conducting any investigation.

*Third*, it is not acceptable for a party to answer an interrogatory by stating that "it does not know how to extract responsive information from its own systems and records." *Outdoor Pro Shop, Inc. (OPS) v. Monster Energy Co.*, No. 20-cv-05999-BLF (VKD), 2022 WL 767277, at *2-3 (N.D. Cal. Mar. 11, 2022). When OPS claimed it did not know how to extract responsive discovery information about its finances and profitability from its own systems, the Court noted that "[o]rdinarily, such a response would not be acceptable." *Id.*  "[G]iven the late stage of discovery" in that case, the Court ordered OPS to make its "systems available for inspection" by the requesting party and its experts. *Id.*

Meta argues that identifying the scope of its misconduct alleged in the CCAC is "an extraordinarily burdensome, overbroad, and likely impossible task." Not so:  Meta's declarant admitted its filter "detect[s] data sent through the Pixel (as well as other Business Tools) that it categorizes as potentially sensitive data, including health data . . . sent by websites classified by Meta as health-related." Wooldridge Decl., Dkt. 77-4 ¶ 8. Additionally, Meta internally classifies which partners are healthcare companies and who its Meta Health division provides services. Dkt. 185 at ¶¶ 254-256. Meta can leverage its pre-existing categorizations rather than "manually review[ing] every webpage on which a Pixel was ever deployed."

Meta can answer this question without undue burden. As Meta notes, Plaintiffs are doing so, having already identified 664 at-issue properties to Meta. As of April 25, 2023, Plaintiffs have identified at least 1,673 such properties. The fact that Plaintiffs have done this proves that it can be done but does not relieve Meta of its own discovery obligations to investigate and answer questions about the scope of the alleged misconduct using data that is not available to Plaintiffs.[2]

The *United Health Group* case does not help Meta. There, the request required expert analysis of 28 million billing codes over 20 million records – and the Court only ruled that it was "improper at this stage of the proceedings because it would require expert analysis" but "may be necessary at some point[.]" Here, no expert analysis is necessary to determine if a property is operated by a HIPAA or CMIA covered entity, see CCAC ¶¶ 249-257, and there are not *millions* of properties at issue. And in the *Gorrell* case Meta cites, the court did not compel research that would return objectively irrelevant information, but did acknowledge that "reasonable efforts" must be made to respond. What constitutes "reasonable effort" must be judged by the proportionality standards of Rule 26. This case involves Meta's systematic breach of health privacy rights for millions of patients and their communications with at least 1,678 objectively

---

[2] Plaintiffs will provide Meta with the list, along with the Pixel ID for each property.

identifiable healthcare properties—it is reasonable to ask Meta to investigate. Ultimately, the Court must make its own determination about whether the labor and expense to Meta is so burdensome as to be "oppressive" and need not rely "on bare assertions [] by the interrogated party. 8B Wright & Miller, *Federal Practice and Procedure* § 2174 (3d ed. Apr. 2023). "General allegations of burden without any substantiation will not suffice." *Hinds v. FedEx Ground Package Sys., Inc.*, 2019 WL 11201544, at *3 (N.D. Cal. Mar. 8, 2019) (overruling objection presented without evidence as "unsubstantiated").

Finally, the Court's denial of Plaintiffs' motion for preliminary injunction was "based on Meta's evidence that it is doing all it can to minimize the problems raised by Plaintiffs." Dkt. 159 at 11. With this objection, Meta reveals the opposite is true: it is refusing to even attempt to identify the scope of the problem. Thus, the Court should compel an answer. And, if Meta continues to insist that it cannot use its systems to answer Plaintiffs' discovery, Plaintiffs respectfully request that the Court provide the same remedy as it did in *OPS* and order Meta to make its systems available for inspection by Plaintiffs and their experts.

