GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

GEOFFREY GRABER (SBN 211547)
ggraber@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Jason 'Jay' Barnes (admitted *pro hac vice*)
jaybarnes@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949

*Additional Attorneys in Signature Block*

*Co-Lead Counsel for Plaintiffs and the*
*Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-03580-WHO-VKD<br><br>**JOINT STATEMENT REGARDING PROTECTIVE ORDER**<br><br>Hon. Virginia K. DeMarchi |

In accordance with the Court's direction at the April 20, 2023 Discovery Conference, *see* Dkt. No. 216, the parties in *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-3580-WHO (VKD), *In re Meta Pixel Tax Filing Cases*, Case No. 22-cv-07557-SI (VKD), and *Gershzon v. Meta*, Case No. 3:23-cv-00083-SI (VKD), have continued to meet and confer regarding the terms of a protective order to be entered in their respective cases.  While the parties have made progress in certain areas, they have been unable to reach agreement on others.  The issues on which the Parties are at impasse are as follows: (1) Definition of Source Code and Highly Confidential--Attorneys' Eyes Only; (2) Confidentiality Designations Pursuant to Section 5.1; (3) Timeline for Challenging the Number of Lines of Source Code Included in a Document, and (4) Note-Taking During Source Code Review.

Accordingly, the parties' competing draft proposals are attached as Exhibits A–C.  The parties submit the following statements regarding the remaining disputes.

**PLAINTIFFS' STATEMENT**

For the Court's reference, Healthcare Plaintiffs' proposed protective order is attached hereto as Exhibit A. Healthcare Plaintiffs' positions as to the issues on which the Parties are at impasse are as follows:

**(1) <u>Definition of Source Code</u> and Highly Confidential--Attorneys' Eyes Only**

To address the concerns raised by Healthcare Plaintiffs regarding unwarranted designation of material as Highly Confidential-Source Code and considering the feedback from the Court during the April 20, 2023 Discovery Conference, Healthcare Plaintiffs propose necessary revisions to the definition of Source Code and Highly Confidential--Attorneys' Eyes Only. Meta rejected Healthcare Plaintiffs' revisions.

Source Code was originally defined as follows:
Extremely sensitive computer code and associated comments, revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms, computer code, or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

Healthcare Plaintiffs' updated proposed definition of Source Code is as follows:

2.16   Source Code (Clean Room):  Extremely sensitive computer code, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means, and which, for the avoidance of doubt,

does not include the following:

(a) Publicly available source code;

(b) Documents or information that have been produced in other litigation without a Highly Confidential-Source Code designation and/or other enhanced protections, including but not limited to information produced in the Facebook Consumer Privacy Profile Litigation related to Meta's collection and storage systems;

(c) Named Plaintiff Data, which means information Meta produces about the named Plaintiffs in this action and information produced about the fields in databases containing Named Plaintiff Data;

(d) Change logs or revision histories that do not contain an entire copy of the computer code to which the change log or revision history relates; or

(e) Data dictionaries, schematics, or human-language descriptions of Meta's collection, storage, or filter systems.

Healthcare Plaintiffs also propose that "non-public computer code and associated comments, revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms, computer code, or structure of software or hardware designs" be included in the definition of Highly Confidential--Attorneys' Eyes Only material.

Healthcare Plaintiffs' proposed revisions are necessary to avoid over-designation, the risk of document review being run through Meta's clean room unnecessarily, and resulting delay of this litigation and unnecessary expenditure of resources. Healthcare Plaintiffs' revisions also take into account situations where computer code and/or related material may be confidential and/or proprietary but do not warrant the stringent protections that are typically afforded source code, such as review of such material being limited to a clean room. The Court acknowledged the possibility of such a situation:

> If it doesn't need source code protection because it's just not that confidential, it's not that important to keep in that super secret way, then it shouldn't be treated as source code and require that kind of, you know, secure environment, no copies, that kind of stuff. You should just find some -- you have another category, which is highly confidential attorneys' eyes only. And it should be used.

April 20, 2023 Discovery Conference Tr. 22:3-10. Plaintiffs have identified five categories of source code for which clean room protections are unwarranted, and propose to specifically exclude such categories from the definition of Source Code (Clean Room) for the avoidance of doubt. Those categories are as follows:

Publicly available source code. Source code that is publicly available should not be afforded the typical protections provided by a Highly Confidential-Source Code designation, such as clean room/secure environment review restrictions.

