GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

GEOFFREY GRABER (SBN 211547)
*ggraber@cohenmilstein.com*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Jason 'Jay' Barnes (admitted *pro hac vice*)
*jaybarnes@simmonsfirm.com*
SIMMONS HANLY CONROY LLC
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949

*Additional Attorneys in Signature Block*

*Co-Lead Counsel for Plaintiffs and the*
*Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-03580-WHO<br><br>**JOINT STATEMENT**<br><br>Date: May 23, 2023<br>Time: 1:30 p.m.<br>Courtroom: 2, 5th Floor<br>Judge: Hon. Virginia K. DeMarchi<br>Action Filed: June 17, 2022 |

On April 20, 2023, the Court ordered the parties to jointly file their respective proposals regarding "(1) whether and to what extent aspects of discovery should be coordinated across the Healthcare, Tax, and DMV cases; and (2) whether any interim discovery deadlines that should be set to ensure that discovery is completed in an efficient and cost-effective manner, given the case management deadlines that will be set by the presiding judges in these cases." ECF No. 16

Pursuant to the Court's Order, Plaintiffs John Doe I, John Doe II, Jane Doe I, Jane Doe II, and Jane Doe III ("*Healthcare* Plaintiffs") and Defendant Meta Platforms, Inc. ("Meta") (collectively, the "Parties"), by and through their respective counsel of record, hereby submit this joint statement with their respective proposals, in advance of the May 23, 2023 discovery conference.

## 1. WHETHER AND TO WHAT EXTENT DISCOVERY SHOULD BE COORDINATED

***Plaintiffs' Statement:***

Judge Orrick has repeatedly directed Meta and the *Healthcare* Plaintiffs to proceed with "dispatch" in conducting discovery. ECF No. 173; 195. At the Case Management Conference held earlier today (May 16), the District Court reiterated its directive to move this case forward quickly. Indeed, Judge Orrick told the parties he was not overwhelmed by their progress, that he would like to see the *Healthcare* Action get rolling.[1] To that end, Judge Orrick set a fact discovery cut-off on **March 13, 2024** for the *Healthcare* Action. (Judge Orrick also stated he would set a full case management schedule with class certification briefing in early 2024, and a trial to be set in November 2025). The *Healthcare* Plaintiffs thus have less than 10 months remaining in fact discovery and need to comply with Judge Orrick's directives to proceed with dispatch.

Meta's sweeping 'coordination' proposal is irreconcilable with Judge Orrick's discovery cut-off in the *Healthcare* action. Put simply, there is no way the *Healthcare* Plaintiffs can complete fact discovery in 10 months, while at the same time navigating Meta's labyrinth of 'coordination' protocols.

Moreover, Meta's sweeping coordination proposal will unfairly delay the *Healthcare* Plaintiffs' discovery efforts, and drag this litigation into a quagmire of delay, confusion, and prejudice. ECF No. 211. Setting aside its irreconcilability with a March 13, 2024 discovery cut-off, the unrelated

---

[1] The *Healthcare* Plaintiffs have not received the transcript from May 16 case management conference before Judge Orrick.

*Healthcare*, *Tax*, and *DMV* actions are inappropriate candidates for coordination because only a small portion of the discovery in each of the cases is likely to overlap. ECF No. 211. And because the *Healthcare* Action's fact discovery cut-off is in 10 months, the *Healthcare* Plaintiffs are in a different posture than the other cases. The *Healthcare* Action will be delayed by being extensively coordinated with cases where discovery has barely begun (let alone a fact discovery deadline set).

The *Healthcare* Plaintiffs' proposals, in contrast, follows this Court's guidance that the parties should implement a plan that promotes efficiency without "prejudice to anyone." Hearing Transcript at 143:10-11. Plaintiffs' proposal is also consistent with Judge Orrick's case deadlines and directive to move this case forward quickly. As discussed below, the *Healthcare* Plaintiffs propose that the parties have the opportunity to cross-produce documents where appropriate. With respect to depositions, Plaintiffs propose that the parties continue to discuss possible coordination if and when it makes sense. Plaintiffs also propose a series of interim deadline that will effectuate Judge Orrick's directives, and ensure that the parties meet the March 13, 2024 deadline. In particular, *Healthcare* Plaintiffs' proposed interim deadlines begin this summer so that discovery moves forward in an efficient manner.

**I.  The Healthcare, Tax, and DMV Actions Are Unrelated Cases Before Different District Courts, and With Different Postures, Discovery Needs, and Sizes**

Meta's sweeping proposal to "coordinate" discovery across unrelated actions pending before different district judges is improper. Meta previously attempted to accomplish a similar result in moving to relate the *Healthcare* Action (before Judge Orrick) to the *Tax* Action (before Judge Illston), and to "consolidate[] [them] for the limited purpose of conducting discovery." *Healthcare* Action, ECF 164 at 2. Judge Orrick denied Meta's motion. *Healthcare* Action, ECF 180.

Judge Orrick declined to relate the *Healthcare* and *Tax* Actions. Because discovery is underway in the *Healthcare* Action, it is in a different posture than the later filed *Tax* and *DMV* Actions. At the January 17, 2023 *Healthcare* Action CMC, Judge Orrick directed the parties to move the case forward "with dispatch." *Healthcare* Action, ECF 173. On February 9, 2023, the *Healthcare* Plaintiffs served their first set of Requests for Production and Interrogatories, and Meta has responded to those requests. And, the *Healthcare* Action parties have already held multiple meet-and-confers about the scope of discovery.

