UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-03580-WHO (VKD) |
| IN RE META PIXEL TAX FILING CASES<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-07557-SI (VKD) |
| MIKHAIL GERSHZON, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC.<br><br>        Defendant. | Case No. 3:23-cv-00083-SI (VKD) |

**<u>DECLARATION OF SAM YANG</u>**

I, Sam Yang, hereby declare and state:

1.      I am a Forensic Technology Lead, eDiscovery and Information Governance, at Meta Platforms Inc. ("Meta").  I have been employed at Meta since January 22, 2019, and I have held my current position since that date.  Prior to my employment at Meta, I was a Senior Associate in the Forensic Technology practice at KPMG LLP from 2014 to 2019.  Over the course of my employment at Meta, I have acquired personal knowledge of Meta's discovery capabilities concerning its communication tools and data sources.

2.      I submit this declaration at the Court's request to address the question "whether the tools plaintiffs have identified would permit Meta to collect hyperlinked documents as part of ESI without undue burden."  *See In re Meta Pixel Healthcare Litig.*, Case No. 3:22-cv-03580 ("*Healthcare*"), Dkt. 258 (Second Order re Dispute re ESI Protocol); *In re Meta Pixel Tax Filing Cases*, Case No. 3:22-cv-07557, Dkt. 81 (same); *Gershzon v. Meta Platforms, Inc.*, Case No. 3:23-cv-00083, Dkt. 67 (same); *see also Healthcare* Dkt. 235-4 (Declaration of Douglas Forrest ("Forrest Decl.")).

3.      The contents of this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Meta's discovery capabilities as they relate to Meta's communication tools and data sources, materials that were provided to me and reviewed by me, and/or informed conversations with other knowledgeable employees of Meta.  If called upon as a witness in this action, I could and would testify competently to the matters discussed in this declaration.

**The Technical Challenges Of Hyperlinks**

4.      I understand that plaintiffs in the above-captioned cases have suggested that Meta use two tools identified by Douglas Forrest—Metaspike's Forensic Evidence Collector and

Microsoft Purview eDiscovery (Premium)—to collect hyperlinked documents from hyperlinks included in Meta communications and then associate those hyperlinked documents with the separate communications to create document "families."

5. The two tools identified in the Forrest Decl. would not enable Meta to collect hyperlinked documents without undue burden.

6. The Forrest Decl. does not address the technical realities of Meta's data environment or systems.

7. Hyperlinked documents are not attachments. Hyperlinked documents present unique collection, review, and production challenges that make them different from the standard collection, review, and production of attachments to emails and other communications.

8. Meta has used or currently uses several different collaboration and communication tools that an employee may use to share or generate a hyperlink, including Microsoft Outlook, Google Workspace, Dropbox, Workplace Groups, Workplace Chat, Quip, and Microsoft OneDrive, among others. A Meta employee can create or provide a link to any of these systems that links to a document in one of the other, unrelated systems.

9. In my experience, and to the best of my knowledge, there is no discovery tool or application that automatically identifies, collects, and associates underlying hyperlinked documents to documents or email messages containing embedded hyperlinks to various, unrelated systems. Searching for, collecting, and linking underlying hyperlinked documents to documents containing embedded hyperlinks to unrelated systems must be done manually, on a source-by-source, hyperlink-by-hyperlink basis. Further, each source system presents its own unique challenges when it comes to manually identifying and collecting hyperlinked documents.

10. In addition, Meta uses a wide variety of internally developed tools and applications that are not publicly accessible and are limited to Meta's intranet. In order for third-party developers (for example, Metaspike) to create tools for automating data collections for a platform or system, they must have developer access to the said system or platform in order to understand its code base and functionalities and to build their tool accordingly. There are no third-party developers that are building a forensics collections tool who have access to Meta's internal applications and tools.

11. Further, Meta employs an internal tool that shortens lengthy URLs, including hyperlinks. The external, third-party tools identified in the Forrest Decl., in addition to the challenges stated in section 10, are not compatible with this internal tool or the resulting shortened hyperlinks because the shortened URLs are only translatable from internal Meta servers. Accordingly, the two third-party tools will be unable to identify, collect, or associate the associated hyperlinked documents using the shortened hyperlinks created by Meta's internal tool.[1]

12. Finally, the content of hyperlinked documents can—and often does—change after a hyperlink is sent; individuals can make revisions to the hyperlinked document in the normal course. If the document has been modified since the link was created, the document as it existed when the hyperlink was created and sent cannot always be automatically retrieved via the

---

[1] Due to changes in this internal tool over the years, older hyperlinks that have been shortened may not automatically resolve to the target document, as the older format of the shortened URL link is not always compatible with the present tool. Under these circumstances, a Meta employee must either attempt to manually re-format the hyperlink, or manually reverse lookup the link ID through the URL shortening tool to identify the original URL. Therefore, even if the barriers concerning the shortened hyperlinks could be overcome, there would still be a manual review and collection process involved for older hyperlinks that are no longer compatible with Meta's current system.

hyperlink, but would instead require additional manual processes to identify and collect the prior versions, if possible, depending on the functionalities of the specific platform at issue.

**The Forrest Decl. Fails To Address Meta's Data Environment or Systems**

13. Based on my review of the Forrest Decl., it is my understanding that Mr. Forrest identified two "tools for automatically collecting links to non-public documents in related systems." Forrest Decl. ¶ 12. According to Mr. Forrest, "for Microsoft Exchange environments, Microsoft Purview eDiscovery (premium) can collect links to non-public SharePoint and OneDrive cloud attachments." *Id.* ¶ 13. According to Mr. Forrest, "for Google Mail environments, Metaspike's well-known and widely used Forensic Evidence Collector can collect Google Mail links to non-public Google Drive documents." *Id.* ¶ 14.

