UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-03580-WHO |
| IN RE META PIXEL TAX FILING CASES<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-07557-SI |
| MIKHAIL GERSHZON, individually and on behalf of others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>META PLATFORMS, INC.<br><br>　　　　　Defendant. | Case No. 3:23-cv-00083-SI |

**DECLARATION OF JAMIE A. BROWN**

1

I, Jamie A. Brown, hereby declare and state:

1.     I am the Vice President of Global Advisory Services at Lighthouse. I am an attorney and legal consultant, specializing in information law, which includes eDiscovery. I have over 23 years of in-house, government, and law firm experience, which I draw upon to advise clients on various challenges related to the use of information and technology in the context of litigation and investigations. My prior experience includes working for UBS, where, as Executive Director and Global eDiscovery Counsel, I was responsible for designing, implementing, and managing the company's global eDiscovery programs to support the firm's global litigation and investigation docket. I also worked for Barclays, leading and implementing a global program to reduce legal, regulatory, and privacy risk associated with legacy systems and data. Prior to corporate, I spent several years in government service, first as a trial attorney in the Division of Enforcement at the U.S. Commodity Futures Trading Commission in Washington, D.C., and later, as Assistant General Counsel, Head of eDiscovery and Information Governance, where I served as the Agency's resident eDiscovery expert. My career began as a litigation associate at King & Spalding, and later, as a partner at Fennemore Craig specializing in information law. Through the aforementioned roles, I have evaluated hundreds of eDiscovery protocols. I have also consulted with hundreds of clients on how to comply with eDiscovery standards, which continue to evolve with changing technology.

2.     Lighthouse provides eDiscovery services to Meta Platforms, Inc. ("Meta").

3.     I submit this declaration at the Court's request regarding "whether Meta can provide metadata for relevant fields for each email thread member within the Last In Time Email without undue burden." *See In re Meta Pixel Healthcare Litig.*, Case No. 3:22-cv-03580 ("*Healthcare*"), Dkt. 258 (Second Order re Dispute re ESI Protocol); *In re Meta Pixel Tax Filing*

*Cases*, Case No. 3:22-cv-07557 ("*Tax*"), Dkt. 81 (same); *Gershzon v. Meta Platforms, Inc.*, Case No. 3:23-cv-00083 ("*Gershzon*"), Dkt. 67 (same).

4. As I discuss in greater detail below, satisfying plaintiffs' request would require Lighthouse personnel to dedicate substantial manual effort to design, write, debug, deploy, and maintain many customized computer scripts, all of which would create a significant risk of subtle, technical errors hidden in voluminous metadata that are difficult to prevent, detect, and correct.

5. The contents of this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge, materials that were provided to me and reviewed by me, and/or informed conversations with other knowledgeable employees of Lighthouse. If called upon as a witness in this action, I could and would testify competently to the matters discussed in this declaration.

6. I have reviewed the email threading proposal put forth by Meta. *Healthcare* Dkt. 235-2 § 7(b); *Tax* Dkt. 70-2 § 7(b); *Gershzon* Dkt. 57-2 § 7(b). I understand the Court has adopted Meta's email threading proposal, subject to additional information concerning metadata requested by plaintiffs.

7. I have reviewed the email threading metadata request put forth by the plaintiffs. *See Healthcare* Dkt. 235-1 § 7(b); *Tax* Dkt. 70-1 § 7(b); *Gershzon* Dkt. 57-1 § 7(b). I understand that plaintiffs propose the following requirement for email threading metadata: "Where a Last In Time Email is produced, the Producing Party will include metadata corresponding to the following metadata fields for each of the earlier email thread members fully contained within the Last In Time Email: Sent Date, Sender, Recipient, CC, BCC, and Subject." *See, e.g.*, *Healthcare* Dkt. 235-1 § 7(b).

8. In my experience, providing the email threading metadata requested by plaintiffs is not an industry standard practice for email threading because it would require a great deal of manual, customized work and would heighten the risk of mistakes in each case in which it is used.

9. For these reasons, in my experience, the industry standard practice with respect to metadata for threaded emails is to provide the metadata that corresponds to the Last In Time Email.[1]

10. Lighthouse does not have an existing process for identifying, extracting, and associating to the Last In Time Email the metadata requested by plaintiffs for each and every email within an email thread.

11. In order to identify, extract, and associate to the Last In Time Email the metadata requested by plaintiffs for each and every email within an email thread, Lighthouse would have to design, build, test, debug, implement, and administer new, customized scripts within our eDiscovery software systems to identify, extract, and associate the requested metadata for each and every email within the Last In Time Email thread. Scripts are instructions similar to computer code that direct Lighthouse's eDiscovery tools and systems to perform in a specified way. Creating these new scripts is a manual process akin to writing a new computer program—an eDiscovery Data Engineer with Lighthouse would have to program Lighthouse's eDiscovery tools to function in a new, customized, and non-standard manner.

