IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-3580-WHO<br><br>PUTATIVE CLASS ACTION<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Action Filed: June 17, 2022<br><br>Honorable Judge William H. Orrick |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The Parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's guidelines for the discovery of ESI.

3. **DEFINITIONS**

(a) **"Electronically stored information"** or **"ESI,"** as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

(b) **"Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

(c) **"Non-Party"** means <u>any</u> natural person, partnership, corporation, association, or other legal entity who is not a Party (as defined below) in this action.

(d) **"Party"** means any party to this action, including all of its officers, directors, and employees.

(e) **"Producing Party"** means a Party or Non-Party that produces ESI in this action.

(f) **"Receiving Party"** means a Party that receives ESI from a Producing Party in this action.

4. **LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**5.    SEARCH**

The Parties agree that they will meet and confer regarding sources of ESI and methods to search ESI in order to identify potentially responsive, non-privileged information.

**(a)** <u>ESI Data Sources</u>:  The party producing ESI must identify and disclose to the requesting party the custodial and non-custodial ESI data sources it reasonably believes contain information that is relevant to the claims and defenses asserted in the action and proportional to the needs of the case, taking into account the requests for discovery the producing party has received, as well as the type of ESI (e.g., email, database, etc.) for each data source.  This disclosure will include proposed custodians whose ESI will be subject to search to identify potentially responsive, non-privileged information.

No later than 5 business days after receiving the Producing Party's identification of data sources and type of ESI, the Receiving Party may propose to the Producing Party additional or alternative custodial or non-custodial data sources it reasonably believes contain information that is relevant to the claims and defenses asserted in the action and proportional to the needs of the case.

The parties must confer within 14 business days of the Receiving Party's proposal to resolve any disputes about the Producing Party's data sources, unless the Parties agree to extend the deadline.

**(b)** <u>Search Terms</u>:  A Producing Party may, but is not required to, use search terms to locate or identify potentially relevant ESI.  If a Producing Party elects to use search terms in connection with its collection, review, or production of ESI from a data source, the Producing Party must disclose the search terms it intends to use to the Receiving Party.  At the time it makes this disclosure, the Producing party must provide a hit report (to include unique hits, hits with families, and total number of documents hit) for the search terms applied to each data source.  In preparing its proposed search terms, a Producing Party may review a "null set sample" for each data source.  The "null set sample" is a statistically valid (95% ±5), randomly generated sample set of documents from a given data source that do not hit on any search terms, which the Producing Party reviews for relevant, responsive, and non-privileged documents.  At the time the Producing Party discloses its proposed search terms to the Receiving Party, it may provide the results of its review of the "null set sample"—i.e., a disclosure of how many relevant, responsive, and non-privileged documents from null set sample were not captured by the proposed search terms—to demonstrate the effectiveness of its proposed search terms.

No later than 5 business days after receiving the Producing Party's disclosure of proposed search terms and accompanying information, the Receiving Party may propose to the Producing Party additional or alternative search terms for one or more data sources, and may request that the Producing Party provide hit reports for the additional or alternative search terms for one or more data sources.

The Producing Party shall promptly assess the Receiving Party's proposed additional or alternative search terms, including by running the requested hit reports, reviewing additional "null set samples," or performing any other analyses the Producing Party believes would assist the Parties in evaluating the effectiveness of the proposed search terms. The Producing Party must provide the hit reports requested by the Receiving Party, but may also provide other information.

The Parties must confer within 14 business days of the Receiving Party's proposal to resolve any disputes about the search terms to be applied to the Producing Party's data sources, unless the Parties agree to extend the deadline.

**(c)** <u>Use of Technology Assisted Review</u>. A Producing Party may, but is not required to, use technology assisted review or similar advanced analytics ("TAR") to filter out or exclude from review and production non-responsive documents. If a Producing Party elects to use TAR for this purpose, the Producing Party must disclose the following information in advance to the Receiving Party: (1) the custodial and non-custodial data sources against which TAR will be run; (2) the TAR tool being used and the name of the vendor; and (3) the measure(s) used to validate the results of the TAR methodology.

A Producing Party need not disclose whether it is using TAR, Continuous Active Learning ("CAL"), or any other predictive coding tool merely to prioritize the review of ESI.

