# Revised Redacted Version of May 17, 2023 Joint Discovery Dispute Letter [Dkt. No. 246]

May 17, 2023

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      Re:   *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)

Dear Judge DeMarchi,

Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

### A.   STATEMENT OF THE DISPUTE

The *Healthcare* Plaintiffs ("Plaintiffs") present the following discovery dispute for the Court's resolution: Should Meta supplement its response to Interrogatory No. 4 and produce current and historical organizational charts for the relevant Meta employees (current or former) in response to RFP Nos. 1 to 4 within one week from a decision on this Motion?

Meta disagrees that there is an issue ripe for judicial intervention with respect to RFPs 1-4 and Interrogatory No. 4 because it has already agreed to produce documents responsive to these requests and to supplement its interrogatory response.

### B.   PLAINTIFFS' POSITION

Plaintiffs seek an order requiring Meta to produce organizational charts based on relevant, Meta employees (current or former) in response to RFP Nos. 1-4 and Interrogatory No. 4. Meta, however, has unilaterally limited its response to organizational charts exclusively based on a carefully curated set of 22 facially deficient custodians.[1]

As explained below, Meta's list of custodians curiously omits obviously relevant personnel, such as the long-time head of Meta's Health Group, who boasts online about her success in leading Meta's efforts to partner with health companies. Meta also refuses to fully identify the members of its Health Team. Instead, Meta's 22 proposed custodians include irrelevant employees, such as several recently hired employees who have only been employed with the company for a few months of its proposed time period.

Meta's response is an abuse of the discovery process and a transparent effort to delay discovery by preventing Plaintiffs from determining the appropriate custodians for purposes of ESI discovery. Accordingly, the Court should order Meta to produce organization charts for current and former employees responsible for the four areas identified by Plaintiffs in RFP Nos. 1-4, which seek documents sufficient to show the hierarchy of persons responsible for (1) "the development, implementation, marketing, and oversight of the Meta Pixel;" (2) "Meta's sales

---

[1] Meta's "org charts" are generated based on the reporting lines of individual employees.

relating to health, health-related information, or health-related companies;" (3) "for the filter;" and (4) "for data which Meta receives via the Meta Pixel deployed on Medical Provider Web-Properties." Meta should also be ordered to supplement its response to Interrogatory No.4, seeking the identity of employees and teams responsible for substantively these same four areas. Plaintiffs request the Court to order Meta to produce these materials within *one week* from a decision on this Motion.

I.   **The "Upfront" and "Transparent" Identification of Relevant Custodians Is Critical to Moving Discovery Forward**

Plaintiffs need to identify the relevant custodians in this case. As this Court acknowledged, a "transparent" and "upfront" discussion about custodians at the outset of discovery is critical to productive and efficient discovery. *See* Apr. 20, 2023 Hr'g Tr. 90:7-12; 93:4-22 ("[T]he important discussion is [an] upfront discussion . . . about custodians and effective search terms . . . transparency really is the key."). Courts routinely recognize that production of organizational charts is relevant and a critical element of discovery. *See e.g., Hill v. Asset Acceptance, LLC*, 2014 WL 3014945, *15 (S.D. Cal. July 3, 2014) (ordering production of organizational charts, concluding "[t]he Court finds that the request is relevant, appropriate, and contrary to Defendant's assertion, is not 'vague.'"). Organizational charts provide a means to identify potential witnesses and document custodians and facilitate understanding the roles of the employees receiving and sending communications. *Hartsock v. Goodyear Tire & Rubber Co*., 2014 WL 51237, *3–4 (D.S.C. Jan. 7, 2014); *Stambler v. Amazon.com, Inc*., 2011WL 10538668, at *8 (E.D. Tex. May 23, 2011).

Unfortunately, Meta has used the preliminary identification of relevant custodians as a tool for delay and evasion. In its response to Interrogatory No. 4, Meta identified one relevant employee by name – Tobias Woolridge.[2] In response to Interrogatory No. 4, Meta also identified several teams and the titles of relevant employees, without their names. Through subsequent meet and confers, Meta identified 22 custodians and agreed to provide the reporting lines for 22 custodians. Curiously, Meta's 22 proposed custodians do not match up with the titles teams previously provided by Meta in its response to Interrogatory No. 4. Meta refuses to fully identify the members of its health team, or the members of the other relevant teams. Instead, Meta unilaterally selected the custodians it deems "relevant." And when asked if there is a person in charge of its health team, Meta's counsel responded, "there might be."

