1   Jason 'Jay' Barnes (admitted *pro hac vice*)          Geoffrey Graber, State Bar No. 211547
    *jaybarnes@simmonsfirm.com*                              *ggraber@cohenmilstein.com*
2   **SIMMONS HANLY CONROY LLC**                          **COHEN MILSTEIN SELLERS & TOLL**
    112 Madison Avenue, 7th Floor                         **PLLC**
3   New York, NY 10016                                    1100 New York Avenue NW, Fifth Floor
    Tel:     212-784-6400                                 Washington, DC 20005
4   Fax:     212-213-5949                                 Tel:     202-408-4600
                                                          Fax:     202-408-4699
5
    Jeffrey A. Koncius, State Bar No. 189803              Beth E. Terrell, State Bar No. 178181
6     *koncius@kiesel.law*                                  *bterrell@terrellmarshall.com*
    **KIESEL LAW LLP**                                    **TERRELL MARSHALL LAW GROUP**
7   8648 Wilshire Boulevard                               **PLLC**
    Beverly Hills, CA 90211                               936 North 34th Street, Suite 300
8   Tel:     310-854-4444                                 Seattle, WA 98103
    Fax:     310-854-0812                                 Tel.:    206-816-6603
9                                                         Fax:     206-319-5450

10                                                        Andre M. Mura, State Bar No. 298541
                                                            *amm@classlawgroup.com*
11  *Attorneys for Plaintiffs*                            **GIBBS LAW GROUP LLP**
    JOHN DOE, JANE DOE I, JANE DOE II, and                1111 Broadway, Suite 2100
    JOHN DOE II, and DOE, on behalf of                    Oakland, CA 94607
12  themselves and all others similarly situated          Tel:     510-350-9700
                                                          Fax:     510-350-9701
13  [*Additional counsel listed on signature page*]

14

15                    **UNITED STATES DISTRICT COURT**
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
16                       **SAN FRANCISCO DIVISION**

17   IN RE META PIXEL HEALTHCARE          | **Case No. 3:22-cv-03580-WHO (VKD)**
     LITIGATION                           |
18                                        | CLASS ACTION
     _____  |
19   This Document Relates To:            | **PLAINTIFFS' MEMORANDUM IN**
                                          | **OPPOSITION TO DEFENDANT META**
20   All Actions                          | **PLATFORM, INC.'S MOTION TO DISMISS**
                                          | **CONSOLIDATED CLASS ACTION**
21                                        | **COMPLAINT**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF FACTS ......................................................................................................1

III. STANDARD OF REVIEW.....................................................................................................2

IV. ARGUMENT ..........................................................................................................................3

    A. California Law Governs Because the Conduct at Issue Emanates From California and Meta's Terms of Service Mandate Application of California Law ..........3

    B. Plaintiffs State a Claim Under the Electronic Communications Privacy Act................5

        1. Meta's wiretap was intentional. ........................................................................5

        2. Meta's conduct is not saved by the consent exception. ....................................6

        3. Meta intercepts "content" under the ECPA.......................................................9

    C. Plaintiffs Adequately Alleged CIPA Claims Under Cal. Pen. Code §§ 631 and 632 ................................................................................................................................9

        1. Meta's intent to record Plaintiffs' confidential communications is clear. .......9

        2. The Complaint alleges communications were in transit, sent from, or received in California. ....................................................................................10

        3. The Pixel is a device under Section 632(a).....................................................10

    D. Plaintiffs Adequately Allege Constitutional and Common Law Privacy Claims ..........11

        1. Plaintiffs sufficiently allege legally protected privacy interests. ......................11

        2. Plaintiffs allege conduct that is sufficiently serious and highly offensive.........11

    E. Plaintiffs Adequately Allege CDAFA Claims ............................................................13

        1. Plaintiffs allege a "damage or loss" cognizable under the CDAFA................13

        2. Plaintiffs plausibly allege Meta violated § 502(c)(1). .....................................13

        3. The Pixel is a "contaminant." ........................................................................14

    F. Plaintiffs Adequately Allege Breach of Contract and Good Faith and Fair Dealing...............................................................................................................................14

        1. Meta's limitation of liability clause is not enforceable.....................................14

        2. Meta's promises are "sufficiently definite" to state contract claims. ..............15

        3. Plaintiffs allege breach. .................................................................................16

4.      Plaintiffs adequately allege breach of good faith and fair dealing. ...................16

G.      Plaintiffs State a Claim for Unjust Enrichment ............................................................17

H.      Plaintiffs State a Claim for Negligence Per Se ............................................................18

I.      Plaintiffs State a Claim for Trespass to Chattels ............................................................18

J.      Plaintiffs Adequately State a Claim for Statutory Larceny ..............................................20

K.      UCL / CLRA ............................................................................................................22

V.      CONCLUSION ..........................................................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Ambry Genetics Data Breach Litig.*,
  567 F.Supp.3d 1130 (C.D. Cal. 2021)..................................................................................18

5

6

*In re Anthem, Inc. Data Breach Litig.*,
  2016 WL 3029783 (N.D. Cal. Cal. May 27, 2016) (Koh, J.) ...............................................23

7

*In re Apple Inc. Device Performance Litig.*,
  347 F.Supp.3d 434 (N.D. Cal. 2018) ...................................................................................13

8

9

*Armendariz v. Found. Health Psychare Servs., Inc.*,
  24 Cal. 4th 83 (2000).............................................................................................................15

10

*Ashcroft v. Iqbal*,
  556 U.S. 663 (2009)..................................................................................................................2

11

12

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015)..................................................................................................17

13

*Backhaut v. Apple, Inc.*,
  74 F.Supp.3d 1033 (N.D. Cal. 2014) ......................................................................................6

14

15

*Baker v. Save Mart Supermarkets*,
  2023 WL 2838109 (N.D. Cal. Apr. 7, 2023)...........................................................................2

16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................2

17

18

*Bell v. Feibush*,
  212 Cal.App. 4th 1041 (2013)...........................................................................................20, 21

19

20

*Bliss v. CoreCivic, Inc.*,
  580 F.Supp.3d 924 (D. Nev. 2022)..........................................................................................5

21

*I.B. ex rel. Bohannon v. Facebook*,
  82 F.Supp.3d 1115 (N.D. Cal. 2015) ..................................................................................4, 13

22

23

*Brodsky v. Apple Inc.*,
  445 F.Supp.3d 110 (N.D. Cal. 2020) .....................................................................................10

24

*Broidy Cap. Mgmt. LLC v. Muzin*,
  2020 WL 1536350 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021)..............21

25

26

*Brooks v. Thomson Reuters Corp.*,
  2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ......................................................................25

27

28

iv

*Brown v. Google, LLC,*
    2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ................................................................ 22, 24

*Brown v. Google LLC,*
    525 F.Supp.3d 1049 (N.D. Cal. 2021) ...................................................................... 7, 8, 24

*Calhoun v. Google LLC,*
    526 F.Supp.3d 605 (N.D. Cal. 2021) ............................................................................... 23

*Callahan v. PeopleConnect, Inc.,*
    2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) .................................................................. 22

*Cappello v. Walmart, Inc.,*
    394 F.Supp.3d 1015 (N.D. Cal. 2019) ............................................................................. 22

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.,*
    2 Cal. 4th 342 (1992) ....................................................................................................... 17

*Carpenter v. U.S.,*
    484 U.S. 19 (1987) ........................................................................................................... 24

*Carrese v. Yes Online Inc.,*
    2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ................................................................. 10

*In re Carrier IQ,*
    78 F.Supp.3d 1051 (N.D. Cal. 2015) ................................................................. 10, 11, 13

*Casillas v. Berkshire Hathaway Homestate Ins. Co.,*
    79 Cal.App. 5th 755 (2022) .............................................................................................. 19

*CTC Real Estate Servs. v. Lepe,*
    140 Cal.App. 4th 856 (2006) ........................................................................................... 23

*Daniel v. Ford Motor Co.,*
    806 F.3d 1217 (9th Cir. 2015) .................................................................................... 16, 22

*Deteresa v. Am. Broadcasting Cos., Inc.,*
    121 F.3d 460 (9th Cir. 1997) .............................................................................................. 7

*Dfinity USA Rsch. v. Bravick,*
    2023 WL 2717252 (N.D. Cal. Mar. 29, 2023) ................................................................... 5

*Doe v. Beard,*
    63 F.Supp.3d 1159 (C.D. Cal. 2014) ............................................................................... 12

*Doe v. Virginia Mason Medical Center,*
    2020 WL 1983046 (Wash. Super. Feb. 12, 2020) ........................................................... 23

*In re DoubleClick Inc. Privacy Litigation,*
    154 F.Supp.2d 497 (S.D.N.Y. 2001) .................................................................................. 8

*eBay, Inc. v. Bidder's Edge, Inc*,
    100 F.Supp.2d 1058 (N.D. Cal. 2000) ......................................................................... 19, 20

*Ehret v. Uber Techs., Inc.*,
    68 F.Supp.3d 1121 (N.D. Cal. 2014) ................................................................................ 3

*Erceg v. Lending Club Corp.*,
    475 F.Supp.3d 1071 (N.D. Cal. 2020) ............................................................................. 3

*In re Facebook Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ................................................................................. *passim*

*In re Facebook, Inc., Cons. Priv. User Profile Litig.*,
    402 F.Supp.3d 767 (N.D. Cal. 2019) .............................................................................. 4

*In re Facebook, Inc. Sec. Litig.*,
    477 F.Supp.3d 980 (N.D. Cal. 2020) ............................................................................ 16

*Facebook, Inc. v. ConnectU, LLC*,
    489 F.Supp.2d 1087 (N.D. Cal. 2007) .......................................................................... 23

*Fields v. Michael*,
    91 Cal.App. 2d 443 (1949) ........................................................................................... 23

*Flextronics Int'l, Ltd. v. Parametric Tech. Corp.*,
    2014 WL 2213910 (N.D. Cal. May 28, 2014) .............................................................. 14

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
    209 Cal.App. 4th 1118 (2012) ...................................................................................... 15

*Gatton v. T-Mobile USA, Inc.*,
    152 Cal.App. 4th 571 (2007) ........................................................................................ 15

*Glob. Tech. Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ...................................................................................................... 10

*In re Google Asst. Priv. Litig.*,
    457 F.Supp.3d 797 (N.D. Cal. 2020) ..................................................................... 5, 9, 12

