UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 22-cv-03580-WHO (VKD)<br><br>**ORDER RE DISCOVERY DISPUTE RE "WEB-PROPERTY"**<br><br>Re: Dkt. No. 222 |

Plaintiffs and defendant Meta Platforms, Inc. ("Meta") ask the Court to resolve their dispute regarding the scope of plaintiffs' discovery relating to healthcare providers' use of Meta tracking tools. Dkt. No. 222. The Court held a hearing on this matter on May 23, 2023. Dkt. Nos. 255, 262 (hearing transcript).

As explained below, "Web-Property" should be understood to mean healthcare providers' websites and web pages; it does not include "applications."

I.     **BACKGROUND**

In this putative class action, plaintiffs allege that Meta improperly acquires their confidential health information in violation of state and federal law and in contravention of Meta's own policies regarding use and collection of Facebook users' data, principally by means of a tracking tool called the "Pixel." Dkt. No. 185 ¶¶ 1-23. Each of plaintiffs' healthcare providers allegedly installed the Meta Pixel on their patient portals and in other places on their websites. *See id.* ¶¶ 24-28. Plaintiffs claim that when they logged into the patient portal or engaged in other activity on their healthcare providers' websites, the Pixel transmitted certain information to Meta. *Id.* ¶¶ 24-28, 79-82.

Plaintiffs have served document requests ("RFPs") and interrogatories on Meta. Those discovery requests define the term "Web-Property" as "a point of presence on the web, including

websites." *E.g.*, Dkt. No. 222-1 at 5. Plaintiffs say that "Web-Property" should be understood to encompass "webpages and applications of healthcare providers, i.e., HIPPA or CMIA covered entities." Dkt. No. 222 at 1 (internal quotes omitted). Meta says that "Web Property" should be limited to medical providers' webpages that contain a patient portal or "similar features that transmit patient status." *Id.*

## II. DISCUSSION

Although plaintiffs' consolidated complaint includes allegations that the Meta acquired confidential health information by tracking users' activities on healthcare provider web pages other than patient portals, Meta argues that certain web pages maintained by healthcare providers do not implicate protected health information as a matter of law and should be outside the scope of relevant discovery. *See id.* at 4-5 (citing *Smith v. Facebook*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)). Meta also argues the Judge Orrick has already held that Meta's tracking of users' behavior on web pages other than "portal-type" web pages is "legally irrelevant." *Id.* at 5. Plaintiffs counter that Judge Orrick did not decide precisely what information is "protected" when he denied their motion for a preliminary injunction and that *Smith* also does not resolve the parties' dispute. *Id.* at 3.

The Court agrees with plaintiffs that neither the *Smith* decision nor the preliminary injunction order decides whether information acquired by Meta using the Pixel or other tracking tools on web pages that are not "portal-like" is protected health information. The Court also agrees with plaintiffs that their allegations are not limited to acquisition of information on "portal-like" web pages. Thus, for purposes of plaintiffs' discovery requests, the term "Web-Property" should be understood as a healthcare provider's "point of presence on the web, including websites." The definition does not include "applications," nor are any particular applications described or identified in the consolidated complaint or its Appendix.

**IT IS SO ORDERED.**

Dated: June 16, 2023



VIRGINIA K. DEMARCHI
United States Magistrate Judge