GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (admitted *pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612 USA
Telephone:    (949) 451-3800
Facsimile:    (949) 451-4220

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-3580-WHO |
| _____ | **DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT** |
| This Document Relates To: | |
| All Actions | <u>CLASS ACTION</u> |
| | Date: August 16, 2023 |
| | Time: 2:00 p.m. |
| | Courtroom 2 |
| | **HON. WILLIAM H. ORRICK** |

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

    A.    Plaintiffs' Federal Wiretap Act Claim Fails (Claim 3) .............................. 1

    B.    Plaintiffs' CIPA Claim Fails (Claim 4) ..................................................... 5

    C.    Plaintiffs' Constitutional Privacy (Claim 6) and Intrusion Upon Seclusion (Claim 5) Claims Fail .................................................................. 5

    D.    Plaintiffs' CDAFA Claim Fails (Claim 12) ............................................... 6

    E.    Plaintiffs' Contract-Based Claims Fail (Claims 1 & 2) ............................ 8

    F.    Plaintiffs' Unjust Enrichment Claim Fails (Claim 13) ............................ 10

    G.    Plaintiffs' Negligence Claim Fails (Claim 7) ......................................... 11

    H.    Plaintiffs' Trespass Claim Fails (Claim 8) ............................................. 12

    I.    Plaintiffs' Theft Claim Fails (Claim 11)................................................. 12

    J.    Plaintiffs' UCL (Claim 9) and CLRA (Claim 10) Claims Fail ............... 13

    K.    Plaintiffs' California Statutory and Constitutional Claims Do Not Apply Extraterritorially ..................................................................... 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018)........................................................................7

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) .................................................................................... 11

*Austin v. Atlina*,
    2021 WL 6200679 (N.D. Cal. Dec. 22, 2021) ......................................................... 11

*Backhaut v. Apple, Inc.*,
    74 F. Supp. 3d 1033 (N.D. Cal. 2014).......................................................................2

*Baltazar v. Forever 21, Inc.*,
    367 P.3d 6 (Cal. 2016) ...............................................................................................9

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019).....................................................................9

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021).....................................................................4

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015).......................................................................7

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
    79 Cal. App. 5th 755 (2022) .................................................................................... 12

*Cotter v. Lyft, Inc.*,
    60 F. Supp. 3d 1059 (N.D. Cal. 2014).................................................................... 15

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021).......................................................................7

*Delta Savings Bank v. United States*,
    265 F.3d 1017 (9th Cir. 2017) .................................................................................. 11

*Dfinity USA Res. LLC v. Bravick*,
    2023 WL 2717252 (N.D. Cal. Mar. 29, 2023) ......................................................... 15

*In re Facebook Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ................................................................................. 6, 7

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
    209 Cal. App. 4th 1118 (2012) ..................................................................................9

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................................................ 2

*Hammerling v. Google LLC*,
    2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ............................................................ 5

*Harris v. Garcia*,
    734 F. Supp. 2d 973 (N.D. Cal. 2010) ...................................................................... 12

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) .................................................................... 14

*Hodson v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .................................................................................... 14

*In re iPhone 4S Consumer Litig.*,
    2013 WL 3829653 (N.D. Cal. July 23, 2013) ........................................................... 15

*In re iPhone Application Litig.*,
    2011 WL 44033963 (N.D. Cal. Sept. 20, 2011) ......................................................... 8

*Katz-Lacabe v. Oracle Am., Inc.*,
    2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ......................................................... 3, 13

*Kellman v. Spokeo, Inc.*,
    599 F. Supp. 3d 877 (N.D. Cal. 2022) ...................................................................... 15

*Ladas v. Cal. State Auto. Ass'n*,
    19 Cal. App. 4th 761 (1993) ....................................................................................... 9

*Maldonado v. Apple, Inc.*,
    2021 WL 1947512 (N.D. Cal. Apr. 21, 2021) .......................................................... 15

*Moore v. Centrelake Med. Grp., Inc.*,
    299 Cal. Rptr. 3d 544 (2022) ................................................................................... 14

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) ....................................................................... 15

*Oman v. Delta Air Lines, Inc.*,
    889 F.3d 1075 (9th Cir. 2018) .................................................................................. 15

*People v. Miller*,
    81 Cal. App. 4th 1427 (2000) ................................................................................... 12

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    214 F. Supp. 3d 808 (N.D. Cal. 2016) ........................................................................ 4

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) ................................................................................. 3, 4

-iv-

*RJR Nabisco, Inc. v. European Cmty.*,
  579 U.S. 325 (2016) ................................................................................ 15

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018) ............................................................ 1, 2, 5

*Sussman v. Am. Broadcasting Cos.*,
  186 F.3d 1200 (9th Cir. 1999) .................................................................. 4

*Tovar v. City of San Jose*,
  2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) ............................................ 7

*Ubisoft, Inc. v. Kruk*,
  2021 WL 3472833 (C.D. Cal. July 9, 2021) ............................................... 7

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) .................................................................... 2

*United States v. Lam*,
  271 F. Supp. 2d 1182 (N.D. Cal. 2003) ..................................................... 4

*Van Buren v. United States*,
  141 S. Ct. 1648 (2021) .............................................................................. 7

*West v. Ronquillo-Morgan*,
  526 F. Supp. 3d 737 (C.D. Cal. 2020) ....................................................... 7

*Williams v. Facebook*,
  498 F. Supp. 3d 1189 (N.D. Cal. 2019) ..................................................... 7

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
  525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........................................... 6, 13, 14

**STATUTES**

Cal. Penal Code § 502(12) ............................................................................ 8

Cal. Penal Code § 502(e)(1) .......................................................................... 7

Cal. Penal Code § 631(a) ............................................................................... 5

REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-3580-WHO

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3
4
5

Plaintiffs' consolidated complaint tries and fails to shape their theory of the case—that *Meta* should be held liable for *third-party web developers'* alleged misuse of a standard, ubiquitous tool—into a plausible claim for relief. But each of plaintiffs' thirteen counts lands far wide of the mark.

