August 11, 2023

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)

Dear Judge DeMarchi,

Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

### A. STATEMENT OF THE DISPUTE REQUIRING RESOLUTION

Plaintiffs propose the following 12 custodians in addition to the 30 custodians proposed (or agreed to) by Meta: Mark Zuckerberg, Graham Mudd, Erin Egan, Sheryl Sandberg, Peng Fan, Luchen Foster, David Fischer, Dan Levy, Carolyn Everson, Nicola Mendelsohn, Andrew Howard, and Nada Stirratt.

The dispute that requires resolution is: Should Meta include Plaintiffs' 12 additional custodians in its custodial searches?

### B. PLAINTIFFS' POSITION

#### I. Background

Judge Orrick has stated that, "[i]t seems to me obvious that [this] case is going to require more than the usual limits on discovery and the Federal Rules of Civil Procedure." 1/17/23 Hearing at 4:13-15. Judge Orrick has also explained this is an important case: "[P]laintiffs have described what is potentially a serious problem." ECF No. 159 at 32:11-21.

To date, Meta has produced 176 pages of documents.

Pursuant to the Court's scheduling order and ESI Order, the parties were required to complete their negotiations about custodians by July 28. ECF No. 281; ECF No. 269 at § 5(a). Plaintiffs agreed to extend the deadline to August 4 so the parties could hold a lead counsel meet-and-confer. At the August 4 meet-and-confer, the parties reached impasse. Meta refused to name any (even somewhat) senior executives as custodians regardless of their role.

#### II. Meta Seeks to Limit Discovery To Junior Employees and Shield True Decisionmakers

The Court should order Meta to expand its search to include the 12 more senior employees proposed by Plaintiffs.

First, as this Court previously acknowledged, there is no *Apex* doctrine for custodians. *See*

1

*Alta Devices, Inc. v. LG Electronics, Inc.*, 2019 WL 8757255 (N.D. Cal. Feb. 20, 2019) (DeMarchi, J.) ("the Court disagrees . . . that simply because a prospective custodian happens to be a senior executive, such custodian is not subject to collection of responsive ESI."); *see also Rosinbaum v. Flowers Foods, Inc*., 238 F.Supp.3d 738, 749 (E.D.N.C. Mar. 1, 2017) (collecting cases). None of the cases cited by Meta stand for the proposition that senior executives' documents are subjected to a heightened relevancy standard or a purported "exhaustion" requirement.

Second, the documents of senior executives are particularly important here because many of Plaintiffs' claims require evidence of intent, knowledge, or willfulness. *See, e.g., In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 477-78 (imputing high-ranking corporate official's scienter to corporation, particularly because he was company's founder and CEO).

Third, Meta asserts that the documents of Plaintiffs' proposed custodians will all be found in the custodial files of more junior employees. This argument ignores common sense. It is natural for senior executives to have candid conversations outside of the presence of junior employees. Meta's assertion is even more implausible because the current custodians do not even directly report to 11 of Plaintiffs' 12 proposed additional custodians.[1] Regardless, "the idea that responsive documents will necessarily be found in other custodians' records is not sufficient to defeat a search of [a senior executive's] files." *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018); *see also Williams v. Apple, Inc.*, 2020 WL 5107639, at *2 (N.D. Cal. Aug. 31, 2020) (DeMarchi, J.) (concerns regarding duplicative custodians "can be substantially mitigated by application of appropriately narrow search terms and de-duplication of ESI across custodians.").

By refusing to name *any* senior executives as custodians, Meta will block Plaintiffs from gaining discovery on the true decisionmakers and deprive Plaintiffs of the opportunity to pursue the strongest evidence of intent, knowledge, or willfulness, as explained below.

### III. Plaintiffs' 12 Additional Proposed Custodians Are All Relevant

Plaintiffs' proposed custodians are all relevant.

**Mark Zuckerberg**: Zuckerberg is the central witness in Plaintiffs' case. As set forth in Plaintiffs' Complaint, Zuckerberg personally made the decision to continue to violate Facebook users' health privacy and exploit Facebook users' health information. Based on Wall Street Journal reporting, Plaintiffs allege that, in 2020, Zuckerberg "overruled" Meta employees and rejected a proposal to implement "tougher restrictions" on advertising based on health information. CAC at ¶¶ 221; 225.[2] In 2022, Meta implemented a limited ban on advertising based on health information, which contained a loophole that allowed advertisers to still use Pixel health data for ads. CAC at ¶¶ 226-44. Contrary to Meta's assertion below, the 2022 limited ban and the 2020 proposal are highly relevant to this litigation because they resulted in the Pixel health data loophole.

