GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612 USA
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE META PIXEL HEALTHCARE LITIGATION

This Document Relates To:

All Actions

Case No. 3:22-cv-3580-WHO

**[REDACTED – PUBLICLY FILED VERSION]**

**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND STRIKE PARAGRAPH 357**

CLASS ACTION

Date: January 17, 2024
Time: 2:00 p.m.
Courtroom 2

**HON. WILLIAM H. ORRICK**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 17, 2024, at 2:00 p.m., before the Honorable William Orrick of the United States District Court for the Northern District of California, Courtroom 2, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc., will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the fifth, sixth, seventh, eighth, and ninth claims in the complaint with prejudice, and pursuant to Federal Rule of Civil Procedure 12(f) for an order striking paragraph 357 of the complaint.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

Should the fifth, sixth, seventh, eighth, and ninth claims in plaintiffs' First Amended Consolidated Class Action Complaint be dismissed under Rule 12(b)(6) for failure to state a claim?

Should paragraph 357 of the First Amended Consolidated Class Action Complaint be stricken under Rule 12(f)?

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 3

A. Plaintiffs Fail to State an Intrusion Upon Seclusion (Claim 5) or Constitutional Privacy (Claim 6) Claim. ..... 3

B. Plaintiffs Fail to State a Trespass to Chattels Claim (Claim 7). ..... 7

C. Plaintiffs Fail to State a CLRA Claim (Claim 8). ..... 9

D. Plaintiffs Fail to State a CDAFA Claim (Claim 9). ..... 13

E. Paragraph 357 of the Amended Complaint Should Be Stricken Under Rule 12(f). ..... 15

1. Relevant Background and Procedural History ..... 15

2. Paragraph 357 Should Be Stricken ..... 17

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

Page(s)

### Cases

*In re Apple Processor Litig.*,
2023 WL 5950622 (9th Cir. Sept. 13, 2023) ....................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................3

*Belluomini v. Citigroup, Inc.*,
2013 WL 3855589 (N.D. Cal. July 24, 2013) ....................4, 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................8

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....................7

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
79 Cal. App. 5th 755 (2022) ....................7

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) ....................12

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................13, 14

*Custom Packaging Supply, Inc. v. Phillips*,
2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ....................13

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ....................1, 4, 5, 6, 8, 10, 12, 13, 14, 15

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ....................7

*Enoh v. Hewlett Packard Enter. Co.*,
2018 WL 3377547 (N.D. Cal. July 11, 2018) ....................18

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ....................12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................3, 4

*Fields v. Wise Media, LLC*,
2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ....................9

*Grafilo v. Wolfsohn*,
33 Cal. App. 5th 1024 (2019)....6

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009)....3

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003)....7, 8, 9

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)....14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....7, 8, 9

*Jane Doe v. Hey Favor, Inc.*,
Case No. 23-cv-00059-WHO (N.D. Cal. Jan. 5, 2023)....2

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022)....9

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023)....7

*Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*,
2022 WL 4126272 (N.D. Cal. Sept. 9, 2022)....3, 18

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020)....14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....4, 5, 6

*Meyer v. Spring Spectrum L.P.*,
45 Cal. 4th 634 (2009)....12

*Mikulsky v. Noom, Inc.*,
2023 WL 4567096 (S.D. Cal. July 17, 2023)....7

*Moore v. Apple, Inc.*,
73 F. Supp. 3d 1191 (N.D. Cal. 2014)....10, 11

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022)....12

*Morgan v. FedEx Corp.*,
2009 WL 10736798 (N.D. Cal. Dec. 17, 2009)....17

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014)....3, 18

*Schmitt v. SN Servicing Corp.*,
2021 WL 3493754 (N.D. Cal. Aug. 9, 2021)....9

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015)....3

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................4, 6

*Song Fi, Inc. v. Google, Inc.*,
2016 WL 1298999 (N.D. Cal. Apr. 4, 2016) ....................12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................9

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................13, 14

*Valez v. Billingsleys' Main St. Grill, Inc.*,
2020 WL 2213463 (C.D. Cal. Apr. 2, 2020) ....................18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ....................12

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....................8

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ....................10, 11

**Statutes**

Cal. Civ. Code § 1761(d) ....................12

Cal. Civ. Code § 1770(a) ....................12

Cal. Civ. Code § 1770(a)(2) ....................9

Cal. Civ. Code § 1770(a)(5) ....................9

Cal. Civ. Code § 1770(a)(14) ....................9

Cal. Penal Code § 502(b)(12) ....................14

Cal. Penal Code § 502(c)(1) ....................14

Cal. Penal Code § 502(c)(8) ....................14

Cal. Penal Code § 502(e)(1) ....................13

**Rules**

Fed. R. Civ. P. 12(f) ....................3

Fed. R. Civ. P. 42(a)(2) ....................17

**MEMORANDUM OF POINTS AND AUTHORITIES**

## INTRODUCTION

The consolidated complaint in this case initially brought thirteen claims against Meta based on healthcare providers' alleged use of the Meta Pixel tool to measure certain actions that users take on their websites. As Meta argued in its first motion to dismiss, that grab-bag complaint included a number of misfit claims and suffered from numerous pleading defects that prevented plaintiffs from shaping the facts they alleged into viable legal theories. This Court granted Meta's motion in part and dismissed eight of the thirteen claims. *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023).

