Jason 'Jay' Barnes (admitted *pro hac vice*)
 *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:     212-784-6400
Fax:     212-213-5949

Jeffrey A. Koncius, State Bar No. 189803
 *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:     310-854-4444
Fax:     310-854-0812

*Attorneys for Plaintiffs*
JOHN DOE, JANE DOE I, JANE DOE II, and
JOHN DOE II, and DOE, on behalf of
themselves and all others similarly situated

[*Additional counsel listed on signature page*]

Geoffrey Graber, State Bar No. 211547
 *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:     202-408-4600
Fax:     202-408-4699

Beth E. Terrell, State Bar No. 178181
 *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:     206-816-6603
Fax:     206-319-5450

Andre M. Mura, State Bar No. 298541
 *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:     510-350-9700
Fax:     510-350-9701

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | **Case No. 3:22-cv-03580-WHO (VKD)** |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND IN SUPPORT OF STRIKING PARAGRAPH 357** |
| All Actions | |

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES TO BE DECIDED ................................................................................1

I.      INTRODUCTION ................................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................................2

III.    ARGUMENT .......................................................................................................................5

        A.      Plaintiffs Adequately Allege Intrusion and Invasion of Privacy Claims ................5

        B.      Plaintiffs Adequately Allege Trespass ..................................................................10

        C.      Plaintiffs Adequately Allege a CDAFA Claim .....................................................15

IV.     STATEMENT OF NON-OPPOSITION TO META'S MOTION TO STRIKE .................18

V.      CONCLUSION ..................................................................................................................20

PLAINTIFFS' RESPONSE TO MOTION TO APPOINT BEASLEY ALLEN AS INTERIM CLASS COUNSEL
Consolidated Case No. 3:22-cv-03580-WHO

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>                                                                                     Page(s)

3

*Brodsky v. Apple, Inc,*
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................. 14

4

5

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ................................................................... 6

6

*Casillas v. Berkshire Hathaway Homestate Ins. Co.,*
   79 Cal. App. 5th 755 (2022) ............................................................................... 14

7

8

*Cline v. Reetz-Laiolo,*
   329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................................... 14

9

10

*Cottle v. Plaid*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................. 15

11

*Cousin v. Sharp*,
   2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) .................................................. 5, 8

12

13

*Cust. Pk. Supp. v. Phillips*,
   2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ....................................................... 15

14

15

*Doe v. GoodRx Holdings, Inc.*,
   3:23-cv-0050 (N.D. Cal.) ................................................................................... 20

16

*Doe v. Medstar*,
   No. 24-C-20-000591 (Aug. 5, 2020 Baltimore Cnty, MD) .................................... 5

17

18

*Doe v. Mercy Health*,
   No. A2002633 (Nov. 23, 2021 Hamilton Cnty., OH) ............................................ 5

19

20

*Doe v. Partners*,
   No. 1984CV01651 (Oct. 18, 2019 Suffolk Cnty, MA) ........................................... 5

21

*Doe v.UV,*
   No. CV-20-933357 (Jun. 28, 2021 Cuyahoga Cnty., OH) ...................................... 5

22

23

*Doe v. Virginia Mason*,
   2020 WL 1983046 (Feb. 12, 2020 King Cnty., WA) .............................................. 5

24

25

*eBay, Inc. v. Bidder's Edge, Inc.*,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) .......................................................... 11, 12

26

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ............................................................................ 15

27

28

iii

*Facebook, Inc. v. Power Ventures, Inc.*,
   2010 WL 3291750 (N.D. Cal. Jul. 20, 2010) ........................................................................ 15

*Fields v. Wise Media, LLC*,
   2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ..................................................................... 14

*Flextronics, Intl., Ltd. v. Parametric Tech. Corp.*,
   2014 WL 2213910 (N.D. Cal. May 28, 2014) ...................................................................... 17

*Fowler v. Southern Bell Tel. & Tel. Co.*,
   343 F.2d 150 (5th Cir. 1965) ................................................................................................. 9

*Hamberger v. Eastman*,
   106 N.H. 107 (1965) .............................................................................................................. 9

*Hernandez v. Hillsides, Inc.*,
   47 Cal.4th 272 (2009) ........................................................................................................ 8, 9

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   2021 WL 1531172 (N.D. Cal. Apr. 19, 2021) ..................................................................... 14

*In re Apple Inc. Device Performance Litig.*,
   347 F. Supp. 3d 434 (N.D. Cal. 2018) ................................................................................. 13

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) .............................................................................................. 5, 6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ................................................................................................... 8

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   934 F.3d 316 (3d Cir. 2019) ................................................................................................... 5

*In re Google RTB Consumer Priv. Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022) ................................................................................... 6

*In re iPhone Application Litigation*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................... 12, 13

*In re Lenovo Adware Litig.*,
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ...................................................................... 14

*In re Pharmatrak*,
   329 F.3d 9 (1st Cir. 2003) ...................................................................................................... 6

*Intel Corp. v. Hamidi*,
   30 Cal.4th 1342 (2003) ............................................................................................. 11, 12, 13

*Jane Doe v. Hey Favor, Inc. et al.*,
   Case No. 23-cv-00059-WHO (N.D. Cal.) .......................................................................... 20

iv

*Ji v. Naver Corp.*,
  3 WL 6466211 (N.D. Cal. Oct. 3, 2023) .................................................................................. 14

*LaCrone v. Ohio Bell Tel. Co.*,
  114 Ohio App. 299 (1961) ........................................................................................................ 9

*McGowan v. Weinstein*,
  505 F. Supp. 3d 1000 (C.D. Cal. 2020) ................................................................................. 16

*Meta Platforms, Inc. v. Ates*,
  2023 WL 4035611 (N.D. Cal. May 1, 2023) ......................................................................... 16

*Meta Platforms, Inc. v. Ates*,
  2023 WL 4995717 (N.D. Cal. Jun. 27, 2023) ....................................................................... 16

*Meta Platforms, Inc. v. Social Data Trading Ltd.*,
  2022 WL 18806267 (N.D. Cal. Nov. 15, 2022) .................................................................... 16

*Meta Platforms, Inc. v. Social Data Trading Ltd.*,
  2022 WL 18806263 (N.D. Cal. Dec. 8, 2022) ....................................................................... 16

*Oracle USA, Inc. v. Rimini St., Inc.*,
  2010 WL 3257933 (D. Nev. Aug. 13, 2010) .......................................................................... 14

*Oyster Software, Inc. v. Forms Processing, Inc.*,
  2001 WL 1736382, at *13 (N.D. Cal. Dec. 6, 2001) ............................................................ 12

*Parziale v. HP, Inc.*,
  445 F. Supp. 3d 435 (N.D. Cal. 2020) ................................................................................... 13

*Pemberton v. Bethleham Steel Corp.*,
  66 Md. App. 133 (1986) ............................................................................................................ 9

*People v. Trieber*,
  163 P.2d 492 (Cal. Ct. App. 1945) ........................................................................................... 8

