GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612 USA
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE META PIXEL HEALTHCARE LITIGATION

This Document Relates To:

All Actions

Case No. 3:22-cv-3580-WHO

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND STRIKE PARAGRAPH 357**

CLASS ACTION

Date: January 17, 2024
Time: 2:00 p.m.
Courtroom 2

**HON. WILLIAM H. ORRICK**

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

ARGUMENT ..... 3

A. Plaintiffs Fail to State a Claim For Intrusion Upon Seclusion (Claim 5) or Constitutional Privacy (Claim 6). ..... 3

1. Under *Smith* and This Court's Rulings, The Receipt of Data About General Browsing on Health-Related Websites Is Insufficient to State a Privacy Claim. ..... 3

2. Plaintiffs' Other Arguments Cannot Rescue Their Claims. ..... 6

B. Plaintiffs Fail to State a Trespass to Chattels Claim (Claim 7). ..... 9

C. Plaintiffs Fail to State a CDAFA Claim (Claim 9). ..... 12

D. Paragraph 357 of the Amended Complaint Should Be Stricken. ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Apple Inc. Device Performance Litig.*,
347 F. Supp. 3d 434 (N.D. Cal. 2018)........11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........14

*Belluomini v. Citigroup, Inc.*,
2013 WL 3855589 (N.D. Cal. July 24, 2013)........7, 9

*Calhoun v. Google*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)........6

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
79 Cal. App. 5th 755 (2022)........10

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001)........14

*Cottle v. Plaid*,
536 F. Supp. 3d 461 (N.D. Cal. 2021)........13

*Cousin v. Sharp*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023)........6

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023)........1, 2, 3, 4, 6, 7, 8, 9, 10, 12, 13

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000)........11

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020)........5

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016)........12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019)........6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)........8

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)........6

*Grafilo v. Wolfsohn*,
33 Cal. App. 5th 1024 (2019)........7

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009)........9

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) .................... 10, 11

*In re iPhone App. Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................... 14

*In re iPhone App. Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012).................... 2, 10, 11

*Jane Doe v. Hey Favor, Inc.*,
Case No. 23-cv-00059-WHO (N.D. Cal. Jan. 5, 2023) .................... 1, 15

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020).................... 13, 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022).................... 1, 4, 5, 9

*Oyster Software, Inc. v. Forms Processing, Inc.*,
2001 WL 1736382 (N.D. Cal. Dec. 6, 2001) .................... 10

*Parziale v. HP, Inc.*,
445 F. Supp. 3d 435 (N.D. Cal. 2020).................... 11

*People v. Trieber*,
163 P.2d 492 (Cal. 1945) .................... 8

*In re Pharmatrak*,
329 F.3d 9 (1st Cir. 2003) .................... 6

*Ruzicka Elec. & Sons, Inc. v. IBEW*,
427 F.3d 511 (8th Cir. 2005) .................... 8

*San Miguel v. HP Inc.*,
317 F. Supp. 3d 1075 (N.D. Cal. 2018).................... 11

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017).................... 3, 4

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .................... 1, 3, 4, 5, 6, 7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).................... 12

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
313 F. Supp. 3d 1056 (N.D. Cal. 2018).................... 11

*Thrifty-Tel, Inc. v. Bezenek*,
46 Cal. App. 4th 1559 (1996) .................... 11

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018).................... 13

*Twitch Interactive, Inc. v. Does 1 Through 100*,
2019 WL 3718582 (N.D. Cal. Aug. 7, 2019) .................... 11

*Zaslow v. Kroenert*,
29 Cal. 2d 541 (1946) ..... 11

**Statutes**

18 U.S.C. § 1030(e)(11)..... 12

Cal. Penal Code § 502(b)(12)..... 14

**Treatises**

Restatement (Second) of Torts § 652B cmt. b (1977)..... 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs' amended complaint and opposition brief confirm this Court was right to dismiss their privacy, trespass, CLRA, and CDAFA claims. Plaintiffs concede their CLRA claim should be dismissed, and expressly abandon it. Opp. 1 n.1, 20. As to each of the remaining claims, plaintiffs fail to cure the deficiencies this Court identified in its prior opinion. *See Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023). Instead of pleading facts to fill the gaps the Court found in their complaint, plaintiffs seek to lower the legal bar for each of their claims. They urge the Court to hold, for example, that the receipt of their general browsing history gives rise to a privacy tort. They ask the Court to find that a trifling harm to their devices can support claims for trespass and for violations of CDAFA. Plaintiffs' positions cannot be squared with case law, including this Court's prior rulings. Plaintiffs have not remedied the problems that the Court found with their complaint, and these claims should now be dismissed with prejudice.[1]

