March 18, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

> **Re:** *In re Meta Pixel Healthcare Litigation*, **Case No. 22-cv-03580-WHO (VKD)**

Dear Judge DeMarchi,

Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

## A.     STATEMENT OF THE DISPUTE REQUIRING RESOLUTION

Plaintiffs' Statement:  The dispute that requires resolution is: Should the Court order Meta to produce the documents responsive to Plaintiffs' Requests for Production Nos. 9, 10, 11 58-61, 99, 100, and 101?

Meta's Statement:  Whether Meta may use a sampling approach to respond to plaintiffs' listed RFPs with data plaintiffs seek about putative class members.

## B.     PLAINTIFFS' POSITION

Plaintiffs seek fundamental information necessary to identify the class. *See* RFP Nos. 9, 10, 11, 58-61, 99, 100, and 101 (the "Class Member Data Requests").  Plaintiffs have a right to this information as a matter of law. Meta, however, refuses to produce this information; instead, it insists on producing an incomplete set of the data, i.e., what Meta refers to as a "sample." Meta's transparent attempt to manufacture class certification disputes by providing incomplete information regarding class members should be denied.

## I.     Meta Is Required as a Matter of Law to Produce Data Necessary to Identify the Class

The Class Member Data Requests ask Meta to produce documents necessary to identify the class. Specifically, these requests seek the following:

(1) *Whose data was stolen*: the Facebook users whose information/communications Meta obtained from a healthcare provider or covered entity [RFP Nos. 9, 10, 99];

(2) *What was stolen*:  The specific communications and data Meta intercepted from each user, such as the name of the doctor or medical treatment [RFP Nos. 9, 11, 100];

(3) *When did Meta steal it*: The date(s) and time(s) each communication or data was obtained by Meta [RFP Nos. 9, 11, 100];

(4) *Where did Meta steal it from*: The covered entity and webpage, website, application, and/or patient portal from which Meta obtained each

communication and data [RFP Nos. 9, 11, 100];

(5) *How did Meta steal it*: Which Meta Collection Tool[1] obtained each communication and piece of data [RFP No. 9, 100]; and

(6) *What did Meta do with the data it stole*: How Meta used each communication and piece of data that it intercepted and where Meta stored each communication and piece of data, including which data was *not* blocked by Meta's filter [RFP No. 101]; and the sales and revenue that Meta received for each communication and piece of data that was used for any marketing purpose [RFP No. 101].

*See* Exhibits 1-4 (Plaintiffs' First and Third Sets of RFPs and Meta's Responses and Objections).

The Class Member Data is necessary to identify the class. Plaintiffs have a right to this information as a matter of law. To deny discovery that "is necessary to determine the existence of a class or set of subclasses…would be an abuse of discretion." *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *see also In re Intuit Data Litig.*, 2017 WL 3616592 at * 2 (N.D. Cal. Aug. 23, 2017) (same); *Shaw v. Experian Info. Solutions, Inc.,* 306 F.R.D. 293, 300 (S.D. Cal. 2015).

Plaintiffs also need this information to rebut Meta's arguments at class certification – a fact Meta does not deny. The following are examples of Meta's almost certain class certification arguments and why the full set of Class Member Data is necessary to rebut those defenses:

**First**, absent full production of Class Member Data, Meta will argue that "Plaintiffs offer no viable proposal for identifying members of the proposed class." *In re Google RTB Consumer Privacy Litigation*, 4:21-cv-02155-YGR, at 11:4-5 (N.D. Cal. Sept. 29, 2023). [2]

**Second**, Meta has already argued in this case that some of the information intercepted from healthcare providers was not sensitive and thus not legally protected. ECF No. 232 at 13:18-7. Without information sufficient to identify *what* data Meta intercepted from each class member -- i.e., the specific communications and data Meta intercepted, such as the name of the doctor or medical treatment – Plaintiffs may not be able to properly define the class and rebut this defense from Meta. As Judge Orrick explained, the "boundaries of what transferred information" is actionable should be "determined on *a full evidentiary record*." *In Re Meta Pixel Healthcare Litig.*, 2023 WL 5837443, at *4 (N.D. Cal. Sept. 7, 2023) (emphasis added); s*ee also id.* at * 7.

---

[1] The Meta Collection Tools are defined in ¶ 1 of Plaintiffs' First Amended Consolidated Class Action Complaint.

[2] Cooley LLP, counsel in this action, represents Google in *In re Google RTB Consumer Privacy Litigation.* Meta's other counsel in this action, Gibson Dunn, has publicly advised its clients to press ascertainability arguments at class certification even in circuits that have rejected such arguments, because they believe the Supreme Court will likely take up the issue soon. Gibson Dunn, *Emerging Issues and Trends in Class Actions: Three Splits and Four Issues on the Horizon for 2024*, https://www.gibsondunn.com/emerging-issues-and-trends-in-class-actions-three-splits-and-four-issues-on-horizon-for-2024/#_ftnref1.

**Third**, Meta has also argued that plaintiffs were only injured if its filter failed to block intercepted data and Meta misused their information. ECF No. 232 at 14:22-15:6. Plaintiffs will not be able to rebut this defense absent documents sufficient to identify how Meta used each communication and each piece of data that it intercepted, including which data was not blocked by Meta's filter and what happened to data after it went through the Filter (such as who was placed into a health-related remarketing list and whose user profile information was marked as having an interest in specific conditions, healthcare providers, or treatments).[3]

**Fourth**, Plaintiffs request documents sufficient to identify the sales and revenue that Meta received for each intercepted communication and piece of data that was used for any marketing purpose. Plaintiffs will use this data for their unjust enrichment damages model. If Meta withholds this information for some class members, Meta will argue that Plaintiffs' damages model awards damages to uninjured class members. *In re Google RTB Consumer Privacy Litigation*, 4:21-cv-02155-YGR, at 22:12-24 (N.D. Cal. Sept. 29, 2023).

In sum, the responsive documents at issue are necessary for Plaintiffs to identify class members and rebut Meta's opposition to class certification.

## II.     Meta Cannot Withhold the Critical Data in The Case Based on Burden, Let Alone Its Unevidenced Assertion of Burden

Meta refuses to produce the responsive Class Member Data, and instead demands (based on supposed burden) that Plaintiffs accept an incomplete set of the data, which Meta calls a "sample." Meta claims below that Plaintiffs previously agreed to sampling. That is not true. Plaintiffs never agreed to sampling.

In any event, the Court should not permit Meta to produce an incomplete set of data. First, a sample cannot be used to identify the class and thus is inadequate. *Mervyn v. Atlas Van Lines, Inc.*, 2015 WL 12826474, at *4 (N.D. Ill. Oct. 23, 2015) (rejecting sampling where a "a robust production is necessary to allow Plaintiff an opportunity to accurately define the class in a way that might satisfy the requirements of Rule 23."); *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). A sample here is also fundamentally inappropriate because Meta will exploit gaps in the data to challenge class certification. *See* Plaintiffs' Argument, Section I.

Second, Meta has never substantiated its burden through evidence and instead relies on attorney argument and speculation. This is "insufficient to substantiate a claim of undue burden." *Lantiq Deutschland GMBH v. Ralink Technology Corp.*, 2011 WL 13394713*2 (N.D. Cal. Sept. 15, 2011). Furthermore, Meta does not provide helpful information to the Court. Meta never identifies the size of the responsive Class Member Data. And, in 2024, large data-storage units are not expensive. There are units that store 100 terabytes and cost less than $2,500.[4] Thus, for

---

[3] For the filter, Plaintiffs also requested this information in RFP No. 84 ("Documents sufficient to identify each time that the Filter prevented Meta from receiving health information from health care providers or covered entities, as relating to CCAC ¶ 119.")

[4] https://www.amazon.com/Oyen-Digital-100TB-Fortis-External/dp/B0BT2875VD?th=1

example, it would cost Meta $10,000 total to hold 400 terabytes of exported data at the rack rate price.

Third, even if Meta had demonstrated a substantial burden to produce the data, production would still be proportionate due to the size of the case and because the requested data is critical to Plaintiffs identifying the class. *See In re eBay Seller Antitrust Litig., 2009 WL 2524502* (N.D. Cal. Aug. 17, 2009) & 2009 WL 3613511 (N.D. Cal. Oct. 28, 2009) (ordering eBay to produce data notwithstanding eBay's claim that production would require 6 months and cost as much as $300,000)*; Gonzales v. Google, Inc., 234 F.R.D. 674, 683* (N.D. Cal. 2006) (ordering production despite the need for Google to create "new code to format and extract query and URL data from many computer banks"); *Humphrey v. LeBlanc*, 2021 WL 3560842 (M.D. La. Aug. 11, 2021).

Meta's cases in support of sampling are inapposite because in all those cases (1) the plaintiffs sought class member contact information to reach out to class members and/or (2) the plaintiffs were employees bringing wage and hour claims. *See* Meta's Argument at § III. Plaintiffs here seek the requested information for an entirely different purpose that is connected to class certification in data privacy class actions.

In sum, Meta seeks to win this case through providing incomplete discovery. That is improper. Meta cannot be permitted to withhold discovery to manufacture class certification disputes. The Court should order Meta to produce the Class Member Data so that this case can be decided on its merits.

### C.    META'S POSITION

Plaintiffs initially agreed to a sampling approach for the data they seek—and in cases like this one with large volumes of data that make it difficult or impossible to produce everything, courts have routinely found sampling approaches both appropriate and necessary.  The Court should reject plaintiffs' efforts to backtrack and to demand an unduly burdensome production, and the parties should meet-and-confer on an appropriate sampling method.[5]

### I.    Background

Plaintiffs and Meta previously agreed that a sampling approach was appropriate for the information plaintiffs seek about putative class members.  At a February 29 meet-and-confer, however, plaintiffs backtracked, took the position that this is "just a red line," and said it would be a waste of time for Meta to propose *any* sampling approach because plaintiffs were "never going to agree" unless Meta waived various class certification defenses.  The next day, plaintiffs reiterated in an email that they would "not agree to sample the responsive data for the Class Member Data RFPs" and that "the parties are at impasse."

---

[5] This dispute is solely about sampling.  The scope of plaintiffs' RFPs is a separate issue subject to ongoing negotiations.

## II.      Plaintiffs' Requests Are Unduly Burdensome

A court "is required to limit discovery" whenever "the burden or expense of the proposed discovery outweighs the likely benefit." *Neustar, Inc. v. F5 Networks, Inc.*, 2013 WL 5711979, at *1 (N.D. Cal. Oct. 17, 2013); *see* Fed. R. Civ. P. 26(b)(2). "Prior to certification of a class action, discovery is generally limited and in the discretion of the court." *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006).

Plaintiffs' demand for *all* event data concerning *all* putative class members is unduly burdensome in the extreme. Focusing on just one of the principal tables that Meta understands is likely to contain relevant data transmitted from the Business Tools at issue (*see* Dkt. 350-3 at 7 (identifying this table)), Meta estimates that bringing the available data online so that it could be exhaustively queried would require a complex and highly burdensome process to transfer more than 15 *petabytes* of data and convert it into an accessible format—*i.e.*, transferring and converting more than 15,000,000,000,000,000 bytes. To put this into context, as of 2022 the entire Library of Congress contained 21 petabytes of digital content.[6] Then, Meta would need to run queries over this full universe of data to identify *all* data responsive to plaintiffs' discovery requests. This would require dedicated infrastructure, computing power, and customized queries and pipelines. Given the volume of data, it could not be restored or queried all at once, but rather would have to be processed in stages. At that point, the problems only worsen. Once relevant and responsive data was identified, it would then need to be exported out of Meta's systems for production. Assuming Meta could transfer data to external drives at a speed of 100 gigabytes per hour (and not including the time to switch to each successive drive), it would take 416 days of data transferring 24 hours a day to transfer one petabyte of data onto the external drives. This data would then have to be transferred to plaintiffs, who would need to download it, which could again take weeks or months. Furthermore, its uncompressed size would be many times its size in Meta's systems. At this point, it is unclear how plaintiffs plan to host this volume of information (it would require a data center with distributed processing and storage to allow them to operate), let alone meaningfully review it.[7]

## III.     Courts Have Regularly Found Sampling Approaches Appropriate and Necessary

"[F]or large potential classes, upon an appropriate showing, proportionality concerns may require sampling of putative plaintiff contact information rather than wholesale disclosure." *Heredia v. Sunrise Senior Living LLC*, 2019 WL 7865176, at *5 (C.D. Cal. Oct. 31, 2019) (collecting cases); *see also, e.g.*, *Quintana v. Claire's Boutiques, Inc.*, 2014 WL 234219, at *2 (N.D. Cal. Jan. 21, 2014) (in "the specific context of class action discovery, sampling advances the goal of proportionality"). Courts thus routinely order sampling approaches when plaintiffs seek information pertaining to putative class members—including this Court. *See Ramirez v. HV*

---

[6] *See* Library of Congress, *Frequently Asked Questions*, available at https://tinyurl.com/3p77v97h (last visited Mar. 15, 2024).

[7] Plaintiffs complain that this burden is not "substantiated" "through evidence," but this Court's standing order does not permit declarations accompanying discovery dispute letters. If this Court would like a declaration, Meta will provide one.

*Global Mgmt. Corp.*, 2023 WL 3510400, at \*2 (N.D. Cal. May 17, 2023) (ordering production of work schedules "on a sampled basis that does not impose an undue burden on defendant") (DeMarchi, J.).[8]  And at least one court has expressly rejected ultimatums from plaintiffs who are "unwilling to accept [a defendant's] 'sampling' offer, unless [the defendant] would waive the argument on certification that a sampling is insufficient to demonstrate commonality and numerosity." *Romo*, 2013 WL 11310656, at \*4–5 (concluding "Plaintiffs' proposal for discovery concerning 100% of the putative class is unreasonable at this time").[9]  There may be room for debate over particular sampling methods or sample sizes—for example, "larger putative class sizes tend to result in lower percentages for sampling purposes." *Heredia*, 2019 WL 7865176, at \*5. And courts may "leave[] it to the parties to work out the particulars of how the sample is selected." *Quintana*, 2014 WL 234219, at \*2; *see also Feske*, 2012 WL 1123587, at \*2 (same).  But plaintiffs' out-of-hand rejection of *any* sampling approach is plainly unreasonable, disproportionate, and inconsistent with common practice in large putative class actions—and plaintiffs' argument that "the size of the case" cuts *against* sampling gets it exactly backwards (notably, of the three cases they cite to support this proposition, two do not address sampling and one (*Gonzales*) requires it).

The cases plaintiffs cite are not to the contrary.  Plaintiffs' leading citation—a sex-discrimination case from nearly half a century ago—says nothing at all about sampling and *affirmed* a denial of class certification over plaintiffs' argument that they should have received more discovery.  *See Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1312–13 (9th Cir. 1977). The remaining cases in plaintiffs' string cite are similarly inapposite; they do not even address, much less reject, a sampling approach.  The single case plaintiffs identify that rejected a sampling approach—an out-of-circuit district court decision from Illinois—did so because the court worried that the sample contracts the defendant had proffered were "atypical of the greater universe of contracts, and were chosen by [the defendant] as the sample precisely because they lack commonality." *Mervyn v. Atlas Van Lines, Inc.*, 2015 WL 12826474, at \*4 (N.D. Ill. Oct. 23, 2015).  But plaintiffs here do not and could not accuse Meta of cherry-picking an inadequate

---

[8] *See also, e.g.*, *Heredia*, 2019 WL 7865176, at \*5 (collecting cases); *Sansone v. Charter Commc'ns, Inc.*, 2019 WL 460728, at \*7 (S.D. Cal. Feb. 6, 2019); *Brum v. MarketSource, Inc.*, 2018 WL 3861558, at \*4 (E.D. Cal. Aug. 14, 2018); *Bess v. Ocwen Loan Serv., LLC*, 2018 WL 3625335, at \*2 (W.D. Wash. May 10, 2018); *Harris v. Best Buy Stores, L.P.*, 2017 WL 3948397, at \*4 (N.D. Cal. Sept. 8, 2017); *Talavera v. Sun Maid Growers of Cal.*, 2017 WL 495635, at \*4 (E.D. Cal. Feb. 6, 2017); *Quintana*, 2014 WL 234219, at \*2; *Romo v. GMRI, Inc.*, 2013 WL 11310656, at \*5 (C.D. Cal. Jan. 25, 2013); *Feske v. MHC Thousand Trails Ltd. P'ship*, 2012 WL 1123587, at \*2 (N.D. Cal. Apr. 3, 2012).  Courts have also adopted sampling approaches outside the class-action context. *E.g.*, *FTC v. Directv, Inc.*, 2016 WL 3351945, at \*1 (N.D. Cal. June 9, 2016) (concluding "the FTC's sampling proposal more closely comports with Rule 26's demand for proportionality" than "a full-scale production . . . totaling more than 200,000 files").

[9] To be clear, Meta does not waive, and expressly preserves, all of its class certification defenses, and whether and how plaintiffs intend to make out their claims on behalf of a putative class is a separate issue.  Rather, Meta is merely arguing that at this stage of the litigation—before any class has been certified—plaintiffs' demand is unduly burdensome.

sample, because they have categorically rejected *any* sampling approach before even seeing a proposal.[10]

Meta is willing to meet-and-confer with plaintiffs to discuss an appropriate sampling method. This Court should reject plaintiffs' categorical position that *no* sampling method is appropriate.

### D.    NEED FOR A HEARING

The parties believe a hearing would be helpful for resolving this dispute.

### E.    CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets forth the following dates for substantial completion of document production and fact discovery:

*Parties substantially complete document production* - April 19, 2024

*Fact discovery Cut-off* – October 18, 2024

### F.    STATEMENT RE COMPLIANCE WITH STANDING ORDER

Plaintiffs and Meta confirm that they have complied with the Court's discovery dispute resolution procedures. Geoff Graber and Jay Barnes, lead counsel for Plaintiffs, and Elizabeth McCloskey and Darcy Harris, lead counsel for Meta, met and conferred regarding this dispute via videoconference on February 29, 2024.

### G.    ATTACHMENTS

• Exhibit 1: Plaintiffs' First Set of Requests for Production

• Exhibit 2: Plaintiffs' Second Set of Requests for Production

• Exhibit 3: Plaintiffs' Third Set of Requests for Production

• Exhibit 4: Meta's Responses and Objections to Plaintiffs' RFPs, Set One

• Exhibit 5: Meta's Responses and Objections to Plaintiffs' RFPs, Sets Two – Six

---

[10] In a footnote, the *Mervyn* court also rejected the defendant's invitation to develop a "sampling protocol." 2015 WL 12826474, at *4 n.4. But the court had determined that the defendant had been "foot dragging," suspected the defendant of "cherry-picking," predicted that developing a sampling protocol "would simply slow the discovery process down and create more opportunities for [the defendant] to complain," and concluded a full production would not be unduly burdensome. *Id.* at *3–5 & nn.2, 4. Those facts are worlds away from this case, and *Mervyn* does not create any per se rule against sampling.

Dated: March 18, 2024                    By:      */s/ Jason 'Jay' Barnes*
                                                  Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:     212-784-6400
Fax:     212-213-5949


                                         By:      */s/ Geoffrey Graber*
                                                  Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:     202-408-4600
Fax:     202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:     310-854-4444
Fax:     310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:     206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700

8

Fax:     510-350-9701

*Attorneys for Plaintiffs and Putative Class*


Dated: March 18, 2024                    By:     */s/ Lauren Goldman*
                                                 Lauren Goldman

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


By:     */s/ Michael G. Rhodes*
        Michael G. Rhodes

**COOLEY LLP**
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

9

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Eric Kafka, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: March 18, 2024                    By:     /s/  Eric Kafka