**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

March 21, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

  **Re:**   *In re Meta Pixel Healthcare Litigation*, **Case No. 22-cv-03580-WHO (VKD)**

Dear Judge DeMarchi,

  Pursuant to the Court's Standing Order, Meta Platforms, Inc. ("Meta") submits this discovery dispute letter. Plaintiffs have refused to meaningfully cooperate in this letter's preparation, as described below (*see infra* ¶ E), which is why Meta is filing this dispute letter on its own.

  **A.**   **STATEMENT OF THE DISPUTE REQUIRING RESOLUTION**

  Plaintiffs assert that Meta must produce all data from "all data sources and tables" that contain responsive information, even if that data is duplicative, and no matter the burden of producing it. Meta disputes this. Rule 26's proportionality principle protects Meta from needing to produce duplicative, irrelevant, or unduly burdensome data. Meta accordingly seeks the Court's guidance regarding the scope of data that Meta must produce, and requests that the Court issue a protective order that clarifies Meta's production obligations.

  **B.**   **META'S POSITION**

  Meta respectfully asks that the Court issue a protective order clarifying that Meta is not obligated to produce (or preserve) data from sources that contain only duplicative data—or sources with duplicative data for which the only incremental, appended data is irrelevant. If the Court believes it would benefit from additional briefing and evidence to decide this issue, Meta welcomes that opportunity.

  **I.**   **Background**

  From the outset, Meta has attempted to convey to plaintiffs the extraordinary complexity and volume of Meta's internal systems that store data related to the Pixel and other business tools. During the six-week period beginning in July 2022, for example, Meta received ▮▮▮▮▮▮ events via the Pixel in the United States alone. *See* Dkt. 326-5 at 2. Meta ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ Meta's "Hive" data warehouse, which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 143-3 ¶¶ 33–39 (emphasis added).

  Because Hive is enormous, Meta has focused its efforts on identifying and preparing to produce from the principal Hive tables ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████████████████

████████████ Meta is working to produce responsive data from these principal tables by the substantial completion deadline.

These principal tables are ██████████████████████████████████████

████████████████ There are potentially hundreds or thousands of other examples. █████████████████████████████████████████████████████████

Hive is not structured to support centralized searches across all tables at once. That means one must analyze the contents of each individual table, one by one, to determine which contain Pixel data and which contain data sent from Pixel IDs associated with specific developers. This is an onerous process. *See* Dkt. 143-3 ¶¶ 33–39. As Meta has explained to plaintiffs, therefore, it would be unduly burdensome for Meta to identify and produce data from *all* Hive tables containing *any* Pixel data or appended data associated with the entities at issue.

███████████████████████████████████████████ Dkt. 350-6 at 4. For example, a system called Scuba—a realtime analytics tool and database for debugging and monitoring—██████████████████████████████████████████████████████

For these reasons, the most proportionate—and frankly the only possible—solution is for the parties to negotiate an appropriate scope of production from the principal tables containing Pixel data. This production will itself be a significant undertaking, given that plaintiffs have identified nearly 3,000 individual pixel IDs (each corresponding to a specific developer) that they claim are at issue. Indeed, it will very likely not be feasible for Meta to restore each day of data from its ████████████████████, so that Meta can query and produce data from it, which is why Meta has proposed a sampling approach.

Plaintiffs disagree. Last summer, plaintiffs took the position that "there is no such thing as duplicative data when it comes to the use of named plaintiff data" and that Meta was obligated to produce even "identical" data, so long as it existed in "multiple systems for multiple purposes." August 26, 2023 M&C and August 30, 2023 letter at 3 (respectively). Plaintiffs threatened to file a discovery dispute letter then, but ultimately did not do so.

Now, in recent correspondence, plaintiffs have asserted that:

- Meta must produce "all relevant Hive data for the Named Plaintiffs" (March 1, 2024 letter at 1);

- Meta must produce "catch-all" named plaintiff data from all systems and tools besides Hive (*id.* at 2)[1];

- Meta must "produce data from *all data sources and tables*" that contain "responsive"

---

[1] Meta is producing named plaintiff data from two other Meta tools/systems called DYI/DYD and Switchboard, in addition to Hive data.

putative class member data (February 22, 2024 letter at 2) (emphasis added); and

- Plaintiffs "will not agree to sample the responsive data," no matter how burdensome it might be for Meta to produce (February 29, 2024 and March 1, 2024 correspondence).

Meta therefore raises this issue with the Court for guidance, and to seek a protective order that Meta need not produce (or preserve) the same data from multiple data sources and tables.

## II.  Meta should not be required to produce duplicative data.

District courts are "vested with broad discretion to permit or deny discovery." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  But courts "must limit" discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i); *see also id.* 26(c)(1).

These principles apply fully to structured data.  When data systems are "enormously complex," as here, a party cannot "take every conceivable step or disproportionate steps" to produce or preserve "each instance of relevant electronically stored information." *The Sedona Principles,* 19 Sedona Conf. J. 1, 51 (2018).  Instead, under Rule 26's proportionality principle, "duplicative instances of identical ESI need not" even be preserved, much less produced.  *Id.* at 39.

Courts routinely decline to order the production of duplicative data.  *See, e.g.*, *Winfield v. City of New York*, 2018 WL 2293070, at *1 (S.D.N.Y. May 18, 2018) (applying Rule 26's proportionality principle and rejecting plaintiff's request to receive data "largely duplicative" of a separate database); *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 564 n.4 (S.D. Cal. 2019) (compelling discovery from certain databases but refusing to grant discovery into others in part because "some of the data that would be gathered through these databases may be duplicative of what is already being ordered produced in the other databases"); *Knature Co. v. Duc Heung Grp., Inc.*, 2021 WL 2546748, at *3 (C.D. Cal. Jan. 21, 2021) (similar); *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, 2018 WL 2328471, at *17 (S.D. Cal. May 23, 2018) (similar); *Kilbourne v. Coca-Cola Co.*, 2015 WL 10943827, at *6 (S.D. Cal. Apr. 24, 2015) (similar).

The same is true here.  Indeed, at an April 20, 2023 hearing before this Court, plaintiffs recognized that Meta does not need to preserve "anything and everything forever."  Tr. at 57:17–21.  Rather, Meta need only preserve—and ultimately produce—"relevant, non-duplicative information."  *Id.*

There is no basis to require Meta to produce the *same* event data, for the same entity, for the same named plaintiff, from two—or ten or 100—different tables or sources.  Nor do plaintiffs need structured data productions covering every permutation of the same event, such as when the same data is presented with an additional appended field that is irrelevant or disproportionate to extract for this litigation.  While Meta remains willing to discuss individual tables with plaintiffs, plaintiffs' categorical demand for *everything* flouts Rule 26.

## III.  Plaintiffs' arguments for Meta to produce duplicative data are meritless.

None of plaintiffs' justifications displace Rule 26's proportionality principle or show that plaintiffs actually require duplicate data to meet their burdens in this case.

When plaintiffs raised this topic last summer, Plaintiffs primarily argued that each "use" of Pixel data is relevant to their Wiretap Act damages claim, because the Act prohibits the

knowing, "intentional[] use[]" of an intercepted communication.   18 U.S.C.  § 2511(1)(d).
Therefore, plaintiffs claimed, "the fact of its existence in Meta's multiple systems" is enough to
merit duplicative discovery.  Aug. 30, 2023 Letter at 3.

But that justification makes little sense here.  The mere fact that a single event is logged to
multiple tables does not give rise to separate "uses" under Section 2511(1)(d).[2]  And even if it did,
plaintiffs do not need duplicative productions to show how Pixel data is used.  Plaintiffs' expert
has spent days examining Meta's server-side source code, which reflects the exact tables and
sources to which Pixel data is sent and how it is used.  Plaintiffs can make their arguments without
every piece of duplicative data.

### C.      NEED FOR A HEARING

Meta believes the parties would benefit from a hearing before Your Honor on this issue.

### D.      CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets forth the following deadlines:

*Parties substantially complete document production* – April 19, 2024

*Fact discovery Cut-off* – October 18, 2024

### E.      STATEMENT RE COMPLIANCE WITH STANDING ORDER

The parties have been discussing the issues addressed in this letter brief for more than six
months.  For example, on August 30, 2023, plaintiffs sent Meta a letter identifying certain
"disputes at impasse," including plaintiffs' claim that Meta was required to produce even
"identical" named plaintiff data so long as it existed in "multiple systems for multiple purposes."
Plaintiffs requested that the parties exchange joint letter briefs on the issue but then never sent their
portion.

After confirming that the parties remained at impasse during a lead counsel meet-and-
confer on March 14, 2024, Meta sent plaintiffs Meta's portion of this joint discovery dispute letter
on March 14, 2024 and requested that plaintiffs supply their portion by March 19, 2024, pursuant
to this Court's Standing Order.  Plaintiffs agreed but did not do so.  Instead, plaintiffs sent Meta a
letter on March 19, 2024, the day Meta expected to receive plaintiffs' portion of the brief, claiming
the parties were not at impasse, misrepresenting the parties' discussions of these issues, and
requesting an additional meet-and-confer.  Meta disagreed but arranged and participated in another
lead counsel meet-and-confer via Zoom on March 20, 2024.  Lauren Goldman represented Meta
and Jay Barnes represented plaintiffs.  The parties remained at impasse.  Plaintiffs, however,
continued to refuse to provide their portion of the joint letter brief, instead stating that they wanted
to pose additional questions to Meta before agreeing the parties were at impasse, even though that
would violate this Court's Standing Order and further delay this issue's resolution, which is

---

[2] Plaintiffs' complaint does not expressly allege a violation of Section 2511(1)(d).  Moreover, the
Wiretap Act's civil statutory damages provision sets damages at "the greater of $100 *a day* for
each *day* of violation or $10,000" (18 U.S.C. § 2520(c)(2)(B)), not based on each individual use.

particularly pressing given the upcoming substantial completion deadline. Because plaintiffs were "refus[ing] to participate meaningfully . . . in the preparation of the joint discovery dispute letter," Standing Order at 3, Meta therefore filed this letter on its own.

To date, the parties' discussions on the issue addressed herein have not been productive and the unduly burdensome scope of discovery for which plaintiffs continue to press is overwhelming the discovery process. Meta accordingly is raising this issue now, as it believes all parties and this Court will benefit from clarity regarding the scope of Meta's obligations in this case, before this case proceeds any further.

### G.    ATTACHMENTS

None.

Dated: March 21, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By:    */s/ Lauren Goldman*
      Lauren Goldman

**COOLEY LLP**

By:    */s/ Michael G. Rhodes*
      Michael G. Rhodes

*Attorneys for Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

## <u>CIVIL L.R. 5-1(h)(3) ATTESTATION</u>

Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: March 21, 2024                    By:    _/s/ Lauren Goldman_____