UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 22-cv-03580-WHO (VKD)<br><br>**REDACTED**<br><br>**ORDER RE MAY 8, 2024 DISCOVERY DISPUTE RE PRIVILEGE CLAIMS**<br><br>Re: Dkt. Nos. 428, 457, 475, 476 |

The parties ask the Court to resolve their remaining disputes concerning defendant Meta's privilege claims. *See* Dkt. No. 476-3. Plaintiffs ask the Court to order Meta to produce all documents in unredacted form, or in the alternative, to submit all documents to the Court for *in camera* review. *Id.* at 1; Dkt. No. 428 at 3-4; Dkt. No. 457 at 2. Meta objects to producing documents that it says are protected from disclosure, in whole or in part, and to this Court conducting an *in camera* review. Dkt. No. 476-3 at 4; Dkt. No. 428 at 7; Dkt. No. 457 at 2. The Court finds this matter suitable for resolution without oral argument. Civil L.R. 7-1(b).

For the reasons explained below, the Court denies plaintiffs' request for an order requiring Meta to produce the disputed documents in unredacted form, with the following exceptions: (1) Meta has not shown that work product protection applies to PIXEL_HEALTH000300598 and PIXEL_HEALTH000301262; (2) the first two communications in PIXEL_HEALTH000301080[1] are not protected by the attorney-client privilege; and (3) plaintiffs have provided the necessary justification for *in camera* review of subsequent similar communications in PIXEL_ HEALTH000301080.

---

[1] Specifically, the December 20, 2021 email from Frank Jing (-301084-086) and the reply email on the same date from Tobias Wooldridge (-3001084).

# I. BACKGROUND

Further to the Court's April 10 and April 18, 2024 orders (Dkt. Nos. 451, 458), the parties filed a further joint submission on May 8, 2024 addressing the following documents:

1. PIXEL_HEALTH000300598
2. PIXEL_HEALTH000301262
3. PIXEL_HEALTH000300667
4. PIXEL_HEALTH000300648
5. PIXEL_HEALTH000031247
6. PIXEL_HEALTH000301080
7. PRIV ID 106
8. PRIV ID 107
9. PRIV ID 108

The joint submission attaches excerpts from Meta's privilege log describing the disputed documents, as well as redacted copies of the disputed documents that have been produced with redactions. *See* Dkt. Nos. 476-4, 476-6 through 476-11. In addition, Meta relies on a declaration of its outside counsel, Kory Hines, in support of its privilege claims. *See* Dkt. No. 476-5.

# II. LEGAL STANDARD

As this action is premised on federal question jurisdiction, federal common law governs issues of privilege. Fed. R. Evid. 501; *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *Ruehle*, 583 F.3d at 607 (citations and quotations omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id*. (citations and quotations omitted).

In the Ninth Circuit, whether information is protected by the attorney-client privilege is determined using an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

2

1  *Sanmina*, 968 F.3d at 1116.  Where a communication has more than one purpose, it may be

2  protected as privileged if the primary purpose of the communication is to give or receive legal

3  advice, as opposed to business or some other non-legal advice.  *In re Grand Jury*, 23 F.4th 1088,

4  1092 (9th Cir. 2021) (describing and adopting the "primary purpose" test for dual-purpose

5  communications), *cert. granted sub nom. In re Jury*, 143 S. Ct. 80 (2022), *cert. dismissed as*

6  *improvidently granted*, 143 S. Ct. 543 (2023).

7        The attorney work product doctrine protects from discovery materials that are prepared by

8  or for a party or its representative in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3).  The

9  doctrine provides qualified protection against discovery of the legal strategies and mental

10 impressions of a party's counsel.  *Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947); *Upjohn Co. v.*

11 *United States*, 449 U.S. 383, 390-91 (1981).  It does not protect facts from disclosure unless

12 disclosure of those facts would inherently reveal an attorney's strategies or mental impressions.

13 *See, e.g.*, *O'Toole v. City of Antioch*, No. 11-cv-01502 PJH (MEJ), 2015 WL 1848134, at *3 (N.D.

14 Cal. Apr. 14, 2015); *Hamilton v. RadioShack Corp.*, No. C 11-00888 LB, 2012 WL 2327191, at

15 *4-5 (N.D. Cal. June 18, 2012).

16       A party claiming that a document or information is privileged or protected from disclosure

17 has the burden to establish that the privilege or protection applies.  *See United States v. Martin*,

18 278 F.3d 988, 999-1000 (9th Cir. 2002); *Ruehle*, 583 F.3d at 608.  A party asserting privilege or

19 work product protection may make a prima facie case that the privilege or protection applies by

20 "describ[ing] the nature of the documents . . . in a manner that, without revealing information itself

21 privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A);

22 *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142,

23 1148 (9th Cir. 2005).  The Ninth Circuit has held a party can meet this burden by providing a

24 privilege log that identifies "(a) the attorney and client involved, (b) the nature of the document,

25 (c) all persons or entities shown on the document to have received or sent the document, (d) all

26 persons or entities known to have been furnished the document or informed of its substance, and

27 (e) the date the document was generated, prepared, or dated."  *In re Grand Jury Investigation*, 974

28 F.2d 1068, 1071 (9th Cir. 1992) (citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1989)).

1  However, a party may substantiate a claim of privilege by other means. *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("Briefs, declarations or other proof may establish the purpose of the communication or the specific role of the sender and each individual recipient.").

A party challenging application of the attorney-client privilege may request *in camera* review. "Although *in camera* review of documents does not destroy the attorney-client privilege, it is an intrusion which must be justified." *In re Grand Jury Investigation*, 974 F.2d at 1074. "To empower the district court to review the disputed materials *in camera,* the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged. If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court." *Id.* at 1075. The court's discretion is guided by the following factors: (a) the amount of material to be reviewed, (b) the relevance of the material to the case, and (c) the likelihood that *in camera* review will reveal evidence establishing that the material is not privileged. *Id.* (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)).

### III. DISCUSSION

The Court follows the parties' organization in addressing the issues that require resolution.

#### A. PIXEL_HEALTH000300598 and PIXEL_HEALTH000301262 ("Thread E")

Meta has redacted several communications within two related email threads dated between July 5 and July 12, 2022 as protected from disclosure by the attorney-client privilege and the work product doctrine. *See* Dkt. No. 476-4 at ECF 3-19. The privilege log describes the redacted material as "Email requesting and providing legal advice, and requesting and providing information for the purpose of facilitating legal advice, regarding business tool data issues prepared in anticipation of regulatory review and potential litigation regarding data filtering/blocking issues" (and variations of this description). *Id.* In its portion of the joint submission and in the Hines declaration, Meta explains further that the redacted communications "were sent primarily for the purpose of requesting or providing legal advice related to . . . ███████████████████████████████████████████, and discovery- and regulatory-

4

1   related legal matters." Dkt. No. 476-3 at 4; *see also* Dkt. No. 476-5 ¶¶ 21-25.

2   　　　　Plaintiffs concede that one of the redacted communications within the threads is privileged,
3   *see* Dkt. No. 476-3 at 1 n.1, but they dispute the remaining redactions on the ground that "they
4   primarily concern Meta's business decisions regarding ▆▆▆▆▆▆ data and would have
5   occurred regardless of litigation against Meta," *id.* at 1-2. Specifically, plaintiffs contend that
6   unredacted portions of the email threads reflect that the disputed communications concern Meta's
7   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ rather than
8   communications seeking or obtaining legal advice regarding ▆▆▆▆▆▆▆▆
9   ▆▆▆▆. *Id.* at 2.

10   　　　　As an initial matter, the Court observes that Meta's privilege log, together with its
11   discovery dispute submission, satisfies the Ninth Circuit's criteria for asserting attorney-client
12   privilege in the first instance. Meta has identified: the attorneys and Meta employees involved in
13   the communications; the nature, subject matter, and purpose of the communications; all persons
14   known to have sent or received the communications or been informed of the contents of the
15   communications; and the dates of the communications. There is no indication that these
16   communications have been disclosed to anyone outside the attorney-client relationship, or that
17   they have not otherwise been maintained in confidence. The Court concludes that Meta has met
18   its burden to demonstrate that the privilege applies to the redacted contents of these email threads.
19   *See In re Grand Jury Investigation*, 974 F.2d at 1071.

20   　　　　Plaintiffs dispute Meta's characterization of the purposes of the communications that have
21   been redacted as privileged. While plaintiffs are correct that merely copying an attorney on an
22   email communication and labeling it "a/c priv" does not make the communication privileged, the
23   Court is not persuaded that this is what Meta has done. First, the initial email from Mr.
24   Wooldridge includes a subject line that expressly states that he is "requesting legal advice." Dkt.
25   No. 476-11 at ECF 2. Meta represents that this was indeed the purpose of the initial email.
26   Second, the email communications are not merely exchanges among non-attorney Meta employees
27   but also include in-house counsel, two of whom actively participate in communications with these
28   email threads, *see* Dkt. No. 476-10 at ECF 2-7 (communications to and from in-house counsel),

1  suggesting that in-house counsel are not just passively copied on these communications. Third, it
2  appears from the context of one of the unredacted communications in the thread that Meta
3  employees *did* engage in a ███████████████████████████████ but that this discussion
4  involved a *distinct* set of exchanges led by a Meta employee (James Covey). *See, e.g.,* Dkt. No.
5  476-11 at ECF 2 (██████████████████████████████████████████████████████
6  ██████████████████████████████). The fact that Mr. Covey is also included in
7  the email communications at issue here does not automatically convert those exchanges to non-
8  legal business or strategic discussions.
9        The Court considers whether plaintiffs have shown a factual basis sufficient to support a
10 reasonable, good faith belief that *in camera* inspection may reveal evidence that the redacted
11 information in the email threads is not privileged. Plaintiffs' principal contention is that the
12 redacted information concerns non-legal, strategic or business-related matters, based on plaintiffs'
13 reading of unredacted text in the threads and the fact that several non-attorneys with business or
14 strategic roles participated in the communications. *See* Dkt. No. 428 at 4 (referencing PRIV ID
15 57-70); *see also* Dkt. No. 476-3 at 2. As already noted, plaintiffs' characterization of the
16 communications at issue is not accurate. Beyond this characterization, plaintiffs have not
17 provided a factual basis sufficient to support a belief that *in camera* review will yield evidence that
18 the redacted information concerns business or other non-legal matters. For this reason, the Court
19 finds no justification for *in camera* review of these documents. *See, e.g., Rock River Commc'ns,*
20 *Inc. v. Universal Music Grp., Inc*., 745 F.3d 343, 353 (9th Cir. 2014) (denial of *in camera* review
21 not an abuse of discretion when challenge to privilege is "based on little more than unfounded
22 suspicion").
23       Plaintiffs also challenge Meta's assertion of work product protection for the redacted
24 material. Dkt. No. 476-3 at 2. Meta does not respond to plaintiffs' work product protection
25 arguments, beyond a passing reference to *Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d
26 1198, 1206 (N.D. Cal. 2016), and Meta has not established a basis for application of the work
27 product doctrine with respect to any particular redaction. *See id.* at 5; *see generally* Dkt. No. 476-
28 5 ¶¶ 21-25. None of the text in these threads may be redacted on the basis of work product

1 protection.

2       Accordingly, the Court denies plaintiffs' request for an order requiring Meta to produce
3 redacted material withheld on the basis of attorney-client privilege. However, if any text has been
4 redacted based solely on the assertion of work product protection, that text must be produced in
5 unredacted form to plaintiffs.

6       **B.**      **PIXEL_HEALTH000301080 ("Thread D")**

7       Meta has redacted portions of several communications within a single email thread dated
8 between December 20, 2021 and January 11, 2022 as protected from disclosure by the attorney-
9 client privilege. *See* Dkt. No. 476-4 at ECF 21-25. The privilege log describes the redacted
10 material in the first two communications in the thread as "Email reflecting legal advice regarding
11 data retention period issues" and the redacted material in the later communications in the thread as
12 "Email reflecting and requesting legal advice, and requesting information for the purpose of
13 facilitating legal advice, regarding data retention period issues" (and variations of this description).
14 *Id.* The first two communications in the email thread do not include any attorneys, while the
15 remaining communications include three in-house counsel, Tim Lamb, Arif Dhilla, and Jack
16 Chen. *Id.* Plaintiffs challenge Meta's assertion of privilege as to all redacted portions of the email
17 thread, arguing that the communications "reflect a business discussion to ▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and do not seek or reflect legal advice.
19 Dkt. No. 476-3 at 2-3.

20       The Court first considers the redactions in the first two communications in the email
21 thread: the December 20, 2021 email from Frank Jing (-301084-086) and the reply email on the
22 same date from Tobias Wooldridge (-3001084). Plaintiffs argue that this exchange is an
23 unprivileged discussion between two engineers about their understanding of a legal issue that is
24 untethered to any request for legal advice. Dkt. No. 476-3 at 3. In the Hines declaration, Meta
25 confirms that the redacted text in the first two communications contains an exchange between two
26 non-attorney employees who are sharing ▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮ Dkt. No. 476-5 ¶ 16. This exchange does not appear to include any request for legal
28 advice. While Meta correctly observes that legal advice may be transmitted between non-attorney

1  employees of a corporation, *see* Dkt. No. 476-3 at 6, Meta has not shown that these employees are

2  repeating to each other any "legal advice" obtained from counsel, s*ee* Dkt. No. 476-5 ¶ 16.[2]  Thus,

3  the Court concludes that Meta has not established that the attorney-client privilege applies to the

4  redacted portions of the first two communications. *See In re Grand Jury Investigation*, 974 F.2d

5  at 1071 (describing criteria).

6  Next, the Court considers the remaining redactions in the email thread, beginning with the

7  December 20, 2021 email from David Capel adding and addressing in-house counsel Tim Lamb (-

8  301083).  Plaintiffs argue that the communications are directed primarily to a business purpose,

9  and that Meta has not made a "clear showing" that the purpose of the redacted text is obtaining or

10 providing legal advice.  Dkt. No. 476-3 at 2-3.  In its portion of the joint submission and in the

11 Hines declaration, Meta explains that the redacted text corresponds to requests for legal advice

12 from Mr. Lamb and Mr. Dhilla, and includes a description of legal advice previously received

13 ▇▇▇▇▇, who is also added to later portions of the email thread.  Dkt. No. 476-5 ¶¶ 17-19.

14 This explanation, together with the information in the privilege log, is sufficient to establish that

15 the attorney-client privilege applies to the redactions in communications directed to or sent by

16 these in-house counsel.  *See In re Grand Jury Investigation*, 974 F.2d at 1071.

17 However, Meta also states: "The redacted portions of the emails sent by Mr. Jing and other

18 Meta employees on December 21, 2021, January 4, 2022, and January 11, 2022 ▇▇▇▇

19 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

20 ▇▇▇▇▇▇"  Dkt. No. 476-5 ¶ 18.  This statement suggests that these redactions,

21 like the redactions in the exchange between Mr. Jing and Mr. Wooldridge on December 20, 2021,

22 are not privileged for the same reason.  At the very least, Meta's own discussion of these three

23 employee communications provides a factual basis for the Court to conclude that *in camera*

24 review of an unredacted version of these communications will yield evidence that the redacted

25 information concerns unprivileged statements of ▇▇▇▇▇▇▇▇

26 and not the seeking or obtaining of legal advice.  *See also* Dkt. No. 428 at 3-4 (referencing PRIV

---

[2] The privilege log does not identify any attorney as the source of any purported legal advice for these first two communications in the email thread.

8

1    ID 77). Because the Court would be required to review only a few redactions, the underlying

2    communications appear to be relevant to issues in the case (i.e. ████████████████████

3    ███), and review is likely to confirm that the redactions concern unprivileged material, the Court

4    determines that *in camera* review is appropriate for these few redactions. *See In re Grand Jury*

5    *Investigation*, 974 F.2d at 1074-75.

6    　　　Accordingly, the Court grants plaintiffs' request for an order requiring Meta to produce

7    redacted material withheld on the basis of attorney-client privilege in the first two communications

8    in the email thread (the December 20, 2021 email from Frank Jing (-301084-086) and the reply

9    email on the same date from Tobias Wooldridge (-3001084)).  The Court denies plaintiffs' request

10   for an order requiring Meta to produce the redacted material in the remaining communications in

11   the thread.  However, the Court orders Meta to produce for *in camera* review the redacted portions

12   of the emails sent by Mr. Jing and other Meta employees on December 21, 2021, January 4, 2022,

13   and January 11, 2022, to which Meta refers in paragraph 18 of the Hines declaration, so that the

14   Court can determine whether the material is privileged or unprivileged.

15   　　　**C.　　Priv IDs 106-108 ("Thread C")**

16   　　　Meta has withheld from production several communications within a single email thread

17   dated between September 25 and September 26, 2019 as protected from disclosure by the

18   attorney-client privilege.  *See* Dkt. No. 476-4 at ECF 27-29.  The privilege log describes the

19   material as "Email providing and requesting information for the purpose of facilitating legal

20   advice regarding business tool data issues."  *Id.*  In its portion of the joint submission and in the

21   Hines declaration, Meta explains further that Meta employee, Stephanie Wang, states in the first

22   communication in the thread that she is ████████████████████████████████

23   ████████████████████████████████████████████████████████████████

24   ████████████  Dkt. No. 476-3 at 6; Dkt. No. 476-5 ¶ 14.  Meta says that in subsequent

25   communications in the thread, Meta employees respond to this request by providing and

26   discussing the information requested.  Dkt. No. 476-3 at 6; Dkt. No. 476-5 ¶¶ 13, 15.

27   　　　Plaintiffs challenge Meta's assertion of privilege as insufficiently supported, arguing that

28   attorney involvement "does not automatically confer privilege" and Meta "does not state that the

1     Legal Department directed Ms. Wang to seek this information." Dkt. No. 476-3 at 3.

2           To the contrary, Meta's privilege log, together with its discovery dispute submission,
3     satisfies the Ninth Circuit's criteria for asserting attorney-client privilege. Meta has identified the
4     attorneys seeking information for purposes of providing legal advice (i.e. James Turner and Adam
5     Shajnfeld), and it specifically attests that the first communication was sent by a non-attorney at
6     counsel's request seeking information to facilitate the provision of legal advice. *See, e.g., United*
7     *States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (privilege extends to
8     communications between non-attorney employees for purpose of seeking legal advice); *AT&T*
9     *Corp. v. Microsoft Corp.,* No. 02-cv-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr.
10    18, 2003) ("Communications containing information compiled by corporate employees for the
11    purpose of seeking legal advice and later communicated to counsel are protected by attorney-client
12    privilege."). Meta has identified all employees involved in the communications (including the two
13    attorneys copied on the thread), and has also identified the dates, nature, subject matter, and
14    purpose of the communications. Finally, Meta identifies all persons known to have sent or
15    received the communications or been informed of the contents of the communications, and there is
16    no indication that these communications have been disclosed to anyone outside the attorney-client
17    relationship, or that they have not otherwise been maintained in confidence. The Court concludes
18    that Meta has met its burden to demonstrate that the privilege applies to the redacted contents of
19    these email threads. *See In re Grand Jury Investigation*, 974 F.2d at 1071 (discussing and
20    applying standard). Plaintiffs provide no justification for *in camera* review of these documents.
21    *See* Dkt. No. 428 at 4.

22          Accordingly, the Court denies plaintiffs' request for an order requiring Meta to produce
23    this thread.

24        **D.**    **PIXEL_HEALTH000300667 and PIXEL_HEALTH000300648 ("Thread A")**
25          Meta has redacted several communications within two related email threads dated between
26    April 11 and 12, 2017 as protected from disclosure by the attorney-client privilege. *See* Dkt. No.
27    476-4 at ECF 31-52. The privilege log describes the redacted material as "Email requesting and
28    reflecting legal advice, and providing and requesting information for the purpose of facilitating

1    legal advice, regarding platform terms issues" (or some variation of this description). *Id.* In its

2    portion of the joint submission, Meta explains further that the communications in the threads,

3    which include in-house counsel James Turner, reflect employees stating a legal concern, providing

4    information, and requesting legal advice from Mr. Turner. Dkt. No. 476-3 at 6-7. The Hines

5    declaration elaborates on this explanation by describing each redacted communication in the two

6    threads. Dkt. No. 476-5 ¶¶ 4-7.

7    Plaintiffs challenge Meta's assertion of privilege as insufficiently supported, arguing that

8    "[t]hese communications appear to be primarily for the business purpose of discussing the ▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 476-3 at 3. This argument, which appears to

10   be based solely on the subject line of the threads, entirely ignores both Meta's privilege log and

11   Meta's portion of the joint submission, as well as the redacted communications themselves. While

12   plaintiffs' are correct that merely labeling an email "a/c priv" does not make the communication

13   privileged, the Court is not persuaded that this is what Meta has done. To the contrary, the Court

14   concludes that Meta's privilege log, together with its discovery dispute submission, satisfies the

15   Ninth Circuit's criteria for asserting attorney-client privilege in the first instance. Meta has

16   identified: the attorney and Meta employees involved in the communications; the nature, subject

17   matter, and purpose of the communications; all persons known to have sent or received the

18   communications or been informed of the contents of the communications; and the dates of the

19   communications. There is no indication that these communications have been disclosed to anyone

20   outside the attorney-client relationship, or that they have not otherwise been maintained in

21   confidence. *See In re Grand Jury Investigation*, 974 F.2d at 1071.

22   The Court considers whether plaintiffs have shown a factual basis sufficient to support a

23   reasonable, good faith belief that *in camera* inspection may reveal evidence that the redacted

24   information in the email threads is not privileged. Plaintiffs' principal contention is that these

25   emails are exchanges between non-attorneys discussing potential legal concerns about a business

26   decision, and so are not privileged. Dkt. No. 476-3 at 4; Dkt. No. 428 at 4 (referencing PRIV IDs

27   162-181). However, given Meta's explanations (which are consistent with the copy of the

28   redacted document already submitted to the Court), plaintiffs have not provided a factual basis

1  sufficient to support a belief that *in camera* review will yield evidence that the redacted

2  information concerns such non-legal matters. For this reason, the Court finds no justification for

3  *in camera* review of these documents. *See, e.g., Rock River Commc'ns,* 745 F.3d at 353.

4  Accordingly, the Court denies plaintiffs' request for an order requiring Meta to produce

5  redacted material withheld on the basis of attorney-client privilege.

   **E.     PIXEL_HEALTH00031247 ("Thread B")**

7  Meta has redacted several communications within a single email thread dated between

8  May 17 and 18, 2017 as protected from disclosure by the attorney-client privilege. *See* Dkt. No.

9  476-4 at ECF 54-57. The privilege log describes the redacted material as "Email requesting and

10 reflecting legal advice, and requesting information for the purpose of facilitating legal advice,

11 regarding data retention period issues" (or some variation of this description). *Id.* In its portion of

12 the joint submission and in the Hines declaration, Meta explains further that the first

13 communication in the email thread identifies and discusses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 Dkt. No. 476-3 at 7; Dkt. No. 476-5 ¶ 8. Other communications later in thread reflect discussions

16 between and among employees, ▮▮▮▮▮▮▮▮▮, regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 476-5 ¶¶ 9-11.

19 Plaintiffs challenge the redactions, arguing that "▮▮▮▮▮▮▮▮▮▮▮ are not substantive

20 communications protected by privilege." Dkt. No. 476-3 at 4. Plaintiffs contend that unredacted

21 portions of the email thread show that the communications concern business discussions about

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* As Meta points out, the

23 disputed thread is not merely ▮▮▮▮▮▮▮▮▮▮▮▮. According to Meta, it contains

24 communications about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs' argument that this thread is categorically

26 unprivileged is not persuasive.

27 Meta's privilege log, together with its discovery dispute submission, satisfies the Ninth

28 Circuit's criteria for asserting attorney-client privilege in the first instance. Meta has identified:

the attorney and Meta employees involved in the communications; the nature, subject matter, and purpose of the communications; all persons known to have sent or received the communications or been informed of the contents of the communications; and the dates of the communications. There is no indication that these communications have been disclosed to anyone outside the attorney-client relationship, or that they have not otherwise been maintained in confidence. The Court concludes that Meta has met its burden to demonstrate that the privilege applies to the redacted contents of these email threads. *See In re Grand Jury Investigation*, 974 F.2d at 1071.

The Court considers whether plaintiffs have shown a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that the redacted information in this thread is not privileged. As noted, plaintiffs' principal contention is that these emails are merely discussions about business matters and ▉▉▉▉▉▉ Dkt. No. 428 at 4; Dkt. No. 476-3 at 4. However, that explanation is not supported by the unredacted portions of the thread, and plaintiffs have not provided a factual basis sufficient to support a belief that *in camera* review will yield evidence that the redacted information concerns such non-legal matters. For this reason, the Court finds no justification for *in camera* review of these documents. *See, e.g., Rock River Commc'ns,* 745 F.3d at 353.

Accordingly, the Court denies plaintiffs' request for an order requiring Meta to produce redacted material withheld on the basis of attorney-client privilege.

## IV.  CONCLUSION

The Court denies plaintiffs' request for an order requiring Meta to produce the disputed documents in unredacted form, with the following exceptions:

1. To the extent Meta has redacted any text solely on the basis that the work product doctrine protects the redacted material from disclosure in PIXEL_HEALTH000300598 and PIXEL_HEALTH000301262, Meta must produce that text in unredacted form to plaintiffs.

2. Meta must produce the first two communications in PIXEL_HEALTH000301080[3] in

---

[3] Specifically, the December 20, 2021 email from Frank Jing (-301084-086) and the reply email on the same date from Tobias Wooldridge (-3001084).

13

unredacted form to plaintiffs.

3. Meta must submit for *in camera* review the redacted portions of the emails in PIXEL_HEALTH000301080 sent by Mr. Jing and other Meta employees on December 21, 2021, January 4, 2022, and January 11, 2022, to which Meta refers in paragraph 18 of the Hines declaration, so that the Court can determine whether the material is privileged or unprivileged.

Meta shall comply with this order by **June 28, 2024**.

**IT IS SO ORDERED.**

Dated: June 18, 2024

*Virginia K. DeMarchi*
Virginia K. DeMarchi
United States Magistrate Judge

14