Proposed Redacted
Version of July
1, 2024 Joint Discovery
Dispute Letter
(Dkt. No. 527-8)

July 1, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:     *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)
        Meta's Tools to Identify Data Sources, Fields, Field Descriptions, and Other Data

Dear Judge DeMarchi:

The parties file this letter pursuant to the Court's directive to file a "joint discovery dispute letter regarding relevant data sources, and the appropriate means to identify them." ECF No. 488.

## A.     STATEMENT OF THE DISPUTE

**Plaintiffs' Statement** – How Meta uses health data is key to this case. Meta has identified Hive as helping answer this question and used a tool called Daiquery to disclose information about Hive. But Meta refuses to produce complete information from Hive, ███████████████████ ███████. Plaintiffs propose using Meta's tools built for this purpose to complete the picture, ████████████████████████████████████████████████. Meta has also recently disclosed more relevant data sources but has refused to produce basic information about them, so Plaintiffs seek ███████████████████████████████████████████████████████.

**Meta's Statement** – Plaintiffs ask for essentially unfettered access to several of Meta's internal systems under the pretense of seeking ████████████████. Plaintiffs also seek plainly overbroad information from two other Meta databases—regardless of any connection to this case. The questions presented are:

(1) whether plaintiffs have carried their heavy burden to secure the "extraordinary" relief of obtaining access to Meta's internal systems;

(2) whether plaintiffs' request—regardless of which party would carry it out—is reasonably targeted towards obtaining responsive, relevant information beyond the significant discovery about data sources and ████████ that Meta has already produced; and

(3) whether Meta should be required to produce so-called ████████████████████ ████████████ even though plaintiffs already have meaningful discovery about all of them.

## B.     PLAINTIFFS' POSITION

According to Meta, ████████████████████████████████████████████████████████ ████████████████████████████████ Barnes Decl., Exs. 1 and 2 at 295795; Dkt. 323-2 ¶ 14. Accordingly, Plaintiffs seek ████████████████████ about the at-issue data from Meta.[1]

---

[1] This dispute relates to five requests for production of documents, three interrogatories, and six

Meta has twice been ordered to produce such ████████████. Dkts. 275 and 380. However, Meta has yet to fully comply with either order.

The parties have known for some time about Hive's relevance to this action. On March 22, 2024, Meta also identified ZippyDB ████████ as relevant data sources. *See* Barnes Decl., Ex. 3 (Meta Suppl. Answer to Interrogatory No. 5, served Mar. 22, 2024). Plaintiffs propose a protocol for using a tool called Daiquery to extract responsive data from Hive tables. As for ZippyDB ████████ Plaintiffs ask for an order that ████████████████████████████████████████████████████████████████████████████████████████████████

Without robust ████████████, Plaintiffs cannot determine how Meta uses the at-issue data. Meta's productions on May 29 and June 21 disclosed for the first time highly relevant tables. For example, Meta recently revealed the existence of ██ ██ ████ ██ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ It makes no sense for Meta to slowly leak out additional critical tables instead of comprehensively identifying at-issue tables once and for all.

## I.    THE DAIQUERY TOOL

Daiquery ████████████████████████████████████████████████████████████ *See* Barnes Decl., Ex. 4. ████████████████████████████████████████████████████████████████████████████████████████

In January, Meta produced ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Meta also refused to produce basic and easily accessible ████████████████████████████████████████████████████████████████████████████

Contrary to Meta's assertions, and as it has already demonstrated in discovery, Daiquery can be used ████████████████████████████████████████████ *See* Shafiq Decl. ¶¶ 24-27, 33-36. Even if Daiquery ████████████████████████████, information about Meta's manipulation and understanding of the data it possessed is highly relevant.

The protocol Plaintiffs' propose for using Daiquery is so straightforward that Plaintiffs can

requests for inspection. *See* Barnes Decl., ¶¶ 10(a)-(n), Ex. 3.

describe to the Court every step they would take—each button click and entry of a term—and all the types of information that would be revealed. *See* Barnes Decl., Ex. 4, Shafiq. Decl. ¶¶ 28-43. Like any other discovery or audit, the process involves following ██████████████████████████████████████████████████████████████████

Meta's concern that ██████████████████ become increasingly irrelevant is misplaced. Shafiq easily eliminated as irrelevant ██████████████ tables Meta identified in its May 29 ██████████ ████████ *Id.* ¶¶ 41-42. He will use the same process for █████████████████████

II.    ████████████████

Meta has identified ZippyDB ████████ as relevant but refuses to produce ████████████ ████████████████ Meta can readily produce ████████████████ ZippyDB █████████ and then ████████████████████. Shafiq Decl. ¶¶ 123-126.

Meta should also be ordered to produce ████████████████████████████ *See* Shafiq Decl. ¶¶ 74-75.[2] ██████████████████████████████████████████████████ *See* Shariq Decl. ¶¶ 22-26. Meta's declarants contend that the tables Meta itself identified as relevant are not helpful, but they base this argument on the idea that they contain only ████████████ That is precisely the data Plaintiffs have always sought and Meta has long been ordered to produce. *See* Barnes Decl. ¶¶ 65-66.

### III.    ARGUMENT

A party may discovery any matter relevant to a claim or a defense and "proportional to the needs of the case." Rule 26(b). Once the court determines that a request seeks relevant information, a "heavy burden" flips to the party resisting discovery to establish "good cause" to refuse. *Ioane v. Spjute*, 2014 WL 2930790, at *2-3 (E.D. Cal. Jun. 27, 2014). Courts "balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Fratus v. Cnty. of Contra Costa*, 2015 WL 4538076, at *3 (N.D. Cal. 2015) (citation omitted).

### 1.    The Requested Discovery is Critically Important

---

[2] ████████████████████████



Both Meta and Dr. Shafiq agree, ██████████████████ is ████████████
████████████████. Because such verification requires understanding all the ways
sensitive data at issue in this case is used—not just the ones Meta chooses to reveal—this discovery
must include complete ████████. *See generally* Shafiq Decl. Meta does not dispute that additional
tables ████████, but it refuses to disclose them. Plaintiffs seek to identify them using the
identical tool Meta uses for this purpose.

### 2.    Plaintiffs' Requested Relief

Plaintiffs propose a minimally burdensome inspection protocol. Despite Meta's insinuation
that Plaintiffs want "unfettered" access for some nefarious purposes, Plaintiffs have described
precisely what they are asking to do with the tool. This approach will be more efficient and generate
fewer additional discovery disputes than any other means of obtaining this information at this stage.
And obtaining ████████████ before producing full tables will narrow discovery and
reduce everyone's burden. When conferring, Meta has not substantiated any argument that the use
of this tool is burdensome.

Courts have allowed inspections when parties have attempted to obtain the information
through other means unsuccessfully. See *Brocade Comms. Systems, Inc. v. A10 Networks, Inc.*, 2012
WL 70428, at *1 (Jan. 9, 2012) (Koh, J.). Despite two court orders, and previous representations that
they had performed their own thorough search, Meta continues to disclose relevant tables and has
failed to produce or make available the responsive ████████████ Plaintiffs' efforts have
been delayed by Meta's lack of transparency and misstatements of fact regarding its systems and
tables. *See* Shafiq Decl. ¶¶ 55-69 (evaluation of Meta statements). Accordingly, inspection is
warranted. If the Court does not order inspection, it should order Meta to produce the information
from Daiquery itself by July 15, 2024 following the same protocol proposed by Plaintiffs.

Because ████████████████████████████████ that would be most
efficient for classwide production, Plaintiffs also seek ████████████████
████████████████████████ for the ZippyDB ████████.

Meta says ████████████ is enough. But the Daiquery information is not entirely
████████████████████████. Meta also refuses to produce to
Plaintiffs the full information regarding ████████████
██ It is not feasible for Plaintiffs to obtain this information within the clean room.[3]

Without this discovery, Plaintiffs cannot identify the most efficient ████████████
for production of additional data as ordered by Dkt. 452 and are left to guess which tables are best

---

[3] In Dkt. 380, the Court ordered that "if Meta contends that the source code is the only place that
identifies and/or describes a particular field, Meta shall so state in writing in response to RFP 7" by
December 11, 2023. Meta never did so.

based on scattered discussion in documents. Meta's refusal to provide this discovery substantially prejudices Plaintiffs and delays other discovery.[4]

## C.    META'S POSITION

Plaintiffs ask the Court for the right to trawl Meta's internal systems—and extract overbroad, irrelevant information—under the pretense of seeking ███████ documents, even though Meta has already largely produced the information plaintiffs claim they need. Plaintiffs' request should be denied.

*First*, examining an opposing party's systems is an "extraordinary" remedy reserved for circumstances not present here. Meta has made significant efforts to identify relevant data sources and has made available ████████████████████████████████ ████ he information plaintiffs seek.

*Second*, plaintiffs' demand is inconsistent with this litigation's scope. This case, and plaintiffs' discovery requests, are about *"healthcare"* information. Plaintiffs concede their inspection will largely involve reviewing information that has nothing to do with healthcare.

*Third*, plaintiffs' requested inspection will not actually answer their questions about ████████ As Meta has repeatedly explained, its ████████████████████████ ████████████████████████

*Fourth*, if the Court believes plaintiffs are entitled to more information, then *Meta* is best equipped to deliver that information.

████████████████████████████████████████████████, but these requests are flawed, including because they seek irrelevant, duplicative, and unnecessary ████████ information.

### 1. This Litigation's Scope.

Plaintiffs assert that *specific* categories of developers—HIPAA and CMIA-covered healthcare providers—sent Meta "sensitive patient health information." Dkt. 185. Discovery is accordingly focused on the relevant healthcare developers and allegedly "sensitive" data they sent. Pls.' RFPs 6–7 (seeking documents *only* about data sent from "Medical Provider[s]").

### 2. Meta Has Provided Significant Discovery About Potentially Relevant Pixel Data Sources.

Meta cannot ████████████████████████████████████████████ ████████████████████████████ Dkt. 143-3 ¶¶33–38. Nor does Meta ████████████████████████████████████████████████████████

---

[4] For example, Plaintiffs could not have identified ████████████████████████ ████ for production by April 24, 2024, as ordered by the Court because Meta did not identify the table until May 29, 2024. Plaintiffs respectfully submit that it would be a highly inefficient use of the Court's time for them to move for production of tables in a seriatim fashion, with the specific tables identified changing with each new step of ████████ discovery.

███████ Wooldridge ¶¶31–33.

Meta has therefore undertaken significant efforts to identify data sources containing potentially relevant, non-duplicative data, ████████ Dkt. 435-2. Through these efforts, ████████ ████████ .

But Meta has also provided broader discovery about numerous other tables, as plaintiffs' declarations show. *See* Shafiq ¶¶76–108. Meta's productions have included references to ████████ ████████ . Xia ¶9. ████████ ████████ . *Id.* ¶¶12–21. And, recently, to satisfy plaintiffs' shifting demands, Meta ████████ ████████ . Wooldridge ¶35.

Moreover, months ago, Meta made ████████ ████████ . *Id.* ¶7. This ████████ ████████ . *Id.* ¶¶7–8. The ████████ *Id.* ¶¶7–8, 29. But plaintiffs still are not satisfied.

### 3. Plaintiffs Should Not Be Permitted to Access Meta's Internal Systems.

"A forensic examination of an opposing party's computer is considered an extraordinary remedy." *Juul Labs, Inc. v. Chou*, 2022 WL 2161062, at \*2 (C.D. Cal. Apr. 19, 2022) (citation omitted). Courts generally only consider such a drastic step if a party has "intentionally destroyed relevant electronic discovery or committed other improper discovery conduct." *Id.* Even then, courts consider "whether the responding party" (here, Meta) is "competent to reasonably search for and collect responsive data from its devices." *Id.*

Plaintiffs are not entitled to exceptional relief. Meta has engaged plaintiffs on these complex issues and made available ████████ Plaintiffs claim Meta has made "misstatements," but plaintiffs contort Meta's statements and overly simplify Meta's systems. *See* Dkt. 435-2 at 1–2; Xia ¶¶6–11; Wooldridge ¶¶31–37; Hashmi ¶¶46–47 (omitting hearing transcript portions and citing a 2018 document to create the false impression that ████████ "currently exists").

Plaintiffs rely on *Brocade Communications Systems v. A10 Networks*, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012), but it has no bearing here. The *Brocade* court found a plaintiff could examine a hard drive to determine whether it contained stolen source code—because the defendant conceded the files had been "recycled" during the litigation's pendency but refused to explain further. *Id.* at \*2.

Not so here. Meta has provided significant discovery about this exact topic. Indeed, ████████ ████████ . Hashmi Decl ¶¶13–22.

### a. Plaintiffs seek to review irrelevant information.

Plaintiffs attempt to cast all information they seek, including ████ Meta has already produced, as "███████████████" about "at-issue data." But the information plaintiffs want ██████████ (Shafiq ¶32), are not responsive to plaintiffs' discovery requests, much less relevant to this case (Xia ¶28).[5]

Even plaintiffs concede their inspection would involve examining mostly irrelevant tables. Plaintiffs' expert opines ██████████████████████████. Shafiq ¶¶41–42. And his inspection would begin indeterminately with ██████████████████████████ *Id.* ¶¶38–41. Moreover, Meta's systems ██████████████████████████. *Padgett v. Monte Sereno*, 2006 WL 8442137, at *5 (N.D. Cal. Feb. 24, 2006) (rejecting inspection that could "impinge on privileged" information).

### b. Meta's tools will not answer plaintiffs' questions.

"Daiquery" will not give plaintiffs the responsive information they seek. First, plaintiffs' request conflates three separate technologies. Daiquery is an interface to query data sources; ██████████████. Xia ¶7. Second, there is a ████████████. *Id.* And, third, there is ██████████████. *Id.*

As plaintiffs concede, Meta has already *used* its ████████████████████████████████████. *Id.* ¶15. Plaintiffs want to search ████████████████████████████████████ *Id.* ¶23. If more than ████████████ are facially irrelevant (Shafiq ¶¶41–42), then the effect only magnifies from there.[6]

Moreover, Meta's ██████████████████████████████████████ Xia ¶26. The more efficient approach is to examine information plaintiffs can already access—██████████████—as plaintiffs have already done (Hashmi ¶¶13–22).

### c. Meta can best use its own systems.

---

[5] Several discovery requests purportedly at issue are misplaced: the Court found Meta complied with RFP 5; RFPs 149–150 relate to a separate 2019 data transparency effort; RFP 165 is an overbroad request about ad delivery "systems"; Interrogatories 1 and 3 implicate separate disputes; the parties have not conferred on Meta's supplemental response to Interrogatory 5; and RFI 3 is irrelevant, like most of RFIs 2, 4, 6, 9 (all objectionable for myriad reasons).

[6] Plaintiffs mention other Meta tools (Barnes ¶51) but do not defend ██████████████ ████████ which plaintiffs omitted from their requests in June.

Although Meta maintains it has fulfilled its discovery obligations, there is no reason why *plaintiffs*, not Meta, should search for responsive information. *Juul*, 2022 WL 2161062, at *2.

### 4. Plaintiffs' Request for Further ███████ Should Be Denied.

***ZippyDB*** ███████. Plaintiffs seek overbroad, irrelevant information from two "key/value databases," regardless of any relationship to this case. This information sought is largely irrelevant, duplicative in relevant part, not readily accessible, and non-responsive. Wooldridge ¶¶45–50. And the premise that Meta has "refused to produce basic information" about ZippyDB███████ is *false* (*id.*)—Meta has collectively produced over *1,200 documents* that mention these systems.



***Hive tables.*** Plaintiffs seek ███████ *Id.* ¶¶40–41, 44.

## D.    NEED FOR A HEARING

**Plaintiffs' Position:** The Plaintiffs believe that a hearing would be helpful in resolving this issue.

**Meta's Position:** If a hearing would be useful to the Court, then Meta does not object to holding one.

## E.    CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets forth the following dates:

- Parties substantially complete non-data document production: July 29, 2024

- Meta substantially completes structured data production: August 12, 2024

- Close of fact discovery: October 18, 2024

- Plaintiffs' motion for class certification (with any opening expert reports in support of class certification): February 14, 2025

## F.    STATEMENT RE COMPLIANCE WITH STANDING ORDER

The parties confirm that they have complied with the Courts discovery dispute resolution procedures. Jay Barnes, lead counsel for Plaintiffs, and Darcy Harris, designated lead counsel for Meta, respectively, held a final lead counsel meet-and-confer on June 10, 2024.

In addition, Plaintiffs state that the parties have conferred on the issues involved in this motion dozens of times.

## G.    ATTACHMENTS

Plaintiffs have attached the following documents:

1.      Declaration of Prof. Zubair Shafiq
2.      Declaration of Dr. Atif Hashmi
3.      Declaration of Jason 'Jay' Barnes and Exhibits 1 - 4 thereto

Meta has attached the following documents:
1.      Declaration of Qiwen (Carrol) Xia
2.      Declaration of Tobias Wooldridge

Dated: July 1, 2024                    By:     */s/ Geoffrey Graber*
                                               Geoffrey Graber

                                       **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                       Geoffrey Graber, State Bar No. 211547
                                         *ggraber@cohenmilstein.com*
                                       1100 New York Avenue NW, Fifth Floor
                                       Washington, DC 20005
                                       Tel:    202-408-4600
                                       Fax:    202-408-4699

                                       By:     */s/ Jason 'Jay' Barnes*
                                               Jason 'Jay' Barnes

                                       **SIMMONS HANLY CONROY LLC**

                                       Jason 'Jay' Barnes (admitted *pro hac vice*)
                                         *jaybarnes@simmonsfirm.com*
                                       112 Madison Avenue, 7th Floor
                                       New York, NY 10016
                                       Tel:    212-784-6400
                                       Fax:    212-213-5949

                                       **KIESEL LAW LLP**
                                       Jeffrey A. Koncius, State Bar No. 189803
                                         *koncius@kiesel.law*
                                       8648 Wilshire Boulevard
                                       Beverly Hills, CA 90211
                                       Tel:    310-854-4444
                                       Fax:    310-854-0812

                                       **TERRELL MARSHALL LAW GROUP PLLC**
                                       Beth E. Terrell, State Bar No. 178181
                                         *bterrell@terrellmarshall.com*
                                       936 North 34th Street, Suite 300
                                       Seattle, WA 98103
                                       Tel.:   206-816-6603
                                       Fax:    206-319-5450

                                       **GIBBS LAW GROUP LLP**
                                       Andre M. Mura, State Bar No. 298541
                                         *amm@classlawgroup.com*
                                       1111 Broadway, Suite 2100
                                       Oakland, CA 94607
                                       Tel.:   510-350-9700

Fax:    510-350-9701

*Attorneys for Plaintiffs and Putative Class*

Dated: July 1, 2024  By: */s/ Lauren Goldman*
        Lauren Goldman

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

By: */s/ Michael G. Rhodes*
   Michael G. Rhodes

**COOLEY LLP**
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

CONFIDENTIAL

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Beth Terrell, hereby attest under penalty of

perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: July 1, 2024                    By:    */s/ Beth Terrell*_____

12

Proposed Redacted
Version of Barnes
Declaration and Exhibits
1-4 Supporting July 1,
2024 Joint Discovery
Dispute Letter
(Dkt. No. 527-3)

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949

Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:    310-854-0812

*Attorneys for Plaintiffs*
JOHN DOE, JANE DOE I, JANE DOE II, and
JOHN DOE II, and DOE, on behalf of
themselves and all others similarly situated

[*Additional counsel listed on signature page*]

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:   206-816-6603
Fax:    206-319-5450

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:   510-350-9700
Fax:    510-350-9701

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | **Case No. 3:22-cv-03580-WHO (VKD)** |
| | CLASS ACTION |
| This Document Relates To: | **DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS** |
| All Actions | |

I, Jason 'Jay' Barnes, declare as follows:

1.      I am an attorney licensed to practice law in the state of Missouri and have been admitted pro hac vice for this action. Dkt. 12.

2.      I am a partner in the law firm of Simmons Hanly Conroy LLP and have been appointed as interim co-lead counsel to represent the Named Plaintiffs and the putative class in the above-captioner matter.

1

3.    I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

4.    I submit this declaration regarding Plaintiffs' discovery efforts from Meta to obtain ████████████████████████████████████████████████████████ ██████████

5.    On June 17, 2022, Plaintiffs filed the first case in this consolidated action. Dkt. 1.

6.    On July 29, 2022, Plaintiffs in the first-filed case served discovery, including for requests for production of documents about ████████████████████ at issue on this motion.

7.    From August 2022 to March 2023, Plaintiffs engaged in informal discussions with Meta about ██████████████████ Meta was asked to but did not identify relevant data sources or the data that was/is contained within them.

8.    Attached hereto as Exhibit 1 is a true and correct copy of ██████████████████ ███ abeled PIXEL_HEALTH000449558 to 449565. This document has been marked "Highly Confidential – Attorneys' Eyes Only" by Defendant and filed under seal pursuant to the Protective Order.

9.    Attached hereto as Exhibit 2 is a true and correct copy of the ██████████████ ██████████████████████████████ abeled PIXEL_HEALTH000295794 to 295802. This document has been marked "Highly Confidential – Attorneys' Eyes Only" by Defendant and filed under seal pursuant to the Protective Order.

10.    Attached hereto as Exhibit 3 are true and copies of the following discovery requests and responses:

    a.    RFP 6: "documents sufficient to identify the databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data through and associated with the Meta Pixel for Medical Provider Web-Properties[.]"

    b.    RFP 7: "documents sufficient to describe each of the fields in databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected through and associated with the Meta Pixel for Medical Provider Web-Properties …. [including], but not limited to, data dictionaries."

c. **RFP 149**: "all documents sufficient to identify and explain Meta's 'discovery process across the data warehouse, starting from the root tables down to all leaf tables' that was done 'in order to show people a summary of their activity' on non-Facebook websites by building 'a centralized copy of key data point that can be queried in real time and organized by user instead of by time' as that process is described in 'Redesigning our systems to provide more control over Off-Facebook activity," https://engineering.fb.com/2019/08.20/data-infrastructure/off-facebook-activity."

d. **RFP 150**: "all documents sufficient to identify all fields and data elements contained in each table as identified as part of the Off-Facebook Activity re-design, including but not limited to whether they include appended data (such as verticals information or user profile information) or location data."

e. **RFP 165**: "documents sufficient to identify and describe the Meta systems through which Plaintiffs' expert Richard Smith was shown an ad relating to ulcerative colitis in his Facebook video feeds within two hours of exchanging communications with a health care provider about ulcerative colitis, as alleged in CCAC ¶ 269."

f. **Interrogatory 1**: "identify all web-properties with a HIPAA Notice that contained the Meta Pixel during the Relevant Time Period."

g. **Interrogatory 3**: "identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property."

h. **Interrogatory 5**: "identify and describe the databases or repositories where Meta receives, re-directs, or stores data (including event level and/or derived data) collected through or associated with the Meta Pixel for Medical Provider Web-Properties, or that contain data relating to the Filter (including any logs)."

i. **RFI 1**: "inspection of Meta's data sources used to generate the documents Meta produced on December 11, 2023" relating to Dkt. 380.

j. **RFI 2**: "inspection of Meta's internal Wiki sites relating to Pixel, SDK, DAPL, the Filter, and other relevant data sources, including for example, all ███████, as identified in PIXEL_HEALTH000107355.

k. **RFI 3**: "inspection of Meta's systems used to ████████████████████████████████████████████████████

l. **RFI 4**: "inspection of Meta's systems where data is stored by Meta for the content or characterizations of web-properties associated with Pixels that Meta has placed into 'health' verticals or sub-verticals."

3

m. **RFI 6**: "access to engineering, troubleshooting, or other systems through which a Meta engineer can use ████████████████████████████████████████████████████████████████████████████ ."

n. **RFI 9**: "access to the relevant Named Plaintiff Data and absent class member data stored in the following data stores or data stores access by the following systems: (b) the Hive; ████████████████ f) ZippyDB; ████████ "

11.    Attached hereto as Exhibit 4 are true and correct copies o█████████████████████████████████████████████████████████████████████████████████████ labeled PIXEL_HEALTH000107355, 36138, 66490, and 35578. These documents have been marked "Confidential" and "Highly Confidential – Attorneys' Eyes Only" by Defendant and filed under seal pursuant to the Protective Order.

12.    On March 21, 2023, at the first CMC before Judge Orrick after consolidation, Plaintiffs told the Court that "far and away the most important issue in this hearing and what might end up being the most important issue in this case is the preservation issue" that involved discovery into Meta's backend systems and requested "a robust disclosure process upfront for this backend system discovery" so that "we're not … fighting about preservation issues and Named Plaintiff Data for the entire rest of the case" because Plaintiffs "frankly, just want to litigate on the merits, not on figuring out Meta's backend systems." March 14, 2023 hearing transcript at 11:19-13:3.

13.    On April 20, 2023, at the first conference before Magistrate Judge DeMarchi stated that Meta "needs to explain what kinds of sources of information it has." Plaintiffs explained, "at the outset," that their "position is not that [Meta] has to preserve anything and everything forever. It's relevant, non-duplicative information," which is why Plaintiffs sought discovery on where Meta "store[d] … event-level data that will identify class members [and] their damages … and how Meta connects certain information to each other in different databases." Meta responded that it was "trying to figure out where the data is for all of these cases." At the same hearing, Plaintiffs expressed the concern that Meta's position on source code "runs the risk of making it a highly inefficient discovery process where Plaintiffs are essentially running a doc review out of the clean room at Meta." More specifically, Plaintiffs were concerned that Meta would force "Named Plaintiff database structure" discovery into the clean room, which would be a significant problem because Plaintiffs' experts had

4

DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE META'S DATA SOURCE TOOLS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

1  stated that Plaintiffs "have to know [Meta's] database structures." April 20, 2023 hearing transcript

2  at 56:3 – 60:13, 15:14-18, and 20:1-12.

3         14.    On May 1, 2023, Plaintiffs moved to compel production of answers to Interrogatory

4  Nos. 1 and 3, asking Meta to identify "Medical Provider Web-properties," defined as "healthcare

5  providers and covered entities under HIPAA or the CMIA." Dkt. 223 at 2. Plaintiffs suggested Meta

6  could use a crawler to answer the discovery. Dkt. 223 at 3-4. Meta objected, stating that "Meta does

7  not have any systematic way to identify which entities that deployed the Pixel are covered by

8  HIPAA or the CMIA." Dkt. 223 at 6. In response to Plaintiffs' suggestion that Meta could use a

9  crawler, Meta stated it "would need to build brand new tools to try to evaluate the website of any

10  entity that uses the Pixel to see if it meets Plaintiffs' criteria." Dkt. 223 at 6. At Dkt. 278, the Court

11  ordered the parties to "confer further about whether Meta can provide information—e.g., a list of

12  entities served by the Health Division, websites or web pages identified by the filter mechanism,

13  and any health-related classifications used by Meta—to facilitate the identification of information

14  responsive to Interrogatory Nos. 1 and 3. However, given Meta's representation that it does not

15  maintain the information called for by these interrogatories, the Court denied plaintiffs' request for

16  an order compelling Meta to undertake the burden of searching for indicia of HIPAA or CMIA

17  coverage on providers' websites in order to respond to them.

18         15.    On May 17, 2023, Plaintiffs filed a motion to compel production of █████████

19  documents by a date certain early in the case, explaining that "[t]he requested documents are

20  foundational documents that will inform Plaintiffs' discovery" and that "[a]ny delay in production

21  risks delaying other aspects of discovery and prejudicing the plaintiffs." Dkt. 247 at 2. "For

22  example," Plaintiffs stated, "production of documents identifying the relevant databases and fields

23  will facilitate discussions between the parties regarding Meta's production of class member data"

24  and "will assist Plaintiffs in suggesting search terms." Id. On May 23, 2023, at the hearing on the

25  motion to compel, Plaintiffs explained that they had taken the unusual step of moving for a date

26  certain for production of this specific information because it was a "foundational discovery dispute

27  … getting in the way of making progress … on moving forward [in the case] because they're so

28

1  foundational to … meet Judge Orrick's expectations to the schedule." May 23, 2023 hearing

2  transcript at 110:15 – 111:1.

3        16.    On June 1, 2023, at the Court's request, Plaintiffs submitted a statement opposing

4  appointment of a Special Master, stating that a Special Master would not be necessary in this case

5  because "instead of a Special Master, what is needed is for Meta to produce the documents

6  responsive to Plaintiffs' RFP Nos. 5-7 (see Dkt. 247) and to answer Plaintiffs other informal and

7  formal discovery requests for information in its systems." Dkt. 264

8        17.    On June 13, 2023, the Court ordered production by June 30, 2023. Dkt. 275.

9        18.    On October 3, 2023, Plaintiffs filed a motion for sanctions / to compel production of

10  the same information ordered to be produced by Dkt. 275. Dkt. 323. The motion included a

11  declaration setting forth the history of the dispute and Plaintiffs efforts to obtain the information at-

12  issue on that motion – and which continues to be at-issue on this motion. Dkt. 391-3.

13        19.    On October 17, 2023, Meta filed its opposition, arguing it had produced the relevant

14  information requested in the RFPs and submitting a declaration from Tobias Wooldridge who

15  testified that Exhibit 17 to Plaintiffs' Motion at Dkt. 323 "shows data flow associated with the Pixel"

16  and ███████████████████████████████████████████████████████████

17  ████  Dkt. 350; Dkt. 350-4, Wooldridge Decl. ¶¶ 4-5.

18        20.    On November 7, 2023, Meta told the Court at oral argument that Exhibit 17

19  ████████████████████████  November 7, 2023 sealed hearing transcript at 43:7-10.

20  Meta further stated that it relied on Exhibit 17 because ████████████████████

21  █████████████████████████████████████████████████████████

22  ███████████████████████████████████████  *Id.* at 49:6; 54:10-

23  20.

24        21.    In the same November 7, 2023 hearing the Court stated that, it was pleased "to find

25  out that Laser is indexing service for Hive" that ████████████████████████

26  █████████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████  *Id.* at

28  39:6-12. ████████████████████████████████████████████

6

DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE META'S DATA SOURCE TOOLS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

1 ████████████████████████████████████████████████████

2 ██████████████████

3     22.    The Court then asked Meta, ████████████████████████

4 ████████████████████████████████████████ *Id.* at 41:4-8.

5 Meta answered that ████████████████████████████████████████

6 ██████████████████████████████████████ *Id.* at 41:9-

7 15 (Ex. 17 was filed at Dkt. 326-12). In response, the Court stated:

8         [E]xhibit 17 is a dataflow, so it doesn't satisfy request for production
        number 6, which asks for an identification of the data sources. ████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████

12 *Id.* at 41:16-42:1. In an immediate response, Meta answered, ████████

13 ████████████████████████ *Id.* at 42:2-3

14     23.    When the Court then asked, ████████████████████████

15 ████████████████ Meta answered, ████████████ *Id.* at 42:23-25. It

16 further claimed that ████████████████████████████████████████

17 ████████████ Meta further stated, ████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████ *Id.* at 43:12-20.

23     24.    On November 13, 2023, the Court found that "Meta's production in response to RFPs

24 6 and 7 is incomplete." Dkt. 380. In Dkt. 380, the Court found that Meta had not complied with Dkt.

25 275 and ordered further production by December 11, 2023. The Court then identified ███ specific

26 categories of information that it found responsive to RFPs 6 and 7, based on the evidence presented

27 at that time, including ████████████████████████████████████████

28 ████████████████████████████████████████████████████

7

DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE META'S DATA SOURCE TOOLS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

1 ██████████████████████████████████████████████████ *Id.* at 4, n. 1. The

2 Court also ruled that Meta must produce fields and field descriptions for ██████████

3 ███████████████████████████████ Meta was ordered to produce responsive information

4 by December 11, 2023. The Court expressly ruled that "Plaintiffs have not shown that the following

5 data sources contain Pixel data or are otherwise responsive to RFP 6 or RFP 7, or that Meta failed

6 to produce documents from these sources in violation of the Court's prior order …. ZippyDB …

7 and 'log sources' other than the Hive tables."

8      25.    On December 11, 2023, Meta produced ████████████████████████

9 ████████████████████████████████████████████████████████████████

10      26.    On December 20, 2023, Plaintiffs sent Meta a deficiency letter regarding the format

11 of the production and other issues, including █████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 █████████████████████████████

14      27.    On January 3, 2024, the parties conferred regarding Plaintiffs' deficiency letter.

15 During the call, Plaintiffs identified the names of additional data sources that were missing from

16 Meta's production but that were referenced in emails and other documents that Meta had produced

17 on December 22, 2024. The parties agreed to put off the dispute on format of the production until

18 each side had a chance to review the November 2023 hearing transcript. Regarding █████████████

19 ████████████████████████████████████████████

20      28.    On January 5, 2024, Plaintiffs identified the additional data sources to Meta.

21      29.    On January 18, 2024, after reviewing the transcript of the November 2023 hearing,

22 Meta agreed to re-produce ███████████████████████████████████████ Meta's

23 production included a cover letter that explained that its December 2023 production was made by

24 ████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████

26 ██████████████████████████████████████████ It is not clear to

27 Plaintiffs and Meta has never identified the specific system used for the December 2023 production.

28 Meta explained that its January 2024 re-production would be made ██████████████████████

1 ████████████████████████████████████████████████████████

2 ██████

3     30.     On January 26, 2024, Meta re-produced ██████████████████

4 ████████████████████████████████████████████████████████

5 ██████████

6     31.     On or about January 31, 2024, the parties held a meet-and-confer at which the topic

7 of Presto arose. Plaintiffs had identified Presto as a system that could be used ████████

8 ██████████████████████████ and the parties had a dispute about discovery relating to it.

9 Meta asked Plaintiffs to provide a BATES number or some other identifier so that it could look into

10 Plaintiffs' claims. In response, Plaintiffs sent Meta an email specifically identifying and including

11 a screenshot of PIXEL_HEALTH000107355, which Plaintiffs now understand to be ████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████

16     32.     On February 2, 2024, Meta ████████████████████████████ and

17 stated that it would produce ████████████████████████████████████

18 ████

19     33.     On February 8, 2024, Plaintiffs served Requests for Inspection of systems to identify

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████

23     34.     On March 1, 2024, the parties held another meet-and-confer where Plaintiffs asked

24 when Meta would produce ████████████████████████████████████ and

25 expressed concerns that, based on Plaintiffs' review of additional documents produced by Meta, that

26 it was either violating Dkt. 380 or had made false or misleading statements to the Court that it should

27 correct. At the end of the call, Meta requested that Plaintiffs identify those statements in writing.

28

35.     On March 4, 2024, Plaintiffs provided Meta with a letter identifying the specific statements in question, requesting a final lead counsel meet-and-confer by Monday, March 12, 2024, regarding its compliance with Dkt. 380, and proposing a path forward that would not involve Court intervention – including proposals that Meta either use or provide Plaintiffs with access to tools to obtain the documents at issue on this motion, including Daiquery.

36.     On March 14, 2024, the parties held the "final" lead counsel meet-and-confer regarding Meta's compliance with Dkt. 380 and requests for inspection of systems and tools (including Daiquery) ███████████████████████████████████████████ ███████████████████████████████████████ At the start of the call, Meta announced for the first time that it would be seeking a protective order limiting discovery to certain tables. Meta stated that the reason for this is that Plaintiffs were asking too many questions about data systems and sources and that those questions were getting in the way of making progress on discovery. However, when Plaintiffs asked Meta to identify the tables that would be the subject of the motion, Meta announced impasse and told Plaintiffs that Meta would send its half of a joint letter brief soon. When Plaintiffs asked Meta to identify the specific relief it would seek, Meta again told Plaintiffs that it would send its half of a joint letter brief.

37.     As the March 14 call continued, Plaintiffs asked Meta questions about ██████████ ███████████████████████████████████████████████ Meta answered, for the first time, by claiming █████████████████████████████████████████████ ████████████████████████████████ In response, Plaintiffs asked if Meta would use its tools to extract and produce fields and field descriptions ██████████████ ████ Meta took the position that it would be overly burdensome for Meta to use the tools. Plaintiffs next offered to relieve Meta of the burden by permitting Plaintiffs to use the tool, consistent with Plaintiffs' Requests for Inspection that were served on February 8, 2024. Meta objected to letting Plaintiffs use the tool, taking the position that Plaintiffs' remedy was ██████████████████████

38.     On March 14, 2024, Meta sent its half of a joint letter brief.

39.     On March 18, 2024, Plaintiffs sent Meta a letter outlining concerns with Meta's joint letter brief and requesting a lead counsel meet-and-confer.

10

40.     On March 20, 2024, the parties conferred again. On that call, Meta admitted that ███████ ████████████████████████████████████████████████████████████ ████████████████████ Among other things, Plaintiffs informed Meta that its Joint Letter Brief appeared to be brought for an improper purpose because Meta was seeking to limit discovery into ███████████████████████████████████████████ before it had even complied with Dkt. 380 and was ignoring Plaintiffs' request that Meta use the tools it has available to provide more information before burdening the Court with the motion. Meta threatened to file the motion unilaterally within an hour of the end of the call. Plaintiffs told Meta that they would respond in writing the next day – and confirmed the same in a follow-up email.

41.     On March 21, 2024, Meta filed its unilateral motion at Dkt. 434 before Plaintiffs could respond, asserting that the Hive █████████████████████ (citing Dkt. 14-3, ¶¶ 33-39) but that Meta had identified "the ████████ Hive tables ███████████████████ Dkt. 434 at 1. In the motion, Meta limited the tables for which it would limit discovery to ████████████████ ██████████████████████████████████████ Meta stated that these were ██████████████████████████████ stating that ████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Dkt. 434 at 2.

42.     On March 22, 2024, the Court ordered Plaintiffs to file their response to Meta's motion by close of business the same day. The Court also expressly prohibited the parties from filing any further motions or briefs. Dkt. 436

43.     On March 22, 2024, Plaintiffs timely filed their response, which focused on defeating Meta's motion rather than making an affirmative motion to compel. Dkt. 438.

44.     On March 21, 2024 (five hours after Plaintiffs filed their response), Meta provided a supplemental answer to Plaintiffs' Interrogatory No. 5 which identified systems named ████████ █████████████████████████████████ (In Dkt. 380, the Court had expressly ruled that ZippyDB was irrelevant or unresponsive based on discovery to that point. ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ )

45. On March 28, 2024, Meta produced ████████████████████████

46. On April 9, 2024, Meta identified ██████████████████████████████████

███████████████████████████

47. On April 9, 2024, Meta also made the following statements:

    a. Regarding ████████████████ Meta told the Court that ████████████████████ April 9, 2024 sealed hearing transcript at 62:1-8.

    b. Regarding a ████████████████████ Meta told the Court that " ██████████████████████████ *Id.* at 62:9-18.

    c. Regarding ████████████ Meta told the Court that that ████████████████ ████████████ *Id.*. at 62:19-25.

48. On April 10, 2024, the Court issued a ruling stating that Plaintiffs had "not yet raised any issues of non-compliance [with Dkt. 380] with the Court" and found that the parties had "not adequately conferred" over Meta's production of data sources. The Court ordered Plaintiffs to identify additional data sources for which it sought fields and field descriptions by April 24, 2024. The Court further stated that, "if … there is a more efficient and less burdensome means to identify potentially relevant data sources and data fields than by review of Meta's source code, the Court expects Meta to diligently investigate these alternative means." The Court ordered the parties to provide a status report no later than May 8, 2024. It further stated that "the status report shall identify the issues in dispute, *without argument*, and shall propose an efficient means for presenting the remaining issues to the Court for resolution." Emphasis in original.

49. On April 17, 2024, Meta identified ██████████████████████████████████ ████████████████████████████████████████████ was included in Exhibit 17 or Meta's December 2023 production. Prior to this disclosure, Plaintiffs had never heard of ████████ and, to the best of their review, ████████████ is identified in any prior document produced by Meta in the litigation. With the ████ new additions, Meta's own identification of responsive tables had ████████████████████████ since the filing of its motion for protective order.

12

DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE META'S DATA SOURCE TOOLS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

50. On April 24, 2024, Plaintiffs identified ██ data sources for which they asked Meta to produce fields and field descriptions or their equivalents (if it had not already done so) and ████ ███████████████████████ Plaintiffs chose these data sources because they either ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████

51. On April 24, 2024, Plaintiffs also requested that Meta use the following tools to identify relevant data sources and data fields: (1) Daiquery, ██████████████████████ ████████████████████████████████████████████████████████ ███████████████ Plaintiffs also expressed concern that Meta had not identified tables that ████████████████████████████████████████████████

52. On May 7, 2024, Meta agreed to produce fields and field descriptions for some sources (but not others). It then later told Plaintiffs that it would not produce ████████ Of the identified data sources, Meta has produced or promised to produce fields for ██; been non-committal for ██ and stated it would not produce fields for ██ For the ██ data sources for which Meta has produced or promised to produce fields and field descriptions, the parties currently dispute whether Meta should also produce ████████████████████████████ Plaintiffs can get a better understanding of how it can be helpful for class-wide use. However, the issue has not yet reached impasse and Plaintiffs hope to avoid burdening the Court with it.

53. On May 8, 2024, the parties filed the status update ordered by the Court. Plaintiffs noted their position that "it would be prejudicial to brief the sampling issue before briefing the data sources, fields, and field descriptions issue." Dkt. 473.

54. On May 9, 2024, the Court ordered briefing on class-wide production versus sampling for ████████ data sources by May 24, 2024. Dkt. 477.

55. On or about May 10, 2024, Meta stated on a call with Plaintiffs that it would ████ ████████████████████████████████████████████████████████ ████████████████

13

DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE META'S DATA SOURCE TOOLS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

56.     On May 29, 2024, Meta produced ██████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████

57.     Prof. Shafiq summarizes key points of additional information learned from the ██████
Meta produced on May 29, 2024. *See* Shafiq Declaration.

58.     Based on Meta's statements during meet-and-confers, Plaintiffs reasonably believe
that Meta ███████████████████████████████████████ Although Plaintiffs had requested such
information formally and informally, Meta's production did not include ████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████

59.     On June 5, 2024, Plaintiffs asked Meta for a final lead counsel meet-and-confer on
the tools and data sources issue. Plaintiffs specifically raised the issue that ████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████ As part of that, Plaintiffs provided Meta with
the first four pages of Exhibit 1 detailing how they would use the Daiquery tool if provided access
to it pursuant to the Requests for Inspection originally served on February 8, 2024. The document

60. On June 10, 2024, the parties conferred again, at which time:

    a. Meta refused to use Daiquery █████████████████████████
██████████████████████████████████████

    b. Meta disputed that ███████████████████████████████
████████████████

    c. Meta and Plaintiffs continued discussions about other non-Daiquery tools, such as ██████████████████████

    d. Meta agreed to identify ████████████████████████████ This agreement relates to a dispute regarding Interrogatory Nos .1 and 3 that is also related to ████████████

    e. Meta agreed to produce ██████████████████████████████████
█████████████████ The parties are still negotiating this issue.

    f. Plaintiffs asked Meta about ██████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

61. On June 11, 2024, Plaintiffs informed Meta of a further methodology to reduce burden by eliminating irrelevant tables identified through Daiquery. Plaintiffs informed Meta that they had used the methodology to eliminate ██████████ tables identified in Meta's May 29, 2024, from further investigation. On June 12, 2024, Plaintiffs provided Meta with a written description of their methodology and an Excel spreadsheet with the results.

62. A document produced by Meta on June 21, 2024 discloses that the ████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████. (PIXEL_HEALTH000300957).

1    Accordingly, Plaintiffs have added █████████████████████████████████████

2    █████████████████████████████

3        63.    Meta provided the Declaration of Qiwen ('Carrol') Xia to Plaintiffs at 9:49 p.m. PST

4    on June 28, 2024 after having possessed the initial declarations filed by the Plaintiffs on this motion

5    for more than two weeks. Ms. Xia makes several claims about the systems at issue. For example,

6    Xia states that my declaration is inaccurate in stating that on "January 26, 2024, at Plaintiffs' request,

7    ███████████████████████████████████████████████████████████████████████

8    Xia ¶ 9. Instead, Xia says that ███████████████████████████████████████████

9    ███████████████████████████████████████████████████████████████████████

10   ██████████████████████████████████████' Id. However, this was the first such explanation

11   that Plaintiffs have received. My understanding of Meta's process was based on conversations with

12   counsel regarding Meta's efforts and █████████████████████████████████████████

13   ███████████████████████████████████████████ Those conversations (and

14   letters) began nearly immediately after Meta's December 11, 2023 production and initially reached

15   impasse on March 15, 2024. Generally speaking, Meta refuses to answer specific questions Based

16   on Xia's explanation, it now appears to me that ████████████████████████████████

17   ██████████████████████████████████

18       64.    Mr. Wooldridge addresses specific tables for which Plaintiffs sought additional

19   information. Plaintiffs identified these tables after consulting with Dr. Hashmi, who ███████████

20   ███████████████████████████████

21       65.    Mr. Wooldridge also criticizes Plaintiffs' ████████████████████████████

22   ███████████████████████████████████████████████████████████████████████

23   Those tables were included in Plaintiffs' request ████████████ because those tables were identified

24   by Meta ████████████████████████████████████████████████████████████████

25   ██████████████████████████

26       66.    Mr. Woolridge notes in several places in his declaration that much of the data

27   Plaintiffs seek that Meta refuses to produce is "████████████████████████████████████

28   ██████████████████████████████████" Because ██████████████████████████ is among the

16

1  most highly relevant information in this case— ████████████████████████████

2  ██████████████████████████████████████████████████████████ Plaintiffs'

3  RFP 6 asks for "[d]ocuments sufficient to identify the databases, logs, or other electronic sources

4  where Meta receives, re-directs, or stores event-level and/or *derived* data collected through and

5  associated with the Meta Pixel for Medical Provider Web-Properties." Dkt. No. 324-1 at ECF 3

6  (emphasis added). RFP 7 asks for "[d]ocuments sufficient to identify and describe each of the fields

7  in databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level

8  and/or *derived* data collected through and associated with the Meta Pixel for Medical Provider Web-

9  Properties . . . [including] data dictionaries." *Id.* (emphasis added).

10      67.     In the Court's order on Plaintiffs' motion to compel, it ordered Meta to produce "the

11  specific Hive tables that Meta has identified during its investigation as containing Pixel data," and

12  the Court stated that this was based on the premise that "Meta represents that it has undertaken a

13  thorough investigation of the Hive tables that store event-level and *derived* Pixel data." Dkt. No.

14  380 (emphasis added)..

15      68.     It is not clear to Plaintiffs and they have not received a definitive answer from Meta

16  regarding ████████████████████████████████████████████████████████████

17  ████ – two additional relevant data sources first identified by Meta as relevant on March 22, 2024.

18  The parties are still discussing whether and how Meta should produce responsive ████████████

19  ██████ for these systems. For now, Plaintiffs proposed relief is that Meta ████████████████

20  ████████████████████████████████████████████████████

21      69.     Meta's failure to produce ██████████████████ has substantially impaired

22  Plaintiffs' ability to identify the appropriate tables for production of class member and Named

23  Plaintiff data– or to do so in an efficient manner. For example, at this point, it appears that

24  ████████████████████████████████████████████████████████████████████████

25  ██████████████████████████ However, Meta refuses to provide Plaintiffs any information about

26  whether it preserved data from these tables (or any other tables).

27

28

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 1st day of July, 2024.

By: */s/ Jason 'Jay' Barnes*
Jason 'Jay' Barnes

# DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS

Filed under seal

pursuant to protective order.

# EXHIBIT 1

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000449558

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000449559

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000449560

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000449564

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000449565

# DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS

Filed under seal

pursuant to protective order.

# EXHIBIT 2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000295794

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000295799

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS

Filed under seal

pursuant to protective order.

# EXHIBIT 3

# RFPs 6 and 7

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone     (415) 393-4622
Facsimile     (415) 801-7389

ANDREW M. KASABIAN, SBN 313210
333 South Grand Avenue
Los Angeles, CA 90071 USA
Telephone     (213) 229-7311
Facsimile     (213) 229-6311
akasabian@gibsondunn.com

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT META PLATFORMS, INC., SET ONE** |
| All Actions | |

PROPOUNDING PARTY:  PLAINTIFFS

RESPONDING PARTY:     META PLATFORMS, INC.

SET NO.:     ONE

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1    Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"),

2  by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

3  Rules") 26 and 34, and the Civil Local Rules of the U.S. District Court for the Northern District of

4  California ("Local Rules"), hereby provides the following responses and objections to Plaintiffs'

5  Requests for Production to Defendant Meta Platforms, Inc., Set One (each a "Request," and together,

6  the "Requests"), dated February 9, 2023, as follows:

7  **PRELIMINARY STATEMENT**

8    1.    Meta's responses to the Requests are made to the best of its current knowledge,

9  information, belief, and understanding of the Requests.  Meta's factual and legal investigation of this

10  matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the

11  Requests, many of which are overbroad or otherwise objectionable.  Meta reserves the right to

12  supplement or amend any responses in accordance with any agreement between the parties or should

13  future investigation indicate that such supplementation or amendment is necessary.

14    2.    Meta's responses to the Requests are made solely for the purpose of and in relation to

15  the above-captioned action.  Each response is given subject to all appropriate objections (including,

16  but not limited to, objections concerning privilege, competency, relevancy, materiality, propriety, and

17  admissibility).  All objections are reserved and may be interposed at any time.

18    3.    Meta's responses include only information that is within Meta's possession, custody,

19  or control.

20    4.    Meta incorporates by reference each and every general objection set forth below into

21  each and every specific response.  From time to time, a specific response may repeat a general

22  objection for emphasis or some other reason.  The failure to include any general objection in any

23  specific response shall not be interpreted as a waiver of any general objection to that response.

24    5.    Nothing contained in these Responses and Objections or provided in response to the

25  Requests consists of, or should be construed as, an admission relating to the accuracy, relevance,

26  existence, or nonexistence of any alleged facts or information referenced in any Request.

27

28

Gibson, Dunn &
Crutcher LLP

1

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

**GENERAL OBJECTIONS**

1.      Meta generally objects to each Request, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties.  Meta will construe and respond to the Requests in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.      Meta generally objects to each Request to the extent it seeks documents and information that are irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or are of such marginal relevance that their probative value is outweighed by the burden imposed on Meta in having to provide such information, including any request that seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

3.      Meta generally objects to each Request to the extent the Request is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks documents or communications that are otherwise responsive to other specific Requests.

4.      Meta generally objects to the Requests, including the Definitions and Instructions, on the basis that they specify an overbroad and unduly burdensome relevant time period, and seek documents and things outside of the time period relevant to the claims and defenses asserted in this lawsuit.

5.      Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production of "any" or "all" documents or communications concerning the subject matters referenced therein.

6.      Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they do not identify the documents sought with reasonable particularity as required by Fed. R. Civ. P. § 34(b)(1)(A).

Gibson, Dunn & Crutcher LLP

2

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

7.     Meta generally objects to the Requests, including the Definitions and Instructions, to the extent they conflict with or ask for metadata or information beyond that required by any Electronically Stored Information Protocol entered in this action.

8.     Meta generally objects to each Request on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation, in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client communications, are covered under the common-interest privilege and/or joint-defense privilege, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s).  Meta hereby asserts all such applicable privileges and protections, and excludes privileged and protected information from its responses to each Request.  *See generally* Fed. R. Evid. 502.  The production of any information or documents that are privileged or otherwise immune from discovery and any subsequent use and/or clawback of such information or documents is governed by the 502(d) Order to be entered in this case.

9.     Meta generally objects to each Request to the extent that it requests information that is confidential, proprietary, or competitively sensitive.  To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Requests and not otherwise objectionable, Meta will produce such documents in accordance with the Protective Order to be entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information.  Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

10.     Meta generally objects to each Request to the extent that any regulatory body, governmental agency, or governmental entity objects to the production of the requested documents.

11.     Meta generally objects to the Requests to the extent that the information sought is more appropriately pursued through another discovery tool.

12.     Meta generally objects to each Request to the extent it is argumentative, lacks foundation, or incorporates allegations and assertions that are disputed or erroneous.  In furnishing

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1  the responses herein, Meta does not concede the truth of any factual assertion or implication

2  contained in any Request, Definition, or Instruction.

3      13.    Meta generally objects to each Request, Definition, and Instruction to the extent that it

4  seeks information outside of Meta's possession, custody, or control.

5      14.    Meta generally objects to each Request on the grounds and to the extent that

6  production of such information demanded therein would violate the right of privacy of third parties

7  under California law or other applicable laws of any relevant jurisdiction, or that such production is

8  otherwise prohibited by law, or is subject to legal requirements for notification of third parties.  Such

9  laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

10  ("SCA").

11      15.    To the extent Plaintiffs have requested or will seek the same documents from third

12  parties, Meta objects to the Requests as duplicative, cumulative, and as seeking documents that are

13  obtainable from other sources that are more convenient, less burdensome, or less expensive.

14      16.    Meta generally objects to the Requests to the extent that they purport to impose an

15  obligation to conduct anything beyond a reasonable and diligent search of reasonably accessible files

16  (including electronic files) where responsive documents reasonably would be expected to be found.

17  Any Requests that seek to require Meta to go beyond such a search are overbroad and unduly

18  burdensome.

19      17.    Meta's willingness to provide any document or information in response to a Request

20  shall not be interpreted as an admission that such document or information exists, that it is relevant to

21  a claim or defense in this action, or that it is admissible for any purpose.  Meta does not waive its

22  right to object to the admissibility of any document or information produced by any party on any

23  ground.

24  **OBJECTIONS TO DEFINITIONS**

25      1.    Meta objects to the Plaintiffs' definitions of "any" and "all" on the grounds that Meta

26  cannot guarantee that it has located every single document responsive to a particular Request.  Such

27  requests are overbroad and any attempt to respond would be unduly burdensome, expensive, and

28

Gibson, Dunn &
Crutcher LLP

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

oppressive, and seek information that is not relevant or proportional to the subject matter of the litigation.

2.     Meta objects to Plaintiffs' definitions of "Communication," "Document(s)," "Electronic Media," "Electronically Stored Information," "Information," "Policy," and "Policies" to the extent that Plaintiffs purport to use these defined terms to request the identification and disclosure of documents that:  (a) were prepared in anticipation of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws, and/or rules.  Meta further objects to the extent that these definitions purport to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.  Meta will construe these terms in accordance with the Federal Rules and the Local Rules.

3.     Meta objects to Plaintiffs' definition of "Employee(s)" and its inclusion of "any person who acted or purported to act on behalf of any Facebook entity."  Meta objects to this definition to the extent it encompasses individuals over whom Meta exercises no control or includes individuals who took action purportedly on Meta's behalf but without authorization from Meta.  Meta will construe this definition so as to include the following:  individuals employed by Meta and/or individuals authorized and directed by Meta to act on Meta's behalf.

4.     Meta objects to Plaintiffs' definition of "Facebook," "Defendant," "Meta," "You," and "Your" and its inclusion of "its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions," as overbroad and unduly burdensome to the extent the terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent Plaintiffs purport to use the terms to impose obligations on Meta that go beyond the requirements of the Federal Rules and the Local Rules.  Meta further objects to this definition to the extent that Plaintiffs purport to use this defined term to seek documents that are not relevant to the claims and defenses in this action, including Meta's subsidiaries and products

Gibson, Dunn & Crutcher LLP

5

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1  not at issue in this litigation.  Meta will construe the terms "Defendant," "Facebook," "You," and

2  "Your" so as to include the following: Meta Platforms, Inc. and its officers and employees.

3         5.      Meta objects to Plaintiffs' definition of "Filter" to the extent it refers to a definition of

4  "Filter" in "Exhibit A" because there are no references to "Filter" in Exhibit A to the Requests.  Meta

5  will construe the term "Filter" as referring to its health-related integrity system which was developed

6  to filter out potentially sensitive health data it detects.

7         6.      Meta objects to Plaintiffs' definition of "HIPAA Authorization" to the extent it

8  incorrectly references the Code of Federal Regulations as 45 C.F.R. § 508.  Meta will construe the

9  term "HIPAA Authorization" as described in 45 C.F.R. § 164.508.

10         7.      Meta objects to the Plaintiffs' definition of "Medical Provider" as vague, ambiguous,

11  overbroad, and unduly burdensome.  Meta further objects to this definition to the extent Plaintiffs

12  purport to use this defined term to seek information that is not relevant to the claims and defenses in

13  this action, including, for example, the undefined term "health-related services" that expands the

14  scope of the defined term beyond the allegations in this action.  Meta will construe this term to refer

15  to the entities identified in the Consolidated Amended Complaint: MedStar Health. Inc., Rush

16  University System for Health, WakeMed & Health, Ohio State University Wexner Medical Center,

17  and North Kansas City Hospital.

18         8.      Meta objects to the Plaintiffs' definition of "Patient Portal" as vague, ambiguous,

19  overbroad, and unduly burdensome.  Meta further objects to this definition to the extent Plaintiffs

20  purport to use this defined term to seek information that is not relevant to the claims and defenses in

21  this action, including, for example, its broad reference to "Web-Propert[ies]" that are used by

22  Medical Providers" for undefined "communicat[ions] with patients" that expands the scope of the

23  defined term beyond the allegations in this action.  Meta will construe this term to refer to a "Patient

24  Portal," if any, connected to a Medical Provider as defined herein.

25         9.      Meta objects to Plaintiffs' definition of "Personal Information" as overbroad, vague,

26  and ambiguous to the extent it purports to include information that "is capable of being associated

27  with," or "could reasonably be linked, directly or indirectly, with" and information including the

28  "Persons' preferences, characteristics, psychological trends, predispositions, behaviors, attitudes,

Gibson, Dunn &
Crutcher LLP

6

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

intelligence, abilities, or aptitudes." Meta further objects to this definition insofar as it purports that any one of these criteria, standing alone, is enough to identify specific persons. Meta further objects to the extent that this definition purports to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.

## OBJECTIONS TO INSTRUCTIONS

1.      Meta objects to Plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

2.      Meta objects to Plaintiffs' "Instructions" to the extent that they are inconsistent with or purport to impose obligations inconsistent with or beyond the ESI Protocol and Protective Order to be entered in this action. To the extent Meta produces documents or other ESI in response to the Requests, Meta will do so in accordance with the ESI Protocol and Protective Order.

3.      Meta objects to Instruction No. 1 to the extent it seeks documents or information in the possession of any individual(s), entit(ies), or any other person(s) over whom Meta exercises no control.

4.      Meta objects to Instruction No. 3 to the extent it defines the Relevant Time Period. Meta understands that Plaintiffs seek to meet and confer on this issue.

5.      Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner." Meta will construe undefined terms as it understands them.

## OBJECTIONS TO RELEVANT TIME PERIOD

1.      Meta objects to the Relevant Time Period to the extent it calls for the production of documents that are from a time before or after the events or circumstances relevant to this action. Specifically, Meta objects to the Relevant Time Period "run[ning] from the date when Meta released the Meta Pixel" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Meta construes the Relevant Time Period as April 1, 2018 to February 21, 2023.

Gibson, Dunn &
Crutcher LLP

7

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1     (E)     Meta objects to this Request to the extent it calls for the production of confidential,

2  proprietary, or trade secret information and will not produce any such documents implicating

3  confidential, proprietary, or trade secret information in this case until a protective order or other

4  protocol containing sufficient protections is entered in this case.  Meta objects to producing or

5  providing information relating to any non-public source code, and/or producing or making available

6  for inspection non-public source code itself in original or native format (or otherwise), until sufficient

7  protections containing appropriately tailored confidentiality and source code provisions are entered in

8  the case.

9     Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

10  discovery in this action, Meta responds as follows:  Meta will conduct a reasonable search for, and

11  produce, responsive, non-privileged documents sufficient to show the data flow through which Meta

12  received information via the Meta Pixel from Medical Provider Web-Properties during the Relevant

13  Time Period, to the extent such documents exist, are reasonably accessible, and are within Meta's

14  possession, custody, or control.

15  **REQUEST FOR PRODUCTION NO. 6:**

16     Documents sufficient to identify the databases, logs, or other electronic sources where Meta

17  receives, re-directs, or stores event-level and/or derived data collected through and associated with

18  the Meta Pixel for Medical Provider Web-Properties, Including those listed in Exhibit A.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

20     Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

21  Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

22  forth in this Response.  Meta further objects to this Request on the following additional grounds:

23     (A)     Meta objects to this Request as vague and ambiguous as to its use of the terms

24  "databases," "logs," "other electronic sources," "derived data," and "collected through and associated

25  with the Meta Pixel."

26     (B)     Meta objects to this Request on the grounds that it fails to describe the documents

27  sought with reasonable particularity given its use of the vague and undefined terms "databases, logs,

28  or other electronic sources" and, depending on how those terms are defined, seeks information not

Gibson, Dunn &
Crutcher LLP

12

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1   relevant to Plaintiff's claims.  It is further unclear what documents are contemplated by the phrase

2   "[d]ocuments sufficient to identify the databases, logs, or other electronic sources where Meta

3   receives, re-directs, or stores event-level and/or derived data."

4       (C)      Meta objects to this Request as seeking information that is irrelevant to the claims in,

5   or defenses to, this action and disproportionate to the needs of the case, including that the Request

6   seeks information unlimited in time and scope.

7       (D)      Meta objects to this Request to the extent it calls for the production of confidential,

8   proprietary, or trade secret information and will not produce any such documents implicating

9   confidential, proprietary, or trade secret information in this case until a protective order or other

10  protocol containing sufficient protections is entered in this case.  Meta objects to producing or

11  providing information relating to any non-public source code, and/or producing or making available

12  for inspection non-public source code itself in original or native format (or otherwise), until sufficient

13  protections containing appropriately tailored confidentiality and source code provisions are entered in

14  the case.

15      Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

16  discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

17  about this overly broad Request.  Meta reserves the right to supplement its objections and response to

18  this Request.

19  **REQUEST FOR PRODUCTION NO. 7:**

20      Documents sufficient to identify and describe each of the fields in databases, logs, or other

21  electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected

22  through and associated with the Meta Pixel for Medical Provider Web-Properties, Including those

23  listed in Exhibit A.  This request includes, but is not limited to, data dictionaries.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

25      Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

26  Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

27  forth in this Response.  Meta further objects to this Request on the following additional grounds:

28

Gibson, Dunn &
Crutcher LLP

13

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

(A)      Meta objects to this Request as vague and ambiguous as to its use of the terms "databases," "logs," "other electronic sources," "derived data," and "collected through and associated with the Meta Pixel," and "data dictionaries."

(B)      Meta objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity given its use of the vague and undefined terms "fields in databases, logs, or other electronic sources" and "data dictionaries," and, depending on how those terms are defined, seeks information not relevant to Plaintiff's claims.  Meta further objects to this Request on the grounds that it is unclear what documents are contemplated by the phrase "[d]ocuments sufficient to identify and describe each of the fields."

(C)      Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information unlimited in time and scope.

(D)      Meta objects to this Request to the extent it calls for the production of confidential, proprietary, or trade secret information and will not produce any such documents implicating confidential, proprietary, or trade secret information in this case until a protective order or other protocol containing sufficient protections is entered in this case.  Meta objects to producing or providing information relating to any non-public source code, and/or producing or making available for inspection non-public source code itself in original or native format (or otherwise), until sufficient protections containing appropriately tailored confidentiality and source code provisions are entered in the case.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs about this overly broad Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to identify how the databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected through and associated

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

(B)     Meta objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, and/or any other applicable privileges and protections.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs about this overly broad Request.  Meta reserves the right to supplement its objections and response to this Request.

DATED:  March 13, 2023                         GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Lauren R. Goldman*
       Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant Meta Platforms, Inc.*

Gibson, Dunn &
Crutcher LLP

82

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

# RFPs
# 149, 150, 165

1   GIBSON, DUNN & CRUTCHER LLP                COOLEY LLP
    LAUREN R. GOLDMAN (*admitted pro hac vice*)   MICHAEL G. RHODES, SBN 116127
2   lgoldman@gibsondunn.com                    rhodesmg@cooley.com
    DARCY C. HARRIS (*admitted pro hac vice*)   KYLE C. WONG, SBN 224021
3   dharris@gibsondunn.com                     kwong@cooley.com
    200 Park Avenue                            CAROLINE A. LEBEL, SBN 340067
4   New York, NY 10166                         clebel@cooley.com
    Telephone:    (212) 351-4000               3 Embarcadero Center, 20th Floor
5   Facsimile:    (212) 351-4035               San Francisco, CA 94111-4004
                                               Telephone:   (415) 693-2000
6   ELIZABETH K. MCCLOSKEY, SBN 268184         Facsimile:   (415) 693-2222
    emccloskey@gibsondunn.com
7   ABIGAIL A. BARRERA, SBN 301746
    abarrera@gibsondunn.com
8   555 Mission Street, Suite 3000
    San Francisco, CA 94105
9   Telephone     (415) 393-4622
    Facsimile     (415) 801-7389
10
    ANDREW M. KASABIAN, SBN 313210
11  333 South Grand Avenue
    Los Angeles, CA 90071 USA
12  Telephone     (213) 229-7311
    Facsimile     (213) 229-6311
13  akasabian@gibsondunn.com

14  *Attorneys for Defendant Meta Platforms, Inc.*

15
                    **UNITED STATES DISTRICT COURT**
16            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN FRANCISCO DIVISION**
17

18
    IN RE META PIXEL HEALTHCARE          | Case No. 3:22-cv-03580-WHO
19  LITIGATION                           |
                                         | CLASS ACTION
20  ──────────────────────────────────
                                         | **DEFENDANT META PLATFORMS, INC.'S**
21  This Document Relates To:            | **RESPONSES AND OBJECTIONS TO**
                                         | **PLAINTIFFS' REQUESTS FOR**
    All Actions                          | **PRODUCTION TO DEFENDANT META**
22                                       | **PLATFORMS, INC., SETS TWO – SIX**
23

24          **PROPOUNDING PARTY:  PLAINTIFFS**

25          **RESPONDING PARTY:    META PLATFORMS, INC.**

26          **SET NOS.:    TWO – SIX**

27

28

Gibson, Dunn &
Crutcher LLP

1    Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"),

2  by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

3  Rules") 26 and 34, and the Civil Local Rules of the U.S. District Court for the Northern District of

4  California ("Local Rules"), hereby provides the following responses and objections to Plaintiffs'

5  Requests for Production to Defendant Meta Platforms, Inc., Sets Two, Three, Four, Five, and Six

6  (each a "Request," and together, the "Requests"), dated May 23, 2023, as follows:

7  **PRELIMINARY STATEMENT**

8    1.    Meta's responses to the Requests are made to the best of its current knowledge,

9  information, belief, and understanding of the Requests.  Meta's factual and legal investigation of this

10  matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the

11  Requests, many of which are overbroad or otherwise objectionable.  Meta reserves the right to

12  supplement or amend any responses in accordance with any agreement between the parties or should

13  future investigation indicate that such supplementation or amendment is necessary.

14    2.    Meta's responses to the Requests are made solely for the purpose of and in relation to

15  the above-captioned action.  Each response is given subject to all appropriate objections (including,

16  but not limited to, objections concerning privilege, competency, relevancy, materiality, propriety, and

17  admissibility).  All objections are reserved and may be interposed at any time.

18    3.    Meta's responses include only information that is within Meta's possession, custody,

19  or control.

20    4.    Meta incorporates by reference each and every general objection set forth below into

21  each and every specific response.  From time to time, a specific response may repeat a general

22  objection for emphasis or some other reason.  The failure to include any general objection in any

23  specific response shall not be interpreted as a waiver of any general objection to that response.

24    5.    Nothing contained in these Responses and Objections or provided in response to the

25  Requests consists of, or should be construed as, an admission relating to the accuracy, relevance,

26  existence, or nonexistence of any alleged facts or information referenced in any Request.

27    6.    In compliance with the Federal Rules, where Meta has agreed to search for and

28  produce documents, it does not intend to withhold responsive, non-privileged documents in its

Gibson, Dunn &
Crutcher LLP

1

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

possession, custody, or control that are reasonably accessible. Meta has noted both where it does not possess responsive documents or where any limitations will control its search for responsive and relevant materials.

**GENERAL OBJECTIONS**

1. Meta generally objects to each Request, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties. Meta will construe and respond to the Requests in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2. Meta generally objects to each Request to the extent it seeks documents and information that are irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or are of such marginal relevance that their probative value is outweighed by the burden imposed on Meta in having to provide such information, including any request that seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

3. Meta generally objects to each Request to the extent the Request is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks documents or communications that are otherwise responsive to other specific Requests.

4. Meta generally objects to the Requests, including the Definitions and Instructions, on the basis that they specify an overbroad and unduly burdensome relevant time period, and seek documents and things outside of the time period relevant to the claims and defenses asserted in this lawsuit.

5. Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production of "any" or "all" documents or communications concerning the subject matters referenced therein.

6. Meta generally objects to the Requests, including the Definitions and Instructions, to

Gibson, Dunn &
Crutcher LLP

2

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

the extent that they do not identify the documents sought with reasonable particularity as required by Fed. R. Civ. P. § 34(b)(1)(A).

7.     Meta generally objects to the Requests, including the Definitions and Instructions, to the extent they conflict with or ask for metadata or information beyond that required by any Electronically Stored Information Protocol entered in this action.

8.     Meta generally objects to each Request on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation, in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client communications, are covered under the common-interest privilege and/or joint-defense privilege, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s).  Meta hereby asserts all such applicable privileges and protections, and excludes privileged and protected information from its responses to each Request.  *See generally* Fed. R. Evid. 502.  The production of any information or documents that are privileged or otherwise immune from discovery and any subsequent use and/or clawback of such information or documents is governed by the 502(d) Order entered in this case.

9.     Meta generally objects to each Request to the extent that it requests information that is confidential, proprietary, or competitively sensitive.  To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Requests and not otherwise objectionable, Meta will produce such documents in accordance with the Protective Order entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information.  Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

10.     Meta generally objects to each Request to the extent that any regulatory body, governmental agency, or governmental entity objects to the production of the requested documents.

11.     Meta generally objects to the Requests to the extent that the information sought is more appropriately pursued through another discovery tool.

12.     Meta generally objects to each Request to the extent it is argumentative, lacks foundation, or incorporates allegations and assertions that are disputed or erroneous.  In furnishing the responses herein, Meta does not concede the truth of any factual assertion or implication contained in any Request, Definition, or Instruction.

13.     Meta generally objects to each Request, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

14.     Meta generally objects to each Request on the grounds and to the extent that production of such information demanded therein would violate the right of privacy of third parties under California law or other applicable laws of any relevant jurisdiction, or that such production is otherwise prohibited by law, or is subject to legal requirements for notification of third parties.  Such laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA").

15.     To the extent Plaintiffs have requested or will seek the same documents from third parties, Meta objects to the Requests as duplicative, cumulative, and as seeking documents that are obtainable from other sources that are more convenient, less burdensome, or less expensive.

16.     Meta generally objects to the Requests to the extent that they purport to impose an obligation to conduct anything beyond a reasonable and diligent search of reasonably accessible files (including electronic files) where responsive documents reasonably would be expected to be found. Any Requests that seek to require Meta to go beyond such a search are overbroad and unduly burdensome.

17.     Meta's willingness to provide any document or information in response to a Request shall not be interpreted as an admission that such document or information exists, that it is relevant to a claim or defense in this action, or that it is admissible for any purpose.  Meta does not waive its right to object to the admissibility of any document or information produced by any party on any ground.

**OBJECTIONS TO DEFINITIONS**

1.     Meta objects to the Plaintiffs' definitions of "any" and "all" on the grounds that Meta cannot guarantee that it has located every single document responsive to a particular Request.  Such

Gibson, Dunn &
Crutcher LLP

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

requests are overbroad and any attempt to respond would be unduly burdensome, expensive, and oppressive, and seek information that is not relevant or proportional to the subject matter of the litigation.

2.      Meta objects to Plaintiffs' definitions of "Communication," "Document(s)," "Electronic Media," "Electronically Stored Information," "Information," "Policy," and "Policies" to the extent that Plaintiffs purport to use these defined terms to request the identification and disclosure of documents that:  (a) were prepared in anticipation of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws, and/or rules.  Meta further objects to the extent that these definitions purport to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.  Meta will construe these terms in accordance with the Federal Rules and the Local Rules.

3.      Meta objects to Plaintiffs' definition of "Employee(s)" and its inclusion of "any person who acted or purported to act on behalf of any Facebook entity."  Meta objects to this definition to the extent it encompasses individuals over whom Meta exercises no control or includes individuals who took action purportedly on Meta's behalf but without authorization from Meta.  Meta will construe this definition so as to include the following:  individuals employed by Meta and/or individuals authorized and directed by Meta to act on Meta's behalf.

4.      Meta objects to Plaintiffs' definition of "Facebook," "Defendant," "Meta," "You," and "Your" and its inclusion of "its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions," as overbroad and unduly burdensome to the extent the terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent Plaintiffs purport to use the terms to impose obligations on Meta that go beyond the requirements of the Federal Rules and the Local Rules.  Meta further objects to this definition to the extent that Plaintiffs purport to use this defined term to seek documents that are not relevant to the claims and defenses in this action, including Meta's subsidiaries and products

Gibson, Dunn & Crutcher LLP

5

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

not at issue in this litigation.  Meta will construe the terms "Defendant," "Facebook," "You," and "Your" so as to include the following: Meta Platforms, Inc. and its officers and employees.

5.      Meta objects to Plaintiffs' definition of "Filter" to the extent it refers to a definition of "Filter" in "Exhibit A" because no Exhibit A was included with the Requests.  Meta will construe the term "Filter" as referring to its health-related integrity system which was developed to filter out potentially sensitive health data it detects.

6.      Meta objects to Plaintiffs' definition of "HIPAA Authorization" to the extent it incorrectly references the Code of Federal Regulations as 45 C.F.R. § 508.  Meta will construe the term "HIPAA Authorization" as described in 45 C.F.R. § 164.508.

7.      Meta objects to the Plaintiffs' definition of "Medical Provider" as vague, ambiguous, overbroad, and unduly burdensome.  Meta further objects to this definition to the extent Plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including, for example, the undefined term "health-related services" that expands the scope of the defined term beyond the allegations in this action.  Meta will construe this term to refer to the entities identified in Exhibit A to the First Set of Requests for Production, served on February 9, 2023, and in accordance with Judge DeMarchi's June 16, 2023 Order on the issue.  *See* Dkt. 277. Meta is further willing to consider construing this term to include the incremental entities Plaintiffs identified on June 21, 2023, but Meta requires additional time to assess that list, and Meta reserves all rights to object to it.

8.      Meta objects to the Plaintiffs' definition of "Patient Portal" as vague, ambiguous, overbroad, and unduly burdensome.  Meta further objects to this definition to the extent Plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including, for example, its broad reference to "Web-Propert[ies]" that are used by Medical Providers" for undefined "communicat[ions] with patients" that expands the scope of the defined term beyond the allegations in this action.  Meta will construe this term in accordance with Judge DeMarchi's June 16, 2023 Order on the issue.  *See* Dkt. 277.

9.      Meta objects to Plaintiffs' definition of "Personal Information" as overbroad, vague, and ambiguous to the extent it purports to include information that "is capable of being associated

Gibson, Dunn & Crutcher LLP

6

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

with," or "could reasonably be linked, directly or indirectly, with" and information including the "Persons' preferences, characteristics, psychological trends, predispositions, behaviors, attitudes, intelligence, abilities, or aptitudes." Meta further objects to this definition insofar as it purports that any one of these criteria, standing alone, is enough to identify specific persons. Meta further objects to the extent that this definition purports to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.

**OBJECTIONS TO INSTRUCTIONS**

1.      Meta objects to Plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

2.      Meta objects to Plaintiffs' "Instructions" to the extent that they are inconsistent with or purport to impose obligations inconsistent with or beyond the ESI Protocol and Protective Order entered in this action. To the extent Meta produces documents or other ESI in response to the Requests, Meta will do so in accordance with the ESI Protocol and Protective Order.

3.      Meta objects to Instruction No. 1 to the extent it seeks documents or information in the possession of any individual(s), entit(ies), or any other person(s) over whom Meta exercises no control.

4.      Meta objects to Instruction No. 3 to the extent it defines the Relevant Time Period.

5.      Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner." Meta will construe undefined terms as it understands them.

**OBJECTIONS TO RELEVANT TIME PERIOD**

1.      Meta objects to the Relevant Time Period to the extent it calls for the production of documents that are from a time before or after the events or circumstances relevant to this action, and on the basis that it exceeds the discovery periods established by Judge DeMarchi's June 16, 2023 Order on the issue. *See* Dkt. 276. Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order. *See id.*

Gibson, Dunn &
Crutcher LLP

7

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

1  it was "Removing Certain Ad Target Options and Expanding Our Ad Controls," as referenced in

2  CCAC ¶ 349(b), to the extent such documents exist, are reasonably accessible, fall within the

3  discovery period ordered by the Court, and are within Meta's possession, custody, or control.

4  **REQUEST FOR PRODUCTION NO. 149:**

5  All Documents sufficient to identify and explain Meta's "discovery process across the data

6  warehouse, starting from the root tables down to all leaf tables" that was done "[i]n order to show

7  people a summary of their activity" on non-Facebook websites by building "a centralized copy of key

8  data points that can be queried in real time and organized by user instead of by time" as that process

9  is described in "Redesigning our systems to provide more control over Off-Facebook activity,"

10  https://engineering.fb.com/2019/08/20/data-infrastructure/off-facebook-activity/.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 149:**

12  Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

13  Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

14  forth in this Response.  Meta further objects to this Request on the following additional grounds:

15  (A)    Meta objects to this Request as seeking information that is irrelevant to the claims in,

16  or defenses to, this action and disproportionate to the needs of the case, including that the Request

17  seeks information that is unlimited in time and scope.

18  (B)    Meta objects to this Request on the grounds that it fails to describe the documents

19  sought with reasonable particularity by pulling selected quotes from a larger online post and seeking

20  documents sufficient to "identify and explain" the quotes as rearranged by Plaintiffs.  It is unclear

21  what documents are contemplated by these terms or what they are intended to encompass.

22  Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

23  discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

24  about this overly broad Request.  Meta reserves the right to supplement its objections and response to

25  this Request.

26  **REQUEST FOR PRODUCTION NO. 150:**

27  All Documents sufficient to identify all fields and data elements contained in each table

28  identified as part of the Off-Facebook Activity re-design, including but not limited to whether they

Gibson, Dunn &
Crutcher LLP

80

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

1 include appended data (such as verticals information or user profile information) or location data.

2 <u>**RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**</u>

3 Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

4 Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

5 forth in this Response.  Meta further objects to this Request on the following additional grounds:

6 (A) Meta objects to this Request as vague and ambiguous as to its use of the terms

7 "fields," "data elements," "Off-Facebook Activity re-design," "appended data," "verticals

8 information," and "location data."

9 (B) Meta objects to this Request on the grounds that it fails to describe the documents

10 sought with reasonable particularity given its use of the aforementioned vague and undefined terms

11 and, depending on how each term is defined, seeks information not relevant to Plaintiffs' claims. It is

12 unclear what documents are contemplated by these terms or what they are intended to encompass.

13 (C) Meta objects to this Request as seeking information that is irrelevant to the claims in,

14 or defenses to, this action and disproportionate to the needs of the case, including that the Request

15 seeks information that is unlimited in time and scope.

16 Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

17 discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

18 about this overly broad Request.  Meta reserves the right to supplement its objections and response to

19 this Request.

20 <u>**REQUEST FOR PRODUCTION NO. 151:**</u>

21 Documents sufficient to describe and explain the c_user, datr, fr, and _fbp cookies alleged in

22 CCAC ¶¶ 54-56, 57-58, and 61-70 including how their respective values are determined, their

23 lifetime, circumstances in which they are transmitted to Meta, how they are used, where they are

24 stored, and how Meta connects or maps them to other cookies, devices, identifiers, fingerprint

25 information, and Internet activity by Meta users associated with a c_user cookie or the other cookies

26 requested in this RFP.

27 <u>**RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**</u>

28 Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

**REQUEST FOR PRODUCTION NO. 165:**

Documents sufficient to identify and describe the Meta systems through which Plaintiffs' expert Richard Smith was shown an ad relating to ulcerative colitis in his Facebook video feeds within two hours of exchanging communications with a health care provider about ulcerative colitis, as alleged in CCAC ¶ 269.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 165:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request to the extent it is duplicative of other Requests concerning Meta's systems and data flow already served on Meta, and incorporates its responses and objections to those Requests as if fully set forth herein.

(B)     Meta objects to this Request as argumentative and lacking foundation in that it purportedly relies on a legal conclusion derived from Plaintiffs' expert who is not a named party to this action.  *See* CCAC ¶ 269.

(C)     Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information unlimited in time and scope and duplicative of information about Meta's systems which Meta has already agreed to search for.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs about this overly broad, duplicative Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 166:**

Documents sufficient to identify and describe the Meta systems in which it stores information about specific advertisements shown to directly on Meta properties and through the Facebook Audience Network or other networks on non-Meta properties, as alleged in CCAC ¶ 270.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

1    DATED:  June 22, 2023                    GIBSON, DUNN & CRUTCHER LLP

2                                             By: /s/ *Lauren R. Goldman*

3                                                 Lauren R. Goldman (*pro hac vice*)

4                                             *Attorneys for Defendant Meta Platforms, Inc.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

# ROGs 1, 3, 5

CONFIDENTIAL

1   GIBSON, DUNN & CRUTCHER LLP                COOLEY LLP
    LAUREN R. GOLDMAN (*admitted pro hac vice*)    MICHAEL G. RHODES, SBN 116127
2   lgoldman@gibsondunn.com                    rhodesmg@cooley.com
    DARCY C. HARRIS (*admitted pro hac vice*)      KYLE C. WONG, SBN 224021
3   dharris@gibsondunn.com                     kwong@cooley.com
    200 Park Avenue                            CAROLINE A. LEBEL, SBN 340067
4   New York, NY 10166                         clebel@cooley.com
    Telephone:    (212) 351-4000               3 Embarcadero Center, 20th Floor
5   Facsimile:    (212) 351-4035               San Francisco, CA 94111-4004
                                               Telephone:   (415) 693-2000
6   ELIZABETH K. MCCLOSKEY, SBN 268184         Facsimile:   (415) 693-2222
    emccloskey@gibsondunn.com
7   ABIGAIL A. BARRERA, SBN 301746
    abarrera@gibsondunn.com
8   555 Mission Street, Suite 3000
    San Francisco, CA 94105
9   Telephone    (415) 393-4622
    Facsimile    (415) 801-7389
10
    ANDREW M. KASABIAN, SBN 313210
11  333 South Grand Avenue
    Los Angeles, CA 90071 USA
12  Telephone    (213) 229-7311
    Facsimile    (213) 229-6311
13  akasabian@gibsondunn.com

14  *Attorneys for Defendant Meta Platforms, Inc.*

15

16              **UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17                 **SAN FRANCISCO DIVISION**

18  IN RE META PIXEL HEALTHCARE          Case No. 3:22-cv-03580-WHO
    LITIGATION
19                                       CLASS ACTION
    _____
    This Document Relates To:            **DEFENDANT META PLATFORMS, INC.'S**
20                                       **RESPONSES AND OBJECTIONS TO**
    All Actions                          **PLAINTIFFS' FIRST SET OF**
21                                       **INTERROGATORIES**

22  _____

23          **PROPOUNDING PARTY:  PLAINTIFFS**

24          **RESPONDING PARTY:    META PLATFORMS, INC.**

25          **SET NO.:    ONE**

26          Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), by

27  and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

28  Rules") 26 and 33, and the Civil Local Rules of the U.S. District for the Northern District of California

("Local Rules"), hereby provides the following responses and objections to Plaintiffs' First Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated February 9, 2023, as follows:

## PRELIMINARY STATEMENT

1.      Meta's responses to the Interrogatories are made to the best of its current knowledge, information, belief, and understanding of the Interrogatories.  Meta's factual and legal investigation of this matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the Interrogatories, many of which are overbroad or otherwise objectionable.  Meta reserves the right to supplement or amend any responses in accordance with any agreement between the parties or should future investigation indicate that such supplementation or amendment is necessary.

2.      Meta's responses to the Interrogatories are made solely for the purpose of and in relation to the above-captioned action.  Each response is given subject to all appropriate objections (including, but not limited to, objections concerning privilege, competency, relevancy, materiality, propriety, and admissibility).  All objections are reserved and may be interposed at any time.

3.      Meta's responses include only information that is within Meta's possession, custody, or control.

4.      Meta incorporates by reference each and every general objection set forth below into each and every specific response.  From time to time, a specific response may repeat a general objection for emphasis or some other reason.  The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

5.      Nothing contained in these Responses and Objections or provided in response to the Interrogatories consists of, or should be construed as, an admission relating to the accuracy, relevance, existence, or nonexistence of any alleged facts or information referenced in any Interrogatory.

## GENERAL OBJECTIONS

1.      Meta generally objects to each Interrogatory, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the

parties.  Meta will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.     Meta generally objects to each Interrogatory to the extent it seeks documents and information that are irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or are of such marginal relevance that their probative value is outweighed by the burden imposed on Meta in having to provide such information, including any request that seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

3.     Meta generally objects to each Interrogatory to the extent the Interrogatory is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks documents or communications that are otherwise responsive to other specific Interrogatories.

4.     Meta generally objects to the Interrogatories, including the Definitions and Instructions, on the basis that they specify an overbroad and unduly burdensome relevant time period, and seek documents and things outside of the time period relevant to the claims and defenses asserted in this lawsuit.

5.     Meta generally objects to the Interrogatories, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production of "any" or "all" information concerning the subject matters referenced therein.

6.     Meta generally objects to each Interrogatory to the extent that it requests information that is confidential, proprietary, or competitively sensitive.  To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Interrogatories and not otherwise objectionable, Meta will respond pursuant to the Protective Order to be entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information.  Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

7.     Meta generally objects to the Interrogatories to the extent that the information sought

**CONFIDENTIAL**

is more appropriately pursued through another discovery tool.

8.      Meta generally objects to each Interrogatory to the extent it is argumentative, lacks foundation, or incorporates allegations and assertions that are disputed or erroneous.  In furnishing the responses herein, Meta does not concede the truth of any factual assertion or implication contained in any Interrogatory, Definition, or Instruction.

9.      Meta generally objects to each Interrogatory, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

10.      Meta generally objects to each Interrogatory on the grounds and to the extent that production of such information demanded therein would violate the right of privacy of third parties under California law or other applicable laws of any relevant jurisdiction, or that such production is otherwise prohibited by law, or is subject to legal requirements for notification of third parties.  Such laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 et seq.

## OBJECTIONS TO DEFINITIONS

1.      Meta objects to the Plaintiffs' definitions of "all" on the grounds that Meta cannot guarantee that it has identified all information responsive to a particular Interrogatory.  Such requests are overbroad and any attempt to respond would be unduly burdensome, expensive, and oppressive, and seek information that is not relevant to the subject matter of the litigation.

2.      Meta objects to the Plaintiffs' definition of "Medical Provider" as vague, ambiguous, overbroad, and unduly burdensome.  Meta further objects to this definition to the extent Plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including, for example, the undefined term "health-related services" that expands the scope of the defined term beyond the allegations in this action.  Meta will construe this term to refer to the entities identified in the Consolidated Amended Complaint: MedStar Health. Inc., Rush University System for Health, WakeMed & Health, Ohio State University Wexner Medical Center, and North Kansas City Hospital.

## OBJECTIONS TO INSTRUCTIONS

1.      Meta objects to Plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

CONFIDENTIAL

2.      Meta objects to Instruction No. 1 to the extent it seeks documents or information in the possession of any individual(s), entit(ies), or any other person(s) over which Meta exercises no control.

3.      Meta objects to Instruction No. 3 to the extent it defines the Relevant Time Period.  Meta understands that Plaintiffs seek to meet and confer on this issue.

4.      Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner."  Meta will construe undefined terms as it understands them.

### OBJECTIONS TO RELEVANT TIME PERIOD

1.      Meta objects to the Relevant Time Period to the extent it calls for the production of documents that are from a time before or after the events or circumstances relevant to this action. Specifically, Meta objects to the Relevant Time Period "run[ning] from the date when Meta released the Meta Pixel" as overbroad, unduly burdensome, and not proportional to the needs of the case.  Meta construes the Relevant Time Period as April 1, 2018 to February 21, 2023.

### INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify All Web-Properties with a HIPAA Notice that contained the Meta Pixel during the Relevant Time Period.

**RESPONSE TO INTERROGATORY NO. 1:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

(A)     Meta objects to this Interrogatory as vague and ambiguous in its use of the term "contained."

(B)     Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information about "All Web-Properties with a HIPAA Notice that contained the Meta Pixel" for a time period that is not proportional to the needs of the case.

(C)     Meta objects to this Interrogatory as seeking information that is irrelevant to the claims in, or defenses to, this action and/or disproportionate to the needs of the case.  For example,

CONFIDENTIAL

the Interrogatory seeks information about "All Web-Properties" that "contained the Meta Pixel," irrespective as to whether the Pixel was "contained" on a page within the Web-Properties relevant to the claims in this action.

      (D)     Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable from other sources.

      (E)     Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information.  To the extent Meta responds with information implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the protective order or other protocol containing sufficient protections that will be entered in this case.

      Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta states that it does not have data identifying "Web-Properties with a HIPAA Notice," as defined in this Interrogatory, within its possession, custody, or control.

**INTERROGATORY NO. 2:**

      Identify All Web-Properties, developers, and advertisers for which Meta provides services through the "Facebook Health" advertising division.

**RESPONSE TO INTERROGATORY NO. 2:**

      Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

      (A)     Meta objects to this Interrogatory as vague and ambiguous in its use of the terms "developers," "advertisers," and "Facebook Health."

      (B)     Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks the identification of "All Web-Properties, developers, and advertisers" for which Meta "provides services," but fails to define any "services" relevant to the allegations in this action, and further, seeks information for a time period that is not proportional to the needs of the case.

      (C)     Meta objects to this Interrogatory as seeking information that is irrelevant to the claims in, or defenses to, this action and/or disproportionate to the needs of the case.

CONFIDENTIAL

(D)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes three discrete subparts (*i.e.*, seeking the identification of three sub-groups, (1) Web-Properties, (2) developers, and (3) advertisers).

Based on the foregoing, Meta stands on its objections to this Interrogatory.  Meta is unable to answer this Interrogatory as written, but is willing to meet and confer with Plaintiffs on this issue. Meta reserves its right to supplement its objections and responses to this Interrogatory.

**INTERROGATORY NO. 3:**

Identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the term "deployed."

(B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information about "Medical Provider Web-Properties on which the Meta Pixel is or has been deployed" for a time period that is not proportional to the needs of the case.

(C)    Meta objects to this Interrogatory as seeking information that is irrelevant to the claims in, or defenses to, this action and/or disproportionate to the needs of the case.  For example, the Interrogatory seeks information about "all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed" irrespective as to whether the Pixel was "deployed" on a page within the Web-Properties relevant to the claims in this action.

(D)    Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable from other sources.

(E)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information.  To the extent Meta responds with information

CONFIDENTIAL

1  implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the

2  protective order or other protocol containing sufficient protections that will be entered in this case.

3      Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

4  discovery in this action, Meta responds as follows:  If a developer chooses to place Meta Pixel code

5  anywhere on its website(s), the developer must create a Pixel ID.  In order to create a Pixel ID, the

6  developer must agree to Meta's Business Tools Terms and Meta's Commercial Terms, both of which

7  prohibit developers from sending Meta health or otherwise sensitive information.  Once a Pixel ID

8  has been created, the developer then chooses where to place the Meta Pixel code on its website(s).

9  The Pixel IDs are specific to the developers, not the URLs, and the decision as to where to place the

10  Meta Pixel code on website(s) or subdomain(s) within the website(s) is made by the developer.  Both

11  confirmation that the Pixel ID was created by a developer (and/or the existence of any other Pixel IDs

12  created by that developer) and confirmation of the exact dates on which the Pixel was installed or

13  removed from any portion of a website is within the sole possession, custody, or control of that

14  developer.  However, utilizing the data available to it, Meta is continuing to research the entities and

15  URLs identified in the Consolidated Amended Complaint (¶¶ 24, 25, 26, 27, 28), and states the

16  following:

17      •  MedStar Health, Inc. (https://www.medstarhealth.org/mymedstar-patient-portal):  The

18  URL listed in the Consolidated Amended Complaint does not appear to be the login page for the

19  patient portal for MedStar Health.  Rather, the URL contains a button that people can click to

20  navigate to a separate webpage, which appears to be MedStar Health's patient portal login page, and

21  which is located at https://medstarhealth.consumeridp.us-

22  1.healtheintent.com/saml2/sso/login?authenticationRequestId=d0ec1274-f5b9-42e0-bfe-

23  f60f8cee4754.  As of November 23, 2022, the Meta Pixel was integrated into the URL listed in the

24  Consolidated Amended Complaint that navigated to the patient portal login page, but the Meta Pixel

25  was not integrated into the login page itself.

26      •  Rush University System for Health (https://mychart.rush.edu):  As of November 23,

27  2022, the Meta Pixel was not integrated into https://mychart.rush.edu/mychart/Authentication/Login.

28

**CONFIDENTIAL**

Meta is willing to meet and confer with Plaintiffs regarding this Interrogatory and the information reasonably available to Meta. Meta reserves its right to supplement its objections and responses to this Interrogatory.

**INTERROGATORY NO. 4:**

Identify the Facebook employees and teams responsible for the Meta Pixel, communicating with or selling to health-related companies, the Filter, or the data which Meta received via the Meta Pixel deployed on Medical Provider Web-Properties during the Relevant Time Period, and describe their responsibilites [*sic*] and the time period during which they held those responsibilites [*sic*].

**RESPONSE TO INTERROGATORY NO. 4:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A)     Meta objects to this Interrogatory as vague and ambiguous in its use of the terms "responsible for," "selling to," "health-related companies," and "the data which Meta received."

(B)     Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks the identification of employees and/or teams "responsible for" a list of broad, undefined conduct.

(C)     Meta objects to this Interrogatory as seeking information that is irrelevant to the claims in, or defenses to, this action and/or disproportionate to the needs of the case. For example, the Interrogatory seeks the identification of Facebook employees who were allegedly responsible for "communicating with or selling to health-related companies," and "the data which Meta received via the Meta Pixel deployed on Medical Provider Web-Properties" without any limit to time, scope, or otherwise.

(D)     Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory seeks "the responsibilites [*sic*] and the time period during which they held those responsibilites [*sic*] " for both (a) employees, and (b) teams, each of which are allegedly (1) "responsible for the Meta Pixel", (2) "communicating with . . . health-related companies," (3)

CONFIDENTIAL

**INTERROGATORY NO. 5:**

Identify and describe the databases or repositories where Meta receives, re-directs, or stores data (including event-level and/or derived data) collected through or associated with the Meta Pixel for Medical Provider Web-Properties, or that contain data relating to the Filter (including any logs).

**RESPONSE TO INTERROGATORY NO. 5:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A) Meta objects to this Interrogatory as vague and ambiguous in its use of the terms "databases," "repositories," "derived data," "collected through or associated with the Meta Pixel," "relating to the Filter," and "logs."

(B) Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information for a time period that is not proportional to the needs of the case.

(C) Meta objects to this Interrogatory as seeking information that is irrelevant to the claims in, or defenses to, this action and/or disproportionate to the needs of the case. For example,

the Interrogatory seeks the identification of "databases or repositories" for data that is not relevant to the allegations at issue in this action.

(D)     Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information and will not provide any such information implicating confidential, proprietary, or trade secret information in this case until a protective order or other protocol containing sufficient protections is entered in this case.

(E)     Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes multiple discrete subparts (*i.e.*, seeking the identification of (A) (1) databases or (2) repositories, where Meta (i) receives, (ii) re-directs, or (iii) stores data "collected through or associated with the Meta Pixel," or (B) (1) "data relating to the Filter," (2) including logs—all of which may be separate and independent information).

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta is willing to meet and confer with Plaintiffs about this overly broad Request.

Meta reserves its right to supplement its objections and responses to this Interrogatory.

DATED: March 20, 2023                          Respectfully submitted,

                                               GIBSON, DUNN & CRUTCHER LLP


                                               By:  */s/ Lauren R. Goldman*
                                                    Lauren R. Goldman (*pro hac vice*)

                                               *Attorneys for Defendant*

**VERIFICATION**

I, Tobias Wooldridge, a software engineer at Meta am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Responses and Objections to Plaintiffs' First Set of Interrogatories. The responses were prepared by Meta's counsel with assistance of Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Responses and Objections to Plaintiffs' First Set of Interrogatories is true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on    March 20, 2023

_____
Tobias Wooldridge

# RFIs
# 1, 2, 3, 4, 6, 9

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    (415) 393-4622
Facsimile:    (415) 801-7389

**COOLEY LLP**
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | CASE NO. 3:22-cv-03580-WHO (VKD) |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR INSPECTION, SET ONE** |
| All Actions | |
| | The Honorable William H. Orrick |

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

1    **PROPOUNDING PARTY: PLAINTIFFS**

2    **RESPONDING PARTY:    META PLATFORMS, INC.**

3    **SET NO.:                ONE**

4        Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"),

5    by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

6    Rules") 26 and 34, and the Civil Local Rules of the U.S. District Court for the Northern District of

7    California ("Local Rules"), hereby provides the following responses and objections to Plaintiffs'

8    Requests for Inspection to Defendant Meta Platforms, Inc., Set One (each a "Request," and together,

9    the "Requests"), dated February 8, 2024, as follows:

10    **PRELIMINARY STATEMENT**

11        1.      Meta's responses to the Requests are made to the best of its current knowledge,

12    information, belief, and understanding of the Requests.  Meta's factual and legal investigation of this

13    matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the

14    Requests, many of which are overbroad, duplicative, or otherwise objectionable.  Meta reserves the

15    right to supplement or amend any responses in accordance with any agreement between the parties or

16    should future investigation indicate that such supplementation or amendment is necessary.

17        2.      Meta's responses to the Requests are made solely for the purpose of and in relation to

18    the above-captioned action.  Each response is given subject to all appropriate objections (including,

19    but not limited to, objections concerning privilege, competency, relevance, materiality, propriety, and

20    admissibility).  All objections are reserved and may be interposed at any time.

21        3.      Meta's responses include only information that is within Meta's possession, custody,

22    or control.

23        4.      Meta incorporates by reference each and every general objection set forth below into

24    each and every specific response.  From time to time, a specific response may repeat a general

25    objection for emphasis or some other reason.  The failure to include any general objection in any

26    specific response shall not be interpreted as a waiver of any general objection to that response.

27        5.      Nothing contained in these Responses and Objections or provided in response to the

28

Gibson, Dunn &
Crutcher LLP

2

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

Requests consists of, or should be construed as, an admission relating to the accuracy, relevance, existence, or nonexistence of any alleged facts or information referenced in any Request.

**GENERAL OBJECTIONS**

1.      Meta generally objects to each Request on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties.  Meta will construe and respond to the Requests in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.      Meta generally objects to each Request to the extent it seeks to inspect or access material that is overbroad, unduly burdensome, and/or is procedurally improper, including because the requested inspection is not defined and is unlimited in scope.

3.      Meta generally objects to each Request to the extent it seeks to inspect or access material that is irrelevant to the claims or defenses in this case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information and is disproportionate to the needs of the case, including any Request that seeks information for any time period outside that which is relevant to the claims or defenses in this case.

4.      Meta generally objects to each Request to the extent the Request is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks to inspect material that has already been or will be produced by Meta in response to requests for production previously served by plaintiffs on Meta.

5.      Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they do not identify the documents sought with reasonable particularity as required by Fed. R. Civ. P. § 34(b)(1)(A).

6.      Meta generally objects to each Request on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation, in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

communications, are covered under the common-interest privilege and/or joint-defense privilege, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s). Meta hereby asserts all such applicable privileges and protections, and excludes privileged and protected information from its responses to each Request. *See generally* Fed. R. Evid. 502.

7.      Meta generally objects to each Request to the extent that it requests information that is confidential, proprietary, or competitively sensitive. To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Requests and not otherwise objectionable, Meta will only make such material available for inspection in accordance with the Protective Order entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information. Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

8.      Meta generally objects to the Requests to the extent that the information sought is more appropriately pursued through another discovery tool.

9.      Meta generally objects to each Request, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

10.     Meta generally objects to each Request on the grounds and to the extent that inspection of such information demanded therein would violate the right of privacy of third parties under California law or other applicable laws of any relevant jurisdiction, or that such inspection is otherwise prohibited by law, or is subject to legal requirements for notification of third parties. Such laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA").

**RESPONSES AND OBJECTIONS TO REQUESTS FOR INSPECTION**

**REQUEST FOR INSPECTION NO. 1:**

Inspection of Meta's data sources used to generate the documents Meta produced on December 11, 2023 at PIXEL_HEALTH000032157 through PIXEL_HEALTH000032594.

Gibson, Dunn & Crutcher LLP

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

**RESPONSE TO REQUEST FOR INSPECTION NO. 1:**

     Meta restates and incorporates its Preliminary Statement and General Objections as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

     (A)    Meta objects to this Request as vague and ambiguous as to its use of the undefined term "data sources."

     (B)    Meta objects to this Request as overly broad and disproportionate to the needs of the case, including to the extent it seeks inspection of systems that are irrelevant to the claims and defenses in this case.

     (C)    Meta objects to this Request as improperly seeking discovery regarding discovery already produced in this action.

     (D)    Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

     Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs about this Request.  Meta reserves the right to supplement its objections.

**REQUEST FOR INSPECTION NO. 2:**

     Inspection of Meta's internal Wiki sites relating to Pixel, SDK, DAPL, the Filter, and other relevant data sources, including for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as identified in PIXEL_HEALTH0000107355.

**RESPONSE TO REQUEST FOR INSPECTION NO. 2:**

     Meta restates and incorporates its Preliminary Statement and General Objections as though fully set forth in this Response.  Meta objects to the request to the extent that the Bates number referenced in this Request does not relate to a document produced in this case.  For the purposes of responding to this Request, Meta will construe the Request as referring to

PIXEL_HEALTH000107355. Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as duplicative of other discovery already sought in this case, including but not limited to plaintiffs' Request for Production No. 239, and incorporates its responses and objections to that Request as if fully set forth herein.

(B)    Meta objects to this Request as vague and ambiguous as to its use of the undefined term "other relevant data sources."

(C)    Meta objects to this Request as overbroad, unduly burdensome, and seeking information that is disproportionate to the needs of the case, including because it is not limited in time or scope.

(D)    Meta objects to this Request as unduly burdensome and procedurally improper, including because the information sought by this Request may be obtained through less intrusive means, including the production of documents in response to requests for production that plaintiffs have already propounded in this case.

(E)    Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta stands on the foregoing objections to this Request. Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR INSPECTION NO. 3:**

Inspection of Meta's systems used to █████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████

6

Gibson, Dunn &
Crutcher LLP

**RESPONSE TO REQUEST FOR INSPECTION NO. 3:**

Meta restates and incorporates its Preliminary Statement and General Objections as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as duplicative of other discovery sought in this case, including but not limited to plaintiffs' Request for Production No. 240, and incorporates its responses and objections to that Request as if fully set forth herein.

(B)    Meta objects to this Request as vague and ambiguous as to its use of the undefined term ██████████████████

(C)    Meta objects to this Request as unduly burdensome and procedurally improper, including because the information sought by this Request may be obtained through less intrusive means, including the production of documents in response to requests for production that plaintiffs have already propounded in this case.

(D)    Meta objects to this Request as improperly seeking discovery regarding discovery already produced in this action.

(E)    Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta stands on the foregoing objections to this Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR INSPECTION NO. 4:**

Inspection of Meta's systems where data is stored by Meta for the content or characterizations of web-properties associated with Pixels that Meta has placed into "health" verticals or sub-verticals, including but not limited to:

a.    ██████████  referenced in PIXEL_HEALTH000001206, at -313, in which Meta

7

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

1    employee Shashikant Khandelwal states, ████████████████████

2    ████████████████████████████

3    b.  ████████████ is stored by Meta for web-properties associated with

4    Pixels that Meta has placed into "health" verticals or sub-verticals. See

5    PIXEL_HEALTH0000028273 for a reference to ████████████████

6    c.  ████████████ referenced at PIXEL_HEALTH000066958;

7    d.  ████████████ referenced at PIXEL_HEALTH0000109591, which states that it

8    is described ████████████████████████████

9    ████████████████████████

10   e.  ████████ referenced at PIXEL_HEALTH000076206, -209, in a document titled

11   ████████████████████████████

12   ████████████████████████████████

13   ████████████████████████████████

14   ████████████████████████████

15   ████████████

16   f.  Website or webpage content collected, stored, or used in association with ████████

17   ████████████████████████

18   **<u>RESPONSE TO REQUEST FOR INSPECTION NO. 4</u>:**

19        Meta restates and incorporates its Preliminary Statement and General Objections as though

20   fully set forth in this Response.  Meta objects to the Request to the extent that certain Bates numbers

21   referenced in this Request do not relate to any document produced in this case.  For the purpose of

22   responding to subsection (a) of this Request, Meta will construe the Request as referring to

23   PIXEL_HEALTH000012306.  For the purpose of responding to subsection (b), Meta will construe

24   the Request as referring to PIXEL_HEALTH000028273.  For the purpose of responding to

25   subsection (d), Meta will construe the Request as referring to PIXEL_HEALTH000109591.  Meta

26   further objects to this Request on the following additional grounds:

27

28

Gibson, Dunn &
Crutcher LLP

8

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

(A)     Meta objects to this Request as vague and ambiguous as to its use of the undefined

phrases "the content or characterizations of web-properties," ██████████████████████

██████████████████████

(B)     Meta objects to this Request on the grounds that it fails to describe with reasonable

particularity the items to be inspected given its use of the vague, undefined, and potentially overbroad

phrase "systems where data is stored by Meta for the content or characterizations of web-properties

associated with Pixels that Meta has placed into 'health' verticals or sub-verticals."  It is unclear what

the scope of this phrase is.

(C)     Meta objects to this Request as unduly burdensome and procedurally improper,

including because the information sought by this Request may be obtained through less intrusive

means, such as a request for the production of documents or an interrogatory.

(D)     Meta objects to this Request as overbroad, unduly burdensome, and seeking

information that is disproportionate to the needs of the case, including because it is not limited in

time or scope.

(E)     Meta objects to this Request to the extent it does not contain any proposed protocol for

inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work

product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade

secrets and confidential information.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs

about this Request.  Meta reserves the right to supplement its objections.

**REQUEST FOR INSPECTION NO. 5:**

Inspection of the ████████████████████████████████████████

██████ referenced at PIXEL_HEALTH000076206, -209, in a document titled ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1 ███████████████████████████████████████████████████

2 ███████████████████████

3 **RESPONSE TO REQUEST FOR INSPECTION NO. 5:**

4 Meta restates and incorporates its Preliminary Statement and General Objections as though

5 fully set forth in this Response. Meta further objects to this Request on the following additional

6 grounds:

7 (A) Meta objects to this Request as vague and ambiguous as to its use of the undefined

8 phrase ███████████████████████████████████

9 (B) Meta objects to this Request as overbroad, unduly burdensome, and seeking

10 information that is disproportionate to the needs of the case, including because it is not limited in

11 time.

12 (C) Meta objects to this Request as improperly seeking discovery regarding discovery

13 already produced in this action.

14 (D) Meta objects that the Request lacks foundation in that it presumes without basis that

15 there are ███████████████████████████████████ referenced at

16 PIXEL_HEALTH000076206."

17 Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

18 discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs

19 about this Request. Meta reserves the right to supplement its objections.

20 **REQUEST FOR INSPECTION NO. 6:**

21 Access to engineering, troubleshooting, or other systems through which a Meta engineer can

22 use ████████████████████████████████

23 ████████████████████████████████████████

24 ████████████████

25 **RESPONSE TO REQUEST FOR INSPECTION NO. 6:**

26 Meta restates and incorporates its Preliminary Statement and General Objections as though

27 fully set forth in this Response. Meta further objects to this Request on the following additional

28

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

grounds:

    (A)    Meta objects to this Request as duplicative of other discovery sought in this case, including but not limited to plaintiffs' Request for Production No. 31, and incorporates its responses and objections to that Request as if fully set forth herein.

    (B)    Meta objects to this Request as vague and ambiguous as to its use of the undefined terms "engineering, troubleshooting, or other systems," ██████████████████████ ███████████████████████

    (C)    Meta objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and procedurally improper, including because it seeks inspection of systems that are irrelevant to the claims or defenses in this case and is unlimited in time and scope, and because the information sought by this Request may be obtained through less intrusive means, including the production of documents in response to requests for production that plaintiffs have already propounded in this case.

    (D)    Meta objects to this Request as improperly seeking discovery regarding discovery already produced in this action.

    (E)    Meta objects that this Request lacks foundation in that it assumes without basis that there are systems in which an ████████████████████████████can be used ██ ███████████████████████████████████████████████████████████ ████████████████████

    (F)    Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

    Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta stands on the foregoing objections to this Request. Meta reserves the right to supplement its objections and response to this Request.

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

**REQUEST FOR INSPECTION NO. 9:**

Access to the relevant Named Plaintiff and absent class member data stored in the following data stores or data stores accessed by the following systems:

    a.  Scuba

    b.  The Hive

    f.  ZippyDB

**RESPONSE TO REQUEST FOR INSPECTION NO. 9:**

Meta restates and incorporates its Preliminary Statement and General Objections as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

    (A)    Meta objects to this Request as duplicative of other discovery already sought in this case, including but not limited to Request for Production Nos. 156, 158, 159, 160, and 175, and incorporates its responses and objections to those Requests as if fully set forth herein.

14

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

(B)     Meta objects to this Request as vague and ambiguous as to its use of the undefined phrase "the relevant Named Plaintiff and absent class member data."

(C)     Meta objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and procedurally improper, including because it seeks inspection of systems that are irrelevant to the claims or defenses in this case and is unlimited in time and scope, and because the information sought by this Request may be obtained through less intrusive means, including the production of documents in response to requests for production that plaintiffs have already propounded in this case.

(D)     Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

(E)     Meta objects that the Request lacks foundation in that it assumes without basis that each of the listed "data stores" or "systems" store "Named Plaintiff and absent class member data."

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta stands on the foregoing objections to this Request.  Meta reserves the right to supplement its objections and response to this Request.


DATED: March 11, 2024                      Respectfully submitted,

                                           GIBSON, DUNN & CRUTCHER LLP


                                           By:  */s/ Lauren Goldman*
                                                Lauren Goldman (*pro hac vice*)

                                           *Attorneys for Defendant Meta Platforms, Inc.*
                                           *(formerly known as Facebook, Inc.)*

# DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS

Filed under seal

pursuant to protective order.

# EXHIBIT 4

Proposed Redacted
Version of Shafiq
Declaration Supporting
July 1, 2024 Joint
Discovery Dispute
Letter
(Dkt. No. 527-4)

Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
Email: jaybarnes@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949

Jeffrey A. Koncius, CSB #189803
Email: koncius@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

*Attorneys for Plaintiffs*

JOHN DOE, JANE DOE I, JANE DOE II,
and JOHN DOE II, and DOE, on behalf of
themselves and all others similarly situated

[*Additional counsel listed on signature page*]

Geoffrey Graber, CSB #211547
Email: ggraber@cohenmilstein.com
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
TERRELL MARSHALL LAW
  GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Andre M. Mura, CSB #298541
Email: amm@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION, | Case No.: 3:22-cv-3580-WHO-VKD |
| | **DECLARATION OF DR. ZUBAIR SHAFIQ IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL USE OF CERTAIN META TOOLS FOR IDENTIFICATION OF DATA SOURCES, AND PRODUCTION OF FIELDS, FIELD DESCRIPTIONS, AND RELATED DOCS** |

I, Dr. Zubair Shafiq, declare:

      1.     I am an associate professor of computer science at the University of California-Davis, where I run a research lab focused on Internet privacy, security, and safety. I received my Ph.D. from Michigan State University in 2014. My lab's research aims to uncover personal data collection, sharing, and usage in the online advertising ecosystem.

      2.     In addition to my research, I regularly teach undergraduate and graduate courses on computer networks and computer security, including special topics courses covering emerging trends in online advertising and tracking.

      3.     I have received several awards and distinctions for my research. I am a recipient of the Caspar Bowden Award–Runner-up for Outstanding Research in Privacy Enhancing Technologies (2024), Chancellor's Fellowship (2022-2023), Dean's Scholar Award (2020), National Science Foundation CAREER Award (2018), and Fitch-Beach Outstanding Graduate Research Award (2013).  I have also co-authored more than 100 peer-reviewed research papers. I received the Best Paper Award at the 2023 ACM Internet Measurement Conference for my research on tracking, profiling, and ad targeting in the Amazon Alexa ecosystem. I also received the 2018 Andreas Pfitzmann Award at the Privacy Enhancing Technologies Symposium for my research on designing a system to detect advertising and tracking data flows in mobile apps. I also received the Best Paper Award at the 2017 ACM Internet Measurement Conference for my research on identifying and investigating the abuse of a security vulnerability in Facebook Graph API's implementation of third-party apps. I also received the Best Paper Award at the 2012 IEEE International Conference on Network Protocols for my research on reverse-engineering proprietary network protocols through network traffic analysis.

      4.     I have been asked by Counsel to explain (1) why ███████████████ is critical to understanding how the at-issue data is used by Meta; (2) whether Meta has tools available to ███████████████████████████; (3) how I would use the tools or recommend someone else use the tools; (4) provide a concrete example of how ████████ ████████ would be used, (5) what Meta's recent productions regarding ██████████████ have revealed, (6) compare statements that Meta has made about ███████████████████████ in this case to the information revealed in the documents produced by Meta, (7) describe the additional tables that Plaintiffs have identified for potential production and whether it would be efficient to request large productions from those tables before Meta produces ████████████

2

█████████ and (8) describe the ZippyDB █████████ data sources and explain whether Meta is capable of identifying and producing data stored in them.

     5.     Specifically, I have been asked to answer the following:

     a.     **Assignment 1**: Explain why █████████████████ is critical to understanding how the at-issue data is used by Meta.

     **Opinion 1**: Both Meta employees and I agree that ████████████ ████████████████████████████████████████ ████████████████████████████████

     b.     **Assignment 2:** Explain whether Meta can identify ████████████ ██████████████████████████████, focusing specifically on Meta's Daiquery tool.

     **Opinion 2**: Meta has systems that can be readily used to identify ████████ ████████████████████ It is my understanding that the focus of this motion is the Daiquery tool. If provided access to this tool, any computer-literate person could extract such information.

     c.     **Assignment 3**: Describe how I would use Daiquery to efficiently extract the information for ████████████████

     **Opinion 3**: If provided the ability to use Daiquery, I outline the precise steps that I would take or that I would advise someone else to take in order to obtain the relevant information. Specifically, for each at-issue table, I would ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████

     d.     **Assignment 4**: Provide a concrete example to illustrate why ████████ ██████████ is essential.

     **Opinion 4**: I use the example of "intent" and ████████ to illustrates why ██████████████████████████████████ ████████████

e.   **Assignment 5**: Describe the ████████████████████ in data sources that Meta did not identify until after March 15, 2024, including what they have revealed about ████████████████████████ and what else is likely missing.

**Opinion 5**: Meta pre-March 22, 2024 productions for ███████████ ████████████████████████████. Meta's post-March 22, 2024 productions have revealed ██████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

f.   **Assignment 6**: Compare statements that Meta has made about ████████ ████████████████ in this case to the information revealed in the documents produced by Meta and evaluate whether you agree with Meta's statements after reviewing the discovery produced.

**Opinion 6**: Meta has made many statements about ██████████████ ████████████ that are contradicted by internal documents that Meta has produced in this case.

g.   **Assignment 7**: Describe the additional tables that Plaintiffs have identified for potential production and whether it would be efficient to request large productions from those tables before Meta produces ██████████ ███████

**Opinion 7**: Plaintiffs have identified ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████. It is my opinion that it would be inefficient for Plaintiffs to insist on larger productions from any specific source prior to obtaining ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████. Thus, for efficiency, my recommendation is that

Plaintiffs ██████████████████████████████████
███████████████████████████

h.  **Assignment 8**: Describe the ZippyDB ████████ data sources and explain
whether Meta is capable of identifying and producing data stored in them.

**Opinion 8**: ZippyDB ████████ are fast key-value storage systems that
████████████████████████████████████████
████████████████████████████. It is my expert opinion
that Meta is ██████████████████████████████

**Assignment 1**

6.    I have been asked by Counsel to explain why ████████████████ is critical to
understanding how the at-issue data is used by Meta.

7.    ████████████████████████████████████
████████████████████████████████████████
███████████████████[1]

8.    █████████████████████████████████. According
to International Association of Privacy Professionals (IAPP), ████████████
████████████████████████████████████████
████████████████████████████████████[2]
Among other things, it can show:[3]



9.    ████████████ is similarly defined internally by Meta as ████████████
████████████████████████████████████████
PIXEL_HEALTH000295794, at -795. The same internal document states that ████████

---

[1] ██████████████████████████████████████
[2] ██████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████ Id.

10.     A Meta employee named Tobias Wooldridge stated in an internal document that

████████████████████████████████████████████████████████

███████████   ████   ████   █████████   █████████   █████   ████   █████   ████████████

PIXEL_HEALTH0004449558.

11.     As I have previously stated[4] in this case, and summarize below, it is my opinion

that ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

12.     A useful analogy to understand ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

13.     An internal Meta document provides a very similar description. It agrees with my

opinion that to answer basic questions about how ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

---

[4] ¶¶ 36-38. Declaration of Dr. Zubair Shafiq in Support of Plaintiffs' Motion to Compel Data Production and in Response to Meta's Sampling Proposal; Dated May 24, 2024.



PIXEL_HEALTH000295794

14. If Meta cannot ███████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████ then it is my opinion that Meta ███████████
████████████████████████

15. This conclusion is supported by another internal presentation at Meta describing█
███████████████████████████████████████████████████



PIXEL_HEALTH000218144

16.    It is important to note that such information is important not only to understand

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████

17.    Meta seems to use Pixel data for █████████████████████████

PIXEL_HEALTH000361551 describes how Meta uses ██████████████████████

█████████████████████████████████

18.    In summary, to accurately understand all the different uses of the at-issue data,

production of ████████████████ is crucial.

19.    Additional internal documents produced by Meta on June 21, 2024, explain that the

company has undertaken substantial effort to ensure that it can answer the kind of ████████

███████ that Plaintiffs pose in this matter, ████████████████████████

██████████████████████████████

20.    Beginning in 2021, Meta established ██████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

⁵ ███████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████

(PIXEL_HEALTH000686224 at -225)

21.    As to ████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

(PIXEL_HEALTH000686224 at -227).

22.    ████████████████████████████████████████
████████████████████████████    (PIXEL_HEALTH000300957).

According to Meta's documents, ████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

(PIXEL_HEALTH000289999).

23.    According to Meta's documents, ██████    Meta    anticipated    that    the
███████████████████████████████████████████
█████████████████████    (PIXEL_HEALTH000686224 at -228). The document further

describes that ████████████████████████████████████████
███████████████████████████████████████████

████    PIXEL_HEALTH000686224 at -225).

24.    Curiously, Mr. Woolridge's June 28, 2024 Declaration ("Woolridge") makes no

mention of ████████████████. Instead, Wooldridge carefully disclaims Meta's ability to do

two very particular things when it comes to ████████: (1) ████████████ containing Pixel

data associated with specific developers' Pixel IDs" and (2)████████████████████ that store

Pixel data sent from covered medical Providers." Woolridge ¶ 31.

25.    To my understanding, Meta has maintained throughout the course of discovery in

this case that the "Health Information" collected from healthcare providers ████████████████

████████████████████████. Thus, the way to determine how Health Information

flows through Meta's systems is ███████████████████████████████████
███████████████████████████████████████.

  26. Importantly, Mr. Wooldridge does not deny that Meta can do what its internal

documents say it can do, ███████████████████████████████████████████

████████████████████████████

    █ ███████████████████████████████

     ███████████

    █ █████████████████████████ █████████

    █ ██████████████████████████████████████

     █████████████

  27. Attempting to downplay the importance of complete ████████████████, Mr.

Wooldridge claims that ███████████████████████████████████████████████

███████████████████████████████████████████

(Wooldridge Decl. ¶ 19). The significance and accuracy of that claim turns entirely on what

█████████████ means. ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

---

[6] See, for example, ███████████████████████████████████████████ in
PIXEL_HEALTH000300957: ████████████████████████████████████████████
███████████████████████████████████████

[7] See, for example, █████████████████████████████████████████████ n
PIXEL_HEALTH000300957: ████████████████████████████████████████████
██████████████████████████████████████

[8] See, for example, the ████████████████████████████████████████ in
PIXEL_HEALTH000300957: ████████████████████████████████████████████
████████████████████████████████████████████████████████



PIXEL_HEALTH000487458),

**<u>Assignment 2</u>**

28.    I have been asked by Counsel to explain whether Meta can use Daiquery for

29.    The short answer to this question is yes. As I have previously stated[9] in this case, Daiquery can

30.    It is my understanding that Meta used Daiquery to (June 28, 2024; Xia Decl. ¶ 19).

31.    The following screenshots of Daiquery illustrate how straightforward it is to use.

---

[9] ¶¶ 45-48. Declaration of Dr. Zubair Shafiq in Support of Plaintiffs' Motion to Compel Data Production and in Response to Meta's Sampling Proposal; Dated May 24, 2024.



32. ⬛⬛⬛⬛⬛⬛⬛ available for each Hive table in Daiquery include:



33.    In her June 28, 2024 Declaration ("Xia"), Ms. Xia contends that I do not understand Daiquery. ¶¶ 6-7. But nothing in her explanation contradicts my understanding. Putting aside semantic disputes such as what constitutes a ███████████, I share Ms. Xia's understanding that Daiquery is an interface using SQL to make data queries and not a database. Daiquery is not the underlying data sources it queries, nor is it necessarily populating its interface directly from a given database. Sometimes it is taking information collected by other interfaces and tools. None of that is pertinent to █████████████████████████████████ ████████████████████████████████

34.    Ms. Xia contends that Daiquery alone cannot be used to determine ██████████ █████████████████████ because that assessment requires a █████████████ ████████████████████████████████ ██████████████ (Xia Decl. ¶ 11). I disagree slightly with this statement. It is not *always* necessary ████████████████████████████████ █████████████████████████. However, I do agree that, after obtaining the preliminary information Daiquery provides and using that to narrow the tables of interest, it is critical ████████████████████

35.    Ms. Xia suggests that only a Meta engineer can successfully use Daiquery. (Xia Decl. ¶¶12-24). But the only concrete issues she raises include ██████████████████

██████████████████████████████████████████████████████████
███████████████████████████████████████), ¶14, and the possibility of tables ████
█████████████████████ ¶17. Neither of these issues (which are common issues in database systems) would prevent me from using Daiquery in the ways I have described.

36.    In attempting to downplay the utility of ███████████████ using Daiquery, both Ms. Xia and Mr. Wooldridge assert that Plaintiffs seek data from specific healthcare providers who are covered by HIPAA or California's Confidentiality of Medical Information, which are categories ████████████████████████ (Xia Decl. ¶ 20; Woolridge Decl. ¶ 42). As I describe later in assignment 7, what Meta's internal documents show is ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████. Whether Meta ██████████████████

██████████████████████████████ from a HIPAA source is irrelevant to whether it is useful to the task of ultimately identifying relevant Health Information.

**Assignment 3**

37.    I have been asked to describe how I would use Daiquery to ████████████████

████████████ If provided the ability to inspect and use Meta's tools, I outline below the actions that I would take or that I would advise someone else to take in order to obtain the relevant information.

38.    For Daiquery, as I have previously stated[10] in this case, I would take the following steps: For each table identified, I would █████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ depicted at PIXEL_HEALTH000036138. At that point, I would track the ████████████████████████████. For each new identified table, I would repeat the same process, including navigating to the UI depicted at PIXEL_HEALTH000066490.

---

[10] ¶¶ 47-48. Declaration of Dr. Zubair Shafiq in Support of Plaintiffs' Motion to Compel Data Production and in Response to Meta's Sampling Proposal; Dated May 24, 2024.

39.    Here are the exact set of steps:







CONFIDENTIAL                                                                PIXEL_HEALTH000066490

40.    To make the process more efficient, I would ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮ as Ms. Xia suggests (Xia Decl. ¶¶ 23-24). ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮

41.    The methodology I would use is straightforward.



a.     First, I would ███████████████████████████████████████
███████████████████████████████████████████████████
███████

b.     Second, I would ███████████████████████████████████
███████████████████████████████████████████████████
███████████████

    i.     For the tables that contain a ████████████████████ I would start with
the general assumption that these tables are relevant to determine how
Meta uses at-issue user-identified or event-level data. However, not all
tables with ███████████████████ will be relevant. For example,
Meta ███████████████████████████████████████
█████████████████████████████████████████████████
█████████ Because those tables have no relevance, I would eliminate
them from the process and make no further investigation of them.

    ii.     For the tables ████████████████████████, I would start with the
general assumption that they are not relevant. However, there are
exceptions for tables that relate to ███████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
████████████ I would eliminate all tables that do not meet these
criteria from the process and make no further investigation of them.

42.     I have already used this methodology for the ███ tables that Meta identified in its
May 29, 2024 production. Using this methodology, I reduced the total number of tables ███
███████████████████████ to ██ from the ███ tables – eliminating ███ tables. I would
repeat this process at each downstream or upstream step.

43.     Mr. Wooldridge states that "based on [his] experience, there is no efficiency to be
gained by allowing plaintiffs to access Meta's systems, which plaintiffs do not understand."

---

[11] https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity/

(Wooldridge Decl. ¶ 30). I disagree with both aspects of this statement. Using the methodology I have outlined, Plaintiffs will be able to efficiently conduct a "discovery process" of relevant data that I have been informed was initially ordered to be produced by June 30, 2023 ████████████

████████████████████████████████████████████████ [12] I also disagree with the idea that I or other experts would not be able to adequately use Meta's systems to obtain this information. Ms. Xia states that Daiquery runs on SQL. (Xia Decl. ¶8). SQL is a standard programming language that is taught to all computer scientists. I am proficient in SQL, as would be any competent computer science professional.

### Assignment 4

44.    I have been asked to provide a concrete example of how ████████████████

45.    To this end, I use ████████████████████████████ [13] that was produced by Meta on May 29, 2024.

46.    I provide a brief background on ████████████████████████

████████████████████████████████

    a.    Documents produced by Meta indicate that ████████████████

████████████████████████████████

████████████████. [14] ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████. [15] ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[12] See https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity/.; ████████████

[13] PIXEL_HEALTH000487458

[14] PIXEL_HEALTH000455178

[15] PIXEL_HEALTH000455178 at -180

████████████████████████████████████████████████████

███████ [16]

    b.    Another document produced by Meta indicates that ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ [17]

47.    The ████████████████████████ contains the fields listed

below. Because Meta's production for this table ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

| FIELD | DESCRIPTION |
| --- | --- |



[16] PIXEL_HEALTH000455178 at -179
[17] PIXEL_HEALTH000459429, at -431



48. The ███████████████████████████ is listed in Meta's production as ███████████████████████████████████.[18] ██████████████████████████████████ ██████████████████████████████████ ██ ███ ██ ███ ██ ███ ██ ███ █ ███ █ ██ █ ██ ██ █████████████████████.

49. ███████████████████████████████████████ An easy way to answer these and other similar questions is to use Daiquery ████████████████████.

**Assignment 5**

50. I have been asked to describe ████████████████████ in the tables that Meta did not identify until after March 15, 2024, including what they have revealed about █████████████████.

51. My review of Meta's production shows that Meta's pre-March 22, 2024 productions ██████████████████████████ and Meta's post-March 22, 2024 productions ████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████.

52. Below I list a few such tables and briefly explain what they reveal about ████████████████████.

---

[18] PIXEL_HEALTH000487295



[19] PIXEL_HEALTH000487458
[20] PIXEL_HEALTH000300953
[21] PIXEL_HEALTH000218635 ("███████████████████")
[22] PIXEL_HEALTH000487433
[23] PIXEL_HEALTH000487248
[24] PIXEL_HEALTH000487244
[25] PIXEL_HEALTH000487394
[26] PIXEL_HEALTH000110520
[27] ████████████████████████████████████
████████████████████████████████████████
[28] PIXEL_HEALTH000300958



53.     These are just a few of the ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████ .[30]

54.     Among the ████ tables that Meta identified in its May 29, 2024 production, at least ████████████████[31]████████████████████████████████████████████████ ████████████████

### Assignment 6

55.     I have been asked by Counsel to evaluate whether I agree with certain statements Meta has made to the Court. Specifically, as detailed below, my knowledge, experience, and review of documents produced by Meta leads me to conclude that Meta has made several statements about ███████████████████ that are contradicted by the documents that it has produced and my general understanding of ████████████████████████████████████████ ████████████

56.     It is my understanding that Meta told the Court on May 1, 2023 that it "does not have any systematic way to identify which entities that deployed the Pixel are covered by HIPAA or the CMIA," (Dkt. 223 at 6). However, Meta's May 29 production of ███████████████ ███████████████████████████████████████████████████████[32]████ . Thus, I disagree with Meta's statement that it cannot already identify healthcare providers.

57.     Mr. Wooldridge states that the table containing the ████████████████████ ████████████████████████████████████████████████████████████████████

---

[29] PIXEL_HEALTH000289999
[30] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████
[31] The tables that contain ████████████████████████████████████████████████ ████████████████████
[32] PIXEL_HEALTH000487450

██████████████████████████████████████████████████████████████

███████████████████████████ (Wooldridge Decl. ¶ 41). However, Mr. Wooldridge's

assertion that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████ In

addition, ███████████████████████████████████, based on Mr. Wooldridge's

description, it is my opinion that it is ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████

    58.    It is my understanding that Meta told Plaintiffs that it ████████████████

██████████████████████████████████████████████████████████████████

████████████████████ and that the parties reached impasse. However, as I also described earlier in

assignment 5, the May 29 production by Meta includes several tables ███████████████████████

It is my understanding that Meta agreed on Monday, June 10, 2024, that it would █████████████████

████████████████████████████████████████████████████

    59.    It is my understanding that, in response to Plaintiffs' identification of the Facebook

Crawler as a potential source to search Pixel data for indicia of HIPAA or CMIA status, Meta

stated that it "would need to build brand new tools to try to evaluate whether the website of any

entity that uses the Pixel to see if it meets Plaintiffs' criteria," (Dkt. 223 at 6). I disagree.

Documents produced by Meta █████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████ ████ █ ████ █ ████ ██████ ████████ ███████████ ████

███████████[34].

    60.    Mr. Wooldridge states that he is not "aware" of any "crawler or similar tool at Meta

that is configured to crawl websites to identify if they are covered by HIPAA or the CMIA. █████

██████████████████████████████████████████████████ (Wooldridge Decl. ¶ 42).

However, Mr. Wooldridge appears to misunderstand my previous statements. I have not (and to

my knowledge Plaintiffs have not) ever claimed that Meta ████████████████████████████

---

[33] PIXEL_HEALTH000300958
[34] PIXEL_HEALTH000110520

make HIPAA status determinations. Instead, it is my opinion that  that contain a HIPAA or FDA notice that I understand is required by federal law for such entities.

61.     It is my understanding that Plaintiffs have served discovery requesting documents about Meta's crawlers, that the parties have reached impasse on the issue, and that Meta told Plaintiffs that the issue could not be briefed until this dispute and others was resolved. It is my opinion that discovery into Meta's crawlers, locations where it stores crawled data, and how the crawled data can be queried would be important to determine the scope of the conduct at-issue in this case and the sources from which data could be produced. In addition, it is my opinion that it would be trivial to introduce such functionality and run a query across Meta's crawled data. If given access to Meta's systems, I could construct and run such a query.

62.     It is my understanding that Meta told the Court that the Hive ▮▮▮▮▮▮ thus making it difficult to figure out the relevant data sources. Dkt. 434. While Hive may have ▮▮▮▮▮, I disagree that it would be difficult to identify the relevant data sources for this. Any Meta engineer familiar with its Pixel data systems should be capable of ▮▮▮▮▮ In addition, even if they could not do so from memory, documents produced by Meta identify several different tools that Meta engineers can use to identify such information. Some of these tools (such as Daiquery) appear to be simple enough that any computer literate person could use them. Documents produced by Meta indicate that it has developed other tools for





63.     It is my understanding that Meta told the Court in November 2023 that Exhibit 17 to Plaintiffs' Motion for Sanctions "identifies the sources that have Pixel data," which Meta "figured out through a very thorough investigation" and determined that "everything comes back to [Ex. 17]." Nov. 7, 2023 Hearing Tr. at 43:7-10; 49:6; 54:10-20. I disagree. Meta's March and May 2024 production of ███████████████████████████████████████

███████████████████████████████████

64.     It is my understanding that Meta told the Court that ████████████████████ ████████████████    Apr. 9, 2024 Hearing Tr. at 62:19-25. I disagree because, as explained above, the documents produced by Meta indicate ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████  which Meta identified as a relevant data source on March 22, 2024).

65.     It is my understanding that Meta told the Court that ██████████████████

████████████████████████████████████████████████

████████████████████████████████████    Apr. 9, 2024 Hearing Tr. at 62:9-18. Meta has produced documents that specifically reference █ ████████████████████[35]████████████████████████████

that I described in detail in assignment 4. ████████████████████████████████

████████████████████████████████.

66.     Mr. Wooldridge states that ████████████████████ (Wooldridge Decl. ¶ 34). However, he also states that there is some sort of ██████████████ ████████████████████████████. This is consistent with Meta's public statement in August 2019 that, as part of its Off-Facebook Activity changes, it "ran a discovery process across the data warehouse, starting from the root tables down to all leaf tables." My proposal for

---

[35] PIXEL_HEALTH000213557

using Daiquery and the related tools has the same purpose: to "run a discovery process" for relevant dataflow here. See https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity/.

67.    With respect to ███████  Mr. Wooldridge opines at length about the inefficiencies of using ████████████████████████████████████████████ ██████████████  For example, Mr. Woolridge explains why ██████████████ ████████████████████████████████████████  that Plaintiffs seek. As I explain below, I disagree with some of his characterizations, but I agree with Mr. Woolridge that ███████████████████████████████. Thus, I have urged Plaintiffs to seek access to the Daiquery tool.

68.    While it may be technically possible to ████████████████████████ ████████████████████████████████████████████████████ ████████████████. Assembling the information in that manner would be exponentially more time-consuming than using Daiquery to achieve the same task, ████████████████ ████████████████.

69.    Moreover, based on Meta's own declarations and my general knowledge of █████ ████  not all the information that can be easily obtained in Daiquery ████████████████ ███████.

**Assignment 7**

70.    I have been asked by Counsel to provide an explanation of specific additional tables that Plaintiffs have identified for potential production. I have also been asked to explain why I believe it would be inefficient to move to compel production from those tables prior to obtaining ████████████████. My opinions on this matter are explained below.

71.    It is my opinion that it would not be efficient for Plaintiffs to move to compel production (████████████████) for these or any additional Hive tables prior to obtaining a more complete production of ████████████████  from Meta. The reason for this is that, ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████.

72.    As part of the process to determine the most efficient tables from which class-wide production should be requested, Plaintiffs requested ████████████████████████████████

█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████

73.    I explain these tables and why they are potential targeted for class-wide production.

74.    Plaintiffs requested that Meta ████████████████████████████
████████.[36] These tables, explained in further detail below, include:



75.    As discussed above at ¶¶ 22-26, on June 21, 2024, Meta produced a document revealing the existence of ████████████████████████████ (PIXEL_HEALTH000300957). Plaintiffs previously requested basic information ████████ ████████████████████████. Based on the June 21-produced document, I have recommended that Plaintiffs ████████████████████████████ Based on Meta's documents is highly likely to contain information critical to this matter.

76.    The ████████████████████[37] is ████████████████████ ████████████████████. Based on Meta's description and the fields and field descriptions produced, this table ████████████████████████████ However, in the absence of further information (████████████████████ ████████████████████████), it is not clear that this would be the most efficient ████████ table for a production. For example, Meta's May 29, 2024 production identified ██

---

[36] It is my understanding that ████████████████████████████████ ████████
[37] PIXEL_HEALTH000487244

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

77.    The table ████████████████████████[38] is ████████████
████████████████████████████████████ Based on Meta's description and the fields
and field descriptions produced, this table ████████████████████████████
████████████████████████████████████. However, in the absence of
further information ████████████████████████, it is not clear that this is the most efficient
table from which a production should be made. In addition, ████████████████████
██  ██  ██  ████  ██  █  ██  ██  ████  ██  ██
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

78.    The ████████████████████████[39] is ████████████
identified by Plaintiffs after receiving Meta's May 29, 2024, production. Based on the fields
field descriptions, my general knowledge and experience, and review of other documents produced
by Meta, this ████████████████████████████████████
████████ Documents produced by Meta ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ PIXEL_HEALTH000380215.
████████████████████████████████████████████████████

---

[38] PIXEL_HEALTH000487248.
[39] PIXEL_HEALTH000487458

79. The table ████████████ [40] is ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████

80. To the best of my review, ████████████████████████

████████████████. The fields and field descriptions document produced by Meta ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████. See

PIXEL_HEALTH000116255, discussed below.

---

[40] PIXEL_HEALTH000300958

29

81.     I previously explained ███████████████████ and do so again for the Court's convenience, incorporating additional information gathered in discovery since I last addressed it.

82.     ████████████████████████████████████████████████████████████
PIXEL_HEALTH000686224.  That  is, ████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

83.     ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██ ████ █████ ███ ████████ ██ █ ███████ ███ ███ ████
██████████████████ ████ ████ ██ ██ ██ ████ ██ ████
PIXEL_HEALTH00066713. Even Mr. Woolridge has previously admitted that Meta identifies "potentially sensitive health data" that is sent by "websites classified by Meta as health-related" when it comes to Meta from the Pixel. Dkt. 77-4, Wooldridge Decl. ISO Opp. To Plaintiff Motion for Preliminary Injunction, at ¶ 8.

84.     ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████. PIXEL_HEALTH000537486. Through this process,
████████████████████████████████████████. PIXEL_HEALTH000562726.

85.     ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████ PIXEL_HEALTH000539304.  For  example,
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████

86.     Mr. Woolridge's carefully-worded description of ███████████ in his June 28, 2024 declaration does not contradict the information explained above. ████████████████████████
████████████████████████████ That is true but irrelevant. ███████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

██████████████████████████████████████

████████████ Again, that is true but irrelevant. ██████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████ Meta is a large company that is constantly updating and modifying its practices. Accordingly, my understanding of Meta's data sources and their uses is necessarily limited to the timeframe of the documents Meta has disclosed and statements made by Meta engineers in this matter. Notably, the same is true for Meta's own engineers, as revealed by Ms. Xia's effort ████████████████████████████. Nevertheless, I am able to state with a reasonable degree of certainty that, despite how the details and terminology may have changed over the years, ██████████████████████████████. The reason for my confidence is that internal taxonomy is an essential part of a company like Meta.

87.    To understand why this is the case, the Court should consider the big picture of Meta's business model. In short, Meta's business model involves collecting highly detailed information about its users to create detailed dossiers that are inferred from their activities on and off of Facebook; and then leveraging the dossier information to serve ads that match those inferences. To take this outside of the healthcare context, if a user is visiting websites looking for information about travel tips for a vacation to Hawaii (and the Pixel is present), Meta needs a system capable of translating that information to infer a user's interest (e.g., vacation to Hawaii) and then matching it with relevant ads. To make the system work effectively, any company (not just Meta) would want to a shared language to classify user inferences and ads.

88.    Documents produced in this case indicate that Meta's ████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████

89.    As Meta's internal documents explain in detail, ████████████████

██████████████████████████████████████

███████████████████████████. In short, █████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████

90.    One example of a ███████████████████ is provided below:

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████

91.    It is my understanding that █████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

92.    Such content characterization systems are common amongst data companies like Meta. For example, Google's public version of its "verticals" taxonomy identifies dozens of very specific health-related content characterizations, such as "/Health/Health Conditions/AIDS & HIV;" "/Health/Health Conditions/Cancer" and "/Health/Substance Abuse/Drug & Alcohol Treatment."[41] Documents produced by Meta indicate [REDACTED].

93.    It is my understanding that Plaintiffs requested production of "documents sufficient to identify and describe all health-related content classifications, taxonomies, or verticals for each health care provider or covered entity Partner from which Meta obtains health information, and for the communications on those providers and covered entities' web properties, as those terms are generally described in CCAC ¶¶ 255-258." Plaintiffs' Request for Production No. 164. However, it is also my understanding that Meta objected to the request, instead stating that "Meta agrees to meet and confer with Plaintiffs about this overly broad, duplicative Request" and has not yet produced such information.

94.    Some entries in [REDACTED]

[REDACTED]

---

[41] https://developers.google.com/google-ads/api/data/verticals

95.    The ███████████[42] is ████████████████████

█████████████████████████████████████████████

██████████████████████████████ PIXEL_HEALTH000380215. ██████████

█████████████████████████████████████████████

█████████████████████████████████████████████

96.    The table ████████ (PIXEL_HEALTH000487351) is █████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████

---

DECLARATION OF DR. ZUBAIR SHAFIQ
Case No. 3:22-cv-3580-WHO-VKD

97.    The ████████████ (PIXEL_HEALTH000110506) ████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
PIXEL_HEALTH0000064.

98.    The ████████████████████ (PIXEL_HEALTH000300960)  is
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████

99.    The ████████████[43] is ████████████
████████████████████████████████████████



100.    There are ████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

[43] PIXEL_HEALTH000300953



101. The ████████████████ [44] is ██████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████

102. The ██████████████████ [45] is ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

103. The ██████████████████ [46] is ████████████████████
███████████████████████████████████

104. There ██████████████████████████████████████
██████████████████████████████████████████

105. Documents produced by Meta indicate that, ████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

---

[44] PIXEL_HEALTH000487241
[45] PIXEL_HEALTH000487243
[46] PIXEL_HEALTH000487242



106.



107. ███████████████████████████



CONFIDENTIAL                                                                    PIXEL_HEALTH000109589

108. ███████████████████████████████████████████████████, Meta's documents

indicate that ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[47] PIXEL_HEALTH000487247
[48] PIXEL_HEALTH000487246
[49] PIXEL_HEALTH000487245



109. ████████████████████████████████████████████

110. On June 28, 2024, Mr. Wooldridge provided additional information about some of these tables (Wooldridge Decl. ¶ 37). It is my understanding that Plaintiffs requested additional information from Meta about these tables because their ████████ expert, Dr. Atif Hashmi had identified them as containing potentially relevant information or they were identified through Meta documents.

111. As explained below, Wooldridge's explanation of these tables only highlights the fact that ████████████████████████████████



a. For ████████ these tables, Wooldridge stated that ████████████

Although that is part of the discovery process, it is only a part of it. ████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████

b.     ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ Wooldridge ¶ 38. However,

there is no feasible way for me to efficiently verify Wooldridge's

understanding. ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████, where, it is my understanding, that Dr. Hashmi is limited in what he

can print, may only take hand-written notes or notes written on a computer

provided by Meta, is prohibited from copying and pasting the source code,

and is prohibited from sharing those notes. █████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████ However, this is not how any computer engineer actually

works on a day-to-day basis, and it would add months and perhaps years

to the review process to have to do things this way.

112.     Mr. Wooldridge also provides additional information ██████████████████████

████████████████████████████████████ (Wooldridge Decl. ¶ 40). However, it is my

opinion that Wooldridge's explanations only highlight why ████████████ are important for

Plaintiffs to obtain.

a.     Mr. Wooldridge offers various reasons why Meta ████████████████████

████████████████████████████████████████ (PIXEL_HEALTH000487244) or



████████████████████████ PIXEL_HEALTH000487248).

However, it is my understanding that *Meta identified these* ████ *to Plaintiffs for potential production of class-wide data*. Thus, to the extent these are the wrong tables, their inclusion ████████████████ was due entirely to Meta's suggestions. It is also my understanding that, prior to Meta's identification of the table, no document produced in this case mentioned the table and that Meta did not provide any details about the table other ████████████████████ I have advised the Plaintiffs that, for purposes of efficiency, it is important ████████ ████████████████████████████████████ ████████████████████████████

b. ████████████████████████████
(PIXEL_HEALTH000487458), Mr. Wooldridge states that "████████ ████████████████████████████████████ ████████████ (Wooldridge Decl. ¶ 40). However, this statement is inconsistent with ████████████████████████ that Meta produced in this case. Of the ████████████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████ ████████████████████████

i. ████████████████████████████ ████████████████████████████████ ████████████████████████████ ████████████████████████████████ ████████████████████████

ii. Not surprisingly, process documents that Meta produced identify that ████████████████████████████████ ████████████████ PIXEL_HEALTH000487295 ████████ ████████████████████████ However, the same document produced to identify ████████████████████████

PIXEL_HEALTH000487292.

iii.   Thus, it is my opinion that either (a) Mr. Wooldridge's declaration is

incorrect; or (b) ██████████████████████████

██████████████████ are inaccurate.

iv.   It is also my opinion that ██████████████████████

███████████████████████████████████

██████████████████████████████

████████████████████████████ ikely have some

other source for which access to Daiquery would provide the answer.

c.   ████████████████ (PIXEL_HEALTH000300958), Wooldridge

claims that it is his "understanding" ████████████████

████████████████████████. However, it

is my understanding that █████████ reviewed by Dr. Hashmi

indicated that █████████████████████. I also

disagree with the assertion that ██████████████. ████████

██ could easily be used to identify healthcare provider web-properties

that have a HIPAA notice or a notice required by the FDA for certain

prescription drugs. ████████████████████████

████████████████████. Further, ██████████████

████████████████████████████

███████████████. As explained above, █████████████

███████████████████████████████

███████████████████████. If that was the case, Meta could not

effectively compete with Google and other ads companies. In the

alternative, ██████████████████████████

███████████████████████████

████████████████████. For example, ████████████

████████████████████████████████

███████████████████████

However, it is my understanding that Meta has refused to provide information about the data that is stored in ZippyDB ██████..

d. ████████████ (PIXEL_HEALTH000110520), Woolridge states that it his "████████████████████████████████████████████████████████████████████." In the absence of access to the tools requested and additional information, there is no way for Plaintiffs to verify this statement. It also suggests to me that ████████████████████████████████████████████████████████████████████████████████████████. In addition, there is an easy way ████████████████████████████████████████████████████████████████████████████████████████████████.

e. ████████████ (PIXEL_HEALTH000110506), Wooldridge claims ██ ████████████████████████████████. It is my understanding that Meta told the Court on November 7, 2023, that it had produced a document to the Plaintiffs that "identifies the sources that have Pixel data … through a very thorough investigation" and that "everything comes back to [Exhibit] 17." The Exhibit 17 referenced in that hearing is PIXEL_HEALTH00000064, which was filed in this case at Dkt. 326-12. ████████████████████████████████████████████████████████████████████████████████████████ It is my opinion that, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████

f. ████████████ (PIXEL_HEALTH000300509), Wooldridge states ████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████. I made no attempt to conduct a field-by-field analysis in my declaration because it was my understanding that a field-by-field battle on such a large table was unlikely to be helpful to the Court for this dispute. In addition, ████████████ ████████████████████████████████████████████████

g.    ████████████████████ (PIXEL_HEALTH000300953), Mr. Wooldridge states ██████████████████████████████████ ████████████ To the extent that Meta is correct, ████████████ ████████████████████████████████████████ ████████████, and it is my understanding that Meta has generally refused to answer any follow-up questions from Plaintiffs about ████████████████

113.    It is my opinion that Mr. Wooldridge's explanation for each of these data sources illustrates why access to Daiquery and ████████████████ is necessary and would be extremely helpful to understanding Meta's systems. Mr. Wooldridge tells the Court ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████ The best way to investigate these discrepancies is through the combination of access to Daiquery and targeted productions ████████ from key tables identified by Plaintiffs based on the fields and field description.

## Assignment 8

114.    I have been asked by Counsel to provide an explanation of ZippyDB ████████ (████████████████████████████████████) and my opinion of whether Meta is capable of producing the data stored in them. My opinion is that ZippyDB ████ ████ are standard key-value storage systems and ██████████████████████████ ████████████████████████████████████████████████

115.    It is my understanding that, based on the evidence presented at the time, the Court ordered on November 13, 2023, that Plaintiffs had "not shown that [ZippyDB] contain[s] Pixel data or is otherwise responsive to RFP 6 or RFP 7." Dkt. 380 at 4.

116.    It is my understanding that Meta served an Amended Answer to Plaintiffs' Interrogatory No. 5 on March 22, 2024, which ████████████████████████████████

███████████████████████████████████
███████████████████████████████
██████████████████████████████████
███████████████████

117.    It is my understanding that ███████████████████
███████████████████████████████████
████████████████████████████████████
███████████████████████████████████
██████████████████████████████
██████████████████████████████████████
█████████████████████████████████████

118.    For context, discovery shows that ███████████████
████████████████████████████





119.    Meta explains in a research paper that ZippyDB ████████ use a common underlying open-source storage system called RocksDB.[50,51] RocksDB is a high-performance storage system, meaning that it is able store and retrieve data with very quickly.

120.    ████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

121.    ████████████████████████████████████████
████████████████████████████████████████████
████████.[52] For example, Meta explains in a public post that the following Get command will produce all data stored for an input key named key1 in the output variable called value from the RocksDB database.

```
std::string value;
rocksdb::Status s = db->Get(rocksdb::ReadOptions(), key1, &value);
```

[50] Cao, Z., Dong, S., Vemuri, S. and Du, D.H., 2020. Characterizing, modeling, and benchmarking RocksDB Key-Value workloads at Facebook. In 18th USENIX Conference on File and Storage Technologies (FAST 20) (pp. 209-223).
[51] https://rocksdb.org/
[52] https://github.com/facebook/rocksdb/wiki/basic-operations#reads

122. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮.[53]

123. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

124. Meta explains in a research paper[54] that ▮▮▮ serves more than 8 million Get operations per day and ZippyDB serves more than 327 million Get operations per day. Thus, ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

125. Discovery further shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(PIXEL_HEALTH000216511) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(PIXEL_HEALTH000218635). Thus, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

126. Mr. Wooldridge suggests that it would be a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ (Wooldridge Decl. ¶ 49). First, his assertions about the purported burden are unsupported and contradicted by the aforementioned statistics about Meta's use of ZippyDB. ▮▮ Second, he does not deny that ZippyDB ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ My proposal of getting ▮▮▮▮▮▮▮▮▮▮▮▮ from ZippyDB ▮▮▮ would help narrow down the relevant data in ZippyDB ▮▮▮

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 1, 2024 in Davis, California.



Zubair Shafiq, Ph.D.

---

[53] https://sunpriyakaurbhatia.medium.com/getting-started-with-rocksdb-part-3-iterations-b2a3d6170e01

[54] Cao, Z., Dong, S., Vemuri, S. and Du, D.H., 2020. Characterizing, modeling, and benchmarking RocksDB Key-Value workloads at Facebook. In 18th USENIX Conference on File and Storage Technologies (FAST 20) (pp. 209-223).

Proposed Redacted Version of Hashmi Declaration Supporting July 1, 2024 Joint Discovery Dispute Letter (Dkt. No. 527-5)

1

Jason 'Jay' Barnes (admitted *pro hac vice*)
   *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:      212-784-6400
Fax:      212-213-5949

Geoffrey Graber, State Bar No. 211547
   *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Jeffrey A. Koncius, State Bar No. 189803
   *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel:      310-854-4444
Fax:      310-854-0812

Beth E. Terrell, State Bar No. 178181
   *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:      (206) 816-6603
Fax:      (206) 319-5450

*Attorneys for Plaintiffs*
JOHN DOE, JANE DOE I, JANE DOE II,
and JOHN DOE II, and DOE, on behalf of
themselves and all others similarly situated

*[Additional counsel listed on signature page]*

Andre M. Mura, State Bar No. 298541
   *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:      (510) 350-9700
Fax:      (510) 350-9701

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | **Case No. 3:22-cv-03580-WHO (VKD)**<br><br>**DECLARATION OF DR. ATIF HASHMI REGARDING META'S DATABASE TABLES** |

**DECLARATION OF DR. ATIF HASHMI**

I, Atif Hashmi, declare as follows:

1.      I have been retained by Plaintiffs' counsel in *In Re Meta Pixel Healthcare Litigation*. Plaintiffs' counsel in this matter asked me to review (1) Meta's source code ███████████████ ████████████████████████████████████████████████████ and (2) Meta's source code ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ My review of Meta's source code is ongoing.

2.      Plaintiffs' counsel asked me to review Meta's source code to identify tables residing in Meta's databases that store data transmitted by Meta Pixel to Meta's servers ("Pixel Data") and tables residing in Meta's databases that store data ████████████████████████████████ Plaintiffs' counsel also asked to review Meta's source code to determine if there are tools within Meta's systems that can be used to identify relevant data tables.

3.      Plaintiffs' counsel also provided me a copy of (1) Meta's motion for a protective order dated March 21, 2024, ("Meta's Protective Order Motion"), (2) Plaintiffs opposition to Meta's motion for a protective order dated March 22, 2024, and (3) the Court's Sealed Order Re Discovery Disputes Re Data Sources and Sampling (ECF No. 452).

4.      Based on the Court's Sealed Order, I understand that Meta has agreed to produce some data from the following ███ tables: ███████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████

5.      Within Meta's source code, I have located the ████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████ It will not be burdensome for Meta to ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████ I have also assisted Meta by providing Meta with ████████████████████████████████████████

6. While my source code review is ongoing, I have already identified ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████

7. My findings are still preliminary as my review of Meta's source code is ongoing.

**My Background and Experience**

8. I am an engineer with nearly two decades of experience in software engineering. I am currently the President and Chief Scientist at Bitwise Forensics Research, Inc., where I provide engineering research and source code analysis services for litigation consulting. Prior to this role, I was the Founder and Chief Executive Officer at the Thalchemy Corporation, and a Post-Doctoral Associate at the Wisconsin Psychiatric Research Institute.

9. I have an M.S. and a Ph.D. in Electrical Engineering from the University of Wisconsin – Madison. My educational training and research have been focused on software engineering, computer architecture, machine learning algorithms, operating systems, and design and development of hardware circuits and software for computing systems.

10. I have authored several papers and articles in peer-reviewed Computer Science and Electrical Engineering conferences and workshops, several of these publications have received best paper awards. I have also been an invited speaker at venues including academic conferences and technology companies.

11. I have performed source code analysis in around 100 cases, including analyzing the source code developed by Meta, Inc., Apple, Inc., Google LLC., Nokia Corporation, Microsoft, Corp., Amazon, Inc., and Samsung Electronics, Inc.

12. In at least three prior cases, I submitted expert reports based on my analysis of Meta's source code: *In re Facebook Biometric Information Privacy Litigation*, Case No. 15-cv-03747-JD (N.D. Cal.), *Zellmer et al. v. Facebook*, Case No. 18-cv-01881-JD (N.D. Cal.), and *DZ Reserve et al. v. Meta Platforms, Inc.*, Case No 3:18-cv-04978 (N.D. Cal.).

2

**Can be Searched to Identify Tables**

13.    As I described earlier, within Meta's source code, I have located ██████

████████████████████████████████████████████████████████████████████████████

████████████████████    While there may be other tables with ████████████████  outside

of ████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

14.    ████████████████████████████████████████████████████████████

████████████████████████

15.    ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████

16.    I searched in ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████

17.    I have provided Meta with ████████████████████████████████████

████████████████████████████████████████████████████████████████. Meta

can easily ████████████████████████████████████████████. Meta can also ████████

████████████████████████████████████████████████████████████████████████████

██████████████  ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████

---

[1] See PIXEL_HEALTH000110500-522. I have been informed that Meta hasn't yet produced ██
████████████████████████████

18. █████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████ .

19.     I have provided Meta with ███████████████████
███████████████████████ It will not be burdensome to Meta to ███
████████████████████████████████████████
████████████████████████████████████████
███████████████ Meta can easily ████████████████████
████████████████████████████████████████
████████████████████

20. █████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████

21.     I have provided Meta with ███████████████████
███████████████████████████████████ . It will not be burdensome to Meta to
████████████████████████████████████████
████████████████████████████████████████
████████████████████ . Meta can easily ████████████████
████████████████████████████████████████

1  ██████████████████████████████

2  22.    On the code review computer, I have ██████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ██████.

**Meta's Systems Contain Additional Tools That Can Obtain and Export ██████**

████████

23.    Based on my review of Meta's source code, there are at least ████ tools (in addition

to ████████) within Meta's systems that can be used to obtain and export ████████████

████████

24.    First, there is the Daiquery tool that can query a data store and provide data

visualizations.[2] ████████████████████████████████████████. Meta can use

the Daiquery tool to obtain and export ██████████████████ for the tables that I have identified

████████████████████████████████

25.    As an example, within Meta's source code ████████████████████████

█████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

26.    Second, there is ████████████████████████████████████

████████████████████████████████████████████████

████████    Meta can use ████████████████████████████████

████████████████████████████████████████████████

---

[2] See https://engineering.fb.com/2022/04/26/developer-tools/sql-notebooks/

1    ███████████████ Furthermore, based on my review of Meta's source code, the ██████████
2    █████████████████████████████████████████

3    27.    As an example, within Meta's source code ████████████████████████
4    █████████████.

█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████

19    28.    <u>Third, there is the Presto framework that is an open-source distributed query engine</u>
20    <u>that supports SQL analytics and can query a data store.</u>[3] <u>Using the Presto framework,</u> Meta can run
21    SQL queries ████████████████████████████████████
22    █████████████████████████████████████████

23    29.    As an example, within Meta's source code ████████████████████████
24    ██████████████████
25    ████████████████████████████████████

<hr>

[3] See https://research.facebook.com/publications/presto-sql-on-everything/

DECLARATION OF DR. ATIF HASHMI
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)



30. I note that the capabilities that I discuss above with respect to the three tools are not an exhaustive list of all the capabilities that these three tools offer.

**Tables with Unique Information**

31. While my source code review is ongoing, I have already identified ▌▌.

32. For example, ▌▌.

33. Another important factor is that the ▌ Tables identified by Meta have ▌▌.

34. Any tables ▌▌. For example, through my searches I have found ▌▌ Based on my review of

7

1  Meta's source code, ███████████████████████████████████. As another

2  example, through my searches I have found ████████████████████████

3  ████████████████████████████████████ Based on my review of Meta's

4  source code, ████████████████████████████████████████. As

5  another example, through my searches I have found ███████████████████

6  ████████████████████████████████████. Based on my review of

7  Meta's source code, the ██████████████████████████████.

8      35.    I need access to ███████████████████████████

9  ████████████████████████████████████████████████

10  ████

11      36.    For me to efficiently ███████████████████████████

12  ████████████████████████████████████████████████

13  ██████████████████████████████████.

14

15

16  I declare under penalty of perjury that the foregoing is true and correct.

17

18      Executed this day, June 13, 2024,

19

20  By: _____

21      Dr. Atif Hashmi

22

23

24

25

26

27

28

DECLARATION OF DR. ATIF HASHMI
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

Proposed Redacted
Version of Xia Declaration
Supporting July 1, 2024
Joint  Discovery Dispute
Letter
(Dkt. No. 527-6)

DocuSign Envelope ID: C3F95451-52AC-44C8-B988-77165495F50E
Case 3:22-cv-03580-WHO    Document 675-2    Filed 11/04/24    Page 172 of 404

**CONFIDENTIAL**

1  GIBSON, DUNN & CRUTCHER LLP                    COOLEY LLP
   LAUREN R. GOLDMAN (*pro hac vice*)            MICHAEL G. RHODES, SBN 116127
2  lgoldman@gibsondunn.com                       rhodesmg@cooley.com
   DARCY C. HARRIS (*pro hac vice*)              KYLE C. WONG, SBN 224021
3  dharris@gibsondunn.com                        kwong@cooley.com
   200 Park Avenue                               CAROLINE A. LEBEL, SBN 340067
4  New York, NY 10166                            clebel@cooley.com
   Telephone:   (212) 351-4000                   3 Embarcadero Center, 20th Floor
5  Facsimile:   (212) 351-4035                   San Francisco, CA 94111-4004
                                                 Telephone:  (415) 693-2000
6  ELIZABETH K. MCCLOSKEY, SBN 268184            Facsimile:   (415) 693-2222
   emccloskey@gibsondunn.com
7  ABIGAIL A. BARRERA, SBN 301746
   abarrera@gibsondunn.com
8  One Embarcadero Center, Suite 2600
   San Francisco, CA 94111
9  Telephone:   (415) 393-8200
   Facsimile:   (415) 393-8306
10
   *Attorneys for Defendant Meta Platforms, Inc.*
11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                       SAN FRANCISCO DIVISION

15

16                                          Case No. 3:22-cv-3580-WHO
   IN RE META PIXEL HEALTHCARE
17 LITIGATION                               PUTATIVE CLASS ACTION

18 ─────────────────────────                **DECLARATION OF QIWEN ("CARROL")
                                            XIA IN SUPPORT OF META PLATFORMS,
19                                          INC.'s POSITION IN DATA SOURCE
                                            DISPUTE**
20 This Document Relates To:
                                            Honorable Judge Virginia K. DeMarchi
21 All Actions

22

23

24

25

26

27

28

I, Qiwen ("Carrol") Xia, declare as follows:

1. I am a senior data scientist at Meta. The information in this declaration is based on my personal knowledge and discussion with relevant personnel. If called and sworn as a witness, I could and would testify competently to this information.

2. I have worked at Meta as a data scientist since ████████. My job responsibilities include, among other things, understanding and working with Meta's data systems, writing queries and conducting analyses of data within Meta's systems, researching Meta's data and related technologies, and locating, analyzing, and exporting data for production in litigation and other legal matters.

3. I understand that the plaintiffs in this case assert that various technologies offered by Meta are relevant to this litigation. I understand that the plaintiffs claim that the Meta Pixel, the Facebook SDK, and Meta's Conversions API (collectively, Meta's "Business Tools") are relevant to this litigation.

4. Data transmitted by third parties via Meta's Business Tools to Meta's servers ("Business Tools Data") is processed and stored in a structured data warehouse called "Hive." As part of my job responsibilities, I routinely query, analyze, and export data for production from Hive, and I am familiar with the burdens involved in undertaking these steps.

5. I understand that Meta has identified certain tables in Hive that contain data potentially relevant to this case, including the following ██ tables:



**Capabilities of Meta's Technologies at Issue**

6. Meta's systems are extremely complex and difficult to navigate, in particular for those unfamiliar with these systems. Before discussing the specifics of the information Meta has already

1  provided and the additional requests for information from plaintiffs, I want to clarify the capabilities

2  of Meta's technologies at issue, because I do not believe plaintiffs correctly understand them.

3      7.    I understand that plaintiffs previously requested that Meta conduct searches using a

4  Meta user interface called "Daiquery" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  I understand plaintiffs now request that Meta also use Daiquery ▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  For example, I understand plaintiffs' expert Dr.

7  Shafiq states that Daiquery can be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Daiquery alone ▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮    Plaintiffs appear to be conflating several different Meta technologies.  Daiquery is an

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  These are

14  separate sources of information, some or all of which may or may not be relevant to this case.

15      8.    **Daiquery:**  Daiquery is a user interface that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮    Meta's engineers and data scientists use Daiquery by writing SQL ("Structured Query

18  Language") queries, based on their knowledge of Meta's systems, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22      9.    I understand plaintiffs assert that, on "January 26, 2024, at Plaintiffs' request, ▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"  This

24  statement is inaccurate for several reasons.  First, I understand that the referenced documents were not

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮.  Second, I understand that Meta did not use Daiquery to extract this information; rather,

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  My colleagues and I undertook a similar process

1    to extract field and field description information for the approximately ███████████

2    ████████████████████████████████████████████████████████████████████████

3    █████████████ a process we completed █████████████

4        10.    **Presto:** I understand that one of plaintiffs' experts claims that "Using the Presto

5    framework, Meta can run SQL ████████████████████████████████████████████████

6    ██████████████████ Daiquery is a user interface that can *use* the Presto query engine. I used Presto

7    when I ran queries ███████████████████████████, as I discuss in further detail below.

8        11.    The Meta interfaces and technologies described above are limited and cannot be used

9    to determine the scope of the data contained within any Hive tables identified or whether that data is

10   relevant to this litigation. To my understanding, the only way to confirm whether a data source is

11   relevant and non-duplicative of the ███████████ tables is for someone knowledgeable about Meta's

12   systems ███████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████

14                     **Prior Queries I Ran Using "Daiquery"**

15       12.    I have reviewed a document produced in this litigation, ███████████████, which

16   involved an engineer that no longer works at Meta, and which indicated that it ████████████████

17   ███████ █ ██████ ██████ ██████ ██████ ███ ████ █ ███ █████.

18   PIXEL_HEALTH000032759.

19       13.    In that document, the Meta engineer noted that he did not ██████████████████

20   ████████████████████████████████████████████ ████████████

21   ██████████████████████████████████████████████████ To

22   determine ████████████████████████████████████████████

23   ██████ █ ██████ ██████ ██████ ██████ ███ ████ █ ███ █████

24   (PIXEL_HEALTH000000064).

25       14.    ████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████

---

3

QIWEN XIA DECL. RE DATA SOURCE DISPUTE
CASE NO. 3:22-CV-3580-WHO

CONFIDENTIAL

1

2

3

4    15.    After I developed a methodology based on my discussions with subject matter experts,

5    I wrote and conducted certain queries using Daiquery in an effort

6

7                                                            .

8

9

10

11

12    16.    But there are further complexities with Meta's data infrastructure that complicated my

13    query and which required further analysis to ensure I executed the query correctly and

14    comprehensively. These complexities underscore how familiarity with Meta's systems is required to

15    accurately run queries, including running queries using Daiquery.

16    17.    For example,

17

18

19

20

21    18.    I therefore disagree with plaintiffs that

22

23                                                            To identify such information with accuracy

24    is a far more involved process than plaintiffs understand.

25    19.    I performed queries using Daiquery based on the methodology described above and

26    identified                                                            . I understand

27    that, on May 29, 2024, Meta produced

28

20.    The queries I ran have limitations important to this litigation. For example, I understand that, in this litigation, the plaintiffs claim that specific healthcare providers who are covered by HIPAA or California's Confidentiality of Medical Information Act sent sensitive data to Meta via the Business Tools. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

21.    To my understanding, ███████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████    As I stated above, to my understanding, the only way to confirm whether a data source is relevant and non-duplicative of the ████████ tables is for someone knowledgeable about Meta's systems ██████████████████████████████████

████████████████████████████████████████████████████████████

**Plaintiffs' Additional Requests for Information from "Daiquery"**

22.    I understand that, with respect to what plaintiffs call "Daiquery," plaintiffs are now asking for essentially two more things with respect to Meta's systems: ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████

23.    ███████████████████████████.  On the first topic, I do not agree that running further searches using Daiquery, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████

DocuSign Envelope ID: C3F95451-52AC-44C8-B986-77165495F60F

**CONFIDENTIAL**

24. As described above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that would likely be necessary, one cannot definitively conclude whether any table may contain relevant, non-duplicative data. Furthermore, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25. **Plaintiffs' Access to Meta's Systems.** As for the plaintiffs' second, alternative request—to obtain access to Daiquery and Meta's other internal tools so that plaintiffs can search for additional information about numerous tables—I have several concerns.

26. My first concern is that, for nearly all Hive tables, there is no way to use Meta's interfaces to determine the scope of the data contained within the tables, much less whether that data is relevant to a particular litigation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To do so, one must examine the underlying data itself.

27. I have reviewed the plaintiffs' methodology for examining fields to determine which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In my experience, isolating tables with potentially relevant data is a much more involved process.

DocuSign Envelope ID: C3F95451-52AC-44C9-B988-77165495F60E

**CONFIDENTIAL**

28.     Second, plaintiffs are mistaken about the scope of data available in Meta's interfaces. I understand plaintiffs' expert Dr. Shafiq states that, if given access to Meta's tools, he would ███████ ████████████████████████████████████████████████ I do not know what Dr. Shafiq means by ████████████████ but it appears ██████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████ He characterizes this information as ███████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████

29.     Plaintiffs' expert also states that "each Hive table in Daiquery" ███████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████

30.     I understand that some of this information that plaintiffs seek is duplicative of what has already been produced to plaintiffs in this case. For example, ██████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████

31.     Third, plaintiffs' expert states he would ███████████████████████ ████████████ I do not exactly understand what he means. If he is referring to using the information

7

1  populated in the ████████████████

2  ████████████████████████████████

3  ████████████████████████████████

4  ████████████████████████████████

5  ████████████████████████████████

6  ████████████████████████████████

7  ████████

8       32.    I do not believe that giving plaintiffs access to Meta's internal systems will lead to the

9  identification of potentially relevant data sources beyond those that Meta has already identified and

10 offered to identify.  Those individuals will not have knowledge or experience comparable to Meta's

11 data scientists and engineers, who understand these systems' complexities and limitations.

12      I declare under penalty of perjury that the foregoing is true and correct, and that I executed this

13 declaration on June 28, 2024, in San Mateo, California.

14                                    _Qiwen Xia_
                                    A755E3F55B5AB42

15                                    Qiwen ("Carrol") Xia

16

17

18

19

20

21

22

23

24

25

26

27

28

Proposed Redacted
Version of Wooldridge
Declaration Supporting
July 1, 2024 Joint
Discovery Dispute
Letter
(Dkt. No. 527-7)

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>_____<br><br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-3580-WHO<br><br>PUTATIVE CLASS ACTION<br><br>**DECLARATION OF TOBIAS WOOLDRIDGE IN SUPPORT OF META PLATFORMS, INC.'S POSITION IN DATA SOURCE DISPUTE**<br><br>Honorable Judge Virginia K. DeMarchi |

1    I, Tobias Wooldridge, declare as follows:

2        1.    I am a software engineer at Meta.  I offer this declaration in support of Defendant Meta

3    Platforms, Inc.'s position in the Joint Discovery Dispute Letter about data sources.  The information in

4    this declaration is based on my personal knowledge and discussion with relevant personnel.  If called

5    and sworn as a witness, I could and would testify competently to this information.

6        2.    I have worked at Meta as a software engineer since ███████████ I am a senior

7    engineer on the Signals team, which bears the primary responsibility for maintaining and updating the

8    Meta Pixel code.  My team is also responsible for maintaining and implementing Meta's systems that

9    detect and filter potentially sensitive data being sent by third-party developers to Meta via the Meta

10   Pixel, among other Business Tools.  I have worked in this area for the duration of my tenure at Meta.

11       3.    I understand that plaintiffs in this case assert that certain technologies offered by Meta—

12   the Meta Pixel, the Facebook SDK, and Meta's Conversions API (collectively, Meta's "Business

13   Tools")—are relevant to this litigation.

14       4.    Data transmitted by third parties via Meta's Business Tools to Meta's servers ("Business

15   Tools Data") is processed and stored in a structured data warehouse called "Hive."  I am familiar with

16   Hive and, as part of my responsibilities, I routinely work with Hive tables related to Business Tools

17   Data.

18       5.    I understand that Meta has identified certain tables in Hive that contain data potentially

19   relevant to this case, including the following ██ tables:



20

21

22

23

24

25

26

27

28

TOBIAS WOOLDRIDGE DECL. RE DATA SOURCE DISPUTE
CASE NO. 3:22-CV-3580-WHO

**CONFIDENTIAL**

6. ██████████████████████████████████████

████████████████████████████████ for Hive tables. ██████████

████████████████████████████████████████████████████

████████████

7.    I understand that Meta has made available ███████████

to plaintiffs in this matter. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

8.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

9.    ████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

10.    I understand plaintiffs' expert can run targeted searches ██████

████████████████████████████████████████████████████

████████████████████████████████████████. At issue here, I understand

plaintiffs' expert has ████████████████████████████████████

████████████████████████████████████████████████████

████████████. With some limitations, I understand ████████████████

CONFIDENTIAL



11.    I understand ███████████████████████████████████████████████

████████████    Plaintiffs' expert could █████████████████, and presumably he has done so.

12.    I understand plaintiffs have asked Meta to do several things with respect to ████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████and (3)

to grant the plaintiffs access to Meta's systems so that plaintiffs could conduct some further analysis.

TOBIAS WOOLDRIDGE DECL. RE DATA SOURCE DISPUTE
CASE NO. 3:22-CV-3580-WHO

13. I understand that plaintiffs assert that █████████████

██████████████████████████████████████████████████

████████████████████.

14. In my view, ██████████████████████████

███████████████████, is overbroad for several reasons. █████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████.

15. ████████████████████████████████████████

██████████████████████████████.

16. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████.

17. ████████████████████████████████████████

████████████████████████████████████████████████.

18. ████████████████████████████████████████

19. ████████████████████████████████████████

████████████████████████████████████████.

20. Setting aside these issues, with respect to █████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████.

21. For example, the ████████████████████████████

████████████████. To give an example, ███████████████████

██████████████████████████████████████████████████

CONFIDENTIAL

1 ███████████████████████████████████████

2 ███████████████████████████████████████

3 ██████████████████████

4     22.    ████████████████████████████████

5 ███████████████████████████████████████

6 ███████████████████████████████████████

7 ███████████████████████████████████████

8 ███████████████████████████████████████

9 ████████████

10    23.    ████████████████████████████████

11 ███████████████████████████████████████

12 ████████████████████████████████

13    24.    There is a way to improve plaintiffs' ████████████

14 ███████████████████████████████████████

15 ███████████████████████████████████████

16 ███████████████████████████████████████

17 ███████████████████████████████████████

18 ████████████

19 ██████████████████████████████████████

20 ██████████████████████████████████████

21 ██████████████████████████████████████

22 ██████████████████████████████████████

23 ██████████████████████████████████████

24 ██████████████████████████████████████

25    25.    ████████████████████████████████

26 ███████████████████████████████████████

27 ████████████████████████████

28

26.    In brief, █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████

27.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

**Plaintiffs' Request for Access to Meta's Systems**

28.    I understand that plaintiffs seek to obtain information about ███████████

██████████████████████████████████████████████████████████████. I

also understand that plaintiffs seek to obtain further access to Meta's internal systems and tools so they

can search for additional information about ████████████

29.    Plaintiffs already have access to much of the information they appear to seek. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ Plaintiffs also have access to information about

████████████████████████████████████████████████████████████

██████████████████████

30.    Based on my experience, there is no efficiency to be gained by allowing plaintiffs to

access Meta's systems, which plaintiffs do not understand.  To the extent plaintiffs are entitled to

additional information, it will be more efficient for Meta's engineers and data scientists to extract it.

**Meta's ████████████**

31.    To my understanding, ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

6

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████

4 ███████████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 32.   ███████████████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ███████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████

11 ███████████████████████.

12 33.    I understand that plaintiffs initially asserted that I wrote a document ███████████

13 attached as Exhibit 1 to the Barnes Declaration, which ████████████████████████

14 ██████████████████████████████████████████████████. I did

15 not write this document; I believe it just appears in my files because it was shared with me.

16 **Other Meta Technologies**

17 34.    I understand that plaintiffs have claimed that there are other technologies at Meta that

18 Meta could use to identify data sources containing relevant data sent via the Business Tools (i.e., data

19 sent from the relevant healthcare entities covered by health laws), including the Pixel.  These other

20 technologies are called ███████████████████████████████

21 35.    ████████████████    I understand that

22 ███████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████

24 ███████████████████████████████████████████████████████

25 ███████████████████████████████████████████████████████

26

27

28 [1] I understand that plaintiffs' expert claims that Meta produced the fields and field descriptions associated with ████████████████████████ on "June 21."  Shafiq Decl. ¶ 75.  I understand that this claim is inaccurate and that Meta actually produced this document in March 2024.

36.      I understand that

37.    I also understand that plaintiffs claim that

**Other Hive Tables Plaintiffs Reference**

38.    I understand that plaintiffs seek additional information about certain Hive tables.  For example, I understand that plaintiffs ask Meta to provide

39.



. I understand that plaintiffs first raised ███ on June 18, 2024.

I understand that plaintiffs first raised ███ on June 18, 2024.

I understand that plaintiffs first raised ███ on June 18, 2024.

I understand that plaintiffs first raised ███ on June 18, 2024.

40.   I also understand that plaintiffs have requested

TOBIAS WOOLDRIDGE DECL. RE DATA SOURCE DISPUTE
CASE NO. 3:22-CV-3580-WHO

**CONFIDENTIAL**

1    41.    I offer the Court the following context on ███████████████

2    ████████████████████████████████████████████████████████

3    ███████

4              ████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ███████████████████████████████████████████

8              ████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████

11            ████████████████████████████████████████████████

12   ████████████████████████████████████████████

13            ████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████.    Plaintiffs also misrepresent my prior

22   statements about ███████████████████████████████████████.[2]

23   Shafiq Decl. ¶ 83.

24            ████████████████    Plaintiffs' expert states ███████████████████

25   ████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   _____

28   [2] I understand that plaintiffs have not previously identified or requested that Meta produce data ███████
     ████████████████████████ despite what their expert's declaration implies  S   a   q
     Decl. ¶ 83).

                                    10

**CONFIDENTIAL**

1

2

3

4

5

6          █████         As   another   example,   ███████████████████████

7

8

9

10            █████████████████████████████████████████

11

12

13

14

15

16

17          ██████████████████████   I understand that plaintiffs first raised  ████   on

18    June 18, 2024.

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10          42.      I understand that plaintiffs have identified

11

12

13                                              I understand that

14                          I also understand based on my investigation to date that

15

16

17

18

19                    **Plaintiffs' Claims About "Crawlers"**

20          43.      I understand plaintiffs have claimed that Meta has some systematic way of identifying

21    which entities are covered by HIPAA or the CMIA.  I reiterate that I am aware of no "crawler" or

22    similar tool at Meta that is configured to crawl websites to identify if they are covered by HIPAA or

23    the CMIA.                                                        .  It appears that

24    plaintiffs' expert now agrees that Meta has not "already configured a crawler to make HIPAA status

25    determinations."

26                    **Plaintiffs' Claim About**

27          44.      Plaintiffs' expert claims that

28    I disagree with this characterization.

12

**ZippyDB** ████████

45.     I understand that plaintiffs have requested that Meta "produce documents sufficient to describe fields and field descriptions (or their equivalents) in ZippyDB ████████ or identify a method so that Plaintiffs can do so themselves through access to Meta's systems." It appears that, by this request, plaintiffs mean that they want Meta to produce a significant amount of data stored in these systems—████████████ as well as "████████████████████" as I describe below.

46.     **ZippyDB.** ZippyDB is a "key/value" store, meaning it just stores a key and a value associated with it. ██████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████

47.     ████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

48.     ████████████████████████████████

█████████████████████████████ I therefore disagree with plaintiffs' counsel that ███████████████████████████████

████████████████████████████. If plaintiffs seek additional information concerning ██████████████████████████████

███████████████████████████████████████

**CONFIDENTIAL**

49.    Plaintiffs' expert recognizes that ███████████████████████████ ████████████████ But I understand he still requests that Meta provide data from these systems— namely, ███████████████████████████ Again, the vast majority of this information would have nothing to do with the Business Tools, much less Business Tool data associated with the healthcare entities I understand to be at issue in this litigation.

50.    Plaintiffs' expert also misunderstands the burden to Meta associated with providing the information he seeks ████████████████████████████████████ I understand that it is simply false that █████████████████████████████ ████████████████████ This would be a burdensome process to ████████████████████████, and it would *not* be targeted to data relevant to the Business Tools, medical providers, or this case.  And plaintiffs' requests about ███████ ████████████████ are misplaced for many reasons, including that █████████████████ █████████████████████

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this declaration on July 1, 2024, in Kirkland, WA.

*Tobias Wooldridge*
_____
Tobias Wooldridge

TOBIAS WOOLDRIDGE DECL. RE DATA SOURCE DISPUTE
CASE NO. 3:22-CV-3580-WHO

Proposed Redacted
Version of Parties'
July 12, 2024 Joint
Status Report
(Dkt. No. 544-3)

CONFIDENTIAL

July 12, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:    ***In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)**
       **Status Report Regarding Production of Documents from █ Tables**

Dear Judge DeMarchi,

       Pursuant to the Court's June 13, 2024 order, the parties submit this status report regarding the May 29, 2024 Discovery Dispute re Production of Data from █ Sources.  ECF 510.

   **1.    ECF 510, ¶ 1**

       The Court ordered that "Meta shall investigate the time required to produce the[] █████ samples and shall promptly advise plaintiffs of a reasonable timeline for production" and that "Plaintiffs shall review the samples Meta provides and shall promptly advise Meta of ████████ ██████████ or what, if any, additional information plaintiffs require to make that determination." ECF 510, ¶1.

       Meta has stated that it will provide the ██████ samples for the ███ tables on or around July 15, 2024. ECF 529 at 2.  Meta now anticipates that it will provide the ██████████ samples for ███ of the ███ tables on or around July 15, 2024, and Meta anticipates that it will provide the samples for the remaining ███ tables on or around July 17, 2024.  Once Meta produces the ███ samples, Plaintiffs shall review them.

       Plaintiffs' position is that Meta's timely production of ███████████████ ██████████████████████████ (beyond the █████ tables) is additional information that will be necessary for an efficient process to identify non-duplicative fields and data sources that Meta will produce from.  See ECF No. 527-4, Shafiq Decl. ¶¶ 70-126.  Meta does not agree with plaintiffs, and Meta's position is that the current dispute regarding Meta's production of data from the ███ identified tables can be resolved without reference to the parties' additional dispute regarding other potentially relevant data sources.

   **2.    ECF 510, ¶ 2**

       The Court ordered Meta to "investigate the time and burden involved in producing ████████████████████████████████" for the ████████████████████ ████████ ███████████ tables and to "promptly advise plaintiffs of the results of this investigation and [] indicate whether production of all such data is feasible, and if not, why not."  ECF 510, ¶ 2.

This order was "in view of Meta's representation that the ███████████
██████████████████████████████████████████████████████████ *Id.*
███ Meta has informed Plaintiffs that it is feasible to produce ███████████
████████████████████ and that Meta will produce that data to Plaintiffs. Meta has not provided an anticipated date when it will produce that data.

**3. ECF 510, ¶ 3**

The Court ordered that "[a]fter receiving Meta's ████████ samples, plaintiffs shall make a specific proposal to Meta regarding ██████████████████████████" for "███████████████████ table and for any other ██████████████
██████████████." ECF 510, ¶ 3. The Court further ordered that "Meta shall investigate the time and burden required to produce responsive data according to plaintiffs' proposal, and shall promptly advise plaintiffs of the results of that investigation. Meta may make a counter proposal. Plaintiffs must consider any such counter proposal, and shall promptly advise Meta of the results of that consideration."

Meta has stated that it will provide the ██████ samples for the ███ tables on or around July 15, 2024 and July 17, 2024. The parties stipulated to extend plaintiffs' deadline to provide its proposed sampling methodology to July 30, 2024, and the court ordered that stipulation on July 3, 3024. ECF 529.

**4. ECF 510, ¶ 4**

The Court ordered that "Meta shall provide [a] further declaration to plaintiffs by June 26, 2024" regarding its cold storage burden and that "plaintiffs shall make a written proposal to Meta explaining its proposed methodology" regarding an alternative "efficient, cost-effective, and proportionate means to retrieve this data from cold storage." ECF 510, ¶ 4.

The parties exchanged these declarations. On June 26, 2024, Meta provided declarations from Meta employees Jeffrey Mickey and Qiwen (Carrol) Xia in support of Meta's sampling proposal. On July 3, 3024, Plaintiffs provided a declaration from their expert Dr. Zubair Shafiq, an associate professor of computer science at the University of California-Davis in support of plaintiffs' written proposal to retrieve data from Meta's cold storage.

The parties will continue to meet and confer regarding Meta's burden.

**5. ECF 510, ¶ 5**

The Court ordered that "plaintiffs shall provide to Meta a proposed sampling methodology for ████ tables ███████████████████████████." ECF 510, ¶ 5.

Meta has stated that it will provide the ██████ samples for the ███ tables on or around July 15, 2024 and July 17, 2024. Pursuant to the parties' stipulation, the Court extended the deadline for Plaintiffs to provide Meta a proposed sampling methodology to July 30, 2024. ECF 529.

**6. Proposed Next Steps**

The parties believe that it is premature at this time to submit further briefing regarding Meta's production of documents from the ▮ tables. The parties need additional time to meet-and-confer and attempt to narrow or resolve the disputes regarding Meta's production of documents from the ▮ tables after Meta has produced its ▮ samples. Thus, the parties ask that the Court enter the following deadline for a joint status report on August 9, 2024.

| Event | Deadline |
|-------|----------|
| Parties shall file a joint status report advising the Court of the status of their efforts to resolve their disputes regarding Meta's production of documents from the ▮ tables, including the status of the specific tasks identified in ECF 510. The status report must not contain argument and must not attach any declarations. The status report shall identify any remaining areas of disagreement as to these ▮ tables, and shall include the parties' recommendations for next steps. | August 9, 2024 |

Dated: July 12, 2024              By:    _/s/Jason Jay Barnes_
                                         Jason 'Jay' Barnes

                                 **SIMMONS HANLY CONROY LLC**

                                 Jason 'Jay' Barnes (admitted *pro hac vice*)
                                   *jaybarnes@simmonsfirm.com*
                                 112 Madison Avenue, 7th Floor
                                 New York, NY 10016
                                 Tel:    212-784-6400
                                 Fax:    212-213-5949


                                 By:    _/s/Geoffrey Graber_
                                         Geoffrey Graber

                                 **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                 Geoffrey Graber, State Bar No. 211547
                                   *ggraber@cohenmilstein.com*
                                 1100 New York Avenue NW, Fifth Floor
                                 Washington, DC 20005
                                 Tel:    202-408-4600
                                 Fax:    202-408-4699

                                 **KIESEL LAW LLP**
                                 Jeffrey A. Koncius, State Bar No. 189803
                                   *koncius@kiesel.law*
                                 8648 Wilshire Boulevard
                                 Beverly Hills, CA 90211
                                 Tel:    310-854-4444

Fax:     310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:    206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
Fax:    510-350-9701

*Attorneys for Plaintiffs and Putative Class*

Dated: July 12, 2024                    **GIBSON, DUNN & CRUTCHER LLP**

By:   */s/Lauren Goldman*
      Lauren Goldman

LAUREN R. GOLDMAN (admitted *pro hac vice*)
DARCY C. HARRIS (admitted *pro hac vice*)
lgoldman@gibsondunn.com
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8200

Facsimile: (415) 393-8306

**COOLEY LLP**

By:  */s/Michael G. Rhodes*
     Michael G. Rhodes

MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Meta Platforms, Inc.*

## <u>CIVIL L.R. 5-1(i)(3) ATTESTATION</u>

Pursuant to Civil Local Rule 5-1(i)(3), I, Claire Torchiana, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: July 12, 2024          By:     */s/Claire Torchiana*_____

# Proposed Redacted Version of August 9, 2024 Joint Status Report
# (Dkt. No. 574-3)

CONFIDENTIAL

August 9, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

> **Re:** ***In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)**
> **Status Report Regarding Production of Documents from Certain Sources**

Dear Judge DeMarchi,

Pursuant to the Court's July 24, 2024 order (ECF No. 561), the parties submit this status report regarding the May 29, 2024 Discovery Dispute re Production of Data from ▇ Sources. ECF 510.

### Status of Parties' Efforts to Resolve Disputes

1.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ **tables (ECF 510, ¶ 2).**

Meta has informed Plaintiffs that Meta believes it is feasible to produce ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇, and that Meta will produce that data to Plaintiffs. Meta is continuing to evaluate an anticipated date by when it will produce that data.

2.  **Negotiations regarding sampling for** ▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ **tables (ECF 510, ¶ 5).**

On July 30, 2024, Plaintiffs sent Meta their sampling proposal for these ▇ tables, which includes a proposed stipulation and modification to the case schedule. On August 8, 2024, Meta provided a sampling counterproposal to Plaintiffs, which Meta memorialized in writing on August 9, 2024. The parties will continue to confer and to attempt to resolve or narrow their disputes regarding their sampling proposals. If the parties are unable to reach agreement by August 22, 2024, the parties propose that they submit a joint discovery dispute letter to the court (with supporting exhibits and declarations as necessary) on August 29, 2024.

As noted in the parties' July 12, 2024 status report, the parties have exchanged expert declarations regarding the burden of producing cold storage data. The parties may rely on their positions in those declarations as part of the August 29 discovery dispute letter to the extent necessary.

**3. Negotiations regarding fields for** ███████████████████
███████████████████████ *tables* **(ECF 510, ¶¶ 1, 3).**

On July 15 and 17, 2024, Meta produced ████████████████ tables. On July 19,
2024, Plaintiffs sent Meta a letter with questions about ████
████ tables. Meta responded to that letter on August 9, 2024 and provided additional information
to plaintiffs. On August 9, 2024, Plaintiffs sent Meta a letter identifying additional information
that Plaintiffs believe they need from Meta in order to provide a proposal for ██████████
████████████████████████████████████████████████████████
████████ tables. Meta is reviewing plaintiffs' letter, which requests further information or data
on approximately 16 topics. The parties will continue to confer.

<u>Proposed Next Steps</u>

The parties will continue to confer and to attempt to resolve or narrow their disputes
regarding    their    sampling    proposals    for    ████████████████████
████████████████ tables. If the parties are unable to reach agreement by
August 22, 2024, the parties propose that they submit a joint discovery dispute letter to the court
(with supporting exhibits and declarations as necessary) on August 29, 2024.

| Event | Deadline |
|---|---|
| Parties file joint discovery dispute letter regarding sampling proposals for ████<br><br>████████████████████████ tables, with supporting exhibits and declarations as necessary. | August 29, 2024 |

Dated: August 9, 2024                    By:     */s/ Jason "Jay" Barnes*
                                                 Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400

Fax:    212-213-5949


By:    */s/ Geoffrey Graber*
       Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:    310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:    206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
Fax:    510-350-9701

*Attorneys for Plaintiffs and Putative Class*


Dated: August 9, 2024          **GIBSON, DUNN & CRUTCHER LLP**


3

By:  */s/ Lauren Goldman*
     Lauren Goldman

**COOLEY LLP**

By:  */s/ Michael G. Rhodes*
     Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Eric A. Kafka , hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: August 9, 2024                    By:    _/s/ Eric A. Kafka_____

Proposed Redacted Version of
Exhibit 1 to Declaration of Beth
E. Terrell in Support of
Plaintiffs' Opposition to
Administrative Motion to
Consider Whether Another
Party's Materials Should be
Filed Under Seal
(Dkt. No. 595-3)

## Eden Nordby

| | |
|---|---|
| **From:** | Beth Terrell |
| **Sent:** | Thursday, August 22, 2024 12:24 PM |
| **To:** | Haspel, Leesa; McCloskey, Elizabeth K.; Reagan, Matthew C.; Goldman, Lauren; Harris, Darcy C.; Barrera, Abbey A.; Crowley-Buck, David F.; Hines, Kory J; Woolley, Monica Limeng; Montgomery, Zachary; McCroskey, Sean; Choi, Erin Marie; Myers, Janiel; Wolfgram, Joanna; RHODESMG@cooley.com; mkutcher@cooley.com; kwong@cooley.com; clebel@cooley.com; Cc: Claire Torchiana; GGraber@cohenmilstein.com; Shireen Hamdan; Hanne Jensen; amm@classlawgroup.com; egee@simmonsfirm.com; Jenny Paulson; Jay Barnes; Eric Johnson; atruong@simmonsfirm.com; sgraham@simmonsfirm.com; ghorbani@kiesel.law; Jeffrey A. Koncius; Ramirezjones@kiesel.law; Ghorbani@kiesel.law; Taft@kiesel.law; Fry@kiesel.law; Jessica Mendez; Ben Drachler; Amanda Steiner; Ryan Tack-Hooper; Jennifer Boschen; Holly Rota; Krystal Brown |
| **Cc:** | Eden Nordby; Eric Kafka |
| **Subject:** | RE: [External] Meta Pixel Healthcare \| Meta's motion to seal portions of the August 9, 2024 Joint Status Report |

Leesa,

We disagree with the positions in your email below.

Plaintiffs have not waived their right to contest sealing portions of the August 9 Joint Status Report just because Judge DeMarchi has ordered similar information sealed in the past. It is Defendant's burden to convince the court that the information should be sealed and Plaintiffs don't think Defendant has carried its burden with respect to the number of sources that are the subject of the parties' current negotiations regarding sampling and the details of sampling proposals, including Meta's "ability to produce ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and identifying the number of tables containing potentially relevant data." If Defendant has any case law supporting its request to seal that specific type of information, please provide it.

Regarding the Hive table names, Defendant has not articulated why information that has already been filed in open court should be sealed in this matter. *Ojmar US, LLC v. Sec. People, Inc.*, 16-CV-04948-HSG, 2016 WL 6091543, at *2 (N.D. Cal. Oct. 19, 2016) does not support this position. In *Ojmar*, the court granted a motion to seal information derived from the defendants' customer agreements, "includ[ing] 'cancellation, renewal, durational, and pricing information that is not publicly known.'" *Id.*

To clarify, Plaintiffs are not taking the position that all references to Hive table names contained in documents previously filed under seal should be unsealed. Therefore, we are puzzled by your assertion that bad actors could somehow "piece together" information from the August 9 JSR and the other filings you listed to "replicate and/or infiltrate Meta's data storage systems" because those other filings are either sealed in their entirety or heavily redacted:

Dkt. 473 – May 8 Joint Status Report, unredacted and filed under seal
Dkt. 519 – May 8 Joint Status Report with redactions
Dkt. 510 – Court's Further Order Re May 29, 2024 Discovery Dispute re Production of Data from ▮▮ Sources, unredacted and filed under seal

Dkt. 515 – Order Granting in Part Plaintiffs' Motion to Seal Documents re Dkt. No. 476, does not discuss Meta's systems or data

Dkt. 522 – Order Sealing Court's June 13 Further Order re May 29, 2024 Discovery Dispute Re Production of Data Sources (Dkt. No. 510)

Dkt. 523 – Court's Further Order Re May 29, 2024 Discovery Dispute re Production of Data from [Redacted] Sources with redactions

Unless we have an additional hour to confer today, we are not likely to reach this issue.  Please advise when you are available to meet and confer tomorrow regarding this issue.

Beth

---

**From:** Haspel, Leesa <LHaspel@gibsondunn.com>
**Sent:** Monday, August 19, 2024 2:05 PM
**To:** Beth Terrell <bterrell@terrellmarshall.com>; McCloskey, Elizabeth K. <EMcCloskey@gibsondunn.com>; Reagan, Matthew C. <MReagan@gibsondunn.com>; Goldman, Lauren <LGoldman@gibsondunn.com>; Harris, Darcy C. <DHarris@gibsondunn.com>; Barrera, Abbey A. <ABarrera@gibsondunn.com>; Crowley-Buck, David F. <DCrowleyBuck@gibsondunn.com>; Hines, Kory J <KHines@gibsondunn.com>; Woolley, Monica Limeng <MWoolley@gibsondunn.com>; Montgomery, Zachary <ZMontgomery@gibsondunn.com>; McCroskey, Sean <SMcCroskey@gibsondunn.com>; Choi, Erin Marie <EChoi@gibsondunn.com>; Myers, Janiel <JJMyers@gibsondunn.com>; Wolfgram, Joanna <JWolfgram@gibsondunn.com>; RHODESMG@cooley.com; mkutcher@cooley.com; kwong@cooley.com; clebel@cooley.com; Cc: Claire Torchiana <ctorchiana@cohenmilstein.com>; GGraber@cohenmilstein.com; Shireen Hamdan <shamdan@cohenmilstein.com>; Hanne Jensen <hj@classlawgroup.com>; amm@classlawgroup.com; egee@simmonsfirm.com; Jenny Paulson <jpaulson@simmonsfirm.com>; Jay Barnes <jaybarnes@simmonsfirm.com>; Eric Johnson <ejohnson@simmonsfirm.com>; atruong@simmonsfirm.com; sgraham@simmonsfirm.com; ghorbani@kiesel.law; Jeffrey A. Koncius <koncius@kiesel.law>; Ramirezjones@kiesel.law; Ghorbani@kiesel.law; Taft@kiesel.law; Fry@kiesel.law; Jessica Mendez <jmendez@kiesel.law>; Ben Drachler <bdrachler@terrellmarshall.com>; Amanda Steiner <asteiner@terrellmarshall.com>; Ryan Tack-Hooper <RTack-Hooper@terrellmarshall.com>; Jennifer Boschen <jboschen@terrellmarshall.com>; Holly Rota <hrota@terrellmarshall.com>; Krystal Brown <KBrown@terrellmarshall.com>
**Subject:** RE: [External] Meta Pixel Healthcare | Meta's motion to seal portions of the August 9, 2024 Joint Status Report

Beth,

We are unavailable to meet and confer today but can speak about this tomorrow during the M&C we already have planned.  We are available for that M&C from 3-3:45 PT tomorrow.

We do not agree that the August 9 Joint Status Report can be filed publicly.  As plaintiffs are aware, Meta sought on Friday to seal several parts of the Joint Status Report in addition to specific Hive table names.  Judge DeMarchi has repeatedly ordered this information—which relates to the number of sources that are the subject of the parties' current negotiations regarding sampling and the details of the sampling proposals—to be sealed.  *See, e.g.,* Dkt. Nos. 452, 463, 481, 482, 509, 522, 523, 561, 562.  Plaintiffs articulate no reason why this information should be unsealed.  Because the Joint Status Report reveals information about Meta's data storage and technical capabilities (i.e., that Meta has the ability to produce ████████████████ and identifying the number of tables containing potentially relevant data), this information should remain under seal.

With respect to the specific Hive table names that Meta seeks to redact in the Joint Status Report, those names should remain sealed because prior filings by the parties reveal sensitive, proprietary, non-public information about those tables.  For example, several prior filings discuss that specific tables at issue are in cold storage or reveal the amount of

data Meta has stored for certain tables.  *See, e.g.*, Dkt. Nos. 473, 510, 515, 519, 522, 523.  Unsealing the table names now will allow Meta's competitors and potential bad actors the ability to piece together this information from prior filings and use it to replicate and/or infiltrate Meta's data storage systems.  They—and the other information in the Joint Status Report—should therefore remain sealed, as the Court has previously ordered.  *See, e.g., Ojmar US, LLC v. Sec. People, Inc.*, 2016 WL 6091543, at *2 (N.D. Cal. Oct. 19, 2016) (noting protections afforded by courts within the Ninth Circuit are broad and extend to "confidential information regarding [a defendant's] products, services, and business practices").

Please let us know if plaintiffs would like to meet and confer about this issue tomorrow.


Best,
Leesa


**Leesa Haspel**
Associate Attorney

T: +1 212.351.3881 | M: +1 646.856.5232
LHaspel@gibsondunn.com


**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Beth Terrell <bterrell@terrellmarshall.com>
**Sent:** Monday, August 19, 2024 1:26 PM
**To:** McCloskey, Elizabeth K. <EMcCloskey@gibsondunn.com>; Reagan, Matthew C. <MReagan@gibsondunn.com>; Goldman, Lauren <LGoldman@gibsondunn.com>; Harris, Darcy C. <DHarris@gibsondunn.com>; Barrera, Abbey A. <ABarrera@gibsondunn.com>; Crowley-Buck, David F. <DCrowleyBuck@gibsondunn.com>; Hines, Kory J <KHines@gibsondunn.com>; Haspel, Leesa <LHaspel@gibsondunn.com>; Woolley, Monica Limeng <MWoolley@gibsondunn.com>; Montgomery, Zachary <ZMontgomery@gibsondunn.com>; McCroskey, Sean <SMcCroskey@gibsondunn.com>; Choi, Erin Marie <EChoi@gibsondunn.com>; Myers, Janiel <JJMyers@gibsondunn.com>; Wolfgram, Joanna <JWolfgram@gibsondunn.com>; RHODESMG@cooley.com; mkutcher@cooley.com; kwong@cooley.com; clebel@cooley.com; Cc: Claire Torchiana <ctorchiana@cohenmilstein.com>; GGraber@cohenmilstein.com; Shireen Hamdan <shamdan@cohenmilstein.com>; Hanne Jensen <hj@classlawgroup.com>; amm@classlawgroup.com; egee@simmonsfirm.com; jpaulson@simmonsfirm.com; jaybarnes@simmonsfirm.com; ejohnson@simmonsfirm.com; atruong@simmonsfirm.com; sgraham@simmonsfirm.com; ghorbani@kiesel.law; Koncius@kiesel.law; Ramirezjones@kiesel.law; Ghorbani@kiesel.law; Taft@kiesel.law; Fry@kiesel.law; Jessica Mendez <jmendez@kiesel.law>; bdrachler@terrellmarshall.com; asteiner@terrellmarshall.com; Ryan Tack-Hooper <RTack-Hooper@terrellmarshall.com>; Jennifer Boschen <jboschen@terrellmarshall.com>; Holly Rota <hrota@terrellmarshall.com>; Krystal Brown <KBrown@terrellmarshall.com>
**Subject:** RE: Meta Pixel Healthcare | Meta's motion to seal portions of the August 9, 2024 Joint Status Report
**Importance:** High


**[WARNING: External Email]**

Good morning, please let us know when you can meet and confer today about these issues. We should be able to keep the call under 15 minutes.
Beth

---

**From:** Beth Terrell
**Sent:** Saturday, August 17, 2024 1:21 PM
**To:** McCloskey, Elizabeth K. <EMcCloskey@gibsondunn.com>; Reagan, Matthew C. <MReagan@gibsondunn.com>;

Goldman, Lauren <LGoldman@gibsondunn.com>; Harris, Darcy C. <DHarris@gibsondunn.com>; Barrera, Abbey A. <ABarrera@gibsondunn.com>; Crowley-Buck, David F. <DCrowleyBuck@gibsondunn.com>; Hines, Kory J <KHines@gibsondunn.com>; Haspel, Leesa <LHaspel@gibsondunn.com>; Woolley, Monica Limeng <MWoolley@gibsondunn.com>; Montgomery, Zachary <ZMontgomery@gibsondunn.com>; McCroskey, Sean <SMcCroskey@gibsondunn.com>; Choi, Erin Marie <EChoi@gibsondunn.com>; Myers, Janiel <JJMyers@gibsondunn.com>; Wolfgram, Joanna <JWolfgram@gibsondunn.com>; RHODESMG@cooley.com; mkutcher@cooley.com; kwong@cooley.com; clebel@cooley.com; Cc: Claire Torchiana <ctorchiana@cohenmilstein.com>; Geoffrey Graber <GGraber@cohenmilstein.com>; Shireen Hamdan <shamdan@cohenmilstein.com>; Hanne Jensen <HJ@classlawgroup.com>; Andre Mura <amm@classlawgroup.com>; egee@simmonsfirm.com; Jenny Paulson <jpaulson@simmonsfirm.com>; Jay Barnes <jaybarnes@simmonsfirm.com>; Eric Johnson <ejohnson@simmonsfirm.com>; atruong@simmonsfirm.com; sgraham@simmonsfirm.com; ghorbani@kiesel.law; Jeffrey A. Koncius <koncius@kiesel.law>; Ramirezjones@kiesel.law; Ghorbani@kiesel.law; Taft@kiesel.law; Fry@kiesel.law; Jessica Mendez <jmendez@kiesel.law>; Ben Drachler <bdrachler@terrellmarshall.com>; Amanda Steiner <asteiner@terrellmarshall.com>; Beth Terrell <bterrell@terrellmarshall.com>; Ryan Tack-Hooper <RTack-Hooper@terrellmarshall.com>; Jennifer Boschen <jboschen@terrellmarshall.com>; Holly Rota <hrota@terrellmarshall.com>; Krystal Brown <KBrown@terrellmarshall.com>
**Subject:** Meta Pixel Healthcare | Meta's motion to seal portions of the August 9, 2024 Joint Status Report

Good afternoon,

Plaintiffs oppose sealing select portions of the August 9 Joint Status Report because the table names Meta seeks to keep under seal are already publicly available. "Information that is public knowledge or that is generally known in an industry cannot be a trade secret." *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1002 (1984). Granting Meta's motion to seal would therefore be inappropriate because it cannot meet the "good cause" standard for keeping this information under seal where the specific information Meta proposes to redact is already in the public domain. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016); *see also Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006).

The table names mentioned in the August 9 Joint Status Report (Dkt. 574-3) appear in a list of 11,051 Hive tables that was filed without redactions as Exhibit 73 (at internal Exhibit B) to the Weaver and Loeser Declaration in Support of Plaintiffs' Motion for Sanctions in *In Re Facebook, Inc. Consumer Privacy Profile Litig*., USDC Northern District of California, Case No. 3:18-md-02843-VC at Dkt. 1085-29. In that action, Judge Chabbria denied Defendant's motion to seal with respect to Exhibit 73 "subject to renewal." *See* Order re Motions to Seal, Dkt. 1082 at 7-8. However, Defendant voluntarily filed Exhibit 73 in open court without redactions on December 12, 2022, because it "no longer request[ed] to seal" the document, notwithstanding Judge Chabbria's permission to renew its request. *See* Facebook, Inc.'s Notice of Filing of Unredacted Documents, Dkt. 1085 at 3. We have attached the relevant pleadings from the *In Re Facebook* case to this email.

Because they are publicly available, we do not believe Meta can justify sealing the handful of Hive table names mentioned in the August 9 Joint Status Report and we request that Meta agree that the Joint Status Report may be filed publicly.

If necessary, we are available to confer about this issue on Monday August 19  between noon and 5 pacific.

Beth

**Beth E. Terrell** *(she, her, ella)*

**Terrell | Marshall Law Group PLLC**
**Olympic Peninsula Office**
109 E. Bell Street
Sequim, WA 98382
T 206.816.6603 | F 206.319.5450 | C 206.295.7078

**terrellmarshall.com**

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

Proposed Redacted Version of Notice of Parties' Proposals Re: Proposed Order Re: Protocol Discussed in August 21, 2024 Sealed Discovery Order (Dkt. 611)

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:     212-784-6400
Fax:     212-213-5949

Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:     310-854-4444
Fax:     310-854-0812

*Attorneys for Plaintiffs and the Proposed Class*

[*Additional counsel listed on signature page*]

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:     202-408-4600
Fax:     202-408-4699

Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:     206-816-6603
Fax:     206-319-5450

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:     510-350-9700
Fax:     510-350-9701

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION <br><br> _____ <br><br> This Document Relates To: <br><br> All Actions | Case No. 3:22-cv-3580-WHO (VKD) <br><br> **NOTICE OF PARTIES' PROPOSALS RE: PROPOSED ORDER RE: PROTOCOL DISCUSSED IN AUGUST 21, 2024 SEALED DISCOVERY ORDER** <br><br> <u>CLASS ACTION</u> <br><br> Hon. Virginia K. DeMarchi |

On August 21, 2024, the Court entered a sealed order directing the parties to "confer regarding a protocol for the iterative production and analysis of the ████████████ table information Meta indicated it is prepared to provide," including "target dates or intervals for Meta's production and plaintiffs' analysis, a streamlined process for resolving disputes, and a schedule for periodic status reports," and the Court directed the parties to "provide a proposed order for the Court's review and approval."  ECF No. 586.

Thereafter, the parties stipulated to and the Court approved two brief extensions of the deadline to submit a proposed order for this protocol.  ECF Nos. 601, 603, 608, 609.

The parties have conferred, but the parties have been unable to reach complete agreement on a proposed order for the protocol discussed with the Court during the August 21, 2024 discovery hearing.  Accordingly, the parties are providing their respective proposals in the attached Exhibit A, which notes the points on which the parties agree, the points on which the parties disagree, and position statements in support of the points on which the parties do not agree.

## SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.

Respectfully submitted,

Dated: September 5, 2024

**SIMMONS HANLY CONROY LLC**

By: /s/ Jason 'Jay' Barnes
Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
Email: jaybarnes@simmonsfirm.com
An V. Truong, *Admitted Pro Hac Vice*
Email: atruong@simmonsfirm.com
Eric Steven Johnson, *Admitted Pro Hac Vice*
Email: ejohnson@simmonsfirm.com
Jennifer M Paulson, *Admitted Pro Hac Vice*
Email: jpaulson@simmonsfirm.com
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400

NOTICE OF PARTIES' PROPOSALS RE: PROPOSED ORDER RE: PROTOCOL DISCUSSED IN
AUGUST 21, 2024 SEALED DISCOVERY ORDER
CASE NO. 3:22-CV-3580-WHO (VKD)

1

2

**COHEN MILSTEIN SELLERS & TOLL PLLC**
By: /s/ Geoffrey A. Graber
Geoffrey Aaron Graber, CSB #211547
Email: ggraber@cohenmilstein.com
Eric Alfred Kafka, *Admitted Pro Hac Vice*
Email: ekafka@cohenmilstein.com
Claire T. Torchiana, CSB #330232
Email: ctorchiana@cohenmilstein.com
1100 New York Avenue NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600

**TERRELL MARSHALL LAW GROUP PLLC**
By: /s/ Beth E. Terrell
Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
Amanda M. Steiner, CSB #190047
Email: asteiner@terrellmarshall.com
Ryan Tack-Hooper
Email: rtack-hooper@terrellmarshall.com
Benjamin M. Drachler, *Admitted Pro Hac Vice*
Email: bdrachler@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603

Jeffrey A. Koncius, CSB #189803
Email: koncius@kiesel.law
Nicole Ramirez, CSB #279017
Email: ramirez@kiesel.law
Mahnam Ghorbani, CSB # 345360
Email: ghorbani@kiesel.law
Stephanie M. Taft, CSB #311599
Email: taft@kiesel.law
Kaitlyn E. Fry, CSB #350768
Email: fry@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444

Andre M. Mura, CSB #298541
Email: amm@classlawgroup.com
Hanne Jensen, CSB #336045
Email: hj@classlawgroup.com
Delaney Brooks, CSB #348125
Email: db@classlawgroup.com

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700

*Attorneys for Plaintiffs*

Dated: September 5, 2024

**GIBSON, DUNN & CRUTCHER LLP**
By:  /s/ Lauren Goldman
　　　　Lauren Goldman

LAUREN R. GOLDMAN (admitted *pro hac vice*)
DARCY C. HARRIS (admitted *pro hac vice*)
lgoldman@gibsondunn.com
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:　(212) 351-4000
Facsimile:　(212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:　(415) 393-8200
Facsimile:　(415) 393-8306

**COOLEY LLP**

By:  /s/ Michael G. Rhodes
　　　　Michael G. Rhodes

MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:　(415) 693-2000
Facsimile:　(415) 693-2222

*Attorneys for Meta Platforms, Inc.*

EXHIBIT A

**EXHIBIT A**

| I. Prefatory Language | |
|---|---|
| **Plaintiffs Proposal[1]** | **Meta's Proposal** |
| The Court held a hearing on August 21, 2024 on the parties' July 1, 2024 joint discovery dispute letter (Dkt. 526) regarding potentially relevant data sources, the appropriate means to identify them, and Plaintiffs related requests for documents relevant to ████████ at Meta. During the August 21, 2024 hearing, the Court and the parties discussed a procedure by which the parties could identify ████████. This Order establishes a procedure for the iterative production and analysis of information for this purpose and for the identification and production of additional information that will make the process more efficient by building on Meta's previous similar internal "discovery processes." | The Court held a hearing on August 21, 2024 on the parties' July 1, 2024 joint discovery dispute letter (Dkt. 526) regarding potentially relevant data sources and the appropriate means to identify them. During the August 21, 2024 hearing, the Court and the parties discussed a procedure by which the parties could identify ████████. This Order establishes a procedure for the iterative production and analysis of information for this purpose. |
| **Plaintiffs' Argument** | **Meta's Argument** |
| Plaintiffs' additional language tracks differences in the parties' respective positions set forth below. To the extent that the Court adopts Plaintiffs' positions, then Plaintiffs believe Plaintiffs' suggested language here should also be adopted. | The Court's August 21, 2024 order provides that the parties must submit a proposed order "regarding a protocol for the iterative production and analysis of the ████████ table information Meta indicated it is prepared to provide," which "should include target dates or intervals for Meta's production and plaintiffs' analysis, a streamlined process for resolving disputes, and a schedule for periodic status reports." Dkt. 586. Meta's proposal does this. In contrast, plaintiffs' proposal seeks to impose additional requirements and address other topics that go beyond the process the Court fashioned during the hearing and described in the Court's August 21, 2024 order. |
| **The Court's Order** | |
| The Court adopts the language proposed by _____, and/or modifies the language as follows: | |

---

[1] Plaintiffs have highlighted in yellow throughout this document the material differences they see between the parties' respective proposals to aid the court in assessing the differences between the parties' respective proposals.

| II.  Definitions |
|---|

| **Language on Which the Parties Agree** |
|---|

1. "<u>Daiquery</u>."   Daiquery is a Meta user interface that allows Meta's engineers and data scientists to run queries and identify data. ███████████████████████████████████████████████████████████████.

2. "<u>Shafiq Methodology</u>" means the process described by Zubair Shafiq at Dkt. 562-2 ¶¶ 41-42. Using the Shafiq Methodology, Dr. Shafiq ███████████████████████████████████████████████████████

| **Plaintiffs Proposal** | **Meta's Proposal** |
|---|---|
| 3. "<u>Schema and Initial</u> ████████ <u>Documentation</u>" includes:<br>  a.  A CSV file with fields and field descriptions for the data source;<br>  b.  A CSV file identifying data sources ██████████████;<br>  c.  Data source overview information, including ██████ ████████████ where available;<br>  d.  Retention information available for the table or data source.<br>4. "<u>Additional</u> ██████████ <u>Documentation</u>" includes:<br>  a.  Documents and screenshots from ████████████;<br>  b. | 3.  "<u>Schemas</u>."  Meta has previously produced to plaintiffs' ███████████████ A "schema" contains the fields in a specific Hive table and descriptions of those fields, as they exist in the ordinary course in Meta's systems. |

| **Plaintiffs' Argument** | **Meta's Argument** |
|---|---|
| There are five types of documents with areas of disagreement:<br><br>1.  The CSV files identifying ████████████ are necessary for Plaintiffs to construct a map of Meta's data flow systems. Meta produced ██████████████████ from May 2024.<br><br>Meta states that "the main purpose of this ████████████████████████████████████." This is incorrect. Meta inexplicably excluded ████████████████ ██ █ █████ ██████████████████ (At this point, ████████████ is the most notable exclusion. However, Plintiffs reasonably believe this process will reveal more.) Thus, the purpose of this exercise is to ████████████████████ | Meta responds to plaintiffs' numbered points as follows:<br><br>1.  Meta has agreed to provide a document containing ████████████████. Meta does not object to also providing ████████████████████ (*see* Section IV).  The only dispute is whether Meta should be required to identify ████████████████████████, which would expand the work involved and slow the process down.<br><br>The main purpose of this ████████████████ ██████████████.  Meta therefore disagrees that it would be necessary or appropriate to ████████████████████; instead, to the extent there is a specific rationale and support for ████████████ plaintiffs can make a |

| II. Definitions |
| --- |

███████████████
██████

The problem with Meta's proposal that the parties confer over ███ ████████████████████████████████████ is that it injects another point of contention and delay into a process that Meta should have completed more than a year ago. With this proposal, Plaintiffs are seeking a method for a systematic and automated process that will be far less likely to lead to the need for court intervention. If Meta thinks that the burden is too much, the Court can simply order that Meta provide Plaintiffs ████████████████████████████ ████████████████████████████████████████.

2. Plaintiffs ask for a simple order requiring production of ████████ ███████████████████████████████. The order needs to encompass ██████████ ██████████ because Meta has not yet disclosed ████████████ and Plaintiffs should not be restricted to the ███████████ ██████████. Searching for ████████ ██████████████████████████████████████ is a natural part of discovery that should have been done by Meta long ago.

3. Retention information is important for two reasons: (1) it is relevant to use , a data source with a two-year retention period is likely to be a more important data source; (2) it will quickly eliminate tables from consideration for exemplars or other production. Finally, Plaintiffs have explained why it is inefficient to require them to obtain this discovery from ███████████████████████████████ ██████████████████.

4. Plaintiffs reasonably believe ███████████████ will be an efficient method to investigate key tables. See below. Based on Plaintiffs' counsel's experience in other cases and investigation in this case, it is reasonably likely that this additional information will reveal more efficient ways to complete this ████████████.

reasonable, narrowly tailored request for ████████████████ and the parties can work collaboratively to address such requests. Meta has already agreed to include ██████████████████ in this exercise in response to plaintiffs' request, as well as a ████████████ ████████████ that plaintiffs may request (*see* Section III).

2. Meta has proposed a methodology for producing available ██████████ (*see* Section X) as well as ██████████████████ ████████████████, all of which is clearer than plaintiffs' proposal. Plaintiffs' phrase "████ ██████████████████████████████" is vague—not "simple"—and could be read to require burdensome, manual searches through Meta's ████████ ██████████████ that would go beyond the scope of this exercise.

3. Tables' standard retention periods have nothing to do with ████████████ and Plaintiffs can access ██████████████ ██████████. There is no reasonable basis to require Meta to incur additional burden and time to pull and provide this information as part of this process. Meta disagrees with the premise that a table with a longer retention period "is likely to be a more important data source," or that plaintiffs would eliminate tables from consideration based only on the tables' standard retention periods.

4. Meta is already proposing to use ████████████████ ██████████████ to produce ██████████ information discussed with the Court during the August 21, 2024 hearing—indeed, that is the purpose of the exercise that is the subject of this order. There is no reason to require Meta to go through the burdensome exercise of ████████ ████████████████████████████████████████████████. The "Shafiq methodology" relies on the identification of ██████████████████████ (Shafiq Decl. ¶¶ 41–42). Meta will be providing that information in a far more efficient manner than ████ ████████████████████████ that would be required by plaintiffs' proposal.

5. There is similarly no reasonable basis to require Meta to undertake a

| II.  Definitions |
|---|

| 5.  Plaintiffs believe ███ are relevant to ██████ and should be produced. The whole purpose of this exercise is to determine ██████. A ██████ critical part of that understanding and eventual proof is ██████ ██████ | burdensome process to provide ████████████ that Plaintiffs demand. This is an attempt to secure the broader, unwarranted access that plaintiffs requested in their motion—██████. The Court noted, and plaintiffs agreed, that plaintiffs' discovery requests are oriented towards obtaining information about ██████ not to obtain ██████. Aug. 21, 2024 Tr. at 20:16–22:4. It would be unduly burdensome to require Meta to ██████. |

| The Court's Order |
|---|

The Court adopts the language proposed by _____, and/or modifies the language as follows:

| III.  Table Review Process – Round One Production |
|---|

| **Language on Which the Parties Primarily Agree** |
|---|

1.  By September 4, 2024, plaintiffs will identify, based on any further investigation they or their experts have done, ██████, for which plaintiffs continue to believe further investigation into ██████ is necessary (which may include ███ ██████). Plaintiffs may also identify a reasonable number of ██████ for the process, including but not limited to ███

2.  By September 16, 2024, Meta will ██████ pursuant to the prior paragraph).  Meta will produce ██████ to plaintiffs and produce [Initial ██████ Documentation] or ██████ for ██████, to the extent ██████ exist in the ordinary course in Meta's systems.  Meta will also make reasonable efforts to produce at the same time ██████ as described further in Section X, below.

| Plaintiffs' Argument | Meta's Argument |
|---|---|
| 1.  Plaintiffs propose that Meta shall produce Initial ██ Documentation as set forth above. To the extent that the Court orders that only Schema needs to be produced initially, Plaintiffs request that the five additional items requested to be produced shall be produced for data sources specifically identified by Plaintiffs. | 1.  Meta incorporates its positions above and notes that Meta's proposal to provide ██████ contemplates Meta producing them on the same date (September 16, 2024), in addition to ███ ██████. <br><br>2.  The parties discuss their specific proposals for subsequent stages |

| III.  Table Review Process – Round One Production |
| --- |

| 2. Plaintiffs propose that each party have two court days to analyze ▮ ▮ before moving to the next stage. | below, including a discussion of the last highlighted sentence (in Section X). |
| --- | --- |

| The Court's Order |
| --- |

The Court adopts the language proposed by _____, and/or modifies the language as follows:

| IV.  Table Review Process – Further Productions | |
| --- | --- |
| **Plaintiffs' Proposal** | **Meta's Proposal** |
| 1. Plaintiffs shall use the Shafiq Methodology to identify ▮ ▮ for investigation within two court days of receiving Meta's production. Unless it objects using the procedure below, Meta shall produce Initial ▮ Documentation for ▮ identified by Plaintiffs within five court days of Plaintiffs' request.<br><br>2. If Meta has an objection to the production of Initial ▮ ▮ Documentation, it shall, within two court days of receiving Plaintiffs' request or question, (1) notify Plaintiffs of ▮ to which Meta objects; and (2) explain the basis for the objection. The parties will resolve these objections as described below in Section C of this Order.<br><br>3. The parties shall repeat this process ▮ until the completion of the Shafiq Methodology. | 1. The production of this information will begin a recurring process, each round of which will constitute an individual "cycle" with 4 steps:<br><br>  a. No later than two court days after receiving the ▮ ▮, plaintiffs shall use the Shafiq Methodology to identify ▮ and send to Meta ▮ that plaintiffs reasonably believe are "relevant" to the claims and defenses asserted in the action, the identification of which would be proportional to the needs of the case, and for which "further investigation would likely yield new relevant information" (Shafiq Decl. ¶ 40). Plaintiffs may also identify a reasonable number of ▮ for which plaintiffs request ▮<br><br>  b. No later than seven court days after receipt of ▮, Meta will investigate ▮ and raise any disputes related to identifying ▮;<br><br>  c. The parties shall then meet-and-confer within two court days to attempt to resolve any disputes about preservation, relevance, and the identification of ▮ and whether additional time is necessary to investigate ▮<br><br>  d. For ▮ for which there is no dispute about ▮, if any, within five court days following Meta's investigation and any necessary meet-and-confer, Meta will ▮. Meta will produce |

| IV.  Table Review Process – Further Productions |
|---|

|  | to plaintiffs, produce ██████████, to the extent ████████ exist in the ordinary course in Meta's systems, and make reasonable efforts to produce at the same time available ██████████████, as described further in Section X.  This production will end the prior cycle and start the next cycle.<br><br>e.  For ████████ for which there remains a dispute about running ██████████, the parties will resolve their disputes as described below in Section VIII of this Order. |
|---|---|

| Plaintiffs' Argument | Meta's Argument |
|---|---|
| Plaintiffs propose an orderly, automated process whereby, once Plaintiffs establish relevance through the Shafiq Methodology, if Meta has an objection, it must be made in a timely fashion with specific information. The entire reason this process is necessary is because Meta has not yet complied with Dkt. 275, which ordered production of the at-issue data in June 2023. Moreover, as the Court noted, the purpose of this order is to complete this process in a timely manner. | Meta is equally interested in producing the necessary information in a timely manner and closing out this process.  Meta's proposal provides the minimum time necessary for the parties to consider and confer about ██████████—and for Meta to produce the requested information.  It sets forth a recurring, workable schedule.<br><br>Plaintiffs' proposed five-court-day timeframe is an unreasonably compressed period in which to require Meta to investigate the relevance of ████████ identified by plaintiffs, ██████████████ █, prepare productions of that information, and search for—or create—the additional information plaintiffs have requested.<br><br>Although the "Shafiq Methodology" involves a cursory look at ██████ ████████ Meta requires more than two court days to investigate ██████████████ and consider whether they are potentially relevant or cumulative ██████████ |

| The Court's Order |
|---|

The Court adopts the language proposed by _____, and/or modifies the language as follows:

| V. Requests and Production of Additional ██████ Documentation | |
|---|---|
| **Plaintiffs Proposal** | **Meta's Proposal** |
| 1. By September 16, 2024, Meta shall produce Initial ████ Documentation that has not yet been produced and Additional ████████ for ████. | |
| 2. Plaintiffs may also identify ████████ they request Meta to produce Additional ██████ Documentation. Plaintiffs shall identify ████████ within five court days of receiving Meta's production of Initial ████████ Documentation. When making such a request, Plaintiffs shall state the reasons Plaintiffs believe ████ to be relevant beyond the Shafiq Methodology. Unless it objects using the procedure below, Meta shall produce Additional ████████ Documentation for ████████ within five court days of such request. | |
| 3. At any time during the completion of the Shafiq Methodology, Plaintiffs may also ask Meta to provide basic information about ████ ████████ such as its purpose and how it is generally used. Unless it objects using the procedure below, Meta shall provide a written response to such questions within five court days of receiving them. | |
| **Plaintiffs' Argument** | **Meta's Argument** |
| The purpose of this process is to identify how at-issue data flows through Meta's systems, including how it is transformed and used by Meta – and how Meta's systems can be used to answer critical questions for this case. As the parties move through this process, it is reasonable to expect that ████████ will be more important than others. Through this provision, Plaintiffs request a method to obtain additional relevant information for such ████████ without delay and Court intervention. | Meta disagrees with plaintiffs' description of discovery in this case to date and the prior motion practice, but will not repeat the history of the parties' disagreements and disputes. However, to be clear, Meta maintains that discovery in this case should be reasonable and proportionate to the needs of the case, and that the burden on Meta to provide the information requested by plaintiffs, as well as the information's relevance, are considerations that must be taken into account. |
| As stated above, Meta misunderstands the purpose of this process. Discovery has revealed that Meta excluded ████████ from ████████ for which it attempted to limit discovery. In addition, the ████████ is relevant and important for ████████. | 1. Regarding the first point in this section of plaintiffs' proposal, Meta has already provided ████████ ████████████████████████████. Meta also recently agreed to provide ████████ in the data source dispute, some of which are already included in the ████████ plaintiffs identified. As explained above, the additional information that plaintiffs seek to include in this order is both unnecessary and unduly burdensome. |
| Meta's objections about burdens and time constraints are misplaced. Plaintiffs moved to compel this discovery in May 2023, and again in October 2023. Meta's was ordered to produce it both times. The parties | |

## V. Requests and Production of Additional ██████████ Documentation

| | |
|---|---|
| reached impasse again in mid-March 2024, but, before it could be briefed, Meta filed a motion for protective order to limit discovery to cherry-picked ████████ ████████. Plaintiffs moved to compel again on July 1, 2024. Meta opposed providing any further information all the way until it was obvious in the oral argument that the Court was going to order something. It's attempt now to say it would be overly burdensome to simply provide additional information ████████████ is false and actually increases the burden on the parties because, if Meta will not provide answers within this process, Plaintiffs will simply serve Interrogatories that will delay the investigation for more than a month while waiting on Meta to either answer or object and then find time for multiple meet-and-confers before Meta agrees the issue could be briefed to the Court. Instead, the parties should cooperate on how to move through this process in an orderly fashion. Unfortunately, based on how discovery has proceeded to date (including that Plaintiffs have had to file three motions to compel the same information), Plaintiffs reasonably believe that Meta will not answer the Plaintiffs' questions in the absence of a Court order requiring it to do so. | 2. Regarding the second point in this section of plaintiffs' proposal, Meta incorporates its discussion of the "Additional ████ ████ Documentation" from Section II above.<br><br>3. Regarding the third point in this section of plaintiffs' proposal, Meta is providing plaintiffs with ample information about ████████ (and certainly enough to conduct the "straightforward" Shafiq Methodology, Shafiq Decl. ¶ 41). This includes ████████████████████████████████████████████████████████.<br><br>There is no reason to force Meta to provide what amount to duplicative, seriatim interrogatory responses to vague inquiries from plaintiffs. Moreover, the timeline that plaintiffs propose to impose is unreasonable, especially when one considers the scope contemplated by this process. For example, plaintiffs identified ████████████████████ Investigating and providing narrative information regarding even ████████████ within five court days would not be feasible. |

### The Court's Order

The Court adopts the language proposed by _____, and/or modifies the language as follows:

---

## VI. Duty to Confer About Necessity and Proportionality

| Plaintiffs' Proposal | Meta's Proposal |
|---|---|
| | After the end of the first cycle, in each subsequent cycle during the scheduled meet-and-confer, the parties will confer about whether the next production of ████████████ is still proportionate and necessary for the case's needs. |

| VI.  Duty to Confer About Necessity and Proportionality | |
|---|---|
| **Plaintiffs' Argument** | **Meta's Argument** |
| This portion of the order is unnecessary. Plaintiffs seek to make this process as efficient as possible given the size of the case and Meta's defenses, which put ███████ at issue. To the extent that Meta objects to provision of further relevant information at some point in time, it may bring that to Plaintiffs' attention. If there is a dispute, Meta can raise it with the Court using the Court's procedures. If Meta takes such a position prematurely, it is likely that Plaintiffs will either request that Meta be relieved of its burden by ███████████ so that Plaintiffs' can complete the █████ investigation on their own, or for the Court to strike certain of Meta's defenses to the extent ████████ are relevant only to Meta's defenses. | Meta agrees that it can raise the questions of proportionality and relevance with the plaintiffs and the Court as this process plays out. However, under either party's proposal, the parties will already be conferring on a regular cadence. It is logical that, in tandem with discussing whether ███████ are relevant and proportionate to include in the next cycle, the parties should also discuss the project's overall continued proportionality. Meta disagrees that any motion by plaintiffs to access Meta's systems or motion to strike Meta's defenses would be an appropriate response to a discussion regarding proportionate and reasonable discovery. |

| The Court's Order |
|---|
| The Court adopts the language proposed by _____, and/or modifies the language as follows: |

<br>

| VII.  Status Reports to the Court |
|---|
| The parties will submit brief status reports about this process to the Court every two weeks, starting October 16, 2024. |

| The Court's Order |
|---|
| The Court adopts the language proposed by the parties, and/or modifies the language as follows: |

<br>

| VIII.  Conferences and Dispute Resolution Procedures – Sections Close to Agreement |
|---|
| **Language on Which the Parties Agree** |
| 2.  Plaintiffs' attorney leading such discussions shall be Jay Barnes. |
| 3.  Meta's attorney leading such discussions shall be Darcy Harris. |

| VIII.  Conferences and Dispute Resolution Procedures – Sections Close to Agreement |
|---|

4. If either appointed attorney is unavailable at the scheduled time, the party with the unavailable attorney shall appoint another attorney to lead that conference.

5. If the parties do not reach resolution at the weekly conference, either party may choose to file a joint discovery dispute letter with the Court, presumptively without a hearing unless specifically requested.

…

7. For efficiency, either party may choose to delay briefing ▮▮▮▮▮▮ but will not be deemed to have waived their right to brief ▮▮▮▮ by proceeding with the next cycle.

8. The parties may agree to modify any deadline in, or aspect of, this procedure without Court approval.  Either party may seek relief from this procedure, including as to whether it is appropriate for the parties to engage in subsequent cycles, by filing a joint discovery dispute letter in accordance with the Court's procedures.

| Plaintiffs' Proposal | Meta's Proposal |
|---|---|
| 1. The parties shall make themselves available for a recurring weekly conference of at least one hour to discuss issues relating to this Order.<br><br>6. Any such letter shall be limited to: (a) identification of ▮▮▮▮▮ (b) any [▮▮▮▮▮▮▮▮ Documentation] produced thus far relating to ▮▮▮▮ and (c) a statement of no more than 250 words ▮▮▮▮▮ from each party regarding why ▮▮▮▮ is worthy of further investigation or not (which may take the form of a declaration, or a combination of argument and declaration, as appropriate). ▮▮▮▮ may be briefed in the same document. | 1. The parties shall make themselves available for conferences in accordance with the schedule described above to discuss issues as contemplated by this Order.<br><br>6. Any such letter shall be limited to: (a) identification of ▮▮▮▮▮ (b) the ▮▮▮▮▮ or other documents Meta has produced for ▮▮▮▮ in connection with this procedure; and (c) a statement of no more than 250 words ▮▮▮▮▮ from each party regarding why ▮▮▮▮ is worthy of further investigation or not (which may take the form of a declaration, or a combination of argument and declaration, as appropriate). ▮▮▮▮ may be briefed in the same document. |

| Plaintiffs' Argument | Meta's Argument |
|---|---|
| 1. Plaintiffs' request for a recurring weekly conference is consistent with its proposal above. A recurring weekly conference will also be useful to resolve other disputes. If the Court adopts Plaintiffs' proposal above, Plaintiffs weekly schedule makes more sense. If the Court adopts Meta's proposal, then Meta's proposal makes more sense. Based on Meta's conduct thus far in discovery, Plaintiffs request an order requiring the parties to confer on a weekly basis. Plaintiffs have repeatedly informed the Court of the long delays that occur between Plaintiffs' requests for conferences and Meta's availability. There is currently a backlog of discovery issues because Meta simply ignored Plaintiffs' requests for so long. However, when Meta has actually | 1. Meta's proposal also includes a regular conference among the parties to confer on these issues, and the parties already often confer about discovery.  There is no need to force the parties to hold an hour-long or greater meet and confer every week on this specific topic—or on the unrelated, "other disputes" that plaintiffs seek to include.  The scope of the parties' conferrals about the ▮▮▮▮ project will necessarily depend on the scope of any inquiries and potential disputes.<br><br>Plaintiffs' assertions about the parties' meet and confer efforts are inaccurate.  The parties, for example, have conferred five times in the last two weeks alone. |

| VIII. Conferences and Dispute Resolution Procedures – Sections Close to Agreement | |
|---|---|
| made itself available, the parties have often been able to resolve issues without court intervention. In the absence of such an order requiring a conference, Plaintiffs have significant concerns about their ability to timely prosecute this case.<br><br>2. The documents accompanying the brief depend upon the Court's decision above with respect to whether Meta will be ordered to produce just ███████████ Documentation requested by Plaintiffs. If the Court adopts Plaintiffs' proposal above, Plaintiffs weekly schedule makes more sense. If the Court adopts Meta's proposal, then Meta's proposal makes more sense. | 2. Meta agrees with plaintiffs' framing of the second point in their argument (except that Meta has agreed to produce ████████ ████████ as described above). Meta does not dispute the general premise that a dispute brief may include the relevant documents produced during this procedure. |
| **The Court's Order** | |
| The Court adopts the language proposed by _____, and/or modifies the language as follows: | |

| IX. Conferences and Dispute Resolution Procedures – Area of Disagreement | |
|---|---|
| **Plaintiffs' Proposal** | **Meta's Proposal** |
| | A request for a lead counsel meet-and-confer on the issue of whether subsequent cycles are appropriate will stay future cycles pending the issue's resolution. |
| **Plaintiffs' Argument** | **Meta's Argument** |
| Meta's request to pause this process on its own say-so is inappropriate given the status of the litigation. The parties are only in this position because Meta has yet to produce ████████ documentation despite two Court orders directing it to do so (Dkts. 275 and 380). | Meta disagrees with plaintiffs' framing of this provision but will not repeat the history of the parties' disagreements and disputes on these issues. Meta proposes this provision because, if there is a dispute as to whether further cycles (under either party's proposal) would be proportionate, it would be counter-productive for the parties to nonetheless be forced to continue with subsequent cycles until the dispute is resolved. To illustrate, Plaintiffs' proposal contemplates seven court days for each cycle from beginning to end, which means that two cycles would likely occur before a dispute could be submitted to the court (five court days for the lead counsel meet-and-confer and five more court days to file the joint discovery dispute letter). |

| The Court's Order |
|---|
| The Court adopts the language proposed by _____, and/or modifies the language as follows: |

| X.  Additional Information | |
|---|---|
| **Plaintiffs' Proposal** | **Meta's Proposal** |
| 1. See above. Meta should be ordered to produce ██████.<br>2. By September 6, 2024, Meta shall produce documents to Plaintiffs ████████████████████ that explain the nature of information available through the ████████ The documents must be sufficient to determine whether ████████████ should be incorporated into the Shafiq Methodology.<br>3. By September 16, 2024, Meta shall produce to Plaintiffs the results of its investigation into how the Off-Facebook Activity "discovery process" can be used to inform this process by September 15, 2024, including any ████████ documentation, flow charts, or other relevant information that resulted from the process. | 1. For ████████ identified in the course of the procedure described above, Meta will produce ████████████ as shown on page 11 of Dr. Shafiq's July 1, 2024 declaration, to the extent this information exists in the ordinary course in Meta's systems.  If so, Meta will make reasonable efforts to produce it by the same deadline for Meta to identify ████████████, pursuant to the schedule outlined above.<br>2. For ████████ identified in the course of the procedure described above, Meta will investigate whether there is an ████████ If so, Meta will make reasonable efforts to produce any such ████████ by the same deadline for Meta to identify ████████████.<br>3. Meta shall further investigate whether the 2019 Off-Facebook Activity "discovery process" resulted in the creation of any non-privileged documents that identify ████████ containing relevant data or ████████ documentation related to ████████ containing relevant data. Meta shall produce to plaintiffs any such documents that Meta identifies by September 30, 2024. |
| **Plaintiffs' Argument** | **Meta's Argument** |
| 1. Plaintiffs position is that Meta should be ordered to produce ████ ████ and that its "reasonable efforts" language is an invitation to delay in a case that has already had the schedule extended twice.<br><br>2. Plaintiffs request that Meta be ordered to produce additional information about the ████████████ so that Plaintiffs can determine whether further investigation through those ████████ would improve efficiency. The additional information can be produced with minimal burden to Meta given the nature of the data. | 1. Meta has agreed to produce ████████, and Meta fully intends to produce such documents by the deadline set forth in Meta's proposed schedule.  Meta included the proposed "reasonable efforts" language in light of the many competing demands that this litigation is imposing on its eDiscovery personnel.<br><br>2. Meta incorporates its discussion of plaintiffs' proposed "Requests and Production of Additional ████████ Documentation" in Section V above.  As the Court noted, plaintiffs' discovery letter was oriented |

| X.  Additional Information |
|---|

<table>
<tr>
<td>

Meta's opposition to providing this information is not well taken. Plaintiffs are not requesting to have their own access to explore Meta's systems. Rather, Plaintiffs seek information is of obvious relevance based on the name alone. This motion is about ▮▮▮▮▮ documentation. As a result, the ▮▮▮▮▮ is highly relevant. This case is about Privacy and how it is respected (or not) by Meta. Thus, the ▮▮▮▮▮ is of obvious relevance. And finally, the ▮▮▮▮▮ exercise is to identify how the at-issue data ▮▮▮▮▮ (among other things). Thus, it is highly relevant to look at ▮▮▮▮▮

3. Plaintiffs served requests for production regarding the OFA "discovery process" in May 2023, and have made ▮▮▮▮▮ discovery a focus of this case for more than two years. Meta should be ordered to produce information response to Plaintiffs' requests for production and, as set forth herein, and should not be permitted to cabin its production to ▮▮▮▮▮ As the Court noted at the prior hearing, items other than ▮▮▮▮▮ that were the result of the OFA "discovery process" would be highly relevant and useful – such as data flow diagrams.

</td>
<td>

towards obtaining information about ▮▮▮▮▮ not to obtain ▮▮▮▮▮ Aug 21, 2024 Tr. at 20:16–22:4. There is no basis for plaintiffs to ▮▮▮▮▮, especially where the Court and the parties have fashioned a method to provide ▮▮▮▮▮ information to plaintiffs. *Id.* at 21:14–22:4. The Shafiq Methodology is "straightforward" (Shafiq Decl. ¶ 41), and factoring in other information—especially ▮▮▮▮▮ would be unnecessary and unduly burdensome, and would prolong the process.

3. Meta's proposal provides that Meta will further investigate the 2019 Off-Facebook Activity discovery process and produce, in relevant part, "what was found" (Tr. at 80:1–8). In other words, if that effort resulted in non-privileged documents that identify ▮▮▮▮▮ containing relevant data *or* ▮▮▮▮▮ documentation related to ▮▮▮▮▮, Meta will produce that information.

Separately, Meta has already agreed, in the course of negotiations about the RFP plaintiffs propounded on this topic, that Meta will "conduct a reasonable search for, and produce, responsive, non-privileged Documents sufficient to show, as clarified above, Meta's re-design process that resulted in the process described in 'Redesigning our systems to provide more control over Off-Facebook activity,' https://engineering.fb.com/2019/08/20/data-infrastructure/off-facebook-activity/."

There is no reason to order Meta to produce further, vaguely described documents containing "other relevant information," or reflecting how the OFA effort "can be used to inform this process." The parties and the Court have already created the "process."

</td>
</tr>
</table>

| The Court's Order |
|---|

The Court adopts the language proposed by _____, and/or modifies the language as follows:

| XI.  Sworn Answers | |
|---|---|
| **Plaintiffs' Proposal** | **Meta's Proposal** |
| 1.  By September 16, 2024, Meta shall provide to Plaintiffs a sworn answer to ████████████████ in Dkt. 580: "████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ████████████████████" | |
| 2.  By September 16, 2024, Meta shall provide to Plaintiffs a sworn answer to ████████████████ in Dkt. 580: "████ ██████████████████████████████████ ████████████████" | |
| 3.  By September 16, 2024, Meta shall provide to Plaintiffs a sworn answer to the Court's questions in the August 21, 2024, hearing transcript at 153:17-154:14 ("████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ████████████████") | |
| **Plaintiffs' Argument** | **Meta's Argument** |
| Meta is simultaneously asserting that Plaintiffs' proposed procedure is too burdensome while also refusing to add to the procedure a question-and-answer process that would make it more efficient. Meta should not be able to have it both ways. This procedure contemplates Plaintiffs making on-the-fly determinations about ████████████ ████████████████████████. These questions are designed to inform Plaintiffs such that they can reduce ████████████████ they need to investigate—reducing the burden on Meta as well as on the Court and on Plaintiffs. | The Court previously ordered the parties to ████████████████ ██████████████████████████████." Dkt. 580 at 1.  Meta's understanding is that the ████████████ purpose was to assist the Court and the parties in addressing the relief that the plaintiffs requested in Dkt. 526.  At the hearing, and by this order, the Court and the parties resolved the disputes described in Dkt. 526 in relevant part by fashioning a process to identify ██████████████████████████████████████ that the parties have been discussing before the Court.  There is no reason to |

| XI. Sworn Answers |
|---|

If the OFA "discovery process" and/or Meta's other investigations have already done the work contemplated for this process, Meta should immediately produce the results, which have always been required as a response to RFP 149 anyway. Similarly, Meta's ████████ ████ is a core asset of its business. It would be far more efficient for Meta to simply answer ████████████ than for the parties to continue to play hide-and-seek.

Plaintiffs have had a similar experience with ████████████. Plaintiffs reasonably believe that there are other methods available that may be more efficient – or additive to ████████ – and have repeatedly asked about such abilities. However, Meta refuses to answer. For example, in the November 17, 2023 hearing on Plaintiffs' second motion to compel the discovery sought here, the Court suggested that, the fact that data in Hive was "████████" was "████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████" Nov. 17, 2023 Hearing Tr. at 39:6-12. In response, Plaintiffs suggested Meta could use the ████████████ to ████████ Id. at 66:1-7. The Court then instructed the parties to have a ████████ about it. At the Court's instruction, Plaintiffs attempted to have that conversation. However, Meta refuses to answer questions about its ability to trace at-issue data in its systems.

There are two examples. The first is ████ – which was discussed in detail by Dr. Shafiq. The second is the ████████ The document from 2019 stating that "████████████████████████████" also states that Meta needed "████████████████████████████ ████████████████████" which it would "████████ ████████████████████████" PIXEL_HEALTH000370675. The next step listed is "████████████████████████████████████████ ████████████████████," which "████████ ████████████" Id. If such a system is available, as

now allow plaintiffs to turn those questions into bonus interrogatories (indeed, plaintiffs can propound these as interrogatories if they wish).

For example, plaintiffs seek to require Meta to provide further information about the 2019 OFA discovery process. But Meta's proposal here (and the ████████████████████████████████████████████ ████████████████████) already provide a process to provide the pertinent information on this subject. Meta's proposed order provides, for example, that Meta will "further investigate whether the 2019 Off-Facebook Activity 'discovery process' resulted in the creation of any non-privileged documents that identify ████████████████ relevant data or ████████ documentation ████████ containing relevant data"—and then produce any such documents Meta identifies. This is a proportionate approach to these discovery requests seeking data source and ████████ information. (And, as noted in Section IX, Meta has also separately agreed to search for documents responsive to plaintiffs' request for production on this subject.)

Plaintiffs also seek to require Meta to explain Meta's current "████████████ ████████████████████████████" But ████████████████████████████ is the purpose of the exercise the Court has fashioned and this proposed order: Meta will be producing this ████████████████████ ████████████████████████. And Meta has not "refuse[d] to answer questions about its ████████████," as the history of this dispute shows.

As for the Court's questions during the hearing about ████████████ data, those questions arose out of plaintiffs' requests for exemplars—and relate to the discovery dispute briefing currently due on September 9, 2024. To try to streamline the parties' disputes, Meta has now agreed to provide plaintiffs with ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████

**XI.  Sworn Answers**

described in this key document, it would also "greatly improve" ███ ████████.

The Court's ████████ has also been the focus of targeted discovery. In RFP No. 165, Plaintiffs requested production of "documents sufficient identify and describe the Meta systems through which Plaintiffs' expert Richard Smith was shown an ad relating to ulcerative colitis in his Facebook video fees within two hours of exchanging communications with a healthcare provider about ulcerative colitis, as alleged in CCAC ¶ 269." Rather than provide or identify documents specific to the request, Meta objected and then eventually said the answer was in ████████. Meta has also produced some documents that touch upon the request. For example, PIXEL_HEALTH000380215 discusses ████████████████████████████████. In Meta's systems, the document appears to include ████████. But Meta produced the documents with the images removed. Similarly, PIXEL_HEALTH000539854 references a specific ████████ and PIXEL_HEALTH000545278 is the ████████████████████████ that were removed from Meta's production.

Plaintiffs are prejudiced by Meta's refusal to answer this question in formal or informal discovery. But, like the questions above, its answer may significantly reduce its burden in ████████████.

In a normal discovery process, Plaintiffs would not have to ask for a Court order to obtain answers to these questions. See Fed. R. Civ. P. 26(f)(3)(c).  Rather, a good faith meet-and-confer process would have resulted in answers to these questions being made in an informal manner well over a year ago. See Checklist for Rule 26(f) Meet and Confer Regarding ESI for the Northern District of California ¶ III. However, because Meta refused to answer these questions for more than a year— and did not answer them in the hearing even when given advance notice by the Court—a court order is the only way Plaintiffs believe it will ever happen in a timely fashion that can reduce the burden of the ████████

Plaintiffs' arguments, which reference and rely on numerous documents that Meta has already produced to plaintiffs, show that plaintiffs already have significant amounts of information from Meta on the topics in which they are interested.  And Meta is continuing to provide information on these topics in response to plaintiffs' voluminous, far-reaching discovery requests.  Meta's position is simply that it is not necessary to insert these same requests into ████████████████████████—which should be a narrow, focused process.  Discovery more broadly will continue, as it has been, in the normal course.

For example, Meta also expects that it will be producing documents, during ████████████████ containing the categories of information in which plaintiffs are interested.  For example, ████████ that plaintiffs identified as pertaining to this topic, ████████ was already identified as part of the ████████ (Aug. 21, 2024 Tr. at 135:22–24), and Meta has agreed to identify ████████ through the process laid out in this proposed order.  Meta will thus be producing the information that plaintiffs seek. *See id.* at 137:1–138:24 (The Court: "██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

| XI. Sworn Answers |
|---|
| **The Court's Order** |
| The Court adopts the language proposed by _____, and/or modifies the language as follows: |

| XII. Schema for ███████████ | |
|---|---|
| **Plaintiffs' Proposal** | **Meta's Proposal** |
| To the extent that Daiquery or any other system at Meta is capable of identifying and describing ███████████████, Meta shall produce documentation that describes ███████████ for all ████████████ by September 23, 2024. | |
| **Plaintiffs' Argument** | **Meta's Argument** |
| There is no dispute that ████████████████████████. On August 29, 2024, Plaintiffs identified ████████████████████████████████████████ ███████████ Meta has stated that ███████████ ████████████ However, as discussed at the prior hearing, ████████████████████████████ ██████████. To Plaintiffs' knowledge, ████████████████ rendering it as a data source for which identification of ████████ information should be far easier. In addition, ████████ is at the core of Meta's business model because it is involved in ██ ████████████████████████ It would be highly unlikely for Meta to not have documents readily available that identify (1) what ████████████ is used for; and (2) what is stored within ████████████. Accordingly, Plaintiffs ask the Court to order Meta to produce this information for ████████<br><br>By doing so, Meta will ultimately relieve its own burdens because Plaintiffs have informed Meta that they would immediately reduce the amount of information that they are requesting from ██ as soon as Meta produces basic information about ████████. However, Plaintiffs cannot appropriately narrow the scope of their data production requests | Based on Meta's investigation to date, it does not appear that ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████<br><br>As plaintiffs note, the parties are separately discussing the ████████████████████████████████████████ ████████████ Plaintiffs' requests for additional documents that "identify (1) what ████████████ is used for; and (2) what is stored within ████████████" are therefore not only unnecessary for the purpose of this specific order about ████████ ████████ but also ignore the parties' ongoing discussion of these topics.<br><br>To be clear, Meta disputes that ██████ contains relevant, non-duplicative data, and Meta also disagrees with plaintiffs' characterizations about what plaintiffs call ██████████████████████████████████ ████████ Nonetheless, Meta is continuing to engage with plaintiffs to negotiate a reasonable scope of information for Meta to provide regarding ████████ |

| XII.  Schema for ██████████ | |
|---|---|
| for ███ without first knowing what is contained within ████████<br><br>Nor should the Court permit Meta to play the role of the ███ gatekeeper at this stage of the case given that Meta has not yet even disclosed its ████████████████████████, a discovery matter which is a core issue in the case. | |
| **The Court's Order** | |
| The Court adopts the language proposed by _____, and/or modifies the language as follows: | |

Proposed Redacted Version of
Stipulation and Proposed Order
Regarding Sampling from
Certain Tables
(Dkt. No. 618-3)

CONFIDENTIAL

1  Jason 'Jay' Barnes (admitted *pro hac vice*)
     *jaybarnes@simmonsfirm.com*
2  **SIMMONS HANLY CONROY LLC**
   112 Madison Avenue, 7th Floor
3  New York, NY 10016
   Tel:    212-784-6400
4  Fax:    212-213-5949

5

6    Jeffrey A. Koncius, State Bar No. 189803
       *koncius@kiesel.law*
7    **KIESEL LAW LLP**
     8648 Wilshire Boulevard
     Beverly Hills, CA 90211
8    Tel:    310-854-4444
     Fax:    310-854-0812
9

10

11  *Attorneys for Plaintiffs*
    JOHN DOE, JANE DOE I, JANE DOE II, and
    JOHN DOE II, and DOE, on behalf of
12  themselves and all others similarly situated

13  [*Additional counsel listed on signature page*]

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP
PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:    206-319-5450

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
Fax:    510-350-9701

14

15                 **UNITED STATES DISTRICT COURT**
16        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**

17  IN RE META PIXEL HEALTHCARE          **Case No. 3:22-cv-03580-WHO (VKD)**
    LITIGATION
18                                       CLASS ACTION

19  This Document Relates To:            **STIPULATION AND [PROPOSED] ORDER
                                         REGARDING SAMPLING FROM CERTAIN**
20  All Actions                          **TABLES**

21

22

23

24

25

26

27

28

**CONFIDENTIAL**

1    WHEREAS, on May 29, 2024, the parties filed a joint discovery dispute letter regarding

2 whether Meta must produce responsive data for all class members with respect to ▮▮ specific data

3 sources or whether Meta should be permitted to produce samples from those data sources instead.

4 (ECF No. 495);

5    WHEREAS, after further conferral between the parties, on July 12, 2024, Meta agreed to

6 produce ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for ▮▮

7 of the ▮▮ tables: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    WHEREAS, the parties have reached agreement on: (i) a sampling protocol for classwide

9 data for the remaining ▮▮ tables: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮, (ii) a stipulation that precludes Meta from making certain arguments given the agreed

11 sampling, and (iii) a modification to the case schedule ordered by Judge Orrick (ECF No. 552);

12    WHEREAS, Plaintiffs' agreement to the sampling protocol for classwide data for the ▮▮

13 tables is contingent upon this Court's entry of this stipulation and Judge Orrick's entry of the parties'

14 proposed modification to the case schedule. Plaintiffs' position is that if this Court declines to enter

15 this stipulation, Meta should produce all data that it possesses from ▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮ for the relevant Pixel and App IDs. Additionally,

17 Plaintiffs position is that if Judge Orrick declines to enter the parties' proposed modification to the

18 case schedule, then sampling is inappropriate and Meta should produce all data that it possesses

19 from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the relevant

20 Pixel and App IDs;

21    WHEREAS, Meta disagrees that this Court's entry of this stipulation or Judge Orrick's entry

22 of the parties' proposed modification of the case schedule is necessary for the parties to proceed

23 with the agreed upon sampling protocol;

24    WHEREAS, Meta asserts that the ▮▮▮▮▮▮▮▮▮▮▮ from

25 the ▮▮ tables respectively are:

26

27    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28

1

**CONFIDENTIAL**

██████████████████████

WHEREAS, "Covered Time Period" as used herein is defined as the following time period for each table, respectively:

██████████████████████████████

WHEREAS, the parties will continue to confer regarding the production of named plaintiff data from the █████████████████████████████████ tables in addition to the agreed upon sampling protocol for classwide data from those tables;

Accordingly, **IT IS HEREBY STIPULATED AND AGREED** between the Parties, subject to Court approval, that:

1. <u>Sampling Protocol for Classwide Data for the ████ Tables</u>

Meta will produce samples for each table for the following ██████

████████████████████████████████

For the samples, Meta will produce (i) ███████████████████████████████

███████████████████, *and* (ii) ████████████████████████████████

████

With respect to the ██████ sample referred to in section (ii) above, for ██████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████

Plaintiffs' expert will conduct the randomization process that will select the sampled ████

████████. Plaintiffs provided ████████████████ to Meta on August 29, 2024.  The samples

2

**CONFIDENTIAL**

1  will use ████████████████████████████████.

2       Meta will produce (1) the agreed-upon samples of ████████████

3  ████████████████████████████████ for the list of ██████ Pixel IDs that

4  Plaintiffs have identified; and (2) the agreed-upon samples of ████████████████

5  ████████████████████████ for the App IDs that Meta or Plaintiffs identify as being

6  at issue.

7       Meta has agreed to provide ████████████████████████████████

8  ████████████. After Meta provides ██████████████████ to Plaintiffs, the parties will

9  meet-and-confer regarding the timing for Meta to produce samples of ████████████████

10  ██████ for any ████████████████████ that Plaintiffs assert are relevant. However, Meta reserves

11  the right to dispute the relevance or burden of any such request, and to make any related arguments

12  pertaining to the identification of any further such ████████████████████.

13       Meta will also produce ████████████████████████████████ and ██████

14  ████████████████████████████ the same period in which Meta is producing

15  data from ████████████ Plaintiffs' expert will also select this random date.[1]

16       With respect to any data contained in the ██████ tables outside of the Covered Time Period,

17  Plaintiffs reserve the right to seek any appropriate remedies and to seek the production of data, and

18  Meta reserves all rights regarding such requests, including the right to oppose any such requests.

19      2.  <u>Meta Is Precluded from Making Certain Arguments</u>

20      •   Meta will not argue that the agreed-upon samples from the tables described above

21  are not representative of the proposed class members' data from those tables for the Covered Time

22  Period.

---

23  [1] Meta's understanding is that the ████████████████████████████████

24  during the Covered Time Period. To avoid any potential disputes

25  or unforeseen issues, the parties agreed that Meta would produce ██

26  ████████████████. If the parties unexpectedly discover ████████████████

27  ████, the parties will meet-and-confer on how to proceed. On or around October 1, 2024, Meta will

also produce ████████████████████████████████████████, and the parties agree that if

the parties unexpectedly discover ████████████████████

28  ████████, the parties will meet-and-confer on how to proceed.

CONFIDENTIAL

1          Meta reserves the right to explain any changes to the data over time during the

2  Covered Time Period.

3      •    Meta will not argue that the agreed-upon samples from the tables described above

4  are not statistically valid for the Covered Time Period.

5      •    Meta will not argue that class certification should be denied because Meta produced

6  only the agreed-upon samples from the tables described above, rather than the broader set of data

7  from those tables for the Covered Time Period.

8      •    Meta will not argue that there is no reliable method to extrapolate from the agreed-

9  upon samples for the tables described above to the broader set of data from those tables for the

10  Covered Time Period.

11          Meta reserves the right to argue that any particular method or analysis used by

12  plaintiffs' experts is flawed or unreliable.

13      •    These stipulated restrictions apply only to data where a sampling approach has been

14  taken. In a situation in which Meta produces all relevant data from a given field, table, or other

15  criteria within its possession (including following the class certification decision), Meta reserves the

16  right to make any and all applicable arguments.  For example, Meta reserves the right to make

17  arguments at summary judgment or trial if plaintiffs have the available data from the relevant field,

18  table, or other criteria.

19      3.   <u>The Parties Will Submit a Joint Request to Judge Orrick to Modify the Case Schedule</u>

20      Within seven days of the entry of this order, the parties will submit a joint request to Judge

21  Orrick to modify the case management schedule, as follows (modifications in bold font):

| **Event** | **Proposed Modified Schedule** |
|---|---|
| Deadline for First Settlement Conference | Friday, May 9, 2025 |
| **Close of Fact Discovery, Except For Further Production of Data from Data Sets That the Parties Agreed to Sample Before a Decision Regarding Class Certification** | Friday, April 18. 2025 |
| Motion for Class Certification (and Plaintiffs' class expert reports) | Friday, June 27, 2025 |

CONFIDENTIAL

| Event | Proposed Modified Schedule |
|---|---|
| Opposition to Class Certification (and Meta's class expert reports) | Friday, September 5, 2025 |
| Reply in Support of Class Certification (and Plaintiffs' class expert reply reports) | Friday, November 7, 2025 |
| Hearing on Class Certification Motion | Wednesday, December 3, 2025 |
| **Parties meet-and-confer regarding (1) further production of data from data sets that the parties agreed to sample before class certification and deadline for such productions, and (2) modifications to merits expert report deadlines as necessary to accommodate such productions.** | **30 Days After a Court Order Certifying a Class (If a Class Is Certified)** |
| **Meta will produce from the tables that the parties previously agreed to sample additional data necessary to identify the class members, to the extent that information is in Meta's possession and is reasonably accessible.** | **90 Days After a Court Order Certifying a Class (If a Class Is Certified)** |
| Opening Expert Reports (merits and non-class) | Friday, March 13, 2026 |
| Rebuttal Expert Reports (merits and non-class) | Friday, April 24, 2026 |
| Reply Expert Reports (merits and non-class) | Friday, June 5, 2026 |
| Expert Discovery Deadline | Friday, July 17, 2026 |
| Dispositive and Daubert Motions Shall be Filed | Friday, July 31, 2026 |
| Oppositions to Dispositive and Daubert Motions Shall be Filed | Friday, August 28, 2026 |
| Reply to Dispositive and Daubert Motions Shall be Filed | Friday, September 25, 2026 |
| Pre-Trial Conference | Friday, November 13, 2026 at 2:00 p.m. |
| Trial | Wednesday, February 3, 2027 at 8:30 a.m. by Jury |

**CONFIDENTIAL**

1  Dated: September 12, 2024                    By: */s/ Geoffrey Graber*_____

2                                              **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                               Geoffrey Graber, State Bar No. 211547
3                                                *ggraber@cohenmilstein.com*
                                               1100 New York Avenue NW, Fifth Floor
4                                              Washington, DC 20005
                                               Tel:    202-408-4600
5                                              Fax:    202-408-4699

6                                              By: */s/ Jason "Jay" Barnes*

7                                              **SIMMONS HANLY CONROY LLC**
                                               Jason 'Jay' Barnes (admitted *pro hac vice*)
8                                                *jaybarnes@simmonsfirm.com*
                                               112 Madison Avenue, 7th Floor
9                                              New York, NY 10016
                                               Tel:    212-784-6400
10                                             Fax:    212-213-5949

11                                             **KIESEL LAW LLP**
                                               Jeffrey A. Koncius, State Bar No. 189803
12                                               *koncius@kiesel.law*
                                               8648 Wilshire Boulevard
13                                             Beverly Hills, CA 90211
                                               Tel:    310-854-4444
14                                             Fax:    310-854-0812

15                                             **TERRELL MARSHALL LAW GROUP PLLC**
                                               Beth E. Terrell, State Bar No. 178181
16                                               *bterrell@terrellmarshall.com*
                                               936 North 34th Street, Suite 300
17                                             Seattle, WA 98103
                                               Tel.:   206-816-6603
18                                             Fax:    206-319-5450

19                                             **GIBBS LAW GROUP LLP**
                                               Andre M. Mura, State Bar No. 298541
20                                               *amm@classlawgroup.com*
                                               1111 Broadway, Suite 2100
21                                             Oakland, CA 94607
                                               Tel.:   510-350-9700
22                                             Fax:    510-350-9701

23

24 Dated: September 12, 2024                   **GIBSON, DUNN & CRUTCHER LLP**

25                                             By:  */s/ Lauren Goldman*_____
                                                    Lauren Goldman
26

27                                             LAUREN R. GOLDMAN (admitted *pro hac vice*)
                                               DARCY C. HARRIS (admitted *pro hac vice*)
28                                             lgoldman@gibsondunn.com
                                               6

CONFIDENTIAL

1     dharris@gibsondunn.com
      200 Park Avenue
2     New York, NY 10166
      Telephone:    (212) 351-4000
3     Facsimile:    (212) 351-4035

4     ELIZABETH K. MCCLOSKEY, SBN 268184
      emccloskey@gibsondunn.com
5     ABIGAIL A. BARRERA, SBN 301746
      abarrera@gibsondunn.com
6     One Embarcadero Center, Suite 2600
      San Francisco, CA 94111
7     Telephone:    (415) 393-8200
      Facsimile:    (415) 393-8306

8

9     **COOLEY LLP**

10    By:    */s/ Michael G. Rhodes*
             Michael G. Rhodes
11
      MICHAEL G. RHODES, SBN 116127
12    rhodesmg@cooley.com
      KYLE C. WONG, SBN 224021
13    kwong@cooley.com
      CAROLINE A. LEBEL, SBN 340067
14    clebel@cooley.com
      3 Embarcadero Center, 20th Floor
15    San Francisco, CA 94111-4004
      Telephone:    (415) 693-2000
16    Facsimile:    (415) 693-2222

17    *Attorneys for Meta Platforms, Inc. (formerly known as*
      *Facebook, Inc.*
18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER REGARDING SAMPLING FROM CERTAIN TABLES
Consolidated Case No. 3:22-cv-03580-WHO (VKD)

## **CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Eric A. Kafka, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: September 12, 2024                                   */s/ Eric Kafka*_____

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED:_____        _____

                                       Hon. Virginia K. DeMarchi
                                       United States Magistrate Judge

STIPULATION AND [PROPOSED] ORDER REGARDING SAMPLING FROM CERTAIN TABLES
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

Proposed Redacted Version of
Joint Discovery Dispute Letter
re Plaintiffs' Interrogatory No. 3
(Dkt. No. 630-3)

**CONFIDENTIAL**

September 13, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      **Re:**    ***In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)**

Dear Judge DeMarchi,

      Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

**A.    STATEMENT OF THE DISPUTE REQUIRING RESOLUTION**

      *Plaintiffs' position:*  Meta should be ordered to identify, in a sworn interrogatory answer, (i) all medical provider web-properties where its Pixel was used and (ii) when its Pixel was used on each such web property. Relatedly, Meta should be ordered to produce documents from all ██████████████████████ from which Meta collected ███████████ as classified by Meta's ███████████ system, and ███████████. Meta's longstanding position that it has no ability to answer questions about which health property used the Pixel and when should be rejected now that Plaintiffs have uncovered that Meta indeed has this information available ███████, where it classifies ███████ ████████████████ during the class period.

      *Meta's position:*  Meta disagrees that there is a disputed issue. Plaintiffs proceeded with filing this letter even though Meta is already in the process of producing data related to ████ ████████████. Meta has agreed to do this even though it has already complied with its obligations to produce information regarding Interrogatory No. 3, and the ████ classifications will not identify the Medical Provider Web-Properties at issue in Interrogatory No. 3 and will be both over- and underinclusive. Plaintiffs are wrong, as they argue below, that the ████████ classifications will identify HIPAA- and/or CMIA-covered entities—the entities that are relevant to this dispute. Because Meta is already in the process of producing the information plaintiffs herein request, there is no dispute for the Court to resolve, and plaintiffs' requests for relief should be denied as moot or duplicative of other requests.

**PLAINTIFFS' POSITION**

**A.    Meta can answer Interrogatory 3 using ████████ classifications.**

      Interrogatory 3 asks Meta to "identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property." The parties have reached a mutual understanding that

"Medical Provider" and "Healthcare Provider" are interchangeable and that references to the Pixel include the SDK and CAPI.

In response to Meta's arguments that it does not identify HIPAA-covered entities as such, and therefore cannot answer this interrogatory, on June 16, 2023, this Court ordered the parties to "confer further about whether Meta can provide information—e.g. … any health-related classifications used by Meta—to facilitate the identification of information responsive to" Interrogatory No. 3. Dkt. 278. Accordingly, since June 2023, the parties have been negotiating an answer to this interrogatory in which Meta discloses its ███████████████████████



Plaintiffs recently learned that Meta has had a ready answer to this interrogatory the whole time. In June 2024, Meta produced a document stating, ███████████████ so counsel ███████████████████████████ Counsel learned that Meta's categorizations of ███████████████████████ they do so in a way that aligns very closely or completely with HIPAA-status. Meta's categories ████████

████████████████████████████████ *See* Ex. 1 to Joint Letter Brief Concerning Two days later, on July 19, 2024, Plaintiffs provided Meta with a sworn declaration identifying ███████████████████████████ back to Meta.

Based on this discovery, on July 26, 2024, Meta admitted to Plaintiffs that ██████████ is used to classify ████████████ as health-related and agreed to produce the ██████████ ████████████ available for health-related ████████████. A week later, Meta backtracked, offering to provide only the ████████████ categories themselves (something Plaintiffs already found in their own inefficient efforts to spelunk through ████████████ Meta refuses to produce Meta's actual application of the categories to health-related ████████████ Meta's current position has reverted to "still investigating."

### B.    Meta's misrepresentations and discovery misconduct warrant a robust order on this motion to compel.

Given the belated revelation that ████████████ can answer Interrogatory 3, there is little question that Meta should be compelled to fully respond by a date certain. But as explained below, the history of this dispute justifies additional measures to ensure a complete and timely answer.

When Plaintiffs moved for a preliminary injunction two years ago, they argued they were "confident that Meta is able to identify all web-properties from which it is currently acquiring" Health Information. Dkt. 46 at 2. Meta opposed, claiming that "Plaintiffs may be confident, but they are wrong." Dkt. 77-3 at 12. The Court denied the motion partly on Meta's representation, noting it was "not clear … how many hospital systems currently use the Pixel" and "the need for discovery to clarify both the scope of the problems and potential solutions for them." Dkt. 159 at 11, 32. Accordingly, Plaintiffs propounded Interrogatory 3 on February 9, 2023.

Plaintiffs continued to suspect the existence of the internal ██████████ classifications at Meta (without knowing the name ██████████) but lacked the evidence to prove it. On May 23, 2023, Plaintiffs told the Court that Meta's "website classification system" with health-related classifications would be the "most directly relevant" list to the question. May 23, 2023 Hearing Tr. at 108:9-20. When the Court asked Meta whether a health classification system existed, Meta responded it was "not familiar with that classification currently but can certainly look into it" and "discuss it with the Plaintiffs." *Id.* at 109:8-10.

Instead, Meta produced other lists that Meta represented to be best suited to answer Interrogatory 3. These included: ████████████████████████████████████ ████████████████████████████████████████████████ However, Meta repeatedly told Plaintiffs that the lists do not mean that the ████████████ is relevant to this litigation because the lists are overinclusive, underinclusive, or both.[1] Nevertheless, Meta attempted to use the production of these lists to avoid efforts to reveal the ████████████. *See* Dkt. 543-3 at 2-3. Meta suggested to the Court that Plaintiffs did not know what they were talking about when they stated Meta has much better and more useful lists, writing that Plaintiffs' assertions about ████████ "does not mean either that such systems work as plaintiffs allege or that such systems are responsive." *Id.*

Indeed, Meta never revealed ████████ existence until Plaintiffs found it for themselves. In February 2024, Meta produced the first documents referencing ████████ On March 4, 2024, Plaintiffs identified ████████ and demanded a final lead counsel meet-and-confer on Interrogatory No. 3. From March to August 2024, the parties discussed ████████ several times but Meta consistently maintained it was "still investigating." Even now, Meta claims it is "still investigating" and refuses to provide Plaintiffs' any dates to complete its "investigation."

Parties to litigation are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and discovery requests." *3M Innovative Props. Co. v. Tomar Elec.*, 2006 WL 2670038, at *6 (D. Minn. Sept. 18, 2006); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2020 WL 2838806, at *3 (N.D. Cal. Jun. 1, 2020) (VKD). In February 2023, reasonable investigation would have revealed to Meta's principals and counsel the existence of the ████████ categorizations that directly answer that Interrogatory.

Meta's conduct has prevented Plaintiffs' from discovering core information in this case and has materially prejudiced Plaintiffs' ability to timely prosecute this action. Accordingly, in order to ensure Plaintiffs get an answer to Interrogatory 3 that is both timely and complete, Plaintiffs request an order compelling Meta to provide a sworn interrogatory answer to Interrogatory 3 and to produce all related documents, including documents sufficient to identify all Healthcare Provider ████████████████████████████████████████ as

---

[1] Until August 31, 2024 when Meta agreed to provide limited supplemental information about the lists, all three were also largely unusable because they lacked necessary information (e.g., by failing to actually identify ████████████ associated with them or failing to include any information about the nature of the classification).

classified by Meta's ███████ system, and ████████████████████████████
███████. Plaintiffs request that the Court set a deadline of two weeks for compliance.

Plaintiffs further request that the order provide for two possible contingencies, to avoid
the time that might be consumed by another round of motions. First, the order should provide
that if Meta destroyed any of this information then Meta must answer Interrogatory 3 as best it
can with data that is still available and also provide a sworn declaration describing in detail what
was destroyed. Second, the order should provide that if Meta fails to answer Interrogatory 3
within two weeks, then the parties must submit to the Court within one week their proposal for
how Plaintiffs will be given access to Meta's systems so they can obtain this information for
themselves.

## C.    Response to Meta

Whether a business is covered by HIPAA or the CMIA is not complicated. These laws
apply to healthcare providers, health insurers, pharmacies, and prescription drug companies. Not
every ███████ category fits that description, but ████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
There is no serious question that such classifications yield an answer to Interrogatory No. 3.

Moreover, Meta's interpretation of "relevance" apparently requires evidence to
conclusively establish some element of a claim. That is not what relevance means. Evidence
need only make the fact in question more likely to be true. Meta's health classifications easily fit
that requirement in a dozen ways—even conceding Meta's dubious objections about the scope of
HIPAA and the extent of ████████████████████████████████████.

Plaintiffs have conferred with Meta easily a dozen times on this interrogatory alone.
Plaintiffs' position about what is responsive has been ripe for over a year. The only thing that has
changed in that time is that Plaintiffs learned that their early suppositions about how Meta could
answer it turned out to be right, while Meta has used that time to claim it was investigating
without identifying the key system that could answer the question. No further delay is warranted.

## META'S POSITION

████████████████████████████████████ the vast majority of
which have nothing to do with health information. Contrary to plaintiffs' argument, the
information plaintiffs seek regarding ████████ is not responsive to Interrogatory No. 3. The
interrogatory relates to entities covered by HIPAA or the CMIA, but ████████████████
Accordingly, the ███████ classifications will not identify the entities at issue in Interrogatory
No. 3. Importantly, Meta has not made "misrepresentations" or engaged in "discovery
misconduct." Meta has stated repeatedly that it is investigating the issues that plaintiffs have
raised, and indeed, Meta is engaged in that investigation. Plaintiffs are unhappy with the speed
and order of production, but that does not justify plaintiffs' attacks.

## A.    Meta has already agreed to provide the information plaintiffs request.

Plaintiffs have invented a dispute about Interrogatory No. 3 when none exists. As Meta has explained to plaintiffs, Meta has been investigating its complex systems to determine what data, if any, exists in Meta's systems related to classification of ████████████ using health-related ██████████ categories. This is in addition to the voluminous information Meta has already produced. Through this investigation, Meta has located data related to health-related ██████████████████, which it is in the process of producing.[2]  In other words, Meta has agreed to give plaintiffs what they want. Although plaintiffs ask the Court to order Meta to provide this information within two weeks, this timetable is not possible, as Meta has already explained. Meta's collection and production processes take time. Meta is working to begin rolling productions of this data by October 15, 2024. Accordingly, there is no dispute regarding Interrogatory No. 3 for the Court to resolve.

## B.    The health-related ██████████ categories do not reflect HIPAA- or CMIA-covered status and therefore cannot be used to answer Interrogatory No. 3.

To be clear, the information that plaintiffs are requesting in this letter is *not* responsive to Interrogatory No. 3. That interrogatory asks Meta to "identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property."  The parties have agreed to construe the term "Medical Provider Web-Properties" as entities covered by HIPAA or the CMIA. Despite plaintiffs' unfounded suggestions to the contrary, simply because ███████████████ ████████ health-related ████████████████████ does not mean that the entity is covered by HIPAA or the CMIA. To be clear, ████████████████████████████████████████████████████ ████████████████████████—and none of the ████████████ classifications ████████████████████████. And at least some of the health-related ████████████ almost certainly do not apply to entities covered by HIPAA or the CMIA. For instance, the ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████. To the extent that ████████████████ classified within these categories are not covered by HIPAA or the CMIA (which is likely), they are not Medical Provider Web-Properties responsive to Interrogatory No. 3.[3]  Further, simply because ████████████████ a classification for ████████████ does not mean that a Business Tool at issue in this litigation was actually installed by ████████ There is no basis for plaintiffs to automatically use ████████ health-related by ████████ as a direct proxy for the entity's HIPAA or CMIA coverage or as confirmation that ████████ used any of Meta's Business Tools.

---

[2] Meta's investigation is ongoing, and to the extent that Meta identifies additional data regarding health-related ████████████ consistent with our responses and objections, Meta will produce that data.

[3] For this reason, as with the other information Meta has produced to date in connection with Interrogatory No. 3, the new ████████████ data Meta has agreed to produce will likely be both overinclusive and underinclusive.

**C.     Meta has conducted a reasonable investigation and worked to be responsive to plaintiffs' many discovery requests.**

Contrary to plaintiffs' assertions, Meta has not engaged in discovery misconduct. Meta has never had a "ready answer" to Interrogatory No. 3, nor do the ████████ classifications supply that answer. As Meta has repeatedly tried to explain, it does not maintain information that categorizes entities that send data via Business Tools as HIPAA- and/or CMIA-covered. This was the issue that led to the last dispute about this interrogatory and resulted in Meta producing the classification information it does maintain and had readily available at the time.

Also contrary to plaintiffs' arguments, plaintiffs have not been prejudiced by any delay in Meta providing the ████████ categories or related data. Indeed, as plaintiffs concede, in connection with Interrogatory Nos. 1–3, Meta has already provided a plethora of information: lists of ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████ Further, at plaintiffs' request, Meta recently supplemented these lists with the ████████████████████████ to the extent such data was available. Meta provided this information consistent with the Court's instruction at the May 23, 2023 hearing about Interrogatory No. 3 that Meta should produce the information it has and "could say this is what this list represents and this is what this other list represents, and then the Plaintiffs could do whatever they want to do with that information and figure out if they missed something." Dkt. No. 262 (5/23/2023 Hr'g Tr.) at 107:13–18. And now, consistent with the discussion at that hearing about whether Meta had a system for classifying health-related ████████████, Meta has investigated and will be producing relevant data about ████████████ Because the new ████████████ related data Meta has agreed to produce will not actually identify Medical Provider Web-Properties with any more accuracy than the other information Meta has already provided, plaintiffs have not been prejudiced by the fact that it was not produced earlier.

**D.     Plaintiffs' requests for relief should be denied.**

Given that Meta has already agreed to provide plaintiffs with data related to health-related ████████████████████ there is no need to grant any further relief. As an initial matter, plaintiffs' request for the production of "all related documents, including documents sufficient to identify all ████████████ as classified by Meta's ████████████ system, and ████████████ ████████████████████" is not appropriate relief for a dispute related to an interrogatory. But even if it were, this request for "all related documents" is overly broad and duplicative of the information that Meta has already agreed to provide in connection with this dispute and/or in response to the classification-related RFPs that are at issue in the separate joint discovery dispute letter being filed contemporaneously herewith by the parties. As discussed in that dispute letter, much of this information has already been, or will be, produced (despite the delays created by needing to brief unnecessary disputes). Accordingly, the Court should decline to order Meta to produce "all related documents" in connection with this dispute.

There is also no need for the Court to enter an order addressing the "two possible contingencies" identified by plaintiffs regarding the hypothetical loss of data, which are not appropriate remedies for an interrogatory, either.

## B.    NEED FOR A HEARING

Plaintiffs believe a Zoom or in-person hearing would be helpful for resolving this dispute, and would prefer Zoom unless the Court prefers otherwise.

Meta is available for a hearing on this issue if the Court would find one helpful. Meta prefers an in-person hearing if a hearing is ordered.

## C.    CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets the following deadlines:

*Parties substantially complete document production*: December 18, 2024

*Fact discovery Cut-off*: April 18, 2025

*Expert discovery cut-off*: July 17, 2026

## D.    STATEMENT RE COMPLIANCE WITH STANDING ORDER

Plaintiffs confirm that they have complied with the Court's discovery dispute resolution procedures. Jay Barnes, lead counsel for Plaintiffs, met and conferred regarding this dispute via videoconference on August 20, 2024.

Meta disagrees that plaintiffs have made a good faith effort to resolve the issues addressed herein, and does not believe plaintiffs have followed the discovery dispute resolution procedures.

## E.    ATTACHMENTS

- Plaintiffs' Exhibit 1 (disputed discovery requests and responses)

Dated: September 13, 2024          By:    */s/Jason 'Jay' Barnes*
                                          Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400

By:    */s/Geoffrey Graber*
      Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444

By:    */s/Beth E. Terrell*
      Beth E. Terrell

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700

*Attorneys for Plaintiffs and Putative Class*

Dated: September 13, 2024

By:  */s/ Lauren Goldman*
      Lauren Goldman

**GIBSON, DUNN & CRUTCHER LLP**
Lauren R. Goldman (pro hac vice)
lgoldman@gibsondunn.com
Darcy C. Harris (pro hac vice)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000

Elizabeth K. McCloskey (SBN 268184)
emccloskey@gibsondunn.com
Abigail A. Barrera (SBN 301746)
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200

By:  */s/ Michael G. Rhodes*
      Michael G. Rhodes

**COOLEY LLP**
Michael G. Rhodes (SBN 116127)
rhodesmg@cooley.com
Kyle C. Wong (SBN 224021)
kwong@cooley.com
Caroline A. Lebel (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000

*Attorneys for Defendant Meta Platforms, Inc.*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: September 13, 2024                    By:    */s/ Beth E. Terrell*
                                                    Beth E. Terrell

Proposed Redacted Version of
Joint Discovery Dispute Letter
re Classifications, Plaintiffs'
RFP Nos. 163-164, 204,
243-244 and Plaintiffs' RFA
Nos. 26 and 27
(Dkt. No. 630-5)

CONFIDENTIAL

September 13, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

   **Re:**  *In re Meta Pixel Healthcare Litigation*, **Case No. 22-cv-03580-WHO (VKD)**

Dear Judge DeMarchi,

   Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

## A.  STATEMENT OF THE DISPUTE REQUIRING RESOLUTION

   *Plaintiffs' position:*  Meta should be compelled to respond to RFPs 163-164, 204, 243-244, and RFAs 26-27 as written by a date certain. The RFPs seek documents relating to "health-related content classifications, taxonomies or verticals" for communications and users, *i.e.*, how Meta distinguishes Health Information from non-Health Information. *See* Exhibit 1; Dkts 275, 380. The RFAs ask Meta to admit that "Meta has systems that categorize ███████████████" and that "Meta has systems that categorize ████████████████████████ ."

   *Meta's position:*  There is no live dispute ripe for this Court's resolution. With respect to the RFPs, Meta has *already responded* and made clear that it has produced, and will continue to produce, documents responsive to plaintiffs' requests. With respect to the RFAs, the parties are not yet at impasse: Meta first responded only a few weeks ago, and the parties are actively negotiating how to address the remaining issues (including as recently as September 4, the day *after* plaintiffs sent Meta this dispute letter).

## PLAINTIFFS' POSITION

### A.  Discovery into Meta's ███████████ Categorizations is highly relevant



   Meta's practice of classifying ████████████████████ is highly relevant. Plaintiffs thus seek documents about such systems (RFP 163); how they work for at-issue communications (RFP 164); engineering, design, use-case, and explanatory documents for them (RFP 243); source code (RFP 244); and an admission that Meta categorizes ████████████████ (RFAs 26-27).

**B.** **Discovery produced to date establishes that Meta** ████████████
████████████████████████████████

As recounted in more detail in Plaintiffs' other letter briefs, Plaintiffs confirmed their suppositions about Meta's health classifications system ███████████ in July 2024 and notified Meta immediately. Meta has claimed to be "investigating" its own central health classification system until the eve of filing this motion to compel. Indeed, in Meta's initial draft of this letter, it took the position that Plaintiffs' characterizations of ████████ was based on "unfounded assumptions." In reality, Plaintiffs' positions were and are based on facts. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████

More specifically, Meta's documents reveal that ████████████████████████████████████████ as follows:

*First*, Meta ████████████████████████████████ PIXEL_HEALTH000667137 (produced Aug. 26, 2024).

*Second*, Meta ████████████████████████████████████████████████████████████████████████████████████

*Third*, Meta ████████████████████████████████████████████████████████████

*Fourth*, Meta ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[1] Plaintiffs include this example because it is one Meta happens to have made available, and it shows ████████████████████████████—not, as Meta oddly suggests, because it is a HIPAA-covered entity.



*Fifth*, Meta █████████████████████████████████████ The
following ███████████ illustrates the process:

PIXEL_HEALTH000297018, at -019.

C.    **Meta refuses to produce key discovery about its**
      **classification processes including** ████████████
      ████████████

Despite the clear import of the documents identified so far, Meta has resisted discovery
that would show (i) how it ███████████████████████████████████████████
██████ and (ii) how it ██████████████████████████████████████. For
example, ███████████████████████████████████████████████████
███████████████ But Meta has not produced information about ████████
████████████████████████████████████

---

[2] This is contained at:
████████████████████████████████████████

3

███████████████████████ [3]

**D.    Meta should be compelled to provide additional discovery in the following areas by a date certain:**

**1.    Documents that identify and describe all such systems (RFP 163)**

Based on sporadic and incomplete production of documents describing them, Plaintiffs have identified some specific systems that Meta appears to use to classify ████████ ████████. However, Meta has not responded to this RFP by comprehensively producing the documents that describe these systems in plain English ████████████. It should do so.

**2.    How those systems work for at-issue communications (RFP 164)**

RFP 164 asks for specific outputs from Meta's systems. Meta has not produced documents that, ████████ "identify and describe all health-related content classifications, taxonomies, or verticals" assigned by Meta, nor has it done so for "*the communications*"█ ███████████. For example, ████████████████████████████ ███████████████████████████████████ those types of documents would be responsive and should be produced.

**3.    Engineering, design, use-case, and explanatory docs for those systems (RFP 243)**

Except for documents incidentally produced by search terms, Meta has not produced internal documents describing its classification systems. Because such documents are routinely kept in such a way that search terms are not necessary to comprehensively identify and produce them, Meta should produce its internal engineering, design, use-case, and explanatory documents specific to its classification systems. The Court should not permit Meta to re-write this into a "documents sufficient to show" RFP that allows its counsel to curate its production for these key systems.

**4.    The source code for any such system (RFP 244)**

Meta refuses to confirm whether it produced the source code ████████████████ ████████ If it has not, it should be ordered to produce the missing source code immediately.

**5.    Admit Meta categorizes ████████████████████ (RFAs 26-27)**

RFAs 26-27 are straightforward requests that Meta should be compelled to admit or deny in order to simplify the presentation of these issues for a jury.

---

[3] ██████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████

### E.    Response to Meta

On the night before filing this brief, after the parties had already exchanged complete drafts of their halves, Meta withdrew many meritless positions and agreed for the first time to produce some (but not all) of the documents Plaintiffs seek. Meta now seeks to persuade the Court that its last-minute change of heart moots the dispute. It does not. Even taking these belated promises of production at face value, the Court should still order full production by a date certain to prevent further delay. *See* Fed. R. Civ. P. 34 (requiring production of responsive documents within a reasonable and specified time).

In addition to Meta's delay warranting an order of production by a date certain, there continue to be specific ripe disagreements about Plaintiffs' requests:

- RFP 163: Meta has not agreed to produce its non-source-code descriptive documents concerning how Meta uses its classification systems.

- RFP 164: Meta has neither produced nor agreed to systematically produce its classifications for "the communications" ████████████ (incredibly claiming, until last night, that the request was based on Plaintiffs' "unfounded assumption"). Meta's claim that its delay was just a result of seeking clarification in good faith is belied by the facts. Plaintiffs requested final lead counsel meet-and-confers on March 29, May 2, and May 9, 2024, which Meta ignored. On May 2, 2024, Plaintiffs specifically identified ████████ and stated a conference could be delayed if Meta would immediately produce certain hyperlinked documents. Meta neither produced the documents nor agreed to confer. The final conference did not occur until August 20, 2024. At that time, Meta insisted it needed more time to investigate.

- RFAs: While Meta has been promising supplemental responses for weeks, its soft deadlines for producing them continue to be pushed back. Moreover, Meta has not agreed to admit the two RFAs that are the subject of this motion, even though it is now apparent that there is no good faith basis to deny them.

Meta's claim that it has agreed to produce more documents responsive to this discovery is an attempt to delay. Meta claims to have been investigating the relevance of these straightforwardly relevant issues for more than a year. Plaintiffs filed this case 27 months ago and Meta knew then that the discovery at issue on this motion would be highly relevant. As the Court recognized at the prior hearing, these systems are critical and Plaintiffs need sufficient time to understand them. To the extent that Meta is belatedly now agreeing to produce responsive documents, it is still appropriate for the Court to order them produced by a date certain. The Court should put an end to Meta's stalling.

### META'S POSITION

The parties are not at an impasse. Meta will set aside plaintiffs' rhetoric about the timing of Meta's responses, and instead focus on the alleged "disputes." With respect to the RFPs, Meta

has *already responded* and made clear that it has produced, and will continue to produce, documents responsive to plaintiffs' requests. With respect to the RFAs, Meta first responded only a few weeks ago, and the parties are actively negotiating how to address the remaining issues (including as recently as September 4, the day *after* plaintiffs sent Meta this dispute letter). Plaintiffs' attempt to create a dispute to bring to the Court only hinders progress on these items.

*RFPs.* As described in detail below, and with the minor exceptions described, Meta is not withholding any responsive, non-privileged documents for RFPs 163, 164, 204, 243, or 244. Nor is Meta withholding documents that describe the relevant classification systems. *Supra* Sec. D.1. There is therefore no dispute as to whether Meta will "respond to RFPs 163-164, 204, 243-244 . . . ,"; except as noted below, Meta agrees that it will (and has been working to do so).

To be sure, much of the information plaintiffs demand is irrelevant. Plaintiffs' own example above—the ███████████████ *supra* Sec. B—is a case in point. Plaintiffs assume this information must be relevant because of the word ██████ But ████████████ is a home décor website that is unquestionably not covered by HIPAA or CMIA.[4] The URL that plaintiffs cite was linked to an article titled ██ ████████████████████████ which was written for ████████ by an ████████████████ (not a medical professional) and discussed a ████████ that purportedly ███████████████ and ████████ This advice from a home décor columnist clearly does not implicate any "[c]ommunications made in the context of a patient-medical provider relationship." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Nevertheless, in the spirit of working to reduce the number of discovery disputes in this case, Meta has agreed to produce this information in response to plaintiffs' RFPs. Plaintiffs' footnote concession that its own citation concerns information not relevant to the allegations in this matter underscores the breadth of irrelevant information plaintiffs demand, while also complaining about the speed of production.

Meta's rolling productions are ongoing and Meta is working diligently to meet the December 18 substantial-completion deadline. There is a date certain for production: before December 18, which leaves three months for Meta to substantially complete its rolling productions.

With respect to the RFPs plaintiffs identify in this dispute letter:

- RFP 163: Plaintiffs seek "[d]ocuments sufficient to identify and describe all health-related content classifications, taxonomies, or verticals that Meta generally uses for any purpose." On February 23, 2024, Meta agreed to search for "documents sufficient to identify and describe all health-related content classifications, taxonomies, or verticals that Meta generally uses for ████████ ████████ that send data via the Business Tools." Meta has already produced

---

[4] The "About Us" section of ████████████ states: ████ ████████████████████████████████ ████████████████████████████

health-related classifications █████████████████████████████████████
████████████████████████████████████████████████████████—and
additional production efforts are ongoing. Plaintiffs' characterization of Meta's
response is incorrect.

- RFP 164: Plaintiffs seek the same classification information as in RFP 163, but
  "for each health care provider or covered entity Partner from which Meta obtains
  health information, and for the communications on those providers and covered
  entities' web properties." After raising questions to clarify what information
  plaintiffs were seeking, Meta ████████████████████████████████████████████
  ██████████████████████████████████

- RFP 204: Plaintiffs seek documents about Meta's decision-making process with
  respect to classifications. On April 1, 2024, Meta agreed to search for responsive
  documents, and its production efforts are ongoing. Despite exchanging multiple
  drafts of this letter, plaintiffs fail to identify any dispute.

- RFP 243: Plaintiffs' overbroad, catch-all RFP begins by stating "[t]o the extent
  Meta considers any of the following not already requested," and proceeds to seek
  "all engineering, design, use-case and explanatory documents for the system or
  systems, including █████████ through which Meta assigns health-related
  'verticals.'" In an effort to progress discovery, Meta (again) agreed to search for
  "documents sufficient to show how Meta assigns the purported health-related
  'verticals' identified in Meta's [Interrogatory Response] to █████████████████
  ████████████████████████████" However, during the sole meet and confer on
  this RFP, Meta reiterated its objections to this duplicative and disproportional
  request for "all" documents. Nevertheless, since the original agreement, Meta's
  investigation has identified additional health-related "verticals" beyond ██████
  █████████, for which Meta will agree to search for and produce documents
  sufficient to show how Meta assigns the purported health-related "verticals" to
  ████████████████████████████████████████████, if any.

- RFP 244: Plaintiffs seek source code for health verticals. During the sole meet-
  and-confer on this topic, ████████████████████████████████████████████████
  █████████████████. On the day this brief is set to be filed, plaintiffs have come up
  with a new request about █████████ (which is both publicly available and not part
  of the RFP) to create a dispute. Regardless, Meta has been clear: ██████████████
  ████████████████████.

Meta disagrees with plaintiffs' accusation of "stalling," *supra* Sec. E; Meta is working
diligently to respond to 250 requests for production by the substantial-completion deadline. To
the extent plaintiffs complain (in Section D of their argument) that certain categories of
documents have not *yet* been produced, Meta can prioritize those items as it works to identify
and produce additional responsive documents. There is no need for this Court to intervene or
resolve any "dispute."

*RFAs.* Plaintiffs' rush to brief this issue is premature, as the parties are not yet at impasse. On August 12, 2024, Meta responded to 42 RFAs from plaintiffs. For several of these RFAs, including RFAs 26 and 27, Meta needs additional information to understand what plaintiffs are asking so that Meta can respond appropriately and accurately. The parties have continued to discuss these issues, including as recently as September 4—the day *after* plaintiffs sent this dispute letter. As Meta informed plaintiffs, and plaintiffs concede, Meta is working on supplemental responses to many of plaintiffs' RFAs and intends to provide those responses this month. The parties are not at impasse, and the most productive way to resolve their remaining issues is to continue the meet-and-confer process.

## B.    NEED FOR A HEARING

Plaintiffs believe a Zoom or in-person Zoom or in-person hearing would be helpful for resolving this dispute, and would prefer Zoom unless the Court prefers otherwise.

Meta is available for a hearing on these issues if the Court would find one helpful. Meta prefers an in-person hearing if a hearing is ordered.

## C.    CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets the following deadlines:

*Parties substantially complete document production*: December 18, 2024

*Fact discovery cut-off*: April 18, 2025

*Expert discovery cut-off*: July 17, 2026

## D.    STATEMENT RE COMPLIANCE WITH STANDING ORDER

Plaintiffs confirm that they have complied with the Court's discovery dispute resolution procedures. Jay Barnes, lead counsel for Plaintiffs, met and conferred regarding this dispute via videoconference on multiple dates throughout June, July, and August 2024.

Plaintiffs have not complied with the Court's standing order. Meta disagrees that plaintiffs have made a good faith effort to resolve the issues addressed herein, and does not believe plaintiffs have followed the discovery dispute resolution procedures.

## E.    ATTACHMENTS

•    Plaintiffs' Exhibit 1 (disputed discovery requests and responses)

Dated: September 13, 2024

By:    */s/Jason 'Jay' Barnes*
       Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
 *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400

By:    */s/Geoffrey Graber*
       Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
 *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
 *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444

By:    */s/Beth E. Terrell*
       Beth E. Terrell

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
 *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
 *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700

*Attorneys for Plaintiffs and Putative Class*

9

Dated: September 13, 2024

By:     */s/ Lauren Goldman*
          Lauren Goldman

**GIBSON, DUNN & CRUTCHER LLP**
Lauren R. Goldman (pro hac vice)
lgoldman@gibsondunn.com
Darcy C. Harris (pro hac vice)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000

Elizabeth K. McCloskey (SBN 268184)
emccloskey@gibsondunn.com
Abigail A. Barrera (SBN 301746)
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200

By:     */s/ Michael G. Rhodes*
          Michael G. Rhodes

**COOLEY LLP**
Michael G. Rhodes (SBN 116127)
rhodesmg@cooley.com
Kyle C. Wong (SBN 224021)
kwong@cooley.com
Caroline A. Lebel (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000

*Attorneys for Defendant Meta Platforms, Inc.*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: September 13, 2024                By:    */s/ Beth E. Terrell*
                                                  Beth E. Terrell

Proposed Redacted Version of
Ex. 1 to Joint Discovery
Dispute Letter re
Classification, Plaintiffs' RFP
Nos. 163-164, 204, 243-244
and Plaintiffs' RFA Nos. 26
and 27
(Dkt. No. 630-6)

# EXHIBIT 1

1 | GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*admitted pro hac vice*)
2 | lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
3 | dharris@gibsondunn.com
200 Park Avenue
4 | New York, NY 10166
Telephone:     (212) 351-4000
5 | Facsimile:     (212) 351-4035

6 | ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
7 | ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
8 | 555 Mission Street, Suite 3000
San Francisco, CA 94105
9 | Telephone     (415) 393-4622
Facsimile     (415) 801-7389
10 |
11 | ANDREW M. KASABIAN, SBN 313210
333 South Grand Avenue
12 | Los Angeles, CA 90071 USA
Telephone     (213) 229-7311
13 | Facsimile     (213) 229-6311
akasabian@gibsondunn.com

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

14 | *Attorneys for Defendant Meta Platforms, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO |
| --- | --- |
| | CLASS ACTION |
| This Document Relates To:<br><br>All Actions | **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT META PLATFORMS, INC., SETS TWO – SIX** |

PROPOUNDING PARTY:  PLAINTIFFS

RESPONDING PARTY:     META PLATFORMS, INC.

SET NOS.:     TWO – SIX

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

1    discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

2    about this overly broad Request.  Meta reserves the right to supplement its objections and response to

3    this Request.

4    **REQUEST FOR PRODUCTION NO. 163:**

5    Documents sufficient to identify and describe all health-related content classifications,

6    taxonomies, or verticals that Meta generally uses for any purpose, and as generally described in

7    CCAC ¶¶ 255-258.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 163:**

9    Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

10   Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

11   forth in this Response.  Meta further objects to this Request on the following additional grounds:

12   (A)    Meta objects to this Request as vague and ambiguous with respect to its use of the

13   terms "health-related" and "content classifications, taxonomies, or verticals."

14   (B)    Meta objects to this Request as overbroad and unduly burdensome with respect to its

15   use of the phrase "health-related" and "uses for any purpose."

16   (C)    Meta objects to this Request as argumentative and lacking foundation in that it

17   purportedly relies on information derived from the Interactive Advertising Bureau which is not at

18   issue in this litigation.  *See* CCAC ¶ 257.

19   (D)    Meta objects to this Request as seeking information that is irrelevant to the claims in,

20   or defenses to, this action, including that the Request seeks information that Meta "uses for any

21   purpose."

22   Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

23   discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

24   about this overly broad Request.  Meta reserves the right to supplement its objections and response to

25   this Request.

26   **REQUEST FOR PRODUCTION NO. 164:**

27   Documents sufficient to identify and describe all health-related content classifications,

28   taxonomies, or verticals for each health care provider or covered entity Partner from which Meta

1  obtains health information, and for the communications on those providers and covered entities' web

2  properties, as those terms are generally described in CCAC ¶¶ 255-258.

3      **RESPONSE TO REQUEST FOR PRODUCTION NO. 164:**

4      Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

5  Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

6  forth in this Response.  Meta further objects to this Request on the following additional grounds:

7      (A)    Meta objects to this Request to the extent it is duplicative of other Requests, including

8  Request No. 163, and incorporates its responses and objections to those Requests as if fully set forth

9  herein.

10     (B)    Meta objects to this Request as vague and ambiguous with respect to its use of the

11  terms "health-related," "content classifications, taxonomies, or verticals," and "health information."

12     (C)    Meta objects to this Request as overbroad and unduly burdensome with respect to its

13  use of the phrase "health-related" and "health information."

14     (D)    Meta objects to this Request as argumentative and lacking foundation in that it

15  purportedly relies on information derived from the Interactive Advertising Bureau which is not at

16  issue in this litigation.  *See* CCAC ¶ 257.

17     (E)    Meta objects to this Request on the grounds that it fails to describe the documents

18  sought with reasonable particularity given its use of the vague and undefined terms "health-related,"

19  "content classifications, taxonomies, or verticals," and "health information," and, depending on how

20  those terms are defined, seeks information not relevant to Plaintiff's claims.  It is unclear what

21  documents are contemplated by the phrase "all health-related content classifications, taxonomies, or

22  verticals . . . for the communications on those providers and covered entities' web properties," or

23  what they are intended to encompass.

24     Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

25  discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

26  about this overly broad, duplicative Request.  Meta reserves the right to supplement its objections and

27  response to this Request.

28

Gibson, Dunn &
Crutcher LLP

92

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

DATED:  June 22, 2023

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Lauren R. Goldman*
    Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant Meta Platforms, Inc.*

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:    (415) 393-4622
Facsimile:    (415) 801-7389

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612 USA
Telephone:    (949) 451-3800
Facsimile:    (949) 451-4220

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE | Case No. 3:22-cv-03580-WHO (VKD) |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT META PLATFORMS, INC., SET EIGHT** |
| All Actions | |

PROPOUNDING PARTY:  PLAINTIFFS

RESPONDING PARTY:    META PLATFORMS, INC.

SET NO.:    EIGHT

Gibson, Dunn &
Crutcher LLP

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta will conduct a reasonable search for, and produce, responsive, non-privileged documents reflecting and relating to Meta's decision and decision-making process regarding the creation of a ███████████, including documents sufficient to identify ████████████████████████████████████████ to the extent such documents exist, are reasonably accessible, fall within the discovery period ordered by the Court, and are within Meta's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 204:**

Documents reflecting and relating to Meta's decision and decision-making process to create Health verticals and sub-verticals lists, including documents sufficient to identify all entities on the list, web-properties associated with those entities, and whether Meta collects information from those entities through any Meta business tools, including the Pixel, SDK, customer uploads, or other any other [sic] data-collection mechanisms.

**RESPONSE:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as duplicative of other Requests, including Request Nos. 163-164 and Interrogatory Nos. 1–3, and incorporates its responses and objections to those Requests and Interrogatories as if fully set forth herein.

(B)    Meta objects to this Request as vague and ambiguous with respect to its use of the terms "decision-making process," "customer uploads," and "any other data collection mechanisms."

(C)    Meta objects to this Request as overbroad, unduly burdensome, and seeking information that is disproportionate to the needs of the case, including because the Request seeks information regarding "all entities on the list, web-properties associated with those entities, and whether Meta collects information from those entities," from several Meta Business Tools or "any other data-collection mechanisms," and is unlimited in time and scope.

1       ==Subject to and without waiving the foregoing objections, and subject to the ongoing nature of==

2 ==discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs==

3 ==regarding what other responsive, non-duplicative documents plaintiffs are seeking in relation to this==

4 ==Request, if any. Meta reserves the right to supplement its objections.==

5       **REQUEST FOR PRODUCTION NO. 205:**

6       Documents sufficient to show all web-properties and web-pages that the Filter has flagged as

7 containing potentially sensitive health information.

8       **RESPONSE:**

9       Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

10 Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

11 forth in this Response.  Meta further objects to this Request on the following additional grounds:

12       (A)     Meta objects to this Request as duplicative of other Requests, including Request No.

13 84 and Interrogatory Nos. 1 and 3, and incorporates its responses and objections to that Request and

14 those Interrogatories as if fully set forth herein.

15       (B)     Meta objects to this Request as vague and ambiguous as to its use of the terms

16 "flagged," and "containing potentially sensitive health information."

17       (C)     Meta objects to this Request as overbroad, unduly burdensome, and seeking

18 information that is disproportionate to the needs of the case, including because the Request seeks

19 information related to "all web-properties and web-pages that the Filter has flagged as containing

20 potentially sensitive health information," and is unlimited in time and scope.

21       Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

22 discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

23 regarding what other responsive, non-duplicative documents plaintiffs are seeking in relation to this

24 Request, if any. Meta reserves the right to supplement its objections.

25       **REQUEST FOR PRODUCTION NO. 206:**

26       The Declaration of David Pope referenced in Privacy Profile Litigation, Dkt. No. 1103-13 as

27 containing a "list of 149 systems."

28

Gibson, Dunn &
Crutcher LLP

21

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET EIGHT — CASE NO. 3:22-CV-3580-WHO (VKD)

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    (415) 393-4622
Facsimile:    (415) 801-7389

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**COOLEY LLP**
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | CASE NO. 3:22-cv-03580-WHO (VKD) |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS, SET NINE** |
| All Actions | The Honorable William H. Orrick |

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION OF DOCUMENTS, SET NINE
CASE NO. 3:22-CV-03580-WHO (VKD)

herein.

(B)     Meta objects to this Request as vague and ambiguous as to its use of the terms and phrases "engineering, design, use-case and explanatory documents," █████ "other tool," "project related to crawlers," and "replacement █████████." 

(C)     Meta objects to this Request as overbroad and unduly burdensome, seeking information that is irrelevant to the claims or defenses in this case, and disproportionate to the needs of the case, including because the Request seeks "all engineering, design, use-case and explanatory documents for any █████ or other tool used by Meta to collect the content of websites, webpages, Pixel data, or metadata associated with web properties" without any limit as to time or scope.

(D)     Meta objects to this Request as seeking documents that are equally or more readily obtainable from other sources, and/or that are publicly available.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta will conduct a reasonable search for, and produce, responsive, non-privileged documents sufficient to show how ██████████ identified in Request No. 242 that are relevant to the claims or defenses in this case work, to the extent such documents exist, are reasonably accessible, fall within the discovery period ordered by the Court, and are within Meta's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 243:**

*How Verticals are Calculated or Created by Meta*: To the extent Meta considers any of the following not already requested in prior Requests for Production, all engineering, design, use-case and explanatory documents for the system or systems, including █████ through which Meta assigns health-related "verticals" to ████████████████████ ██████ – whether such vertical-assignment is accomplished via advertiser selection, artificial intelligence, human review, a combination of advertiser selection, AI, and/or human review, or any other process.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 243:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

Gibson, Dunn &
Crutcher LLP

Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request to the extent it is duplicative of other Requests, including Request Nos. 204 and 242, and incorporates its responses and objections to those Requests as if fully set forth herein.

(B)    Meta objects to this Request as vague and ambiguous with respect to its use of the phrases "engineering, design, use-case and explanatory documents," "health-related 'verticals,'" and "advertiser selection."

(C)    Meta objects to this Request as overbroad, unduly burdensome, and seeking information that is disproportionate to the needs of the case, including because the Request seeks "all engineering, design, use-case and explanatory documents for the system or systems . . . through which Meta assigns health-related 'verticals' to ███████████████████████ ███████████" without any limit as to time or scope.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta will conduct a reasonable search for, and produce, responsive, non-privileged documents sufficient to show how Meta assigns the purported health-related "verticals" identified in Meta's Third Supplemental Response to plaintiffs' Interrogatory No. 1 to ███████████████████████████ to the extent such documents exist, are reasonably accessible, fall within the discovery period ordered by the Court, and are within Meta's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 244:**

Documents sufficient to identify any source code for health verticals and design, engineering, and explanatory documents for any source code associated with the categorization of ██████ with health verticals.

Gibson, Dunn & Crutcher LLP

**RESPONSE TO REQUEST FOR PRODUCTION NO. 244:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response. Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request to the extent it is duplicative of other Requests, including Request No. 243, and incorporates its responses and objections to that Request as if fully set forth herein.

(B)    Meta objects to this Request as vague and ambiguous with respect to its use of the phrases "design, engineering, and explanatory documents," and "health verticals."

(C)    Meta objects to this Request as overbroad and unduly burdensome in that the Request is not limited as to time or scope.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta will conduct a reasonable search for, and make any responsive, non-privileged source code used by Meta to assign web properties to the purported health-related verticals identified in Meta's Third Supplemental Response to plaintiffs' Interrogatory No. 1 available for inspection, to the extent such source code exists, is reasonably accessible, falls within the discovery period ordered by the Court, and is within Meta's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 245:**

*FBP Cookie Storage, Size, and Costs for Named Plaintiffs and Absent Class Members on HIPAA and CMIA-Covered Entity Properties* – Documents sufficient to identify the amount of storage the _fbp cookie utilizes on a Facebook user's computing device; average length of time the _fbp cookie resides on the device; the average cost of such storage at consumer storage rates; and the average cost of such storage at Meta's storage rates. To the extent the Meta SDK uses different app-

15

Gibson, Dunn &
Crutcher LLP

1  ==specific unique identifiers that are equivalent to the _fbp cookie, documents sufficient to identify the==

2  ==same relating to the SDK.==

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 245:**

4  Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

5  Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

6  forth in this Response.  Meta further objects to this Request on the following additional grounds:

7  (A)    Meta objects to this Request as duplicative of other Requests, including Request No.

8  151, and incorporates its responses and objections to that Request as if fully set forth herein.

9  (B)    Meta objects to this Request as vague and ambiguous as to its use of the undefined

10  phrases "consumer storage rates," "Meta storage rates," and "app-specific unique identifiers."

11  (C)    Meta objects to this Request's use of "Meta SDK" and "SDK," which do not identify

12  with sufficient particularity any specific Meta business tool.  Meta will construe "Meta SDK" and

13  "SDK" as referring to the Facebook SDK for the purposes of responding to this Request.

14  (D)    Meta objects to this Request to the extent it seeks documents and information that are

15  not in Meta's possession, custody, or control.

16  (E)    Meta objects to this Request as overbroad because it is unlimited in time and scope.

17  Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

18  discovery in this action, Meta responds as follows: Meta will conduct a reasonable search for, and

19  produce, responsive, non-privileged documents sufficient to identify the amount of storage the _fbp

20  cookie utilizes on a Facebook user's computing device; average length of time the _fbp cookie

21  resides on the device; the average cost of such storage at consumer storage rates; and the

22  corresponding information for the Facebook SDK, to the extent such documents exist, are reasonably

23  accessible, fall within the discovery period ordered by the Court, and are within Meta's possession,

24  custody, or control.

25  **REQUEST FOR PRODUCTION NO. 246:**

26  *Total FBP Cookies at Issue for HIPAA and CMIA-Covered Entity Properties* – Documents

27  sufficient to identify (1) the total number of _fbp cookies that Meta placed on consumer devices for

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION OF DOCUMENTS, SET NINE
CASE NO. 3:22-CV-03580-WHO (VKD)

explanatory information for any systems or technologies created, modified, or implemented by Meta

to ████████████████████████████████████████████████

in connection with a developer's use of the Meta Pixel and/or Facebook SDK, to the extent such

documents exist, are reasonably accessible, fall within the discovery period ordered by the Court, and

are within Meta's possession, custody, or control.


DATED: March 12, 2024                          Respectfully submitted,

                                               GIBSON, DUNN & CRUTCHER LLP


                                               By:  */s/ Lauren Goldman*
                                                    Lauren Goldman (*pro hac vice*)

                                               *Attorneys for Defendant Meta Platforms, Inc.*
                                               *(formerly known as Facebook, Inc.)*

22

DEFENDANT META PLATFORMS, INC.'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION OF DOCUMENTS, SET NINE
CASE NO. 3:22-CV-03580-WHO (VKD)

CONFIDENTIAL

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:   (212) 351-4000
Facsimile:   (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:   (415) 393-8200
Facsimile:   (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**COOLEY LLP**
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-03580-WHO<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION** |

**PROPOUNDING PARTY:**     Plaintiffs

**RESPONDING PARTY:**     Defendant Meta Platforms, Inc.

**SET NO.:**     One (Requests No. 1-42)

Gibson, Dunn &
Crutcher LLP

CONFIDENTIAL

(B)    Meta further objects to this Request as impermissibly seeking discovery-on-discovery regarding Meta's preservation efforts.  *Paul Tremblay*, 2024 WL 3638421, at *1 (citing Sedona Conference, TAR Case Law Primer, Second Edition, 24 Sedona Conf. J.1, 39 (2023) ("courts typically resist requests for 'discovery on discovery'")).

(C)    Meta further objects to this Request as overly broad and unduly burdensome in that it seeks an admission that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, including because of the overbroad definition of HEALTHCARE PROVIDER WEB-PROPERTIES, which is defined as extending to "any website, app, server, or other interface through which Meta collects user identified or identifiable data for the Pixel, SDK, CAPI, or other relevant Business Tool."  Meta also objects to this Request as overly broad and unduly burdensome in that it purports to require Meta to confirm whether any of the millions of tables or other data sources at Meta contain data that meet the ambiguous criteria from plaintiffs' Request.  Any attempt by Meta to respond to this Request as written would be unduly burdensome, expensive, and oppressive, and Meta is not required to respond to Requests that seek information that is not relevant to any party's claim or defense.  Fed. R. Civ. P. 26(b)(1); *see Wong*, 2020 WL 6460530, at *2; *C & C Jewelry Mfg.*, 2011 WL 768642, at *1.

Subject to and without waiving the foregoing objections, and based on a reasonable investigation of the information available as of the date of these Responses, Meta responds as follows: Meta stands on its objections.  Meta is willing to meet and confer with plaintiffs regarding this Request and reserves the right to supplement or amend this response.

**REQUEST FOR ADMISSION NO. 26**

Meta has systems that categorize the ███████████████████████████████ ████████████████████████████████

**RESPONSE TO REQUEST FOR ADMISSION NO. 26**

Meta incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions set forth above.  Meta further objects to this Request on the following additional grounds:

Gibson, Dunn & Crutcher LLP

37

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIRST SET OF REQUESTS FOR ADMISSION — CASE NO. 3:22-CV-03580-WHO

CONFIDENTIAL

(A)     Meta objects to this Request as vague and ambiguous, including in the use of the following undefined terms: "systems," "categorize," "content," and "collected."  Meta also objects to this Request as vague as to time.

(B)     Meta further objects to this Request as overly broad and unduly burdensome in that it seeks an admission that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, including because of the overbroad definition of HEALTHCARE PROVIDER WEB-PROPERTIES, which is defined as extending to "any website, app, server, or other interface through which Meta collects user identified or identifiable data for the Pixel, SDK, CAPI, or other relevant Business Tool."  It would be unduly burdensome to respond to this Request as written, and Meta is not required to respond to Requests that seek information that is not relevant to any party's claim or defense.  Fed. R. Civ. P. 26(b)(1); *see Wong*, 2020 WL 6460530, at *2; *C & C Jewelry Mfg.*, 2011 WL 768642, at *1.

Subject to and without waiving the foregoing objections, and based on a reasonable investigation of the information available as of the date of these Responses, Meta responds as follows: Meta stands on its objections.  Meta is willing to meet and confer with plaintiffs regarding this Request and reserves the right to supplement or amend this response.

**REQUEST FOR ADMISSION NO. 27**

Meta has systems that categorize ███████████████████████████
███████████████████████████████████ .

**RESPONSE TO REQUEST FOR ADMISSION NO. 27**

Meta incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions set forth above.  Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request as vague and ambiguous, including in the use of the following undefined terms: "systems," "categorize," "contents," and "collects."  Meta also objects to this Request as vague as to time.

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIRST SET OF REQUESTS FOR ADMISSION — CASE NO. 3:22-CV-03580-WHO

CONFIDENTIAL

(B)    Meta further objects to this Request as overly broad and unduly burdensome in that it seeks an admission that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, including because of the overbroad definition of HEALTHCARE PROVIDER WEB-PROPERTIES, which is defined as extending to "any website, app, server, or other interface through which Meta collects user identified or identifiable data for the Pixel, SDK, CAPI, or other relevant Business Tool." It would be unduly burdensome to respond to this Request as written, and Meta is not required to respond to Requests that seek information that is not relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1); *see Wong*, 2020 WL 6460530, at *2; *C & C Jewelry Mfg.*, 2011 WL 768642, at *1.

(C)    Meta objects to this Request as impermissibly compound.

Subject to and without waiving the foregoing objections, and based on a reasonable investigation of the information available as of the date of these Responses, Meta responds as follows: Meta stands on its objections. Meta is willing to meet and confer with plaintiffs regarding this Request and reserves the right to supplement or amend this response.

**REQUEST FOR ADMISSION NO. 28**

Before June 17, 2022, the Filter did not block collection of SubscribedButtonClick events involving a Log In to a patient portal.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28**

Meta incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions set forth above. Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as vague and ambiguous, including in the use of the following undefined terms and phrase: "Filter," "block," "collection," "events," and "involving a Log In to a patient portal."

(B)    Meta further objects to this Request as lacking foundation and objects that the phrase "did not block collection of SubscribedButtonClick events involving a Log In to a patient portal" is

Gibson, Dunn &
Crutcher LLP

39

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIRST SET OF REQUESTS FOR ADMISSION — CASE NO. 3:22-CV-03580-WHO

CONFIDENTIAL

1   ambiguous criteria from plaintiffs' Request.  Any attempt by Meta to respond to this Request as

2   written would be unduly burdensome, expensive, and oppressive, and Meta is not required to respond

3   to Requests that seek information that is not relevant to any party's claim or defense.  Fed. R. Civ. P.

4   26(b)(1); *see Wong*, 2020 WL 6460530, at *2; *C & C Jewelry Mfg.*, 2011 WL 768642, at *1.

5          Subject to and without waiving the foregoing objections, and based on a reasonable

6   investigation of the information available as of the date of these Responses, Meta responds as

7   follows: Meta stands on its objections.  Meta is willing to meet and confer with plaintiffs regarding

8   this Request and reserves the right to supplement or amend this response.

9

10

11  Dated: August 12, 2024                    GIBSON, DUNN & CRUTCHER LLP

12

13                                     By:     */s/ Lauren R. Goldman*
                                               Lauren R. Goldman
14

15                                     COOLEY LLP

16                                     By:     */s/ Michael G. Rhodes*
                                               Michael G. Rhodes
17

18                                     *Attorneys for Meta Platforms, Inc.*

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

56
DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIRST SET OF REQUESTS FOR ADMISSION — CASE NO. 3:22-CV-03580-WHO

Proposed Redacted Version of
Joint Discovery Dispute Letter
re up2x, Plaintiffs' ROG No. 5
and RFP Nos. 6, 7, and 165
(Dkt. No. 630-7)

**HIGHLY CONFIDENTIAL**

September 13, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)

Dear Judge DeMarchi,

      Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

**A.    STATEMENT OF THE DISPUTE REQUIRING RESOLUTION**

      *Plaintiffs' position:* In response to RFP No. 7, Meta should produce ███████ for up2X and ZippyDB, ███████████████████████████████████. The information is independently relevant and ██████████████████████████████████ is so low as to make this minimally burdensome. In response to multiple discovery requests and Rule 26, *see* Exhibit 1, Meta should also provide a sworn disclosure describin ████████████████████████████████

      *Meta's position:* Meta disagrees there is a live dispute. Plaintiffs' brief is unnecessary and based on false premises. *First*, RFP 7 seeks documents about "fields," but Meta explained seven months ago that up2X and ZippyDB ████████████████; ████████. *Second*, Meta has already agreed to discuss ████████ but the parties have not had that conversation. *Third*, ████████ would *not* be "minimally burdensome." *Fourth*, Meta is unaware of ████████ ████████████. If plaintiffs mean Meta's ████████████████████, plaintiffs have that information, as their submission shows.

**PLAINTIFFS' POSITION**

**A.    It is now clear that** ████████████████████████████████
        **from ZippyDB and up2x are relevant and responsive to RFP No. 7.**

      Plaintiffs have attached the Report of Dr. Atif Hashmi at Exhibit 2 to explain why no further investigation is warranted before Meta should be compelled to provide this information. In short, Plaintiffs have sufficient information about Meta's ████████ to understand generally the following: ████████████████████████████████ This is ████████████████████, this ████ includes ████████████████████; (2) Meta then ████████



*ee* Exhibit 3 ("Barnes Decl.") at Exs. A & B;[1] and (3) Meta

*See* Barnes Decl. Ex. E at 8.[2]

Meta uses
Specifically, Meta

[1] See Barnes Decl. Ex. D for a

[2]

PIXEL_HEALTH000297018, at -019.

Meta █████████████████████████████████████████████████████
███████████████████████████████████████ *See* Barnes Decl. Ex. C.

While Plaintiffs understand and can prove this all at a general level based on ███████
████ and other documents, they do not yet have the details about how this all happens. Plaintiffs
are entitled to that discovery to prove their theory of the case—regardless of whether Meta
agrees with these characterizations. These relevant documents are directly responsive to RFP No.
7 which seeks "Documents sufficient to identify and describe each of the fields in databases,
logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or
derived data collected through and associated with the Meta Pixel for Medical Provider Web-
Properties."

Meta does not object to relevance or substantiate any burden—even though the Court
gave it leave to file attached declarations.[3] Nor could it. Meta has produced documents indicating
that █████████████████████████████████████████████████████████████████████████████
████████████. For example, in ████████████████████████████ Meta explains ████████
██████████████████████████ PIXEL_HEALTH000533320. In
████████████ Meta explains it can ████████████
█████ PIXEL_HEALTH000380220. In a chat log where an engineer ████████████ Tobias
Wooldridge explains, █████████████████████████████████████████
█ PIXEL_HEALTH000095222. And in another chat, Wooldridge states ██████████████████
██████████████████████████████████████████████████████████████████ Thus,
Plaintiffs reasonably believe Meta's employees are not being forthright with their counsel about
Meta's ability to produce this discovery.

Thus, the dispute here is the same as the dispute about Hive. Meta says it produced
responsive information—████████████████████████. If that is the path that the Court will order,
Plaintiffs will need a case extension. The better path forward is, consistent with Rule 1, for Meta
to use tools at its disposal to provide this information ███████████████████.

Finally, Meta's parsing of the word "field" and claim that it told Plaintiffs "months ago"
that █████████████████████████████████████████ are false and misleading. *First*,
until literally yesterday, Meta's position was that it was "still investigating." *Second*, Dr. Shafiq
has pointed out that this is a distinction without a difference. And *third*, that Plaintiffs failed to
use Meta's magic language only highlights its failure to make adequate Rule 26 disclosures.[4]

---

[3] Dkt. 380 ordered, "If Meta contends that its source code is the only place that identifies and/or
describes a particular field, Meta shall so state in writing in response to RFP 7." See Nov. 11, 2023
Hearing Tr. at 66:8-67:10.

[4] ESI disclosures should "enable opposing parties (1) to make an informed decision[s]" about data
to request; and "(2) to frame their documents requests in a manner likely to avoid squabbles
resulting from the wording of the requests." Fed. R. Civ. P. 26, Notes.

**B.    The ▆▆ data in ▆▆ is likely ▆▆▆▆▆▆▆ and the discovery sought here would be warranted even if it were not ▆▆▆▆▆▆**

Until this week, Meta claimed that the data stored in ▆▆ is ▆▆▆▆▆▆▆. That was false. In PIXEL_HEATH000213548, a Meta engineer ▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆

There is no reason to believe that Meta could not produce ▆▆▆▆▆▆▆ from ▆▆ now.

Moreover, even if the data ▆▆▆▆▆ to be useful as evidence, this would not warrant protection from disclosure. See Fed. R. Civ. P. 34(a)(1)(A) ( "if necessary," documents should be produced "after translation by the responding party into a reasonably usable form.")

Finally, what Plaintiffs seek here is ▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆ is entirely irrelevant to ▆▆▆▆▆▆▆▆▆, and ▆▆▆▆▆▆▆—even according to Meta's view of the facts—assist the parties in determining what further discovery from ▆▆ may be warranted.

**C.** **Meta is obligated by Interrogatory No. 5, RFPs 6-7, RFP 165, and Rule 26 to disclose to Plaintiffs sufficient information to determine which data sources contain** ██████████

Meta's obligation to disclose basic information about up2x and ZippyDB is also tied to its obligation to answer the basic questions core to this case about ████████████ There is no question that ████████████ ████████████ Hearing Tr. at 162:20-25. So too is how ████ *Id*. For nearly two years, Plaintiffs have tried every formal and informal discovery method available to find out where Meta stores ████████████. The Court summarized the issue quite concisely, asking Meta: ████████████

████ Tr. at 153:17—154::-14.

Meta did not answer the Court's question in the August 21 hearing, nor has Meta fully responded to the several discovery requests seeking this same information, or otherwise disclosed this information as part of its affirmative obligations under Rule 26. *See* Exhibit 1. It is long past time for Meta to simply describe Meta's own sworn understanding of ████. Documents produced by Meta indicate it is readily able to answer this question. PIXEL_HEALTH000539854.[5]

*****

Wooldridge's late declaration does not help Meta. It is not credible to suggest that Meta ████ of up2x or ZippyDB ████. Nor is it sensible to argue it would be unduly burdensome for Meta to ████ up2x or ZippyDB—but Plaintiffs should do so ████. Wooldridge also says ████ is "████," but not the "only" or "most efficient" source for this discovery. Finally, Wooldridge says there is ████ which does not mean that ████ is absent from up2x or ZippyDB, but instead merely that ████. Establishing that approach to ████ is relevant.

## META'S POSITION

Plaintiffs make many demands, but in truth, Meta has already provided the reasonably available information about up2X and ZippyDB's ████ Meta has also agreed to discuss a reasonable scope of ████ even though Meta has never before

---

[5] Meta's reference to the ████ is a good illustration of the problems with discovery in this case. Meta produced it with the key data redacted. *See* Barnes Decl. Exs. F and G. Similarly, PIXEL_HEALTH000539854 indicates Meta has a ready answer—but the ████ was not produced. *See* Ex. H. Plaintiffs alerted Meta to this discovery deficiency months ago. Meta is "still investigating."

produced ███████████████ in litigation and doing so would be burdensome and cumulative. Further, as plaintiffs' submission shows, plaintiffs already possess—and are continuing to receive—significant information about Meta's ████████████████. There is no basis to shoehorn plaintiffs' request for ██████ into a "sworn" statement by Meta about information plaintiffs already have.

A.    **Up2X and ZippyDB** ███████████████████ **and Meta Has Already Provided Their** ██████

Contrary to plaintiffs' portrayal, Meta has never disputed that up2X and ZippyDB ███ ███████████████████.[6] Meta served an interrogatory response almost six months ago which said that, while stating ████████ would be cumulative sources not well suited for production.

Relevant here, plaintiffs' RFP 7 seeks documents "sufficient to identify and describe each of the *fields*" in sources where Meta stores Pixel data associated with covered healthcare entities. Up2X and ZippyDB are key/value databases ████████████████████████ ██████████. In a February 2, 2024 letter, Meta described to plaintiffs how ██████████████████. Plaintiffs' expert, Dr. Shafiq, agrees. Dkt. 526-2 ¶ 117 ("a key-value datastore ████████████████████████████████████").

Therefore, Meta explained that to better understand the types of data populated in up2X and ZippyDB in specific contexts, ██████████████ already available to plaintiffs is that information's best source. Plaintiffs did not disagree or meaningfully engage on this issue for months. On June 21, 2024, plaintiffs amended the draft Shafiq declaration (filed on July 1, 2024) to add a request for overbroad ████████ data ██████████████.[7]

Plaintiffs concede they have identified ████████████████████████████████ ██████████████████████████. Dr. Hashmi concedes that what he calls the █████████████████████ are ██████████████████████████. Hashmi Decl. ¶ 16. Moreover, Meta recently identified ████████ ███████████████████████████████████████████—although plaintiffs already can access that information.

In other words, Meta has already "produce[d] a ████████████ for up2X and ZippyDB" and their ████████████████████████████████████████████████ which are *not* like "Hive"—are (unsurprisingly) described ████████████████. Meta is currently aware of no ████████████████████ that are specific to ████████.[8]

─────────────────

[6] Up2X is not ████████████████████████████████████████
[7]  Plaintiffs' refrain about previously moving to compel on RFP 7 ignores the history of Meta conferring in good faith about these systems. Plaintiffs did not move for any ████████ until July 2024, nor did plaintiffs raise that issue until the week beforehand.
[8] Meta has also produced ████████ documents that collectively reference ZippyDB and up2X, several of which are ████████████████████████████████████████

**B.    Meta Has Already Agreed to Discuss a Narrower Scope of ████████**

After the August 21, 2024 hearing, Meta sent plaintiffs a letter to attempt to resolve remaining disputes.  Meta agreed to produce ███████ from the ████████████ that remained at issue, including the ██████ plaintiffs reference above and in Dr. Hashmi's current declaration.  As for ZippyDB and up2X, Meta reiterated that any potentially relevant data in these systems would be cumulative, as Meta still maintains.[9]

Nonetheless, Meta expressed that it was willing to discuss a narrowed scope of ████████ ████████████ from these systems—one more reasonable and narrowly-tailored than plaintiffs' prior, excessive request for "████████████████" and "████████████████," irrespective of their relevance.  Dkt. 526-2 ¶ 123.  (Plaintiffs, too, recognize that their prior request was overbroad, in that they now request ████████ ████████████████████████████ the latter of which still bears no facial relevance to this case.)  Plaintiffs insisted on filing this brief anyway.

While Meta is not currently aware of any ██████████████████████ and ████████████████████, Meta suggests that the most efficient path forward is for the parties to discuss a reasonable scope of ████████████ from ZippyDB and Up2X—*as Meta has already proposed*.  Depending on the production scope plaintiffs have in mind, however, this could be a burdensome exercise.  Wooldridge Decl. ¶¶ 6–14.

For up2X, Meta agrees it can provide ████████.  But the suggestion that it would be "minimally burdensome" to do so for ██████████████ is nonsense.  However, it appears that plaintiffs are interested in one or a small handful of up2X ████████ (Hashmi Decl. ¶ 16), and Meta is willing to discuss a reasonable ██████ production.

For ZippyDB, plaintiffs have identified a single ████████ in which they are interested.  However, Meta understands that, to feasibly ██████████████ it would need to ██████████████████████.[10]  Wooldridge Decl. ¶¶ 10–15.  Meta is continuing to investigate the burden and feasibility of attempting to provide ██████ but that exercise involves understanding plaintiffs' desired ██████, which is still unclear from plaintiffs' brief.  This is a far more complex process than plaintiffs understand.

**C.    Plaintiffs' Argument That ██████ Is ████████████████ Is Beside the Point.**

Plaintiffs' misguided argument about whether ██████ data is ████████████ is beside the point:  Meta has agreed to discuss ████████████ for which to produce ████████ data, so

---

[9] Plaintiffs argue they are entitled to "entirely duplicative" data from these systems to "prove their case."  Meta continues to dispute this (Dkt. 435-2); burdensome productions from numerous sources are unnecessary to show how Meta uses data.
[10] Plaintiffs misstate this document.  Mr. Wooldridge says that █ █████████████████ ████████████████████████████████████████████

plaintiffs can see for themselves. Moreover, the document plaintiffs snapshot in their brief does not *even mention* ████ (or ZippyDB) and is over seven years old.[11]

    **D.**    **Meta Should Not Need to Provide a "Sworn Understanding of its** ████
████████

The briefs plaintiffs have filed this week, all fundamentally on the same subject, show that Meta has produced, and plaintiffs have at their disposal, significant information about data sources and ████████████████████ So too for the lengthy expert declarations plaintiffs submitted on July 1, 2024. The suggestion that plaintiffs "do not yet have the details about how this all happens," ████████████████████████ is inaccurate.

Plaintiffs concede they already understand Hive tables corresponding to ████████ and ████████ from information Meta has produced. Hashmi Decl. ¶¶ 13, 17; *supra* at 2 (plaintiffs arguing that "some Hive tables ████████ ████████ ). Indeed, in recent correspondence, plaintiffs cited a Meta-produced document called ████████ which describes the ████ ████ and which was produced, following plaintiffs' request, without any ████ redactions.[12] And, with the Court's assistance, the parties have fashioned a methodology for producing ████████ information, which will include as an input the ████ Dr. Hashmi states contain ████ ████████ Plaintiffs will therefore be receiving even more information about these particular data flows.

Meta should not be required to separately provide a "sworn understanding of ████ ████████," which plaintiffs did not even seek in the brief that led to this filing, and which has only been plaintiffs' focus in recent months, not "two years." Moreover, Meta is not currently aware of any ████ ████████ for up2X or ZippyDB—Meta has ████████ about which plaintiffs have already obtained, and are continuing to receive, detailed discovery. Plaintiffs' request should be denied.

**B.**    **NEED FOR A HEARING**

Plaintiffs believe a Zoom or in-person hearing would be helpful for resolving this dispute.

---

[11] Plaintiffs also invoke FRCP 34(a)(1)(A) to suggest Meta should recode the data in ████ But it would be unduly burdensome for Meta to ████████████ especially where Meta is producing ████████ plaintiffs have referenced on these topics.

[12] Meta produced the unredacted version of this document two weeks ago, but plaintiffs apparently plan to attach the outdated version. As for PIXEL_HEALTH000539854, plaintiffs referenced this document for the first time last week. It does not reference any ████████ it shows granular information about ████████

Meta is available for a hearing on this issue if the Court would find one helpful. Meta prefers an in-person hearing.

## C.    CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets the following deadlines:

*Parties substantially complete document production*: December 18, 2024

*Fact discovery Cut-off*: April 18, 2025

*Expert discovery cut-off*: July 17, 2026

## D.    STATEMENT RE COMPLIANCE WITH STANDING ORDER

Plaintiffs' position: Plaintiffs compiled with the Court's discovery dispute procedures. Jay Barnes conferred regarding this dispute via videoconference on September 5, 2024. Plaintiffs simply note that the Court ordered this brief addressing these issues. Tr. 160:1-171:8.

**Addendum** – Plaintiffs provided Meta with their half of this JLB on September 5, 2024 – along with the Hashmi Declaration. Meta provided its responsive half to Plaintiffs on September 12, 2024 at approximately 1 a.m. in the morning – with no declarations attached. Plaintiffs made edits to their section and returned the brief to Meta the same day at approximately 2:00 p.m. Meta then held the brief until 8:08 p.m. on the night of filing before returning significant edits and adding the Wooldridge Declaration, which Meta never previously indicated would be part of its response. Due to the late nature of the addition and the fact that the brief was due by Court order, Plaintiffs did not have an opportunity to consult their own experts and decided to file the brief as is rather than have Meta's conduct further delay resolution of this dispute, for which the Court has already extended the briefing deadline twice before. Because three of the exhibits to the Barnes Declaration are source code documents, the parties had been discussing a procedure for how to file them with the Court. The parties agreed to work through those issues on Monday so that this brief could be filed according to the Court's order, with the source code exhibits to be filed Monday.

Meta's position: Meta disagrees there is a live dispute. During the parties' discussions, plaintiffs did not mention any ZippyDB or up2X ████████ for which they requested ████████ nor did plaintiffs request "a sworn disclosure." And the parties have never conferred concerning Meta's operative response to the one interrogatory plaintiffs reference (No. 5). Meta also disagrees with plaintiffs' "Addendum" and its characterizations, which do not accurately describe the drafts the parties' exchanged leading up to this filing.

## E.    ATTACHMENTS

- Exhibit 1 (discovery requests and responses)
- Exhibit 2 (Hashmi Declaration)
- Exhibit 3 (Barnes Declaration providing source code referenced by Dr. Hashmi)

- Exhibit 4 (Declaration of Tobias Wooldridge)

Dated: September 13, 2024

By:    */s/Jason 'Jay' Barnes*
    Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400

By:    */s/Geoffrey Graber*
    Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444

By:    */s/Beth E. Terrell*
    Beth E. Terrell

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
*Attorneys for Plaintiffs and Putative Class*

Dated: September 13, 2024

By:     */s/ Lauren Goldman*
       Lauren Goldman

**GIBSON, DUNN & CRUTCHER LLP**
Lauren R. Goldman (pro hac vice)
lgoldman@gibsondunn.com
Darcy C. Harris (pro hac vice)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000

Elizabeth K. McCloskey (SBN 268184)
emccloskey@gibsondunn.com
Abigail A. Barrera (SBN 301746)
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200

By:     */s/ Michael G. Rhodes*
       Michael G. Rhodes

**COOLEY LLP**
Michael G. Rhodes (SBN 116127)
rhodesmg@cooley.com
Kyle C. Wong (SBN 224021)
kwong@cooley.com
Caroline A. Lebel (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000

*Attorneys for Defendant Meta Platforms, Inc.*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: September 13, 2024        By:    */s/ Beth E. Terrell*        
                                                Beth E. Terrell

Proposed Redacted Version of
Ex. 1 to Joint Discovery
Dispute Letter re up2x,
Plaintiffs' Interrogatory No. 5,
and Plaintiffs' RFP Nos. 6, 7,
and 165
(Dkt. No. 630-8)

EXHIBIT 1

**CONFIDENTIAL**

1   GIBSON, DUNN & CRUTCHER LLP            COOLEY LLP
    LAUREN R. GOLDMAN (*admitted pro hac vice*)   MICHAEL G. RHODES, SBN 116127
2   lgoldman@gibsondunn.com                rhodesmg@cooley.com
    DARCY C. HARRIS (*admitted pro hac vice*)   KYLE C. WONG, SBN 224021
3   dharris@gibsondunn.com                 kwong@cooley.com
    200 Park Avenue                        CAROLINE A. LEBEL, SBN 340067
4   New York, NY 10166                     clebel@cooley.com
    Telephone:    (212) 351-4000           3 Embarcadero Center, 20th Floor
5   Facsimile:    (212) 351-4035           San Francisco, CA 94111-4004
                                           Telephone:   (415) 693-2000
6   ELIZABETH K. MCCLOSKEY, SBN 268184     Facsimile:   (415) 693-2222
    emccloskey@gibsondunn.com
7   ABIGAIL A. BARRERA, SBN 301746
    abarrera@gibsondunn.com
8   555 Mission Street, Suite 3000
    San Francisco, CA 94105
9   Telephone    (415) 393-4622
    Facsimile    (415) 801-7389
10
    ANDREW M. KASABIAN, SBN 313210
11  333 South Grand Avenue
    Los Angeles, CA 90071 USA
12  Telephone    (213) 229-7311
    Facsimile    (213) 229-6311
13  akasabian@gibsondunn.com

14  *Attorneys for Defendant Meta Platforms, Inc.*

15

16              **UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17                  **SAN FRANCISCO DIVISION**

18  IN RE META PIXEL HEALTHCARE          Case No. 3:22-cv-03580-WHO
    LITIGATION
                                         CLASS ACTION
19  _____
    This Document Relates To:            **DEFENDANT META PLATFORMS, INC.'S**
20                                       **RESPONSES AND OBJECTIONS TO**
    All Actions                          **PLAINTIFFS' FIRST SET OF**
21                                       **INTERROGATORIES**

22  _____

23       **PROPOUNDING PARTY:  PLAINTIFFS**

24       **RESPONDING PARTY:    META PLATFORMS, INC.**

25       **SET NO.:     ONE**

26       Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), by

27  and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

28  Rules") 26 and 33, and the Civil Local Rules of the U.S. District for the Northern District of California



**INTERROGATORY NO. 5:**

Identify and describe the databases or repositories where Meta receives, re-directs, or stores data (including event-level and/or derived data) collected through or associated with the Meta Pixel for Medical Provider Web-Properties, or that contain data relating to the Filter (including any logs).

**RESPONSE TO INTERROGATORY NO. 5:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A) Meta objects to this Interrogatory as vague and ambiguous in its use of the terms "databases," "repositories," "derived data," "collected through or associated with the Meta Pixel," "relating to the Filter," and "logs."

(B) Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information for a time period that is not proportional to the needs of the case.

(C) Meta objects to this Interrogatory as seeking information that is irrelevant to the claims in, or defenses to, this action and/or disproportionate to the needs of the case. For example,

the Interrogatory seeks the identification of "databases or repositories" for data that is not relevant to the allegations at issue in this action.

(D)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information and will not provide any such information implicating confidential, proprietary, or trade secret information in this case until a protective order or other protocol containing sufficient protections is entered in this case.

(E)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes multiple discrete subparts (*i.e.*, seeking the identification of (A) (1) databases or (2) repositories, where Meta (i) receives, (ii) re-directs, or (iii) stores data "collected through or associated with the Meta Pixel," or (B) (1) "data relating to the Filter," (2) including logs—all of which may be separate and independent information).

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta is willing to meet and confer with Plaintiffs about this overly broad Request.

Meta reserves its right to supplement its objections and responses to this Interrogatory.

DATED: March 20, 2023                  Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant*

**VERIFICATION**

I, Tobias Wooldridge, a software engineer at Meta am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Responses and Objections to Plaintiffs' First Set of Interrogatories. The responses were prepared by Meta's counsel with assistance of Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Responses and Objections to Plaintiffs' First Set of Interrogatories is true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on    March 20, 2023

Tobias Wooldridge

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone    (415) 393-4622
Facsimile    (415) 801-7389

ANDREW M. KASABIAN, SBN 313210
333 South Grand Avenue
Los Angeles, CA 90071 USA
Telephone    (213) 229-7311
Facsimile    (213) 229-6311
akasabian@gibsondunn.com

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT META PLATFORMS, INC., SET ONE** |
| All Actions | |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:    ONE**

(E)     Meta objects to this Request to the extent it calls for the production of confidential, proprietary, or trade secret information and will not produce any such documents implicating confidential, proprietary, or trade secret information in this case until a protective order or other protocol containing sufficient protections is entered in this case.  Meta objects to producing or providing information relating to any non-public source code, and/or producing or making available for inspection non-public source code itself in original or native format (or otherwise), until sufficient protections containing appropriately tailored confidentiality and source code provisions are entered in the case.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta will conduct a reasonable search for, and produce, responsive, non-privileged documents sufficient to show the data flow through which Meta received information via the Meta Pixel from Medical Provider Web-Properties during the Relevant Time Period, to the extent such documents exist, are reasonably accessible, and are within Meta's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to identify the databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected through and associated with the Meta Pixel for Medical Provider Web-Properties, Including those listed in Exhibit A.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request as vague and ambiguous as to its use of the terms "databases," "logs," "other electronic sources," "derived data," and "collected through and associated with the Meta Pixel."

(B)     Meta objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity given its use of the vague and undefined terms "databases, logs, or other electronic sources" and, depending on how those terms are defined, seeks information not

Gibson, Dunn &
Crutcher LLP

relevant to Plaintiff's claims.  It is further unclear what documents are contemplated by the phrase "[d]ocuments sufficient to identify the databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data."

(C)    Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information unlimited in time and scope.

(D)    Meta objects to this Request to the extent it calls for the production of confidential, proprietary, or trade secret information and will not produce any such documents implicating confidential, proprietary, or trade secret information in this case until a protective order or other protocol containing sufficient protections is entered in this case.  Meta objects to producing or providing information relating to any non-public source code, and/or producing or making available for inspection non-public source code itself in original or native format (or otherwise), until sufficient protections containing appropriately tailored confidentiality and source code provisions are entered in the case.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs about this overly broad Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to identify and describe each of the fields in databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected through and associated with the Meta Pixel for Medical Provider Web-Properties, Including those listed in Exhibit A.  This request includes, but is not limited to, data dictionaries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request as vague and ambiguous as to its use of the terms "databases," "logs," "other electronic sources," "derived data," and "collected through and associated with the Meta Pixel," and "data dictionaries."

(B)     Meta objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity given its use of the vague and undefined terms "fields in databases, logs, or other electronic sources" and "data dictionaries," and, depending on how those terms are defined, seeks information not relevant to Plaintiff's claims.  Meta further objects to this Request on the grounds that it is unclear what documents are contemplated by the phrase "[d]ocuments sufficient to identify and describe each of the fields."

(C)     Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information unlimited in time and scope.

(D)     Meta objects to this Request to the extent it calls for the production of confidential, proprietary, or trade secret information and will not produce any such documents implicating confidential, proprietary, or trade secret information in this case until a protective order or other protocol containing sufficient protections is entered in this case.  Meta objects to producing or providing information relating to any non-public source code, and/or producing or making available for inspection non-public source code itself in original or native format (or otherwise), until sufficient protections containing appropriately tailored confidentiality and source code provisions are entered in the case.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs about this overly broad Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to identify how the databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected through and associated

(B)    Meta objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, and/or any other applicable privileges and protections.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs about this overly broad Request.  Meta reserves the right to supplement its objections and response to this Request.

DATED:  March 13, 2023                    GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Lauren R. Goldman*
        Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant Meta Platforms, Inc.*

Gibson, Dunn &
Crutcher LLP

82

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1  GIBSON, DUNN & CRUTCHER LLP            COOLEY LLP
   LAUREN R. GOLDMAN (*admitted pro hac vice*)   MICHAEL G. RHODES, SBN 116127
2  lgoldman@gibsondunn.com               rhodesmg@cooley.com
   DARCY C. HARRIS (*admitted pro hac vice*)   KYLE C. WONG, SBN 224021
3  dharris@gibsondunn.com                kwong@cooley.com
   200 Park Avenue                       CAROLINE A. LEBEL, SBN 340067
4  New York, NY 10166                    clebel@cooley.com
   Telephone:    (212) 351-4000          3 Embarcadero Center, 20th Floor
5  Facsimile:    (212) 351-4035          San Francisco, CA 94111-4004
                                         Telephone:   (415) 693-2000
6  ELIZABETH K. MCCLOSKEY, SBN 268184    Facsimile:   (415) 693-2222
   emccloskey@gibsondunn.com
7  ABIGAIL A. BARRERA, SBN 301746
   abarrera@gibsondunn.com
8  555 Mission Street, Suite 3000
   San Francisco, CA 94105
9  Telephone     (415) 393-4622
   Facsimile     (415) 801-7389
10
   ANDREW M. KASABIAN, SBN 313210
11 333 South Grand Avenue
   Los Angeles, CA 90071 USA
12 Telephone     (213) 229-7311
   Facsimile     (213) 229-6311
13 akasabian@gibsondunn.com

14 *Attorneys for Defendant Meta Platforms, Inc.*

15                    **UNITED STATES DISTRICT COURT**

16           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17                        **SAN FRANCISCO DIVISION**

18

19 IN RE META PIXEL HEALTHCARE          Case No. 3:22-cv-03580-WHO
   LITIGATION
20                                      CLASS ACTION

21 This Document Relates To:            **DEFENDANT META PLATFORMS, INC.'S**
                                        **RESPONSES AND OBJECTIONS TO**
   All Actions                          **PLAINTIFFS' REQUESTS FOR**
22                                      **PRODUCTION TO DEFENDANT META**
                                        **PLATFORMS, INC., SETS TWO – SIX**
23

24

25              **PROPOUNDING PARTY:  PLAINTIFFS**

26              **RESPONDING PARTY:    META PLATFORMS, INC.**

27              **SET NOS.:    TWO – SIX**

28

Gibson, Dunn &
Crutcher LLP

**REQUEST FOR PRODUCTION NO. 165:**

Documents sufficient to identify and describe the Meta systems through which Plaintiffs' expert Richard Smith was shown an ad relating to ulcerative colitis in his Facebook video feeds within two hours of exchanging communications with a health care provider about ulcerative colitis, as alleged in CCAC ¶ 269.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 165:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response. Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request to the extent it is duplicative of other Requests concerning Meta's systems and data flow already served on Meta, and incorporates its responses and objections to those Requests as if fully set forth herein.

(B)     Meta objects to this Request as argumentative and lacking foundation in that it purportedly relies on a legal conclusion derived from Plaintiffs' expert who is not a named party to this action. *See* CCAC ¶ 269.

(C)     Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information unlimited in time and scope and duplicative of information about Meta's systems which Meta has already agreed to search for.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs about this overly broad, duplicative Request. Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 166:**

Documents sufficient to identify and describe the Meta systems in which it stores information about specific advertisements shown to directly on Meta properties and through the Facebook Audience Network or other networks on non-Meta properties, as alleged in CCAC ¶ 270.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

1

DATED:  June 22, 2023                              GIBSON, DUNN & CRUTCHER LLP

2

By: /s/ *Lauren R. Goldman*

3                                                              Lauren R. Goldman (*pro hac vice*)

4                                                      *Attorneys for Defendant Meta Platforms, Inc.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

Proposed Redacted Version of
Ex. 2 to Joint Discovery
Dispute Letter re up2x,
Plaintiffs' Interrogatory No. 5,
and Plaintiffs' RFP Nos. 6, 7,
and 165
(Dkt. No. 630-9)

EXHIBIT 2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949

Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel:    310-854-4444
Fax:    310-854-0812

*Attorneys for Plaintiffs*
JOHN DOE, JANE DOE I, JANE DOE II,
and JOHN DOE II, and DOE, on behalf of
themselves and all others similarly situated

[*Additional counsel listed on signature page*]

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    (206) 816-6603
Fax:    (206) 319-5450

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    (510) 350-9700
Fax:    (510) 350-9701

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION <br><br> This Document Relates To: <br><br> All Actions | Case No. 3:22-cv-03580-WHO (VKD) <br><br> **DECLARATION OF DR. ATIF HASHMI REGARDING USE OF PIXEL DATA AND VARIOUS TABLES** |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## DECLARATION OF DR. ATIF HASHMI

I, Atif Hashmi, declare as follows:

1.      I have been retained by Plaintiffs' counsel in *In Re Meta Pixel Healthcare Litigation*. Plaintiffs' counsel in this matter asked me to review (1) Meta's source code relating to ███████████████████████████████████████████████████████████ ████████████ and (2) Meta's source code ██████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████. My review of Meta's source code is ongoing.

2.      I have been informed by the Plaintiffs' counsel that the Court ordered the parties to brief specific tables or data sources where Meta may store ███████████████████ ██████████ by September 3, 2024. Those tables and data sources include the ███████████ ███████████████████████████████████████████████ tables and data sources.

3.      My findings are still preliminary as my review of Meta's source code is ongoing.

4.      I understand from Plaintiffs' counsel that Meta has identified ██ specific █████████ tables as relevant data sources █████████████████. Therefore, based on Meta's identification of these ██ specific ██████████ tables as relevant data sources, I spent a significant amount of my time on investigating Meta's source code ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. I have also investigated Meta's source code ██████████████████████████████████████████.

5.      Based upon my investigation to date of ████████████████████████████████, I have determined that, while these ██ tables may be necessary to understand Meta's systems relating to ████████████████████████████████, one of the primary █████████████████ ████████████████████ appears to be ████████████████████████ Because I only recently discovered ███████████ I have not had sufficient time to fully investigate Meta's source code relating to ████████████████████████████.

6.      The declaration I make below is based on my initial investigation of Meta's source code relating to ████████████████████████████████████ and is subject to change

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  based on my further investigation of Meta's source code. In addition, in future declarations I may

2  add more detailed discussion about Meta's source code relating to ████████████████████

3  ██████████████████████████████████████████████████████████████████

4  ████████████████. I note that given the complexity of Meta's source code, an

5  investigation of █████████████████████ is time consuming.

6  **My Background and Experience**

7      7.    I have provided details related to my background and experience in my earlier

8  declaration that I submitted on June 13, 2024.

9     █████████████████████████████

10     8.    As discussed below in more detail, based on my investigations to date, ██

11  ████████████████ appears to be one of █████████████████ that Meta ██

12  █████████. Unlike the ████ tables identified by Meta, which ███████████

13  ████████████████████████████████,[1] the ████████████

14

15  _____

16     [1] See PIXEL_HEALTH000000064, PIXEL_HEALTH000110510,
    PIXEL_HEALTH000110502, PIXEL_HEALTH000110512, PIXEL_HEALTH000110508,
    PIXEL_HEALTH000110501, and PIXEL_HEALTH000110520; Also see

17  █████████████████████████████████████

18  ███████████████████

19  ███████████

20  ██████████████████

21  ██████████████████████████████████

22  █████████████████████████

23  ██████████████████████████████

24  ███████████

25  ███████████████████████████

26  ██████████████████████

27  ██████████████████

28  ██████████████████

2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

contains ████████████.[2] This means that Meta ████████

█████████████████████████████████████████████

█████████████████████████████. Furthermore, there are ████████████████ that do not appear in the ██████ identified by Meta.[3]

9.    Upon receiving the Pixel Data corresponding to a Pixel event, Meta's ████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████.[4] In addition to ██████████████████ contains ███████ that are not present within the ██ tables that Meta has identified. Examples of such ████ include ████████  ████████  ████████  ████████

█████████████████████████████████████████████

████████████

[2] See PIXEL_HEALTH000000064; Also see

██████████████████████████████████████  ████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████  ████████████████████████

[3] See PIXEL_HEALTH000110510, PIXEL_HEALTH000110502, PIXEL_HEALTH000110512, PIXEL_HEALTH000110508, and PIXEL_HEALTH000110520.

[4] See PIXEL_HEALTH000000064; Also see

██████████████████████████████████████  ████████████

█████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

██████████████  ████████████████████████

3

DECLARATION OF DR. ATIF HASHMI
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



1  ▐████████████████████████

2      10.    Based on my investigation to date, Meta runs ████████████████

3  ████████████████████████████████████████████████████

4  ▐█.[5] The ███████████████ can use up to ██████████████████████

5  ████████████████████████████.[6] As indicated by their names, ██████

6  ████████████████████████████████████████████████████

7  ▐████████████████.[7]

8      11.    ████████████████████████████████████████████

9  ███████████████████████████████████████████[8] Table 1 shows a subset of

10 ████████████████████████████

11 [black block]

**Table 1:** Subset of ██████████████████████

19     12.    The ██████████████████████████████ listed in

20 Table 1 match with ██████████████████████████████████

---

[5] See PIXEL_HEALTH000150386, PIXEL_HEALTH000382185,
PIXEL_HEALTH000662384, and PIXEL_HEALTH000661116; Also see
███████████████████████████████████████
█████████████████████████████████
███████████████████████████████████
███████████████████████████████████████████

[6] See █████████████████████████

[7] See █████████████████████████

[8] See ████████████████████████████

DECLARATION OF DR. ATIF HASHMI
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

1    ▮▮▮▮▮▮▮▮▮▮▮[9] Based on my preliminary investigation,

2    ▮▮▮▮▮▮▮▮▮▮▮▮▮appear to be

3    relevant to determine ▮▮▮▮▮▮▮▮. However, other

4    ▮▮▮▮▮▮▮may also be possible. For example, I have identified ▮

5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮.[10]

7        13.    ▮▮▮▮▮▮ specifies ▮▮▮▮▮▮

8    ▮▮▮▮▮.[11] This means that ▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮.[12] The

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮Based on my review of Mata's source code related to ▮▮

12   ▮▮▮▮▮▮▮▮it appears that ▮▮▮▮

13   ▮▮▮▮however, I am still investigating whether ▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮continue to be

15   ▮▮▮▮▮or not. As I described earlier, I began my investigation into

16   Meta's tables by reviewing Meta's source code related to the ▮▮▮ identified by Meta and

17   have not had sufficient time to review Meta's source code related to ▮▮▮▮.

18   I will continue to review Meta's source code to understand

19   ▮▮▮▮. However, a production of ▮▮▮▮▮

20   ▮would also greatly assist in efficiently determining ▮▮ ▮▮ ▮ ▮▮ ▮ ▮▮

21   ▮▮

22       ▮▮▮▮▮▮

23       14.    ▮▮▮▮▮▮▮▮

24

_____

25   [9] See ▮▮▮▮▮▮

26   [10] ▮▮▮▮▮▮

27   [11] See ▮▮▮▮▮▮▮

28   ▮▮▮▮▮▮[12] See ▮▮▮▮

DECLARATION OF DR. ATIF HASHMI
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

1    ███████████████████████████████.[13] Within

2    Meta's ████████████████ █[14] describes ████████████

3    ████████████████████████████████████████

4    ████████████████████████████████████████

5    ████████████████████████████████████████

6    ██████████████████████████.[15]

7    ██ ████ █ ██████████████ ████ ██ █ ███

8    █████████████████████████████.[16]

9    ████████████████████████████████████████

10   ████████████████████████████████████████

11   ███████████████████.[17]

12   ████████████████████████████████████████

13   ████████████████████████████████████████

14   █████████████████████████████████.[18]

15       15.    I am still investigating how data corresponding to ████ ████ ████

16   ████████████████████████████████████████

17   ██ As I described earlier, I began my investigation into Meta's tables by reviewing Meta's

18   source code related to the ████████ identified by Meta and have not had sufficient time to review

19   _____

20   [13] See ████████████████████

21   ████████████████████████████

22   ████████████████████████

23   [14] See ██████████████████

24   [15] See ████████████████████

25   [16] See ████████████████████

26   [17] See ████████████████████████

27   ████████████████████████

28   [18] ████████████████

1  Meta's source code related to ██████████. I will continue to review Meta's source code to

2  understand ████████████████████████ However, a production of ████████████

3  ████████████████████████████████████████████████████

4  ████ would greatly assist in efficiently determining ████████████████████

5       16.    ████████████████████████████████ Meta's ████████

6  ████████████████████████████████████████.[19] ████████

7  ████████████████████████████████████████████.[20] However, a

8  manual investigation of ██████████████████ in the source code review room

9  would require that I first ████████████████ source code where ████████

10 ████████████████, manually review those specific portions of Meta's source code,

11 write down the relevant information into the notebook that I use for my hand-written notes, and

12 then transcribe my notes into a computer outside the source code review room for efficient

13 analysis. Given that there are ████████████████████████████████████,

14 this manual effort will be quite burdensome and time-consuming. It would be more efficient for

15 Meta to use ████████████████████████ to provide ████████████

16 ████████████████████████ in CSV format. A comprehensive list of

17 ████████████████████████████████[21]

18     ████████████████████

19     17.    Based on my review of Meta's documents and Meta's source code that ████████

20 ████████████████████████████ I have determined that ████

21 ████████████████████████████████████████████████

22 ████████████████████.[22] For example

23 ██ ████ ██ ████ ██████ ██████ ██████ ████████ ████

24 _____

25  [19] See ████████████████████████████

26  [20] For example, ████████████████████████████
   ████████████████████

27  [21] See ████████████████████████

28  [22] See PIXEL_HEALTH000487458; Also see ████████████████████

DECLARATION OF DR. ATIF HASHMI
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    ██████████████████████████████████████ tables

2    identified by Meta. My findings with respect to ████████████████

3    are preliminary, and I will continue to investigate how ████████████

4    ████████████████████ ████ However, based on my review of Meta's

5    documents, it is my understanding that ████████████████████████

6    ████████████████████████████████████████████ The

7    ████████████████████████ is shown in Figure 1.[23] Within Meta's source code,

8    I identified ████████████████████████████████████

9    ██████████████████ [24] ████████ [25]



20   Figure 1: ████████████████████████████████

23 See PIXEL_HEALTH000297018.

24 See ████████████████████████████████████████cpp.

25 See ██████████████████████████████████████████
██

8

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  I declare under penalty of perjury that the foregoing is true and correct.

2

3        Executed this day, September 5, 2024

4

5                                                    By: _____

6                                                         Dr. Atif Hashmi

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DR. ATIF HASHMI
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO (VKD)

Proposed Redacted Version of
Ex. 3 to Joint Discovery
Dispute Letter re up2x,
Plaintiffs' Interrogatory No. 5,
and Plaintiffs' RFP Nos. 6, 7,
and 165
(Dkt. No. 630-10)

# EXHIBIT 3

Jason 'Jay' Barnes (admitted *pro hac vice*)
 *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949

Jeffrey A. Koncius, State Bar No. 189803
 *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:    310-854-0812

*Attorneys for Plaintiffs*
JOHN DOE, JANE DOE I, JANE DOE II, and
JOHN DOE II, and DOE, on behalf of
themselves and all others similarly situated

[*Additional counsel listed on signature page*]

Geoffrey Graber, State Bar No. 211547
 *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

Beth E. Terrell, State Bar No. 178181
 *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW
 GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:    206-319-5450

Andre M. Mura, State Bar No. 298541
 *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel:    510-350-9700
Fax:    510-350-9701

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | **Case No. 3:22-cv-03580-WHO (VKD)** |
| | CLASS ACTION |
| This Document Relates To: | **DECLARATION OF JASON 'JAY' BARNES ATTACHING ███████ DOCUMENTS AS EXHIBITS** |
| All Actions | |

I, Jason 'Jay' Barnes, declare as follows:

1.      I am an attorney licensed to practice law in the state of Missouri and have been

admitted pro hac vice for this action. Dkt. 12.

2.     I am a partner in the law firm of Simmons Hanly Conroy LLP and have been appointed as interim co-lead counsel to represent the Named Plaintiffs and the putative class in the above-captioned matter.

3.     I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

4.     I submit this declaration solely for the purpose of providing and authenticating various source code documents relied on and referenced by Dr. Hashmi in his declaration. Because of the nature of these documents and the parties' protective order concerning source code, it was necessary that these be submitted separately.

5.     I have attached as <u>Exhibit A</u> a true and correct copy of relevant ███████ excerpts of the Meta source code file named ████████ referenced in Hashmi Decl. ¶ 12.

6.     I have attached as <u>Exhibit B</u> a true and correct copy of relevant ███████ excerpts of the Meta source code file named ████████ referenced in Hashmi Decl. ¶ 12.

7.     <u>Exhibit C</u> is ███████ excerpts of the Meta source code file named ████████ referenced in Hashmi Decl. ¶ 17. Exhibit C is a source code document that Plaintiffs can only access in the clean room. The Parties are discussing a procedure for how to file them with the Court and agreed to work through this issue on Monday, September 16, 2024.

8.     <u>Exhibit D</u> is the complete Meta source code file ████████ referenced in Hashmi Decl. ¶ 11. Exhibit D is a source code document that Plaintiffs can only access in the clean room. The Parties are discussing a procedure for how to file them with the Court and agreed to work through this issue on Monday, September 16, 2024.

9.     <u>Exhibit E</u> is the complete Meta source code file ████████ **referenced** in Hashmi Decl. ¶ 14. Exhibit E is a source code document that Plaintiffs can only access in the clean room. The Parties are discussing a procedure for how to file them with the Court and agreed to work through this issue on Monday, September 16, 2024.

10.     I have attached as <u>Exhibit F</u> a true and correct excerpt of the original, redacted production of the ███████████████████ labeled PIXEL_HEALTH_000662384 through PIXEL_HEALTH_000662395.

11.     I have attached as <u>Exhibit G</u> a true and correct excerpt from the replacement production of the ███████████████████ with redactions removed, labeled PIXEL_HEALTH_000662384 through PIXEL_HEALTH_000662395.

12.     I have attached as <u>Exhibit H</u> a true and correct excerpt from the ███████ ███████████████ labeled PIXEL_HEALTH_000539854 to PIXEL_HEALTH_000539868.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 13th day of September, 2024.

By: <u>*/s/ Jason 'Jay' Barnes*</u>
Jason 'Jay' Barnes

EXHIBIT A

*HIGHLY CONFIDENTIAL – SOURCE CODE*

# Exhibit 2
Plaintiffs' Excerpts from the Source Code file





*HIGHLY CONFIDENTIAL – SOURCE CODE*







*HIGHLY CONFIDENTIAL – SOURCE CODE*



# EXHIBIT B

*HIGHLY CONFIDENTIAL – SOURCE CODE*

# Exhibit 1
Plaintiffs' Excerpts from the Source Code file



*HIGHLY CONFIDENTIAL – SOURCE CODE*



Placeholder. This source code exhibit to be filed on September 16, 2024.

EXHIBIT C

Placeholder. This source code exhibit to be filed on September 16, 2024.

EXHIBIT D

Placeholder. This source code exhibit to be filed on September 16, 2024.

# EXHIBIT E

EXHIBIT F



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



PIXEL_HEALTH000662389



CONFIDENTIAL



CONFIDENTIAL

PIXEL_HEALTH000662391



CONFIDENTIAL

PIXEL_HEALTH000662392



PIXEL_HEALTH000662393



CONFIDENTIAL



CONFIDENTIAL

EXHIBIT G

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000662394

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT H



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000539857



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000539866



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Proposed Redacted Version of
Ex. 4 to Joint Discovery
Dispute Letter re up2x,
Plaintiffs' Interrogatory No. 5,
and Plaintiffs' RFP Nos. 6, 7,
and 165
(Dkt. No. 630-11)

# EXHIBIT 4

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>_____<br><br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-3580-WHO<br><br>PUTATIVE CLASS ACTION<br><br>**DECLARATION OF TOBIAS WOOLDRIDGE IN SUPPORT OF META PLATFORMS, INC.'S POSITION IN UP2X AND ZIPPYDB DISPUTE**<br><br>Honorable Judge Virginia K. DeMarchi |

Gibson, Dunn &
Crutcher LLP

**CONFIDENTIAL**

I, Tobias Wooldridge, declare as follows:

1.    I am a software engineer at Meta.  I offer this declaration in support of Defendant Meta Platforms, Inc.'s position in the Joint Discovery Dispute Letter about up2X and ZippyDB.   The information in this declaration is based on my personal knowledge and discussion with relevant personnel.  If called and sworn as a witness, I could and would testify competently to this information.

2.    I have worked at Meta as a software engineer since ███████ .  I am a senior engineer on the Signals team, which bears the primary responsibility for maintaining and updating the Meta Pixel code.  My team is also responsible for maintaining and implementing Meta's systems that detect and filter potentially sensitive data being sent by third-party developers to Meta via the Meta Pixel, among other Business Tools.  I have worked in this area for the duration of my tenure at Meta.

3.    I understand that plaintiffs in this case assert that certain technologies made available to the public by Meta—the Meta Pixel, the Facebook SDK, and Meta's Conversions API (collectively, Meta's "Business Tools")—are relevant to this litigation.  Data transmitted by third parties via Meta's Business Tools to Meta's servers ("Business Tools Data") is processed and stored in a structured data warehouse called "Hive."  I am familiar with Hive and, as part of my responsibilities, I routinely work with Hive data related to the Business Tools.  I am also familiar with up2X and ZippyDB, and I have experience working with these systems, as well.

4.    I understand that plaintiffs have requested that Meta "produce ████████████ up2X and ZippyDB, ██████████████████████████████████ ████████████████████████████    I also understand that plaintiffs have requested information about the ██████ for up2X and ZippyDB.

5.    Because ZippyDB and up2X are both "key/value" data stores, ██████████ ████████████████████████████████████████ .  If plaintiffs seek additional information concerning the structure of keys and values within ZippyDB and up2X, including their ██████████████ and how engineers have described those ██████ ████████ ████████████████████████████████████

1

CONFIDENTIAL

**Up2X**

6.      Up2x is a realtime database system that is used to store and retrieve user information in a "key/value" format ████████████████.  It is not ███████████████ contrary to plaintiffs' claims.

7.      Up2X ████████████████████████████████████████.  To my knowledge, ████████████████████████████████████████████████████

████████████████████████████████████████████████████

8.      I understand that there are ███████████████ across Meta, ████████████ ████████████████████████████████████ I am not aware of any ████████ ██████████ up2X.  To my knowledge, the ████████████████████ are not all isolated or identified somewhere with specificity, so Meta would need to conduct a manual investigation to identify the full scope of potentially relevant ████████.

9.      I understand that it is possible to ████████████ for particular ████████████, and that the burden to do so will depend on ████████████████ I understand that it would be burdensome to try to pull ████████ for all of the ████████████████ because, based on Meta's current capabilities, each ████████████ would need to be done manually on an individual basis.

**ZippyDB**

10.    ZippyDB is also a "key/value" database.  I understand that there are ████████ ████████████████████████████████████████████.  I am not aware of ████████████████ for ZippyDB.  To my knowledge, data related to the ████████████████████████████████████████████████████ ████████████████.

11.    Again, if plaintiffs seek additional information concerning the structure of ZippyDB's keys and values, including ████████████████████████████████████████ ████████████████████████████████████████████████████ To my knowledge, the ZippyDB ████████ related to Business Tool data are not all isolated or identified somewhere with specificity, so Meta would need to conduct a manual investigation to identify the full scope of ████████████████

**CONFIDENTIAL**

12.     I understand that it is not currently possible to ████████████ across ZippyDB ███ in the way that plaintiffs seem to be envisioning. ████████████████████ Part of the difficulty here is that, to ████████████████, one needs to ████████████ ████████████████████████████████████████ So, for example, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████

13.     As an analogy, consider ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████ As I noted in my declaration on July 1, 2024, the claim that "Meta can readily produce the list of all keys in ZippyDB and up2x and then produce ██████ of the values stored for the keys" is false.

14.     To provide ████████████████ in a systematic manner, Meta's engineers would need to ████████████████████████████████████████████████ ██████████████ so the burden would escalate depending on ████████████████ at issue. This could be a significant amount of work, depending on the ████████████.  Meta engineers would potentially need to ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████

CONFIDENTIAL

1          I declare under penalty of perjury that the foregoing is true and correct, and that I executed this

2   declaration on September 13, 2024, in Kirkland, WA.

3

4

5   _____
                                Tobias Wooldridge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TOBIAS WOOLDRIDGE DECL. RE UP2X AND ZIPPYDB DISPUTE
CASE NO. 3:22-CV-3580-WHO

Proposed Redacted Version
of the Joint Status Report
Re: Protocol for Review and
Production of Relevant
Data Sources (Dkt. 663-3)

Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
Email: jaybarnes@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949

Jeffrey A. Koncius, CSB #189803
Email: koncius@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

*Attorneys for Plaintiffs*

JOHN DOE, JANE DOE I, JANE DOE II,
and JOHN DOE II, and DOE, on behalf of
themselves and all others similarly situated

[*Additional counsel listed on signature page*]

Geoffrey Graber, CSB #211547
Email: ggraber@cohenmilstein.com
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
TERRELL MARSHALL LAW
  GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Andre M. Mura, CSB #298541
Email: amm@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-03580-WHO<br><br>**JOINT STATUS REPORT RE PROTOCOL FOR REVIEW AND PRODUCTION OF RELEVANT DATA SOURCES (DKT. 614)** |

Plaintiffs and Defendant Meta Platforms, Inc. ("Meta") submit this Joint Status Report pursuant to the Court's September 9, 2024 Order re Protocol for Review and Production of Relevant Data Sources (Dkt. 614) (the "Protocol").

-1-

JOINT STATUS REPORT RE PROTOCOL FOR REVIEW AND PRODUCTION
OF RELEVANT DATA SOURCES (DKT. 614)
CASE NO. 3:22-CV-03580-WHO

1.     **The Status of the Parties' Efforts to Identify ███ Using This Protocol**

The parties have completed nearly three rounds of the Protocol.  On September 16, 2024, Meta produced ████████████████████████████████████████████████ ██████  for which plaintiffs continue to believe further investigation into ████████████ is necessary" (Dkt. 614 at 2).  ████████████████████████  that exist in the ordinary course in Meta's systems and are not privileged.

From ██████, on September 19, 2024, plaintiffs identified ██████████ for which plaintiffs believed "further investigation into ████████████████ is necessary."  Plaintiffs also requested ████████████████████████

On October 3, 2024, Meta produced the results of ████████████████████ ████████████████████████ Of that ████ on October 7, 2024, plaintiffs identified ████ ████ for which plaintiffs requested further ████████████, and plaintiffs also requested ████████████████████████

October 17, 2024 is Meta's deadline to object to any of these ████ and October 22, 2024 is Meta's deadline to produce ████████████████████ Dkt. 614 at 3.

2.     **An Estimate of the Time Required to Complete the Production and Analysis of Additional ████████**

The time necessary to complete the production and analysis of any additional ██████ will depend on the number of ████ to which Meta objects, the number of ████ that the next round yields, and the number of non-objectionable ████ that plaintiffs identify from that next round for further ████████████.  The parties hope to have a clearer picture of the necessary time remaining for this Protocol in the next status report.

3.     **A Date for the Next Status Report**

The parties propose November 6, 2024 as the date for the next status report.

4.     **Whether a Status Conference Would Be Helpful**

At this time, the parties do not believe a status conference is necessary.

1  Dated: October 16, 2024

2

3  **SIMMONS HANLY CONROY LLC**

4  By: /s/ Jason 'Jay' Barnes
   Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
5  Email: jaybarnes@simmonsfirm.com
   An V. Truong, *Admitted Pro Hac Vice*
6  Email: atruong@simmonsfirm.com
   Eric Steven Johnson, *Admitted Pro Hac Vice*
7  Email: ejohnson@simmonsfirm.com
   Jennifer M Paulson, *Admitted Pro Hac Vice*
8  Email: jpaulson@simmonsfirm.com
9  112 Madison Avenue, 7th Floor
   New York, New York 10016
10 Telephone: (212) 784-6400

11 **COHEN MILSTEIN SELLERS**
     **& TOLL PLLC**
12

13 By: /s/ Geoffrey A. Graber
   Geoffrey Aaron Graber, CSB #211547
14 Email: ggraber@cohenmilstein.com
   Eric Alfred Kafka, *Admitted Pro Hac Vice*
15 Email: ekafka@cohenmilstein.com
   Claire T. Torchiana, CSB #330232
16 Email: ctorchiana@cohenmilstein.com
   1100 New York Avenue NW
17 Suite 500, West Tower
   Washington, DC 20005
18 Telephone: (202) 408-4600
19

20 **TERRELL MARSHALL LAW**
     **GROUP PLLC**
21

22 By: /s/ Beth E. Terrell
   Beth E. Terrell, CSB #178181
23 Email: bterrell@terrellmarshall.com
   Amanda M. Steiner, CSB #190047
24 Email: asteiner@terrellmarshall.com
   Ryan Tack-Hooper
25 Email: rtack-hooper@terrellmarshall.com
   Benjamin M. Drachler, *Admitted Pro Hac Vice*
26 Email: bdrachler@terrellmarshall.com
   936 North 34th Street, Suite 300
27 Seattle, Washington 98103
   Telephone: (206) 816-6603
28

**GIBSON, DUNN & CRUTCHER LLP**

By:/s/ Lauren R. Goldman
Lauren R. Goldman *(admitted pro hac vice)*
Email: lgoldman@gibsondunn.com
Darcy C. Harris *(admitted pro hac vice)*
Email: dharris@gibsondunn.com
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Elizabeth K. Mccloskey, SBN 268184
Email: emccloskey@gibsondunn.com
Abigail A. Barrera, SBN 301746
Email: abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

**COOLEY LLP**

By:/s/ Michael G. Rhodes
Michael G. Rhodes, SBN 116127
Email: rhodesmg@cooley.com
Kyle C. Wong, SBN 224021
Email: kwong@cooley.com
Caroline A. Lebel, SBN 340067
Email: clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
Facsimile: (415) 801-7389

*Attorneys for Defendant Meta Platforms, Inc.*

Jeffrey A. Koncius, CSB #189803
Email: koncius@kiesel.law
Nicole Ramirez, CSB #279017
Email: ramirez@kiesel.law
Mahnam Ghorbani, CSB # 345360
Email: ghorbani@kiesel.law
Stephanie M. Taft, CSB #311599
Email: taft@kiesel.law
Kaitlyn E. Fry, CSB #350768
Email: fry@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444

Andre M. Mura, CSB #298541
Email: amm@classlawgroup.com
Hanne Jensen, CSB #336045
Email: hj@classlawgroup.com
Delaney Brooks, CSB #348125
Email: db@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700

*Attorneys for Plaintiffs*