# Proposed Redacted Version of the Joint Discovery Dispute Letter Regarding Interrogatory 12 (Dkt. No. 762-3)

CONFIDENTIAL

January 13, 2025

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      Re:   *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)

Dear Judge DeMarchi,

Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

### A.    STATEMENT OF THE DISPUTE REQUIRING RESOLUTION

*Plaintiffs' position:* Whether Meta should be compelled to provide a detailed answer to Interrogatory No. 12 which seeks an explanation of ▆▆▆▆▆▆ that includes "identification of each ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ involved;" the processors or internal services that "analyze, categorize, associate, or transform the data (such as ▆▆▆▆▆ ▆▆▆▆▆) in each such table or location; and how the results are used, with examples and explanations of how the system may have changed during the relevant period as well as any settings that might impact ▆▆▆▆▆▆▆▆."

*Meta's position:* Whether Meta has sufficiently already answered Interrogatory No. 12, which is improper and objectionable, including because it consists of multiple impermissible sub-parts in violation of the interrogatory limits set forth in Federal Rule of Civil Procedure 33(a)(1), and it is unduly burdensome, disproportional to the needs of the case, and duplicative in light of other discovery already provided and underway in this case in connection with potentially relevant data sources, ▆▆▆▆▆▆▆ and ▆▆▆▆▆▆.

### **PLAINTIFFS' POSITION**

### I.    INTRODUCTION

On November 12, 2024, the Court denied Plaintiffs' motion to compel a narrative explanation of its ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ through Interrogatory No. 5, which the Court ruled "does not call for a narrative explanation of Meta's ▆▆▆▆▆▆▆▆ Dkt. 685 at 7. Shortly thereafter, Plaintiffs served Interrogatory No. 12, which does expressly call for a detailed narrative:

> Describe in detail how Meta used Information collected from Healthcare Provider web-properties, Including a description of: the flow of such data from end-to-end in Meta's systems with identification of each ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ involved; any processors

> or internal services that are used to analyze, categorize, associate, or transform the data (such as ▮▮▮▮) in each such table or location; how Meta used this data when creating or determining ▮▮▮▮ and/or user features for advertising use; and how the resulting ▮▮▮▮ or features are used in Meta's advertising. Include examples from each such table, category, system, processor, or internal service. To the extent these descriptions vary by time, describe the changes during the relevant period and, to the extent Meta claims that any user, device, advertiser, regulatory, or other settings impact how data is used, describe such impacts during the relevant period.

Plaintiffs disagree that specifying what Plaintiffs mean when they ask for a narrative description of ▮▮▮▮ transforms a single question into multiple questions. Nevertheless, Plaintiffs will request permission to serve additional interrogatories if and when they reach the current limit.

Meta served a deficient answer on December 20, 2024 that does not identify any *specific* ▮▮▮▮ ▮▮▮▮. Instead, Meta answered that data "not blocked or filtered out may then be stored in various systems and data warehouses, including Hive, UP2X, and ZippyDB," where "engineers may ▮▮▮▮" and includes ▮▮▮▮ Meta then generally described ▮▮▮▮ stating that ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ Finally, Meta points Plaintiffs to PIXEL_HEALTH0000064 and "incorporates by reference its Source Code and configuration files made available to plaintiffs pursuant to Rule 33(d) … as the burden of deriving or ascertaining the information sought by plaintiffs from the Source Code will be substantially the same for plaintiffs as it would be for Meta."

     Meta points to the Daiquery Protocol, which it seeks to end. However, while helpful, the Protocol also does not answer the question because it is limited to Hive, does not show ▮▮▮▮ ▮▮▮▮, and is accompanied by a disclaimer from Meta. Further, Meta provides ▮▮▮▮ in Daiquery when it is objecting to providing additional information, but not for every ▮▮▮▮.

**II.    LEGAL STANDARD**

     Rule 33(d) permits a responding party to produce business records in response to an interrogatory. However, to comply, "a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." *Rainbow Pioneer v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983). "Thus, when voluminous documents are produced under Rule 33(d), they must be accompanied by indices designed to guide the search to the documents responsive to the interrogatories." *O'Connor v. Boeing N.A.*, 185 F.R.D. 272, 278 (C.D. Cal. 1999); *State of Colorado v. Schmidt-Tiago Const. Co.*, 108 F.R.D. 731,

735 (D. Col. 1985) (The response should "list the specific documents provide the other part and indicat[e] the page or paragraphs that are responsive to the interrogatory.").

Further, "[w]ithout detailed specification by category and location of responsive documents, the burden of deriving the answers to the interrogatories is not the same for the parties; rather, it would be easier for persons employed by the defendant to locate responsive documents." *O'Connor*, 185 F.R.D. at 278. For example, in *Sabel v. Mead Johnson & Co.*, the court found it "simply absurd to contend that it is equally burdensome for the plaintiff to derive" an answer to an interrogatory "when the only specification of records given by the defendant is the entire application, which is 154,000 pages in length and which the defendant will make available only at its corporate headquarters in Evansville, Indiana." 110 F.R.D. 553, 556 (D. Mass. 1986).

### III.   META SHOULD BE COMPELLED TO PROVIDE A MORE CONCRETE ANSWER

Meta's response to Interrogatory No. 12 is deficient in at least four respects.

First, Meta's response refers to "various" systems and data warehouses, without purporting to disclose a complete list. Whatever burden might be associated with disclosing the name of every ▮▮▮▮, there is no similar rationale for failing to even identify every system and data warehouse in ▮▮▮▮. Meta defends its open-ended response by pointing to documents that describe ▮▮▮▮. But there is no document that definitively identifies all relevant systems, which is part of the reason Plaintiffs asked this question. Plaintiffs are entitled to complete list of relevant systems.

Second, Meta's response refers Plaintiffs to ▮▮▮▮ but fails to identify a single one concretely or to describe at a conceptual level what happens in these data sources. It is unreasonable for Meta to fail to identify the most important ▮▮▮▮ or to describe what role these systems play in ▮▮▮▮ at a general level. Meta complains Plaintiffs are "rewriting" this request to seek identification of key ▮▮▮▮, but when the objection is burden then describing what can be described without undue burden is just what Rule 33 requires.

Third, to the extent Meta is refusing to identify every ▮▮▮▮ because it contends that doing so would be unduly burdensome, it should be required to state that explicitly. It is relevant to this case that Meta itself does not know exactly which ▮▮▮▮ contain at-issue data and if that is the basis for refusing to provide a list then Plaintiffs should be entitled to share that basis with a finder of fact. Meta tries to avoid this damaging disclosure by referencing a generic burden objection, but Rule 33(b)(4) requires Meta to state such an objection with specificity—in this case, by stating that it does not know which ▮▮▮▮ contain at-issue data, if that is true.

Fourth, Meta's description of the impact of Core Setup—the changes it implemented during litigation that protect user privacy—is that it may impact data "before it can even be sent via the Meta Pixel." But Meta fails to describe even at a general level the *nature* of the impact and



what effect the various settings have on Meta's ▓▓▓▓▓ Keeping more detailed forms of data out of Meta's systems impacts the way those systems perform because Meta's ability to classify data depends on the details provided in the data. It is not unreasonable to require Meta to describe at a general level the impact of removjng URL information on the classifications Meta is able to make.

Meta's reliance on Rule 33(d) to gesture at thousands of documents that provide partial answers to these questions does not absolve it of responsibility to provide information that it already knows and can provide with minimal burden. Rule 33(d) does not permit a party to dump documents on its adversary and say "you figure it out from here." The *Sabel* court ruled that it was "simply absurd" for the defendant to argue it would be no more burdensome for the plaintiffs to find the answer in a single 155,000-page document than for the much-more-knowledgable defendant to do so. Meta notes that Plaintiffs have explored ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But Meta's ▓▓▓▓▓▓ production includes more than ▓▓▓▓▓▓▓▓! It includes what Meta has acknowledged to be ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which does not include files showing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Either Meta knows where the answers reside, and therefore Plaintiffs should not have to hunt for it, or Meta does not know and therefore should be required to admit that concretely.

An interrogatory is the appropriate vehicle for this information. No single Meta employee knows this information, and even a well-prepared Rule 30(b)(6) designee is unlikely to be able to provide a complete and accurate response. An interrogatory response permits Meta to ensure accuracy by taking the time necessary to confirm it with people familiar with all stages of ▓▓▓▓▓▓▓▓▓▓.

With the close of discovery approaching, the Court should not permit Meta to delay further.

**META'S POSITION**

Meta has already answered Interrogatory No. 12 and should not be compelled to respond further to this improper and objectionable interrogatory.

**I.    INTERROGATORY NO. 12 VIOLATES FEDERAL RULE 33(A)(1)**

Although plaintiffs claim that "[a]n interrogatory is the appropriate vehicle for this information," Interrogatory No. 12 is not a proper interrogatory because it consists of multiple subparts in violation of the limits set forth in Federal Rule of Civil Procedure 33(a)(1) ("[A] party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."). To date, plaintiffs have served what they style as 21 different interrogatories on Meta, most of which contain multiple discrete subparts, such that they are in fact separate interrogatories; yet they have not sought this Court's approval to exceed the 25-interrogatory limit set forth in Rule 33.

Interrogatory No. 12 alone consists of at least *twenty-two* discrete subparts, and asks Meta to, among other things, describe (1) "the flow of [] data from end-to-end in Meta's systems with identification of each" ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ from ▓▓ different systems or

storage warehouses; (2) "any processors or internal services that are used to analyze, categorize, associate, or transform the data (such as ▆▆▆▆) in each [▆▆▆▆]" identified in part 1 of the interrogatory; (3) "how Meta used this data when creating or determining ▆▆ ▆▆ and/or user features for advertising use"; and (4) "how the resulting ▆▆ or features are used in Meta's advertising." The interrogatory goes on to request that "[t]o the extent these descriptions vary by time, Meta "describe the changes during the relevant period and, to the extent Meta claims that any user, device, advertiser, regulatory, or other settings impact how data is used, describe such impacts during the relevant period."

Interrogatory No. 12 is thus improper on its face given the excessive number of sub-parts embedded within it and the number of other interrogatories already served by plaintiffs, and Meta should not be required to further respond to it.

## II. META'S RESPONSE IS NOT DEFICIENT AND NO FURTHER RESPONSE TO INTERROGATORY NO. 12 SHOULD BE REQUIRED

Notwithstanding the objectionable and improper nature of Interrogatory No. 12, Meta has already responded to this interrogatory, and Meta has been and is continuing to provide the information plaintiffs seek through other discovery mechanisms. Plaintiffs identify four purported "deficiencies" in Meta's response to Interrogatory No. 12. None has any merit, including because Interrogatory No. 12 is unduly burdensome and seeks information that is disproportionate to the needs of the case and duplicative of other discovery already provided by Meta.

First, plaintiffs complain that "Meta's response refers to 'various' systems and data warehouses, without purporting to disclose a complete list." But Meta's response identifies ▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, and cites by Bates number to multiple documents that Meta produced regarding Meta's ▆▆▆▆▆▆▆▆▆▆▆, including a document that describes "the flow of Business Tools data through Meta's systems." Moreover, Meta has already "identif[ied] and describe[d] the databases or repositories where Meta receives, re-directs, or stores data (including event-level and/or derived data) collected through or associated with the Meta Pixel" in response to plaintiffs' Interrogatory No. 5, and—as plaintiffs acknowledge—the Court declined to order Meta to provide additional information in response to that interrogatory. Dkt. 685 at 7.

Further, as explained in Meta's response to Interrogatory No. 12, plaintiffs already have access to the information they seek via ▆▆▆▆▆▆▆▆▆▆. Although plaintiffs assert that Meta's reliance on Federal Rule of Civil Procedure 33(d) is improper because Meta did not identify which specific files within ▆▆▆▆▆ relate to ▆▆▆▆, plaintiffs are well acquainted with ▆▆▆▆▆▆▆▆▆, having ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Plaintiffs have also cited to ▆▆▆▆▆▆▆ extensively in connection with briefing multiple discovery disputes before this Court. In addition, the information in ▆▆▆▆▆▆▆ that is potentially responsive to this interrogatory is necessarily voluminous, far reaching, and unduly burdensome for Meta to identify with further specificity because plaintiffs' interrogatory is overly broad and demands such a vast amount of information. Plaintiffs' complaint therefore rings hollow.

Second, plaintiffs argue that "[i]t is unreasonable for Meta to fail to identify the most important ▇▇▇▇▇▇ or to describe what role these systems play in ▇▇▇▇▇▇ at a general level." Once again, plaintiffs are rewriting their own discovery request to include even more discrete demands, because this interrogatory does not ask for Meta to identify only "the most important ▇▇▇▇▇▇." Plaintiffs contend that they are not rewriting their interrogatory because "when the objection is burden then describing what can be described without undue burden is just what Rule 33 requires." Meta has already done so in its response to Interrogatory No. 12—including by referencing the significant discovery that has already been provided on this topic, such as specific documents Meta has produced and cited in its response, as well as ▇▇▇▇▇▇ Meta has made available to plaintiffs. But even if it had not, this information is also already in plaintiffs' possession through the voluminous information Meta has already provided about ▇▇▇▇▇▇ in connection with the Daiquery protocol ordered by the Court at Dkt. 614 and with respect to Up2X and ZippyDB pursuant to the Court's order at Dkt. 685.

Third, plaintiffs claim that "to the extent Meta is refusing to identify every ▇▇▇▇▇▇ because it contends that doing so would be unduly burdensome, it should be required to state that explicitly in its response" including "by stating that it does not know which ▇▇▇▇▇▇ contain at-issue data, if that is true." Meta already stated its objections as required. Meta's objections to Interrogatory No. 12 include that the interrogatory is "overbroad, and unduly burdensome" and further objectionable "to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and is disproportionate to the needs of the case, including to the extent this Interrogatory seeks information that has nothing to do with Healthcare Provider web properties['] transmission of allegedly sensitive health information to Meta." With respect to Up2X and ZippyDB, Meta explained in its response to the interrogatory that ▇▇▇▇▇▇ Up2X and ZippyDB are not used by Meta solely in connection with the Business Tools, so many of these ▇▇▇▇▇▇ may have nothing to do with the Business Tools. Meta should not be required to identify each of these ▇▇▇▇▇▇ individually, or explain how ▇▇▇▇▇▇ have changed over time. It is not that Meta "does not know ▇▇▇▇▇▇ contain at-issue data," but rather, that providing the requested information through yet another discovery mechanism is overly burdensome and not proportionate to the needs of the case, particularly because, as already explained, plaintiffs already have access to ▇▇▇▇▇▇ and numerous produced documents regarding Meta's ▇▇▇▇▇▇.

Fourth, plaintiffs contend that "Meta fails to describe even at a general level the *nature* of the impact" of Meta's Core Setup setting "and what effect the various settings have on Meta's ▇▇▇▇▇▇" (emphasis in original). This argument is based on a flawed premise that Core Setup ▇▇ ▇▇▇▇▇▇. As Meta explained in its response to Interrogatory No. 12, Core Setup is "a set of data restrictions designed to *prevent the transmission* of certain types of event data altogether *before it can even be sent* via the Meta Pixel for website events or via the Facebook SDK for app events, [or] *remove it as soon as possible after it reaches Meta's servers* when sent via Conversions API" (emphases added). Because Core Setup prevents data from being transmitted to Meta in the first place or removes the data as soon as possible once it is received, that data does not flow through Meta's systems and therefore has no direct impact on

Meta's ███████. There is thus no further information that Meta can provide regarding Core Setup in response to this interrogatory.

Because Interrogatory No. 12 contains an impermissible number of subparts, is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information duplicative of what has already been produced to plaintiffs, Meta should not be required to further respond.

**B.     NEED FOR A HEARING**

Plaintiffs request a hearing on the motion.

Meta is available for a hearing on this issue if the Court would find one helpful. Meta prefers an in-person hearing if a hearing is ordered.

**C.     CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY**

The schedule sets the following deadlines:

*Parties substantially complete document production*: December 18, 2024

*Fact discovery Cut-off*: April 18, 2025

*Expert discovery cut-off*: July 17, 2026

**D.     STATEMENT RE COMPLIANCE WITH STANDING ORDER**

Pursuant to the Court's Standing Order, the parties held a final lead counsel meet-and-confer on December 23, 2024.

**E.     ATTACHMENTS**

Dated: January 13, 2025                By:    */s/ Jason 'Jay' Barnes*
                                              Jason 'Jay' Barnes
                                       **SIMMONS HANLY CONROY LLC**
                                       Jason 'Jay' Barnes (admitted *pro hac vice*)
                                         jaybarnes@simmonsfirm.com
                                       112 Madison Avenue, 7th Floor
                                       New York, NY 10016
                                       Tel:   212-784-6400
                                       Fax:   212-213-5949

By:     */s/ Geoffrey Graber*
        Geoffrey Graber
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:   202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:   310-854-0812

By:     */s/Beth E. Terrell*
        Beth E. Terrell
**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:   206-816-6603
Fax:   206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:   510-350-9700
Fax:   510-350-9701
*Attorneys for Plaintiffs and Putative Class*

Dated: November 22, 2024

By: */s/ Lauren Goldman*
Lauren Goldman
**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (pro hac vice)
lgoldman@gibsondunn.com
DARCY C. HARRIS (pro hac vice)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: January 13, 2025          By:     */s/ Beth E. Terrell*
                                         Beth E. Terrell