# Proposed Redacted Version of the Joint Discovery Dispute Letter Regarding Additional Custodians (Dkt. No. 770-3)

*Confidential*

January 14, 2025

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      Re:   *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)

Dear Judge DeMarchi,

Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

## A. STATEMENT OF THE DISPUTE REQUIRING RESOLUTION

The dispute that requires resolution is whether Meta should add four more document custodians: Sheryl Sandberg, Jenny Lin, Manish Singhal, and James Covey.

## B. PLAINTIFFS' POSITION

The Court should grant Plaintiffs' request for four more document custodians. First, based on Meta's current document production, all four custodians possess unique relevant documents. Second, adding four additional custodians is not unduly burdensome. Third, Plaintiffs' request is timely.

**1. Four Additional Custodians Possess Unique Relevant Documents.**

**Sheryl Sandberg:** Sandberg is the former Chief Operating Officer of Meta. In August 2023, Plaintiffs requested that Meta add Sandberg as a custodian. Meta opposed the request, stating Plaintiffs "cannot leapfrog straight to the top" and had to "wait[] to see [] documents from the recently agreed-upon custodians." ECF 293 at 5-6. The Court denied Plaintiffs' request, finding that "Plaintiffs have not shown that any of the other proposed custodians are likely to have non-duplicative documents…" ECF 315 at 4.

The documents now show that Sandberg has unique knowledge and documents highly relevant to this litigation. For example, on February 20, 2019, Meta employees  PIXEL_HEALTH000327687; PIXEL_HEALTH000615185. Sandberg was also notified of Meta's efforts to ▮. PIXEL_HEALTH000615185. Meta employees then ▮ PIXEL_HEALTH000650129. Because Sandberg's custodial documents have not been produced, Meta has not produced ▮.

Sheryl Sandberg also worked directly with ▮ on issues relevant to this case. Facebook employees ▮

1

PIXEL_HEALTH000121306. Because Sandberg's custodial documents have not been produced, Sandberg's ▬▬▬ has not been produced in this litigation.

These documents demonstrate that Sandberg was tasked with talking with external parties (such as the press and large healthcare providers) about ▬▬▬ Sandberg's communications with third-parties will not appear in the custodial files of other Meta employees and are thus the quintessential unique relevant documents.

**Jenny Lin:** Jenny Lin is a Privacy Program Manager who ▬▬▬ Yet, somehow, Meta failed to disclose her or name her as a custodian.

Lin made critical decisions relevant to this lawsuit. For example, Lin ▬▬▬ PIXEL_HEALTH000350889; PIXEL_HEALTH000350893. Lin ▬▬▬ *Id.* Because of ▬▬▬ healthcare provider websites transmitted "the patient status of individuals logging into the 'patient portals' of their providers through click data, including the Meta Pixel 'SubscribedButtonClick' …" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 791.

Meta downplays the documentary evidence about Lin. But the Meta's contemporaneous document lists Jenny Lin's name next to the "Privacy Decisions" about ▬▬▬ PIXEL_HEALTH000350893.

**Manish Singhal:** Manish Singhal is a Meta engineer who was responsible for two relevant projects after Plaintiffs filed this lawsuit. Contrary to Meta's assertions below, the documents demonstrate that Singhal had unique responsibility for these projects.

First, after this lawsuit was filed, Singhal was responsible for ▬▬▬ The documents show that Singhal personally developed the code to ▬▬▬ PIXEL_HEALTH000490121.

Second, Singhal was responsible for ▬▬▬ In other words, Singhal ▬▬▬ For example, Singhal found that ▬▬▬ PIXEL_HEALTH000000719. Meta claims that other engineers were involved in this project. But Singhal's e-mail reflects that Singhal had conducted ▬▬▬. *Id.*

**James Covey:** Covey is a Meta strategic response employee who was responsible for ▬▬▬ As another Facebook employee explained:



2

PIXEL_HEALTH000301262.

Meta has not produced Covey's "chat thread" with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Covey thus possesses relevant non-duplicative documents.

### 2. Plaintiffs' Request for Four Additional Custodians is Not Burdensome.

Meta asserts that it will need to review 100,000 additional documents for the four additional custodians. As an initial matter, this estimate is inflated: it does not deduplicate documents that are possessed by multiple custodians. For example, if half of Sandberg's s documents were also possessed by other custodians, then Meta will need to review 20,000 additional documents, not 40,000.

In any event, the four additional custodians would add (at most) 10% more documents to the existing custodial document review. See Meta's Position, footnote 1. Plaintiffs' request meets the proportionality standard because of the importance of these custodians.

Plaintiffs also note that Meta unilaterally selected 24 of the 36 initial custodians. And, some of Meta's self-selected custodians appear to have very little – to no -- value as document custodians or witnesses. Plaintiffs should not be deprived of the documents from some of the key Meta employees because Meta picked the wrong custodians.

### 3. Plaintiffs' Request for Four Additional Custodians Is Timely.

With respect to timeliness, Meta asserts that Plaintiffs' request is untimely. Not so. When the parties negotiated their ESI Protocol, Meta demanded that Plaintiffs be barred from requesting additional custodians after initial custodian negotiations. This Court rejected Meta's position and recognized that follow-up custodians may be needed after Meta's production from its initial custodians. April 20, 2023, Hearing Transcript at 90:4-17. ("It is also not unusual for some witnesses of significance to become apparent in the court of discovery that maybe wasn't appreciate by the party at the outset.")

By September 2023, the parties agreed to 30 custodians, and the Court ordered Meta to produce documents from six additional custodians, for a total of 36. ECF 315. Meta produced custodial documents on a rolling basis through December 18, 2024, when it made a custodial production of nearly 7,000 documents. As Meta acknowledges below, Meta produced more than 30% of the documents it has produced to date in July 2024 or later. On November 15, 2024, Plaintiffs requested five additional custodians (which has now been reduced to a request for four).

At its core, Meta's "timeliness" argument now is that Plaintiffs apparently should have provided seriatim requests for additional custodians. But that approach is exactly what Meta told the Court it wanted to avoid. April 20, 2023, Hearing Transcript at 89:18-19 ("So we are trying to avoid 10 or 20 rounds of Plaintiffs commenting…"). Plaintiffs followed the process endorsed by the Court in a manner that Plaintiffs believed Meta would find least burdensome: by carefully reviewing Meta's document production and making one request for a small number of supplemental custodians as Meta neared completion of its custodial productions. Under these circumstances, Plaintiffs' request is timely and appropriate.

### C. META'S POSITION

The Court should deny plaintiffs' request based on (1) plaintiffs' failure to identify any unique information in the requested custodians' files that is not unreasonably cumulative or duplicative of the substantial discovery Meta has already provided; (2) the disproportionate, undue burden adding these custodians would impose; and (3) the untimeliness of plaintiffs' request. "[E]leventh hour motions to compel should be for wrap-up items, not for major changes to the scope of discovery." *Kadrey v. Meta Platforms*, 2024 WL 4362744, at *1 (N.D. Cal. Oct. 1, 2024) (denying request for five custodians filed one day after production deadline).

Meta has produced or logged more than 136,000 documents from *36 custodians* and noncustodial sources.[1] Meta produced *all* documents plaintiffs cite above by June 2024. Despite having the documents that supposedly support their request for over six months, plaintiffs waited until November 15, 2024—barely a month before the December 18, 2024 substantial completion deadline—to ask Meta to apply more search terms and add more custodians.

Meta agreed to review the ~16,000 documents collected from *current* custodians that hit on plaintiffs' new terms. Meta declined to add any new custodians. Plaintiffs' argument that they could not make these requests until near the substantial completion deadline presents a false dilemma: Plaintiffs could have found a happy medium between "seriatim" and eleventh-hour requests. *Kadrey*, 2024 WL 4362744, at *1–2 ("Identifying document custodians is supposed to be one of the first things litigants do in discovery, not one of the last.").

Based on the search terms Meta has used in this litigation (including plaintiffs' new terms) and the resulting hit counts, Meta estimates that plaintiffs' request would require Meta to review a significant number of documents:

- Sandberg:  ~23,000 documents
- Lin:  ~24,000 documents
- Singhal:  ~39,500 documents
- Covey:  ~30,000 documents[2]

Requiring Meta to review more than 100,000 additional documents—on top of the ~16,000 documents Meta agreed to review—*after* Meta met the December 18 deadline would risk serious and unnecessary delay and jeopardize the April 18, 2025 fact discovery cutoff. Such a requirement would also impose a significant burden on Meta far outweighing any benefit to plaintiffs. Fed. R. Civ. P. 26(b)(1). The collection, review, production, and logging of these documents would likely

---

[1] Meta did not "pick[] the wrong custodians." *Supra* at 3. Of the custodial documents Meta has produced or logged, nearly 93% were collected from the 30 initial custodians Meta proposed or agreed to—confirming these custodians possessed responsive information.

[2] Meta's hit counts are not "inflated." *Supra* at 3. As Meta has explained to plaintiffs, Meta cannot provide deduplicated hit counts without collecting and processing the data. Further, the hit counts above are *underinclusive* because they do not include all types of custodial ESI that Meta would collect if plaintiffs' request is granted.

4

take three months to complete, diverting resources that would otherwise be devoted to other, more productive aspects of discovery.

Finally, plaintiffs' request should be denied as "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). During the relevant period, each requested custodian's responsibilities overlapped significantly with multiple custodians whose documents Meta has *already* reviewed. Like Sandberg, seven current custodians were senior executives. Dkt. 315 at 3–4. Singhal (an engineer) worked on Meta's Signals team, as did six of the nine current custodians employed as engineers, data scientists, or technical program managers. Dkt. 312-1 at 3–9. Covey supported Meta's communications, as did six other current custodians. *Id.* Lin worked as a privacy program manager, and two current custodians also held privacy-focused roles. *Id.*; Dkt. 315 at 4. Plaintiffs have failed to meet their burden to explain why they "expect to discover information from these [four] custodians that differs from discovery they have already obtained[.]" *Handloser v. HCL Am.*, No. 19-CV-01242-LHK-VKD, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (denying additional custodians).

**Sheryl Sandberg:** Plaintiffs have not shown that Sandberg is an appropriate custodian.

Three documents plaintiffs cite concern         First, plaintiffs cite an email in which Sandberg           PIXEL_HEALTH000615183. That email neither mentioned Sandberg (other than in "To" lines) nor was directed specifically to her. Instead, it was sent to sixteen Meta employees, including current custodians Mark Zuckerberg, Erin Egan, and Nissa Anklesaria.³ *Id.* Second, plaintiffs cite an email in which Anklesaria helped draft         which also does not mention Sandberg except to say she should receive         PIXEL_HEALTH000327687. Finally, plaintiffs cite an email thread in which Meta employees discussed         PIXEL_HEALTH000650129. Although         are hyperlinked in the thread, plaintiffs have not asked Meta to produce them. Dkt. 267 ¶ 1. If plaintiffs request, Meta will produce or log         if they are responsive.

The final document plaintiffs cite is a chat thread between two Meta employees about         PIXEL_HEALTH000121306. Plaintiffs mischaracterize         as concerning         [*sic*]" and cite it as a purported example of Sandberg         *Supra* at 2. In fact, the chats (1) show one employee advising that         and (2) confirm that         PIXEL_HEALTH000121306. Even assuming         was prepared and did address         this would not be a basis to designate Sandberg— who is not a         expert—as a custodian. Like         , Meta was not aware of plaintiffs' interest in         until this dispute letter. If plaintiffs request, Meta will search for and produce or log it if it is responsive.

---

³ Of the documents Meta has produced or logged that involve Sandberg, over half were collected from these three custodians, indicating they adequately cover relevant issues in which Sandberg may have been involved.

5

In sum, plaintiffs cite no evidence to support their speculation that Sandberg communicated with *any* third parties about *any* relevant issue—let alone that she did so without other Meta employees involved. Given Sandberg's public-facing role, the fact that other Meta employees often prepared her to address a wide variety of issues—▇▇▇▇▇▇▇▇▇▇—is not evidence that Sandberg has any "unique knowledge" relevant to this case. *Supra* at 1. Plaintiffs' argument amounts to "mere speculation that [Sandberg's] position as a senior executive might increase the relevance of [her] files," which "is not a basis for designating [her] as a custodian." *In re EpiPen*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018).

**Jenny Lin:** Plaintiffs claim that "Lin made critical decisions relevant to this lawsuit" yet fail to identify a single decision she made or "approved." *Supra* at 2. Plaintiffs cite an April 2017 email providing ▇▇▇▇▇▇▇▇▇▇ including one related to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ which update identified Lin as a "Privacy Program POC [point of contact]." PIXEL_HEALTH000350889 at -890. An attachment (also cited by plaintiffs) listed Lin as the Privacy Program POC and identified other POCs in Product and Legal. PIXEL_HEALTH000350893. Plaintiffs cite no evidence that Lin—who at that time had been working as a privacy program manager for only seven months—had *any* decision-making authority over *any* relevant issue. The custodian from whom these documents were collected did have such authority: Chief Privacy Officer Erin Egan, who has worked at Meta since 2011.

**Manish Singhal:** Plaintiffs' argument regarding Singhal is based solely on his purported involvement in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Supra* at 2. Plaintiffs cite a September 2022 meeting invitation regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ PIXEL_HEALTH000000719. Singhal sent the invitation to six coworkers, including custodians Tobias Wooldridge and Abhinav Anand. *Id.* A September 27, 2022 email sent to Singhal, Wooldridge, and Anand indicated ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ PIXEL_HEALTH000490121 at -122. These documents do not concern separate ▇▇▇▇▇▇ or suggest that Singhal was uniquely "responsible" for the issue. *Supra* at 2. Nor are they anomalous: Of the documents Meta has produced or logged that involve Singhal, over half were collected from fellow engineers Anand or Wooldridge, confirming that current custodians were involved in substantially the same work as Singhal.

Further, plaintiffs can inspect ▇▇▇▇▇▇▇▇▇▇ to assess Meta's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

**James Covey:** Plaintiffs rely solely on Covey's involvement in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ But Meta has produced many communications dated shortly after ▇▇▇▇ that involve Covey and relate to ▇▇▇▇▇▇▇▇▇▇ including a chat thread consistent with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that plaintiffs erroneously claim has not been produced. PIXEL_HEALTH000609651. That thread was collected from custodians Alisha Swinteck and Tom Channick, who, like Covey, support Meta's corporate communications. Of the documents Meta has produced or logged that involve Covey, over half were collected from Swinteck or Channick—demonstrating that Covey's documents are substantially duplicative.

### D.    NEED FOR A HEARING

Plaintiffs believe a hearing would be helpful in resolving the dispute.

Meta believes the parties could make progress narrowing or eliminating this dispute through further meet-and-confer discussions. But if plaintiffs are unwilling to do so, Meta believes a hearing would be helpful if the Court is inclined to entertain the relief plaintiffs are seeking, and Meta prefers an in-person hearing.

### E.   CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets forth the following dates for substantial completion of document production, fact discovery, and expert discovery:

*Parties substantially complete document production*: December 18, 2024

*Fact discovery cut-off*: April 18, 2025

*Expert discovery cut-off*: July 17, 2026

### F.   STATEMENT RE COMPLIANCE WITH STANDING ORDER

The parties met and conferred about this dispute on December 23, 2024.

*Confidential*

Dated: January 14, 2025  By: */s/ Jason 'Jay' Barnes*
　　　　　　　　　　　　　　　　　Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
　*jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:　212-784-6400
Fax:　212-213-5949


By:　*/s/ Geoffrey Graber*
　　　　Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Geoffrey Graber, State Bar No. 211547
　*ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:　202-408-4600
Fax:　202-408-4699

**KIESEL LAW LLP**

Jeffrey A. Koncius, State Bar No. 189803
　*koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:　310-854-4444
Fax:　310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**

Beth E. Terrell, State Bar No. 178181
　*bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:　206-816-6603
Fax:　206-319-5450

**GIBBS LAW GROUP LLP**

Andre M. Mura, State Bar No. 298541
　*amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:　510-350-9700

8

*Confidential*

Fax: 510-350-9701

*Attorneys for Plaintiffs and Putative Class*

Dated: January 14, 2025      By:  */s/ Lauren Goldman*
                                  Lauren Goldman

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

### CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Eric A. Kafka, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: January 14, 2025      By:  */s/ Eric A. Kafka*