1  **GIBSON, DUNN & CRUTCHER LLP**
   LAUREN R. GOLDMAN (*pro hac vice*)
2  lgoldman@gibsondunn.com
   DARCY C. HARRIS (*pro hac vice*)
3  dharris@gibsondunn.com
   200 Park Avenue
4  New York, NY 10166
   Telephone:   (212) 351-4000
5  Facsimile:   (212) 351-4035

6  ELIZABETH K. MCCLOSKEY, SBN 268184
   emccloskey@gibsondunn.com
7  ABIGAIL A. BARRERA, SBN 301746
   abarrera@gibsondunn.com
8  One Embarcadero Center, Suite 2600
   San Francisco, CA 94111
9  Telephone:   (415) 393-8200
   Facsimile:   (415) 393-8306
10
   *Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-3580-WHO (VKD)<br><br>PUTATIVE CLASS ACTION<br><br>**DECLARATION OF QIWEN ("CARROL") XIA IN SUPPORT OF META'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>CLASS ACTION<br><br>Date: February 19, 2025<br>Time: 2:00 p.m.<br>Courtroom 2<br><br>**HON. WILLIAM H. ORRICK** |
|---|---|

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

XIA DECL. ISO META'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-3580-WHO

I, Qiwen ("Carrol") Xia, declare as follows:

1. I am a Senior Data Scientist at Meta. The information in this declaration is based on my personal knowledge and discussions with relevant personnel. If called as a witness, I could competently testify to the information in this declaration.

2. I have worked at Meta as a data scientist since January 2021. My job responsibilities include, among other things, understanding and working with Meta's data systems, writing queries and conducting analyses of data within Meta's systems, researching Meta's data and related technologies, and locating, analyzing, preserving, and exporting data for production in litigation and other legal matters.

3. I understand that the plaintiffs in this case assert that various technologies offered by Meta are relevant to this litigation, including the Meta Pixel, the Facebook SDK, and Meta's Conversions API (collectively, Meta's "Business Tools").

### The "Hive" Data Warehouse

4. Meta primarily stores data in its "Hive" data warehouse, which consists of millions of individual data tables. Meta uses Hive to log data that may be used for ▮▮▮▮▮▮▮▮▮▮▮▮. Hive contains both user data and data unrelated to individual users, such as ▮▮▮▮▮▮▮▮▮▮▮▮. Data transmitted by third parties via Meta's Business Tools to Meta's servers is also stored in Hive.

5. As part of my job responsibilities, I routinely query, analyze, and export data for production from Hive, as well as undertake preservation efforts related to individual Hive tables.

6. Identifying data sources potentially relevant to a given litigation is a complicated and iterative process. Hive is not structured to allow centralized searches across an individual user's data. Nor can Meta search for a particular developer's Pixel ID and identify every Hive table in which Pixel data associated with that Pixel ID is stored. Because Meta cannot search across all of Hive at once, to determine a table's contents, Meta needs to individually analyze each table's data and/or review that table's source(s).

7. Moreover, tables can contain *many* different data fields; fields with the same names across different tables can contain different data; and fields with different names across different tables

can contain the same data. Plaintiffs, for example, have identified several Hive tables during this litigation that contain over ▓▓▓ individual data fields (for example, a table called ▓▓▓). Meta has also produced data from several voluminous tables in this case, including one table that has over ▓ fields (▓▓▓), another that has over ▓ fields (▓▓▓), and several others that have over ▓ fields (such as ▓▓▓ and ▓▓▓. It is not uncommon for data in different tables to overlap in full or in significant part. Indeed, based on queries and productions conducted for this litigation, which the parties have been calling the "Daiquery Protocol," I understand that Business Tool data may be logged in some form in hundreds or thousands of individual tables, which could overlap in substantial part.

8. In addition, Meta's data systems are dynamic. Individual tables can change at any time—data fields can be added, removed, or renamed; the data those fields contain can change; and tables can be created, combined, or discontinued as Meta's business evolves.

**Preserving Data from "Hive"**

9. I am knowledgeable about the processes Meta undertakes to preserve data stored in Hive tables.

10. As described above, ascertaining which tables and fields have unique, potentially relevant data at a specific point in time is an iterative and time-consuming process—and often requires the input of engineers who can interpret source code. While counsel can convey the types of data we need to identify for preservation, they must engage the Meta legal team to identify and coordinate with different product and engineering subject matter experts throughout Meta to try to identify individual tables that might be relevant or responsive—and then to work with those subject matter experts to understand the data contained in those tables. Because of the volume of tables at Meta, it is often time consuming to understand what a particular table does and whether the table has unique data not available elsewhere.

11. Each table in Hive has an individual retention period that dictates how long such data stays in Meta's systems in the ordinary course. That retention period can be ▓▓▓ depending on the purpose and contents of the table and/or regulatory requirements. Because the

1  identification of tables for preservation takes time, data may fall out of retention during the process
2  described above.

3        12.    Once tables are determined to contain potentially relevant and non-duplicative data, it
4  may be possible for Meta to place them on legal hold in full.  However, the feasibility of that approach
5  will depend on the type of data contained within the table, the volume of data contained in the table,
6  and how quickly it is growing.  The size of certain tables at Meta can be extraordinary and/or can grow
7  at extremely fast rates, such that placing them on hold could cause them to grow so large as to be
8  disproportionately burdensome to preserve over the life of the matter, due to storage space and other
9  limitations.

10        13.    In addition, data past normal retention in legal hold tables—and some data within
11  normal retention periods—are stored in a specialized state called "cold storage."  Data in cold storage
12  is not readily available to be queried or analyzed.  Instead, the data in cold storage resides on hard
13  drives that are reserved for bulk storage use.  To query or review the data in cold storage, a Meta
14  engineer or data scientist must first "warm up" or "restore" this data, which can be
15  burdensome.  Moreover, exporting and producing data from large Hive tables, even after warming up
16  the data, is a multi-step process that can take considerable time.

17        14.    Certain tables at Meta, like the ones at issue in plaintiffs' motion for sanctions, contain
18  data about numerous entities and topics, and so I understand that the full table will rarely be relevant
19  to a single litigation, even if a small portion of the data within it is.

20        15.    A partial solution to table preservation obstacles—including the burden of producing
21  data from a large table in cold storage—is to build what is called a "pipeline," which is a process Meta's
22  eDiscovery Data Engineering team utilizes to preserve select data from Hive tables.  Building a pipeline
23  in this context means that a Meta engineer or data scientist writes code to assist with extracting only
24  certain data—which counsel has identified as potentially relevant to litigation—from an existing table
25  to create a new table that contains only that data.  For example, an engineer could write code to query
26  a table like [redacted] to search only for a given Pixel ID, and then to copy any data that Meta
27  received (and continues to receive) relevant to that specific Pixel ID via pipelining and backfills
28  (described below).  This can make the data more usable at the production stage.  Building a pipeline

1  and backfilling to capture historical data can take weeks or months to complete, depending on the size

2  of the table and the amount of storage, compute, and human resources available. I typically engage a

3  data engineer when we need to build a pipeline for preservation.

4      16.    When Meta builds a pipeline in the ordinary course, the pipeline will often populate

5  data as it comes in on a going-forward basis, as the source receives data. But if Meta wants to capture

6  historical data, it must perform a second process called a "backfill." A backfill involves running the

7  pipeline over a designated historical date period, which may depend on the table's retention

8  setting. While backfilling allows us to capture historical data still within the retention period, it requires

9  additional time and resources to accomplish.

**Preserving Data for This Litigation**

11      17.    I understand that the first of the cases consolidated into this litigation was filed on June

12  17, 2022, and that the complaint was served on Meta on June 24, 2022.

13      18.    However, before that first case was filed, Meta had already completed a preservation

14  pipeline containing all United States data from a table called ▉▉▉▉▉▉ which was a principal

15  table that stores Pixel data. This pipeline was originally built to effectuate preservation measures

16  unrelated to claims in this case. Similarly, before this case was filed, Meta placed on hold in its entirety

17  a principal table related to offsite app event data (▉▉▉▉▉) and began logging it into cold storage,

18  again to effectuate preservation measures unrelated to claims in this case.

19      19.    As such, by the time this case was filed, Meta had already preserved ▉▉▉

20  principal sources of Pixel and app event data, which were necessarily much broader than just Pixel and

21  app event data related to "healthcare" entities.

22      20.    After further investigation, on September 29, 2022, Meta placed on hold two more

23  voluminous tables in their entirety—▉▉▉▉▉ and ▉▉▉▉▉ table ▉▉▉▉▉▉▉—

24  meaning that Meta preserved data from both going back to ▉▉▉▉. To give the Court some

25  context about the volume of data Meta preserved from one of these tables, as of March 2024, Meta's

26  ▉▉▉▉ preservation table alone contained more than ▉▉▉▉ of data—or ▉▉

█████ As a reference point, I understand that the entire Library of Congress contained 21 petabytes of digital content as of 2022.[1]

21. In January 2023, Meta determined that the tables called ████████ and ████████ potentially contained additional Pixel data related to button clicks. Meta therefore began the process of pipelining those tables in January 2023, and it completed those efforts on February 23, 2023. Meta likewise backfilled those tables to ████████ for ████████ and ████████ for ████████.

22. Meta has undertaken many other preservation efforts related to this matter. As just one example, Meta identified and preserved a table identifying which websites were classified as health-related in connection with Meta's integrity filtering process, from which I understand Meta has produced information in this litigation.

23. As plaintiffs' allegations in this case have evolved, Meta has modified its preservation efforts accordingly. On June 21, 2023, I understand that plaintiffs for the first time identified a list of Pixel IDs that they claimed to be at issue—over 1,800 Pixel IDs in total. Meta therefore undertook efforts to modify the data captured by the pipelines for this litigation to include data for any Pixel IDs from this list. As another example, on October 10, 2023, I understand that plaintiffs filed their First Amended Consolidated Complaint, which I understand included several additional named plaintiffs. Meta thus expanded its preservation to include these new individuals as plaintiffs supplied sufficient identifying information, as Meta has had to do in several different stages, as plaintiffs provided additional identifying information.

24. Meta has continued to pipeline data from the original tables it identified for preservation in this case, meaning that Meta now has preserved approximately ████ of data from ████████ and ████████ from the pipelines Meta built in early 2023.

---

[1] See Library of Congress, Frequently Asked Questions, available at https://tinyurl.com/3p77v97h (last visited Jan. 27, 2025).

**Structured Data Productions in this Case**

25.    I have been a core part of the team of data scientists and engineers involved in accomplishing the massive structured data productions Meta has made in this case. Meta has produced close to ▬▬▬ rows of event data, consisting of more than ▬▬▬.

26.    I understand that the Court in this case ordered a sampling approach for producing data from certain tables and assigned a presumptive date cutoff for certain productions.

27.    On November 1, 2024, Meta produced ▬ files containing more than ▬▬▬ rows of data that it had pipelined from ▬▬▬ (more than ▬▬▬ rows, spanning ▬▬▬) and ▬▬▬ (more than ▬▬▬ rows, spanning ▬▬▬). Meta made these productions using the list of Pixel IDs that plaintiffs claim correspond to health-related websites at issue in this case.

28.    In December 2024, Meta produced almost ▬▬▬ rows of data: more than ▬▬▬ rows of data from ▬▬▬ (spanning ▬▬▬), more than ▬▬▬ rows of data from ▬▬▬ (spanning ▬▬▬), and more than ▬▬▬ rows of data from ads_pixel_traffic (spanning ▬▬▬). Meta used the same list of Pixel IDs for these productions.

29.    These structured data productions took several months of work and involved the input of at least 10 engineers and data scientists at the company. Meta has also made several other sizable structured data productions in this case.

1   I declare under penalty of perjury that the foregoing is true and correct, and that I executed
2   this declaration on January 27, 2025, in San Mateo, CA.

3                                          *Qiwen Xia* (signature)
                                           _____
4                                          Qiwen ("Carrol") Xia

---

XIA DECL. ISO META'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS
CASE NO. 3:22-CV-3580-WHO