# EXHIBIT 3

REDACTED VERSION OF DOCUMENT
FILED UNDER SEAL

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
gibsondunn.com

Lauren Goldman
Direct: +1 212.351.2375
Fax: +1 212.716.0875
LGoldman@gibsondunn.com

May 7, 2024

CONFIDENTIAL
VIA ELECTRONIC MAIL

Jay Barnes
jaybarnes@simmonsfirm.com
Simmons Hanly Conroy LLC
112 Madison Avenue, 7th Floor
New York, NY 10016

Re:   *In re Meta Pixel Healthcare Litig.*, Case No. 3:22-cv-3580-WHO (VKD)

Counsel:

We write regarding the parties' April 26, 2024 meet-and-confer and your May 1, 2024 letter that purported to recount the topics we discussed on April 26. As explained below, your May 1 letter is not accurate in several respects, and we do not agree with your characterizations of the topics discussed on April 26.

In accordance with Judge DeMarchi's April 10, 2024 Order (Dkt. 452), Meta provided its sampling proposal to plaintiffs on April 17, 2024. Plaintiffs then provided their "counter-proposal" on April 24, 2024, in which plaintiffs reiterated their demand for all class-wide data in Meta's possession with no sampling at all. Meta does not view this as a reasonable or productive counter-proposal, and it fails to follow Judge DeMarchi's instructions that plaintiffs "cannot have everything, [and y]ou have to figure out a way to get the data that you need to make the arguments that you need." April 9, 2024 Hearing Tr. at 47:22–24.

On April 26, 2024, Meta conveyed the following information about why it would be unduly burdensome to produce all responsive class member data from the sources identified in Meta's sampling proposal.

**Burden**

As we explained during our April 24, 2024 discussion, there are significant burdens associated with producing large volumes of data, and significant burdens associated with accessing data that is currently in cold storage in order to run queries to identify potentially responsive data and extract that data for production. These are independent burdens, and both are significant here.

   Volume of Data Implicated by Plaintiffs' Requests

As we discussed on April 26, for the more than 1,800 individual pixel IDs that plaintiffs claim to be relevant, Meta estimates that, during the relevant time period, it received data pertaining to an average of ███████ events per day corresponding to these pixel IDs and U.S.-based users.

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

**GIBSON DUNN**

Jay Barnes
SIMMONS HANLY CONROY LLC
May 7, 2024
Page 2

Accordingly, barring any technical issues, Meta estimates that, under the sampling proposal Meta proposed for the tables at issue (one day of data per month), Meta will produce data associated with well over ███████ events.

In contrast, Meta estimates that plaintiffs' proposal implicates more than ███████ events for the relevant time period for which Meta has preserved potentially relevant data. Plaintiffs have provided no basis to justify why they require this much data, and it would be unduly burdensome for Meta to produce this massive volume of data.

For the named plaintiffs, Meta is offering to provide even more: in addition to the sampling proposal, we have proposed to produce all the identifiable data in Meta's pipelines corresponding to these users and the pixel IDs that plaintiffs claim to be relevant.

Plaintiffs asked about the size of data transmitted to Meta for a single event, and we explained that developers determine what data to send Meta via the Meta Pixel and other Business Tools, and thus there is likely no one set size for the data transmitted to Meta for a single event. Nonetheless, we looked into an exemplar to further illustrate the burdens at issue. Using ███████████ as an example, Meta estimates that the size of the ███████ events that Meta received on average for a single day is approximately ██████ Accordingly, under Meta's proposal, the sample of 13 days of data that it proposes to produce would be approximately ██████ of data—a very significant amount. In contrast, using these estimates, plaintiffs' proposal would require Meta to produce approximately ██████ of data. This volume of data would be extremely burdensome to produce, and plaintiffs have failed to demonstrate or articulate why the sample of data Meta proposes to produce is not sufficient for plaintiffs' needs at this stage in the case.

In addition, conventional Excel files break after 1 million rows of data, so producing a single day of data will require ████ individual Excel files. Producing 13 sample days of data will already amount to more than ████ individual files; plaintiffs' proposal would require ████████████ of large .csv data files.

    Restoring Data from Cold Storage

As we explained in our sampling proposal, three of the data sources included in Meta's sampling proposal ████████████████████████████████████████████ are being preserved, in substantial part, in cold storage. Data in cold storage is not in a format in which it can be queried or reviewed—the data must be restored in order for it to be accessible in this manner, and restoring data from cold storage is very burdensome and time-consuming. This data in cold storage is primarily partitioned by ████, and thus the only way to identify data to be restored so it can be viewed and queried is by ████████████████ It is not possible to restore ██████████ ██████████████████████████—all data being held in cold storage for a given ████

**GIBSON DUNN**

Jay Barnes
SIMMONS HANLY CONROY LLC
May 7, 2024
Page 3

must be restored, and only then can queries be run on that data to identify any potentially relevant data ▮▮▮▮▮▮.

The size of data currently in cold storage for the three tables that Meta identified for the relevant time period is as follows:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

These significant volumes underscore the burden associated with attempting to access this data in anything other than a targeted and sampled manner.

As a general rule of thumb, for data in cold storage of this volume, it takes—at a bare minimum—▮▮▮▮▮ to warm up ▮▮▮▮▮▮▮▮ data, and the time period is often longer due to additional work and complications that arise when working with large volumes of data. If Meta were to attempt to restore all available data in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮—as plaintiffs demand—it would take more than ▮▮▮▮▮▮, plus additional time that likely would be necessary given the volume of data at issue. It is not reasonable or proportionate to require Meta to undertake a process that would require multiple years to complete, just to search for potentially responsive data.

**Time Period**

You asked that we confirm the earliest date that Meta possesses data in the tables we identified in our sampling proposal. Here is the information that we conveyed on April 24, 2024 regarding the time periods for which Meta has class-wide data potentially relevant to this case associated with the following tables in the relevant time period:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

# GIBSON DUNN

Jay Barnes
SIMMONS HANLY CONROY LLC
May 7, 2024
Page 4

As Meta described during the April 24, 2024 call, Meta has created bespoke data pipelines covering five of these tables (all but ███████████), and Meta has also preserved data from ███████████████████████████████████ in cold storage.  As Meta explained, the creation of pipelines can be an iterative process depending upon the identification of potentially relevant data source IDs and the tables' retention periods.  The pipelines can expand over time as additional data source IDs are identified, and the blanket statements from your letter are thus simply inaccurate.

**Additional Tables Containing Potentially Relevant Data**

We also explained during our April 24, 2024 discussion that Meta is agreeing to produce relevant revenue data from the table ███████████████████, and Meta is agreeing to produce relevant custom audience data from the ███████████████████████████████████.  We also noted as part of this discussion that many of the fields in these tables will not be relevant.

Sincerely,

*Lauren Goldman*

Lauren Goldman

CC: All Counsel of Record