Further Proposed Redacted Version of the Motion for Sanctions Against Meta and for a Hearing to Address Relief (Dkt. 740)

Jason 'Jay' Barnes (admitted *pro hac vice*)
*jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949

Geoffrey Graber, State Bar No. 211547
*ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:    310-854-0812

Beth E. Terrell, State Bar No. 178181
*bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:    206-319-5450

*Attorneys for Plaintiffs and the Proposed Class*

Andre M. Mura, State Bar No. 298541
*amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
Fax:    510-350-9701

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | **Case No. 3:22-cv-3580-WHO (VKD)**<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF**<br><br>Date:    February 19, 2025<br>Time:    2:00 p.m.<br>Place:    Courtroom 2 – 17th Floor<br>Judge:    Hon. William H. Orrick III |

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF

1

## **NOTICE OF MOTION**

2      TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE THAT on February 19, 2025, at 2:00 p.m., or as soon thereafter

4  as the matter may be heard, before the Honorable William H. Orrick III in Courtroom 2 of the United

5  States District Court, Northern District of California, San Francisco Division, located at 450 Golden

6  Gate Avenue, San Francisco, California 94102, the Jane and John Doe Plaintiffs will, and hereby

7  do, move this Court for an order finding that Defendant spoliated data in violation of Federal Rule

8  of Civil Procedure 37(e), and for an order entering sanctions, including for the purposes of class

9  certification, summary judgment, and trial. This motion is noticed before the U.S. District Court

10 Judge because "the sanctions sought would affect decisions reserved for the consideration of the

11 District Judge." *Griffith v. TikTok, Inc.*, No. ED CV 23-964-SB(Ex), 2024 WL 4003908, at *2 (C.D.

12 Cal. Aug. 13, 2024). Plaintiffs respectfully request an in-person hearing regarding this motion,

13 including to address appropriate relief.

14      This motion is based upon this Notice of Motion; the accompanying memorandum in

15 support; the Declarations of Geoffrey Graber and Atif Hashmi; the pleadings and papers on file in

16 this action, arguments of counsel, and any other matter that the Court may properly consider.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

FACTUAL BACKGROUND ............................................................................................. 2

    I.    Plaintiffs alleged from the start that the Meta Pixel intercepts button click
information from healthcare websites. .......................................................... 2

    II.   Meta destroyed eight months of button click records. ................................. 4

    III.   Meta hid its destruction of the button click records. .................................... 6

    IV.   Meta admits it did not preserve highly relevant button click records. ...................... 8

    V.   Meta cannot restore or replace lost button click records. ........................................... 9

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT ..................................................................................................................... 10

    I.    Meta engaged in sanctionable spoliation by destroying button click records. ........ 10

        A.    Meta had a duty to preserve button-click records by June 22, 2022, at the
latest. ............................................................................................................. 10

        B.    Meta failed to take reasonable steps to preserve button click records. ....... 11

        C.    Meta destroyed eight months of button click records, and those records
cannot be restored or replaced. .................................................................... 12

    II.   Meta's destruction of button click records warrants substantial sanctions. ............. 13

        A.    Meta's spoliation prejudiced Plaintiffs and is sanctionable under Rule
37(e)(1). ......................................................................................................... 13

        B.    Meta's spoliation was intentional and thus is sanctionable under Rule
37(e)(2). ......................................................................................................... 15

    III.   Sanctions are necessary and appropriate. ................................................................. 18

CONCLUSION .................................................................................................................. 19

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A
HEARING TO ADDRESS RELIEF

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### Cases

4

*3D Sys., Inc. v. Wynne*,
   No. 21-cv-1141, 2024 WL 3896454 (S.D. Cal. Aug. 21, 2024) ............................................. 12

5

6

*Borum v. Brentwood Vill., LLC*,
   332 F.R.D. 38 (D.D.C. 2019) .................................................................................... 13, 15

7

*Burris v. JPMorgan Chase & Co.*,
   No. 21-16852, No. 22-15775, 2024 WL 1672263 (9th Cir. Apr. 18, 2024) .......................... 16

8

9

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
   No. 5:18-cv-00420, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ..................................... 16

10

11

*Culhane v. Wal-Mart Supercenter*,
   364 F. Supp. 3d 768 (E.D. Mich. 2019) ............................................................................ 16

12

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*,
   No. 22-35832, 2023 WL 6866273 (9th Cir. Oct. 18, 2023) ................................................ 10

13

14

*Doe LS 340 v. Uber Techs., Inc.*,
   710 F. Supp. 3d 794 (N.D. Cal. 2024) ............................................................................. 11

15

16

*Doe v. Cnty. of San Mateo*,
   No. 3:15-CV-05496-WHO, 2017 WL 6731649 (N.D. Cal. Dec. 29, 2017) ......................... 13

17

18

*Doe v. Wesleyan Univ.*,
   No. 3:19-cv-01519, 2022 WL 2656787 (D. Conn. July 8, 2022) ........................................ 15

19

*Facebook, Inc. v. OnlineNIC, Inc.*,
   No. 19-cv-07071, 2022 WL 2289067 (N.D. Cal. Mar. 28, 2022).......................................... 13

20

21

*Fishman v. Tiger Nat'l Gas, Inc.*,
   No. C 17-05351, 2018 WL 6068295 (N.D. Cal. Nov. 20, 2018) ............................................. 13

22

23

*Freeman v. Giuliani*,
   691 F. Supp. 3d 32 (D.D.C. 2023) .................................................................................. 13

24

*In re Google Play Store Antitrust Litig.*,
   664 F. Supp. 3d 981 (N.D. Cal. 2023) ......................................................................... 15, 19

25

26

*Griffith v. TikTok, Inc.*,
   No. ED CV 23-964-SB(Ex), 2024 WL 4003908 (C.D. Cal. Aug. 13, 2024)........................... 2

27

*Jones v. Riot Hosp. Grp.*,
   95 F.4th 730 (9th Cir. 2024) ......................................................................................... 10, 16

28

iii

*Lopez v. Apple, Inc.*,
  No. 19-cv-04577, 2024 WL 4561320 (N.D. Cal. July 17, 2024)....................................... 11, 19

*Medina v. Boeing Co.*,
  No. 8:20-cv-00304, 2022 WL 599021 (C.D. Cal. Jan. 27, 2022) ............................................. 17

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................... 3, 4, 13

*In re Napster, Inc. Copyright Litig.*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) .................................................................................. 11

*Resnik v. Coulson*,
  No. 17-cv-676, 2019 WL 2256762 (E.D.N.Y. Jan. 4, 2019) .................................................. 18

*Torres v. Prudential Fin., Inc.*,
  No. 22-cv-7465, 2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ............................................ 19

*Ungar v. City of New York*,
  329 F.R.D. 8 (E.D.N.Y. 2018) ................................................................................................ 15

*Wisk Aero LLC v. Archer Aviation Inc.*,
  No. 3:21-cv-02450-WHO, 2023 WL 2277112 (N.D. Cal. Feb. 28, 2023) ............................ 10

**Rules**

Fed. R. Civ. P. 37(e)................................................................. 1, 2, 9, 10, 13, 15, 16, 18,

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **INTRODUCTION**

For years, Defendant Meta Platforms, Inc. has used proprietary computer code—the Pixel—to surreptitiously obtain healthcare-related information about Facebook's users without their consent. The Pixel captures (among other things) data about patient portal logins and the online scheduling of medical appointments by tracking when a patient clicks buttons on certain healthcare websites. This surveillance gives Meta information it is not allowed to have, such as patient status and healthcare-related communications, in violation of federal and state law and in breach of Meta's terms of service.

To avoid accountability for these privacy intrusions, Meta destroyed critical evidence. It wiped ███████ of Pixel button click records that showed Meta had violated the privacy rights of ███████ of patients. The Federal Rules of Civil Procedure required Meta to preserve these button click records as of June 2022, when this case was filed, but Meta did not take any action to preserve this data until February 2023—*after* many hospitals had already disabled or limited the Pixel on their websites.

Meta destroyed this important evidence intentionally. Meta knew just how important, and damaging, button click records are. These records showed ███████ of violations and exposed Meta to ███████ of dollars in statutory penalties. Small wonder that the importance of button click records was apparent from day one—it was central to the reporting of journalists who broke this story, the class action complaints filed against Meta, the parties' preliminary injunction proceedings, their preservation discussions, and their discovery disputes. And there is no question that Meta had the technical ability to preserve this data. Meta falsely led Plaintiffs and the Court to believe the company was preserving all relevant button click records. Still today, Meta refuses to come to grips with the gravity of its data destruction.

Plaintiffs therefore respectfully request that the Court enter an order finding that Meta spoliated data in violation of Rule 37(e) and imposing sanctions. Plaintiffs also respectfully request an in-person hearing regarding this motion, including to address the appropriate relief. Because sanctions would impact the evidence relating to "adjudicating disputed issues on class certification,

summary judgment and at trial," the relief sought is "reserved for the consideration of the District Judge" in the first instance. *Griffith v. TikTok, Inc.*, No. ED CV 23-964-SB(Ex), 2024 WL 4003908, at *2 (C.D. Cal. Aug. 13, 2024).

## STATEMENT OF ISSUES TO BE DECIDED

Whether Meta spoliated relevant data and should be sanctioned under Rule 37(e)(1) and (e)(2) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

**I.   Plaintiffs alleged from the start that the Meta Pixel intercepts button click information from healthcare websites.**

On June 16, 2022, investigative journalists reported that the Meta Pixel was tracking patients on the websites of certain hospitals "whenever a person clicked a button to schedule a doctor's appointment."[1] The following day, on June 17, Plaintiffs filed a class action complaint on behalf of Facebook users alleging that Meta intercepts health information without authorization through the Pixel. Plaintiffs' Complaint included allegations that Meta's Pixel tracks Facebook users without their consent when they sign into a patient portal or schedule an appointment with a doctor, thereby violating Plaintiffs' privacy and violating federal and state wiretapping laws with every wrongful transmission. Compl. ¶¶ 5, 8, Dkt. 1 (referring to the "content of the button the patient clicked" through "an [] event called SubscribedButtonClick"). Plaintiffs also alleged that each violation increased Meta's exposure to monetary damages. *Id.* ¶¶ 134-36 (each login and appointment scheduling button click is an unlawfully intercepted communication under the ECPA).[2]

On August 25, 2022, Plaintiffs sought a preliminary injunction to stop Meta from intercepting communications on healthcare webpages. *See* Dkt. 46. In their motion, Plaintiffs

---

[1] Todd Feathers et al., *Facebook is Receiving Sensitive Medical Information from Hospital Websites*, The Markup (June 16, 2022), https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites. This article is hereafter referred to as "the Markup article".

[2] In this motion, Plaintiffs will refer to SubscribedButtonClick transmissions as "button click records."

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF

singled out Meta's interception of health information through button click records, which Meta defines as the collection of "any buttons clicked by site visitors, the labels of those buttons and any pages visited as a result of the button clicks." Smith Decl. ¶ 9, Dkt. 49 (citing *Meta Pixel*, Meta, https://developers.facebook.com/docs/meta-pixel/). Plaintiffs explained that when a user navigates to her patient portal and presses the "Log in" button, the Pixel captures and stores the information about that user's button click, contemporaneously re-directing that information to Meta. Dkt. 46 at 11-13. A button click record for a patient portal log-in "includes, among other things: (1) the patient's identity in the form of cookies, IP address, and User-Agent identifiers; (2) content of the button (e.g., "Log In"); (3) contents of the page from which the patient clicked to log in; and (4) content of the page the patient will land on as a result of clicking "Log In" to the patient portal." *Id* at 3.

Meta opposed the motion, arguing that "it has systems in place to address the receipt of the information at issue and that it would be unfairly burdensome and technologically infeasible for [Meta] to take further action." Dkt. 159 at 1-2. Meta also submitted sworn testimony from a high-level engineer, Tobias Wooldridge, who represented that ███████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████ Woolridge Decl. at ¶¶ 29, 52, Dkt. 142.

The Court denied the motion for preliminary injunction "based on Meta's evidence that it is doing all it can to minimize the problems raised by plaintiffs, and the need for discovery to clarify both the scope of the problems and potential solutions for them." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 790 (N.D. Cal. 2022); *see also* Dkt. 159 at 11. Notably, the Court agreed with Plaintiffs that "the Pixel sends information revealing patient status because it intercepts data relating to patient portal logins and logouts alongside identifiers for each patient." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 791. The Court reached this conclusion based on Plaintiffs' "evidence that the Pixel transmits 'the patient status of individuals logging into the 'patient portals' of their providers through click data, including the Meta Pixel 'SubscribedButtonClick' ...'" *Id.* (citing Smith Decl. ¶ 4). Based on these records, the Court determined that "the act of clicking the

3

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF

'Log in' button, when coupled with the MedStar Health patient portal URL and the other information transmitted by the Pixel, sufficiently identifies the website user as a patient." *Id.* at 792. The Court also found that "Meta's policies do not . . . specifically indicate that Meta may acquire *health data* obtained from Facebook users' interactions with their *medical providers websites*" and, therefore, Meta's "generalized notice is not sufficient to establish consent" for the conduct alleged. *Id.* at 793 (emphasis in original).

## II.    Meta destroyed eight months of button click records.

In its normal course of business, Meta stores Pixel data in tables, each with a specific retention period. Ex. 1, May 18, 2023 Letter from Lauren Goldman.[3] After the retention period expires, the data in the table is automatically deleted.  By placing a litigation hold on a data table, Meta can suspend the deletion of the data in the table and preserve the table's existing data and any data collected in the future. *Id.*

Button click records are stored in two tables. The first is a data table ███ named ████████████, which has a retention period of ██████. Declaration of Atif Hashmi ("Hashmi Decl."), at ¶ 6; *see also* Ex. 2 (PIXEL_HEALTH000106780). Meta admits it failed to preserve the data in the ████████████ table reflecting transmissions that occurred before ████████ ███ *See* Ex. 3 (Meta's 2d Suppl. Resp. to Pls.' RFAs, No. 14 at 14); Declaration of Qiwen (Carrol) Xia ("Xia Decl.") at ¶ 6, Dkt. 495-8. Given the ████ retention period, this means that Meta did not implement a litigation hold on the ████████████ table until February 24, 2023, which is more than eight months after the first complaint was filed.

The second table that stores button click records is ████████████████ which has a retention period of █████ Hashmi Decl. at ¶ 7; Ex. 4 (PIXEL_HEALTH000000057). Meta also did not preserve data in the ████████████ table for transmissions that occurred before ████████████ *See* Xia Decl. at ¶ 6, Dkt. 495-8; Ex. 5 (Meta's 1st Suppl. Resp. to Pls.' RFAs, No. 39 at 58-60). Based on the █████ retention period for the ████████████ table, that means Meta did not place a litigation hold on the ████████████ table until February 27,

---

[3] Unless otherwise noted, exhibits are attached to the Declaration of Geoffrey Graber.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF

1  2023, or three days after it started preserving the ███████ table.

2       Unlike ███████ and ███████ Meta began preserving four *other*

3  data tables—███████—on or before July 12, 2022, which is less than a month

4  after Plaintiffs filed their complaint. Xia Decl. at ¶ 6, Dkt. 495-8 (identifying first day that Meta

5  possesses data from ███████ and ███████).

6       Internal communications produced by Meta confirm the company understood that button

7  click records were highly relevant evidence that needed to be preserved. *See* Ex. 6

8  (PIXEL_HEALTH000532571 at -573) ███████

9  ███████

10  ███████)). Indeed, these communications show that

11  Meta knew where the relevant button click records were stored—and that those locations were

12  ███████ the four tables that Meta more promptly preserved. For example, on June 28, 2022,

13  Mr. Wooldridge sent an engineer a hyperlink to an article referencing core facts of this case, titled

14  "Facebook is Receiving Sensitive Medical Information from Hospital Websites,"[4] immediately after

15  sending ███████

16  ███████ Ex. 7 (PIXEL_HEALTH000109588-89);

17  *see also* Ex. 8 (PIXEL_HEALTH000291310) (instructions to engineering team in June 2022 to

18  ███████). Mr.

19  Wooldridge is also the author of a document from October 2020 where he explains that

20  ███████

21  ███████

22  Ex. 9 (PIXEL_HEALTH000288627).

23       On September 23, 2022, a few months after Plaintiffs filed this lawsuit, Meta engineer

24  Manish Singhal scheduled a meeting and sent an associated email to Mr. Wooldridge and five other

25  engineers with the subject line, ███████ stating

26  that button click records ███████ providing a hyperlink to the

27  _____

28  [4] The article Mr. Woolridge sent to his colleague is Feathers, *supra* note 1.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF

1    Markup article, and commenting, ████████████████████████████████████

2    ███████████████████████████████████████████████████████████████████

3    ██████████████████████ Ex. 10 (PIXEL_HEALTH000000719). On September 28,

4    2022, Mr. Singhal created a ████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████████████████

7    ██████████ Ex. 11 (PIXEL_HEALTH000490121).

8            If Meta had preserved the ████████████ table when the complaint was filed on June

9    17, 2022, it would have preserved button click records extending back ██████ earlier, to ████

10   ████

11   **III.     Meta hid its destruction of the button click records.**

12           For nearly two years Meta misled Plaintiffs and the Court about its failure to preserve the

13   button click records. In January 2023, Plaintiffs proposed in a case management statement that the

14   parties make written disclosures regarding preservation. Dkt. 167 at 3. Meta refused, telling

15   Plaintiffs that it was properly preserving the data and insisting that "written disclosures regarding

16   preservation and ESI are inappropriate and unreasonable." *Id.* at 3. Meta reassured the Court that it

17   was aware of its obligations and was "taking reasonable steps to comply with its evidence

18   preservation obligations under the Federal Rules of Civil Procedure, including the rules governing

19   electronic discovery." *Id*. Plaintiffs asked the Court to weigh in. The Court accepted Meta's

20   assurances but cautioned Meta that "if things aren't done properly, there will be spoliation

21   consequences and—and I'm sure the Defendants are well aware of that." Ex. 12 (Jan. 17, 2023 Hr'g

22   Tr. at 3:24-4:4).

23           It was not until over a month after that hearing, on February 24, 2023, that Meta began

24   preserving button click records for the first time. Meta not only failed to disclose its failure to timely

25   preserve the records, it sought the Court's retroactive blessing for its blanket destruction of broad

26   categories of unspecified data. On March 7, 2023, Plaintiffs warned the Court that Meta had asked

27   for "an ESI Protocol that permit[ted] it to categorically stop preserving more than a dozen broad,

28   undefined categories of relevant documents." Dkt. 191 at 12. Because Meta's request was so vaguely

1    defined, Meta's proposal could have been construed to allow for the destruction of button click

2    records. *See id.* The categories in Meta's request included "server, system, or network logs" and

3    "[d]ynamic fields in databases or log files not stored or retained in the ordinary course of business."

4    *Id.* at 12. Plaintiffs opposed this request. Judge Virginia K. DeMarchi recognized the potential

5    consequences of allowing Meta to destroy these records and agreed with Plaintiffs, stating that she

6    would "decline[] to enter an order affirmatively relieving Meta (or any party) of whatever

7    obligations it may otherwise have to preserve the specific data sources." Dkt. 253 at 2.

8         In April 2023, Judge DeMarchi reiterated the Court's prior warning to Meta regarding its

9    preservation obligations: "[I]t appears you are [on notice] of what Plaintiffs are seeking" so "this

10   will look very bad, as Judge Orrick highlighted for you, if there's, you know, a question about

11   preservation later." Ex. 13 (Apr. 20, 2023 Hr'g Tr. at 61:8-10). At that point, Meta knew it had

12   destroyed eight months of button click records, including all ███████████ button click records, but

13   said nothing to Judge DeMarchi or to Plaintiffs.

14        On May 1, 2023, Meta once again acknowledged the relevance of the button click records.

15   Meta asked Judge DeMarchi to limit discovery to "patient portals or similar features," such as a

16   "function to schedule appointments without entering credentials." Dkt. 222 at 1, 6 (internal

17   quotation marks omitted). Both patient portal log-ins and medical appointment scheduling are stored

18   in button click records. ████████████████████████████████████ Based on Meta's

19   proposed limitation, the only relevant intercepted data would have been in button click records.

20   Judge DeMarchi rejected Meta's proposed limitation. Dkt. 277.

21        On May 18, 2023, Meta again assured Plaintiffs that it had "undertaken extensive, time-

22   consuming, manual processes to preserve data from the structured warehouse sources that contain

23   data transmitted by third parties to Meta via the Meta Pixel (the "Pixel")." Ex. 1, May 18, 2023

24   Letter from Lauren Goldman at 1-2. Meta affirmatively represented that:

25        Hive tables are the primary storage location for data that Meta receives from third
          parties via the Pixel. Accordingly, Meta has undertaken a process to preserve relevant
26        data stored in Hive tables . . . . Based on its knowledge of the data within its system
          and its understanding of the data issue here, Meta identified the Hive tables with
27        information potentially relevant to this litigation.

28   *Id.* The ████████████ and ████████████████ tables are both Hive tables. Meta

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A
HEARING TO ADDRESS RELIEF

1  emphasized the importance of the Hive table data, but hid from Plaintiffs that it had failed to preserve

2  data in the two Hive tables with button click records ████████████████████████████████████

3  ████

4  **IV.    Meta admits it did not preserve highly relevant button click records.**

5       In March 2024, the parties briefed which structured data sources Meta should produce data

6  from—including tables—and which sources (if any) should be sampled. *See* Dkt. 430, 434, 438.

7  Meta agreed that the ████████████ table that stores button click records contained relevant,

8  non-duplicative data, but objected to the burden of producing all the data it possessed in the table.

9  Dkt. 452 at 2 n.1. On April 10, Judge DeMarchi ordered the parties to confer and ordered Meta to

10  explain to Plaintiffs the nature and extent of its burden in producing data from specific data tables,

11  including ██████████ which contains button click records. *Id.* at 1.

12       During the meet-and-confer on April 26, 2024, Meta's counsel revealed that the earliest date

13  that Meta possesses data from the ██████████ table is ██████████ and the earliest

14  date that Meta possesses data from the ██████████ table is ██████████ *See* Ex.

15  15, (May 1, 2024 Letter from Geoff Graber) at 3. As noted above, Meta later filed a declaration

16  from a Meta employee confirming these dates. *See* Xia Decl. at ¶ 6, Dkt. 495-8.

17       On July 12, 2024, Meta agreed to produce all data *that it possesses* associated with U.S.

18  users for the agreed upon Pixel IDs for the ██████████ and ██████████ tables.

19  Dkt. 545. That same day, Plaintiffs served four Requests for Admission regarding Meta's

20  preservation of button click records. *See* Ex. 16 (Pls.' 1st Set of RFAs, Nos. 1-3 at 5, No. 14 at 7).

21  Meta responded with objections and evasive answers. *See* Ex. 17, (Meta's Resp. to Pls.' RFAs) and

22  Ex. 5 (Meta's 1st Suppl. Resp. to Pls.' RFAs)

23       It took three more months for Meta to finally admit in its RFA responses that it failed to

24  preserve the button click records. Meta admitted that it did not preserve data from the

25  ██████████ table before ██████████ *See* Ex. 3 (Meta's 2d Suppl. Resp. to Pls.'

26  RFAs, No. 14 at 14) (admitting that it only "preserved and maintains data specifically from the

27  ██████████ table dating back to ██████████ Meta further admitted that it does

28  not have replacement button click records for ██████████ transmissions. *See id.*, No. 1 at 6, No.

1  2 at 8, No. 3 at 11 (Meta "has not preserved or otherwise identified or maintained in Meta's systems

2  event-level [button click records] . . . which occurred before ███████████" for any individuals,

3  including named plaintiffs and members of the putative class.).

4  **V.    Meta cannot restore or replace lost button click records.**

5         Plaintiffs' source code expert Dr. Hashmi has confirmed that Meta cannot restore or replace

6  the ██████████████ and ████████████████ data with data from other tables. Dr. Hashmi

7  searched the source code for tables with retention periods of ██████████████ Hashmi Decl. at

8  ¶¶ 12-13, 16-17, 20-23. Based on his review of Meta's source code, Dr. Hashmi found:

9         ██████ of Meta's tables that contain the relevant Button Click Data, including data
   related to the [button click records], have retention periods of ████████████ Given
10  that it is now December 2024, Meta does not possess and cannot restore the [button
    click records] for button click events that occurred before ███████████████and is
11  the   same   as   the   data   stored   within   the   ██████████████   and   the
    ████████████████ tables.
12

13  *Id*. at ¶ 24.

14         On November 8, 2024, Plaintiffs met-and-conferred with Meta regarding this spoliation

15  motion, and asked Meta if it had identified any method to restore the lost button click records. Meta

16  did not deny that it deleted the data. Instead, Meta's only proposal was to use the ███████████

17  table as a replacement. But this is unworkable for several reasons. First, the ████████ table is

18  only preserved going back to ██████ not ██████████ Xia Decl. at ¶ 6, Dkt. 495-8. Second,

19  and more troubling, the ██████████ table only includes ████████ button click records. Hashmi

20  Decl. at ¶ 25 ("[F]or all such █████████████ events, the ███████████████ fields are set to

21  ████████ indicating that the data corresponding to the event was █████████████████."). 

22  And, when a button click is ██████████████████ the record in the ████████████ table does

23  not contain the ███████ or the ██████████ Hashmi Decl. at ¶ 27. Thus, when a button click is

24  ████████████████████ the ██████████ table lacks the essential information contained in a

25  button click record: neither the ████████████████████ nor the ███████████████████████

26  appear in the ████████████████ . *Id*. ¶ 27.

27                          **LEGAL STANDARD**

28         Rule 37(e) authorizes sanctions when ESI "that should have been preserved in the

9                                    Case No. 3:22-cv-3580-WHO (VKD)

anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The Court may "order measures no greater than necessary to cure the prejudice" in the case of negligent spoliation, *see* Fed. R. Civ. P. 37(e)(1), or, upon a finding of intent, may issue more severe sanctions, *see* Fed. R. Civ. P. 37(e)(2).

Under Rule 37(e)(1)), if the district court "find[s] prejudice to another party from the loss of the information," it "may order measures no greater than necessary to cure the prejudice." Under Rule 37(e)(2), "If the court further finds that a party 'acted with the intent to deprive another party of the information's use in the litigation,' the court may impose additional sanctions, including presuming the lost information was unfavorable to that party, instructing the jury that it may or must presume the information was unfavorable to that party, or dismissing the action or entering a default judgment." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-cv-02450-WHO, 2023 WL 2277112, at *3 (N.D. Cal. Feb. 28, 2023) (quoting Fed. R. Civ. P. 37(e)(2)). Subdivision (e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information." Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment; *see Jones v. Riot Hosp. Grp.*, 95 F.4th 730, 736 (9th Cir. 2024) (prejudice is not a "prerequisite to sanctions" under Rule 37(e)(2)).

## ARGUMENT

### I.    Meta engaged in sanctionable spoliation by destroying button click records.

Meta violated Rule 37(e) and prejudiced Plaintiffs by intentionally destroying button click records and misleading Plaintiffs and the Court about its destruction of this evidence.

#### A.  Meta had a duty to preserve button-click records by June 22, 2022, at the latest.

Meta's duty to preserve the button click records arose when it had "some notice" they would be "potentially relevant to the litigation." *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 22-35832, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). That was on June 17, 2022, when Meta employees were notified of this lawsuit the same day that it was filed. *See* Ex. 18 (PIXEL_HEALTH000335197). But "at the latest," Meta's preservation duty arose a week later

1  "when it was served with Plaintiffs' complaint." *Lopez v. Apple, Inc.*, No. 19-cv-04577, 2024 WL

2  4561320, at *6 (N.D. Cal. July 17, 2024); *see also* Dkt. 18. Button click records are expressly

3  referenced on page two of Plaintiffs' complaint as the means by which the Pixel sent a patient portal

4  login to Meta. *See* Dkt. 1 at ¶ 5.

5       Meta's own internal communications show it clearly understood that button click records

6  are a core source of relevant data in this case. Shortly after the case was filed, Mr. Wooldridge

7  instructed Meta engineers to use the ███████████ table to █████████████████

8  ██████████████████████ then, on November 23, 2022, he addressed button click records

9  in the declaration Meta filed in support of its Opposition to Plaintiffs' Motion for a Preliminary

10 Injunction, stating that ████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 . . .." Dkt. 142 at ¶¶ 29, 52. Meta nonetheless continued to destroy button click records for eight

14 months after learning of this lawsuit, and for more than three months after Mr. Wooldridge told the

15 Court that Meta was ██████████████████████████████████████████

16 ██████████

17       **B.  Meta failed to take reasonable steps to preserve button click records.**

18       Meta was required to suspend its routine retention policy, and to stop deleting button click

19 records on a rolling ██████ basis as soon as it had some notice of this litigation. "[O]nce a party

20 reasonably anticipates litigation, it must suspend its routine document retention/destruction policy

21 and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Doe LS 340 v.*

22 *Uber Techs., Inc.*, 710 F. Supp. 3d 794, 801 (N.D. Cal. 2024) (quoting *In re Napster, Inc. Copyright*

23 *Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006)); *see also Lopez*, 2024 WL 4561320, at *6

24 ("once a party's duty to preserve takes effect, that party is 'required to suspend any existing policies

25 related to deleting or destroying files and preserve all relevant documents related to the litigation'"

26 (citation omitted)); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1070.

27       Despite its preservation obligations, Meta did not suspend its routine document

28 retention/destruction policy for the ██████████ table until February 2023. Had Meta

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A
HEARING TO ADDRESS RELIEF

1    preserved the ████████████ table when the complaint was filed in June 2022, Meta would

2    have retained button click records starting ██████ earlier, starting ██████████. *See* Hashmi

3    Decl. at ¶ 6 (██████████ table has ████ retention period). Instead, Meta took no action to

4    preserve button click records until February 2023, thus only preserving data going back to

5    ████████████ after many hospitals had already limited or disabled the Pixel on their

6    websites. Meta also did not preserve data in the ████████████ table for transmissions that

7    occurred before ███████████ Xia Decl. at ¶ 6, Dkt. 495-8; Ex. 5 (Meta's 1st Suppl. Resp. to

8    Pls. RFAs, No. 39 at 59).

**C.  Meta destroyed eight months of button click records, and those records cannot be restored or replaced.**

11    Meta has admitted, through a sworn declaration and in response to a Request for Admission,

12    that it deleted the data in the ████████████ table for transmissions that occurred before

13    ███████████ *See* Xia Decl. at ¶ 6, Dkt. 495-8; Ex. 3 (Meta's 2d Suppl. Resp. to Pls. RFAs,

14    No. 14 at 14). And Meta likewise admitted in RFA responses that "it has not preserved or otherwise

15    identified or maintained in Meta's systems event-level [button click]" transmissions "which

16    occurred before ███████████████████████████) for any individuals, including

17    named plaintiffs and members of the putative class. *See* Ex. 3 (Meta's 2d Suppl. Resp. to Pls. RFAs,

18    No. 1 at 6, No. 2 at 8, No. 3 at 11).

19    This destroyed data "cannot be restored or replaced through additional discovery." Fed. R.

20    Civ. P. 37(e). Dr. Hashmi has concluded that "Meta does not possess and cannot restore the [button

21    click records] for button click events that occurred before ███████████ and is the same as

22    the data stored within the ███████████ and the ███████████ tables." Hashmi

23    Decl. at ¶ 24.

24    The ██████████ data—the only supposed replacement that Meta has identified—is not

25    "precisely the same data." *3D Sys., Inc. v. Wynne*, No. 21-cv-1141, 2024 WL 3896454, at *6 (S.D.

26    Cal. Aug. 21, 2024). Far from it. As explained above, ███████████ data only includes ████████

27    button click records—and button clicks ███████████████ are worthless because they do

28    not reflect either the ███████████████████████. Hashmi

1   Decl. at ¶ 27. Furthermore, the ███████████ table is only preserved going back to ███████████

2   not ███████████ Xia Decl. at ¶ 6, Dkt. 495-8.

3       Meta is simply unable to show how the lost evidence can be restored. *See Fishman v. Tiger*

4   *Nat'l Gas, Inc.*, No. C 17-05351, 2018 WL 6068295, at *4–5 (N.D. Cal. Nov. 20, 2018) ("This order

5   rejects Tiger's argument that plaintiffs have failed to show that these recordings 'cannot be restored

6   or replaced through additional discovery,' as Tiger offers no suggestions as to an evidentiary

7   substitute.") (citing Fed. R. Civ. P. 37(e)); *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 58 (D.D.C.

8   2023) (deeming relevant information "irretrievably lost" where defendant had not "shown that any

9   of his potentially responsive ESI . . . can be retrieved through alternative means").

10  **II.    Meta's destruction of button click records warrants substantial sanctions.**

11      Meta's apparent conscious disregard of its obligation to preserve potentially relevant

12  evidence merits sanctions under Rule 37(e).

13      **A.    Meta's spoliation prejudiced Plaintiffs and is sanctionable under Rule 37(e)(1).**

14      Meta's conduct is sanctionable under Rule 37(e)(1) because, as discussed, Meta "failed to

15  take reasonable steps to preserve" button click records and those records "cannot be restored or

16  replaced through additional discovery," resulting in prejudice to Plaintiffs. Fed. R. Civ. P. 37(e);

17  *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019) (Rule 37(e)(1) satisfied where

18  some ESI is "irremediably lost").

19      "The prejudice inquiry looks to whether [Meta's] actions impaired [Plaintiffs'] ability to go

20  to trial or threatened to interfere with the rightful decision of the case." *Doe v. Cnty. of San Mateo*,

21  No. 3:15-CV-05496-WHO, 2017 WL 6731649, at *10 (N.D. Cal. Dec. 29, 2017) (quoting *Leon v.*

22  *IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)). "Courts in the Ninth Circuit have found

23  prejudice where another party's failure to produce documents forced the non-spoliating party to

24  'rely on incomplete and spotty evidence.'" *Facebook, Inc. v. OnlineNIC, Inc.*, No. 19-cv-07071,

25  2022 WL 2289067, at *10 (N.D. Cal. Mar. 28, 2022) (quoting *Anheuser-Busch, Inc. v. Natural*

26  *Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995)).

27      The prejudice to Plaintiffs is substantial. As this Court already found, button click records

28  "transmit[] information showing patient status." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A
HEARING TO ADDRESS RELIEF

1    at 791. The destroyed button click records are thus proof of ███████ of privacy violations. They

2    would have identified the alleged victims, and each person identified arguably would have been

3    entitled to monetary relief for each violation. By destroying this evidence, Meta has forced Plaintiffs

4    to rely on incomplete data at class certification, summary judgment, and trial.

5          The prejudice will be felt at the very next stage of this case—class certification. This is

6    apparent in two ways. *First*, the button click records are the only way that Meta can identify which

7    buttons on healthcare provider websites transmitted data to Meta through the Pixel. Meta has

8    repeatedly told Plaintiffs that it does not have separate records that can identify which URLs/buttons

9    the Pixel was deployed on and when. *See* Dkt. 223 at 6-7. Had Meta preserved the button click

10   records, Plaintiffs could use that data to identify the full scope of healthcare provider buttons on

11   healthcare provider websites for which the Pixel transmitted data to Meta between ███████████

12   ███████████████████ Now, Plaintiffs will be forced to rely on incomplete evidence from publicly

13   available sources to identify which buttons transmitted data to Meta through the Pixel before

14   ███████████████

15         Meta's deletion of this evidence is especially prejudicial because many healthcare providers

16   removed the Pixel from their websites or limited its use after Plaintiffs filed their complaint in June

17   2022. Journalists investigating the Pixel identified 33 hospitals that had the Pixel on their

18   appointment scheduling page as of June 15, 2022;[5] by September 15, 2022, they found that 85% of

19   the identified hospitals, or 28 of 33, "ha[d] removed the Meta Pixel from their doctor booking pages

20   or blocked it from sending patient information to [Meta]."[6] Meta employees themselves discussed

21   throughout July and August 2022 that many healthcare providers were removing their Pixels. *See*,

22   *e.g.,* Ex. 19 (PIXEL_HEALTH000639057) ("[S]ome clients have begun removing their Pixel due

23   to these perceived data concerns."); Ex. 20 (PIXEL_HEALTH000084354) ("Has anyone had a good

---

25   [5] Feathers, *supra* note 1.

26   [6] Todd Feathers & Simon Fondrie-Teitler, *Meta Faces Mounting Questions from Congress on*
27   *Health Data Privacy As Hospitals Remove Facebook Tracker*, The Markup (Sept. 19, 2022),
     https://themarkup.org/pixel-hunt/2022/09/19/meta-faces-mounting-questions-from-congress-on-
28   health-data-privacy-as-hospitals-remove-facebook-tracker

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A
HEARING TO ADDRESS RELIEF

1    ██████████████████████████████████████████████████████ When

2    Meta finally began preserving the button click records in February 2023, a substantial amount of

3    information was already lost—as Meta clearly knew. Had Meta preserved the button click records,

4    Plaintiffs would have had a record of all buttons operative on healthcare providers' patient portal

5    and appointment scheduling webpages for ███████ prior to the filing of the complaint and the

6    publication of the Markup article. By Meta's own admission, it has destroyed those records.

7         *Second*, Meta will undoubtedly argue that the proposed class is not ascertainable and should

8    not be certified. *See* Gibson, Dunn, & Crutcher LLP, *Emerging Issues and Trends in Class Actions*,

9    Gibson Dunn (Dec. 28, 2023), https://www.gibsondunn.com/emerging-issues-and-trends-in-class-

10   actions-three-splits-and-four-issues-on-horizon-for-2024/ (Gibson Dunn client alert advising that

11   defendants raise ascertainability as a defense to class certification). Meta's document destruction

12   deprives Plaintiffs of the ability to identify class members using Meta's own button click records

13   for pre-███████████ transmissions.

14        For these reasons, Meta's destruction of this evidence prejudices Plaintiffs and is

15   sanctionable under Rule 37(e)(1).

16   **B. Meta's spoliation was intentional and thus is sanctionable under Rule 37(e)(2).**

17        Meta's spoliation is also sanctionable under Rule 37(e)(2) because Meta's conduct reflects

18   the requisite intent to deprive Plaintiffs of relevant ESI. "[A] party's conscious dereliction of a

19   known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted

20   with the intent to deprive another party of the information's use' under Rule 37(e)(2)." *Ungar v.

21   City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) (citing cases). In other words, "whether the

22   spoliator affirmatively destroys the data, or passively allows it to be lost, that party may be

23   sanctioned for the spoliation of evidence" under Rule 37(e)(2). *Doe v. Wesleyan Univ.*, No. 3:19-

24   cv-01519 , 2022 WL 2656787, at *15 (D. Conn. July 8, 2022). Upon a finding of intent, "no separate

25   showing of prejudice is required because 'the finding of intent . . . can support . . . an inference that

26   the opposing party was prejudiced by the loss of information.'" *Borum*, 332 F.R.D. at 48 (quoting

27   Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment); *accord In re Google Play

28   Store Antitrust Litig.*, 664 F. Supp. 3d 981, 994 (N.D. Cal. 2023).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A
HEARING TO ADDRESS RELIEF

"Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Jones*, 95 F.4th at 735. Courts find a variety of circumstantial evidence probative of intent, including "the timing of the destruction, affirmative steps taken to delete the evidence, and selective preservation." *Id.* at 735; *see also Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 5:18-cv-00420, 2020 WL 1496444, at *9-10 (C.D. Cal. Feb. 27, 2020) ("Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence," especially where that party is a "sophisticated party who had the assistance of experienced civil litigation counsel."), *report and recommendation adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020). The preservation of some sources of information but not others around the same time is evidence of intentional destruction. *Jones*, 95 F.4th at 736;[7] *see also Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773 (E.D. Mich. 2019) (finding intent where the destroying party "had notice as to the importance of preserving" the lost data, and made a "choice to preserve *some but not all* pertinent [] evidence") **(emphasis in original)**. The Ninth Circuit recently recognized that "obfuscatory actions" are relevant to a defendant's "intent to deprive [the other party] of potentially relevant ESI." *Burris v. JPMorgan Chase & Co.*, No. 21-16852, No. 22-15775, 2024 WL 1672263, at *2 (9th Cir. Apr. 18, 2024).

Meta's selective preservation, timing of destruction, potential motivation for destruction, and subsequent obfuscation show that Meta acted with intent to destroy the button click records. Meta selectively preserved earlier data only for Pixel transmissions that Meta contends are not legally relevant to this case, while allowing data it knew to be critical to be destroyed. Specifically, Meta is producing data from six tables that reflect data intercepted by Meta's Collection Tools (including the Pixel). Dkt. 452 at 2 n.1. Of these six tables, only two tables— ██████████ and ███████████████—contain button click records for ███████████ events. Yet Meta

---

[7] In response to the defendant's argument that she had produced "thousands" of documents, the Ninth Circuit noted that the "production of some evidence does not excuse destruction of other relevant evidence." *Jones*, 95 F.4th at 736.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF

1    began preserving the *other* four data tables—███████████████—on or before July 12,

2    2022, which is less than a month after Plaintiffs filed their complaint. Xia Decl. at ¶ 6, Dkt. 495-8,

3    Meta then waited seven more months, until February 24, 2023, to implement a litigation hold on the

4    ████████████ table. At the same time, Meta's position was that the only legally relevant Pixel

5    transmissions are patient portal logins and appointment scheduling functions, ██████████████

6    ████████████████████. Dkt. 222 at 5.

7         The timing of Meta's preservation of button click records is also evidence of intent. From

8    the inception of this case, Meta, a sophisticated party represented by sophisticated counsel, was on

9    notice—repeatedly—of the importance of the button click records. *See, e.g.*, Compl. ¶ 5, Dkt. 1;

10   Dkt. 46 (Pls.' Prelim. Inj. Mot.); Dkt. 142 at ¶¶ 28-30, 52 (Wooldridge Decl.). However, Meta

11   delayed preserving this evidence until after many healthcare providers had removed the Pixel or

12   limited its use, drastically limiting the available button click record evidence on the scope of its

13   collection of health data.

14        Meta's "motive" is also relevant to whether to impose sanctions and which sanctions are

15   appropriate. *See*, *e.g.*, *Medina v. Boeing Co*., No. 8:20-cv-00304, 2022 WL 599021, at *2 (C.D. Cal.

16   Jan. 27, 2022). Meta appears to have sought to absolve itself from ████████ if not ████████ of dollars

17   in financial exposure by erasing the button click records. Meta engineers, including Mr. Wooldridge,

18   discussed the button click records internally immediately after Plaintiffs filed their complaint and

19   for several months afterward, acknowledging the potential financial "consequences" to Meta of

20   █████████████████████████████████████████ *See* Exs. 6-11. Meta's motives are

21   easy to ascertain and difficult to explain.

22        Furthermore, Meta obfuscated that it had destroyed the button click records for more than a

23   year after it knew of their critical relevance to this case, seeking permission from the Court to delete

24   data, which the Court denied (Dkt. 191 at 12; Dkt. 253 at 2), while representing to the Court that it

25   was complying with its preservation obligations in this case. *See* Ex. 12 (Jan. 17, 2023 Hr'g Tr. at

26   3:24-4:5).

27        It is evident that Meta knew the button click records are highly relevant and constituted a

28   serious liability risk. Consequently, whether the Court holds that Meta affirmatively destroyed

17                                    Case No. 3:22-cv-3580-WHO (VKD)

1  button click records, or passively allowed them to be lost, the result is the same—Meta should be

2  sanctioned under Rule 37(e)(2).

3  **III.    Sanctions are necessary and appropriate.**

4      Sanctions are needed to cure the prejudice to Plaintiffs and the putative class members

5  resulting from Meta's destruction of button click records. This Court has broad discretion to order

6  sanctions upon finding that Meta has spoliated ESI in violation of Rule 37(e)(1) and (e)(2).

7      *First*, the Court should deem that the Pixel transmitted button click records for patient portal

8  logins and medical appointment scheduling functions to Meta between ███████████

9  ███████████, for ***any*** healthcare provider that had the Pixel on its website during that time

10 period. This is the same type of sanction that the court granted in *Resnik v. Coulson*, No. 17-cv-676,

11 2019 WL 2256762, at *16 (E.D.N.Y. Jan. 4, 2019), *report and recommendation adopted*, 2019 WL

12 1434051 (E.D.N.Y. Mar. 30, 2019). In *Resnik* the defendant failed to preserve evidence relevant to

13 his use of spyware to surveil the plaintiff and the court ordered that the "defendant be deemed to

14 have installed and used spyware on [plaintiff's] telephone from on or about October 6, 2014, to on

15 or about October 31, 2014. *Id.* A sanction like this would be appropriate because Meta has stated it

16 cannot identify what buttons existed on healthcare provider websites without the button click

17 records. Indeed, Meta has repeatedly told Plaintiffs that it does not have separate records that can

18 identify which URLs/buttons the Pixel was deployed on and when. *See* Dkt. 223 at 6-7. Thus,

19 without this sanction, it appears that Plaintiffs would have to rely solely on incomplete evidence

20 from publicly available sources to identify which buttons transmitted data to Meta through the Pixel

21 prior to ███████████ Meta cannot be permitted to reduce the size of the class through the

22 deletion of data.

23     *Second*, the Court should deem that any named Plaintiff or putative class member who

24 visited a healthcare provider website that had the Pixel between ███████████

25 ███ had a button click (through a patient portal log-in or medical appointment scheduling)

26 transmitted to Meta, and that their transmission record was stored in the ███████ and

27 ███████████ tables. This sanction would partially cure the prejudice arising from the

28 destroyed button click records, since those records would have been "'capable of showing' which

Case No. 3:22-cv-3580-WHO (VKD)
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A
HEARING TO ADDRESS RELIEF

1   individuals [signed in to a patient portal or requested an appointment] and had their communication

2   intercepted," and they could have been used for class certification. *Torres v. Prudential Fin., Inc.*,

3   No. 22-cv-7465, 2024 WL 4894289, at \*9 (N.D. Cal. Nov. 26, 2024). It is a narrower version of the

4   sanction imposed in *Lopez v. Apple*, where Apple deleted Siri data that reflected Apple's privacy

5   violations and the court held that "Apple should be precluded from affirmatively arguing or

6   otherwise using Plaintiffs' failure to make certain showings that they could have made if they had

7   access to the deleted Siri data." 2024 WL 4561320, at \*9. Meta should similarly be precluded from

8   contesting class certification based on the absence of data it spoliated.

9       *Finally*, the Court may craft additional relief (including at Plaintiffs' request) now or at later

10  stages of the litigation, including at class certification, summary judgment, and trial. *See Lopez*,

11  2024 WL 4561320, at \*9; *see also In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981

12  (N.D. Cal. 2023) (discussing hearings on remedies after finding spoliation). Meta's intentional and

13  prejudicial destruction of important records may require even stronger medicine as this case

14  advances to class certification or the merits stage, notwithstanding that Plaintiffs have compelling

15  classwide evidence that Meta violated federal and state law, and should be held liable for classwide

16  damages and permanently enjoined.

17                                   **CONCLUSION**

18      For the foregoing reasons, Plaintiffs ask the Court to find that Meta violated Rule 37(e) and

19  impose appropriate sanctions.

20
    Dated: December 30, 2024

21

22                                   By:   _/s/ Geoffrey Graber_
                                           **COHEN MILSTEIN SELLERS & TOLL**
23                                         **PLLC**
                                           Geoffrey Graber, State Bar No. 211547
24                                             ggraber@cohenmilstein.com
                                           1100 New York Avenue NW, Suite 800
25                                         Washington, DC 20005
                                           Tel:      202-408-4600
26                                         Fax:      202-408-4699

27

                                           By:   _/s/ Jason 'Jay' Barnes_
28                                               **SIMMONS HANLY CONROY LLP**

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A
HEARING TO ADDRESS RELIEF

Jason 'Jay' Barnes (admitted *pro hac vice*)
    jaybarnes@simmonsfirm.com
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:     212-784-6400
Fax:     212-213-5949

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
    koncius@kiesel.law
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:     310-854-4444
Fax:     310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
    bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:     206-816-6603
Fax:     206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
    amm@classlawgroup.com
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:     510-350-9700
Fax:     510-350-9701

*Attorneys for Plaintiffs and the Proposed Class*

Case No. 3:22-cv-3580-WHO (VKD)

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF

**CIVIL L. R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Geoffrey Graber, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated:    December 30, 2024                    By:    */s/ Geoffrey Graber*
                                                            Geoffrey Graber

Case No. 3:22-cv-3580-WHO (VKD)
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF