# Proposed Redacted Version of the Reply to Motion for Sanctions (Dkt. No. 813-3)

Jason 'Jay' Barnes (admitted *pro hac vice*)
 *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLP**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:     212-784-6400
Fax:     212-213-5949

Jeffrey A. Koncius, State Bar No. 189803
 *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:     310-854-4444
Fax:     310-854-0812

Beth E. Terrell, State Bar No. 178181
 *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:     206-816-6603
Fax:     206-319-5450

Geoffrey Graber, State Bar No. 211547
 *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Tel:     202-408-4600
Fax:     202-408-4699

Andre M. Mura, State Bar No. 298541
 *amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:     510-350-9700
Fax:     510-350-9701

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO (VKD) |
| | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS AGAINST DEFENDANT META PLATFORMS, INC.** |
| This Document Relates To | |
| All Actions | <u>CLASS ACTION</u> |
| | Date: February 19, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 2 – 17th Floor<br>Judge: Hon. William H. Orrick III |

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     Meta did not take reasonable steps to preserve button click records. ........................... 2

    A.    Meta engineers knew ███████████ stored non-duplicative button click records years before Meta began preserving that table. ........................ 2

    B.    Meta and its counsel had an obligation to investigate these tables. ..................... 5

II.    Meta's intentional spoliation is sanctionable under Rule 37(e)(2). ............................. 6

III.   Meta's spoliation prejudiced Plaintiffs and is sanctionable under Rule 37(e)(1). ....................................................................................................... 11

IV.   Plaintiffs' requested remedies are appropriate under both Rule 37(e)(1) and (e)(2). ...................................................................................................... 14

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co. Ltd.*,
  881 F. Supp. 2d 1132 (N.D. Cal. 2012) ................................................................2

*Estate of Bosco v. County of Sonoma*,
  640 F. Supp. 3d 915 (N.D. Cal. 2022) ..................................................................9

*Burris v. JPMorgan Chase & Co.*,
  2024 WL 1672263 (9th Cir. Apr. 18, 2024) .......................................................10

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
  2022 WL 16551632 (E.D. Cal. Oct. 31, 2022) ......................................2, 6, 7, 10

*Doe LS 340 v. Uber Techs., Inc.*,
  710 F. Supp. 3d 794 (N.D. Cal. 2024) ..................................................................5

*Fast v. GoDaddy.com LLC*,
  340 F.R.D. 326 (D. Ariz. 2022) ............................................................................4

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
  No. 18-cv-02621-WHO, 2019 WL 7801443 (N.D. Cal. Aug. 12, 2019) (Orrick, J.)..............14

*Fourth Dimension Software v. DER Touristik Deustchland, GmbH*,
  2021 WL 5919821 (N.D. Cal. Dec. 15, 2021) .....................................................11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  639 F. Supp. 3d 944 (N.D. Cal. 2022) ..................................................................9

*J.T. v .City and Cnty. of San Franciso.*,
  2024 WL 3834200 (N.D. Cal. Aug. 14, 2024) ..................................................2, 4

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ...............................................................................12

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................11

*Meta Platforms, Inc. v. BrandTotal, Ltd.*,
  605 F. Supp. 3d 1218 (N.D. Cal. 2018) ..............................................................10

*Phan v. Costco Wholesale Corp.*,
  2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) ......................................................9

ii

*Porter v. City and County. of San Francisco.*,
  2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ...........................................................10

*Small v. University Medical Center.*,
  2018 WL 3795238 (D. Nev. Aug. 9, 2018) .................................................................5

*United States v. Prantil*,
  764 F.2d 548 (9th Cir. 1985) ...................................................................................14

1

## INTRODUCTION

2      The thrust of Meta's response is that it preserved a lot of data, so the fact that it failed to preserve

3 non-duplicative highly relevant evidence for almost a year does not mean it intentionally destroyed that

4 evidence or acted unreasonably. But Plaintiffs are not faulting Meta for missing a needle in a haystack.

5 Meta's own documents show that its engineers knew, at the time the lawsuit was filed in June 2022,

6 that the at-issue tables housed ████ button click records ██████████████████ Meta

7 consciously disregarded its duty to identify and preserve the very evidence its engineers understood

8 needed to be preserved from the outset of this case.

9      Meta fails to come to grips with the extent of the problem it created. Meta also claims that the

10 evidence it eventually preserved from the at-issue tables should suffice. But healthcare providers

11 removed and altered their pixel buttons after this complaint was filed, and Meta has destroyed all ████

12 ████ button click records. So it matters a great deal that Meta destroyed evidence of ████

13 ██████████ sending button clicks to Meta during the class period, thus

14 depriving plaintiffs of key evidence that would support their claims. What's more, Meta claims that

15 mere knowledge of these facts is insufficient to hold it accountable for spoliation. But the law says

16 otherwise—a conscious disregard of a duty to preserve is sufficient to show an intent to destroy

17 evidence. Nor could it ever be reasonable for a sophisticated technology company—whose go-to expert

18 in these areas knew precisely where this evidence was and wasn't—to destroy evidence that is a central

19 focus of an initial complaint and early motion practice. To point this out is not a scorched-earth tactic;

20 it is an unfortunate detour made necessary by Meta's serious failures.

21      The gravity of this situation calls for serious medicine, and the remedies Plaintiffs have

22 proposed are appropriately tailored and no more than is necessary. The Court should not allow Meta to

23 deprive Plaintiffs of key evidence without facing appropriate consequences.

24

25

26

27

28

PLAINTIFFS' REPLY ISO MOTION FOR SANCTIONS AGAINST META
Case No. 3:22-cv-03580-WHO (VKD)

**ARGUMENT**

**I.    Meta did not take reasonable steps to preserve button click records.**

To start, the intentional spoliation of non-duplicative relevant evidence is unreasonable. Because Meta had actual knowledge that ███████████ and ███████████ stored the button click records that included the information Plaintiffs sought—and the other tables it preserved *did not*—Meta cannot be deemed to have acted reasonably and is subject to sanctions under Rule 37(e).

Even if the Court were to look beyond Meta's intentional spoliation, it is clear that Meta failed to take reasonable steps to suspend its routine retention policy for the ███████████ and ███████████ tables, and destroyed highly relevant evidence, including all button click records that ███████████. Meta asserts that it did not "determine[] that [these] two additional tables contained non-duplicative data" until January 2023. Opp. at 7. The evidence shows that is false. Meta employees knew these tables had unique data that Plaintiffs sought on the first pages of their first-filed complaint, yet failed to preserve them. The Court can find either that Meta "conscious[ly] disregard[ed]" its preservation obligations, *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 2022 WL 16551632, at *15 (E.D. Cal. Oct. 31, 2022), or that Meta should have known these tables should have been preserved but failed to do so and prejudiced Plaintiffs as a result. Either way, the steps Meta took to preserve button click records were not reasonable.

**A.    Meta engineers knew ███████████ stored non-duplicative button click records years before Meta began preserving that table.**

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *J.T. v .City and Cnty. of S.F.*, 2024 WL 3834200, at *1 (N.D. Cal. Aug. 14, 2024); *see also Apple Inc. v. Samsung Elecs. Co. Ltd.*, 881 F. Supp. 2d 1132, 1137 n.22 (N.D. Cal. 2012) (collecting cases). Plaintiffs have put forward a wealth of evidence that Meta *knew* the button click records in ███████████ were relevant to this litigation at the time the case was filed, yet failed to preserve the evidence.

Meta's actual knowledge of the relevant tables is evidenced through Tobias Wooldridge, Meta's go-to engineer in this case. Meta submitted a declaration from Mr. Wooldridge which directly referenced button click data in October 2022—three months before it began preserving from the spoliated tables—in support of its opposition to Plaintiffs' preliminary injunction motion. *See* Dkt. 76-1. Mr. Wooldridge knew at the time this case was filed that ███████ button click records—rather than the ████████████████████████████—were stored in ████████ On June 24, 2022, Mr. Wooldridge distributed a memo requesting ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████. *See* Mot. Ex. 8. Mr. Wooldridge recently testified that he did so for the obvious reason that, ████████████████████████████ ████████████████████.

Days later, on June 28, 2022, Mr. Wooldridge sent an engineer a hyperlink to the June Markup article titled "Facebook is Receiving Sensitive Medical Information from Hospital Websites,"[1] immediately after sending a data-flow diagram █████████████████████ ████████████████. Mot. Ex. 7. And years before this lawsuit was filed, Mr. Wooldridge created a data-flow diagram ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███ ████ ███ ████ ██████ Ex. 28, PIXEL_HEALTH00000064; Ex. 29, PIXEL_HEALTH00000064.[2]

---

[1] Todd Feathers et al., *Facebook is Receiving Sensitive Medical Information from Hospital Websites*, The Markup (June 16, 2022), https://themarkup.org/pixel-hunt/2022/06/16/facebook-isreceiving-sensitive-medical-information-from-hospital-websites. This article is hereafter referred to as the June Markup Article

[2] Meta's documents show its engineers regularly referred to ████████████████ connection with button click records. For example, in a document dated November 29, 2018, Mr. Wooldridge tells another Meta engineer that "████████████████████████████████████████ because

Mr. Wooldridge's actual knowledge that ██████████ was a source of relevant and unique information that should have been preserved remains uncontested. Even now, in his declaration supporting Meta's opposition to this motion, Mr. Wooldridge does not deny that he knew that the table contained relevant information. Instead, he states that he "suspect[s] that few people at Meta know about this table"—while saying nothing of himself or his contributions to Meta's preservation efforts. Wooldridge Decl. ¶ 10. Mr. Wooldridge's documented knowledge easily meets the standard that Meta knew or reasonably should have known that the ██████████ were potentially relevant to anticipated litigation. *See J.T.*, 2024 WL 3834200, at *1.

The record shows other engineers knew the spoliated tables contained relevant data. For example, on August 17, 2022, a key Meta engineer named Abhinav Anand ████████████ ████████████████████████████████████████████████." Ex. 31, PIXEL_HEALTH000318482. Six days later, Mr. Anand authored a document stating that █████████████████████████████████████████████████ █████████████████████████████████████████████████ Ex. 32, PIXEL_HEALTH000113924 (emphasis added). Plaintiffs specifically allege pixel button text is relevant to their claims on page two of the first-filed complaint. *See* Compl. ¶ 5.

In sum, Meta's engineers were regularly engaging with the spoliated tables in the weeks and months after the complaint was filed to manage data that Plaintiffs expressly sought in the complaint. Even if the Court believes that Meta's outside *counsel* lacked knowledge of Meta's "extraordinarily complex" systems (despite having a history of working for Meta in other data privacy lawsuits involving similar data), *see* Opp. at 3-4, Meta's engineers can make no such argument. And, ultimately, the duty to identify and preserve relevant information lies with Meta itself. *See Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 337 (D. Ariz. 2022) (noting that it is the litigant's obligation to preserve

---

██████████████████ Ex. 30 (PIXEL_HEALTH000101923). Mr. Wooldridge explains that the button click records can be found in ██████████████, which another engineer describes as "█████████████████[.]" *Id.*

PLAINTIFFS' REPLY ISO MOTION FOR SANCTIONS AGAINST META
Case No. 3:22-cv-03580-WHO (VKD)

information, and "a duty to preserve ESI can arise far in advance of the formal retention of a lawyer or the filing of a lawsuit").

**B.  Meta and its counsel had an obligation to investigate these tables.**

Meta's assertion that it did not understand the significance of the ████████ and ████████ tables until January 2023 is contradicted by the record for the reasons discussed above. But even if its excuses were true, it would not make it reasonable. Meta neglects that part of its "duty to preserve evidence" includes "an obligation to *identify, locate, and maintain* information that is relevant to specific, predictable, and identifiable litigation." *Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 801 (N.D. Cal. 2024) (emphasis added). This duty requires "[a]n inquiry . . . concerning the people who have discoverable information, and where relevant information is likely to be stored," which includes "[s]teps . . . to suspend business as usual so that discoverable information is not lost, modified or destroyed." *Small v. Univ. Med. Ctr.*, 2018 WL 3795238, at *6 (D. Nev. Aug. 9, 2018). Counsel shares this duty—"[t]he lawyer has an obligation to educate himself or herself about what data the client has, who has it, how it is stored, what document retention and destruction policies the client has, who has access to the data, and how it is preserved, or how it may be modified or destroyed." *Id.*

Locating these tables should have been easy. One conversation with Mr. Wooldridge, who had been working closely with Meta's counsel from the inception of this lawsuit, or one look at Meta's existing ████████, *see* Ex. 29, would have revealed that ████████ contained relevant information. But even without coordination with Meta engineers, ████████ ████████ alone should have alerted Meta that it needed to, at a minimum, investigate the table, which would not have been a burdensome task. *See, e.g.*, Ex. 33, PIXEL_HEALTH000885439 (screenshot from December 2022 showing ████████ ████████

And Meta's job in locating these tables was made even easier by the fact that ████████ ████████ SubscribedButtonClick data.

1  In September 2022, Meta engineer Manish Singhal ███████████████████████████████████

2  ████████████████████████████████████████ Mot. Ex. 10. A later document suggests it

3  was ████████████████████████████████████████████████████████████████████████████

4  ███████ Ex. 34, PIXEL_HEALTH000484906, Ex. 28, Wooldridge Rough Tr. at 148:8-149:10.  In

5  December 2022, Mr. Singhal submitted a ███████████████████████████████████████████

6  ████████ ████████ ███████████ ██████ ██████ ████ ██ █████████.”   Ex.   35,

7  PIXEL_HEALTH000321689; *see also* Ex. 36 PIXEL_HEALTH000490311 (████████████████

8  ████████ ████████ ██ █████ ██████ █████████ ███████████ ████████);   Ex.   37,

9  PIXEL_HEALTH000644402 (chat exchange between Mr. Singhal and Mr. Anand). This change was

10  ██████████████████████████████████████████ *Id.* Meta's opposition admits that it

11  did not begin ██████████████ preservation until a week later—Feb. 23, 2023. Opp. at 7-8 (Ex. 38,

12  Spoliation Events Timeline). Meta cannot seriously claim that it did not know—and should not have

13  known—where the pixel button click data was stored, when its own engineers were ████████████

14  █████████████████████████ pixel button click data was ███████████████████

15      Even if its excuses are taken at face value, Meta's investigation is wholly inadequate for a

16  sophisticated party with a wealth of experience in litigation and highly experienced counsel.

17  **II.    Meta's intentional spoliation is sanctionable under Rule 37(e)(2).**

18      Meta disputes that it acted intentionally, but the company's own internal documents and conduct

19  show a "conscious disregard" of its preservation obligations. *Deerpoint Grp., Inc. v. Agrigenix, LLC*,

20  2022 WL 16551632, at *15 (E.D. Cal. Oct. 31, 2022). That suffices for the Court to find intent—the

21  Court "need not find that a party acted in bad faith." *Id*. Meta knew unique button click records were

22  stored in ████████████████ and ████████████████, and that both tables were regularly queried

23  with ██████████ *See* Mot. Ex. 7 (Wooldridge chat thread mentioning the June Markup Article and

24  ███████████████████████████████████████); Mot. Ex. 8 (█████████████████████

25  ██████████████████████████████████). Yet Meta only began preserving data in

26  ████████████████ and █████████████████ after all █████████ records had been destroyed

27  and replaced by more favorable data; and after it had begun changing its business practices ████████

28

████ *See* Dkt. 740-2, Hashmi Decl. ¶ 24 (explaining that ████████ button click records have been destroyed); Mot. Ex. 19 (██████████████████████████████ ████████ ); Mot. Ex. 20 (██████████████████████████████ ).

All the while, Meta preserved only select tables which lacked button click records—and it did so knowing that the button click information was stored in different tables. *See* Dkt. 495-8, Xia Decl. ¶ 6 (Meta began preserving the other four data tables—████████████ on or before July 12, 2022, which is less than a month after Plaintiffs filed their complaint); Mot. Ex. 2 (Wooldridge thread specifically identifying ████████ as source of button click records). Rather than come clean, Meta hid all of this from Plaintiffs for over a year. *See generally* Mot. at 6-9 (describing Meta's litigation conduct). These circumstances more than suffice to show the requisite level of intent under Rule 37(e)(2). Meta's contrary view (at 13) that a knowing failure would not suffice to establish intent gets the law wrong. "Destruction of evidence is willful spoliation if the party had 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Deerpoint Grp., Inc.*, 2022 WL 16551632, at *15 (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)).

To determine whether Meta knew at the time the complaint was filed that ████████ should have been preserved, yet ignored its duty to preserve that table, the Court need look no further than Mr. Wooldridge, Meta's go-to engineer in this case. As detailed above, Mr. Wooldridge had actual knowledge that the tables Meta chose to preserve did not have ████ button click records, and he knew the exact tables that did. *See supra* at 2-4 Mr. Wooldridge was not an unknown source at the time Meta was investigating its preservation obligations, and he had actual knowledge of the tables that should have been preserved at the time the case was filed. Yet Meta's opposition is curiously silent about why Mr. Wooldridge's knowledge that ████████ was the source of ████████ button click records did not translate into preservation. Meta never claims that counsel failed to ask Mr. Wooldridge about where relevant data was stored. The undisputed fact remains that Meta knew about these tables and their relevance to this litigation, yet allowed the button click records stored within them to be destroyed for eight months.

---

PLAINTIFFS' REPLY ISO MOTION FOR SANCTIONS AGAINST META
Case No. 3:22-cv-03580-WHO (VKD)

1    Meta's timing arguments are similarly weak. Plaintiffs' complaint put button text and user

2    identification—information that the ██████████████ lack—squarely at issue in the first

3    two pages. *See* Compl. ¶ 5c-5d. The idea that Meta could not determine for eight months that the button

4    click records in the spoliated tables were relevant and unique is directly contradicted by the evidence—

5    Meta's teams knew that the tables it was preserving were not the correct records. *See* Mot. Ex. 4

6    (explaining the SubscribedButtonClick events in ████████ are only ████████████ and that

7    ██████████████████ would also be necessary to determine ████████ of button clicks);

8    Mot. Ex. 8 (███████████████████████████████████████████████████

9    ████████████████████████████). And Meta's assertion that some relevant

10   healthcare providers were still using pixels when it began preserving is nonresponsive to Plaintiffs'

11   evidence that many *did* remove the Pixel entirely or altered the settings for button clicks, distorting the

12   picture of what data Meta had been receiving prior to this lawsuit. As discussed below, there is a wealth

13   of evidence that there was a dramatic reduction in the number of healthcare provider web-properties

14   where Meta was collecting button clicks after June 2022. *See infra* at 13-14.  Meta does not deny that

15   by waiting to preserve the tables until February 2023, Meta afforded itself more favorable data, and

16   deprived Plaintiffs of evidence of ████████████ transmissions.

17       Meta tries to suggest that it believed the data it had preserved was sufficient, but fails to engage

18   with Plaintiffs' evidence showing the opposite. *See* Opp. at 1. As Plaintiffs already showed, Meta's

19   own documents expressly state that the tables it preserved included ████████████████

20   which lack key data, including ████████████████████████████

21   ██████████████ . *See* Mot. at 9 (citing Hashmi Decl. ¶ 27); Mot. Ex. 7. Meta directed its own engineers

22   (in  June  2022,  no  less)  to  ████  ██████████  ██████  ███  ████████  ███

23   ████████████████████████████████████████████████████

24   Yet when preserving, Meta split these tables up, keeping only data from the table with ████████ button

25   click records while ignoring the other two. This is the definition of selective preservation—Meta

26   destroyed records that would expose it to greater liability while preserving records that lacked highly

27   relevant information that Plaintiffs signaled from the start that they would rely upon. It makes no

28

difference whether Meta produced millions or billions of rows of data if that data is, as Meta admits,
materially dissimilar from the data it chose to destroy. *See* Opp. at 7-8 (admitting the "back-filled" data
Meta produced only goes back to ███████████████████████
████████████████████████████████████████).

Plaintiffs establish that Meta had the requisite motive to delete the button click records: avoiding
a more complete accounting of Meta's interceptions and obscuring which buttons the Pixel intercepted
on which healthcare websites. Meta engaged in this wrongful conduct to reduce its liability. *See* Mot.
at 17. Though it largely ignores Plaintiffs' motive argument, Meta claims that intent is rebutted when
a party tries to recover the data. Opp. at 13-14. Of course, Meta never claims it attempted to recover
the spoliated button click records—it concedes the spoliated data cannot be replaced, and offers the
later-received data as a consolation. *Id*. at 7-8. Moreover, the only case Meta cites for the proposition
that attempts to recover data indicate a lack of intent underscores the difference between an accidental
spoliator and a sophisticated, well-resourced company with unparalleled control over its data. *See id*.
at 14 (citing *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 978 (N.D. Cal. 2022)). The plaintiff
in *hiQ Labs* lost data hosted by third party servicers when, facing financial ruin, it could not pay its
data storage bills; the Court reasoned that the plaintiff's attempts to recover the data was one factor of
many that showed the deletion was an unhappy consequence of a failing company. 639 F. Supp. 3d at
972-73. Nothing close happened here. Meta houses its own data and employs engineers with specific
knowledge about where it is stored, how long it is retained, and how to preserve it for litigation.

Meta again shies away from its unparalleled knowledge of its own systems by claiming the Court
cannot infer intent where data destruction is passive, rather than active. *See* Opp. at 13. But Meta's own
cases encourage consideration of the circumstances and find that a sophisticated defendant's passive
deletion of data *can* show intent. *See Estate of Bosco v. Cnty of Sonoma*, 640 F. Supp. 3d 915, 929
(N.D. Cal. 2022) (finding that a sophisticated review demonstrated "more than a failure to halt an
automatic deletion process"). Courts distinguish cases where no investigation took place, *see Phan v.
Costco Wholesale Corp.*, 2020 WL 5074349, at * (N.D. Cal. Aug. 24, 2020), from those where a
defendant did in fact investigate but allowed data to be deleted. *See Estate of Bosco*, 640 F. Supp. 3d

at 929. Meta claims that it promptly began investigating what material should have been preserved. But any reasonable investigation would have involved Mr. Wooldridge (or someone with similar knowledge), and any reasonable discussion with such an engineer would have disclosed the unique relevance of the ████████ and ████████████ tables.

Lastly, Meta's conduct during this litigation is probative of its intent. When Meta claims it learned that it had destroyed relevant information, Meta should have promptly informed Plaintiffs. But Meta did nothing but delay, deflect, and dissemble. Initially, Meta obstructed Plaintiffs' attempts to learn what data sources had been preserved for over a year, resisted affirmatively disclosing the names of relevant tables and their relationships to one another and the data Meta received, and simultaneously sought permission to narrowly limit what it was required to preserve moving forward—all while it was the only party that knew the button click records had been destroyed. *See* Mot. at 16-17. When it finally disclosed that the button click records had been destroyed more than a year later, Meta then resisted informal confirmation of its spoliation and lodged evasive answers in RFAs, further dragging out resolution of these issues in a last-ditch attempt to avoid responsibility. *Id.* Courts consider obfuscation relevant to intent because a party's subsequent conduct weighs on whether data destruction can reasonably be considered a mistake. *See Burris v. JPMorgan Chase & Co.*, 2024 WL 1672263, at *2 (9th Cir. Apr. 18, 2024). That inference just isn't reasonable here.

The Court must determine whether Meta acted with "conscious disregard" of its preservation obligations. *See Deerpoint Grp.*, 2022 WL 16551632, at *15. Given Mr. Wooldridge's actual knowledge of the spoliated tables' relevance, Meta's documents repeatedly referencing them in connection with button click records, and Meta's guidance documents clearly disclosing that the data stored in the tables Meta *was* preserving lacked material information that was stored elsewhere, the plain conclusion is that Meta purposefully ignored tables it knew were relevant to this case. Meta knew that ████████ contained highly relevant, nonduplicative data, but did not preserve it. This case is therefore dissimilar to the situation in *Meta Platforms, Inc. v. BrandTotal, Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2018), where there was no evidence to suggest Meta knew specifically what data should have been preserved. *See also Porter v. City and Cnty. of S.F.*, 2018 WL 4215602, at *4 (N.D.

Cal. Sept. 5, 2018) (noting "there is no evidence that [the defendant] decided to erase [evidence] when it was under pressure to produce it"). The circumstances here are more like *Fourth Dimension Software v. DER Touristik Deustchland, GmbH*, 2021 WL 5919821, at *11 (N.D. Cal. Dec. 15, 2021), where a court found that "[m]onths before they were destroyed, [the defendant] knew or, at the very least, should have known that the usage records were highly relevant to [plaintiff's] claims."

The surrounding circumstances tell the same story. Meta destroyed the button click records to limit their number and frustrate Plaintiffs' ability to readily identify all class members and their communications. The timing of Meta's spoliation deprived Plaintiffs of material data reflecting what information Meta received before healthcare providers largely stopped using the Pixel to intercept button click information. And Meta's subsequent conduct shows only efforts to evade responsibility for its spoliation rather than take responsibility for an error. These circumstances suffice to find Meta's spoliation was intentional.

## III.   Meta's spoliation prejudiced Plaintiffs and is sanctionable under Rule 37(e)(1).

Meta's spoliation resulted in the destruction of button click records that contain proof of ██████ of privacy violations. The resulting prejudice has already been established by this Court. In its order denying Plaintiffs' preliminary injunction motion, the Court agreed that "the Pixel sends information revealing patient status because it intercepts data relating to patient portal logins and logouts alongside identifiers for each patient" based on Plaintiffs' "evidence that the Pixel transmits 'the patient status of individuals logging into the 'patient portals' of their providers through click data, including the Meta Pixel 'SubscribedButtonClick' . . . " *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 791 (N.D. Cal. 2022). Both patient portal logins and medical appointment scheduling (which also reveals patient status) are SubscribedButtonClick events that are stored in the ██████████ table. Mot. Ex. 14. In addition to patient portal logins and medical appointment scheduling, the ███████████ table stores SubscribedButtonClick events relating to ████████████████████████████████████████ See Declaration of Professor Zubair Shafiq at ¶ 8.

---

PLAINTIFFS' REPLY ISO MOTION FOR SANCTIONS AGAINST META
Case No. 3:22-cv-03580-WHO (VKD)

Meta destroyed the ███████████████ button click records that reveal ███████████

transmissions of patient status from healthcare providers to Meta. As Plaintiffs explained in their

motion, "the button click records are the only way that Meta can identify which buttons on healthcare

provider websites transmitted data to Meta through the Pixel." Mot. at 14 (citing Dkt. 223 at 6-7). In

its opposition, Meta does not deny that the destroyed records cannot be restored or replaced.

Plaintiffs are prejudiced because Meta destroyed evidence regarding a substantial portion of the

Facebook users who had their health-related button clicks intercepted by Meta. Instead of Meta's

records, in the absence of sanctions, Plaintiffs will be forced to rely on woefully incomplete evidence

from the Wayback Machine (which only archived the source code for 66 websites) to identify

Healthcare Provider properties where Meta was intercepting Button Clicks prior to ███████████

but not after. Shafiq Decl. at ¶ 26. Notably, Meta does not argue that Facebook's interception of

sensitive health information *other than button clicks* lessens Plaintiffs' prejudice with respect to button

clicks. To be clear, class members still have claims based on Meta's interception of non-Button Click

Data even in the absence of a button click. However, with respect to Pixel Button Click Data, they have

been irreparably harmed and this will directly "interfere with the rightful decision of the case." *Leon*,

464 F.3d at 959.

Meta points to the volume of the ███████████████ button-click data that it produced,

asserting that Plaintiffs "do not claim that this data is somehow different in kind from the data that

would have existed prior to ███████████ Opp. at 18. That characterization of Plaintiffs' position

is simply false. As described above, the deleted data is different in kind from the ███████████████

data because the ███████████████ does not include transmission from the large number of

healthcare providers that stopped using the Pixel to track their patient portal, medical appointment

scheduling buttons, and other health-related button clicks after the complaint was filed. ███████████

███████████████ button click data therefore substantially understates the breadth of harm caused by

Meta's interception practices.

In the summer of 2022, hospitals learned about the risk of sending patient information through

the Pixel from various sources, including the June Markup Article, the June 17, 2022 complaint in this

action, additional lawsuits against individual hospitals in the summer and fall of 2022, and letters sent by HHS and the FTC to dozens of hospitals in July 2022 warning against using the Pixel. Journalists investigating the Pixel found that, between June 15, 2022, and September 15, 2022, 85% of the hospitals they sampled, "ha[d] removed the Meta Pixel from their doctor booking pages or blocked it from sending patient information to [Meta]."[3] And Meta employees themselves discussed throughout July and August 2022 that health clients were raising concerns about the Pixel and HIPAA. Mot. at 14-15.

Meta contests this evidence based on a declaration from counsel suggesting that healthcare providers did not remove the Pixel. Opp. at 16 (citing McCloskey Decl. ¶¶ 10-11). Even crediting this testimony given by counsel, the analysis is largely a non-sequitur. The analysis looks at ███████ ████████████████████████████████████████████████████████████████████████. McCloskey Decl. ¶¶ 14-16. Many healthcare provider websites stopped using the Pixel on sensitive buttons soon after Plaintiffs filed their complaint. Whether providers used the Pixel elsewhere on their website has no bearing on the specific data at issue in this motion: button click records received from the SubscribedButtonClick event. Furthermore, Meta's pixel ID analysis is not limited only to ███████████████ as Plaintiffs intend to do. Instead, Meta ████████████████████ ████████████████████████████████ such as a ███████████ a ███████████████, a ████████████, a ██████████, the ██████████████████, and a ██████████████████. Shafiq Decl. at ¶ 31.

Contrary to the inadmissible declaration of Meta's counsel,[4] Plaintiffs' expert Dr. Shafiq analyzed the limited publicly available sources and—consistent with the findings of journalists in the

---

[3] *See* Todd Feathers & Simon Fondrie-Teitler, *Meta Faces Mounting Questions from Congress on Health Data Privacy As Hospitals Remove Facebook Tracker*, The Markup (Sept. 19, 2022), https://themarkup.org/pixel-hunt/2022/09/19/meta-faces-mounting-questions-from-congress-onhealth-data-privacy-as-hospitals-remove-facebook-tracker. This article is hereafter referred to as the September Markup Article.
[4] Attorney McCloskey's declaration violates Federal Rule of Evidence 602 because it presents expert testimony about Meta's proprietary systems, such as Meta's Separable ID, and various analyses run in Meta databases using it, under the guise of personal knowledge, which she does not have. (*See* McCloskey Decl. ¶¶ 8-17.) While she avers such analyses were done at her direction (*see* ¶ 7), she does not establish that she directly perceived or ran those analyses herself. Therefore paragraphs

September Markup Article—found evidence of a dramatic reduction in the number of healthcare provider web-properties where Meta was collecting button clicks from 2022 to 2023. Shafiq Decl. at ¶ 26. Dr. Shafiq found that more than 50% of the healthcare providers that kept their pixel in 2023 had stopped sending SubscribedButtonClick events to Meta. *Id.* at ¶ 8(1). And Dr. Shafiq's analysis understates the impact of the post-complaint changes, as many hospitals simply removed the Pixel from their websites in the summer and fall of 2022. *See* September Markup Article.

Finally, Meta asserts that Plaintiffs are not prejudiced because they only need representative data prior to class certification. Opp. at 18. But because the post-November 2022 data does not include the large number of healthcare providers that stopped using the Pixel on their patient portal, medical appointment scheduling buttons, and other health-related buttons ███████████████, the ███ ███████ data is *not* representative of the true class. If Plaintiffs are left to rely on the later preserved data, many putative class members who otherwise had valid claims for these button click interceptions of their patient status would be prejudiced and left without a remedy for their button click interceptions.

## IV.    Plaintiffs' requested remedies are appropriate under both Rule 37(e)(1) and (e)(2). [5]

As an initial matter, Meta is incorrect that the Court cannot order Plaintiffs' requested sanctions for prejudice under Rule 37(e)(1). Under the prejudice prong, the requested sanctions are appropriate

---

8-17 are hearsay and lack foundation. Fed. R. Evid. 602, 701, 801(c), 802. Accordingly, Plaintiffs ask that this Court strike paragraphs 8-17 of her declaration. *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621-WHO, 2019 WL 7801443, at *10 (N.D. Cal. Aug. 12, 2019) (Orrick, J.) (striking attorney declaration that "should have been from the experts with firsthand knowledge of Check Point's source code"). Even if Ms. McCloskey has personal knowledge about the analysis of Meta's event data, "[t]he advocate-witness rule prohibits [her] from appearing as both a witness and an advocate in the same litigation." *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985).

[5] Plaintiffs requested the following remedies: (1) "the Court should deem that the Pixel transmitted button click records for patient portal logins and medical appointment scheduling functions to Meta between ████████████ and ████████████, for any healthcare provider that had the Pixel on its website during that time period" and (2) "the Court should deem that any named Plaintiff or putative class member who visited a healthcare provider website that had the Pixel between ███ ████████, and ████████████, had a button click (through a patient portal log-in or medical appointment scheduling) transmitted to Meta, and that their transmission record was stored in the ████████████ and ████████████ tables." Mot. at 18.

because they are "no greater" than necessary to cure the prejudice. In *Lopez v. Apple, Inc.*, the court ordered similar sanctions due to similar spoliation of data in a privacy class action solely based on prejudice, even without a finding of intent. *See* 2024 WL 4561320, at *6 (N.D. Cal. July 17, 2024). Among the sanctions, the *Lopez* court ordered that "Apple cannot argue that named Plaintiffs lack standing to sue because they have no proof that they were subject to false triggers, cannot argue against class-wide damages based on the number of false recordings, and cannot argue against Apple's intent based on the number of, and instances of repeated, false recordings." *Id.*

Meta argues that Plaintiffs' proposed remedies will lead to a larger class than the destroyed data would have shown. Opp. at 19-20. But Meta's explanation leaves much to be desired. Meta points to various aspects of the ██████ data to suggest that Plaintiffs' proposed remedies are unreasonably broad. For example, Meta notes that only 14% of the pixel IDs transmitted button clicks after ██████ ██████ and that very few of the buttons were titled ██████ in that data. Opp. at 19-20. But it is unsurprising that few pixel IDs transmitted button clicks after ██████—many healthcare providers removed the Pixel from their patient-status buttons quickly after the complaint was filed. Meta's analysis of the ██████ data thus underscores Plaintiffs' position that they have been prejudiced by the destruction of the ██████ data.[6]

Plaintiffs did not seek this outcome. But because neither party has identified a narrower remedy for Meta's misconduct, the question is simply who should suffer the consequences: Meta, by facing a class that may be slightly broader than it otherwise would have faced, or the potential class members, who will be deprived of key evidence to support their claims. Common sense and Rule 37(e) dictate that the harm from Meta's conduct should fall on Meta.

## CONCLUSION

Plaintiffs respectfully request the Court find Meta spoliated evidence in violation of Rule 37(e) and order the remedies Plaintiffs propose in their motion.

---

[6] Meta notes that many websites included in the ██████ table are not healthcare providers. Opp. at 19-20. This is true but irrelevant. Plaintiffs' requested sanction is limited to healthcare providers, and Plaintiffs' expert can limit the analysis accordingly. Shafiq Dec. at ¶ 41.

1  DATED: February 7, 2025                 Respectfully submitted,

2                                          By: */s/ Geoffrey Graber*

3                                          **COHEN MILSTEIN SELLERS & TOLL PLLC**
4                                          Geoffrey Graber, State Bar No. 211547
                                             *ggraber@cohenmilstein.com*
5                                          1100 New York Avenue NW, Suite 800
                                           Washington, DC 20005
6                                          Tel:    202-408-4600
                                           Fax:    202-408-4699
7

8                                          By: */s/ Jason 'Jay' Barnes*

9                                          **SIMMONS HANLY CONROY LLP**
                                           Jason 'Jay' Barnes (admitted *pro hac vice*)
10                                           *jaybarnes@simmonsfirm.com*
11                                         112 Madison Avenue, 7th Floor
                                           New York, NY 10016
12                                         Tel:    212-784-6400
                                           Fax:    212-213-5949
13

14                                         **KIESEL LAW LLP**
                                           Jeffrey A. Koncius, State Bar No. 189803
15                                           *koncius@kiesel.law*
                                           8648 Wilshire Boulevard
16                                         Beverly Hills, CA 90211
                                           Tel:    310-854-4444
17                                         Fax:    310-854-0812
18

19                                         **TERRELL MARSHALL LAW GROUP PLLC**
                                           Beth E. Terrell, State Bar No. 178181
20                                           *bterrell@terrellmarshall.com*
                                           936 North 34th Street, Suite 300
21                                         Seattle, WA 98103
                                           Tel.:   206-816-6603
22                                         Fax:    206-319-5450
23

                                           **GIBBS LAW GROUP LLP**
24                                         Andre M. Mura, State Bar No. 298541
                                             *amm@classlawgroup.com*
25                                         1111 Broadway, Suite 2100
                                           Oakland, CA 94607
26                                         Tel.:   510-350-9700

27

28

---

16

PLAINTIFFS' REPLY ISO MOTION FOR SANCTIONS AGAINST META
Case No. 3:22-cv-03580-WHO (VKD)

Fax:    510-350-9701

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' REPLY ISO MOTION FOR SANCTIONS AGAINST META
Case No. 3:22-cv-03580-WHO (VKD)

**SIGNATURE ATTESTATION**

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.

*/s/ Geoffrey Graber*

PLAINTIFFS' REPLY ISO MOTION FOR SANCTIONS AGAINST META
Case No. 3:22-cv-03580-WHO (VKD)