# Redacted Version of the Motion for Sanctions Against Meta and for a Hearing to Address Relief (Dkt. 739-3)

Jason 'Jay' Barnes (admitted *pro hac vice*)
*jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel: 212-784-6400
Fax: 212-213-5949

Geoffrey Graber, State Bar No. 211547
*ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699

Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel: 310-854-4444
Fax: 310-854-0812

Beth E. Terrell, State Bar No. 178181
*bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.: 206-816-6603
Fax: 206-319-5450

Andre M. Mura, State Bar No. 298541
*amm@classlawgroup.com*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.: 510-350-9700
Fax: 510-350-9701

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE META PIXEL HEALTHCARE LITIGATION

This Document Relates to:

All Actions.

**Case No. 3:22-cv-3580-WHO (VKD)**

CLASS ACTION

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST META AND FOR A HEARING TO ADDRESS RELIEF**

Date: February 19, 2025
Time: 2:00 p.m.
Place: Courtroom 2 – 17th Floor
Judge: Hon. William H. Orrick III

# NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on February 19, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable William H. Orrick III in Courtroom 2 of the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Jane and John Doe Plaintiffs will, and hereby do, move this Court for an order finding that Defendant spoliated data in violation of Federal Rule of Civil Procedure 37(e), and for an order entering sanctions, including for the purposes of class certification, summary judgment, and trial. This motion is noticed before the U.S. District Court Judge because "the sanctions sought would affect decisions reserved for the consideration of the District Judge." *Griffith v. TikTok, Inc.*, No. ED CV 23-964-SB(Ex), 2024 WL 4003908, at *2 (C.D. Cal. Aug. 13, 2024). Plaintiffs respectfully request an in-person hearing regarding this motion, including to address appropriate relief.

This motion is based upon this Notice of Motion; the accompanying memorandum in support; the Declarations of Geoffrey Graber and Atif Hashmi; the pleadings and papers on file in this action, arguments of counsel, and any other matter that the Court may properly consider.

## TABLE OF CONTENTS

INTRODUCTION ........ 1

STATEMENT OF ISSUES TO BE DECIDED ........ 2

FACTUAL BACKGROUND ........ 2

I. Plaintiffs alleged from the start that the Meta Pixel intercepts button click information from healthcare websites. ........ 2

II. Meta destroyed eight months of button click records. ........ 4

III. Meta hid its destruction of the button click records. ........ 6

IV. Meta admits it did not preserve highly relevant button click records. ........ 8

V. Meta cannot restore or replace lost button click records. ........ 9

LEGAL STANDARD ........ 9

ARGUMENT ........ 10

I. Meta engaged in sanctionable spoliation by destroying button click records. ........ 10

A. Meta had a duty to preserve button-click records by June 22, 2022, at the latest. ........ 10

B. Meta failed to take reasonable steps to preserve button click records. ........ 11

C. Meta destroyed eight months of button click records, and those records cannot be restored or replaced. ........ 12

II. Meta's destruction of button click records warrants substantial sanctions. ........ 13

A. Meta's spoliation prejudiced Plaintiffs and is sanctionable under Rule 37(e)(1). ........ 13

B. Meta's spoliation was intentional and thus is sanctionable under Rule 37(e)(2). ........ 15

III. Sanctions are necessary and appropriate. ........ 18

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys., Inc. v. Wynne*,
No. 21-cv-1141, 2024 WL 3896454 (S.D. Cal. Aug. 21, 2024) ..... 12

*Borum v. Brentwood Vill., LLC*,
332 F.R.D. 38 (D.D.C. 2019) ..... 13, 15

*Burris v. JPMorgan Chase & Co.*,
No. 21-16852, No. 22-15775, 2024 WL 1672263 (9th Cir. Apr. 18, 2024) ..... 16

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
No. 5:18-cv-00420, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ..... 16

*Culhane v. Wal-Mart Supercenter*,
364 F. Supp. 3d 768 (E.D. Mich. 2019) ..... 16

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*,
No. 22-35832, 2023 WL 6866273 (9th Cir. Oct. 18, 2023) ..... 10

*Doe LS 340 v. Uber Techs., Inc.*,
710 F. Supp. 3d 794 (N.D. Cal. 2024) ..... 11

*Doe v. Cnty. of San Mateo*,
No. 3:15-CV-05496-WHO, 2017 WL 6731649 (N.D. Cal. Dec. 29, 2017) ..... 13

*Doe v. Wesleyan Univ.*,
No. 3:19-cv-01519, 2022 WL 2656787 (D. Conn. July 8, 2022) ..... 15

*Facebook, Inc. v. OnlineNIC, Inc.*,
No. 19-cv-07071, 2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ..... 13

*Fishman v. Tiger Nat'l Gas, Inc.*,
No. C 17-05351, 2018 WL 6068295 (N.D. Cal. Nov. 20, 2018) ..... 13

*Freeman v. Giuliani*,
691 F. Supp. 3d 32 (D.D.C. 2023) ..... 13

*In re Google Play Store Antitrust Litig.*,
664 F. Supp. 3d 981 (N.D. Cal. 2023) ..... 15, 19

*Griffith v. TikTok, Inc.*,
No. ED CV 23-964-SB(Ex), 2024 WL 4003908 (C.D. Cal. Aug. 13, 2024) ..... 2

*Jones v. Riot Hosp. Grp.*,
95 F.4th 730 (9th Cir. 2024) ..... 10, 16

*Lopez v. Apple, Inc.*,
No. 19-cv-04577, 2024 WL 4561320 (N.D. Cal. July 17, 2024) ..................................... 11, 19

*Medina v. Boeing Co.*,
No. 8:20-cv-00304, 2022 WL 599021 (C.D. Cal. Jan. 27, 2022) .......................................... 17

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................... 3, 4, 13

*In re Napster, Inc. Copyright Litig.*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) .................................................................... 11

*Resnik v. Coulson*,
No. 17-cv-676, 2019 WL 2256762 (E.D.N.Y. Jan. 4, 2019) .................................................. 18

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-7465, 2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ........................................... 19

*Ungar v. City of New York*,
329 F.R.D. 8 (E.D.N.Y. 2018) ...................................................................................... 15

*Wisk Aero LLC v. Archer Aviation Inc.*,
No. 3:21-cv-02450-WHO, 2023 WL 2277112 (N.D. Cal. Feb. 28, 2023) ............................ 10

**Rules**

Fed. R. Civ. P. 37(e) ........................................................................ 1, 2, 9, 10, 13, 15, 16, 18,

# <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## INTRODUCTION

For years, Defendant Meta Platforms, Inc. has used proprietary computer code—the Pixel—to surreptitiously obtain healthcare-related information about Facebook's users without their consent. The Pixel captures (among other things) data about patient portal logins and the online scheduling of medical appointments by tracking when a patient clicks buttons on certain healthcare websites. This surveillance gives Meta information it is not allowed to have, such as patient status and healthcare-related communications, in violation of federal and state law and in breach of Meta's terms of service.

To avoid accountability for these privacy intrusions, Meta destroyed critical evidence. It wiped [redacted] of Pixel button click records that showed Meta had violated the privacy rights of [redacted] of patients. The Federal Rules of Civil Procedure required Meta to preserve these button click records as of June 2022, when this case was filed, but Meta did not take any action to preserve this data until February 2023—*after* many hospitals had already disabled or limited the Pixel on their websites.

Meta destroyed this important evidence intentionally. Meta knew just how important, and damaging, button click records are. These records showed [redacted] of violations and exposed Meta to [redacted] of dollars in statutory penalties. Small wonder that the importance of button click records was apparent from day one—it was central to the reporting of journalists who broke this story, the class action complaints filed against Meta, the parties' preliminary injunction proceedings, their preservation discussions, and their discovery disputes. And there is no question that Meta had the technical ability to preserve this data. Meta falsely led Plaintiffs and the Court to believe the company was preserving all relevant button click records. Still today, Meta refuses to come to grips with the gravity of its data destruction.

Plaintiffs therefore respectfully request that the Court enter an order finding that Meta spoliated data in violation of Rule 37(e) and imposing sanctions. Plaintiffs also respectfully request an in-person hearing regarding this motion, including to address the appropriate relief. Because sanctions would impact the evidence relating to "adjudicating disputed issues on class certification,

summary judgment and at trial," the relief sought is "reserved for the consideration of the District Judge" in the first instance. *Griffith v. TikTok, Inc.*, No. ED CV 23-964-SB(Ex), 2024 WL 4003908, at *2 (C.D. Cal. Aug. 13, 2024).

## STATEMENT OF ISSUES TO BE DECIDED

Whether Meta spoliated relevant data and should be sanctioned under Rule 37(e)(1) and (e)(2) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

### I. Plaintiffs alleged from the start that the Meta Pixel intercepts button click information from healthcare websites.

On June 16, 2022, investigative journalists reported that the Meta Pixel was tracking patients on the websites of certain hospitals "whenever a person clicked a button to schedule a doctor's appointment."[1] The following day, on June 17, Plaintiffs filed a class action complaint on behalf of Facebook users alleging that Meta intercepts health information without authorization through the Pixel. Plaintiffs' Complaint included allegations that Meta's Pixel tracks Facebook users without their consent when they sign into a patient portal or schedule an appointment with a doctor, thereby violating Plaintiffs' privacy and violating federal and state wiretapping laws with every wrongful transmission. Compl. ¶¶ 5, 8, Dkt. 1 (referring to the "content of the button the patient clicked" through "an [] event called SubscribedButtonClick"). Plaintiffs also alleged that each violation increased Meta's exposure to monetary damages. *Id.* ¶¶ 134-36 (each login and appointment scheduling button click is an unlawfully intercepted communication under the ECPA).[2]

On August 25, 2022, Plaintiffs sought a preliminary injunction to stop Meta from intercepting communications on healthcare webpages. *See* Dkt. 46. In their motion, Plaintiffs

[1] Todd Feathers et al., *Facebook is Receiving Sensitive Medical Information from Hospital Websites*, The Markup (June 16, 2022), https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites. This article is hereafter referred to as "the Markup article".

[2] In this motion, Plaintiffs will refer to SubscribedButtonClick transmissions as "button click records."

singled out Meta's interception of health information through button click records, which Meta defines as the collection of "any buttons clicked by site visitors, the labels of those buttons and any pages visited as a result of the button clicks." Smith Decl. ¶ 9, Dkt. 49 (citing *Meta Pixel*, Meta, https://developers.facebook.com/docs/meta-pixel/). Plaintiffs explained that when a user navigates to her patient portal and presses the "Log in" button, the Pixel captures and stores the information about that user's button click, contemporaneously re-directing that information to Meta. Dkt. 46 at 11-13. A button click record for a patient portal log-in "includes, among other things: (1) the patient's identity in the form of cookies, IP address, and User-Agent identifiers; (2) content of the button (e.g., "Log In"); (3) contents of the page from which the patient clicked to log in; and (4) content of the page the patient will land on as a result of clicking "Log In" to the patient portal." *Id* at 3.

Meta opposed the motion, arguing that "it has systems in place to address the receipt of the information at issue and that it would be unfairly burdensome and technologically infeasible for [Meta] to take further action." Dkt. 159 at 1-2. Meta also submitted sworn testimony from a high-level engineer, Tobias Wooldridge, who represented that [redacted] Woolridge Decl. at ¶¶ 29, 52, Dkt. 142.

The Court denied the motion for preliminary injunction "based on Meta's evidence that it is doing all it can to minimize the problems raised by plaintiffs, and the need for discovery to clarify both the scope of the problems and potential solutions for them." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 790 (N.D. Cal. 2022); *see also* Dkt. 159 at 11. Notably, the Court agreed with Plaintiffs that "the Pixel sends information revealing patient status because it intercepts data relating to patient portal logins and logouts alongside identifiers for each patient." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 791. The Court reached this conclusion based on Plaintiffs' "evidence that the Pixel transmits 'the patient status of individuals logging into the 'patient portals' of their providers through click data, including the Meta Pixel 'SubscribedButtonClick' ...'" *Id.* (citing Smith Decl. ¶ 4). Based on these records, the Court determined that "the act of clicking the

'Log in' button, when coupled with the MedStar Health patient portal URL and the other information transmitted by the Pixel, sufficiently identifies the website user as a patient." *Id*. at 792. The Court also found that "Meta's policies do not . . . specifically indicate that Meta may acquire *health data* obtained from Facebook users' interactions with their *medical providers websites*" and, therefore, Meta's "generalized notice is not sufficient to establish consent" for the conduct alleged. *Id.* at 793 (emphasis in original).

**II. Meta destroyed eight months of button click records.**

In its normal course of business, Meta stores Pixel data in tables, each with a specific retention period. Ex. 1, May 18, 2023 Letter from Lauren Goldman.[3] After the retention period expires, the data in the table is automatically deleted. By placing a litigation hold on a data table, Meta can suspend the deletion of the data in the table and preserve the table's existing data and any data collected in the future. *Id.*

Button click records are stored in two tables. The first is a data table aptly named [redacted], which has a retention period of 90 days. Declaration of Atif Hashmi ("Hashmi Decl."), at ¶ 6; *see also* Ex. 2 (PIXEL_HEALTH000106780). Meta admits it failed to preserve the data in the [redacted] table reflecting transmissions that occurred before November 26, 2022. *See* Ex. 3 (Meta's 2d Suppl. Resp. to Pls.' RFAs, No. 14 at 14); Declaration of Qiwen (Carrol) Xia ("Xia Decl.") at ¶ 6, Dkt. 495-8. Given the 90-day retention period, this means that Meta did not implement a litigation hold on the [redacted] table until February 24, 2023, which is more than eight months after the first complaint was filed.

The second table that stores button click records is [redacted] which has a retention period of 10 days. Hashmi Decl. at ¶ 7; Ex. 4 (PIXEL_HEALTH000000057). Meta also did not preserve data in the [redacted] table for transmissions that occurred before February 17, 2023. *See* Xia Decl. at ¶ 6, Dkt. 495-8; Ex. 5 (Meta's 1st Suppl. Resp. to Pls.' RFAs, No. 39 at 58-60). Based on the 10-day retention period for the [redacted] table, that means Meta did not place a litigation hold on the [redacted] table until February 27,

---

[3] Unless otherwise noted, exhibits are attached to the Declaration of Geoffrey Graber.

2023, or three days after it started preserving the [redacted] table.

Unlike [redacted] and [redacted] Meta began preserving four *other* data tables—that lack button click records—on or before July 12, 2022, which is less than a month after Plaintiffs filed their complaint. Xia Decl. at ¶ 6, Dkt. 495-8 (identifying first day that Meta possesses data from [redacted] and [redacted]).

Internal communications produced by Meta confirm the company understood that button click records were highly relevant evidence that needed to be preserved. *See* Ex. 6 (PIXEL_HEALTH000532571 at -573) [redacted])). Indeed, these communications show that Meta knew where the relevant button click records were stored—and that those locations were different than the four tables that Meta more promptly preserved. For example, on June 28, 2022, Mr. Wooldridge sent an engineer a hyperlink to an article referencing core facts of this case, titled "Facebook is Receiving Sensitive Medical Information from Hospital Websites,"[4] immediately after sending [redacted] Ex. 7 (PIXEL_HEALTH000109588-89); *see also* Ex. 8 (PIXEL_HEALTH000291310) (instructions to engineering team in June 2022 to [redacted]). Mr. Wooldridge is also the author of a document from October 2020 where he explains that [redacted] Ex. 9 (PIXEL_HEALTH000288627).

On September 23, 2022, a few months after Plaintiffs filed this lawsuit, Meta engineer Manish Singhal scheduled a meeting and sent an associated email to Mr. Wooldridge and five other engineers with the subject line, [redacted] stating that button click records [redacted] providing a hyperlink to the

---

[4] The article Mr. Woolridge sent to his colleague is Feathers, *supra* note 1.

Markup article, and commenting, [redacted] Ex. 10 (PIXEL_HEALTH000000719). On September 28, 2022, Mr. Singhal created a [redacted] Ex. 11 (PIXEL_HEALTH000490121).

If Meta had preserved the [redacted] table when the complaint was filed on June 17, 2022, it would have preserved button click records extending back 90 days earlier, to March 19, 2022.

**III. Meta hid its destruction of the button click records.**

For nearly two years Meta misled Plaintiffs and the Court about its failure to preserve the button click records. In January 2023, Plaintiffs proposed in a case management statement that the parties make written disclosures regarding preservation. Dkt. 167 at 3. Meta refused, telling Plaintiffs that it was properly preserving the data and insisting that "written disclosures regarding preservation and ESI are inappropriate and unreasonable." *Id.* at 3. Meta reassured the Court that it was aware of its obligations and was "taking reasonable steps to comply with its evidence preservation obligations under the Federal Rules of Civil Procedure, including the rules governing electronic discovery." *Id.* Plaintiffs asked the Court to weigh in. The Court accepted Meta's assurances but cautioned Meta that "if things aren't done properly, there will be spoliation consequences and—and I'm sure the Defendants are well aware of that." Ex. 12 (Jan. 17, 2023 Hr'g Tr. at 3:24-4:4).

It was not until over a month after that hearing, on February 24, 2023, that Meta began preserving button click records for the first time. Meta not only failed to disclose its failure to timely preserve the records, it sought the Court's retroactive blessing for its blanket destruction of broad categories of unspecified data. On March 7, 2023, Plaintiffs warned the Court that Meta had asked for "an ESI Protocol that permit[ted] it to categorically stop preserving more than a dozen broad, undefined categories of relevant documents." Dkt. 191 at 12. Because Meta's request was so vaguely

defined, Meta's proposal could have been construed to allow for the destruction of button click records. *See id.* The categories in Meta's request included "server, system, or network logs" and "[d]ynamic fields in databases or log files not stored or retained in the ordinary course of business." *Id*. at 12. Plaintiffs opposed this request. Judge Virginia K. DeMarchi recognized the potential consequences of allowing Meta to destroy these records and agreed with Plaintiffs, stating that she would "decline[] to enter an order affirmatively relieving Meta (or any party) of whatever obligations it may otherwise have to preserve the specific data sources." Dkt. 253 at 2.

In April 2023, Judge DeMarchi reiterated the Court's prior warning to Meta regarding its preservation obligations: "[I]t appears you are [on notice] of what Plaintiffs are seeking" so "this will look very bad, as Judge Orrick highlighted for you, if there's, you know, a question about preservation later." Ex. 13 (Apr. 20, 2023 Hr'g Tr. at 61:8-10). At that point, Meta knew it had destroyed eight months of button click records, including all pre-complaint button click records, but said nothing to Judge DeMarchi or to Plaintiffs.

On May 1, 2023, Meta once again acknowledged the relevance of the button click records. Meta asked Judge DeMarchi to limit discovery to "patient portals or similar features," such as a "function to schedule appointments without entering credentials." Dkt. 222 at 1, 6 (internal quotation marks omitted). Both patient portal log-ins and medical appointment scheduling are stored in button click records. Ex. 14, (PIXEL_HEALTH000781581 example rows). Based on Meta's proposed limitation, the only relevant intercepted data would have been in button click records. Judge DeMarchi rejected Meta's proposed limitation. Dkt. 277.

On May 18, 2023, Meta again assured Plaintiffs that it had "undertaken extensive, time-consuming, manual processes to preserve data from the structured warehouse sources that contain data transmitted by third parties to Meta via the Meta Pixel (the "Pixel")." Ex. 1, May 18, 2023 Letter from Lauren Goldman at 1-2. Meta affirmatively represented that:

> Hive tables are the primary storage location for data that Meta receives from third parties via the Pixel. Accordingly, Meta has undertaken a process to preserve relevant data stored in Hive tables . . .. Based on its knowledge of the data within its system and its understanding of the data issue here, Meta identified the Hive tables with information potentially relevant to this litigation.

*Id*. The [redacted] and [redacted] tables are both Hive tables. Meta

emphasized the importance of the Hive table data, but hid from Plaintiffs that it had failed to preserve data in the two Hive tables with button click records for patient portals or appointment scheduling functions.

**IV. Meta admits it did not preserve highly relevant button click records.**

In March 2024, the parties briefed which structured data sources Meta should produce data from—including tables—and which sources (if any) should be sampled. *See* Dkt. 430, 434, 438. Meta agreed that the [redacted] table that stores button click records contained relevant, non-duplicative data, but objected to the burden of producing all the data it possessed in the table. Dkt. 452 at 2 n.1. On April 10, Judge DeMarchi ordered the parties to confer and ordered Meta to explain to Plaintiffs the nature and extent of its burden in producing data from specific data tables, including [redacted] which contains button click records. *Id.* at 1.

During the meet-and-confer on April 26, 2024, Meta's counsel revealed that the earliest date that Meta possesses data from the [redacted] table is November 26, 2022, and the earliest date that Meta possesses data from the [redacted] table is February 17, 2023. *See* Ex. 15, (May 1, 2024 Letter from Geoff Graber) at 3. As noted above, Meta later filed a declaration from a Meta employee confirming these dates. *See* Xia Decl. at ¶ 6, Dkt. 495-8.

On July 12, 2024, Meta agreed to produce all data *that it possesses* associated with U.S. users for the agreed upon Pixel IDs for the [redacted] and [redacted] tables. Dkt. 545. That same day, Plaintiffs served four Requests for Admission regarding Meta's preservation of button click records. *See* Ex. 16 (Pls.' 1st Set of RFAs, Nos. 1-3 at 5, No. 14 at 7). Meta responded with objections and evasive answers. *See* Ex. 17, (Meta's Resp. to Pls.' RFAs) and Ex. 5 (Meta's 1st Suppl. Resp. to Pls.' RFAs)

It took three more months for Meta to finally admit in its RFA responses that it failed to preserve the button click records. Meta admitted that it did not preserve data from the [redacted] table before November 26, 2022. *See* Ex. 3 (Meta's 2d Suppl. Resp. to Pls.' RFAs, No. 14 at 14) (admitting that it only "preserved and maintains data specifically from the [redacted] table dating back to November 26, 2022"). Meta further admitted that it does not have replacement button click records for pre-Complaint transmissions. *See id.*, No. 1 at 6, No.

2 at 8, No. 3 at 11 (Meta "has not preserved or otherwise identified or maintained in Meta's systems event-level [button click records] . . . which occurred before June 17, 2022" for any individuals, including named plaintiffs and members of the putative class.).

**V. Meta cannot restore or replace lost button click records.**

Plaintiffs' source code expert Dr. Hashmi has confirmed that Meta cannot restore or replace the [redacted] and [redacted] data with data from other tables. Dr. Hashmi searched the source code for tables with retention periods of more than two years. Hashmi Decl. at ¶¶ 12-13, 16-17, 20-23. Based on his review of Meta's source code, Dr. Hashmi found:

> [redacted] of Meta's tables that contain the relevant Button Click Data, including data related to the [button click records], have retention periods of over two years. Given that it is now December 2024, Meta does not possess and cannot restore the [button click records] for button click events that occurred before November 26, 2022 and is the same as the data stored within the [redacted] and the [redacted] tables.

*Id*. at ¶ 24.

On November 8, 2024, Plaintiffs met-and-conferred with Meta regarding this spoliation motion, and asked Meta if it had identified any method to restore the lost button click records. Meta did not deny that it deleted the data. Instead, Meta's only proposal was to use the [redacted] table as a replacement. But this is unworkable for several reasons. First, the [redacted] table is only preserved going back to July 2, 2022, not March 19, 2022. Xia Decl. at ¶ 6, Dkt. 495-8. Second, and more troubling, the [redacted] table only includes [redacted] button click records. Hashmi Decl. at ¶ 25 ("[F]or all such [redacted] events, the [redacted] fields are set to [redacted] indicating that the data corresponding to the event was [redacted]."). And, when a button click is [redacted], the record in the [redacted] table does not contain the user id or the button text. Hashmi Decl. at ¶ 27. Thus, when a button click is [redacted] the [redacted] table lacks the essential information contained in a button click record: neither the button that was clicked on, nor the user that clicked on the button appear in the [redacted] table. *Id.* ¶ 27.

## LEGAL STANDARD

Rule 37(e) authorizes sanctions when ESI "that should have been preserved in the

anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The Court may "order measures no greater than necessary to cure the prejudice" in the case of negligent spoliation, *see* Fed. R. Civ. P. 37(e)(1), or, upon a finding of intent, may issue more severe sanctions, *see* Fed. R. Civ. P. 37(e)(2).

Under Rule 37(e)(1)), if the district court "find[s] prejudice to another party from the loss of the information," it "may order measures no greater than necessary to cure the prejudice." Under Rule 37(e)(2), "If the court further finds that a party 'acted with the intent to deprive another party of the information's use in the litigation,' the court may impose additional sanctions, including presuming the lost information was unfavorable to that party, instructing the jury that it may or must presume the information was unfavorable to that party, or dismissing the action or entering a default judgment." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-cv-02450-WHO, 2023 WL 2277112, at *3 (N.D. Cal. Feb. 28, 2023) (quoting Fed. R. Civ. P. 37(e)(2)). Subdivision (e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information." Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment; *see Jones v. Riot Hosp. Grp.*, 95 F.4th 730, 736 (9th Cir. 2024) (prejudice is not a "prerequisite to sanctions" under Rule 37(e)(2)).

**ARGUMENT**

**I. Meta engaged in sanctionable spoliation by destroying button click records.**

Meta violated Rule 37(e) and prejudiced Plaintiffs by intentionally destroying button click records and misleading Plaintiffs and the Court about its destruction of this evidence.

**A. Meta had a duty to preserve button-click records by June 22, 2022, at the latest.**

Meta's duty to preserve the button click records arose when it had "some notice" they would be "potentially relevant to the litigation." *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 22-35832, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). That was on June 17, 2022, when Meta employees were notified of this lawsuit the same day that it was filed. *See* Ex. 18 (PIXEL_HEALTH000335197). But "at the latest," Meta's preservation duty arose a week later

"when it was served with Plaintiffs' complaint." *Lopez v. Apple, Inc.*, No. 19-cv-04577, 2024 WL 4561320, at *6 (N.D. Cal. July 17, 2024); *see also* Dkt. 18. Button click records are expressly referenced on page two of Plaintiffs' complaint as the means by which the Pixel sent a patient portal login to Meta. *See* Dkt. 1 at ¶ 5.

Meta's own internal communications show it clearly understood that button click records are a core source of relevant data in this case. Shortly after the case was filed, Mr. Wooldridge instructed Meta engineers to use the [redacted] table to [redacted] then, on November 23, 2022, he addressed button click records in the declaration Meta filed in support of its Opposition to Plaintiffs' Motion for a Preliminary Injunction, stating that [redacted] . . ..” Dkt. 142 at ¶¶ 29, 52. Meta nonetheless continued to destroy button click records for eight months after learning of this lawsuit, and for more than three months after Mr. Wooldridge told the Court that Meta was [redacted]

**B. Meta failed to take reasonable steps to preserve button click records.**

Meta was required to suspend its routine retention policy, and to stop deleting button click records on a rolling 90-day basis as soon as it had some notice of this litigation. "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 801 (N.D. Cal. 2024) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006)); *see also Lopez*, 2024 WL 4561320, at *6 ("once a party's duty to preserve takes effect, that party is 'required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation'" (citation omitted)); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1070.

Despite its preservation obligations, Meta did not suspend its routine document retention/destruction policy for the [redacted] table until February 2023. Had Meta

preserved the [redacted] table when the complaint was filed in June 2022, Meta would have retained button click records starting 90 days earlier, starting March 19, 2022. *See* Hashmi Decl. at ¶ 6 ([redacted] table has 90-day retention period). Instead, Meta took no action to preserve button click records until February 2023, thus only preserving data going back to November 26, 2022—after many hospitals had already limited or disabled the Pixel on their websites. Meta also did not preserve data in the [redacted] table for transmissions that occurred before February 17, 2023. Xia Decl. at ¶ 6, Dkt. 495-8; Ex. 5 (Meta's 1st Suppl. Resp. to Pls. RFAs, No. 39 at 59).

### C. Meta destroyed eight months of button click records, and those records cannot be restored or replaced.

Meta has admitted, through a sworn declaration and in response to a Request for Admission, that it deleted the data in the [redacted] table for transmissions that occurred before November 26, 2022. *See* Xia Decl. at ¶ 6, Dkt. 495-8; Ex. 3 (Meta's 2d Suppl. Resp. to Pls. RFAs, No. 14 at 14). And Meta likewise admitted in RFA responses that "it has not preserved or otherwise identified or maintained in Meta's systems event-level [button click]" transmissions "which occurred before June 17, 2022" (the day the complaint was filed) for any individuals, including named plaintiffs and members of the putative class. *See* Ex. 3 (Meta's 2d Suppl. Resp. to Pls. RFAs, No. 1 at 6, No. 2 at 8, No. 3 at 11).

This destroyed data "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Dr. Hashmi has concluded that "Meta does not possess and cannot restore the [button click records] for button click events that occurred before November 26, 2022 and is the same as the data stored within the [redacted] and the [redacted] tables." Hashmi Decl. at ¶ 24.

The [redacted] data—the only supposed replacement that Meta has identified—is not "precisely the same data." *3D Sys., Inc. v. Wynne*, No. 21-cv-1141, 2024 WL 3896454, at *6 (S.D. Cal. Aug. 21, 2024). Far from it. As explained above, [redacted] data only includes [redacted] button click records—and button clicks [redacted] are worthless because they do not reflect either the [redacted] Hashmi

Decl. at ¶ 27. Furthermore, the [redacted] table is only preserved going back to July 2, 2022, not March 19, 2022. Xia Decl. at ¶ 6, Dkt. 495-8.

Meta is simply unable to show how the lost evidence can be restored. *See Fishman v. Tiger Nat'l Gas, Inc.*, No. C 17-05351, 2018 WL 6068295, at *4–5 (N.D. Cal. Nov. 20, 2018) ("This order rejects Tiger's argument that plaintiffs have failed to show that these recordings 'cannot be restored or replaced through additional discovery,' as Tiger offers no suggestions as to an evidentiary substitute.") (citing Fed. R. Civ. P. 37(e)); *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 58 (D.D.C. 2023) (deeming relevant information "irretrievably lost" where defendant had not "shown that any of his potentially responsive ESI . . . can be retrieved through alternative means").

**II. Meta's destruction of button click records warrants substantial sanctions.**

Meta's apparent conscious disregard of its obligation to preserve potentially relevant evidence merits sanctions under Rule 37(e).

**A. Meta's spoliation prejudiced Plaintiffs and is sanctionable under Rule 37(e)(1).**

Meta's conduct is sanctionable under Rule 37(e)(1) because, as discussed, Meta "failed to take reasonable steps to preserve" button click records and those records "cannot be restored or replaced through additional discovery," resulting in prejudice to Plaintiffs. Fed. R. Civ. P. 37(e); *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019) (Rule 37(e)(1) satisfied where some ESI is "irremediably lost").

"The prejudice inquiry looks to whether [Meta's] actions impaired [Plaintiffs'] ability to go to trial or threatened to interfere with the rightful decision of the case." *Doe v. Cnty. of San Mateo*, No. 3:15-CV-05496-WHO, 2017 WL 6731649, at *10 (N.D. Cal. Dec. 29, 2017) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)). "Courts in the Ninth Circuit have found prejudice where another party's failure to produce documents forced the non-spoliating party to 'rely on incomplete and spotty evidence.'" *Facebook, Inc. v. OnlineNIC, Inc.*, No. 19-cv-07071, 2022 WL 2289067, at *10 (N.D. Cal. Mar. 28, 2022) (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995)).

The prejudice to Plaintiffs is substantial. As this Court already found, button click records "transmit[] information showing patient status." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d

at 791. The destroyed button click records are thus proof of [redacted] of privacy violations. They would have identified the alleged victims, and each person identified arguably would have been entitled to monetary relief for each violation. By destroying this evidence, Meta has forced Plaintiffs to rely on incomplete data at class certification, summary judgment, and trial.

The prejudice will be felt at the very next stage of this case—class certification. This is apparent in two ways. *First*, the button click records are the only way that Meta can identify which buttons on healthcare provider websites transmitted data to Meta through the Pixel. Meta has repeatedly told Plaintiffs that it does not have separate records that can identify which URLs/buttons the Pixel was deployed on and when. *See* Dkt. 223 at 6-7. Had Meta preserved the button click records, Plaintiffs could use that data to identify the full scope of healthcare provider buttons on healthcare provider websites for which the Pixel transmitted data to Meta between March 19, 2022, and November 25, 2022. Now, Plaintiffs will be forced to rely on incomplete evidence from publicly available sources to identify which buttons transmitted data to Meta through the Pixel before November 26, 2022.

Meta's deletion of this evidence is especially prejudicial because many healthcare providers removed the Pixel from their websites or limited its use after Plaintiffs filed their complaint in June 2022. Journalists investigating the Pixel identified 33 hospitals that had the Pixel on their appointment scheduling page as of June 15, 2022;[5] by September 15, 2022, they found that 85% of the identified hospitals, or 28 of 33, "ha[d] removed the Meta Pixel from their doctor booking pages or blocked it from sending patient information to [Meta]."[6] Meta employees themselves discussed throughout July and August 2022 that many healthcare providers were removing their Pixels. *See, e.g.,* Ex. 19 (PIXEL_HEALTH000639057) ("[S]ome clients have begun removing their Pixel due to these perceived data concerns."); Ex. 20 (PIXEL_HEALTH000084354) ("Has anyone had a good

---

[5] Feathers, *supra* note 1.

[6] Todd Feathers & Simon Fondrie-Teitler, *Meta Faces Mounting Questions from Congress on Health Data Privacy As Hospitals Remove Facebook Tracker*, The Markup (Sept. 19, 2022), https://themarkup.org/pixel-hunt/2022/09/19/meta-faces-mounting-questions-from-congress-on-health-data-privacy-as-hospitals-remove-facebook-tracker

email response to health clients saying they are removing the pixel due to HIPPA concerns?"). When Meta finally began preserving the button click records in February 2023, a substantial amount of information was already lost—as Meta clearly knew. Had Meta preserved the button click records, Plaintiffs would have had a record of all buttons operative on healthcare providers' patient portal and appointment scheduling webpages for three months prior to the filing of the complaint and the publication of the Markup article. By Meta's own admission, it has destroyed those records.

*Second*, Meta will undoubtedly argue that the proposed class is not ascertainable and should not be certified. *See* Gibson, Dunn, & Crutcher LLP, *Emerging Issues and Trends in Class Actions*, Gibson Dunn (Dec. 28, 2023), https://www.gibsondunn.com/emerging-issues-and-trends-in-class-actions-three-splits-and-four-issues-on-horizon-for-2024/ (Gibson Dunn client alert advising that defendants raise ascertainability as a defense to class certification). Meta's document destruction deprives Plaintiffs of the ability to identify class members using Meta's own button click records for pre-November 26, 2022 transmissions.

For these reasons, Meta's destruction of this evidence prejudices Plaintiffs and is sanctionable under Rule 37(e)(1).

**B. Meta's spoliation was intentional and thus is sanctionable under Rule 37(e)(2).**

Meta's spoliation is also sanctionable under Rule 37(e)(2) because Meta's conduct reflects the requisite intent to deprive Plaintiffs of relevant ESI. "[A] party's conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted with the intent to deprive another party of the information's use' under Rule 37(e)(2)." *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) (citing cases). In other words, "whether the spoliator affirmatively destroys the data, or passively allows it to be lost, that party may be sanctioned for the spoliation of evidence" under Rule 37(e)(2). *Doe v. Wesleyan Univ.*, No. 3:19-cv-01519 , 2022 WL 2656787, at *15 (D. Conn. July 8, 2022). Upon a finding of intent, "no separate showing of prejudice is required because 'the finding of intent . . . can support . . . an inference that the opposing party was prejudiced by the loss of information.'" *Borum*, 332 F.R.D. at 48 (quoting Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment); *accord In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 994 (N.D. Cal. 2023).

"Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Jones*, 95 F.4th at 735. Courts find a variety of circumstantial evidence probative of intent, including "the timing of the destruction, affirmative steps taken to delete the evidence, and selective preservation." *Id.* at 735; *see also Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 5:18-cv-00420, 2020 WL 1496444, at *9-10 (C.D. Cal. Feb. 27, 2020) ("Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence," especially where that party is a "sophisticated party who had the assistance of experienced civil litigation counsel."), *report and recommendation adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020). The preservation of some sources of information but not others around the same time is evidence of intentional destruction. *Jones*, 95 F.4th at 736;[7] *see also Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773 (E.D. Mich. 2019) (finding intent where the destroying party "had notice as to the importance of preserving" the lost data, and made a "choice to preserve *some but not all* pertinent [] evidence") **(emphasis in original)**. The Ninth Circuit recently recognized that "obfuscatory actions" are relevant to a defendant's "intent to deprive [the other party] of potentially relevant ESI." *Burris v. JPMorgan Chase & Co.*, No. 21-16852, No. 22-15775, 2024 WL 1672263, at *2 (9th Cir. Apr. 18, 2024).

Meta's selective preservation, timing of destruction, potential motivation for destruction, and subsequent obfuscation show that Meta acted with intent to destroy the button click records. Meta selectively preserved earlier data only for Pixel transmissions that Meta contends are not legally relevant to this case, while allowing data it knew to be critical to be destroyed. Specifically, Meta is producing data from six tables that reflect data intercepted by Meta's Collection Tools (including the Pixel). Dkt. 452 at 2 n.1. Of these six tables, only two tables—[redacted] and [redacted]—contain button click records for [redacted] events. Yet Meta

[7] In response to the defendant's argument that she had produced "thousands" of documents, the Ninth Circuit noted that the "production of some evidence does not excuse destruction of other relevant evidence." *Jones*, 95 F.4th at 736.

began preserving the *other* four data tables—that lack button click records—on or before July 12, 2022, which is less than a month after Plaintiffs filed their complaint. Xia Decl. at ¶ 6, Dkt. 495-8, Meta then waited seven more months, until February 24, 2023, to implement a litigation hold on the [redacted] table. At the same time, Meta's position was that the only legally relevant Pixel transmissions are patient portal logins and appointment scheduling functions, both of which are stored in button click records. Dkt. 222 at 5.

The timing of Meta's preservation of button click records is also evidence of intent. From the inception of this case, Meta, a sophisticated party represented by sophisticated counsel, was on notice—repeatedly—of the importance of the button click records. *See, e.g.*, Compl. ¶ 5, Dkt. 1; Dkt. 46 (Pls.' Prelim. Inj. Mot.); Dkt. 142 at ¶¶ 28-30, 52 (Wooldridge Decl.). However, Meta delayed preserving this evidence until after many healthcare providers had removed the Pixel or limited its use, drastically limiting the available button click record evidence on the scope of its collection of health data.

Meta's "motive" is also relevant to whether to impose sanctions and which sanctions are appropriate. *See*, *e.g.*, *Medina v. Boeing Co*., No. 8:20-cv-00304, 2022 WL 599021, at *2 (C.D. Cal. Jan. 27, 2022). Meta appears to have sought to absolve itself from [redacted] if not [redacted] of dollars in financial exposure by erasing the button click records. Meta engineers, including Mr. Wooldridge, discussed the button click records internally immediately after Plaintiffs filed their complaint and for several months afterward, acknowledging the potential financial "consequences" to Meta of [redacted] *See* Exs. 6-11. Meta's motives are easy to ascertain and difficult to explain.

Furthermore, Meta obfuscated that it had destroyed the button click records for more than a year after it knew of their critical relevance to this case, seeking permission from the Court to delete data, which the Court denied (Dkt. 191 at 12; Dkt. 253 at 2), while representing to the Court that it was complying with its preservation obligations in this case. *See* Ex. 12 (Jan. 17, 2023 Hr'g Tr. at 3:24-4:5).

It is evident that Meta knew the button click records are highly relevant and constituted a serious liability risk. Consequently, whether the Court holds that Meta affirmatively destroyed

button click records, or passively allowed them to be lost, the result is the same—Meta should be sanctioned under Rule 37(e)(2).

**III. Sanctions are necessary and appropriate.**

Sanctions are needed to cure the prejudice to Plaintiffs and the putative class members resulting from Meta's destruction of button click records. This Court has broad discretion to order sanctions upon finding that Meta has spoliated ESI in violation of Rule 37(e)(1) and (e)(2).

*First*, the Court should deem that the Pixel transmitted button click records for patient portal logins and medical appointment scheduling functions to Meta between March 19, 2022, and November 25, 2022, for ***any*** healthcare provider that had the Pixel on its website during that time period. This is the same type of sanction that the court granted in *Resnik v. Coulson*, No. 17-cv-676, 2019 WL 2256762, at *16 (E.D.N.Y. Jan. 4, 2019), *report and recommendation adopted*, 2019 WL 1434051 (E.D.N.Y. Mar. 30, 2019). In *Resnik* the defendant failed to preserve evidence relevant to his use of spyware to surveil the plaintiff and the court ordered that the "defendant be deemed to have installed and used spyware on [plaintiff's] telephone from on or about October 6, 2014, to on or about October 31, 2014. *Id.* A sanction like this would be appropriate because Meta has stated it cannot identify what buttons existed on healthcare provider websites without the button click records. Indeed, Meta has repeatedly told Plaintiffs that it does not have separate records that can identify which URLs/buttons the Pixel was deployed on and when. *See* Dkt. 223 at 6-7. Thus, without this sanction, it appears that Plaintiffs would have to rely solely on incomplete evidence from publicly available sources to identify which buttons transmitted data to Meta through the Pixel prior to November 26, 2022. Meta cannot be permitted to reduce the size of the class through the deletion of data.

*Second*, the Court should deem that any named Plaintiff or putative class member who visited a healthcare provider website that had the Pixel between March 19, 2022, and November 25, 2022, had a button click (through a patient portal log-in or medical appointment scheduling) transmitted to Meta, and that their transmission record was stored in the [redacted] and [redacted] tables. This sanction would partially cure the prejudice arising from the destroyed button click records, since those records would have been "'capable of showing' which

individuals [signed in to a patient portal or requested an appointment] and had their communication intercepted," and they could have been used for class certification. *Torres v. Prudential Fin., Inc.*, No. 22-cv-7465, 2024 WL 4894289, at *9 (N.D. Cal. Nov. 26, 2024). It is a narrower version of the sanction imposed in *Lopez v. Apple*, where Apple deleted Siri data that reflected Apple's privacy violations and the court held that "Apple should be precluded from affirmatively arguing or otherwise using Plaintiffs' failure to make certain showings that they could have made if they had access to the deleted Siri data." 2024 WL 4561320, at *9. Meta should similarly be precluded from contesting class certification based on the absence of data it spoliated.

*Finally*, the Court may craft additional relief (including at Plaintiffs' request) now or at later stages of the litigation, including at class certification, summary judgment, and trial. *See Lopez*, 2024 WL 4561320, at *9; *see also In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981 (N.D. Cal. 2023) (discussing hearings on remedies after finding spoliation). Meta's intentional and prejudicial destruction of important records may require even stronger medicine as this case advances to class certification or the merits stage, notwithstanding that Plaintiffs have compelling classwide evidence that Meta violated federal and state law, and should be held liable for classwide damages and permanently enjoined.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to find that Meta violated Rule 37(e) and impose appropriate sanctions.

Dated: December 30, 2024

By: */s/ Geoffrey Graber*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
ggraber@cohenmilstein.com
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699

By: */s/ Jason 'Jay' Barnes*
**SIMMONS HANLY CONROY LLP**

Jason 'Jay' Barnes (admitted *pro hac vice*)
jaybarnes@simmonsfirm.com
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel: 212-784-6400
Fax: 212-213-5949

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
koncius@kiesel.law
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel: 310-854-4444
Fax: 310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.: 206-816-6603
Fax: 206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
amm@classlawgroup.com
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.: 510-350-9700
Fax: 510-350-9701

*Attorneys for Plaintiffs and the Proposed Class*

**CIVIL L. R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Geoffrey Graber, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: December 30, 2024

By: */s/ Geoffrey Graber*
Geoffrey Graber