March 25, 2025

Judge Virginia K. DeMarchi
San Francisco Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      **Re:**    ***In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)**

Dear Judge DeMarchi,

      Pursuant to this Court's Standing Order, plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

## A.      STATEMENT OF THE DISPUTE REQUIRING RESOLUTION

<u>**Meta's Position**</u>:  Core to plaintiffs' complaint is their allegation that Meta disguises its third-party cookies as first-party cookies for plaintiffs' healthcare providers, and is able to surreptitiously collect and associate plaintiffs' health information with their identities. Plaintiffs' allegations directly implicate discovery regarding other cookies that facilitated the collection of the same information and provided it to entities other than Meta, leading to the targeted ads plaintiffs allege they received.  Yet plaintiffs have refused to produce documents responsive to RFP 74 evidencing the cookies on their devices and browsers. Meta thus requests the Court compel plaintiffs to produce documents responsive to RFP 74.

*Plaintiffs' position*:  Meta seeks an unlimited and indiscriminate list of cookies from Plaintiffs' devices and browsers without identifying which cookies—if any—it contends are relevant to claims or defenses. This demand for all cookies is a departure from Meta's more limited request during conferrals—a request it has abandoned. Courts have refused to compel the production of cookies on privacy grounds, especially where the request is overbroad and of dubious relevance. Because Meta has failed to establish the information it seeks is relevant and proportional, the Court should follow the approach of other courts and deny Meta's request here.

## B.      META'S POSITION

## I.      Plaintiffs' refusal to produce documents responsive to RFP 74 has no logical basis.

      Plaintiffs allege "Meta collects . . . identifiable health information and uses 'cookies' to match it to Facebook users, allowing its healthcare Partners and others to target advertisements

both on and off Facebook" to plaintiffs and putative class members.  Dkt. 335 ¶ 13; *see also id.* ¶¶ 45, 50, 63, 68–70, 76–79, 88(g), 95(g), 467–68, 490–93.  Plaintiffs claim that targeted advertising harms them and putative class members, and Meta alone caused this harm.  *Id.* ¶¶ 286, 297, 435.  But websites and apps ubiquitously use cookies to collect data regarding users, as courts regularly recognize.  *See e.g., Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (collecting cases).  Thus, non-Meta cookies likely collected plaintiffs' health information and shared it with other third-parties, resulting in targeted ads to plaintiffs that did not emanate from Meta's alleged collection.

Accordingly, Meta's RFP 74 seeks discovery on what cookies are deployed on the devices and browsers that the named plaintiffs used to access their healthcare provider websites.  *See* Ex. 1 at 164 (RFP 74).  As Meta explained repeatedly, Meta's experts need the named plaintiffs' full cookie data to determine which deployed cookies also collected and transmitted the healthcare data that is central to plaintiffs' claims.  Yet, even though plaintiffs have based their case on improper cookie collection, and even though there is no dispute that plaintiffs have responsive information, plaintiffs have refused to produce the requested data.

Plaintiffs' central objection is that the relevant requested data is comingled with irrelevant data.  This objection is meritless.  Under Rule 26(b)(1), Meta "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Rule 26(b) sets a "low threshold for relevance."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006).  Meta need demonstrate only a single basis for the requested discovery to obtain it.  *See Hartford Cas. Ins. Co. v. First Specialty Ins. Corp.*, 2016 WL 4447262, at *2 (N.D. Cal. Aug. 24, 2016).

Plaintiffs' own allegations necessitate discovery of the cookies on their devices and browsers because that discovery is probative of whether: (1) other third-party cookies could have collected and shared plaintiffs' data; (2) there is harm sufficient to support plaintiffs' claims; and (3) individual factual issues preclude class certification.

### a. Meta needs plaintiffs' responsive data to determine whether other third parties' cookies shared plaintiffs' information.

Plaintiffs seek damages based on "[t]he loss of privacy due to Meta making sensitive and confidential information . . . that Plaintiffs and Class members intended to remain private no longer private."  *Id.* at ¶¶ 411(e), 440(e), 472(e), 486(f).  But, given that plaintiffs admit they have numerous cookies on their devices and browsers, they likely authorized other third party cookies to collect their health information.  This undercuts plaintiffs' allegations that (1) Meta was solely responsible for plaintiffs' alleged healthcare data collection; and (2) plaintiffs maintained a reasonable privacy expectation in the health information they shared online.

As numerous courts have held, documents and data evidencing that plaintiffs authorized other third-party cookies to collect information on healthcare provider websites reduces plaintiffs' claimed privacy expectations. For example, *see*:

- *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994): Holding the plaintiff in a privacy invasion case must have conducted himself in a manner consistent with a privacy interest on his part where he publicly disclosed identifying information.

- *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690–91 (N.D. Cal. 2021): Analyzing a privacy intrusion's offensiveness and plaintiff's privacy expectations based on finding that "whether a 'plaintiff has a reasonable expectation of privacy in the circumstances' and whether 'defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact,'" and finding the plaintiff failed to allege either. (quoting *Hill*, 7 Cal. 4th at 40)).

Indeed, plaintiffs' claims related to their "reasonable expectations of privacy" are contingent on proving that Meta's cookies use was secret or deceptive, and inconsistent with the "routine behavior" of other cookies to which plaintiffs consented. *See Hubbard*, 2024 WL 3302066, at *7; *see also Hammerling*, 615 F. Supp. 3d at 1089.

Plaintiffs' cited cases do not address the issue at hand: those discovery disputes either do not center on cookies at all, or they are not about what information specific cookies collect and share. *See, e.g.*, *Lineberry v. Addshoppers, Inc.*, 2024 WL 4707986, at *3 (N.D. Cal. Nov. 6, 2024) (discovery dispute about browsing history and emails, not cookies); *In re Marriott, Inc. Customer Sec. Breach Litig.*, 2021 WL 961066, at *2 (D. Md. Mar. 15, 2021) (dispute about malware scan, not cookies); *Henson v. Turn, Inc.*, 2018 WL 5281629, at *8 (N.D. Cal. Oct. 22, 2018) (claims involved general hidden tracking practices, and plaintiffs agreed to produce cookies on plaintiffs' devices). Here, by contrast, plaintiffs' claims center on whether Meta was responsible for collecting and transmitting their health information. Thus, alternative causes of this transmission is key to the claims and defenses in this action.

Accordingly, Meta is entitled to discovery regarding what other third-party cookies on plaintiffs' devices and browsers may have collected the sensitive information at issue and shared it for targeted advertising purposes.

### b. RFP 74 seeks necessary documents and data regarding plaintiffs' alleged harm and damages.

Meta is also entitled to discovery that bears directly on plaintiffs' alleged harm. Here, plaintiffs allege that Meta harmed them through alleged illicit collection of sensitive information

that was then used to target ads.  Dkt. 335, ¶ 91.  But if plaintiffs shared their sensitive health information with other third parties or if other third-party cookies resulted in targeted ads to plaintiffs, then plaintiffs cannot prove that Meta's Business Tools specifically harmed plaintiffs. The discovery is also relevant and necessary as to plaintiffs' standing because their alleged injuries must be fairly traceable to Meta's alleged misconduct.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

      **c.**    **The discovery sought relates to class certification.**

In evaluating class certification, the Court will determine whether "each user actually maintained their reasonable expectation of privacy," and courts have held that such evaluation presents "individualized factual questions" that would "overwhelm common issues at class certification." *Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *9–11 (N.D. Cal. Mar. 30, 2023).  Included among the individual issues relevant to this inquiry is the varying extent to which each named plaintiff had other third-party cookies that collected and shared their health information.  The variation in this information bears directly on these certification issues.

The scope of Meta's request for documents and data evidencing the cookies on the devices and browsers the named plaintiffs used to access their healthcare providers websites is thus relevant to evaluate plaintiffs' forthcoming class certification request.  The Court should order the named plaintiffs to produce documents and data responsive to RFP 74.

**II.  Plaintiffs thwarted Meta's efforts to resolve this dispute without Court intervention.**

Meta sought to negotiate with plaintiffs regarding RFP 74's scope, but plaintiffs' position was unsubstantiated and unwavering.  Plaintiffs insisted that Meta provide a list of cookies for which Meta requests plaintiffs search their devices and browsers.  As Meta repeatedly explained, plaintiffs requested the impossible: there are hundreds of thousands of cookies  and that universe expands daily.  The only way for Meta's experts to determine which other third-party cookies on the plaintiffs' browsers and devices could have collected and transmitted their health data is to examine all the cookies that were actually on the plaintiffs' devices and browsers.  Nevertheless, plaintiffs refused to respond to RFP 74.

Attempting to avoid court intervention, on February 28, Meta offered a compromise: plaintiffs' experts could conduct the analysis of the named plaintiffs' cookies using a mutually agreed upon protocol.  Meta explained to plaintiffs that, after consulting with Meta's experts, identifying the relevant cookies would require plaintiffs' experts to analyze each cookie (or establish a volume and type-dependent protocol to analyze them) to identify (1) the cookies that could be used by or on health-related websites or social media-related websites,; and (2) advertising and analytics-related cookies.  Meta further explained that the specific process to

analyze the cookies to identify relevant ones would depend on the volume and kinds of cookies the named plaintiffs had, which is information uniquely in plaintiffs' possession. Meta thus offered to consider a specific protocol from plaintiffs' experts (somewhat akin to a search term proposal). During the parties' March 13, 2025 lead counsel meet and confer, plaintiffs refused to consider such a protocol. Meta informed plaintiffs that because plaintiffs were unable to identify a protocol by which they could identify the relevant cookies, plaintiffs must produce the full cookies list as Meta's RFP 74 initially requested.

## C.    PLAINTIFFS' POSITION

RFP 74 seeks all documents showing "the cookies on [plaintiffs'] devices and/or browsers" for *every device* and *browser* Plaintiffs used to access their healthcare providers' websites and patient portals. Meta admits that it seeks a list of all cookies, without restriction as to the type of cookie or which website set it. This request is wildly overbroad and unduly invasive: the list of cookies extracted from Plaintiffs' devices numbers in the thousands, sometimes tens of thousands (one of Jane Doe X's devices alone has over 15,000 cookies on it). Disclosing every cookie on Plaintiffs' devices would reveal sensitive and completely irrelevant information about Plaintiffs' online habits relating not just to shopping and general browsing, but to banking, political views, and even visits to adult websites (if there were any).

Meta's Answer makes no mention of non-Meta cookies, and thus Meta has never attempted to raise any defense predicated on such cookies. *See* Dkt. 497 at 77-88. Unsurprisingly, then, its response to Plaintiffs' Rog 10, which asked Meta to "[e]xplain the legal and factual basis for your contention that the class cannot be certified," also makes no mention of non-Meta cookies. Because discovery is cabined by claims or defenses, and neither party is seeking recovery from or asserting a defense based on non-Meta cookies, Meta's discovery request seeks information that neither party has put at issue.

That alone should resolve this motion. But even if Meta had a colorable basis to assert a defense based on non-Meta cookies—an assertion it never explicitly made—Meta refused during conferrals to identify which cookies it believes are relevant. Instead, Meta maintained that it should be allowed to collect all cookies so that it can then figure out which are relevant—further underscoring that Meta is on a proverbial fishing expedition. Courts regularly reject requests like this, and this Court should do so here.

## A.  History of the Dispute

After Meta served RFP 74 on September 22, 2023, Plaintiffs objected that the request was not narrowly tailored to seek relevant documents and implicated significant privacy concerns by

seeking irrelevant cookie information. We offered instead to search for any Meta cookies, or to further meet-and-confer with Meta on how to narrow the request.

Meta did not respond to Plaintiffs' objections for seven months. Then, in a letter dated June 22, 2024, Meta rejected this proposed limitation, and asserted that cookie information was relevant to determining whether a cookie *unrelated* to Meta could have catalogued Plaintiffs' health information and resulted in showing Plaintiffs targeted ads related to their health information. Although we disagree that any non-Meta cookies are relevant, Plaintiffs responded on July 19th that Meta's request should at least be limited to cookies Meta contends are relevant, and offered to consider a list of specific cookies that Meta believes have the capability to catalogue health information for use in advertising. Meta did not respond for another two months, then rejected this proposal without offering any counterproposal.

To try to resolve this dispute before the substantial completion deadline, Plaintiffs confirmed in correspondence dated November 1, 2024, that an unlimited cookie list would reveal significant information about Plaintiffs' personal habits that are in no way relevant to this case, confirmed that Meta did not dispute that a significant number of cookies are not relevant, and that Meta has not identified any specific cookies or types of cookies that it believed *were* relevant which Plaintiffs should search for. Plaintiffs further noted that it seemed highly improbable that Meta is unaware of its competitors' cookies that could function similarly to the pixel, and further noted that if Meta truly is not aware of any such cookies, it had not laid the foundation for why a complete cookie list would be relevant to any defense. We informed Meta that without further information, we did not intend to produce cookie lists.

Meta did not respond for another three months, after substantial completion. On February 7, 2025, Meta sent Plaintiffs an omnibus letter demanding all responsive documents to 34 separate requests, including RFP 74, where it again demanded an unlimited cookie list without any narrowed proposal.

The parties conferred about the scope of the request, and Plaintiffs tried to understand the basis for Meta's refusal to identify the cookies it believed could be relevant, asking:

1) Whether counsel had conferred with their client about which cookies Meta understands to be pixel competitors, as Meta is a highly sophisticated company whose revenue depends on its ability to serve targeted ads. Meta refused to answer.
2) Whether Meta otherwise investigated what cookies are likely to be responsive. Meta again refused to answer, and insisted a cookie-by-cookie analysis was required.
3) What Meta's cookie-by-cookie analysis would entail, so we could consider the potential feasibility and burden of having our own experts undertake the analysis. Meta said only: "the analysis would require analyzing each cookie (or coming up with a protocol to

analyze them, depending on the volume)." But Meta never explained "the analysis" or "the protocol" and refused to answer follow-up questions.

4) Finally, because Meta admitted that it has no actual knowledge that any particular cookie is in fact relevant, what Meta's basis was for believing that non-Meta cookies were relevant. Meta again refused to answer.

### B. By failing to identify the cookies Meta contends are relevant, Meta has not met its burden.

Plaintiffs do not claim that any party can avoid producing relevant information because some information may be irrelevant. But it remains the requesting party's burden to establish the documents it seeks are relevant and proportional. *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 2013 WL 3246094, at *21 n.84 (N.D. Cal. June 26, 2013). Further, relevancy is determined based on claims and defenses—and neither the claims nor defenses here seek relief based on non-Meta cookies.

Ignoring all this, Meta assumes that non-Meta cookies could be relevant because this case is about a cookie—the Pixel. But even if a claim or defense were predicated on non-Meta cookies—again, not this case—courts do not require the production of full cookie lists, instead finding that such requests are overbroad and unduly infringe on privacy interests—even in cases about online tracking. *See Henson v. Turn, Inc.*, 2018 WL 5281629, at *8 (N.D. Cal. Oct. 22, 2018) (rejecting request for all cookies in a tracking case because defendant " has not shown that its request for plaintiffs' full browsing history or cookies is relevant or proportional to the needs of this case"); *see also Marriott Int'l, Inc. Customer Sec. Breach Litig.*, 2021 WL 961066, at *10-11 (D. Md. Mar. 15, 2021) (rejecting request to review content on devices and ordering limited forensic review); *Lineberry v. Addshoppers, Inc.*, 2024 WL 4707986, at *7 (N.D. Cal. Nov. 6, 2024) (rejecting invasive request targeting voluntary sharing with unrelated websites in tracking case).

Here, Meta's only proffered relevance for seeking other cookies is that some other cookie may also have tracked Plaintiffs' health information—but by its own admission, this is purely speculative. That is not enough to justify producing extensive cookie information. *Gilmore v. Safe Box Logistics, Inc.*, 2023 WL 361081, at *3 (N.D. Cal. Jan. 23, 2023) ("Relevance must be established with a concrete, logical chain, as opposed to speculation, guesswork or hopes and wishes as to what the documents or information might reveal.") (collecting cases). Meta did not identify any cookies it contends are relevant, and claims the relevance of any given cookie is unknowable prior to production. If Plaintiffs' cookie lists lack relevant cookies, they do not contain relevant information and should not be produced. But under Meta's approach, it is quite possible that Plaintiffs would produce cookie lists that contain no relevant cookies.

That is not the approach to discovery the Court has adopted in this case. Where a party asserts its belief that a data source contains relevant information, the Court has routinely imposed reasonable standards that obligate the requesting party to identify with some specificity *what* information it seeks and *why* that information is required. *See, e.g.*, Dkt. 585 (ordering conferrals about a process for identifying relevant information instead of requiring automatic production); Dkt. 561 (same); Dkt. 585 (same). But Meta has never identified which cookies it believes to be relevant or explain its basis for so believing.

In any event, Meta's offer to develop a "protocol" for Plaintiffs to do its work for it remains unacceptably vague and, ultimately, comes far too late in discovery to be genuinely workable—particularly given its failure to assert a defense based on non-Meta cookies and its refusal to identify other such cookies in its Interrogatory answers. Plaintiffs first objected to the scope of this request 16 months ago; Meta acquiesced through silence for over a year. Proposing at the eleventh hour that the parties devise some type of back-and-forth negotiated protocol to search for speculatively relevant cookies would seriously delay the case schedule, even if said protocol were described with any detail whatsoever.

For all these reasons, Meta's request should be denied.

### D.    NEED FOR A HEARING

**Meta's Position:**  Meta is available for a hearing on this issue and, if ordered by this Court, prefers an in-person hearing.

*Plaintiffs' position:* Plaintiffs believe this matter is suitable for determination without a hearing but are available for a hearing if the Court requests.

### E.    CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets the following deadlines:

*Parties substantially complete document production*:  December 18, 2024

*Fact discovery cut-off*:  April 18, 2025

*Expert discovery cut-off*:  July 17, 2026

### F.    STATEMENT RE COMPLIANCE WITH STANDING ORDER

The parties complied with the Court's discovery dispute resolution procedures. Darcy Harris, lead counsel for Meta, and Andre Mura, lead counsel for plaintiffs, met and conferred on March 13, 2025, regarding this dispute via conference call.

**G.    ATTACHMENTS**

- Exhibit 1: Plaintiffs' Responses and Objections to Meta's First Set of Requests for Production to Jane Doe I

Dated: March 25, 2025                          **GIBSON, DUNN & CRUTCHER LLP**

                                               By:   */s/  Lauren R. Goldman*
                                                       Lauren R. Goldman

                                               LAUREN R. GOLDMAN (pro hac vice)
                                               lgoldman@gibsondunn.com
                                               DARCY C. HARRIS (pro hac vice)
                                               dharris@gibsondunn.com
                                               200 Park Avenue
                                               New York, NY 10166
                                               Telephone: (212) 351-4000
                                               Facsimile: (212) 351-4035

                                               ELIZABETH K. MCCLOSKEY (SBN 268184)
                                               emccloskey@gibsondunn.com
                                               ABIGAIL A. BARRERA (SBN 301746)
                                               abarrera@gibsondunn.com
                                               One Embarcadero Center, Suite 2600
                                               San Francisco, CA 94111-3715
                                               Telephone: (415) 393-8200
                                               Facsimile: (415) 393-8306

                                               *Attorneys for Defendant Meta Platforms, Inc.*

Dated:  March 25, 2025

By:     /s/  Jason 'Jay Barnes
        Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949

By:     /s/  Geoffrey Graber
        Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

By:     /s/  Andre M. Mura
        Andre M. Mura

**GIBBS MURA LLP**

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:   510-350-9700
Fax:    510-350-9701

**KIESEL LAW LLP**

Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:    310-854-0812

11

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:   206-816-6603
Fax:    206-319-5450

*Attorneys for Plaintiffs and Putative Class*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: March 25, 2025                    By:    */s/  Lauren R. Goldman*