UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br>All Actions. | Case No. 22-cv-03580-WHO (VKD)<br><br>**ORDER RE APRIL 15, 2025 DISCOVERY DISPUTE RE PAYMENTS FOR CONSUMER DATA**<br><br>Re: Dkt. No. 976 |
|---|---|

The parties ask the Court to resolve their dispute regarding whether Meta should be required to produce documents reflecting payments it has made for certain consumer data. Dkt. No. 976. The Court finds this dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).

For the reasons explained below, the Court orders Meta to produce documents sufficient to show the amounts Meta paid to consumers or third-parties, during the relevant time period, through panels like Viewpoints, Yougov, and the Facebook Study App, for consumer information, including browsing history information, health information, and purchase history, regardless of whether the program involves a vendor.

## I.  BACKGROUND

Plaintiffs ask Meta to produce documents showing how much Meta has paid consumers and other companies for consumer data. Dkt. No. 976 at 2. Plaintiffs state that "consumer data" includes "consumers' online activity, browsing history information, health information, purchase history, and other personal information." *Id.* at 1 n.1. They assert that their RFPs 106 and 107 seek these documents. *Id.* at 2. These RFPs are not attached to the parties' discovery dispute letter, but Meta does not dispute that these requests call for the documents described.

1    Plaintiffs advise that they require the requested payment records in support of their
2    damages model, which will be based on "the market value of consumers' data and/or the right to
3    track consumers' data." *Id.* at 1. They argue that the amounts Meta itself pays to consumers or to
4    other companies for consumer data are relevant inputs to this damages model. *Id.* at 2. Meta
5    responds that the discovery plaintiffs seek is irrelevant because the payments in question do not
6    reflect the value of the underlying data, but rather participants' time and effort spent participating
7    in a particular research program. *Id.* at 1, 5, 6. And with respect to vendor-run research programs,
8    Meta's payments show at most the value Meta places on the vendors' services. *Id.* at 7. In
9    addition, Meta argues that to the extent plaintiffs seek documents regarding payments to
10   consumers who participated in research run by vendors, Meta may not have responsive documents
11   in its possession, custody, or control, or would need to undertake "a potentially voluminous
12   custodial document review" for documents showing whether a vendor happened to communicate
13   to a Meta employee information about participant payments. *Id.* at 5-6.

## II. DISCUSSION

For the reasons explained by plaintiffs, the Court agrees with plaintiffs that information about the amounts Meta has paid consumers who share their consumer data with Meta is potentially relevant and discoverable. Even if, as Meta contends, Meta's payments are for something other than the value of the underlying data and thus an unreliable basis for constructing a damages model, that objection should be raised at the appropriate time as a challenge to plaintiffs' damages model. *See Brown v. Google, LLC,* No. 20-cv-3664-YGR, 2022 WL 17961497, at *5 (N.D. Cal. Dec. 12, 2022) (concluding that Google's objection that data shared by research participants differs from at-issue data goes to weight, not admissibility of expert damages model); *In re Google RTB Consumer Priv. Litig.,* No. 21-cv-02155-YGR (VKD), 2022 WL 4087514, at *7 (N.D. Cal. Sept. 6, 2022) ("It is possible plaintiffs may be able to construct a reliable damages model using, at least in part, information from the Screenwise program. At the very least, the Court is not prepared to conclude that discovery relating to the Screenwise program is wholly irrelevant.").

With respect to Meta's payments to third-party companies, the Court agrees with Meta that

the connection between those amounts and plaintiffs' anticipated damages model is more attenuated and less likely to be a reliable basis for such model. However, the Court is not persuaded that the payment information plaintiffs seek regarding third-party vendors who conduct research regarding consumer data on Meta's behalf is irrelevant.

Meta's objections regarding the burden of complying with plaintiffs' document requests are well-taken, but those objections can be addressed by appropriate limitations on the scope of production.

Accordingly, the Court orders as follows:

1. By **May 12, 2025**, Meta must produce documents sufficient to show the amounts Meta paid to consumers or third-parties, during the relevant time period, through panels like Viewpoints, Yougov, and the Facebook Study App, for consumer information, including browsing history information, health information, and purchase history, regardless of whether the program involves a vendor.

2. Meta need not undertake a custodial document review, but need only produce responsive documents that are reasonably accessible and in its possession, custody, or control.

3. Nothing in this order expands or alters the scope of any topic in plaintiffs' Rule 30(b)(6) deposition notice.

**IT IS SO ORDERED.**

Dated: April 24, 2025

Virginia K. DeMarchi
United States Magistrate Judge

3