# Proposed Redacted Version of Meta's Motion for Leave to File a Motion for Reconsideration, or To Hold the Court's April 10, 2025 Discovery Order in Abeyance

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8200

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE META PIXEL HEALTHCARE LITIGATION,

This Document Relates To:

All Actions

Case No. 3:22-cv-03580-WHO (VKD)

**DEFENDANT META PLATFORMS, INC.'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION, OR TO HOLD THE COURT'S APRIL 10, 2025 DISCOVERY ORDER IN ABEYANCE**

Hon. Virginia K. DeMarchi

REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

## I. INTRODUCTION

Defendant Meta Platforms, Inc. ("Meta") respectfully requests leave to move for reconsideration of the Court's April 10, 2025 order allowing plaintiffs to depose Mark Zuckerberg, Meta's CEO and board chair. Dkt. 967 ("Order"). First, new material facts confirm plaintiffs have not exhausted all less-intrusive means to obtain the discovery they seek from Mr. Zuckerberg. Civil L.R. 7-9(b)(2). Those less-intrusive means will further confirm that Mr. Zuckerberg does not have unique, relevant knowledge. Second, the Order did not address certain "dispositive legal arguments" Meta presented in the joint discovery dispute letter, Dkt. 908-4 ("Letter Br.") at 4–7, which provides an independent basis to grant Meta's request for leave. Civil L.R. 7-9(b)(3).

Two senior Meta executives—whose depositions plaintiffs had not bothered to request, in their rush to depose Mr. Zuckerberg—will now testify in this case. McCloskey Decl. ¶¶ 15, 17. Each works with Mr. Zuckerberg and has substantial personal knowledge about the issues that formed the basis of the Order, *i.e.*, relevant information Mr. Zuckerberg may have "by virtue of his role pursuant to the FTC Consent Order and as a decision maker regarding certain privacy-related matters at issue in this case." *Id.*; Order at 3. And one is even testifying in a 30(b)(6) capacity, so that he can be further educated regarding Meta's knowledge. McCloskey Decl. ¶ 17. Both are ***more*** likely to provide information that is actually relevant to this case than Mr. Zuckerberg would.

Plaintiffs will soon depose Rob Sherman, Vice President of Policy and Deputy Chief Privacy Officer, as a fact witness. *Id.* ¶ 15. In addition, Meta has designated Fred Leach, Vice President of Product Development, to testify about Rule 30(b)(6) topics pertaining to privacy controls and user consent—topics on which plaintiffs claimed to need testimony from Mr. Zuckerberg, notwithstanding their concession that the topics were appropriate for a corporate representative to address. *Id.* ¶¶ 4, 17; Letter Br. at 3. Because Meta did not know the full slate of fact witnesses plaintiffs would seek to depose, nor the final scope of plaintiffs' 30(b)(6) topics, until after the Order was issued, McCloskey

Decl. ¶¶ 4, 14–15, 17, the depositions of Mr. Sherman and Mr. Leach constitute "new material facts" that "emerg[ed]" after the Order. Civil L.R. 7-9(b)(2).

In addition, Meta respectfully submits that reconsideration is justified because the Order did not address certain material facts or dispositive legal arguments regarding Plaintiffs' failure to exhaust less-intrusive sources of discovery, including sources that confirm that Mr. Zuckerberg does not have unique, relevant knowledge sufficient to justify ordering an apex deposition. Letter Br. at 4. It is notable that plaintiffs sought the Court's intervention after taking only three depositions and before even identifying many of their desired deponents. McCloskey Decl. ¶¶ 9, 15. Plaintiffs cannot manufacture uniqueness by turning a blind eye to other deponents. For example, as Meta noted in the Letter Brief, Michel Protti is Meta's Designated Compliance Officer under the FTC Consent Order. Letter Br. at 4–6; Protti Decl. ¶ 3. Mr. Protti's responsibilities include providing Mr. Zuckerberg with the reports that Mr. Zuckerberg then relies on to perform his duties under the FTC Consent Order, and Mr. Protti signs the same certifications that Mr. Zuckerberg signs–rendering doubtful any claim that Mr. Zuckerberg's knowledge in these areas is unique. Protti Decl. ¶ 7.

As the Court's Order stated, given how "discovery has been conducted in this case," there is "potential for abuse or harassment … with respect to Mr. Zuckerberg's deposition." Order at 4 (cleaned up). In light of this serious risk, new developments since the Order, as well as the arguments that Meta previously made that the Order did not address, the Court should allow Meta to seek reconsideration. In the alternative, Meta moves for an administrative order holding the Order in abeyance until plaintiffs have taken all other apex and 30(b)(6) depositions. Civil L.R. 7-11.

## II. LEGAL STANDARD

Leave to file a motion for reconsideration should be granted if the moving party shows "reasonable diligence"[1] in seeking leave and the "emergence of new material facts … after the time of

[1] Meta acted with "reasonable diligence" by filing this motion "within two weeks" after the Order was issued. *Sullivan v. SII Invs., Inc.*, 2018 WL 1367340, at *2 (N.D. Cal. Mar. 16, 2018).

such order" or a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civil L.R. 7-9(b)(2)–(3).

## III. ARGUMENT

### A. New Material Facts Support Allowing Meta to Seek Reconsideration

The fact that Mr. Sherman and Mr. Leach will be deposed emerged after the Order was issued. Civil L.R. 7-9(b)(2). Those developments support granting Meta leave to seek reconsideration because, once those depositions are taken into account, plaintiffs will be unable to establish that Mr. Zuckerberg "(1) has ***unique***, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery … have been ***exhausted without success***." *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) (emphasis added).

***Newly Emerged Material Facts.*** Before moving to compel Mr. Zuckerberg's deposition, plaintiffs had ***never*** identified the supposed relevance of the April 23, 2020 FTC Consent Order ("Consent Order," Dkt. 965), and plaintiffs had ***never*** asked to depose any of the executives at Meta who are tasked with executing the duties described in that Order. McCloskey Decl. ¶¶ 9, 18; Protti Decl. ¶ 5.[2] To the extent plaintiffs truly believe the FTC Consent Order is a topic relevant to this litigation, the apex doctrine requires that they first complete the depositions of Mr. Sherman and Mr. Leach before deposing Meta's CEO.

When plaintiffs moved to compel Mr. Zuckerberg's deposition, the parties' negotiations about plaintiffs' 43 30(b)(6) topics (many with numerous subparts) were in their early stages, and plaintiffs had not yet identified all the fact witnesses they wanted to depose. McCloskey Decl. ¶¶ 5, 9, 15. Plaintiffs did not identify the full slate of those witnesses until April 14, 2025—*i.e.*, four days ***after*** the Order was issued. *Id.* ¶ 15. That same day, the parties agreed that Meta will make Mr. Sherman

[2] As Meta noted in the Letter Brief, "[p]laintiffs have served Rule 30(b)(6) notices identifying 43 topics and more than 130 sub-topics, as well as 44 requests for admission and 23 interrogatories with 92 sub-parts. Yet not a single 30(b)(6) topic, interrogatory, or RFA (or Meta's responses thereto) even mentions Mr. Zuckerberg, any state or federal investigations, the Privacy Committee, the FTC Consent Order, the quarterly privacy reports or certifications, Meta's privacy review escalation process, or the 'Clear History' feature." Letter Br. at 6; McCloskey Decl. ¶ 5.

available for a fact deposition.[3] *Id.* Further, on April 23, 2025, Meta informed plaintiffs of its designation of Mr. Leach for certain privacy-related 30(b)(6) topics, including "user consent" and "user privacy controls," *i.e.*, topics the Order focused on in granting plaintiffs' request for Mr. Zuckerberg's deposition. *Id.* ¶ 17; Order at 3. These developments also emerged after the Order was issued and constitute "new material facts" that warrant allowing Meta an opportunity to seek reconsideration of the Order.

***Exhaustion.*** Plaintiffs can examine Mr. Sherman and Mr. Leach about relevant facts that Mr. Zuckerberg may have learned through his duties "pursuant to the Consent Order." Order at 3. The Consent Order confirms that the information Mr. Zuckerberg relies on to carry out those duties is delivered to Mr. Zuckerberg by other employees at Meta. Dkt. 965 at 20; Protti Decl. ¶¶ 6, 8. These employees' knowledge directly overlaps with (and, undoubtedly with respect to many details, exceeds) Mr. Zuckerberg's, and plaintiffs should not be permitted to leap-frog the entire reporting line.

Moreover, here, Mr. Sherman has extensive personal knowledge of a wide range of Meta's "consequential privacy decisions," including the [redacted] proposal the Court emphasized. Order at 3; McCloskey Decl. ¶ 12. Mr. Sherman was involved in conversations within Meta about [redacted] proposal, so he can therefore testify about any decisions Meta made (or declined to make) about that proposal.

Plaintiffs should not be able to skip past indisputably knowledgeable privacy executives in a rush to Meta's most-apex executive. Both Mr. Sherman and Mr. Leach have worked at Meta for the entire discovery period and have firsthand knowledge of Meta's privacy-related decisions relevant to this litigation, including the exact topics plaintiffs contended they wanted to explore with Mr. Zuckerberg. McCloskey Decl. ¶¶ 12, 17; Dkt. 267 (order setting discovery period); Letter Br. at 1–4. Plaintiffs will have up to seven hours to probe Mr. Sherman's detailed personal knowledge about any issues relevant to this litigation, including Meta's efforts to prevent receipt of potentially sensitive

---

[3] Although plaintiffs had previously requested a deposition of Erin Egan, Meta's Chief Privacy Officer (Policy), Dkt. 845 at 2, Meta learned while the Letter Brief was being prepared that Ms. Egan is unavailable for a deposition during the discovery period because [redacted]. McCloskey Decl. ¶ 8. The parties then agreed that Mr. Sherman would be deposed in her place after Meta produces Mr. Sherman's custodial documents. *Id.* ¶ 15.

data via the Business Tools (such as filters and notifications) and changes in Meta policies concerning advertisement targeting. McCloskey Decl. ¶ 12. Likewise, Mr. Leach is responsible for ***all*** of Meta's Business Tools, including the Pixel, and he oversees all data that Meta receives via the Business Tools—topics plaintiffs can explore in their deposition of Mr. Leach as both a fact witness and 30(b)(6) designee. *Id.* ¶ 17.

***Uniqueness.*** These depositions will confirm that Mr. Zuckerberg lacks "***unique***, non-repetitive, ***firsthand*** knowledge" of relevant facts. *Affinity Labs*, 2011 WL 1753982, at *15 (emphasis added). While the Court correctly observed that the Consent Order provides that Mr. Zuckerberg "'shall rely' on 'his … personal knowledge'" in carrying out his Consent Order duties, Order at 3 (citation omitted), as the leader of one of the world's largest companies, Mr. Zuckerberg acquires knowledge on privacy matters through escalations to him ***by others***. Protti Decl. ¶¶ 6, 8. Indeed, the Consent Order explicitly acknowledges this—it provides that Mr. Zuckerberg shall rely on "sub-certifications regarding compliance [] provided by knowledgeable personnel charged with implementing the Privacy Program" and information included in "the summaries in the Quarterly Privacy Review Report" and the "Covered Incident Reports." Dkt. 965 at 20. Mr. Zuckerberg's secondhand knowledge of these materials is necessarily duplicative. *Brown v. Google, LLC*, 2022 WL 2289059, at *2 (N.D. Cal. Apr. 4, 2022) (reversing grant of deposition even though "documents establish[ed] that specific relevant information was" sent to Google's CEO).

Given the "emergence of [these] new material facts … after the time of" this Court's Order, Meta respectfully requests leave to file a motion for reconsideration. Civil L.R. 7-9(b)(2).

### B. The Order Did Not Address Meta's "Dispositive Legal Arguments" About Exhaustion

Meta should also be permitted to seek reconsideration because the Order did not address Meta's "dispositive legal arguments" regarding plaintiffs' failure to exhaust less-intrusive means to obtain the specific discovery at issue. Civil L.R. 7-9(b)(3); Letter Br. at 6–7.[4] To start, plaintiffs did not cite a

[4] Despite acknowledging Meta's contention in the Letter Brief "that plaintiffs have not attempted, let alone exhausted, other less intrusive means to obtain the discovery they seek," Order at 2, the Order does not ***address*** Meta's dispositive legal argument regarding the exhaustion requirement. *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 935 (N.D. Cal. 2012) (granting leave to seek reconsideration of dismissal order where the court did not "adequately credit" certain allegations despite expressly acknowledging those allegations in the dismissal order).

***single*** attempt—let alone an unsuccessful one—to obtain discovery of relevant facts Mr. Zuckerberg may have learned via his role under the Consent Order, even though Meta pointed out the overlapping roles assigned to Mr. Zuckerberg and the Designated Compliance Officer Michel Protti by the Consent Order. Letter Br. at 4–6. Meta argued that this failure doomed plaintiffs' request, noting that plaintiffs had not exhausted their fact depositions and had not served "a single 30(b)(6) topic, interrogatory, or RFA" that "mentions Mr. Zuckerberg, … the FTC Consent Order, [or] the quarterly privacy reports or certifications" required by the Consent Order. *Id.* at 6. Though plaintiffs did not deny this failure, the Order did not address Meta's exhaustion argument regarding the Consent Order.

Similarly, in characterizing Mr. Zuckerberg's role as a "decision maker regarding certain privacy-related matters," the Order focused on the [redacted] proposal. Order at 3. However, the Order did not address Meta's argument regarding its agreement "to provide 30(b)(6) testimony on user consent issues, including the [redacted] issue"—testimony plaintiffs have not yet taken. Letter Br. at 3; McCloskey Decl. ¶ 17. While plaintiffs argued in the Letter Brief that Mr. Mudd did not recall Mr. Zuckerberg's position on the [redacted] proposal," Letter Br. at 3, Mr. Mudd was deposed as a fact witness. McCloskey Decl. ¶ 7. It is unsurprising that he could not recall specific details of a proposal that was discussed roughly four years ago. By contrast, as Meta's designee for the user consent and other privacy-related issues identified in 30(b)(6) Topics 18, 24, 27–29, and 43, Mr. Leach will be prepared to "testify about information known or reasonably available to" Meta—not just his extensive personal knowledge. *Id.* ¶ 17; Fed. R. Civ. P. 30(b)(6); Dkts. 927-1, 944-3, 969; *Ellena v. Standard Ins. Co.*, 2013 WL 4520200, at *1–2 (N.D. Cal. Aug. 23, 2013) (denying apex deposition where requesting party sought, but had not taken, 30(b)(6) testimony "about the same topic"). Plaintiffs' reliance on a few pages of testimony by a single fact witness and a not-yet-taken 30(b)(6) deposition, Letter Br. at 2–3, simply does not suffice as exhaustion ***without success*** under the apex doctrine. *Affinity Labs*, 2011 WL 1753982, at *15.

Meta thus respectfully requests leave to seek reconsideration on the ground that the Order did not consider Meta's exhaustion arguments. *Brown*, 2022 WL 2289059, at *2 (reversing magistrate

judge's order requiring a deposition of Google's CEO because the order did not "address whether plaintiffs exhausted ***all*** less intrusive means of discovery" (emphasis added)).

**C. In the Alternative, the Court Should Hold Mr. Zuckerberg's Deposition in Abeyance**

If the Court is not inclined to grant leave to file a motion for reconsideration, Meta respectfully requests that the Court hold its Order granting Mr. Zuckerberg's deposition in abeyance until Mr. Sherman and Mr. Leach have been deposed and plaintiffs have exhausted their 30(b)(6) depositions. *Oakley, Inc. v. Neff, LLC*, 2015 WL 4479424, at *2 (S.D. Cal. July 21, 2015) (staying deposition of company president until other apex and 30(b)(6) depositions were complete).

After those depositions are complete, if plaintiffs still believe Mr. Zuckerberg has ***unique*** knowledge concerning the issues that formed the basis of the Court's Order that plaintiffs attempted and failed to obtain from other witnesses, plaintiffs have many other options they should be required to exhaust before they would have a basis to depose Mr. Zuckerberg, such as Nathan Davis (Vice President, Product Management) or Michael Levinson (Vice President, Product Management). Protti Decl. ¶ 5. Mr. Davis reports directly to Mr. Protti and is involved in a variety of privacy-related discussions impacting Meta's products, and Mr. Levinson oversaw Privacy Review for a substantial portion of the relevant discovery period. McCloskey Decl. ¶ 18.

Indeed, if, for some unlikely reason, all these options were insufficient, plaintiffs could even depose Mr. Protti. Mr. Protti is Meta's Chief Privacy and Compliance Officer, Product, and, as set forth above, serves as Meta's Designated Compliance Officer—a position created pursuant to the Consent Order that shares certain responsibilities also assigned to Meta's CEO. Protti Decl. ¶¶ 2–3; Dkt. 965 at 8. In his role as Designated Compliance Officer, Mr. Protti directs a team of Meta personnel tasked with establishing, implementing, and maintaining the Privacy Program pursuant to the Consent Order. Protti Decl. ¶ 5. Mr. Protti is also tasked with delivering quarterly reports to Mr. Zuckerberg that include summaries of privacy review statements identifying material risks to the privacy or confidentiality of user data and include a detailed discussion of those risks, as well as detailed appendices that include all privacy review statements and list all privacy decisions generated during the preceding fiscal quarter. *Id.* ¶ 6. Further, Mr. Protti was involved with the preparation for the April 2021 meeting at which Mr. Zuckerberg was present for a discussion about the [redacted] proposal—

as referenced during the testimony of Mr. Mudd. McCloskey Decl. ¶ 3, Ex. A. After deposing Mr. Sherman and Mr. Leach, and potentially Mr. Davis or Mr. Levinson as well, if plaintiffs still believe they need more information about Meta's privacy-related decision-making, Meta will make Mr. Protti available for a three-hour deposition.

Finally, if plaintiffs, even after exhausting all these less-intrusive means, still believe they need to depose Mr. Zuckerberg, the parties would meet-and-confer in good faith to try once more to resolve the dispute. If those efforts are unsuccessful, the parties would promptly file a joint discovery dispute letter in which plaintiffs could attempt to show that their efforts to obtain the discovery they seek from Mr. Zuckerberg have been unsuccessful.

Holding the Order in abeyance would not affect the case schedule. Dkt. 924 (scheduling order requiring class certification motion by August 8, 2025); Order at 4 (allowing the parties to stipulate to holding Mr. Zuckerberg's deposition after May 30). Nor would plaintiffs suffer any prejudice by deposing Mr. Zuckerberg after May 30, as they have sought to take another deposition after class certification briefing is complete and have acknowledged they understand they may need to wait until after the ongoing FTC trial against Meta concludes in light of the impact of the trial on Mr. Zuckerberg's schedule. McCloskey Decl. ¶ 16; Dkt. 951-2 at 6.

Dated: April 25, 2025

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

*Attorneys for Meta Platforms, Inc.*

108976962.18