# Proposed Redacted Version of the Motion for Reconsideration of the Court's April 10, 2025 Discovery Order

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    (415) 393-8200

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION, | Case No. 3:22-cv-03580-WHO (VKD) |
| | **DEFENDANT META PLATFORMS, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 10, 2025 DISCOVERY ORDER** |
| This Document Relates To: | |
| All Actions | Hon. Virginia K. DeMarchi |

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S MOTION FOR RECONSIDERATION
OF THE COURT'S APRIL 10, 2025 DISCOVERY ORDER
CASE NO. 3:22-CV-03580-WHO (VKD)

# I. INTRODUCTION

Defendant Meta Platforms, Inc. respectfully moves for reconsideration of the Court's April 10, 2025 order permitting plaintiffs to depose Mark Zuckerberg, the CEO and chairman of the board of Meta. Dkt. 967 ("Order"). The Court granted Meta leave to file this motion. Dkt. 997.

Plaintiffs have failed to satisfy either requirement for taking an apex deposition: They have not shown *either* that Mr. Zuckerberg possesses unique knowledge about issues relevant to this case *or* that they have exhausted other sources of information on these topics before seeking his deposition. Plaintiffs claim they want to question Mr. Zuckerberg about his involvement in the privacy decisions at issue in this case, based on the theory that the 2020 FTC Consent Order ("Consent Order," Dkt. 965) required Mr. Zuckerberg to be informed about these decisions. Dkt. 908-4 ("Letter Br.") at 1–3. But there is no evidence that anything Mr. Zuckerberg may have learned through his role pursuant to the Consent Order is at issue in this case. In any event, plaintiffs have failed to demonstrate that Mr. Zuckerberg is the only witness who can testify about these decisions or that they have exhausted other means of discovering any relevant facts. Indeed, when plaintiffs deposed a Meta employee who formerly worked on privacy matters, plaintiffs didn't ask a single question about the Consent Order, the ▮▮▮ proposal,[1] or Mr. Zuckerberg's potential awareness of or involvement in decision-making regarding privacy matters. Hines Decl. ¶ 5.

For two reasons, Meta respectfully submits that the Court should reconsider its Order granting Mr. Zuckerberg's deposition. First, "new material facts" confirm plaintiffs have not exhausted all less-intrusive means to obtain the discovery they seek from Mr. Zuckerberg. Civil L.R. 7-9(b)(2). Those less-intrusive means will further confirm that Mr. Zuckerberg does not have unique, relevant knowledge. Second, the Order did not address certain "dispositive legal arguments" Meta made in

---

[1] Plaintiffs' motion to compel Mr. Zuckerberg's deposition was based in part on a proposal that plaintiffs contend was presented to Mr. Zuckerberg to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 908-4 ("Letter Br.") at 3; Sherman Decl. 4.

-1-
DEFENDANT META PLATFORMS, INC.'S MOTION FOR RECONSIDERATION
OF THE COURT'S APRIL 10, 2025 DISCOVERY ORDER
CASE NO. 3:22-CV-03580-WHO (VKD)

opposition to plaintiffs' request to depose Mr. Zuckerberg. Letter Br. at 5–7; Civil L.R. 7-9(b)(3).

The new material facts justifying this motion came to light shortly after the Court issued the Order. Two senior Meta executives will now testify in this case: (1) Rob Sherman, Vice President of Policy and Deputy Chief Privacy Officer, will testify as a fact witness; and (2) Fred Leach, Vice President of Product Development, will testify as both a fact witness and as Meta's 30(b)(6) witness on topics pertaining to privacy controls and user consent. Dkt. 994-4 ¶¶ 12, 15, 17. Mr. Sherman works with Mr. Zuckerberg, and both Mr. Sherman and Mr. Leach have substantial personal knowledge about the issues that formed the basis of the Order. *Id.* ¶ 17; Sherman Decl. ¶¶ 3–4. And Mr. Leach is testifying in a 30(b)(6) capacity, such that he can be further educated regarding Meta's relevant privacy-related decisions. Dkt. 994-4 ¶ 17. Both witnesses are *more likely* than Mr. Zuckerberg to provide the information plaintiffs seek, including because Mr. Sherman is one of the Meta executives who *advises* Mr. Zuckerberg on privacy issues. Sherman Decl. ¶ 5; Dkt. 994-4 ¶ 17. Because Meta did not know the full slate of fact witnesses plaintiffs would seek to depose, nor the final scope of plaintiffs' 30(b)(6) topics, until after the Order was issued, Dkt. 994-4 ¶¶ 4, 14–15, 17, the depositions of Mr. Sherman and Mr. Leach constitute "new material facts" that "emerge[d]" after the Order. Civil L.R. 7-9(b)(2).

Separately, reconsideration is justified because the Order does not address Meta's dispositive legal arguments regarding plaintiffs' failure to exhaust less-intrusive sources of discovery, including sources confirming that Mr. Zuckerberg does not have unique, relevant knowledge sufficient to justify his deposition. Letter Br. at 4–7. Meta argued that plaintiffs did not cite a single attempt—let alone an unsuccessful one—to obtain discovery of relevant facts Mr. Zuckerberg may have learned via his role under the Consent Order, even though Meta pointed out the overlapping roles assigned by the Consent Order to Mr. Zuckerberg and the Designated Compliance Officer, Michel Protti. *Id.* at 5–7. Meta argued that this failure doomed plaintiffs' request. *Id.* But plaintiffs failed to engage with any

of Meta's arguments regarding exhaustion, and the Order did not reach them.

As the Order states, given how "discovery has been conducted in this case," there is "potential for abuse or harassment … with respect to Mr. Zuckerberg's deposition." Order at 4 (cleaned up). In light of that risk, Meta submits that the Court need not decide at this time whether plaintiffs will *ever* be permitted to take Mr. Zuckerberg's deposition. Instead, plaintiffs should proceed with taking the planned depositions of Mr. Sherman and Mr. Leach. After those depositions are complete,[2] the parties can meet and confer in good faith if plaintiffs still believe Mr. Zuckerberg "has unique, non-repetitive, firsthand knowledge of the facts at issue in the case." *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011).[3]

## II. LEGAL STANDARD

"In this district, a motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment." *Doe 1 v. Wolf*, 2020 WL 5576136, at *2 (N.D. Cal. Sept. 17, 2020) (cleaned up). Meta moved for leave to seek reconsideration on the second and third grounds, and the Court granted Meta's motion. Dkts. 994-3, 997.

## III. ARGUMENT

To depose Mr. Zuckerberg, plaintiffs must establish that he "(1) has *unique*, non-repetitive, firsthand knowledge of the facts at issue in the case, *and* (2) that other less intrusive means of

---

[2] If, at that point, plaintiffs still believe Mr. Zuckerberg has unique, relevant, nonduplicative knowledge, plaintiffs have many other options they should be required to exhaust before they would have a basis to depose Mr. Zuckerberg, such as Nathan Davis (Vice President, Product Management), Michael Levinson (Vice President, Product Management), or even Michel Protti (Chief Privacy and Compliance Officer, Product).

[3] Granting this Motion would not affect the case schedule. Dkt. 924 (scheduling order). To the contrary, granting it would help the parties stay on track with the current schedule, since plaintiffs have acknowledged they may need to wait until after the ongoing FTC trial against Meta concludes before deposing Mr. Zuckerberg, given that trial's impact on his schedule. Dkt. 994-4 ¶ 16.

discovery … have been *exhausted without success*." *Affinity Labs*, 2011 WL 1753982, at *15 (emphases added). Plaintiffs have failed to satisfy either of these requirements.

A.  **The Scheduling of Depositions of Senior Meta Executives Is a Compelling New Fact that Justifies Reconsideration.**

The new facts that justify reconsideration underscore plaintiffs' failure to satisfy the apex doctrine. When plaintiffs moved to compel Mr. Zuckerberg's deposition, the parties' negotiations about plaintiffs' forty-three 30(b)(6) topics were in their early stages, and plaintiffs had not yet identified all the fact witnesses they wanted to depose. Dkt. 994-4 ¶¶ 9, 15. Plaintiffs did not identify the full slate of those witnesses until April 14, 2025—four days after the Order was issued. *Id.* ¶ 15. That same day, the parties agreed that Meta will make Mr. Sherman available for a fact deposition. *Id.* And on April 23, 2025, Meta informed plaintiffs of its designation of Mr. Leach for privacy-related 30(b)(6) topics, including "user consent" and "user privacy control," *i.e.*, topics the Order focused on in granting plaintiffs' request for Mr. Zuckerberg's deposition. *Id.* ¶ 17; Order at 3.

These facts confirm that there are senior Meta executives set to be deposed in this case who will be able to provide more detailed testimony than Mr. Zuckerberg about relevant privacy-related issues. Sherman Decl. ¶¶ 3–5; Dkt. 994-4 ¶¶ 12, 17. Meta respectfully submits that this alone warrants reconsideration of the Order's conclusion "that plaintiffs have shown Mr. Zuckerberg is likely to have at least some unique first-hand knowledge of facts relevant to a claim or defense by virtue of his role pursuant to the FTC Consent Order and as a decision maker regarding certain privacy-related matters at issue in this case." Order at 3.

Prior to moving to compel Mr. Zuckerberg's deposition, plaintiffs had never asked Meta or its witnesses about facts he would have known as a result of his duties under the Consent Order, nor had they signaled that they wished to depose *any* Meta executives tasked with executing the duties described in that Consent Order. Hines Decl. ¶ 4; Protti Decl. ¶¶ 3–8. If plaintiffs truly believe those duties are relevant to this litigation, they must first depose Mr. Sherman, Mr. Leach and potentially

-4-

other lower-level employees with that knowledge before deposing Mr. Zuckerberg.

**B.    Plaintiffs Have Failed to Exhaust Other Avenues of Discovery "Without Success."**

It is plaintiffs' burden to demonstrate that Mr. Zuckerberg alone, among the many thousands of Meta employees, has the information plaintiffs need. *Affinity Labs*, 2011 WL 1753982, at *15. They have not made that showing.

Plaintiffs noticed Mr. Zuckerberg's deposition in November 2024, before they had deposed any other witnesses. Dkt. 994-4 ¶ 4. When they moved to compel his deposition roughly six weeks ago, plaintiffs had taken only three fact depositions and no 30(b)(6) depositions. *Id.* ¶ 9. The record demonstrates that they have not shown, and cannot show, that they have exhausted other potential sources of the evidence they claim they need:

- Plaintiffs have taken seven of their 12 allotted fact depositions, and a fifth of their allotted hours for Rule 30(b)(6) testimony. Hines Decl. ¶ 6. Of those depositions, plaintiffs have asked only a *single* deponent a couple of questions about Mr. Zuckerberg's general knowledge or potential decision-making regarding the privacy decisions at issue in this case. *Id.* Plaintiffs have not even asked to depose anyone who has a formal role in facilitating or overseeing Meta's compliance with the Consent Order other than Mr. Zuckerberg, let alone asked Meta or any deponent to *identify* those individuals. *Id.*

- Plaintiffs' 313 requests for production, and dozens of requests for admission and interrogatories, included zero inquiries regarding Mr. Zuckerberg's involvement pursuant to the Consent Order in the issues in this case. *Id.* ¶ 7.

- When plaintiffs deposed a current Meta employee who conducted privacy reviews for changes made to the Pixel, they did not ask a single question about Mr. Zuckerberg's knowledge or potential decision-making, including relating to the Consent Order or the ▮▮▮ proposal. *Id.* ¶ 5.

In short, plaintiffs have far to go before they can credibly claim that Mr. Zuckerberg alone possesses

information critical to their case.

Plaintiffs should proceed with the depositions of Mr. Sherman and Mr. Leach, both of whom can testify about the very subject that the Court initially thought justified a CEO-level deposition: What Mr. Zuckerberg may have learned through his duties "pursuant to the FTC Consent Order." Order at 3. In particular, Mr. Sherman has extensive personal knowledge of a wide range of Meta's "consequential privacy decisions," including proposals to ▮▮▮▮▮ Sherman Decl. ¶¶ 3–5; Order at 3. Mr. Sherman was involved in conversations within Meta about whether to adopt the ▮▮▮ proposal, so he can testify about Meta's considerations in evaluating that proposal. Sherman Decl. ¶ 4.

Plaintiffs could scarcely ask for better witnesses than Mr. Sherman and Mr. Leach. Both have worked at Meta for the entire discovery period and have firsthand knowledge of Meta's privacy-related decisions relevant to this litigation, including the exact topics plaintiffs say they want to explore with Mr. Zuckerberg. Dkt. 994-4 ¶¶ 12, 17; Dkt. 276 (order setting discovery period); Letter Br. at 1–4. Plaintiffs will have up to seven hours to probe Mr. Sherman's detailed personal knowledge about any issues relevant to this litigation, including Meta's efforts to prevent receipt of potentially sensitive data via the Business Tools (such as filters and notifications) and changes in Meta policies concerning advertisement targeting. Sherman Decl. ¶ 3. Likewise, Mr. Leach is responsible for all of Meta's Business Tools, including the Pixel—which plaintiffs can explore in deposing him as both a fact witness and 30(b)(6) designee. Dkt. 994-4 ¶ 17.

These facts lay bare plaintiffs' failure to "exhaust[] *all* less intrusive means of discovery" concerning supposedly relevant matters escalated to Mr. Zuckerberg through the Consent Order procedures, and that failure alone justifies vacatur of the Order and denial of plaintiffs' request to depose Mr. Zuckerberg. *See, e.g.*, *Brown v. Google, LLC*, 2022 WL 2289059, at *2 (N.D. Cal. Apr. 4, 2022) (reversing magistrate judge's order requiring a deposition of Google's CEO for failure to show

exhaustion).

### C. Plaintiffs Have Failed to Demonstrate that Mr. Zuckerberg Has Unique Knowledge of Relevant Facts.

The depositions of Mr. Sherman and Mr. Leach will confirm that Mr. Zuckerberg lacks "unique, non-repetitive, firsthand knowledge" of relevant facts. *Affinity Labs*, 2011 WL 1753982, at *15. While the Court correctly observed that the Consent Order provides that Mr. Zuckerberg "'shall rely' on 'his … personal knowledge'" in carrying out his Consent Order duties, Order at 3 (citation omitted), that provision does not demonstrate that he *actually has* personal knowledge about any matter relevant to this litigation that is known *only* to him, and plaintiffs made no effort to make such a showing. In other words, the mere fact that Mr. Zuckerberg "shall" rely on his "personal knowledge" in signing a certification does not necessarily mean he *uniquely* possesses any such knowledge on any particular matter addressed in that certification—let alone any matter relevant to this litigation. *In re Yosemite Nat'l Park Hantavirus Litig.*, 2017 WL 2861162, at *3 (N.D. Cal. July 5, 2017) (denying apex deposition on uniqueness grounds where the requesting party failed to show that apex witness's approval of a specific decision actually "affected the design or implementation" of that decision). Nor does it necessarily mean that Mr. Zuckerberg relies *exclusively* on his own personal knowledge; the Consent Order expressly provides that he "shall rely" on information from other sources as well. Dkt. 965 at 20.

CEOs generally learn facts not from percipient exposure, but "based on second-hand information provided by other individuals." *River City Testing v. Cohen*, 2021 WL 4805443, at *3 (C.D. Cal. July 8, 2021). Mr. Zuckerberg acquires knowledge on privacy matters, as necessary, through escalations to him by others. Protti Decl. ¶¶ 5–8; Sherman Decl. ¶ 5; Davis Decl. ¶¶ 3–5. As reflected in the Order, the Consent Order itself acknowledges as much—it provides that Mr. Zuckerberg "shall rely" on "sub-certifications regarding compliance … provided by knowledgeable personnel charged with implementing the Privacy Program" and information included in "the summaries in the Quarterly

Privacy Review Report" and the "Covered Incident Reports." Order at 3 (citing Dkt. 965 at 20). Mr. Zuckerberg's secondhand knowledge of these materials is necessarily duplicative of the knowledge of other Meta employees. *Brown*, 2022 WL 2289059, at *2 (reversing grant of deposition even though "documents establish[ed] that specific relevant information was" sent to Google's CEO).

### D. Plaintiffs Did Not Respond to, and the Order Did Not Reach, Meta's "Dispositive Legal Arguments" About Exhaustion.

An alternative ground for vacating the Order is that it did not address Meta's "dispositive legal arguments" regarding plaintiffs' failure to exhaust less-intrusive means to obtain the specific discovery at issue. Civil L.R. 7-9(b)(3); Letter Br. at 5–7. Meta pointed out that plaintiffs had not exhausted their fact depositions and had not served "a single 30(b)(6) topic, interrogatory, or RFA" that "mentions Mr. Zuckerberg, … the FTC Consent Order, [or] the quarterly privacy reports or certifications" required by the Consent Order. Letter Br. at 6 (emphasis removed). Meta then argued that, as a result of these facts, plaintiffs had failed to establish exhaustion. *Id.* Plaintiffs offered no response to this argument, and the Order did not address it.

More specifically, and as Meta argued in the Letter Brief, the Consent Order requires Mr. Zuckerberg to (1) receive documents concerning Meta's Privacy Program, including quarterly reports, and (2) sign certifications regarding Meta's material compliance with the Consent Order. Letter Br. at 5. Those duties directly overlap with Mr. Protti's duties as Meta's Designated Compliance Officer. Protti Decl. ¶¶ 3–8. Indeed, as Designated Compliance Officer, Mr. Protti is required to (and does) deliver the quarterly reports to Mr. Zuckerberg, and he must sign the same material compliance certifications as Mr. Zuckerberg. Dkt. 965 at 19–20; Protti Decl. ¶¶ 6–7. Where two executives' names appear on the same document, courts have held that the requesting party has not shown "truly unique" knowledge possessed by either executive. *Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 2535067, at *2–3 (D. Colo. June 27, 2011) (where names of the CEO and CFO appeared on the first slide of a presentation, requesting party failed to "establish that [the CEO] has *unique* personal

knowledge regarding the content of the presentation").

Likewise, the quarterly reports are prepared by other personnel overseen by Mr. Protti and others below him in the reporting line. Protti Decl. ¶ 6. Although Meta made these arguments in the Letter Brief, plaintiffs failed to respond to them, and the Order did not address them. Letter Br. at 5. These arguments also support denying plaintiffs' request to depose Mr. Zuckerberg. *Brown*, 2022 WL 2289059, at *2 (reversing grant of deposition even though "documents establish[ed] that specific relevant information was" sent to Google's CEO).

Similarly, in characterizing Mr. Zuckerberg's role as a "decision maker regarding certain privacy-related matters," the Order referenced the ▮▮▮▮ proposal." Order at 3. However, the Order did not address Meta's argument regarding its agreement "to provide 30(b)(6) testimony on user consent issues, including the ▮▮▮▮▮▮ issue"—testimony plaintiffs have not yet taken. Letter Br. at 6; Hines Decl. ¶ 8. As Meta's designee for the privacy controls and user consent 30(b)(6) Topics 18, 24, 27–29, and 43, Dkt. 994-4 ¶ 17,[4] Mr. Leach will be prepared to "testify about information known or reasonably available to" Meta—not just his extensive personal knowledge. Fed. R. Civ. P. 30(b)(6); Dkts. 927-1, 944-3, 969, 994-4 ¶ 17.; *Ellena v. Standard Ins. Co.*, 2013 WL 4520200, at *1–2 (N.D. Cal. Aug. 23, 2013) (denying apex deposition where requesting party sought, but had not taken, 30(b)(6) testimony "about the same topic"). Plaintiffs' reliance on a few pages of testimony by a single fact witness, Letter Br. at 2–3, and a not-yet-taken 30(b)(6) deposition, does not suffice as exhaustion without success under the apex doctrine. *Affinity Labs*, 2011 WL 1753982, at *15.

While plaintiffs argued in the Letter Brief that Mr. Mudd did not recall Mr. Zuckerberg's position on the ▮▮▮▮ proposal," Letter Br. at 3, Mr. Mudd was deposed as a fact witness. Dkt. 994-4 ¶ 7. It is unsurprising that he could not recall specific details of a proposal that was discussed roughly

---

[4] Despite plaintiffs' forty-three 30(b)(6) topics, they failed to include topics relating to Meta's relevant privacy-related decisions—further emphasizing that those topics are not in fact of interest to plaintiffs. Dkts. 927-1, 944-3.

four years ago. And although plaintiffs "have perhaps not obtained the answers they wanted from [Mr. Mudd], that failure does not automatically justify their reaching higher, without the requisite showing of the higher-level official's unique personal knowledge." *Doble v. Mega Life & Health Ins. Co.*, 2010 WL 1998904, at *4 (N.D. Cal. May 18, 2010). To grant an apex deposition based on the testimony of a sole fact witness with an imperfect memory would allow the requesting party "to take half-hearted depositions of lower-level employees in order to set up an opportunity to depose" apex witnesses. *Celerity, Inc. v. Ultra Clean Holding, Inc.,* 2007 WL 205067, at *5 (N.D. Cal. Jan. 25, 2007) (requiring party seeking apex deposition to "make a good faith effort to extract the information it seeks from interrogatories and depositions of lower-level … employees").

Thus, the Court should vacate the Order because it did not address Meta's exhaustion arguments, and deny plaintiffs' request to depose Mr. Zuckerberg. *Brown*, 2022 WL 2289059, at *2 (reversing magistrate judge's order requiring a deposition of Google's CEO because the order did not "address whether plaintiffs exhausted all less intrusive means of discovery").

## IV.    CONCLUSION

Meta respectfully requests that the Court vacate its Order granting a deposition of Mr. Zuckerberg and issue a new order denying plaintiffs' motion to compel that deposition.

| | | |
|---|---|---|
| 1 | Dated: April 30, 2025 | **GIBSON, DUNN & CRUTCHER LLP** |
| 2 | | By:  */s/ Lauren R. Goldman* |
| 3 | | Lauren R. Goldman |
| 4 | | *Attorneys for Meta Platforms, Inc.* |

108976962.18

-11-
DEFENDANT META PLATFORMS, INC.'S MOTION FOR RECONSIDERATION
OF THE COURT'S APRIL 10, 2025 DISCOVERY ORDER
CASE NO. 3:22-CV-03580-WHO (VKD)