1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    IN RE META PIXEL HEALTHCARE              Case No. 22-cv-03580-WHO (VKD)
     LITIGATION
8                                              **AMENDED REDACTED**
     This Document Relates To:
9                                              **ORDER RE APRIL 25, 2025**
     All Actions.                              **DISCOVERY DISPUTE RE REVENUE**
10                                             **FROM NON-HEALTHCARE**
                                               **PROVIDERS**
11                                             Re: Dkt. No. 991

12

13          The parties ask the Court to resolve their dispute regarding whether Meta should be

14   required to answer an interrogatory and to produce documents regarding advertising revenue Meta

15   received from "non-Healthcare Providers."  Dkt. No. 991.  The Court finds this dispute suitable

16   for resolution without oral argument.  Civil L.R. 7-1(b).

17          For the reasons explained below, the Court orders Meta to provide a further answer to

18   Interrogatory No. 18 and to produce documents responsive to RFPs 283 and 287, consistent with

19   the direction provided in this order.  The Court orders further proceedings re RFPs 284-286.

20   **I.     BACKGROUND**

21          Plaintiffs seek an order requiring Meta to answer Interrogatory No. 18, which asks Meta to

22   "[s]et forth with specificity the Profits, on a monthly basis from 2017 to present, attributable to

23   Health Advertising Revenue from non-Healthcare Providers."  Dkt. No. 991 at 3; Dkt. No. 992-3

24   at ECF 17.  Plaintiffs define the phrase "Health Advertising Revenue from non-Healthcare

25   Providers" as "revenue generated from serving advertisements by non-Healthcare Providers[1] to

26   _____

27   [1] Presumably, a "non-Healthcare Provider" is any entity *other than* a "Healthcare Provider," which
     plaintiffs define as "any of the entities from which Meta was collecting information on their web-
28   properties and that were: (a) classified by Meta in any of the following advertiser verticals or sub-
     verticals: ████████████████████████████████████████████████████████

Facebook users based on a match to a Health Inference." Dkt. No. 992-3 at ECF 14 (definition).

A "Health Inference" is "any ███████████████████████████████████████ that was

generated in whole or in part using Pixel-generated Health Information." *Id.* at ECF 15. And

finally, "Pixel-generated Health Information" is "any information collected by the Meta Pixel[2]

relating to a Health Provider web-property that: (a) was classified or categorized based on the

content taxonomies identified in Exhibit B; or (b) included the fact that a user logged into or out of

a patient portal, made or changed an appointment[], or made a bill payment." *Id.* In addition,

plaintiffs ask the Court to order Meta to produce documents responsive to the following five

document requests:

1. RFP 283: Documents sufficient to identify total revenue from advertisements served for each ████████████████████████████[3] collectively and separately, during the Class Period, broken down in the time increments used in Meta's ordinary course of business.

2. RFP 284: Documents sufficient to conduct an analysis of "Health Information"[4] advertisements and its relationship to Health Information collected via the Pixel similar to the analysis conducted by Meta in the document ████████ ███████████████████ PIXEL_HEALTH000538384.

3. RFP 285: Documents sufficient to identify, collectively and separately, the percentage of revenue associated with advertisements in ████████ ████████████ based on mapping the ███████████ of an advertisement to the equivalent █████████████ associated with a user, ███████, or user feature – such as the

---

████████ (b) classified by Meta in a ████████ or ████████ category specified in the attached Exhibit A; (c) for which Meta's data indicates that the web-property displayed HIPAA notice language required by law; or (d) Meta classified as a health care provider or HIPAA or CMIA covered entity through ██████████ or any other method.

[2] Plaintiffs define "Meta Pixel" as encompassing the following Business Tools: "Pixel, SDK, CAPI, Customer List Uploads, DFCA, Offline Conversion Custom Audiences, and offline events (OCAPI)."

[3] The record does not reflect how plaintiffs define ███████████████████████████████ for purposes of these document requests. In the discovery dispute letter, plaintiffs refer the Court to Exhibit C of Dkt. No. 652, but this is just a "placeholder" exhibit.

[4] The record does not reflect how plaintiffs define "Health Information" for purposes of these document requests. *But see* Dkt. No. 992-3 at ECF 30-37 (Exhibit B to Interrogatories lists "Health Information").

2

1    mappings included in the source code file cited in the Declaration of Dr. Atif

2    Hashmi ███████████████████████████████████████████

     ██████████████████████████████████ filed at Dkt. 630-9, footnote 24.

3        4.  RFP 286:  Documents sufficient to identify the percentage of ████████████

         ██████████ and user features that are derived from data collected via the Meta

4        Business Tools associated with HIPAA- or CMIA-Covered Entities or Healthcare

         Provider web-properties.

5

6        5.  RFP 287:  To the extent that Meta claims that revenues from advertisements in

         ████████████████████████████████ are only partially related to Health

7        Information Meta collected from HIPAA- or CMIA-covered entities or Healthcare

         Provider web-properties, Documents sufficient to calculate or reasonably

8        approximate any reduction Meta contends is necessary for health-related data that

         Meta collected from non-Healthcare Provider sources.

9

10   Dkt. No. 991 at 3; Dkt. No. 992-3 at ECF 60-64.

11       Plaintiffs argue that this information is relevant to their calculation of Meta's profits

12   attributable to Meta's alleged unauthorized interception of putative class members' confidential

13   health information.  Dkt. No. 991 at 1.  Specifically, plaintiffs contend that Meta has used the data

14   at issue, alone or in combination with other data, and/or "health inferences" drawn from the data,

15   to facilitate advertising from non-Healthcare Providers.  *Id.* at 1, 2.  Plaintiffs argue that they need

16   the information and documents described above "to present a reasonable approximation of profits

17   causally connected to Meta's interceptions[.]"  *Id.* at 4.

18       Meta responds that the discovery plaintiffs seek is overbroad and disproportionate to the

19   needs of the case.  *Id.* at 5.  Meta notes that it has already agreed to produce revenue-related

20   information and documents for "healthcare advertisers previously identified by plaintiffs," but it

21   objects to having to investigate all advertisements to determine which had a health-related

22   classification, regardless of any connection to the putative class members' data at issue, and then

23   investigate the revenue and profits derived from such advertisements.  *Id.* at 5-6.

24   **II.    DISCUSSION**

25       There appears to be no dispute that Meta ██████████████████████████

26   ████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████    *See*

28   Dkt. No. 991 at 5, 6.  According to Meta, it applies ██████████████████████    to the

3

1

2 ███████████████████████████████ *Id.* at 6.  Plaintiffs contend that this is an unauthorized

3 "use" of putative class members' data and that Meta has been unjustly enriched by such use.  *Id.* at

4 4-5.  Meta counters that, given how its ███████████████ operate, it is not possible to

5 determine in the first instance whether any such data obtained via the Meta Pixel "had an effect on

6 whether any particular ads or types of ads were shown to any Meta user[.]"  *Id.* at 6.

7      Essentially, the parties disagree about whether plaintiffs will be able to show the necessary

8 connection between putative class members' data and particular advertising, especially advertising

9 from "non-Healthcare Providers."  This is a question that goes to the merits of plaintiffs' claims.

10 And while Meta may be correct that plaintiffs will not be able to make the necessary showing, the

11 Court is not in a position to make that determination in resolving this discovery dispute.  If, as

12 Meta acknowledges, putative class members' data is ████████████████████████

13 ███████████████████████████████████████████████ the

14 damages-related discovery plaintiffs seek appears to be relevant to their unjust enrichment theory

15 of recovery.  *See* Fed. R. Civ. P. 26(b)(1); *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-

16 WHO (VKD), 2025 WL 1191684, at *1 (N.D. Cal. Apr. 24, 2025) (concluding that payments to

17 consumers who share data with Meta are discoverable, even if Meta ultimately shows that such

18 payments are an unreliable basis for calculating damages); *In re Google RTB Consumer Priv.*

19 *Litig.*, No. 21-cv-02155-YGR (VKD), 2022 WL 4087514, at *7 (N.D. Cal. Sept. 6, 2022) ("It is

20 possible plaintiffs may be able to construct a reliable damages model using, at least in part,

21 information from the Screenwise program.  At the very least, the Court is not prepared to conclude

22 that discovery relating to the Screenwise program is wholly irrelevant.").

23      However, discovery must be both relevant and proportional to the needs of the case.  Fed.

24 R. Civ. P. 26(b)(1).  Plaintiffs claim their discovery requests contemplate a "simple three-step

25 methodology."  Dkt. No. 991 at 5.  Meta objects that, to the contrary, these requests would require

26 it to investigate "voluminous data," and that the apportionment information plaintiffs demand

27 ignores how Meta's systems operate.  *Id.* at 7.

28      Plaintiffs' discovery requests are not "simple."  The document requests in particular are

United States District Court
Northern District of California

1    very difficult to understand, and plaintiffs do little to clarify what documents they seek and why

2    they are likely to yield relevant information.  However, taking plaintiffs at their word regarding

3    the purpose of the discovery requested, the Court orders as follows:

4    Interrogatory No. 18:  This interrogatory is difficult to parse, but it appears to be limited to

5    a statement of Meta's profits on revenue received (a) from "non-Healthcare Providers" (b) for

6    advertising where (c) data obtained from putative class members via the Meta Pixel (d) was ███

7    ████████████████████████████████████████████████████████████████

8    ███████████████████████████████ (g) during the relevant class period.[5]  Meta

9    must answer this interrogatory based on information that is reasonably accessible.  The Court

10   appreciates that Meta may not have some or all of the information called for by this interrogatory,

11   or that an answer might only be available as a product of expert discovery.  If this is the case, Meta

12   may so state in its further response to Interrogatory No. 18.

13   Document requests:  As noted above, these document requests rely on defined terms and/or

14   cross-referenced materials that are not part of the record before the Court.  While Meta's written

15   responses include objections that these requests are vague and ambiguous, Meta does not rely on

16   those objections in its portion of the discovery dispute letter.  As best the Court can discern,

17   plaintiffs seek documents that will allow them to calculate or estimate the portion of Meta's

18   advertising revenue and/or profits that they contend is attributable to the alleged unauthorized use

19   of putative class members' health information.  If there is agreement about what it means for

20   advertisements to be classified in a █████████████████████████ (RFP 283), then

21   Meta must produce documents sufficient to show its revenue from such advertisements during the

22   class period, to the extent those documents are reasonable accessible.  Likewise, if Meta contends

23   that the revenue responsive to RFP 283 cannot be attributed in whole or in part to the alleged

24   unauthorized use of putative class members' health information, Meta must produce the

25   documents that would permit apportionment of that revenue and/or account for costs or other

26   reductions (RFP 287).

27

28   [5] This description is not intended to expand the scope of the interrogatory; rather, it is an attempt
     to capture the Court's understanding of its limits.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Conversely, the Court cannot determine from the discovery dispute letter what documents

2    plaintiffs seek by means of RFPs 284-286 or how those documents are likely to yield information

3    that will allow plaintiffs to do what they say they are trying to do—reasonably approximate

4    Meta's unjust enrichment.  The Court will not order Meta to produce documents responsive to

5    these requests at this time, but will require the parties to confer further, as explained below.

6    **III.    CONCLUSION**

7    The Court orders Meta to provide a further answer to Interrogatory No. 18, consistent with

8    the Court's direction above, by **May 23, 2025**, unless the parties stipulate to a different date.  The

9    Court also orders Meta to produce documents responsive to RFPs 283 and 287, consistent with the

10   Court's direction above, by **May 23, 2025**, unless the parties stipulate to a different date.

11   As for RFPs 284-286, the Court directs the parties to confer further regarding the specific

12   data or documents plaintiffs seek, taking into account the Court's determination in this order that

13   if putative class members' data is ███████████████████████████████████████

14   ████████████████████████████████████████      plaintiffs may obtain

15   discovery of the revenue and/or profits associated with that use in aid of their unjust enrichment

16   theory, but only to the extent the information plaintiffs seek is reasonably accessible to Meta.  The

17   parties shall jointly report back to the Court by **May 19, 2025** regarding the status of their efforts

18   to reach agreement on these document requests.  The joint status report is limited to 500 words

19   total.

20   **IT IS SO ORDERED.**

21   Dated: May 6, 2025

22

23

24   Virginia K. DeMarchi
     United States Magistrate Judge

25

26

27

28

6