Proposed Redacted Version of Exhibit 1
(Dkt. No. 1020-5)

# EXHIBIT 1

**FILED UNDER SEAL PURSUANT
TO PROTECTIVE ORDER**

Page 1

1              UNITED STATES DISTRICT COURT

2                        FOR THE

3            NORTHERN DISTRICT OF CALIFORNIA

4

    IN RE META PIXEL HEALTHCARE LITIGATION, ) Case No.
    3:22-cv-3580-WHO (VKD)

5    _____ )

6

7          VIDEOTAPED DEPOSITION OF GRAHAM MUDD

8                  Palo Alto, California

9              Wednesday, February 26, 2025

10

11

12          REPORTED BY: Derek L. Hoagland

13                  CSR No. 13445

14

15

16

17

18

19

20

21

22

23

24

25

Page 2

1                UNITED STATES DISTRICT COURT

2                         FOR THE

3              NORTHERN DISTRICT OF CALIFORNIA

4

     IN RE META PIXEL HEALTHCARE LITIGATION, ) Case No.
   3:22-cv-3580-WHO (VKD)

5   _____ )

6

7

8

9

10    Videotaped Deposition of GRAHAM MUDD, taken before Derek

11    L. Hoagland, a Certified Shorthand Reporter for the

12    State of California, commencing at 9:08 a.m., Wednesday,

13    February 26, 2025, at GIBSON DUNN, 310 University

14    Avenue, Palo Alto, California 94301.

15

16

17

18

19

20

21

22

23

24

25

Page 206

1    do that if we were -- had -- if we knew them from the

2    three years we were more.

3    Q.        That makes sense.  Could you read the first

4    sentence in the -- in the last paragraph in your

5    November 8th, 2019, email from 12:03 p.m.

6    A.        First sentence, last paragraph?

7    Q.        Yes.

8    A.        In this case, I think the idea would be ████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████

11   Q.        And as of November 8th, 2019, you thought that

12   was a good idea, right?

13           MS. McCLOSKEY:  Object to form.  Vague and

14   ambiguous.  Misstates the document.

15   BY MR. KAFKA:

16   Q.        That as of November 8th, 2019, you thought it

17   would be a good idea to ████████████████████████████████

18   ████████████████████████████████████████████████

19   ████████████████████████████, correct?

20           MS. McCLOSKEY:  Object to form.  Vague.

21           THE DEPONENT:  So the -- the way that I operated

22   with my team who were experts in various areas was to

23   highlight a more general approach and then provide

24   the -- provide examples of what I meant by that.  And so

25   you -- what you can see here is I am saying "we should

26

Page 207

1  take a more wholistic approach" in the paragraph above.

2  That's my recommendation, I personally think.  And then

3  I say -- and I provide an idea of what I mean by that,

4  and that is using this █████████████ concept as a

5  ████████████████████████████████████████████████████████

6  ████████████████

7        You are asking me did I think that was the idea?

8  I -- no, I was not -- I left those types of decisions to

9  teams and then they would come to us with

10  recommendations and then we would decide.

11        What I am pushing on is take a more wholistic

12  approach here, here's an idea of what I mean by that.

13        MR. KAFKA:  Okay.  I think -- I don't know how

14  exactly -- I think it would be a good time to take a

15  break though.

16        MS. McCLOSKEY:  Okay.  I don't know how long we

17  have been on the record, but that sounds fine.

18        THE VIDEOGRAPHER:  Okay.  We are going off the

19  record.  The time is 3:20 p.m.

20        (A recess transpires.)

21        (Exhibit No. 116 marked for identification.)

22        THE VIDEOGRAPHER:  We are back on the record.

23  The time is 3:46 p.m.

24        MR. KAFKA:  Welcome back, Mr. Mudd.

25  ///

26              DOCUMENT FILED UNDER SEAL

Page 208

1  BY MR. KAFKA:

2  Q.      And I believe earlier today you testified that

3  you call, just put the document aside for a moment, that

4  you recall one non-privileged specific conversation you

5  have had with Mark Zuckerberg related to privacy.  Is

6  that right?

7          MS. McCLOSKEY:  Object to form.  Misstates the

8  testimony.

9          THE DEPONENT:  I recall having a specific

10  conversation with Mark Zuckerberg and others about a

11  specific issue, which was the deprecation or not of

12  partner categories.

13          MS. McCLOSKEY:  And I will again caution the

14  witness -- and please tell me if you need to discuss

15  it --

16          THE DEPONENT:  Sure.

17          MS. McCLOSKEY:  -- not to testify about the

18  content of any privileged communications; and if you

19  have a question about that, again, I will just repeat we

20  can discuss that.

21          THE DEPONENT:  Sure, sure.

22  BY MR. KAFKA:

23  Q.      And with respect to non-privileged

24  communications --

25  A.      Mm-hmm.

26

Page 209

1    Q.      -- that involve Mr. Zuckerberg, do you recall

2    any other specific conversations that involved him and

3    related to privacy that you had?

4           MS. McCLOSKEY:  Object to form.  Asked and

5    answered.

6           THE DEPONENT:  I don't recall specifics.

7    BY MR. KAFKA:

8    Q.      Okay.  Now, could you take a look at what's been

9    marked as Exhibit 116.

10   A.      Sure.  Yep.

11   Q.      And do you recognize this as a series of emails

12   that you exchanged with your fellow Facebook employees

13   in the course of your employment?

14          MS. McCLOSKEY:  Object to form.

15          THE DEPONENT:  Can you repeat the question,

16   sorry, I am just reading.

17   BY MR. KAFKA:

18   Q.      Do you recognize Pixel Health 000892914?

19   A.      Uh-huh.

20   Q.      It is a document with a series of emails that

21   you sent and received as part of the course of your

22   employment at Facebook?

23   A.      Yes, I do.

24   Q.      And do you see that there is an attached

25   PowerPoint to that series of emails?

26

Page 210

1   A.      I see that there is a PowerPoint, yep.

2   Q.      And let me start with 917, which is the bottom

3   email; and do you see that you sent an email on Sunday,

4   March 25th, 2018, at 10:49 p.m.?

5   A.      Yes.

6   Q.      And you sent that email to, among others, David

7   Fischer, correct?

8   A.      Yes.

9   Q.      What was David Fischer's role at that time?

10  A.      He led the global marketing solutions team.  I

11  don't remember whether he was chief revenue officer at

12  that time or not.

13  Q.      And you also emailed Brad Smallwood, and that's

14  the gentleman who cofounded Anonym with you, correct?

15  A.      That's right.

16  Q.      And you emailed Rob Goldman; and we discussed

17  earlier that at one point in time, he was somewhat of

18  the chair of the ads leadership team?

19  A.      Mm-hmm.

20  Q.      And you emailed Carolyn Everson.  Do you

21  remember what her role was at that time?

22  A.      She led the managed client sales team.  I don't

23  remember what it was called.

24  Q.      And the subject is "Slides for MZ meeting

25  tomorrow."  When you wrote "MZ" there, were you

26

Page 211

1   referring to Mark Zuckerberg?

2   A.      Yes.

3   Q.      And you write:

4           "David, et al, here's a quick draft of slides

5   for tomorrow's meeting.  We can review/discuss/edit at

6       .  Try and keep it simple.  ██████████████,        15:49:56

7   ██████████████████████████████, details in

8   the appendix.  Look forward to your feedback.  Graham."

9   A.      Yes.

10  Q.      And I want to go also to the top email on

11  page 914, and this is from you on March 26, 2018, at

12      a.m.                                               15:50:26

13          Do you see that?

14  A.      Sorry, where am I going?

15  Q.      This is page 914.

16  A.      Oh, okay.  The first page.  Okay.  Yep got it.

17  Q.      And do you see you wrote "See attached"?

18  A.      Mm-hmm.

19  Q.      And do you believe that this is the email that

20  you attached the slides to?

21  A.      No.

22  Q.      Which -- which email?

23  A.      Well, I mean it's po- -- I don't know.  It -- it

24  depends on whether that -- what -- the attachment that

25  we have got here is -- you can see up in the header,

26

Page 212

1 ████████████████████ V5."  Like, I don't know

2 whether that's V5 or not.  It could have been the

3 earlier one that was referenced in the first email that

4 we reviewed.

5 Q.     Well, the metadata, for what it's worth,

6 reflects that you are the author.

7        Do you believe you put together the attached

8 presentation?

9 A.     Yeah.

10        MS. McCLOSKEY:  Object to form.

11        THE DEPONENT:  Yeah.  That wasn't your question,

12 I don't think; but yes, I did.

13 BY MR. KAFKA:

14 Q.     Great.  Let me ask one more question about the

15 top email.  You said:

16        Fred, I took a swag at ████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████

19 A.     Uh-huh.

20 Q.     Was it standard for Facebook to conduct ████████

21 ████████████████████████████████████

22 ████████████████████

23        MS. McCLOSKEY:  Object to form.  Vague.  Calls

24 for speculation.

25        THE DEPONENT:  I would say that it was standard

26

```
1    for Facebook to ██████████████████████████
2    ████████████████████████    I don't think this is a
3    privacy practices change specifically, although it
4    certainly was related to privacy.
5          But to answer your question, any major decision
6    that was going to change the business, we wanted to
7    understand ███████████████████████████████████
8    yes.  And for a number of reasons.
9    BY MR. KAFKA:
10   Q.     And could you just explain at a high level what
11   the change the partner categories were in 2018?
12         MS. McCLOSKEY:  Object to form.  Vague.
13         THE DEPONENT:  The -- we had developed a set of
14   targeting segments that were based in large part, maybe
15   exclusively, I don't remember, on data that was sourced
16   from -- I think you have broadly referred to them as
17   "data brokers."
18   BY MR. KAFKA:
19   Q.     Yeah.
20   A.     There's probably other terms.  And, you know, an
21   example might be people that, you know, purchase a lot
22   of cat food.
23   Q.     Mm-hmm.  Mm-hmm.
24   A.     And those were offered to our customers in our
25   ads interface and could be, you know, used as they
26
```

Page 219

BY MR. KAFKA:

Q.      And Mr. Mudd, at that meeting in 2018, do you
recall any non-privileged statements that Mr. Zuckerberg
said about the business strategy related to partner
categories?

        MS. McCLOSKEY:  And if you have a question about
what is or isn't non-privileged, then we should talk
about that.

        THE DEPONENT:  I think I can answer it pretty
emphatically.  I don't remember him saying anything.  I
don't know.  I just -- I don't have any specific
recollection of a -- of anything he said.  Privileged or
not.

BY MR. KAFKA:

Q.      And do you have any insight into any thoughts
that he had about the business strategy?

        MS. McCLOSKEY:  Sorry.  I will object that that
calls for speculation.  And I mean...

        THE DEPONENT:  I don't know.  I -- I don't know.
You know, my experience ███████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

1

2

3

4

5    BY MR. KAFKA:

6    Q.      The final decision-maker on the partner

7    categories is Mark Zuckerberg, correct?

8            MS. McCLOSKEY:  Object to form.  Calls for

9    speculation.  Vague and ambiguous.

10           And again, I want to caution you not to testify

11   to any privileged communications; and if you have a

12   question about what's privileged, then we can go off the

13   record to discuss that.

14           THE DEPONENT:  I am happy to stop and talk about

15   that, if you want.  I -- sure, let's chat.

16           MS. McCLOSKEY:  Okay.  About the privilege

17   issue?

18           THE DEPONENT:  Yeah, I'm just having a difficult

19   time knowing --

20           MS. McCLOSKEY:  Yeah.

21           THE DEPONENT:  -- where a line typically exists

22   in this kind of thing.  I just -- I'm not an expert.

23           MR. KAFKA:  Totally fair.  I just want to state

24   for the record, just so you guys know that my question

25   was, the final decision-maker on the partner categories

26

1  was Mark Zuckerberg?  Just so you know, that's the
2  pending question I asked --
3        MS. McCLOSKEY:  Yeah.
4        MR. KAFKA:  So you know, when we come back, you
5  can instruct him not to answer so forth.  But...
6        MS. McCLOSKEY:  Yeah, yeah.  And if you -- I
7  mean, you likely don't want to tell us if you have
8  further questions on this; but it may make it more
9  efficient if there is anything else you want us to
10 discuss?
11       MR. KAFKA:  It's too hard.
12       MS. McCLOSKEY:  Okay.
13       MR. KAFKA:  Yeah, I can't do that.
14       MS. McCLOSKEY:  Okay.  Okay.  All right.  Well,
15 let's go off the record for a moment.
16       THE VIDEOGRAPHER:  We're going off the record.
17 The time is 4:02 p.m.
18       (A recess transpires.)
19       THE VIDEOGRAPHER:  We're back on the record.
20 The time is 4:07 p.m.
21       MR. KAFKA:  Welcome back, Mr. Mudd.
22       THE DEPONENT:  Thank you.
23 BY MR. KAFKA:
24 Q.     My question was, was Mark Zuckerberg the final
25 decision-maker with respect to whether to deprecate
26

Page 222

1    partner categories?

2          MS. McCLOSKEY:  Object to form.

3          You can answer.

4          THE DEPONENT:  My recollection is that ████

5    ████████████████████████████████████████████████

6    ████████████████████████████████████████████████

7    ████████████

8          MR. KAFKA:  Thank you.  Let's go to 117, yes.

9          (Exhibit No. 117 marked for identification.)

10         THE DEPONENT:  God.  This is amazing.  All

11   right.  I don't -- well, go ahead.

12   BY MR. KAFKA:

13   Q.      Mr. Mudd, I want to actually start with the

14   metadata on this doc.

15   A.      Okay.

16   Q.      And do you see that the metadata on this

17   PowerPoint presentation, Bates labeled Pixel Health

18   835365 identifies you as the author?

19   A.      Yeah, I see that.

20   Q.      Do you believe that you wrote and created this

21   presentation?

22   A.      Parts of it, absolutely, not all of it.

23   Q.      Understood.  So why don't we do this, we can go

24   through the pages and I will just start by asking you

25   for different pages whether you think you, you know,

26

Page 229

1    it.

2    Q.    Okay.  It doesn't -- you are the custodian, I

3    don't --

4    A.    That's fair.

5    Q.    An author -- okay.  So let's -- let me can this:

6    Have you seen this document before?

7    A.    I don't remember it.

8    Q.    It says on the first page, which is 484.

9    A.    Okay.

10    Q.    ██████████████████████████████████

11    ████████████████████████████████████████████████████

12    A.    Okay.

13    Q.    And then it says "Scheduled for MZ review,

14    April 20th."  So does that mean that this issue was

15    scheduled for review with Mark Zuckerberg?

16        MS. McCLOSKEY:  Object to form.  Calls for

17    speculation.

18        THE DEPONENT:  That would be my guess.

19    BY MR. KAFKA:

20    Q.    Well, do you recall if there was a meeting with

21    Mark Zuckerberg in April of 2021, about ████████████████

22    ████████████████████████████████?

23        MS. McCLOSKEY:  Object to form.  Calls for

24    speculation.

25        THE DEPONENT:  I don't recall the date.  I

26

```
 1   recall the topic of the discussion, and I do recall it
 2   going to Mark.  It may have been April, I don't know.
 3   It may have been April, I don't know.
 4   BY MR. KAFKA:
 5   Q.      Do you believe it was in 2021?
 6           MS. McCLOSKEY:  Object to form.
 7           THE DEPONENT:  Yes.
 8   BY MR. KAFKA:
 9   Q.      And did you participant in an in-person
10   discussion regarding this issue with Mr. Zuckerberg?
11           MS. McCLOSKEY:  Object to form.
12           THE DEPONENT:  I don't think it was in person.
13   I think this was during COVID.
14   BY MR. KAFKA:
15   Q.      Okay.  This gets to some of my earlier about
16   the -- the -- so putting aside whether it was Zoom --
17   A.      Ah, okay.  Sorry.
18   Q.      -- or -- or in person -- no, that's fair, in
19   person or telephone call, do you believe that you
20   participated in a meeting that Mark Zuckerberg attended
21   in 2021, regarding a proposal ███████████████
22   ████████████████████████████
23           MS. McCLOSKEY:  Object to form.
24           THE DEPONENT:  Yes.
25
```

Page 231

1   BY MR. KAFKA:

2   Q.      And who do you recall -- well, do you believe

3   that meeting was on Zoom?

4   A.      That's my recollection.  Yeah, I -- I am quite

5   certain that that's the case.  I can't imagine we were

6   in person at that point in time.

7   Q.      And who do you recall attending that meeting?

8   A.      I am really hazy here.

9           MS. McCLOSKEY:  Object to form.  Calls for

10  speculation.

11          THE DEPONENT:  I definitely remember Dan Levy

12  was there.  Or Levy.  I don't remember anyone else.  Oh,

13  no, that's not true.  I remember Alex Schultz was there.

14  BY MR. KAFKA:

15  Q.      So on the Zoom, there was you, Mark Zuckerberg,

16  Dan Levy, and Alex Schultz?

17  A.      And a number of others, I just don't recall the

18  specifics.  It's like less of a memory when you are not

19  in person; you know what I mean?

20  Q.      No, I get it.

21  A.      Like squares on a TV.

22  Q.      But do you remember if there were attorneys at

23  the meeting?

24  A.      I don't recall.

25  Q.      Okay.  And you state, oh, no I'm sorry, not you

26

Page 232

1    state.  It states in the document:

2         "Goal for today, ████████████████████

3    ████████████████████████████████████████████

4    ████████████████████████████████████████

5    ███████████████████ "

6         Do you see that?

7         MS. McCLOSKEY:  Object to form.

8         THE DEPONENT:  Yes, I see that.

9    BY MR. KAFKA:

10   Q.    And do you see where it says:

11        "The strategy (as we wrote at the Feb 2020 board

12   meeting, full text in the appendix) 1" -- let me back

13   up.

14        Do you see where that's written?

15   A.    I see it.

16   Q.    Are you aware of a -- of a February 2020

17   Facebook board of directors meeting ████████████████

18   was discussed?

19        MS. McCLOSKEY:  Object to form.  Calls for

20   speculation.

21        THE DEPONENT:  I wasn't in the room.  So I don't

22   know what was discussed.  I think we previously reviewed

23   a document that was prepared for that meeting.  I --

24   that's -- that's pretty much the extent of my knowledge.

25

Page 233

1    BY MR. KAFKA:

2    Q.      And other than the members of the board of

3    directors, can you identify anyone else who attended

4    that meeting?

5            MS. McCLOSKEY:  Object to form.  Misstates the

6    testimony.  The witness hasn't testified that the board

7    of director members were all there.

8            THE DEPONENT:  I don't -- I don't know who was

9    in the room.

10   BY MR. KAFKA:

11   Q.      And I know this is an obvious question; but Mark

12   Zuckerberg is a member of the Facebook board of

13   directors, right?

14           MS. McCLOSKEY:  Object to form.

15           THE DEPONENT:  That's correct.

16   BY MR. KAFKA:

17   Q.      Let me go to the bottom of page 485 which is

18   really the second page.

19   A.      Sorry, I was distracted.  Where would you like

20   me?

21   Q.      This is the bottom of page 485, which is the

22   second base -- page.

23   A.      Okay.  Got it.

24   Q.      And it says there:

25   ████████████████████████████████████████████

26

Page 241

1     think I would have said it was very important.

2     BY MR. KAFKA:

3     Q.      Okay.  And then it says:

4     ████████████████████████████████████████

5     ████████████████████████████

6     ████████████████████████████████████

7     ████████████████████████████████████

8     ██████████████

9             Do you see that?

10    A.      I see it.

11    Q.      And you were familiar with this potential plan

12    in 2021?

13            MS. McCLOSKEY:  Object to form.  Vague and

14    ambiguous.

15            THE DEPONENT:  Did you say "April"?

16    BY MR. KAFKA:

17    Q.      In 2021?

18    A.      Yes.

19    Q.      I am not going to get hung up on the month.  And

20    then do you see where it says -- hold on, let me skip a

21    few pages.  I am going to go now to -- could you go to

22    the page that ends in 11025.

23    A.      Yep.

24    Q.      And do you see it says:

25    ████████████████████████████████████████

26

Page 242

1 ████████████████████████████████████

2 ███████████████████████████████

3 ███████████████████████████████████

4 ██████████████████████████████████

5        Do you see that?

6 A.     Yes.

7 Q.     And you are aware that that was a recommendation

8 that Facebook was considering making to Mark Zuckerberg

9 in 2021?

10        MS. McCLOSKEY:  Object to form.  Lacks

11 foundation.  Calls for speculation.

12        THE DEPONENT:  Yeah.  Yeah.

13 BY MR. KAFKA:

14 Q.     And sitting -- before we look at any other

15 documents, do you know if that recommendation was made

16 to him?

17        MS. McCLOSKEY:  Object to form.

18        THE DEPONENT:  Yes, it was.

19 BY MR. KAFKA:

20 Q.     Okay.  Let's go to 030.

21 A.     030.  Do you see it states that:

22        "Graham, let's ████████████████████

23 ██████████████████████████████████████

24 ███████████████████████████████████████

25 ██████████████████████████████████████

26

Page 247

```
 1    A.      I mean, I have no idea.
 2    Q.      Do you see there's a -- if you go to 325,
 3    there's an email from Jill Barzilay on June 8th, 2021,
 4    to you, Graham Mudd.
 5            Do you see that?
 6    A.      Uh-huh.
 7    Q.      And there's a subject ███████████████
 8    A.      Uh-huh.
 9    Q.      It says, "Hi, Graham.  Great seeing you
10    yesterday."  And who's Jill Barzilay?
11    A.      She was in product marketing, she didn't report
12    to me but, you know, she was on a sort of sister team of
13    mine, to mine.
14    Q.      Okay.  It says:
15            ███████████████████████████████
16    ████████████████████████████████████████
17    ████████████████████████████████████
18    ███████████████████████████████████████
19    ████████████████████████████████████████
20    ██████
21            Related -- actually strike that.
22            Do you see the paragraph I just read that ends
23    with ████████████████████████?
24    A.      Uh-huh.  Yeah.
25    Q.      And then, could you read me your response to
26
```

Page 248

1   Ms. Barzilay on June 8th, 2021, at 12:33 p.m.?

2   A.      At 12:33, correct?

3   Q.      12:33, correct, yes.

4   A.      Okay.  Sorry.

5           "Hi, there.  I would really like ████████ but I

6   ██████████████████ -- redacted.  ██████████████████

7   ████████ -- redacted, redacted, ███████████████████████

8   ██████████████████████

9   Q.      Okay.  Now, we discussed that you attended a

10  Zoom meeting with Mark Zuckerberg and other Facebook

11  employees in 2021 --

12  A.      Mm-hmm.

13  Q.      -- about the proposal ██████████████████

14  ██████████████████████

15          Do you recall what decision was made in that

16  meeting?

17          MS. McCLOSKEY:  Object to form.

18          THE DEPONENT:  At a high level, ████████████████

19  ██████████████████████████████████████████████

20  ██████████████████████████████████████████████

21  ██████████████████████████████████████████████

22  ████████████████████████████████████████

23  ████████████████████████████████

24  ██████████████████████████████████████████████

25  ████████████████████████████████ and we were

26

1   likely going to check in with him again, and so forth,

2   and so I -- that's kind of my -- my recollection of it.

3   BY MR. KAFKA:

4   Q.      And when you say "check in with him again," you

5   mean check in with Mark Zuckerberg again, correct?

6           MS. McCLOSKEY:  Object to form.

7           THE DEPONENT:  My assumption was that before

8   a -- the full sort of trigger was pulled on that kind of

9   decision, that that's the kind of thing that we would.

10  I don't recall if we did.

11  BY MR. KAFKA:

12  Q.      And when you left Facebook in 2022 --

13  A.      Uh-huh.

14  Q.      -- had Facebook ███████████████████████

15  ████████████████████████████████████████████

16  ██████████████████

17          MS. McCLOSKEY:  Object to form.

18          THE DEPONENT:  Certainly not, like, completely.

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ██████████████████████████████

22  BY MR. KAFKA:

23  Q.      Well, let me put it this way:  When you left

24  Facebook in 2022, ██████████████████████████████

25  ████████████████████████████████████████

26

1   ███████████████████████████████████████████████

2          MS. McCLOSKEY:  Object to form.  Vague and

3   ambiguous.

4          THE DEPONENT:  Across the board?  If that's what

5   you are asking, no.

6   BY MR. KAFKA:

7   Q.      Okay.  And was the ████ proposal that we

8   discussed earlier, was that implemented in 2022?

9          MS. McCLOSKEY:  Object to form.

10         THE DEPONENT:  No, not wholly.

11  BY MR. KAFKA:

12  Q.      And is that proposal, to your knowledge, been

13  implemented today wholly at Facebook?

14         MS. McCLOSKEY:  Object to form.  Calls for

15  speculation.

16         THE DEPONENT:  I don't believe so, but I don't

17  know.

18  BY MR. KAFKA:

19  Q.      Do you believe that █████ proposal ████████

20  ██████ should have been implemented in 2021 or '22?

21  A.      ██████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ██████████████████

24  Q.      Do you think it should have been implemented

25  already at Facebook?

26

Page 251

1      MS. McCLOSKEY:  Object to form.  Calls for

2  speculation.  Vague.

3      THE DEPONENT:  I think if -- I can't make a call

4  on timing for this.  I believe the industry is in a

5  state of transition and that the right place for it to

6  end and maybe the sort of stable equilibrium is that

7  place.  It's a massive change for this industry, for

8  Facebook, and for everybody else.

9      The reason I started the company I did was

10  because I wanted to build technologies that would move

11  us in that direction, so obviously I believed that

12  that's the end state that we should and that I want us

13  to selfishly and, you know, for other -- and because I

14  think that's the right end state.

15      But as I said, it's a massive undertaking, a

16  massive change; and I don't know that I could say it

17  certainly █████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████  You know,

20  could it happen in next year, the year after that, five

21  years from now, I hope so.

22  BY MR. KAFKA:

23  Q.    Do you remember anything that Mark Zuckerberg

24  said in that meeting █████████████████████████████

25  ████████████████████

26

Page 252

1 A. I don't.

2 Q. Do you remember what his view was at that

3 meeting about ██████████████████████?

4   MS. McCLOSKEY:  Object to form.  Calls for

5 speculation.  Vague and ambiguous.

6   THE DEPONENT:  Specifically, no.  I mean, we

7 emerged from that, as I mentioned, ████████████

8 ████████████████████████████████████████████

9 ████████████████████ -- ████████████████████████

10 ██████████████████ but I don't know what he said.  I

11 don't remember his specific reaction or his opinion.

12 BY MR. KAFKA:

13 Q. And do you know Mark Zuckerberg's current

14 opinion on ████████████████████████████████████

15 ████████████

16 A. No idea.

17   MS. McCLOSKEY:  Object.  Object to form.  Calls

18 for speculation.

19   THE DEPONENT:  No idea.

20   MR. KAFKA:  With that, I have no further

21 questions.  I do want to say I guess two things.  First

22 of all, there was a folder referenced about -- and we

23 will talk about this later -- about signal documents we

24 believe should have been produced, and I also believe

25 that this document that was withheld on privilege,

26

Page 262

1                    REPORTER'S CERTIFICATE

2

3        STATE OF CALIFORNIA          )    ss.

4        I, DEREK L. HOAGLAND, CSR #13445, State of California,

5        do hereby certify:

6        That prior to being examined, the witness named in the

7        foregoing proceeding was by me sworn to testify to the

8        truth, the whole truth and nothing but the truth;

9        That said proceeding was taken down by me by stenotype

10       at the time and place therein stated and thereafter

11       transcribed under my direction into computerized

12       transcription.

13       I further certify that I am not of counsel nor attorney

14       for nor related to the parties hereto, nor am I in any

15       way interested in the outcome of this action.

16       In compliance with section 8016 of the Business and

17       Professions Code, I certify under penalty of perjury

18       that I am a certified shorthand reporter with license

19       number 13445 in full force and effect.

20       Witness my hand this 13th day of March, 2025.

21

22                         DEREK L. HOAGLAND, CSR #13445

23

24

25