# Proposed Redacted Version of Exhibit 4
# (Dkt. No. 1020-8)

# EXHIBIT 4

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

```
                                                              Page 1
 1                 UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN FRANCISCO DIVISION
 4    IN RE META PIXEL HEALTHCARE   ) Case No.  3:22-cv-3580-WHO (VKD)
      LITIGATION                    )
 5                                  )
      _____  )
 6                                  )
      This Document Relates to:     )
 7    All Actions.                  )
      _____  )
 8
 9            CONFIDENTIAL DEPOSITION OF JENNY LIN
10                    Palo Alto, California
11                   Tuesday, April 22, 2025
12
13
14            REPORTED BY: Derek L. Hoagland
15                    CSR No. 13445
16
17
18
19
20
21
22
23
24
25
```

```
                                                              Page 2
 1                  UNITED STATES DISTRICT COURT
 2             FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN FRANCISCO DIVISION
 4   IN RE Meta Pixel HEALTHCARE   ) Case No.  3:22-cv-3580-WHO (VKD)
     LITIGATION                    )
 5                                 )
     _____  )
 6                                 )
     This Document Relates to:     )
 7   All Actions.                  )
     _____  )
 8
 9
10
11   Deposition of JENNY LIN, taken before Derek L. Hoagland,
12   a Certified Shorthand Reporter for the State of
13   California, commencing at 9:50 A.M., Tuesday, April 22,
14   2025, at Gibson Dunn & Crutcher, LLP, 310 University
15   Avenue, Palo Alto, California 94301.
16
17
18
19
20
21
22
23
24
25
```

```
 1   APPEARANCES:
 2
 3   COUNSEL FOR PLAINTIFFS IN THE PUNITIVE CLASS
     COHEN MILSTEIN SELLERS & TOLL
 4   88 Pine Street
     14th Floor
 5   New York, New York 10005
     BY:  ERIC A. KAFKA, ESQ.
 6        212.220.2914
          ekafka@cohenmilstein.com
 7        -- and --
     BY:  JENNA WALDMAN, ESQ.
 8        202.408.4600
          jwaldman@cohenmilstein.com
 9
10   COUNSEL FOR META AND THE WITNESS
     GIBSON DUNN & CRUTCHER LLP
11   One Embarcadero Center
     Suite 2600
12   San Francisco, California 94111
     BY:  ELIZABETH MCCLOSKEY, ESQ.
13        415.393.4622
          emccloskey@gibsondunn.com
14        -- and --
     BY:  KYLAH TURNER, ESQ.
15        415.393.8265
          kturner@gibsondunn.com
16
     -- and --
17
     GIBSON DUNN & CRUTCHER LLP
18   200 Park Avenue
     New York, New York 10166
19   BY:  LEESA HASPEL, ESQ. (Via Zoom)
          212.351.4000
20        lhaspel@gibsondunn.com
21
     ALSO PRESENT
22   Nikki Sokol, in-House Counsel At Meta - nsokol@meta.com
23
24
25
```

Page 56

1  BY MR. KAFKA:
2  Q.    Do you recall ever speaking to one of the
3  implementation employees?
4        MS. MCCLOSKEY:  Object to form.  Vague.
5        THE DEPONENT:  Likely.
6  BY MR. KAFKA:
7  Q.    Do you remember any of their names?
8  A.    No.
9        MR. KAFKA:  Okay.  I think we've been going a
10 while.  We could probably take a break?
11       MS. MCCLOSKEY:  Yeah.  Let's do it.
12       THE VIDEOGRAPHER:  Okay.  We are going off the
13 record.  The time is 10:53.
14       (A recess transpires.)
15       THE VIDEOGRAPHER:  We are back on record.  The
16 time is 11:08.
17 BY MR. KAFKA:
18 Q.    Welcome back, Ms. Lin.
19       Now, are you aware that Meta's privacy program
20 was created after an FTC order in 2012?
21 A.    Yes.
22 Q.    Okay.  Can --
23       (Exhibit No. 371 marked for identification.)
24 BY MR. KAFKA:
25 Q.    Ms. Lin, you can take all the time you want to

Page 68

1  Facebook's privacy program by third-party auditors."
2          Do you see that?
3  A.      Yes.
4  Q.      And are you aware of certain products being
5  selected to be reviewed during Facebook's biannual audit
6  of Facebook's privacy program by third-party auditors?
7          MS. MCCLOSKEY:  Object to form.
8          THE DEPONENT:  I see the sentence that says
9  that.
10 BY MR. KAFKA:
11 Q.      Are you aware of that ever occurring?
12 A.      Maybe I knew that it occurred.
13 Q.      You worked as a privacy program manager for
14 seven years, right?
15 A.      Mm-hmm.
16 Q.      And I'm asking you, based on that seven years of
17 working as a privacy program manager, were you aware
18 that certain products were being reviewed on a biannual
19 basis by Facebook's auditor?
20         MS. MCCLOSKEY:  Object to form.  Asked and
21 answered.  Argumentative.
22         THE DEPONENT:  I was aware that third-party
23 auditors would audit our products.
24 BY MR. KAFKA:
25 Q.      And were you aware of whether they'd be auditing

Page 69

1    whether privacy decisions had been implemented?
2            MS. MCCLOSKEY:  Object to form.
3            THE DEPONENT:  I just knew that the auditors
4    would audit our documentation.
5    BY MR. KAFKA:
6    Q.      Which documentation did you understand that the
7    auditors were auditing?
8            MS. MCCLOSKEY:  Object to form.
9            THE DEPONENT:  The stuff in LAMA.
10   BY MR. KAFKA:
11   Q.      Could you be more specific?  What -- which
12   specific documentation in LAMA did you understand that
13   the auditors were auditing?
14           MS. MCCLOSKEY:  Object to form.  Calls for
15   speculation.
16           THE DEPONENT: Well, I was never involved in an
17   audit.  But we -- I'll just stop there.
18           Well, let me -- I don't -- I don't know if I was
19   ever involved in audit.  I could have been.  One of the
20   products I worked on could have been.
21   BY MR. KAFKA:
22   Q.      Do you have a recollection of any of the
23   products you worked on being involved in audit?
24   A.      I mean, I see this one here.
25   Q.      Do you have a recollection of any of your other

Page 70

1  products being involved in an audit?
2  A.     I don't recall.
3  Q.     And then it says:
4         "We need to have all evidence collected by
5  Friday, August 18th, the latest; however, the sooner the
6  better."
7         And then it states:
8         "As a reminder, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 the user's under 13 years old.  Data will be hashed on
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16        And if you go back to Exhibit 372 for a moment.
17 A.     Mm-hmm.
18 Q.     Do you see that those are the same decisions
19 that are listed in 372?
20 A.     Let me just look.
21        They're not exactly the same, but they seem kind
22 of similar.
23 Q.     And do you see that it says ▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮
25 A.     Mm-hmm.

Page 71

1  Q.     And go to Exhibit 372.
2  A.     Mm-hmm.
3  Q.     And next to the privacy review, do you see that
4  same number is listed in Exhibit 372?
5  A.     Yes.
6  Q.     Okay.  So is it your understanding, based on
7  this document, that the auditors were auditing the
8  privacy decisions and mitigations by the privacy team?
9         MS. MCCLOSKEY:  Object to form.  Calls for
10 speculation.
11        THE DEPONENT:  I don't know.  I just know that
12 Jordan was trying to collect this stuff.
13 BY MR. KAFKA:
14 Q.     So you -- your entire knowledge about what was
15 being audited is that the auditors were conducting their
16 audits based off the documentation in LAMA, correct?
17        MS. MCCLOSKEY:  Object to form.
18 Mischaracterizes the testimony.
19        THE DEPONENT:  I don't know what documents the
20 auditors got, but I know that the LAMA documents could
21 have been given to them.
22        MR. KAFKA:  Okay.  Let's do a new exhibit.
23        (Exhibit No. 374 marked for identification.)
24 BY MR. KAFKA:
25 Q.     Ms. Lin, let me know when you have had a chance

Page 78

1  BY MR. KAFKA:
2  Q.      What's unclear about the statement?
3  A.      Well, maybe you could talk about what are the
4  historical public failings on privacy.
5  Q.      Are you aware of any public failings by Facebook
6  on privacy?
7          MS. MCCLOSKEY:  Object to form.  Vague.  Calls
8  for speculation.  THE DEPONENT:  I know there was an FTC
9  consent decree.
10 BY MR. KAFKA:
11 Q.      Sitting here, having worked at Facebook for a
12 dozen years and spent seven years as a privacy program
13 manager, do you believe that Facebook has ever failed on
14 privacy?
15         MS. MCCLOSKEY:  Object to form.  Asked and
16 answered.  Vague and ambiguous.
17         THE DEPONENT:  I wouldn't say that.
18 BY MR. KAFKA:
19 Q.      Do you think Facebook has ever made any mistakes
20 on privacy?
21         MS. MCCLOSKEY:  Object to form.  Vague and
22 ambiguous.  Calls for speculation.
23         THE DEPONENT:  I don't know.
24 BY MR. KAFKA:
25 Q.      Can you identify any mistakes you think Facebook

Page 187

```
 1              REPORTER'S CERTIFICATE
 2
 3   STATE OF CALIFORNIA        )   ss.
 4   I, DEREK L. HOAGLAND, CSR #13445, State of California,
 5   do hereby certify:
 6   That prior to being examined, the witness named in the
 7   foregoing proceeding was by me sworn to testify to the
 8   truth, the whole truth and nothing but the truth;
 9   That said proceeding was taken down by me by stenotype
10   at the time and place therein stated and thereafter
11   transcribed under my direction into computerized
12   transcription.
13   I further certify that I am not of counsel nor attorney
14   for nor related to the parties hereto, nor am I in any
15   way interested in the outcome of this action.
16   In compliance with section 8016 of the Business and
17   Professions Code, I certify under penalty of perjury
18   that I am a certified shorthand reporter with license
19   number 13445 in full force and effect.
20   Witness my hand this May 6th, 2025.
21
                          [signature]
22                        DEREK L. HOAGLAND, CSR #13445
23
24
25
```