# Proposed Redacted Version of Defendant Meta Platforms, Inc.'s Motion for Relief from Nondispositive Pretrial Orders of Magistrate Judge Dkt. 967 and Dkt. 1025

LATHAM & WATKINS LLP
Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

Gary S. Feinerman (*pro hac vice pending*)
*gary.feinerman@lw.com*
300 North Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Meta Platforms, Inc.*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE META PIXEL HEALTHCARE LITIGATION

This Document Relates To:

All Actions

Case No. 3:22-cv-3580-WHO

**DEFENDANT META PLATFORMS, INC.'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDERS OF MAGISTRATE JUDGE DKT. 967 AND DKT. 1025**

HEARING REQUESTED

Hon. William H. Orrick

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

# I. INTRODUCTION

Meta Platforms, Inc. respectfully objects to the Magistrate Judge's order compelling the deposition of Meta's chairman and CEO, Mark Zuckerberg. *See* Dkts. 967, 1025. "[D]eposition notices directed at an official at the highest level or 'apex' of corporate management" pose "a tremendous potential for abuse." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Here, the Magistrate Judge noted an especially severe risk of such abuse given "the manner in which discovery has been conducted." Dkt. 967 at 4. Indeed, plaintiffs sought Mr. Zuckerberg's deposition from the outset—before deposing a single witness—while ignoring other witnesses with more pertinent information and scarcely trying to prove a need for his testimony. Yet the Magistrate Judge ordered Mr. Zuckerberg's deposition anyway, reasoning that he is "*informed* of consequential privacy decisions," Dkt. 967 at 3, and that no one else can "testify about how [he] arrived at the decisions attributed to him," Dkt. 1025 at 3-4. Accepting this sweeping logic would gut the apex doctrine, as both rationales could be said of *any* high-level executive. It also would bless plaintiffs' transparent effort to make this litigation more burdensome, rather than to obtain important, otherwise unattainable evidence. The Court should hold a hearing on this matter and overrule the Magistrate Judge's order. *See* Civil L.R. 72-2(d).

# II. ARGUMENT

## A. Plaintiffs Have Not Satisfied The Apex Doctrine's Requirements

Plaintiffs cannot satisfy the apex doctrine because: (1) Mr. Zuckerberg lacks "unique first-hand, non-repetitive knowledge" of relevant facts; and (2) "less intrusive discovery methods" were not "exhausted." *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, *1 (N.D. Cal. June 30, 2015).

### 1. Mr. Zuckerberg Has No Unique, First-Hand Knowledge

Plaintiffs allege that Meta's "tracking and collection tools"—such as "the Meta Pixel," which lets "third-party web developers" match "website visitors" to "Facebook User accounts"—"intercept individually identifiable health information" when used in the healthcare space. Dkt. 335 ¶¶ 1, 49-50. Mr. Zuckerberg is not a defendant, *id.* ¶ 39, and he has neither "unique" nor "first-hand" knowledge of facts relevant to plaintiffs' claims. *Finisar*, 2015 WL 3988132, at *1.

Start with uniqueness. Two senior Meta executives steeped in the relevant technologies and events are slated for deposition. The first is Rob Sherman, Meta's Deputy Chief Privacy Officer, who will testify as a fact witness. Dkt. 994-4 ¶¶ 12, 15. Mr. Sherman has "substantial firsthand knowledge regarding Meta's privacy decisions relevant to this litigation, including Meta's efforts to prevent receipt of potentially sensitive data" and "proposals to [redacted]" Dkt. 1006 ¶¶ 3-4. The second is Fred Leach, Meta's Vice President of Product Development, who will testify as both a fact and Rule 30(b)(6) witness regarding Meta's privacy controls. Dkt. 994-4 ¶ 17. Mr. Leach "is responsible for all of Meta's Business Tools (including the Pixel), and oversees all data that Meta receives" using them. *Id.* Mr. Zuckerberg, by contrast, is "not an expert" in these technologies. Dkt. 999-3 at 219:23-24. Nor is he "directly" involved in "the day-to-day operations" of Meta's sprawling privacy apparatus, given his roles as CEO and chairman. Dkt. 1006-6 ¶ 5. What specific relevant information plaintiffs believe Mr. Zuckerberg—and no one else at Meta—possesses is a mystery.

Plaintiffs also cannot show the requisite "first-hand" knowledge. Mr. Zuckerberg "relies on other Meta personnel to advise him on Meta's privacy-related decisions." Dkt. 1006-5 ¶ 5. Michel Protti, Meta's Chief Privacy and Compliance Officer for Product, oversees a "team to help" prepare quarterly reports on "well over [redacted] privacy decisions made by other Meta personnel on a wide range of issues across international jurisdictions"—and "Mr. Zuckerberg in turn relies on [Mr. Protti] to provide the[m]." Dkt. 1006-6 ¶ 6. So any decisions Mr. Zuckerberg made pursuant to the Consent Order were based on at least "second-hand information provided by other individuals." *River City Testing v. Cohen*, 2021 WL 4805443, at *3 (C.D. Cal. July 8, 2021). "That level of involvement is insufficient" to justify an apex deposition. *Id.*

Despite all this, the Magistrate Judge found that "Mr. Zuckerberg is likely to have at least some unique first-hand knowledge of [relevant] facts." Dkt. 967 at 3. That conclusion relied heavily on an FTC Consent Order requiring that he "be *informed* of consequential privacy decisions" and that "he *certify* on a quarterly basis" that Meta has complied with its directives. *Id.* But the Consent Order proves Meta's point. Merely being *informed* of privacy-related decisions made by others—by definition—means that Mr. Zuckerberg's information is neither unique nor

first-hand. In fact, Mr. Protti must *also* certify Meta's compliance, Dkt. 1006-6 ¶ 7, confirming that Mr. Zuckerberg's knowledge is "coextensive" with information known to others. *Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 2535067, at *3 (D. Colo. June 27, 2011).[1]

The Magistrate Judge added that "it is difficult to understand how another executive or employee could testify about how Mr. Zuckerberg arrived at the decisions attributed to him" because he is "the final decision maker." Dkt. 1025 at 3-4. But "the same could be said for any 'apex' deponent." *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, 2018 U.S. Dist. LEXIS 17786, at *4-5 (N.D. Cal. Feb. 1, 2018). By this logic, chief executives *always* have unique, first-hand knowledge about their own thought processes, such that they must testify "in virtually every lawsuit." *Beeman v. Protective Life Corp.*, 2020 WL 13656058, at *5 (N.D. Ala. May 28, 2020). That reasoning "eviscerate[s] the apex doctrine." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 10967617, at *2 (N.D. Cal. Aug. 1, 2011). The bare assertion that an executive "is the *only* person who can testify about why he decided" on a course of action is not enough. *Doble v. Mega Life & Health Ins. Co.*, 2010 WL 1998904, at *3-4 (N.D. Cal. May 18, 2010).

The Magistrate Judge also cited testimony about a proposal "presented to Mr. Zuckerberg in 2021 [redacted]" Dkt. 967 at 3. But the same testimony emphasized that such decisions were driven by "consensus." Dkt. 999-3 at 219:20-220:4, 221:24-222:7. And at least ***two dozen*** other Meta personnel were also included in the decision on this proposal. *See* Dkt. 994-6 at 1.[2] Regardless, Mr. Zuckerberg's internal thought processes are legally irrelevant: This case concerns "corporate knowledge," which Plaintiffs "can obtain discovery regarding … without deposing [Mr. Zuckerberg]." *Drake v. Steak N Shake Ops., Inc.*, 2018 WL 3625769, at *3 (E.D. Mo. July 30, 2018); *see, e.g.*, Dkt. 335 ¶ 417 (alleging "Meta intentionally intercepted" certain data).

---

[1] The Magistrate Judge's observation that "Mr. Zuckerberg has not submitted a declaration denying that he has [relevant] knowledge," Dkt. 1025 at 3, misses the mark. What matters is that any knowledge he has is neither unique nor first-hand. *See Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 4127992, at *3 (N.D. Cal. Sept. 19, 2017).

[2] Of these, only one (Graham Mudd) has been deposed. The rest—including Michel Protti, Adam Mosseri, Guy Rosen, Will Cathcart, Naomi Gleit, Mary Ku, Alex Schultz, Andrew Bocking, Fidji Simo, Dan Levy, Sammi Krug, Ning Li, Greg Marra, McKenzie Thomas, Meera Krishna, David Sasaki, Sam Mincer, Amee Kamdar, Chinmay Karande, Molly Cutler, David Ginsberg, Javier Olian, and San Chudnovsky—have not.

**2. Plaintiffs Have Not Exhausted Less-Intrusive Discovery Methods**

The "history of [plaintiffs'] efforts to obtain [relevant] information through other discovery"—or rather, their "lack of such efforts"—independently shows they are not "seeking the apex deposition for appropriate purposes." *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *5 (N.D. Cal. Mar. 6, 2014). This Court has noted that "overboard" discovery has created a "staggering amount of work" for the Magistrate Judge. Dkt. 674 at 3:20-4:6. And the Magistrate Judge criticized plaintiffs for "asking for literally everything" and then getting "mad when they don't get [it]." Dkt. 455 at 58:20-22, 78:1-8. Despite their kitchen-sink tactics elsewhere, plaintiffs have not seriously tried to gather evidence from other sources about Mr. Zuckerberg's conduct or intent—or even "take[n] half-hearted depositions of lower-level employees" to "set up an opportunity to depose [him]." *Celerity*, 2007 WL 205067, at *5.

On November 15, 2024, plaintiffs served an initial list of "witnesses they wish[ed] to depose," which "included [Mr.] Zuckerberg, but did not include Meta executives" closer to the facts, such as Sherman, Leach, and Protti. Dkt. 994-4 ¶ 4. Plaintiffs' Rule 30(b)(6) deposition notices identified "43 topics and more than 130 sub-topics, none of which mention[ed] Mr. Zuckerberg," "the FTC Consent Order," or anything else later used to justify his deposition. *Id.* ¶ 5. Worse still, as of April 30, 2025, Plaintiffs had taken "seven" fact depositions but "only asked one deponent" a "couple of questions" about Mr. Zuckerberg. Dkt. 1006-4 ¶ 6. They also have "served 313 requests for production, and dozens of requests for admission and interrogatories, none of which included any inquiries regarding [his] involvement" in relevant events. *Id.* ¶ 7.

"Considering the manner in which discovery has been conducted in this case," the Magistrate Judge noted the "potential for abuse or harassment with respect to Mr. Zuckerberg's deposition." Dkt. 967 at 4. That is dispositive. Plaintiffs' rush to depose Mr. Zuckerberg before other, more relevant personnel exposes their gambit: They are trying to put the screws on Meta, not to discover new, otherwise unattainable facts. The Court should not countenance such tactics.

**B. This Court Has Not Applied The Apex Doctrine In A Case Like This One**

This Court has applied the apex doctrine in three recent cases. *See Intel Corp. v. Tela Innovations, Inc.*, No. 18-cv-02848 (WHO), Dkt. 162 ("*Intel* Order"); *In re Juul Labs, Inc.*

*Antitrust Litig.*, No. 20-cv-02345 (WHO), Dkt. 435 ("*Juul* Order"); *Illumina Inc. v. BGI Genomics Co., Ltd.*, Nos. 19-cv-03770, 20-cv-01465 (WHO), Dkt. 388 ("*Illumina* Order"). While the depositions were allowed in those cases, their circumstances were materially different. In *Intel*, the deposition did "not clearly implicate the concerns underlying the apex doctrine." *Intel* Order at 24-25. In *Juul*, the executives had "already been deposed repeatedly" in related "FTC proceedings" and "MDL proceedings." *Juul* Order at 1. And in *Illumina*, the Court summarily disposed of the defendant's objections, *see Illumina* Order at 1, while the magistrate judge's decision made clear that the plaintiffs had "exhausted other forms of discovery first" and "obtained evidence" that the executives had "direct personal involvement in a yearslong [business] plan" that was central "to the willfulness of [the defendants'] alleged infringement," *Illumina* Dkt. 296 at 3-4. Moreover, none of these cases involved an explicit acknowledgement by the magistrate judge that the plaintiffs' litigation conduct suggested they were seeking an apex deposition for improper reasons.

In stark contrast, deposing Mr. Zuckerberg—the chairman and CEO of "the world's largest social media company," Dkt. 335 ¶ 2—clearly implicates the apex doctrine. Mr. Zuckerberg has not been deposed in any related proceeding; indeed, other courts in this District have rejected attempts to depose him, including in a case raising similar allegations. *See Frasco v. Flo Health Inc.*, No. 21-cv-00757 (JD), Dkt. 269 (N.D. Cal. Feb. 8, 2023);[3] *Metabyte Inc. v. Meta Platforms, Inc.*, No. 23-cv-04862 (VC), Dkt. 51 (N.D. Cal. Mar. 13, 2025); *Total Recall Techs. v. Lucky*, No. 15-cv-02281 (WHA), Dkt. 299 (N.D. Cal. Sept. 22, 2020). And plaintiffs have not exhausted other forms of discovery or demonstrated why his testimony is necessary. Under these circumstances, the apex doctrine does not permit his deposition.

## III. CONCLUSION

The order should be overruled because it is "clearly erroneous" (Mr. Zuckerberg has neither unique nor first-hand knowledge, and plaintiffs have not exhausted less-intrusive methods) and "contrary to law" (it is not dispositive that an apex deponent may have unique knowledge as to his intentions, and Mr. Zuckerberg's internal thought process is irrelevant). Fed. R. Civ. P. 72(a).

[3] Contrary to the Magistrate Judge's order, the justification offered for Mr. Zuckerberg's deposition in *Frasco* (that he "'was apprised of' Meta's collection of sensitive health data") is identical to that here (that he was "*informed* of consequential privacy decisions"). Dkt. 967 at 3.

Dated: May 28, 2025

Respectfully submitted,
LATHAM & WATKINS LLP

By: /s/ *Andrew B. Clubok*

Andrew B. Clubok (*pro hac vice)*
*andrew.clubok@lw.com*
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

Gary S. Feinerman (*pro hac vice pending*)
*gary.feinerman@lw.com*
300 North Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Lauren R. Goldman*

Lauren R. Goldman (*pro hac vice*)
*lgoldman@gibsondunn.com*
Darcy C. Harris (*pro hac vice*)
*dharris@gibsondunn.com*
200 Park Avenue
New York, NY 10166
Telephone: +1.212.351.4000

Elizabeth K. McCloskey (SBN 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (SBN 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: +1.415.393.8200

*Attorneys for Defendant Meta Platforms, Inc.*

**CIVIL L.R. 5-1(I)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: May 28, 2025 /s/ *Lauren R. Goldman*