# Proposed Redacted Version of Exhibit 1 (Dkt. No. 1036-4)

# Exhibit 1

# <u>FILED UNDER SEAL</u>

1  Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
   Email: jaybarnes@simmonsfirm.com
2  SIMMONS HANLY CONROY LLC
   112 Madison Avenue, 7th Floor
3  New York, New York 10016
   Telephone: (212) 784-6400
4  Facsimile: (212) 213-5949
5

6  Jeffrey A. Koncius, CSB #189803
   Email: koncius@kiesel.law
7  KIESEL LAW LLP
   8648 Wilshire Boulevard
8  Beverly Hills, California 90211
   Telephone: (310) 854-4444
9  Facsimile: (310) 854-0812
10

11  *Attorneys for Plaintiffs and the Proposed*
    *Class*
12

13  [*Additional counsel listed on signature page*]
14

Geoffrey Graber, CSB #211547
Email: ggraber@cohenmilstein.com
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
TERRELL MARSHALL LAW
  GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Andre M. Mura, CSB #298541
Email: amm@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

15

16                      UNITED STATES DISTRICT COURT
17            FOR THE NORTHERN DISTRICT OF CALIFORNIA
                        SAN FRANCISCO DIVISION
18

19  IN RE META PIXEL HEALTHCARE
    LITIGATION
20
                                            Case No. 3:22-cv-3580-WHO (VKD)
    This Document Relates to:
21                                          **PLAINTIFFS' REQUESTS FOR**
    All Actions.                            **PRODUCTION OF DOCUMENTS**
22                                          **DIRECTED TO META**
                                            **PLATFORMS, INC. – SET TEN**
23
                                            JURY TRIAL DEMAND
24
                                            The Honorable William H. Orrick
25

26

27

28
    PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO META
                    PLATFORMS, INC. – SET TEN - 1
                    Case No. 3:22-cv-3580-WHO (VKD)

**PROPOUNDING PARTY:**        **PLAINTIFFS**

**RESPONDING PARTY:**         **META PLATFORMS, INC.**

**SET NO.:**                  **TEN**

Pursuant to the Federal Rules of Civil Procedure 26 and 34, Plaintiffs, by and through their undersigned counsel, hereby request that Defendant Meta Platforms, Inc. preserve and produce documents responsive to these Requests, including non-identical copies, within the time allotted under the Federal Rules of Civil Procedure. Production is to be made to the office of Kiesel Law LLP, 8648 Wilshire Boulevard, Beverly Hills, California 90211-2910, or otherwise by agreement of the parties. Plaintiffs are available to meet and confer to discuss the scope of these Requests.

Plaintiffs request that Defendant serve a written response to each Request in accordance with the Federal Rules of Civil Procedure, and the instructions, below, within 30 days of the date of service of this set of Requests. Plaintiffs further request that Defendant serve supplemental responses if it obtains further or different information, as required by Federal Rule of Civil Procedure 26(e). Plaintiffs reserve the right to serve additional discovery with regard to other matters in this action.

## **DEFINITIONS**

The Definitions provided herein are intended to streamline language used in these Requests for Production and facilitate a common understanding of the information sought. Defendant should accept the Definitions provided herein, for the limited purpose of responding to each request for production, even if Defendant disputes a Definition's accuracy or otherwise finds it objectionable.

1.      "All" means "any and all," as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

2.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO META PLATFORMS, INC. – SET TEN - 2
Case No. 3:22-cv-3580-WHO (VKD)

3.      "Any" shall be deemed to include and encompass the words "each" and "all," as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4.      "Communication" means any contact, oral or documentary, formal or informal, at any time or place or under any circumstances whatsoever, whereby information of any nature is transmitted or transferred, including correspondence, and references to notes, letters, memorandum, e-mail, reports, or any other document by which information is passed or conveyed from one individual to another.

5.      "CMIA" means the California Confidentiality of Medical Information Act.

6.      "Document(s)" includes any data, document, ESI, or Electronic Media stored in any medium and is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34 and Federal Rules of Evidence 101(4)(6), and 1101, including, but not limited to, programming source code, electronic or computerized data compilations, Communications, electronic chats, instant messaging, encrypted or self-destructing messages, e-mail Communications, other electronically stored information from personal computers, sound recordings, photographs, and hard copy Documents.

7.      "Each" shall be construed as "every," and "every" shall be construed to include "each."

8.      "Electronic Media" means any magnetic, optical, or other storage media device used to record ESI including but not limited to computer memory, hard disks, floppy disks, flash memory devices, CDs, DVDs, Blu-ray discs, cloud storage (e.g., DropBox, Box, OneDrive, or SharePoint), tablet computers (e.g., iPad, Kindle, Nook, or Samsung Galaxy), cellular or smart phones (e.g., BlackBerry, iPhone, or Samsung Galaxy), personal digital assistants, magnetic tapes of all types, or any other means for digital storage and/or transmittal.

9.      "Electronically Stored Information" or "ESI" means information that is stored in Electronic Media, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata,

system data, deleted data, fragmented data, data pertaining to or maintained in Apps, database contents, and computer code.

10.    "Employee(s)" means, without limitations, any person who acted or purported to act on behalf of any Facebook entity, or another person or persons including, but not limited to, current and former officers, directors, executives, managers, supervisors, department heads, sales personnel, secretaries, staff, messengers, agents, contractors, consultants, accountants and auditors, attorneys, representatives, or any person acting or authorized to act on behalf of Facebook or any division, subsidiary or entity of Facebook, individually or collectively.

11.    "Facebook," "Defendant," "Meta," "You," and "Your" means Defendant Meta Platforms, Inc. and any of its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions.

12.    "Meta Collection Tools" means the "Meta Pixel, Meta SDK, Meta Conversions API, customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions, and any other similar collection tools." *See* ECF No. 335, Amended Consolidated Complaint, at ¶¶ 1, 354.

13.    "Meta Pixel" means the "Meta Pixel, Meta SDK, Meta Conversions API, customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions, and any other similar collection tools." *See* ECF No. 335, Amended Consolidated Complaint, at ¶¶ 1, 354.

14.    "Facebook User(s)" means any Person who has registered for an account with Facebook.

15.    "Filter" means the Meta filtering mechanism designed to prevent sensitive health-related data from being ingested into Meta's ads ranking and optimization systems, as described on the Meta Business Help Center webpage, currently available at https://www.facebook.com/business/help/361948878201809, and also as described by Meta

Platforms, Inc. in the September 28, 2022 Joint Rule 26(f) Report at 4:20-27 and filed in *John Doe et al. v. Meta Platforms, Inc.*, Case No. 3:22-cv-3580-WHO, attached hereto as Exhibit A.

16. "Healthcare Provider web-property" means any website or app that Meta has placed into a health-related advertiser vertical; █████████, or other taxonomic categorization; or flagged by the Filter as relating to health.

17. "Healthcare Advertisers" means any advertiser that Meta has categorized as health-related or whose website or application Meta has categorized as health-related, including through a health-related advertiser vertical; Megataxon, catkit, or other taxonomic categorization; or flagged by the Filter as relating to health.

18. "Health Information █████ Category" means a health-related █████ category included in the Exhibits filed at Dkt. 652.

19. "HIPAA" means the Health Insurance Portability and Accountability Act of 1996.

20. "HIPAA Authorization" means the authorization required by the HIPAA Privacy Rule (45 C.F.R. § 508).

21. "Including" shall be construed broadly to mean "including, but not limited to" and "without limitation."

22. "Information" means written, recorded, graphic, or other electronic data, including metadata, of any nature whatsoever, regardless of how recorded, and whether an original or copy, including: any electronic data conveyed through an Internet communication; any electronic data associated with an Internet communication; any electronic data associated with the user participating in an Internet communication; and any inference, profiling or other association derived from a user's Internet communication, whether in isolation or in aggregate.

23. "Medical Provider" means the types of entities covered under HIPAA or the CMIA, including health care providers (including hospitals, doctors, clinics, psychologists, dentists, chiropractors, nursing homes, laboratories, and pharmacies), health plans (including health insurance companies, HMOs, and company health plans), healthcare clearinghouses, health care service plans, and pharmaceutical companies.

24.    "Patient Portal" is any Web-Property that requires patients to register and log-in to obtain access to the Web-Property and is used by a Medical Provider to communicate with patients.

25.    "Person(s)" means a legal person; a human being or a non-human entity recognized as having the rights and obligations of a human being and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

26.    "Personal Information" is information that identifies, relates to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular Person. It includes references that can create a profile about a Person reflecting the Person's preferences, characteristics, psychological trends, predispositions, behaviors, attitudes, intelligence, abilities, or aptitudes.

27.    "Plaintiff(s)" refers collectively to the Plaintiffs named in the First Amended Consolidated Class Action Complaint in the above-referenced Action.

28.    "Policy" or "Policies" means any rule, procedure, practice, or course of conduct, whether formal or informal, written, or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly.

29.    "Regard," "regarding," "refer," "referring," "relate," "relating," "pertain," "pertaining," means all Documents that explicitly or implicitly, in whole or in part, were prepared or received in conjunction with, or were generated as a result of, the subject matter of the request, including, without limitation, all documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

30.    "Web-Property" means a point of presence on the web, including websites and applications.

31.    Except for the terms defined hereof, and unless another meaning is obvious from the context and from a term's plain and ordinary usage, the terms used herein shall have the same meaning as they have in the operative Complaint in this Action.

**<u>INSTRUCTIONS</u>**

1.      Any Request for Production that inquires as to the knowledge, conduct, activities, or materials possessed by Defendant shall be taken to include the knowledge, conduct, activities, or materials possessed by Defendant's subsidiaries, parents, affiliates, and merged or acquired predecessors, as well as the present or former investigators, accountants, attorneys, directors, officers, partners, employees, and other agents of Defendant; and references to the "personnel" of Defendant shall include such individuals.

2.      For each Request herein, the singular shall be construed to include the plural and the plural shall be construed to include the singular.

3.      For each Request herein, the present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense. The use of a verb in any tense shall be construed to be in the tense necessary to bring within the scope of a request all responses that might otherwise be construed as outside the scope.

4.      For each Request herein, all undefined terms used in the Requests shall be construed in an ordinary common-sense manner and not in a hyper-technical, strained, overly literal, or otherwise restrictive manner.

5.      If You claim any form of privilege, work product, or other protection, whether based on statute or otherwise, as a ground for not answering a request or any part of a Request or declining to produce any Document, You must set forth in detail the facts upon which the assertion is based.

6.      If any Document was but no longer is in Your possession or subject to Your control, please provide a complete and detailed explanation of all circumstances surrounding the disposition of the document including dates and manner of disposition (*e.g.*, lost, destroyed, transferred to a third party, *etc.*).

7.      These Requests are continuing, and Defendant should supplement its responses and production immediately whenever it acquires additional information and Documents pertaining thereto.

PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO META
PLATFORMS, INC. – SET TEN - 7
Case No. 3:22-cv-3580-WHO (VKD)

8.      Unless otherwise agreed by the parties or ordered by the Court, all Documents, things, and electronically stored information (ESI) shall be in native format.

## RELEVANT TIME PERIOD

The relevant time-period for all areas of inquiry runs from April 14, 2014, unless otherwise specified by the Request, agreed upon by the Parties, or pursuant to any subsequent Order by the Court. Documents created outside of the time period, but which relate to the subject matter of the operative Complaint, should be included when interpreting the Requests set forth herein. For example, if any Request relates to a policy or business practice employed, a Document transmitted or created, a device or product that existed, or an event that occurred during a specific period of time (the "Relevant Time Period," for the purposes of this instruction), but which was first conceived, designed, discussed, drafted, tested, implemented, or used before or after the Relevant Time Period, please provide responses and Documents from outside the Relevant Time Period if they relate to the policy, practices, document, or event at issue.

## REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 251:

All Documents relating to the creation, design, implementation, adoption, and/or installment of the Meta Business Tools "Core Setup" described in the Meta Business Help Center at https://www.facebook.com/business/help/124742407297678, including, but not limited to:

1.      Documents sufficient to identify the engineers and others who proposed, designed, and implemented the features of "Core Setup" ;

2.      The public source code placed on properties where "Core Setup" is implemented;

3.      The internal source code relating to "Core Setup;"

4.      Proposals and internal discussions about the creation of "Core Setup;"

5.      Engineering, design, and use-case documentation about "Core Setup;"

6.      All internal Communications relating to "Core Setup" being used by Medical Providers or Healthcare Provider (HCP) web-properties;

7.    Wiki documents about "Core Setup;"

8.    All internal Communications relating to why a Web-Property would want to use "Core Setup" to "shorten" "Parts of URLs after the domain" as described in the Business Help Center page relating to "Core Setup;"

9.    All Communications with Medical Providers, HCP web-properties (or developers of such properties)about "Core Setup;"

10.    Documents sufficient to identify all Medical Providers or HCP Web-Properties where "Core Setup" has been implemented, and, for each such property, the date of implementation

11.    For each Medical Provider or HCP Web-Property where "Core Setup" was implemented, Documents sufficient to show whether the implementation was (a) by the Medical Provider of HCP Web-Properties choice; (b) imposed by Meta; and/or (c) whether a HCP Web-Property can disable "Core Setup."

12.    To the extent that Meta imposed "Core Setup" on health-related web-properties, all Documents sufficient to identify the methodology, lists, taxonomies, categorizations, and/or processes through which Meta identified the health-related web-properties on which to impose "Core Setup"

13.    All Documents regarding the revenue impact to Meta of a Healthcare Provider Web-Property moving to "Core Setup," including any AB testing or other experiments that Meta ran to test "Core Setup" and any documents relating to before- and after- revenue for web-properties where Core Setup was imposed or implemented;

14.    Documents sufficient to show the date that "Core Setup" was first made available;

15.    All Documents relating to how "Core Setup" changes "data lineage" inside Meta, including but not limited to whether and how Meta's processes for (1) the Filter; (2) "sessionization;" (3) the ███████████ (4) up2x; (5) ZippyDB; (6) analyses ran and inferences placed on Communications and users through ████████

PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO META PLATFORMS, INC. – SET TEN - 9
Case No. 3:22-cv-3580-WHO (VKD)

pricing of user data as it related to advertising off Facebook's platform, including the marketing

or pricing of health or healthcare data. including:

      a.      Research reflecting advertiser demand for and key product attributes of

advertising off Facebook's platform;

      b.      Results and summaries;

      c.      The underlying raw data;

      d.      Pricing analyses of competitor advertising platforms;

      e.      Any related Documents and Communications;

      f.      Monetization or valuation to advertisers of user time spent on-platform.

**REQUEST FOR PRODUCTION NO. 251:**

      Any Document or analysis, including Communications, Relating to the relationship

between user time spent on Facebook and Facebook's revenue.

**REQUEST FOR PRODUCTION NO. 251:**

      Any quantitative or qualitative valuations, including rankings, of specific types of user

data, including data Meta classifies as health data, healthcare data, and/or HIPAA-protected data,

in terms of value or revenue potential.

**REQUEST FOR PRODUCTION NO. 251:**

      Documents, surveys, studies, research, and analysis related to Meta Collection Tools'

contribution to advertising revenues, including any specific analysis or breakdown of health

information that was collected by Meta's Collection Tools' contribution to advertising revenues.

**REQUEST FOR PRODUCTION NO. 251:**

      Documents sufficient to show Facebook's Monthly Active Users for the United States for

each month and quarter.

**REQUEST FOR PRODUCTION NO. 259:**

Facebook and whether and when "Core Setup" was in place on the properties.

**REQUEST FOR PRODUCTION NO. 289:**

Documents sufficient to explain and identify all aspects of the intent pipeline.

**REQUEST FOR PRODCUTION NO. 290:**

All non-source code engineering design, Wiki Documents, and presentations that relate to or explain how Meta transforms Megataxon categories that it assigns to Communications into user intents and then user features and how such information is used in ads ranking and optimization and decisions on content to display to a user in the Facebook News Feed.

**REQUEST FOR PRODUCTION NO. 291:**

Documents sufficient to show the date or dates that each Medical Provider installed a Meta Collection Tool.

**REQUEST FOR PRODUCTION NO. 292:**

Documents sufficient to show the date or dates that each Medical Provider removed, uninstalled, or modified the settings on a Meta Collection Tool.

**REQUEST FOR PRODUCTION NO. 293:**

Documents sufficient to show the default settings that govern data transmission to Meta upon installation of a Meta Collection Tool.

**REQUEST FOR PRODUCTION NO. 294:**

Documents sufficient to show each change a Medical Provider made to an installed Meta Collection Tool that would alter the information sent to Meta via the Meta Collection Tool.

PROPOUNDED TO AND DATED this 16th day of November, 2024.

By: *Jason "Jay" Barnes*
Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted pro hac vice)

1   Eric Johnson (admitted pro hac vice)
    Jennifer Paulson (admitted pro hac vice)
2   An Truong (admitted pro hac vice)

3   **COHEN MILSTEIN SELLERS & TOLL**
    **PLLC**
4   Geoffrey Graber, SBN 211547
    Eric Kafka (admitted pro hac vice)
5   Claire Torchiana, SBN 330232

6   **TERRELL MARSHALL LAW GROUP PLLC**
7   Beth E. Terrell, SBN 178181
    Amanda M. Steiner SBN 190047
8   Benjamin M. Drachler (pro hac vice forthcoming)

9   **KIESEL LAW LLP**
10  Jeffrey Koncius, SBN 189803
    Paul R. Kiesel, SBN 119854
11  Nicole Ramirez Jones, SBN 279017
    Kaitlyn E. Fry, SBN 350768
12
13  **GIBBS LAW GROUP LLP**
    Andre M. Mura, SBN 298541
14  Hanne Jensen, SBN 336045
    Delaney Brooks, SBN 348125
15
16
17
18
19
20
21
22
23
24
25
26
27
28