UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions. | Case No. 22-cv-03580-WHO (VKD)<br><br>**ORDER RE MAY 30, 2025 DISCOVERY DISPUTE RE PLAINTIFFS' RFP 251**<br><br>Re: Dkt. Nos. 1036, 1037 |

The parties ask the Court to resolve their dispute regarding whether Meta should be required to produce "documents sufficient to show Facebook's analysis of the relationship between user time spent on Facebook and Facebook's revenue," responsive to plaintiffs' Request for Production No. 251 ("RFP 251"), as narrowed.[1]  Dkt. No. 1037.[2]  The Court heard oral argument on this dispute on June 10, 2025.  Dkt. No. 1062.

Plaintiffs contend that the discovery they seek is relevant and proportional to the needs of this case.  Dkt. No. 1037 at 2-3.  With respect to relevance, plaintiffs explain that they intend to

---

[1] The disputed document request is apparently one of several requests numbered "251." In its original form the RFP 251 at issue asks for: "Any Document or analysis, including Communications, Relating to the relationship between user time spent on Facebook and Facebook's revenue." Dkt. No. 1054-3 at ECF 12.

[2] Plaintiffs move to seal the discovery letter brief and exhibits on the ground that Meta claims the contents are confidential. In response, Meta requests sealing for a narrowed portion of the discovery letter and exhibits, stating that the subject information reveals specific, non-public information about its internal analyses regarding revenue and other metrics, as well as proprietary classification systems, including the names of Meta's classification systems. *See* Dkt. No. 1054. As plaintiffs' sealing motion relates to a discovery matter, the good cause standard applies. *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1098-99 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. for Auto Safety*, 580 U.S. 815 (2016); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006).  Good cause appearing, the Court grants plaintiffs' sealing motion, as narrowed by Meta.  Unredacted portions of the discovery letter and exhibits (Dkt. Nos. 1036 and 1053) shall remain under seal.

advocate a damages theory premised on the following rationale: (1) Facebook earns more revenue when Facebook users see more ads; (2) Facebook users see more ads when they spend more time on the Facebook platform; thus, (3) whatever impacts the amount of time Facebook users spend on the platform impacts Facebook's revenue. *See id.* at 1, 2. Plaintiffs assert that they have (or will have) both fact and expert evidence showing that Facebook users would have spent less time on the Facebook platform if Meta/Facebook had disclosed that it was collecting the sensitive health data at issue in this case. *See id.* at 2-3. Plaintiffs argue that fact discovery suggests that Facebook has conducted analyses of the relationship between time spent on the Facebook platform and Facebook's revenue, and they wish to obtain those analyses in support of their damages theory.[3] With respect to proportionality, plaintiffs emphasized at the hearing that they seek only "final" analyses that include (but are not limited to) the relationship between user time spent on Facebook and Facebook revenue; they do not seek "any documents" or "communications" "relating to" such analyses. *See* Dkt. No. 1062. Plaintiffs contend that, as narrowed, RFP 251 does not impose an undue burden on Meta. *Id.* at 3.

Meta argues that RFP 251 seeks discovery that is neither relevant nor proportional to the needs of the case. *Id.* at 4-6. With respect to relevance, Meta disputes that there is any factual basis for plaintiffs to contend that users' time on the Facebook platform is impacted in any way by Meta's disclosure or non-disclosure of its collection practices with respect to health data, calling plaintiffs' damages theory "speculative." *Id.* at 4, 5. In addition, Meta points out that the time users spend on Facebook's platform is only one of dozens of considerations Meta discloses publicly about its business. *Id.* at 5. With respect to proportionality, Meta's principal concern seems to be that if plaintiffs are permitted to pursue the damages theory they describe, *Meta* would have to undertake burdensome additional discovery about "*why* users engage on Meta's platform" and "the differences among *which* users engage and for how long and over what time period." *Id.*

---

[3] In the discovery dispute letter, plaintiffs seemed to suggest that they intend to pursue an additional damages theory, wherein they would attempt to value users' "excess time" spent on the Facebook platform, *see* Dkt. No. 1037 at 1, but when questioned about this at the hearing, plaintiffs indicated that they do not rely on valuing user time per se as a basis for seeking discovery by means of RFP 251.

1  Meta also objects that plaintiffs' request for "documents sufficient to show" responsive analyses would require Meta to undertake burdensome searches for responsive documents dating back to 2015. *See* Dkt. No. 1062.

As the Court explained during the hearing, plaintiffs have shown that the discovery they seek is relevant to their damages theory. While there may be little or no support in the factual record for plaintiffs' contention that users would have spent less time on the Facebook platform if Meta/Facebook had disclosed that it was collecting users' sensitive health data,[4] plaintiffs may be able to establish this part of their theory through expert testimony and/or survey evidence. Because plaintiffs have shown that the amount of time users spend on the platform is at least one factor that may impact revenue, they have also shown that discovery of analyses addressing the relationship between user time spent on the platform and revenue is relevant to the other part of their theory. Meta's critique of plaintiffs' damages theory and its support (or lack thereof) is best addressed at the time set by the presiding judge for challenging the reliability and admissibility of such a theory and the fact and expert evidence offered in support of it.

Further, as the Court also explained during the hearing, to the extent Meta argues it is burdened by the effort necessary to rebut plaintiffs' damages theory, the Court is not persuaded that this is a *discovery* burden under Rule 26(b)(1).[5] Rather, the relevant burden is the effort Meta would need to undertake to identify and produce responsive documents. As to that burden, the Court finds that it can be mitigated to ensure that the discovery is appropriately limited.

Accordingly, the Court orders as follows:

1. Meta must produce only final analyses, if any, of the relationship between user time spent on Facebook and Facebook revenue, responsive to RFP 251. A "final analysis" is responsive even if it also includes analyses of other factors, besides time spent, that impact Facebook revenue.

---

[4] The deposition testimony and documents cited by the parties were not before the Court.

[5] Meta does not contend that plaintiffs were required to disclose their damages theory earlier in the litigation and failed to do so.

2. The relevant time period is the time period generally applicable to the parties' discovery in this case, unless the parties stipulate otherwise.

3. Meta is not required to apply search terms to custodial ESI in order to identify responsive final analyses; rather, Meta's counsel may question the personnel likely to know of the existence and location of responsive analyses and use other reliable means to identify responsive final analyses.

4. Meta shall produce the responsive final analyses, if any, by **July 7, 2025**.

**IT IS SO ORDERED.**

Dated: June 16, 2025

*Virginia K. DeMarchi*
Virginia K. DeMarchi
United States Magistrate Judge