Redacted Version of the
July 1, 2024 Joint
Discovery Dispute
Letter
(Dkt. No. 527-8)

July 1, 2024

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    *In re Meta Pixel Healthcare Litigation*, Case No. 22-cv-03580-WHO (VKD)
             Meta's Tools to Identify Data Sources, Fields, Field Descriptions, and Other Data

Dear Judge DeMarchi:

The parties file this letter pursuant to the Court's directive to file a "joint discovery dispute letter regarding relevant data sources, and the appropriate means to identify them." ECF No. 488.

## A.    STATEMENT OF THE DISPUTE

**Plaintiffs' Statement** – How Meta uses health data is key to this case. Meta has identified Hive as helping answer this question and used a tool called Daiquery to disclose information about Hive. But Meta refuses to produce complete information from Hive, **providing tables only** ▮▮▮▮▮▮▮▮. Plaintiffs propose using Meta's tools built for this purpose to complete the picture, **tracking all** ▮▮▮▮▮▮▮▮▮▮▮▮ tables containing at-issue data. Meta has also recently disclosed more relevant data sources but has refused to produce basic information about them, so Plaintiffs seek ▮▮▮▮▮ and exemplars from ZippyDB and up2x along with Hive exemplars.

**Meta's Statement** – Plaintiffs ask for essentially unfettered access to several of Meta's internal systems under the pretense of seeking "data lineage" documents. Plaintiffs also seek plainly overbroad information from two other Meta databases—regardless of any connection to this case. The questions presented are:

(1) whether plaintiffs have carried their heavy burden to secure the "extraordinary" relief of obtaining access to Meta's internal systems;

(2) whether plaintiffs' request—regardless of which party would carry it out—is reasonably targeted towards obtaining responsive, relevant information beyond the significant discovery about data sources and "lineage" that Meta has already produced; and

(3) whether Meta should be required to produce so-called "exemplars" from two systems and *ten* further tables, even though plaintiffs already have meaningful discovery about all of them.

## B.    PLAINTIFFS' POSITION

According to Meta, "data lineage" documentation (i.e. how data is transformed and where it moves) "is the backbone to verify compliance." Barnes Decl., Exs. 1 and 2 at 295795; Dkt. 323-2 ¶ 14. Accordingly, Plaintiffs seek "data lineage" information about the at-issue data from Meta.[1]

---

[1] This dispute relates to five requests for production of documents, three interrogatories, and six

Meta has twice been ordered to produce such **data lineage documents**. Dkts. 275 and 380. However, Meta has yet to fully comply with either order.

The parties have known for some time about Hive's relevance to this action. On March 22, 2024, Meta also identified ZippyDB **and up2x** as relevant data sources. *See* Barnes Decl., Ex. 3 (Meta Suppl. Answer to Interrogatory No. 5, served Mar. 22, 2024). Plaintiffs propose a protocol for using a tool called Daiquery to extract responsive data from Hive tables. As for ZippyDB **and up2x**, Plaintiffs ask for an order that **Meta produce the list of all keys and exemplars of them for those sources, as well as the other exemplars from Hive Plaintiff has requested.**

Without robust **data lineage discovery**, Plaintiffs cannot determine how Meta uses the at-issue data. Meta's productions on May 29 and June 21 disclosed for the first time highly relevant tables. For example, Meta recently revealed the existence of a table named ███████ ███████████ That table translates Pixel-gathered data into suppositions about ███████ ████████████████ associated with Pixel data and apparently derived from ██████████ or other ███████████████████ that Meta assigns to specific Pixel communications. This transformation requires assessment of the meaning and type of data gathered. Based on other information Meta has recently disclosed about ████████, complete discovery of such fields is likely to demonstrate that Meta has labeled at-issue communications as ███████████████ makes no sense for Meta to slowly leak out additional critical tables instead of comprehensively identifying at-issue tables once and for all.

## I.     THE DAIQUERY TOOL

Daiquery ███████████████████████████████████████████████████████████████████████████████ *See* Barnes Decl., Ex. 4. Daiquery identifies the following data-lineage documents for each query: a Table summary, fields and field descriptions, ████████████████████████████████████████████████████████, and Retention information.

In January, Meta produced **data-lineage documents for several Hive tables using Daiquery** and in May agreed to produce data-lineage documents for tables ███████████████████ from certain tables. Meta eventually produced fields and field descriptions for 207 additional Hive tables but refused to go further than a ██████████████████████ effectively revealing the initial stages of how at-issue data is used by Meta while withholding subsequent and potentially more important uses. Meta also refused to produce basic and easily accessible **data lineage information included about each table in Daiquery, such as** ████████████████

Contrary to Meta's assertions, and as it has alre dy demonstrated in discovery, Daiquery can be used to trace the flow of sensitive health information from its origin through the tables. *See* Shafiq Decl. ¶¶ 24-27, 33-36. Even if Daiquery did not reveal the complete data lineage, information about Meta's manipulation and understanding of the data it possessed is highly relevant.

The protocol Plaintiffs' propose for using Daiquery is so straightforward that Plaintiffs can

---

requests for inspection. *See* Barnes Decl., ¶¶ 10(a)-(n), Ex. 3.

describe to the Court every step they would take—each button click and entry of a term—and all the types of information that would be revealed. *See* Barnes Decl., Ex. 4, Shafiq. Decl. ¶¶ 28-43. Like any other discovery or audit, the process involves following **the trail of data** ▮▮▮ **from the tables Meta identified as responsive, tracking where the responsive data goes and ignoring branches into irrelevant tables.**

Meta's concern that ▮▮▮ tables become increasingly irrelevant is misplaced. Shafiq easily eliminated as irrelevant 115 of the 207 tables Meta identified in its May 29 data-lineage production. *Id.* ¶¶ 41-42. He will use the same process for **further** ▮▮▮ **tables.**

## II. EXEMPLARS

Meta has identified ZippyDB **and up2x** as relevant but refuses to produce data-lineage discovery from them. Meta can readily produce ▮▮▮ ZippyDB and up2x **and then produce exemplars of the** ▮▮▮ Shafiq Decl. ¶¶ 123-126.

Meta should also be ordered to produce one-hour exemplars from ten other tables. *See* Shafiq Decl. ¶¶ 74-75.[2] **This includes "cds_events_offsite_signals" which Meta's June 21, 2024 production characterizes as a kind of super-table.** *See* Shariq Decl. ¶¶ 22-26. Meta's declarants contend that the tables Meta itself identified as relevant are not helpful, but they base this argument on the idea that they contain only **"derivative"** data. That is precisely the data Plaintiffs have always sought and Meta has long been ordered to produce. *See* Barnes Decl. ¶¶ 65-66.

## III. ARGUMENT

A party may discovery any matter relevant to a claim or a defense and "proportional to the needs of the case." Rule 26(b). Once the court determines that a request seeks relevant information, a "heavy burden" flips to the party resisting discovery to establish "good cause" to refuse. *Ioane v. Spjute*, 2014 WL 2930790, at *2-3 (E.D. Cal. Jun. 27, 2014). Courts "balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Fratus v. Cnty. of Contra Costa*, 2015 WL 4538076, at *3 (N.D. Cal. 2015) (citation omitted).

### 1. The Requested Discovery is Critically Important

---

[2] The ten tables are:

all_ads_details_signals



Both Meta and Dr. Shafiq agree, "data lineage discovery" is "the backbone to verify compliance" with privacy obligations. Because such verification requires understanding all the ways sensitive data at issue in this case is used—not just the ones Meta chooses to reveal—this discovery must include complete **data lineage**. *See generally* Shafiq Decl. Meta does not dispute that additional tables **contain relevant data**, but it refuses to disclose them. Plaintiffs seek to identify them using the identical tool Meta uses for this purpose.

### 2. Plaintiffs' Requested Relief

Plaintiffs propose a minimally burdensome inspection protocol. Despite Meta's insinuation that Plaintiffs want "unfettered" access for some nefarious purposes, Plaintiffs have described precisely what they are asking to do with the tool. This approach will be more efficient and generate fewer additional discovery disputes than any other means of obtaining this information at this stage. And obtaining **data lineage information** before producing full tables will narrow discovery and reduce everyone's burden. When conferring, Meta has not substantiated any argument that the use of this tool is burdensome.

Courts have allowed inspections when parties have attempted to obtain the information through other means unsuccessfully. See *Brocade Comms. Systems, Inc. v. A10 Networks, Inc.*, 2012 WL 70428, at *1 (Jan. 9, 2012) (Koh, J.). Despite two court orders, and previous representations that they had performed their own thorough search, Meta continues to disclose relevant tables and has failed to produce or make available the responsive **data-lineage discovery**. Plaintiffs' efforts have been delayed by Meta's lack of transparency and misstatements of fact regarding its systems and tables. *See* Shafiq Decl. ¶¶ 55-69 (evaluation of Meta statements). Accordingly, inspection is warranted. If the Court does not order inspection, it should order Meta to produce the information from Daiquery itself by July 15, 2024 following the same protocol proposed by Plaintiffs.

Because **exemplars are critical to understanding the specific data sources** that would be most efficient for classwide production, Plaintiffs also seek **exemplars and preservation information a subset of already-identified Hive tables and** for the ZippyDB and up2x ▮.

Meta says ▮▮▮▮▮▮▮▮▮▮▮ e is enough. But the Daiquery information is not entirely in ▮▮▮▮▮ and includes Meta's own characterization of the ▮▮▮ Meta also refuses to produce to Plaintiffs the full information regarding **data sources that Plaintiffs' expert located within the source code**. It is not feasible for Plaintiffs to obtain this information within the clean room.[3]

Without this discovery, Plaintiffs cannot identify the most efficient ▮▮▮▮▮▮▮▮ Hive tables for production of additional data as ordered by Dkt. 452 and are left to guess which tables are best

---

[3] In Dkt. 380, the Court ordered that "if Meta contends that the source code is the only place that identifies and/or describes a particular field, Meta shall so state in writing in response to RFP 7" by December 11, 2023. Meta never did so.

based on scattered discussion in documents. Meta's refusal to provide this discovery substantially prejudices Plaintiffs and delays other discovery.[4]

## C.   META'S POSITION

Plaintiffs ask the Court for the right to trawl Meta's internal systems—and extract overbroad, irrelevant information—under the pretense of seeking "data lineage" documents, even though Meta has already largely produced the information plaintiffs claim they need. Plaintiffs' request should be denied.

*First*, examining an opposing party's systems is an "extraordinary" remedy reserved for circumstances not present here. Meta has made significant efforts to identify relevant data sources and has made available its *entire* source code to plaintiffs' expert, who has systematically queried it to find the information plaintiffs seek.

*Second*, plaintiffs' demand is inconsistent with this litigation's scope. This case, and plaintiffs' discovery requests, are about *"healthcare"* information. Plaintiffs concede their inspection will largely involve reviewing information that has nothing to do with healthcare.

*Third*, plaintiffs' requested inspection will not actually answer their questions about "lineage." As Meta has repeatedly explained, its lineage tools do *not* track the flow of "sensitive health data" throughout Meta's systems.

*Fourth*, if the Court believes plaintiffs are entitled to more information, then *Meta* is best equipped to deliver that information.

Plaintiffs also demand "exemplars" from *ten* other tables and two other Meta systems, but these requests are flawed, including because they seek irrelevant, duplicative, and unnecessary "exemplar" information.

### 1.  This Litigation's Scope.

Plaintiffs assert that *specific* categories of developers—HIPAA and CMIA-covered healthcare providers—sent Meta "sensitive patient health information." Dkt. 185. Discovery is accordingly focused on the relevant healthcare developers and allegedly "sensitive" data they sent. Pls.' RFPs 6–7 (seeking documents *only* about data sent from "Medical Provider[s]").

### 2.  Meta Has Provided Significant Discovery About Potentially Relevant Pixel Data Sources.

Meta cannot ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 143-3 ¶¶33–38. Nor does Meta **maintain a lineage of tables that store "sensitive health information"** ▮▮▮▮▮▮▮▮▮▮

---

[4] For example, Plaintiffs could not have identified the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ table for production by April 24, 2024, as ordered by the Court because Meta did not identify the table until May 29, 2024. Plaintiffs respectfully submit that it would be a highly inefficient use of the Court's time for them to move for production of tables in a seriatim fashion, with the specific tables identified changing with each new step of ▮▮▮▮▮▮▮ discovery.

providers. Wooldridge ¶¶31–33.

Meta has therefore undertaken significant efforts to identify data sources containing potentially relevant, non-duplicative data, **including the principal tables that store broad segments of incoming Pixel data.** Dkt. 435-2. Through these efforts, Meta identified six principal tables reflecting the ▮▮▮▮ receipt of relevant data and two tables related to Meta's advertising systems.

But Meta has also provided broader discovery about numerous other tables, as plaintiffs' declarations show. *See* Shafiq ¶¶76–108. Meta's productions have included references to *hundreds* of other tables, and Meta has been providing informal discovery about many of them for *months*. ▮▮▮▮ **all Hive tables** ▮▮▮▮ from the six principal tables—approximately 200 in total—and produced schemas for them. *Id.* ¶¶12–21. And, recently, to satisfy plaintiffs' shifting demands, Meta **agreed to** ▮▮▮▮ Wooldridge ¶35.

Moreover, months ago, Meta made its *entire* source code available for inspection. *Id.* ¶7. This ▮▮▮▮ *Id.* ¶¶7–8. The ▮▮▮▮. *Id.* ¶¶7–8, 29. But plaintiffs still are not satisfied.

### 3. Plaintiffs Should Not Be Permitted to Access Meta's Internal Systems.

"A forensic examination of an opposing party's computer is considered an extraordinary remedy." *Juul Labs, Inc. v. Chou*, 2022 WL 2161062, at *2 (C.D. Cal. Apr. 19, 2022) (citation omitted). Courts generally only consider such a drastic step if a party has "intentionally destroyed relevant electronic discovery or committed other improper discovery conduct." *Id.* Even then, courts consider "whether the responding party" (here, Meta) is "competent to reasonably search for and collect responsive data from its devices." *Id.*

Plaintiffs are not entitled to exceptional relief. Meta has engaged plaintiffs on these complex issues and made available its *entire* source code. Plaintiffs claim Meta has made "misstatements," but plaintiffs contort Meta's statements and overly simplify Meta's systems. *See* Dkt. 435-2 at 1–2; Xia ¶¶6–11; Wooldridge ¶¶31–37; Hashmi ¶¶46–47 (omitting hearing transcript portions and citing a 2018 document to create the false impression that **the table** ▮▮▮▮ **currently exists**").

Plaintiffs rely on *Brocade Communications Systems v. A10 Networks*, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012), but it has no bearing here. The *Brocade* court found a plaintiff could examine a hard drive to determine whether it contained stolen source code—because the defendant conceded the files had been "recycled" during the litigation's pendency but refused to explain further. *Id.* at *2.

Not so here. Meta has provided significant discovery about this exact topic. Indeed, **plaintiffs' expert has spent *26 days* examining the source code and has already queried it to investigate any Hive tables at issue.** Hashmi Decl ¶¶13–22.

### a. Plaintiffs seek to review irrelevant information.

Plaintiffs attempt to cast all information they seek, including **schemas** Meta has already produced, as "data-lineage documents" about "at-issue data." But the information plaintiffs want to extract, such as the tables' sizes or how many people have queried them (Shafiq ¶32), are not responsive to plaintiffs' discovery requests, much less relevant to this case (Xia ¶28).[5]

Even plaintiffs concede their inspection would involve examining mostly irrelevant tables. Plaintiffs' expert opines that *over half* of the tables *directly* ▮▮▮ from the six principal tables are facially irrelevant. Shafiq ¶¶41–42. And his inspection would begin indeterminately with "each table identified" and continue throughout ▮▮▮ step"—pivoting only *after* examining irrelevant information. *Id.* ¶¶38–41. Moreover, Meta's systems contain work product about preservation pipelines, including for unrelated matters, which Meta cannot shield. *Padgett v. Monte Sereno*, 2006 WL 8442137, at *5 (N.D. Cal. Feb. 24, 2006) (rejecting inspection that could "impinge on privileged" information).

### b. Meta's tools will not answer plaintiffs' questions.

"Daiquery" will not give plaintiffs the responsive information they seek. First, plaintiffs' request conflates three separate technologies. Daiquery is an interface to query data sources; it ▮▮▮ Xia ¶7. Second, there is a ▮▮▮. *Id.* And, third, there is **underlying lineage data that attempts to track associations between tables**—▮▮▮ *Id.*

As plaintiffs concede, Meta has already *used* its **lineage data**—via Daiquery—to extract information ▮▮▮ n from the six principal tables. That was a reasonable step given how Meta's lineage system works: a table can be ▮▮▮ if even a portion of just a single field flows from the ▮▮▮ table. *Id.* ¶15. Plaintiffs want to search further ▮▮▮ but after more than ▮▮▮ there is *no necessary connection* between the original table and that ▮▮▮ because the ▮▮▮ only needs to bear some relationship to the *intermediary* table. *Id.* ¶23. If more than half the tables just ▮▮▮ are facially irrelevant (Shafiq ¶¶41–42), then the effect only magnifies from there.[6]

Moreover, Meta's **lineage frameworks** ▮▮▮ Xia ¶26. The more efficient approach is to examine information plaintiffs can already ▮▮▮—as plaintiffs have already done (Hashmi ¶¶13–22).

### c. Meta can best use its own systems.

---

[5] Several discovery requests purportedly at issue are misplaced: the Court found Meta complied with RFP 5; RFPs 149–150 relate to a separate 2019 data transparency effort; RFP 165 is an overbroad request about ad delivery "systems"; Interrogatories 1 and 3 implicate separate disputes; the parties have not conferred on Meta's supplemental response to Interrogatory 5; and RFI 3 is irrelevant, like most of RFIs 2, 4, 6, 9 (all objectionable for myriad reasons).

[6] Plaintiffs mention other Meta tools (Barnes ¶51) but do not defend ▮▮▮ which plaintiffs omitted from their requests in June.

Although Meta maintains it has fulfilled its discovery obligations, there is no reason why *plaintiffs*, not Meta, should search for responsive information. *Juul*, 2022 WL 2161062, at *2.

### 4. Plaintiffs' Request for Further "Exemplars" Should Be Denied.

***ZippyDB and Up2x.*** Plaintiffs seek overbroad, irrelevant information from two "key/value databases," regardless of any relationship to this case. This information sought is largely irrelevant, duplicative in relevant part, not readily accessible, and non-responsive. Wooldridge ¶¶45–50. And the premise that Meta has "refused to produce basic information" about ZippyDB/Up2X is *false* (*id.*)—Meta has collectively produced over *1,200 documents* that mention these systems.

***Hive tables.*** Plaintiffs seek "exemplar" productions from *ten* additional Hive tables. But Meta has already *agreed* to produce relevant data from the first two, so an exemplar is unnecessary. And plaintiffs have not demonstrated the other eight include relevant, non-duplicative information (or that an exemplar is appropriate). *Id.* ¶¶40–41, 44.

## D.   NEED FOR A HEARING

**Plaintiffs' Position:** The Plaintiffs believe that a hearing would be helpful in resolving this issue.

**Meta's Position:** If a hearing would be useful to the Court, then Meta does not object to holding one.

## E.   CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets forth the following dates:

- Parties substantially complete non-data document production: July 29, 2024
- Meta substantially completes structured data production: August 12, 2024
- Close of fact discovery: October 18, 2024
- Plaintiffs' motion for class certification (with any opening expert reports in support of class certification): February 14, 2025

## F.   STATEMENT RE COMPLIANCE WITH STANDING ORDER

The parties confirm that they have complied with the Courts discovery dispute resolution procedures. Jay Barnes, lead counsel for Plaintiffs, and Darcy Harris, designated lead counsel for Meta, respectively, held a final lead counsel meet-and-confer on June 10, 2024.

In addition, Plaintiffs state that the parties have conferred on the issues involved in this motion dozens of times.

## G.   ATTACHMENTS

Plaintiffs have attached the following documents:

   1.  Declaration of Prof. Zubair Shafiq
   2.  Declaration of Dr. Atif Hashmi
   3.  Declaration of Jason 'Jay' Barnes and Exhibits 1 - 4 thereto

Meta has attached the following documents:
   1.  Declaration of Qiwen (Carrol) Xia
   2.  Declaration of Tobias Wooldridge

Dated: July 1, 2024        By:    */s/ Geoffrey Graber*
                                           Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:     202-408-4600
Fax:    202-408-4699

By:    */s/ Jason 'Jay' Barnes*
        Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:     212-784-6400
Fax:    212-213-5949

**KIESEL LAW LLP**

Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:     310-854-4444
Fax:    310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**

Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:    206-319-5450

**GIBBS LAW GROUP LLP**

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700

Fax:   510-350-9701

*Attorneys for Plaintiffs and Putative Class*

Dated: July 1, 2024          By:   */s/ Lauren Goldman*
                                         Lauren Goldman

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306


By:   */s/ Michael G. Rhodes*
         Michael G. Rhodes

**COOLEY LLP**
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Beth Terrell, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: July 1, 2024                    By:    */s/ Beth Terrell*