Redacted Version of Barnes Declaration and Exhibits 1-4 Supporting July 1, 2024 Joint Discovery Dispute Letter (Dkt. No. 527-3)

1  Jason 'Jay' Barnes (admitted *pro hac vice*)
   *jaybarnes@simmonsfirm.com*
2  **SIMMONS HANLY CONROY LLC**
   112 Madison Avenue, 7th Floor
3  New York, NY 10016
   Tel:    212-784-6400
4  Fax:    212-213-5949

5

6  Jeffrey A. Koncius, State Bar No. 189803
   *koncius@kiesel.law*
   **KIESEL LAW LLP**
7  8648 Wilshire Boulevard
   Beverly Hills, CA 90211
8  Tel:    310-854-4444
   Fax:    310-854-0812
9

10

11 *Attorneys for Plaintiffs*
   JOHN DOE, JANE DOE I, JANE DOE II, and
   JOHN DOE II, and DOE, on behalf of
12 themselves and all others similarly situated

13 [*Additional counsel listed on signature page*]

   Geoffrey Graber, State Bar No. 211547
     *ggraber@cohenmilstein.com*
   **COHEN MILSTEIN SELLERS & TOLL
   PLLC**
   1100 New York Avenue NW, Fifth Floor
   Washington, DC 20005
   Tel:    202-408-4600
   Fax:    202-408-4699

   Beth E. Terrell, State Bar No. 178181
     *bterrell@terrellmarshall.com*
   **TERRELL MARSHALL LAW GROUP
   PLLC**
   936 North 34th Street, Suite 300
   Seattle, WA 98103
   Tel.:    206-816-6603
   Fax:    206-319-5450

   Andre M. Mura, State Bar No. 298541
     *amm@classlawgroup.com*
   **GIBBS LAW GROUP LLP**
   1111 Broadway, Suite 2100
   Oakland, CA 94607
   Tel.:    510-350-9700
   Fax:    510-350-9701

14

15                    **UNITED STATES DISTRICT COURT
16               FOR THE NORTHERN DISTRICT OF CALIFORNIA
                        SAN FRANCISCO DIVISION**

17  IN RE META PIXEL HEALTHCARE          **Case No. 3:22-cv-03580-WHO (VKD)**
    LITIGATION
18                                        CLASS ACTION
19  _____
    This Document Relates To:            **DECLARATION OF JASON 'JAY' BARNES
20                                        ISO PLAINTIFFS' MOTION RE DATA
    All Actions                          SOURCE TOOLS**
21

22

23      I, Jason 'Jay' Barnes, declare as follows:

24      1.      I am an attorney licensed to practice law in the state of Missouri and have been

25  admitted pro hac vice for this action. Dkt. 12.

26      2.      I am a partner in the law firm of Simmons Hanly Conroy LLP and have been

27  appointed as interim co-lead counsel to represent the Named Plaintiffs and the putative class in the

28  above-captioner matter.

                                                1

3.      I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

4.      I submit this declaration regarding Plaintiffs' discovery efforts from Meta to obtain the identify of tables that contain relevant data in this case as well as the "data lineage" documents about those tables.

5.      On June 17, 2022, Plaintiffs filed the first case in this consolidated action. Dkt. 1.

6.      On July 29, 2022, Plaintiffs in the first-filed case served discovery, including for requests for production of documents about Meta's backend data systems at issue on this motion.

7.      From August 2022 to March 2023, Plaintiffs engaged in informal discussions with Meta about its backend data systems. Meta was asked to but did not identify relevant data sources or the data that was/is contained within them.

8.      Attached hereto as Exhibit 1 is a true and correct copy of ███████████ ███ labeled PIXEL_HEALTH000449558 to 449565. This document has been marked "Highly Confidential – Attorneys' Eyes Only" by Defendant and filed under seal pursuant to the Protective Order.

9.      Attached hereto as Exhibit 2 is a true and correct copy of the ███████████ ████████: **Plan and Current Status [Draft]**, labeled PIXEL_HEALTH000295794 to 295802. This document has been marked "Highly Confidential – Attorneys' Eyes Only" by Defendant and filed under seal pursuant to the Protective Order.

10.     Attached hereto as Exhibit 3 are true and copies of the following discovery requests and responses:

   a. **RFP 6**: "documents sufficient to identify the databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data through and associated with the Meta Pixel for Medical Provider Web-Properties[.]"

   b. **RFP 7**: "documents sufficient to describe each of the fields in databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected through and associated with the Meta Pixel for Medical Provider Web-Properties …. [including], but not limited to, data dictionaries."

2

DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE META'S DATA SOURCE TOOLS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

c. <u>**RFP 149**</u>: "all documents sufficient to identify and explain Meta's 'discovery process across the data warehouse, starting from the root tables down to all leaf tables' that was done 'in order to show people a summary of their activity' on non-Facebook websites by building 'a centralized copy of key data point that can be queried in real time and organized by user instead of by time' as that process is described in 'Redesigning our systems to provide more control over Off-Facebook activity," https://engineering.fb.com/2019/08.20/data-infrastructure/off-facebook-activity."

d. <u>**RFP 150**</u>: "all documents sufficient to identify all fields and data elements contained in each table as identified as part of the Off-Facebook Activity re-design, including but not limited to whether they include appended data (such as verticals information or user profile information) or location data."

e. <u>**RFP 165**</u>: "documents sufficient to identify and describe the Meta systems through which Plaintiffs' expert Richard Smith was shown an ad relating to ulcerative colitis in his Facebook video feeds within two hours of exchanging communications with a health care provider about ulcerative colitis, as alleged in CCAC ¶ 269."

f. <u>**Interrogatory 1**</u>: "identify all web-properties with a HIPAA Notice that contained the Meta Pixel during the Relevant Time Period."

g. <u>**Interrogatory 3**</u>: "identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property."

h. <u>**Interrogatory 5**</u>: "identify and describe the databases or repositories where Meta receives, re-directs, or stores data (including event level and/or derived data) collected through or associated with the Meta Pixel for Medical Provider Web-Properties, or that contain data relating to the Filter (including any logs)."

i. <u>**RFI 1**</u>: "inspection of Meta's data sources used to generate the documents Meta produced on December 11, 2023" relating to Dkt. 380.

j. <u>**RFI 2**</u>: "inspection of Meta's internal Wiki sites relating to Pixel, SDK, DAPL, the Filter, and other relevant data sources, including for example, all ███████ ████████████████████████████████ as identified in

k. <u>**RFI 3**</u>: "inspection of Meta's systems used to calculate '~$150m/year of spend" referenced in PIXEL_HEALTH00000719 as revenue impacted by Filter certain patient portal information being collected by Meta, and including systems used for identification of Pixels impacted by such a Filter and systems then calculating revenue impact."

l. <u>**RFI 4**</u>: "inspection of Meta's systems where data is stored by Meta for the content or characterizations of web-properties associated with Pixels that Meta has placed into 'health' verticals or sub-verticals."

3

DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE META'S DATA SOURCE TOOLS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

m. **RFI 6**: "access to engineering, troubleshooting, or other systems through which a Meta engineer can use ███████████ ███ **what happens to information collected through a Business Tool on a health web-property and extract all relevant information relating to such an event**."

n. **RFI 9**: "access to the relevant Named Plaintiff Data and absent class member data stored in the following data stores or data stores access by the following systems: (b) the Hive; (███████████; (f) ZippyDB; **(l) up2x**."

11.    Attached hereto as <u>Exhibit 4</u> are true and correct copies of **screenshots taken of the User Interface for the Daiquery tool with Plaintiffs' specific proposal for how it should be used superimposed over it,** labeled PIXEL_HEALTH000107355, 36138, 66490, and 35578. These documents have been marked "Confidential" and "Highly Confidential – Attorneys' Eyes Only" by Defendant and filed under seal pursuant to the Protective Order.

12.    On March 21, 2023, at the first CMC before Judge Orrick after consolidation, Plaintiffs told the Court that "far and away the most important issue in this hearing and what might end up being the most important issue in this case is the preservation issue" that involved discovery into Meta's backend systems and requested "a robust disclosure process upfront for this backend system discovery" so that "we're not … fighting about preservation issues and Named Plaintiff Data for the entire rest of the case" because Plaintiffs "frankly, just want to litigate on the merits, not on figuring out Meta's backend systems." March 14, 2023 hearing transcript at 11:19-13:3.

13.    On April 20, 2023, at the first conference before Magistrate Judge DeMarchi stated that Meta "needs to explain what kinds of sources of information it has." Plaintiffs explained, "at the outset," that their "position is not that [Meta] has to preserve anything and everything forever. It's relevant, non-duplicative information," which is why Plaintiffs sought discovery on where Meta "store[d] … event-level data that will identify class members [and] their damages … and how Meta connects certain information to each other in different databases." Meta responded that it was "trying to figure out where the data is for all of these cases." At the same hearing, Plaintiffs expressed the concern that Meta's position on source code "runs the risk of making it a highly inefficient discovery process where Plaintiffs are essentially running a doc review out of the clean room at Meta." More specifically, Plaintiffs were concerned that Meta would force "Named Plaintiff database structure" discovery into the clean room, which would be a significant problem because Plaintiffs' experts had

1  stated that Plaintiffs "have to know [Meta's] database structures." April 20, 2023 hearing transcript

2  at 56:3 – 60:13, 15:14-18, and 20:1-12.

3          14.    On May 1, 2023, Plaintiffs moved to compel production of answers to Interrogatory

4  Nos. 1 and 3, asking Meta to identify "Medical Provider Web-properties," defined as "healthcare

5  providers and covered entities under HIPAA or the CMIA." Dkt. 223 at 2. Plaintiffs suggested Meta

6  could use a crawler to answer the discovery. Dkt. 223 at 3-4. Meta objected, stating that "Meta does

7  not have any systematic way to identify which entities that deployed the Pixel are covered by

8  HIPAA or the CMIA." Dkt. 223 at 6. In response to Plaintiffs' suggestion that Meta could use a

9  crawler, Meta stated it "would need to build brand new tools to try to evaluate the website of any

10 entity that uses the Pixel to see if it meets Plaintiffs' criteria." Dkt. 223 at 6. At Dkt. 278, the Court

11 ordered the parties to "confer further about whether Meta can provide information—e.g., a list of

12 entities served by the Health Division, websites or web pages identified by the filter mechanism,

13 and any health-related classifications used by Meta—to facilitate the identification of information

14 responsive to Interrogatory Nos. 1 and 3. However, given Meta's representation that it does not

15 maintain the information called for by these interrogatories, the Court denied plaintiffs' request for

16 an order compelling Meta to undertake the burden of searching for indicia of HIPAA or CMIA

17 coverage on providers' websites in order to respond to them.

18         15.    On May 17, 2023, Plaintiffs filed a motion to compel production of **data lineage**

19 documents by a date certain early in the case, explaining that "[t]he requested documents are

20 foundational documents that will inform Plaintiffs' discovery" and that "[a]ny delay in production

21 risks delaying other aspects of discovery and prejudicing the plaintiffs." Dkt. 247 at 2. "For

22 example," Plaintiffs stated, "production of documents identifying the relevant databases and fields

23 will facilitate discussions between the parties regarding Meta's production of class member data"

24 and "will assist Plaintiffs in suggesting search terms." Id. On May 23, 2023, at the hearing on the

25 motion to compel, Plaintiffs explained that they had taken the unusual step of moving for a date

26 certain for production of this specific information because it was a "foundational discovery dispute

27 … getting in the way of making progress … on moving forward [in the case] because they're so

28

foundational to … meet Judge Orrick's expectations to the schedule." May 23, 2023 hearing transcript at 110:15 – 111:1.

16.     On June 1, 2023, at the Court's request, Plaintiffs submitted a statement opposing appointment of a Special Master, stating that a Special Master would not be necessary in this case because "instead of a Special Master, what is needed is for Meta to produce the documents responsive to Plaintiffs' RFP Nos. 5-7 (see Dkt. 247) and to answer Plaintiffs other informal and formal discovery requests for information in its systems." Dkt. 264

17.     On June 13, 2023, the Court ordered production by June 30, 2023. Dkt. 275.

18.     On October 3, 2023, Plaintiffs filed a motion for sanctions / to compel production of the same information ordered to be produced by Dkt. 275. Dkt. 323. The motion included a declaration setting forth the history of the dispute and Plaintiffs efforts to obtain the information at-issue on that motion – and which continues to be at-issue on this motion. Dkt. 391-3.

19.     On October 17, 2023, Meta filed its opposition, arguing it had produced the relevant information requested in the RFPs and submitting a declaration from Tobias Wooldridge who testified that Exhibit 17 to Plaintiffs' Motion at Dkt. 323 "shows data flow associated with the Pixel" and **"identifies data sources where Pixel data is redirected and stored, including tables related to the Pixel."** Dkt. 350; Dkt. 350-4, Wooldridge Decl. ¶¶ 4-5.

20.     On November 7, 2023, Meta told the Court at oral argument that Exhibit 17 **"identifies the sources that have Pixel data."** November 7, 2023 sealed hearing transcript at 43:7-10. Meta further stated that it relied on Exhibit 17 because **"we've figured out through a very thorough investigation, and we've identified what the relevant data sources are to this dispute;"** **"everything comes back to 17;"** and it had endeavored to "identify the right tables" in Hive. *Id*. at 49:6; 54:10-20.

21.     In the same November 7, 2023 hearing the Court stated that, it was pleased "to find out that Laser is indexing service for Hive" that **"takes the data in Hive and makes it queryable. I thought, great, awesome. There is a way to query, at least in some fashion, this massive data source. So let's do some queries. You know, when it comes right down to it, let's do some queries."** *Id*. at 39:6-12.  The Court further noted that "there are people, actual humans, who on a day-to-day basis

6

work with this data… there has to be some way for them to find out where all of this information is and for what purpose."

22.    The Court then asked Meta, **"Is there not something that … more comprehensively describes that data sources that would receive, redirect or store this kind of data?"** *Id*. at 41:4-8. Meta answered that ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ *Id*. at 41:9-15 (Ex. 17 was filed at Dkt. 326-12). In response, the Court stated:

> [E]xhibit 17 is a dataflow, so it doesn't satisfy request for production number 6, which asks for an identification of the data sources. So the data flow has things that I assume from the discussion so far are not data sources ˍer se. … The ˍmaˍ have somethinˍ to do with the data or there – it's a schematic that reflects thinˍs. So not everˍthinˍ on there is a data source but if what ˍou're suˍˍestinˍ is that usinˍ Exhibit 17 Meta can identify … those are the data sources, great. Have you done that?

*Id*. at 41:16-42:1. In an immediate response, Meta answered, **"I'm – I mean, could we, can we describe this document to identify all the data sources? Yes."** *Id*. at 42:2-3

23.    When the Court then asked, **"How can I be convinced that [Meta] has identified all of the responsive data sources?,"** Meta answered, **"Through our investigation."** *Id*. at 42:23-25. It further claimed that **"this document and the others that we've produced identifies the sources that have Pixel data."** Meta further stated, **"Part of the issue is that we keep saying, we've identified for you the relevant databases that have Pixel data, and they keep saying, but what about these other databases. And we keep responding, those don't have Pixel data. But … they're not taking us at our word, which is obviously why they brought their motion, but we – you know, we're representing to them that we've figured out based on a very thorough investigation, and we've identified what the relevant data sources are to this dispute."** *Id*. at 43:12-20.

24.    On November 13, 2023, the Court found that "Meta's production in response to RFPs 6 and 7 is incomplete." Dkt. 380. In Dkt. 380, the Court found that Meta had not complied with Dkt. 275 and ordered further production by December 11, 2023. The Court then identified **four** specific categories of information that it found responsive to RFPs 6 and 7, based on the evidence presented at that time, including **"the specific Hive tables that Meta has identified during its investigation as containing Pixel data,"** which was based on Meta's representation that it "had undertaken a thorough

investigation of the Hive tables that store event-level and derived Pixel data." *Id.* at 4, n. 1. The Court also ruled that Meta must produce fields and field descriptions for **"Pixel data retained temporarily in the** ██████████████████ Meta was ordered to produce responsive information by December 11, 2023. The Court expressly ruled that "Plaintiffs have not shown that the following data sources contain Pixel data or are otherwise responsive to RFP 6 or RFP 7, or that Meta failed to produce documents from these sources in violation of the Court's prior order …. ZippyDB … and 'log sources' other than the Hive tables."

25.     On December 11, 2023, Meta produced **fields and field descriptions for certain Hive and Scuba tables in PDF format accompanied by a letter disclaiming the accuracy of its production**.

26.     On December 20, 2023, Plaintiffs sent Meta a deficiency letter regarding the format of the production and other issues, including **Meta's deletion, redaction, or exclusion of additional relevant information contained in the systems where it stored fields and field description information prior to making the production to Plaintiffs.**

27.     On January 3, 2024, the parties conferred regarding Plaintiffs' deficiency letter. During the call, Plaintiffs identified the names of additional data sources that were missing from Meta's production but that were referenced in emails and other documents that Meta had produced on December 22, 2024. The parties agreed to put off the dispute on format of the production until each side had a chance to review the November 2023 hearing transcript. Regarding **the missing data sources, Meta asked Plaintiffs to identify those sources in writing**.

28.     On January 5, 2024, Plaintiffs identified the additional data sources to Meta.

29.     On January 18, 2024, after reviewing the transcript of the November 2023 hearing, Meta agreed to re-produce **fields and field descriptions for certain** ██████ **Hive tables**. Meta's production included a cover letter that explained that its December 2023 production was made by ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ It is not clear to Plaintiffs and Meta has never identified the specific system used for the December 2023 production. Meta explained that its January 2024 re-production would be made ████████████████████

8

1 ███████████████████████████████████████████████████

2 ████

3    30.    On January 26, 2024, Meta re-produced fields and fields descriptions for 23 Hive

4 tables using this "function." It is now Plaintiffs' understanding that this production was made by

5 using Daiquery.

6    31.    On or about January 31, 2024, the parties held a meet-and-confer at which the topic

7 of Presto arose. Plaintiffs had identified Presto as a system that could be used to identify data

8 sources, fields, and field descriptions and the parties had a dispute about discovery relating to it.

9 Meta asked Plaintiffs to provide a BATES number or some other identifier so that it could look into

10 Plaintiffs' claims. In response, Plaintiffs sent Meta an email specifically identifying and including

11 a screenshot of PIXEL_HEALTH000107355, which Plaintiffs now understand to be ███████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████████████  ██████████████

15 ████████████████████████████████████████████████.

16    32.    On February 2, 2024, Meta acknowledged that some data sources were missing and

17 stated that it would produce fields and field descriptions for them, including the ████████████

18 tables.

19    33.    On February 8, 2024, Plaintiffs served Requests for Inspection of systems to identify

20 data flows and extract fields, field descriptions, and other relevant information about how Meta uses

21 and monetizes at-issue data from Meta's ███████████ systems, including the systems that it had

22 previously used to produce fields and field descriptions (now known to be Daiquery).

23    34.    On March 1, 2024, the parties held another meet-and-confer where Plaintiffs asked

24 when Meta would produce the promised fields and field descriptions for ██████████████ and

25 expressed concerns that, based on Plaintiffs' review of additional documents produced by Meta, that

26 it was either violating Dkt. 380 or had made false or misleading statements to the Court that it should

27 correct. At the end of the call, Meta requested that Plaintiffs identify those statements in writing.

28

35.     On March 4, 2024, Plaintiffs provided Meta with a letter identifying the specific statements in question, requesting a final lead counsel meet-and-confer by Monday, March 12, 2024, regarding its compliance with Dkt. 380, and proposing a path forward that would not involve Court intervention – including proposals that Meta either use or provide Plaintiffs with access to tools to obtain the documents at issue on this motion, including Daiquery.

36.     On March 14, 2024, the parties held the "final" lead counsel meet-and-confer regarding Meta's compliance with Dkt. 380 and requests for inspection of systems and tools (including Daiquery) **that could be used to extract fields, field descriptions, and other relevant information about systems where Meta stores and uses at-issue data**. At the start of the call, Meta announced for the first time that it would be seeking a protective order limiting discovery to certain tables. Meta stated that the reason for this is that Plaintiffs were asking too many questions about data systems and sources and that those questions were getting in the way of making progress on discovery. However, when Plaintiffs asked Meta to identify the tables that would be the subject of the motion, Meta announced impasse and told Plaintiffs that Meta would send its half of a joint letter brief soon. When Plaintiffs asked Meta to identify the specific relief it would seek, Meta again told Plaintiffs that it would send its half of a joint letter brief.

37.     As the March 14 call continued, Plaintiffs asked Meta questions about ███████ **data sources and when Meta would produce fields and field descriptions for them**. Meta answered, for the first time, by claiming **it had produced the relevant fields and field descriptions in the clean room and took the position that clean room production was sufficient**. In response, Plaintiffs asked if Meta would use its tools to extract and produce fields and field descriptions **outside the clean room**. Meta took the position that it would be overly burdensome for Meta to use the tools. Plaintiffs next offered to relieve Meta of the burden by permitting Plaintiffs to use the tool, consistent with Plaintiffs' Requests for Inspection that were served on February 8, 2024. Meta objected to letting Plaintiffs use the tool, taking the position that Plaintiffs' remedy was **in the clean room only**.

38.     On March 14, 2024, Meta sent its half of a joint letter brief.

39.     On March 18, 2024, Plaintiffs sent Meta a letter outlining concerns with Meta's joint letter brief and requesting a lead counsel meet-and-confer.

40.    On March 20, 2024, the parties conferred again. On that call, Meta admitted that **the tables for which it sought to limit discovery were missing ███████ information about monetization and use.** Among other things, Plaintiffs informed Meta that its Joint Letter Brief appeared to be brought for an improper purpose because Meta was seeking to limit discovery into **its monetization and use of information in ████** systems before it had even complied with Dkt. 380 and was ignoring Plaintiffs' request that Meta use the tools it has available to provide more information before burdening the Court with the motion. Meta threatened to file the motion unilaterally within an hour of the end of the call. Plaintiffs told Meta that they would respond in writing the next day – and confirmed the same in a follow-up email.

41.    On March 21, 2024, Meta filed its unilateral motion at Dkt. 434 before Plaintiffs could respond, asserting that the Hive **contains "*millions* of tables"** (citing Dkt. 14-3, ¶¶ 33-39) but that Meta had identified "the **principal** Hive tables **containing unique Pixel data.**" Dkt. 434 at 1. In the motion, Meta limited the tables for which it would limit discovery to **four tables:** ███████ ████████████████████████████████████ Meta stated that these were **"not the only places where Pixel data resides,"** stating that **"numerous tables contain overlapping or duplicative subsets of data,"** or **"permutations of the same events [that] include a small number of additional, appended fields, sch as fields that merely count up the number of events."** Dkt. 434 at 2.

42.    On March 22, 2024, the Court ordered Plaintiffs to file their response to Meta's motion by close of business the same day. The Court also expressly prohibited the parties from filing any further motions or briefs. Dkt. 436

43.    On March 22, 2024, Plaintiffs timely filed their response, which focused on defeating Meta's motion rather than making an affirmative motion to compel. Dkt. 438.

44.    On March 21, 2024 (five hours after Plaintiffs filed their response), Meta provided a supplemental answer to Plaintiffs' Interrogatory No. 5 which identified systems named **ZippyDB, up2x, and** ████ **as relevant data sources with Pixel data.** (In Dkt. 380, the Court had expressly ruled that ZippyDB was irrelevant or unresponsive based on discovery to that point. **Neither up2x nor** ████ **had been mentioned in the prior briefing by either party. At the time, Plaintiffs were not aware of the existence of either.**)

11

45.    On March 28, 2024, Meta produced **field descriptions for** ████████████

46.    On April 9, 2024, Meta identified **two additional data sources at the hearing on its motion for protective order:** ████████████████.

47.    On April 9, 2024, Meta also made the following statements:

    a.    Regarding **the** ████ **table**, Meta told the Court that ████████████ **is wholly duplicative of the data in** ████████████████ April 9, 2024 sealed hearing transcript at 62:1-8.

    b.    Regarding a ████████████, Meta told the Court that "**there is no table that currently exists using this name**" and it is "**investigating whether there are any other similar tables like this** ████████████, **but we have not yet identified one.**" *Id.* at 62:9-18.

    c.    Regarding **the** ████ **table**, Meta told the Court that that **the data in** ████ "**is entirely duplicative of** ████████ *Id..* at 62:19-25.

48.    On April 10, 2024, the Court issued a ruling stating that Plaintiffs had "not yet raised any issues of non-compliance [with Dkt. 380] with the Court" and found that the parties had "not adequately conferred" over Meta's production of data sources. The Court ordered Plaintiffs to identify additional data sources for which it sought fields and field descriptions by April 24, 2024. The Court further stated that, "if … there is a more efficient and less burdensome means to identify potentially relevant data sources and data fields than by review of Meta's source code, the Court expects Meta to diligently investigate these alternative means." The Court ordered the parties to provide a status report no later than May 8, 2024. It further stated that "the status report shall identify the issues in dispute, *without argument*, and shall propose an efficient means for presenting the remaining issues to the Court for resolution." Emphasis in original.

49.    On April 17, 2024, Meta identified **two additional tables:** ████████████████ ████████████████. **Neither of these tables** was included in Exhibit 17 or Meta's December 2023 production. Prior to this disclosure, Plaintiffs had never heard of **either table** and, to the best of their review, **neither table** is identified in any prior document produced by Meta in the litigation. With the **two** new additions, Meta's own identification of responsive tables had **doubled from four to eight** since the filing of its motion for protective order.

12

DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE META'S DATA SOURCE TOOLS
CONSOLIDATED CASE NO. 3:22-CV-03580-WHO

50.     On April 24, 2024, Plaintiffs identified **18** data sources for which they asked Meta to produce fields and field descriptions or their equivalents (if it had not already done so) and **a one-day exemplar of class data**. Plaintiffs chose these data sources because they either **(1) had unique, non-duplicative data; (2) had longer retention periods; (3) merged several tables identified by Meta,** thereby making them more efficient; or **(4) were situated in a strategic location in the data flow,** such as before the Filter, that made them have additional value.

51.     On April 24, 2024, Plaintiffs also requested that Meta use the following tools to identify relevant data sources and data fields: (1) Daiquery, **(2) export from Meta's** ███████

████████████████████████████████████████████████

████████████ . Plaintiffs also expressed concern that Meta had not identified tables that **contained data prior to March 2022 or tables contain the usage and revenue information.**

52.     On May 7, 2024, Meta agreed to produce fields and field descriptions for some sources (but not others). It then later told Plaintiffs that it would not produce **exemplars.** Of the **18** identified data sources, Meta has produced or promised to produce fields for **11;** been non-committal for **one;** and stated it would not produce fields for **six.** For the **11** data sources for which Meta has produced or promised to produce fields and field descriptions, the parties currently dispute whether Meta should also produce **exemplars of the data from those sources** Plaintiffs can get a better understanding of how it can be helpful for class-wide use. However, the issue has not yet reached impasse and Plaintiffs hope to avoid burdening the Court with it.

53.     On May 8, 2024, the parties filed the status update ordered by the Court. Plaintiffs noted their position that "it would be prejudicial to brief the sampling issue before briefing the data sources, fields, and field descriptions issue." Dkt. 473.

54.     On May 9, 2024, the Court ordered briefing on class-wide production versus sampling for **six** ████████ data sources by May 24, 2024. Dkt. 477.

55.     On or about May 10, 2024, Meta stated on a call with Plaintiffs that it would **use its** ████████████████████████████████████████ **from the six tables at issue for class-wide** versus sampling.

56.    On May 29, 2024, Meta produced six Excel spreadsheets with information identifying tables that were ██████████████ from the six █████ tables; and ██████████ containing fields and field descriptions for those tables identified as being ██████████████ from the six tables at-issue on the prior motion. The metadata on Meta's production indicated a Gibson Dunn associate created the Excel spreadsheets identifying the █████████ tables at approximately 10:15 p.m. Pacific time on May 28, 2024, and accessed them between 10:24 p.m. to 10:28 p.m. that same evening, respectively. From this, Meta produced ████████. All █████ files with fields and field descriptions for the newly-identified tables included metadata indicating a creation timestamp of midnight on May 28, 2024.

57.    Prof. Shafiq summarizes key points of additional information learned from the **tables** Meta produced on May 29, 2024. *See* Shafiq Declaration.

58.    Based on Meta's statements during meet-and-confers, Plaintiffs reasonably believe that Meta **used the Daiquery tool for this production.** Although Plaintiffs had requested such information formally and informally, Meta's production did not include **the other relevant information readily available for each table in Daiquery, such as Table** ████████████████████ ████████████████████, and more.

59.    On June 5, 2024, Plaintiffs asked Meta for a final lead counsel meet-and-confer on the tools and data sources issue. Plaintiffs specifically raised the issue that **the metadata on Meta's prior production indicated it had taken just** █████ █████ to identify and extract relevant data for █████ additional data sources where at-issue data is stored. Plaintiffs wrote "to request (again) that Meta either (1) produce fields and field descriptions for the complete data lineage of the at-issue data using the tools that Plaintiffs have identified ████████████████████████ ███████████████; or (2) provide Plaintiffs with access to the tools so that Plaintiffs can relieve Meta completely of the burden of doing so." As part of that, Plaintiffs provided Meta with the first four pages of Exhibit 1 detailing how they would use the Daiquery tool if provided access to it pursuant to the Requests for Inspection originally served on February 8, 2024. The document

60.     On June 10, 2024, the parties conferred again, at which time:

    a.  Meta refused to use Daiquery to investigate further ███████████ tables or to produce the additional relevant documentation, such as ████████████ ████████████████████████████████████ information.

    b.  Meta disputed that the metadata on the produced files meant that the Gibson Dunn associate had either created the documents or that the time periods on those documents were accurate reflections of the amount of time it took to retrieve the information.

    c.  Meta and Plaintiffs continued discussions about other non-Daiquery tools, such as ████████████.

    d.  Meta agreed to identify the websites and Pixel IDs for advertisers it had placed into specific health-related verticals. This agreement relates to a dispute regarding Interrogatory Nos .1 and 3 that is also related to data-lineage discovery.

    e.  Meta agreed to produce exemplars for the six ███████ tables at-issue in the class-wide data versus sampling motion but stated it would not produce exemplars for any other tables. The parties are still negotiating this issue.

    f.  Plaintiffs asked Meta about tables ████████████████ from the six █████ tables identified by Meta for the class-wide versus sampling disputes that were marked as privileged. Plaintiffs specifically asked Meta to disclose those tables that were related to this litigation, and what was contained within them. Meta refused to identify the ████████ tables related specifically to this litigation that Meta marked as privileged and refused to identify what data was preserved within those tables. Plaintiffs explained that identification of the underlying facts of what was preserved and when would be helpful to resolve other pending issues – for example, whether Meta (1) was capable of and had already "joined" data across the different upstream tables; and (2) had preserved data from healthcare providers beyond those specifically identified by the Plaintiffs.

61.     On June 11, 2024, Plaintiffs informed Meta of a further methodology to reduce burden by eliminating irrelevant tables identified through Daiquery. Plaintiffs informed Meta that they had used the methodology to eliminate 115 of the 207 tables identified in Meta's May 29, 2024, from further investigation. On June 12, 2024, Plaintiffs provided Meta with a written description of their methodology and an Excel spreadsheet with the results.

62.     A document produced by Meta on June 21, 2024 discloses that the ████████████████████████████████████████████████████ tables that Meta identified for potential class-wide or sampled data. (PIXEL_HEALTH000300957).

Accordingly, Plaintiffs have added that critical table to the tables from which they request exemplars—in this case, a one-hour exemplar.

63.     Meta provided the Declaration of Qiwen ('Carrol') Xia to Plaintiffs at 9:49 p.m. PST on June 28, 2024 after having possessed the initial declarations filed by the Plaintiffs on this motion for more than two weeks. Ms. Xia makes several claims about the systems at issue. For example, Xia states that my declaration is inaccurate in stating that on "January 26, 2024, at Plaintiffs' request, Meta re-produced data-lineage documents for 23 primarily ███████ Hive tables using Daiquery." Xia ¶ 9. Instead, Xia says that "Meta did not use Daiquery to ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Id. However, this was the first such explanation that Plaintiffs have received. My understanding of Meta's process was based on conversations with counsel regarding Meta's efforts and the productions of screenshots of Meta's Daiquery system that illustrate a process through which data-lineage discovery can be obtained. Those conversations (and letters) began nearly immediately after Meta's December 11, 2023 production and initially reached impasse on March 15, 2024. Generally speaking, Meta refuses to answer specific questions Based on Xia's explanation, it now appears to me that the documents Meta produced for the █████████ tables on December 11, 2023 likely came from Daiquery instead.

64.     Mr. Wooldridge addresses specific tables for which Plaintiffs sought additional information. Plaintiffs identified these tables after consulting with Dr. Hashmi, who identified them ████████████ but was not clear about their function.

65.     Mr. Wooldridge also criticizes Plaintiffs' request for exemplars and preservation information for the ████████████████████████████████████████ tables. Those tables were included in Plaintiffs' request for exemplars because those tables were identified by Meta as important sources of ████████ data for which Meta would be willing to make a sampled production.

66.     Mr. Woolridge notes in several places in his declaration that much of the data Plaintiffs seek that Meta refuses to produce is "derivative of[] the Pixel data in the principal source table that initially logs that Pixel data." Because data derived from the at-issue data is among the

16

most highly relevant information in this case—**more relevant than the intercepted data itself because it shows what Meta does with the data—Plaintiffs have always sought derivative data**. Plaintiffs' RFP 6 asks for "[d]ocuments sufficient to identify the databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or *derived* data collected through and associated with the Meta Pixel for Medical Provider Web-Properties." Dkt. No. 324-1 at ECF 3 (emphasis added). RFP 7 asks for "[d]ocuments sufficient to identify and describe each of the fields in databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or *derived* data collected through and associated with the Meta Pixel for Medical Provider Web-Properties . . . [including] data dictionaries." *Id.* (emphasis added).

67.  In the Court's order on Plaintiffs' motion to compel, it ordered Meta to produce "the specific Hive tables that Meta has identified during its investigation as containing Pixel data," and the Court stated that this was based on the premise that "Meta represents that it has undertaken a thorough investigation of the Hive tables that store event-level and *derived* Pixel data." Dkt. No. 380 (emphasis added)..

68.  It is not clear to Plaintiffs and they have not received a definitive answer from Meta regarding **whether Daiquery can be used to identify data flow and data stored within ZippyDB and up2x** – two additional relevant data sources first identified by Meta as relevant on March 22, 2024. The parties are still discussing whether and how Meta should produce responsive **data-lineage documents** for these systems. For now, Plaintiffs proposed relief is that Meta ███████████ ██████████████████████ **and exemplars of those keys for both systems**.

69.  Meta's failure to produce **data-lineage documents** has substantially impaired Plaintiffs' ability to identify the appropriate tables for production of class member and Named Plaintiff data– or to do so in an efficient manner. For example, at this point, it appears that ███████████████████████████████████ **are important tables for Meta to produce data from.** However, Meta refuses to provide Plaintiffs any information about whether it preserved data from these tables (or any other tables).

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3    DATED this 1st day of July, 2024.

4

5                                        By: */s/ Jason 'Jay' Barnes*
                                             Jason 'Jay' Barnes

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS

Filed under seal

pursuant to protective order.

# EXHIBIT 1



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000449562

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS

Filed under seal

pursuant to protective order.

# EXHIBIT 2



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PIXEL_HEALTH000295800

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS

Filed under seal

pursuant to protective order.

# EXHIBIT 3

# RFPs 6 and 7

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone    (415) 393-4622
Facsimile    (415) 801-7389

ANDREW M. KASABIAN, SBN 313210
333 South Grand Avenue
Los Angeles, CA 90071 USA
Telephone    (213) 229-7311
Facsimile    (213) 229-6311
akasabian@gibsondunn.com

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT META PLATFORMS, INC., SET ONE** |
| All Actions | |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:    ONE**

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1    Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"),

2  by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

3  Rules") 26 and 34, and the Civil Local Rules of the U.S. District Court for the Northern District of

4  California ("Local Rules"), hereby provides the following responses and objections to Plaintiffs'

5  Requests for Production to Defendant Meta Platforms, Inc., Set One (each a "Request," and together,

6  the "Requests"), dated February 9, 2023, as follows:

7  **PRELIMINARY STATEMENT**

8    1.    Meta's responses to the Requests are made to the best of its current knowledge,

9  information, belief, and understanding of the Requests.  Meta's factual and legal investigation of this

10  matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the

11  Requests, many of which are overbroad or otherwise objectionable.  Meta reserves the right to

12  supplement or amend any responses in accordance with any agreement between the parties or should

13  future investigation indicate that such supplementation or amendment is necessary.

14    2.    Meta's responses to the Requests are made solely for the purpose of and in relation to

15  the above-captioned action.  Each response is given subject to all appropriate objections (including,

16  but not limited to, objections concerning privilege, competency, relevancy, materiality, propriety, and

17  admissibility).  All objections are reserved and may be interposed at any time.

18    3.    Meta's responses include only information that is within Meta's possession, custody,

19  or control.

20    4.    Meta incorporates by reference each and every general objection set forth below into

21  each and every specific response.  From time to time, a specific response may repeat a general

22  objection for emphasis or some other reason.  The failure to include any general objection in any

23  specific response shall not be interpreted as a waiver of any general objection to that response.

24    5.    Nothing contained in these Responses and Objections or provided in response to the

25  Requests consists of, or should be construed as, an admission relating to the accuracy, relevance,

26  existence, or nonexistence of any alleged facts or information referenced in any Request.

27

28

Gibson, Dunn &
Crutcher LLP

1

**GENERAL OBJECTIONS**

1.     Meta generally objects to each Request, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties.  Meta will construe and respond to the Requests in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.     Meta generally objects to each Request to the extent it seeks documents and information that are irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or are of such marginal relevance that their probative value is outweighed by the burden imposed on Meta in having to provide such information, including any request that seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

3.     Meta generally objects to each Request to the extent the Request is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks documents or communications that are otherwise responsive to other specific Requests.

4.     Meta generally objects to the Requests, including the Definitions and Instructions, on the basis that they specify an overbroad and unduly burdensome relevant time period, and seek documents and things outside of the time period relevant to the claims and defenses asserted in this lawsuit.

5.     Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production of "any" or "all" documents or communications concerning the subject matters referenced therein.

6.     Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they do not identify the documents sought with reasonable particularity as required by Fed. R. Civ. P. § 34(b)(1)(A).

Gibson, Dunn &
Crutcher LLP

2

7.      Meta generally objects to the Requests, including the Definitions and Instructions, to the extent they conflict with or ask for metadata or information beyond that required by any Electronically Stored Information Protocol entered in this action.

8.      Meta generally objects to each Request on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation, in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client communications, are covered under the common-interest privilege and/or joint-defense privilege, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s).  Meta hereby asserts all such applicable privileges and protections, and excludes privileged and protected information from its responses to each Request.  *See generally* Fed. R. Evid. 502.  The production of any information or documents that are privileged or otherwise immune from discovery and any subsequent use and/or clawback of such information or documents is governed by the 502(d) Order to be entered in this case.

9.      Meta generally objects to each Request to the extent that it requests information that is confidential, proprietary, or competitively sensitive.  To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Requests and not otherwise objectionable, Meta will produce such documents in accordance with the Protective Order to be entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information.  Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

10.     Meta generally objects to each Request to the extent that any regulatory body, governmental agency, or governmental entity objects to the production of the requested documents.

11.     Meta generally objects to the Requests to the extent that the information sought is more appropriately pursued through another discovery tool.

12.     Meta generally objects to each Request to the extent it is argumentative, lacks foundation, or incorporates allegations and assertions that are disputed or erroneous.  In furnishing

Gibson, Dunn & Crutcher LLP

3

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

the responses herein, Meta does not concede the truth of any factual assertion or implication

contained in any Request, Definition, or Instruction.

13.     Meta generally objects to each Request, Definition, and Instruction to the extent that it

seeks information outside of Meta's possession, custody, or control.

14.     Meta generally objects to each Request on the grounds and to the extent that

production of such information demanded therein would violate the right of privacy of third parties

under California law or other applicable laws of any relevant jurisdiction, or that such production is

otherwise prohibited by law, or is subject to legal requirements for notification of third parties.  Such

laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

("SCA").

15.     To the extent Plaintiffs have requested or will seek the same documents from third

parties, Meta objects to the Requests as duplicative, cumulative, and as seeking documents that are

obtainable from other sources that are more convenient, less burdensome, or less expensive.

16.     Meta generally objects to the Requests to the extent that they purport to impose an

obligation to conduct anything beyond a reasonable and diligent search of reasonably accessible files

(including electronic files) where responsive documents reasonably would be expected to be found.

Any Requests that seek to require Meta to go beyond such a search are overbroad and unduly

burdensome.

17.     Meta's willingness to provide any document or information in response to a Request

shall not be interpreted as an admission that such document or information exists, that it is relevant to

a claim or defense in this action, or that it is admissible for any purpose.  Meta does not waive its

right to object to the admissibility of any document or information produced by any party on any

ground.

## OBJECTIONS TO DEFINITIONS

1.     Meta objects to the Plaintiffs' definitions of "any" and "all" on the grounds that Meta

cannot guarantee that it has located every single document responsive to a particular Request.  Such

requests are overbroad and any attempt to respond would be unduly burdensome, expensive, and

Gibson, Dunn &
Crutcher LLP

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

oppressive, and seek information that is not relevant or proportional to the subject matter of the litigation.

2.      Meta objects to Plaintiffs' definitions of "Communication," "Document(s)," "Electronic Media," "Electronically Stored Information," "Information," "Policy," and "Policies" to the extent that Plaintiffs purport to use these defined terms to request the identification and disclosure of documents that:  (a) were prepared in anticipation of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws, and/or rules.  Meta further objects to the extent that these definitions purport to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.  Meta will construe these terms in accordance with the Federal Rules and the Local Rules.

3.      Meta objects to Plaintiffs' definition of "Employee(s)" and its inclusion of "any person who acted or purported to act on behalf of any Facebook entity."  Meta objects to this definition to the extent it encompasses individuals over whom Meta exercises no control or includes individuals who took action purportedly on Meta's behalf but without authorization from Meta.  Meta will construe this definition so as to include the following:  individuals employed by Meta and/or individuals authorized and directed by Meta to act on Meta's behalf.

4.      Meta objects to Plaintiffs' definition of "Facebook," "Defendant," "Meta," "You," and "Your" and its inclusion of "its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions," as overbroad and unduly burdensome to the extent the terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent Plaintiffs purport to use the terms to impose obligations on Meta that go beyond the requirements of the Federal Rules and the Local Rules.  Meta further objects to this definition to the extent that Plaintiffs purport to use this defined term to seek documents that are not relevant to the claims and defenses in this action, including Meta's subsidiaries and products

not at issue in this litigation. Meta will construe the terms "Defendant," "Facebook," "You," and "Your" so as to include the following: Meta Platforms, Inc. and its officers and employees.

5.      Meta objects to Plaintiffs' definition of "Filter" to the extent it refers to a definition of "Filter" in "Exhibit A" because there are no references to "Filter" in Exhibit A to the Requests. Meta will construe the term "Filter" as referring to its health-related integrity system which was developed to filter out potentially sensitive health data it detects.

6.      Meta objects to Plaintiffs' definition of "HIPAA Authorization" to the extent it incorrectly references the Code of Federal Regulations as 45 C.F.R. § 508. Meta will construe the term "HIPAA Authorization" as described in 45 C.F.R. § 164.508.

7.      Meta objects to the Plaintiffs' definition of "Medical Provider" as vague, ambiguous, overbroad, and unduly burdensome. Meta further objects to this definition to the extent Plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including, for example, the undefined term "health-related services" that expands the scope of the defined term beyond the allegations in this action. Meta will construe this term to refer to the entities identified in the Consolidated Amended Complaint: MedStar Health. Inc., Rush University System for Health, WakeMed & Health, Ohio State University Wexner Medical Center, and North Kansas City Hospital.

8.      Meta objects to the Plaintiffs' definition of "Patient Portal" as vague, ambiguous, overbroad, and unduly burdensome. Meta further objects to this definition to the extent Plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including, for example, its broad reference to "Web-Propert[ies]" that are used by Medical Providers" for undefined "communicat[ions] with patients" that expands the scope of the defined term beyond the allegations in this action. Meta will construe this term to refer to a "Patient Portal," if any, connected to a Medical Provider as defined herein.

9.      Meta objects to Plaintiffs' definition of "Personal Information" as overbroad, vague, and ambiguous to the extent it purports to include information that "is capable of being associated with," or "could reasonably be linked, directly or indirectly, with" and information including the "Persons' preferences, characteristics, psychological trends, predispositions, behaviors, attitudes,

Gibson, Dunn & Crutcher LLP

6

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

intelligence, abilities, or aptitudes." Meta further objects to this definition insofar as it purports that any one of these criteria, standing alone, is enough to identify specific persons. Meta further objects to the extent that this definition purports to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.

## OBJECTIONS TO INSTRUCTIONS

1.      Meta objects to Plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

2.      Meta objects to Plaintiffs' "Instructions" to the extent that they are inconsistent with or purport to impose obligations inconsistent with or beyond the ESI Protocol and Protective Order to be entered in this action. To the extent Meta produces documents or other ESI in response to the Requests, Meta will do so in accordance with the ESI Protocol and Protective Order.

3.      Meta objects to Instruction No. 1 to the extent it seeks documents or information in the possession of any individual(s), entit(ies), or any other person(s) over whom Meta exercises no control.

4.      Meta objects to Instruction No. 3 to the extent it defines the Relevant Time Period. Meta understands that Plaintiffs seek to meet and confer on this issue.

5.      Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner." Meta will construe undefined terms as it understands them.

## OBJECTIONS TO RELEVANT TIME PERIOD

1.      Meta objects to the Relevant Time Period to the extent it calls for the production of documents that are from a time before or after the events or circumstances relevant to this action. Specifically, Meta objects to the Relevant Time Period "run[ning] from the date when Meta released the Meta Pixel" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Meta construes the Relevant Time Period as April 1, 2018 to February 21, 2023.

Gibson, Dunn &
Crutcher LLP

7

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1      (E)     Meta objects to this Request to the extent it calls for the production of confidential,

2  proprietary, or trade secret information and will not produce any such documents implicating

3  confidential, proprietary, or trade secret information in this case until a protective order or other

4  protocol containing sufficient protections is entered in this case.  Meta objects to producing or

5  providing information relating to any non-public source code, and/or producing or making available

6  for inspection non-public source code itself in original or native format (or otherwise), until sufficient

7  protections containing appropriately tailored confidentiality and source code provisions are entered in

8  the case.

9      Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

10  discovery in this action, Meta responds as follows:  Meta will conduct a reasonable search for, and

11  produce, responsive, non-privileged documents sufficient to show the data flow through which Meta

12  received information via the Meta Pixel from Medical Provider Web-Properties during the Relevant

13  Time Period, to the extent such documents exist, are reasonably accessible, and are within Meta's

14  possession, custody, or control.

15  **REQUEST FOR PRODUCTION NO. 6:**

16      Documents sufficient to identify the databases, logs, or other electronic sources where Meta

17  receives, re-directs, or stores event-level and/or derived data collected through and associated with

18  the Meta Pixel for Medical Provider Web-Properties, Including those listed in Exhibit A.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

20      Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

21  Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

22  forth in this Response.  Meta further objects to this Request on the following additional grounds:

23      (A)     Meta objects to this Request as vague and ambiguous as to its use of the terms

24  "databases," "logs," "other electronic sources," "derived data," and "collected through and associated

25  with the Meta Pixel."

26      (B)     Meta objects to this Request on the grounds that it fails to describe the documents

27  sought with reasonable particularity given its use of the vague and undefined terms "databases, logs,

28  or other electronic sources" and, depending on how those terms are defined, seeks information not

Gibson, Dunn &
Crutcher LLP

12

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

1    relevant to Plaintiff's claims.  It is further unclear what documents are contemplated by the phrase

2    "[d]ocuments sufficient to identify the databases, logs, or other electronic sources where Meta

3    receives, re-directs, or stores event-level and/or derived data."

4         (C)     Meta objects to this Request as seeking information that is irrelevant to the claims in,

5    or defenses to, this action and disproportionate to the needs of the case, including that the Request

6    seeks information unlimited in time and scope.

7         (D)     Meta objects to this Request to the extent it calls for the production of confidential,

8    proprietary, or trade secret information and will not produce any such documents implicating

9    confidential, proprietary, or trade secret information in this case until a protective order or other

10   protocol containing sufficient protections is entered in this case.  Meta objects to producing or

11   providing information relating to any non-public source code, and/or producing or making available

12   for inspection non-public source code itself in original or native format (or otherwise), until sufficient

13   protections containing appropriately tailored confidentiality and source code provisions are entered in

14   the case.

15        Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

16   discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

17   about this overly broad Request.  Meta reserves the right to supplement its objections and response to

18   this Request.

19   **REQUEST FOR PRODUCTION NO. 7:**

20        Documents sufficient to identify and describe each of the fields in databases, logs, or other

21   electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected

22   through and associated with the Meta Pixel for Medical Provider Web-Properties, Including those

23   listed in Exhibit A.  This request includes, but is not limited to, data dictionaries.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

25        Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

26   Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

27   forth in this Response.  Meta further objects to this Request on the following additional grounds:

28

Gibson, Dunn &
Crutcher LLP

13

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

(A)     Meta objects to this Request as vague and ambiguous as to its use of the terms "databases," "logs," "other electronic sources," "derived data," and "collected through and associated with the Meta Pixel," and "data dictionaries."

(B)     Meta objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity given its use of the vague and undefined terms "fields in databases, logs, or other electronic sources" and "data dictionaries," and, depending on how those terms are defined, seeks information not relevant to Plaintiff's claims.  Meta further objects to this Request on the grounds that it is unclear what documents are contemplated by the phrase "[d]ocuments sufficient to identify and describe each of the fields."

(C)     Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information unlimited in time and scope.

(D)     Meta objects to this Request to the extent it calls for the production of confidential, proprietary, or trade secret information and will not produce any such documents implicating confidential, proprietary, or trade secret information in this case until a protective order or other protocol containing sufficient protections is entered in this case.  Meta objects to producing or providing information relating to any non-public source code, and/or producing or making available for inspection non-public source code itself in original or native format (or otherwise), until sufficient protections containing appropriately tailored confidentiality and source code provisions are entered in the case.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs about this overly broad Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to identify how the databases, logs, or other electronic sources where Meta receives, re-directs, or stores event-level and/or derived data collected through and associated

1    (B)    Meta objects to this Request to the extent it seeks documents protected by the

2    attorney-client privilege, work product doctrine, and/or any other applicable privileges and

3    protections.

4        Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

5    discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs

6    about this overly broad Request.  Meta reserves the right to supplement its objections and response to

7    this Request.

8

9    DATED:  March 13, 2023                    GIBSON, DUNN & CRUTCHER LLP

10                                By: /s/ *Lauren R. Goldman*
                                          Lauren R. Goldman (*pro hac vice*)

11                                *Attorneys for Defendant Meta Platforms, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SET ONE – CASE NO. 3:22-CV-3580-WHO

# RFPs
# 149, 150, 165

1   GIBSON, DUNN & CRUTCHER LLP                COOLEY LLP
    LAUREN R. GOLDMAN (*admitted pro hac vice*)   MICHAEL G. RHODES, SBN 116127
2   lgoldman@gibsondunn.com                     rhodesmg@cooley.com
    DARCY C. HARRIS (*admitted pro hac vice*)     KYLE C. WONG, SBN 224021
3   dharris@gibsondunn.com                      kwong@cooley.com
    200 Park Avenue                             CAROLINE A. LEBEL, SBN 340067
4   New York, NY 10166                          clebel@cooley.com
    Telephone:    (212) 351-4000                3 Embarcadero Center, 20th Floor
5   Facsimile:    (212) 351-4035                San Francisco, CA 94111-4004
                                                Telephone:   (415) 693-2000
6   ELIZABETH K. MCCLOSKEY, SBN 268184          Facsimile:   (415) 693-2222
    emccloskey@gibsondunn.com
7   ABIGAIL A. BARRERA, SBN 301746
    abarrera@gibsondunn.com
8   555 Mission Street, Suite 3000
    San Francisco, CA 94105
9   Telephone    (415) 393-4622
    Facsimile    (415) 801-7389
10
    ANDREW M. KASABIAN, SBN 313210
11  333 South Grand Avenue
    Los Angeles, CA 90071 USA
12  Telephone    (213) 229-7311
    Facsimile    (213) 229-6311
13  akasabian@gibsondunn.com

14  *Attorneys for Defendant Meta Platforms, Inc.*

15

16              **UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17                  **SAN FRANCISCO DIVISION**

18

19  IN RE META PIXEL HEALTHCARE          Case No. 3:22-cv-03580-WHO
    LITIGATION
                                         CLASS ACTION
20
    This Document Relates To:            **DEFENDANT META PLATFORMS, INC.'S**
21                                       **RESPONSES AND OBJECTIONS TO**
    All Actions                          **PLAINTIFFS' REQUESTS FOR**
22                                       **PRODUCTION TO DEFENDANT META**
                                         **PLATFORMS, INC., SETS TWO – SIX**
23

24          **PROPOUNDING PARTY:  PLAINTIFFS**

25          **RESPONDING PARTY:    META PLATFORMS, INC.**

26          **SET NOS.:    TWO – SIX**

27

28

Gibson, Dunn &
Crutcher LLP

1        Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"),

2  by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

3  Rules") 26 and 34, and the Civil Local Rules of the U.S. District Court for the Northern District of

4  California ("Local Rules"), hereby provides the following responses and objections to Plaintiffs'

5  Requests for Production to Defendant Meta Platforms, Inc., Sets Two, Three, Four, Five, and Six

6  (each a "Request," and together, the "Requests"), dated May 23, 2023, as follows:

7  **PRELIMINARY STATEMENT**

8        1.     Meta's responses to the Requests are made to the best of its current knowledge,

9  information, belief, and understanding of the Requests.  Meta's factual and legal investigation of this

10  matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the

11  Requests, many of which are overbroad or otherwise objectionable.  Meta reserves the right to

12  supplement or amend any responses in accordance with any agreement between the parties or should

13  future investigation indicate that such supplementation or amendment is necessary.

14        2.     Meta's responses to the Requests are made solely for the purpose of and in relation to

15  the above-captioned action.  Each response is given subject to all appropriate objections (including,

16  but not limited to, objections concerning privilege, competency, relevancy, materiality, propriety, and

17  admissibility).  All objections are reserved and may be interposed at any time.

18        3.     Meta's responses include only information that is within Meta's possession, custody,

19  or control.

20        4.     Meta incorporates by reference each and every general objection set forth below into

21  each and every specific response.  From time to time, a specific response may repeat a general

22  objection for emphasis or some other reason.  The failure to include any general objection in any

23  specific response shall not be interpreted as a waiver of any general objection to that response.

24        5.     Nothing contained in these Responses and Objections or provided in response to the

25  Requests consists of, or should be construed as, an admission relating to the accuracy, relevance,

26  existence, or nonexistence of any alleged facts or information referenced in any Request.

27        6.     In compliance with the Federal Rules, where Meta has agreed to search for and

28  produce documents, it does not intend to withhold responsive, non-privileged documents in its

Gibson, Dunn &
Crutcher LLP

1

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

possession, custody, or control that are reasonably accessible.  Meta has noted both where it does not possess responsive documents or where any limitations will control its search for responsive and relevant materials.

**GENERAL OBJECTIONS**

1.      Meta generally objects to each Request, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties.  Meta will construe and respond to the Requests in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.      Meta generally objects to each Request to the extent it seeks documents and information that are irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or are of such marginal relevance that their probative value is outweighed by the burden imposed on Meta in having to provide such information, including any request that seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

3.      Meta generally objects to each Request to the extent the Request is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks documents or communications that are otherwise responsive to other specific Requests.

4.      Meta generally objects to the Requests, including the Definitions and Instructions, on the basis that they specify an overbroad and unduly burdensome relevant time period, and seek documents and things outside of the time period relevant to the claims and defenses asserted in this lawsuit.

5.      Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production of "any" or "all" documents or communications concerning the subject matters referenced therein.

6.      Meta generally objects to the Requests, including the Definitions and Instructions, to

Gibson, Dunn & Crutcher LLP

2

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

the extent that they do not identify the documents sought with reasonable particularity as required by Fed. R. Civ. P. § 34(b)(1)(A).

7.    Meta generally objects to the Requests, including the Definitions and Instructions, to the extent they conflict with or ask for metadata or information beyond that required by any Electronically Stored Information Protocol entered in this action.

8.    Meta generally objects to each Request on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation, in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client communications, are covered under the common-interest privilege and/or joint-defense privilege, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s).  Meta hereby asserts all such applicable privileges and protections, and excludes privileged and protected information from its responses to each Request.  *See generally* Fed. R. Evid. 502.  The production of any information or documents that are privileged or otherwise immune from discovery and any subsequent use and/or clawback of such information or documents is governed by the 502(d) Order entered in this case.

9.    Meta generally objects to each Request to the extent that it requests information that is confidential, proprietary, or competitively sensitive.  To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Requests and not otherwise objectionable, Meta will produce such documents in accordance with the Protective Order entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information.  Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

10.    Meta generally objects to each Request to the extent that any regulatory body, governmental agency, or governmental entity objects to the production of the requested documents.

11.    Meta generally objects to the Requests to the extent that the information sought is more appropriately pursued through another discovery tool.

Gibson, Dunn & Crutcher LLP

3

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

12.     Meta generally objects to each Request to the extent it is argumentative, lacks foundation, or incorporates allegations and assertions that are disputed or erroneous.  In furnishing the responses herein, Meta does not concede the truth of any factual assertion or implication contained in any Request, Definition, or Instruction.

13.     Meta generally objects to each Request, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

14.     Meta generally objects to each Request on the grounds and to the extent that production of such information demanded therein would violate the right of privacy of third parties under California law or other applicable laws of any relevant jurisdiction, or that such production is otherwise prohibited by law, or is subject to legal requirements for notification of third parties.  Such laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA").

15.     To the extent Plaintiffs have requested or will seek the same documents from third parties, Meta objects to the Requests as duplicative, cumulative, and as seeking documents that are obtainable from other sources that are more convenient, less burdensome, or less expensive.

16.     Meta generally objects to the Requests to the extent that they purport to impose an obligation to conduct anything beyond a reasonable and diligent search of reasonably accessible files (including electronic files) where responsive documents reasonably would be expected to be found.  Any Requests that seek to require Meta to go beyond such a search are overbroad and unduly burdensome.

17.     Meta's willingness to provide any document or information in response to a Request shall not be interpreted as an admission that such document or information exists, that it is relevant to a claim or defense in this action, or that it is admissible for any purpose.  Meta does not waive its right to object to the admissibility of any document or information produced by any party on any ground.

**OBJECTIONS TO DEFINITIONS**

1.     Meta objects to the Plaintiffs' definitions of "any" and "all" on the grounds that Meta cannot guarantee that it has located every single document responsive to a particular Request.  Such

Gibson, Dunn &
Crutcher LLP

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

requests are overbroad and any attempt to respond would be unduly burdensome, expensive, and oppressive, and seek information that is not relevant or proportional to the subject matter of the litigation.

2.     Meta objects to Plaintiffs' definitions of "Communication," "Document(s)," "Electronic Media," "Electronically Stored Information," "Information," "Policy," and "Policies" to the extent that Plaintiffs purport to use these defined terms to request the identification and disclosure of documents that: (a) were prepared in anticipation of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws, and/or rules. Meta further objects to the extent that these definitions purport to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable. Meta will construe these terms in accordance with the Federal Rules and the Local Rules.

3.     Meta objects to Plaintiffs' definition of "Employee(s)" and its inclusion of "any person who acted or purported to act on behalf of any Facebook entity." Meta objects to this definition to the extent it encompasses individuals over whom Meta exercises no control or includes individuals who took action purportedly on Meta's behalf but without authorization from Meta. Meta will construe this definition so as to include the following: individuals employed by Meta and/or individuals authorized and directed by Meta to act on Meta's behalf.

4.     Meta objects to Plaintiffs' definition of "Facebook," "Defendant," "Meta," "You," and "Your" and its inclusion of "its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions," as overbroad and unduly burdensome to the extent the terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent Plaintiffs purport to use the terms to impose obligations on Meta that go beyond the requirements of the Federal Rules and the Local Rules. Meta further objects to this definition to the extent that Plaintiffs purport to use this defined term to seek documents that are not relevant to the claims and defenses in this action, including Meta's subsidiaries and products

not at issue in this litigation. Meta will construe the terms "Defendant," "Facebook," "You," and "Your" so as to include the following: Meta Platforms, Inc. and its officers and employees.

5. Meta objects to Plaintiffs' definition of "Filter" to the extent it refers to a definition of "Filter" in "Exhibit A" because no Exhibit A was included with the Requests. Meta will construe the term "Filter" as referring to its health-related integrity system which was developed to filter out potentially sensitive health data it detects.

6. Meta objects to Plaintiffs' definition of "HIPAA Authorization" to the extent it incorrectly references the Code of Federal Regulations as 45 C.F.R. § 508. Meta will construe the term "HIPAA Authorization" as described in 45 C.F.R. § 164.508.

7. Meta objects to the Plaintiffs' definition of "Medical Provider" as vague, ambiguous, overbroad, and unduly burdensome. Meta further objects to this definition to the extent Plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including, for example, the undefined term "health-related services" that expands the scope of the defined term beyond the allegations in this action. Meta will construe this term to refer to the entities identified in Exhibit A to the First Set of Requests for Production, served on February 9, 2023, and in accordance with Judge DeMarchi's June 16, 2023 Order on the issue. *See* Dkt. 277. Meta is further willing to consider construing this term to include the incremental entities Plaintiffs identified on June 21, 2023, but Meta requires additional time to assess that list, and Meta reserves all rights to object to it.

8. Meta objects to the Plaintiffs' definition of "Patient Portal" as vague, ambiguous, overbroad, and unduly burdensome. Meta further objects to this definition to the extent Plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including, for example, its broad reference to "Web-Propert[ies]" that are used by Medical Providers" for undefined "communicat[ions] with patients" that expands the scope of the defined term beyond the allegations in this action. Meta will construe this term in accordance with Judge DeMarchi's June 16, 2023 Order on the issue. *See* Dkt. 277.

9. Meta objects to Plaintiffs' definition of "Personal Information" as overbroad, vague, and ambiguous to the extent it purports to include information that "is capable of being associated

Gibson, Dunn &
Crutcher LLP

6

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

with," or "could reasonably be linked, directly or indirectly, with" and information including the "Persons' preferences, characteristics, psychological trends, predispositions, behaviors, attitudes, intelligence, abilities, or aptitudes." Meta further objects to this definition insofar as it purports that any one of these criteria, standing alone, is enough to identify specific persons. Meta further objects to the extent that this definition purports to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.

**OBJECTIONS TO INSTRUCTIONS**

1.      Meta objects to Plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

2.      Meta objects to Plaintiffs' "Instructions" to the extent that they are inconsistent with or purport to impose obligations inconsistent with or beyond the ESI Protocol and Protective Order entered in this action. To the extent Meta produces documents or other ESI in response to the Requests, Meta will do so in accordance with the ESI Protocol and Protective Order.

3.      Meta objects to Instruction No. 1 to the extent it seeks documents or information in the possession of any individual(s), entit(ies), or any other person(s) over whom Meta exercises no control.

4.      Meta objects to Instruction No. 3 to the extent it defines the Relevant Time Period.

5.      Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner." Meta will construe undefined terms as it understands them.

**OBJECTIONS TO RELEVANT TIME PERIOD**

1.      Meta objects to the Relevant Time Period to the extent it calls for the production of documents that are from a time before or after the events or circumstances relevant to this action, and on the basis that it exceeds the discovery periods established by Judge DeMarchi's June 16, 2023 Order on the issue. *See* Dkt. 276. Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order. *See id.*

Gibson, Dunn & Crutcher LLP

7

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

it was "Removing Certain Ad Target Options and Expanding Our Ad Controls," as referenced in CCAC ¶ 349(b), to the extent such documents exist, are reasonably accessible, fall within the discovery period ordered by the Court, and are within Meta's possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 149:

All Documents sufficient to identify and explain Meta's "discovery process across the data warehouse, starting from the root tables down to all leaf tables" that was done "[i]n order to show people a summary of their activity" on non-Facebook websites by building "a centralized copy of key data points that can be queried in real time and organized by user instead of by time" as that process is described in "Redesigning our systems to provide more control over Off-Facebook activity," https://engineering.fb.com/2019/08/20/data-infrastructure/off-facebook-activity/.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 149:

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response. Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information that is unlimited in time and scope.

(B)    Meta objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity by pulling selected quotes from a larger online post and seeking documents sufficient to "identify and explain" the quotes as rearranged by Plaintiffs. It is unclear what documents are contemplated by these terms or what they are intended to encompass.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs about this overly broad Request. Meta reserves the right to supplement its objections and response to this Request.

### REQUEST FOR PRODUCTION NO. 150:

All Documents sufficient to identify all fields and data elements contained in each table identified as part of the Off-Facebook Activity re-design, including but not limited to whether they

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

include appended data (such as verticals information or user profile information) or location data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as vague and ambiguous as to its use of the terms "fields," "data elements," "Off-Facebook Activity re-design," "appended data," "verticals information," and "location data."

(B)    Meta objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity given its use of the aforementioned vague and undefined terms and, depending on how each term is defined, seeks information not relevant to Plaintiffs' claims. It is unclear what documents are contemplated by these terms or what they are intended to encompass.

(C)    Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information that is unlimited in time and scope.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with Plaintiffs about this overly broad Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 151:**

Documents sufficient to describe and explain the c_user, datr, fr, and _fbp cookies alleged in CCAC ¶¶ 54-56, 57-58, and 61-70 including how their respective values are determined, their lifetime, circumstances in which they are transmitted to Meta, how they are used, where they are stored, and how Meta connects or maps them to other cookies, devices, identifiers, fingerprint information, and Internet activity by Meta users associated with a c_user cookie or the other cookies requested in this RFP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

**REQUEST FOR PRODUCTION NO. 165:**

Documents sufficient to identify and describe the Meta systems through which Plaintiffs' expert Richard Smith was shown an ad relating to ulcerative colitis in his Facebook video feeds within two hours of exchanging communications with a health care provider about ulcerative colitis, as alleged in CCAC ¶ 269.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 165:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response. Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request to the extent it is duplicative of other Requests concerning Meta's systems and data flow already served on Meta, and incorporates its responses and objections to those Requests as if fully set forth herein.

(B)     Meta objects to this Request as argumentative and lacking foundation in that it purportedly relies on a legal conclusion derived from Plaintiffs' expert who is not a named party to this action. *See* CCAC ¶ 269.

(C)     Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information unlimited in time and scope and duplicative of information about Meta's systems which Meta has already agreed to search for.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs about this overly broad, duplicative Request. Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 166:**

Documents sufficient to identify and describe the Meta systems in which it stores information about specific advertisements shown to directly on Meta properties and through the Facebook Audience Network or other networks on non-Meta properties, as alleged in CCAC ¶ 270.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

1    DATED:  June 22, 2023                          GIBSON, DUNN & CRUTCHER LLP

2                                                   By: /s/ *Lauren R. Goldman*

3                                                       Lauren R. Goldman (*pro hac vice*)

4                                                   *Attorneys for Defendant Meta Platforms, Inc.*

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
REQUESTS FOR PRODUCTION, SETS TWO – SIX – CASE NO. 3:22-CV-3580-WHO

# ROGs 1, 3, 5

CONFIDENTIAL

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone    (415) 393-4622
Facsimile    (415) 801-7389

ANDREW M. KASABIAN, SBN 313210
333 South Grand Avenue
Los Angeles, CA 90071 USA
Telephone    (213) 229-7311
Facsimile    (213) 229-6311
akasabian@gibsondunn.com

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO |
| | CLASS ACTION |
| This Document Relates To: | |
| All Actions | **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:    ONE**

Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules of the U.S. District for the Northern District of California

**CONFIDENTIAL**

("Local Rules"), hereby provides the following responses and objections to Plaintiffs' First Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated February 9, 2023, as follows:

## PRELIMINARY STATEMENT

1.       Meta's responses to the Interrogatories are made to the best of its current knowledge, information, belief, and understanding of the Interrogatories.  Meta's factual and legal investigation of this matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the Interrogatories, many of which are overbroad or otherwise objectionable.  Meta reserves the right to supplement or amend any responses in accordance with any agreement between the parties or should future investigation indicate that such supplementation or amendment is necessary.

2.       Meta's responses to the Interrogatories are made solely for the purpose of and in relation to the above-captioned action.  Each response is given subject to all appropriate objections (including, but not limited to, objections concerning privilege, competency, relevancy, materiality, propriety, and admissibility).  All objections are reserved and may be interposed at any time.

3.       Meta's responses include only information that is within Meta's possession, custody, or control.

4.       Meta incorporates by reference each and every general objection set forth below into each and every specific response.  From time to time, a specific response may repeat a general objection for emphasis or some other reason.  The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

5.       Nothing contained in these Responses and Objections or provided in response to the Interrogatories consists of, or should be construed as, an admission relating to the accuracy, relevance, existence, or nonexistence of any alleged facts or information referenced in any Interrogatory.

## GENERAL OBJECTIONS

1.       Meta generally objects to each Interrogatory, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the

**CONFIDENTIAL**

parties.  Meta will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.    Meta generally objects to each Interrogatory to the extent it seeks documents and information that are irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or are of such marginal relevance that their probative value is outweighed by the burden imposed on Meta in having to provide such information, including any request that seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

3.    Meta generally objects to each Interrogatory to the extent the Interrogatory is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks documents or communications that are otherwise responsive to other specific Interrogatories.

4.    Meta generally objects to the Interrogatories, including the Definitions and Instructions, on the basis that they specify an overbroad and unduly burdensome relevant time period, and seek documents and things outside of the time period relevant to the claims and defenses asserted in this lawsuit.

5.    Meta generally objects to the Interrogatories, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production of "any" or "all" information concerning the subject matters referenced therein.

6.    Meta generally objects to each Interrogatory to the extent that it requests information that is confidential, proprietary, or competitively sensitive.  To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Interrogatories and not otherwise objectionable, Meta will respond pursuant to the Protective Order to be entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information.  Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

7.    Meta generally objects to the Interrogatories to the extent that the information sought

CONFIDENTIAL

1   is more appropriately pursued through another discovery tool.

2       8.      Meta generally objects to each Interrogatory to the extent it is argumentative, lacks

3   foundation, or incorporates allegations and assertions that are disputed or erroneous.  In furnishing

4   the responses herein, Meta does not concede the truth of any factual assertion or implication

5   contained in any Interrogatory, Definition, or Instruction.

6       9.      Meta generally objects to each Interrogatory, Definition, and Instruction to the extent

7   that it seeks information outside of Meta's possession, custody, or control.

8       10.     Meta generally objects to each Interrogatory on the grounds and to the extent that

9   production of such information demanded therein would violate the right of privacy of third parties

10  under California law or other applicable laws of any relevant jurisdiction, or that such production is

11  otherwise prohibited by law, or is subject to legal requirements for notification of third parties.  Such

12  laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 et seq.

13                          **OBJECTIONS TO DEFINITIONS**

14      1.      Meta objects to the Plaintiffs' definitions of "all" on the grounds that Meta cannot

15  guarantee that it has identified all information responsive to a particular Interrogatory.  Such requests

16  are overbroad and any attempt to respond would be unduly burdensome, expensive, and oppressive,

17  and seek information that is not relevant to the subject matter of the litigation.

18      2.      Meta objects to the Plaintiffs' definition of "Medical Provider" as vague, ambiguous,

19  overbroad, and unduly burdensome.  Meta further objects to this definition to the extent Plaintiffs

20  purport to use this defined term to seek information that is not relevant to the claims and defenses in

21  this action, including, for example, the undefined term "health-related services" that expands the scope

22  of the defined term beyond the allegations in this action.  Meta will construe this term to refer to the

23  entities identified in the Consolidated Amended Complaint: MedStar Health. Inc., Rush University

24  System for Health, WakeMed & Health, Ohio State University Wexner Medical Center, and North

25  Kansas City Hospital.

26                          **OBJECTIONS TO INSTRUCTIONS**

27      1.      Meta objects to Plaintiffs' "Instructions" to the extent they impose obligations that go

28  beyond the requirements of the Federal Rules and the Local Rules.

CONFIDENTIAL

2. Meta objects to Instruction No. 1 to the extent it seeks documents or information in the possession of any individual(s), entit(ies), or any other person(s) over which Meta exercises no control.

3. Meta objects to Instruction No. 3 to the extent it defines the Relevant Time Period. Meta understands that Plaintiffs seek to meet and confer on this issue.

4. Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner." Meta will construe undefined terms as it understands them.

## OBJECTIONS TO RELEVANT TIME PERIOD

1. Meta objects to the Relevant Time Period to the extent it calls for the production of documents that are from a time before or after the events or circumstances relevant to this action. Specifically, Meta objects to the Relevant Time Period "run[ning] from the date when Meta released the Meta Pixel" as overbroad, unduly burdensome, and not proportional to the needs of the case. Meta construes the Relevant Time Period as April 1, 2018 to February 21, 2023.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify All Web-Properties with a HIPAA Notice that contained the Meta Pixel during the Relevant Time Period.

**RESPONSE TO INTERROGATORY NO. 1:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A) Meta objects to this Interrogatory as vague and ambiguous in its use of the term "contained."

(B) Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information about "All Web-Properties with a HIPAA Notice that contained the Meta Pixel" for a time period that is not proportional to the needs of the case.

(C) Meta objects to this Interrogatory as seeking information that is irrelevant to the claims in, or defenses to, this action and/or disproportionate to the needs of the case. For example,

**CONFIDENTIAL**

1  the Interrogatory seeks information about "All Web-Properties" that "contained the Meta Pixel,"

2  irrespective as to whether the Pixel was "contained" on a page within the Web-Properties relevant to

3  the claims in this action.

4      (D)    Meta objects to this Interrogatory to the extent it seeks information equally or more

5  readily obtainable from other sources.

6      (E)    Meta objects to this Interrogatory to the extent it calls for the disclosure of

7  confidential, proprietary, or trade secret information.  To the extent Meta responds with information

8  implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the

9  protective order or other protocol containing sufficient protections that will be entered in this case.

10      Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

11  discovery in this action, Meta responds as follows:  Meta states that it does not have data identifying

12  "Web-Properties with a HIPAA Notice," as defined in this Interrogatory, within its possession,

13  custody, or control.

14  **INTERROGATORY NO. 2:**

15      Identify All Web-Properties, developers, and advertisers for which Meta provides services

16  through the "Facebook Health" advertising division.

17  **RESPONSE TO INTERROGATORY NO. 2:**

18      Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

19  Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

20  forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

21      (A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the terms

22  "developers," "advertisers," and "Facebook Health."

23      (B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks

24  the identification of "All Web-Properties, developers, and advertisers" for which Meta "provides

25  services," but fails to define any "services" relevant to the allegations in this action, and further, seeks

26  information for a time period that is not proportional to the needs of the case.

27      (C)    Meta objects to this Interrogatory as seeking information that is irrelevant to the claims

28  in, or defenses to, this action and/or disproportionate to the needs of the case.

(D)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes three discrete subparts (*i.e.*, seeking the identification of three sub-groups, (1) Web-Properties, (2) developers, and (3) advertisers).

Based on the foregoing, Meta stands on its objections to this Interrogatory.  Meta is unable to answer this Interrogatory as written, but is willing to meet and confer with Plaintiffs on this issue. Meta reserves its right to supplement its objections and responses to this Interrogatory.

**INTERROGATORY NO. 3:**

Identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the term "deployed."

(B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information about "Medical Provider Web-Properties on which the Meta Pixel is or has been deployed" for a time period that is not proportional to the needs of the case.

(C)    Meta objects to this Interrogatory as seeking information that is irrelevant to the claims in, or defenses to, this action and/or disproportionate to the needs of the case.  For example, the Interrogatory seeks information about "all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed" irrespective as to whether the Pixel was "deployed" on a page within the Web-Properties relevant to the claims in this action.

(D)    Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable from other sources.

(E)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information.  To the extent Meta responds with information

CONFIDENTIAL

1    implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the

2    protective order or other protocol containing sufficient protections that will be entered in this case.

3           Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

4    discovery in this action, Meta responds as follows:  If a developer chooses to place Meta Pixel code

5    anywhere on its website(s), the developer must create a Pixel ID.  In order to create a Pixel ID, the

6    developer must agree to Meta's Business Tools Terms and Meta's Commercial Terms, both of which

7    prohibit developers from sending Meta health or otherwise sensitive information.  Once a Pixel ID

8    has been created, the developer then chooses where to place the Meta Pixel code on its website(s).

9    The Pixel IDs are specific to the developers, not the URLs, and the decision as to where to place the

10   Meta Pixel code on website(s) or subdomain(s) within the website(s) is made by the developer.  Both

11   confirmation that the Pixel ID was created by a developer (and/or the existence of any other Pixel IDs

12   created by that developer) and confirmation of the exact dates on which the Pixel was installed or

13   removed from any portion of a website is within the sole possession, custody, or control of that

14   developer.  However, utilizing the data available to it, Meta is continuing to research the entities and

15   URLs identified in the Consolidated Amended Complaint (¶¶ 24, 25, 26, 27, 28), and states the

16   following:

17   •      MedStar Health, Inc. (https://www.medstarhealth.org/mymedstar-patient-portal):  The

18   URL listed in the Consolidated Amended Complaint does not appear to be the login page for the

19   patient portal for MedStar Health.  Rather, the URL contains a button that people can click to

20   navigate to a separate webpage, which appears to be MedStar Health's patient portal login page, and

21   which is located at https://medstarhealth.consumeridp.us-

22   1.healtheintent.com/saml2/sso/login?authenticationRequestId=d0ec1274-f5b9-42e0-bfe-

23   f60f8cee4754.  As of November 23, 2022, the Meta Pixel was integrated into the URL listed in the

24   Consolidated Amended Complaint that navigated to the patient portal login page, but the Meta Pixel

25   was not integrated into the login page itself.

26   •      Rush University System for Health (https://mychart.rush.edu):  As of November 23,

27   2022, the Meta Pixel was not integrated into https://mychart.rush.edu/mychart/Authentication/Login.

28

Gibson, Dunn &
Crutcher LLP

**CONFIDENTIAL**

1    Meta is willing to meet and confer with Plaintiffs regarding this Interrogatory and the

2    information reasonably available to Meta.  Meta reserves its right to supplement its objections and

3    responses to this Interrogatory.

4    **INTERROGATORY NO. 4:**

5    Identify the Facebook employees and teams responsible for the Meta Pixel, communicating

6    with or selling to health-related companies, the Filter, or the data which Meta received via the Meta

7    Pixel deployed on Medical Provider Web-Properties during the Relevant Time Period, and describe

8    their responsibilites [*sic*] and the time period during which they held those responsibilites [*sic*].

9    **RESPONSE TO INTERROGATORY NO. 4:**

10    Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

11    Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

12    forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

13    (A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the terms

14    "responsible for," "selling to," "health-related companies," and "the data which Meta received."

15    (B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks

16    the identification of employees and/or teams "responsible for" a list of broad, undefined conduct.

17    (C)    Meta objects to this Interrogatory as seeking information that is irrelevant to the

18    claims in, or defenses to, this action and/or disproportionate to the needs of the case.  For example,

19    the Interrogatory seeks the identification of Facebook employees who were allegedly responsible for

20    "communicating with or selling to health-related companies," and "the data which Meta received via

21    the Meta Pixel deployed on Medical Provider Web-Properties" without any limit to time, scope, or

22    otherwise.

23    (D)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that

24    count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

25    In particular, this Interrogatory seeks "the responsibilites [*sic*] and the time period during which they

26    held those responsibilites [*sic*] " for both (a) employees, and (b) teams, each of which are allegedly

27    (1) "responsible for the Meta Pixel", (2) "communicating with . . . health-related companies," (3)

28

1

2

3

4

5

6

7

8

9

10

11

12

13

---

14       Identify and describe the databases or repositories where Meta receives, re-directs, or stores

15 data (including event-level and/or derived data) collected through or associated with the Meta Pixel

16 for Medical Provider Web-Properties, or that contain data relating to the Filter (including any logs).

17 **RESPONSE TO INTERROGATORY NO. 5:**

18       Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

19 Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

20 forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

21       (A)     Meta objects to this Interrogatory as vague and ambiguous in its use of the terms

22 "databases," "repositories," "derived data," "collected through or associated with the Meta Pixel,"

23 "relating to the Filter," and "logs."

24       (B)     Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks

25 information for a time period that is not proportional to the needs of the case.

26       (C)     Meta objects to this Interrogatory as seeking information that is irrelevant to the

27 claims in, or defenses to, this action and/or disproportionate to the needs of the case.  For example,

28

1    the Interrogatory seeks the identification of "databases or repositories" for data that is not relevant to

2    the allegations at issue in this action.

3        (D)    Meta objects to this Interrogatory to the extent it calls for the disclosure of

4    confidential, proprietary, or trade secret information and will not provide any such information

5    implicating confidential, proprietary, or trade secret information in this case until a protective order

6    or other protocol containing sufficient protections is entered in this case.

7        (E)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that

8    count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

9    In particular, this Interrogatory includes multiple discrete subparts (*i.e.*, seeking the identification of

10   (A) (1) databases or (2) repositories, where Meta (i) receives, (ii) re-directs, or (iii) stores data

11   "collected through or associated with the Meta Pixel," or (B) (1) "data relating to the Filter," (2)

12   including logs—all of which may be separate and independent information).

13       Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

14   discovery in this action, Meta responds as follows:  Meta is willing to meet and confer with Plaintiffs

15   about this overly broad Request.

16       Meta reserves its right to supplement its objections and responses to this Interrogatory.

17

18   DATED: March 20, 2023          Respectfully submitted,

19             GIBSON, DUNN & CRUTCHER LLP

20

21             By:  */s/ Lauren R. Goldman*
                   Lauren R. Goldman (*pro hac vice*)

22

23             *Attorneys for Defendant*

24

25

26

27

28

**VERIFICATION**

I, Tobias Wooldridge, a software engineer at Meta am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Responses and Objections to Plaintiffs' First Set of Interrogatories. The responses were prepared by Meta's counsel with assistance of Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Responses and Objections to Plaintiffs' First Set of Interrogatories is true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on    March 20, 2023

_____
Tobias Wooldridge

# RFIs
# 1, 2, 3, 4, 6, 9

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    (415) 393-4622
Facsimile:    (415) 801-7389

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

**COOLEY LLP**
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | CASE NO. 3:22-cv-03580-WHO (VKD) |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR INSPECTION, SET ONE** |
| All Actions | |
| | The Honorable William H. Orrick |

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

1  **PROPOUNDING PARTY:  PLAINTIFFS**

2  **RESPONDING PARTY:     META PLATFORMS, INC.**

3  **SET NO.:                           ONE**

4       Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"),

5  by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

6  Rules") 26 and 34, and the Civil Local Rules of the U.S. District Court for the Northern District of

7  California ("Local Rules"), hereby provides the following responses and objections to Plaintiffs'

8  Requests for Inspection to Defendant Meta Platforms, Inc., Set One (each a "Request," and together,

9  the "Requests"), dated February 8, 2024, as follows:

10  **PRELIMINARY STATEMENT**

11       1.     Meta's responses to the Requests are made to the best of its current knowledge,

12  information, belief, and understanding of the Requests.  Meta's factual and legal investigation of this

13  matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the

14  Requests, many of which are overbroad, duplicative, or otherwise objectionable.  Meta reserves the

15  right to supplement or amend any responses in accordance with any agreement between the parties or

16  should future investigation indicate that such supplementation or amendment is necessary.

17       2.     Meta's responses to the Requests are made solely for the purpose of and in relation to

18  the above-captioned action.  Each response is given subject to all appropriate objections (including,

19  but not limited to, objections concerning privilege, competency, relevance, materiality, propriety, and

20  admissibility).  All objections are reserved and may be interposed at any time.

21       3.     Meta's responses include only information that is within Meta's possession, custody,

22  or control.

23       4.     Meta incorporates by reference each and every general objection set forth below into

24  each and every specific response.  From time to time, a specific response may repeat a general

25  objection for emphasis or some other reason.  The failure to include any general objection in any

26  specific response shall not be interpreted as a waiver of any general objection to that response.

27       5.     Nothing contained in these Responses and Objections or provided in response to the

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

Requests consists of, or should be construed as, an admission relating to the accuracy, relevance, existence, or nonexistence of any alleged facts or information referenced in any Request.

**GENERAL OBJECTIONS**

1.      Meta generally objects to each Request on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties.  Meta will construe and respond to the Requests in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.      Meta generally objects to each Request to the extent it seeks to inspect or access material that is overbroad, unduly burdensome, and/or is procedurally improper, including because the requested inspection is not defined and is unlimited in scope.

3.      Meta generally objects to each Request to the extent it seeks to inspect or access material that is irrelevant to the claims or defenses in this case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information and is disproportionate to the needs of the case, including any Request that seeks information for any time period outside that which is relevant to the claims or defenses in this case.

4.      Meta generally objects to each Request to the extent the Request is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks to inspect material that has already been or will be produced by Meta in response to requests for production previously served by plaintiffs on Meta.

5.      Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they do not identify the documents sought with reasonable particularity as required by Fed. R. Civ. P. § 34(b)(1)(A).

6.      Meta generally objects to each Request on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation, in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

communications, are covered under the common-interest privilege and/or joint-defense privilege, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s). Meta hereby asserts all such applicable privileges and protections, and excludes privileged and protected information from its responses to each Request. *See generally* Fed. R. Evid. 502.

7.    Meta generally objects to each Request to the extent that it requests information that is confidential, proprietary, or competitively sensitive. To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Requests and not otherwise objectionable, Meta will only make such material available for inspection in accordance with the Protective Order entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information. Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

8.    Meta generally objects to the Requests to the extent that the information sought is more appropriately pursued through another discovery tool.

9.    Meta generally objects to each Request, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

10.    Meta generally objects to each Request on the grounds and to the extent that inspection of such information demanded therein would violate the right of privacy of third parties under California law or other applicable laws of any relevant jurisdiction, or that such inspection is otherwise prohibited by law, or is subject to legal requirements for notification of third parties. Such laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA").

**RESPONSES AND OBJECTIONS TO REQUESTS FOR INSPECTION**

**REQUEST FOR INSPECTION NO. 1:**

Inspection of Meta's data sources used to generate the documents Meta produced on December 11, 2023 at PIXEL_HEALTH000032157 through PIXEL_HEALTH000032594.

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

Gibbons, Dunn & Crutcher LLP

**RESPONSE TO REQUEST FOR INSPECTION NO. 1:**

Meta restates and incorporates its Preliminary Statement and General Objections as though fully set forth in this Response. Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request as vague and ambiguous as to its use of the undefined term "data sources."

(B)     Meta objects to this Request as overly broad and disproportionate to the needs of the case, including to the extent it seeks inspection of systems that are irrelevant to the claims and defenses in this case.

(C)     Meta objects to this Request as improperly seeking discovery regarding discovery already produced in this action.

(D)     Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs about this Request. Meta reserves the right to supplement its objections.

**REQUEST FOR INSPECTION NO. 2:**

Inspection of Meta's internal Wiki sites relating to Pixel, SDK, DAPL, the Filter, and other relevant data sources, including for example, all ▮▮▮▮▮▮ such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as identified in PIXEL_HEALTH0000107355.

**RESPONSE TO REQUEST FOR INSPECTION NO. 2:**

Meta restates and incorporates its Preliminary Statement and General Objections as though fully set forth in this Response. Meta objects to the request to the extent that the Bates number referenced in this Request does not relate to a document produced in this case. For the purposes of responding to this Request, Meta will construe the Request as referring to

5

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

Gibson, Dunn &
Crutcher LLP

PIXEL_HEALTH000107355.  Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request as duplicative of other discovery already sought in this case, including but not limited to plaintiffs' Request for Production No. 239, and incorporates its responses and objections to that Request as if fully set forth herein.

(B)     Meta objects to this Request as vague and ambiguous as to its use of the undefined term "other relevant data sources."

(C)     Meta objects to this Request as overbroad, unduly burdensome, and seeking information that is disproportionate to the needs of the case, including because it is not limited in time or scope.

(D)     Meta objects to this Request as unduly burdensome and procedurally improper, including because the information sought by this Request may be obtained through less intrusive means, including the production of documents in response to requests for production that plaintiffs have already propounded in this case.

(E)     Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta stands on the foregoing objections to this Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR INSPECTION NO. 3:**

Inspection of Meta's systems used to ███████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████

**RESPONSE TO REQUEST FOR INSPECTION NO. 3:**

Meta restates and incorporates its Preliminary Statement and General Objections as though fully set forth in this Response. Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request as duplicative of other discovery sought in this case, including but not limited to plaintiffs' Request for Production No. 240, and incorporates its responses and objections to that Request as if fully set forth herein.

(B)     Meta objects to this Request as vague and ambiguous as to its use of the undefined term "**certain patient portal information.**"

(C)     Meta objects to this Request as unduly burdensome and procedurally improper, including because the information sought by this Request may be obtained through less intrusive means, including the production of documents in response to requests for production that plaintiffs have already propounded in this case.

(D)     Meta objects to this Request as improperly seeking discovery regarding discovery already produced in this action.

(E)     Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta stands on the foregoing objections to this Request. Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR INSPECTION NO. 4:**

Inspection of Meta's systems where data is stored by Meta for the content or characterizations of web-properties associated with Pixels that Meta has placed into "health" verticals or sub-verticals, including but not limited to:

a. The crawler referenced in PIXEL_HEALTH000001206, at -313, in which Meta

7

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

employee Shashikant Khandelwal states, "We have a crawler that is running and doing the following … its crawling as many pages that it can[.]"

b.  **curl based crawling data** is stored by Meta for web-properties associated with Pixels that Meta has placed into "health" verticals or sub-verticals. See PIXEL_HEALTH0000028273 for a reference to ███████████████

c.  The ████████████ referenced at PIXEL_HEALTH000066958;

d.  The ███████ referenced at PIXEL_HEALTH0000109591, which states that it is described ██████████████████████████ ██████████████████████

e.  The crawler referenced at PIXEL_HEALTH000076206, -209, in a document titled ███████████████████████████ ████████████████████████████ ████████████████████████████ ███████████████████████████ ██████████

f.  Website or webpage content collected, stored, or used in association with ████████ ████████████████████████

**RESPONSE TO REQUEST FOR INSPECTION NO. 4:**

Meta restates and incorporates its Preliminary Statement and General Objections as though fully set forth in this Response.  Meta objects to the Request to the extent that certain Bates numbers referenced in this Request do not relate to any document produced in this case.  For the purpose of responding to subsection (a) of this Request, Meta will construe the Request as referring to PIXEL_HEALTH000012306.  For the purpose of responding to subsection (b), Meta will construe the Request as referring to PIXEL_HEALTH000028273.  For the purpose of responding to subsection (d), Meta will construe the Request as referring to PIXEL_HEALTH000109591.  Meta further objects to this Request on the following additional grounds:

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

(A)     Meta objects to this Request as vague and ambiguous as to its use of the undefined phrases "the content or characterizations of web-properties," ██████████████████████ ████████████████████

(B)     Meta objects to this Request on the grounds that it fails to describe with reasonable particularity the items to be inspected given its use of the vague, undefined, and potentially overbroad phrase "systems where data is stored by Meta for the content or characterizations of web-properties associated with Pixels that Meta has placed into 'health' verticals or sub-verticals."  It is unclear what the scope of this phrase is.

(C)     Meta objects to this Request as unduly burdensome and procedurally improper, including because the information sought by this Request may be obtained through less intrusive means, such as a request for the production of documents or an interrogatory.

(D)     Meta objects to this Request as overbroad, unduly burdensome, and seeking information that is disproportionate to the needs of the case, including because it is not limited in time or scope.

(E)     Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs about this Request.  Meta reserves the right to supplement its objections.

**REQUEST FOR INSPECTION NO. 5:**

Inspection of the health-related portions of the ████ ██ for the crawler and analysis process referenced at PIXEL_HEALTH000076206, -209, in a document titled ██████████ ██████████████ which ██████████████████████████████████ and states ████████████████████████████████████████████████████████████

1    ████████████████████████████████████████████████

2    ████████████████████████

3    **RESPONSE TO REQUEST FOR INSPECTION NO. 5:**

4         Meta restates and incorporates its Preliminary Statement and General Objections as though

5    fully set forth in this Response.  Meta further objects to this Request on the following additional

6    grounds:

7         (A)    Meta objects to this Request as vague and ambiguous as to its use of the undefined

8    phrase "health-related portions of the ██████████

9         (B)    Meta objects to this Request as overbroad, unduly burdensome, and seeking

10   information that is disproportionate to the needs of the case, including because it is not limited in

11   time.

12        (C)    Meta objects to this Request as improperly seeking discovery regarding discovery

13   already produced in this action.

14        (D)    Meta objects that the Request lacks foundation in that it presumes without basis that

15   there are "health-related portions of the ██████████ for the crawler and analysis process referenced at

16   PIXEL_HEALTH000076206."

17        Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

18   discovery in this action, Meta responds as follows: Meta agrees to meet and confer with Plaintiffs

19   about this Request.  Meta reserves the right to supplement its objections.

20   **REQUEST FOR INSPECTION NO. 6:**

21        Access to engineering, troubleshooting, or other systems through which a Meta engineer can

22   use an ██████████████████████████████████ what happens to information

23   collected through a Business Tool on a health web-property and extract all relevant information

24   relating to such an event.

25   **RESPONSE TO REQUEST FOR INSPECTION NO. 6:**

26        Meta restates and incorporates its Preliminary Statement and General Objections as though

27   fully set forth in this Response.  Meta further objects to this Request on the following additional

28

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

grounds:

(A)     Meta objects to this Request as duplicative of other discovery sought in this case, including but not limited to plaintiffs' Request for Production No. 31, and incorporates its responses and objections to that Request as if fully set forth herein.

(B)     Meta objects to this Request as vague and ambiguous as to its use of the undefined terms "engineering, troubleshooting, or other systems," ██████████████████ web-property," and "all relevant information."

(C)     Meta objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and procedurally improper, including because it seeks inspection of systems that are irrelevant to the claims or defenses in this case and is unlimited in time and scope, and because the information sought by this Request may be obtained through less intrusive means, including the production of documents in response to requests for production that plaintiffs have already propounded in this case.

(D)     Meta objects to this Request as improperly seeking discovery regarding discovery already produced in this action.

(E)     Meta objects that this Request lacks foundation in that it assumes without basis that there are systems in which an ██████████████████████████ can be used ██ ██ what happens to information collected through a Business Tool on a health web-property and extract all relevant information relating to such an event."

(F)     Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta stands on the foregoing objections to this Request.  Meta reserves the right to supplement its objections and response to this Request.

Gibson, Dunn &
Crutcher LLP

1 **REQUEST FOR INSPECTION NO. 9:**

2     Access to the relevant Named Plaintiff and absent class member data stored in the following

3 data stores or data stores accessed by the following systems:

4           a.  Scuba

5           b.  The Hive

6           ███████████

7           d.  ████

8           e.  ████

9           f.  ZippyDB / █████████████████

10          g.  Laser

11          ████████

12          ████

13          ████

14          k.  Website Custom Audiences

15          l.  Up2x

16          ████████

17          ███████████████████████████

18          ████████

19          ████

20          ██████████████

21 **RESPONSE TO REQUEST FOR INSPECTION NO. 9:**

22     Meta restates and incorporates its Preliminary Statement and General Objections as though

23 fully set forth in this Response.  Meta further objects to this Request on the following additional

24 grounds:

25     (A)     Meta objects to this Request as duplicative of other discovery already sought in this

26 case, including but not limited to Request for Production Nos. 156, 158, 159, 160, and 175, and

27 incorporates its responses and objections to those Requests as if fully set forth herein.

28

(B)      Meta objects to this Request as vague and ambiguous as to its use of the undefined phrase "the relevant Named Plaintiff and absent class member data."

(C)      Meta objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and procedurally improper, including because it seeks inspection of systems that are irrelevant to the claims or defenses in this case and is unlimited in time and scope, and because the information sought by this Request may be obtained through less intrusive means, including the production of documents in response to requests for production that plaintiffs have already propounded in this case.

(D)      Meta objects to this Request to the extent it does not contain any proposed protocol for inspecting Meta devices or systems that would protect Meta's attorney-client privilege, attorney work product protection, common interest privilege, Meta employees' privacy interests, and Meta's trade secrets and confidential information.

(E)      Meta objects that the Request lacks foundation in that it assumes without basis that each of the listed "data stores" or "systems" store "Named Plaintiff and absent class member data."

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta stands on the foregoing objections to this Request.  Meta reserves the right to supplement its objections and response to this Request.


DATED: March 11, 2024                              Respectfully submitted,

                                                   GIBSON, DUNN & CRUTCHER LLP


                                                   By:  */s/ Lauren Goldman*
                                                        Lauren Goldman (*pro hac vice*)

                                                   *Attorneys for Defendant Meta Platforms, Inc.*
                                                   *(formerly known as Facebook, Inc.)*

Gibson, Dunn &
Crutcher LLP

15
DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS
FOR INSPECTION, SET ONE
CASE NO. 3:22-CV-03580-WHO (VKD)

# DECLARATION OF JASON 'JAY' BARNES ISO PLAINTIFFS' MOTION RE DATA SOURCE TOOLS

Filed under seal

pursuant to protective order.

# EXHIBIT 4