# Redacted Version of the Joint Discovery Dispute Letter Re: Mr. Zuckerberg's Deposition (Dkt. No. 908-4)

CONFIDENTIAL

March 14, 2025

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

     **Re:**    *In re Meta Pixel Healthcare Litigation*, **Case No. 22-cv-03580-WHO (VKD)**

Dear Judge DeMarchi,

Pursuant to the Court's Standing Order, Plaintiffs and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter.

### A.    STATEMENT OF THE DISPUTE REQUIRING RESOLUTION

The dispute that requires resolution is whether the Court should allow a deposition of Mark Zuckerberg.

### B.    PLAINTIFFS' POSITION

### I.    Introduction

Because Mr. Zuckerberg had a first-hand role in important decisions relevant to this case, Meta cannot meet its "heavy burden" to show that his deposition should be denied. *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2014 WL 939287 (N.D. Cal. Mar. 6, 2014) (explaining an executive may be protected from a deposition if they lack first-hand knowledge or the testimony would be cumulative); *Elantech Devices Corp. v. Synaptics, Inc.*, 2008 WL 11390835, at *1-2 (N.D. Cal. Aug. 11, 2008). "Absent extraordinary circumstances, it is very unusual for a court to prohibit the taking of a deposition." *The Apple iPod iTunes Antitrust Litig.*, 2011 WL 976942, at *2, n. 2 (N.D. Cal. Mar. 21, 2011) (ordering deposition of Apple CEO).

Mr. Zuckerberg was required by the FTC to act as the final decisionmaker on consequential privacy decisions and certify to the FTC that Meta was complying with its privacy obligations. As early as 2019, he was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The documents and testimony in this case reveal that, in 2021, Facebook employees recommended that Mr. Zuckerberg ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Zuckerberg did not accept and implement the recommendation. Only Mr. Zuckerberg can answer why he made the decision not to put a stop to Facebook's knowing violation of the privacy rights of millions of Americans.

### II.    Mr. Zuckerberg possesses unique, first-hand knowledge

      **i.  Mr. Zuckerberg was** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮

Mr. Zuckerberg 

1

CONFIDENTIAL

████████████████████████████████████████████████████████████
██████████████████████████████████████████████ PIXEL_HEALTH000327687;
'000738085; '000915578; '000466504 at -05-06; '000736653; '000848808 at '09-10. Being
"briefed and updated" regarding relevant issues is one factor that can make deposition of an apex
witness appropriate. *See e.g., E.E.O.C. v. JBS USA, LLC,* 2012 WL 5328735, at *2 (D. Neb. Oct.
29, 2012).

### ii.    Mr. Zuckerberg was required by the FTC to ensure Meta had adequate privacy controls

Mr. Zuckerberg was also the final decisionmaker on all consequential privacy decisions.
He was required by the FTC Consent Order to review reports on Meta's data privacy, to make
the final privacy decisions, and to certify, based in part on "his personal knowledge," that Meta
was implementing robust privacy controls. '001180540 at -48, -52, -54, 58-59, -60-61. The
testimony of Mr. Mudd, the Vice President of Business Product Marketing, confirms this – he
agreed ███████████████████████████████████████████████████████████████
██████████████ Mudd Transcript at 220:1-4; 221:24-222:7; 232:16-233:15; 248:9-
252:19. Meta incorrectly claims Plaintiffs mischaracterize the documents and testimony, but
Meta refused Plaintiffs' request to jointly seek leave to present the evidence to this Court.

To comply with the FTC Order, Meta positioned Mr. Zuckerberg as the final
decisionmaker. In particular, ██████████████████████████████████████████████████
█████████████████████████████████████████████████ " '000367090 at -
91; '000760273 at -74. These ████████████████████████████████████████████████
████████████████████████████ ." '000937680 at -11. His custodial documents
indicate ████████████████████████████████████████████████████████████████
████████████████████████ . '001192116 at -17, -19-20; '001192111 at -12. He attended
"recurring monthly" meetings ████████████████████████████████████████████████
██████████████████████████ 00890444 at -46; '000760273 at -
74; '000485347 at -53.

As part of his FTC duties, Mr. Zuckerberg was required to review Quarterly Privacy
Reports and assessor's privacy reports. *Id.* These reports  stated that the ████████████████
█████████████████████████████████████████████ " *See* '000937680 at -
87; '000937003 at -08.

### iii.    In April 2021, Mr. Zuckerberg was ████████████████████████████
████████████████████████████████████████████████████

In 2021, Mr. Zuckerberg was █████████████████████████████████████████████████
████████████████████████████████████████████ . Ultimately, Meta has never implemented
████████████████████████████████████████████████████████ , and only Mr.
Zuckerberg can answer why. His choice is relevant to core issues here, notably Meta's defense
that Plaintiffs consented to the conduct at issue, and Meta's intent. ECF 497 at 81-82; ECF 316
at 4*; see Apple Inc. v. Samsung Elecs. Co., Ltd,* 282 F.R.D. 259, 264-65 (N.D. Cal. 2012)

CONFIDENTIAL

(ordering deposition of CEO where he participated in meetings where issues central to the case were discussed and made key decisions); *Travelers Rental Co. v. Ford Motor Co*., 116 F.R.D. 140, 146 (D. Mass. 1987) (higher-level executives' depositions ordered where they had the "last word" and could uniquely testify to corporate intent and motive); *Kennedy v. Jackson Nat'l Life Ins. Co.*, 2010 WL 1644944, at *2–3, (N.D. Cal. Apr. 22, 2010).

Mr. Mudd testified that ███████████████████████████████████████████ ██████████████████████████████████████████. Mudd Transcript at 229:5-233:15; 241:24-242:18; 247:15-249:10; '000910484. Mudd testified that ████████████████████████ ███████████████████████████████████████████. *Id*. at 229:10-231:19; 241:3-242:18. Ultimately that option was never fully implemented. *Id*. at 248:9-252:16. Mr. Mudd testified that ██████████████████████████████████████████████████████████ ██████, but he could not recall what his view was or anything he said at the meeting. *Id*. Mr. Mudd also testified that Mr. Zuckerberg met with the Board of Directors regarding similar issues. *Id*. at 232:10-233:15. Mr. Zuckerberg is the only person who can speak to why that recommendation was never implemented.

Mr. Zuckerberg's documents indicate that later, on September 7, 2022, he participated in a Privacy Committee meeting of the Board of Directors where ████████████████████ were discussed. '001191424 at -29-32, -36. The meeting materials covered the █████████████████████████ ████████████████. *Id.* As the key decisionmaker, Mr. Zuckerberg will have unique, first-hand testimony as to the decisions made to address these issues.

Separately, Mr. Zuckerberg ████████████████████████████████████████ ███████████████████████████████████████ 000744019; '000363118 at '19; '000474153 at '72. Meta has asserted this feature to support its consent defense. ECF 497 at 82-81. This is another area where Mr. Zuckerberg possesses unique knowledge.

The documents further demonstrate that Mr. Zuckerberg was ultimately responsible for shaping the company's approach to data collection, consent, and user privacy. For instance, he was responsible for approving th ███████████████████████████ '000770518. He was tasked with review of ████████████████████████████████████████████████████████ 00398990 at '75-76. Mr. Zuckerberg also reviewed and approved an ████████████████████ ██████████████████████ '000672319 at '31.

Finally, Meta's citation to *Frasco v. Flo Health* only emphasizes why Mr. Zuckerberg's deposition is appropriate. There, Plaintiffs presented no concrete evidence of his involvement in any decisions, did not cite to a single document, and devoted one sentence to his involvement. No. 3:21-CV-00757-JD, ECF 268 (N.D. Cal. Feb. 8, 2023).

CONFIDENTIAL

### III.   Plaintiffs have exhausted other discovery methods

Exhaustion is "an important, but not dispositive, consideration" in the apex analysis. *Monster Energy Co.* 2021 WL 3524128, at *3; *see also In re Transpacific*, at *5 (attempts through letters and deposition of lower-level employees to get information about meetings where CEO may have been present were sufficient). Plaintiffs deposed Mr. Mudd to assess his likely knowledge, as outlined above. Contrary to Meta's assertions, Plaintiffs' 30(b)(6) notice, interrogatories, and document requests inquired on the topics at issue here, including Meta's policies and discussions regarding the collection of sensitive healthcare data; user consent; the filter; user privacy controls, and Off Facebook Activity (i.e., Clear History).

A high-level deposition should only be rejected when it exploits the discovery process for "abuse or harassment," not when it is a good-faith effort to discover "first-hand knowledge of the facts of the case." *See In re Transpacific* at *2. As outlined here, Mr. Zuckerberg's deposition would uncover valuable evidence about Meta's knowledge, intent, and privacy decisions.

### C.   META'S POSITION

Meta opposes plaintiffs' request to depose its CEO and board chairman, Mark Zuckerberg, because plaintiffs cannot meet their burden to "establish that [Mr. Zuckerberg] (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery … have been exhausted without success." *Affinity Labs v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011).[1]

#### 1.   Plaintiffs' Request Is Harassing, Not Substantive.

Plaintiffs' request is exactly the kind of unwarranted deposition the apex doctrine safeguards against. Mr. Zuckerberg—leader of one of the world's biggest companies—has no unique, personal knowledge of the relevant facts. He did not design or implement the relevant business tools or Meta's filter. Despite the vast discovery Meta has produced, no evidence identifies Mr. Zuckerberg as a critical, unique witness. Indeed, fewer than 350 of the more than 154,000 wide-ranging documents Meta has produced were collected from Mr. Zuckerberg. Thus, plaintiffs resort to mischaracterizing evidence to try to justify his deposition. Plaintiffs' dogged pursuit of this deposition despite the facts demonstrates the "tremendous potential for abuse or harassment" posed by plaintiffs' meritless demand. *Celerity v. Ultra Clean Holding*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007).

#### 2.   Mr. Zuckerberg Lacks Unique, Relevant Knowledge.

First, plaintiffs argue a deposition of Mr. Zuckerberg is warranted because ███████████ ████████████████████████████████████████████████. This "second-hand knowledge … is almost by definition repetitive." *Id.* at *2. Each document plaintiffs cite in

---

[1] Cases are split as to which party bears the burden in an apex deposition dispute. *Anderson v. County of Contra Costa*, 2017 WL 930315, at *3 (N.D. Cal. Mar. 9, 2017) (collecting cases). However, the Court has advised that plaintiffs must show Mr. Zuckerberg has "unique relevant knowledge" before deposing him. Jan. 15, 2025 Hr'g Tr. at 34:16–21.

4

CONFIDENTIAL

Section B(II)(i) concerns *public* allegations made by state or federal authorities or in a media article. Mr. Zuckerberg's purported receipt of these updates reflects "pure high-level management, and not the type of hands-on action which demonstrates the unique personal knowledge required to compel a deposition of a CEO." *Doble v. Mega Life & Health*, 2010 WL 1998904, at \*3 (N.D. Cal. May 18, 2010).

Second, plaintiffs mischaracterize the FTC Consent Order, which does *not* require Mr. Zuckerberg "to act as the final decisionmaker on consequential privacy decisions." *Supra* at 1. Instead, it requires Meta's CEO to (1) receive documents concerning Meta's Privacy Program, including quarterly reports, and (2) sign certifications regarding Meta's material compliance with the Consent Order. PIXEL_HEALTH001180540 at -552, -554, -560–561. Importantly, the certifications are *also* signed by Meta's Designated Compliance Officer ("DCO"), who is "responsible for the Privacy Program" and delivers the quarterly reports. *Id.* And in signing those certifications, Meta's CEO relies on, *inter alia*, the quarterly reports and "sub-certifications … by knowledgeable personnel charged with implementing the Privacy Program." *Id.* at -560–561. Plaintiffs do not identify *any* firsthand knowledge that Mr. Zuckerberg *uniquely* possesses based on his receipt of documents that many other Meta employees, including the DCO, can access. *Doble*, 2010 WL 1998904, at \*3 (CEO's signing of relevant document "did not represent any unique personal knowledge" of its contents).

Regardless, the quarterly reports plaintiffs cite are irrelevant. Neither report discusses Meta's filter or its alleged receipt of health information *via any relevant business tool*. Indeed, each report mentions the Pixel only once in its "Definitions" section. PIXEL_HEALTH000937003 at -033; PIXEL_HEALTH000937680 at -710. And neither report discusses Mr. Zuckerberg in any respect other than to mention his receipt of the reports—let alone describes any specific escalation he received or decision he made. PIXEL_HEALTH000937003 at -004, -030; PIXEL_HEALTH000937680 at -681, -707. These documents simply do not show any unique, relevant knowledge possessed by Mr. Zuckerberg.

Plaintiffs also falsely claim Mr. Zuckerberg ████████████████████████████████████
██████████████████████. *Supra* at 2 (citing PIXEL_HEALTH000367090 at -091). Neither those unidentified escalations nor Mr. Zuckerberg's attendance at "monthly meetings," *supra* at 2, shows that he has *unique*, relevant knowledge based on those activities. *Celerity*, 2007 WL 205067, at \*5 (denying apex depositions even though requested deponents "participated" in relevant events because their alleged knowledge was not unique); *River City Testing v. Cohen*, 2021 WL 4805443, at \*3 (C.D. Cal. July 8, 2021) (denying deposition of apex employee who "made the relevant decisions based on second-hand information").

Third, plaintiffs grossly misrepresent Mr. Mudd's deposition testimony.[2] One line of questioning cited by plaintiffs concerned Meta's decision to deprecate "partner categories"—a decision Mr. Mudd described as ████████████████████████████████████████

---

[2] Plaintiffs write that "Meta refused Plaintiffs' request to jointly seek leave" to attach the materials they cite, *supra* at 2, while omitting that the *23* confidential Meta documents they cite—often with little or no discussion—collectively span *669 pages*.

CONFIDENTIAL

██████████         Mudd Tr. at 219:2–222:7.  Yet plaintiffs rely on this testimony in falsely claiming Mr. Mudd more generally "agreed [that] Mr. Zuckerberg … ██████████ ██████████         *in general*.  *Supra* at 2.  Mr. Mudd specifically explained that deprecating partner categories was ***not*** a ██████████████         Mudd Tr. at 206:21–213:3.

Other questions at Mr. Mudd's deposition concerned ████████████████         Although plaintiffs misleadingly claim this "option was never fully implemented," *supra* at 3, Mr. Mudd explained it was ████████████████████         before he left Meta in early 2022.  Mudd Tr. at 247:7–250:23.  Nor is Mr. Zuckerberg "the only person who can speak" on this subject.  *Supra* at 3.  Meta has agreed to provide 30(b)(6) testimony on user consent issues, including the ██████████ issue.[3]

Finally, another court prevented a deposition of Mr. Zuckerberg in a case involving nearly identical allegations.  There, the plaintiffs alleged that a third-party app shared health data through a Meta business tool at issue here.  Judge Donato found that the plaintiffs had "not demonstrated that Meta's CEO has unique information not reasonably available from other sources."  *Frasco v. Flo Health, Inc.*, No. 3:21-CV-00757-JD, Dkts. 264, 269 (N.D. Cal. Feb. 8, 2023).  Despite plaintiffs' attempt to distinguish *Frasco*, it is squarely on-point:  As here, the *Frasco* plaintiffs sought Mr. Zuckerberg's testimony regarding Meta's "intent" based on documents that purportedly showed his knowledge of "government investigations" and "Meta's collection of sensitive data."  *Id.*, Dkt. 268.

### 3. Plaintiffs Have Not Exhausted Less-Intrusive Discovery Methods.

Plaintiffs have ***not even attempted*** to exhaust—let alone exhausted without success—less-intrusive discovery methods to obtain information about the subjects on which they seek Mr. Zuckerberg's testimony.  *Affinity Labs*, 2011 WL 1753982, at *6 (requiring exhaustion through "interrogatories, requests for admission, and depositions of lower level employees" without success).  Plaintiffs have served Rule 30(b)(6) notices identifying 43 topics and more than 130 sub-topics, as well as 44 requests for admission and 23 interrogatories with 92 sub-parts.  Yet not a single 30(b)(6) topic, interrogatory, or RFA (or Meta's responses thereto) even ***mentions*** Mr. Zuckerberg, any state or federal investigations, the Privacy Committee, the FTC Consent Order, the quarterly privacy reports or certifications, Meta's privacy review escalation process, or the "Clear History" feature.  *M.H. v. County of Alameda*, 2013 WL 5497176, at *2 (N.D. Cal. Oct. 3, 2013) (denying apex deposition where requesting party never sought the desired testimony through Rule 30(b)(6)).  Nor did plaintiffs ask Mr. Mudd about these subjects.[4]  *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *4–5 (N.D. Cal. Feb. 2, 2012) (denying apex deposition where requesting party never sought the desired testimony through other fact depositions).

---

[3]  Meta has also agreed to provide 30(b)(6) testimony on the "Core Setup" feature.  Plaintiffs' sole reference to that feature is based on two documents that do not even mention Mr. Zuckerberg, let alone indicate that he has any knowledge of that feature.  *Supra* at 2 (citing PIXEL_HEALTH001192116, PIXEL_HEALTH001192111).

[4]  Plaintiffs failed to question Mr. Mudd about the "Clear History" feature, despite citing a document ████████████████████████.  PIXEL_HEALTH000474153 at -172.

CONFIDENTIAL

Plaintiffs' failure to exhaust is fatal to their request.  *Id.* at \*4–5 (denying apex depositions for failure to exhaust even though requested deponents "likely" had relevant, "unique knowledge").

***

Plaintiffs fail to meet their burden under the apex doctrine.  However, if the Court is inclined to require any testimony, Meta requests an in-person hearing to discuss appropriate limitations.  *E.g.*, *Transpacific Passenger*, 2014 WL 939287, at\*6 (limiting remote apex deposition to "two hours on [certain] subjects").

### D.    NEED FOR A HEARING

Plaintiffs believe a hearing would be helpful in resolving the dispute and that, if one is held, the Parties should submit the documents at issue to the Court prior to the hearing.  Meta believes a hearing would be helpful and prefers an in-person hearing if one is held.

### E.    CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets forth the following dates for substantial completion of document production and fact and expert discovery cut-offs:

Parties substantially complete document production:  December 18, 2024

Fact discovery cut-off:  April 18, 2025

Expert discovery cut-off:  July 17, 2026

### F.    STATEMENT RE COMPLIANCE WITH STANDING ORDER

The parties met and conferred about the issues listed herein on November 25, 2024, December 5, 2024, December 23, 2024, January 27, 2025, and February 27, 2025 regarding this dispute.

### G.    ATTACHMENTS

Plaintiffs' Portion: Plaintiffs offered to Meta to jointly request leave to attach the documents cited in this letter brief and Meta refused. The parties agreed that Meta will promptly file under seal any of the cited documents, or excerpts of the cited deposition testimony, if the Court so requests.

Meta's Portion:  Meta did not want to burden the Court with the 669 pages of attachments that plaintiffs propose filing.  If the Court wants any of the cited documents, or excerpts of the cited deposition testimony, Meta will promptly file such material under seal.

CONFIDENTIAL

Dated: March 14, 2025

By:     /s/Jason 'Jay' Barnes
        Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**

Jason 'Jay' Barnes (admitted *pro hac vice*)
  jaybarnes@simmonsfirm.com
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949


By:     /s/ Geoffrey Graber
        Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
  ggraber@cohenmilstein.com
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:    202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
  koncius@kiesel.law
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:    310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
  bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:   206-816-6603
Fax:    206-319-5450

**GIBBS LAW GROUP LLP**
Andre M. Mura, State Bar No. 298541
  amm@classlawgroup.com
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:   510-350-9700

CONFIDENTIAL

Fax:     510-350-9701

*Attorneys for Plaintiffs and Putative Class*


Dated: March 14, 2025          By:     */s/Lauren Goldman*⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                       Lauren Goldman

                               **GIBSON, DUNN & CRUTCHER LLP**
                               LAUREN R. GOLDMAN (*pro hac vice*)
                               lgoldman@gibsondunn.com
                               DARCY C. HARRIS (*pro hac vice*)
                               dharris@gibsondunn.com
                               200 Park Avenue
                               New York, NY 10166
                               Telephone: (212) 351-4000
                               Facsimile: (212) 351-4035

                               ELIZABETH K. MCCLOSKEY (SBN 268184)
                               emccloskey@gibsondunn.com
                               ABIGAIL A. BARRERA (SBN 301746)
                               abarrera@gibsondunn.com
                               One Embarcadero Center, Suite 2600
                               San Francisco, CA 94111-3715
                               Telephone: (415) 393-8200
                               Facsimile: (415) 393-8306

                               *Attorneys for Defendant Meta Platforms, Inc.*


## CIVIL L.R. 5-1(i)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Claire Torchiana, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: March 14, 2025          By:     */s/Claire Torchiana*⎯⎯⎯⎯⎯⎯⎯⎯⎯

9