Redacted Version of Exhibit 1 to the
Joint Discovery Dispute Letter Brief
regarding 30(b)(6) Topics
(Dkt. No. 928-4)

— **EXHIBIT 1** —

Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
Email: jaybarnes@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949

Jeffrey A. Koncius, CSB #189803
Email: koncius@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

*Attorneys for Plaintiffs and the Proposed Class*

[*Additional counsel listed on signature page*]

Geoffrey Graber, CSB #211547
Email: ggraber@cohenmilstein.com
COHEN MILSTEIN SELLERS
   & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
TERRELL MARSHALL LAW
   GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Andre M. Mura, CSB #298541
Email: amm@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE META PIXEL HEALTHCARE
LITIGATION

This Document Relates to:

All Actions.

Case No. 3:22-cv-3580-WHO (VKD)

**PLAINTIFFS' NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF META PLATFORMS, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6) AND DKT. 772(1)**

CLASS ACTION

The Honorable Virginia K. DeMarchi

1   ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

2   PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of

3   Civil Procedure, Plaintiffs John Doe II, John Doe III, Jane Doe I, Jane Doe IV, Jane Doe

4   V, Jane Doe VI, Jane Doe VII, Jane Doe IX, Jane Doe X, and Jane Doe XI ("Plaintiffs"), by their

5   undersigned counsel, will take the deposition of Defendant Meta on [date and time TBD].

6   The deposition will be taken before a person authorized by law to administer oaths under

7   Fed. R. Civ. P. 28(a) and shall continue from one day to the next, excluding Sundays and

8   holidays, until the examination is completed. The deposition will be recorded by stenograph by a

9   professional court reporter, and may also be recorded by videotape or audiotape, and by the

10  instant visual display of testimony. The deposition will be taken for the purpose of discovery, to

11  perpetuate the testimony of the witness for use at trial, and for all other purposes permitted under

12  the Federal Rules of Civil Procedure, or any other applicable rules.

13  Pursuant to Rule 30(b)(6), Defendant is hereby notified of its duty to designate one or

14  more officers, directors, managing agents or other persons most knowledgeable or qualified to

15  testify on its behalf concerning the topics identified in Schedule B, below. This list is in addition

16  to Schedule A that was served upon Meta on January 20, 2025 pursuant to Dkt. 772(1).

17  Plaintiffs reserve the right to provide additional topics based on further discovery.

18  Each such designee produced to testify has an affirmative duty to have first reviewed all

19  Documents, internal wiki materials, policies, reports, and other matters known or reasonably

20  known and available to Meta and to familiarize himself or herself with all potential witnesses

21  known or reasonably available to provide informed, binding answers at the deposition, including

22  but not limited to documents that Plaintiffs have specifically asked Meta to produce relating to

23  these topics.

24  Defendant Meta shall inform Plaintiffs of such designations at a reasonable time prior to

25  the depositions by setting forth the identity of the person(s) designated to testify with respect to

26  the matters specified below. The deposition will continue on the day noticed and for additional

27  days, if necessary, excluding Sundays and holidays until completed.

28

1    Plaintiffs reserve the right to notice and conduct additional Rule 30(b)(6) deposition of

2 Defendant on separate, non-duplicative days.

3    NOTICE IS FURTHER GIVEN that the deponent is directed to produce, no later than

4 five business days prior to the deposition: (1) all documents, electronically stored information,

5 objects, or other tangible items or things that deponent prepared, relied on, and/or considered in

6 any way in preparing for this deposition, and (2) a curriculum vitae for each person Meta

7 anticipates designating to testify on behalf of Defendant Meta.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFINITIONS**

The Definitions provided herein are intended to streamline language and facilitate a common understanding of the information sought. Defendant should accept the Definitions provided herein, for the limited purpose of this notice of deposition, even if Defendant disputes a Definition's accuracy or otherwise finds it objectionable.

1.      "All" means "any and all," as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

2.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3.      "Any" shall be deemed to include and encompass the words "each" and "all," as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4.      "Content Categorization" means a categorization of the content of Event-Level Data, ██████████, or Crawled Data, or a categorization of the web-property from which such data was collected, that is assigned by Meta after the data is collected, including without limitation ██████, Features, advertiser verticals, ████████████ categories, ████████ categorizations assigned by ████████████, machine learning / artificial intelligence, or any other method.

5.      "Crawled Data" means the data collected by web crawlers and other systems employed by Meta to extract and store the content of particular webpages.

6.      "Document(s)" includes any data, document, ESI, or Electronic Media stored in any medium and is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34 and Federal Rules of Evidence 101(4)(6), and 1101, including, but not limited to, programming source code, electronic or computerized data compilations, Communications, electronic chats, instant messaging, encrypted or self-destructing messages, e-mail Communications, other electronically stored information from personal

1  computers, sound recordings, photographs, and hard copy Documents.

2  7.    "Electronic Media" means any magnetic, optical, or other storage media device

3  used to record ESI including but not limited to computer memory, hard disks, floppy disks, flash

4  memory devices, CDs, DVDs, Blu-ray discs, cloud storage (e.g., DropBox, Box, OneDrive, or

5  SharePoint), tablet computers (e.g., iPad, Kindle, Nook, or Samsung Galaxy), cellular or smart

6  phones (e.g., BlackBerry, iPhone, or Samsung Galaxy), personal digital assistants, magnetic

7  tapes of all types, or any other means for digital storage and/or transmittal.

8  8.    "Electronically Stored Information" or "ESI" means information that is stored in

9  Electronic Media, regardless of the media or whether it is in the original format in which it was

10  created, and that is retrievable in perceivable form and includes, but is not limited to, metadata,

11  system data, deleted data, fragmented data, data pertaining to or maintained in Apps, database

12  contents, and computer code.

13  9.    "Event-Level Data" means data about an event or set of events reflecting a

14  specific action or set of actions taken by a particular Facebook user.

15  10.    "Facebook," "Defendant," "Meta," "You," and "Your" means Defendant Meta

16  Platforms, Inc. and any of its corporations, businesses, subsidiaries, divisions, subdivisions,

17  affiliated entities, predecessors, successors, and parents, as well as their respective officers,

18  directors, employees, partners, representatives, agents, attorneys, accountants, or other persons

19  occupying similar positions or performing similar functions.

20  11.    "Healthcare Provider" means any of the entities from which Meta was collecting

21  information on their web-properties that were:

22  a.  Classified by Meta in any of the following advertiser verticals or sub-verticals:

23  ████████████████████████████████████████████████████

24  ███████████████ ;

25  b.  Classified by Meta in a ██████████ or ████████ category specified in the attached

26  Exhibit 1

27  c.  For which Meta's data indicates that the web-property displayed HIPAA notice

28

language required by law; or

      d.    Meta classified as a health care provider or HIPAA or CMIA covered entity through human labeling or any other method.

12.    "Healthcare Provider Web-Property" means any website or app belonging to a Healthcare Provider.

13.    "Identify" when referring to a document or correspondence means to state:

      a.    The description of such documents or writings in sufficient detail to enable them to be identified by subpoena duces tecum;

      b.    The title and each subtitle thereof;

      c.    The date and number of pages thereof;

      d.    A brief summary of the contents;

      e.    The author, each addressee, and the distribution list thereof;

      f.    The identity of each person who witnessed, or could witness said communication;

      g.    The date on which the document was prepared or signed;

      h.    The physical location of the document and the name and address of its custodian or custodians;

      i.    The identity of each document referenced by this document;

      j.    The source of (or the identity of each person who supplied) any information contained; and

      k.    If any such document was but is no longer in your possession or subject to your control, what disposition was made of it and the reason for its disposition.

14.    "Including" shall be construed broadly to mean "including, but not limited to" and "without limitation."

15.    "Information" means written, recorded, graphic, or other electronic data, including metadata, of any nature whatsoever, regardless of how recorded, and whether an

original or copy, including: any electronic data conveyed through an Internet communication; any electronic data associated with an Internet communication; any electronic data associated with the user participating in an Internet communication; and any inference, profiling or other association derived from a user's Internet communication, whether in isolation or in aggregate.

16.    ████████ means Information that is or was stored in ████████ (PIXEL_HEALTH0003000958) or ████████ (PIXEL_HEALTH000110520), or that is substantially similar to the Information described in PIXEL_HEALTH000465524 or PIXEL_HEALTH000459429, whether labeled as ████████ ████████ or any other label.

17.    "Meta Pixel" means the "Pixel, SDK, CAPI, Customer List Uploads, DFCA, Offline Conversion Custom Audiences, and offline events (OCAPI)." *See* Meta's July 9, 2024 Letter to Plaintiffs, setting forth the list of "Business Tools" that the parties agree are "within the scope of discovery for this litigation."

18.    "Pixel-Generated Health Information" means any Information collected by the Meta Pixel relating to a Healthcare Provider Web-Property that: (a) was classified or categorized based on the content taxonomies identified in Exhibit 2; or (b) included the fact that a user logged into or out of a patient portal, made or changed an appointment, or made a bill payment.

19.    "Plaintiff(s)" refers collectively to the Plaintiffs named in the Complaint in the above-referenced Action.

20.    "Policy" or "Policies" means any rule, procedure, practice, or course of conduct, whether formal or informal, written, or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly.

21.    ████████ means a set of Event-Level Data that includes a ████████ ████████

22.    ████████ means Information that is substantially similar to the Information stored in the ████████ table (PIXEL_HEALTH000487458).

23.    "You," "Your," and "Meta" mean Defendant Meta Platforms, Inc., its attorneys,

1    employees, managers, directors, officers, agents, consultants, advisors, representatives or persons

2    working on its behalf.

3         24.    Except for the terms defined hereof, and unless another meaning is obvious from

4    the context and from a term's plain and ordinary usage, the terms used herein shall have the same

5    meaning as they have in the operative Complaint in this Action.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE B**

26.  **Preservation Efforts** – All steps You took to preserve Documents, Event-Level Data, ███████████, Crawled Data, Content Categorizations, ███████, User Features, user profile information, and other data in connection with any pending litigation or investigation relating to the Meta Pixel that required you to preserve documents or data. This topic includes (a) whether and when You put litigation hold(s) in place or took other steps to preserve evidence; (b) the contents and recipients of notices of any litigation hold(s) or other preservation efforts; (c) the specific actions Meta employees took to effectuate the litigation hold(s); (d) the type of litigation hold software applied, if any; (e) the scope of the litigation hold or other preservation effort, including the custodians; document types; data sources, data tables, data fields, or other Data Organization subject to the hold or other preservation effort; and (f) any new data sources, data tables, data fields, or other Data Organization created for the purpose of preserving data.

27.  **Purported Class Member Consent to Meta** – Any purported consent or agreement You allege any Plaintiff or class member gave to Meta to permit Meta's collection, processing, or use of Pixel-Generated Health Information or the association of Pixel-Generated Health Information with Facebook accounts or other user profiles.

28.  **Purported Class Member Consent to Healthcare Providers** – Any purported consent or agreement You allege any Plaintiff or class member gave to any Healthcare Provider to permit the sharing of Pixel-Generated Health Information with Meta or allow Meta to collect, process, or use Pixel-Generated Health Information or associate Pixel-Generated Health Information with Facebook accounts or other user profiles.

29.  **Purported Consent to Uses** – Any purported consent or agreement You allege any Plaintiff, class member, or Healthcare Provider gave to have their communications with their Healthcare Providers to be processed through the ████████ analyzed, and used to generate ██████ and features, including ████████████████████████, for use in ZippyDB, UP2X, user profiles, ad targeting, ads ranking, ads optimization, ads measurement, the

Facebook Newsfeed, Facebook Marketplace, the Facebook Audience Network, Instagram or any other purpose for which Meta uses such data.

30.    Facebook's policies, procedures, and written guidance for Facebook employees (including sales employees) relating to communicating with Healthcare Providers about their use of the Pixel, SDK, and/or CAPI.

31.    How Facebook described and trained Healthcare Providers about the Pixel, SDK, and/or CAPI.

32.    Facebook's decisions and analyses regarding whether Healthcare Providers' use of the Pixel, SKD, and/or CAPI violated users' privacy.

33.    **Contract** – All actions that Meta contends that it took during the Class Period to:

    a.    "Require" its "Partners to have lawful rights" or the "right" to "share your data before providing any data to [Meta];"

    b.    "Employ dedicated teams around the world, work with external service providers, partners and other relevant entities and develop advance technical systems to detect potential misuse, harmful conduct towards others, and situations were we may be able to help support or protect our community, including to respond to user reports of potentially violating content."

    c.    Any discussions or agreements with Healthcare Providers regarding the use of the Pixel on the websites of Healthcare Providers, including but not limited to any marketing uses.

**Unjust Enrichment**

34.    Revenue from Healthcare Providers associated with the Pixel, SDK, and/or CAPI.

35.    Revenue from non-Healthcare Providers derived from ███████████████ ██████████████ categories for advertisements to ██████████ or features.

36.    Market values for consumer personal information, including amounts Meta pays directly to panelists for the right to collect their data; and any programs or transactions in which

Meta pays consumers directly for the right to collect their data or has purchased consumer data from other entities, including but not limited to health-related data.

37.    Meta's valuations of healthcare-related data.

38.    Any costs or other reductions that Meta contends should be made from revenue when calculating the amount of revenue and profits derived from at-issue data.

**Direct Ad-Targeting Based on Health Information ███ and Inferences**

39.    Meta's decision to remove the ability to directly select healthcare-related ad topics for targeting, as alleged in Dkt. 185, ¶¶ 221-230.

40.    Meta's studies and knowledge on how Lookalike Audiences could replace direct health-related ad topic selection, as alleged in Dkt. 185, ¶¶ 221-230.

41.    **Business Tools Sign-up Process** – The design, process, and decisions relating to the Pixel, SDK, and CAPI sign-up process, including whether Meta required advertisers to identify as Healthcare Provider, and why or why not.

42.    Meta's privacy policies, including statements regarding what information Meta collects from partners and other third parties.

43.    **Knowledge of Breach Notices** – Meta's awareness, knowledge of, and response to notices by Healthcare Providers or the Federal Trade Commission of potential data privacy breaches relating to Healthcare Providers.

RESPECTFULLY SUBMITTED AND DATED this 24th day of January, 2025.

SIMMONS HANLY CONROY LLC

By: /s/ Jason 'Jay' Barnes
    Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
    Email: jaybarnes@simmonsfirm.com
    An V. Truong, *Admitted Pro Hac Vice*
    Email: atruong@simmonsfirm.com
    Eric Steven Johnson, *Admitted Pro Hac Vice*
    Email: ejohnson@simmonsfirm.com
    Jennifer M Paulson, *Admitted Pro Hac Vice*
    Email: jpaulson@simmonsfirm.com
    112 Madison Avenue, 7th Floor

1    New York, New York 10016
     Telephone: (212) 784-6400

2

3    COHEN MILSTEIN SELLERS & TOLL PLLC

4    By: /s/ Geoffrey A. Graber
        Geoffrey Aaron Graber, CSB #211547
5        Email: ggraber@cohenmilstein.com
        Eric Alfred Kafka, *Admitted Pro Hac Vice*
6        Email: ekafka@cohenmilstein.com
        Claire T. Torchiana, CSB #330232
7        Email: ctorchiana@cohenmilstein.com
        1100 New York Avenue NW
8        Suite 500, West Tower
        Washington, DC 20005
9        Telephone: (202) 408-4600

10

11   TERRELL MARSHALL LAW GROUP PLLC

12   By: /s/ Beth E. Terrell
        Beth E. Terrell, CSB #178181
13       Email: bterrell@terrellmarshall.com
        Amanda M. Steiner, CSB #190047
14       Email: asteiner@terrellmarshall.com
        Ryan Tack-Hooper
15       Email: rtack-hooper@terrellmarshall.com
        Benjamin M. Drachler, *Admitted Pro Hac Vice*
16       Email: bdrachler@terrellmarshall.com
        936 North 34th Street, Suite 300
17       Seattle, Washington 98103
        Telephone: (206) 816-6603
18

19       Jeffrey A. Koncius, CSB #189803
        Email: koncius@kiesel.law
20       Nicole Ramirez, CSB #279017
        Email: ramirez@kiesel.law
21       Mahnam Ghorbani, CSB # 345360
        Email: ghorbani@kiesel.law
22       Stephanie M. Taft, CSB #311599
        Email: taft@kiesel.law
23       Kaitlyn E. Fry, CSB #350768
        Email: fry@kiesel.law
24       KIESEL LAW LLP
        8648 Wilshire Boulevard
25       Beverly Hills, California 90211-2910
        Telephone: (310) 854-4444
26

27

28

PLAINTIFFS' NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF META
PLATFORMS, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6) AND DKT. 772(1) - 12
Case No. 3:22-cv-3580-WHO (VKD)

1          Andre M. Mura, CSB #298541
           Email: amm@classlawgroup.com
2          Hanne Jensen, CSB #336045
           Email: hj@classlawgroup.com
3          Delaney Brooks, CSB #348125
           Email: db@classlawgroup.com
4          GIBBS LAW GROUP LLP
           1111 Broadway, Suite 2100
5          Oakland, California 94607
           Telephone: (510) 350-9700
6
7          *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on January 24, 2025, I caused true and correct

copies of the foregoing document to be served via electronic mail upon the following:

Abigail Augus Barrera, CSB #301746
Email: abarrera@gibsondunn.com
Elizabeth Katharine McCloskey, CSB # 268184
Email: EMcCloskey@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200

Andrew M. Kasabian, CSB #313210
Email: akasabian@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612
Telephone: (949) 451-4341

Gregg Costa, *Admitted Pro Hac Vice*
Email: gcosta@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600

Darcy Caitlyn Harris, *Admitted Pro Hac Vice*
Email: dharris@gibsondunn.com
Lauren R Goldman, *Admitted Pro Hac Vice*
Email: LGoldman@gibsondunn.com
Lessa Haspel
Email: lhaspel@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000

Trenton James Van Oss, *Admitted Pro Hac Vice*
Email: tvanoss@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20009
Telephone: (202) 955-8500

PLAINTIFFS' NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF META
PLATFORMS, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6) AND DKT. 772(1) - 14
Case No. 3:22-cv-3580-WHO (VKD)

Jay Minga
Email: jminga@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
310 University Avenue
Pala Alto, California 94301
Telephone: (650) 849-5350

***Attorneys for Defendants Meta Platforms, Inc.,***
***Facebook Holdings, LLC, Facebook Operations, LLC, Instagram LLC***

DATED this 24th day of January, 2025.


By: /s/ Beth E. Terrell, CSB #178181
Beth E. Terrell, CSB #178181

EXHIBIT 1

# Exhibit A – "Health Care Providers"

**Relevant Lines from** █████████████████████



# Exhibit A – "Health Care Providers"
**Relevant Lines from** 

## Exhibit A – "Health Care Providers"

**Relevant Lines from** ██████████████



## Exhibit A – "Health Care Providers"
**Relevant Lines from** ████████████████



*HIGHLY CONFIDENTIAL – SOURCE CODE*

Plaintiffs' Excerpts from the Source Code file

*HIGHLY CONFIDENTIAL – SOURCE CODE*



EXHIBIT 2

## Exhibit B – "Health Information"
**Relevant Lines from**



# Exhibit B – "Health Information"

**Relevant Lines from** █████████████████████



# Exhibit B – "Health Information"
**Relevant Lines from** █████████████████████



# Exhibit B – "Health Information"
**Relevant Lines from** ███████████████████



## Exhibit B – "Health Information"
**Relevant Lines from** █████████████████



# Exhibit B – "Health Information"
**Relevant Lines from** █████████████████



# Exhibit B – "Health Information"
**Relevant Lines from** 

# Exhibit B – "Health Information"
**Relevant Lines from** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

