Redacted Version of Exhibit 2 to the
Joint Discovery Dispute Letter Brief
regarding 30(b)(6) Topics
(Dkt. No. 928-5)

— EXHIBIT  2 —

1

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

2

3

4

5

6

*Attorneys for Defendant Meta Platforms, Inc.*

7

8

# UNITED STATES DISTRICT COURT

9

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

### SAN FRANCISCO DIVISION

11

IN RE META PIXEL HEALTHCARE
LITIGATION

Case No. 3:22-cv-03580-WHO (VKD)

12

CLASS ACTION

This Document Relates To:

13

**DEFENDANT META PLATFORMS, INC.'S
RESPONSES AND OBJECTIONS TO
PLAINTIFFS' NOTICES OF DEPOSITION
PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 30(b)(6)**

All Actions

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") Rules 26 and 30(b)(6), the Civil Local Rules of the U.S. District Court for the Northern District of California ("Local Rules"), and the Court's Standing Order for Discovery in Civil Cases ("Standing Order"), hereby provides the following objections and responses to plaintiffs' Notices of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6).

Meta will make, and has made, reasonable efforts to designate one or more witnesses to the Topics identified in the Notice, subject to Meta's objections lodged below, as Meta reasonably understands and interprets each Topic.  If plaintiffs subsequently assert any interpretation of any Topic that differs from the interpretation of Meta, Meta reserves the right to supplement and amend its objections and responses.  By stating that it will produce a witness competent to testify on a Topic, Meta does not represent that it has any relevant information on that Topic, but merely that a designee will testify to any corporate knowledge obtained through a reasonable investigation.  Further, Meta's response to any particular Topic should not be taken as an admission that it accepts or admits the existence of any fact set forth or assumed by the Topic, or that the response constitutes admissible evidence.  No response to any portion of any Topic shall be deemed a waiver of any objection not set forth herein that could be made to any such portion of the Topic regarding relevancy of the information or its admissibility.

In light of the Court's order establishing that "plaintiffs may take no more than 20 hours of Rule 30(b)(6) corporate testimony," see Dkt. 850 at 2, Meta is available to discuss ways to streamline and prioritize the identified topics so that (1) Meta is able to adequately prepare corporate representatives and (2) plaintiffs are able to address the topics of interest within the specific time period.

## GENERAL OBJECTIONS

Meta hereby incorporates each and every one of the following objections ("General Objections") into each of the specific responses to the matters for examination ("Topics") below, whether or not they are expressly referenced therein.  The absence of, or reiteration of, any General Objection in any specific response is neither intended to be, nor shall it be, construed as a limitation

Gibson, Dunn &
Crutcher LLP

or a waiver of any General Objection made herein.  Moreover, the inclusion of any specific objection in any particular response is neither intended to be, nor shall it be, construed as a limitation or waiver of a General Objection or any other specific objection.

1.    Meta objects to the Topics to the extent they seek to impose obligations beyond what is imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, applicable Standing Orders, or orders entered in this case, including the Stipulated Protective Order and Addendum (Dkts. 242, 291), and the Stipulated Order Regarding Discovery of Electronically Stored Information and Addendum (Dkts. 269, 352).

2.    Meta objects to the Topics to the extent they seek comprehensive or encyclopedic testimony, testimony with an unreasonably unlimited degree of specificity, or information that a witness could not be reasonably expected to recall.  *See Reno v. W. Cab Co.*, 2020 WL 5902318, at *2 (D. Nev. Aug. 31, 2020) (denying motion to compel deposition compliance when "the deposition notice appears to have been drafted as a means to cover nearly every conceivable facet of this litigation"); *Crystal Lakes v. Bath & Body Works, LLC*, 2018 WL 10467489, at *2 (E.D. Cal. Aug. 15, 2018) ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge . . . .  Reasonableness of pre-existing knowledge and/or preparation is the touchstone inquiry here."); *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 (C.D. Cal. Oct. 26, 2016) ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *see also Fuentes v. Classica Cruise Operator Ltd, Inc.*, 32 F.4th 1311, 1322 (11th Cir. 2022) ("A Rule 30(b)(6) deposition is not a memory test.").  Meta will prepare its designated witness(es) to provide information with a reasonable degree of detail.

3.    Meta objects to the Topics to the extent they seek to elicit a response that would require Meta to draw a legal conclusion or implicate the mental impressions of counsel in order to make a proper response.

4.    Meta objects to the Topics to the extent they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable

Gibson, Dunn & Crutcher LLP

2

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6) CASE NO. 3:22-CV-03580-WHO (VKD)

1    privilege, doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure

2    26(b)(4)(B).

3         5.     Meta objects to plaintiffs' use of "any" and "all" as overbroad, vague, ambiguous, and

4    unduly burdensome.  Meta further objects to the use of these terms where plaintiffs may argue that

5    these terms bring within the scope of these Topics information that might otherwise be construed to

6    be outside of their scope, which would mean even irrelevant and cumulative responses would fall

7    within the scope of plaintiffs' Topics.  Meta further objects because it is impossible to represent, even

8    after diligent search and consideration, that "any" or "all" aspects of a particular subject matter and/or

9    Topic has been addressed.

10        6.     Meta objects to the Topics to the extent they are premature and/or to the extent that

11   they: (a) seek information that is the subject of expert testimony; and/or (b) seek information and/or

12   responses that are dependent on depositions and documents that have not been taken or produced.

13        7.     Meta objects to the Topics to the extent that they seek information not relevant to the

14   claims or defenses and not proportional to the needs of the case, including that the burden or expense

15   of the information sought outweighs its likely benefit or that the Topics seek information for any time

16   period outside that which is relevant to the claims or defenses asserted in this action.  *HVI Cat*

17   *Canyon, Inc.*, 2016 WL 11683593, at *8 (courts "have not hesitated to issue protective orders when

18   corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices"

19   (citation omitted)).  Meta will interpret the relevant time period applicable to the Topics in

20   accordance with this Court's June 16, 2023 Order (the "Relevant Time Period").  *See* Dkt. 276.

21        8.     Meta objects to the Topics as overbroad, unduly burdensome, and not consistent with

22   the Federal Rules of Civil Procedure and Evidence to the extent that they seek information that is

23   already in the possession, custody, or control of plaintiffs and/or their legal counsel, unreasonably

24   cumulative, duplicative of, already known, and/or equally available to plaintiffs and/or their legal

25   counsel.

26        9.     Meta generally objects to each Topic to the extent the Topic is vague, ambiguous,

27   unreasonably cumulative, or duplicative, and to the extent the information is better sought by another

28   method of discovery.

10.     Meta objects to the Topics to the extent they seek information that is not in the possession, custody, or control of Meta, seek information that Meta no longer possesses and/or was under no obligation to maintain, or seek information that is available through other means that are less burdensome or more appropriate.

11.     Meta generally objects to the Topics to the extent that they request information that is confidential, proprietary, or competitively sensitive.  To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Topics and not otherwise objectionable, Meta will produce such information in accordance with the Stipulated Protective Order, and such other procedures as the parties or Court may establish to protect sensitive or confidential information.

12.     The assertion of the same, similar, or additional objections or partial responses to the individual deposition topics does not waive any of Meta's General Objections.  Meta reserves its right to object to any question asked of any deponent during a deposition.

## OBJECTIONS TO DEFINITIONS

1.     Meta objects to plaintiffs' definition of "Content Categorizations" as vague, ambiguous, overbroad, and unduly burdensome including because of its use of the undefined terms and phrases "categorization," "content," "advertiser verticals," ███████████████ ████████████████ and "categorizations assigned by ████ Mapper," as well as because of its use of the objectionable terms "Event-Level Data," █████████████ and "Crawled Data." Meta restates and incorporates its objections to those terms as though fully set forth in this objection. Meta further objects to this term to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action or is disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information.

2.     Meta objects to plaintiffs' definition of "Crawled Data" as vague, ambiguous, overbroad, and unduly burdensome, including because of its use of the undefined terms and phrases "collected," "web crawlers," "other systems," "extract," and "content." Meta further objects to this term to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action or

4

Gibson, Dunn &
Crutcher LLP

is disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information.

3. Meta objects to plaintiffs' definitions of "Document(s)," "Electronic Media," "Electronically Stored Information," "Information," "Policy," and "Policies" to the extent that plaintiffs purport to use these defined terms to request the identification and disclosure of documents and information that: (a) were prepared in anticipation of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws, and/or rules. Meta further objects to the extent that these definitions purport to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.  Meta will construe these terms in accordance with the Federal Rules and the Local Rules.

4. Meta objects to plaintiffs' definition of "Event-Level Data" as vague, ambiguous, overbroad, and unduly burdensome, including because of its use of the undefined terms "event or set of events," "reflecting," and "action or set of actions."

5. Meta objects to plaintiffs' definitions of  "Facebook," "Defendant," "Meta," "You," and "Your" as overly broad and unduly burdensome to the extent these terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent that plaintiffs purport to use these terms to impose obligations on Meta that go beyond the requirements of the Federal and Local Rules.  Meta further objects to this definition to the extent that plaintiffs purport to use this defined term to seek information and/or testimony that is not relevant to the claims and defenses in this action.  Meta will construe the definition of "Facebook," "Defendant," "Meta," "You" or "Your" so as to include the following:  Meta Platforms, Inc. and its Members of the Board of Directors, officers, and employees of Meta Platforms, Inc. as well as contingent workers (including vendor workers, contractors, and consultants).

6. Meta objects to plaintiffs' definition of "Healthcare Provider" as overbroad and unduly burdensome to the extent that it encompasses entities beyond the "Covered Entities" as defined in the operative complaint.  In addition, Meta objects to this definition to the extent plaintiffs purport to require Meta to interpret which entities are the subject of plaintiffs' complaints.  Meta has

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
CASE NO. 3:22-CV-03580-WHO (VKD)

already provided plaintiffs with information to identify potentially relevant entities. It is

inappropriate to require Meta to identify the entities plaintiffs assert are relevant to their claims.

Meta further objects to this definition because of its use of undefined terms and phrases including,

"any of the entities from which Meta was collecting information on their web-properties,"

"classified," ██████████████████████████████ "Meta's data indicates that the

web-property displayed HIPAA notice language required by law," "[a] HIPAA or CMIA covered

entity," and "classified as a health care provider or HIPAA or CMIA covered entity through human

labeling or any other method." Meta also objects to this term to the extent that it seeks information

that is irrelevant to the claims in, or defenses to, this action or disproportionate to the needs of the

case, or is of such marginal relevance that its probative value is outweighed by the burden imposed

on Meta in having to provide such information.

7.      Meta objects to plaintiffs' definition of "Healthcare Provider Web-Property" as

overbroad, vague, and ambiguous because of its use of the objectionable term "Healthcare Provider."

Meta restates and incorporates its objections to those terms as though fully set forth in this objection.

Meta further objects to this definition to the extent it encompasses entities beyond the "Covered

Entities" as defined in the operative complaint.

8.      Meta objects to plaintiffs' definition of "Identify " as overbroad, vague, ambiguous,

and unduly burdensome including because of its use of undefined terms and phrases like "sufficient

detail to enable them to be identified by subpoena duces tecum," "title and each subtitle thereof,"

"brief summary," "distribution list," "each person who witnessed, or could witness said

communication," "physical location," "custodian or custodians," "identity," "source of (or the

identity of each person who supplied) any information contained," and "what disposition was made

of it and the reason for its disposition." Meta further objects to this definition to the extent plaintiffs

purport to require Meta to provide information and documents that: (a) were prepared in anticipation

of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client

communications; or (d) are otherwise protected from disclosure under any applicable privileges,

laws, and/or rules. Meta further objects to the extent that this definition purports to impose

obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable. Meta will construe this term in accordance with the Federal Rules and the Local Rules.

9.     Meta objects to plaintiffs' definition of ██████████ as vague and ambiguous, including because of its use of the vague and ambiguous terms and phrases "substantially similar," "described in PIXEL_HEALTH000465524 or PIXEL_HEALTH000459429," ██████████ ██████████████████████████ and "is or was stored in ████████████ (PIXEL_HEALTH0003000958)," and ██████████████ (PIXEL_HEALTH000110520)," ██████ ██████████████  Meta also objects to this term as unduly burdensome to the extent plaintiffs' definition purports to require Meta to extract an undefined subset of data from certain tables, which may or may not exist, extract data from other tables, and compare those data sets together to determine whether they are "identical" or "substantially similar." Meta also objects to this term to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action or disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information.

10.     Meta objects to plaintiffs' definition of "Pixel-Generated Health Information" as overbroad, vague, and ambiguous, including because of its use of the undefined terms and phrases "collected," "relating to a Healthcare Provider web-property," "classified or categorized based on the content taxonomies," and "included the fact that a user logged into or out of a patient portal, made or changed an appointment, or made a bill payment."  Meta also objects to this term to the extent that it seeks information that is irrelevant to the claims in, or defenses to, this action or disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information.

11.     Meta objects to plaintiffs' definition of ██████████ as overbroad, vague, and ambiguous, including because of its use of the undefined terms "similar identification" and "browser session," as well as because of its use of the objectionable term "Event-Level Data." Meta restates and incorporates its objections to that term as though fully set forth in this Response.

12.     Meta objects to plaintiffs' definition of ██████████ as overbroad, vague, and ambiguous, including because of its use of the undefined terms "substantially similar" and "stored."

Gibson, Dunn &
Crutcher LLP

13.     Meta objects to the characterization by plaintiffs of data as being "collected" when describing data transmitted from third parties to Meta via the at-issue Business Tools.

## SPECIFIC RESPONSES AND OBJECTIONS TO EXAMINATION TOPICS

Meta's responses to these Topics are made without waiver and with the preservation of all issues as to the competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof for any purpose and in any further proceeding in this litigation and in any other action or matter; the right to object to the use of any such responses or the subject matter thereof on any ground in any further proceeding in this litigation and in any other action or matter; the right to object on any ground at any time to a demand or request for further response; and the right at any time to review, correct, add to, supplement, or clarify any of the responses contained herein.

## EXAMINATION TOPIC NO. 1

**Health-Related Website and App Classifications** – How Meta classified websites and apps as relating to health during the class period, including:

a.  <u>Advertising Verticals</u> – When Meta created the health-related advertising verticals; how they are assigned or associated to businesses and their domains or apps (such as whether Meta assigns the classification on its own or the advertiser provides information for the assignment, and the specific process through which that occurs); why they are assigned; and how they are used by Meta;

b.  ████████ – How Meta used ████████ to classify websites and apps during the class period, including through ████████████████████ and other tables identified in plaintiffs' January 13, 2025 letter on this topic, as well as any predecessor or successor tables of data sources containing such information;

c.  ██████ How Meta used ██████ to classify Facebook pages relating to advertisers with websites or apps that used the Pixel, SDK, or CAPI during the class period; and how the ████ classifications can be associated with domains and apps, including through tables identified in plaintiffs' January 13, 2025 letter on this topic;

Gibson, Dunn &
Crutcher LLP

d. ████████ How Meta used ████████ to ████████ to websites and apps during the Class Period;

e. <u>The Filter List</u>: How Meta developed and used the list of health-related websites and apps subject to treatment from the Filter;

f. <u>The ████████████ Field</u>: When, why, and how Meta developed the ████████████ field contained in Hive tables, including the criteria by which Meta placed domains, apps, Pixels, or advertisers into the ████████████ category and how Meta used that classification;

g. ████ Whether Meta attached ████ to healthcare provider properties, and if so, which ████;

h. <u>Core Setup</u>: When, why, and how Meta identified health-related websites that it placed into "Core Setup," including all systems and levels of such classifications;

i. <u>Crawler Based Efforts at Classification</u>: All uses of crawled data for classifications; and

j. <u>Any other efforts</u> to classify domains and apps as relating to healthcare provider.

**RESPONSE TO EXAMINATION TOPIC NO. 1**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta further objects to the extent this Topic seeks testimony regarding broadly "when, why, and how"; "any other efforts"; "all uses;" and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test."). Meta further objects as follows:

Topic 1(a): For the purposes of responding to Topic 1(a), Meta will construe "Advertising Verticals" as the "Sales Verticals" identified by Meta in Meta's Third Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories.

9

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
CASE NO. 3:22-CV-03580-WHO (VKD)

Gibson, Dunn &
Crutcher LLP

Topic 1(b):  Meta objects to this Topic as overbroad and unduly burdensome to the extent it seeks "any predecessor or successor tables of data sources containing such information."

Topic 1(c):  Meta objects to this Topic which seeks testimony about a system not relevant to the claims or defenses and not proportional to the needs of the case.

Topic 1(d):  Meta objects to this Topic as overbroad to the extent it is not limited to health-related classifications.  Meta further objects to the term ███████████ as vague.

Topic 1(e):  Meta objects to this Topic to the extent it is duplicative of Topic 4.  Meta further objects to the terms "subject to treatment from the Filter" as vague and unintelligible.

Topic 1(f):  Meta objects to this Topic to the extent it is duplicative of discovery requests Meta has already answered.  Meta further objects to the terms "when, why, and how" as overbroad and unduly burdensome.

Topic 1(g):  Meta objects to this Topic as overly burdensome and disproportionate to the litigation.  Meta further objects to the undefined term ███████  Meta will construe this term in connection with the ██████ process.

Topic 1(h):  Meta objects to the terms "when, why, and how" and "all systems and levels" as overbroad and unduly burdensome.  Meta further objects to the Topic to the extent it is duplicative of Topic 14.

Topic 1(i):  Meta objects to the terms "all uses of crawled data" as overbroad, unduly burdensome, not relevant to the claims or defenses, and not proportional to the needs of the case.  Meta further objects to the Topic to the extent it is duplicative of Topic 15.

Topic 1(j):  Meta objects to the term "any other efforts" as overbroad and unduly burdensome.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide the following testimony:

Topic 1:  How Meta classified websites and apps as relating to health during the class period, including:

Topic 1(a): The process of creating, assigning, and using health-related Sales Verticals, and the connection, if any, to the domains or apps of the entities that are assigned health-related Sales Verticals.

10

Gibson, Dunn & Crutcher LLP

Topic 1(b):  How Meta used ███████ to classify websites and apps during the class period, including, if applicable, through the table identified herein and the nine tables identified in plaintiffs' January 13, 2025 letter.

Topic 1(d):  How Meta used ███████ to ████████████ during the Class Period to the extent it is limited to health-related classifications.

Topic 1(e):  The role, if any, that health-related classifications played in the creation of the list of entities blocked by the Filter.

Topic 1(f):  Describe and explain the ████████████ in tables produced by Meta, including, as applicable, its contents and uses for purposes responsive to this litigation.

Topic 1(g):  Whether Meta associated ███████ to healthcare provider properties, and if so, which ██████ to the extent these relate to ████████ process.

Topic 1(h):  Describe and explain how Meta identified health-related websites that were placed into Core Setup.

Topic 1(i):  Explain what, if any, role health-related classifications had in connection with the crawlers identified as relevant to this litigation, as discussed in more detail in Topic 15 below.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 2

**Meta's Initial Collection and Processing of Pixel, SDK, and CAPI Data** – How Meta collected and conducted the initial processing of Pixel and SDK data from healthcare provider web-properties, including:

    a.   The complete list of data types that Meta collects with the Pixel, SDK, or CAPI from healthcare provider web-properties (e.g., events, session, datr, c_user).

    b.   As to each data type identified in (4)(a), the total number of users for whom any such data type was collected, the number of users for each data type, and the total number of sessions from which data was collected.

    c.   The nature of Meta's property interest in the collected data.

    d.   Meta's internal knowledge and discussion of what is collected

Gibson, Dunn &
Crutcher LLP

e.  Meta policies, discussions, or studies on the Meta Pixel's deployment on health websites/apps

f.  Meta's internal reaction to this lawsuit

g.  Changes made to what data is collected during this litigation

h.  Logging of data to Meta's databases prior to filtering, e.g., ███████████

i.  Explain the basic functions of the storage and processors identified in the data flow document produced at PIXEL_HEALTH00000064 and other source code elements, including:

████████████████████████████████

██████████████████████

████████████████████

██████████████████████████████

████████████████████

██████████████████████████████████

█████████████████████

████████████████████

█████████████████████████

███████████████████████████

███████████████████████

████████████████████████████████████████

██████

████████████████████████████████

## RESPONSE TO EXAMINATION TOPIC NO. 2

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "collected and conducted the initial processing," "complete list," "internal knowledge and discussion," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information.  *See*

12

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
CASE NO. 3:22-CV-03580-WHO (VKD)

*Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").  Meta further objects as follows:

Topic 2(a):  Meta objects to this Topic to the extent the information is equally available to plaintiffs through the document and data productions in this litigation.

Topic 2(b):  Meta objects to this Topic as premature because, to date, only samples of data have been required to be produced.  Meta further objects to the extent the information is equally available to plaintiffs and/or their experts.

Topic 2(c):  Meta objects to this Topic to the extent it calls for a legal conclusion.

Topic 2(d):  Meta objects to the term "internal knowledge and discussion" as vague, overbroad, and unduly burdensome.

Topic 2(e):  Meta objects to the terms "studies" and "discussions" as vague, overbroad, and unduly burdensome.

Topic 2(f):  During the February 12, 2025, meet and confer, Meta objected to the vague term "internal reaction."  Meta further objected that this Topic implicated privileged communications by limiting the "internal reaction" to "this lawsuit."  Plaintiffs stated that the Topic was meant to address how Meta made changes to its processes.  Based on this explanation, Meta further objects that it is duplicative of other Topics, including Topic 5.

Topic 2(g):  Meta objects that this Topic is duplicative of other Topics, including Topic 5.

Topic 2(h):  Meta objects that this Topic is duplicative of other Topics, including Topic 4. Meta objects to the terms "logging of data" and "Meta's databases" as vague, overbroad, and unduly burdensome.  For the purposes of responding to this Topic, Meta will limit it to the identified table—

▮▮▮▮▮▮▮▮▮▮▮▮

Topic 2(i):  Meta understands the cited Bates number to be incorrect.  For the purposes of responding to this Topic, Meta will construe the correct Bates number as PIXEL_HEALTH000000064.  Meta objects to the term "source code elements" as vague.  Meta

13

Gibson, Dunn &
Crutcher LLP

objects to this Topic which seeks information not relevant to the claims or defenses in this action and not proportional to the needs of the case. Meta will construe this Topic as relating only to PIXEL_HEALTH000000064 and the 13 numbered sub-sub-categories.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide the following testimony:

Topic 2: The data flow through which Meta receives Pixel and SDK data transmitted from healthcare provider web-properties, including:

Topic 2(e): Meta policies on the Meta Pixel's deployment on health websites/apps.

Topic 2(g): Material changes to Pixel, SDK, and CAPI since the introduction of each tool.

Topic 2(h): The logging of data to the following table: ███████████████

Topic 2(i): General testimony to explain the basic functions of the storage and processors identified in the data flow document produced at PIXEL_HEALTH00000064 and the 13 identified sub-sub-categories of this Topic.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 3

**Geo-location** -- Geo-location of class members, healthcare providers, and Meta's servers, including where Meta stored information about the geo-location of class members at the time of an at-issue communication; where Meta stored information about the geo-location of advertisers and their servers; Meta servers in California in PIXEL_HEALTH000878424 and the source code file located at ███████████████████████████ and how any such California-based Meta servers are used by Meta and where Meta stores information about data that flows through or is stored in those servers.

## RESPONSE TO EXAMINATION TOPIC NO. 3

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta further objects to the extent this Topic seeks testimony regarding broadly "geo-location of class members," "where Meta stores information about data that flow through," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information. *See*

14

Gibson, Dunn & Crutcher LLP

*Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").  Meta objects to this Topic to the extent it calls for information that is not within Meta's possession, custody, or control.  Meta objects to this Topic to the extent it calls for information that is not relevant to the claims and defenses in this litigation, including, for example, information about "Meta's servers" that is not tailored in any way to the at-issue Business Tool data. Meta further objects that it has already produced information concerning the location of Meta's servers as evidenced by the plaintiffs' citation to the relevant document in this Topic.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide testimony concerning the predicted location of an event, as applicable.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 4

**The Filter** – How the Filter worked during the Class Period, including:

a.  Meta's purpose for creating the Filter (▮▮▮▮▮▮▮▮▮▮)

b.  The specific data that the Filter was designed to block or not block, including but not limited to whether it was designed to block or not block (i) Pixel Button Clicks; (ii) Custom Data; (iii) search queries; (iv) data or other information entered into forms; and/or (v) "standard" URLs, i.e. a URL that does not include data in the first four categories, such as www.hospital.org/cancer-treatment.

c.  The amount of time and other resources invested in creating, maintaining, and updating the Filter

d.  Whether the Filter was designed to scan data collected from all websites and apps or subsets of websites and apps with potential health information

e.  How Meta identified the health-related websites and apps to which it would apply the Filter upon receipt of events from those websites and apps, including specific systems and processes for doing so, including:

15

Gibson, Dunn & Crutcher LLP

1        1) ████████████████, including █████ or any other rating system and all

2        classifications (to the most detailed level) available to the ██████████ that

3        would place a domain into a health category for analysis by the Filter;

4        2) Machine learning or artificial intelligence

5        3) Taxonomies or other classifications used to identify such websites and apps

6        4) The relationship of the classifications that the Filter applied to websites and

7        apps to Meta's other classification systems, including advertiser verticals,

8        █████████████████████ and the field █████████████████

9        contained in Hive tables;

10       5) The extent to which Filter classifications were used for Core Setup

11    f. The history of the Filter, including who was involved in the creation, when it was

12    created, why it was created, alternative designs considered at the time of creation and

13    during its use, and changes to the Filter over time, including:

14        1) All efforts Meta made to Filter patient portal data, and when;

15        2) All efforts, if any, to block "standard" URLs

16        3) The impact of Core Setup on Filter operations, including the amount of data

17        that the Filter was necessary to filter.

18    g. Whether Meta performed audits of the Filter, and if so, when and how and with what

19    results;

20    h. Explain the following source code elements.

21        ████████████████████

22        ████████████

23        ███████████████████████████

24        ████████████████████

25        ████████████████████████

26        ███████████████████████ (How are the terms in the table obtained

27    and how often updated?)

28        7) ██████████████

16

Gibson, Dunn &
Crutcher LLP

8)  Role of ▮▮▮▮▮▮▮▮ table in determining ▮▮▮▮▮▮▮▮▮▮▮▮

9)  for ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## RESPONSE TO EXAMINATION TOPIC NO. 4

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "specific data," "designed to block or not block," "specific systems and processes," "taxonomies or other classifications," "history of the Filter," "all efforts," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome.  No corporate representative could be reasonably expected to memorize such information.  *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").  Meta further objects that this Topic is duplicative of other Topics, including Topics 1 and 4.  Meta further objects as follows:

Topic 4(a):  Meta objects that this Topic is duplicative of other Topics, including Topic 4(e).  Meta objects to the undefined terms ▮▮▮▮▮▮ and ▮▮▮▮▮▮

Topic 4(b):  Meta objects to the term "or not block" as vague, overbroad, and unduly burdensome.  Meta objects that the specified subsections multiply the burden of preparing the witness as to the general topic of the design of the Filter.

Topic 4(c):  Meta objects to the terms "time and other resources" as vague and overbroad.  Meta further objects that this Topic is overly burdensome and not proportionate to the claims and defenses in this action.

Topic 4(d):  Meta objects that this Topic is duplicative of other sub-topics within Topic 4.  Meta objects to the terms "designed to scan" and "potential health information" as vague, overbroad, and unduly burdensome.

Topic 4(e):  Meta objects that this Topic is duplicative of other Topics, including Topic 1(e).  Meta objects to this Topic which seeks testimony about a system, ▮▮▮▮▮▮ that is not relevant to the

17

Gibson, Dunn &
Crutcher LLP

claims or defenses and not proportional to the needs of the case.  Meta further objects to the terms

███████████████████████████████████████████████████████ and "other

classifications" as vague, overbroad, and unduly burdensome.

Topic 4(f):  Meta objects to the terms "who was involved," "alternative designs considered,"

"all efforts," and "the amount of data that the Filter was necessary to filter" as vague, overbroad,

unduly burdensome, and disproportionate to the needs of the case.  Meta further objects that this

Topic is duplicative of other sub-topics within Topic 4, including Topic 4(a).

Topic 4(g):  Meta objects to the terms "audits," "when," and "what results," as vague,

overbroad, and disproportionate to the needs of the case.  For the purpose of responding, Meta will

construe "audits" to mean an organized effort to test the efficacy of the Filter.

Topic 4(h):  Meta objects to the term "source code elements" as vague, overbroad, unduly

burdensome, and disproportionate to the needs of the case.  Meta states that information about the

identified tables is equally available to plaintiffs.  Meta further states that it is unclear whether sub-

sections (8) and (9) are referring to the same topic, or separate topics.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to

provide the following testimony:

Topic 4:  How the Filter worked during the Class Period, including:

Topic 4(a):  Meta's purpose for creating the Filter.

Topic 4(b):  The general types of data that the Filter was designed to block or not block,

including but not limited to whether it was designed to block or not block (i) Pixel Button Clicks; (ii)

Custom Data; (iii) search queries; (iv) data or other information entered into forms; and/or (v)

"standard" URLs, i.e. a URL that does not include data in the first four categories, such as

www.hospital.org/cancer-treatment.

Topic 4(d):  Meta incorporates its response to Topic 4(b) herein.  To the extent plaintiffs

believe these Topics request unique information, Meta is willing to meet and confer.

Topic 4(e):  How Meta identified the health-related websites and apps to which it would apply

the Filter upon receipt of events from those websites and apps, including specific systems and

processes for doing so, including:  (1) Human rater or labelers; (2) Machine learning or artificial

Gibson, Dunn &
Crutcher LLP

intelligence; (3) Taxonomies or other classifications used to identify such websites and apps; (4) The

relationship of the classifications that the Filter applied to websites and apps to Meta's other

classification systems, including Sales Verticals, ███████████████ and the field

███████████████ contained in Hive tables; (5) The extent to which Filter classifications were

used for Core Setup.

Topic 4(f):  The history of the Filter, including individuals primarily involved in the creation,

when it was created, why it was created, and changes to the Filter over time, including:  (1) material

efforts Meta made to Filter patient portal data, and when; (2) material efforts, if any, to block

"standard" URLs; and (3) The impact of Core Setup on Filter operations.

Topic 4(g):  Meta is willing to meet and confer to discuss this Topic.

Topic 4(h):  Explain the following source code elements to the extent they are relevant to data

transmitted via the business tools. ████████████████████

████████████████████████████████████

██████████████████████████████████████ (How are the

terms in the table obtained and how often updated?); (7) ██████████████

███████████████████████ Meta is willing to meet and confer

regarding sub-sections (8) and (9) for which it is unclear if two separate topics are being requested.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

**EXAMINATION TOPIC NO. 5**

**Proposed and Material Modifications to the Pixel, SDK, or CAPI from 2015 to the**

**Present**. All modification to the Pixel, SDK, and COPI from 2015 to present, including but not

limited to proposals to stop or modify collection of information from healthcare provider web-

properties, actual modifications implemented, and how the proposals and/or modifications changed or

would have changed Meta's collection and/or treatment of the information, generally and specifically

for healthcare provider web-properties.

**RESPONSE TO EXAMINATION TOPIC NO. 5**

Meta restates and incorporates its General Objections and Objections to Definitions set forth

above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "all

Gibson, Dunn &
Crutcher LLP

modifications" and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome.  No corporate representative could be reasonably expected to memorize such information, nor could information about "all modifications" be obtained without undue burden.  *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").  Meta further objects that this Topic is duplicative of other Topics, including Topic 2.  For the purposes of responding to this Topic, Meta will construe "COPI" as "CAPI."

Meta further objects to the time period "from 2015 to present" as outside the scope of this litigation.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide testimony concerning material modifications made to Pixel, SDK, and CAPI concerning the receipt of data relevant to the litigation.  Meta will construe the time period beginning from the introduction of the tool through present.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

**EXAMINATION TOPIC NO. 6**

**Tables from Which Meta Made Class-Wide Productions or Class-wide Sampled Productions**: Each table from which Meta has produced class-wide data, or class-wide sampled data, including ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████, including: (1) the meaning of each field in the table; (2) the purpose of the table; (3) whether it is used in advertising production, attribution, and/or measurement; and (4) whether it is part of the ██████ Pipeline.

**RESPONSE TO EXAMINATION TOPIC NO. 6**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "each field in the table," and "advertising production, attribution, and/or measurement," and related overbroad

20

Gibson, Dunn & Crutcher LLP

language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").

Meta further objects to this Topic to the extent it is disproportionate to the needs of the case and seeks information equally available to plaintiffs.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide general testimony about the purpose(s) of the eight tables identified in the Topic, including whether each table is part of the ▮▮▮▮ Pipeline.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 7

▮▮▮▮ **Pipelines** – How Meta inferred and used ▮▮▮▮ and features from data collected through the Pixel, SDK, and Business Tools for healthcare provider properties, including:

a. How and why Meta ▮▮▮▮ in the ▮▮▮▮ table;

b. All inputs used by the ▮▮▮▮ including whether the ▮▮▮▮ accessed and/or used data that would not be present in the Hive tables from which Meta has produced sampled class-wide data in this case.

c. How ▮▮▮▮ was used, accessed, or referenced in the ▮▮▮▮ process, and, if used, accessed, or referenced, what was its role and what specific type of information was involved

d. If the ▮▮▮▮ accessed or used data not present in the Hive tables from which Meta has produced sampled class-wide data, identify the data that is missing and how it is used by the ▮▮▮▮

e. How the ▮▮▮▮ in the ▮▮▮▮ work, including each of the ▮▮▮▮ ▮▮▮▮, with a focus upon process for ▮▮▮▮

21

Gibson, Dunn &
Crutcher LLP

1    ███████████████████ processors, and the ██████████ processor [*Footnote*

2    *removed*]

3    f.  Whether the ██████████ analyzes every event in the ██████████ data for its

4        ██████████████████████████, and ██████████ processors and how it

5        combines and uses its analyses of each event in the ██████████ data

6    g.  Locations where the output of the ██████████ was sent and stored, including the

7        fields identified in the ████████████████████████████████████

8        including identification of specific categories, use cases, and tables in ZippyDB,

9        UP2X, and Hive where █████████████████████████████████

10       ██████████ were sent, stored, and/or used

11   h.  For each ZippyDB, UP2X, or Hive category or table where █████████████████

12       ██████████████████████ were sent, stored, or used:

13       1) Identify the specific ZippyDB, UP2X, or Hive category or table;

14       2) Identify the information stored in that category or table;

15       3) Identify how the information stored in that category or table is used;

16       4) Identify how it flows into other systems at Meta.

17   i.  Explain how ████████████████████████████████████, including:

18       1) How the ██████████████████████████████ are combined, including

19          how and where Meta stores and uses the ██████████████████ identified

20          in the ███████████████████████████████ [*Footnote*

21          *removed*]

22       2) How, where, when, and why ██████████ derived from Pixel and/or SDK data

23          are merged, joined, or commingled with ██████████ derived from other data

24          in Meta's possession, including but not limited to activity on Meta owned-and-

25          operated web-properties

26       3) Where such ██████████ are stored in ZippyDB, UP2X, and/or Hive, including

27          any ██████████ storage where Meta commingled Pixel or SDK-related ████

Gibson, Dunn &
Crutcher LLP

████ with those derived from other data such that Meta can no longer trace the original source

4) How the ████████ works;

5) Whether a ████ can be created from Pixel or SDK events derived from a single advertiser and if there are any restrictions on its use. If there are any restrictions, identify specific source code files explaining them.

6) To the extent that ████ are used in advertising and other systems, the rules and logic for when a ████ that includes information derived in whole or in part from Pixel or SDK data becomes available for use in Meta's advertising and other systems, including the NewsFeed, Facebook Audience Network, Facebook Marketplace, Instagram, and WhatApp

7) How Pixel or SDK-inferred or derived ████ are used in Meta's systems, including how they are used to determine information to show the user through advertisements, the NewsFeed, Facebook Marketplace, Instagram, WhatsApp, and friend suggestions

8) How and why Pixel or SDK-inferred or derived ████ are joined or commingled with ████ and/or Features inferred or derived from non-Pixel or SDK data

j. Explain how ████ are transformed into User Features, including:

1) How the ████████ works

2) The ████████████████████████
████████████ [*Footnote removed*]

3) Where such User Features are stored in ZippyDB, UP2X, and/or Hive, including any User Feature storage where Meta commingled Pixel or SDK-related User Features with those derived from other data such that Meta can no longer trace the original source;

4) The rules and logic for when a User Feature that includes information derived in whole or in part from Pixel or SDK data becomes available for use in Meta's

23

Gibson, Dunn & Crutcher LLP

advertising and other systems, including the NewsFeed, Facebook Audience Network, Facebook Marketplace, Instagram, and WhatApp

5) Whether a User Feature can be created from Pixel or SDK events derived from a single advertise and if there any restrictions on such use. If there are any restrictions, identify specific source code files explaining them

6) How Pixel or SDK-inferred or derived Features are used in Meta's systems, including how they are used to determine information to show the user through advertisements, the NewsFeed, Facebook Marketplace, Instagram, WhatsApp, and friend suggestions

7) How and why Pixel or SDK-inferred or derived Features are joined or commingled with Features inferred or derived from non-Pixel or SDK data

8) Can a user "Feature" be formed based on data from a single advertiser's Pixel? When that happens, would the Feature be available for ad matching with an advertiser other than the original Pixel

9) Are ███████ created based on analysis of on-platform activity? If yes, are they joined with ████████ from the Pixel/SDK to create "features"? What are the rules for that process?

10) Where does Meta match user "Features" to ad "Features"? How is ███████████████████████ up2x category used. What are ████ and ████████████ How are these categories used?

k. ████████████████████████████████████ Are there any differences in terms of the mapping and aggregation operations or ████ is just a different way to implement the same operations as implemented by ████████

**RESPONSE TO EXAMINATION TOPIC NO. 7**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta objects that the 11 sub-topics and 22 sub-sub-topics within Topic 7 are unduly burdensome and disproportionate to the needs of the case. Meta further objects to the extent this Topic seeks testimony regarding broadly "all inputs," "used, accessed, or referenced," "data that is

24

Gibson, Dunn & Crutcher LLP

missing," "fields identified," "identification of specific categories, use cases, and tables,"

"transformed into ██████████ "the rules and logic," and related overbroad language requiring

detailed knowledge that is disproportionate and overly burdensome.  No corporate representative

could be reasonably expected to memorize such information.  *See Crystal Lakes*, 2018 WL

10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their

knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect

Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32

F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").  Meta objects to the Topic to the

extent that the requested information is equally available to, and has been produced to, plaintiffs.

Meta further objects to this Topic to the extent it is duplicative of other Topics, including Topic 9.

Meta further objects as follows:

Topic 7(b):  Meta objects to this Topic as overbroad and disproportionate to the needs of the

case in that it seeks "all inputs" and "data that would not be present in the Hive tables from which

Meta has produced sampled class-wide data in this case."  Meta objects to the Topic to the extent that

the requested information is equally available to, and has been produced to, plaintiffs.

Topic 7(c):  Meta objects to this Topic as overbroad and disproportionate to the needs of the

case in that it seeks testimony about how a system was "used, accessed or referenced," and "specific

type of information . . . involved."

Topic 7(d):  Meta objects to this Topic as impermissible discovery on discovery.

Topic 7(e):  Meta objects to this Topic as overbroad and disproportionate to the needs of the

case in that it seeks testimony about "how the ██████ in the ████████ work" that are

████████████████████████ .  Meta objects to the Topic to the extent that the requested

information is equally available to, and has been produced to, plaintiffs.

Topic 7(f):  Meta objects to this Topic as overbroad and disproportionate to the needs of the

case in that it seeks testimony about how "every event in the ████████ data" and "how it

combines and uses its analyses."  Meta objects to the Topic to the extent that the requested

information is equally available to, and has been produced to, plaintiffs.

Gibson, Dunn &
Crutcher LLP

Topic 7(g):  Meta objects to this Topic as overbroad and disproportionate to the needs of the case in that it seeks testimony about "fields identified in the ███████████████████ ███████████ "identification of specific categories, use cases, and tables," and ██████████ ████████████████████████████████████████ Meta objects to the Topic to the extent that the requested information is equally available to, and has been produced to, plaintiffs.

Topic 7(h):  Meta objects to this Topic as overbroad and disproportionate to the needs of the case in that it seeks testimony about "each . . . category or table," "the information stored in that category or table," "how the information . . . is used," and "how it flows into other systems at Meta." Meta objects to the Topic to the extent that the requested information is equally available to, and has been produced to, plaintiffs.

Topic 7(i)(1):  Meta objects to this Topic as overbroad and disproportionate to the needs of the case in that it seeks testimony about "how and where Meta stores and uses the ████████████████████ identified in the ██████████████████████████ Meta objects to the Topic to the extent that the requested information is equally available to, and has been produced to, plaintiffs.

Topic 7(i)(2):  Meta objects to this Topic as overbroad and disproportionate to the needs of the case in that it seeks testimony about "[h]ow, where, when, and why ████████████ derived from Pixel and/or SDK data are merged, joined, or commingled with ████████ derived from other data in Meta's possession."  Meta further objects that this Topic seeks information not relevant to the claims at issues, including "other data in Meta's possession, including but not limited to activity on Meta owned-and-operated web-properties."  Meta objects to the Topic to the extent that the requested information is equally available to, and has been produced to, plaintiffs.

Topic 7(i)(3):  Meta objects to this Topic as overbroad and disproportionate to the needs of the case in that it seeks testimony about "[w]here such ████████████ are stored in ZippyDB, UP2X, and/or Hive."  Meta further objects that this Topic seeks information not relevant to the claims at issues, including "where Meta commingled Pixel or SDK-related ████████ with those derived

Gibson, Dunn &
Crutcher LLP

1    from other data such that Meta can no longer trace the original source." Meta objects to the Topic to

2    the extent that the requested information is equally available to, and has been produced to, plaintiffs.

3    Topic 7(i)(5): Meta objects to this Topic as overbroad and disproportionate to the needs of

4    the case in that it seeks testimony about "[w]hether a ██████████ can be created from Pixel or SDK

5    events derived from a single advertiser," "any restrictions on its use," and the identification of

6    "specific source code files explaining them."

7    Topic 7(i)(6): Meta objects to this Topic as overbroad and disproportionate to the needs of

8    the case in that it seeks testimony about "the rules and logic for when a ██████████ that includes

9    information derived in whole or in part from Pixel or SDK data becomes available for use in Meta's

10    advertising" without any limitation in scope relevant to this litigation. Meta further objects to this

11    Topic to the extent it seeks information irrelevant to the claims at issue in this litigation, including

12    "other systems, including the NewsFeed, Facebook Audience Network, Facebook Marketplace,

13    Instagram, and WhatApp." For the purposes of responding to this Topic, Meta will construe

14    "WhatApp" to mean "WhatsApp." During the February 12, 2025 meet and confer, plaintiffs stated

15    that the other services or technologies identified herein are implicated by any ██████ derived in whole

16    or in part from Pixel or SDK data. Meta maintains its objection.

17    Topic 7(i)(7): Meta objects to this Topic as overbroad and disproportionate to the needs of

18    the case in that it seeks testimony about how ██████ . . . are used in Meta's systems." Meta further

19    objects to this Topic to the extent it seeks information irrelevant to the claims at issue in this

20    litigation, including "NewsFeed, Facebook Marketplace, Instagram, WhatsApp, and friend

21    suggestions." During the February 12, 2025 meet and confer, plaintiffs stated that the other systems

22    identified herein are implicated by any ██████ derived in whole or in part from Pixel or SDK data.

23    Meta maintains its objection.

24    Topic 7(i)(8): Meta objects to this Topic as overbroad, irrelevant, and disproportionate to the

25    needs of the case in that it seeks testimony about how ██████ . . . are joined or commingled with

26    ██████ and/or Features inferred or derived from non-Pixel or SDK data."

27    Topic 7(j)(3): Meta objects to this Topic as overbroad and disproportionate to the needs of

28    the case in that it seeks testimony about "[w]here such User Features are stored in ZippyDB, UP2X,

27

and/or Hive." Meta further objects that this Topic seeks information not relevant to the claims at issues, including "where Meta commingled Pixel or SDK-related User Features with those derived from other data such that Meta can no longer trace the original source." Meta objects to the Topic to the extent that the requested information is equally available to, and has been produced to, plaintiffs.

Topic 7(j)(4): Meta objects to this Topic as overbroad and disproportionate to the needs of the case in that it seeks testimony about "[t]he rules and logic for when a User Feature that includes information derived in whole or in part from Pixel or SDK data becomes available for use in Meta's advertising" without any limitation in scope relevant to this litigation. Meta further objects to this Topic to the extent it seeks information irrelevant to the claims at issue in this litigation, including "other systems, including the NewsFeed, Facebook Audience Network, Facebook Marketplace, Instagram, and WhatApp." For the purposes of responding to this Topic, Meta will construe "WhatApp" to mean "WhatsApp." During the February 12, 2025 meet and confer, plaintiffs stated that the other services or technologies identified herein are implicated by any features derived in whole or in part from Pixel or SDK data. Meta maintains its objection.

Topic 7(j)(5): During the February 12, 2025 meet and confer, Meta sought clarification of the term "advertise." Plaintiffs acknowledged the typo and confirmed that the term should be "advertiser." Plaintiffs stated that they were seeking information as to the extent to which a feature or ▮▮▮▮ that is used in advertising can be derived from a single advertiser's Pixel, SDK, or CAPI data. Meta objects to this Topic as overbroad and disproportionate to the needs of the case in that it seeks testimony about "[w]hether a User Feature can be created from Pixel or SDK events derived from a single advertise[r]" and to "identify specific source code files explaining them."

Topic 7(j)(6): Meta objects to this Topic as overbroad and disproportionate to the needs of the case in that it seeks testimony about how "Features . . . are used in Meta's systems." Meta further objects to this Topic to the extent it seeks information irrelevant to the claims at issue in this litigation, including "NewsFeed, Facebook Marketplace, Instagram, WhatsApp, and friend suggestions." During the February 12, 2025 meet and confer, plaintiffs stated that the other systems identified herein are implicated by any features derived in whole or in part from Pixel or SDK data. Meta maintains its objection.

Gibson, Dunn &
Crutcher LLP

Topic 7(j)(7):  Meta objects to this Topic as overbroad, irrelevant, and disproportionate to the needs of the case in that it seeks testimony about how "Features are joined or commingled with Features inferred or derived from non-Pixel or SDK data."

Topic 7(j)(9):  Meta objects to this Topic to the extent it seeks information irrelevant to the claims at issue in this litigation, including "analysis of on-platform activity."

Topic 7(k):  Meta objects to this Topic as vague and disproportionate to the needs of the case in that it seeks testimony about █████████████████████████████████████████ █████████ without limitation.  Further, Meta will construe ██████ is just a different…" as a question styled ██████ just a different…".

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide the following testimony:

Topic 7:  General explanation as to how Meta inferred and used ██████████ and features from data transmitted through the at-issue Business Tools for healthcare provider properties, including:

Topic 7(a):  General explanation as to how and why Meta █████████ event data in the ███████████████ table.

Topic 7(b):  General explanation of the █████████ process.

Topic 7(c):  General explanation of the role of █████████ if any, in the ████████████.

Topic 7(i):  General explanation as to how █████████████████████████████████████ █████, including:

Topic 7(i)(4):  General explanation as to how the █████████████ works.

Topic 7(i)(5):  Whether a █████████ can be created from Pixel or SDK events derived from a single advertiser and if there are any restrictions on its use.

Topic 7(i)(6):  To the extent that █████████ are used in advertising, the rules and logic for when a █████████ that includes information derived in whole or in part from Pixel or SDK data becomes available for use in Meta's advertising.

Topic 7(i)(7):  How Pixel or SDK-inferred or derived █████████ are used, if at all, to determine information to show the user through advertisements.

29

Gibson, Dunn &
Crutcher LLP

Topic 7(j):  General testimony explaining how ██████ are transformed into User Features, including:

Topic 7(j)(1):  General testimony explaining how the ████████████works.

Topic 7(j)(2):  General testimony explaining the ██████████████████ ███████████████████

Topic 7(j)(4):  The rules and logic for when a User Feature that includes information derived in whole or in part from Pixel or SDK data becomes available for use in Meta's advertising.

Topic 7(j)(5):  Whether a User Feature can be created from Pixel or SDK events derived from a single advertiser and if there are any restrictions on such use.

Topic 7(j)(6):  How Pixel or SDK-inferred or derived Features are used, if at all, to determine information to show the user through advertisements.

Topic 7(j)(8):  Can a user "Feature" be formed based on data from a single advertiser's Pixel? When that happens, would the Feature be available for ad matching with an advertiser other than the original Pixel.

Topic 7(j)(10):  Where does Meta match user "Features" to ad "Features"?  How is ██████████████████ up2x category used?  What are ███ and ███ categories?  How are these categories generally used?

Topic 7(k):  General testimony about ███████████████████████ ██████████████  Are there any differences in terms of the ███████████████████ ██████  just a different way to implement the same operations as implemented by ████████

Meta will not provide a witness to testify about the remaining aspects of this Topic.

**EXAMINATION TOPIC NO. 8**

**Specific Hive Tables Related to ███████ and Features** – For each of the following tables, identify (1) the purpose of the table; (2) whether it is used in advertising production, attribution, and/or measurement; (3) whether it is part of the ██████ Pipeline; (4) whether it contains ██████ or features derived from non-Pixel or SDK data; and (5) whether the data within it or data derived from it is eventually merged or joined with ██████████ or Features inferred or derived from non-Pixel or SDK data; (5) how the contents can be searched including the identification and description of any

30

Gibson, Dunn & Crutcher LLP

internal tools already created for this purpose; and (6) additional topics as identified below specific to

certain tables:

a. ████████████████████████, plus identify the source or sources from

which Meta derives or populates the ████ fields in this table; why this ██ table

is ████ from ████████ instead of ████████; and whether it

fails to include ████ derived from ████████ data

b. ████████ plus describe what is meant by statements that certain fields

were ████████ and, ████████████████ from the

table, where was the information ████████

████████████

████████

████

████████████, plus what ██ means

████████

████████, plus what ██ means

████

████

████████

████████████

████████

████████

████████

████

████

████████

████████████

████████

████████

31

Gibson, Dunn &
Crutcher LLP

1  ████████████████████

2  ██████████████████████████████

3  ████████████████████████████████████

4  ████████████

5  ████████████████

6  ████████████████

7  ██████████████████████████████████

8  ██████████████

9  ████████████████████

10    ee.  Any tables with ████████ or Feature data not identified by plaintiffs here.

11  **RESPONSE TO EXAMINATION TOPIC NO. 8**

12         Meta restates and incorporates its General Objections and Objections to Definitions set forth

13  above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "advertising

14  production, attribution, and/or measurement," "part of the ████ Pipeline," "eventually merged or

15  joined," "any tables with ████████ or Feature data not identified by Plaintiffs here," and related

16  overbroad language requiring detailed knowledge that is disproportionate and overly burdensome.  In

17  total, these demands are made for 30 named tables, as well as the overbroad "[a]ny tables with ████

18  ████ or Feature data not identified by plaintiffs here."  No corporate representative could be

19  reasonably expected to memorize such information.  *See Crystal Lakes*, 2018 WL 10467489, at *2

20  ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge");

21  *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6)

22  witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322

23  ("A Rule 30(b)(6) deposition is not a memory test.").  Meta objects to the Topic to the extent that the

24  requested information is equally available to, and has been produced to, plaintiffs.  Meta objects to

25  the non-sequential numbering of the Topics.  For the purposes of responding, Meta will construe the

26  first sub-section (5) as "(5)[1]", and Meta will construe the section sub-section (5) and "(5)[2]."

27  Meta further objects as follows:

28

Gibson, Dunn &
Crutcher LLP

Topic 8(1): Meta objects to this Topic as vague, overbroad, and unduly burdensome to the extent it seeks the "purpose" of each of the 30 identified tables.

Topic 8(2):  Meta objects to this Topic as vague, overbroad, and not relevant to the allegations in this litigation with respect to the terms "used in advertising production, attribution, and/or measurement."

Topic 8(3):  Meta objects to this Topic as vague and overbroad with respect to the terms "part of the ███ Pipeline."

Topic 8(4):  Meta objects to this Topic to the extent it seeks information irrelevant to the claims at issue in this litigation, including ███ or features derived from non-Pixel or SDK data."

Topic 8(5)[1]:  Meta objects to this Topic as vague, overbroad, and not relevant to the allegations in this litigation with respect to the phrase "data within it or data derived from it is eventually merged or joined with ███ or Features inferred or derived from non-Pixel or SDK data."

Topic 8(5)[2]:  Meta objects to this Topic as vague, overbroad, and not relevant to the allegations in this litigation with respect to the phrase "how the contents can be searched."

Topic 8(6):  Meta objects to this Topic as vague, overbroad, and not relevant to the allegations in this litigation with respect to the phrase "additional topics as identified below specific to certain tables."  Meta will construe this statement as referring to sub-topics (6)(a), (6)(b), (6)(f), and 6(h).

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

**EXAMINATION TOPIC NO. 9**

**Specific UP2X and ZippyDB Categories** – Identify and explain the specific UP2X and ZippyDB categories involved in the formation and use of ███ and Features; for each such category, what is stored within them and how they are used; and how the contents can be searched including the identification and description of any internal tools already created for this purpose.

**RESPONSE TO EXAMINATION TOPIC NO. 9**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "identify and

33

explain the specific . . . categories," "what is stored within them," "how they are used," "how the contents can be searched," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test."). Meta further objects to the terms "contents" and "categories" as vague, overbroad, and not tailored to the claims and defenses in this action. Meta objects to the Topic to the extent that the requested information is equally available to, and has been produced to, plaintiffs. Meta further objects to the Topic to the extent it seeks information not relevant to the allegations at issue in the litigation, including "how the contents can be searched," and "the identification and description of any internal tools already created for this purpose."

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

**EXAMINATION TOPIC NO. 10**

**Data Lineage Examples**—Describe the end-to-end flow through Meta's systems of the following examples of a session that a class member engaged in the following actions on hospital website where the Pixel was deployed in default settings: (1) going to the home page of their hospital; (2) searching for a doctor; (3) clicking a link to go to that doctor's page; (4) asking about treatment options for cancer by looking at a page such as www.hospital.org/cancer and (5) signing in to the hospital's patient portal. Plaintiffs will supplement this Topic by providing specific exemplars of data from Meta's production of sampled class-wide data.

**RESPONSE TO EXAMINATION TOPIC NO. 10**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta further objects to the terms "default settings," "end-to-end flow," "searching for a doctor," and "asking about treatment options for cancer by looking at a page" as vague, overbroad, and overly burdensome. Meta further objects that the Topic poses an incomplete hypothetical.

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
CASE NO. 3:22-CV-03580-WHO (VKD)

Meta further objects that this Topic is duplicative of other Topics, including Topics 2 and 16. Meta objects that the Topic improperly assumes a legal conclusion. Meta states that although a "supplement" is referenced, no "supplement" has been provided.

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

**EXAMINATION TOPIC NO. 11**

**Use of ▮▮▮▮ or Feature Data for Advertising, NewsFeed, Marketplace, Facebook Audience Network, Instagram, WhatsApp, or Other Purposes** – How Meta uses ▮▮▮▮▮▮ and Features for its various systems, including:

   a.  How, where, and through what process Meta utilizes the ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [*Footnote removed*]

   b.  How Meta uses ▮▮▮▮▮ outputs in these systems, or for any other purpose

**RESPONSE TO EXAMINATION TOPIC NO. 11**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta further objects to the extent this Topic seeks testimony regarding broadly "how, where, and through what process," "how Meta uses ▮▮▮▮▮ outputs in these systems, or for any other purpose," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test."). Meta objects to this Topic to the extent that the information is available to plaintiffs in the information Meta has produced and/or made available for inspection. Meta further objects to this Topic to the extent it seeks information irrelevant to the claims at issue in this litigation, including as referenced in the bolded language, "NewsFeed, Marketplace, Facebook Audience Network, Instagram, WhatsApp, or Other Purposes." During the February 12, 2025 meet

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
CASE NO. 3:22-CV-03580-WHO (VKD)

and confer, plaintiffs stated that the other services or technologies identified herein are implicated by any █████ derived in whole or in part from Pixel or SDK data.  Meta maintains its objection.  Meta further objects to this Topic to the extent it is duplicative of Topic 7.

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

## EXAMINATION TOPIC NO. 12

**Lookalike Audiences** – Information about Lookalike Audiences, including:

a.  How Lookalike Audiences are created, i.e. how Meta takes the seed set of audience members provided by advertisers and uses information about those users to identify other people to be included in a Lookalike Audience

b.  Whether Lookalike Audiences are derived in part from █████ or Features, and, if so, from where Meta extracts those specific █████ and Features – for example, specific ZippyDB, UP2X, and/or Hive categories or tables

c.  Identification of the source code files that explain these processes

d.  How and why Lookalike Audiences were deemed by Meta as an alternative to health-related targeted advertising

## RESPONSE TO EXAMINATION TOPIC NO. 12

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "[i]nformation about," "derived in part," "deemed by Meta as an alternative," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome.  No corporate representative could be reasonably expected to memorize such information.  *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").  Meta further objects as follows:

Topic 12:  Meta objects to this Topic to the extent it is unlimited in scope.  Meta will construe the term "Information about" to refer to general knowledge.

Topic 12(a):  Meta objects to the terms "[h]ow lookalike audiences are created," "takes the seed set of audience members," and "uses information about those users" as vague and overbroad.

Topic 12(b): Meta objects to the terms "derived in part" and "features" as vague and overbroad.

Topic 12(c):  Meta objects that the information requested is equally available to plaintiffs.

Topic 12(d):  Meta objects to the extent this assumes a fact or legal conclusion that is an improper subject for the testimony of a corporate representative.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide the following testimony:

Topic 12:  General information about Lookalike Audiences related to healthcare advertisers.

Topic 12(a):  General overview of the creation of Lookalike Audiences.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 13

**Retargeting or Remarketing** – How remarketing or retargeting worked for healthcare providers with the Pixel, SDK, or other Meta Business Tools on their property

## RESPONSE TO EXAMINATION TOPIC NO. 13

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta objects to the terms "remarketing" and "retargeting" as vague and overbroad.  Meta will construe these terms in accordance with the parties' discussions of these terms in Requests for Production.  As such, Meta will construe these terms to refer to advertising campaigns that aimed to either include certain audience members or exclude certain audience members.  Meta further objects to this Topic to the extent it seeks information concerning Business Tools that are not relevant to the litigation.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide testimony concerning how remarketing or retargeting audiences generally worked for

Gibson, Dunn &
Crutcher LLP

1    healthcare providers who installed the Business Tools at issue in this litigation on their web

2    properties.

3    **EXAMINATION TOPIC NO. 14**

4         **Core Setup** – Information about Core Setup, including:

5              a.  Who was involved in the creation and implementation of Core Setup, from the first

6                  person who came up with the idea to present

7              b.  How Core Setup changed Meta's collection of at-issue data

8              c.  Whether and how Meta tested Core Setup, including:

9                       1)  Before or after testing of ████████████ tables in Hive;

10                      2)  Before or after testing of the ████████

11                      3)  Before or after examples of ████████ outputs

12                      4)  Before or after testing of ████ or Feature data in ZippyDB, UP2X, or Hive;

13                      5)  Before or after revenue testing for healthcare provider properties;

14                      6)  Before or after testing of Lookalike Audiences;

15                      7)  Before or after testing of Custom Audiences.

16             d.  How Meta determined the healthcare provider properties to place in Core Setup

17             e.  Identification of all categories (at the most precise level) of healthcare provider

18                 properties placed in Core Setup

19   **RESPONSE TO EXAMINATION TOPIC NO. 14**

20        Meta restates and incorporates its General Objections and Objections to Definitions set forth

21   above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "information

22   about," "involved," "came up with the idea," "all categories (at the most precise level)," and related

23   overbroad language requiring detailed knowledge that is disproportionate and overly burdensome.

24   No corporate representative could be reasonably expected to memorize such information.  *See*

25   *Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be

26   clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8

27   ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of

28   everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a

Gibson, Dunn &
Crutcher LLP

memory test."). Meta objects to the extent this Topic is duplicative of other Topics, including Topics 1 and 4. Meta further objects as follows:

Topic 14: Meta objects to this Topic to the extent it is unlimited in scope. Meta will construe the term "Information about" to refer to general knowledge.

Topic 14(a): Meta objects to this Topic as vague, overbroad, and disproportionate to the needs of the case in that it seeks information about every individual "involved in the creation and implementation of Core Setup," as well as the "first person who came up with the idea."

Topic 14(c): Meta objects to this Topic as vague, overbroad, and disproportionate to the needs of the case, including because Core Setup concerns data that is not relevant to any claims or defenses in this action. Meta further objects to the terms "tested," "testing of ███████████ tables in Hive," "testing of the ███████ "examples of ████████ outputs," "testing of ████ or Feature data in ZippyDB, UP2X, or Hive," "revenue testing for healthcare provider properties," "testing of Lookalike Audiences," and "testing of Custom Audiences" as vague, overbroad, and disproportionate to the needs of the case.

Topic 14(e): Meta objects to this Topic as vague, overbroad, and disproportionate to the needs of the case in that it seeks information about "all categories (at the most precise level)."

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide the following testimony:

Topic 14: General information about Core Setup, including:

Topic 14(a): Team with primary responsibility for the creation and implementation of Core Setup.

Topic 14(b): How Core Setup may have impacted data received via the at-issue Business Tools.

Topic 14(c): Whether and generally how Meta tested Core Setup.

Topic 14(d): How Meta determined the healthcare provider properties to place in Core Setup.

Topic 14(e): Identification of general ████████████████ categories for which Meta may turn on the Core Setup data restrictions.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

39

Gibson, Dunn & Crutcher LLP

## EXAMINATION TOPIC NO. 15

**Crawlers** – How Meta used or uses crawlers in its systems relating to Pixel, SDK, and other business tools, including:

    a.  Identification of crawlers that Meta used to ███████████████████████ ████████████████

    b.  What specific content each ████████████████████████████████ ██████████████████████████████████████████████ ████████████████

    c.  The rules for how each ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████

    d.  Where each crawler stored the data that it crawled and extracted

    e.  How the crawled data was used or analyzed by Meta

    f.  Whether the crawled data can be searched

Specific crawlers and/or source code files for which plaintiffs seek testimony include:

[*Footnotes omitted*]

███████████████████

████████████████████

██████████████████████

████████████████████████

█████████████████████

███████████████

███████████

█████████████████

█████████████████

███████████████████

████████████████

Gibson, Dunn &
Crutcher LLP

1 ███████████████████████

2 ███████████████████████████████████; and

3     14. ███████████ our sources generally.

4 **RESPONSE TO EXAMINATION TOPIC NO. 15**

5     Meta restates and incorporates its General Objections and Objections to Definitions set forth

6 above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "other

7 business tools," "websites, webpages, or apps relating to advertisers," "what specific content each

8 ████████████████████████████████████████████████████████████████

9 and related overbroad language requiring detailed knowledge that is disproportionate and overly

10 burdensome.  No corporate representative could be reasonably expected to memorize such

11 information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not

12 expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL

13 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate

14 details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is

15 not a memory test.").  Meta further objects as follows:

16     Topic 15 (all subparts):  Meta objects to this Topic as vague, overbroad, disproportionate to

17 the needs of the case, and seeking information not relevant to the claims and defenses in this action.

18 Meta will construe this Topic only as to crawlers relevant to data at issue in this litigation, if any.

19     Topic 15(a):  Meta objects that this Topic is already addressed by the crawlers identified

20 herein.

21     Topic 15(b):  Meta objects to this Topic as overbroad and disproportionate in that it seeks

22 information about "specific content each crawler extracted" and "from where."

23     Topic 15(c):  Meta objects to this Topic as overbroad, vague, and disproportionate in that it

24 seeks information about "rules for how each crawler operated," ████████████████████████

25 and ███████████████████████

26     Topic 15(e):  Meta objects to this Topic as overbroad and disproportionate in that it seeks

27 information about how data "was used or analyzed."

28

Gibson, Dunn &
Crutcher LLP

Meta further objects to the list of "crawlers and/or source code files for which plaintiffs seek testimony" as follows:

(1) ███████████████████

    (a) Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

(2) ███████████████████

    (a) Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

(3) █████████████

    (a) Meta objects that this is not relevant to the claims and defenses in this action.

(4) ██████████

    (a) Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

(5) ██████

    (a) Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

(6) the ██████████

    (a) Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

(7) ██████████

    (a) Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

(8) the ████████████

    (a) Meta objects that this is not relevant to the claims and defenses in this action.

(9) the ██████

    (a) Meta objects that this is not relevant to the claims and defenses in this action.

(10) ████████████

(a) Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

(11) ████████████ from the ████████████ table

(a) Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

(12) ████████████ tables our sources generally

(13) For the purposes of responding to (14), Meta will construe "our" as "or." Meta objects to this request as overbroad, vague, and disproportionate to the extent it seeks information beyond the file cited in the footnote. Meta objects that this is not a crawler and therefore the requested topics of testimony cannot be addressed.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide the following testimony:

Topic 15: How Meta generally used or uses the identified crawlers in its systems in connection with the allegations in this action, including:

Topic 15(b): A general overview of the content identified by the identified crawlers.

Topic 15(c): Meta is willing to meet and confer on this Topic.

Topic 15(d): Where the identified crawlers stored the data that they crawled and extracted.

Topic 15(e): How the crawled data from the identified crawlers was generally used by Meta.

Topic 15(f): Whether any crawled data from the identified crawlers could be searched using tools available to Meta in the normal course of business.

For the purposes of responding to this Topic, a designated witness or witnesses will address the following crawlers:

(1) ████████████████

(2) ████████████████

Meta will not provide a witness to testify about the remaining aspects of this Topic.

**EXAMINATION TOPIC NO. 16**

**Data Lineage Tools and Investigations** – Testimony about data lineage, including:

Gibson, Dunn & Crutcher LLP

a.  Tools available for Meta engineers to investigate data lineage in Hive, UP2X, ZippyDB, and across those and other systems

b.  Prior data lineage investigations at Meta and the extent to which they were completed or abandoned prior to completion

c.  How Scuba can be used to investigate data lineage or troubleshoot

d.  The ███████████████ effort, it purpose, its completion, and its use

## RESPONSE TO EXAMINATION TOPIC NO. 16

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta further objects as follows:

Topic 16(a):  Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks information about "other systems" and "[t]ools available." Meta will construe "tools available" to refer to tools utilized in the normal course of business.

Topic 16(b):  Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks information about "prior data lineage investigations."  Meta further objects to this Topic as seeking information unrelated to the at issue data or this litigation.  Meta is willing to meet and confer to discuss any specific data lineage investigations that are relevant to this litigation.

Topic 16(c):  Meta objects to this Topic as vague in that it seeks information about the use of Scuba to "troubleshoot."

Topic 16(d): Meta objects that this Topic is disproportionate to the needs of the case.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide the following testimony:

Section 16:  General testimony about data lineage, including:

Section 16(a):  Tools generally available for Meta engineers in the normal course of business to investigate data lineage in Hive, UP2X, and ZippyDB.

Topic 16(c):  The tools used to investigate data lineage.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 17

**Facebook User Identification** – How Meta identifies users via:

44

Gibson, Dunn &
Crutcher LLP

a.   Third-party cookies, including the c_user, fr, datr, and other cookies

b.   First-party cookies, including the fbp cookie

c.   Data other than cookies such as IP address, User-Agent, and/or device IDs

d.   By mapping Facebook User IDs to separable IDs

## RESPONSE TO EXAMINATION TOPIC NO. 17

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "other cookies," "data other than cookies," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome.  No corporate representative could be reasonably expected to memorize such information.  *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide the following testimony:

Topic 17(a):  Generally how Meta identifies accounts via the c_user, fr, and datr cookies.

Topic 17(b):  Generally how Meta identifies accounts via the fbp cookie.

Topic 17(c):  Generally how Meta identifies accounts via IP address, User-Agent, and/or device IDs.

Topic 17(d):  Generally how Meta identifies accounts by mapping Facebook User IDs to separable IDs.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 18

**Settings or Controls that Meta Contends are Relevant** – Any user, software, device, advertiser, jurisdictional or other settings or controls from any time period that Meta contends are relevant to (1) class member consent; (2) how or what at-issue data Meta collects; or (3) how Meta used or uses at-issue data, and, for each such setting or purported control

45

1      a.  How and why Meta contends it is relevant

2      b.  How it is enabled or disabled

3      c.  The impact it has

4      d.  What period of time it was available or imposed

5      e.  The specific data sources where Meta stores information that directly identifies such

6         settings or controls for class members and their communications or information

7         through which such settings or controls can be inferred.

8      f.  Whether and for what time period Meta preserved such information

9  **RESPONSE TO EXAMINATION TOPIC NO. 18**

10      Meta restates and incorporates its General Objections and Objections to Definitions set forth

11  above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "any . . .

12  settings or controls," "contends are relevant," "class member consent," "how Meta used or uses at-

13  issue data," and related overbroad language requiring detailed knowledge that is disproportionate and

14  overly burdensome.  No corporate representative could be reasonably expected to memorize such

15  information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not

16  expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL

17  11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate

18  details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is

19  not a memory test.").  Meta further objects as follows:

20      Topic 18:  Meta objects to this Topic as overbroad and disproportionate to the needs of the

21  case in that it seeks testimony about "[a]ny user, software, device, advertiser, jurisdictional or other . .

22  . settings or controls from any time period," and limits the scope to at-issue data for only certain sub-

23  sections.  Meta objects to the Topic to the extent it is premature because no class has been certified.

24      Topic 18(3)(a):  Meta objects to the extent this Topic calls for a legal conclusion.

25      Topic 18(3)(b):  Meta objects to the terms "enabled or disabled" as vague and overbroad.

26      Topic 18(3)(c):  Meta objects to the terms "the impact it has" as vague and overbroad.

27      Topic 18(3)(d):  Meta objects to the terms "available or imposed" as vague and overbroad.

28

Gibson, Dunn &
Crutcher LLP

1    Topic 18(3)(e):  Meta objects to this Topic as overbroad and disproportionate to the needs of

2    the case in that it seeks testimony about how "specific data where Meta stores information," or

3    "information through which such settings or controls can be inferred."

4    Topic 18(3)(f):  Meta objects to this Topic as impermissible discovery on discovery.

5    Subject to and without waiving those objections, Meta will designate a witness or witnesses

6    to provide general testimony concerning the controls and/or settings available to Facebook users

7    regarding their data in connection with the at-issue Business Tools during the Relevant Time Period.

8    Meta will not provide a witness to testify about the remaining aspects of this Topic.

9    **EXAMINATION TOPIC NO. 19**

10    **Download Your Information, Off-Facebook Activity or Other Tools Where Facebook**

11    **Users Can See Information about Themselves** – Explanations of tools where Meta shows users

12    some information that Meta has collected about them, including identification of specific information

13    that Meta exposes about offsite activity through those tools and user information that Meta infers or

14    derives in whole or in part from it; what Meta does not expose with each identified tool; and why.

15    **RESPONSE TO EXAMINATION TOPIC NO. 19**

16    Meta restates and incorporates its General Objections and Objections to Definitions set forth

17    above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "user

18    information that Mata infers or derives in whole or in part," "other tools," and related overbroad

19    language requiring detailed knowledge that is disproportionate, overly burdensome, and not relevant

20    to the claims and defenses in this action.  No corporate representative could be reasonably expected

21    to memorize such information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6)

22    deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon,

23    Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know

24    the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6)

25    deposition is not a memory test.").  Meta objects to the request for "what Meta does not expose with

26    each identified tool and why" as vague, overbroad, and unduly burdensome.  During the February 12,

27    2025 meet and confer, Meta asked for an explanation of the term "expose."  Plaintiffs explained that

28    this referred to "things that a Facebook user can view or download through DYI, OFA, or any other

47

Gibson, Dunn &
Crutcher LLP

tool." Meta further objects that the information is equally available to, and has been produced to, plaintiffs.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide testimony concerning Download Your Information and Off Facebook Activity, including generally identifying the information available in these tools.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 20

**Preservation** – Identification of data sources from which Meta preserved data

    a.   Any store of data created for the purpose of preserving data that may be at issue in this litigation, when it was created and what it contains

    b.   Hive tables from which Meta preserved data, including custom pipelines

    c.   UP2X categories from which Meta preserved data, including custom pipelines

    d.   ZippyDB categories from which Meta preserved data, including custom pipelines

    e.   All properties for which Meta preserved data and what was preserved

    f.   Whether Mete preserved any ███████ or feature data and, if so, where and when

    g.   Whether Meta preserved any ███████ or feature data and, if so, where and when

    h.   All revenue tables and data that Meta preserved

## RESPONSE TO EXAMINATION TOPIC NO. 20

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks information about "any store of data," "custom pipelines," "all properties," and "all revenue tables." Meta further objects to this Topic to the extent it seeks information not relevant to the claims at issue in this litigation. For the purpose of responding to Topic 20(f), Meta will construe the term "Mete" as "Meta."

Meta objects to this Topic to the extent it seeks information Meta has already provided. Meta further objects to this Topic as impermissible discovery on discovery. Meta objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney

work product doctrine, or any other applicable privilege, doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B).

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

## EXAMINATION TOPIC NO. 21

**Lengthy Retention Periods** — Identification of the data sources at Meta with the longest retention periods that contain records of a User ID, Separable ID, or any other unique identifier for a user or their device plus

      a.  Offsite activity collected by Meta about Facebook users when they are not browsing the web with the c_user cookie sent to Facebook on non-Facebook websites and that is detailed enough to include the full URL of the communication that was collected by Meta

      b.  Offsite activity collected by Meta about Facebook users while browsing the web where the c_user cookie is not sent to Facebook that is detailed enough to include the full URL of the communication that was collected by Meta

      c.  App activity

      d.  Event-level ▮▮▮▮▮▮ outputs or data inferred or derived from ▮▮▮▮▮▮ outputs, including ▮▮▮▮▮, Features, or anything with a similar function ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ outputs, including ▮▮▮ ▮▮▮ Features, or anything with a similar function

For each identified source, how long data is retained in that source; and what is retained.

## RESPONSE TO EXAMINATION TOPIC NO. 21

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta objects to this Topic as vague, overbroad, and disproportionate to the needs of the case, including "records of a User ID, Separable ID, or any other unique identifier for a user or their device," "when they are not browsing the web where the c_user cookie is not sent," "detailed enough," "while browsing the web where the c_user cookie is not sent," "App activity," and

49

Gibson, Dunn & Crutcher LLP

"anything with a similar function."  Meta further objects to this Topic to the extent it seeks

information not relevant to the claims at issue in this litigation.

Meta objects to this Topic to the extent it seeks information Meta has already provided.  Meta

further objects to this Topic as impermissible discovery on discovery.

Meta further objects as follows:

Topic 21(a):  Meta objects to this Topic as vague, confusing, overbroad, and disproportionate

to the needs of the case, including "activity . . . when they are not browsing the web where the c_user

cookie is not sent," and "detailed enough."

Topic 21(b):  Meta objects to this Topic as vague, confusing, overbroad, and disproportionate

to the needs of the case, including "activity . . . "while browsing the web where the c_user cookie is

not sent" and "detailed enough."

Topic 21(c):  Meta objects to the term "App activity" as vague.

Topic 21(d):  Meta objects to the terms "data inferred or derived" and "or anything with a

similar function" as vague, overbroad, and disproportionate.

Topic 21(e): Meta objects to the terms "derived in whole or in part" and "or anything with a

similar function." as vague, overbroad, and disproportionate.

During the February 12, 2025 meet and confer, Meta stated that sub-sections (a) and (b) were

vague and confusing.  Plaintiffs agreed, and explained that they would follow up in writing with

revised language relating to signed-in and signed-out activity.  Meta awaits plaintiffs' revised

language.

Subject to and without waiving those objections, Meta is willing to meet and confer about this

Topic.

## EXAMINATION TOPIC NO. 22

**Features Offered with the Pixel, SDK, or CAPI**. Features offered with the Pixel, SDK, or

CAPI (including the ███████ Advanced Matching, and Automatic Advanced Matching),

including whether Meta permitted advertisers in sensitive verticals to use those features, and how the

features changed from 2015 to the present, generally and specifically for healthcare provider web-

properties.

50

**RESPONSE TO EXAMINATION TOPIC NO. 22**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta further objects to the extent this Topic seeks testimony regarding broadly "use those features," "how the features changed," "generally and specifically," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. Meta objects to the term "sensitive verticals" and will construe this as health-related classifications. Meta objects to a time period that pre-dates the existence of certain at issue Business Tools. Meta further objects that the information is equally available to plaintiffs.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide testimony concerning features offered with the Pixel, SDK, or CAPI (including the ███ ███ Advanced Matching, and Automatic Advanced Matching), including whether Meta permitted advertisers with health-related classifications to use those features, and how the features generally changed from 2015 to the present, as applicable, for healthcare provider web-properties.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

**EXAMINATION TOPIC NO. 23**

**The SubscribedButtonClick Event**. The SubscribedButtonClick event, including when and why Meta decided to collect SubscribedButtonClick event data and the ways that Meta uses SubscribedButtonClick data.

**RESPONSE TO EXAMINATION TOPIC NO. 23**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta objects to the terms "ways that Meta uses SubscribedButtonClick data" as vague, overbroad, and disproportionate to the needs of the case.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide testimony concerning the SubscribedButtonClick event, including when and why Meta decided to create SubscribedButtonClick as a standard event and the general ways that Meta uses SubscribedButtonClick data in connection with the issues in this litigation.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

Gibson, Dunn &
Crutcher LLP

1    **EXAMINATION TOPIC NO. 24**

2    **Meta's Efforts, Policies, Procedures, and Programs to Stop Receipt of Sensitive**

3    **Healthcare Data**. Meta's efforts, policies, procedures, and programs to stop receipt of sensitive

4    healthcare data, including how they changed from 2015 to the present

5    **RESPONSE TO EXAMINATION TOPIC NO. 24**

6        Meta restates and incorporates its General Objections and Objections to Definitions set forth

7    above.  Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks

8    information about "efforts" and "programs."  Meta further objects to this Topic to the extent it is

9    duplicative of other Topics, including Topics 1 and 30.  Meta will construe "policies" and

10   "procedures" to refer to formal, written documents.

11       Subject to and without waiving those objections, Meta will designate a witness or witnesses to

12   provide testimony concerning generally Meta's efforts, policies, procedures, and programs to stop

13   receipt of sensitive healthcare data via the Business Tools at issue in this litigation, including how

14   they changed from 2015 to the present.

15       Meta will not provide a witness to testify about the remaining aspects of this Topic.

16   **EXAMINATION TOPIC NO. 25**

17       **Meta's Revenue Analyses**. Meta's analysis of the revenue at risk or that it actually lost from

18   proposals, actual changes, or elimination of Pixel, SDK, or CAPI features, modifying the way that

19   Pixel, SDK, or CAPI function, or stopping healthcare provider web-properties from using the Pixel,

20   SDK, or CAPI, including but not limited to analyses of proposals (whether implemented or not), the

21   ██████████████ at PIXEL_HEALTH000291310, PIXEL_HEALTH000294698,

22   PIXEL_HEALTH000109756, PIXEL_HEALTH000000719, and PIXEL_HEALTH000686324; and

23   any ██████████████ to the Filter, Core Setup, or other proposed changes relating to health

24   information.

25   **RESPONSE TO EXAMINATION TOPIC NO. 25**

26       Meta restates and incorporates its General Objections and Objections to Definitions set forth

27   above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "analysis of

28   revenue at risk," "or that it actually lost," "modifying the way that Pixel, SDK, or CAPI function,"

Gibson, Dunn &
Crutcher LLP

and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test."). Meta objects to the request for "other proposed changes relating to health information" as vague, overbroad, and unduly burdensome. Meta further objects that the information is equally available to, and has been produced to, plaintiffs.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide testimony concerning the identified documents in this Topic.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

## EXAMINATION TOPIC NO. 26

**Preservation Efforts** – All steps You took to preserve Documents, Event-Level Data, ███████ Data, Crawled Data, Content Categorizations, ██████, User Features, user profile information, and other data in connection with any pending litigation or investigation relating to the Meta Pixel that required you to preserve documents or data. This topic includes (a) whether and when You put litigation hold(s) in place or took other steps to preserve evidence; (b) the contents and recipients of notices of any litigation hold(s) or other preservation efforts; (c) the specific actions Meta employees took to effectuate the litigation hold(s); (d) the type of litigation hold software applied, if any; (e) the scope of the litigation hold or other preservation effort, including the custodians; document types; data sources, data tables, data fields, or other Data Organization subject to the hold or other preservation effort; and (f) any new data sources, data tables, data fields, or other Data Organization created for the purpose of preserving data.

## RESPONSE TO EXAMINATION TOPIC NO. 26

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks information about "all steps," "other data in connection with any pending litigation or investigation,"

53

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
CASE NO. 3:22-CV-03580-WHO (VKD)

"user profile information," and "other preservation efforts."  Meta further objects to this Topic to the extent it seeks information not relevant to the claims at issue in this litigation.

Meta objects to this Topic to the extent it seeks information Meta has already provided.  Meta further objects to this Topic as impermissible discovery on discovery.  Meta objects to this Topic to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B).  Meta further objects to this Topic to the extent it is duplicative of Topic 20.

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

**EXAMINATION TOPIC NO. 27**

**Purported Class Member Consent to Meta** – Any purported consent or agreement You allege any plaintiff or class member gave to Meta to permit Meta's collection, processing, or use of Pixel-Generated Health Information or the association of Pixel-Generated Health Information with Facebook accounts or other user profiles.

**RESPONSE TO EXAMINATION TOPIC NO. 27**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks information about "[a]ny purported consent or agreement," "association of Pixel-Generated Health Information," and "other user profiles."  Meta objects to the Topic to the extent it is premature because no class has been certified.  Meta further objects to this Topic to the extent it calls for a legal conclusion or seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B).

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

Gibson, Dunn &
Crutcher LLP

1    **EXAMINATION TOPIC NO. 28**

2        **Purported Class Member Consent to Healthcare Providers** – Any purported consent or

3    agreement You allege any plaintiff or class member gave to any Healthcare Provider to permit the

4    sharing of Pixel-Generated Health Information with Meta or allow Meta to collect, process, or use

5    Pixel-Generated Health Information or associate Pixel-Generated Health Information with Facebook

6    accounts or other user profiles.

7    **RESPONSE TO EXAMINATION TOPIC NO. 28**

8        Meta restates and incorporates its General Objections and Objections to Definitions set forth

9    above.  Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks

10   information about "[a]ny purported consent or agreement," "associate Pixel-Generated Health

11   Information with Facebook accounts," and "other user profiles."  Meta objects to the Topic to the

12   extent it is premature because no class has been certified.  Meta objects to this Topic to the extent it

13   seeks information not within Meta's possession, custody, or control.  Meta further objects to this

14   Topic to the extent it calls for a legal conclusion or seeks information protected from disclosure by

15   the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege,

16   doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B).

17       Subject to and without waiving those objections, Meta is willing to meet and confer about this

18   Topic.

19   **EXAMINATION TOPIC NO. 29**

20       **Purported Consent to Uses** – Any purported consent or agreement You allege any plaintiff,

21   class member, or Healthcare Provider gave to have their communications with their Healthcare

22   Providers to be processed through the ███████ ████████ analyzed, and used to generate ████ and

23   features, including ███████████████████ and other processors, for use in ZippyDB, UP2X, user

24   profiles, ad targeting, ads ranking, ads optimization, ads measurement, the Facebook Newsfeed,

25   Facebook Marketplace, the Facebook Audience Network, Instagram or any other purpose for which

26   Meta uses such data.

27

28

Gibson, Dunn &
Crutcher LLP

**RESPONSE TO EXAMINATION TOPIC NO. 29**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks information about "any purported consent or agreement," "any other purpose," and "other processors."  Meta objects to this Topic to the extent it seeks information not within Meta's possession, custody, or control.  Meta further objects to this Topic to the extent it calls for a legal conclusion or seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B).

Meta objects to this Topic to the extent it concerns services or technologies that are not relevant to the litigation, including "the Facebook Newsfeed, Facebook Marketplace, the Facebook Audience Network, Instagram or any other purpose."  Meta states that during the February 12, 2025 meet and confer, plaintiffs stated that the relevance of these systems was contingent upon any ███ or features used by these systems that relate to data transmitted via the at-issue Business Tools.  Meta continues to object to the overly burdensome and disproportionate nature of this Topic.

Meta objects to this Topic as vague and overbroad with respect to the term "communications with their Healthcare Providers."  Meta further states that during the February 12, 2025 meet and confer, plaintiffs explained that "communications with their Healthcare Providers" referred to any event data transmitted via the at-issue Business Tools.  Meta is considering this proposal.

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

**EXAMINATION TOPIC NO. 30**

Facebook's policies, procedures, and written guidance for Facebook employees (including sales employees) relating to communicating with Healthcare Providers about their use of the Pixel, SDK, and/or CAPI.

**RESPONSE TO EXAMINATION TOPIC NO. 30**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "policies,

56

Gibson, Dunn &
Crutcher LLP

procedures, and written guidance" and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test."). Meta further objects that the information is equally available to, and has been produced to, plaintiffs. Meta objects to this Topic to the extent it is duplicative of other Topics, including Topic 1 and 24.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide general testimony concerning Meta's policies, procedures, and written guidance for Meta employees (including sales employees) relating to communicating with Healthcare Providers about their use of the Pixel, SDK, and/or CAPI.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

**EXAMINATION TOPIC NO. 31**

How Facebook described and trained Healthcare Providers about the Pixel, SDK, and/or CAPI.

**RESPONSE TO EXAMINATION TOPIC NO. 31**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta further objects that the information is equally available to, and has been produced to, plaintiffs.

Meta objects to this Topic as vague and overbroad with respect to the term "described and trained." Meta further states that during the February 12, 2025 meet and confer, plaintiffs stated that the word "to" was missing and that it should reach "described to and trained." Plaintiffs suggested that it could also mean "how Facebook trained."

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide general testimony concerning how Meta employees described Pixel, SDK, and/or CAPI to healthcare providers, and any training materials provided to healthcare providers.

57

1    Meta will not provide a witness to testify about the remaining aspects of this Topic.

2    **EXAMINATION TOPIC NO. 32**

3    Facebook's decisions and analyses regarding whether Healthcare Providers' use of the Pixel,

4    SKD, and/or CAPI violated users' privacy.

5    **RESPONSE TO EXAMINATION TOPIC NO. 32**

6    Meta restates and incorporates its General Objections and Objections to Definitions set forth

7    above.  Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks

8    information about "decision and analyses" and "users' privacy."  Meta further objects to this Topic to

9    the extent it calls for a legal conclusion or seeks information protected from disclosure by the

10   attorney-client privilege, the attorney work product doctrine, or any other applicable privilege,

11   doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B).

12   For the purpose of responding to this Topic, Meta will construe "SKD" as "SDK."

13   Subject to and without waiving those objections, Meta is willing to meet and confer about this

14   Topic.

15   **EXAMINATION TOPIC NO. 33**

16   **Contract** – All actions that Meta contends that it took during the Class Period to:

17       a.   "Require" its "Partners to have lawful rights" or the "right" to "share your data before

18       providing any data to [Meta];"

19       b.   "Employ dedicated teams around the world, work with external service providers,

20       partners and other relevant entities and develop advance technical systems to detect

21       potential misuse, harmful conduct towards others, and situations were we may be able

22       to help support or protect our community, including to respond to user reports of

23       potentially violating content."

24       c.   Any discussions or agreements with Healthcare Providers regarding the use of the

25       Pixel on the websites of Healthcare Providers, including but not limited to any

26       marketing uses.

27

28

Gibson, Dunn &
Crutcher LLP

58

**RESPONSE TO EXAMINATION TOPIC NO. 33**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta further objects to the extent this Topic seeks testimony regarding broadly "[a]ll actions," "[a]ny discussions or agreements," "marketing uses," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected to memorize such information. *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test."). Meta objects that the information is equally available to, and has been produced to, plaintiffs. Meta further objects to this Topic to the extent it calls for a legal conclusion or seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, doctrine, or immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B). Meta further objects as follows:

Topic 33(c): Meta objects to the term "[a]ny discussions or agreement" as vague, overbroad, and unduly burdensome.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide general testimony concerning the cited sections of the Terms of Service and Privacy Policy.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

**EXAMINATION TOPIC NO. 34**

**Unjust Enrichment** – Revenue from Healthcare Providers associated with the Pixel, SDK, and/or CAPI.

**RESPONSE TO EXAMINATION TOPIC NO. 34**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta further objects to the extent this Topic seeks testimony regarding broadly "[r]evenue…associated with," and related overbroad language requiring detailed knowledge that is disproportionate and overly burdensome. No corporate representative could be reasonably expected

59

to memorize such information.  *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule 30(b)(6)

deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat Canyon,*

*Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know

the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6)

deposition is not a memory test.").  Meta objects that the information is equally available to, and has

been produced to, plaintiffs.

   During the February 12, 2025 meet and confer, plaintiffs stated that Meta has produced

documents that plaintiffs claim track revenue for Pixel, SDK, and CAPI, and that this is what

"associated with" means.  Plaintiffs then offered a more expansive definition of "associated with" by

general reference to ████████████████, targeting, lookalike audiences, potential cost

reductions, apportionment, and various unspecific letters concerning revenue.  Plaintiffs

acknowledged that these sub-points are not specifically identified in this Topic.  This expansive

definition is overbroad, overly burdensome, and disproportionate to the needs of the case.

   Subject to and without waiving those objections, Meta is willing to meet and confer about this

Topic.

## EXAMINATION TOPIC NO. 35

   **Unjust Enrichment** – Revenue from non-Healthcare Providers derived from ████████

██████████████████████████████ categories for advertisements to ████████ or features.

## RESPONSE TO EXAMINATION TOPIC NO. 35

   Meta restates and incorporates its General Objections and Objections to Definitions set forth

above.  Meta further objects to the extent this Topic seeks testimony regarding broadly

"revenue…derived from ████████ and related overbroad language requiring detailed knowledge

that is disproportionate and overly burdensome.  No corporate representative could be reasonably

expected to memorize such information.  *See Crystal Lakes*, 2018 WL 10467489, at *2 ("Rule

30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in their knowledge"); *HVI Cat*

*Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to expect Rule 30(b)(6) witnesses

to know the intimate details of everything." (citation omitted)); *Fuentes*, 32 F.4th at 1322 ("A Rule

30(b)(6) deposition is not a memory test.").  Meta further objects to the term "derived from" as

60

Gibson, Dunn &
Crutcher LLP

vague.  Meta further objects to this Topic to the extent it seeks information irrelevant to the claims at issue in this litigation, including "revenue from non-Healthcare Providers."

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

**EXAMINATION TOPIC NO. 36**

**Unjust Enrichment** – Market values for consumer personal information, including amounts Meta pays directly to panelists for the right to collect their data; and any programs or transactions in which Meta pays consumers directly for the right to collect their data or has purchased consumer data from other entities, including but not limited to health-related data.

**RESPONSE TO EXAMINATION TOPIC NO. 36**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta objects to this Topic as vague, overbroad, and disproportionate in that it seeks information about "[m]arket values," "consumer personal information," and "purchased consumer data from other entities."

Meta objects that the information is equally available to, and has been produced to, plaintiffs. Meta further objects to this Topic to the extent it seeks information irrelevant to the claims at issue in this litigation, including data "not limited to health-related data" and "purchased consumer data from other entities."

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

**EXAMINATION TOPIC NO. 37**

**Unjust Enrichment** – Meta's valuations of healthcare-related data.

**RESPONSE TO EXAMINATION TOPIC NO. 37**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above.  Meta objects to the terms "valuations" and "healthcare-related data" as vague and overbroad. Meta objects that the information is equally available to, and has been produced to, plaintiffs.

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

Gibson, Dunn &
Crutcher LLP

1

**EXAMINATION TOPIC NO. 38**

2

    **Unjust Enrichment** – Any costs or other reductions that Meta contends should be made from

3

revenue when calculating the amount of revenue and profits derived from at-issue data.

4

**RESPONSE TO EXAMINATION TOPIC NO. 38**

5

    Meta restates and incorporates its General Objections and Objections to Definitions set forth

6

above.  Meta further objects to the extent this Topic seeks testimony regarding broadly "[a]ny costs

7

or other reductions," "revenue and profits derived from at-issue data," and related overbroad

8

language requiring detailed knowledge that is disproportionate and overly burdensome.  No corporate

9

representative could be reasonably expected to memorize such information.  *See Crystal Lakes*, 2018

10

WL 10467489, at *2 ("Rule 30(b)(6) deponents are not expected to be clairvoyant or encyclopedic in

11

their knowledge"); *HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *8 ("[I]t is simply impractical to

12

expect Rule 30(b)(6) witnesses to know the intimate details of everything." (citation omitted));

13

*Fuentes*, 32 F.4th at 1322 ("A Rule 30(b)(6) deposition is not a memory test.").  Meta further objects

14

to this Topic to the extent it calls for a legal conclusion.

15

    Subject to and without waiving those objections, Meta is willing to meet and confer about this

16

Topic.

17

**EXAMINATION TOPIC NO. 39**

18

    **Direct Ad-Targeting Based on Health Information** ▮▮▮ **and Inferences** – Meta's

19

decision to remove the ability to directly select healthcare-related ad topics for targeting, as alleged in

20

Dkt. 185, ¶¶ 221-230

21

**RESPONSE TO EXAMINATION TOPIC NO. 39**

22

    Meta restates and incorporates its General Objections and Objections to Definitions set forth

23

above.  Meta objects that the information is equally available to, and has been produced to, plaintiffs.

24

Meta further objects to this Topic to the extent it seeks information irrelevant to the claims at issue in

25

this litigation by citing an announcement concerning on-platform data.

26

    During the February 12, 2025 meet and confer, Meta objected that plaintiffs cited the non-

27

operative complaint in support of this Topic.  Plaintiffs acknowledged the error and provided the

28

Gibson, Dunn &
Crutcher LLP

following correction via email: "The correct cite for these topics is to the First Amended Consolidated Class Action Complaint, Dkt. 335, ¶¶ 290-300."

Subject to and without waiving those objections, Meta is willing to meet and confer about this Topic.

**EXAMINATION TOPIC NO. 40**

**Direct Ad-Targeting Based on Health Information ▮▮▮ and Inferences** – Meta's studies and knowledge on how Lookalike Audiences could replace direct health-related ad topic selection, as alleged in Dkt. 185, ¶¶ 221-230.

**RESPONSE TO EXAMINATION TOPIC NO. 40**

Meta restates and incorporates its General Objections and Objections to Definitions set forth above. Meta objects to the terms "studies and knowledge" as vague and overbroad. Meta objects to the unsupported premise embedded in the Topic arguing that Lookalike Audiences were "replace[ments]" for "health-related ad topic selection."

During the February 12, 2025 meet and confer, Meta objected that plaintiffs cited the non-operative complaint in support of this Topic. Plaintiffs acknowledged the error and provided the following correction via email: "The correct cite for these topics is to the First Amended Consolidated Class Action Complaint, Dkt. 335, ¶¶ 290-300."

During the February 12, 2025 meet and confer, Meta also sought clarification as to whether the "studies" referred to the study in the screenshot included in the complaint. Plaintiffs confirmed that the screenshot included is a relevant study, but also said "any other studies" would be included.

Subject to and without waiving those objections, Meta will designate a witness or witnesses to provide general testimony concerning any studies of Lookalike Audiences cited in the identified (corrected) paragraphs of the operative Complaint.

Meta will not provide a witness to testify about the remaining aspects of this Topic.

**EXAMINATION TOPIC NO. 41**

**Business Tools Sign-up Process** – The design, process, and decisions relating to the Pixel, SDK, and CAPI sign-up process, including whether Meta required advertisers to identify as Healthcare Provider, and why or why not.

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' NOTICES OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6) CASE NO. 3:22-CV-03580-WHO (VKD)

1

**RESPONSE TO EXAMINATION TOPIC NO. 41**

2       Meta restates and incorporates its General Objections and Objections to Definitions set forth

3   above.  Meta objects to the term "sign-up process" as vague.  Meta further objects that the

4   information is equally available to, and has been produced to, plaintiffs.

5       Meta objects to this Topic as vague and overbroad with respect to the terms "design, process,

6   and decisions."  Meta objects to this Topic to the extent it is duplicative of other Topics, including

7   Topics 2 and 30.

8       Subject to and without waiving those objections, Meta will designate a witness or witnesses to

9   provide general testimony concerning the process for installing Pixel, SDK, and CAPI, including

10  whether Meta required advertisers to identify as Healthcare Providers, and why or why not.

11      Meta will not provide a witness to testify about the remaining aspects of this Topic.

12  **EXAMINATION TOPIC NO. 42**

13      **Business Tools Sign-up Process** – Meta's privacy policies, including statements regarding

14  what information Meta collects from partners and other third parties

15  **RESPONSE TO EXAMINATION TOPIC NO. 42**

16      Meta restates and incorporates its General Objections and Objections to Definitions set forth

17  above.  Meta further objects that the information is equally available to, and has been produced to,

18  plaintiffs.

19      Meta objects to this Topic as vague and overbroad with respect to the terms "partners and

20  other third parties."  Meta will construe these terms to mean parties that install the at-issue Business

21  Tool.  Meta objects to this Topic to the extent it is duplicative of other Topics, including Topics 2 and

22  30.

23      Subject to and without waiving those objections, Meta will designate a witness or witnesses to

24  provide general testimony concerning Meta's Privacy Policy in effect throughout the Relevant

25  Period, as applicable to the claims and defenses in this litigation, including statements regarding what

26  information Meta collects from partners and other third parties.

27      Meta will not provide a witness to testify about the remaining aspects of this Topic.

28

1    **EXAMINATION TOPIC NO. 43**

2         **Knowledge of Breach Notices** – Meta's awareness, knowledge of, and response to notices by

3    Healthcare Providers or the Federal Trade Commission of potential data privacy breaches relating to

4    Healthcare Providers

5    **RESPONSE TO EXAMINATION TOPIC NO. 43**

6         Meta restates and incorporates its General Objections and Objections to Definitions set forth

7    above.  Meta objects to this Topic as vague and overbroad with respect to the terms "awareness,"

8    "knowledge of," and "response to notices . . . of potential data privacy breaches."  Meta further

9    objects that the information is equally available to, and has been produced to, plaintiffs.  Meta objects

10   to this Topic to the extent it seeks information protected from disclosure by the attorney-client

11   privilege, the attorney work product doctrine, or any other applicable privilege, doctrine, or

12   immunity, as well as the protections of Federal Rule of Civil Procedure 26(b)(4)(B).

13        Subject to and without waiving those objections, Meta is willing to meet and confer about this

14   Topic.

15

16   Dated: March 10, 2025                       GIBSON, DUNN & CRUTCHER LLP

17

18                                              By:   _/s/ Lauren Goldman_____
                                                      Lauren Goldman
19
                                                *Attorneys for Defendant Meta Platforms, Inc.*
20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP