# Redacted Version of the Joint Discovery Dispute Letter Regarding Non-Healthcare Advertiser Revenue (Dkt. No. 992-3)

CONFIDENTIAL

April 25, 2025

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

**Re:** *In re Meta Pixel Healthcare Litigation*, **Case No. 22-cv-03580-WHO (VKD)**

Dear Judge DeMarchi,

Meta Platforms, Inc. ("Meta") and Plaintiffs submit this joint discovery dispute letter pursuant to the Court's Standing Order.

## A.    STATEMENT OF THE DISPUTE REQUIRING RESOLUTION

Plaintiffs' Statement –Plaintiffs seek disgorgement of profits Meta derived from using the at-issue data. This includes Meta's revenue from non-Healthcare Providers whose advertising used that data, often after the data had been analyzed and commingled with other data. Because such profits fall squarely within the scope of unjust enrichment, Meta should be compelled to produce discovery on its earnings from non-Healthcare Providers' use of Plaintiffs' data. Contra Meta, Plaintiffs do not "seek all advertisements ever served by Meta." The requests are narrowly drawn to reasonably approximate the portion of health ads revenue attributable to the challenged conduct.

Meta's Statement – Plaintiffs seek discovery that is overbroad and disproportionate to the needs of the case, and based on a misunderstanding of Meta's systems. Plaintiffs' requests would require Meta to investigate all advertisements from non-healthcare providers to determine which ones had a health-related classification, regardless of any connection to the underlying Business Tool data at issue here. This Court already rejected a similar request for 30(b)(6) testimony about revenue from *non-healthcare advertisers* based on the same arguments rehashed herein. Meta agreed to produce revenue for healthcare advertisers. Plaintiffs' disproportionate requests for revenue data lacking connection to this case should be denied.

## B.    PLAINTIFFS' POSITION

This case concerns Meta's unauthorized interception of patient data on healthcare provider web-properties that Meta used for its own financial gain. In such cases, Plaintiffs are entitled to "disgorgement of profits resulting from unjust enrichment." *Facebook Internet Tracking*, 956 F.3d 589, 599 (9th Cir. 2020). Plaintiffs seek this remedy here. *See* FACCAC ¶¶ 400, 412, § VIII(F).

"Disgorgement is a remedy in which a court orders a wrongdoer to turn over all profits obtained by violating the law" and "requires only a reasonable approximation of profits causally connected to the violation." *CFPB v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016); *Pulaski & Middleman, LLC v. Google*, 802 F.3d 979, 989 (2015). Plaintiffs bear the burden of providing "at least a reasonable approximation of the amount of the wrongful gain" but the "[r]esidual risk of

CONFIDENTIAL

uncertainty in calculating net profit is assigned to the defendant." Restatement of Restitution and Unjust Enrichment § 51(5)(d).

　　　Plaintiffs seek discovery into profits Meta derived from helping non-healthcare providers serve advertisements using the at-issue data and related health inferences . Plaintiffs have already identified a concrete example: Meta serving an ad about "ulcerative colitis" to Plaintiffs' expert soon after he communicated with a healthcare provider about ulcerative colitis:





CONFIDENTIAL

See Dkt. 49, Expert Report of Richard Smith, ¶¶ 189-190 (ulcerative colitis ad from www.healthcentral.com, a non-Healthcare Provider). Meta's profits from this advertisement that it placed for a non-healthcare provider is squarely within the scope of unjust enrichment. Judge Orrick has already found this type of advertising to be relevant. See Dkt. 159, at 32. Thus, Plaintiffs propounded the following discovery requests.

Interrogatory No. 18 provides, "Set forth with specificity the Profits, on a monthly basis from 2017 to present, attributable to Health Advertising Revenue from non-Healthcare Providers." The phrase "Health Advertising Revenue from non-Healthcare Providers" is defined as "revenue generated from serving advertisements by non-Healthcare Providers to Facebook users based on a match to a Health Inference." In turn, "Health Inference" means "any ███████████████████████████████████ that was generated in whole or in part using Pixel-generated Health Information." These definitions clearly limit the scope of the interrogatory to profits derived from conduct at issue in this case.

RFP No. 283 seeks total revenue for advertisements in each ███████████████ at "the heart of this case" that were provided in the exhibits filed at Dkt. 652 (such as █████████████████ [1] See Dkt. 659 at 3, n. 1 ("Meta's categorizations .... go[] to the heart of this case[.]")There is no dispute that Meta is readily capable of making such calculations and producing such documents.

RFP No. 284 seeks "documents sufficient to conduct an analysis of Health Information advertisements and [their] relation to" at-issue data similar to Meta's own internal analysis in a study titled, ███████████████ That study, referenced in PIXEL_HEALTH000538384, compared the share of ads in specific █████████ categories to the share of ████████████ in those same categories. For ███████ the study found that ████████████ ████████████████████████████████████████████

RFP Nos. 285–287 seek documents sufficient to determine the portion of revenue from health advertisements attributable to the at-issue data.

1. RFP No. 285 seeks documents to approximate thpercentage of Health ads that were the result of matching ████████████. By doing so, it would exclude revenue from Health ads that were not the result of such matching.

2. RFP No. 286 seeks documents to approximate the percentage of Health Information ████████ features derived from at-issue data. By doing so, it would exclude ██████ /features derived from on-site activities that are later commingled with offsite

3. RFP No. 287 seeks documents to " approximate any reduction Meta contends is necessary" based on a claim that revenues for Health ads are only partially related to

---

[1] See Ex. C, ████████████████████ to see how Meta maps ████████ to ads.

CONFIDENTIAL

at-issue data, addresseing Meta's contention that Plaintiffs are not entitled to all Health advertising revenue by asking for the documents necessary to make what Meta would claim to be a reasonable apportionment.

Combined, Plaintiffs will use Meta's answer to Interrogatory No. 18 and the documents sought to present a reasonable approximation of profits causally connected to Meta's interceptions—as applied to this subset of unauthorized use.

Plaintiffs' approach is consistent with longstanding law on unjust enrichment and calculation of damages in misappropriation cases where the defendant is alleged to have profited from data or property to which they were not entitled. Meta's argument that discovery should be precluded because its Health ads profits are not derived entirely from at-issue data has no legal basis: where misappropriated property is commingled with rightfully obtained property such that a damages calculation becomes more difficult, the "burden of loss … shall rest upon the wrongdoer who has so confused his own with that of another than neither can be distinguished." *Westinghouse Elec. and Manuf. Co. v. Wagner Elec. and Manuf. Co*., 225 U.S. 604, 621 (1912). "The rule of law and equity is strict and severe on such occasion … all the inconveniences of the confusion is thrown upon the party who produces it, and it is for him to distinguish his own property or lose it." *Id.* at 621. As Judge Learned Hand put it, "leave it to him who confused them to disentangle the innocent from the guilty." *U.S. v. Fed. Mail Order Corp*., 47 F.2d 164, 165 (2d Cir. 1931).

The same rule applies today. In measuring unjust enrichment, "[a] district court may use a defendant's net revenues as a basis for measuring unjust gains," and after that, "the burden shifts to the defendant to demonstrate that the net revenue figure overstates the defendant's unjust gains." *Consumer Financial Protection Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016); see also *Micro Litho, Inc. v. Inko Indus. Inc.*, 1991 WL 332053 (6th Dist. App. 1991) (Burden on defendant "to show what portion of its profits is not attributable" to misappropriation); Accession on the Frontiers of Property, 133 Harv. L. Rev. 2381 (2020) (Explaining rule for transmutation/commingling "The accession solution is simple: If one party acted in bad faith, the other party becomes the owner of the thing.")

With this set of discovery requests, Plaintiffs have sought the revenue and any adjustments that Meta might reasonably claim are necessary. Meta's net revenues from Health advertisements are relevant on their own and should be the subject of discovery via Interrogatory No. 18 and the related RFPs. After that, the burden is on Meta to disentangle its rightful from wrongful profits.

*******

Meta mischaracterizes Plaintiffs' requests and the law of unjust enrichment.

Plaintiffs are not seeking to relitigate the Court's 30(b)(6) ruling concerning commingled on- and off-site data. To the contrary, Plaintiffs prevailed on those issues. Specifically, the Court ordered Meta to testify about (1) "revenue for advertising from non-healthcare providers derived from" at-issue data to the extent Meta tracks such revenue, and (2) whether at-issue data is "combined or commingled with [other] data." Id. at 6. The discovery requests at-issue here combine those issues to approximate a category of unjust enrichment.

4

CONFIDENTIAL

Meta has admitted the only predicate fact necessary to make this discovery reasonable. It acknowledges that Meta "aggregate[s]" at-issue data with other data which, "in turn, [is] used to deliver[] advertisements." This admission is precisely why such discovery is relevant and more than enough to justify discovery into how much money is earned from the combined data and the approximate portion derived from unlawful conduct. Plaintiffs' discovery requests present a simple three-step methodology:

1. Identify health ad revenue (Interrogatory 18 and RFPs 283-284). Meta does not dispute that it can answer this question, and the Court should order its production even if Meta contends it cannot answer the second.

2. Apportion for at-issue data/conduct (Interrogatory 18 and RFPs 285-286). Meta already produced a document showing it can ███████████████████ See Dkt. 980-4, ¶ 10(a)███████████████████ If Meta can no longer take the next step of apportioning offsite health data, that's only because Meta either failed to preserve any ████████ data prior to Core Setup or so thorough commingled the data that it cannot disentangle it. Either way, those are problems are Meta's own making that are not sufficient to deny the remaining requested discovery—and the burden "rest[s] upon the wrongdoer who has so confused his own with that of another than neither can be distinguished."

3. Subtract costs, if applicable. (Interrogatory 18 and RFP 287).

Finally, the law only requires a "reasonable approximation" of Meta's unjust enrichment, not "tracing specific event data to a specific advertisement," as Meta incorrectly argues. This can (and should) be done via system-wide data without looking at any specific event or advertisement.

## C.    META'S POSITION

Plaintiffs essentially seek reconsideration of this Court's rejection of their demand for 30(b)(6) testimony concerning revenue from *non-healthcare advertisers*. *See* Dkt. 969 at 8–9. Meta respectfully requests that this Court once again deny plaintiffs' overbroad and disproportionate discovery requests that seek data with no necessary connection to this case. Plaintiffs' requests would require Meta to investigate all advertisements ever served by Meta to determine which ones had a health-related classification, *regardless* of any connection to the underlying Business Tool data at issue here, and then investigate the month-by-month profits Meta received from such advertisements served by non-healthcare advertisers. These requests are very far afield from the data at issue in this litigation, and are thus not reasonable or proportionate. Meta has already agreed to produce documents with respect to revenue from healthcare advertisers; any further disproportionate requests for revenue from non-healthcare providers that has no necessary connection to the issues in this case are unwarranted.

To be clear, Meta has already agreed to produce the following information for the alleged healthcare advertisers previously identified by plaintiffs: (i) revenue associated with custom and

CONFIDENTIAL

lookalike audiences created using Business Tool data, (ii) revenue associated with advertisements that were optimized[2] using a Pixel ID, and (iii) ad revenue.

Despite this, plaintiffs are seeking "Profits . . . . attributable to Health Advertising Revenue from non-Healthcare Providers." Plaintiffs' attempt to link profits through a tortured process of connect-the-dots is untethered to their theory of damages and does not match the reality of Meta's systems. Despite plaintiffs' claims to the contrary, this request is no different than the request for 30(b)(6) testimony on "[r]evenue from non-Healthcare Providers derived from matching health-related ███████████████ categories for advertisements to ███████ or features" that this Court rejected. *See* Dkt. 969 at 8–9. The Court did not hold that plaintiffs were entitled to testimony about revenue derived from data not at issue. Rather, the Order specifically limits testimony to only "*whether* such [at-issue] data is combined or commingled with other data." Dkt. 969 at 6:16-17 (emphasis added); *see id.* at 6:9-14. Plaintiffs' citations to Judge Orrick's rulings to support their requests are inapplicable. Plaintiffs' claim that "Judge Orrick has already found this type of advertising to be relevant" finds no support in the citation provided. *See* Dkt. 159 at 32 (discussing Meta's filtration system in the Order Denying Preliminary Injunction). Further, plaintiffs' citation to Judge Orrick's language in a footnote in the Order Denying Motion to Certify Interlocutory Appeal regarding "the heart of this case," concerned generalized topics for which sealing was denied, not advertising revenue.

Plaintiffs' request is premised on a misunderstanding of Meta's technologies that assumes serving an advertisement equates to "using the at-issue data and related health inferences." Event data derived from developers via the Meta Pixel is ███████████████████████████ ███████████████████████████████ and in turn, ███████████████████████████████████████████████████████████ But because these ███████████████████████ evolve over time, it would not be reasonably possible to determine whether specific event data that any of the developers at issue here sent to Meta via the Meta Pixel had an effect on whether any particular ads or types of ads were shown to any Meta user (if that data was actually used for this sort of optimization at all).

Plaintiffs' supposition about an ulcerative colitis ad that their expert claims to have been shown "soon after" visiting a website is just that—a supposition. Although plaintiffs present this to the Court as a "concrete example" that "is squarely within the scope of unjust enrichment," they provide the Court with nothing to justify their speculation that this represents profits derived from "Meta helping non-healthcare providers serve advertisements." In fact, the expert report concedes that ads include a "Why Am I Seeing This Ad?" feature that allows a user to understand why they were shown an ad, *see* Dkt. 49 ¶ 191, yet the expert included no such information in his report about the ad plaintiffs rely on herein.

Plaintiffs' argument that it is nonetheless Meta's duty to "disentangle" any revenue they speculate to be relevant, regardless of proportionality, misplaces the burden. Plaintiffs' own cases make clear that *plaintiffs* must first show that the information they seek is linked to the

---

[2] Meta offers advertisers the ability to select a desired outcome for an ad, such as clicking a link that takes an individual to a desired webpage. Meta calls this selection an optimization event. *See* https://www.facebook.com/business/help/139628083350822.

CONFIDENTIAL

benefit allegedly unjustly obtained. *See, e.g., CFPB v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016) (stating that a plaintiff "bears the burden of proving that the amount it seeks in restitution reasonably approximates the defendant's unjust gains"). Plaintiffs simply ignore this and claim that Meta's aggregation of data is "more than enough" to justify their burdensome, overbroad, and disproportionate discovery. But this does not satisfy plaintiffs' burden. Plaintiffs cannot seek discovery to allege a "reasonabl[e] approximation"; they must show that what they seek is actually linked to the alleged benefit. Plaintiffs fail to do so.

Plaintiffs' proposed "simple three-step methodology" is anything but simple, and far from proportional to the claims in this litigation. The first step would require that Meta investigate voluminous data with no necessary connection to the data at issue here. The second step ignores the realities of Meta's systems and is premised on a false assumption based on a document about ███████████████████████████████████████████ The ability to distinguish between ████████████ ███████ has nothing to do with tracing specific event data to a specific advertisement or the associated revenue to Meta. As stated above, it would not be reasonably possible to determine whether any specific event data had an effect on whether any particular ads were shown to any Meta user. The third step also ignores the realities of Meta's systems.

Further, plaintiffs' argument on disentangling revenue is unsupported by their cited caselaw. None of the cases plaintiffs cite addresses the proper scope of discovery which is the relevant issue here. The only two Ninth Circuit cases upon which plaintiffs rely—*Gordon* and *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015)—address the remedy of restitution for claims of unfair and deceptive trade practices and unfair competition, respectively. These decisions acknowledge that a plaintiff "bears the burden of proving that the amount it seeks in restitution reasonably approximates the defendant's unjust gains." *Gordon*, 819 F.3d at 1195; *accord Pulaski*, 802 F.3d at 989. In unfair-trade-practices cases like *Gordon* and *Pulaski*, it thus "*may*" be appropriate to "use a defendant's net revenues as a basis for measuring unjust gains," *Gordon*, 819 F.3d at 1195, because the underlying claims "focus [] on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information," *Pulaski*, 802 F.3d at 989. In other words, all of the defendant's revenues are implicated in such a case, so it is appropriate to use them to estimate the plaintiffs' loss and the defendant's unjust gain. That is different from this case, where plaintiffs have not shown that all (or even any amount) of the revenue information they seek from non-healthcare advertisers is linked to the data at issue here. Put simply, plaintiffs have not shown, and cannot show, that such revenue from non-healthcare providers "reasonably approximates the defendant's unjust gains."

Plaintiffs' remaining cited cases concern intellectual property and are likewise inapplicable. *See Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604 (1912) (discussing patent infringement); *Micro Lithography Inc. v. Inko Industries Inc.*, 1991 WL 332053 (Cal. Ct. App. Apr. 9, 1991) (discussing trade-secret litigation). Each case contemplates the use of the defendant's net revenues from the infringing sales to estimate the defendant's unjust gain, noting that the burden falls on the defendant to then show that not all of the value of those sales was attributable to the disputed intellectual property. They thus espouse a similar rule as *Gordon* and *Pulaski*: before permitting a plaintiff to rely on a defendant's net revenues as a measure of its unjust gain, a plaintiff must first link those revenues to the underlying conduct at

CONFIDENTIAL

issue. *United States v. Federal Mail Order Corp.*, 47 F.2d 164 (2d Cir. 1931)—a 1931 Fourth Amendment case that makes passing reference to the equitable doctrines described above in assessing the reasonableness of the police's seizure of property—is even further afield.

Lacking relevant authority, therefore, plaintiffs simply gloss over the lack of established connection between the information they seek from non-healthcare providers and the Business Tool data at issue. Plaintiffs' requests are irrelevant, disproportionate to the needs of the case, and misunderstand Meta's systems. These requests should be denied.

### D.    NEED FOR A HEARING

Plaintiffs do not believe a hearing is necessary and the Court should order the interrogatory to be answered and documents to be produced immediately.

Meta believes that a hearing would be helpful if the Court is inclined to entertain the relief plaintiffs are seeking and prefers an in-person hearing if one is held.

### E.    CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The schedule sets forth the following dates for substantial completion of document production and fact and expert discovery cut-offs:

*Parties substantially complete document production*:  December 18, 2024

*Fact discovery cut-off*:  May 30, 2025

*Expert discovery cut-off*:  July 17, 2026

### F.    STATEMENT RE COMPLIANCE WITH STANDING ORDER

The parties met and conferred on this issue several times with the final conference occurring on or about April 8, 2025.

Dated:  April 25, 2025                   By:    */s/ Jason 'Jay' Barnes*
                                                  Jason 'Jay' Barnes

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel:    212-784-6400
Fax:    212-213-5949

CONFIDENTIAL

By:    */s/ Geoffrey Graber*
      Geoffrey Graber

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
 *ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel:    202-408-4600
Fax:   202-408-4699

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
 *koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel:    310-854-4444
Fax:   310-854-0812

By:    */s/ Beth E. Terrell*
      Beth E. Terrell

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
 *bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:   206-816-6603
Fax:   206-319-5450

**GIBBS MURA LLP**
Andre M. Mura, State Bar No. 298541
 *amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:   510-350-9700
Fax:   510-350-9701

*Attorneys for Plaintiffs and Putative Class*

CONFIDENTIAL

Dated:  April 25, 2025                    By:     _/s/ Lauren Goldman_
                                                 Lauren Goldman

                                        **GIBSON, DUNN & CRUTCHER LLP**
                                        LAUREN R. GOLDMAN (*pro hac vice*)
                                          lgoldman@gibsondunn.com
                                        DARCY C. HARRIS (*pro hac vice*)
                                          dharris@gibsondunn.com
                                        200 Park Avenue
                                        New York, NY 10166
                                        Tel:    (212) 351-4000
                                        Fax:    (212) 351-4035

                                        ELIZABETH K. MCCLOSKEY (SBN 268184)
                                          emccloskey@gibsondunn.com
                                        ABIGAIL A. BARRERA (SBN 301746)
                                          abarrera@gibsondunn.com
                                        One Embarcadero Center, Suite 2600
                                        San Francisco, CA 94111
                                        Tel:    (415) 393-8200
                                        Fax:    (415) 393-8306

                                        *Attorneys for Defendant Meta Platforms, Inc.*

## CIVIL L.R. 5-1(i)(3) ATTESTATION

   Pursuant to Civil Local Rule 5-1(i)(3), I, Beth E. Terrell, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated:  April 25, 2025                    By:     _/s/ Beth E. Terrell_

EXHIBIT 1

Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
Email: jaybarnes@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949

Jeffrey A. Koncius, CSB #189803
Email: koncius@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

*Attorneys for Plaintiffs and the Proposed Class*

[*Additional counsel listed on signature page*]

Geoffrey Graber, CSB #211547
Email: ggraber@cohenmilstein.com
COHEN MILSTEIN SELLERS
   & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
TERRELL MARSHALL LAW
   GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Andre M. Mura, CSB #298541
Email: amm@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-3580-WHO (VKD) |
| This Document Relates to: | **PLAINTIFFS' FIFTH SET OF INTERROGATORIES TO DEFENDANT META PLATFORMS, INC.** |
| All Actions. | CLASS ACTION |
| | The Honorable Virginia K. DeMarchi |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:                            FIFTH**

Pursuant to the Federal Rules of Civil Procedure 26 and 33, Plaintiffs, by and through their undersigned counsel, hereby request that Defendant Meta Platforms, Inc. answer the following Fifth Set of Interrogatories, under oath, in accordance with the Federal Rules of Civil Procedure, and the instructions, below, within 30 days of the date of service of this set of Interrogatories. Plaintiffs further request that Defendant serve supplemental responses if it obtains further or different information, as required by Federal Rule of Civil Procedure 26(e).

## DEFINITIONS

The Definitions provided herein are intended to streamline language used in these Interrogatories and facilitate a common understanding of the information sought. Defendant should accept the Definitions provided herein, for the limited purpose of responding to each Interrogatory, even if Defendant disputes a Definition's accuracy or otherwise finds it objectionable.

1.      "Health Advertising Revenue from Healthcare Providers" means revenue paid to Meta by Healthcare Providers that is generated in whole or in part from the Healthcare Providers' use of the Meta Pixel on their web-properties.

2.      "Health Advertising Revenue from non-Healthcare Providers" means revenue generated from serving advertisements by non-Healthcare Providers to Facebook users based on a match to a Health Inference.

3.      "All" means "any and all," as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside the scope of the Interrogatory.

4.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside the scope of the Interrogatory.

5.      "Core Setup" means the "set of data restrictions that can be applied to a Meta Business Tool" as described in the Meta Business Help Center at https://www.facebook.com/business/help/124742407297678.

6.      "Facebook," "Defendant," "Meta," "You," and "Your" means Defendant Meta Platforms, Inc. and any of its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions.

7.      "Healthcare Provider" means any of the entities from which Meta was collecting information on their web-properties and that were:

  a. classified by Meta in any of the following advertiser verticals or sub-verticals: █████████████████████████████ ███████████████████████

  b. classified by Meta in a ██████████ or ██████ category specified in the attached Exhibit A;

  c. for which Meta's data indicates that the web-property displayed HIPAA notice language required by law; or

  d. Meta classified as a health care provider or HIPAA or CMIA covered entity through ██████████ or any other method.

8.      "Healthcare Provider web-property" means any website or app belonging to a Healthcare Provider.

9.      "Pixel-generated Health Information" means any information collected by the Meta Pixel relating to a Health Provider web-property that: (a) was classified or categorized based on the content taxonomies identified in Exhibit B; or (b) included the fact that a user logged into or out of a patient portal, made or changed an appointments, or made a bill payment.

10.      "Including" shall be construed broadly to mean "including, but not limited to" and "without limitation."

11.     "Information" means written, recorded, graphic, or other electronic data, including metadata, of any nature whatsoever, regardless of how recorded, and whether an original or copy, including: any electronic data conveyed through an Internet communication; any electronic data associated with an Internet communication; any electronic data associated with the user participating in an Internet communication; and any inference, profiling or other association derived from a user's Internet communication, whether in isolation or in aggregate.

12.     "Meta Pixel" means the "Pixel, SDK, CAPI, Customer List Uploads, DFCA, Offline Conversion Custom Audiences, and offline events (OCAPI)." See Meta Letter to Plaintiffs of July 9, 2024, setting forth list of "Business Tools" that the parties agree are "within the scope of discovery for this litigation."

13.     "Health Inference" means any ███████████████████████████ ███████    that was generated in whole or in part using Pixel-generated Health Information.

14.     "Plaintiff(s)" refers collectively to the Plaintiffs named in the First Amended Consolidated Class Action Complaint in the above-referenced Action.

15.     "Profits" means the net amount of money that Meta obtained as a result of its collection of Pixel-generated Health Information after deducting from such amount reasonably attributable costs and expenses.

16.     Except for the terms defined hereof, and unless another meaning is obvious from the context and from a term's plain and ordinary usage, the terms used herein shall have the same meaning as they have in the operative Complaint in this Action.

## **INSTRUCTIONS**

1.     Any interrogatory that inquires as to the knowledge, conduct, activities, or materials possessed by Defendant shall be taken to include the knowledge, conduct, activities, or materials possessed by Defendant's subsidiaries, parents, affiliates, and merged or acquired predecessors, as well as the present or former investigators, accountants, attorneys, directors, officers, partners, employees, and other agents of Defendant; and references to the "personnel" of Defendant shall include such individuals.

2.     For each Interrogatory herein, the singular shall be construed to include the plural and the plural shall be construed to include the singular.

3.     For each Interrogatory herein, the present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense. The use of a verb in any tense shall be construed to be in the tense necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed as outside the scope. By way of example, Interrogatory No. 2 asked that You "Identify All Web-Properties, developers, and advertisers for which Meta provides services through the "Facebook Health" advertising division. A response to Interrogatory No. 2 should have included information pertaining to Web-Properties, developers, and advertisers for which Meta provides services through the "Facebook Health" advertising division currently, and at any time during the Relevant Time Period, as defined below. If Meta objects to this instruction and intends to withhold documents based on its objection(s) Plaintiffs request that the parties meet and confer as soon as practicable.

4.     For each Interrogatory herein, all undefined terms used shall be construed in an ordinary common-sense manner and not in a hyper-technical, strained, overly literal, or otherwise restrictive manner.

5.     If You claim any form of privilege, work product, or other protection, whether based on statute or otherwise, as a ground for not answering an Interrogatory or any part of an Interrogatory, or declining to produce any Document, You must set forth in detail the facts upon which the assertion of privilege is based.

6.     If any Document was, but no longer is, in Your possession or subject to Your control, please provide a complete and detailed explanation of all circumstances surrounding the disposition of the document including dates and manner of disposition (e.g., lost, destroyed, transferred to a third party, etc.).

7.     These Interrogatories are continuing, and Defendant should supplement its responses and production immediately whenever it acquires additional information and Documents pertaining thereto.

1    8.    Unless otherwise agreed by the parties or ordered by the Court, all Documents,

2    things, and electronically stored information (ESI) shall be in native format.

3    **INTERROGATORIES**

4    **INTERROGATORY NO. 17:**    Set forth with specificity the Profits, on a monthly

5    basis from 2017 to present, derived from Health Advertising Revenue from Healthcare Providers

6    on an aggregate basis and per identified Healthcare Provider. State in your answer all reasons

7    each entity was classified as a Healthcare Provider (e.g., their health-related advertiser

8    vertical(s), ███████ category or categories, HIPAA notice language, ████████ or other

9    classification).

10    **ANSWER**:

11    **INTERROGATORY NO. 18:**    Set forth with specificity the Profits, on a monthly

12    basis from 2017 to present, attributable to Health Advertising Revenue from non-Healthcare

13    Providers.

14    **ANSWER**:

15    **INTERROGATORY NO. 19:**    Set forth any change in Profits for Health

16    Advertising Revenue from Healthcare Providers and Health Advertising Revenue from non-

17    Healthcare Providers on a monthly basis that occurred after Meta's implementation of Core

18    Setup.

19    **ANSWER**:

20    **INTERROGATORY NO. 20:**    Set forth with specificity the Average Revenue Per

21    User, on a monthly basis from 2017 to present, for Meta Pixel on Healthcare Provider web-

22    properties using the methodology set out in PIXEL_HEALTH000679589-SC on an aggregate

23    basis and per identified Healthcare Provider. State in your answer the reason each entity was

24    classified as a Healthcare Provider (e.g., their health-related advertiser vertical(s), ████████

25    category or categories, HIPAA notice language, ███████ or other classification).

26    **ANSWER**:

27

28

1

2    PROPOUNDED AND DATED this 20th day of December, 2024.

3                        SIMMONS HANLY CONROY LLC

4                        By: /s/ Jason 'Jay' Barnes
                             Jason 'Jay' Barnes, *Admitted Pro Hac Vice*
5                            Email: jaybarnes@simmonsfirm.com
                             An V. Truong, *Admitted Pro Hac Vice*
6                            Email: atruong@simmonsfirm.com
                             Eric Steven Johnson, *Admitted Pro Hac Vice*
7                            Email: ejohnson@simmonsfirm.com
                             Jennifer M Paulson, *Admitted Pro Hac Vice*
8                            Email: jpaulson@simmonsfirm.com
                             112 Madison Avenue, 7th Floor
9                            New York, New York 10016
                             Telephone: (212) 784-6400
10

11                       COHEN MILSTEIN SELLERS & TOLL PLLC

12                       By: /s/ Geoffrey A. Graber
13                           Geoffrey Aaron Graber, CSB #211547
                             Email: ggraber@cohenmilstein.com
14                           Eric Alfred Kafka, *Admitted Pro Hac Vice*
                             Email: ekafka@cohenmilstein.com
15                           Claire T. Torchiana, CSB #330232
                             Email: ctorchiana@cohenmilstein.com
16                           1100 New York Avenue NW
                             Suite 500, West Tower
17                           Washington, DC 20005
                             Telephone: (202) 408-4600
18

19                       TERRELL MARSHALL LAW GROUP PLLC

20

21                       By: /s/ Beth E. Terrell
                             Beth E. Terrell, CSB #178181
22                           Email: bterrell@terrellmarshall.com
                             Amanda M. Steiner, CSB #190047
23                           Email: asteiner@terrellmarshall.com
                             Ryan Tack-Hooper
24                           Email: rtack-hooper@terrellmarshall.com
                             Benjamin M. Drachler, *Admitted Pro Hac Vice*
25                           Email: bdrachler@terrellmarshall.com
                             936 North 34th Street, Suite 300
26                           Seattle, Washington 98103
                             Telephone: (206) 816-6603
27

28
       PLAINTIFFS' FIFTH SET OF INTERROGATORIES TO DEFENDANT META
                          PLATFORMS, INC. - 7
                     Case No. 3:22-cv-3580-WHO (VKD)

Jeffrey A. Koncius, CSB #189803
Email: koncius@kiesel.law
Nicole Ramirez, CSB #279017
Email: ramirez@kiesel.law
Mahnam Ghorbani, CSB # 345360
Email: ghorbani@kiesel.law
Stephanie M. Taft, CSB #311599
Email: taft@kiesel.law
Kaitlyn E. Fry, CSB #350768
Email: fry@kiesel.law
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444

Andre M. Mura, CSB #298541
Email: amm@classlawgroup.com
Hanne Jensen, CSB #336045
Email: hj@classlawgroup.com
Delaney Brooks, CSB #348125
Email: db@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on December 20, 2024, I caused true and correct copies of the foregoing document to be served via electronic mail upon the following:

Michael Graham Rhodes, CSB #116127
Email: rhodesmg@cooley.com
Caroline Lebel, CSB #340067
Email: clebel@cooley.com
Kyle C. Wong, CSB #224021
Email: kwong@cooley.com
Matthew Lawrence Kutcher
Email: mkutcher@cooley.com
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: (415) 693-2000

Abigail Augus Barrera, CSB #301746
Email: abarrera@gibsondunn.com
Elizabeth Katharine McCloskey, CSB # 268184
Email: EMcCloskey@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200

Andrew M. Kasabian, CSB #313210
Email: akasabian@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612
Telephone: (949) 451-4341

Gregg Costa, *Admitted Pro Hac Vice*
Email: gcosta@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600

Darcy Caitlyn Harris, *Admitted Pro Hac Vice*
Email: dharris@gibsondunn.com
Lauren R Goldman, *Admitted Pro Hac Vice*
Email: LGoldman@gibsondunn.com
Lessa Haspel
Email: lhaspel@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000

Trenton James Van Oss, *Admitted Pro Hac Vice*
Email: tvanoss@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20009
Telephone: (202) 955-8500

Jay Minga
Email: jminga@gibsondunn.com
GIBSON, DUNN AND CRUTCHER LLP
310 University Avenue
Pala Alto, California 94301
Telephone: (650) 849-5350

***Attorneys for Defendants Meta Platforms, Inc.,
Facebook Holdings, LLC, Facebook Operations, LLC, Instagram LLC***

DATED this 20th day of December, 2024.


By: /s/ Beth E. Terrell, CSB #178181
Beth E. Terrell, CSB #178181

# EXHIBIT A

# Exhibit A – "Health Care Providers"
**Relevant Lines from** ███████████████



## Exhibit A – "Health Care Providers"
**Relevant Lines from** <span style="background:black;color:black">████████████████</span>



# Exhibit A – "Health Care Providers"

**Relevant Lines from** █████████████████



# Exhibit A – "Health Care Providers"
**Relevant Lines from** ███████████████



*HIGHLY CONFIDENTIAL – SOURCE CODE*

Plaintiffs' Excerpts from the Source Code file





EXHIBIT B

# Exhibit B – "Health Information"

**Relevant Lines from** █████████████████



# Exhibit B – "Health Information"
**Relevant Lines from** █████████████████████



# Exhibit B – "Health Information"

**Relevant Lines from** █████████████



# Exhibit B – "Health Information"
**Relevant Lines from** ███████████████████



# Exhibit B – "Health Information"

**Relevant Lines from** ███████████████



# Exhibit B – "Health Information"
**Relevant Lines from** █████████████████



# Exhibit B – "Health Information"
**Relevant Lines from**



# Exhibit B – "Health Information"

**Relevant Lines from** 

EXHIBIT 2

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO (VKD) |
| This Document Relates To:<br><br>All Actions | CLASS ACTION<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIFTH SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:    FIVE**

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules of the U.S. District for the Northern District of California ("Local Rules"), hereby provides the following responses and objections to Plaintiffs' Fifth Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated December 20, 2024, as follows:

**PRELIMINARY STATEMENT**

1.      Meta's responses to the Interrogatories are made to the best of its current knowledge, information, belief, and understanding of the Interrogatories.  Meta's factual and legal investigation of this matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding these

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

Interrogatories, many of which are overbroad or otherwise objectionable.  Meta reserves the right to supplement or amend its responses in accordance with any agreement between the parties or should future investigation indicate that such supplementation or amendment is necessary.

2.      Meta's responses to the Interrogatories are made solely for the purpose of and in relation to the above-captioned action.  Each response is given subject to all appropriate objections (including, but not limited to, objections concerning privilege, competency, relevance, materiality, propriety, and admissibility).  All objections are reserved and may be interposed at any time.

3.      Meta's responses include only information that is within Meta's possession, custody, or control.

4.      Meta incorporates by reference each and every general objection set forth below into each and every specific response.  From time to time, a specific response may repeat a general objection for emphasis or some other reason.  The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

5.      Nothing contained in these Responses and Objections or provided in response to the Interrogatories consists of, or should be construed as, an admission relating to the accuracy, relevance, existence, or nonexistence of any alleged facts or information referenced in any Interrogatory.

## **GENERAL OBJECTIONS**

1.      Meta generally objects to each Interrogatory, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties.  Meta will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2.      Meta generally objects to each Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action, is disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, including to the extent that any Interrogatory seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

Gibson, Dunn & Crutcher LLP

2

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

3.      Meta generally objects to each Interrogatory to the extent the Interrogatory is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks information that is otherwise responsive to other specific Interrogatories, and including to the extent the Interrogatory exceeds the permissible number of interrogatories under the Federal Rules.

4.      Meta generally objects to the Interrogatories, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production or identification of "every," "any," or "all" information concerning the subject matters referenced therein.

5.      Meta generally objects to each Interrogatory to the extent that it embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1), and Meta generally objects that plaintiffs have already exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1) with their prior interrogatories in sets one, two, and three, and thus all of the interrogatories in set five are improper and in violation of the Federal Rules.

6.      Meta generally objects to each Interrogatory to the extent it seeks information contained in documents that Meta or any other party or non-party has produced or is expected to produce in this litigation.  Pursuant to Rule 33(d) of the Federal Rules, Meta refers plaintiffs to the information contained in those documents.

7.      Meta generally objects to each Interrogatory, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

8.      Meta generally objects to each Interrogatory to the extent the Interrogatory is premature.

## OBJECTIONS TO DEFINITIONS

1.      Meta objects to plaintiffs' definition of "all" on the grounds that it would be unduly burdensome and disproportional to the needs of the case for Meta to identify "all" information responsive to the Interrogatory.  This definition is overbroad and seeks information that is not relevant to the subject matter of the litigation or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, and any attempt to respond would be unduly burdensome, expensive, and oppressive.

Gibson, Dunn & Crutcher LLP

3

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

2.     Meta objects to plaintiffs' definition of "Facebook," "Defendant," "Meta," "You," and "Your" and its inclusion of "its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions," as overbroad and unduly burdensome to the extent the terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent plaintiffs purport to use the terms to impose obligations on Meta that go beyond the requirements of the Federal Rules and the Local Rules.  Meta further objects to this definition to the extent that plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including as to Meta's subsidiaries and products not at issue in this litigation.  Meta will construe the terms "Defendant," "Facebook," "You," and "Your" as follows: Meta Platforms, Inc. and its officers and employees.

3.     Meta objects to plaintiffs' definition of "Health Advertising Revenue from Healthcare Providers" as vague, ambiguous, overbroad, and unduly burdensome including because of its use of the undefined terms and phrases "generated" and "the Healthcare Providers' use of the Meta Pixel on their web-properties," as well as because of its use of the objectionable term "Healthcare Provider[]." Meta restates and incorporates its objections to that phrase as though fully set forth in this Response.

4.     Meta objects to plaintiffs' definition of "Health Advertising Revenue from non-Healthcare Providers" as vague, ambiguous, overbroad, and unduly burdensome including because of its use of the undefined terms and phrases "generated," "serving advertisements," and "based on a match to a Health Inference," as well as because of its use of the objectionable terms "Healthcare Provider[]" and "Health Inference."  Meta restates and incorporates its objections to those terms as though fully set forth in this Response.  Meta further objects to this definition to the extent that plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including, for example, through the undefined term "non-Healthcare Providers" that is broader in scope than the allegations in this action.  Meta is willing to meet and confer with plaintiffs on this vague, ambiguous, and overbroad definition.

5.     Meta objects to plaintiffs' definition of "Health Inference" as vague, ambiguous, and

Gibson, Dunn & Crutcher LLP

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

overbroad, including because of its use of the undefined terms and phrases ████████

████████████████ and "generated," as well as because of its use of the objectionable

phrase "Pixel-generated Health Information."  Meta restates and incorporates its objections to that

phrase as though fully set forth in this Response.

6.    Meta objects to plaintiffs' definition of "Healthcare Provider" as overbroad, vague, and

ambiguous, including because of its use of undefined terms and phrases including, "any of the entities

from which Meta was collecting information on their web-properties," "classified," "advertiser

verticals or subverticals," ████████████ "Meta's data indicates that the web-property

displayed HIPAA notice language required by law," and "classified as a health care provider or HIPAA

or CMIA covered entity through ████████████ or any other method."  Meta further objects to this

definition to the extent that it encompasses entities beyond the "Covered Entities" as defined in the

operative complaint.  Meta also objects to this term to the extent that it seeks information that is

irrelevant to the claims in, or defenses to, this action or disproportionate to the needs of the case, or is

of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in

having to provide such information.  Meta will construe the phrase "Healthcare Provider" to refer to

the list of "Medical Provider Web-Properties" that plaintiffs sent on June 21, 2023.

7.    Meta objects to plaintiffs' definition of "Healthcare Provider web-property" as

overbroad, vague, and ambiguous, including because of its incorporation of the objectionable term

"Healthcare Provider."  Meta restates and incorporates its objections to that term as though fully set

forth in this Response.  Meta will construe the phrase "Healthcare Provider web-property" to refer to

the list of "Medical Provider Web-Properties" that plaintiffs sent on June 21, 2023.

8.    Meta objects to plaintiffs' definition of "Information" to the extent that plaintiffs purport

to use this defined term to request the identification of documents that: (a) were prepared in anticipation

of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client

communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws,

and/or rules.  Meta further objects to the extent that this definition purports to impose obligations that

go beyond the requirements of the Federal Rules and the Local Rules, as applicable.  Meta will construe

this term in accordance with the Federal Rules and the Local Rules.

Gibson, Dunn &
Crutcher LLP

5

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

9.     Meta objects to plaintiffs' definition of "Pixel-generated Health Information" as overbroad, vague, and ambiguous, including because of its use of the undefined terms and phrases "collected," "relating to a Health Provider web-property," "classified or categorized based on the content taxonomies," and "included the fact that a user logged into or out of a patient portal, made or changed an appointments, or made a bill payment." Meta also objects to this term to the extent that it seeks information that is irrelevant to the claims in, or defenses to, this action or disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information.

10.    Meta objects to plaintiffs' definition of "Profits" as overbroad, vague, and ambiguous, including because of its use of the undefined terms and phrases "obtained," "collection," and "reasonably attributable costs and expenses," as well as its use of the objectionable term "Pixel-generated Health Information." Meta restates and incorporates its objections to that term as though fully set forth in this Response.

## OBJECTIONS TO INSTRUCTIONS

1.     Meta objects to plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

2.     Meta objects to Instruction No. 1 to the extent it seeks information in the possession of any individual(s), entit(ies), or any other person(s) over which Meta exercises no control. Meta also objects to Instruction No. 1 to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including to the extent it seeks information about Meta's affiliated entities and products not at issue in this litigation.

3.     Meta objects to Instruction No. 3 to the extent it purports to include a time period beyond those ordered by Judge DeMarchi in her June 16, 2023 Order. *See* Dkt. 276. For purposes of this Interrogatory, Meta will construe the past tense to include the present tense and the present tense to include the past tense only to the extent that doing so is in accordance with the time periods established by Judge DeMarchi's June 16, 2023 Order. *See* Dkt. 276.

4.     Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner." Meta will construe

Gibson, Dunn & Crutcher LLP

objects that plaintiffs have already exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

(D)    Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:  Meta has already produced documents reflecting revenue, including revenue associated with the Pixel IDs plaintiffs claim are relevant.  *See* PIXEL_HEALTH000939290; PIXEL_HEALTH000939291.  Meta incorporates by reference these documents pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from these documents will be substantially the same for plaintiffs as it would be for Meta.

**INTERROGATORY NO. 18:**

Set forth with specificity the Profits, on a monthly basis from 2017 to present, attributable to Health Advertising Revenue from non-Healthcare Providers.

**RESPONSE TO INTERROGATORY NO. 18:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the phrases "set forth," "with specificity," and "attributable to Health Advertising Revenue from non-Healthcare Providers."

(B)    Meta objects to this Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and is disproportionate to the needs of the case, including to the extent this Interrogatory seeks information that does not relate to Healthcare Provider web-properties' transmission of allegedly sensitive health information to Meta.  Meta is not required to respond to Requests that seek information that is not relevant to any party's claim or defense.  Fed. R.

Gibson, Dunn & Crutcher LLP

8

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIFTH SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

1  Civ. P. 26(b)(1); *see Wong v. Alameda Cnty.*, 2020 WL 6460530, at *2 (N.D. Cal. Nov. 3, 2020); *C &*

2  *C Jewelry Mfg., Inc. v. West*, 2011 WL 768642, at *1 (N.D. Cal. Feb. 28, 2011).

3       (C)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that

4  count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

5  In particular, this Interrogatory includes numerous sub-parts (i.e., calculations of "Profits" "on a

6  monthly basis from 2017 to present" "attributable to Health Advertising Revenue from non-Healthcare

7  Providers"). Meta objects that plaintiffs have already exceeded the number of interrogatories permitted

8  under Federal Rule of Civil Procedure 33(a)(1).

9       Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

10  discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs

11  about this vague, overbroad Interrogatory. Meta reserves the right to supplement its objections and

12  responses to this Interrogatory.

13  **INTERROGATORY NO. 19:**

14       Set forth any change in Profits for Health Advertising Revenue from Healthcare Providers and

15  Health Advertising Revenue from non-Healthcare Providers on a monthly basis that occurred after

16  Meta's implementation of Core Setup.

17  **RESPONSE TO INTERROGATORY NO. 19:**

18       Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

19  Definitions, and Objections to Instructions as though fully set forth in this Response. Meta further

20  objects to this Interrogatory on the following additional grounds:

21       (A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and

22  phrases "set forth," "any change in Profits for Healthcare Advertising Revenue from Healthcare

23  Providers," "any change in Profits for . . . Health Advertising Revenue from non-Healthcare providers,"

24  and "occurred after Meta's implementation of Core Setup."

25       (B)    Meta objects to this Interrogatory to the extent it seeks information that is irrelevant to

26  the claims in, or defenses to, this action and is disproportionate to the needs of the case, including to

27  the extent this Interrogatory seeks information that does not relate to Healthcare Provider web-

28  properties' transmission of allegedly sensitive health information to Meta.

Gibson, Dunn &
Crutcher LLP

9

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIFTH SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

1    Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

2 discovery in this action, Meta responds as follows:  Meta agrees to meet and confer with plaintiffs

3 about this overly broad Interrogatory.  Meta reserves the right to supplement its objections and

4 responses to this Interrogatory.

5

6    DATED: January 21, 2025                          Respectfully submitted,

7                                                     **GIBSON, DUNN & CRUTCHER LLP**

8

9    By: */s/ Lauren R. Goldman*
                                                          Lauren R. Goldman (*pro hac vice*)

10                                                   *Attorneys for Defendant Meta Platforms, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Meghan Andre, a Legal Investigator and Threat Researcher at Meta Platforms, Inc. ("Meta"), am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Responses and Objections to Plaintiffs' Fifth Set of Interrogatories. The responses were prepared by Meta's counsel with assistance from Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Responses and Objections to Plaintiffs' Fifth Set Interrogatories are true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on January 21, 2025

Gibson, Dunn &
Crutcher LLP

# EXHIBIT 3

1   **GIBSON, DUNN & CRUTCHER LLP**
    LAUREN R. GOLDMAN (*pro hac vice*)
2   lgoldman@gibsondunn.com
    DARCY C. HARRIS (*pro hac vice*)
3   dharris@gibsondunn.com
    200 Park Avenue
4   New York, NY 10166
    Telephone:    (212) 351-4000
5   Facsimile:    (212) 351-4035

6   ELIZABETH K. MCCLOSKEY, SBN 268184
    emccloskey@gibsondunn.com
7   ABIGAIL A. BARRERA, SBN 301746
    abarrera@gibsondunn.com
8   One Embarcadero Center, Suite 2600
    San Francisco, CA 94111
9   Telephone:    (415) 393-8200
    Facsimile:    (415) 393-8306

10

11   *Attorneys for Defendant Meta Platforms, Inc.*

12                  UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
13                    SAN FRANCISCO DIVISION

14   IN RE META PIXEL HEALTHCARE              Case No. 3:22-cv-3580-WHO (VKD)
     LITIGATION
15                                            CLASS ACTION
16   This Document Relates to:
                                              **DEFENDANT META PLATFORMS,**
17   All Actions.                             **INC.'S RESPONSES AND OBJECTIONS**
                                              **TO PLAINTIFFS' REQUEST FOR**
18                                            **PRODUCTION OF DOCUMENTS, SET**
                                              **TEN**
19

20                                            The Honorable William H. Orrick

21

22

23

24

25

26

27

28

**PROPOUNDING PARTY:**          **PLAINTIFFS**

**RESPONDING PARTY:**           **META PLATFORMS, INC.**

**SET NO.:**                    **TEN**

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 34, and the Civil Local Rules of the U.S. District Court for the Northern District of California ("Local Rules"), hereby provides the following responses and objections to plaintiffs' Requests for Production of Documents Directed to Meta Platforms, Inc., Set Ten (each a "Request," and together, the "Requests"), dated November 16, 2024, as follows:

## PRELIMINARY STATEMENT

1.      Meta's responses to the Requests are made to the best of its current knowledge, information, belief, and understanding of the Requests.  Meta's factual and legal investigation of this matter is ongoing.  Further, the parties have not engaged in any meet and confer regarding the Requests, many of which are overbroad, duplicative, or otherwise objectionable.  Meta reserves the right to supplement or amend any responses in accordance with any agreement between the parties or should future investigation indicate that such supplementation or amendment is necessary.

2.      Meta's responses to the Requests are made solely for the purpose of and in relation to the above-captioned action.  Each response is given subject to all appropriate objections (including, but not limited to, objections concerning privilege, competency, relevance, materiality, propriety, and admissibility).  All objections are reserved and may be interposed at any time.

3.      Meta's responses include only information that is within Meta's possession, custody, or control.

4.      Meta incorporates by reference each and every general objection set forth below into each and every specific response.  From time to time, a specific response may repeat a general objection

for emphasis or some other reason.  The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

5.    Nothing contained in these Responses and Objections or provided in response to the Requests consists of, or should be construed as, an admission relating to the accuracy, relevance, existence, or nonexistence of any alleged facts or information referenced in any Request.

6.    In compliance with the Federal Rules, where Meta has agreed to search for and produce documents, it does not intend to withhold responsive, non-privileged documents in its possession, custody, or control that are reasonably accessible.  Meta has noted where any limitations will control its search for responsive and relevant materials.

## GENERAL OBJECTIONS

(A)    Meta generally objects to each Request, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties.  Meta will construe and respond to the Requests in accordance with the requirements of the Federal Rules and other applicable rules or laws.

(B)    Meta generally objects to each Request to the extent it seeks documents and information that are irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, or are of such marginal relevance that their probative value is outweighed by the burden imposed on Meta in having to provide such information, including any request that seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

(C)    Meta generally objects to each Request to the extent the Request is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks documents or communications that are otherwise responsive to other specific Requests or requests for production previously served

by plaintiffs on Meta.

(D)    Meta generally objects to the Requests, including the Definitions and Instructions, on the basis that they specify an overbroad and unduly burdensome relevant time period, and seek documents and things outside of the time period relevant to the claims and defenses asserted in this lawsuit.

(E)    Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production of "any" or "all" documents or communications concerning the subject matters referenced therein.

(F)    Meta generally objects to the Requests, including the Definitions and Instructions, to the extent that they do not identify the documents sought with reasonable particularity as required by Fed. R. Civ. P. § 34(b)(1)(A).

(G)    Meta generally objects to the Requests, including the Definitions and Instructions, to the extent they conflict with or ask for metadata or information beyond that required by any Electronically Stored Information Protocol entered in this action.

(H)    Meta generally objects to each Request on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation, in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client communications, are covered under the common-interest privilege and/or joint-defense privilege, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s). Meta hereby asserts all such applicable privileges and protections, and excludes privileged and protected information from its responses to each Request. *See generally* Fed. R. Evid. 502.  The production of any information or documents that are privileged or otherwise immune from discovery

and any subsequent use and/or clawback of such information or documents is governed by the 502(d) Order entered in this case.

(I)    Meta generally objects to each Request to the extent that it requests information that is confidential, proprietary, or competitively sensitive.  To the extent any proprietary or confidential information, trade secret, or other sensitive or protected business information is non-privileged and responsive to the Requests and not otherwise objectionable, Meta will produce such documents in accordance with the Protective Order entered in this litigation and any other procedures the Court may establish to protect sensitive or confidential information.  Meta's disclosure of such information is subject to Meta's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

(J)    Meta generally objects to the Requests to the extent that the information sought is more appropriately pursued through another discovery tool.

(K)    Meta generally objects to each Request to the extent it is argumentative, lacks foundation, or incorporates allegations and assertions that are disputed or erroneous.  In furnishing the responses herein, Meta does not concede the truth of any factual assertion or implication contained in any Request, Definition, or Instruction.

(L)    Meta generally objects to each Request, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

(M)    Meta generally objects to each Request, including the Definitions, Instructions, and Relevant Time Period, to the extent it seeks documents or information no longer in Meta's possession, custody, or control, or that otherwise no longer exist, as a result of the ordinary course of document retention and applicable document retention policies.

(N)    Meta generally objects to each Request on the grounds and to the extent that production of such information demanded therein would violate the right of privacy of third parties under

5

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS
TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TEN
Case No. 3:22-cv-3580-WHO (VKD)

California law or other applicable laws of any relevant jurisdiction, or that such production is otherwise prohibited by law, or is subject to legal requirements for notification of third parties. Such laws include, but are not limited to, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA").

(O)    To the extent plaintiffs have requested or will seek the same documents from third parties, Meta objects to the Requests as duplicative, cumulative, and as seeking documents that are obtainable from other sources that are more convenient, less burdensome, or less expensive.

(P)    Meta generally objects to the Requests to the extent that they purport to impose an obligation to conduct anything beyond a reasonable and diligent search of reasonably accessible files (including electronic files) where responsive documents reasonably would be expected to be found. Any Requests that seek to require Meta to go beyond such a search are overbroad and unduly burdensome.

(Q)    Meta's willingness to search for and provide responsive documents or information in response to a Request shall not be interpreted as an admission that such documents or information exist, that they are relevant to a claim or defense in this action, or that they are admissible for any purpose. Meta does not waive its right to object to the admissibility of any document or information produced by any party on any ground.

## OBJECTIONS TO DEFINITIONS

(A)    Meta objects to plaintiffs' definitions of "any" and "all" on the grounds that Meta cannot guarantee that it has located every single document responsive to a particular Request. Such requests are overbroad and any attempt to respond would be unduly burdensome, expensive, and oppressive, and would seek information that is not relevant or proportional to the claims or defenses in this case.

(B)    Meta objects to plaintiffs' definitions of "Communication," "Document(s)," "Electronic Media," "Electronically Stored Information," "Information," "Policy," and "Policies" to the extent that plaintiffs purport to use these defined terms to request the identification and disclosure of documents

that: (a) were prepared in anticipation of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws, and/or rules. Meta further objects to the extent that these definitions purport to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable. Meta will construe these terms in accordance with the Federal Rules and the Local Rules.

(C)    Meta objects to plaintiffs' definition of "Employee(s)" and its inclusion of "any person who acted or purported to act on behalf of any Facebook entity." Meta objects to this definition to the extent it encompasses individuals over whom Meta exercises no control or includes individuals who took action purportedly on Meta's behalf but without authorization from Meta. Meta will construe this definition as follows: individuals employed by Meta and/or individuals authorized and directed by Meta to act on Meta's behalf.

(D)    Meta objects to plaintiffs' definition of "Facebook," "Defendant," "Meta," "You," and "Your" and its inclusion of "its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions," as overbroad and unduly burdensome to the extent the terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent plaintiffs purport to use the terms to impose obligations on Meta that go beyond the requirements of the Federal Rules and the Local Rules. Meta further objects to this definition to the extent that plaintiffs purport to use this defined term to seek documents that are not relevant to the claims and defenses in this action, including from or as to Meta's subsidiaries and products not at issue in this litigation. Meta will construe the terms "Defendant," "Facebook," "You," and "Your" as follows: Meta Platforms, Inc. and its officers and employees.

7

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS
TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TEN
Case No. 3:22-cv-3580-WHO (VKD)

(E)     Meta objects to plaintiffs' identical definitions of "Meta Pixel" and "Meta Collection Tools."  The parties have already agreed to the scope of tools relevant to this litigation and Meta will construe these terms in accordance with that agreement, as detailed in Meta's August 9, 2024 correspondence concerning the scope of the discovery.

(F)     Meta objects to plaintiffs' definition of "Filter" to the extent it refers to a definition of "Filter" in "Exhibit A" because no Exhibit A was included with the Requests.  Meta will construe the term "Filter" as referring to its health-related integrity system which was developed to filter out potentially sensitive health data it detects.

(G)     Meta objects to plaintiffs' definition of "Healthcare Provider web-property" as overbroad, vague, and ambiguous as to the undefined terms "health-related advertiser verticals" and "taxonomic categorization."  Meta further objects to this definition to the extent it encompasses entities beyond the "Covered Entities" as defined in the operative complaint.  Meta further objects to this definition to the extent it relies on the similarly ambiguous term "Filter," as described in paragraph (F) *supra*.  Meta will construe the term "Healthcare Provider web-property" to refer to the list of medical provider sites that plaintiffs sent on June 21, 2023.

(H)     Meta objects to plaintiffs' definition of "Healthcare Advertisers" as overbroad, vague, and ambiguous as to the undefined term "taxonomic categorization" and to the extent it encompasses entities beyond the "Covered Entities" as defined in the operative complaint.  Meta further objects to this definition to the extent it relies on the similarly ambiguous term "Filter," as described in paragraph (F) *supra*.  Meta will construe the term "Healthcare Advertisers" to refer to the list of medical provider sites that plaintiffs sent on June 21, 2023.

(I)      Meta objects to plaintiffs' definition of ███████████████████████" as vague, ambiguous, and overbroad.  There are multiple exhibits filed as part of the Declaration that was filed as Docket 652.  Meta is willing to meet and confer on this vague, ambiguous, and overbroad definition.

(J)      Meta objects to plaintiffs' definition of "HIPAA Authorization" to the extent it incorrectly references the Code of Federal Regulations as 45 C.F.R. § 508.  Meta will construe the term "HIPAA Authorization" as described in 45 C.F.R. § 164.508.

(K)      Meta objects to plaintiffs' definition of "Patient Portal" as vague, ambiguous, overbroad, and unduly burdensome.  Meta further objects to this definition to the extent plaintiffs purport to use this defined term to seek information that is not relevant to the claims or defenses in this action, including, for example, the broad reference to "Web-Propert[ies]" that are used by a "Medical Provider" for undefined "communicat[ions] with patients" that expands the scope of the defined term beyond the allegations in this action.  Meta will construe the term "Patient Portal" as it understands it in connection with the allegations in this action.

(L)      Meta objects to plaintiffs' definition of "Personal Information" as overbroad, vague, and ambiguous to the extent it purports to include information that "is capable of being associated with," or "could reasonably be linked, directly or indirectly, with" individuals, as well as information including the "Persons' preferences, characteristics, psychological trends, predispositions, behaviors, attitudes, intelligence, abilities, or aptitudes."  Meta further objects to this definition insofar as it suggests that any one of these criteria, standing alone, is enough to identify specific persons.  Meta further objects to the extent that this definition purports to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.

(M)      Meta objects to plaintiffs' definition of "Web-Property" as overbroad, vague, and ambiguous as to the undefined phrase "point of presence on the web."  Meta will construe this definition

as follows: "Web-Property" means a website or mobile application or "app."

## OBJECTIONS TO INSTRUCTIONS

(A)     Meta objects to plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

(B)     Meta objects to plaintiffs' "Instructions" to the extent that they are inconsistent with or purport to impose obligations inconsistent with or beyond the terms of the ESI Protocol and Protective Order entered in this action.  To the extent Meta produces documents or other ESI in response to the Requests, Meta will do so in accordance with the ESI Protocol and Protective Order.

(C)     Meta objects to Instruction No. 1 to the extent it seeks documents or information in the possession of any individual(s), entit(ies), or any other person(s) over whom Meta exercises no control.

(D)     Meta objects to Instruction No. 3 to the extent it defines the Relevant Time Period.  For purposes of these Requests, Meta will construe the past tense to include the present tense and the present tense to include the past tense only to the extent that doing so is in accordance with the time periods established by Judge DeMarchi's June 16, 2023 Order.  *See* Dkt. 276.

(E)     Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner."  Meta will construe undefined terms as it understands them.

## OBJECTIONS TO RELEVANT TIME PERIOD

Meta objects to the Relevant Time Period to the extent it calls for the production of documents that are from a time before or after the events or circumstances relevant to this action and to the extent that it exceeds the discovery time periods established by Judge DeMarchi's June 16, 2023 Order on the issue.  *See* Dkt. 276.  Meta will construe the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order.  *See id.*

10

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS
TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TEN
Case No. 3:22-cv-3580-WHO (VKD)

otherwise.

(D)    Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks information about "sensitive verticals" without limitation as to time or scope.

(E)    Meta objects to this Request's use of the phrase "HIPAA- and CMIA-covered entities," which does not identify the discovery sought with sufficient particularity.  Meta will construe "HIPAA- and CMIA-covered entities" as referring to the list of medical provider sites that plaintiffs sent on June 21, 2023.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs regarding this vague and overbroad request.

Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 283:**

Documents sufficient to identify total revenue from advertisements served for each ███████ ████████████████████████████ collectively and separately, during the Class Period, broken down in the time increments used in Meta's ordinary course of business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 283:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as vague and ambiguous as to the undefined terms and phrases "advertisements served for each ████████████████████████████

(B)    Meta objects to this Request as seeking information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including that the Request seeks

information regarding Meta's total revenue from advertisements served for each ████████

████████████████ irrespective of whether that information has any connection to the claims or

technologies at issue in this action.

(C)    Meta objects to this Request as overbroad and unduly burdensome in that it requests

information about total revenue changes without limitation as to time, scope, or otherwise.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs about

this vague and overbroad Request.  Meta reserves the right to supplement its objections and response

to this Request.

## REQUEST FOR PRODUCTION NO. 284:

Documents sufficient to conduct an analysis of "Health Information" advertisements and its

relationship to Health Information collected via the Pixel similar to the analysis conducted by Meta in

the document ████████████████████████████████████████

████████████████ PIXEL_HEALTH000538384.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 284:

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set

forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as vague and ambiguous as to the undefined terms and

phrases "conduct an analysis," "'Health Information' advertisements," and "relationship to Health

information."

(B)    Meta objects to this Request as vague and ambiguous as to the nature of documents that

would be sufficient to conduct the requested analysis.

(C)    Meta objects to this Request as seeking information that is irrelevant to the claims in, or

defenses to, this action and disproportionate to the needs of the case, including that the Request seeks documents sufficient to conduct an analysis of "Health Information" advertisements and its relationship to Health Information collected via the Pixel, irrespective of whether that information has any connection to the claims or technologies at issue in this action.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs about this vague and overbroad Request.

Meta reserves the right to supplement its objections and response to this Request.

## REQUEST FOR PRODUCTION NO. 285:

Documents sufficient to identify, collectively and separately, the percentage of revenue associated with advertisements in a ███████████████████████ based on mapping the ██████████████████████████ of an advertisement to the equivalent ███████████ ████████████ associated with a user, ██████████ or user feature – such as the mappings included in the source code file cited in the Declaration of Dr. Atif Hashmi ███████████████████████████████████████████ ██, filed at Dkt. 630-9, footnote 24.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 285:

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request as vague and ambiguous as to the undefined terms and phrases "percentage of revenue" and "advertisements in a ███████████████████████ based on mapping the ████████████████████ of an advertisement to the equivalent ████████████████████ associated with a user, ██████████, or user feature."

(B)  Meta objects to this Request as overbroad and unduly burdensome in that it requests revenue information without limitation as to time, scope, or otherwise.  Further, the Request appears to require data to be created in order to respond to this Request, which is not within the scope of a Request for Production.

(C)  Meta objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity given its use of the vague and undefined terms "percentage of revenue" and, depending on how those terms are defined, seeks information not relevant to plaintiffs' claims.  It is unclear what documents are contemplated by this phrase or what they are intended to encompass.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs about this vague and overbroad Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 286:**

Documents sufficient to identify the percentage of ███████████████████ and user features that are derived from data collected via the Meta Business Tools associated with HIPAA- or CMIA-Covered Entities or Healthcare Provider web-properties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 286:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)  Meta objects to this Request as vague and ambiguous as to the undefined phrase ███████████████ and user features."

(B)  Meta objects to this Request as overbroad and unduly burdensome in that it requests information about data sources without limitation as to time, scope, or otherwise.

(C)    Meta objects to this Request on the grounds that it fails to describe the documents sought with reasonable particularity given its use of the vague and undefined terms "percentage of ███ █████████████████ and user features that are derived from data collected via the Meta Business Tools" and, depending on how those terms are defined, seeks information not relevant to the claims or defenses in this case.  It is unclear what documents are contemplated by this phrase or what they are intended to encompass.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs about this vague and overbroad Request.  Meta reserves the right to supplement its objections and response to this Request.

## REQUEST FOR PRODUCTION NO. 287:

To the extent that Meta claims that revenues from advertisements in ████████████ █████████████ are only partially related to Health Information Meta collected from HIPAA- or CMIA-covered entities or Healthcare Provider web-properties, Documents sufficient to calculate or reasonably approximate any reduction Meta contends is necessary for health-related data that Meta collected from non-Healthcare Provider sources.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 287:

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)    Meta objects to this Request as vague and ambiguous as to the undefined terms and phrases "revenues from advertisements in ██████████████████████████ "partially related," "calculate or reasonably approximate," and "Meta contends is necessary."

(B)    Meta objects to this Request as vague and ambiguous in that it is unclear what

documents would allow calculation or approximation of the supposed revenue division.

(C)     Meta objects to this Request to the extent the information sought is more appropriately sought through another form of discovery.

(D)     Meta objects that this request fails to describe the documents sought with sufficient particularity.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs about this vague and overbroad Request.  Meta reserves the right to supplement its objections and response to this Request.

**REQUEST FOR PRODUCTION NO. 288:**

All advertiser account settings and configurations for each HIPAA- or CMIA-covered entity or Healthcare Provider web-property and the settings and configurations for their Meta Collection Tools, including as those settings and configurations changed over time and including but not limited to whether SubscribedButtonClick Communications were transmitted to Facebook and whether and when "Core Setup" was in place on the properties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 288:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period as though fully set forth in this Response.  Meta further objects to this Request on the following additional grounds:

(A)     Meta objects to this Request as vague and ambiguous as to the undefined phrase "in place on properties."

(B)     Meta objects to this Request as overbroad and unduly burdensome in that it requests "all advertiser account settings and configurations," including changes over time, without limitation as to time, scope, or otherwise.

discovery in this action, Meta responds as follows: Meta agrees to meet and confer with plaintiffs about this vague and overbroad Request.  Meta reserves the right to supplement its objections and response to this Request.


DATED: December 16, 2024                                   Respectfully submitted,

                                                          GIBSON, DUNN & CRUTCHER LLP


                                                          By: */s/ Lauren Goldman*
                                                              Lauren Goldman (*pro hac vice*)

                                                          *Attorneys for Defendant Meta Platforms, Inc.*