UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br>All Actions. | Case No. 22-cv-03580-WHO (VKD)<br><br>**ORDER RE JUNE 2, 2025 DISCOVERY DISPUTE RE RFPS 22, 263, AND 268**<br><br>Re: Dkt. Nos. 1044, 1045 |
|---|---|

The parties ask the Court to resolve their dispute regarding whether Meta should be required to produce revenue-related data tied to "health-related domains" defined by Meta's internal classifications. Dkt. Nos. 1044; Dkt. No. 1060-2.[1] Specifically, plaintiffs ask Meta to produce documents showing the total revenue and profits it derived from "health advertisers," or all domains in the "health-related advertiser verticals and classifications used for enrollment in the CoreSetup privacy program." Dkt. No. 1060-2 at ECF 2. Plaintiffs contend that the discovery they seek is responsive to their Requests for Production ("RFPs") Nos. 22, 263, and 268, and is otherwise relevant and proportional to the needs of this case. *Id.* at ECF 2-4. Meta responds that it has already produced responsive revenue-related data for the covered entities at issue, in

---

[1] Plaintiffs move to seal the discovery letter brief and exhibits on the ground that Meta claims the contents are confidential. Dkt. No. 1045. In response, Meta requests sealing for a narrowed portion of the discovery letter, stating that the subject information reveals specific, non-public information about its internal analyses, data analysis tools, and proprietary classification systems. *See* Dkt. No. 1060. Meta does not claim that any portion of the appended exhibits should be sealed. *See id*. As plaintiffs' sealing motion relates to a discovery matter, the good cause standard applies. *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1098-99 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. for Auto Safety*, 580 U.S. 815 (2016); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006). Good cause appearing, the Court grants plaintiffs' sealing motion, as narrowed by Meta. Unredacted portions of the discovery letter (Dkt. Nos. 1045-3, 1059) shall remain under seal.

accordance with the Court's resolution of the parties' May 1, 2023 discovery dispute (*see* Dkt. Nos. 223, 278). *Id.* at ECF 5-6. Meta objects that plaintiffs' present demand is untimely and overbroad and seeks information that is neither relevant nor proportional to the needs of the case. *Id.* at ECF 6-8. The Court heard oral argument on this dispute on June 10, 2025. Dkt. No. 1062.

### 1. RFP 22

RFP 22 asks for "[d]ocuments sufficient to show the total revenues and profits Meta derived from advertising associated with the use of the Meta Pixel on Medical Provider Web-Properties . . . ." Dkt. No. 1060-2 at ECF 14. This request was among those at issue in a May 1, 2023 discovery dispute in which the Court was asked to address the scope of the term "Medical Provider Web-Properties." *See* Dkt. No. 223; Dkt. No. 223-1 at ECF 11. In that earlier discovery dispute, plaintiffs argued that Meta should be required to use the following definition of "Medical Provider": "healthcare providers and covered entities under HIPAA or the CMIA." Dkt. No. 223 at 1. In response, Meta did not contend that this definition encompassed irrelevant information; rather, Meta objected that it had no systematic way to identify which entities that deployed the Pixel fell within the scope of plaintiffs' proposed definition. *Id.* at 4, 5. The Court accepted plaintiffs' definition for purposes of resolving the dispute and ordered the parties to confer further about whether Meta could provide information from which *plaintiffs* could identify the entities within the scope of plaintiffs' definition. *See* Dkt. No. 278.

The Court has reviewed the May 1, 2023 discovery dispute letter, the transcript of the hearing on that dispute, and the order resolving it. It is very clear from that record that plaintiffs did not advocate the broad definition of "Medical Provider" on which they now rely—i.e. "a physician, hospital, laboratory, pharmacy, *or any other Person who provides medical- or health-related services without regard to whether it is a covered entity under HIPAA*." Dkt. No. 223-1 at ECF 5 (para. 17) (emphasis added). Instead, they defined the term more narrowly to mean "healthcare providers and covered entities under HIPAA or the CMIA." Dkt. No. 223 at 1. To the extent plaintiffs now rely on the broad definition to support their present demand for revenue-related data from all "health-related advertisers" enrolled in Meta's CoreSetup privacy program, regardless of whether they are healthcare providers or other entities covered by HIPAA or CMIA,

2

*see* Dkt. No. 1060-2 at ECF 4 ("Scope of RFPs"), this argument is foreclosed by plaintiffs' earlier position on the scope of this term as used in RFP 22 and elsewhere, and by the Court's earlier order at Dkt. No. 278.

With respect to the process contemplated by the Court's order at Dkt. No. 278, Meta says that it has produced multiple sets of information that could be used by plaintiffs to investigate which entities deploying the Pixel are covered by HIPAA or CMIA, precisely as the Court directed in its earlier order, that the parties agreed plaintiffs would use this information to identify relevant Pixel IDs, and that plaintiffs have done so, albeit belatedly and with some inaccuracies. Dkt. No. 1060-2 at ECF 6 & n.2. Meta also states that it has produced revenue-related data for more than 1,800 entities plaintiffs identified by Pixel ID earlier in the discovery period, and that it has agreed to produce revenue-related data for an additional more than 1,000 entities plaintiffs recently identified by Pixel ID. *Id.* at ECF 5. Plaintiffs counter that Meta delayed producing until the very end of fact discovery additional information plaintiffs need to identify to all relevant covered entities and their associated Pixel IDs, and that Meta has yet other sources of information that could also be used to efficiently identify additional covered entities and entities engaged in "health-related" advertising. *Id.* at ECF 4 ("Production of incomplete revenue data"). The Court explored this issue at length during the hearing. *See* Dkt. No. 1084. To the extent plaintiffs need to update their list of Pixel IDs yet again based on Meta's last-day-of-discovery document production, they should do so promptly, and the Court expects Meta to produce the revenue-related data for the corresponding healthcare providers and covered entities, as they have previously done or agreed to do. However, to the extent plaintiffs argue (again) that *Meta* should be required to investigate thousands, or hundreds of thousands, of entities to identify Pixel IDs for covered entities, the Court is not persuaded that Meta has ready means available to do this investigation without undue burden or that there are other circumstances that warrant reconsideration of the approach adopted by the parties and the Court, as reflected in the order at Dkt. No. 278.[2] *See* Dkt. No. 1084 at 40:18-41:13.

---

[2] To the extent plaintiffs request reconsideration of the Court's finding on this point in the order at Dkt. No. 278, that request is denied.

**2.     RFPs 263 and 268**

RFP 263 asks for "[d]ocuments sufficient to show Facebook's United States advertising revenue and profits from advertisements associated with each Meta Collection Tool . . . installed on HIPAA- and CMIA-covered entities web properties, and on Healthcare Advertisers web properties, for each month and quarter in aggregate and for each advertiser." Dkt. No. 1060-2 at ECF 19. RFP 268 asks for "[d]ocuments sufficient to show United States revenue and profits for conversions from Meta Collection Tools for HIPAA- and CMIA-covered entities, and for Healthcare Advertisers, for each month and quarter in aggregate and for each advertiser." *Id.* at ECF 21. Meta argues that the discovery plaintiffs seek in this discovery dispute—i.e. total revenue and profits from all "health advertisers," or all domains in the "health-related advertiser verticals and classifications used for enrollment in the CoreSetup privacy program"—is not within the scope of either RFP 263 or RFP 268. Dkt. No. 1060-2 at ECF 6. Plaintiffs do not respond to this objection with respect RFPs 263 and 268. *See id.* at ECF 4.

The Court agrees with Meta. These requests do not appear to encompass the much broader scope of revenue-related data plaintiffs seek in this discovery dispute letter.

\*\*\*

For the reasons explained above, the Court denies plaintiffs request for an order requiring Meta to produce total revenue and profits from all "health advertisers," or all domains in the "health-related advertiser verticals and classifications used for enrollment in the CoreSetup privacy program." However, plaintiffs may update their list of Pixel IDs based on Meta's last-day-of-discovery document production, and if plaintiffs do so, Meta must promptly produce the corresponding revenue-related data for those additional Pixel IDs for healthcare providers and covered entities. If plaintiffs cannot accurately identify Pixel IDs for some subset of the relevant covered entities, the Court expects Meta to reasonably assist with the identification of Pixel IDs. *See, e.g.,* Dkt. No. 1084 at 74:24-76:9 (discussing possible need for assistance with identifying approximately 150 Pixel IDs).

The parties shall jointly file a status report of no more than 1,000 words (without argument or attachments) advising the Court of the status of the Pixel ID/revenue-related data production

effort by **July 8, 2025**.

**IT IS SO ORDERED.**

Dated: June 27, 2025

Virginia K. DeMarchi
United States Magistrate Judge