### IV.     Requested Relief

Plaintiffs respectfully ask the Court to order Meta to:

(1) Respond to Plaintiffs' Interrogatory Nos. 1 to 3 in full. If Meta insists that it cannot comply, Plaintiffs request that the Court order Meta to make it systems available for inspection.

(2) In responding to Plaintiffs' discovery requests, Meta should be required to use the following definition of "Medical Provider": healthcare providers and "covered entities" under HIPAA or the CMIA. *See* Dkt. 185 ¶¶ 20-21.

### C.      META'S POSITION

Plaintiffs' mischaracterize Meta's position.  The issue is not whether the discovery at issue is relevant or discoverable.  The issue is that Meta simply does not have the information Plaintiffs seek.  Meta was willing to and *did investigate* whether it possesses information responsive to Plaintiffs' requests, and determined that it does not; nor does it have tools that would allow it to respond to Plaintiffs' requests.

* * *

The Consolidated Complaint identifies five healthcare entities, each of which allegedly utilized the Meta Pixel on specific patient portal webpages, as well as the patient portal URLs and the named Plaintiff that allegedly used each portal.  ¶¶ 24–29.[3]

Plaintiffs  also identified other entities allegedly covered by HIPAA or the CMIA that deployed the Pixel—though Plaintiffs have not disclosed *any* information regarding the process they used or its accuracy, nor have Plaintiffs identified any of the URLs on which the Pixel was

---

[3] Paragraph citations are to the Consolidated Complaint unless otherwise specified.

4

allegedly deployed. Instead, Plaintiffs have purported to identify, by root URL only (i.e., a website's main landing page), 664 covered entities (and, as Meta just learned, a new total of 1,673 properties yet to be shared) that used the Pixel at some point.

In an effort to compromise, Meta agreed to provide discovery as to the 664 entities Plaintiffs identified, once Plaintiffs provide for each entity links to the specific webpages containing patient portals or similar features, as they have done for the entities identified in the Consolidated Complaint.

Plaintiffs rejected this proposal. Plaintiffs demand that Meta identify *all* such entities:

- Interrogatory 1: Identify All Web-Properties [i.e., URLs] with a HIPAA Notice that contained the Meta Pixel during the Relevant Time Period [i.e., ever].

- Interrogatory 3: Identify all Medical Provider [i.e., covered entity] Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property.

Rule 33 requires responding parties to provide the "information available" to them (Fed. R. Civ. Proc. 33(b)), meaning the information must be in their "control" (Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-B). And even where information is in a party's "control," it need only be provided where it "can be given without undue labor and expense." 8B Fed. Prac. & Proc. Civ. § 2174 (3d ed.). Thus, "interrogatories that require a party to make extensive investigations, research, or compilation or evaluation of data for the opposing party are in many circumstances improper." *Id.*; *see Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (parties need not "conduct extensive research in order to answer an interrogatory").[4]

As set forth above, the problem with Plaintiffs' requests is that Meta does not have any systematic way to identify which entities that deployed the Pixel are covered by HIPAA or the CMIA. *See* Dkt. 143-3 ¶ 24. Meta does not have information within its possession, custody, or control regarding any entity's HIPAA or CMIA status. Plaintiffs' requests would require Meta to *manually review every single webpage* on which a Pixel was ever deployed to determine if that or an associated webpage included information that could identify the webpage as being subject to HIPAA or the CMIA.

Plaintiffs alternatively demand access to Meta's proprietary systems, but such access would not provide Plaintiffs with the information they want. Plaintiffs' citation to *OPS* is based on a flawed premise that would result in an unjustified end run around the discovery process in order to gain access to Meta's systems. At issue in *OPS* was a party's statement, late in discovery, that it did not know how to extract records from its own system. Here, Meta has investigated whether it could extract the information Plaintiffs want from Meta's systems, and Meta had determined that the information simply does not exist.

---

[4] Plaintiffs' citations to cases concerning Rule 26 do not say otherwise.

During meet and confers, Plaintiffs theorized that Meta could use the "Facebook Crawler" to identify all webpages that somewhere contain a HIPAA Notice. This fundamentally misunderstands the Facebook Crawler. The Facebook Crawler is not a spider that catalogs and indexes all webpages across the internet. Instead, as Meta's publicly available documents explain, a Facebook *user* engages the Facebook Crawler by pasting a URL in a Facebook post; the Facebook Crawler will then review that *specific* URL's HTML and generate a preview of the webpage to accompany the post. *See* The Facebook Crawler, https://developers.facebook.com/docs/sharing/webmasters/crawler/.

The Facebook Crawler cannot seek out HIPAA notices, nor does it connect the dots when a website has a HIPAA notice on one webpage and has deployed the Pixel on another webpage.

Plaintiffs' other suggestions for identifying covered entities ("identifying web developers and marketers to whom Meta provides services through the Meta Health division" and using Meta's "internal content classifications and taxonomies to identify health content") will not indicate whether those entities are covered by HIPAA or the CMIA. *See* Dkt. 143-3 ¶¶ 24–25.[5] Nor would they identify the webpages for those entities, if any, on which the Pixel has been deployed. Meta would need to build brand new tools to try to evaluate the website of any entity that uses the Pixel to see if it meets Plaintiffs' criteria. But Rule 33 does not require Meta to create new programs to search the Internet at large for information, especially when Plaintiffs can—and apparently already are—performing this same task.

Plaintiffs previously stated that it "strains credulity" to suggest Meta cannot identify HIPAA-covered entities because Meta has "claimed they can send out letters" when Meta's filtering mechanism identifies potentially-sensitive data sent via the Pixel. But whether a website developer has sent potentially-sensitive data has *nothing to do* with whether the developer is covered by HIPAA or CMIA. As Meta has explained, Meta's filtering mechanism is overinclusive and merely screens out data it is able to detect that *might* be sensitive, regardless of whether it comes from a covered entity. *See* Dkt. 143-3 ¶¶ 24–26, 42, 46, 48–49. It would be extremely burdensome, and also not comprehensive, if Meta attempted to visit, one-by-one, any webpage for which Meta's filtering mechanism has identified potentially-sensitive data, to determine whether those webpages might be subject to HIPAA or the CMIA.

In addition, a manual process must be undertaken to link the URLs on which the Pixel is deployed to the third-party developers associated with those URLs. And even if Meta could link the URLs back to specific developers, Meta would still lack complete information about which webpages the developers deployed the Pixel on and when. Developers, not Meta, choose where and when to deploy the Pixel, so this information is solely within developers' possession. *See* Dkt. 143-3 ¶¶ 7, 26–27. For example, even assuming Meta is provided with specific URLs, Meta cannot say, based on the data available to it, when a particular Pixel was added to or removed from

---

[5] Plaintiffs may—and in part have—separately requested these categories of alleged information, but they are not what is sought in Interrogatories 1 and 3.

a specific URL as requested in Interrogatory 3. An accurate installation and/or removal date is solely within the possession of the developer.

To undertake the manual process demanded by Plaintiffs to identify all "Medical Provider" webpages arguably covered by HIPAA or CMIA across the Internet on which the Pixel may have ever been deployed is an extraordinarily burdensome, overbroad, and likely impossible task. *See Dobro v. Allstate Ins. Co.*, 2016 WL 4595149, at *7 (S.D. Cal. Sept. 2, 2016) (denying motion to compel response to interrogatory where the defendant was unable "to search its databases" using plaintiff's requested criteria and instead would have needed to manually review thousands of individual files); *Behrazfar v. Unisys Corp.*, 2009 WL 10673197, at *3–4 (C.D. Cal. June 3, 2009) (similar); *see* Dkt. 143-3 ¶¶ 34–39. These are far more than '[g]eneral allegations of burden without any substantiation,' as Plaintiffs claim. Meta has explained why it does not have the technical capability to answer Interrogatories 1 and 3 as drafted.

Meta is willing to construe the entities relevant to Plaintiffs' requests to mean entities subject to HIPAA and/or the CMIA with patient portals (or their analogues) that Plaintiffs identify by URL. For Meta to respond to Interrogatories 1 and 3 in a manner that incorporates that information, Plaintiffs must supply the relevant URLs for covered entities' webpages containing a patient portal or equivalent feature.

Meta does not otherwise have the necessary information to respond to Interrogatories 1 and 3. *See Dobro*, 2016 WL 4595149, at *7. This information is not in Meta's control. It is not Meta's responsibility to perform Plaintiffs' investigation on their behalf. *See United States ex rel. Poehling v. United Health Grp., Inc.*, 2021 WL 9763051, at *2–3 (C.D. Cal. May 28, 2021) (Where "the response would be extremely burdensome and costly," "[o]rdinarily, a respondent is not required to undertake investigation and analysis to prepare a response to an interrogatory.").

        **D.**    **NEED FOR A HEARING**

The parties agree that a hearing would be helpful in resolving this issue.

        **E.**    **CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY**

No cut-off dates for fact or expert discovery have been set in this case.

        **F.**    **STATEMENT RE COMPLIANCE WITH STANDING ORDER**

Plaintiffs and Meta confirm that the parties have complied with the Court's discovery dispute resolution procedures. Jay Barnes and Lauren Goldman, lead counsel for Plaintiffs and Meta, respectively, met and conferred regarding this dispute via videoconference on April 18, 2023.

        **G.**    **ATTACHMENTS**

The following discovery requests and responses are attached to this letter:

- Exhibit 1: Plaintiffs' First Set of Requests for Production

- Exhibit 2: Plaintiffs' First Set of Interrogatories

- Exhibit 3: Meta's Objections and Responses to Plaintiffs' First Set of Requests for Production

- Exhibit 4: Meta's Objections and Responses to Plaintiffs' First Set of Interrogatories

| | |
|---|---|
| Dated: May 1, 2023 | **GIBSON, DUNN & CRUTCHER LLP**<br><br>By: _/s/ Lauren Goldman_<br>     Lauren Goldman<br><br>**COOLEY LLP**<br><br>By: _/s/ Michael G. Rhodes_<br>     Michael G. Rhodes<br><br>_Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)_ |
| Dated: May 1, 2023 | By: _/s/ Jason "Jay" Barnes_<br>     Jason 'Jay' Barnes<br><br>**SIMMONS HANLY CONROY LLC**<br><br>Jason 'Jay' Barnes (admitted _pro hac vice_)<br>  jaybarnes@simmonsfirm.com<br>112 Madison Avenue, 7th Floor<br>New York, NY 10016<br>Tel:    212-784-6400<br>Fax:   212-213-5949<br><br><br>By: _/s/ Geoffrey Graber_<br>     Geoffrey Graber<br><br>**COHEN MILSTEIN SELLERS & TOLL PLLC**<br>Geoffrey Graber, State Bar No. 211547<br>  ggraber@cohenmilstein.com<br>1100 New York Avenue NW, Fifth Floor<br>Washington, DC 20005<br>Tel:    202-408-4600<br>Fax:   202-408-4699<br><br>**KIESEL LAW LLP**<br>Jeffrey A. Koncius, State Bar No. 189803<br>  koncius@kiesel.law<br>8648 Wilshire Boulevard<br>Beverly Hills, CA 90211<br>Tel:    310-854-4444<br>Fax:   310-854-0812 |

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:  206-816-6603
Fax:  206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:  510-350-9700
Fax:  510-350-9701

*Attorneys for Plaintiffs and the Putative Class*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Jeffrey A. Koncius, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: May 1, 2023         By:   */s/ Jeffrey A. Koncius*

                                 Jeffrey A. Koncius