Documents or information produced in other litigation without a Highly Confidential-Source Code designation. Documents produced outside of a clean room environment in other litigation including, but not limited to, information produced in the Facebook Consumer Privacy Profile Litigation related to Meta's collection and storage systems should be treated the same here. In *In re Facebook Consumer Privacy Profile Litigation*, evidence submitted indicated that Meta had (eventually) disclosed significant information about storage systems that might otherwise fall under Meta's proposed definition of source code in this case. For example, the plaintiffs in that action appear to have taken 30(b)(6) deposition testimony on "[t]he systems, repositories, databases, and other sources … containing or referencing any Data that can be associated with a User and, for each: (a) the schemas, response schemas, and fields … (b) the type of Data stored or referenced by the System; (c) how the data is stored in or referenced by the system; [and] (d) the other systems that interact with that data, and the manner by which that interaction occurs." *In re Facebook Consumer Privacy Profile Litig.*, Case No. 18-md-02843-VC, Dkt. 1103-44 at 13. Another exhibit referenced discovery of "a data model for the Named Plaintiffs data," with "data model" defined as "data models, associated data dictionaries, and/or protocols—whatever terminology is used by Facebook—that describes how information and data is collected, sorted, analyzed, searched, and maintained. This includes descriptions of encryption retention and deletion processes for each kind of data." *Id.*, Dkt. 1103-1 at 748, Exhibit 15. Thus, Healthcare Plaintiffs are only seeking to limit the designation of these materials to the same level they were afforded previously.

Named Plaintiff Data, which means information Meta produces about the named Plaintiffs in this action and information produced about the fields in databases containing Named Plaintiff Data. While Meta stated that it is not taking the position that Named Plaintiff data is source code, it also acknowledged that named Plaintiff database structures could be considered source code: "I don't know that there are documents that exist that would provide the database structure type information that they are seeking. To the extent it's the actual code creating those systems, that would be source code." April 20, 2023 Discovery Conference Tr. 19:19-21, 20:16-20. In the absence of this exception proposed by the Healthcare Plaintiffs, Meta could produce Named Plaintiff Data outside of a clean room

environment – but then force discovery of documents essential to interpreting that very same data into a clean room. Such a result is inefficient and inconsistent with Rule 1 of the Federal Rules of Civil Procedure.

Change logs or revision histories that do not contain an entire copy of the computer code to which the change log or revision history relates. A change log is a list containing descriptions of changes to source code. Plaintiffs reasonably expect that a significant number of change log documents are likely to exist for the Meta Pixel and the Filter. To the extent that these change logs only deal with snippets of code, they should not be forced into a clean room environment that will make discovery inefficient and untenable.

Data dictionaries, schematics, or human-language descriptions of Meta's collection, storage, or filter systems. Plaintiffs reasonably believe that documents fitting this description were produced in the *Facebook Consumer Privacy Profile Litigation* without the heightened protections for source code. And, it is expected that many such documents will be produced here, therefore it should be treated the same way in this case as the information was designated in the previous case.

*Healthcare* Plaintiffs' proposed revisions permit protections while also aiming to avoid the need to return to the Court over and over again to litigate a dispute regarding over-designation of material as Highly Confidential--Source Code, when such material has already been produced in other litigation without such designation, and will serve to reduce unnecessary expenditure of time and resources. For example, in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, the parties appear to have spent at least six months and more than half a million dollars on a Special Master to litigate Named Plaintiff Data issues. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2023 WL 1871107, at *29 (N.D. Cal. Feb. 9, 2023) (Detailing request for "$264,497.78 in costs for the fees paid to mediator Judge Adler and Special Master Garrie," which Plaintiffs reasonably believe would only represent the plaintiffs' portion of the costs). Entering Plaintiffs' proposed language here will not alleviate all such discovery issues but will go a long way to avoiding such a slog.

Finally, Meta's objections are without merit. First, Meta's claim that it "does not have two different types of non-public source code that warrant different levels of protection" proves the very

concern that Plaintiffs have raised – specifically, that Meta will funnel all non-public source code into a clean room environment without regard to whether it is "extremely sensitive" or not. Here, Meta is indicating that it will not make any such distinctions. Second, Meta claims that Plaintiffs' list of five items is "arbitrary." Not so. Plaintiffs list is derived of specific categories that (1) Meta has already acknowledged should not be sent to a clean room; (2) Meta has produced in other litigation; and (3) Plaintiffs are aware have been produced in droves in other consumer privacy litigation without a "clean room" provision. Plaintiffs thus respectfully request the Court make clear to Meta that over-designation will not be tolerated and to create clear lines with respect to these five specific categories of data.

**(2) <u>Confidentiality Designations Pursuant to Section 5.1</u>**

While the Parties are in agreement as to most of Section 5.1, there exist two disputes within this section. Meta's current proposal is as follows and Plaintiffs do not agree to the portions of it that are bolded and highlighted in yellow:

5.1     <u>Exercise of Restraint and Care in Designating Material for Protection</u>.   Each Party or Non-Party that designates Disclosure or Discovery Material for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.   To the extent it is practical **and not unduly burdensome** to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. To the extent it is impractical to do so, the Designating Party shall identify with specificity the portions of the material that qualify for protection upon reasonable request by a Party.  With respect to material designated HIGHLY CONFIDENTIAL-SOURCE CODE, the Designating Party shall identify the specific portions of a document that qualify for protection by providing a document that redacts the HIGHLY CONFIDENTIAL-SOURCE CODE material and is produced in the ordinary manner per the Stipulated ESI Protocol.   To the extent the HIGHLY CONFIDENTIAL-SOURCE CODE material is relevant, **upon reasonable request** a version of the produced document with the HIGHLY CONFIDENTIAL-SOURCE CODE material unredacted will be made available for inspection in PDF-searchable format in the source code review room per this Stipulated Protective Order.   Any document produced with redacted HIGHLY CONFIDENTIAL-SOURCE CODE material may also be designated and produced with a lower designation as to the remainder of the document, as warranted.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that Disclosure or Discovery Material that it designated for protection does not qualify for protection at all or does not qualify for the level of protection initially asserted, that Designating Party must

promptly notify all other Parties that it is withdrawing or revising the mistaken designation.

The Language "and not unduly burdensome" Is Inappropriate

Good cause does not exist to depart from the Model Protective Order by adding the language "and not unduly burdensome." It is standard practice that a Designating Party must designate for protection only those parts of material that qualify for protection. Following the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, Healthcare Plaintiffs agreed to qualify such standard practice where it is impractical to do so, such as where a document review platform does not allow for it. Meta's proposal to further qualify the requirement such that it would not apply if doing so is "unduly burdensome" is not only superfluous but also concerning. The addition of such language runs the risk of expanding the circumstances under which a Designating Party's (Meta) material could be designated confidential when such treatment is unwarranted. This goes against the spirit of a protective order, which is to provide protection only for information that is confidential.

The Language "Upon reasonable request" Is Inappropriate.

If Source Code is relevant, it should be made available for inspection in the source code review room; Healthcare Plaintiffs should not have to make an additional request that it be made available for inspection in the source code review room. *See* Fed. R. Civ. Proc. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim . . . ."). Under Meta's proposal, Plaintiffs would have to do just that. Section 5.1 relates to the exercise of restraint in designating Disclosure or Discovery Material as confidential. Disclosure or Discovery Material is defined in both Parties' respective proposed protective orders as "All information and tangible things, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, documents, testimony and transcripts), that are produced, disclosed or used in this matter." In other words, section 5.1 deals with material that is already going to be produced, whether in response to disclosure requirements or a written discovery request (among other things). Plaintiffs should not be required to make a second request for relevant information. And, to be clear, Plaintiffs do not propose that irrelevant source code be made available for inspection. To the contrary, Plaintiffs propose that

"[t]o the extent the HIGHLY CONFIDENTIAL-SOURCE CODE material is *relevant*, a version of the produced document with the HIGHLY CONFIDENTIAL-SOURCE CODE material unredacted will be made available for inspection in PDF-searchable format in the source code review room per this Stipulated Protective Order." (emphasis added).

During a recent meet and confer on the issue, Meta's counsel suggested that its production of the source code in redacted form should be enough because Plaintiffs should be able to infer from the surrounding unredacted material in the document whether the redacted material is relevant and, therefore, Plaintiffs could request that it be made available for inspection in the source code review room then. Meta's position goes against the spirit of discovery: that relevant information is discoverable and should be produced and/or made available for inspection. Plaintiffs therefore request that the Court adopt the language proposed in section 5.1 of Plaintiffs' proposed protective order.

### (3) <u>Timeline to Challenge Number of Lines of Source Code in a Document (Section 8(f))</u>

The Parties disagree on the timeframes within which (1) Plaintiffs have to provide Meta advance notice of their intent to use consecutive lines of source code in a pleading, court filing, expert report, trial exhibit, demonstrative, deposition exhibit/transcript, mediation brief, and (2) Meta has to challenge the number of consecutive lines of source code Plaintiffs intend to use.

Plaintiffs' proposal is as follows:

> The Receiving Party may create paper printouts of, or images of, limited excerpts of Source Code in a pleading, court filing, expert report, trial exhibit, demonstrative, deposition exhibit/transcript, mediation brief, and drafts of these documents, provided that the Receiving Party discloses to the Producing Party 7 days in advance the number of consecutive lines of Source Code it intends to include in a document. The Producing Party may challenge the number of consecutive lines of Source Code the Receiving Party intends to include in a document pursuant to this section, and must do so within 3 days of the Receiving Party's notice.

Meta's proposal is identical except the number of days are 14 business days (instead of the proposed 7 days) and 7 business days (instead of 3 days).

Plaintiffs' proposal provides for efficiency so that, if there is an upcoming deadline (i.e. a motion that may include excerpts of source code), any dispute regarding the use of excerpts of source code will be resolved quickly so that other existing deadlines will be met. While language has been

added to the protective order requiring the Parties to stipulate to extensions of deadlines if a dispute prevents timely filing, Plaintiffs are still in favor of moving this case forward with dispatch wherever possible. And, if one deadline gets extended, it is likely that will have a domino effect on other deadlines. Meta's proposal is problematic in that it would require Plaintiffs to provide almost three weeks advance notice and preview the content of the anticipated code to be included in a document to be filed or used in the case, and it also causes delay in that Meta would have more than one week to pose a challenge. Plaintiffs request that their language be adopted to ensure that this case progresses with dispatch.

**(4) <u>Note-Taking During Source Code Review (Section 8(i))</u>**

The Parties have made progress on this section in that they have agreed that notes during source code review may be taken electronically. The Parties are at impasse, however, on certain issues in this section. They are as follows:

<u>Limitations on Number of Pages of Source Code Notes</u>

Meta proposes the following language, which Plaintiffs reject entirely:

At the end of each day of Source Code inspection, the Receiving Party shall report to the Producing Party the number of pages of Source Code notes taken that day. The Producing Party may challenge the amount of Source Code notes taken by the Receiving Party. Any disputes about the amount of Source Code notes will be resolved by the Court if the parties are unable to reach agreement pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of the dispute resolution.

As an initial matter, this invasive proposal would allow a Party (Meta) to manage and control its adversary's work product. An adversary should have no say regarding what an opposing Party's work product should look like. Moreover, Meta's invasive proposal would require Plaintiffs to divulge their work product to Meta. By providing Meta with a report of the number of pages of notes taken after each day of source code review, Meta would unfairly gain insight into Plaintiffs' counsel's and experts' mental impressions and strategies. To explain, pursuant to section 7.6 of each Parties' proposed protective orders, before an expert may review source code, Plaintiffs have to first request such review and identify the categories of information sought to be reviewed. This information, coupled with Meta's proposed page-reporting requirement, would be protected work product. For example, if Plaintiffs

request review of source code related to the Filter and report that one page of notes was taken that day, and on another day request review of source code related to Named Plaintiff database structures and report that 100 pages of notes were taken that day, Meta will unfairly gain insight into various things related to Plaintiffs' counsel's mental processes, impressions, and strategies, including the importance they place on one category of source code over another based on the number of pages of notes taken related to that category.

Plaintiffs understand the need to keep Meta's extremely sensitive source code confidential, and there are agreed-upon procedures in place that accomplish that. The number of pages of notes that a Party takes does not further Meta's goal and should not be managed and controlled by an opposing party.

**META'S STATEMENT**

As with the Rule 502(d) Clawback Order, it is Meta's position that there should be a single protective order that is entered in each of the cases that have been referred to this Court for discovery. For the Court's reference, Meta's proposed protective order is attached hereto as Exhibit B, and a redline comparing Plaintiffs' proposed protective order and Meta's proposed protective order is attached hereto as Exhibit C.

*(1) The Definition and Protection of "Source Code" (Protective Order §§ 2.7, 2.8, 2.16)*

The parties dispute how "Source Code" should be defined and thus the associated protections it should receive. Despite the narrow nature of the parties' prior dispute regarding the definition of "Source Code,"[1] Plaintiffs now take the position that the protective order should depart from the Model Order and instead include a novel, complicated, two-tier structure for the definition and protection of "Source Code." Plaintiffs now propose that "source code" be included in both the "Highly Confidential – Attorneys' Eyes Only" category and the "Highly Confidential – Source Code" category. In addition, Plaintiffs now propose to create a new term—"Source Code (Clean Room)"—that would include a haphazard list of items that Plaintiffs assert are *not* Source Code. This is not necessary or appropriate.

---

[1] *See* Dkt. 191 at 31–32, 37; Dkt. 191-5 at 5 (parties' dispute was whether Source Code definition should contain the language "extremely sensitive" or "confidential, proprietary, or trade secret").

Meta's proposal is that the definition of Source Code should track the Model Order's definition (*see* Ex. B § 2.16; Model Order § 2.9). This is what Plaintiffs previously proposed (Dkt. 191 at 31), and Meta understood this issue to be resolved by the Court's guidance at the April 20 discovery conference. As the Court remarked, "source code is source code, and the stuff that is related to source code is the stuff that's related to source code … and you look at it on a secure computer." April 20, 2023 Hr'g Tr. at 21:15–19. If there is "public source code," then "it is public and it doesn't fall under the protections. If it is source code and it is not public, it's protected in the way that source code is protected." *Id.* at 21:20–23. Meta agrees with the Court.

The Model Order contains a definition of what constitutes "Source Code" that previously was acceptable to Plaintiffs, and that definition is sufficient to guide the parties' handling of Source Code in this case. In contrast, Plaintiffs' proposal creates unworkable, arbitrary distinctions that have no basis. First, Meta does not have two different types of non-public source code that warrant different levels of protection. As the Court already acknowledged, "source code is source code." *Id.* at 21:16. Plaintiffs speculate without basis that because Meta does not have two different types of non-public source code, "Meta will funnel all non-public source code into a clean room environment without regard to whether it is 'extremely sensitive' or not." This ignores the definition of "Source Code" that Meta has proposed, which specifically states that Source Code must be "[e]xtremely sensitive." Ex. B § 2.16.

Second, there is no reason to include an arbitrary list of some things that Plaintiffs assert are *not* Source Code as part of the definition of what *is* Source Code.[2] There are many things that are not Source Code—that does not mean the parties need to try to identify them all in this protective order.[3]

---

[2] Much of Plaintiffs' position on Source Code relies on partisan discovery motion exhibits in an unrelated litigation involving different plaintiffs, different causes of action, and different discovery requests. Plaintiffs do not have full knowledge as to what Meta produced in that action and under what circumstances—indeed, Plaintiffs' statement is full of speculation regarding things that "might" be the case and deposition testimony that "appears" to have been taken—and their arguments are thus not persuasive.

[3] Meta notes that at least one of the categories that Plaintiffs want to exempt from the definition of "Source Code" sweeps far too broadly. Plaintiffs want to exclude "[c]hange logs or revision histories that do not contain *an entire copy* of the computer code to which the change log or revision history relates" (Ex. A § 2.16) (emphasis added). The Model Order plainly allows "comments and revision histories" of Source Code to receive "Highly Confidential – Source Code" protection (Model Order § 2.9), and it would be inappropriate for Source Code not

-11-

Meta's position is that the protective order cannot and should not detail at the outset of a case every possible type of information or data that the parties may encounter during discovery. The purpose of a protective order is to lay out categories and descriptions of information that warrant protection, and then the parties apply those provisions to the specifics of the case throughout the course of discovery. If something does not meet the definition of "Source Code" under the Model Order, Meta does not intend to designate it as such. If the parties ultimately dispute whether certain evidence in a certain context merits "Highly Confidential – Source Code" protection, they can address that issue through the Court's standard dispute resolution procedure. *See* April 20, 2023 Hr'g Tr. at 21:24–22:2, 25:22–26:6. The Model Order's approach to the definition and protection of Source Code is appropriate and should apply in this case.

### *(2) Designating Portions of Materials for Confidentiality (Protective Order § 5.1)*

The parties have two disputes related to designating portions of documents for confidentiality.

*First*, Meta proposes stating that when making confidentiality designations in the first instance, a party need only make partial designations when it is "not unduly burdensome" to do so. Plaintiffs do not want to include this language. As Meta has explained, its discovery review platform does not allow for partial confidentiality designations—so Meta would need to apply any partial designations manually—and there may be other circumstances where applying partial designations presents an undue burden. Plaintiffs have stated that "undue burden" is not an appropriate reason to limit a party's obligations with respect to partial confidentiality designations in the first instance. The Federal Rules emphasize discovery limits based on *proportionality* (*see* Fed. R. Civ. Proc. Rule 26(b)(1)), and not just "practical[ity]," underscoring that Meta's qualification is appropriate. In addition, the parties have agreed to a process whereby a party can later seek partial designations from the Designating Party upon reasonable request, so there is no prejudice in applying an undue burden standard in the first instance.

*Second*, where only parts of a Meta document contain Source Code, the parties have agreed that Meta will produce the document in the regular course with the Source Code content redacted. However, the parties do not agree on the appropriate process for Plaintiffs to review the Source Code

---

to be treated as such simply because a document contains portions of Source Code, no matter how large or small, rather than "an entire copy" of the code.

content that has been redacted.  Meta proposes that Plaintiffs make a "reasonable request" to Meta identifying documents with relevant Source Code redactions that Plaintiffs would like to review in the Source Code review room in order to review the unredacted Source Code content.  If Plaintiffs' request is reasonable and the redacted Source Code material is relevant, Meta will make the unredacted documents available for inspection in the Source Code review room.  Plaintiffs propose that all documents produced with Source Code redactions be made available for inspection in unredacted form in the Source Code review room.

Meta proposes a process requiring Plaintiffs to identify the Source Code content they want to review in light of the inherently sensitive nature of Meta's Source Code.  It is possible there will be responsive documents that also contain irrelevant Source Code unrelated to the issues in the case.  For example, there could be email conversations among Meta engineers with irrelevant source code in the beginning of the thread before the conversation shifts to a topic relevant to this case and responsive material appears.  Plaintiffs have no need to review that irrelevant Source Code, and it would be inappropriate for Plaintiffs to automatically be able to view *all* of Meta's sensitive Source Code that might appear in a document without any limitation or safeguards.  Meta's proposal therefore strikes a balance between the competing concerns of protecting its Source Code and making responsive material available to Plaintiffs in a proportionate manner.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (approving of a protective order balancing a company's interest in protecting its trade secrets against necessary access by a counterparty).

Plaintiffs have expressed concern that they will not be able to determine whether particular redacted Source Code is relevant.  But the surrounding context and subject matter of the communications or documents should make that clear in most if not all instances.  If there is ambiguity, Plaintiffs may request to review the unredacted Source Code content, and Meta will determine whether the content is relevant such that the document should be made available for inspection in the Source Code review room.

### *(3) Timeline for a Challenge Concerning the Use of Source Code (Protective Order § 8(f))*

Plaintiffs were not willing to agree to a default numeric limitation on the number of consecutive lines of Source Code that they can include in a filing or similar document.  Accordingly, the parties have agreed to an alternate procedure in which Plaintiffs must give Meta advance notice and an opportunity to challenge the number of consecutive lines of Source Code Plaintiffs plan to include in a filing or similar document.  However, the parties have not reached agreement on the applicable time periods for Plaintiffs' notice and Meta's challenge under these provisions.

Plaintiffs propose that (1) they need only give Meta seven calendar days' advance notice of their intent to include an excerpt of Source Code in a document; (2) Meta must respond to that notice within three days if it intends to challenge the amount of Source Code Plaintiffs want to include in the document; and (3) if a "dispute prevents [Plaintiffs] from timely filing a document, [Meta must agree] to stipulate to an extension of time to file such document to allow for the dispute to be resolved."

Meta proposes that Plaintiffs provide the requisite notice 14 business days in advance, and that Meta notify Plaintiffs within seven business days if it intends to challenge the amount of Source Code being included.  Meta is willing to stipulate to an extension as described if resolving the parties' dispute requires it, but Meta believes it is appropriate to give the parties more time to assess the request and resolve any dispute (and thus potentially avoid the need for an extension) by providing longer periods for the notice and challenge communications.[4]

Meta's proposal is reasonable and appropriate because it will take time to evaluate the amount of sensitive Source Code Plaintiffs want to include in a document, and it is in both the Court's and the parties' interests to allow time to resolve any potential disputes before they impact case deadlines or require that the dispute be presented to the Court.  Given the highly technical nature of Source Code, the parties will be working with subject matter experts and that may take additional time.  Meta's proposed time periods maximize the possibility that the parties resolve any dispute without involving the Court or impacting case deadlines.

---

[4] Plaintiffs' suggestion that their proposed timeline—which provides *less* time for the parties to resolve any dispute—will lead to disputes being resolved more quickly "so that other existing deadlines will be met" makes no sense.  Their process would allow just four calendar days for the parties to resolve any dispute before Meta would have to stipulate to an extension of a deadline.

-14-

1

### *(4) Limitations on Electronic Note Taking of Source Code (Protective Order § 8(i))*

The parties have made substantial progress in negotiating the procedures governing notetaking during Source Code review, but they still dispute whether Plaintiffs' Source Code notes will be subject to any reasonable limitations.

Plaintiffs are not willing to agree to any limits on the volume of notes they take during their review of Meta's Source Code. Because Plaintiffs were not willing to agree to a numeric page limit at the outset—which Meta continues to believe would be appropriate—Meta's proposed protective order includes a process through which Plaintiff's Source Code notes are subject to Meta's judgment regarding the volume of notes that is reasonable under the circumstances. *See* April 20, 2023 Hr'g Tr. at 27:12–14 ("You could just leave it up to the Defendant to make this determination . . . , or you can agree to some default limitations now.").[5] Under Meta's proposal, at the end of each Source Code review day, Plaintiffs will report to Meta the number of pages of notes they have taken that day. Meta is permitted to challenge the amount of Source Code notes taken—for example, if Meta believes the number of pages to be unwarranted or otherwise problematic—and any disputes that the parties are not able to resolve will be submitted to the Court in accordance with the Court's discovery dispute procedure.

In light of the sensitive nature of Meta's Source Code and the fact that any dissemination of Meta's Source Code would create a substantial risk of serious harm to Meta, it is appropriate to place limits around content associated with Source Code. Meta's proposal strikes a balance between allowing Plaintiffs to take electronic notes as they have requested while maintaining guardrails on the volume of materials that leave the Source Code review room. In the absence of a default numeric page limit being set at the outset, Meta has proposed a process that appropriately preserves Meta's ability to exercise its judgment regarding Source Code related material.

---

[5] To be clear, the intent and purpose of Meta's proposed process is not to "gain insight into Plaintiffs' counsel's and experts' mental impressions and strategies." Meta previously proposed a different approach in which the parties would establish a page number limit at the outset of the case that could be adjusted later if necessary—this would have allowed Plaintiffs to monitor the volume of their notes themselves. But Plaintiffs rejected this approach, and thus Meta has proposed the next best alternative that maintains appropriate limitations around Meta's sensitive Source Code.

Dated: May 5, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By:  */s/ Lauren Goldman*
      Lauren Goldman

**COOLEY LLP**

By:  */s/ Michael G. Rhodes*
      Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

Dated: May 5, 2023        By:  */s/ Jason 'Jay' Barnes*
                                Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
   jaybarnes@simmonsfirm.com
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949

By:  */s/ Geoffrey Graber*
      Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
   ggraber@cohenmilstein.com
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
   koncius@kiesel.law
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:    310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
   bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:    206-319-5450

-16-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
 *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
Fax:     510-350-9701

*Attorneys for Plaintiffs*

JOINT STATEMENT REGARDING PROTECTIVE ORDER
CASE NO. 3:22-CV-03580-WHO-VKD

## **CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: May 5, 2023                                   By:     */s/ Lauren Goldman*
                                                                        Lauren Goldman

-18-