In addition to the different state of discovery in the actions, only a small portion of the discovery in the unrelated *Healthcare*, *Tax*, and *DMV* actions is likely to overlap. For example, Meta has a specific health marketing division, "Meta Health," that deals with the healthcare industry (*Healthcare* Action, ECF No. 185 at ¶¶ 126-46) which will be a core part of the *Healthcare* Action but has no relation to the *Tax* and *DMV* Actions. In addition, in the *Healthcare* Action, Plaintiffs will seek information regarding the "filtering mechanism which attempts to screen out potentially sensitive health data that Meta receives." *Healthcare* Action, ECF No. 159 at 9. This filter has nothing to do with tax or DMV information and is thus irrelevant to the *Tax* and *DMV* Actions. Indeed, all of the *Healthcare* Plaintiffs' Interrogatories are limited to healthcare issues.

The *Healthcare* Action is also orders of magnitude larger than the *DMV* or *Tax* actions. The *Healthcare* Plaintiffs have already identified *more than 600* healthcare web-properties from which Meta collected sensitive information and believe thousands of additional healthcare web properties will be included. *See Healthcare* Action, ECF 159 at 32 n.17. In sharp contrast, the *DMV* Action appears to involve the Pixel on *one* web-property, the California DMV website. *DMV* Action Complaint, ECF 1, ¶ 64. And the *Tax* Action appears to involve *three* web-properties (H&R Block, TaxAct, and TaxSlayer). *Tax* Action, ECF 1, ¶ 41.

Because of these many differences between the cases, *In re Telescopes Antitrust Litig.*, 2021 WL 1541692, (N.D. Cal. Apr. 20, 2021) (DeMarchi, J.) ("*Telescopes*"), cited by Meta, is inapposite. In *Telescopes*, Judge Davila related the cases and ordered discovery coordination prior to referring discovery to this Court. *Id.* at *1. Meta does not cite any instances where unrelated cases before different judges in the same district had the type of broad discovery coordination order Meta now seeks.

Furthermore, *Telescopes* involved coordination of direct and indirect antitrust purchaser classes. *Id.* Because the direct and indirect purchasers' claims arise from the *same* conduct by the defendant, direct and indirect purchasers' antitrust claims are a far more natural candidate for discovery coordination. This case is more akin to *In re HP Derivative Litigation*, where the court denied discovery coordination because the "unique characteristics of each case will predominate even at the pre-trial stage." 2011 WL 5914216, at *3 (N.D. Cal. Nov. 28, 2011).

The other authority cited by Meta also lends it no support. *Pieterson v. Wells Fargo Bank, N.A.*, 2019 WL 1465355, at *2 (N.D. Cal. Feb. 8, 2019) discusses situations where the class definitions asserted by multiple cases overlap. Here, there is no class definition overlap between the *Healthcare*, *Tax*, and *DMV* cases. *Tawnsaura Grp., LLC v. Maximum Hum. Performance, LLC*, 2012 WL 12331032, at *3 (C.D. Cal. Nov. 7, 2012) is also far afield. In that case, there was one plaintiff who sought a single trial. Here, there are three separate putative class actions with three separate Lead Counsels who are preparing their cases for three separate trials.

## II.    Meta's Coordination Proposal Will Cause a Quagmire of Delay, Confusion, and Prejudice

Requests for consolidation or coordination are governed by Rule 42. "[A] court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989); *In re HP Derivative Litigation*, 2011 WL 5914216, at *2 (applying Rule 42 standard to request for discovery coordination).

Here, Meta's coordination proposal will result in delay, confusion, and prejudice rather than convenience because:

(1) *Meta's proposal will generate lengthy disputes regarding whether discovery requests or deposition questions are "case-specific" or "global.*" Under Meta's proposal, every discovery request and deposition question will require a threshold determination of whether the request is "global" or "case-specific." *See* Meta's proposal. ("Counsel representing plaintiffs in each of the individual Pending Cases would have the opportunity to ask the witness case-specific questions (one attorney per case) outside the presence of counsel for the other plaintiffs. "). This will require the Court to entertain dozens or even hundreds of motions regarding which requests or deposition questions are case-specific instead of global, causing delay and wasting judicial resources.

(2) *Any appeals of this Court's discovery orders regarding "global" discovery would be resolved by different district court judges*. This would create confusion and delay.

(3) *Additional Pixel cases might be filed in the future, which would put the Court in an impossible position.* Meta already acknowledged other Pixel cases are likely to be brought relating to other industries. *Healthcare Action*, 03/14/2023 Hearing Transcript at 7:15-18 (Q: "Are you expecting other industries to be involved in Pixel related Litigation"; Meta: "I wouldn't rule that out."). When other Pixel cases are filed, the Court would have to decide whether to re-set discovery (causing immense delay), or force the new plaintiffs to utilize existing discovery over which they had no control (causing significant prejudice). Interestingly, Meta now proposes that new pixel cases would not be coordinated – this raises the question as to why these cases should be coordinated at all, when future pixel cases would not be coordinated.

(4) *Meta's proposal prejudices the Healthcare Plaintiffs and contradicts Judge Orrick's view by setting numerical limits on RFPs and RFAs, and effectively limiting deposition time to less than allowed under the Rules.* Meta's coordination proposal thus goes beyond coordination and is a backdoor attempt to set numerical limits not provided by the Federal Rules of Civil Procedure. This is contrary to Judge Orrick's view that the *Healthcare* Action Plaintiffs will need *more* discovery than is provided under the default limits in the Federal Rules. (01/17/2023 Hearing Transcript at 4:13-15 ("It seems to me obvious that the case is going to require more than the usual limits on discovery and the Federal Rules of Civil Procedure.")).

(5) *Meta's proposal will delay the Healthcare Plaintiffs' discovery efforts, which are months ahead of the Tax and DMV Actions.* This undermines Judge Orrick's directive that the *Healthcare* Action move forward "with dispatch." *Healthcare* Action, ECF 173.

(6) *The size disparity of three unrelated actions renders them poor candidates for discovery coordination. See Lugo v. Experian Information Solutions, Inc*., 2017 WL 11577918, at *2 (N.D. Cal. Feb. 6, 2017) ("consolidation of all the actions for joint discovery . . .  would inevitably delay resolution of those simpler ones that do not require either extensive discovery or case management").

Instead of formal coordination, this is a case where "if pre-trial coordination does become necessary at some point, it can be easily accomplished through the issuance of discrete joint orders or the scheduling of joint hearings without the need for actual consolidation or coordination, and certainly without the detailed—and seemingly onerous—set of orders requested by [Meta]." *In re HP Derivative Litig.*, 2011 WL 5914216, at *4.

### III.    Healthcare Plaintiffs' Proposal Promotes Efficiency Without Prejudice to Anyone

The *Healthcare* Plaintiffs propose the following discrete and flexible steps to promote efficiency without prejudicing anyone.

#### A.   *Written Discovery*: Optional Cross-Production but No Mandatory Document Sharing

Meta's proposal on written discovery includes multiple provisions that will prejudice the *Healthcare* Plaintiffs, delay discovery, and burden this Court.

The *Healthcare*, *Tax*, and *DMV* should never be required to issue joint written discovery requests, as proposed by Meta. *See* Meta's Proposal ("The Plaintiffs' Group will issue only one copy of written discovery requests to Meta on these "global" issue…") Meta's proposal is consolidation by another name, but this Court recognized that "these cases are not consolidated for purposes of discovery and Judge Orrick and Judge Illston have not ordered that." 4/20/2023 Hearing Transcript at 7:16-18. Meta's proposal is also highly prejudicial and would deprive *Healthcare* Plaintiffs' Lead Counsel over control over their case. Furthermore, Plaintiffs' lead counsel in each separate case must retain full control of their respective (1) written discovery requests, (2) negotiations with Meta over the scope of Meta's discovery responses, (3) search term negotiations with Meta, and (4) custodian negotiations with Meta.

Additionally, Meta's proposal on written discovery imposes numerical limits on the *Healthcare* Plaintiffs' Requests for Production and Requests for Admissions. *See* Meta's Proposal. There are no such limits in the Federal Rules of Civil Procedure. The Court should reject Meta's attempt to invoke "coordination" to deprive the *Healthcare* Plaintiffs of their rights under Federal Rules of Civil Procedure.

The *Healthcare* Plaintiffs believe, however, that it would be productive for the plaintiffs' counsel in the *Healthcare*, *Tax*, and *DMV* cases to be permitted to share with each other the written Requests for Production that they serve on Meta. Furthermore, Lead Counsel for each case should be permitted (but not required) to request that Meta cross-produce the documents that Meta produces in response to specific Request for Productions in another case. For example, Lead Counsel for the *Tax* and *DMV* cases should be permitted (but not required) to request that Meta cross-produce some of the documents that it produces in the *Healthcare* action, which will likely be produced months before any production in the *Tax* or *DMV* actions.

Under the *Healthcare* Plaintiffs' proposal, Meta would also be allowed (but not required) to cross-produce the requested documents. Meta would reserve all rights to object that some, or all, of the produced documents in the other litigation are irrelevant to the party requesting cross-production. In some circumstances, it may be appropriate for Meta to only cross-produce non-custodial documents responsive to a request. In any event, the key to the *Healthcare* Plaintiffs' proposal is that efficiencies can be gained without prejudicing any party. No plaintiff is required to give up her right to separately request documents, and Meta is not required to make cross-productions at this time. However, this sets up a framework where targeted cross-productions could be made if the parties in agree that it will be beneficial.

**B. *Privilege Log Format*: Parties in Each Case Either Agree to Privilege Log Format with Meta by June 20 or Submit Briefing on Privilege Log Format by June 20**

For the ESI Protocol, Protective Order, and Clawback Order, the Court ordered *Healthcare*, *Tax*, and *DMV* plaintiffs to separately submit briefing with Meta on the same dates regarding their disputes on those foundational documents.

The format for the privilege logs produced in the *Healthcare*, *Tax*, and *DMV* actions may provide a similar opportunity for efficiency. The format of privilege logs is often part of an ESI Protocol. Here, the parties agreed to remove the language regarding the privilege log format from the ESI Protocol, and to separately negotiate the format of the privilege log.

At the April 20 hearing, the Court instructed the parties not to defer negotiations regarding the format of the privilege logs much longer. Hearing Transcript at 135:16-136:10. The *Healthcare*

Plaintiffs thus propose that the Court order that: By June 20, 2023, the parties shall file their proposed privilege log format for the Court's review and approval. If the parties disagree on their proposed privilege log formats, they shall file their competing proposals and provide an explanation of their respective positions. Separate statements should be filed in the *Healthcare*, *Tax*, and *DMV* actions, and like with the ESI Protocol and Protective Order, the *Healthcare*, *Tax*, and *DMV* Plaintiffs will be under no obligation to take the same position as each other.

**C. *Depositions*: Any Coordination is Premature and May Never Be Necessary**

Any coordination of depositions is premature. Because only a small portion of the discovery in the unrelated *Healthcare*, *Tax*, and *DMV* actions is likely to overlap, it is unclear if there will be any Meta employees that all three cases seek to depose. For example, Meta has a specific health marketing division, "Meta Health," that deals with the healthcare industry (*Healthcare* Action, ECF No. 185 at ¶¶ 126-46) which will be a core part of the *Healthcare* Action but has no relation to the *Tax* and *DMV* Actions. Plaintiffs will seek to depose multiple Meta Health team employees, and it is highly unlikely that those employees will be of any interest to the *Tax* or *DMV* cases.

If plaintiffs in multiple cases seek to depose the same Meta witness, it is premature for the Court to make any decisions regarding how those depositions will proceed and if any coordination will be necessary. At this time, the parties do not know: (1) the number of deponents (if any) that will overlap, (2) whether the time of the deposition is reconcilable with different case deadlines in the separate cases; (3) the relative significance of those deponents, (4) if the deponents will possess any cross-case knowledge or instead possess discrete knowledge on two cases, (5) if the deponents are 30(b)(6) witnesses or testifying solely as percipient witnesses, and (6) the country those witnesses will be located in. (Separate considerations may arise if the plaintiffs need to invoke the Hague Convention to depose a Meta employee.)  Because of this multitude of unknows, the *Healthcare* Plaintiffs respectfully request that the Court not enter any order coordinating depositions at this time.

Furthermore, Meta's proposal is *deeply* prejudicial to the *Healthcare* Plaintiffs. As a threshold matter, Meta's deposition proposal contradicts Judge Orrick's guidance that *Healthcare* Plaintiffs should be entitled to *more* discovery than provided under the Federal Rules because it seeks to *reduce* Healthcare

Plaintiffs' deposition time by two-thirds, as well as substantively constricting their ability to ask questions. Meta's proposal deprives Lead Counsel in each case of the right to question a deponent about issues that Meta deems are "global" issues. This is fundamentally unfair: Lead Counsel for each case are entitled to have the opportunity to ask Meta's witnesses about the questions that they determine are relevant to their case regardless of whether Meta deems the questions to be "global." Meta also demands that the *Healthcare*, *Tax*, and *DMV* plaintiffs jointly decide on the Meta witnesses they plan to depose. This is prejudicial and nonsensical in a case where most the witnesses are unlikely to overlap.

### D. *Discovery Disputes*: Each Independent Case Must Brief Own Discovery Disputes

At the April 20 hearing, the Court told the parties that "it would be helpful for me to get everyone's perspective who is in interested in a particular [discovery dispute] if it really is the *same* across all cases." 4/20/2023 Hearing Transcript at 8:24-9:1 (emphasis added).

Meta disregards this guidance, and instead demands that the unrelated *Healthcare*, *Tax*, and *DMV* plaintiffs jointly briefly their discovery disputes with the Court if they intend to raise a dispute. Meta's inappropriate proposal is a recipe for delay, prejudice, and confusion.

First, there will be very few discovery disputes that are the *same* across the unrelated *Healthcare*, *Tax*, and *DMV* Actions. It is inefficient to have three separate groups of plaintiffs coordinate before they are permitted to bring any discovery dispute to the Court, particularly where the vast majority of disputes will not impact other actions. For example, if the *Healthcare* Plaintiffs have a dispute with Meta regarding documents from the Meta Health team, it would be inefficient for the tax plaintiffs to also coordinate on the briefing of the issue.

Meta's proposal will also inject delay and confusion into the discovery dispute process by requiring four parties to put their positions in a single joint statement. If the *Tax* Plaintiffs and Meta reach impasse on an issue regarding tax data, the *Tax* Plaintiffs should not be required to wait to file their joint discovery letter brief until they hold a separate meet-and-confer with the *Healthcare* Plaintiffs. Furthermore, there is no existing body of case law pertaining to what would be a sufficient meet-and-confer between two groups of plaintiffs. Meta's proposal thus unnecessarily risk dragging the Court into the meet-and-confer process.

Finally, if the Court wants to hear other plaintiffs' perspectives on a discovery dispute, the Court can ask for the Lead Counsel for those cases, on as needed basis, to provide their own statements in advance of a hearing. This flexible approach is superior to Meta's cumbersome process that will cause delay, prejudice, and confusion.

**Meta's Statement:**

In the Joint Statements submitted to this Court on April 13, 2023, Meta proposed a framework for coordinating discovery across *In re Meta Pixel Healthcare Litigation*, *In re Meta Pixel Tax Filing Cases*, and *Gershzon* (collectively, the "Pending Cases").[2]  At the April 20, 2023 conference, the Court agreed that there are "efficiencies . . . to some coordination on discovery," April 20, 2023 Hearing Tr. 9:2–3, and directed the parties, prior to the May 23, 2023 conference, to "reflect on the discovery needs that are common to the three sets of cases," *id.* 8:2–4.  The Court conveyed that its "goal"—and the parties' "goal as well"—should be "to avoid inefficiency and undue burden on any party."  *Id.* 7:24–8:1.

As set forth below, Meta listened to the Court's specific guidance, and now puts forth below a reasonable but limited proposal for discovery coordination—far from "sweeping," as Plaintiffs mischaracterize it.  Meta believes that its coordination proposal will reduce inefficiencies and undue burden to both the Court and the parties.  *Healthcare* Plaintiffs, on the other hand, have entirely ignored the Court's guidance, focusing instead on what's best for them.  Indeed, rather than consider discovery needs common across the three sets of cases, *Healthcare* Plaintiffs simply reject any coordination framework on the false premise that Meta is trying to consolidate the cases.[3]  Further, Plaintiffs frame Judge Orrick's ruling today setting a discovery cut-off date as somehow "irreconcilable" with Meta's proposal.  Not so.  Meta's proposal encourages efficiencies to move this case forward—exactly as

[2] *In re Meta Pixel Tax Filing Cases*, Dkt. 51; *Gershzon*, Dkt. 38.
[3] Notably, the three cases *Healthcare* Plaintiffs cite primarily concern motions for consolidation, not coordination, that were denied by courts.  *See Lugo v. Experian Info. Solutions, Inc.* 2017 WL 11577918, at *1 (N.D. Cal. 2017) (denying motion to consolidate); *In re HP Derivative Litig.*, 2011 WL 5914216, at *5 (N.D. Cal. Nov. 28, 2011) (denying motion to consolidate or coordinate); *Sw. Marine, Inc. v. Triple A Mach. Shop., Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989) (denying motion to consolidate).  The limited discussions of discovery coordination in those cases are not instructive here where Meta is not trying to consolidate the cases, as Meta's proposal herein makes clear.

Judge Orrick suggested.  Despite Plaintiffs' framing, Judge Orrick did not expedite this matter; he, in fact, adopted the fact discovery deadline proposed by both parties in their March 7, 2023 CMC statement.[4]

To the extent it is helpful to the Court, Meta first provides a brief overview of the current status of each of the Pending Cases:

In the *Healthcare* case, Meta's motion to dismiss will be fully briefed on July 17, 2023, and the motion is set for hearing on August 16, 2023.  Discovery in that case has started.  To date, the *Healthcare* Plaintiffs have served a first set of interrogatories and requests for production ("RFPs"), to which Meta has responded.  The parties are in the process of negotiating the scope of those requests.  On May 1, 2023, the parties filed three discovery dispute letters regarding Meta's responses to *Healthcare* Plaintiffs' discovery requests.  Those disputes are set for hearing on May 23, 2023.

In *Gershzon*, Meta filed its motion to dismiss on March 31, 2023, and that motion is set for hearing on June 9, 2023.  Discovery in *Gershzon* began on April 20, 2023.  The *Gershzon* plaintiff has also served a first set of interrogatories and RFPs.  Meta's responses and objections are due May 22, 2023.

In the *Tax* case, the plaintiffs filed a consolidated complaint on May 15, 2023.  Meta intends to move to dismiss that complaint.  Although one plaintiff served requests for production prior to the filing of the consolidated complaint, discovery has not yet begun in earnest.

As instructed by this Court, the parties across the Pending Cases have negotiated a Clawback Order, a Protective Order, and an ESI Protocol.  This Court has entered the Clawback Order and Protective Order.  The final disputes relating to the ESI Protocol are pending before the Court.

Meta's proposal for coordinating discovery across the cases, as it relates to depositions, discovery disputes, and requests for production is as follows:

### *(1) Coordinated depositions*

At the April 20, 2023 conference, the Court directed the parties to "do something about coordinating depositions so that the same person doesn't have to testify on three different occasions

---

[4] In the most recent CMC statement, Meta proposed a fact discovery deadline of April 12, 2024—30 days past the original date they had proposed.

to the same material." April 20, 2023 Hearing Tr. 8:14–16. Consistent with the Court's guidance, Meta proposes that fact witnesses be deposed only once across the Pending Cases.

Meta proposes that depositions of Meta witnesses proceed as follows: The plaintiffs' group will together decide on the Meta witnesses (and any third-party witnesses they subpoena) whose testimony is relevant to more than one case, issuing a single notice or subpoena for each witness. The plaintiffs' group can determine among themselves which counsel will ask global questions that apply to issues relevant to two or more of the Pending Cases; Meta does not object to more than one lawyer asking global questions, but the plaintiffs should coordinate so that different lawyers are not covering the same topics. Counsel for Meta would then have an opportunity to ask redirect questions on global issues. The questions and answers during this portion of each deposition would be treated as if taken in all of the Pending Cases.

After the global portion, counsel representing plaintiffs in each of the individual Pending Cases would have the opportunity to ask the witness case-specific questions (one attorney per case) outside the presence of counsel for the other plaintiffs. Counsel for Meta would then have an opportunity to ask redirect questions on case-specific issues. The questions and answers during these sections of each deposition would be treated as if taken in the individual case to which that section applies.

The plaintiffs' group will also coordinate the time allocation between the global questioning and the case-specific questioning described above. Meta anticipates that, while the standard 7-hour period will be appropriate for certain witnesses, in some circumstances where a witness is deposed on both global and case-specific issues, the parties will work together to schedule an adequate amount of on-the-record time in excess of the time limits established by Fed. R. Civ. P. 30(d)(1). Meta believes it is unnecessary to set specific hour-limits now, as different witnesses will require different amounts of questioning, and Meta expects that the parties can meet and confer on appropriate witness-specific limits.

The parties may also take depositions that are relevant only to a single case, so long as all parties agree that the witness may not later be deposed a second time in any of the Pending Cases. In this

situation, the deposition would proceed in a standard fashion, with the deposition being treated as taken only in that specific case, and with only the relevant parties present.

### (2) Discovery Disputes

Meta is mindful of the Court's guidance that if it is "going to get discovery disputes, [it] would rather not have to deal with the same or similar issues on three different occasions." April 20, 2023 Hearing Tr. 8:21–23. Meta believes it would be helpful for the Court to direct the parties to make <u>all reasonable efforts</u> to coordinate on the filing of any discovery dispute briefs. Given the obvious "overlap . . . in terms of discovery" between the Pending Cases, *id.* 7:22–23, if one plaintiff intends to bring a dispute to the Court, it should be required to confer with the other plaintiffs, so that any interested plaintiff can participate in filing a <u>joint</u> discovery dispute brief or motion. This direction will be important to reduce the overall volume of motion practice across the Pending Cases.

### (3) Requests for Production

Prior to the April 20, 2023 conference, Meta proposed a framework for coordinating written discovery across the Pending Cases. At the April 20, 2023 conference, the Court did not address Meta's specific proposal on written discovery, but directed the parties to consider "whether, for example, some of Meta's document production can be shared across all cases. So maybe it occurs in the first instance in the healthcare party case because that case is ahead of the others . . . ." April 20, 2023 Hearing Tr. 8:5–10. Meta now proposes a framework it believes adheres to this guidance.

Meta is not now re-proposing that all written discovery be coordinated across the Pending Cases. Rather, Meta has significantly narrowed its proposal, including to take into account plaintiffs' vehement opposition to coordinating written discovery. Meta believes that the greatest efficiency to be gained is by coordinating any further requests for production (rather than going back now to identify which already-served requests are global in nature).

Meta thus proposes that, to the extent plaintiffs intend to seek any further requests for production on issues relevant to two or more cases, the plaintiffs' group will work together to issue and serve coordinated, written "global" discovery requests. The plaintiffs' group will issue one copy of written discovery requests to Meta on these "global" issues, rather than issuing duplicative requests

-14-

covering overlapping topics across the three cases. Meta may do the same to the extent there are efficiencies to be gained by issuing a single set of requests to all plaintiffs at once. Meta's responses to any "global" requests, and any documents Meta produces, will be produced to all parties (once discovery is underway in all cases), and any information and documents will be treated as having been obtained through discovery in each of the Pending Cases.

Plaintiffs in individual cases may also serve further case-specific written discovery requests on Meta, up to certain numerical limits agreed to by the parties or ordered by the Court. To be clear, Meta is not proposing that the service of case specific requests be sequenced after "global" requests; rather, both "global" and case-specific requests can proceed simultaneously.

Meta's responses to case-specific requests, and any documents Meta produces for case-specific requests, will be sent only to the plaintiffs that issued the request and will be treated only as having been obtained in that particular case.

### Meta's Response to Plaintiffs' Proposal

*Healthcare* Plaintiffs' resistance to coordinating discovery across the Pending Cases, Dkt. 211, ignores the benefits of coordination to the Court, to Meta, and even to the Plaintiffs. As discussed above, this Court has already identified benefits of coordinated discovery, specifically as to depositions, discovery disputes, and document production, and Meta's proposal focuses narrowly on the efficiencies to be gained through coordinated discovery. *See also Pieterson v. Wells Fargo Bank*, N.A., 2019 WL 1465355, at *2 (N.D. Cal. Feb. 8, 2019) ("[c]oordination is an inherently flexible practice and may be accomplished in many ways," including by "taking care to avoid duplicative discovery").

Meta recognizes that there are some differences between the Pending Cases, which is why its revised proposal contemplates that the plaintiffs in each case maintain the already-served requests for production that pre-date any coordination and can continue to make case-specific written discovery requests, in addition to any future global requests. *See, e.g.*, Manual for Complex Litigation, Fourth, § 20.14 (directing judges to "encourage techniques that coordinate discovery and avoid duplication" in coordinating several cases); *see id.* §§ 11.423, 11.443, 11.452, and 11.464. The same is true for depositions: Meta's proposal contemplates that the parties will work together to arrange depositions

to cover both global *and* case-specific issues, while avoiding unnecessary duplication of effort and burden to witnesses to the extent practicable.  *See In re Telescopes  Antitrust Litig.*, 2021 WL 1541692, at *2 (N.D. Cal. Apr. 20, 2021) (DeMarchi, J.) (requiring parties in separate cases to coordinate on taking depositions of witnesses relevant to both matters, and noting "the Court's authority to manage discovery and to require coordination in the interest of justice"); *Tawnsaura Grp., LLC v. Maximum Hum. Performance, LLC*, 2012 WL 12331032, at *3 (C.D. Cal. Nov. 7, 2012) (coordinating discovery such that witnesses would be deposed only once and "scheduled for enough time to cover all [] individual issues, with common issues handled in a coordinated and nonduplicative manner," and further requiring the parties to "agree on a number of common discovery requests . . . with a small number of additional requests").

Meta has proposed a framework that balances the discovery already underway and the efficiencies that can be gained by coordinated discovery going forward as this Court directed.  In response, Plaintiffs create a laundry list of items that allegedly "will result in delay, confusion, and prejudice."  An examination of this list, however, does not bear out the burdens Plaintiffs claim.

*First*, the alleged "lengthy disputes" that will be generated based on the distinction between "global" and "case-specific" requests is belied by Plaintiffs' own description of their case.  To argue against coordination, Plaintiffs' point this Court to an advertising team and filtering mechanism that they claim to be unique to their case.  Such requests, as Plaintiffs themselves acknowledge, would be considered case specific (and are already the subject of the requests for production that the parties are negotiating).  Further, Meta's proposal makes clear that its proposal concerns only future RFPs that *Healthcare* Plaintiffs wish to serve, and simply asks *Healthcare* Plaintiffs to address any global requests in an efficient manner.

*Second*, *Healthcare* Plaintiffs' arguments that there *might* be appeals and *might* be future cases is an insufficient basis to refuse to develop a framework now to address efficiencies going forward.  Further, Meta has not proposed to coordinate discovery for unknown cases—it has only proposed coordinated discovery for the Pending Cases.

*Third*, there is no prejudice to *Healthcare* Plaintiffs with respect to numerical limits. Despite Plaintiffs' colorful framing, Meta does not seek to "deprive" Plaintiffs of their rights under the Federal Rules. To the contrary, the applicable limits of the Federal Rules *apply* with respect to written discovery. Judge Orrick has not set alternative limits, and if either he or this Court chooses to do so, then those will apply. Similarly, *Healthcare* Plaintiffs' argument that discovery cannot be coordinated because the deponents are not yet known is nonsensical. Meta has proposed a procedure for potential global depositions that takes into account the role of the witness and offers to meet and confer with the parties to ensure the time allotted for each global witness comports with the time needed. Further, Meta's proposal is clear that witnesses specific to any case will be deposed in the normal course. *Healthcare* Plaintiffs' rejection of coordination ignores the Court's direction that the parties should try to "coordinat[e] depositions so that the same person doesn't have to testify on three different occasions to the same material." April 20, 2023 Hearing Tr. 8:14–16.

*Fourth*, Meta's proposal will not delay discovery efforts. Instead, Meta's proposal allows for discovery to continue in a manner that lessens the burdens on the Court and the parties by limiting duplicative depositions and discovery disputes. *Healthcare* Plaintiffs, to the contrary, propose a dispute resolution procedure which shifts the burden *to the Court* to "ask for the Lead Counsel for those cases, on an as needed basis, to provide their own statements in advance" of a dispute hearing. Finally, the purported "size disparity" is a red herring. The size of the *Healthcare* case says little about whether portions of that case overlap with the *Tax* and *Gershzon* cases. Where there is overlap, Meta seeks to create efficiencies and lessen the burden on the Court on the parties.

Ultimately, *Healthcare* Plaintiffs' purported proposal is no proposal at all. Rather than engage on areas of overlap, as this Court directed, *Healthcare* Plaintiffs demand that this Court to kick the can down the road and consider *ad hoc* coordination at some potential later date. *Healthcare* Plaintiffs suggest only that "optional cross-production" could occur whereby counsel in the Pending Cases would be "permitted to share with each other the written Requests for Production" and could "request that Meta cross-produce the documents that Meta produces" in other cases. This is the opposite of a coordination proposal. It actually could triple the burden on Meta while placing no burden whatsoever

on plaintiffs.  Under this "optional" proposal, Meta would be required to produce documents separately in each of the three actions, and then, at the request of any of the three parties, produce it again.

Finally, regarding privilege log formats, Meta suggests that the parties should first meet and confer on this topic before seeking a deadline from the Court.  Because Meta was first made aware of this proposal upon receiving a draft of this joint statement, Meta believes that the parties should first meet and confer regarding this issue and then raise it with the Court if necessary.

1    **2.  WHETHER ANY INTERIM DISCOVERY DEADLINES SHOULD BE SET**

2    *Plaintiffs' Statement:*

3    The *Healthcare* Action began 11 months ago. Discovery has been pending for two months. In

4    January, Judge Orrick instructed the parties to move the *Healthcare* action forward "with dispatch."

5    ECF No. *Id.*

6    As noted above, Judge Orrick has now set a fact discovery cut-off of March 13, 2024 for the

7    *Healthcare* Action. The *Healthcare* Plaintiffs have less than 10 months remaining in fact discovery

8    and need to comply with Judge Orrick's directives to proceed with dispatch. Furthermore, at a May 16

9    *Healthcare* Action case management conference, Judge Orrick told the parties that he was not

10   overwhelmed by their progress, that he would like to see the *Healthcare* Action move forward, and

11   that he would like to see the *Healthcare* Action get rolling.

12   The *Healthcare* Plaintiffs propose interim deadlines that appropriate for the *Healthcare* Action.

13   Since the *DMV* and *Tax* cases are in different postures and have different needs, they are likely to

14   require different deadlines. The *Healthcare* Plaintiffs thus propose the following interim deadlines:

| | |
|---|---|
| Deadline for Meta to propose search terms and data sources to search Meta's documents for *Healthcare* Action | June 6, 2023 |
| Deadline for Meta and *Healthcare* Plaintiffs to reach agreement on initial custodians and search terms to search Meta's documents, or brief the issues with the Court | June 27, 2023 |
| Privilege Log Interim Deadline No. 1 for *Healthcare* Action | August 15, 2023 |
| Deadline for Meta to produce documents from initial custodians and search terms for *Healthcare* Action | September 8, 2023 |
| Privilege Log Interim Deadline No. 2 for *Healthcare* Action | October 8, 2023 |
| Substantial completion of document production for *Healthcare* Action | December 13, 2023 |
| Final Privilege Log Production for *Healthcare* Action | December 20, 2023 |
| Close of fact discovery for *Healthcare* Action (*set by Judge Orrick*) | March 13, 2024 |

Plaintiffs propose these intermediate deadlines to ensure that discovery moves forward in an expeditious manner. Plaintiffs' proposed intermediate deadlines will provide the parties with the needed time to review documents and conduct depositions, and to also serve follow-up discovery requests. Without intermediate document discovery deadlines, the parties will likely end up with an untenably backloaded schedule. Fair interim deadlines will ensure orderly and efficient discovery, and will avoid last minute productions in the midst of depositions or on the eve of the discovery cut-off. This schedule also ensures that the parties will have time to review the documents from the initial custodians and search terms before selecting any additional custodians and search terms.

Each of the *Healthcare* Plaintiffs proposed interim deadlines will assist in moving discovery forward.

1.      **June 6, 2023: Deadline for Meta to propose search terms and data sources to search Meta's documents for the *Healthcare* Action:** In January 2023, Judge Orrick instructed the parties to begin negotiating search terms**.** ECF No. 173. Yet, more than four months later, Meta has yet to propose the search terms. To move discovery forward, the parties need to negotiate search terms and custodians for Meta's documents. And, to negotiate search terms, Meta needs to make an opening proposal. Because Meta has already delayed for four months, Plaintiffs respectfully request that the Court order Meta to propose search terms and data sources within two weeks of this hearing, but June 27, 2023.

2.      **June 27, 2023: Deadline for Meta and *Healthcare* Plaintiffs to reach agreement on initial custodians and search terms to search Meta's documents, or brief the issues with the Court:** This provides Meta and the *Healthcare* Plaintiffs with three weeks to negotiate initial custodians and search terms. This will give the parties an opportunity to meaningfully negotiate initial search terms and custodians[5] without creating an undue delay.

3.      **August 15, 2023; October 8, 2023; and December 20, 2023: Privilege Log Deadlines:** Pursuant to the Court's advise, Plaintiffs propose three deadlines for privilege log productions, two

---

[5] The *Healthcare* Plaintiffs will also need Meta to produce organizational charts for the parties to have a meaningful negotiation regarding custodians. This will be the topic of separate concurrently filed discovery letter brief from the *Healthcare* Plaintiffs and Meta.

interim deadlines and a final deadline.

4.      **September 8, 2023: Deadline for Meta to produce documents from initial custodians and search terms for *Healthcare* Action:** As the Court noted at the hearing, the parties should be provided the opportunity to request additional search terms and custodians. Requests for additional search terms and custodians are a normal part of the discovery process. *See* April 20, 2023 Hearing Transcript at 90:4-17. This deadline ensures that the *Healthcare* Plaintiffs will have time to review the documents from the initial custodians and search terms before requesting any additional custodians and search terms.

5.      **December 13, 2023: Substantial completion of document production deadline.** The *Healthcare* Plaintiffs propose a final document production date that is 90 days before the close of discovery. *See* April 20, 2023 Hearing Transcript at 101:5-9.

Finally, Plaintiffs note that, as discovery proceeds, additional interim deadlines may become necessary for non-custodial documents or certain types of non-custodial documents.

***Meta's Statement:***

During the March 14, 2023 case management conference, Judge Orrick noted that it was premature to set a schedule for the *Healthcare* case, but indicated that the Fall of 2025 is a reasonable date for trial.  March 14, 2023 Hearing Tr. 13:20–22.  During the May 16, 2023 case management conference, Judge Orrick set a discovery cut-off date of March 13, 2024, noting that, after discovery progressed further, he would be open to hearing from Your Honor or the parties if this date was not workable.  Judge Orrick stated that the parties should aim for the trial to take place in November 2025.

Meta is cognizant of the Court's suggestion that setting discrete interim discovery deadlines, namely, for the production of the parties' privilege logs, April 20, 2023 Hearing Tr. 100:12–14, and the substantial completion of document productions, *id.* 101:15–18, will allow it to better offer the parties "the benefit of [its] guidance," *id.* 101:18.  As such, Meta proposes, with the Court's guidance, the following interim discovery deadlines:

| Event | Date |
|---|---|
| Interim privilege log production | September 15, 2023 |
| Interim privilege log production | December 15, 2023 |

| Event | Date |
|---|---|
| Substantial completion of document production | January 19, 2024 |
| Final privilege log production | February 2, 2024 |

Meta believes that these interim deadlines will be helpful both to the parties and to the Court, in terms of keeping discovery progressing in an efficient fashion, and also giving the Court time to weigh in on any potential disputes. A substantial completion date of January 19, 2024, will give the Parties two months to complete depositions after documents have been produced, while avoiding deadlines that fall during end of year holidays.[6] And providing three separate deadlines to provide privilege logs will likewise allow the parties and the Court to iron out any disputes involving those logs before the end of the fact discovery period.

*Healthcare* Plaintiffs' proposal, however, demands additional interim deadlines that are both unnecessary and ignore the different search methodologies proposed by the parties. In fact, Plaintiffs' proposed initial interim deadline to produce a privilege log (August 15, 2023) occurs before the date Plaintiffs set for an initial production (September 8, 2023)—which makes no sense. By setting these additional interim deadlines, Plaintiffs insist that Meta abandon its search methodology in favor of Plaintiffs' preferred methodology, even though the parties' differing ESI Protocols are pending before the Court. Plaintiffs demand that the parties spend the next several weeks negotiating—and then raising with the Court—the precise "search terms," custodians, and databases that Meta needs to use to complete an undefined "initial" set of document productions in this case. And then Plaintiffs give Meta only about 2 months to review all of those documents and complete production of responsive material. Notably, Plaintiffs make this demand even though (1) the hearing on Meta's motion to dismiss is set for August 16, 2023 (one day *after* Plaintiffs' proposed initial interim privilege log deadline), (2) there are pending discovery disputes before this Court that may vastly impact the scope of any potential review and production, and (3) Plaintiffs have referenced thousands of additional websites they may

---

[6] Meta has proposed a substantial completion deadline that is 54 days before its proposed discovery cut-off date. This is in line with the 30 to 60 days suggested by the Court at the April 20, 2023 discovery conference. *See* April 20, 2023 Hearing Tr. 101:7-9.

seek to add to the case, which will have a significant impact on document collection and review.  All of these issues require flexibility in discovery, not rigidity.

The parties are making significant progress negotiating the responses to Plaintiffs' sixty-seven RFPs, but Meta believes it is important, especially in light of the pending disputes and motion to dismiss briefing, that the parties have the time and flexibility to complete these discussions on a timeline favoring substance over speed.  Plaintiffs' interim deadlines would deprive the parties of that time and flexibility, with little to no benefit.

1   Dated: May 16, 2023                    **GIBSON, DUNN & CRUTCHER LLP**

2                                          By:   */s/ Lauren Goldman*
                                                  Lauren Goldman
3
                                           **COOLEY LLP**
4
                                           By:   */s/ Michael G. Rhodes*
5                                                 Michael G. Rhodes

6                                          *Attorneys for Meta Platforms, Inc. (formerly known as*
                                           *Facebook, Inc.)*
7

8   Dated: May 9, 2023                     By:   */s/ Jason "Jay" Barnes*
                                                  Jason 'Jay' Barnes
9

10                                         **SIMMONS HANLY CONROY LLC**

11                                         Jason 'Jay' Barnes (admitted *pro hac vice*)
                                              *jaybarnes@simmonsfirm.com*
12                                         112 Madison Avenue, 7th Floor
                                           New York, NY 10016
13                                         Tel:    212-784-6400
                                           Fax:    212-213-5949
14

15                                         By:   */s/ Geoffrey Graber*
                                                  Geoffrey Graber
16

17                                         **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                           Geoffrey Graber, State Bar No. 211547
18                                            *ggraber@cohenmilstein.com*
                                           1100 New York Avenue NW, Fifth Floor
19                                         Washington, DC 20005
                                           Tel:    202-408-4600
20                                         Fax:    202-408-4699

21                                         **KIESEL LAW LLP**
                                           Jeffrey A. Koncius, State Bar No. 189803
22                                            *koncius@kiesel.law*
                                           8648 Wilshire Boulevard
23                                         Beverly Hills, CA 90211
                                           Tel:    310-854-4444
24                                         Fax:    310-854-0812

25                                         **TERRELL MARSHALL LAW GROUP PLLC**
                                           Beth E. Terrell, State Bar No. 178181
26                                            *bterrell@terrellmarshall.com*
                                           936 North 34th Street, Suite 300
27                                         Seattle, WA 98103
                                           Tel.:    206-816-6603
28                                         Fax:    206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
 *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
Fax:    510-350-9701

*Attorneys for Plaintiff*

JOINT STATEMENT
CASE NO. 3:22-CV-03580-WHO

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Eric A. Kafka, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: May 16, 2023                         By:    */s/ Eric A. Kafka*