14. Mr. Forrest has not identified a tool or system that would operate outside of a "related system." *See* Forrest Decl. ¶ 12. In other words, Mr. Forrest has not identified a tool or application that can identify a hyperlink in one platform (for example, in Quip) and then identify, collect, and associate the hyperlinked document if the hyperlinked document exists in a separate, unrelated platform (for example, in Workplace).

15. Mr. Forrest does not provide any information regarding how these tools address the challenges associated with hyperlink collection that I described above, either generally or for Meta specifically. To the contrary, my review of the literature suggests that these tools would not resolve these obstacles if applied to Meta's data environment or systems, and they would increase the amount of time and resources that Meta would need to devote to this issue with few, if any, resulting efficiencies.

**Meta Does Not Use Metaspike's Forensic Evidence Collector, and Metaspike's Forensic Evidence Collector Is Inapplicable To Meta's Environment**

16. As Mr. Forrest acknowledges, Metaspike's Forensic Evidence Collector is "for Google Mail environments . . . [and] can collect Google Mail links to non-public Google Drive documents." Forrest Decl. ¶ 14.

17. Meta uses Microsoft Exchange for emails, not Google Mail ("Gmail"), so Meta does not use Metaspike or its Forensic Evidence Collector because it does not provide Meta's eDiscovery team any benefit.

18. Hypothetically, even if Meta did use Gmail and were to undertake the expense and burden of purchasing, installing, integrating, testing, and maintaining this new tool within Meta's environment, Metaspike's Forensic Evidence Collector would not address the plaintiffs' demand that communications containing hyperlinks be linked to and associated with the underlying hyperlinked documents because Metaspike only supports hyperlink association and collection within the Google Workspace platform. Accordingly, Metaspike's Forensic Evidence Collector would not be capable of collecting any hyperlinks in communications or documents located in other, non-Google systems that are not compatible with Metaspike's Forensic Evidence Collector, such as Dropbox, Quip, Workplace Groups, and Microsoft OneDrive.

**Meta Does Not Use Microsoft Purview eDiscovery (Premium) To Collect Hyperlinked Documents**

19. As Mr. Forrest acknowledges, Microsoft Purview eDiscovery (Premium) is limited to "Microsoft Exchange environments," and is further limited to "links to non-public SharePoint and OneDrive cloud attachments." *Id.* ¶ 13.

20. Although Meta has Microsoft Purview eDiscovery (Premium) as a part of the Microsoft Enterprise licensing, Meta does not use Microsoft Purview eDiscovery (Premium) to

perform any data collections, and thus Meta has not assessed or implemented any of the configurations necessary for this feature of the tool. Instead, Meta uses Purview Standard eDiscovery for its internal workflow whereby it collects emails in their native formats and processes them through Meta's internal Nuix lab, within the Nuix eDiscovery Workstation. Further, Meta's emails dated prior to March 31, 2023 are archived in a non-Microsoft system,[2] and thus this tool could not be applied to any archived email communications containing hyperlinks in the other systems. Accordingly, at most, this tool could be used to identify hyperlinks within Microsoft Exchange emails dated after the switchover on March 31, 2023 that link only to Microsoft SharePoint and OneDrive documents, and then collect those SharePoint and OneDrive documents (assuming there are no shortened hyperlinks that would interfere with the tool). This tool cannot identify or collect hyperlinks to any of the many systems outside Microsoft SharePoint and OneDrive that Meta employees use.

21. In addition, as stated above, Meta uses Nuix eDiscovery Workstation as its data processing tool whereby Meta has configured the workflows so that metadata extraction, text indexing, and MD5 calculation of data are all standardized across data from any of the platforms or systems from which Meta collects data. However, Microsoft Purview eDiscovery (Premium) is an end-to-end platform that, if used to collect data, automatically processes all metadata extraction, text indexing, and MD5 calculation. If Meta were to use Microsoft Purview eDiscovery (Premium) to process a limited amount of Microsoft Exchange emails for the specific use case of attempting to link post-March 31, 2023 hyperlink documents to only OneDrive and SharePoint hyperlinks (if any), it would result in drastic interferences to Meta's standardized workflows that could result in material differences regarding how metadata are

---

[2] Post-March 31, 2023, Meta switched over its archive system.

extracted, text is indexed, and MD5 calculation algorithm between the Microsoft Purview eDiscovery (Premium) processing engine and the Nuix processing engine.

**Conclusion**

22.     The two tools identified in the Forrest Decl. would not enable Meta to collect hyperlinked documents without undue burden.

23.     Because Meta utilizes Microsoft Exchange, not Gmail, Metaspike's Forensic Evidence Collector tool is not applicable to Meta's environment, nor used by Meta.

24.     Meta does not use Microsoft Purview eDiscovery (Premium) to perform any data collections. Instead, Meta collects emails in their native formats and processes them within the Nuix eDiscovery Workstation. As described above, the use of both the Nuix processing engine and Microsoft Purview eDiscovery (Premium) processing engine would result in drastic interferences to Meta's standardized workflows.

25.     Finally, either tool would be useless for any links sent in one system that connect to another system that Meta uses, and Meta would still have to undertake a case-by-case, hyperlink-by-hyperlink manual assessment for any and all hyperlinks that generate errors within the tools due to one or more of the many challenges and limitations described above.

26.     For these reasons, implementing these tools would impose a substantial burden on Meta while providing minimal—if any—ability to collect hyperlinked documents without a case-by-case, hyperlink-by-hyperlink manual assessment process.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this Declaration on June 1, 2023, in Menlo Park, CA.

                                                            */s/ Sam Yang*
                                                            Sam Yang