12. Lighthouse's eDiscovery Data Engineer would have to manually create several new, non-standard scripts to create a new, bespoke process to identify, extract, and associate to

---

[1] Unless stated otherwise, capitalized terms have the meaning provided in Meta's proposed ESI Protocol. *See Healthcare* Dkt. 235-2; *Tax* Dkt. 70-2; *Gershzon* Dkt. 57-2.

the Last In Time Email the metadata requested by plaintiffs for each and every email within an email thread, including scripts to:

    a. identify all of the earlier email thread members fully contained within the Last In Time Email;

    b. identify within the document database all of those earlier email thread members and their associated metadata;

    c. identify and extract the Sent Date metadata for each of those earlier email thread members;

    d. identify and extract the metadata reflecting the sender of the email for each of those earlier email thread members;

    e. identify and extract the metadata reflecting the recipients that were included on the "To" line of the email for each of those earlier email thread members;

    f. identify and extract the metadata reflecting the recipients that were included on the "CC" line of the email for each of those earlier email thread members;

    g. identify and extract the metadata reflecting the recipients that were included on the "BCC" line of the email for each of those earlier email thread members;

    h. identify and extract the Email Subject metadata for each of those earlier email thread members;

    i. create new metadata fields for each of the specified pieces of metadata associated with the earlier email thread members—requiring a separate script for each new metadata field;

    j. overlay and associate the new metadata fields with the Last In Time Email; and

  k. populate the new overlay metadata fields for each of the specified pieces of metadata associated with the metadata identified and extracted for each of the earlier email thread members with the metadata that has been extracted—requiring a separate script for each category of metadata.

  13. For Last In Time Emails threads with more than one earlier email contained within the thread, Lighthouse must also determine whether the requested metadata for the earlier email thread members should be combined into aggregate fields (in which case Lighthouse would have to write additional scripts to combine each category of metadata identified and extracted for each earlier email thread member into an aggregate field), or whether the requested metadata for the earlier email thread members should be provided in separate metadata fields corresponding to each earlier email thread member (in which case Lighthouse would have to write additional scripts to create these successive metadata fields and account for a potentially unknown number of these successive fields, depending on how many earlier email thread members are contained in a Last In Time Email).  Again, because this is not a standard eDiscovery practice, there is no protocol or accepted method for providing this information.

  14. Once created, all of these scripts must then undergo an iterative quality control process to ensure accuracy and reliability.  These processes require the work of 3 to 5 individuals to write the code, quality-test the code, and undertake additional related tasks to ensure accuracy and reliability.  The code writing and testing process is complicated.  Lighthouse estimates that these processes would take a minimum of 4 weeks, but most likely 12 to 16 weeks to complete, depending on the level of complexity.  This timeframe is in addition to the time and resources required for accomplishing the standard processes associated with providing metadata in connection with document productions.

15.     After this new process and all of the new scripts have been created and have gone through Lighthouse's quality control processes, further complications can arise when processing a document production.  The code must be executed for each separate production, which Lighthouse estimates will add 24 to 48 hours to the time required for each production, with a consequent increase in the cost of each production.  Further, because the additional metadata fields correspond to a Last In Time Email that will be produced, not to the earlier email thread members from which the metadata was extracted, any changes to the pre-production set, for example adding or removing a document in the production set, may not automatically adjust the metadata overlay to account for the change(s).  In my experience, changes to pre-production sets are a common part of the discovery process.  Given the common occurrence of such pre-production changes, an extremely time consuming process would be necessary to manually review and edit each production set and associated metadata prior to each production to confirm the newly-created metadata fields are associated with the correct Last In Time Email.

16.     In my experience, Lighthouse does not offer in the normal course the type of non-standard email threading metadata that plaintiffs have requested.  Lighthouse's experience providing the non-standard email threading metadata that plaintiffs have requested is limited.  And for good reason: satisfying plaintiffs' demand would require a team of Lighthouse personnel to write, test, debug, implement, and maintain a suite of custom scripts throughout the course of discovery.  Creating and implementing these unique scripts will almost certainly greatly increase the possibility of human and computer error.  And when errors of this nature occur, discovery must be re-done at great cost and with great delay.

17.     I am aware of one prior matter in which Lighthouse provided a similar type of non-standard email threading metadata for Meta, and in that matter, the process to provide

similar metadata was complicated, time consuming, and required the diversion of significant resources, approximately 4 individuals for a duration of 3 weeks, to build, test, and modify the necessary unique scripts at the outset, as well as ongoing cross-functional resources over the course of discovery to monitor for and correct errors caused by these error prone, non-standard processes.  The processes required for this one case were not standard processes for Lighthouse, nor were they standard industry processes.

18. If Meta were required to undertake these processes to provide this non-standard email threading metadata in these matters, Lighthouse would similarly have to go through this manual, burdensome, and time-consuming process.  Lighthouse would not be able to rely on or make use of the scripts created for the prior matter because they were customized, manually created scripts specific to that data collection.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this Declaration on June 1, 2023, in New York, New York.

*Jamie Brown*

Jamie A. Brown