**(d)** Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact responsive to the Receiving Party's discovery requests.

**(e)** Nothing in this Order may be construed to relieve a Producing Party of its obligations under the Federal Rules of Civil Procedure.

**(f)** Each Producing Party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. For

-4-

example, Hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

### 6. DE-DUPLICATION AND EMAIL THREADING

**(a)** <u>De-Duplication</u>.  Each Producing Party is required to produce only a single copy of a responsive document and each Producing Party may de-duplicate responsive ESI (e.g., based on MD5 hash values at the document level) across custodians, provided that metadata is produced indicating all of the Custodians with whom a copy of the responsive document was associated.  For emails with attachments, the hash value is generated based on the parent/child document grouping.  To the extent that de-duplication through MD5 hash values is not possible, the Parties shall meet and confer to discuss any other proposed method of de-duplication.

**(b)** <u>Email Threading</u>.  Where multiple email messages are part of a single chain or "thread," a Producing Party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email.  Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

### 7. PRODUCTION FORMATS

Appendix A sets forth technical specifications that govern the form of production of documents in this litigation.  If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.

The Parties agree not to degrade the searchability of documents as part of the document production process. The Parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

To the extent any data, ESI, or documents requested in discovery are not reasonably usable absent translation by the Producing Party or its systems, the Parties shall meet-and-confer regarding translation by the Producing Party into a reasonably usable form and the production of legends or keys employed to translate the data.

## 8. DOCUMENTS PROTECTED FROM DISCOVERY

**(a)** Communications involving trial counsel of record that post-date the filing of the complaint (June 17, 2022) need not be placed on a privilege log.

**(b)** The Parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs will be produced in Microsoft Excel. The Parties agree to separately discuss the format of privilege logs.

**(c)** The Parties will negotiate interim and final deadlines for the production of privilege logs that permit any disputes about claims of privilege or work product protection to be addressed in advance of the close of fact discovery. If the parties are unable to agree on specific dates for interim and final deadlines for the production of privilege logs, the Parties may ask the Court to resolve the dispute.

## 9. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: June 5, 2023

*Attorneys for Plaintiffs*

By: /s/ *Jason "Jay" Barnes*
Jason "Jay" Barnes

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
Jennifer Paulson (admitted *pro hac vice*)

By: /s/ *Geoffrey Graber*
Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
Eric Kafka (admitted *pro hac vice*)
Claire Torchiana. State Bar No. 330232

By: /s/ *Jeffrey A. Koncius*
Jeffrey A. Koncius

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
Paul R. Kiesel, State Bar No. 119854
Nicole Ramirez, State Bar No. 279017

By: /s/ *Andre Mura*
Andre Mura

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
Rosemary M. Rivas, State Bar No. 209147
Hanne Jensen, State Bar No. 336045

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**
CASE NO. 3:22-CV-3580-WHO (VKD)

By: /s/ *Beth E. Terrell*
    Beth E. Terrell

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181

Dated: June 5, 2023

*Attorneys for Defendant Meta Platforms, Inc.*

By: /s/ *Lauren R. Goldman*
    Lauren R. Goldman

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-4000
Facsimile:   (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:  (415) 393-8200
Facsimile:   (415) 393-8306

TRENTON J. VAN OSS (*pro hac vice*)
tvanoss@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  (202) 955-8500
Facsimile:   (202) 467-0539

**COOLEY LLP**
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: June 6, 2023

                                      VIRGINIA K. DEMARCHI
                                      United States Magistrate Judge

# APPENDIX 1: PRODUCTION FORMAT

1. **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications.

    **(a)** an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

    **(b)** an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity) that shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT;

    **(c)** TIFF images;

    **(d)** native files; and

    **(e)** document level .TXT files for all documents containing extracted full text or OCR text.

    In addition:

    **(a)** Parent-child relationships will be maintained in production. Links within a document are not considered attachments for the purposes of maintaining a "family" relationship in production. The Receiving Party may make reasonable requests for production of hyperlinked documents on a case-by-case basis.

    **(b)** If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Production Media and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g. FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g. "VOL001"). Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c)

-8-

the Producing Party's name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media. Nothing in this Order will preclude or impair any and all protections provided to any Party or Non-Party by any Protective Order(s) agreed and entered into by the Parties. Any data produced by the Producing Party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

4. **Metadata Fields and Metadata File[1].** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. A

---

[1] The Parties reserve the right to request that additional metadata fields are added as discovery progresses.

Producing Party is not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the Producing Party or the Producing Party's vendor. The Producing Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents. The metadata shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)
- Multi-value delimiter = ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| ATTACHNAME | The file name(s) of the attachment(s) to a parent document(s). Separated by a semicolon. |
| AUTHOR | Any value populated in the Author field of the document properties |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| FILENAME | Original file name |
| FILEPATH | Original path to the individual source file.  Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| EMAIL SUBJECT | Subject line of email pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) |

| Field Name | Field Description |
|---|---|
| REDACTIONS | Indicate Yes/No if document is redacted |
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication |
| PAGE COUNT | The number of pages of the Document, excluding the pages of documents in the same family |

5. **Processing.** With the exception of time zone modification (discussed below), ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification. ESI items shall be produced with all of the metadata and coding fields set forth above.

   (a) Time Zone. ESI items shall be processed so as to preserve and display the date/time shown in the document. ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a Producing Party, that time zone shall be Pacific Standard Time (PST), and shall be consistent across each Producing Party's productions. Such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

   (b) Hidden Content. ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the document.

   (c) TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, with at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with

-12-

the respective page of a document.  Each image shall be branded with the Bates number and the agreed upon confidentiality designation.  Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  All images will display all data visible in its native application.  Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher-quality TIFF image or the native or original file.  TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

6. **Hard Copy Documents.**  Documents that exist only in hard copy format shall be scanned and produced as TIFFs.  Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs.  Hard copy documents shall be produced with an accompanying metadata load file as forth above in Appendix 1, Paragraph 4, with the exception of NATIVEFILEPATH and HASHVALUE which would not exist for hard copy documents.

   (a) Unitization of Paper Documents: Paper documents, to the extent collected and/or produced, should be logically unitized for production. Therefore, when scanning paper documents for production, documents should be scanned as they are kept in the regular course of business including maintaining any groupings, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. Producing Parties will make reasonable efforts to unitize documents as they are kept in the regular course of business.

   (b) File/Binder Structures (Parent-Child Unitization):  Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized as described in subsection (a) above, but maintained together in a parent-child relationship as specified in paragraph 1(a). The parties will make their best efforts to unitize parent-child groups correctly.

      **(c)** <u>Identification</u>: Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

7. **Color.** Native documents in color will be produced in color. For non-native documents, the Parties may request color copies of a reasonable number of documents where color will aid in the interpretation of the document, provided that such request is made in good faith and does not impose an undue burden on the Producing Party.

8. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective BEGBATES filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

9. **Native files.**

    **(a)** All spreadsheet (e.g., Microsoft Excel) and presentation (e.g. Microsoft PowerPoint) files shall be produced as native files with TIFF placeholder images. Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provided herein. Presentation files requiring redaction, including Microsoft PowerPoint files, will be produced as TIFF images with redactions, and for presentations with speakers notes, Producing Parties shall take reasonable efforts to show both the slide and speakers' notes for that slide on a single TIFF image. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format.

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**
CASE NO. 3:22-CV-3580-WHO (VKD)

    **(b)** Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

    **(c)** To the extent other types of documents are produced in this litigation, the parties will meet-and-confer regarding whether production of those documents in native format is feasible and appropriate.

10. **Confidentiality Designation.** Documents produced in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

11. **Databases and Other Structured Data.**

    **(a)** The Parties agree to meet and confer regarding the production format for data contained in databases or other structured data types, to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party.

    **(b)** To the extent a Producing Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to reach an agreement on alternative methods to enable the Receiving Party to view the ESI.

12. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties shall meet and confer regarding the appropriate production format.

13. **Manner of Production.** All productions must be made by secure file transfer to agreed-upon email addresses. In the event the Producing Party deems it is not practical to upload a voluminous production (e.g., a production exceeding 20GB)

to a secure file transfer site, it shall be sent to the Receiving Party by overnight mail on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each production shall be accompanied by a cover letter that identifies: (1) the Producing Party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.