II.   **Meta's Proposed Custodians Are Facially Deficient and an Abuse of the Discovery Process**

Meta's 22 custodians are deficient. For one, the list leaves leave out individuals who appear to be responsive to Plaintiffs' discovery requests and will have critical information regarding Plaintiffs' claims. Second, the list includes individuals who have only worked at Meta for a short time, many of whom are junior and unlikely to be communicating important information to major decision-makers and healthcare clients. Third, the list includes individuals who work for groups that have little relevance to *Healthcare* Plaintiffs' claims, such as individuals who work with the

---

[2] On his LinkedIn page, Mr. Tobias lists as his job responsibilities, "posting to internal Facebook groups," "pressing those up and down buttons on my standing desk," and "not reading my desk chair's manual."

retail sector. Fourth, by only agreeing to provide the "current" reporting structure, Meta's proposal effectively limits its organizational chart production to current employees.

Meta's proposed list and response to Interrogatory No. 4 fails to mention individuals such as Jenny Streets. Ms. Streets is the Managing Director of the Health group at Meta. Her LinkedIn profile lists her titles as the "Director, Global Marketing Solutions, Head of Industry, Health" at Facebook from October 2017 to December 2020, and "Managing Director, Meta Business Group, Health" from January 2021 until the present. As stated by Ms. Streets, she "lead[] a step-change in how health companies connect with patients and drive meaningful business outcomes on social;" and "developed the vision for the Facebook Health vertical, creating and deploying strategies for selling FB's full suite of advertising solutions to health partners, while consistently driving massive growth." Several articles list Ms. Street's title at Meta as "Head of Industry, Health;" "Director, head of industry, health."[3] As profiled in Medical Marketing and Media's "Health Influencer 50" list, Ms. Streets:

> has been leading efforts for Facebook's health industry vertical in the U.S. The group's mission is to connect people to the info or services they need to improve lives and create better health outcomes. Streets leads partnerships, go-to-market strategy, planning, and comms, managing teams across New York, Washington, DC, and Menlo Park, California. Under her leadership, Facebook and Instagram have continued to evolve into the primary way pharma marketers are reaching patients, caregivers, and healthcare providers. Streets and her team are focused on continuing to partner with top health and pharma companies to improve patient outcomes by empowering the industry to challenge the way it thinks about DTC [Direct to Consumer] advertising, as well as educating pharma marketers and creatives on the power of mobile to deliver impactful messages.

Ms. Streets appears to have significant knowledge of Meta's partnership with the Healthcare industry, stating in an interview with the head of GSK's (a major pharmaceutical company) digital marketing and customer experience team, that healthcare brands experience "a 66% increase in brand awareness and a 57% increase in intent" when they "partner" with Meta.[4]

It appears Meta's custodian list omits other relevant individuals. For example, Matthew Baczyk identifies himself on LinkedIn as the "Industry Manager, Healthcare" at Meta. Mr. Bazcyk appears to have participated with Ms. Streets in Meta's Annual Health Summit, where this year's theme was the "Next Generation of Brand Building."

Meta's proposed custodian list also fails to include individuals that lead other teams identified by Meta in its response to Interrogatory No. 4. For example, ███████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

---

[3] https://www.healthinfluencer50.com/jenny-streets-facebook-health; https://www.mmm-online.com/women-of-distinction/woman-of-distinction-2022-jenny-streets/; https://www.adweek.com/partner-articles/launching-health-brands-with-facebook/.

[4] https://www.adweek.com/partner-articles/launching-health-brands-with-facebook/.

3

Meta's custodian list is also deficient for who it does include. For instance, the list includes individuals who have worked at Meta/Facebook for only a few months. The list also includes individuals who work with industries that are not relevant to Plaintiffs claims, like the retail, education, and real estate sectors. The list only includes one individual (Erin Ott) who appears to work specifically with the Health team.

Finally, Plaintiffs also require historical organizational charts. Meta's list only includes individuals who are presently working at Meta. Individuals who are no longer employed by Meta but previously worked in a relevant role at the company are likely to have critical documents and information.

Accordingly, Plaintiffs' Motion should be granted, and the Court should order Meta to produce within one week the organizational charts for current and former employees responsible (1) "the development, implementation, marketing, and oversight of the Meta Pixel;" (2) "Meta's sales relating to health, health-related information, or health-related companies;" (3) "for the filter;" and (4) "for data which Meta receives via the Meta Pixel deployed on Medical Provider Web-Properties" (RFP Nos. 1-4); and the identity of employees and teams responsible for substantively these same four areas (Interrogatory No.4).

### C. META'S POSITION

Meta has agreed to produce documents responsive to Requests for Production ("RFP") Nos. 1-4. This is undisputed. Meta has also agreed to supplement its response to Interrogatory No. 4. This, too, is undisputed. There is not, in fact, any dispute relating to these requests which is ripe for judicial intervention.

Plaintiffs' statement focuses both on Meta's proposed custodians, as well as their request for organization charts, so Meta will address each below.

### I. Meta's identification of 22 proposed custodians.

On April 7, 2023, Meta provided Plaintiffs a list of 22 proposed custodians. To date, Plaintiffs have *never* substantively engaged with Meta about those custodians. They never made a request for additional custodians. They never asked Meta to meet and confer about the roles and responsibilities of the proposed custodians. They never asked questions about any custodians not included on Meta's list. Rather, Plaintiffs told Meta the list was insufficient, and charged ahead with filing this brief. Meta learned for the first time, through receiving Plaintiffs' statement, that Plaintiffs had identified two individuals whose responsibilities they believe make them proper custodians. This is not an "attempt in good faith to resolve the dispute," as this Court's Standing Order requires.

Plaintiffs rely on conjecture to claim—for the first time in this brief—that Meta's list of 22 custodians is "facially deficient," includes "irrelevant employees," and excludes "obviously relevant personnel." Rather than engage with Meta to understand why Meta included certain individuals as custodians or why titles for individuals include non-health sectors, Plaintiffs speculate that the list is deficient because it does not include individuals who, according to Plaintiffs, "*appear* to be responsive to Plaintiffs' discovery requests" or "*appear[ ]* to have significant knowledge" or "*appear* to have participated [in a summit]" or because the list

4

includes individuals "who work for groups *that have little relevance*" or "are junior and *unlikely* to be communicating important information."[5]  *See supra* Sec. B.II (emphases added).  This is speculation.  Plaintiffs have no basis to make such claims without engaging with Meta as to the actual responsibilities of the named individuals.

In sum, Meta provided a list of 22 custodians responsive to the requests in RFPs 1-4. Plaintiffs rejected that list out of hand and now claim that their internet research trumps Meta's knowledge of the responsibilities of its employees.  Plaintiffs should be required to meet and confer with Meta, in good faith, prior to raising discovery disputes with this Court.

## II. Meta's agreement to produce information responsive to RFPs 1-4 and to supplement its response to Interrogatory No. 4.

In response to RFPs 1-4, Meta *agreed to produce* organization chart information from Meta's internal systems that display current reporting lines and hierarchical information for the 22 identified custodians.  As Meta has repeatedly explained, it does not have organizational charts in the way that Plaintiffs originally demanded.  Rather, Meta's system only allows it to pull charts showing reporting lines for specific individuals.  As such, Meta offered to produce the reporting line charts for the 22 custodians—explaining that these charts would include the named custodian, the direct reports to the custodian, if any, the individuals within the same group as the custodian, and the person to whom that group directly reports.

But, importantly, Meta did not end the discussion there.  Instead, Meta asked Plaintiffs to review the charts for the 22 custodians, and then identify what additional information Plaintiffs wanted.  Meta never refused further production.  Meta did not cut off negotiations.  Meta simply asked Plaintiffs to review an initial production, which would undoubtedly inform and refine any additional requests for information.

Plaintiffs also raise a request for historic reporting lines.  Meta has not, as Plaintiffs' falsely claim, "only agree[d]" to produce the current reporting lines.  Instead, as Meta told Plaintiffs, it is investigating whether it is able to capture historic reporting lines, as the system Meta uses to capture current reporting lines does not pull historic information.  Meta agreed that it would proceed with producing current reporting line information while it continues to investigate the existence of historic information.

Plaintiffs' desire to rush disputes to the Court merely harms their own position.  Had Plaintiffs not sought to force impasse, for example, Plaintiffs would have seen that both of the individuals they cited from their internet research are included on these charts within the reporting structure of an already-identified custodian.  The appropriate procedure would have been to meet and confer after Plaintiffs had reviewed these charts so that Meta could explain why it had selected the 22 custodians, and not the individuals that the Plaintiffs now identify for the first time.  Plaintiffs, however, chose not to proceed in this orderly fashion, even though they

---

[5] Plaintiffs complain that certain of the custodians are recent hires.  But this is in tension with Plaintiffs' demand for information about individuals "responsible for" ongoing conduct dating from after the filing of the Consolidated Complaint.

themselves cite this Court's guidance that the parties should engage in transparent and upfront discussions about custodians.  *See* Apr. 20, 2023 Hr'g Tr. 93:4-6.

In sum, Meta has agreed to produce documents responsive to RFPs 1-4 and to supplement Interrogatory No. 4.  Meta has agreed to produce current organization charts as they exist in Meta's system for the individuals that Meta—with knowledge of its own employees' responsibilities—identified as custodians.  And, as it has already informed Plaintiffs, Meta continues to investigate whether it is able to produce historic reporting line information.

Meta respectfully requests that this Court deny Plaintiffs' requests and instead order Plaintiffs to review the information that Meta has agreed to produce in response to RFPs 1-4 and Interrogatory No. 4, and then meet and confer, in good faith, to determine what, if any, additional information is necessary.

### D. NEED FOR A HEARING

**Plaintiffs' position:** Plaintiffs' view is that a telephonic or Zoom hearing would be helpful in resolving this issue.

**Meta's position:**  If the Court is inclined to reject Plaintiffs' request, Meta does not believe a hearing is necessary.  Meta, however, does not object to discussing this matter during the upcoming May 23, 2023 discovery conference.

### E. CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

At this time, the Court has not entered any discovery cut-offs for fact or expert discovery.

### F. STATEMENT RE: COMPLIANCE WITH STANDING ORDER

**Plaintiffs' position:**  Plaintiffs' lead counsel Geoffrey Graber and Jay Barnes attest that they both met-and-conferred with defense counsel via Zoom on lead counsel meet-and-confers regarding Meta's responses to RFP Nos. 1 to 4 and Interrogatory No. 4.

**Meta's position:**  Meta disagrees that the parties have held a lead counsel meet and confer in compliance with the Court's discovery dispute resolution procedures.  Meta's lead counsel Lauren Goldman conferred with Plaintiffs' counsel on April 18, 2023.  Plaintiffs' counsel raised RFPs 1-4 (among other requests), and Meta explained that there was no dispute because Meta was agreeing to produce documents responsive to these requests.  Plaintiffs did not disagree.  Ms. Goldman again conferred with Plaintiffs' counsel on May 4, 2023.  Plaintiffs had not identified RFPs 1-4 nor Interrogatory No. 4 as topics for discussion on that call.  Plaintiffs raised those requests at the end of the call, and Meta again explained that it had agreed to produce documents responsive to RFPs 1-4 and to supplement Interrogatory No. 4, that it believed the parties should further confer after Meta made an initial production of organization charts, and thus there was no dispute relating to these requests.

### G. ATTACHMENTS

The following discovery requests and responses are attached to this letter:

- Exhibit 1:  Plaintiffs' First Set of Requests for Production

- Exhibit 2:  Plaintiffs' First Set of Interrogatories

- Exhibit 3:  Meta's Objections and Responses to Plaintiffs' First Set of Requests for Production

- Exhibit 4:  Meta's Objections and Responses to Plaintiffs' First Set of Interrogatories

Dated: May 17, 2023                    **GIBSON, DUNN & CRUTCHER LLP**

By:   */s/ Lauren Goldman*
       Lauren Goldman

**COOLEY LLP**

By:   */s/ Michael G. Rhodes*
       Michael G. Rhodes

*Attorneys for Meta Platforms, Inc.*
(*formerly known as Facebook, Inc.*)


Dated: May 17, 2023                    By:   */s/ Jason 'Jay' Barnes*
                                              Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:   212-213-5949

By:   */s/ Geoffrey Graber*
       Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:   202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:   310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*

8

>936 North 34th Street, Suite 300
>Seattle, WA 98103
>Tel.:    206-816-6603
>Fax:    206-319-5450
>
>**GIBBS LAW GROUP LLP**
>Andre M. Mura, State Bar No. 298541
>  *amm@classlawgroup.com*
>1111 Broadway, Suite 2100
>Oakland, CA 94607
>Tel.:    510-350-9700
>Fax:    510-350-9701
>
>*Attorneys for Plaintiffs*

9

## **CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Eric Kafka, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: May 17, 2023            By:    */s/ Eric Kafka*