*In re Google Inc.*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............................................................... 6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) ......................................................................................... 12

*In re Google Location Hist. Litig.*,
    514 F.Supp.3d 1147 (N.D. Cal. 2021) .......................................................................... 18

*In re Google RTB Cons. Priv. Litig.*,
    606 F. Supp. 3d 935 (N.D. Cal. 2022) ......................................................................... 6, 9

vi

*Gostev v. Skillz Platform, Inc.*,
    88 Cal.App. 5th 1035 (2023) ...........................................................................................15

*Grace v. Apple Inc.*,
    2017 WL 3232464 (N.D. Cal. July 28, 2017) ...................................................................19

*Hammerling v. Google LLC*,
    2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ...................................................................10

*Health Net of Cal., Inc. v. Dept. of Health Servs.*,
    113 Cal.App. 4th 224 (2003) ............................................................................................14

*Herskowitz v. Apple Inc.*,
    940 F.Supp.2d 1131 (N.D. Cal. 2013) ..............................................................................25

*Hueso v. Select Portfolio Servicing, Inc.*,
    527 F.Supp.3d 1210 (S.D. Cal. 2021) ........................................................................20, 21

*In re iPhone 4S Consumer Litig.*,
    2013 WL 3829653 (N.D. Cal. Jul. 23, 2013) .....................................................................3

*In re iPhone Application Litig.*,
    844 F.Supp.2d 1040 (N.D. Cal. 2012) ........................................................................12, 19

*Jewel v. NSA*,
    673 F. 3d 902 (9th Cir. 2011) .............................................................................................9

*Johnson v. Trumpet Behavioral Health, LLC*,
    2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .........................................................................24

*Katz-Lacabe v. Oracle*,
    2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ....................................................................23

*Kellman v. Spokeo, Inc.*,
    599 F. Supp. 3d 877 (N.D. Cal. 2022) (Orrick, J.) ......................................................3, 23

*Klein v. Facebook, Inc.*,
    580 F.Supp.3d 743 (N.D. Cal. 2022) ................................................................................24

*Levy v. Irvine*,
    66 P.953 (Cal. 1901) ..........................................................................................................10

*Lhotka v. Geographic Expeditions, Inc.*,
    181 Cal.App. 4th 816 (2010) ............................................................................................15

*LMC v. ABC*,
    1997 WL 405908 (D. Ariz. Mar. 27, 1997) .......................................................................7

*Lopez v. Apple, Inc.*,
    519 F.Supp.3d 672 (N.D. Cal. 2021) ............................................................................9, 10

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

*Maldonado v. Apple, Inc.,*
   2021 WL 1947512 (N.D. Cal. Apr. 21, 2021) ...............................................................4, 5

*Martin v. Sephora USA, Inc.,*
   2023 WL 2717636 (N.D. Cal. Mar. 30, 2023) ....................................................................10

*McCraner v. Wells Fargo & Co.,*
   2023 WL 2728719 (S.D. Cal. Mar. 30, 2023) .....................................................................21

*McKay v. Sazerac Co., Inc.,*
   2023 WL 3549515 (N.D. Cal. May 17, 2023) .....................................................................24

*Nayab v. Capital One Bank (USA), N.A.,*
   942 F.3d 480 (9th Cir. 2019) ............................................................................................13

*Nelson v. Abraham,*
   29 Cal. 2d 745 (1947) ......................................................................................................17

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.,*
   77 Cal.App. 5th 643 (2022) ..............................................................................................15

*O'Connor v. Uber Techs., Inc.,*
   58 F.Supp.3d 989 (N.D. Cal. 2014) ...................................................................................5

*Oman v. Delta Air Lines, Inc.,*
   889 F.3d 1075 (9th Cir. 2018) ............................................................................................3

*Opperman v. Path, Inc.,*
   205 F.Supp.3d 1064 (N.D. Cal. 2018) ...............................................................................12

*Pemberton v. Nationstar Mortg. LLC,*
   331 F.Supp.3d 1018 (S.D. Cal. 2018) .................................................................................18

*People v. Gibbson,*
   215 Cal.App. 3d 1204 (1989) ............................................................................................10

*People v. Kwok,*
   63 Cal.App. 4th 1236 (1998) .............................................................................................23

*People v. Superior Court (Smith),*
   70 Cal. 2d 123 (1969) ......................................................................................................10

*In re Pharmatrack, Inc.,*
   329 F.3d 9 (1st Cir. 2003) ............................................................................................6, 7

*Planned Parenthood v. Center for Med. Progress,*
   51 F.4th 1125 (9th Cir. 2022) ............................................................................................8

*Planned Parenthood v. Ctr. for Med. Progress,*
   214 F.Supp.3d 808 (N.D. Cal. 2016) ..................................................................................8

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir 2021) ...................................................................................23

*R.J. Kuhl Corp. v. Sullivan*,
    13 Cal.App. 4th 1589 (1993) ........................................................................................17

*Racine & Laramie, Ltd. v. Dept. of Parks & Rec.*,
    11 Cal.App. 4th 1026 (1992) ........................................................................................17

*Razuki v. Caliber Home Loans, Inc.*
    2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018) .......................................................12

*Schmitt v. SN Serv. Corp.*,
    2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) (Orrick, J.) ...............................................3

*Seven Sys. Ltd. v. Leap Wireless Int'l Inc.*,
    2013 WL 12072526 (S.D. Cal. June 26, 2013) ..............................................................5

*Siry Inv., L.P. v. Farkhondehpour*,
    13 Cal. 5th 333 (2022) .................................................................................................20

*In re Solara Med. Supplies, LLC Customer Data Security Breach Litig.*,
    613 F.Supp.3d 1284 (S.D. Cal. 2020) ..........................................................................22

*Sullivan v. Oracle Corp.*,
    254 P.3d 237 (Cal. 2011) ...............................................................................................5

*Sussman v. Am. Broadcasting Cos., Inc.*,
    186 F.3d 1200 (9th Cir. 1999) .......................................................................................7

*Terpin v. AT&T Mobility, LLC*,
    399 F.Supp.3d 1035 (C.D. Cal. 2019) ...........................................................................5

*Tunkl v. Regents*,
    60 Cal. 2d 92 (1963) ....................................................................................................15

*U.S. v. Lam*,
    271 F.Supp.2d 1182 (N.D. Cal. 2003) ...........................................................................8

*U.S. v. McTiernan*,
    695 F.3d 882 (9th Cir. 2012) .........................................................................................7

*U.S. v. Szymuszkiewicz*,
    622 F.3d 701 (9th Cir. 2010) .......................................................................................10

*Ubisoft, Inc. v. Kruk*,
    2021 WL 3472833 (C.D. Cal. July 9, 2021) ................................................................13

*Underwood v. Future Income Payments, LLC*,
    2018 WL 4964333 (C.D. Cal. Apr. 26, 2018) ................................................................3

ix

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) .................................................................................. 2

*Vertkin v. Vertkin*,
    2007 WL 4287512 (N.D. Cal. Dec. 6, 2007) ...................................................... 20

*Wang v. OCZ Tech. Group, Inc.*,
    276 F.R.D. 618 (N.D. Cal. 2011) .......................................................................... 3

*West v. Ronquillo-Morgan*,
    526 F.Supp.3d 737 (C.D. Cal. 2020) .................................................................. 13

*Williams v. Facebook*,
    498 F.Supp.3d 1189 (N.D. Cal. 2019) ................................................................ 13

*Yuba River Power Co. v. Nev. Irr. Dist.*,
    207 Cal. 521 (1929) .............................................................................................. 23

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................................................... 19

*In re Zoom Video Commc'ns Priv. Litig.*,
    525 F.Supp.3d 1017 (N.D. Cal. 2021) ................................................................ 25

**Statutes and Codes**

18 U.S.C. § 2510, *et seq.* ......................................................................................... *passim*

42 U.S.C. § 1320d, *et seq.* ........................................................................................ *passim*

Cal. Bus. & Prof. § 17200 ......................................................................................... *passim*

Cal. Civ. Code § 1654 .................................................................................................... 16

Cal. Civ. Code § 1668 .................................................................................................... 14

Cal. Civ. Code § 1750, *et seq* .................................................................................. *passim*

Cal. Penal Code § 484 ............................................................................................... *passim*

Cal. Penal Code § 496, *et seq.* ................................................................................ *passim*

Cal. Penal Code § 502 *et seq* ................................................................................. *passim*

Cal. Penal Code §§ 631, 632 ................................................................................ 4, 9, 10, 25

Cal. Penal Code § 637.7(d) ........................................................................................... 11

**Regulations**

45 C.F.R § 164.508, *et seq.* .................................................................................. 7, 18, 23

45 C.F.R § 160.103................................................................................................................................18

PLAINTIFFS' OPPOSITION TO DEFENDANT's MOTION TO DISMISS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

## I.      INTRODUCTION

"Privacy is a most fundamental human right," and "there are few matters quite so personal as the status of one's health." Dkt. 159 at 24, 31. Yet Meta designed and deployed a surveillance system across the web properties of thousands of health care providers in the United States, acquiring personal health information and communications of millions of patients without their consent. Meta's conduct violates privacy and property rights that Plaintiffs and absent class members enjoy over their health information, communications, and computing devices. On this motion, the Court must decide whether Meta may be held legally responsible for its intentional conduct. To avoid this finding, Meta offers a variety of excuses and contradictions. None has merit. Plaintiffs have alleged sufficient facts to proceed with each of their thirteen causes of action.

## II.     STATEMENT OF FACTS

Plaintiffs are patients of various health care providers and Facebook account holders. ¶¶ 5, 23-28, 79-82.[1] Unbeknownst to them, Meta obtained their health information and health-related communications through Meta's use of tracking technologies, which gather information about Facebook users as they communicate with healthcare providers online. ¶¶ 1, 4, 6-14, 23, 47-54, 57, 59, 61, 63, 68, 70, 75, 79-83. This information includes identifiers, patient portal login and logout communications, phone calls to their providers, and other communications with their respective healthcare providers regarding appointment scheduling, "doctors, treatments, payment information, health insurance information, prescription drugs, prescriptions side effects, conditions, diagnoses, prognoses, or symptoms of health conditions," and "searches on Meta health partner websites." ¶¶ 6, 8, 13, 23-28, 47, 49, 53-54, 57, 60-61, 63, 75, 79-82, 314. Such information includes patient identifiers and communications content such as "LOG IN" to a patient portal or health care provider webpages about health conditions. Dkt. 159 at 18-19.

Meta obtained the patient information and communications content despite promising Facebook users that it would not. Meta promises to "require" "Partners" to obtain the "right" to share data with Meta before doing so (¶¶ 3, 5, 14, 102, 110, 300, 302) and explains elsewhere that "require"

---

[1] All ¶ references in this brief refer to the Consolidated Class Action Complaint, Dkt. 185.

means that, if the *requirement* is not met, the product or service will not work. ¶¶ 96-97. Meta even promises that if it "learn[s] of content or conduct" that is a "potential misuse of [Meta's] products," then Meta "will take appropriate action – for example . . . removing content, blocking access to certain features, disabling an account or contacting law enforcement." ¶¶ 300, 312. But Meta does not require partners to have lawful rights to share information before doing so. ¶ 312. Nor does it "verify that health care providers or covered entities have provided adequate notice and obtained valid consent or authorization to share their patients' data with Meta;" "employ dedicated team[s];" "work with … partners;" or "develop advanced technical systems to detect potential misuse of [Meta's] products" to actually *require* anything from its partners. ¶¶ 115, 121-123, 302, 310, 312.

Plaintiffs allege that Meta acted with intent in at least twenty-six different paragraphs. ¶¶ 14, 169, 184, 226, 228-32, 234, 242-44, 284, 335, 347, 354, 358, 361, 369, 371, 399, 407, 421, 462, 478-79 (alleging Meta's conduct is "intentional," "knowing," or otherwise). Ignoring these allegations, Meta argues now that it lacks intent. ¶ 125; Dkt. 232 at 5-6, 10-12. But the CCAC tells a different story. In reality, Meta encourages "health brands" to "reach[] new audiences with Facebook advertising" and maintains a "Health" marketing division that Meta advertises as a service to help "grow[] your healthcare business." ¶¶ 125-46. In attracting new healthcare clients, Meta touts its ability to uncover health information. ¶¶ 134-37 (describing how to "market to patients," such as "adults with COPD," "[cancer] patients"). It also encourages healthcare providers to use Facebook tools to "really disrupt health and how we market to patients." ¶ 145. Finally, Plaintiffs allege that corporate knowledge of this wrongful conduct goes to the top, i.e., CEO Mark Zuckerberg. ¶¶ 222-30.

## III.   STANDARD OF REVIEW

To state a claim, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009). "Heightened fact pleading of specifics" is not required. *Twombly*, 550 U.S. at 555, 570. Further, the Court "accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987); *Baker v. Save Mart Supermarkets*, 2023 WL 2838109, at *2 (N.D. Cal. Apr. 7, 2023).

## IV.     ARGUMENT

### A.  California Law Governs Because the Conduct at Issue Emanates From California and Meta's Terms of Service Mandate Application of California Law

Meta relies on California law to argue Plaintiffs cannot assert California statutory claims because they do not reside in California. Dkt. 232 at 10. As a threshold matter, Meta's argument is premature at the pleading stage. *See Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 893-94 (N.D. Cal. 2022) (Orrick, J.) (deferring such issues to class certification). But in any event, Meta's argument ignores California law and its own Terms of Service. "If the conduct that 'creates liability' occurs in California, California law properly governs that conduct." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018); *Schmitt v. SN Serv. Corp.*, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9, 2021) (Orrick, J.).

"To determine whether sufficient wrongful conduct occurred in California, courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which decisions were made." *Schmitt*, 2021 WL 3493754, at *3 (internal citations omitted); *see also*, *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 62-30 (N.D. Cal. 2011) (non-California Plaintiffs' claims proceed "where there are significant allegations of the defendant's conduct having taken place in the forum state"). Here, Plaintiffs allege (1) "a substantial part of the events or omissions giving rise to the claim[s] occurred in" California; (2) "Meta is headquartered in California;" (3) "designed and effectuated its scheme to track the patient communications ... from California;" and (4) the claims "arise," from the false statements and omissions in the Terms of Service that adopt California law. ¶¶ 30, 33, 97-106, 110-11, 117, 121, 298-302, 312, 322-27, 342-45; 368-69, 377(d), 395, 408, 427, 433, 451, 462, 483(e), 490.

This Court and others have denied motions to dismiss California statutory claims asserted by out-of-state plaintiffs with similar allegations. *See Schmitt*, 2021 WL 3493754 at *3-4 (UCL claims where key decisions and acts related to data breach allegedly occurred at defendant's California headquarters); *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *5, *7 (N.D. Cal. Jul. 23, 2013) (UCL/CLRA claims for conduct originating in California); *Ehret v. Uber Techs., Inc.*, 68 F.Supp.3d 1121, 1130-32 (N.D. Cal. 2014) (same); *Underwood v. Future Income Payments, LLC*, 2018 WL 4964333, at *12 (C.D. Cal. Apr. 26, 2018) (same); *Erceg v. Lending Club Corp.*, 475 F.Supp.3d 1071, 1078 (N.D. Cal. 2020) (non-resident

3

1   plaintiffs had standing to assert CIPA claims).

2          Moreover, the non-UCL/CLRA statutes at issue here clearly apply to Meta's conduct since

3   Plaintiffs allege it occurred in California. ¶¶ 29, 33; *see e.g.*, CIPA, Cal. Penal Code §§ 631, 632 (applies

4   to any person who "uses [a] recording device to … record a confidential communication;" here Meta is

5   located in California and the recording devices, which include the Pixel and associated source code (i.e.

6   software) were developed in and emanate from California, ¶¶ 29, 33); Invasion of Privacy, Cal. Const.

7   Art. I, Sec. 1 (expressly provides the right to privacy applies to "[a]ll people," not just Californians; here

8   Meta's conduct and decisions to invade all class members' property began and continued in California);

9   CDAFA, Cal. Penal Code § 502(c) (focusing on the conduct (and location) of the defendant, not just

10  the location of the victim, and Meta's actions at the center of this case emanate from California, as does

11  its knowledge, lack of authorization, access, use, and "introduction of a contaminant"); Statutory

12  Larceny, Cal. Penal Code §§ 484, 496(a) (establishing liability for "[e]very person who … receives any

13  property that has been stolen or that has been obtained in any manner constituting theft," including

14  obtaining money or property "by any false or fraudulent representation or pretense;" here Meta's

15  conduct began in California, Meta made the false statements and omissions from California, and Meta

16  received the fruits of its theft in California as a California company. ¶¶ 29, 33).

17         In addition, Meta's Terms of Service mandate application of California law. ¶ 292. California

18  has "a strong policy favoring enforcement of such provisions." *I.B. ex rel. Bohannon v. Facebook*, 82

19  F.Supp.3d 1115, 1122 (N.D. Cal. 2015). Indeed, "[i]t was Facebook that selected California law to apply

20  to interactions between itself and its users, and thus it should come as no surprise that Facebook's own

21  conduct would also be considered through the lens of California law." *Id.*[2]

22         The Court's decision in *Maldonado v. Apple, Inc.*, 2021 WL 1947512 (N.D. Cal. Apr. 21, 2021) is

23  instructive. There, the Court rejected Apple's argument that California statutes did not apply to out-of-

24  state plaintiffs, while ignoring its own contract, explaining that California statutes applied to all class

25

26  ───────────────
    [2] Meta routinely litigates class actions in this district where California law applies nationwide pursuant
    to Meta's terms of service. *See, e.g.*, *In re Facebook, Inc., Cons. Priv. User Profile Litig.*, 402 F.Supp.3d 767,
27  789 (N.D. Cal. 2019) ("for virtually all claims, the question of whether Facebook users consented to the
    alleged conduct is one of contract interpretation governed by California law").

28
                                                    4

members because "the named plaintiffs represent a class in which one state's law applies— the law selected via contract." *Id.* at *8. Here, the case is even stronger for Plaintiffs. Not only does Meta's contract force California law upon Plaintiffs, but a substantial portion of Meta's actions took place in California, including its misstatements and omissions set forth in Terms that adopt California law and require consumers to litigate claims in California. *See, e.g.,* ¶ 17, 29, 33, 182, 292, 312, 321, 369, 440.

Meta relies on inapposite cases not involving a California choice-of-law clause or where courts declined to apply California law because the wrongful conduct occurred entirely outside of California. *See Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 & n.10 (Cal. 2011) (declining to apply UCL to out-of-state workers' FLSA claims and distinguishing claims where "the unlawful conduct that formed the basis of the out-of-state plaintiffs' claims . . . occurred in California"); *Terpin v. AT&T Mobility, LLC*, 399 F.Supp.3d 1035, 1047–48 (C.D. Cal. 2019) (PR resident could not bring CLRA claim when relevant conduct occurred in PR and CT); *O'Connor v. Uber Techs., Inc.*, 58 F.Supp.3d 989, 1006–07 (N.D. Cal. 2014) (California Labor Code does not apply to employees who work outside California); *Seven Sys. Ltd. v. Leap Wireless Int'l Inc.*, 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013) (California Penal Code did not apply to acts that took place "solely" in Korea); *Dfinity USA Rsch. v. Bravick*, 2023 WL 2717252, at *4–5 (N.D. Cal. Mar. 29, 2023) (declining to apply California Penal Code to employee's failure to return work equipment where the violation "took place solely in Michigan").

## B.  Plaintiffs State a Claim Under the Electronic Communications Privacy Act

### 1.  Meta's wiretap was intentional.

Plaintiffs allege and "appear likely to succeed" in proving Meta acted with the requisite intent. Dkt. 159 at 18. Meta nevertheless claims Plaintiffs' allegation should be dismissed because its acquisition of data was inadvertent. Dkt. 232 at 5-6, n. 4. Meta disregards the law and the allegations.

To plead intent, Plaintiffs must allege Meta's acts were "'done on purpose,' even if that purpose was not nefarious and [Meta] was unaware that the use was unlawful." *Bliss v. CoreCivic, Inc.*, 580 F.Supp.3d 924, 929 (D. Nev. 2022) (quoting *U.S. v. Christensen*, 828 F.3d 763, 774–75 (9th Cir. 2015)). Intent is satisfied when a defendant is aware that its product is recording information that it should not. *See In re Google Asst. Priv. Litig.*, 457 F.Supp.3d 797, 815 (N.D. Cal. 2020). "[K]nowingly allow[ing] the defect to recur . . . foreclose[s]" a defense of "inadvertence or mistake." *See id.* (citing *Backhaut v. Apple,*

*Inc.*, 74 F.Supp.3d 1033, 1044 (N.D. Cal. 2014)).

Here, Plaintiffs allege Meta intended the Pixel to transmit information from health websites, was aware some of that information was sensitive, and yet did not prevent the transmission from occurring. *See* ¶¶ 71-74; 112-13; 118; 151. Plaintiffs also detail how Meta encouraged covered entities to install the Pixel, ¶¶ 230-31, and how Meta publishes guidance specifically for the health and pharmaceutical industry to target patients via the Pixel, ¶¶ 71-74, 228-44, 325, going so far as to have a health marketing division dedicated to health-related advertising. ¶¶ 126-45. Finally, the existence of a filtration system at the back end shows Meta knows sensitive information may be transmitted yet continues to acquire it anyway. These allegations are sufficient to establish intent. *See Backhaut*, 74 F.Supp.3d at 1044 (offering to "fix" the problem of intercepted messages after the fact demonstrated, rather than negated, its intent).

### 2. Meta's conduct is not saved by the consent exception.

Meta claims it cannot be liable under the ECPA because it is a one-party consent statute and its partners consented to sharing Plaintiffs' health information. *See* Dkt. 232 at 6-7. But Meta fails to show its partners actually consented, or any consent could be valid when those same partners were legally prohibited from sharing Plaintiffs' health information without *their* authorization in the first place. But even if Meta's partners had consented, Plaintiffs plausibly allege that Meta acted with a tortious or criminal purpose, so the crime-tort exception applies.

### a. Meta has not demonstrated actual consent.

Meta bears the burden to prove a party consented. *In re Google RTB Cons. Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). Meta does not allege its health partners expressly consented to sharing confidential information with Meta; rather, the consent Meta argues is "implied." *See* Dkt. 232 at 6-7 (partners "presumably" consented). The implied consent that Meta postulates here "applies only in a narrow set of cases." *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). Meta fails to meet its burden because it has not shown that the covered entities' implied consent was "actual." *Id.* Consent "is not an all-or-nothing proposition." *Id.* "A party may consent to the interception or only a part of a communication or to the interception of only a subset of its communications." *In re Pharmatrack, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003).

1   Mere installation of the Pixel on a webpage is insufficient to show that health partners consented

2   to the sharing of health information. *See id.* at 20 (consent cannot be inferred "from the mere purchase

3   of a service, regardless of circumstances"); *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1068 (N.D. Cal.

4   2021) (general consent of websites is insufficient to establish consent to interception of communications

5   using private browsing mode). Meta's theory that covered entities impliedly consented to sharing patient

6   data is tantamount to arguing these entities impliedly consented to violating federal law, which bars

7   them from disclosing patient health information for marketing purposes without patient consent. *See*

8   45 C.F.R. §§ 164.508(a)(3),164.501. To be sure, Meta's contract with its partners—including healthcare

9   providers—does not mention HIPAA or otherwise seek any particular consent for sharing protected

10   information, despite its knowledge that covered entities use the Pixel. ¶ 120. Perhaps for this reason,

11   Meta represents to the Court that it tells its partners not to send Meta health information—a

12   circumstance which, if true, could only mean that covered entities were unaware of the scope of

13   information they were sending to Meta. ¶ 125(b).[3]

14   **b. Plaintiffs allege a criminal or tortious purpose.**

15   Regardless, the ECPA prohibits Meta from acquiring the contents of an electronic

16   communication "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d);

17   *see also U.S. v. McTiernan*, 695 F.3d 882, 889 (9th Cir. 2012) (reasoning § 2511 usually applies where the

18   recording is "done for the purpose of facilitating some further impropriety"). A "lawful purpose" does

19   not "sanitize" a wiretap "made for an illegitimate purpose." *Sussman v. Am. Broadcasting Cos., Inc.*,, 186

20   F.3d 1200, 1202 (9th Cir. 1999). Illegal purposes may include "invading [a plaintiff's] privacy . . .

21   defrauding her, or . . . committing unfair business practices." *Deteresa v. Am. Broadcasting Cos., Inc.*, 121

22   F.3d 460, 467, n.4 (9th Cir. 1997). Similarly, courts have found the element satisfied where a plaintiffs

23   alleged intent to commit trespass, theft of trade secrets, violations of state computer crime laws, or

24   common law privacy claims. *See LMC v. ABC*, 1997 WL 405908, at *2 (D. Ariz. Mar. 27, 1997) (trespass

25   and theft of trade secrets); *Brown*, 525 F.Supp.3d at 1067 (violations of CDAFA, intrusion upon

26

27   _____

[3] Meta further fails to address that Plaintiffs allege any purported consent from HIPAA-covered entities
is not valid. *See* ¶¶ 346, 354, 356 (collecting cases). Courts have consistently found that transmissions

28   via the Pixel give rise to actions in tort and/or statutory violations. *See* ¶ 356.

seclusion, and invasion of privacy); *Planned Parenthood v. Ctr. for Med. Progress*, 214 F.Supp.3d 808, 828 (N.D. Cal. 2016) (recognizing that "further invading privacy of plaintiffs' staff" sufficed to state crime-tort exception to consent exception) (emphasis in original).[4]

Plaintiffs alleged several tortious and criminal purposes for Meta's conduct. For example, Plaintiffs allege Meta violated 42 U.S.C. § 1320d-6, which makes the unauthorized acquisition of health information a federal crime with *increased* penalties when "committed with the intent to . . . use" the information "for commercial advantage [or] personal gain." ¶ 347(b)-(c). The commercial activity Meta engaged in here is by nature illicit, distinguishing this case from *In re DoubleClick Inc. Privacy Litigation*, 154 F.Supp.2d 497 (S.D.N.Y. 2001), and its progeny. *DoubleClick* did not immunize all activity intended "to make money," but rather only "*licit* and commercial" purposes. *Id.* at 519. Courts view a defendant's conduct differently when the commercial enterprise is illicit, as Meta's is here. *See U.S. v. Lam*, 271 F.Supp.2d 1182, 1184 (N.D. Cal. 2003) (interception for *illicit* commercial purpose fell within the plain text of § 2511(2)(d).)

Meta incorrectly asserts that Plaintiffs allege only torts and crimes that were "through the act of interception itself." Dkt. 232 at 8. Plaintiffs allege Meta intercepted health information without authorization or consent and further used the information it obtained for commercial gain. Plaintiffs specifically identified "Meta's scheme or artifice" (¶ 349); the "property" that Meta acquired (¶ 350); and Meta's intent to defraud (¶ 351) (including that "Zuckerberg overruled" Meta employees who attempted to fix the problem).[5] These allegations establish Meta's criminal or tortious intent based on conduct that goes beyond the wiretap itself. *See Brown*, 525 F.Supp.3d at 1067 (data intercepted for the purpose of associating with user profiles is a "further use"). Indeed, Plaintiffs' UCL, CLRA, and CDAFA claims all involve, in part, Meta's intended further use of Plaintiffs' health information. Meta obtained access to Plaintiffs' information by trespassing (¶¶ 415-28), violating computer crime laws (¶¶466-88), and with the purpose of engaging in an unfair business practice and committing wire fraud.

---

[4] On appeal of a subsequent jury verdict, the Ninth Circuit held that Plaintiffs could not simultaneously use RICO and the ECPA as predicate acts for each other. *See Planned Parenthood v. Center for Med. Progress*, 51 F.4th 1125, 1136 (9th Cir. 2022). However, it did not disturb this Court's correct holding that intent to further invade a Plaintiffs' privacy satisfied the exception.

[5] Meta ignores the property rights alleged at ¶¶ 190-98.

(¶¶ 348-52). And the use of the Pixel represents an ongoing tortious violation of Plaintiffs' privacy rights—with a continual trespass and unfair business practice. Thus, Plaintiffs' ECPA claim survives even if the Court finds that covered entities consented to sharing plaintiffs' sensitive health information.

### 3. Meta intercepts "content" under the ECPA.

Meta intercepts "content" within the meaning of the ECPA through the Pixel. ¶¶ 50-51 The Court already found "the log-in buttons and kinds of descriptive URLs identified in the Smith Decl. are 'contents' within the meaning of the statute." Dkt. 159 at 19; *In re Google RTB* at 949. Meta responds that "*[m]ost* of the intercepted data was not content." This implicitly concedes that some was content and there is no need for the Court to revisit its prior finding. In addition, Meta argues that Plaintiffs fail to allege specifics. This is incorrect. *See* ¶ 351 (alleging Meta took Plaintiffs' information as described in the Smith Declaration). Simply put, Meta's speculation cannot be squared with the allegations.[6]

### C. Plaintiffs Adequately Alleged CIPA Claims Under Cal. Pen. Code §§ 631 and 632

#### 1. Meta's intent to record Plaintiffs' confidential communications is clear.

*First*, Meta argues Plaintiffs did not allege intent. But as with the ECPA, intent under the CIPA "can be shown through 'knowledge to a substantial certainty that . . . use of the equipment will result in the recordation of a confidential conversation." *Lopez v. Apple, Inc.*, 519 F.Supp.3d 672, 689 (N.D. Cal. 2021). "[A] conversation is 'confidential' under § 632 'if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 828 (N.D. Cal. 2020) (quoting *Kearney v. Salmon Smith Barney, Inc.*, 39 Cal. 4th 95, 117, n.7 (2006)). Plaintiffs had such an assumption, as alleged in the Complaint. *See* ¶¶ 20, 83, 377, 395. And Meta knew with substantial certainty the Pixel was recording confidential communications: Meta markets the Pixel to HIPAA and CMIA-covered-entities, ¶¶ 126-46, encourages partners to use the Pixel to capture data about current patients, ¶¶ 138-40, and claims that it constructed back-end processes to review sensitive data, ¶ 118. This is a far cry from a nature enthusiast "accidentally

---

[6] It also conflicts with binding Ninth Circuit precedent regarding the specificity required to state an ECPA claim. See *Jewel v. NSA*, 673 F. 3d 902, 910 (9th Cir. 2011) (ECPA adequately alleged identifying specific content); *In re Google RTB Cons. Priv. Litig.*, 606 F.Supp.3d at 942 (standing found despite argument that "plaintiffs have not alleged sufficient factual allegations about their online activities to show that they were subject to the challenged practices.").

9

1   pick[ing] up" nearby poachers' conversations when recording birdcalls. *See People v. Superior Court (Smith)*,

2   70 Cal. 2d 123, 134 (1969). Meta did not stumble upon health information; it intended to, and did,

3   collect and connect confidential healthcare information and used the information for its financial gain.[7]

### 2.   The Complaint alleges communications were in transit, sent from, or received in California.

Meta argues the named Plaintiffs, who are not from California, cannot invoke the CIPA. Not

so. The "CIPA applies . . . to the extent the Complaint asserts CIPA claims against a California

defendant for alleged conduct that occurred in California." *Carrese v. Yes Online Inc.*, 2016 WL 6069198,

at *4 (C.D. Cal. Oct. 13, 2016) (citing cases). Here, Plaintiffs allege Meta "designed and effectuated its

scheme to track the patient communications at issue here from California," where it is headquartered.

¶ 369. The complaint describes the scheme as Meta's unauthorized receipt of patient communications

and health information. ¶ 300a (Meta tells users it "receive[s] information about your online and offline

actions and purchases from third-party data providers who have the rights to provide us with your

information"). Plaintiffs sufficiently allege Meta received this information in California. *See* Cal. Penal

Code § 631(a) (". . . received at any place within this state.").[8]

### 3.   The Pixel is a device under Section 632(a).

Meta claims the Pixel is not a device under Section 632(a) because software cannot be a device

under CIPA. *See* Dkt. 232 at 12. To the contrary, CIPA makes "no reference . . . to a specific device or

instrument." *People v. Gibbson*, 215 Cal.App. 3d 1204, 1208 (1989).[9] "[T]he prohibition is based on the

purpose for which the device or instrument is used." *Id.* Courts have thus held that software and apps

are devices under § 632 when their intended function is to intercept and record communications. *See*

*Lopez*, 519 F.Supp.2d at 690 (finding "device" satisfied where Apple "program[ed] Siri software to

---

[7] The ECPA and CIPA are consistent with general longstanding tort and criminal law principles precluding willful blindness as a defense. *See Glob. Tech. Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Levy v. Irvine*, 66 P.953, 956 (Cal. 1901).

[8] *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022), is not to the contrary, where the court found that the plaintiffs did not plead data was received in California.

[9] California courts interpret the CIPA in line with the ECPA. *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *9 n.8 (N.D. Cal. Mar. 30, 2023) (noting "[m]any courts have analogized CIPA to the Wiretap Act"); *Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the Federal Wiretap Act."). Web servers, computers, software, and computer source code are all "devices" under the ECPA. *U.S. v. Szymuszkiewicz*, 622 F.3d 701, 707 (9th Cir. 2010); *see also In re Carrier IQ*, 78 F.Supp.3d 1051, 1084 (N.D. Cal. 2015).

intercept communications"); *see also In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1084 (N.D. Cal. 2015) ("Carrier IQ Software is a 'device' for the purposes of the Wiretap Act."). Here, cookies, browsers, computing devices, Meta's web-servers, health-care provider web-servers, and the Pixel source code are all devices that fit the § 632 definition: Meta's web-servers intercept and record Plaintiffs' confidential communications with their healthcare providers.[10]

Meta's authority that "software" is not a device involves claims brought under Penal Code § 637.7(d), a location tracking statute concerning "electronic tracking device[s]" *See* Dkt. 232 at 12 (citing *In re Google Location History Litig.*, 428 F.Supp.3d 185, 193 (N.D. Cal. 2019), and *Moreno v. S.F. BART*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017)). Penal Code § 632 prohibits use of "an electronic amplifying or recording device," not an "electronic tracking device."

**D. Plaintiffs Adequately Allege Constitutional and Common Law Privacy Claims**

**1.  Plaintiffs sufficiently allege legally protected privacy interests.**

Meta acknowledges the Court held that Plaintiffs have legally protected interests at stake in this case. *See* Dkt. 232 at 13. Indeed, the Court found "plaintiffs will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information" and "detailed URLs." Dkt. 159 at 25-26 (also explaining that "Meta's policies tend to support" such a finding). Meta now pivots to argue that a lack of "specific allegation about the kinds of data Meta allegedly received" is fatal. Dkt. 232 at 13. However, the Ninth Circuit rejected this argument as well. *See In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (Rejecting argument that plaintiffs need to "identify specific, sensitive information . . . collected" to sustain a privacy claim.)

**2.  Plaintiffs allege conduct that is sufficiently serious and highly offensive.**

The Court found on the preliminary injunction motion that Plaintiffs allege Meta behaved "egregiously." Dkt. 159 at 26. Meta does not identify any valid reason to reconsider. The conduct as alleged here is materially different from garden-variety data sharing. *See id.* at 26-27. The type of information Meta receives is recognized as especially sensitive by state and federal law, and Meta's own

---

[10] Plaintiffs note that this does not apply to Plaintiffs' § 631 claim.

1   policies. *See id.* What's more, "[a] breach of privacy serious enough to support criminal charges is, almost

2   by definition, an egregious violation of social norms." *Doe v. Beard*, 63 F.Supp.3d 1159, 1170 (C.D. Cal.

3   2014). There are particularly strong social norms surrounding the confidentiality of medical information

4   because disclosure can "subvert a public interest favoring communication of confidential information

5   to medical personnel"—precisely the conduct at issue here. *Id.*

6        Plaintiffs also allege "the manner [their health information] was collected . . . violates social

7   norms." *In re Facebook Internet Tracking Litig.*, 956 F.3d at 603. Meta intercepted Plaintiffs' health

8   information and communications with their healthcare providers for advertising purposes without their

9   knowledge or consent violates recognized social norms, as evidenced in HIPAA and other statutes that

10  prohibit and criminalize the conduct. That Meta promised Facebook users that it wasn't trafficking in

11  unauthorized data only further underscores the highly offensive nature of its practices. *See In re Google*

12  *Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 151 (3d Cir. 2015) (sustaining allegations of

13  egregious breach of social norms because "Google not only contravened the cookie blockers—it held

14  itself out as respecting the cookie blockers").[11]

15       Meta falls back on its filtering practices to rebut the seriousness of Plaintiffs allegations. But

16  "determining whether an intrusion is 'highly offensive' requires a fact-intensive inquiry that 'examine[s]

17  all of the surrounding circumstances.'" *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d at 830–31 (citing

18  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). "Such an inquiry cannot be conducted at the

19  motion to dismiss stage where, as here, there are open factual questions regarding 'the likelihood of

20  serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives,

21  and whether countervailing interests or social norms render the intrusion inoffensive.'" *Id.* (citing

22  *Facebook, Internet Tracking Litig.*, 956 F.3d at 606. ("The ultimate question of whether [] tracking and

23  collection practices could highly offend a reasonable individual is an issue that cannot be resolved at

24

---

25  [11] Meta's intentional, affirmative conduct is readily distinguishable from its cited authority, *Razuki v. Caliber Home Loans, Inc.*, where the plaintiff alleged the defendant failed to protect his information due

26  to insufficient security measures. 2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018). *In re iPhone Application Litigation* did not involve health information and held "without explanation" that the disclosures at issue

27  did not constitute an egregious breach of social norms. *Opperman v. Path, Inc.*, 205 F.Supp.3d 1064, 1078 (N.D. Cal. 2018) (citing *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2012)). The

28  lack of analysis makes it impossible to apply *iPhone*'s reasoning here.

1    the pleading stage.")).

2        Next, Meta contends Plaintiffs fail to state a claim because they do not allege how Meta uses

3    their health information. This misstates Plaintiffs' allegations. But, just as important, *subsequent use is not*

4    *required* for an intrusion claims. *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019)

5    ("The intrusion itself makes the defendant subject to liability, even though there is no publication or

6    other use of any kind of the . . . information.") (citing Restatement (Second) of Torts § 652B).

7    **E.  Plaintiffs Adequately Allege CDAFA Claims**

8                **1.  Plaintiffs allege a "damage or loss" cognizable under the CDAFA.**

9        Plaintiffs allege three damages or losses under the CDAFA, each of which is sufficient to sustain

10   a CDAFA claim: (1) the Pixel precluded Plaintiffs from being able to communicate with their healthcare

11   providers, (2) Plaintiffs' protected health information diminished in value, and (3) the Pixel prevented

12   Plaintiffs from using their computing devices for the purpose of communicating with their healthcare

13   providers. ¶ 484. Courts have found these types of damages are cognizable under the CDAFA. *See In re*

14   *Apple Inc. Device Performance Litig.*, 347 F.Supp.3d 434, 454 (N.D. Cal. 2018); *Ubisoft, Inc. v. Kruk*, 2021

15   WL 3472833, at *3-4 (C.D. Cal. July 9, 2021); *In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1065; *Williams v.*

16   *Facebook*, 498 F.Supp.3d 1189, 1199-1200 (N.D. Cal. 2019); *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d

17   at 599-600 (plaintiffs adequately alleged standing to bring CDAFA claim by alleging Facebook was

18   unjustly enriched by tracking and selling plaintiffs' browsing histories). Section 502(c)(1) "permits claims

19   where the defendant wrongfully obtained data, not just property or money." *West v. Ronquillo-Morgan*,

20   526 F.Supp.3d 737, 747 (C.D. Cal. 2020). Plaintiffs have so alleged. ¶ 484.

21               **2.  Plaintiffs plausibly allege Meta violated § 502(c)(1).**

22       Meta's argument specific to § 502(c)(1) is circular—it claims Plaintiffs cannot allege it had a

23   scheme to wrongfully obtain data because it lacked wrongful intent. Dkt. 232 at 16. To the extent Meta's

24   argument reiterates their contention that Meta did not act knowingly or intentionally, the argument is

25   baseless for the reasons explained above. *See supra* Section IV.B.1. But also, Meta overlooks Plaintiffs'

26   allegations that it uses their "data to obtain money through advertising" and the use is "wrongful"

27   because it is prohibited by state and federal laws, along with Meta's own policies. ¶¶ 481-82. Meta's

28   "scheme" is also set out elsewhere throughout the Complaint. *See, e.g.*, ¶¶ 300, 349-51.

### 3.   The Pixel is a "contaminant."

Meta's argument that Plaintiffs' § 502(c)(8) claim fails because the Pixel is not a "computer contaminant" also ignores relevant allegations and the text of the statute. *See* Dkt. 232 at 16. Meta suggests that computer contaminants must impair the integrity of a device and are limited to "viruses or worms." *Id.* This ignores that the statutes expressly states that a contaminant is "not limited to" viruses and worms, but instead also includes any "computer instructions . . . that are designed to . . . transmit information" within a computer, system, or network "without the intent or permission of the owner of the information." Cal. Penal Code § 502(b)(12). The Pixel falls squarely within this definition. *See* ¶¶ 10-11, 47, 64-65, 417-420, 477 (details on how the Pixel instructs computing devices to transmit information to Meta without the intent of the plaintiffs). Thus, under the plain language of the CDAFA, Plaintiffs adequately allege the Pixel is a "computer contaminant." *See Flextronics Int'l, Ltd. v. Parametric Tech. Corp.*, 2014 WL 2213910 (N.D. Cal. May 28, 2014) (embedded technology in software that caused information to be transmitted constituted a "computer contaminant"). Finally, Meta argues it did not "introduce" the Pixel into Plaintiffs' computers and computer systems. But Plaintiffs clearly allege Meta "knowingly introduced the Pixel" by "developing the Pixel and encouraging and providing instructions to health care providers and covered entities on its use and deployment." ¶ 479. Meta provides no reasoning or authority as to why its actions fall outside the language or scope of the CDAFA.

### F.   Plaintiffs Adequately Allege Breach of Contract and Good Faith and Fair Dealing

### 1.   Meta's limitation of liability clause is not enforceable.

Meta argues that a limitation of liability clause is enforceable unless unconscionable – and thus excuses Meta's behavior here. Not so. Cal. Civ. Code § 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Under this statute, it is "settled" that "a party cannot contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory [or regulatory] law[.]" *Health Net of Cal., Inc. v. Dept. of Health Servs.*, 113 Cal.App. 4th 224, 243 (2003) (citing cases and also applying statute to prohibit limitations of liability for negligent violations of "regulatory law" under contract cause of action). Here, Plaintiffs adequately allege Meta engaged in an intentional and fraudulent breach

14

of its promises and patients' reasonable expectations of privacy; and that those actions were intentional or, at best for Meta, negligent violations of statutory and regulatory law. In addition, such clauses are invalid even for ordinary negligence claims where they "involve the public interest." *Tunkl v. Regents*, 60 Cal. 2d 92, 93 (1963) (hospital could not contractually immunize itself from future negligence). Here, the facts meet the test: Meta attempts to immunize itself from liability for intentional breach of medical privacy rights affecting nearly all members of the public, issues for which the Court found "the public has an interest in privacy in general and health information in particular." Dkt. 159 at 33.

Further, even if Plaintiffs needed to show that the clause was unconscionable, they can do so here. In the case cited by Meta, *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App. 4th 1118, 1126 (2012), the court explained that such a clause would be unenforceable where it is "the improper result of unequal bargaining power or contrary to public policy." Here, the "unequal bargaining power" is significant. Plaintiffs were presented with Meta's Terms on a take-it-or-leave-it contract of adhesion—*see* ¶¶ 203 ("contract of adhesion"), ¶¶ 287-88 (explaining "click-wrap" agreement—which, "absent unusual circumstances . . . establishes a minimal degree of procedural unconscionability[.]" *Gatton v. T-Mobile USA, Inc.*, 152 Cal.App. 4th 571, 585-86 (2007); *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000). The provision is also substantively unconscionable as applied to the facts here because they are unfairly one-sided. Where "there is no reciprocal limitation on damages or indemnification obligations imposed on" a defendant, California courts have found contracts to be "so one-sided as to be substantively unconscionable." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal.App. 4th 816, 825 (2010); *see also Gostev v. Skillz Platform, Inc.*, 88 Cal.App. 5th 1035, 1058 (2023); *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal.App. 5th 643, 663 (2022). This is the very definition of a one-sided limitation of liability provision and is so one-sided as to be unenforceable.

### 2.  Meta's promises are "sufficiently definite" to state contract claims.

Meta argues that its contract is not "sufficiently definite" to be enforced because the Court previously noted the term "'require' is susceptible to multiple meanings." Dkt. 232 at 18 (quoting Dkt. 159 at 17). But Meta previously argued the opposite. In opposing the motion for preliminary injunction, Meta argued that its contract "disclosures were broad and unambiguous." PI Hr'g Tr. at 32:18-19. Meta also argued that its contract provision was "sufficiently definitive" for the Court to decide that "Meta

15

1  does require third parties to have lawful rights to share user data." Dkt. 76 at 26.

2       The Court rejected Meta's argument. Having lost, Meta now flip-flops, claiming the provision

3  is not just ambiguous, but so ambiguous that it cannot possibly be enforced. This turns consumer

4  contract law on its head. It is black-letter law that "any ambiguities caused by the draftsman of the

5  contract must be resolved against that party," a rule that "applies with peculiar force in the case of the

6  contract of adhesion." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015); *see also* Cal. Civ.

7  Code § 1654 ("'[T]he language of a contract should be interpreted most strongly against the party who

8  caused the uncertainty to exist").

9       Moreover, Meta misconstrues the allegations regarding the statements beyond Meta's promise

10 that it "require[s] Partners to have the right" or "lawful right" to "share your information." Elsewhere

11 in the contract, Meta explains that the word "requires" means that, if the requirement is not met, the

12 product or service will not work. ¶¶ 96-97. Additional promises also directly relate to the meaning of

13 the word "require." ¶ 312. As Plaintiffs explained in prior briefing, a reasonable person reading Meta's

14 contract would conclude that "require" meant that Meta would "employ dedicated teams around the

15 word," "develop advanced technical systems," and "work with . . . partners . . . to detect potential misuse

16 of [Meta's] products" and to "take appropriate action" such as "blocking access to certain features [or]

17 disabling an account." ¶ 312; *see also* ¶ 117.[12]

18                    **3.  Plaintiffs allege breach.**

19      Meta promised to "require" partners to have lawful rights to share information before doing so.

20 Instead, Meta encouraged healthcare providers to share personal health information, knowing full well

21 that that its "partners" did not have lawful rights to share that information with Meta. Whether

22 actionable as a breach of contract, breach of good faith and fair dealing, or both, the allegations more

23 than suffice to plead bad faith and unfair dealing.

24          **4.  Plaintiffs adequately allege breach of good faith and fair dealing.**

25      In California, "every contract calls for the highest degree of good faith and honest dealing

26

---

27 [12] *In re Facebook, Inc. Sec. Litig.*, 477 F.Supp.3d 980, 1013 (N.D. Cal. 2020), is inapt because whether a
   statement is an actionable "misrepresentation" in a securities case is a different question than whether
28 a contractual statement is "sufficiently definite" to create a contractual duty.

1 between the parties." *Nelson v. Abraham*, 29 Cal. 2d 745, 750 (1947). The duty "prevent[s] a contracting

2 party from engaging in conduct which . . . frustrates the other party's rights to the benefits of the

3 contract." *Racine & Laramie, Ltd. v. Dept. of Parks & Rec.*, 11 Cal.App. 4th 1026, 1031-32 (1992). It "finds

4 particular application . . . where one party is invested with a discretionary power affecting the rights of

5 another." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992). A Plaintiff need

6 not allege a breach of a specific provision, or that the "party's conduct be dishonest." *Id.* at 373.

7 "Objectively unreasonable conduct," "evasion of the spirit of the bargain," and "abuse of a power to

8 specify terms" are all actionable. *Id.*; *R.J. Kuhl Corp. v. Sullivan*, 13 Cal.App. 4th 1589, 1602 (1993).

9    Meta's discretionary power impacts users' rights. *Carma Devs.*, 2 Cal.4th at 372. In drafting its

10 contract, Meta had the discretionary power to define terms and to apply those terms. Here, Plaintiffs

11 allege Meta "abused its power" to define "[t]he meaning of the term 'require'" and "[t]he meaning of

12 the term 'appropriate action.'" ¶ 323. The abuse that Meta engaged in (by interpreting "require" in a way

13 that did not actually "require" anything) frustrated Plaintiffs' rights to the benefit of the contract—

14 which included being able "to understand what information [Meta] collects[.]" *See* Dkt. 232-6 at 2.

15    **G. Plaintiffs State a Claim for Unjust Enrichment**

16    Meta mistakenly argues Plaintiffs' unjust enrichment claim fails because Plaintiffs: (1) cannot

17 pursue such a claim where a valid express contract covers the same subject matter; and (2) did not plead

18 that they lack an adequate remedy at law. But Plaintiffs' unjust enrichment claim derives from Meta

19 having obtained, transmitted, and sold Plaintiffs' data without their consent and retained the proceeds

20 of that sale. ¶¶ 490-93. Meta overlooks that this claim is distinct from the breach of contract claim,

21 which is based on Meta's failure to require entities to obtain appropriate authorization before sharing

22 Plaintiffs' health information (¶¶ 303-12), Meta overcharging Plaintiffs by collecting data in excess of

23 the "data license" agreed upon (¶ 315), and Meta conspiring with others to violate Plaintiffs' privacy

24 rights (¶ 313). Regardless, Plaintiffs may plead an unjust enrichment claim alongside a contract claim.[13]

25 *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Plaintiffs also allege an inadequate

26 remedy at law, *see* ¶ 448 (incorporated by reference at ¶ 489), and the Court agreed at Dkt. 159 at 28.

---

27

28 [13] Meta moves to dismiss the contract claims, *see* Dkt. 232 at 16-19, but then argues the claims it contends cannot offer relief are duplicative of this equitable claim. Both cannot be true at the same time.

1  Thus, Plaintiffs state a claim for unjust enrichment than should survive dismissal. *See In re Google Location*

2  *Hist. Litig.*, 514 F.Supp.3d 1147, 1159-60 (N.D. Cal. 2021); *In re Facebook Internet Tracking Litig.*, 956 F.3d

3  at 600 ("California law requires disgorgement of unjustly earned profits[.]").

4  **H. Plaintiffs State a Claim for Negligence Per Se**

5  Meta contends that Plaintiffs have not alleged a duty of care, but Plaintiffs allege that Meta has

6  a duty, codified in HIPAA, not to obtain or use their individually identifiable health information without

7  authorization. *See* ¶¶ 15, 175-80, 184, 403, 413; 42 U.S.C. § 1320d-6; 45 C.F.R. § 164.508(a)(3). "[A]

8  statute may impose a duty where none existed at common law." *Pemberton v. Nationstar Mortg. LLC*, 331

9  F.Supp.3d 1018, 1059 (S.D. Cal. 2018) (citation omitted); *In re Ambry Genetics Data Breach Litig.*, 567

10  F.Supp.3d 1130, 1142-43 (C.D. Cal. 2021) ("Plaintiffs' reliance on the negligence per se doctrine does

11  not fail merely because the statutes they allege Defendants violated [HIPAA and the FTC Act] do not

12  provide a private right of action.").

13  Plaintiffs also allege causation. ¶¶ 71-74, 126-45, 228-44, 325. Indeed, the Court found Meta's

14  causation argument to be "meritless" on the motion for preliminary injunction. Dkt. 159 at 28.  Finally,

15  Meta's contention that it is not a "business associate" under HIPAA is also incorrect. HIPAA defines

16  "business associate" to include any person who "creates, receives, maintains, or transmits protected

17  health information for a function or activity regulated by [HIPAA]." 45 C.F.R §§ 160.103 (regulated

18  activities include performing "data analysis"); *see also* 45 C.F.R. § 164.508(a)(3) (prohibiting unauthorized

19  use of protected health information for marketing purposes). Plaintiffs allege facts to show that Meta

20  meets that definition (¶ 404) and HHS agrees (¶ 178).

21  **I. Plaintiffs State a Claim for Trespass to Chattels**

22  Plaintiffs allege Meta intentionally interfered with the use and possession of their computing

23  devices, resulting in a trespass to chattels. Contrary to Meta's assertion, intent has been alleged: "Meta

24  placed the _fbp cookie on Plaintiffs' . . . computing devices intentionally and without Plaintiffs' . . .

25  knowledge . . .." ¶ 421. This and other allegations that Meta intentionally facilitated the unauthorized

26  collection of Plaintiffs' health data (*see, e.g.*, ¶¶ 244, 335) constitute a sufficient pleading of the intent

27  element. Meta also argues Plaintiffs consented to the placement of cookies on their computers; this

28  argument is a red herring. Plaintiffs plainly did not consent to Meta placing cookies on their computers

that allowed for the collection of their health information. *See* ¶¶ 294-302. By doing so, Meta intermeddled with Plaintiffs' property rights without consent.

Meta contends Plaintiffs' trespass claim is deficient because of improper allegations of damage.[14] To adequately plead trespass to a computing device, Plaintiffs must allege Meta's trespass either impaired the condition, quality, or value of personal property or interfered with Plaintiffs' use of personal property. *Grace v. Apple Inc.*, 2017 WL 3232464, at *5, *11-13 (N.D. Cal. July 28, 2017). Plaintiffs' trespass claim here centers on Meta's unauthorized interference with Plaintiffs' use of their devices via the _fbp cookie Meta places on their devices via their health-care providers' web-properties and Meta tracking. ¶¶ 415-28. Plaintiffs allege their "computing devices derive substantial value from their ability to facilitate communications with their health care providers . . . , which is integral to . . . [their] intended function" and Meta's conduct "deprives Plaintiffs . . . of the full value of using their computing devices for those communications," rendering their devices "useless for exchanging private communications with health care providers . . . that use the Pixel . . . , which substantially impairs the condition, quality, and value of" Plaintiffs' devices. ¶¶ 423-25. These allegations suffice because Meta has no right to interfere with Plaintiffs' possessory interests in this manner and, in doing so, deprived Plaintiffs of use of their property. *See Grace*, 2017 WL 3232464, at *11-13 (plaintiffs stated trespass claim where Apple disabled ability to FaceTime, which was integral to their devices' intended function and their "condition, quality, or value" significantly decreased). Even minimal unauthorized use of a plaintiff's property is sufficient to state a trespass claim where the plaintiff suffers harm caused by the unauthorized use. *See eBay, Inc. v. Bidder's Edge, Inc*, 100 F.Supp.2d 1058, 1071 (N.D. Cal. 2000).

In addition, Meta's cases are inapposite. *Yunker* and *iPhone Application Litigation* hold that diminished battery capacity or device memory are insufficient if there is no impact on functionality. *See Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *2 (N.D. Cal. Mar. 26, 2013); *In re iPhone Application Litig.*, 844 F.Supp.2d at 1069. But Plaintiffs here have not alleged diminished battery capacity or device memory. Likewise, *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal.App. 5th 755, 757-58, 767-68 (2022), involved a one-time hacking that did not interfere with the plaintiffs' use of the computer

---

[14] It is undisputed here that Plaintiffs' computing devices are their personal property. ¶ 416.

1  system; and in *Vertkin v. Vertkin*, 2007 WL 4287512, at *3 (N.D. Cal. Dec. 6, 2007), the plaintiff did not

2  allege any impairment or inability to use the computers in question.

3      Here, Plaintiffs allege Meta's trespass made their devices "useless for exchanging private

4  communications with health care providers" (¶¶ 423-25), which Meta has admitted is true. ¶ 78.[15] Such

5  interference is an actionable property harm.  *See eBay, Inc.*, 100 F.Supp.2d at 1071.

6     **J.   Plaintiffs Adequately State a Claim for Statutory Larceny**

7      California's larceny statute authorizes civil actions against "every person" who buys or receives

8  property "obtained in any manner constituting theft." Cal. Penal Code §§ 496(a), 496(c). A violation

9  occurs where (1) property was stolen in "any manner constituting theft," (2) the defendant was in

10  possession of the property (3) knowing that it was stolen. *See Hueso v. Select Portfolio Servicing, Inc.*, 527

11  F.Supp.3d 1210, 1229 (S.D. Cal. 2021). Penal Code § 484(a), defining what "constitute[es] theft,"

12  includes theft by false pretense, or "the consensual but fraudulent acquisition of property from its

13  owner." *Bell v. Feibush*, 212 Cal.App. 4th 1041, 1049 (2013) (citing Cal. Penal Code §§ 484(a), 532); *accord*

14  *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 350 (2022); *Hueso*, 527 F.Supp.3d at 1229. Having alleged

15  Meta knowingly obtained their information by false pretense, Plaintiffs state a statutory larceny claim.

16      Meta's argument that it acquired sensitive health information "innocently or inadvertently" (*see*

17  Dkt. 232 at 23) is contrary to Plaintiffs' allegations that Meta obtained Plaintiffs' property under false

18  pretenses, *i.e.*, a manner constituting theft. Specifically, Meta obtained users' health information by

19  violating reasonable expectations of privacy and express promises in its binding contracts. *See* ¶¶ 96-

20  124. These omissions and misrepresentations give reasonable consumers like Plaintiffs the mistaken

21  impression that Meta will not receive sensitive or otherwise unlawfully obtained information. *See* ¶¶

22  103-10, 114-17; *see also* Dkt. 159 at 15 (this Court stating that "Meta's policies do not . . . specifically

23  indicate that Meta may acquire *health data* from Facebook users' interactions with their *medical providers'*

24  *websites*."). The fact that Plaintiffs "freely provided information to their *providers*," Dkt. 232 at 23

[15] Tellingly, in response to the Court's question about whether a patient could "prevent disclosure of that information to Meta," Meta stated a patient would need "to pick up the phone" to call "their doctor" or "their hospital" and that "there are many, many people out there who don't have computers and don't use these portals as their sole means of communication with their doctors." PI Hearing Transcript at 5:15-17, 9:10-18.

(emphasis added), does not save Meta. "Because an element of theft by false pretense involves the owner of the property voluntarily parting" with it" because of the defendant's misrepresentations, "it follows that theft by false pretenses may be accomplished with the owners' consent." *Hueso*, 527 F.Supp.3d at 1229 (internal citations omitted). Thus, even "consensual but fraudulent acquisition of property from its owner" is theft. *See Bell*, 212 Cal.App. 4th at 1049.

Meta does not dispute that it obtained Plaintiffs' property,[16] but argues dismissal is proper because Meta claims it did not know the information it possessed was ill-gotten. *See* Dkt. 232 at 23. A recent decision is instructive. In *McCraner v. Wells Fargo & Co.*, 2023 WL 2728719 (S.D. Cal. Mar. 30, 2023), the court held that Wells Fargo customers adequately alleged a claim under § 496(a) where the bank "knew" or "must have known" that third parties "were defrauding their customers" because those third parties employed "extremely troubling" tactics. Despite Wells Fargo's argument that it lacked the requisite criminal intent, the court sustained plaintiffs' larceny claim because Wells Fargo was aware of "extremely troubling" indicia of third-party fraud and thus "must have known" of the underlying scheme such that plaintiffs satisfied the knowledge element for statutory larceny. *See id.* at *5-6, *8. Plaintiffs here go a step further—Meta not only "must  have known,". Plaintiffs plead sufficient facts to support an inference that Meta *did know* it possessed their stolen information. *McCraner*, 2023 WL 2728719 at *4. The CCAC alleges Meta knew Plaintiffs' information was stolen "because Meta designed the code that redirected" Plaintiffs' health information to Meta. ¶ 462. Meta cannot claim inadvertence or lack of knowledge after it designed the Pixel to take the data, ¶¶ 75-76, marketed the Pixel for this very purpose, ¶¶ 129-46, and then encouraged health care providers and covered entities to use the Pixel. ¶¶ 124, 126-27. Further, Meta cannot credibly argue it was unaware that the Pixel was collecting Plaintiffs' health information without their consent, when Meta implemented a filter mechanism to address the very issue. ¶ 118.

Meta's other arguments provide no basis for dismissal. For the reasons explained above, *see supra*

---

[16] Meta does not contend health information does not count as "property" under this statute. Nor could it. "Anything that could be the subject of a theft can also be property under section 496." *Bell*, 212 Cal.App. 4th at 1049 (citing *People v. Gopal*, 171 Cal.App. 3d 524, 541 (1985)); *see, e.g.*, *Broidy Cap. Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *16 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021) (applying California law and holding that electronically stored information procured by cyberattack constituted "property" for purposes of a statutory larceny claim).

IV.A, Meta's contention that Plaintiffs cannot invoke California law are mistaken. As for Meta's observation that Penal Code section 484 provides no private right of action, Plaintiffs' claim arises under section 496, which expressly authorizes private suits. Cal. Penal Code § 496(c). Plaintiffs reference section 484 only for purposes of recognizing what constitutes "theft."

### K.  UCL / CLRA

Meta's six arguments against Plaintiffs' UCL and CLRA claims fail.

*First*, Meta's argument regarding extraterritoriality is incorrect. *See supra* IV.A.[17]

*Second*, Plaintiffs allege reliance on Meta's promises and a reasonable expectation of privacy in their health information. ¶¶ 20, 83, 439. Additionally, Plaintiffs allege that the contract containing the omissions and misrepresentation was agreed to by, and is binding on, Plaintiffs. ¶ 86.[18] Taken together, these allegations show Plaintiffs' actual reliance. Furthermore, because their UCL claim is also based on Meta's omission (¶ 433), Plaintiffs may prove reliance by alleging "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Plaintiffs have alleged just that in ¶ 439.

*Third*, Plaintiffs allege a loss of money or property. ¶¶ 190-216, 350. Courts recognize that plaintiffs have lost money or property under the UCL when a defendant interferes with their right to control health information and communications. *See, e.g., In re Solara Med. Supplies, LLC Customer Data Security Breach Litig.*, 613 F.Supp.3d 1284, 1301 (S.D. Cal. 2020) (finding plaintiffs who lost control of their medical information lost money or property for purposes of the UCL); *Cappello v. Walmart, Inc.*, 394 F.Supp.3d 1015, 1020 (N.D. Cal. 2019) ("So long as Plaintiffs have adequately alleged Walmart breach the terms of its privacy agreement, therefore, Plaintiffs have standing under the UCL."). These holdings make good sense and follow this District's repeated findings that personal information and data has economic value that plaintiffs can lose. *See Brown v. Google, LLC,* 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (plaintiffs lost money when Google took "valuable data" and "received *no* money in return"); *Callahan v. PeopleConnect, Inc.*, 2021 WL 5050079, at *19 (N.D. Cal. Nov. 1, 2021)

---

[17] Meta raises no CLRA argument apart from extraterritoriality, addressed *supra* at Section IV.A.

[18] Ironically, Meta argues that Plaintiffs agreed to the data-sharing practices "based on the clear and broad disclosures users must agree to when they create a Facebook account" (Dkt. 232 at 2 n.1), while at the same time arguing Plaintiffs did not rely on the same "clear and broad disclosures."

(plaintiffs' personal information is "intellectual property" for which they were not paid); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 635 (N.D. Cal. 2021).[19]

Here, Plaintiffs have identified a "valuable right or interest protected by law" or "intangible benefit and prerogative susceptible of possession or disposition." ¶¶ 190-216, 350. HIPAA, for example, provides a patient with exclusive rights to determine how their health information is used. *See* 45 C.F.R § 164.508 (prohibiting disclosure of protected health information without authorization). Courts have recognized that the theft of personal information or communications is a loss of money or property or constitutes economic loss. *See In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *15 (N.D. Cal. Cal. May 27, 2016) (Koh, J.); *Doe v. Virginia Mason Medical Center*, 2020 WL 1983046, at *1 (Wash. Super. Feb. 12, 2020) ("an individual does have a property right in his/her healthcare identification data").

Meta's cases do not support dismissal here; the plaintiffs there did not allege economic loss. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir 2021) (Nevada law); *Hart*, 526 F.Supp.3d at 603; *Katz-Lacabe v. Oracle*, 2023 WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023). *But see* ¶¶ 22, 215-16 (alleging economic loss). Also, *Katz-Lacabe* acknowledged that some district courts have found that the taking of personal information for commercial gain constitutes "lost money or property" under the UCL. 2023 WL 2838118, at *8; *see also Kellman v. Spokeo, Inc.*, 599 F.Supp.3d 877, 895-96 (N.D. Cal. 2022) (Orrick, J.) (finding plaintiffs who pled defendant was unjustly enriched from using their personal information without compensation stated UCL economic injury). There is no reasonable dispute that if Meta had stolen identical information from the health care providers through other means that the providers would have suffered loss of money or property. Likewise, if another company stole the exact same data from Meta, there would be no reasonable dispute about lost money or property. *See Facebook,*

---

[19] These cases apply longstanding property rules. In California, "[t]he word property may be properly used to signify any valuable right or interest protected by law." *Fields v. Michael*, 91 Cal.App. 2d 443, 449 (1949) (internal quotations omitted). It "include[s] every species of estate . . . everything which one person can own and transfer to another [and] every species of right and interest capable of being enjoyed as such upon which it is practicable to place a money value." *Yuba River Power Co. v. Nev. Irr. Dist.*, 207 Cal. 521, 523 (1929). It even includes a copy of a key made without the owner's knowledge—even when the original key is returned to the owner, "which is analogous to making . . . an unauthorized copy of computer data." *People v. Kwok*, 63 Cal.App. 4th 1236, 1251 (1998); *See also CTC Real Estate Servs. v. Lepe*, 140 Cal.App. 4th 856, 860-61 (2006) (holding that "[o]ne's personal identifying information can be the object of theft" and "is a valuable asset"), cited with approval by In re *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020).

*Inc. v. ConnectU, LLC*, 489 F.Supp.2d 1087 (N.D. Cal. 2007).  The Supreme Court has expressly held that the term "money or property" includes "confidential business information," which "has long been recognized as property." *Carpenter v. U.S.*, 484 U.S. 19, 26 (1987). As a result, the fact that a company that was "deprived of its right to exclusive use of the information" had suffered a loss of property subject to federal mail and wire fraud statutes (which plaintiffs have alleged were violated here in ¶¶ 348-352) because "exclusivity is an important aspect of confidential business information and most private property for that matter." *Carpenter* at 26-27. Here, Plaintiffs specifically allege that Meta's collection of data without authorization violates the limited "data license" Plaintiffs provided to Meta in exchange for the use of its services. ¶ 199-216. Plaintiffs see no principled reason why patients should be afforded less rights to define the scope of access to their own medical information than that which is afforded to any other business. If the violation of a data license agreement is actionable for a company, it is equally actionable for individuals.

Courts also recognize that plaintiffs suffer a loss of money under the UCL when they provide "valuable data" and "receive[] no money in return"—just as Plaintiffs lost valuable data to Meta without any compensation. *Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021); *see also Klein v. Facebook, Inc.*, 580 F.Supp.3d 743, 803-04 (N.D. Cal. 2022) (collecting cases). In *Brown*, the Court found the plaintiffs alleged lost money after alleging that Google had paid users for their digital information previously, but took the plaintiffs' data without compensation. 2021 WL 6064009, at *17. The same reasoning applies here. *See* ¶¶ 22 (Meta did not compensate Plaintiffs), 215 (Meta has previously paid users for their digital information), 216 (markets, though rare, exist for this information).

*Fourth*, Plaintiffs allege they lack an adequate remedy at law, an allegation supported by the Court's ruling on the preliminary injunction motion. ¶ 448; *see* Dkt. 159 at 28. Contrary to Meta's argument, Plaintiffs need not, at this early stage, allege specific facts showing their remedies at law are necessarily inadequate. *Johnson v. Trumpet Behavioral Health, LLC*, 2022 WL 74163, at *2 (N.D. Cal. Jan. 7, 2022). And Plaintiffs may allege claims in the alternative at the pleading stage. *See McKay v. Sazerac Co., Inc.,* 2023 WL 3549515, at *9 (N.D. Cal. May 17, 2023).

*Fifth*, the claims on which Plaintiffs' unlawful prong claim is based are adequately alleged. *See* Sections IV.B, IV.C, IV.D, IV.E. Plaintiffs' UCL claim under the unlawful prong is based on Meta's

24

violation of (1) the California Constitution's right to privacy; (2) the ECPA; (3) the CIPA (Cal. Penal Code §§ 631, 632); (4) HIPAA, including specifically 42 U.S.C. § 1320d-6; and (5) California health and computer privacy statutes, including but not limited to the CDAFA (Cal. Penal Code § 502). Because Meta's Motion fails as to those claims, so too does the Motion fail as to Plaintiffs' unlawful prong UCL claim.

*Sixth*, Plaintiffs' UCL claim under the unfair prong satisfies both the "tethering" and "balancing" tests. The "tethering test" requires "that the public policy" underlying the unfair conduct is "tethered to specific constitutional, statutory or regulatory provisions" while the "balancing test" asks whether the business practice is "immoral, unethical, oppressive, unscrupulous, or substantially injuries to consumers" when comparing "the utility of the defendant's conduct against the gravity of harm." *Herskowitz v. Apple Inc.*, 940 F.Supp.2d 1131, 1145-46 (N.D. Cal. 2013) (citations omitted). For tethering, Plaintiffs need merely to show that the effects of [the defendant's] conduct 'are comparable to or the same as a violation of the law," not that the law is actually violated. *In re Zoom Video Commc'ns Priv. Litig.*, 525 F.Supp.3d 1017, 1047 (N.D. Cal. 2021). Here, Plaintiffs adequately allege Meta violates HIPAA and other federal and state laws. That is sufficient. *See id.* (tethering satisfied based on HIPAA and other consumer protection statute allegations). For "balancing," the Court already found Meta's conduct causes "irreparable" harm and "a weighty injury." Dkt. 159 at 27, 31. Plaintiffs allege these harms outweigh any utility of how Meta uses the information. ¶¶ 317.e., 329.e., 358.d., 388.e., 401.f. Nothing more is required. *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *7 (N.D. Cal. Aug. 16, 2021).

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Meta's motion to dismiss.

Dated: June 12, 2023

By: */s/ Jason 'Jay' Barnes*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
jaybarnes@simmonsfirm.com
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949

1

By: /s/ Geoffrey Graber

2

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547

3

ggraber@cohenmilstein.com
1100 New York Avenue NW, Fifth Floor

4

Washington, DC 20005
Tel:    202-408-4600

5

Fax:    202-408-4699

6

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803

7

koncius@kiesel.law
8648 Wilshire Boulevard

8

Beverly Hills, CA 90211
Tel:    310-854-4444

9

Fax:    310-854-0812

10

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181

11

bterrell@terrellmarshall.com
936 North 34th Street, Suite 300

12

Seattle, WA 98103
Tel.:    206-816-6603

13

Fax:    206-319-5450

14

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541

15

amm@classlawgroup.com
1111 Broadway, Suite 2100

16

Oakland, CA 94607
Tel.:    510-350-9700

17

Fax:    510-350-9701

18

19

### <u>CIVIL L.R. 5-1(h)(3) ATTESTATION</u>

20

Pursuant to Civil Local Rule 5-1(h)(3), the CM/ECF user filing this document attests that

21

concurrence in its filing has been obtained from its other signatories.

22

Dated: June 12, 2023

/s/ Jeffrey A. Koncius

23

Jeffrey A. Koncius

24

25

26

27

28