6
7
8
9
10
11
12

Plaintiffs face two fundamental problems that infect all their claims. *First*, plaintiffs' claims assume that health-related companies cannot use Meta's Pixel without sending sensitive health data. But that assumption is not grounded in any well-pleaded allegations, and it is wrong as a matter of law. Healthcare providers—like other companies that receive both sensitive and non-sensitive information about their users—can use the Pixel in any number of legitimate ways. The Ninth Circuit has squarely held that the use of Meta's Pixel tool is not inherently unlawful, even for healthcare companies. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018).

13
14
15
16
17
18
19
20

*Second*, plaintiffs repeatedly assert Meta intended to receive sensitive health information. But that assertion cannot be squared with their recognition that (1) Meta's public terms and policies prohibit developers from sending this information and (2) Meta attempts to filter out any potentially sensitive health information that developers nevertheless send. Plaintiffs fixate on their allegations that Meta designed the Pixel, marketed it, and encouraged web developers (including health-related websites) to use it. But plaintiffs never explain how Meta's promotion of *the Pixel itself* equates to promoting its use *to send sensitive information*. That leap is wholly unsupported by any allegations in the complaint, and the implications of plaintiffs' theory would stifle the use of beneficial and ubiquitous internet tools.

21
22

Plaintiffs fail to allege numerous other elements of their claims as well. The bottom line: this case cannot proceed as pled. The complaint should be dismissed.

23

**ARGUMENT**

24

**A.    Plaintiffs' Federal Wiretap Act Claim Fails (Claim 3)**

25
26
27
28

Plaintiffs fail to state a claim under the federal Wiretap Act because they have not plausibly alleged Meta *intended* to intercept their sensitive health information and because the one-party consent exception applies. Mot. 5–9. This claim also must be dismissed to the extent it rests on alleged interception of information that is not "content." *Id.* at 9–10. Plaintiffs' responses are meritless.

1

*Intent.* Plaintiffs must plausibly allege Meta *intentionally*—"purposefully and deliberately and not as a result of accident or mistake"—intercepted their sensitive health information. *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015); *see also id.* at 775 (intent means "consciously and deliberately with the goal of intercepting wire communications"). They cannot, because their complaint acknowledges that *web developers*—not Meta—choose whether to install a pixel and what information to send, and that Meta seeks to *avoid* receiving any sensitive information by contractually forbidding developers from sending it and filtering out even potentially sensitive information it detects. Mot. 5–6.

Plaintiffs' responses miss the mark. *First*, they say Meta "encouraged covered entities to install the Pixel," "publishes guidance specifically for the health and pharmaceutical industry to target patients via the Pixel," and "ha[s] a health marketing division dedicated to health-related advertising." Opp. 6. Those allegations do not plead any intent by Meta to receive *sensitive health information* about plaintiffs, given that healthcare companies may lawfully send other kinds of information to Meta. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018). Meta's alleged encouragement of those *lawful* uses does not plausibly demonstrate any intent to receive sensitive health information.

*Second*, plaintiffs say Meta "was aware some of that information [from health websites] was sensitive, and yet did not prevent the transmission from occurring." Opp. 6. That argument relies on two cases finding intent where "a defendant is aware of the defect causing the interception and takes no remedial action." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (defect caused voice-activated devices to record even without a "hotword," and Google used recordings instead of fixing issue); *see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014) (Apple received *former* iPhone users' texts even after users switched to non-Apple device, and Apple charged users $19 to address issue instead of fixing it). Plaintiffs do not respond to Meta's argument that "[t]hese decisions are inconsistent with the Ninth Circuit's decision in *Christensen*, because mere knowledge of a defect does not constitute 'act[ing] consciously and deliberately with the goal of intercepting wire communications.'" Mot. 6 n.4 (quoting 828 F.3d at 774). And those cases are inapposite in any event: this case does not involve either a product "defect" or an absence of "remedial action." Plaintiffs allege *misuse* of the Pixel by *third parties*, and acknowledge Meta took *several* remedial actions, including the contractual bar and the filter.

-2-

*Third*, plaintiffs say "the existence of a filtration system at the back end shows Meta knows sensitive information may be transmitted yet continues to acquire it anyway." Opp. 6. That is frivolous; a system for *filtering out potentially* sensitive information does not evince an intent to *receive actually* sensitive information. If adopted, this theory would deter companies from making such efforts, contrary to the Court's expectation that Meta "continue to refine its filtration systems." Dkt. 159 at 32.[1]

**One-party consent.** This Court stated in its preliminary-injunction order that "the healthcare providers who configured the Pixel on their websites presumably consented to Meta's receipt of the information," and "[b]ecause the Wiretap Act is a one-party consent statute, this means that whether or not plaintiffs consented, Meta is exempt from liability—so long as Meta did not act 'for the purpose of' committing any crime or tort." Dkt. 159 at 20 (citation omitted). Plaintiffs did not, and cannot, plead that Meta had any such purpose, Mot. 6–9, and their responses are unavailing.

*First*, plaintiffs say the healthcare providers who configured the Pixel on their websites did not actually consent. Opp. 6–7. But they allege "third-party web developers"—not Meta—"install [the Pixel] on their website," "customiz[e]" it, and "choose the actions the Pixel will track and measure." Compl. ¶¶ 39, 44. As a matter of law, the developers have consented to any alleged interceptions. *See Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023); Dkt. 159 at 20. Plaintiffs' speculation that the providers may have been "unaware of the scope of information they were sending," Opp. 7, is unsupported by any factual allegations. And their argument that "any purported consent from HIPAA-covered entities is not valid," Opp. 7 n.3, invokes cases *against healthcare providers*, which demonstrate (at most) that providers cannot provide consent *for patients*— not that *their own* consent is irrelevant under a one-party consent statute. *See* Compl. ¶ 356.

*Second*, plaintiffs say Meta had a "criminal or tortious purpose"—to "use[] the information . . . for commercial gain." Opp. 7–9. That argument fails: a "criminal or tortious purpose" must "be *separate and independent* from the act of the recording," such that a wiretap is done with an eye toward some "further impropriety, such as blackmail." *Planned Parenthood Fed'n of Am., Inc. v.*

---

[1] Plaintiffs also quote this Court's statement in its order denying the preliminary injunction motion that plaintiffs "appear likely to succeed" on the intent element. Opp. 5 (quoting Dkt. 159 at 18). But at that stage, Meta "d[id] not dispute that the intentional or interception elements [we]re met" and focused on other issues. Dkt. 159 at 18. This Court has not yet evaluated Meta's intent arguments.

*Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (first quote; emphasis added); *Sussman v. Am. Broadcasting Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (second quote). Numerous cases hold that the use of intercepted information for commercial gain is not a separate "criminal or tortious" purpose. *See* Mot. 7 (collecting cases). Plaintiffs purport to distinguish those cases by saying "[c]ourts view a defendant's conduct differently when the commercial enterprise is illicit," but the only case plaintiffs cite for that proposition is inapposite: it involved surreptitious recordings used to "keep[] business records" for an illegal gambling ring. *United States v. Lam*, 271 F. Supp. 2d 1182, 1184 (N.D. Cal. 2003). The *gambling ring* was the "unlawful purpose." Meta's use of information from the Pixel for advertising is a legal and common practice by many companies across many industries.

Plaintiffs next rely on this Court's holding that a "purpose of *further* invading the [plaintiff's] privacy . . . satisfies the element." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). But in that case, the defendants recorded conversations with the goal of "*subsequent disclosure* of the contents of the intercepted conversations." *Ctr. for Med. Progress*, 214 F. Supp. 3d at 828 (emphasis added). The "public *release* of the videos . . . [was] the further tortious act." *Id.* This case is different for two reasons. *First*, Meta's terms and filter belie any *purpose* to unlawfully use sensitive health information. *Second*, the use in this case is allegedly unlawful only because the acquisition itself is; those acts are not "separate and independent." *Newman*, 51 F.4th at 1136.

**Contents.** Acknowledging this Court's conclusion at the preliminary-injunction stage that data sent from the "log in" button likely qualifies as content, Meta argued "none of the *remaining* items" it allegedly received is content. Mot. 9 (emphasis added). Claims based on *those* communications must be dismissed. Plaintiffs say "there is no need for the Court to revisit its prior finding." Opp. 9. But Meta did not ask for reconsideration; it asked the Court to narrow this count to the information the Court held is likely content. Plaintiffs do not defend their other claims; this Court should dismiss them.[2]

---

[2] Similarly, acknowledging this Court's conclusion that some (but not all) URLs could qualify as content, Meta argued that plaintiffs did not allege Meta received any such content-laden URLs *about them*. Mot. 9–10. Plaintiffs point to "the Smith Declaration," Opp. 9 (citing Compl. ¶ 351), but the Smith Declaration is not tethered to the named plaintiffs' claims. Plaintiffs cannot base their claims on information allegedly collected about other people.

**B.      Plaintiffs' CIPA Claim Fails (Claim 4)**

Plaintiffs' CIPA claim fails because they have not plausibly alleged intent, that any data was sent from or received in California, or that Meta used a "device." Mot. 10–13.

***Intent.*** Plaintiffs note that Meta (1) "markets the Pixel to HIPAA and CMIA-covered-entities," (2) "encourages partners to use the Pixel to capture data about current patients," and (3) "claims that it constructed back-end processes to review sensitive data." Opp. 9. But as explained above, the first two arguments do not support any intent to receive sensitive information because "HIPAA and CMIA-covered-entities" can "use the Pixel to capture data about current patients," *id.*, without revealing patient status or any other sensitive health information through Meta's Pixel. *See Smith*, 745 F. App'x at 8–9. And the third argument (which refers to Meta's filtering process) *negates* intent. *See supra* 3.

***Data sent from or received in California.*** Section 631(a) applies only when a person intercepts a communication while it is "being *sent from, or received at any place within this state*." Cal. Penal Code § 631(a) (emphasis added). Plaintiffs allege Meta "is headquartered in California" and "designed and effectuated its scheme to track the patient communications at issue here from California." Compl. ¶ 369; *see* Opp. 10. But that does not satisfy the statute, which requires that the data at issue was "sent from, or received at any place within" California. Cal. Penal Code § 631(a). Plaintiffs also point to Meta's disclosure that it "receive[s] information" about users—which says nothing about *where* the data was sent from or received. Compl. ¶ 300a; *see* Opp. 10. As in *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022), nowhere do plaintiffs allege where their data was sent from or received, and their § 631 claim should be dismissed on this basis alone.

***Device.*** Plaintiffs say "Meta's authority that 'software' is not a device involves claims brought under Penal Code § 637.7(d)," Opp. 11, but California law holds words used in the same statute should be interpreted in tandem. Mot. 12–13. The Pixel is software that third-party developers install and configure on their websites, not a "device." *See id.*

**C.      Plaintiffs' Constitutional Privacy (Claim 6) and Intrusion Upon Seclusion (Claim 5) Claims Fail**

Plaintiffs' allegations regarding the information Meta received *about them* are exceedingly thin: they offer *no* allegations about three of the plaintiffs, and very little about the other two. Mot. 13–14.

They fail to clear the high bar for pleading—as to *their own data*—a "legally protected privacy interest" or a "sufficiently serious" invasion of privacy to support their tort claims. Mot. 13–15; *see In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1038 (N.D. Cal. 2021) (dismissing where plaintiffs "fail[ed] to allege that Zoom actually shared *their* personal data with third parties").

      ***Legally protected privacy interest.*** Plaintiffs emphasize this Court's conclusion at the preliminary-injunction stage that they likely *could* allege a privacy claim. Opp. 11. Their problem is that the consolidated complaint *does not* allege this claim, because it fails to allege that Meta received private information *about plaintiffs*. Instead, they argue they can state a claim without alleging any information Meta received about them, citing *In re Facebook Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). Opp. 11. *Facebook Internet Tracking* held no such thing. There, the plaintiffs alleged that Facebook promised not to collect data about their browsing habits while they were logged out of Facebook, but did so anyway. The Ninth Circuit held that in light of Facebook's disclosures, the plaintiffs had a reasonable expectation of privacy in *all* of their browsing data while they were logged out. *See* 956 F.3d at 603 (noting the "question [wa]s not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself"). Here, plaintiffs do not allege that all of the data Meta received about their visits to the healthcare sites is inherently private; any such argument would be foreclosed by *Smith*. Accordingly, they must allege that Meta received *sensitive* information *about them*. *See In re Zoom*, 525 F. Supp. 3d at 1038. They failed to do so.

      ***Sufficiently serious invasion.*** For similar reasons, plaintiffs' arguments that Meta's conduct was sufficiently serious to make out a privacy tort are unavailing. Plaintiffs argue that "[t]he conduct as alleged here is materially different from garden-variety data sharing," Opp. 11, but that argument rings hollow given plaintiffs' deficient allegations about *their own* information. Nor does plaintiffs' argument that this is a "fact-intensive inquiry," Opp. 12 (quotation marks omitted), excuse them from pleading sufficient facts in the first place.

## D.    Plaintiffs' CDAFA Claim Fails (Claim 12)

      Plaintiffs' claim under CDAFA—an anti-hacking statute—is a clear overreach. This is not a hacking case. Plaintiffs attempt to manufacture violations of several sections of CDAFA, but they cannot shoehorn their allegations into the elements of any CDAFA claim. *See* Mot. 15–16.

***Damage or loss.*** Plaintiffs have failed to plead the sort of "damage or loss" CDAFA contemplates, necessitating dismissal of this claim in its entirety. Cal. Penal Code § 502(e)(1). Plaintiffs point to three alleged harms: (1) "the Pixel precluded [them] from being able to communicate with their healthcare providers," (2) their "protected health information diminished in value," and (3) "the Pixel prevented [them] from using their computing devices for the purpose of communicating with their healthcare providers." Opp. 13. None of these harms qualifies for relief under CDAFA.

Plaintiffs' points (1) and (3) are sleight-of-hand: the cases plaintiffs cite involved *technological harms* to devices that impaired their functioning, not privacy harms. *Ubisoft, Inc. v. Kruk*, 2021 WL 3472833, at *4 (C.D. Cal. July 9, 2021) ("recurring DDoS attacks" caused servers to "slow down or crash completely"); *Williams v. Facebook*, 498 F. Supp. 3d 1189, 1199 (N.D. Cal. 2019) (depletion of "phones' resources, including battery, electricity, cellular data, CPU processing power, RAM storage, and hard drive space"); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 454 (N.D. Cal. 2018) (software update "slow[ed] the performance" of plaintiffs' phones); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1065 (N.D. Cal. 2015) ("diminished battery power and life in [plaintiffs'] mobile devices"); *cf. Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) (in analogous federal law, the "statutory definitions of 'damage' and 'loss' [] focus on technological harms—such as the corruption of files"). Plaintiffs allege a privacy violation, not technological harm to their devices.

For (2), plaintiffs simply ignore Meta's citation to *Cottle v. Plaid Inc.*, which *expressly rejected* the argument that "the loss of the right to control [plaintiffs'] own data, the loss of the value of [plaintiffs'] data, and the loss of the right to protection of the data . . . is 'damage or loss'" under CDAFA. 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021). And the cases they *do* cite are readily distinguishable. *See Facebook Internet Tracking*, 956 F.3d at 599–600 (finding *Article III standing* based on state-law disgorgement remedy); *West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 747 (C.D. Cal. 2020) (addressing violations of CDAFA's subsections, not its "damage or loss" requirement).

***Statutory violation.*** Plaintiffs also fail to plead that Meta *violated* CDAFA. Meta argued that plaintiffs "fail[ed] to plausibly allege Meta violated sections 502(c)(1)–(3) and (6)–(8)." Mot. 15. Plaintiffs address only sections 502(c)(1) and 502(c)(8), and have therefore forfeited their claims under sections 502(c)(2)–(3) and 502(c)(6)–(7). *See Tovar v. City of San Jose*, 2021 WL 6126931, at *2 (N.D.

Cal. Dec. 28, 2021); Opp. 13–14. Nor do plaintiffs respond at all to Meta's argument that Rule 9(b) applies, or demonstrate how they could satisfy that heightened standard; this Court should dismiss on that ground, too. *See* Opp. 13–14. And the arguments plaintiffs do offer fail.

As to § 502(c)(1): The parties agree that this turns on whether Meta *knowingly* or *intentionally* engaged in wrongdoing; plaintiffs have not plausibly alleged intent, *see supra* 2–3, 5, much less alleged this element consistent with Rule 9(b)'s heightened standard.

As to § 502(c)(8): Plaintiffs must show Meta "introduce[d]" a "computer contaminant." But the web developers who use the Pixel, not Meta, "introduce" it onto their own websites. Plaintiffs simply repeat their allegation that Meta makes the Pixel available *to developers* and provides instructions for its use, Opp. 14, but that only confirms Meta took no action with respect to plaintiffs' devices. Nor is the Pixel a "computer contaminant." CDAFA is "aimed at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system," not commonplace internet tools. *In re iPhone Application Litig.*, 2011 WL 44033963, at *13 (N.D. Cal. Sept. 20, 2011). Plaintiffs say the Pixel is "designed to" send data "*without the intent or permission of the owner* of the information," Opp. 14 (quoting Cal. Penal Code § 502(12)) (emphasis added); but even assuming the Pixel was *used* by healthcare providers to send information without consent, it was not *designed* for that purpose.

**E.  Plaintiffs' Contract-Based Claims Fail (Claims 1 & 2)**

Plaintiffs' contract-based claims fail for multiple reasons: they are barred by Meta's limitation-of-liability provision, rely on insufficiently definite provisions, fail to allege any breach, and include impermissibly duplicative theories. Mot. 16–19. Plaintiffs cannot paper over these problems.

***Limitation-of-liability clause.*** Plaintiffs assert the limitation-of-liability provision in Meta's Terms is unenforceable. Opp. 14–15. They first argue Meta "cannot contract away liability for [its] fraudulent or intentional acts or for [its] negligent violations of statutory [or regulatory] law." Opp. 14 (quotation marks omitted). But Meta is not invoking the clause against plaintiffs' fraud, statutory, or regulatory claims; it is invoking it against plaintiffs' *contract* claims.[3] And "*[w]ith respect to claims*

---

[3] Similarly, plaintiffs say limitation-of-liability clauses "are invalid even for ordinary negligence claims where they involve the public interest." Opp. 15 (quotation marks omitted). That argument is irrelevant because Meta is not invoking the clause against plaintiffs' negligence claim. *See* Mot. 16–17, 20–21.

*for breach of contract*, limitation of liability clauses are enforceable unless they are unconscionable." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012) (emphasis added). Plaintiffs ignore *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019), where another court in this district dismissed contract claims in light of Meta's limitation-of-liability clause. Mot. 17.

Next, plaintiffs assert the clause is procedurally and substantively unconscionable. Opp. 15. They must show both to prevail; they cannot show either. *See, e.g.*, *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016). Procedurally, plaintiffs say they "were presented with Meta's Terms on a take-it-or-leave-it contract of adhesion," Opp. 15, but "there is no rule that an adhesion contract is per se unconscionable" and courts have found that "the procedure followed by Facebook was fair," *Bass*, 394 F. Supp. 3d at 1038 (quotation marks omitted). Substantively, plaintiffs say the provision is "unfairly one-sided" because "there is no reciprocal limitation on damages or indemnification obligations," Opp. 15 (quotation marks omitted), but limitation-of-liability clauses are enforced where the complained-of conduct involves third parties, Mot. 17 (citing cases). And, again, plaintiffs simply ignore *Bass*.

***"Sufficiently definite" provisions.*** To state a claim, plaintiffs must identify a "promise" that is "definite enough that a court can determine the scope of the duty," and "the limits of performance must be sufficiently defined." *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993). Plaintiffs point to the provision in the Privacy Policy stating that Meta will "require" partners to have the right to share information with Meta. Opp. 15–16. But that alleged promise is not definite enough to allow a court to determine the scope of any duty owed to plaintiffs. Mot. 17–18.

Plaintiffs first respond that "Meta previously argued . . . that its contract disclosures were broad and unambiguous." *Id.* at 15 (quotation marks omitted). But this Court, at the preliminary-injunction stage, rejected that argument and accepted plaintiffs' argument that the provision was "susceptible to multiple meanings." Dkt. 159 at 17. Plaintiffs cannot now take the opposite position. And if the provision is unclear, that is not a license to mold the scope of a duty. Plaintiffs' argument that "any ambiguities . . . must be resolved against" Meta, Opp. 16 (quotation marks omitted), proves too much— if that were enough, the rule requiring definiteness would have little application. And it is not even clear what it would mean for the ambiguity to be "resolved against" Meta—if Meta's contractual terms and filtration systems are not enough, it is unclear how the court would decide what is.

Finally, plaintiffs cite a *different* provision in Meta's terms that states "[s]ome information is required *for our Products to work*." Compl. ¶¶ 96–97 (emphasis added); *see* Opp. 16. They argue that this provision "means that, if the requirement is not met, the product or service will not work." Opp. 16. True enough—but the italicized phrase in that separate provision (not merely the word "required") is what gives rise to that meaning. By contrast, when Meta's terms state Meta "require[s] Partners to have the right to . . . share your information," Meta RJN Ex. 4 at 7, that is at least "susceptible" of meaning *contractually requires*. Dkt. 159 at 17.

**Breach.** Meta's opening brief explained that plaintiffs have not alleged a breach of the "require" term because Meta's contractual requirements and filtration efforts are sufficient to satisfy that term. Mot. 18. Plaintiffs assert without citation that "Meta encouraged healthcare providers to share personal health information." Opp. 16. But again, that conflates Meta's alleged general promotion of the Pixel, including to healthcare providers (who can use the Pixel in any number of legitimate ways), with promotion of the Pixel *to send sensitive health information* (which Meta never did). *Supra* 2, 5. Plaintiffs plead no facts to support the latter theory, which is contradicted by Meta's terms and filter.

**Duplicative claims.** Plaintiffs' claims under an implied-contract theory and for breach of the implied covenant of good faith and fair dealing fail as duplicative and because plaintiffs cannot show any breach. Mot. 18–19. Plaintiffs do not address the cases Meta cited. They say only that Meta abused its "discretionary power to define terms and to apply those terms." Opp. 17. But in addition to failing to show how that renders the claims non-duplicative, there is no "abuse": plaintiffs say Meta "interpret[ed] 'require' in a way that did not actually 'require' anything," Opp. 17, but plaintiffs do not dispute that Meta contractually barred third-party developers from sending sensitive health information and constructed filters to address even potential violations of those contracts it is able to detect.

## F.     Plaintiffs' Unjust Enrichment Claim Fails (Claim 13)

Plaintiffs' perfunctory claim for unjust enrichment fails for at least two reasons: a valid contract covers the subject matter of the dispute, and plaintiffs have adequate remedies at law. Mot. 20.

**Valid contract.** Plaintiffs invent a distinction between their unjust enrichment claim and their contract claims: the former, they say, "derives from Meta having obtained, transmitted, and sold [their] data without their consent and retained the proceeds," while the latter "is based on Meta's failure to

require entities to obtain appropriate authorization before sharing [their] health information," "Meta overcharging [them] by collecting data in excess of the 'data license' agreed upon," and "Meta conspiring with others to violate [their] privacy rights." Opp. 17. That is an artificial distinction: both claims center on Meta's allegedly improper receipt of sensitive health information through the Pixel. Plaintiffs also say they "may plead an unjust enrichment claim alongside a contract claim," *id.*, but the case they cite explained that "there is *not* a standalone cause of action for 'unjust enrichment'" in California; it allowed a claim to proceed under a "quasi-contract" theory *because there was no contract claim*. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (emphasis added).

**Adequate remedy at law.** Plaintiffs claim this Court already "agreed" they have "allege[d] an inadequate remedy at law." Opp. 17. But Meta's motion explained why this Court's conclusion about alleged *ongoing* receipt of personal information "says nothing about whether plaintiffs lack an adequate remedy for any alleged *past harm*," Mot. 20 (emphasis added), and plaintiffs offer no response.

## G.   Plaintiffs' Negligence Claim Fails (Claim 7)

Plaintiffs' negligence claim requires (at least) plausible allegations that Meta *owed plaintiffs a duty* and *caused harm*. Plaintiffs have not pled either element. Mot. 20–21.

**Duty.** Plaintiffs rely exclusively on an alleged "duty[] codified in HIPAA." Opp. 18. But because HIPAA does not grant a private right of action, "[a]n alleged HIPAA violation cannot form the basis of a negligence claim." *Austin v. Atlina*, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021); *see also, e.g.*, *Delta Savings Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2017) (for negligence per se claims, "a duty must be identified, and this duty cannot spring from a federal law"); Mot. 20–21. Plaintiffs' failure to allege any duty apart from HIPAA is fatal to their negligence claim.

**Causation.** Plaintiffs also cannot allege causation, because web developers—not Meta—choose what information to send. Plaintiffs respond that "the Court found Meta's causation argument to be 'meritless' on the motion for preliminary injunction." Opp. 18. Plaintiffs overread that decision. There was no negligence claim at issue, and this Court's irreparable harm analysis found that plaintiffs alleged "Meta is causally connected to their injury" because—"[p]utting aside the appropriateness of such a measure"—Meta "is capable of turning the Pixel off for certain websites." Dkt. 159 at 30. But to state a negligence claim, plaintiffs must allege Meta's *breach of a duty* caused their harm. Plaintiffs have

not alleged that Meta assumed any duty to "turn[] the Pixel off for certain websites," *id.*, and they have not plausibly tied the breach of any duty (assuming there was one) to any harm.

**H.     Plaintiffs' Trespass Claim Fails (Claim 8)**

Plaintiffs' trespass claim is another overreach: Under California law, a trespass claim cannot rest on asserted "interests in privacy and confidentiality." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 764–65 (2022); Mot. 21–23.

*Damage.* Plaintiffs must, but did not, allege technical damage to their devices—an alleged privacy harm is not a trespass. Mot. 22–23. Plaintiffs admit their trespass claim "centers on Meta's unauthorized interference with [their] use of their devices via the _fbp cookie," Opp. 19, but they do not allege the _fbp cookie impaired the functioning of their devices in any way—just that it prevented them from "exchanging *private* communications with health care providers," *id.* (emphasis added; quotation marks omitted). That is a textbook example of an impermissible attempt to "convert privacy harms into property harms." *Casillas*, 79 Cal. App. 5th at 765.

*Intent.* Plaintiffs' claim also fails because they have not alleged the requisite intent. Plaintiffs assert Meta "intentionally facilitated the unauthorized collection of [their] health data," but again, that argument conflates promoting *use* of the Pixel with promoting *misuse*. *See* Mot. 5–6, 22; *supra* 2, 5.

**I.     Plaintiffs' Theft Claim Fails (Claim 11)**

Plaintiffs' novel theory of "theft" likewise fails to convert their privacy-based claims into a statutory larceny, Mot. 23–24, and their opposition again confirms this is not a "theft" case.

*Theft.* Plaintiffs do not dispute that they freely gave their information to their healthcare providers. Opp. 20–21. Instead, they say Meta's receipt of that information is "theft" because "Meta obtained [their information] under false pretenses." *Id.* at 20. But a theft-by-false-pretenses theory "requires proof that (1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation." *People v. Miller*, 81 Cal. App. 4th 1427, 1440 (2000) (quotation marks omitted). Plaintiffs do not allege (1) false statements or (2) intent to defraud. Mot. 5–6, 18, 22; *supra* 10. And they clearly cannot show (3) *reliance*: they do not claim that they transferred any property to anyone as a result of having read those allegedly false statements. *See Harris v. Garcia*,

-12-

734 F. Supp. 2d 973, 1000 (N.D. Cal. 2010) (requiring a "causal connection" between false representation and transfer of property); Mot. 24.

*Knowledge.* Nor have plaintiffs shown Meta *knew* their information was "stolen." Mot. 23. Plaintiffs again point to allegations that Meta "designed the Pixel to take the data," "marketed the Pixel for this very purpose," and "encouraged health care providers and covered entities to use the Pixel." Opp. 21. But, again, these allegations conflate legitimate promotion of the Pixel tool with promoting its *misuse*. *Supra* 2, 5. And, again, the fact that "Meta implemented a filter mechanism," Opp. 21, makes the claim that Meta knew it was receiving "stolen" information implausible. Mot. 23; *supra* 2– 3. Plaintiffs' theory would effectively convert larceny into a strict liability crime.

## J. Plaintiffs' UCL (Claim 9) and CLRA (Claim 10) Claims Fail

In addition to the extraterritoriality issue (*infra* 14–15), Meta's motion identified five reasons why plaintiffs' UCL and CLRA claims must be dismissed. Mot. 24–25.

*Actual reliance (both claims).*[4] Plaintiffs never allege they actually read (let alone relied on) any statement by Meta. Mot. 24. They argue that they *need not* show they actually read anything because their claim is "based on Meta's omission" of information that they say would have caused them to act differently, *id.*, but an omissions theory requires Rule 9(b)-compliant allegations that a plaintiff *actually read* a statement that was rendered misleading by the omission. *In re Zoom*, 525 F. Supp. 3d at 1046. Plaintiffs have not pled that at all, much less up to Rule 9(b)'s heightened standards.

*"Money or property" (UCL claim).* Plaintiffs argue a loss of personal information constitutes a loss of "money or property" under the UCL. Opp. 22–24. Previously, courts took differing views on that question. *See Katz-Lacabe*, 2023 WL 2838118, at *8 (noting "some support" for plaintiffs' position but concluding the "weight of the authority in the district and the state . . . point in the opposite direction"). But a recent California case resolves this question against plaintiffs: it is not enough to plead merely that "PII was stolen and disseminated, and that a market for it existed"—rather, plaintiffs must allege they "attempted or intended to participate in this market, or otherwise to derive economic

---

[4] Plaintiffs assert that "Meta raises no CLRA argument apart from extraterritoriality." Opp. 22 n.17. That is wrong; as Meta argued in its motion, actual reliance is a requirement for both the UCL *and* the CLRA claims. *See* Mot. 24 (arguing "both claims fail" under actual reliance requirement); *In re Zoom Video Commc'ns Inc. Privacy Litig.*, 525 F. Supp. 3d 1017, 1045–46 (N.D. Cal. 2021).

value from their PII." *Moore v. Centrelake Med. Grp., Inc.*, 299 Cal. Rptr. 3d 544, 538 (2022). Plaintiffs do not allege that—to the contrary, they allege "Americans typically *do not* want to sell their individually identifiable health information for any purpose." Compl. ¶ 216 (emphasis added).

**Adequate remedy at law (UCL claim).** Plaintiffs again suggest this Court has already decided they lack an adequate remedy at law. Opp. 24. That is wrong for the reasons above. *Supra* 11. Pivoting, plaintiffs claim they do not actually have to "allege specific facts showing their remedies at law are necessarily inadequate," and that they can "allege claims in the alternative at the pleadings stage." Opp. 24. But courts have dismissed on the pleadings where, as here, equitable claims rest on the same factual predicates as legal claims. Mot. 25 (citing cases). Plaintiffs offer no response to the cases Meta cited.

**"Unlawful" (UCL claim).** The parties agree this issue turns on whether plaintiffs plausibly alleged their other claims. Mot. 25; Opp. 24–25. Because they have not, dismissal is warranted.

**"Unfair" (UCL claim).** Plaintiffs barely try to satisfy the UCL's "balancing" and "tethering" tests. For "balancing," plaintiffs must explain how specific injurious acts outweigh the utility of Meta's alleged conduct. *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013). Plaintiffs cite allegations that Meta caused a "loss of privacy," but fail to weigh those acts against the utility of the Pixel. Opp. 25. For "tethering," plaintiffs vaguely assert that "Meta violates HIPAA and other federal and state laws." Opp. 25. That argument fails: (1) none of those laws has anything to do with competition (*Hodson v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018); *In re Zoom*, 525 F. Supp. 3d at 1047 (finding test satisfied in light of violations of not just HIPAA but also "consumer protection statutes")); and (2) plaintiffs have not actually alleged a violation of those laws.

## K.   Plaintiffs' California Statutory and Constitutional Claims Do Not Apply Extraterritorially

None of the plaintiffs in this case is a California resident. Their claims under California statutes and the California constitution all fail because those laws do not apply extraterritorially and plaintiffs have not alleged that Meta's *interception* of their sensitive health information took place in California. Mot. 10 (CIPA), 13 (California constitution), 15 (CDAFA), 23 (larceny), 24 (UCL and CLRA).

Plaintiffs offer three responses, but none is persuasive. *First*, they say Meta's argument is "premature" and should be punted to class certification. Opp. 3. Not so: courts routinely resolve

extraterritoriality issues on a motion to dismiss. *E.g.*, *Dfinity USA Res. LLC v. Bravick*, 2023 WL 2717252, at *5 (N.D. Cal. Mar. 29, 2023). The case plaintiffs cite deferred consideration of extraterritoriality where, unlike here, it turned on "another state's unsettled law" and could benefit from discovery. *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 893 (N.D. Cal. 2022).

*Second*, plaintiffs argue the liability-creating conduct took place in California because Meta "is headquartered in California" and "designed and effectuated its scheme to track the patient communications . . . from California." Opp. 3 (quoting Compl. ¶ 369).[5] But neither Meta's headquarters nor its alleged "scheme" is "the conduct that 'creates liability.'" *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (citation omitted). To identify that conduct, courts "look[] to the statute's 'focus.'" *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016). The "focus" of plaintiffs' claims is the alleged *interception* of their sensitive health information, and plaintiffs (who all live out of state) have not alleged that their information was intercepted in California. *See also supra* 5 (no allegations data was sent from or received in California).

*Third*, plaintiffs say "Meta's Terms of Service mandate application of California law." Opp. 4 (relying on *Maldonado v. Apple, Inc.*, 2021 WL 1947512 (N.D. Cal. Apr. 21, 2021)). This argument "conflates two issues: the extraterritorial application of California consumer protection laws (or the ability of a nonresident plaintiff to assert a claim under California law), and choice-of-law analysis (or a determination that, based on policy reasons, non-forum law should apply)." *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (quotation marks omitted). A "contractual choice of law provision that incorporates California law presumably incorporates *all* of California law—including California's presumption against extraterritorial application of its law." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. 2014); *see also, e.g.*, *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1065 (N.D. Cal. 2014) (choice-of-law provision "could not" confer California cause of action upon "out-of-state" plaintiffs).

## CONCLUSION

The Court should dismiss the complaint with prejudice.

---

[5] Plaintiffs also assert "a substantial part of the events or omissions giving rise to the claim[s] occurred in" California. Opp. 3 (quoting Compl. ¶ 33). That conclusory allegation provides no facts at all.

1 Dated: July 17, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
  Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
  Michael G. Rhodes

*Attorneys for Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

1

**CIVIL L.R. 5-1(h)(3) ATTESTATION**

2
Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren R. Goldman, hereby attest under penalty of

3
perjury that concurrence in the filing of this document has been obtained from all signatories.

4

5
Dated: July 17, 2023                    **GIBSON, DUNN & CRUTCHER LLP**

6
                                        By:  */s/ Lauren R. Goldman*

7
                                             Lauren R. Goldman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28