Privacy is also part of Zuckerberg's responsibilities at Meta. Pursuant to Meta's settlement

---

[1] For Peng Fan, a Meta custodian directly reported to Fan for part of the relevant time period.
[2] Citing https://www.wsj.com/articles/facebook-parent-meta-bans-targeting-for-political-ads-11636488053

2

with the FTC, Zuckerberg is required to submit quarterly privacy compliance reports to the FTC and Meta's board of directors.[3] In a July 2019 post, Zuckerberg acknowledged his responsibilities, "Our executives, including me, will have to certify that all of the work we oversee meets our privacy commitments….I'm committed to doing this well and delivering the best private social platform for our community."[4]

Meta does not deny that Zuckerberg vetoed a proposal to restrict health-based advertising. Instead, during meet-and-confers, Meta claimed it did not know if Zuckerberg was involved. Meta then made the following offer: If, *and only if*, Plaintiffs agree not to name Zuckerberg as a custodian, *then* Meta will investigate Zuckerberg's involvement, and add as custodians some of the employees Zuckerberg spoke to about health advertising (if any), but not Zuckerberg himself.

Meta's offer is an abuse of the discovery process. Meta is required to search the files of custodians in possession of potentially relevant documents; it is not entitled to use a relevant custodian as a bargaining chip to be traded in exchange for an agreement that Meta will comply with its discovery obligations. Under the FRCP, Meta is required to search Zuckerberg's files because Wall Street Journal reporting, Zuckerberg's obligations under the FTC consent decree, and Zuckerberg's own words demonstrate he is a relevant custodian.

*Graham Mudd*: Meta admits that Mudd likely possesses relevant information. In November 2021, former VP Mudd announced Meta's limited ban on advertising based on health information (containing the loophole for Pixel health data).[5] In 2022, Mudd left Meta. In March 2023, Mudd testified before Congress on data privacy.[6] Mudd told Congress that Pixels are "a violation of people's reasonable expectation of privacy," and that "healthcare data is very valuable to different types of advertisers."

*Erin Egan:* In an interrogatory response, Meta identified the "privacy and public policy manager" as a position relevant to the litigation. But Meta did not propose custodians from the privacy and public policy team. Egan is "Meta's Vice President and Chief Privacy Officer of Public Policy, leading the company's global privacy and data policy team."[7] Egan "works with Facebook's cross-functional privacy team to evaluate, from the beginning, the privacy impact of new products and features and to implement recommended practices."[8]

*Sheryl Sandberg***:** Sandberg is the former Chief Operating Officer of Meta. After the

---

[3] https://www.npr.org/2019/07/24/741282397/facebook-to-pay-5-billion-to-settle-ftc-privacy-case

[4] https://www.facebook.com/zuck/posts/10108276550917411?ref=embed_post

[5] https://www.facebook.com/business/news/removing-certain-ad-targeting-options-and-expanding-our-ad-controls

[6] https://techpolicy.press/transcript-innovation-data-and-commerce-subcommittee-hearing-on-data-privacy/; https://d1dth6e84htgma.cloudfront.net/IDC_Mudd_Testimony_2023_03_01_Privacy_Hearing_9c757ac774.pdf?updated_at=2023-02-27T18:20:50.095Z

[7] https://www.linkedin.com/in/erin-egan-01329878

[8] https://www.rsaconference.com/experts/erin-egan

Cambridge Analytica incident, Sandberg assembled teams to respond to privacy concerns.[9] At that time, Sandberg said Facebook had not been "focused enough on the possible misuses of data . . . What we are doing now is looking much more holistically at all the ways Facebook data is used and making a lot of proactive changes."[10]

*Peng Fan*: Meta admits that Fan likely possesses relevant information. From January 2016 to January 2021, Peng was the Engineering Director for Signals & Privacy, the team primarily responsible for the Pixel code. In January 2021, Fan was promoted to VP of Engineering.

*Lu'Chen Foster*: Foster held three highly relevant roles between December 2013 and October 2022. She was a Product Marketing Director for Ads Measurement & Signals (the team responsible for the Pixel); the Director of Privacy Strategy and Planning; and the Head of Health Partnerships. In October 2022, Foster was transferred to a new position where she works on climate change and philanthropy. Meta claims it does not know what Foster worked on prior to October 2022.

*David Fischer*: Fischer was Meta's Chief Revenue Officer until March 2021. Plaintiffs seek documents from a decisionmaker regarding Pixel revenue goals, as any such documents are potentially relevant to intent and damages. Meta has proposed only two junior finance employees instead and admits that neither of them set Pixel revenue goals.

*Dan Levy:* From November 2018 to April 2022, Levy was the VP and Product Group Lead "responsible for product development (eng, product, design, analytics)" for Meta's ads business.[11] Levy therefore oversaw the teams responsible for the Pixel's product development.

*Carolyn Everson / Nicola Mendelsohn*: Until June 2021, Everson was VP of Facebook's Global Business Group. Everson took a lead role in discussing privacy issues with senior advertising executives.[12] Everson also "encourage[d] advertisers to use first-party data [i.e., the Meta Pixel] for ad targeting" due to "privacy concerns and looming regulation."[13] As a point person for discussing both the Pixel and privacy with advertising executives, Everson is a highly relevant custodian. Mendelsohn replaced Everson in June 2021.[14]

*Andrew Howard:* From September 2017 to February 2020, Howard was a manager for Privacy and Public Policy, a position Meta itself identified as relevant in an interrogatory

---

[9] https://www.usatoday.com/story/tech/news/2018/04/13/facebook-sheryl-sandberg-cambridge-analytica/512298002/
[10] https://www.pbs.org/newshour/show/sheryl-sandberg-facebook-made-big-mistakes-on-protecting-user-data
[11] https://www.linkedin.com/in/danlevyusa?
[12] https://www.businessinsider.in/slideshows/miscellaneous/meet-the-21-most-powerful-facebook-advertising-execs-who-keep-its-55-billion-ad-business-booming-even-as-regulation-and-privacy-challenges-loom/slidelist/70057571.cms#slideid=70057607
[13] *Id.*
[14] https://www.wsj.com/articles/facebook-names-nicola-mendelsohn-as-its-new-advertising-boss-11634145301

response.[15]

*Nada Stirratt*: From June 2017 to May 2023, Stirratt was a VP for Global Marketing Solutions. Based on organizational charts, Meta has named 9 sales team employees as custodians, all of whom report indirectly to Stirratt.

### C. META'S POSITION

#### I. Background

Meta has worked to identify 30 custodians with documents potentially relevant to this matter, including agreeing to add six custodians proposed by plaintiffs and proposing two additional custodians to cover topics plaintiffs identified. Those individuals cover an array of topics (software engineering, communications, accounts management, marketing, data privacy, product management, and more) and a range of positions (engineers, managers, directors, team leads, and a vice president).

Plaintiffs speculate the information they seek is unavailable from these existing custodians and demand that Meta add 12 senior executives to the list, up to and including Meta's CEO. But it is impossible to know that at this stage, and plaintiffs cannot leapfrog straight to the top. "[M]ere speculation that one's position as a senior executive might increase the relevance of that individual's files is not a basis for designating that individual as a custodian." *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018). The Court should reject plaintiffs' premature demand.

#### II. Before Demanding Burdensome Discovery of Senior Executives, Plaintiffs Must Justify the Burden and Exhaust Less Burdensome Alternatives

Federal courts "must limit" discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also id.* R. 26(c)(1). To enforce this rule, when a party seeks discovery from high-level executives, courts ask whether the party "has exhausted other less intrusive discovery methods" and whether the executive has "unique first-hand, non-repetitive knowledge of the facts at issue in the case." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (quotation marks omitted).

Plaintiffs argue these principles are limited to *depositions,* not *document custodians*. That is wrong.

*First*, Rule 26's requirements cover all "discovery," not just depositions. Fed. R. Civ. P. 26(b)(2)(C).

*Second*, courts have applied these principles to document-custodian disputes. *E.g.*, *Allianz Global Investors GmbH v. Bank of Am. Corp.*, 2021 WL 5299238, at *1 (S.D.N.Y. Oct. 18, 2021); *Harris v. Union Pac. Rr. Co.*, 2018 WL 2729131, at *4 (D. Neb. June 6, 2018); *Lutzeier v. Citigroup Inc.*, 2015 WL 430196, at *7 (E.D. Mo. Feb. 2, 2015). In fact, a D.C. court refused to add as custodians some of the same individuals plaintiffs demand here. *See District of Columbia v. Facebook, Inc.*, No. 2018 CA 8715 B (D.C. Sup. Ct. Jan. 19, 2021), at 7 ("Plaintiff District of

---

[15] https://www.linkedin.com/in/andrewhowardcipp?

Columbia should first review the documents to be produced for the already agreed upon twenty-one custodians before requesting the addition of the Facebook Executives, whose addition may provide duplicative documentation."). In urging otherwise, plaintiffs cite this Court's rejection of the notion that "simply because a prospective custodian happens to be a senior executive, such custodian is not subject to collection of responsive ESI." *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (DeMarchi, J.). But that is consistent with the apex doctrine—while senior executives are not immune from discovery, neither are they unprotected by Rule 26's requirement that parties use "more convenient" or "less burdensome" sources whenever available.[16]

*Third*, even outside the context of "apex" cases, courts refuse to compel additional custodians when existing sources would suffice. *See, e.g.*, *Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (DeMarchi, J.); *Fort Worth Emps. Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (plaintiffs "must demonstrate that the additional requested custodians would provide *unique* relevant information").[17]

### III. Plaintiffs Fail to Justify Adding 12 Executives to Meta's 30 Existing Custodians

Without waiting to see any documents from the recently agreed-upon custodians, plaintiffs demand that Meta add 12 senior executives as custodians. But plaintiffs never explain what information these individuals would provide that the existing custodians will not. Instead, they make barebones assertions of relevance based on job titles and speculation.

<u>*Mark Zuckerberg (CEO)*</u>: Zuckerberg is not "the central witness" in this case. There are no allegations Zuckerberg was even involved in the creation, design, or oversight of the Pixel; just 7 of 495 paragraphs in the complaint even mention Zuckerberg, and then only to recount his public statements at a congressional hearing and speculate about his involvement in advertising decisions. Nevertheless, plaintiffs demand Meta add its CEO based on (1) a Wall Street Journal article that plaintiffs say suggests Zuckerberg "overruled" Meta employees' proposal to restrict health-based advertising; and (2) the fact that "[p]rivacy" is "part of Zuckerberg's responsibilities."[18] The first reason reflects a misunderstanding of the facts—the WSJ article concerned advertising options that are based solely on *on-platform activity*, not *activity on third-party websites* sent via the Pixel. And the second reason is too broad and vague—the fact that Meta's CEO is involved in "privacy" issues writ large does not demonstrate he would possess unique information about the data at issue in this case.

<u>*Graham Mudd (VP, Product Marketing, Ads & Business Products)*</u>: Plaintiffs provide

---

[16] Plaintiffs also cite a case from the Fourth Circuit, where—unlike in this District—"the 'apex' doctrine . . . has not been adopted." *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 749 (E.D.N.C. 2017). That case notes the apex doctrine "typically" applies to depositions, but it does not cite any case from this District or any of the cases applying the apex doctrine to disputes over document custodians, and it ultimately "assum[es] without deciding that the apex doctrine may apply to requests for document production." *Id.* at 750.

[17] Plaintiffs rely on *Shenwick v. Twitter, Inc.*, but there the disputed custodian likely possessed *unique* information "that no other custodian possesse[d]." 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018).

[18] Plaintiffs also suggest Meta "abuse[d]" the discovery process in connection with negotiations relating to Zuckerberg. Not so: Negotiating reasonable limits is standard.

6

nothing beyond the fact that Mudd "announced Meta's limited ban on advertising based on health information," which rests on the same misunderstanding of the article described above, and the fact that he "testified before Congress on data privacy." To the extent plaintiffs seek information about product marketing, communications, or public affairs, other custodians already cover those topics (Nissa Anklesaria, Tom Channick, Kevin Kerr, Victoria Chen Norland, Joe Osborne).

*__Erin Egan (VP & Chief Privacy Officer, Public Policy)__*: Plaintiffs say Egan is relevant because, in a discovery response, Meta listed a "Manager" as a representative role of an individual on a specific privacy team—but Egan is a Vice President and Chief Privacy Officer with a global role not specific to the identified team or issues in this litigation. Plaintiffs also note that Egan works with Meta's privacy team to evaluate new products, but another agreed-to custodian covers that topic (Kevin Kerr).

*__Sheryl Sandberg (Chief Operating Officer)__*: Plaintiffs say Sandberg "assembled teams to respond to privacy concerns" after Cambridge Analytica. They do not identify any unique information she might provide or make any allegations about her in the complaint.

*__Peng Fan (VP, Engineering/Monetization)__*: Plaintiffs say Fan was on "the team primarily responsible for the Pixel code," but existing custodians cover this topic (Abhinav Anand, Yi Huang, Amlesh Jayakumar, Yura Kostiukevych, Tobias Wooldridge, Jin Yamamoto).

*__Luchen Foster (Director, Global Partner and Programs)__*: Plaintiffs offer only that Foster "held three highly relevant roles." To the extent plaintiffs are interested in Foster's role on the Signals team, there are existing custodians who were closer to the issues (Dinkar Jain, Amlesh Jayakumar, Sukhesh Miryala).

*__David Fischer (Chief Revenue Officer)__*: Plaintiffs seek documents about "Pixel revenue goals," but two existing custodians—a Manager in the Data Science Monetization Ecosystem (Steve Shadman) and a Director of Data Science on the Signals Team (Fangzi Huang)—cover revenue-related issues.

*__Dan Levy (VP & Product Group Lead, Business Messaging)__*: Plaintiffs say Levy "oversaw the teams responsible for the Pixels' product development," but existing custodians in Levy's reporting line are more closely connected to product development (Abhinav Anand, Amlesh Jayakumar, Sukhesh Miryala, Tobias Wooldridge, Jin Yamamoto).

*__Carolyn Everson (VP, Global Business Group) / Nicola Mendelsohn (Head of Global Business Group)__*: Plaintiffs say Everson was "a point person for discussing both the Pixel and privacy with advertising executives," and that "Mendelsohn replaced Everson." But the article plaintiffs cite does not mention the Pixel and refers to "first-party data," which is neither Pixel data nor data from third parties. Pixel-related privacy and advertising are covered by existing custodians (Nissa Anklesaria, Victoria Jung, Kevin Kerr, Victoria Chen Norland).

*__Andrew Howard (Director, Privacy Public Policy)__*: Plaintiffs merely identify Howard's job title. Two existing custodians cover similar topics (Kevin Kerr, Joe Osborne).

*__Nada Stirratt (VP, Global Business Group, The Americas)__*: Plaintiffs only identify Stirratt's job title and the fact that Meta named 9 sales custodians, "all of whom report indirectly to Stirratt." Plaintiffs offer no explanation why those existing custodians are insufficient, and, in fact, several within her reporting line dealt specifically with health-related entities (Matthew Baczyk, Erin Ott, Jenny Streets).

7

### D.   NEED FOR A HEARING

Plaintiffs believe a Zoom or in-person hearing would be helpful for resolving this dispute, and if necessary to address Meta's mischaracterization of the parties' meet and confers (see below). Plaintiffs' counsel notes that they are not available on September 11 or 12, but are otherwise available for a hearing in August or September.

Meta believes the parties could make progress narrowing the scope of this dispute through further meet-and-confer discussions, but if plaintiffs are unwilling to do so, Meta agrees that a hearing will be helpful in resolving this dispute.

### E.   CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets forth the following cut-off dates for substantial completion of document production, fact discovery, and expert discovery:

*Parties substantially complete document production* - December 22, 2023

*Fact discovery Cut-off* – March 13, 2024

*Expert discovery Cut-off* – May 9, 2025

### F.   STATEMENT RE COMPLIANCE WITH STANDING ORDER

Plaintiffs have complied with all of the Court's discovery dispute resolution procedures. Pursuant to the Court's scheduling order and ESI Order, the parties were required to complete their custodian negotiations by July 28. Plaintiffs made extensive efforts to resolve the dispute. Only after those efforts failed, on July 28, Plaintiffs requested a lead counsel meet-and-confer to resolve this dispute pursuant to this Court's standing order. Geoff Graber, lead counsel for Plaintiffs, attended the August 4 meet and confer — Meta's lead counsel (Lauren Goldman and Michael Rhodes) failed to attend in violation of the Court's rules. At the August 4 meet-and-confer, it was undisputed that the parties had reached impasse. After the August 4 meet-and-confer, Meta never offered additional concessions.

Meta does not believe the parties reached impasse on all of these custodians, nor did a lead counsel meet-and-confer occur. As Meta informed plaintiffs prior to the August 4, 2023 meet-and-confer, lead counsel for Meta was not available for that call, but Meta still participated in the meet-and-confer to see if the parties could make further progress on the custodian disputes. Despite the disagreement as to whether the parties were at impasse following the August 4 meet-and-confer, Meta agreed to plaintiffs' demand to brief this issue.

### G.   ATTACHMENTS

None.

Dated: August 11, 2023               By:    */s/ Jason 'Jay' Barnes*
                                            Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949


                                     By:    */s/ Geoffrey Graber*
                                            Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

**KIESEL LAW LLP**

Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:    310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**

Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:   206-816-6603
Fax:    206-319-5450

**GIBBS LAW GROUP LLP**

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:   510-350-9700

Fax: 510-350-9701

*Attorneys for Plaintiffs and Putative Class*

Dated: August 11, 2023   **GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren Goldman*
Lauren Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

10

## **CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Eric A. Kafka, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: August 11, 2023             By:    */s/ Eric A. Kafka*