In their amended complaint, plaintiffs abandon three of the dismissed claims (negligence, larceny, and claims under the UCL). They seek to resurrect the other five: two privacy torts (intrusion upon seclusion and a constitutional privacy claim), trespass, and claims under the CLRA and CDAFA. But that effort fails, because plaintiffs have failed to remedy the defects this Court identified in its prior order. For the privacy torts, plaintiffs fail to identify any "specific, personal or private information they conveyed to their healthcare providers that they reasonably believe Meta received," *id.* at *8; instead, they provide only URLs for public webpages that anyone with an Internet connection (patient or not) could browse. That does not meet the high bar required to state a privacy tort. For trespass, plaintiffs fail to allege that "any functionality inherent in their computing devices has been impacted by Meta's conduct," *id.* at *14; plaintiffs say the Pixel took up storage on their devices and increased the loading time of webpages by one second, but a host of caselaw shows these *de minimis* effects are insufficient to state the sort of property harm required for a trespass claim. For the CLRA, plaintiffs still do not "plead facts regarding reliance on [Meta's] alleged misrepresentations," *id.* at *17; they make generalized allegations about their exposure to a broadly defined "advertising campaign" about "privacy," but never plead with particularity that they relied on any statement they allege was misleading. And for CDAFA, plaintiffs fail to plead a viable "theory of impairment of their computing devices," *id.* at *9; similar to the trespass claim, plaintiffs never allege that the Pixel caused their devices to lose any functionality.

Plaintiffs' claims suffer from additional defects as well, as described below. This Court had no occasion to address those other defects in light of its dismissal on the grounds above, but even if

plaintiffs could overcome the problems this Court identified, they would face other hurdles that prevent these claims from moving forward. The Court should dismiss plaintiffs' privacy, trespass, CLRA, and CDAFA claims with prejudice.[1]

The Court should also strike paragraph 357 from the amended complaint under Rule 12(f). Plaintiffs' putative class is defined to include "[a]ll Facebook users whose health information was obtained by Meta from their healthcare provider or covered entity through Meta Collection Tools," Am. Compl. ¶ 353, but paragraph 357 purports to "exclude[] from the Class . . . health information that was obtained by Meta from Hey Favor, Inc.," *id.* ¶ 357. There is no principled basis to carve out a single provider from the class definition. Meta previously moved to sever the claims against it in *Jane Doe v. Hey Favor, Inc.*, Case No. 23-cv-00059-WHO (N.D. Cal. Jan. 5, 2023) ("*Hey Favor*"), so that those claims could be consolidated with the claims in this action. Dkt. 54, *Hey Favor*. This Court denied that motion and stated that *Hey Favor* involved the alleged collection of information through Meta's SDK tool on mobile applications, whereas the instant case involved the alleged collection of information through Meta's Pixel tool on websites. Dkt. 75, *Hey Favor*. But the Court stated it was "willing to look at this issue again later in the litigation if the benefits of severance/consolidation become clearer." *Id.* at 2. Plaintiffs' amended complaint now makes clear that this consolidated action encompasses tools other than the Meta Pixel (including Meta's SDK tool) and apps as well as websites. Accordingly, but for the exclusion of Hey Favor in paragraph 357, this action now fully encompasses the claims against Meta in *Hey Favor*, and the benefits of severance and consolidation have become clearer. This Court should strike paragraph 357 to facilitate severance and consolidation of the claims against Meta in *Hey Favor*, promote efficiency, reduce the risk of inconsistent outcomes, and prevent claims against Meta regarding a single healthcare provider from being litigated on a separate track. Plaintiffs do not oppose this motion to strike and intend to file a statement of non-opposition.

---

[1] Meta respectfully maintains that the claims this Court previously allowed to proceed—under the federal Wiretap Act, California Invasion of Privacy Act, breach of contract, and unjust enrichment—are also legally deficient. In light of this Court's decision, however, Meta does not repeat those arguments here.

## LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the Court must first separate the complaint's legal conclusions—which are disregarded—from its factual allegations. *Id.* at 678–79. The remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Claims also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Class allegations can be stricken at the pleading stage," and courts may use Rule 12(f) as "a vehicle by which to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043 (N.D. Cal. 2014) (quotation marks omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 4126272, at *2 (N.D. Cal. Sept. 9, 2022) (quotation marks omitted).

## ARGUMENT

### A. Plaintiffs Fail to State an Intrusion Upon Seclusion (Claim 5) or Constitutional Privacy (Claim 6) Claim.

To state a claim for intrusion upon seclusion or invasion of privacy under the California constitution, plaintiffs must allege "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).[2] California law sets "a

---

[2] This two-pronged test is a "shorthand" for assessing these two claims, which have "largely parallel elements." *Hernandez*, 47 Cal. 4th at 287; *see also Facebook Internet Tracking*, 956 F.3d at 601 ("Because of the similarity of the tests, courts consider the claims together."). An intrusion-upon-

high bar" for these claims. *Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). Plaintiffs' first attempt to clear that bar failed, and their amended allegations still fall short.

This Court previously held that plaintiffs failed to state a claim because the complaint did not "identify . . . what specific, personal or private information [the named plaintiffs] conveyed to their healthcare providers that they reasonably believe Meta received." *Doe*, 2023 WL 5837443, at *8. The Court noted that "as Meta repeatedly points out and plaintiffs admit, there is information collected by the Pixel software that does not constitute sensitive, personal information." *Id.* The Court concluded that, "[g]iven the nature of this case—where plaintiffs allege that both unprotected and constitutionally protected information was captured by Meta's Pixel—plaintiffs are required to amend to describe the types or categories of sensitive health information that they provided through their devices to their healthcare providers," though they may omit certain details to protect "specific privacy interests." *Id.*

Plaintiffs' amended complaint confirms that their privacy claims fail as a matter of law. Although the amended complaint adds allegations about the information Meta allegedly received about them, Am. Compl. ¶¶ 24–38, all of the information falls on the "unprotected" side of the line. *Doe*, 2023 WL 5837443, at *8. The Ninth Circuit held in *Smith v. Facebook, Inc.* that Facebook users could not state a privacy claim based on "collecting and using their browsing data from various healthcare-related websites," even when that browsing demonstrated that the plaintiffs "searched and viewed publicly available health information," because users' agreement to the disclosures in Meta's policies establishes their consent to that conduct. 745 F. App'x 8, 8–9 (9th Cir. 2018).

Assessing plaintiffs' likelihood of success at the preliminary-injunction stage in this case, this Court distinguished *Smith* on the ground that "*Smith* involved users browsing through websites providing healthcare information to the public at large, not users navigating to patient portals on healthcare providers' websites." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022). The Court stated that *Smith* "d[id] not bear on the question of whether the information at

---

seclusion claim requires a plaintiff to allege "that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Facebook Internet Tracking*, 956 F.3d at 601 (cleaned up). A constitutional invasion-of-privacy claim requires a plaintiff to allege "that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious as to constitute an egregious breach of the social norms such that the breach is highly offensive." *Id.* (cleaned up).

issue here"—which plaintiffs had not yet specified—"constitutes patient health information." *Id.* But plaintiffs' own new allegations regarding what information Meta received about them now make clear that their claims *do not* concern transmitting "patient health information" to their providers through "patient portals on [their] healthcare providers' websites." *Id.* Instead, plaintiffs allege only information about their "browsing through websites providing healthcare information to the public at large," *id.*, placing them squarely within *Smith*. Specifically:

- *John Doe I.* Plaintiffs assert Meta received "communications about John Doe I's doctor, [redacted], and communications about the patient portal, [redacted]." Am. Compl. ¶ 24. But the "communications" plaintiffs point to are simply URLs that link to publicly available webpages on MedStar's public website. *Id.* As a simple click on any of those links reveals, *anyone* can access those pages, just like in *Smith*—for example, this link to a public webpage [redacted].[3] The fact that John Doe I allegedly visited this public webpage does not reveal any "specific, personal or private information [he] conveyed to [his] healthcare providers." *Doe*, 2023 WL 5837443, at *8.

- *Jane Doe I.* Plaintiffs assert Meta received "communications about specific treatments such as mammograms and breast imaging; Jane Doe I's providers [redacted]; and Jane Doe I's communications concerning [redacted]." Am. Compl. ¶ 25. But again, the "communications" plaintiffs refer to are not actual messages from Jane Doe I to her doctors; rather, as in *Smith*, they are URLs linking to publicly available webpages that anyone with an Internet connection could browse (for example, this public webpage [redacted]). *Id.*

- *John Doe II.* Here again, plaintiffs allege Meta received "communications about John Doe II's providers [redacted]," and proceed to list four publicly accessible webpages (for example, [redacted]). Am. Compl. ¶ 26.

- *Jane Doe II.* The same is true for Jane Doe II: plaintiffs say Meta received "communications about [redacted]," but then simply list URLs for publicly accessible webpages with general information about those topics. Am. Compl. ¶ 27.

---

[3] One of the URLs John Doe I lists is to MedStar's publicly available patient portal login page, which anyone (account or no) can visit. *See* Am. Comp. ¶ 24; *see also id.* ¶¶ 25–30, 32–34 (similar allegations for other named plaintiffs). But plaintiffs' original complaint already alleged that John Doe I "used the myMedStar patient portal while the Meta Pixel was present on the portal login page" and listed the URL, Compl. ¶ 24, and this Court rightly dismissed; the amended complaint adds nothing new to that allegation.

- *Jane Doe III.* Finally, the same goes for Jane Doe III: plaintiffs allege Meta received "communications about [her] [redacted] physicians [redacted]" but the "communications" are simply links to [redacted]. Am. Compl. ¶ 28.

The amended complaint also adds ten more named plaintiffs, but the allegations for those new individuals run into exactly the same problem: plaintiffs fail to allege Meta received any "communications" beyond public webpages that anyone—whether they are a patient or not—can browse. *See* Am. Compl. ¶¶ 29–38. For some of these individuals, plaintiffs do not even provide any of the URLs Meta allegedly received other than the URL for a patient portal login page—which is the same lack of detail that led this Court to dismiss these claims the first time. *Id.* ¶¶ 36–38.

As in *Smith*, these allegations show (at most) "only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history." 745 F. App'x at 9. They do *not* satisfy this Court's requirement in its order dismissing these claims the first time that plaintiffs identify "specific, personal or private information [the named plaintiffs] conveyed to their healthcare providers that they reasonably believe Meta received." *Doe*, 2023 WL 5837443, at *8. Nor have plaintiffs alleged any "[c]ommunications made in the context of a patient-medical provider relationship," which this Court previously stated were confidential, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799; instead, the "communications" plaintiffs allege Meta received are simply the URLs for publicly accessible webpages providing health information to the public at large (as in *Smith*), not actual messages between plaintiffs and their doctors.

Plaintiffs' new allegations thus do not implicate any cognizable privacy interest recognized by California law. As the Court of Appeal has explained, "[m]edical patients' privacy interest . . . derives from their expectation of privacy in their physician's files, which may include descriptions of symptoms, family history, diagnoses, test results, and other intimate details concerning treatment." *Grafilo v. Wolfsohn*, 33 Cal. App. 5th 1024, 1034 (2019) (quotation marks omitted). No such interest inheres in an individual's visiting a publicly accessible website, which "cannot, in and of itself, reveal details of an individual's health status or medical history." *Smith*, 745 F. App'x at 9.

Indeed, other courts have held there is not even *Article III standing*—a significantly lower standard than the "high bar" for privacy torts under California law, *see Belluomini*, 2013 WL 3855589,

at *6—where plaintiffs fail to "identify any specific personal information [they] disclosed that implicates a protectable privacy interest." *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (finding no standing to bring CIPA claim); *see also, e.g.*, *Mikulsky v. Noom, Inc.*, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) (collecting cases and noting that "[t]o survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest" (quotation marks omitted)). Plaintiffs' web-browsing information does not satisfy that basic standard, let alone the higher standard to state a claim for intrusion upon seclusion or invasion of privacy. *See Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (alleged interception of "URLs of webpages visited" and other browsing information insufficient for Article III standing because plaintiff did "not allege that she disclosed any personal information when she visited the website").

Ultimately, whether this Court grounds dismissal in consent (as in *Smith*), lack of a legally protected interest (as in the first dismissal order), or failure to plead a sufficiently serious or highly offensive intrusion, the result is the same: alleging that Meta received information about plaintiffs' browsing history on publicly available webpages is not enough to state a claim.

**B. Plaintiffs Fail to State a Trespass to Chattels Claim (Claim 7).**

To state a claim for trespass on a computing device, plaintiffs must plausibly allege that "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000). The sort of harm required for a trespass claim is a "*significant reduction* in service constituting an interference with the intended functioning of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (emphasis added); *see also, e.g.*, *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1356 (2003). Plaintiffs cannot use the trappings of trespass to smuggle legally deficient invasion-of-privacy claims past the pleading stage. Trespass claims will "not lie to protect interests in privacy," and plaintiffs may not "convert privacy harms into property harms." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 765 (2022). This Court dismissed plaintiffs' trespass claim because it is "based on their assertions that Meta places the _fbp cookie on their devices via their health-

care providers' websites," and plaintiffs "d[id] not allege that the presence of that cookie 'impairs' the operation of their devices in terms of diminished storage, decreased battery life, or otherwise." *Doe*, 2023 WL 5837443, at *14.

Despite those settled principles and this Court's prior ruling, the main thrust of plaintiffs' trespass claim in their amended complaint remains their alleged privacy harms, which are legally inadequate. *E.g.*, Am. Compl. ¶ 494 (alleging the Pixel "is the modern equivalent of the placement of a bug in someone's telephone or on the desk where their computer sits"). All that plaintiffs have added are passing assertions of *de minimis* effects on performance. They allege that the Pixel "took up a measurable amount of available storage" on their devices. *Id.* ¶ 495. That tacked-on contention changes nothing, because plaintiffs' occupied-storage theory also fails and has been repeatedly rejected by courts. For example, in *iPhone Application Litigation* (on which this Court relied in its motion-to-dismiss order), the plaintiffs similarly alleged that apps provided by the defendants "t[ook] up valuable bandwidth and storage space on their iDevices." 844 F. Supp. 2d at 1069; *see also id.* (plaintiffs alleged that "Apple's creation of location history files and app software components 'consumed portions of the cache and/or gigabytes of memory on their devices'"). The district court rejected that theory, reasoning that "[w]hile these allegations conceivably constitute a harm, they do not plausibly establish a *significant reduction* in service constituting an interference with the intended functioning of the system, which is necessary to establish a cause of action for trespass." *Id.* (emphasis added); *see also, e.g.*, *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *16 (N.D. Cal. Mar. 26, 2013) (allegation that defendant "installed unwanted code that consumes portions of the memory on [plaintiff's] mobile device" insufficient); *Intel Corp.*, 30 Cal. 4th at 1357 ("not enough" to allege that "messages temporarily used some portion of the Intel computers' processors or storage"). Plaintiffs concede that "the amount of storage wrongfully taken up . . . may be small for each individual device," Am. Compl. ¶ 497; they do not allege any significant reduction in service.

Plaintiffs' assertion of trivial increases in webpage-loading times fails for the same reasons. They assert that "[r]esearchers estimate that Facebook's Pixel code adds between 1.3 to 1.5 seconds to the load time for a webpage." Am. Compl. ¶ 500. But that is just another way of pleading that the Pixel took up storage or processing power, and runs into the same issues. *See, e.g.*, *Brodsky v. Apple*

*Inc.*, 445 F. Supp. 3d 110, 124 (N.D. Cal. 2020) (even a "delay of 2-5 minutes does not impair the functioning" of plaintiffs' devices); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069 (plaintiff must be deprived of use "for a substantial time"); *Fields v. Wise Media, LLC*, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (same); *Intel Corp.*, 30 Cal. 4th at 1357 ("mere momentary" deprivation of use insufficient); *cf. Ji v. Naver Corp.*, 2022 WL 4624898, at *9 (N.D. Cal. Sept. 30, 2022) ("*de minimis* effect on [plaintiffs'] data and electricity costs" not even enough to confer Article III standing).[4] None of this plausibly alleges any "significant reduction" in the functioning of plaintiffs' devices, and none of it suffices to transform plaintiffs' privacy-based claim into a property harm.[5]

**C. Plaintiffs Fail to State a CLRA Claim (Claim 8).**

Plaintiffs claim that Meta violated the California Consumer Legal Remedies Act, which prohibits certain misrepresentations made in the course of a transaction for the sale or lease of goods, "[b]y stating that it required its Partners to have the right to collect, use and share Plaintiffs' and Class members' information but doing nothing to ensure their rights were protected." Am. Compl. ¶ 507; *see* Cal. Civ. Code § 1770(a)(2), (5), (14). This claim fails, both because plaintiffs still fail to plead actual reliance (as this Court previously held) and for other reasons this Court had no occasion to reach.

---

[4] Plaintiffs cite this Court's decision in *Schmitt v. SN Servicing Corp.*, where the Court held that "[t]he money and time plaintiffs spent on credit monitoring are both cognizable forms of harm" for a negligence claim. 2021 WL 3493754, at *6 (N.D. Cal. Aug. 9, 2021) (Orrick, J.); *see* Am. Compl. ¶ 502. That case did not address the requirements for a trespass claim. Additionally, the plaintiffs in that case alleged much more time loss than the "1.3 to 1.5 seconds" spent to load a webpage, including "expenses and/or time spent on credit monitoring for a period of years; time spent scrutinizing bank statements, credit card statements, and credit reports; [and] time spent initiating fraud alerts and credit freezes and subsequently temporarily lifting credit freezes." *Id.* at *5.

[5] Implicitly recognizing that their individualized allegations of harm are insufficient, plaintiffs offer a back-of-the-envelope calculation of the "aggregate time-value of money loss" based on tallying up the webpage-loading time for each communication allegedly intercepted from "absent Class members." Am. Compl. ¶ 503. The factual assumptions baked into plaintiffs' calculations are, to say the least, dubious. *See id.* (alleging Meta's total Pixel events over a six-week period based "[o]n information and belief"; assuming hypothetically that "one percent of Meta's Pixel events were from HIPAA or CMIA-covered entities"; and failing to account for events from such entities that do not transmit any sensitive information). But more fundamentally, plaintiffs cannot leverage absent class members to state a claim that they are unable to state themselves. *Cf. Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." (quotation marks omitted)).

***Actual reliance.*** To state a claim under the CLRA, plaintiffs must plead "actual reliance" on the alleged misrepresentation that forms the basis of their CLRA claim. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014). This claim is also subject to Rule 9(b)'s heightened pleading requirements, which means plaintiffs must provide "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations," including "the who, what, when, where, and how of the misconduct charged." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (dismissing where plaintiffs failed to allege "*who* actually saw *what* misrepresentations/omissions and *when* and *where* they saw the misrepresentations or omissions" (quotation marks omitted)). This Court dismissed plaintiffs' CLRA claim because, as in *Zoom*, "[n]o Plaintiff alleges reading [Meta's] allegedly misleading statements, let alone reading them at a specific time or place." *Doe*, 2023 WL 5837443, at *17 (quoting *Zoom*, 525 F. Supp. 3d at 1046). The Court granted "leave to amend so that plaintiffs can plead facts regarding reliance on the alleged misrepresentations." *Id.*

The amended complaint does not satisfy that requirement. Plaintiffs now allege that they "have been exposed to a wide-spread long-term advertising campaign from Meta that pervades nearly all aspects of online life," Am. Compl. ¶ 510, but this theory runs into numerous problems.

*First*, none of the statements plaintiffs identify as part of Meta's "advertising campaign" is the alleged misrepresentation that supposedly forms the basis of their CLRA claim—the statement in Meta's Privacy Policy stating Meta "require[s]" third parties to have lawful rights to collect, use, and share any data it sends to Meta. *Compare* Am. Compl. ¶¶ 171–74, 507 (alleging Meta misrepresented that "it required its Partners to have the right to collect, use and share" plaintiffs' information), *with id.* ¶ 510 (listing generalized statements about privacy as part of Meta's "advertising campaign"). So even if plaintiffs could plead reliance on this "advertising campaign," they still would not have pled reliance "*on the alleged misrepresentations*." *Doe*, 2023 WL 5837443, at *17 (emphasis added); *see also, e.g.*, *Moore*, 73 F. Supp. 3d at 1200 (same).

*Second*, plaintiffs still fail to plead with particularity that they relied on *any* alleged statement by Meta (even the ones that were purportedly part of Meta's "advertising campaign"). Instead, the complaint plays sleight-of-hand. It generically alleges plaintiffs "have been exposed" to an

"advertising campaign," and then lists examples of statements that were supposedly part of this "advertising campaign"—but never alleges that the named plaintiffs in this case actually saw or read any of those particular examples, "let alone read[] them at a specific time or place." *Zoom*, 525 F. Supp. 3d at 1046; *cf. In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (affirming dismissal of omissions-based CLRA claim, despite allegations that information was "widely reported," for failure to allege "that Plaintiffs themselves were likely to encounter the news reports or to read Apple's press releases"). Plaintiffs must allege "*who* actually saw *what* misrepresentations/omissions and *when* and *where* they saw the misrepresentations or omissions," *Zoom*, 525 F. Supp. 3d at 1046 (quotation marks omitted); they have failed to do so.

*Third*, plaintiffs have a "basic chronology" problem: they have not alleged that any misrepresentations occurred before they signed up for a Facebook account. *Moore*, 73 F. Supp. 3d at 1200. "By definition, the CLRA does not apply to unfair or deceptive practices that occur *after* [a] sale or lease has occurred." *Id.* at 1201 (collecting cases). As explained below, there was no "sale or lease" here that could serve as the basis for a CLRA claim at all. *See infra* 12. But even assuming plaintiffs' decision to sign up for a free Facebook account could qualify, plaintiffs never allege when they did so—making it impossible for them to plead actual reliance under Rule 9(b). Notably, several of the statements plaintiffs list as part of Meta's "advertising campaign" were made *after* plaintiffs filed their complaint, and thus cannot possibly have been relied on by plaintiffs. *Cf. Moore*, 73 F. Supp. 3d at 1200–01 ("As a matter of basic chronology, Plaintiff cannot contend that she relied on Apple's representations or omissions . . . in deciding whether to purchase the iPhone because those representations and omissions had not yet taken place."); *see* Am. Compl. ¶ 510 nn.66–67. Others were made in 2018, *see* Am. Compl. ¶ 510 nn.68–69, but without any allegations about when plaintiffs created their Facebook accounts, it is impossible to plead actual reliance on those statements.

***Other bases for dismissal.*** Plaintiffs' failure once again to plead actual reliance with particularity under Rule 9(b) compels dismissal, as this Court previously held. But even if plaintiffs had properly pleaded reliance, their CLRA claim would fail for at least two additional, independent reasons.

*First*, to bring a CLRA claim, a plaintiff must be a "consumer," which requires an allegation that the plaintiff engaged in a "sale or lease of goods or services." Cal. Civ. Code § 1770(a); *see id.* § 1761(d). There was no "sale or lease" here because Facebook is free, and courts have repeatedly dismissed CLRA claims on this basis. *E.g.*, *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (rejecting argument that "personal information constitutes a form of 'payment'"), *aff'd*, 572 F. App'x 494 (9th Cir. 2014); *see also, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *32–33 (N.D. Cal. Aug. 30, 2017); *Song Fi, Inc. v. Google, Inc.*, 2016 WL 1298999, at *11–12 (N.D. Cal. Apr. 4, 2016); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011).

*Second*, the CLRA also requires plaintiffs to allege that they suffered "some kind of *tangible increased cost or burden*." *Meyer v. Spring Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009) (emphasis added). But again, Facebook is free, and courts have repeatedly rejected arguments that a plaintiff's personal data constitutes a form of payment. *See supra* 12. This Court rejected an analogous argument when it dismissed plaintiffs' UCL claim (which plaintiffs have now abandoned) for failure to plead a "money or property" harm. *See Doe*, 2023 WL 5837443, at *15–17 (surveying the caselaw and noting that "[c]ourts in this district have dismissed cases where, like here, the injury is based on 'the loss of the inherent value of their personal data,' as well as where it was undisputed that plaintiffs paid no money to the defendant" (citation omitted)). The same analysis governs here.[6]

---

[6] Plaintiffs previously alleged that "[b]ecause Americans typically do not want to sell their individually identifiable health information for any purpose and it is illegal to even share it without express, written authorization, there are fewer open markets for a license to collect or sell individually identifiable health information for non-health purposes than other types of data." Compl. ¶ 216. In the portion of its order analyzing plaintiffs' UCL claim, this Court followed California authority requiring allegations "regarding how plaintiffs could *and* would participate in a legitimate market for health care information," and dismissed the UCL claim for failure to satisfy that requirement. *Doe*, 2023 WL 5837443, at *17; *see Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (it is not enough to plead that "PII was stolen and disseminated, and that a market for it existed," because plaintiffs must further allege that they "attempted or intended to participate in this market, or otherwise to derive economic value from their PII"). In their amended complaint, plaintiffs delete the allegation about not wanting to sell their health information for any purpose. But that gamesmanship gets them nowhere: plaintiffs still do not allege that they *did* "attempt[] or intend[] to participate" in a market for their personal health information "or otherwise to derive economic value" from it. *Moore*, 83 Cal. App. 5th at 538. To the contrary, their entire complaint is based on the notion that they did *not* want to share this information. *E.g.*, Am. Compl. ¶¶ 1 (alleging plaintiffs' "medical privacy has been violated"), 399 (alleging plaintiffs "intended" for their "sensitive and confidential information" to "remain private"), 411 (same), 440 (same), 472 (same), 486 (same).

**D. Plaintiffs Fail to State a CDAFA Claim (Claim 9).**

As Meta explained in its first motion to dismiss, plaintiffs' CDAFA claim is another misfit for this case. CDAFA is an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose[s]." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). This is not a "hacking" case.

This Court dismissed plaintiffs' CDAFA claim for failure to plead "damage or loss" under the statute. Cal. Penal Code § 502(e)(1); *Doe*, 2023 WL 5837443, at *9. Plaintiffs argued that the Pixel precluded them from using their devices to communicate with their healthcare providers and diminished the value of their personal information, but this Court found "no support for their argument that an 'inability' to use their computer devices to communicate with their healthcare providers in the future is a cognizable form of loss or damage actionable under the CDAFA," and plaintiffs' "diminished value of information claim is foreclosed by the reasoning in *Cottle* [*v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021)]." *Doe*, 2023 WL 5837443, at *9. The Court granted leave to amend for plaintiffs to "plead a different theory of impairment of their computing devices." *Id.* Additionally, because plaintiffs defended only two parts of their CDAFA claim on the merits (subsections 502(c)(1) and (c)(8)), this Court "limit[ed] the CDAFA claim to these two subsections only" in any amended complaint. *Id.*

***Damage or loss.*** As with the trespass claim, *see supra* 7–9, plaintiffs still fail to plead any technological "impairment of their computing devices." *Doe*, 2023 WL 5837443, at *9. Plaintiffs allege the Pixel "occupied storage space on their computing devices," "caused the computing devices to work slower," and "used the computing resources of [their] computing devices," and that "Meta unjustly profited from the data." Am. Compl. ¶ 536. None of this states any technological damage, loss, or impairment of plaintiffs' devices. For the first three theories of harm (storage space, processing speed, and use of computing resources), plaintiffs say nothing about whether or how their devices lost any function. *Cf. Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (even though "[d]efendants' bots place[d] a heavy load on Ticketmaster's system," no CDAFA claim where "Ticketmaster's systems continued to function as intended, without damage or alteration, while the bots operated"). And the fourth theory (that Meta profited) does not concern

plaintiffs' devices at all; to the extent plaintiffs are alluding to the value of their data, that is precisely the theory this Court already rejected. *Doe*, 2023 WL 5837443, at *9; *see also Cottle*, 536 F. Supp. 3d at 488 ("the loss of the value of [plaintiffs'] data" is not "damage or loss" under CDAFA). As before, this Court should dismiss the CDAFA claim for failure to plead damage or loss.

***Merits.*** Plaintiffs' CDAFA claim also fails on the merits. To state a claim under subsection (c)(1), plaintiffs must allege Meta "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data." Cal. Penal Code § 502(c)(1). But there is no allegation in the amended complaint that Meta "alters, damages, deletes, [or] destroys" any data, and courts have "expressly declined to read the phrase 'or otherwise uses' in section 502(c)(1) as prohibiting anything other than use that is similar to alteration, damage, deletion, or destruction." *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020) (some quotation marks omitted); *see also Ticketmaster*, 315 F. Supp. 3d at 1175 & n.5 ("The Court narrowly construes 'otherwise uses' in section 502(c)(1) to refer to uses that involve data alteration, damage, deletion, and destruction."). Merely obtaining copies of a plaintiff's data is not enough: "viewing and copying are categorically distinct from altering and destroying." *See McGowan*, 505 F. Supp. 3d at 1019–20 (no claim where defendant "gained unauthorized access to [plaintiff's] laptop to obtain a copy of her unpublished manuscript").

Nor have plaintiffs stated any claim under subsection (c)(8). To state a claim under that provision, plaintiffs must allege Meta "[k]nowingly introduces any computer contaminant into any computer, computer system, or computer network." Cal. Penal Code § 502(c)(8). A "computer contaminant" is a "set of computer instructions *that are designed to modify, damage, destroy, record, or transmit information* within a computer, computer system, or computer network *without the intent or permission of the owner of the information*." *Id.* § 502(b)(12) (emphases added). This section is "aimed at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system." *In re iPhone Application Litig.*, 2011 WL 4403963, at *12–13 (N.D. Cal. Sept. 20, 2011) (dismissing claim based on "access to consumers' data" through "surreptitious tracking codes"). The Pixel is a commonly used tool that is ubiquitous across the Internet and enables developers to

improve their own websites, not a virus or worm. At a minimum, in light of its numerous indisputably legitimate uses, it is impossible to say the Pixel is "*designed* to" usurp normal computer operations without permission. *Cf. Doe*, 2023 WL 5837443, at *8 (as "plaintiffs admit, there is information collected by the Pixel software that does not constitute sensitive, personal information"). Plaintiffs' theory would transform a common Internet tool offered by numerous companies (not just Meta) and used across the web to improve online services into an unlawful piece of malware.

**E. Paragraph 357 of the Amended Complaint Should Be Stricken Under Rule 12(f).**

**1. Relevant Background and Procedural History**

Plaintiffs filed this action on June 17, 2022. Dkt. 1. They alleged that healthcare providers sent Meta their sensitive health information through Meta's Pixel tool, which the healthcare providers allegedly configured on their websites. *Id.* ¶ 1. On October 12, 2022, this Court consolidated this action with three other cases in this district and set out a procedure for any future cases to be consolidated with this action. Dkt. 73. To date, claims against Meta from seventeen cases have been consolidated into this action. Dkt. 375 at 2.

On January 5, 2023, a Jane Doe plaintiff filed suit against Hey Favor, Inc., FullStory, Inc., TikTok, Inc., ByteDance Inc., and Meta. Dkt. 1, *Hey Favor*. Hey Favor is a telehealth prescription company subject to HIPAA. *Id.* ¶ 1. As to Meta, Jane Doe alleges that Hey Favor sent Meta the health information she provided to Hey Favor through the Meta Pixel on Hey Favor's website *and* through the Meta SDK on Hey Favor's mobile application (the Meta Pixel tool is used on websites; the Meta SDK tool is used on apps). *Id.* ¶¶ 31–32. On February 21, 2023, plaintiffs in this action filed their initial consolidated class action complaint, which alleged that Meta received sensitive health information via Meta's "tracking tools, including the Meta Pixel" integrated into the websites and apps of "covered entities," which plaintiffs defined as "health care providers, health insurers, health care clearinghouses, patient portal providers, pharmacies, pharmaceutical companies, and any other entity, business associate, or contractor for which patient health or medical information is protected by HIPAA or the CMIA." Dkt. 185 ¶¶ 1, 21. As a telehealth prescription company subject to HIPAA, Hey Favor clearly falls within this definition. *Cf.* Dkt. 335-1 (Exhibit A to plaintiffs' amended complaint listing more than 1,800 entities, including "prescription" and "telehealth" entities). On March 23, 2023, Meta

filed a motion to sever the claims against Meta in *Hey Favor*, so that those claims could be related to and consolidated with this action. Dkt. 54, *Hey Favor*. Meta's position was that the claims against Meta involving the Meta Pixel and SDK in *Hey Favor* overlapped with and were subsumed within the claims in the consolidated complaint in this action. On March 24, 2023, plaintiffs in this action and Meta filed a joint administrative motion to consider whether the claims against Meta in *Hey Favor* should be related to this action, conditional upon the Court granting Meta's motion to sever the claims against Meta in *Hey Favor*. Dkt. 205.

On May 24, 2023, this Court denied Meta's motion to sever in *Hey Favor*, noting that this action "concern[ed] only the conduct of Meta and its capture and use of personal healthcare information primarily through the use of Meta's Pixel and primarily through patient portals and related webpages on websites." Dkt. 75 at 1, *Hey Favor*. The Court also noted that it "recognize[d] that the Consolidated Class Action complaint . . . in the *Meta Pixel Healthcare Litigation* case contains allegations that may be broader and could overlap with some aspects of the claims asserted against Meta in this case." *Id.* at 2. Because "the appropriate scope of [this action] ha[d] yet to be tested or finally determined," the Court declined to "fold[] the app-based SDK claims into" this action "at [that] juncture." *Id.* But the Court stated that it was "willing to look at this issue again later in the litigation if the benefits of severance/consolidation become clearer." *Id.*

On October 10, 2023, plaintiffs in this case filed an amended complaint. Dkt. 335. The amended complaint defines a putative class of "[a]ll Facebook users whose health information was obtained by Meta from their healthcare provider or covered entity through Meta Collection Tools." *Id.* ¶ 353. "Meta Collection Tools" is explicitly defined to include a number of Meta tools (not all of them tracking tools), including the Meta Pixel (used on websites) and the Meta SDK (used on apps). *Id.* ¶ 354. Unlike the February 21, 2023 complaint, the amended complaint adds substantive allegations about the Meta SDK (*id.* ¶¶ 137, 142, 143) and allegations that plaintiffs used both websites that integrated the Meta Pixel and applications that integrated the Meta SDK (*id.* ¶¶ 36–38). The amended complaint uses the same definition of "covered entity" as the February 21, 2023 complaint, as set forth above, which encompasses Hey Favor. But the amended complaint "exclude[s] from the Class [] health information that was obtained by Meta from Hey Favor, Inc." *Id.* ¶ 357.

**2. Paragraph 357 Should Be Stricken**

"[A]t this juncture," the "benefits of severance/consolidation [have] become clearer" (Dkt. 75 at 2, *Hey Favor*), as both *Hey Favor*'s website-based Pixel claims *and* its app-based SDK claims against Meta are firmly within the scope of the amended complaint (Dkt. 85 ¶ 111, *Hey Favor*). To increase efficiency and preserve the parties' and the Court's resources, the exclusion of Hey Favor from the amended complaint should be stricken. Plaintiffs do not oppose this request.

The amended complaint now unequivocally encompasses not just the Meta Pixel on healthcare providers' websites, but also the Meta SDK on healthcare providers' apps. As in *Hey Favor*, the amended complaint alleges Meta received sensitive health information through covered entities' use of the Meta Pixel on their websites *and* the Meta SDK on their applications. Accordingly, but for the exclusion of "health information that was obtained by Meta from Hey Favor, Inc." from the putative class definition, Am. Compl. ¶ 357, the claims against Meta in *Hey Favor* would fall squarely within the scope of the amended complaint. It would be inefficient and a waste of the parties' and the Court's resources to litigate the claims against Meta in *Hey Favor* separately from the claims in this action.

The more efficient way to proceed is to sever the claims against Meta in *Hey Favor* and consolidate them with this action. Indeed, the legal standard for consolidation is intended to facilitate exactly this. *See* Fed. R. Civ. P. 42(a)(2). Paragraph 357 of the amended complaint excludes Hey Favor from the putative class definition, thereby carving out a single healthcare provider from the "covered entities" at issue in this action. That carve-out is not justified by any principled rationale, and it would unnecessarily complicate the litigation, lead to duplication of effort, and present a risk of inconsistent results. *Cf. Morgan v. FedEx Corp.*, 2009 WL 10736798, at *2 (N.D. Cal. Dec. 17, 2009) ("The possibility that issues will be unnecessarily complicated . . . is the type of prejudice that is sufficient to support the granting of a motion to strike.").

Striking paragraph 357 is an appropriate remedy and would allow the Court to consolidate the claims against Meta in *Hey Favor* with the claims in this action. Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This Court has discretion to strike paragraph 357 so that litigation of all claims falling within plaintiffs' theory of the case—*i.e.*, Meta's alleged receipt of

sensitive health data from "covered entities" through their use of the Meta Pixel, Meta SDK, and other tools—may proceed efficiently, in a single action. *See Maynard*, 2022 WL 4126272, at *2 ("Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." (quotation marks omitted)); *Sandoval*, 34 F. Supp. 3d at 1043–44 (granting motion to strike plaintiffs' class allegations at the pleading stage).

In addition, courts may use "Rule 12(f) as a vehicle by which to avoid the expenditure of time and money . . . by dispensing with those issues prior to trial." *See Sandoval*, 34 F. Supp. 3d at 1043 (quotation marks omitted). Striking the Hey Favor exclusion will avoid the expenditure of time and money on duplicative motions, discovery, and proceedings. In *Enoh v. Hewlett Packard Enterprise Company*, for example, the court granted HP's motion to strike plaintiffs' class allegations, noting that doing so "at the outset of the litigation is necessary to protect Defendants from burdensome and unnecessary class discovery on barred claims and individuals." 2018 WL 3377547, at *15 (N.D. Cal. July 11, 2018). Striking paragraph 357 would likewise eliminate unnecessarily burdensome and duplicative discovery, because a more efficient solution—severance and consolidation of the claims against Meta in *Hey Favor* with this action—is viable without paragraph 357. And the Court need not worry that subsequent severance and consolidation would result in prejudice to the *Hey Favor* plaintiff—*Hey Favor* has not yet passed the motion to dismiss stage, and severance and consolidation will not disrupt the *Hey Favor* plaintiff's litigation against the other defendants in that case. *See Valez v. Billingsleys' Main St. Grill, Inc.*, 2020 WL 2213463, at *2 (C.D. Cal. Apr. 2, 2020) ("Because this litigation . . . is at an early stage, the Court also determines that no substantial right will be prejudiced by the severance of the claims.").

Striking paragraph 357 from the amended complaint is appropriate to avoid the inefficiencies and risk of inconsistent outcomes described above. Because judicial efficiency now favors adjudicating these claims against Meta together in a single action, Meta respectfully submits that the Court should strike paragraph 357 in the amended complaint so that the claims against Meta in *Hey Favor* may be severed and consolidated with this action.

## CONCLUSION

The Court should dismiss plaintiffs' fifth, sixth, seventh, eighth, and ninth claims with prejudice, and should strike paragraph 357 from the amended complaint. Plaintiffs do not oppose the latter request.

Dated: November 14, 2023

**GIBSON, DUNN & CRUTCHER LLP**
By: */s/ Lauren R. Goldman*
Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: November 14, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: *\/s/ Lauren R. Goldman*
Lauren R. Goldman