*Rhodes v. Graham*,
  37 S.W.2d 46 (Ky. App. 1931) ................................................................................................. 9

*Ruzicka Elec. & Sons., Inc. v. IBEW*,
  427 F.3d 511 (8th Cir. 2005) ..................................................................................................... 8

*San Miguel v. HP Inc.*,
  317 F. Supp. 3d 1075 (N.D. Cal. 2018) ................................................................................. 13

*Smith v. Facebook*,
  745 F. App'x 8 (9th Cir. 2018) ................................................................................................. 7

*Southwest Airlines Co. v. Farechase, Inc.*,
  318 F. Supp. 2d 435 (N.D. Tex. 2004) ................................................................................... 14

v

*Thrifty-Tel, Inc. v. Bezenek*,
  46 Cal. App. 4th 1559 (1996) ................................................................. 13, 14

*Ticketmaster LLC v. Prestige Entm't W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................................................... 16

*Twitch Interactive, Inc. v. Does 1 through 100*,
  2019 WL 3718582 (N.D. Cal. Aug. 7, 2019) ................................................. 13

*Yunker v. Pandora Media, Inc.*,
  2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ............................................... 12

*Zaslow v. Kroenert*,
  29 Cal.2d 541 (1946) ................................................................................. 12

Statutes

18 U.S.C. §§ 1343 ....................................................................................... 8

18 U.S.C. §§ 1349 ....................................................................................... 8

Cal. Civ. Code § 56 ..................................................................................... 19

Cal. Pen. Code § 502 ................................................................... 8, 15, 16, 17

Regulations

45 C.F.R. §§ 160.103 ................................................................................... 19

45 C.F.R. §§ 164.502 ................................................................................... 19

Other Authorities

Dobb's Law of Torts § 4 ................................................................................ 8

Restatement (Second) of Torts § 652B ........................................................ 8, 9

**STATEMENT OF ISSUES TO BE DECIDED**

1. Do the factual allegations related to the fifth, sixth, seventh, and ninth claims in plaintiffs' First Amended Consolidated Class Action Complaint suffice to state such claims?[1]

2. Should the Court strike paragraph 357 of the First Amended Consolidated Class Action Complaint pursuant to Rule 12(f)?

## I.   INTRODUCTION

This is an action by Plaintiff Facebook users challenging Meta's interception of their health information from health care entities covered by the Health Insurance Portability and Accountability Act (HIPAA) and the California Confidentiality of Medical Information Act (CMIA) ("Covered Healthcare Entities").

The Court has already found that Plaintiffs sufficiently alleged they did not consent to Meta's collection of health information from healthcare providers regardless of "whether HIPAA's heightened standard for consent applies." ECF No. 159 at 12; *accord* ECF No. 316 at 7-8. The Court also found that Plaintiffs adequately stated claims for violation of the Electronic Communications Privacy Act ("ECPA"), California Invasion of Privacy Act ("CIPA"), breach of contract and duty of good faith and fair dealing, and unjust enrichment. ECF No. 316 at 3-11, 15-19. The Court also dismissed certain claims with leave to amend, five of which were re-pled: common law privacy torts (intrusion/invasion of privacy), trespass to chattels, and violations of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") and Consumers Legal Remedies Act ("CLRA").

In dismissing these claims, the Court gave clear rulings on what was missing from earlier allegations. As explained below, Plaintiffs have fixed all problems identified by the Court. In response, Meta filed a second motion to dismiss which impermissibly attempts to move the goal posts for each of the claims and raises arguments that contradict black letter law. The Court should reject these efforts and deny Meta's motion to dismiss on all claims except the CLRA claim.

Meta also moves to strike to strike paragraph 357 exempting healthcare data from Covered

---

[1] Plaintiffs voluntarily withdraw Count VIII, alleging violation of the CLRA.

Healthcare Entity Hey Favor, Inc. from the scope of this action. Plaintiffs do not oppose Meta's motion to strike. The operative complaint now unambiguously concerns Meta's collection of health information from HIPAA- or CMIA-covered entities, and the parties agree that this action, "unequivocally encompasses not just the Meta Pixel on healthcare providers' websites, but also the Meta SDK on healthcare providers' apps." ECF No. 382 at 17; ECF No. 335 at ¶ 354.[2]

## II.     STATEMENT OF FACTS

### A.     Factual Background

Plaintiffs are Facebook users who challenge Meta's acquisition and interception of health information through its collection tools from Covered Healthcare Entities. Putting profits over users' privacy, Meta collects and monetizes individuals' health information without their consent—including information that identifies their communications regarding their providers, doctors, conditions, treatments, medications, appointments, and access to their medical records, among other sensitive information—in contravention of federal and state law, and its own contractual promises.

Using a host of technologies, Meta collects individually identifiable health data from Covered Healthcare Entities' websites and applications. This fact alone gives rise to liability under all of Plaintiffs' claims. Meta then uses this data to target individuals with advertisements. Meta annually receives billions of dollars of unlawful advertising sales derived from its acquisition of health care information. ECF No. 335 (First Amended Complaint or FAC) ¶¶ 351-52. These technologies include the Meta Pixel, Meta SDK, Meta Conversions API, customer list uploads, social plug-ins, Meta Graph API, server-to-server transmissions, and any other similar collection tools (collectively, the "Meta Collection Tools").[3] *Id.* ¶¶1, 131.

---

[2] On November 22, 2023, Meta moved to sever the claims against it in *GoodRx* and relate them to this action. *Doe v. GoodRx Holdings, Inc.*, 3:23-cv-0050 (N.D. Cal.), ECF No. 175.

[3] The Meta Pixel is a free, publicly available piece of code that third-party web developers can install on their websites to collect and send data to Meta. FAC ¶¶ 49, 50. The Meta SDK is the version of the Meta Pixel code that operates on applications. The Meta Conversions API is a tool that combines data gathered from third-party websites into a single interface. *Id.* ¶ 136. Meta's graph API, is "the primary way to get data into and out of the Facebook platform." *Id.* ¶ 138. Server-to sever transmissions allow developers to share data directly with Meta from their servers. *Id.* ¶ 139.

Meta's collection of health information is no accident. The company even developed a "Health Team" (so-called within Meta) specifically to solicit and partner with health care providers. FAC ¶¶ 3, 191, 193, 194, 195. The Meta Health Team works with these "healthcare partners"— which include Covered Healthcare Entities such as online telehealth prescription companies, hospitals, pharmacies, and health insurance providers—to acquire individuals' confidential health information using Meta's Collection Tools. *Id*. ¶¶ 205, 313, 314. Plaintiffs have identified at least 1,844 specific Covered Healthcare Entities from which Meta is collecting information through the Meta Collection Tools. *Id*. ¶128.

When a person uses a Covered Healthcare Entities' online platform—whether on an app or an internet browser—Meta's Collection Tools instantly transmit that person's data to Meta, without the person's consent. *Id*. ¶¶ 9-12, 57, 62. This includes information such as an individual (i) exchanging communications relating to doctors, treatments, payment information, health insurance information, prescription drugs, prescriptions, side effects, conditions, diagnoses, prognoses, or symptoms of health conditions; (ii) conducting a search for health information, such as health conditions; (iii) making, scheduling, or participating in appointments; (iv) paying a bill; (v) signing-up for, logging in or out of, or taking actions within an online healthcare platform, such as a patient portal; and (vii) other information protected under federal and state privacy laws. *Id*. ¶¶ 6, 84.

Meta ingests health information into its systems and uses it to drive advertising revenue. Meta offers its healthcare partners various ways to target individuals with advertisements. These include "Custom Audiences," which allow web developers to target specific patients, and "Lookalike Audiences," which allow advertisers to reach audiences of people "similar" to their current patients. *Id*. ¶¶ 81, 82, 296, 297. Meta goes so far as to solicit and, in some cases, obtain "customer lists" from its partners, which identify a Facebook user's status as a patient and other protected health information, to advertise to "custom audiences" consisting of these patients. *Id*. ¶¶ 7, 82, 83.

The data collected by Meta through these collection tools is individually identifiable and can be connected to an individual's unique Facebook identifier. The data can always be tied to an individual's unique identity through the individual's IP address, cookies, and other device

1    identifiers. *Id.* ¶ 8. Meta combines health information on specific persons gathered across different

2    devices and different healthcare properties, whether websites or applications. *Id.* ¶ 135.

3         Facebook has not obtained consent for the collection and use of Plaintiffs' health data in its

4    contract with Facebook users (including the Terms of Service, Meta Data Policy, or Cookies Policy)

5    or through any other means. To the contrary, Facebook's terms of service, which explicitly

6    incorporate Meta's Privacy Policy, specifically promises users that this type of collection will not

7    occur, even though Meta knows and indeed intends for it to occur. Meta affirmatively promises its

8    users that it requires its partners, which include Covered Healthcare Entities, to have the right to

9    share the users' data before sharing it with Meta. *Id.* ¶¶ 170-71. Meta also promises users that they

10   "employ dedicated teams around the world, work with external service providers, partners and other

11   relevant entities and develop advanced technical systems to detect potential misuse of our Products

12   . . ." *Id.* ¶ 181. But Meta has no verification system to ensure that Covered Healthcare Entities have

13   obtained consent to collect health information. *Id.* ¶¶ 175-76. Nor does Meta employ a "dedicated

14   team" or "external service providers" to detect whether health care providers are improperly sending

15   Meta individual's health information. *Id.* ¶¶ 182-84.

16        While Meta has the technology to block health information from entering its systems, it

17   chooses not to do so. *Id.* ¶¶ 212-25, 327, 338. Meta staff advised CEO Mark Zuckerberg to stop

18   using health information for advertising, advice he declined to follow. *Id.* at ¶ 291. While Meta

19   claims to have a "filter" which prevents Meta from collecting health data, the filter is not designed

20   to do so effectively.

21        Meta has harmed Plaintiffs and unjustly enriched itself at Plaintiffs' expense. *Id.* ¶¶ 318,

22   536d, 544-46. Plaintiffs have suffered an egregious breach of their privacy rights, a harm in and of

23   itself. *Id.* ¶¶ 85, 469, 485. Plaintiffs have also been harmed because they have used a service,

24   Facebook, which falls far below the standards contracted for. *Id* ¶ 188. Additionally, Meta has taken

25   valuable personal property—health data—from Facebook users, without consent or compensation.

26   *Id.* ¶¶ 256-266, 267-285.

27

28

1  **III.   ARGUMENT**

2      **A.   Plaintiffs Adequately Allege Intrusion and Invasion of Privacy Claims**

3          Meta ignores relevant caselaw and the Court's prior orders to argue that a person's

4  communications with their healthcare providers that occurs through publicly available access points

5  are entirely "unprotected." Under California law, what matters when pleading a reasonable

6  expectation of privacy is not whether the initial connection occurs through a medium that is

7  generally available to the public but whether the person's portion of the communication takes place

8  through their own private means of communication, such that their identity and the content of their

9  communications are not public. The relevant question is not whether any particular URL is publicly

10  viewable. After all, healthcare providers have publicly available telephone numbers, but that does

11  not render the fact that a particular person called with a specific question about a specific doctor,

12  appointment, or condition a "public" fact. Rather, the question is whether the person exchanging the

13  communication had a reasonable expectation that their individual communications would not be

14  intercepted, tracked, or acquired by the defendant.

15          Meta's argument that there can be no expectation of privacy on the internet unless the

16  communications take place behind a username and password would eviscerate fundamental privacy

17  interests and contradict binding authority. The Ninth Circuit has already found that even individuals

18  without a privileged relationship with the intended recipient enjoy reasonable expectations of

19  privacy in their communications on the internet because Facebook did not obtain consent to collect

20  that data. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020). This

21  is all the more true where a confidential relationship is at issue—like that between a covered entity

22  and a patient. *See, e.g., Cousin v. Sharp*, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) (finding

23  actionable privacy torts based on actions to disclose communications content to Meta on "public"

24  URLs).[4] The same is true even outside the healthcare context. *See, e.g., In re Google Inc. Cookie*

25

26  _____

27  [4] *See also, Doe v. Viriginia Mason*, No. 19-2-26674-1 SEA, 2020 WL 1983046 (Feb. 12, 2020 King Cnty., WA); *Doe v. Partners*, No. 1984CV01651 (Oct. 18, 2019 Suffolk Cnty, MA); *Doe v. Medstar*, No. 24-C-20-000591 (Aug. 5, 2020 Baltimore Cnty, MD); *Doe v. UH*, No. CV-20-933357

28  (Jun. 28, 2021 Cuyahoga Cnty., OH); *Doe v. Mercy Health*, No. A2002633 (Nov. 23, 2021 Hamilton Cnty., OH).

*Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (internet browsing information of publicly available websites); *In re Pharmatrak*, 329 F.3d 9, 22 (1st Cir. 2003) (URL query string communicated to their pharmaceutical companies); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (web browsing histories and other device information); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (web browsing history, cookie identifiers, and other information).

Meta now seeks an order that lowers the bar for all online communications, a tactic the Ninth Circuit has already rejected. *See Facebook Internet Tracking*, 956 F.3d at 603 (finding plaintiffs had a reasonable expectation of privacy in their searched URLs). In *Facebook Internet Tracking*, the Ninth Circuit considered the "mixed question of law and fact" regarding the existence of a reasonable expectation of privacy based on the privacy promises at issue and the scope of the information collected. *Id.* Whether the URLs at issue were publicly viewable played no part in the analysis. *Id.* To the contrary, the Ninth Circuit expressly found that consumers have a reasonable expectation of privacy against "Facebook's allegedly surreptitious and unseen data collection" of public URLs. *Id.* Thus, the question is only whether there is a "reasonable expectation of privacy" that the specific URLs in question will not be intercepted.

That decision makes good sense. Meta focuses (at 6-7) on whether certain URL information is publicly available. Discovery will illuminate whether that is true, but even if it were, Meta misunderstands the nature of Plaintiffs' privacy claims. What is private here is the connection between certain URL information and the Plaintiffs; it is this relationship that reveals health information about them. Just as information about what a library patron reads may be private even if the books themselves are generally available to the public, so too health information that connects a plaintiff to a particular URL may also be private.

Here, the Court has already found that Meta did not obtain consent to intercept the URLs at issue. *See* ECF No. 159 at 12-17 (noting "a reasonable user would [not] have understood that Meta may intercept their health information"). Indeed, "Meta's policies do not . . . specifically indicate that Meta may acquire health data obtained from Facebook users' interactions with their medical providers' websites." *Id.* at 15 (emphasis removed). Thus, Meta's "generalized notice is not

6

sufficient to establish consent." *Id.* at 15-16. Having now provided specific examples for each Plaintiff, Plaintiffs have more than satisfied the "basic" amendment the Court requested. ECF No. 316 at 12. The FAC alleges specific information that Meta collected without consent for each Plaintiff, including the names of Plaintiffs' physicians, conditions for which they sought treatment, and long-form URLs that conveyed that information to Meta. FAC ¶¶ 24-38. Plaintiffs reiterate that they cannot know with more precision what information was sent to Meta, as Meta's interceptions were "surreptitious"—Plaintiffs seek this information through discovery. *Id.*

Ignoring *Facebook Internet Tracking*, or the dozens of cases following it, Meta relies almost entirely on *Smith v. Facebook*, 745 F. App'x 8 (9th Cir. 2018), an unreported decision that this Court has already found to be inapposite. *See* ECF No. 159 at 14-15. It certainly is. *First*, *Smith* involved a putative class that included people exchanging communications with any website relating to health, not just Covered Entities. Here, the plaintiffs exchanged communications with Covered Entities about health information, *i.e.*, conditions, treatments, appointments, bill payment, portal activities, and more. *E.g.*, FAC ¶ 353. *Second*, the Facebook contract considered in *Smith* no longer exists and has been replaced and changed in significant ways for purposes of this case. *Id.* ¶¶ 171-74.

Plaintiffs further plead additional facts that support their allegations that Meta's violation was sufficiently egregious because it involves protected information. For example, the Federal Trade Commission ("FTC") and the United States Department of Health and Human Services ("HHS") issued a joint notice that the information at issue in this case is protected, irrespective of whether HIPAA applies or the FTC Act applies. FAC ¶¶ 92, 97, 246 ("When consumers visit a hospital's website or seek telehealth services, they should not have to worry that their most private and sensitive health information may be disclosed to advertisers and unnamed third parties" and defining "health information" as "anything that conveys information—or enables an [inference]— about a consumer's health.").[5]

---

[5] Plaintiffs also allege that HIPAA applies to the specific information Meta intercepted. *See* ¶¶ 226-245; ¶ 243 ("[T]racking technologies on unauthenticated pages . . . where the HIPAA Rules apply include [pages] that address specific symptoms or health conditions . . . or that permit[] individuals

7

Meta ignores other factors that give rise to privacy claims, including that privacy claims may proceed where a plaintiff adequately alleges a wiretap claim, a privacy-related crime, or noncompliance with privacy-protective regulation. *See* Restatement (Second) of Torts § 652B. cmt. b. (1977) ("The invasion may be . . . to oversee or overhear the plaintiff's private affairs, as by . . . tapping his telephone wires" or "by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, [or] examining his private bank account."); *People v. Trieber*, 163 P.2d 492, 494 (Cal. Ct. App. 1945), *vacated on other grounds*, 28 Cal. 2d 657, 171 P.2d 1 (1946) ("Wire tapping, except when legally authorized, is an invasion of the right of privacy."); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 151 (3d Cir. 2015) (interest of federal agencies was relevant to severity of privacy violation); *Ruzicka Elec. & Sons., Inc. v. IBEW*, 427 F.3d 511 (8th Cir. 2005) (intrusion claim stated based on "reasonable expectation" arising from state criminal law against trespass); Dobb's Law of Torts § 4. Here, Plaintiffs have adequately alleged violations of the ECPA, CIPA, 42 U.S.C. § 1320d6, Cal. Pen. Code § 502, and 18 U.S.C. §§ 1343, 1349. FAC ¶¶ 429-34.

Meta also completely ignores the portion of Plaintiffs' intrusion claims relating to the unauthorized placement of tracking devices (the _fbp cookie) on their personal property. Under California law, a claim for intrusion/invasion of privacy may be stated by "*either* a physical *or* sensory penetration into a private place or matter, or the gaining of unwanted access to private information." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 291 (2009) (emphasis in original, citation omitted). Here, Plaintiffs allege two interrelated but separate instances of actionable intrusion and invasion of privacy. In addition to Meta obtaining "unwanted access to Plaintiffs' and Class members' data," Plaintiffs also alleged that Meta's deployment of "the 'fbp' cookie as a third-party cookie disguised as a first-party cookie that [Meta] placed on Plaintiffs' and Class members' computing devices is a highly offensive intrusion upon seclusion *regardless of whether any information was further re-directed from the Plaintiffs or Class members computing devices to Meta.*" FAC ¶ 469 (emphasis added). Plaintiffs then allege why such conduct is highly offensive.

---

to search for doctors or schedule appointments."); *see also Cousin*, 2023 WL 8007350, at *5 (Communications "on . . . 'unauthenticated' or public facing [pages] plausibly involve PHI.").

*Id.* ¶¶ 470-71. Meta's motion entirely ignores these allegations.

The California Supreme Court has explained that the placement of the surveillance tool in a private place is actionable regardless of any subsequent unwanted access to private information. *Hernandez*, 47 Cal.4th at 293. In *Hernandez*, the Court found that the defendant intruded upon reasonable expectations of privacy by placing a surveillance device in an office, even though the defendant "never viewed or recorded plaintiffs," "did not intend or attempt to do so, and [even] took steps to avoid capturing them on camera and videotape." *Id*. California law is consistent with the general and relatively ancient rule regarding intrusion. *See LaCrone v. Ohio Bell Tel. Co*., 114 Ohio App. 299, 301 (1961) ("The gravamen . . . of the action is not publication or wrongful use of information obtained. Such matters may aggravate. But the original act of intrusion upon privacy is the making of the tap or wrongful or unwanted connection . . . [t]he tapping . . . is the original act of intrusion."); *Rhodes v. Graham*, 37 S.W.2d 46, 46 (Ky. App. 1931) (Intrusion applies when defendants "trespassed upon and tapped the telephone wire and other appliances"); *Fowler v. Southern Bell Tel. & Tel. Co*., 343 F.2d 150, 156 (5th Cir. 1965) ("publication is not required"); *Pemberton v. Bethleham Steel Corp*., 66 Md. App. 133, 164-64 (1986) (placement of listening device in motel hallway enough to state a claim); *Hamberger v. Eastman*, 106 N.H. 107, 111 (1965) (placement of listening device in bedroom enough to state a claim); Restatement (Second) of Torts § 652B, cmt. a. ("The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind[.]"). In short, the tort is completed upon the intrusion via placement of a device used for recording.

Here, Plaintiffs have a reasonable expectation that a third-party marketing company like Facebook will not interject itself into the middle of communications with their health care providers while at the health care provider's web property by placing a surveillance tool on the Plaintiffs' communications device. But that is exactly what they have alleged. In fact, "[b]y disguising the _fbp cookie as a first-party cookie for a healthcare provider rather than a third-party cookie associated with Facebook, Meta ensures that the _fbp cookie is placed on the computing device of patients who seek to access the patient portal" because "[m]ost and perhaps all healthcare providers with a patient portal require patients to have enabled first-party cookies to gain access to their patient records

9

1   through the portal." FAC ¶¶ 73-79. Under binding California law, Meta's intrusion into Plaintiffs'

2   communications devices via the _fbp cookie is an actionable privacy violation on its own.

3     In its prior order, the Court reasoned that Plaintiffs had "shown enough to demonstrate a

4   reasonable expectation of privacy in their medical communications . . . and that Meta's conduct was

5   highly offensive." ECF No. 316 at 11. The only deficiency with Plaintiffs' privacy claims were that

6   they alleged Meta intercepted "both unprotected and constitutionally protected information." *Id.* at

7   12. In the FAC, Plaintiffs provided long-form URL examples that indicate Plaintiffs' treatments,

8   providers, and other information that was transmitted, in enough detail so as to plausibly plead that

9   the Meta Pixel intercepted constitutionally protected information. FAC ¶¶ 24-38. As Plaintiffs noted

10  at the hearing, because the information was surreptitiously intercepted, Plaintiffs do not and cannot

11  know with greater specificity what information Meta intercepted until it learns that information

12  through discovery. *See* Motion to Dismiss Hearing Transcript at 34:2-7.

13    Plaintiffs visited their healthcare providers' websites and logged into their patient portals to

14  schedule appointments for treatment, review lab results, and communicate with their doctors. FAC

15  ¶¶ 24-38. When Plaintiffs did so, Meta's pixel code was on those websites, transmitting their

16  communications to Meta. *Id.* Because Plaintiffs have already satisfied their pleading of a reasonable

17  expectation of privacy and a sufficiently offensive violation, all they are required to show now is

18  that the material which was transmitted was subject to a legally protected privacy interest. Because

19  Plaintiffs have adequately redressed the deficiencies in their prior pleading, their privacy claims

20  should proceed.

21    **B. Plaintiffs Adequately Allege Trespass**

22    The Court dismissed Plaintiffs' trespass claims because they did "not allege . . . diminished

23  storage, decreased battery life, or otherwise;" nor "allegations that any functionality inherent in their

24  computing devices has been impacted by Meta's conduct." ECF No. 316 at 21. Plaintiffs fixed the

25  deficiency identified by the Court by expressly alleging:

26     (1) "Meta's placement of the _fbp tracking tool . . . took up a measurable
    amount of available storage on the device that was no longer available for

27      storage of other information" (FAC ¶ 495) and "[i]n the absence of the Meta
    source code and _fbp cookie, the Named Plaintiffs' and absent Class

28      members' communications devices would have more storage available" (*id.*

¶ 496);

(2) "Meta's source code . . . used a measurable amount of resources . . . that slowed the speed" of Plaintiffs' and Class members' communications devices (*id.* ¶ 499); and

(3) Meta "has caused class members to be deprived of significant lost time" (id. ¶ 502).

Meta ignores these allegations to repeat its prior argument (at 7-8) that Plaintiffs' claim is duplicative of their privacy claims. Not so. Plaintiffs' damage allegations are expressly limited to (1) nominal damages; (2) "[l]oss of available storage space on their communications and computing devices"; and (3) "[l]oss of time caused by Meta's slowing of communications exchanged with their healthcare providers." FAC ¶ 504. Plaintiffs adequately allege their privacy harms elsewhere—the trespass claim alleges harm from Meta's occupation of Plaintiffs' devices without consent.

Meta concedes (at 8) that Plaintiffs have "allege[d] that the Pixel 'took up a measurable amount of available storage on their devices" and that Meta's actions resulted in "increases in web-page loading time." Meta then argues these allegations are "de minimis" when a "significant reduction" is what is necessary. But Meta misstates the law. For trespass to a computing device, plaintiffs must only allege that the "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge, Inc*., 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000). Contrary to Meta's argument, the California Supreme Court has expressly clarified that trespass to chattels protects against "minor interferences." *See, e.g.*, *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1351 (2003) ("[T]respass to chattels remains an occasional remedy for minor interferences, *resulting in some damage*, but not sufficiently serious or sufficiently important to amount to the greater tort' of conversion." (italics in original, underline added) (citing Prosser & Keeton, Torts, § 15, p. 90)). *Hamidi* also cited a prior case with approval that explained, "[w]here the conduct complained of *does not amount to a substantial interference* with possession or the right thereto, but consists of intermeddling with or use of or damages to the personal property, the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use." *Zaslow v. Kroenert*, 29 Cal.2d 541, 551 (1946) (emphasis added). The court in *Hamidi*, further explained that the plaintiff

11

had not adequately alleged a computer trespass because the defendant's activities did not deprive it from "using its computers for any measurable length of time." *Hamidi*, 30 Cal.4th at 1353, 1357 (holding that a plaintiff "must . . . demonstrate some measurable loss from the use of its computer system."). But here, Plaintiffs have alleged a "measurable" impact.

The reasoning in *Zaslow* has carried forward in courts' more recent decisions about digital trespass, which focus not on the space the intruder occupies but whether the intrusion was authorized. In *eBay*, the court expressly rejected the same argument that Meta puts forward here— that a "negligible" impact on a computer system is not enough to state a trespass claim:

> [The defendant] argues that its searches represent a negligible load on plaintiff's computer systems, and do not rise to the level of impairment to the condition or value of [the plaintiff's] computer system required to constitute a trespass. However, it is undisputed that [the plaintiff's] server and its capacity are personal property, and that [the defendant's] searches use a portion of this property. Even if, as [the defendant] argues, its searches use only a small amount of [Plaintiff's]'s computer system capacity, [the defendant] has nonetheless deprived [the plaintiff] of the ability to use that portion of its personal property for its own purposes. The law recognizes no such right to use another's personal property. Accordingly, [the defendant's] actions appear to have caused injury to [the plaintiff].

100 F.Supp.2d 1058, 1069-71 (N.D. Cal. 2000). The California Supreme Court considers *eBay* a "leading case" on digital trespass. *Hamidi*, 30 Cal.4th at 1354.

*eBay* is not an outlier. In *Oyster Software, Inc. v. Forms Processing, Inc.*, the court found an actionable trespass even though the plaintiff "presented no evidence that the use of [defendant's] robot interfered with the basic function of [the plaintiff's] computer system" and "concede[d] that [the defendant's] robots placed a 'negligible' load on [the plaintiff's] system." 2001 WL 1736382, at *13 (N.D. Cal. Dec. 6, 2001). The court held there is no requirement that the interference be "more than negligible": a claim can be stated "simply because the defendant's conduct amounted to 'use' of Plaintiff's computer." *Id.*

Meta's reliance on *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) and *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *16 (N.D. Cal. Mar. 26, 2013) is misplaced. Since those decisions, courts in this District have embraced a theory of digital trespass where the plaintiffs must only plead that "the scope of consent is exceeded." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018) (finding plaintiffs stated trespass

12

claim where Apple slowed their devices through iOS updates without adequate notice); *see also Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 450 (N.D. Cal. 2020) (allowing digital trespass claim on theory that plaintiffs had not authorized HP's printer update that rejected non-HP cartridges, with no discussion of degree of impact); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1088 (N.D. Cal. 2018) (same, citing *Hamidi* and *eBay*). These cases better align with the rule espoused by the California Supreme Court in *Hamidi*—a Plaintiff "must . . . *demonstrate some measurable loss from the use of its computer system*," and nothing more. 30 Cal.4th at 1357 (emphasis added).

This rule makes good sense. As Plaintiffs detailed in the FAC, Meta's trespass and other digital trespasses like it amount to death by a thousand cuts. *See* ¶ 503 (explaining how small, but consistent, delays amount to significant losses over time). The original analysis in *iPhone Application Litigation* analogized to traditional rules about de minimis physical trespasses from the Second Restatement, likening a minor digital intrusion to a "touch." 844 F. Supp. 3d at 1069. But in developing a theory of digital trespass, courts recognize there is nothing ephemeral about tech companies interfering with devices in ways that their owners did not authorize and are likely to leave lasting harmful impacts.

Even absent an express "digital trespass" theory, courts have considered unauthorized access that results in harm sufficient to plead a trespass claim. In *Twitch Interactive, Inc. v. Does 1 through 100*, the court found plaintiff stated a claim for trespass where the defendants streamed objectionable and illegal content through unauthorized use of the plaintiff's servers—even in the absence of allegations that defendants actually damaged the servers.[6] 2019 WL 3718582, at *4 (N.D. Cal. Aug. 7, 2019) (Orrick, J.). And in *Thrifty-Tel, Inc. v. Bezenek*, the court found actionable trespass through the placement of 1,396 total phone calls over two days via unauthorized access to phone company's computer systems.[7] 46 Cal. App. 4th 1559, 1564 (1996).

---

[6] Rather, the Court found sufficient damages because Plaintiff alleged it had "expended significant resources" and "lost profits." *Id.*

[7] *See also Oracle USA, Inc. v. Rimini St., Inc*., 2010 WL 3257933, at *5 (D. Nev. Aug. 13, 2010*); In re Lenovo Adware Litig*., 2016 WL 6277245, at *8-9 (N.D. Cal. Oct. 27, 2016); *hiQ Labs, Inc. v. LinkedIn Corp*., 2021 WL 1531172, at *10 (N.D. Cal. Apr. 19, 2021); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1053 (N.D. Cal. 2018) (reiterating *Hamidi* test of "measurable loss"); *Southwest*

1    Meta's cases either support Plaintiffs, are inapposite, or misinterpret binding law. *Ji v. Naver*

2    *Corp*. did not involve a trespass claim, and its holding on standing (cited by Meta) was modified by

3    a subsequent order finding it was sufficient for the plaintiffs to allege "excessive battery drain" even

4    though the plaintiffs had "allege[d] no facts suggesting that their phones' memory, CPU, or

5    bandwidth were harmed." 2023 WL 6466211, at * 5 (N.D. Cal. Oct. 3, 2023). Here, Plaintiffs alleged

6    harm to their computing devices storage and speed. FAC ¶¶ 497-99. *Casillas v. Berkshire Hathaway*

7    *Homestate Ins. Co*., is inapposite because the plaintiffs are not seeking to assert privacy harms under

8    their trespass claim, but trespass harms. *See* 79 Cal. App. 5th 755, 765 (2022). Likewise, *Fields v.*

9    *Wise Media, LLC*, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) is inapposite because the plaintiffs

10   there did not allege any damage to their device, but rather only alleged damage to the Plaintiffs'

11   "legally protected interest . . . against unauthorized charges." And finally, *Brodsky v. Apple, Inc*,

12   even endorses the digital trespass framework that turns on authorization, dismissing the claim only

13   because it found that the plaintiffs had voluntarily downloaded the offending software. 445 F. Supp.

14   3d 110, 123 (N.D. Cal. 2020) (citing *Hamidi*). Plaintiffs' situation is the exact opposite from that in

15   *Brodsky*—not only did Meta fail to obtain consent before depositing its tracking cookies on

16   Plaintiffs' devices, Meta concealed its cookies from Plaintiffs' view. FAC ¶¶ 74, 79, 535f, 537b.

17   But even if the Court is inclined to agree with Meta that a pleading of "significant" harm is

18   required, Plaintiffs have done so. The allegations in the First Amended Complaint clearly state that

19   Meta's intrusions have caused "significant lost time" that results in their load time lagging far behind

20   industry standards. *See* ¶¶ 502, 500. Absent Meta's unauthorized interference, Plaintiffs' devices

21   "would operate more quickly in a measurable way." *Id.* ¶ 501. And indeed, Plaintiffs do measure

22   the value of the time they've lost from Meta's continuous invasion. *Id.* ¶ 503. As a result, Plaintiffs

23   request nominal damages, lost storage space, and lost time—none of which Meta's disputes. *Id.* ¶¶

24   504-06. Had Plaintiffs treated Meta as Meta treated Plaintiffs, the company would undoubtedly

25   claim trespass. *See Facebook, Inc. v. Power Ventures, Inc*., 844 F.3d 1058 (9th Cir. 2016). Plaintiffs

26

27   _____

     *Airlines Co. v. Farechase, Inc*., 318 F. Supp. 2d 435, 442 (N.D. Tex. 2004) (allowing trespass claim
28   for injunctive relief even where no actual damages were alleged).

1   enjoy the same right to protect their personal property from unauthorized access that Meta does.

2   Plaintiffs seek only the Court's permission to proceed.

3          **C.      Plaintiffs Adequately Allege a CDAFA Claim**

4          In its first order, the Court dismissed Plaintiffs' CDAFA claims because Plaintiffs had

5   alleged their CDAFA losses were limited to preclusion from using their devices to communicate

6   with the healthcare provider and diminished value of data, which it held was insufficient per *Cottle*

7   *v. Plaid*, 536 F. Supp. 3d 461 (N.D. Cal. 2021).[8] Plaintiffs have addressed this problem. The FAC

8   clarifies that Plaintiffs' suffered loss under the CDAFA because Meta (1) "occupied storage space

9   on their computing devices without authorization"; (2) "caused the computing devices to work

10  slower than they would in the absence of Meta's actions;" (3) "used the computing resources of

11  Plaintiffs' computing devices;" and (4) "unjustly profited from the data taken." FAC ¶ 536. Meta

12  admits as much (at 13) where it agrees Plaintiffs alleged it "occupied storage space," caused their

13  computers to "work slower," and "used" their computing resources. This is still not enough, Meta

14  claims, because these harms do not qualify as "technological damage, loss, or impairment."

15         Meta's argument is meritless.  A device with less storage that works slower is impaired from

16  the condition it would otherwise be in. Because the CDAFA "does not contain a specific monetary

17  threshold for loss related to violations of the statute," Plaintiffs allegations are enough. *Cottle*, 536

18  F. Supp. 3d at 487 (citing *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *4 (N.D.

19  Cal. Jul. 20, 2010)).

20         Meta has no response to cases from this District. It cites instead Central District of California

21  cases that ignored pertinent statutory text. *See* MTD at 13-14 (citing *Ticketmaster LLC v. Prestige*

22  *Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (expressly disregarding "or otherwise

23

24  ───────────────────

[8] The CDAFA was enacted to provide protection from "tampering, interference, damage, and

25  unauthorized access to lawfully created computer data and computer systems." Cal. Pen. Code §
    502(a). Put another way, it is "intended to prohibit the unauthorized use of any computer system for

26  improper or illegitimate purpose[s]." *Cust. Pk. Supp. v. Phillips*, 2015 WL 8334793, at *3 (C.D.
    Cal. Dec. 7, 2015). Meta argues that this is not a "hacking" case. Plaintiffs disagree. To "hack" is

27  "[t]o surreptitiously break[] into the computer, network, servers, or database of another person or
    organization." HACK, Black's Law Dictionary (11th ed. 2019). That is exactly what Plaintiffs have

28  alleged here.

uses" in § 502(c)(1)") and *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020) (citing *Ticketmaster* for the same). This reading is not widely accepted—including by Meta. Just as courts have routinely found that pleading unauthorized use of data sufficiently alleges a § 502(c)(1) violation, so too has Meta argued the same when it has sued data brokers. *See, e.g.*, *Meta Platforms, Inc. v. Social Data Trading Ltd.*, 2022 WL 18806267, at *3 (N.D. Cal. Nov. 15, 2022) ("Meta plausibly alleged . . . [a] (c)(1) violation: '[W]ithout permission,' SDTL '[k]nowingly access[ed]' Instagram 'data' and 'use[d]' the data to 'obtain money.'"), *report and recommendation adopted* 2022 WL 18806263 (N.D. Cal. Dec. 8, 2022); *Meta Platforms, Inc. v. Ates*, 2023 WL 4035611, at *6 (N.D. Cal. May 1, 2023) ("California Penal Code section 502 prohibits the unauthorized access and use of any data from a computer, computer system, or computer network . . . Ates's access to and use of Meta's computers was without permission . . . Accordingly, the undersigned finds Meta has established its CDAFA claim."), *report and recommendation adopted* 2023 WL 4995717 (N.D. Cal. Jun. 27, 2023).

Next, Meta argues (at 14) that it cannot be liable because Plaintiffs have not alleged that it "altered" any data, computer, computer system, or computer network and that "merely obtaining copies of a plaintiff's data is not enough." As stated above, that is more than is required to plead a CDAFA claim. But again, Meta skips over Plaintiffs' pleaded facts. Meta has done more than "merely obtain copies" of data: Meta also altered Plaintiffs' computers and data by (1) "usurp[ing] the[ir] normal operation" (FAC ¶ 528); (2) "surreptitiously plac[ing] the _fbp cookie" on them (¶ 530); and (3) "caus[ing]" the computers to "redirect Plaintiffs' . . . data to Meta" (¶ 530). In the absence of Meta's conduct, the normal operations would not be usurped, the _fbp cookie would not be placed, and the identifiers and communications content would not be re-directed to Meta. Each of these is an alteration in the normal functioning of Plaintiffs' devices.

Under (c)(8), the Plaintiff must allege that the defendant "knowingly introduced a computer contaminant into any computer, computer system, or computer network." Cal. Pen. Code § 502(c)(8). As Meta italicizes (at 14), code that instructs a computer to "transmit information" "without the intent or permission of the owner of the information" qualifies. A "computer contaminant" is defined as "any set of computer instructions that are designed to modify . . . record,

16

or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information." Cal. Pen. Code § 502(c)(12). As much as Meta would prefer this statute to be limited to viruses or worms, that reading is narrower than even the text of the statute allows. *See id.* (defining "computer contaminant" as "computer instructions that . . . include, but are not limited to, a group of computer instructions commonly called viruses or worms"). As the Court previously noted, "a plaintiff need only allege that the actions of the [alleged] contaminant (modify/damage/destroy/record/transmit) were undertaken by overcoming a technical barrier without the permission of the owner; the introduction to the contaminant into the system need not surmount the same hurdle."  ECF No. 316 at 15 (citing *Flextronics, Intl., Ltd. v. Parametric Tech. Corp.*, 2014 WL 2213910, at *5 (N.D. Cal. May 28, 2014)).

Here, Plaintiffs alleged that the Pixel is designed to "log" or "track website visitor actions," i.e., "record" anytime "someone takes an action" on a property where it is present. FAC ¶¶ 53-62. Plaintiffs further allege that the act of recording and transmitting data via Pixel includes "disguis[ing] the _fbp cookie as a first-party cookie for a healthcare provider rather than a third-party cookie associated with Facebook" so that "Meta ensures that the _fbp cookie is placed on the computing device of patients[.]" *Id.* ¶¶ 74-75. "If a patient takes an action to delete or clear third-party cookies from their device, the _fbp cookie is not impacted—even though it is a Meta cookie—again, because Meta has disguised it as a first-party cookie." *Id.* ¶ 79.[9] Plaintiffs have also adequately alleged that Meta's actions "usurp the normal operation of Plaintiffs' . . . computing devices because they supplant Plaintiffs' . . . choices in how those devices and their resources are used [by] command[ing] the . . . devices to act in ways that are contrary to what is intended by Plaintiffs . . . and to store the _fbp cookie on the patient devices in [a] way that is contrary to that which is intended by Plaintiffs . . . as the owners of the devices and data contained on them." *Id.* ¶ 528.

Meta does not address these allegations. Instead, it argues (at 14-15) that the Pixel cannot be a contaminant because it has some "legitimate uses." But there is no "all or nothing" part of the

---

[9] Prior unrebutted evidence submitted by the Plaintiffs further explained that Meta's _fbp behavior was designed to avoid "a security policy known as [the] same origin policy" where "Web browsers prevent one Web site from accessing the cookies of another Web site." ECF No. 49 at ¶¶ 146-51.

1  definition of a "computer contaminant," and Meta's use of the Pixel in legitimate ways is not

2  relevant to this case. Contrary to Meta's assertions, the Pixel and _fbp cookie were "designed" to

3  work without Plaintiffs' "intent or permission"—a fact that Meta never refutes. There can be no

4  dispute by Meta that it designed the computer code for the Pixel to "record [and] transmit

5  information." Meta has already admitted as much. *See* FAC ¶ 81 (citing ECF No. 76-1, Wooldridge

6  Decl. ¶ 4). "By design, the Pixel is invisible" (¶ 61), works "without any affirmative action taken

7  by the patient" (¶ 11), "occurs without any notice to the patient that it is occurring" (¶ 12), and takes

8  place without a patient's knowledge or consent (¶¶ 100-24). Meta has admitted user consent is not

9  baked into the Pixel's design when it "told the Court that the way to avoid Meta's collection of

10  health information was for a patient to call their healthcare provider." *Id.* ¶ 443.[10]

11       The Court granted Plaintiffs leave to amend their CDAFA claims to plead a "theory of

12  impairment of their computing devices" that was not predicated on an inability to use their devices

13  for their intended purpose, or on the diminished value of Plaintiffs' personal information. ECF No.

14  316 at 13. Plaintiffs have done so. *See* FAC ¶¶ 536. The Court should therefore deny Meta's motion

15  and permit the CDAFA claims to proceed.

16  **IV.**    **STATEMENT OF NON-OPPOSITION TO META'S MOTION TO STRIKE**

17       Plaintiffs do not oppose Meta's request to strike paragraph 357 of the operative complaint,

18  which excludes from the class health information that was obtained by Meta from Hey Favor, Inc.

19  This case is unambiguously about Meta's collection of health information from HIPAA- or CMIA-

20  covered entities through all of Meta's Collection Tools on both web properties *and* applications.

21  FAC ¶ 354. Plaintiffs and Meta agree that the *Healthcare* complaint "unequivocally encompasses

22  not just the Meta Pixel on healthcare providers' websites, but also the Meta SDK on healthcare

23  providers' apps." ECF No. 382 at 17.

24       Plaintiffs included paragraph 357 solely to be consistent with the Court's prior ruling, but

25  agree with Meta that the Court should reconsider. Striking paragraph 357 in order to permit this

---

[10] Plaintiffs point out that even this does not work because "the Meta Pixel is designed so that Meta receives their data even when a patient calls their provider." "Click to call" functionality offered by Meta is similar to the SubscribedButtonClick associated with portal logins.

litigation to encompass the claims against Meta in *Hey Favor* would remove an exception which will create duplication and potential inconsistencies in the parallel litigation. Allowing these separate class claims to proceed in another action also interferes with the potential for a negotiated resolution of *all* healthcare-related litigation against Meta in this consolidated action. The *Healthcare* class is now defined as:

> "All Facebook users whose health information was obtained by Meta from their healthcare provider or covered entity through Meta Collections Tools."

FAC ¶ 353. By statute, CMIA- or HIPAA-covered entities include telehealth prescription companies, hospitals, health insurers, pharmaceutical companies, mental health digital services, among other types of entities. Cal. Civ. Code § 56.05(o), 56.06 (defining "provider of health care"); 45 C.F.R. §§ 160.103, 164.502; *see also* FAC ¶ 355 (defining a covered entity). Hey Favor is unquestionably covered by the CMIA and HIPAA. Meta's collection tools are defined as the Meta Pixel, Meta SDK, Meta Conversions API customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions, and any other similar collection tools (collectively, "Meta Collection Tools"). FAC ¶ 354; *see* ECF No. 382 at 23. The health data collected from *Hey Favor* is unequivocally included in this definition. Because the allegations in *Hey Favor* against Meta properly fall withing the claims and pleadings in this litigation, the caveat in paragraph 357 should stricken.

The definitions in the operative complaint render the scope of the case and the class easily and objectively ascertainable. To determine whether a specific act by Meta is subject to this case, the Court needs to ask two simple questions. *First*, is the purported absent class member a registered Facebook user (and thus subject to and protected by Meta's Terms and Data Use Policy)? To answer this question, the Court need only look to Meta's records. And *second*, is the entity from which the information that Meta collected ultimately from a HIPAA- or CMIA-covered entity? To answer this question, the Court will look to well-defined terms in federal and California law. For almost (and perhaps all) potential entities, the answer will be obvious on the face of at-issue web-properties which are required to include certain disclosures under federal and California law. If the answer to both questions is yes, then it is part of this case. If the answer to either question is no, then it is not

19

1  part of this case.

2      To date, the organization of the myriad cases with claims against Meta for its collection of

3  health data from covered health entities has proceeded under a consistent rubric of severance and

4  consolidation. Under this protocol, claims against other defendants proceed in their separate,

5  respective actions. Only two cases naming Meta as a defendant and involving Meta's collection of

6  health data from covered entities using Meta's collection tools have proceeded on a separate track:

7  *GoodRx* and *Hey Favor*. *See Doe v. GoodRx Holdings, Inc*., 3:23-cv-0050 (N.D. Cal.); *Jane Doe v.*

8  *Hey Favor, Inc. et al*., Case No. 23-cv-00059-WHO (N.D. Cal.). All other such claims against Meta

9  in other cases have been severed and consolidated into the *Healthcare* case.

10     At this stage, then, it is appropriate to fold the claims against Meta involving data collection

11  from the *Hey Favor* and *GoodRx* platforms into this case. This structure provides the simplest and

12  clearest method to resolve the claims against Meta given the overlapping *Hey Favor, GoodRx* and

13  *Healthcare* claims.[11]

14  **V.    CONCLUSION**

15     For the foregoing reasons, the Court should deny Meta's motion to dismiss or allow leave to

16  amend if any claim is dismissed (other than the CLRA claim). Plaintiffs do not oppose striking

17  paragraph 357 of the First Amended Complaint.

18

19  Dated: December 7, 2023              By: */s/ Jason "Jay" Barnes*_____

20                                       **SIMMONS HANLY CONROY LLC**
                                         Jason 'Jay' Barnes (admitted *pro hac vice*)
21                                          *jaybarnes@simmonsfirm.com*
                                         112 Madison Avenue, 7th Floor
22                                       New York, NY 10016
                                         Tel:    212-784-6400
23

24

25

26

27  [11] By way of comparison, another separate case titled *Doe v. Flo Health*, Case No. 3:21-cv-00757-JD (N.D. Cal.) would not be part of this case because Flo Health is not a HIPAA- or CMIA-covered

28  entity. *See id.*, ECF No. 64, Consolidated Class Action Complaint.

Fax:     212-213-5949


By: /s/ Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  ggraber@cohenmilstein.com
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:     202-408-4600
Fax:     202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  koncius@kiesel.law
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:     310-854-4444
Fax:     310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:     206-816-6603
Fax:     206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  amm@classlawgroup.com
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:     510-350-9700
Fax:     510-350-9701

**SIGNATURE ATTESTATION**

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.


Dated: December 7, 2023                        */s/ Andre M. Mura*
                                                Andre M. Mura