*Privacy torts.* Plaintiffs have failed to remedy the flaw that warranted dismissal of their privacy torts: they still do not "identify . . . what specific, personal or private information they conveyed to their healthcare providers that they reasonably believe Meta received." *Id.* at *8. Instead, the amended complaint alleges only the transmission of URLs for publicly accessible websites that the named plaintiffs visited. Contrary to the characterization in plaintiffs' opposition brief, the amended complaint does *not* allege that Meta received any plaintiff-specific "health information" concerning "conditions, treatments, appointments, bill payment, [or] portal activities." Opp. 7. As this Court previously recognized, allegations concerning "users browsing through websites providing healthcare information to the public at large" cannot support a privacy claim under *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018). *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022). Plaintiffs ask the Court to revisit that conclusion, contending that even "publicly available"

---

[1] Plaintiffs do not oppose Meta's motion to strike paragraph 357 of their amended complaint, which will allow the claims against Meta in *Jane Doe v. Hey Favor, Inc.*, Case No. 23-cv-00059-WHO (N.D. Cal. Jan. 5, 2023), to be severed and consolidated with this case.

URLs they visited constitute protected *private* information. Opp. 6. But that illogical contention cannot be squared with *Smith* or this Court's prior decision.

*Trespass.* Plaintiffs still do not allege that "the presence of [the Meta Pixel] cookie 'impairs' the operation of their devices" in any meaningful way. *Doe*, 2023 WL 5837443, at *14. A trespass claim must rest on *property* harm, not *privacy* harm, and plaintiffs do not allege "a significant reduction in service [of their computing devices] constituting an interference with the intended functioning of the system." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012). Recognizing that they have not cured this deficiency, plaintiffs fight the legal standard, arguing that *In re iPhone* is wrong, that alleging trifling technological effects is sufficient to state a trespass claim, and that they need only allege a "measurable impact" on their devices rather than a "significant reduction" in service. Opp. 11–12 (quotation marks omitted). But they cite no case rejecting *In re iPhone*; to the contrary, some of their own cases apply it. Plaintiffs instead snip out-of-context quotes from factually inapposite cases—none of which approved a trespass theory based on the *de minimis* effects on storage space, computing power, and webpage-loading time plaintiffs assert here. Plaintiffs' terse fallback theory that their allegations of *de minimis* effects constitute a "significant reduction" simply repackages their inadequate claims of harm under the language of the legal standard. That effort is irreconcilable with *In re iPhone* and has been repeatedly rejected by other courts.

*CDAFA.* Plaintiffs' CDAFA claim fails for each of two independent reasons. First, as with the trespass claim, plaintiffs' allegations about *de minimis* effects on their devices do not claim any "damage or loss," which requires an "*impairment* of their computing devices." *Doe*, 2023 WL 5837443, at *9 (emphasis added). Second, plaintiffs fail to state any violation of subsections (c)(1) or (c)(8)—their only remaining theories. As to (c)(1), plaintiffs try to water down the legal standard and argue they need only allege unauthorized *use*, but as other courts have held, the statute requires them to allege alteration, damage, deletion, or destruction of their data or devices. And as to (c)(8), plaintiffs cannot allege the Pixel is a "computer contaminant" because they cannot show it is *designed* to transmit information without permission—that overbroad theory would convert ubiquitous Internet cookies, offered by numerous companies and used across the web, into malware akin to viruses and worms.

Plaintiffs' defense of the amended complaint only demonstrates that it does not allege the facts this Court held are necessary to state privacy, trespass, and CDAFA claims. Those claims should be dismissed with prejudice.

**ARGUMENT**

**A. Plaintiffs Fail to State a Claim For Intrusion Upon Seclusion (Claim 5) or Constitutional Privacy (Claim 6).**

This Court previously dismissed plaintiffs' privacy torts because plaintiffs failed to "identify . . . what specific, personal or private information they conveyed to their healthcare providers that they reasonably believe Meta received." *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *8 (N.D. Cal. Sept. 7, 2023). Instead of filling that void, the amended complaint alleges only that non-private information was transmitted, by identifying URLs for publicly available webpages that plaintiffs allegedly visited. As the Ninth Circuit held in *Smith v. Facebook, Inc.*, it is not enough for plaintiffs to allege that Meta "collect[ed] and us[ed] their browsing data from various healthcare-related websites." 745 F. App'x 8, 8 (9th Cir. 2018). Plaintiffs allege no more than that, and their claims should be dismissed. Mot. 3–7. None of their scattershot arguments cures this fundamental defect.

**1. Under *Smith* and This Court's Rulings, The Receipt of Data About General Browsing on Health-Related Websites Is Insufficient to State a Privacy Claim.**

Plaintiffs assert that it is sufficient for them to plead a "connection between certain URL information and [themselves]," Opp. 6, but this argument is foreclosed by *Smith* and this Court's prior decisions. Plaintiffs have no reasonable expectation of privacy in that information because, as Facebook users, they consented to Meta's receipt of their general browsing data—including "browsing data from various healthcare-related websites." *Smith*, 745 F. App'x at 8; *see Doe*, 2023 WL 5837443, at *8.[2] This Court therefore required plaintiffs to "identify . . . what *specific, personal or private*

---

[2] The district court's opinion in *Smith* describes in greater detail the URLs that were at issue there, and makes clear there is no substantive difference between the information at issue in *Smith* and the information alleged in the amended complaint. *Compare Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017) ("The URLs at issue in this case point to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information." (footnotes omitted)), *with* Am. Compl. ¶¶ 24–38 (listing URLs for

*information* they conveyed to their healthcare providers that they reasonably believe Meta received." *Doe*, 2023 WL 5837443, at *8 (emphasis added). The list of publicly available URLs in the amended complaint does not identify any such information. Plaintiffs' responses fail to demonstrate otherwise.

*First*, plaintiffs err in asserting that "the Court has already found that Meta did not obtain consent to intercept the URLs at issue." Opp. 6. The Court never considered "the URLs at issue" in the amended complaint. Instead, the Court distinguished *Smith* at the preliminary injunction stage on the ground that Meta did not obtain consent to receive "patient health information." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022). But, again, that is exactly what plaintiffs were supposed to "identify" in their amended complaint—the sensitive patient health information *about them* that Meta allegedly received. *Doe*, 2023 WL 5837443, at *8. Because plaintiffs failed to do so, the potential distinction from *Smith* has disappeared. Plaintiffs cannot now sidestep *Smith* by claiming that *all* of their browsing activity on health-related websites is somehow private; *Smith* is crystal clear that "data show[ing] only that Plaintiffs searched and viewed publicly available health information" is not enough. 745 F. App'x at 9.

*Second*, plaintiffs alternatively try to distinguish *Smith*, but those efforts fail. Plaintiffs argue that "*Smith* involved a putative class that included people exchanging communications with any website relating to health, not just Covered Entities." Opp. 7.[3] But that rewrites *Smith*, where the plaintiffs also argued their data was protected under HIPAA. *See* 745 F. App'x at 9. The Ninth Circuit rejected that argument—not because the websites involved were not covered entities, but instead because "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA]," and "the

---

publicly accessible webpages about various medical conditions and doctors); *see* Mot. 5–6 (summarizing plaintiffs' allegations). As in *Smith*, the amended complaint merely identifies webpages with "general health information that is accessible to the public at large." *Smith*, 262 F. Supp. 3d at 955.

[3] As part of this argument, plaintiffs assert that they "exchanged communications with Covered Entities about health information, *i.e.*, conditions, treatments, appointments, bill payment, portal activities, and more." Opp. 7. That is misleading: the only "communications" at issue are the publicly accessible URLs plaintiffs visited, not any actual messages about their conditions, treatments, or the like. *See* Mot. 5–6. Tellingly, the only allegation plaintiffs cite in support of this assertion is their *class definition*, which obviously does not "identify" any "specific, personal or private information" pertaining to any of the named plaintiffs. *Doe*, 2023 WL 5837443, at *8; *see* Opp. 7 (citing Am. Compl. ¶ 353).

connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA . . . apply." *Id.* So too here: plaintiffs allege that their browsing activity here happens to be on websites belonging to their own healthcare providers, but anyone with an Internet connection—patient or not—could visit those websites and have the very same browsing activity sent to Meta.

Plaintiffs next argue that "the Facebook contract considered in *Smith* no longer exists and has been replaced and changed in significant ways for purposes of this case." Opp. 7 (citing Am. Compl. ¶¶ 171–74). But the "change[]" in Meta's policies that plaintiffs cite is the addition of language stating that Meta "requires each of [its] partners to have lawful rights to collect, use and share your data before providing any data to us." Am. Compl. ¶ 171. That language does not help plaintiffs, because plaintiffs do not allege that any data Meta allegedly received exceeded third-party websites' "lawful rights" to share: there is nothing unlawful about sharing browsing activity on publicly accessible websites. This Court held at the preliminary injunction stage that a reasonable user could understand this language to mean that Meta requires HIPAA-compliant authorizations before receiving "health information from a [user's] medical provider," but again, plaintiffs' entire problem is that they have not alleged Meta received any such information about them. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 794.

*Third*, plaintiffs contend that, notwithstanding *Smith*, allegations concerning publicly available URLs are sufficient to state a privacy claim under *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020). Plaintiffs overread that decision. In *Facebook Internet Tracking*, the plaintiffs alleged that a prior version of Facebook's policies stated Facebook would not collect browsing information while users were logged out, but did so anyway; the Ninth Circuit held that, in light of those alleged disclosures, the plaintiffs had a reasonable expectation of privacy in *all* of their browsing data while they were logged out. *See* 956 F.3d at 603 (the "question [wa]s not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself"). No similar allegation is at issue here: Meta's policies clearly disclose that Meta may receive browsing data (as *Smith* confirms), so plaintiffs cannot claim a reasonable expectation of privacy in *all* of that data. *Facebook Internet Tracking* casts no doubt on this Court's conclusion that to survive dismissal,

plaintiffs must plead particular "personal or private information" that was supposedly transmitted to Meta. *Doe*, 2023 WL 5837443, at *8.[4]

*Finally*, tacitly acknowledging that they have not pled the facts this Court held were essential, plaintiffs argue that they need discovery in order to identify "with greater specificity what information Meta intercepted." Opp. 10. Plaintiffs do not need discovery to learn the general contours of the information that *they* shared with their healthcare providers. And this Court's prior order already accounted for the difficulties plaintiffs describe by instructing that plaintiffs were "required to amend to describe the *types or categories* of sensitive health information that they provided through their devices to their healthcare providers" (in terms that "can be general enough to protect plaintiffs' specific privacy interests"). *Doe*, 2023 WL 5837443, at *8 (emphasis added). Plaintiffs did not do that: the amended complaint does not describe *any* sensitive health information plaintiffs sent through their devices to their providers. Instead, it alleges "only that Plaintiffs searched and viewed publicly available health information." *Smith*, 745 F. App'x at 9. Their privacy-tort claims should be dismissed.

**2. Plaintiffs' Other Arguments Cannot Rescue Their Claims.**

Plaintiffs present a grab-bag of other arguments for allowing their privacy-tort claims to proceed in the absence of the allegations that the Court expressly required. All of these arguments fail.

*First*, plaintiffs argue that it does not matter whether their "communications with their healthcare providers . . . *occur*[] *through* publicly available access points"—*i.e.*, public websites. Opp. 5 (emphasis added). That misses the point. The shortcoming of plaintiffs' privacy-tort claims is not that any communications took place through publicly accessible websites; the problem is that plaintiffs

[4] The same is true of the other cases plaintiffs cite at pages 5–6 of their brief: some of those cases did not even address any privacy tort, and in any event, they involved either more detailed information than the general browsing data alleged here, or representations that the defendant would not collect the data it collected, or both—unlike here, where Meta's policies clearly state it collects browsing data. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (finding Article III standing where defendant tracked browsing despite "promises not to do so"); *In re Pharmatrak*, 329 F.3d 9, 15 (1st Cir. 2003) (addressing wiretap claim where defendant stated it "did not collect personally identifiable information" but did so anyway); *Cousin v. Sharp*, 2023 WL 8007350, at *1 (S.D. Cal. Nov. 17, 2023) (alleging defendant sent "sensitive health information"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (defendant represented it would not sell user data, but did so anyway); *Calhoun v. Google*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (defendant collected information "without any notice to users," and defendant's representations suggested it "would not receive [plaintiffs'] data").

never identify any *sensitive health information* Meta allegedly received, whether through a public website or otherwise. They do not allege, for example, that Meta received any messages between them and their doctors, whether through a secure patient portal or through the public chat feature on a hospital's website. Instead, they allege only that Meta learned they "searched and viewed publicly available health information." *Smith*, 745 F. App'x at 9. That is not enough.

*Second*, plaintiffs contend that "additional facts [] support their allegations that Meta's violation was sufficiently egregious because it involves protected information." Opp. 7. They point to a "notice" issued by the Federal Trade Commission and the United States Department of Health and Human Services, asserting that this notice deemed "the information at issue in this case" to be "protected, irrespective of whether HIPAA applies or the FTC Act applies." Opp. 7. But California law sets its own standard for how sensitive information must be to make out a privacy tort, and plaintiffs must—but fail to—clear *that* "high bar." *Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013); *see also Grafilo v. Wolfsohn*, 33 Cal. App. 5th 1024, 1034 (2019) ("Medical patients' privacy interest . . . derives from their expectation of privacy in their physician's files, which 'may include descriptions of symptoms, family history, diagnoses, test results, and other intimate details concerning treatment.'" (citation omitted)). That is why plaintiffs must "identify . . . what *specific, personal or private information* they conveyed to their healthcare providers that they reasonably believe Meta received." *Doe*, 2023 WL 5837443, at *8 (emphasis added). Plaintiffs cannot move the goalposts by pointing to a "joint notice" by federal agencies addressing other statutes. Opp. 7. And in any event, the focus of the notice plaintiffs cite was "impermissibly disclosing consumers' *sensitive personal health information* to third parties." Am. Compl. ¶ 92 (emphasis added); *see id.* ¶ 97 (same); *id.* ¶ 246 ("private and sensitive health information"). The entire problem here is that plaintiffs do not identify any such information.[5]

---

[5] To the extent plaintiffs argue it is enough that their browsing activity could allow Meta to make an "inference" about their personal health information, Opp. 7, *Smith* squarely rejects that argument. *See* 745 F. App'x at 9 ("Put simply, the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA or section 1798.91 [of the California Civil Code] apply.").

Plaintiffs similarly argue that "privacy claims may proceed where a plaintiff adequately alleges a wiretap claim, a privacy-related crime, or noncompliance with privacy-protective regulation," and that they have "adequately alleged violations" of wiretapping and other statutes. Opp. 8. That is nonresponsive to this Court's instruction that plaintiffs identify "what specific, personal or private information" Meta allegedly received about them. *Doe*, 2023 WL 5837443, at *8. Moreover, all of the sources plaintiffs cite are inapposite; none holds that plaintiffs may bring a privacy tort merely because they have alleged some *other* claim. Some simply assume a reasonable expectation of privacy exists in the information at issue—for example, the Restatement discusses situations where a defendant has invaded "the plaintiff's private affairs." Restatement (Second) of Torts § 652B cmt. b (1977); *see also Ruzicka Elec. & Sons, Inc. v. IBEW*, 427 F.3d 511, 524–25 (8th Cir. 2005) (finding, under Missouri law, that plaintiff's "home is a secret and private subject matter" and holding jury question existed on whether defendant trespassed to spy on plaintiff at his home). The entire question here is whether plaintiffs have adequately pleaded such an expectation in the information they allege Meta received. Similarly, plaintiffs argue that in *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, the Third Circuit deemed the "interest of federal agencies [] relevant to [the] severity of [the] privacy violation," Opp. 8 (citing 806 F.3d 125, 151 (3d Cir. 2015))—but that portion of the opinion was analyzing the "offensiveness" element of a privacy claim, not the reasonable-expectation-of-privacy element at issue here.

Plaintiffs' other sources are even further afield. The California Supreme Court's nearly eighty-year-old decision in *People v. Trieber* did not address a privacy tort at all and merely observed that "[w]ire tapping, except when legally authorized, is an invasion of the right of privacy." 163 P.2d 492, 494 (Cal. 1945). And the section of Dobbs' Law of Torts that plaintiffs cite is simply a general discussion of "[t]orts and crimes"—it broadly notes that courts will consider criminality in deciding whether conduct amounts to a tort, but it does not discuss privacy torts specifically and does not suggest a plaintiff has stated a privacy claim every time he asserts a criminal offense. Dobbs' Law of Torts § 4. In short, none of these authorities excuses plaintiffs from pleading a reasonable expectation of privacy in the information at issue simply because they assert Meta violated other laws.

*Third*, plaintiffs argue that "the unauthorized placement of tracking devices (the _fbp cookie) on [plaintiffs'] personal property" by itself is actionable, "regardless of whether any information was further re-directed from the Plaintiffs['] or Class members['] computing devices to Meta." Opp. 8 (quotation marks and emphasis omitted). This, too, is unresponsive to this Court's instruction that "plaintiffs are required to amend to describe the types or categories of sensitive health information that they provided through their devices to their healthcare providers." *Doe*, 2023 WL 5837443, at *8. It is also overbroad. This Court's basis for rejecting Meta's consent argument at the preliminary injunction stage was its conclusion that, although Meta's policies "notify Facebook users that Meta collects and uses their personal data," they did not "specifically indicate that Meta may acquire *health data* obtained from Facebook users' interactions with their *medical providers' websites*." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793. But if Meta never received *any* information—much less any *sensitive health information*—then plaintiffs have no answer to Meta's consent argument.[6] And they certainly cannot clear the "high bar" under California law for stating a privacy tort. *Belluomini*, 2013 WL 3855589, at *6.

Plaintiffs' attempt (at 8–9) to derive a contrary rule from *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009), also fails. That case involved the unconsented placement of a hidden camera in an office, *id.* at 294—an act much more intrusive than using commonplace Internet cookies. And the California Supreme Court held that this intrusion was *not* sufficiently serious to impose liability (in part because the device did not record anything about the plaintiffs). *Id.* at 291, 293–95.

The fundamental problem this Court identified with plaintiffs' privacy-tort claim thus persists. Their amended complaint fails to fill the gap that the Court rightly recognized was fatal to those claims and instead alleges only that Meta received information about plaintiffs' browsing on publicly accessible websites. The privacy-tort claims should therefore be dismissed.

### B. Plaintiffs Fail to State a Trespass to Chattels Claim (Claim 7).

To state a trespass claim for interference with their computing devices, plaintiffs must allege "a significant reduction in service constituting an interference with the intended functioning of the

---

[6] Notably, Meta's Cookies Policy explicitly describes the "_fbp cookie"—*i.e.*, the cookie that enables the Meta Pixel—that plaintiffs complain of here. *See* Dkt. 232-7 at 3, 5.

system." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (applying *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003)). This Court dismissed plaintiffs' claim because it was "based on their assertions that Meta places the _fbp cookie on their devices via their health-care providers' websites," and plaintiffs did "not allege that the presence of that cookie 'impairs' the operation of their devices in terms of diminished storage, decreased battery life, or otherwise." *Doe*, 2023 WL 5837443, at *14 (relying on *Hamidi* and a prior opinion in *In re iPhone*).

The amended complaint still fails to allege any meaningful impairment of plaintiffs' devices. Instead, plaintiffs have added allegations about the *de minimis* effects of having a cookie on their device—a "measurable amount of available storage," a "measurable amount of [computing] resources," and 1.5 seconds of time to load a webpage. Am. Compl. ¶¶ 495, 499, 500. None of those effects amounts to a "significant reduction" in performance. *In re iPhone*, 844 F. Supp. 2d at 1069. That requires dismissal. Mot. 7–9 & nn.4–5. Plaintiffs offer two arguments in response. Both are meritless.

Plaintiffs principally fight the legal premise, contending that no "significant reduction" in performance is necessary; a trespass claim can proceed, plaintiffs say, so long as a plaintiff merely alleges *some* "'measurable' impact" on his device and that the defendant exceeded "the scope of consent" to access the plaintiff's device. Opp. 11–12 (quotation marks omitted). Recognizing that this proposed standard cannot be squared with *In re iPhone* and the other cases discussed in Meta's motion, plaintiffs assert that "more recent decisions" have undermined those authorities. Opp. 12. But their argument mischaracterizes the caselaw and rests on scattered statements clipped from context. None of plaintiffs' authorities rejects *In re iPhone*; to the contrary, some expressly apply its "significant reduction" test, and none approves a trespass claim based on the *de minimis* effects plaintiffs allege here—which would improperly allow plaintiffs to "convert privacy harms into property harms." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 765 (2022) (trespass claims will "not lie to protect interests in privacy"). Plaintiffs' best case, *Oyster Software, Inc. v. Forms Processing, Inc.*, 2001 WL 1736382 (N.D. Cal. Dec. 6, 2001), approved a trespass claim based on "negligible" harm, *see id.* at *12–13, but the California Supreme Court *expressly rejected* that decision, *see Hamidi*, 30 Cal. 4th at 1357 n.5. Plaintiffs' other cases involved harms much more extensive than

what is alleged here, such as disabled printers and processing speed reductions of 50%; none approved a trespass claim based on the *de minimis* effects of Internet cookies, which are ubiquitous.[7]

The cases cited in Meta's motion, by contrast, dismiss trespass claims based on the same theories plaintiffs allege here; many of those cases were decided in the past few years and apply *In re iPhone*'s standard. *See* Mot. 7–9 & nn.4–5 (collecting cases); *see also, e.g.*, *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1080 (N.D. Cal. 2018). Those cases foreclose plaintiffs' position that *de minimis* injury and an allegation that "the scope of consent [wa]s exceeded," Opp. 12 (quotation marks omitted), suffice to transform a meritless privacy claim into common-law trespass.[8]

In the alternative, plaintiffs halfheartedly argue that they *have* pleaded a "significant reduction," pointing to their allegations of "'significant lost time' that results in their load time lagging far behind industry standards." Opp. 14 (citing Am. Compl. ¶¶ 500, 502). But the allegations they cite state only

---

[7] *See Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 450 (N.D. Cal. 2020) (firmware update "disabled [plaintiff's] printers"); *Twitch Interactive, Inc. v. Does 1 Through 100*, 2019 WL 3718582, at *4 (N.D. Cal. Aug. 7, 2019) (defendants "streamed pornography, copyrighted movies and television shows, racist and misogynistic videos, and a video of the March 2019 Christchurch mosque attack" on plaintiff's platform, resulting in "lost profits" and expenditure of "resources to combat the attack"); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018) (software updates "substantially slow[ed]" iPhones' processing speed "by as much as 50%," constituting "significant reduction in performance"); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1088 (N.D. Cal. 2018) (firmware update "disabled [plaintiffs'] printers and rendered their non-HP ink cartridges unusable"); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–71 (N.D. Cal. 2000) (automated web-crawler computer program searched eBay's database "some 80,000 to 100,000" times per day, and allowing web crawlers could overload systems "potentially to the point of denying effective access to eBay's customers"); *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1564 (1996) (more than 1,300 automated phone calls "overburdened the system, denying some subscribers access to phone lines").

Plaintiffs also cite *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003), and *Zaslow v. Kroenert*, 29 Cal. 2d 541 (1946). But *Hamidi* actually *hurts* plaintiffs: it *rejected* a trespass claim because the evidence demonstrated "no actual or threatened damage to Intel's computer hardware or software and no interference with its ordinary and intended operation." *Id.* at 1353. The *In re iPhone* decision adopting the "significant reduction" standard was expressly construing *Hamidi*. *See* 844 F. Supp. 2d at 1069. And *Zaslow*, which was decided in 1946, does not concern computer-based trespass at all; the defendant in that case removed the plaintiff's personal property from real property where the plaintiff was a cotenant, and the court held that this "intermeddling" entitled the plaintiff to "actual damages in an amount sufficient to compensate him for any impairment of the property or loss of its use." *See* 29 Cal. 2d at 551–52.

[8] Contrary to plaintiffs' contention, *In re Apple* does not hold that exceeding the scope of consent satisfies the injury element of trespass. In the passage plaintiffs quote, the court found the *first* element of trespass (unauthorized interference) satisfied because "the scope of consent is exceeded," but it then went on to separately analyze the damage element. 347 F. Supp. 3d at 455.

that "[r]esearchers estimate that Facebook's Pixel code adds between *1.3 to 1.5 seconds* to the load time for a webpage." Am. Compl. ¶ 500 (emphasis added). That negligible loading time is nowhere near the level of harm required for a trespass claim. *See* Mot. 8–9 (collecting cases for proposition that "mere momentary" deprivations, and even delays of 2–5 minutes, are insufficient). Plaintiffs also note that the complaint purports to "measure the value of the time they've lost from Meta's continuous invasion" and that in the aggregate, the time lost by all putative class members is meaningful. Opp. 14 (citing Am. Compl. ¶ 503). But plaintiffs' back-of-the-envelope aggregation of this 1.5-second loading-time increase across all putative class members only underscores the trivial effect, if any, on the actual plaintiffs. Plaintiffs themselves concede with understatement that "the amount of such deprivation may be small for each individual communication." Am. Compl. ¶ 503. And plaintiffs neither address the problems Meta identified with their calculations nor confront the more basic problem with their aggregation theory: that plaintiffs themselves must state *individual* claims to survive dismissal—particularly when no class has been certified. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016); *see* Mot. 9 n.5.[9]

**C. Plaintiffs Fail to State a CDAFA Claim (Claim 9).**

As with the trespass claim, this Court dismissed plaintiffs' claim under CDAFA—an anti-hacking statute—for failure to plead "damage or loss," which requires plaintiffs to plead "impairment of their computing devices." *Doe*, 2023 WL 5837443, at *9. Plaintiffs have not cured that problem in their amended complaint, and their response to Meta's motion again only spotlights the trivial character of their claimed injury. *Supra* 9–12; Mot. 13–14. Nor do plaintiffs refute Meta's further showing that, even if they had pleaded damage or loss, they still have not pleaded the elements of a CDAFA violation under subsections (c)(1) and (c)(8) on the merits. Mot. 14–15.

---

[9] Plaintiffs' speculation that Meta would "claim trespass" if "Plaintiffs treated Meta as Meta treated Plaintiffs" rests on a misreading of the decision they invoke. Opp. 14 (citing *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016)). The case plaintiffs cite did not address a trespass claim. Instead, Meta (then called Facebook) sued another social networking company and alleged that company continued to access Facebook's computers after receiving a cease-and-desist letter. *Power Ventures*, 844 F.3d at 1062. Facebook brought a claim under the federal Computer Fraud and Abuse Act, which expressly authorizes recovery for "the cost of responding to an offense." *Id.* at 1066 (quoting 18 U.S.C. § 1030(e)(11)). The court found that "Facebook suffered a loss" under this provision because it was "undisputed that Facebook employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to [the defendant's] actions." *Id.*

***Damage or loss.*** As with trespass, plaintiffs repeat their allegations about storage space, time, and computing resources. Opp. 15. None of these theories plausibly alleges any "impairment of [plaintiffs'] computing devices." *Doe*, 2023 WL 5837443, at *9; *see supra* 9–12; Mot. 7–9, 13–14. Plaintiffs also repeat their allegation that Meta "unjustly profited from the data taken," Opp. 15 (quoting Am. Compl. ¶ 536), but they never answer Meta's argument that this allegation does not help them plead statutory *damage or loss*. *See* Mot. 13–14. Plaintiffs' pleading burden is to show harm to their devices' functioning; merely relabeling their lost-value-of-data theory that this Court already rejected as involving "unjust[] profits[]," Opp. 15, does nothing to fill that gap. Plaintiffs quote *Cottle v. Plaid*—which this Court cited in dismissing their claim—for the proposition that CDAFA "does not contain a specific monetary threshold for loss related to violations of the statute." Opp. 15 (quoting 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021)). But plaintiffs do not allege *any* monetary loss. This Court can and should dismiss on this ground alone.

***Merits.*** If this Court reaches the merits, plaintiffs' CDAFA claim fails because their amended complaint fails to plead essential elements under both subsections (c)(1) and (c)(8). Plaintiffs' response does not refute those dispositive defects.

*Subsection (c)(1).* Plaintiffs fail to plead a violation of subsection (c)(1) because they have not pleaded that Meta altered, damaged, deleted, or destroyed any of their data or computing devices; merely obtaining copies of data is not enough to state a claim. *See* Mot. 14 (citing cases). Plaintiffs respond that they need only allege Meta *used* their data. Opp. 15–16. But courts have "expressly declined" to adopt that misguided, limitless reading of "the phrase 'or otherwise uses' in section 502(c)(1) as prohibiting anything other than use that is similar to alteration, damage, deletion, or destruction." *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020) (some quotation marks omitted); *see also Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 & n.5 (C.D. Cal. 2018). Plaintiffs' critique of those cases as untethered to the statutory text, *see* Opp. 15–16, is unfounded. The cases explicitly analyzed the text and applied the well-established "ejusdem generis" interpretive canon—the common-sense principle that, "when a list of two or more specific terms is followed by a more general term, the otherwise wide meaning of the general term must be restricted to the same class of the specific terms that precede it." *Ticketmaster*, 315 F. Supp. 3d at 1175

n.5 (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001)). Finally, plaintiffs assert that Meta "altered [their] computers and data" by placing the Pixel cookie on them and causing their data to be sent to Meta, Opp. 16, but plaintiffs cite no authority for this novel theory of "alteration"; to the contrary, this is no more than the obtaining and copying of data that other courts have rejected. *See, e.g.*, *McGowan*, 505 F. Supp. 3d at 1019–20 (no violation where defendant "gained unauthorized access to [plaintiff's] laptop to obtain a copy of her unpublished manuscript").

*Subsection (c)(8)*. Nor do plaintiffs plead any violation of subsection (c)(8), because the Pixel is not a "computer contaminant"—defined as a "set of computer instructions *that are designed to modify, damage, destroy, record, or transmit information* within a computer, computer system, or computer network *without the intent or permission of the owner of the information*." Cal. Penal Code § 502(b)(12) (emphases added). This section's text takes "aim[] at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system." *In re iPhone App. Litig.*, 2011 WL 4403963, at *12–13 (N.D. Cal. Sept. 20, 2011) (dismissing claim based on "access to consumers' data" through "surreptitious tracking codes"); *see* Mot. 14–15.

Plaintiffs misstate the definition of a "computer contaminant" when they say it is "code that instructs a computer to 'transmit information' 'without the intent or permission of the owner of the information.'" Opp. 16. That reformulation omits the crucial statutory requirement that the contaminant be *designed* to transmit information without permission. That requirement is fatal to plaintiffs' claim because, even assuming the Pixel transmitted information without consent here (*but see supra* 3–6), plaintiffs plead no facts plausibly showing that it was *designed* to do so. Plaintiffs argue that "the Pixel is designed to 'log' or 'track website visitor actions,' i.e., 'record' anytime 'someone takes an action' on a property where it is present." Opp. 17 (citing Am. Compl. ¶¶ 53–62).[10] But that only alleges the Pixel is designed to track browsing activity and record information; it does not show that the Pixel is designed to do so without permission. Plaintiffs' burden under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is to plead facts demonstrating that it is plausible (not merely possible) that

[10] Plaintiffs also point out that the Pixel functions as a first-party cookie rather than a third-party cookie, Opp. 17, but that merely reflects the fact that third-party developers—rather than Meta—introduce the Pixel from code on their own websites.

pixel technology—which is ubiquitous across the Internet and offered by numerous companies for a multitude of indisputably legitimate purposes—is actually malware that is designed for illegitimate uses akin to viruses or worms. Their amended complaint does not come close.

**D. Paragraph 357 of the Amended Complaint Should Be Stricken.**

Plaintiffs "do not oppose Meta's request to strike paragraph 357," Opp. 18, which purports to "exclude[] from the Class . . . health information that was obtained by Meta from Hey Favor, Inc.," Am. Compl. ¶ 357. As Meta explained in its motion to strike (filed in this case) and in its motion to sever (filed in *Hey Favor*), the claims against Meta in *Hey Favor* otherwise fall squarely within the scope of the amended complaint and should be consolidated with this case. *See* Mot. 17–18; Dkt. 107, *Jane Doe v. Hey Favor, Inc.*, Case No. 23-cv-00059-WHO (N.D. Cal. Jan. 5, 2023). Plaintiffs agree that consolidation is proper and explain that they "included paragraph 357 solely to be consistent with the Court's prior ruling," which they "agree with Meta that the Court should reconsider." Opp. 18. As plaintiffs further explain, there is no principled basis for distinguishing the allegations against Meta in *Hey Favor* from those in this case. *Id.* at 19. And keeping those allegations separate from this consolidated case would "create duplication and potential inconsistencies in the parallel litigation." *Id.*; *see id.* at 18–20. Striking paragraph 357 would avoid those unnecessary problems. The Court should grant Meta's unopposed motion to strike.

**CONCLUSION**

Meta's unopposed motion to dismiss plaintiffs' CLRA claim and unopposed motion to strike paragraph 357 from the amended complaint should be granted. For the reasons above and in Meta's motion, the Court should also dismiss plaintiffs' privacy, trespass, and CDAFA claims with prejudice.

Dated: December 21, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: *\/s/ Lauren R. Goldman*
Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: December 21, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman