# Proposed Revised Redacted Version of the Declaration of Jeffrey A. Koncius (Dkt. No. 1122-1)

1 | Jason 'Jay' Barnes (admitted *pro hac vice*)
  *jaybarnes@simmonsfirm.com*

2 | **SIMMONS HANLY CONROY LLP**
112 Madison Avenue, 7th Floor

3 | New York, NY 10016
Tel.:    212-784-6400

4 | Fax:    212-213-5949

Geoffrey Graber, State Bar No. 211547
  *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel.:    202-408-4600
Fax:    202-408-4699

5 | Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel.law*

6 | **KIESEL LAW LLP**
8648 Wilshire Boulevard

7 | Beverly Hills, CA 90211
Tel.:    310-854-4444

8 | Fax:    310-854-0812

Andre M. Mura, State Bar No. 298541
  *amm@classlawgroup.com*
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
Fax:    510-350-9701

9 | Beth E. Terrell, State Bar No. 178181
  *bterrell@terrellmarshall.com*

10 | **TERRELL MARSHALL LAW GROUP
PLLC**

11 | 936 North 34th Street, Suite 300
Seattle, WA 98103

12 | Tel.:    206-816-6603
Fax:    206-319-5450

13 |

*Attorneys for Plaintiffs and the Proposed Class*

14 |

15 | **UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

16 |

17 | IN RE META PIXEL HEALTHCARE
LITIGATION

18 | _____

19 | This Document Relates to:

20 | All Actions.

21 |

22 |

23 |

24 |

25 |

**Case No. 3:22-cv-3580-WHO (VKD)**

<u>CLASS ACTION</u>

**\*\*FILED UNDER SEAL\*\***

**DECLARATION OF JEFFREY A.
KONCIUS IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO FILE A
MOTION FOR RECONSIDERATION RE
THE COURT'S ORDER RE JULY 14, 2025
DISCOVERY DISPUTE RE JAIN
DEPOSITION**

Judge:    Hon. Virginia K. DeMarchi

26 |

27 |

28 |

DECLARATION OF JEFFREY KONCIUS ISO PLAINTIFFS' MOTION FOR LEAVE TO FILE A MOTION FOR
RECONSIDERATION RE COURT'S ORDER RE JULY 14, 2025 DISCOVERY DISPUTE RE JAIN DEPOSITION

## DECLARATION OF JEFFREY A. KONCIUS

I, Jeffrey A. Koncius declare as follows:

1.    I am an attorney duly admitted to practice before this Court and am a member in good standing of the State Bar of California.

2.    I am a partner at the law firm of Kiesel Law LLP, who, along with the law firms Simmons Hanly Conroy LLP, Cohen Milstein Sellers & Toll, PLLC, Terrell Marshall Law Group, PLLC, and Gibbs Mura LLP, represent Plaintiffs in the above-captioned matter.

3.    I submit this Declaration in support of Plaintiffs' Motion for Leave to File a Motion for Reconsideration re the Court's Order re July 14, 2025 Discovery Dispute re Jain Deposition.

4.    I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

5.    Attached hereto as Exhibit "A" is a true and correct copy of portions of the Unredacted Declaration of Jason "Jay" Barnes, a copy of which was filed on June 30, 2025, at Dkt. No. 1093-3. While the full body of the Barnes Declaration is attached, only those exhibits that are referenced in the Motion for Leave are included so as to preserve resources.

6.    Attached hereto as Exhibit "B" is a true and correct copy of portions of the Declaration of Jeffrey A. Koncius, a copy of which was filed on June 30, 2025, at Dkt. No. 1091. While the full body of the Koncius Declaration is attached, only those exhibits that are referenced in the Motion for Leave are included so as to preserve resources.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 4, 2025, at Beverly Hills, California.


/s/ Jeffrey A. Koncius
Jeffrey A. Koncius

DECLARATION OF JEFFREY KONCIUS ISO PLAINTIFFS' MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION RE COURT'S ORDER RE JULY 14, 2025 DISCOVERY DISPUTE RE JAIN DEPOSITION

# EXHIBIT "A"

1  Jason 'Jay' Barnes (admitted *pro hac vice*)       Geoffrey Graber, State Bar No. 211547
   *jaybarnes@simmonsfirm.com*                        *ggraber@cohenmilstein.com*
2  **SIMMONS HANLY CONROY LLP**                       **COHEN MILSTEIN SELLERS & TOLL**
   112 Madison Avenue, 7th Floor                      **PLLC**
3  New York, NY 10016                                 1100 New York Avenue NW, Fifth Floor
   Tel:    212-784-6400                               Washington, DC 20005
4  Fax:    212-213-5949                               Tel:    202-408-4600
                                                      Fax:    202-408-4699
5
   Jeffrey A. Koncius, State Bar No. 189803           Andre M. Mura, State Bar No. 298541
6  *koncius@kiesel.law*                               *amm@classlawgroup.com*
   **KIESEL LAW LLP**                                 **GIBBS MURA LLP**
7  8648 Wilshire Boulevard                            1111 Broadway, Suite 2100
   Beverly Hills, CA 90211                            Oakland, CA 94607
8  Tel:    310-854-4444                               Tel.:    510-350-9700
   Fax:    310-854-0812                               Fax:    510-350-9701
9
   Beth E. Terrell, State Bar No. 178181
10 *bterrell@terrellmarshall.com*
   **TERRELL MARSHALL LAW GROUP**
11 **PLLC**
   936 North 34th Street, Suite 300
12 Seattle, WA 98103
   Tel.:    206-816-6603
13 Fax:    206-319-5450

14 *Attorneys for Plaintiffs and the Proposed Class*

15

16               **UNITED STATES DISTRICT COURT FOR THE**
                     **NORTHERN DISTRICT OF CALIFORNIA**
17                          **SAN FRANCISCO DIVISION**

18 IN RE META PIXEL HEALTHCARE              Case No. 3:22-cv-03580-WHO (VKD)
19 LITIGATION
                                           **\*\*FILED UNDER SEAL\*\***
20
   ──────────────────────────────          **DECLARATION OF JASON "JAY"**
21 This Document Relates To                 **BARNES IN SUPPORT OF PLAINTIFFS'**
                                           **MOTION FOR RELIEF FROM FACT**
22 All Actions                             **DISCOVERY DEADLINE TO OBTAIN**
                                           **DEPOSITION TESTIMONY OF DINKAR**
23                                         **JAIN**

24
                                          Date:    August 13, 2025
25                                        Time:    2:00 p.m.
                                          Place:   Courtroom 2 – 17th Floor
26                                        Judge:   Hon. William H. Orrick III

27

28

I, Jason "Jay" Barnes, state and declare as follows:

1.      I am an attorney admitted *pro hac vice* in this Court. I am a partner in the law firm of Simmons Hanly Conroy, LLP and have been appointed as Interim Co-Lead Counsel for the Putative Class in this action. I have personal knowledge of the matters stated herein, and they are true and correct to the best of my knowledge.

### **Background**

2.      The health information at issue in this case flows through Meta's systems in two stages. In the ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████ for use in the Facebook Newsfeed, targeted advertising, and other purposes. *See* **Exhibit 1,** Meta's Third Supplemental Responses and Objections to Plaintiffs' Third Set of Interrogatories, at 4-11.

3.      This sequence of downstream tables and analysis is known as the "intent pipeline."

4.      In 2024, Plaintiffs identified in Meta's source code a processing tool called the ██████████ which Meta created in ████████ to, among other things, ████████████ ███████████████████████████████████████████████████████████████████ ████████████      *See* **Dkt. 627-9, ¶¶ 10-17**.  Plaintiffs explicitly identified ████████ to Meta in a March 2024 correspondence. *See* **Exhibit 2** at 2.

5.      During a meet and confer on January 13, 2025, Meta acknowledged that it failed to preserve evidence from the databases where it stored health-related ████████ and "features." Thus, the direct evidence of how Meta used at-issue health information had been destroyed. **Exhibit 3**, Meta's First Set of Supplemental Responses and Objections to Plaintiffs' Fourth Set of Interrogatories, at 6-11.

6.      Indeed, based on the retention periods for the tables where ████████████ information is stored, it appears that the evidence of how Meta processed and used the at-issue data from the start of the class period through late 2024 was destroyed during the period of this case in which Meta obtained a stay of discovery into those systems.

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

7.      Shortly after learning of Meta's spoliation in January 2025, Plaintiffs sent Meta letters and multiple follow up emails concerning a process for remediation, proposing that Meta recreate spoliated data, provide an employee declaration of how the downstream systems previously worked, and make that employee available for a deposition. *See* **Exhibit 4** at 3**; Exhibit 5** at 5**; Exhibit 6.**

8.      The parties conferred on the issue on March 20, 2025. At the parties' conference, Meta would not provide any details of the remediation process it was contemplating. Plaintiffs stressed the importance of working together to reach a mutually agreeable solution and requested that Meta identify what remediation options it was considering. Meta stated it would consider the request. However, Meta never provided the information to Plaintiffs.

9.      Rather, on May 30, 2025, Meta produced partially remediated data for two of the highly relevant downstream data sources it had failed to preserve.

### Dinkar Jain

10.      Meta has produced documents from only one employee with extensive knowledge of its downstream processing systems: former engineer Dinkar Jain.

11.      In the documents Meta produced about downstream processing, Mr. Jain is the most frequent custodian and is the sole custodian of thousands of relevant and hot documents.

12.      Meta first identified Mr. Jain in its initial disclosures in September 2022, as Director of Product Management, and explained he is likely to have discoverable information "including but not limited to Meta's tools that allow advertisers to target their advertising campaigns." **Exhibit 15** at 3, Meta's Rule 26(a) initial disclosures, dated September 21, 2022.

13.      Meta also indicated this current employee "may be contacted through Meta's counsel of record in this action." **Exhibit 15** at 3.

14.      In January 2023, Dinkar Jain ended his employment with Meta, but Meta *did not* inform Plaintiffs that Mr. Jain was no longer employed by Meta.

15.      Meta produced Mr. Jain's custodial documents throughout the discovery period, but did not inform Plaintiffs he was no longer a Meta employee.

/ / /

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

16.    On November 15, 2024, Plaintiffs' counsel sent Meta's counsel a letter, requesting that Meta make Dinkar Jain available for deposition in February 2025 and provide his availability by November 22. **Exhibit 16** at 2.

17.    On November 25, 2024, in response to Meta's insistence that Plaintiffs identify the general topic for each person Plaintiffs sought to depose, Plaintiffs explained, "Plaintiffs seek to depose [Mr. Jain] about engineering knowledge of Meta's ███████

| | |
|---|---|
| **From:** | Eric Kafka |
| **To:** | Harris, Darcy C.; Goldman, Lauren; McCloskey, Elizabeth K.; Reagan, Matthew C.; Crowley-Buck, David F.; Haspel, Leesa; Hines, Kory J |
| **Cc:** | Geoffrey Graber; Jay Barnes; Jenny Paulson; Eric Johnson; Jeffrey A. Koncius; Kaitlyn Fry; Andre Mura; Claire Torchiana; Shireen Hamdan; Nicole Ramirez; Jessica Mendez; Hanne Jensen; bterrell@terrellmarshall.com; Ryan Tack-Hooper; Jenna Waldman |
| **Subject:** | RE: Meta Pixel Litigation - Letters Regarding Depositions, Custodians, and Search Terms |
| **Date:** | Monday, November 25, 2024 12:31:15 PM |
| **Attachments:** | image001.png |

**EXTERNAL:** Think before you click!

Counsel,

Please see the information below about Plaintiffs' requested deponents.

1. **Tobias Wooldridge.** Plaintiffs seek to depose about engineering knowledge about the Meta Pixel and its receipt of sensitive healthcare information.

2. **Abhinav Anand.** Plaintiffs seek to depose about engineering knowledge about Meta's filter and how Meta stores Pixel data.

3. **Dinkar Jain.** Plaintiffs seek to depose about engineering knowledge about Meta' ███████

**Exhibit 17.**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

18.     On December 10, 2024, Meta's counsel wrote "to confirm that counsel for Meta will represent the following former employees who you have indicated you want to depose," including Mr. Jain:

| From: | Harris, Darcy C. |
|---|---|
| To: | EKafka@cohenmilstein.com; GGraber@cohenmilstein.com; Jay Barnes; Jenny Paulson; Eric Johnson; Jeffrey A. Koncius; Kaitlyn Fry; Andre Mura; Claire Torchiana; Shireen Hamdan; Nicole Ramirez; Jessica Mendez; Hanne Jensen; bterrell@terrellmarshall.com; Ryan Tack-Hooper; Jenna Waldman |
| Cc: | Goldman, Lauren; McCloskey, Elizabeth K.; Crowley-Buck, David F.; Haspel, Leesa; Reagan, Matthew C.; Hines, Kory J |
| Subject: | Depositions - In re Meta Pixel Healthcare Litigation |
| Date: | Tuesday, December 10, 2024 6:13:40 PM |

**EXTERNAL:** Think before you click!

Counsel,

I am writing to confirm that counsel for Meta will represent the following former employees who you have indicated you want to depose:

- Abhinav Anand
- Graham Mudd
- Dinkar Jain

**Exhibit 18.**

19.     From December 2024 to February 2025, Plaintiffs' counsel repeatedly inquired with Meta about when it would identify dates for Mr. Jain and other deponents identified.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

20.     On January 17, 2025, Plaintiffs' counsel wrote again to request a date for Mr. Jain:

| From: | Eric Kafka |
|---|---|
| To: | Crowley-Buck, David F.; Haspel, Leesa; Goldman, Lauren; Harris, Darcy C.; McCloskey, Elizabeth K.; Reagan, Matthew C.; McCroskey, Sean |
| Cc: | Jay Barnes; Geoffrey Graber; Jenny Paulson; Eric Johnson; Jeffrey A. Koncius; Andre Mura; Claire Torchiana; Nicole Ramirez; bdrachler@terrellmarshall.com; Jessica Mendez; Hanne Jensen; bterrell@terrellmarshall.com; Shireen Hamdan; Ryan Tack-Hooper; Jenna Waldman; Meta Pixel |
| Subject: | Meet-and-Confer Regarding Deposition Scheduling |
| Date: | Friday, January 17, 2025 5:12:47 PM |
| Attachments: | image001.png |

**EXTERNAL:** Think before you click!

Counsel,

I write to request a meet-and-confer regarding the plan for conducting depositions of Meta's employees and former employees. Please advise when you are available to confer.

As you are aware, Plaintiffs have requested deposition dates for 14 Meta witnesses, and will serve a Rule 30(b)(6) notice (in two phases) next week. Plaintiffs appreciate that Meta has provided deposition dates for Tobias Wooldridge, Jenny Streets, Rebecca Reza, and Graham Mudd. However, we still have not received a deposition date for Abhinav Anand, despite having served Meta with a deposition notice for him. Please provide a February deposition date for Abhinav Anand by Wednesday, January 22.

Plaintiffs ask that Meta make the following witnesses available in March and April respectively:
- Dinkar Jain – March 2025

**Exhibit 19.**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

21.     On February 13, 2025, Plaintiffs' counsel requested Mr. Jain's deposition again:

| | |
|---|---|
| **From:** | Eric Kafka |
| **To:** | Crowley-Buck, David F.; Jay Barnes; Claire Torchiana; Geoffrey Graber; Shireen Hamdan; Hanne Jensen; Andre Mura; Erin Gee; Jenny Paulson; Eric Johnson; An Truong; Shannell Graham; Mahnam Ghorbani; Jeffrey A. Koncius; Ramirezjones@kiesel.law; Mahnam Ghorbani; Taft@kiesel.law; Fry@kiesel.law; Jessica Mendez; bdrachler@terrellmarshall.com; asteiner@terrellmarshall.com; bterrell@terrellmarshall.com; rtack-hooper@terrellmarshall.com; jboschen@terrellmarshall.com; hrota@terrellmarshall.com; kbrown@terrellmarshall.com |
| **Cc:** | Harris, Darcy C.; McCloskey, Elizabeth K.; Haspel, Leesa; Reagan, Matthew C.; Buongiorno, Matt; McCroskey, Sean; Bernstein, Taylor; Turner, Kylah; Gensburg, Sam; Krimsky, Brendan |
| **Subject:** | RE: In re Meta Pixel Healthcare Litigation - Meet and Confer |
| **Date:** | Thursday, February 13, 2025 3:02:44 PM |
| **Attachments:** | image001.png |

**EXTERNAL:** Think before you click!

Counsel,

Plaintiffs' efforts to schedule depositions have been thwarted by Meta's refusal to discuss any expansion of the deposition limit (beyond 10), Meta's belated designation of Rule 30(b)(6) designees, and Meta's refusal to make Mr. Anand and Mr. Singhal available for deposition.

Nonetheless, Plaintiffs propose the following path forward:

1.  Plaintiffs propose that their deposition limit is expanded from 10 to 25.

2.  Plaintiffs ask that Meta agree to provide forty-two hours of Rule 30(b)(6) testimony. Plaintiffs agree that, if they take 42 hours of Rule 30(b)(6) testimony, this will count as 6 depositions. If Plaintiffs take fewer hours of 30(b)(6) testimony, this will count as fewer depositions. (For example, if Plaintiffs used 35 hours of 30(b)(6) testimony, it would count as 5 depositions.)

3.  Plaintiffs ask that Meta prioritize the following 8 depositions. Plaintiffs ask that Meta make *all* 8 of these witnesses available for deposition by March 15, 2025:

    i.   Graham Mudd - Date is already set for February 26
    ii.  Abhinav Anand
    iii. Manish Singhal
    iv.  Dinkar Jain

**Exhibit 20.**

/ / /

/ / /

/ / /

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

22.    On February 25, 2025, Meta's counsel sent Plaintiffs' counsel an email, stating, "Dinkar Jain is outside the country in India for the foreseeable future and is thus not available for a deposition, so we are working to identify an alternative witness":

> Counsel,
>
> In accordance with Judge DeMarchi's order and our prior discussions, Meta identifies the following dates for the depositions that plaintiffs requested on February 19.
>
> - Abhinav Anand:  March 26 or March 28, 2025 in Bellevue, WA
> - Jenny Lin:  March 18 and March 28, 2025 in Palo Alto, CA
>
> As we've separately discussed, Jenny Lin has a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and thus her deposition will need to take place over the course of two separate days.
>
> We also understand, from a phone call with Mr. Barnes today, that March 26 and March 28 do not work for plaintiffs for Mr. Anand's deposition.  We are working on an alternative date.  During that
>
> call, we also shared that Dinkar Jain is outside the country in India for the foreseeable future and is thus not available for a deposition, so we are working to identify an alternative witness.

**Exhibit 21** at 2-3.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

23.    On February 28, 2025, Plaintiffs identified the "need to discuss Mr. Jain":

| | |
|---|---|
| **From:** | Jay Barnes |
| **To:** | McCloskey, Elizabeth K.; Harris, Darcy C.; Claire Torchiana; EKafka@cohenmilstein.com; GGraber@cohenmilstein.com; Shireen Hamdan; Hanne Jensen; Andre Mura; Erin Gee; Jenny Paulson; Eric Johnson; An Truong; Shannell Graham; Mahnam Ghorbani; Jeffrey A. Koncius; Ramirezjones@kiesel.law; Mahnam Ghorbani; Taft@kiesel.law; Fry@kiesel.law; Jessica Mendez; bdrachler@terrellmarshall.com; asteiner@terrellmarshall.com; bterrell@terrellmarshall.com; rtack-hooper@terrellmarshall.com; jboschen@terrellmarshall.com; hrota@terrellmarshall.com; kbrown@terrellmarshall.com; filing@terrellmarshall.com; Jenna Waldman; Erin McCubbin |
| **Cc:** | *** MetaPixelCorrespondence |
| **Subject:** | RE: Deposition Dates - In re Meta Pixel Healthcare Litigation |
| **Date:** | Friday, February 28, 2025 10:08:05 AM |

Dear Counsel:

1. Yes, April 1 works for Plaintiffs for Mr. Anand. No fooling! #baddadjokes.
2. We will need to discuss Mr. Jain separately.

Sincerely,

Jay Barnes

**Exhibit 21** at 1.

24.    On March 8, 2025, Plaintiffs asked Meta in writing "whether it represents Mr. Jain in his *personal* capacity, and if not, provide the last known contact for Mr. Jain, or in the event that he has separate personal counsel, contact information for his personal counsel." Meta's counsel had refused to answer the question on two prior meet-and-confers. Plaintiffs understood that if Meta's counsel did not represent Mr. Jain in his personal capacity, Plaintiffs would need to arrange a deposition directly with Mr. Jain or his personal counsel via service of subpoena. Again, Meta did not respond. **Exhibit 22** at 2.

25.    On April 2, 2025, Meta served its First Supplemental Rule 26(a)(1) Disclosures, which omitted any reference to Dinkar Jain. **Exhibit 23**.

26.    On April 8, 2025, the parties met-and-conferred. Plaintiffs memorialized the conference in a letter that it sent to Meta on April 10, stating, "[A]t the end of the call, Meta indicated that it would identify Mr. Jain's personal counsel. Please do so immediately." **Exhibit 24** at 5.

27.    On April 10, 2025, Meta sent Plaintiffs a letter, stating: "In light of Meta's agreement to provide 30(b)(6) testimony on these topics, there is no need for Meta to "identify the person most

1   likely to have Mr. Jain's level of knowledge relating to the ███ ████ and Intent Pipelines at Meta,"

2   as you request via your March 8, 2025 correspondence." Meta's April 10 letter also stated that

3   questions about Mr. Jain's legal representation were best addressed to separate counsel and provided

4   the contact information for separate counsel – Kevin Chambers at Lathan & Watkins. Mr. Chambers

5   was not one of the three Latham & Watkins attorneys who had appeared for Meta the prior week.

6   **Exhibit 25**.

7       28.     On April 14, 2025, Plaintiffs sent Meta a letter, stating:

8

9       Thank you for providing the contact information for Mr. Jain's counsel. With respect
        to Mr. Jain, Plaintiffs may need to utilize the Hague Convention procedures to depose
10      him. This cannot be accomplished by May 30. Plaintiffs thus ask that Meta agree to the
        following compromise: Plaintiffs will seek to depose Mr. Jain through the Hague
11      Convention procedures (or other applicable procedures) after a ruling on class
        certification. Meta will not oppose or attempt to stop Plaintiffs from deposing Mr. Jain
12      after a ruling on class certification. Plaintiffs' deposition of Mr. Jain will not count
        towards Plaintiffs' twelve deposition limit.

13  **Exhibit 26.**

14      29.     The parties previously agreed that two witnesses—Robert Sherman and Brayton

15  Deckard—could be deposed in June 2025, due to their unavailability before the May 30th discovery

16  cutoff.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

30.     On May 29, 2025, Meta's counsel at Gibson Dunn took the position that Plaintiffs could not depose Mr. Jain because they had "already noticed all twelve of the fact depositions to which [they] are entitled pursuant to Judge DeMarchi's order (Dkt. 850).":

> **From:** Harris, Darcy C. <DHarris@gibsondunn.com>
> **Sent:** Thursday, May 29, 2025 5:56 PM
> **To:** Jeffrey A. Koncius <Koncius@kiesel.law>
> **Cc:** Nicole Ramirez Jones <ramirezjones@kiesel.law>; McCloskey, Elizabeth K. <EMcCloskey@gibsondunn.com>
> **Subject:** RE: Meta : Dinkar Jain issue
>
> Counsel,
>
> As we set out in the CMC statement filed on Tuesday (and in our prior correspondence on April 14 in response to your letter of the same date), Meta does not agree that plaintiffs can depose Mr. Jain. Plaintiffs have already noticed all twelve of the fact depositions to which you are entitled pursuant to Judge DeMarchi's order (Dkt. 850).  In addition, even if you had not reached your maximum number of fact depositions, Meta is not aware of any efforts by plaintiffs to comply with the necessary procedures to depose a non-party who is located outside the country.  To the extent you have represented to Mr. Jain's counsel that fact discovery in this matter is being extended through June, as you know, that is not accurate.
>
> If there is anything further to discuss, let us know.
>
> Thanks,
>
> Darcy

**Exhibit 27** at 4.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

31.    Plaintiffs responded by requesting that Meta work cooperatively with Plaintiffs to schedule the deposition:

> **From:** Jeffrey A. Koncius <Koncius@kiesel.law>
> **Sent:** Monday, June 2, 2025 7:28 PM
> **To:** Harris, Darcy C. <DHarris@gibsondunn.com>
> **Cc:** Nicole Ramirez Jones <ramirezjones@kiesel.law>; McCloskey, Elizabeth K. <EMcCloskey@gibsondunn.com>; jaybarnes@simmonsfirm.com; EKafka@cohenmilstein.com
> **Subject:** RE: Meta : Dinkar Jain issue
>
> Darcy—
>
> Following up, thanks. Please advise whether you will reconsider and act cooperatively for Mr. Jain to be deposed. And, if not, kindly give us times to meet and confer over the coming days so that we can satisfy our pre-Motion filing requirement seeking relief.
>
> Thanks.
>
> Jeff

**Exhibit 27** at 3.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

32.     Plaintiffs emailed Meta on June 2, 2025, requesting to confer regarding Mr. Jain's deposition and suggesting "swapping the deposition of Mr. Sherman for the deposition of Mr. Jain."

---

**From:** Eric Kafka <EKafka@cohenmilstein.com>
**Sent:** Monday, June 2, 2025 7:30 PM
**To:** Harris, Darcy C. <DHarris@gibsondunn.com>; Koncius@kiesel.law
**Cc:** Nicole Ramirez Jones <ramirezjones@kiesel.law>; McCloskey, Elizabeth K. <EMcCloskey@gibsondunn.com>; jaybarnes@simmonsfirm.com; Melanie.Blunschi@lw.com
**Subject:** RE: Meta : Dinkar Jain issue

Hi Darcy,

Plaintiffs are going forward with the deposition of Mr. Deckard.

Plaintiffs are willing to consider swapping the deposition of Mr. Sherman for the deposition of Mr. Jain. Please confirm the following by noon Pacific Time tomorrow:

1. Because Mr. Sherman is not listed on Meta's second supplemental initial disclosures, we understand that Meta will not call Mr. Sherman at trial, nor will Meta submit a declaration

from Mr. Sherman in opposition to class certification, in opposition to summary judgment, or for any purposes in this case. Please confirm.

2. Please confirm that, if Plaintiffs swap Mr. Jain for Mr. Sherman, that Plaintiffs will be permitted to depose Mr. Jain by June 16. To be clear, Plaintiffs are not willing to drop the deposition of Mr. Sherman just to be later told that Plaintiffs will not be able to depose Mr. Jain.

---

**Exhibit 27** at 1.

33.     Meta did not disclose Mr. Sherman as a potential witness in its Rule 26 disclosures until after the close of fact discovery. **Exhibit 28**, Meta's Fifth Supplemental Rule 26(a) Disclosures, at 3.

/ / /

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

34.     The parties held a conference on June 4, 2025, at which time Meta suggested Plaintiffs could cancel the deposition of Mr. Deckard to pursue the Jain deposition, but not the deposition of Mr. Sherman. Plaintiffs informed Meta that, because Meta would not agree to drop its 12-deposition limit objection for Mr. Jain, Plaintiffs would postpone Mr. Sherman's deposition so that the Jain deposition could be briefed.

35.     It was Meta who then insisted that this was a cancellation and would not allow Mr. Sherman to be deposed at any future point.

### Exhibits

1.     Attached hereto as Exhibit 1 is a true and accurate copy of Meta's Third Supplemental Responses and Objections to Plaintiffs' Third Set of Interrogatories.

2.     Attached hereto as Exhibit 2 is a true and accurate copy of Plaintiffs' March 4, 2024 letter to Meta.

3.     Attached hereto as Exhibit 3 is a true and accurate copy of Meta's First Set of Supplemental Responses and Objections to Plaintiffs' Fourth Set of Interrogatories

4.     Attached hereto as Exhibit 4 is a true and accurate copy of Plaintiffs' January 13, 2025 letter to Meta.

5.     Attached hereto as Exhibit 5 is a true and accurate copy of Plaintiffs' January 22, 2025 letter to Meta.

6.     Attached hereto as Exhibit 6 is a true and accurate copy of the parties' email correspondences from January and February 2025.

7.     Attached hereto as Exhibit 7 is a true and accurate copy of excerpts of the deposition transcript of Tobias Wooldridge.

8.     Attached hereto as Exhibit 8 is a true and accurate copy of excerpts of the deposition transcript of Abhinav Anand.

9.     Attached hereto as Exhibit 9 is a true and accurate copy of excerpts of the deposition transcript of Manish Singhal.

10.     Attached hereto as Exhibit 10 is a true and accurate copy of excerpts of the deposition transcript of Pushkar Tripathi.

11.     Attached hereto as Exhibit 11 is a true and accurate copy of excerpts of the deposition transcript of Mayurkumar Patel.

12.     Attached hereto as Exhibit 12 is a true and accurate copy of excerpts of the deposition transcript of Sukhesh Miryala.

13.     Attached hereto as Exhibit 13 is a true and accurate copy of a document produced by Meta in this case with the Bates label PIXEL_HEALTH000012085.

14.     Attached hereto as Exhibit 14 is a true and accurate copy of a document produced by Meta in this case with the Bates label PIXEL_HEALTH000152277.

15.     Attached hereto as Exhibit 15 is a true and accurate copy of Meta's Rule 26(a) Initial Disclosures, dated September 21, 2022.

16.     Attached hereto as Exhibit 16 is a true and accurate copy of Plaintiffs' November 15, 2024 letter to Meta.

17.     Attached hereto as Exhibit 17 is a true and accurate copy of Plaintiffs' November 25, 2024 email to Meta.

18.     Attached hereto as Exhibit 18 is a true and accurate copy of Plaintiffs' December 10, 2024 email to Meta.

19.     Attached hereto as Exhibit 19 is a true and accurate copy of Plaintiffs' January 17, 2025 email to Meta.

20.     Attached hereto as Exhibit 20 is a true and accurate copy of Plaintiffs' February 13, 2025 email to Meta.

21.     Attached hereto as Exhibit 21 is a true and accurate copy of the parties' email correspondences from February 25 & 28, 2025.

22.     Attached hereto as Exhibit 22 is a true and accurate copy of Plaintiffs' March 8, 2025 letter to Meta.

23.     Attached hereto as Exhibit 23 is a true and accurate copy of Meta's First Supplemental Rule 26(a) Disclosures, dated April 2, 2025.

24.     Attached hereto as Exhibit 24 is a true and accurate copy of Plaintiffs' April 10, 2025 letter to Meta.

25.     Attached hereto as Exhibit 25 is a true and accurate copy of Meta's April 10, 2025 letter to Plaintiffs.

26.     Attached hereto as Exhibit 26 is a true and accurate copy of Plaintiffs' April 14, 2025 letter to Meta.

27.     Attached hereto as Exhibit 27 is a true and accurate copy of the parties' June 2, 2025 email correspondences.

28.     Attached hereto as Exhibit 28 is a true and accurate copy of Meta's Fifth Supplemental Rule 26(a) Disclosures.

Executed June 30, 2025 in Koloa, Hawaii.

*/s/ Jason Barnes*

Jason "Jay" Barnes

## CIVIL L.R. 5-1(i)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: June 30, 2025                    */s/ Jeffrey A. Koncius*
                                       Jeffrey A. Koncius

DECLARATION OF JASON "JAY" BARNES IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

# EXHIBIT 1

FILED UNDER SEAL PURSUANT
TO PROTECTIVE ORDER

1
2
3
4
5

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

6

*Attorneys for Defendant Meta Platforms, Inc.*

7

8
9

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

10

11
12

IN RE META PIXEL HEALTHCARE
LITIGATION

13

This Document Relates To:

14

All Actions

15

16

Case No. 3:22-cv-03580-WHO (VKD)

CLASS ACTION

**DEFENDANT META PLATFORMS, INC.'S
THIRD SUPPLEMENTAL RESPONSES
AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES**

17
18
19

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:    THREE**

20

21

22

23

24

25

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules of the U.S. District for the Northern District of California ("Local Rules"), hereby provides the following supplemental responses and objections (the "Supplemental Responses") to Plaintiffs' Third Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated November 20, 2024.

26

27

28

Meta provides these Supplemental Responses subject to and without waiving the responses and objections contained in its initial responses dated December 20, 2024 ("Initial Response"), its First Set of Supplemental Responses dated February 24, 2025, and its Second Set of Supplemental Responses

dated March 18, 2025.  Meta likewise provides these Supplemental Responses subject to the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions in its Initial and Supplemental Responses and incorporates them by reference as if asserted herein.

## **INTERROGATORIES**

### **INTERROGATORY NO. 12:**

Describe in detail how Meta used Information collected from Healthcare Provider web-properties, Including a description of: the flow of such data from end-to-end in Meta's systems with identification of each Scuba, Hive, █████ up2x, or ZippyDB table, category, use case involved; any processors or internal services that are used to analyze, categorize, associate, or transform the data (such as the ████████) in each such table or location; how Meta used this data when creating or determining ████████ and/or user features for advertising use; and how the resulting █████ or features are used in Meta's advertising. Include examples from each such table, category, system, processor, or internal service. To the extent these descriptions vary by time, describe the changes during the relevant period and, to the extent Meta claims that any user, device, advertiser, regulatory, or other settings impact how data is used, describe such impacts during the relevant period.

### **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions identified in its Initial Response as though fully set forth in this Supplemental Response.  Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and phrases "describe in detail," "Healthcare Provider web-properties," "processors or internal services," "associate," "transform," "creating or determining," ████████" "user features," "for advertising use," and "resulting █████ or features."

(B)    Meta objects to this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome in that it directs Meta to "describe in detail" "the flow of [Information collected from Healthcare Provider web-properties] from end-to-end in Meta's systems with identification of" "each such table or location" and "examples from" a list of broad, undefined technologies and data sources.

Gibson, Dunn & Crutcher LLP

2

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

(C)     Meta objects to this Interrogatory to the extent it is unreasonably cumulative and duplicative and seeks information that is otherwise responsive to other specific Interrogatories, including Interrogatory No. 5.

(D)     Meta objects to this Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and is disproportionate to the needs of the case, including to the extent this Interrogatory seeks information that has nothing to do with Healthcare Provider web-properties' transmission of allegedly sensitive health information to Meta.

(E)     Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes at least twenty-two discrete sub-parts (i.e., "the flow of such data from end-to-end in Meta's systems with identification of each" "table, category, use case" for five technologies or data sources: (1) "Scuba," (2) "Hive," (3) ███████ (4) "up2x," or (5) "ZippyDB," as well as "any processors or internal services that are used to analyze, categorize, associate, or transform the data (such as the ███████) in each such table or location," "how Meta used this data when creating . . . ███████ "how Meta used this data when . . . determining ███████ "how Meta used this data when creating . . . user features," "how Meta used this data when . . . determining . . . user features," "how the resulting ███████ . . . are used in Meta's advertising," "how the resulting . . . features are used in Meta's advertising," as well as "examples" for five groups of technologies and data sources: (1) "table," (2) "category," (3) "system," (4) "processor," and (5) "internal service," as well as how each of the above "vary by time," "the changes during the relevant period," and the "impact [on] how data is used" of five types of settings: (1) "user," (2) "device," (3) "advertiser," (4) "regulatory," and (5) "other."   Meta objects that plaintiffs have already exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

(F)     Meta objects to this Interrogatory to the extent it seeks information beyond that required by the Court's February 10, 2025 order.  Meta objects to the term "sensitive information" as vague and ambiguous, including to the extent Meta would need to interpret information from third parties to understand whether specific data is "sensitive," to the extent Meta does not possess that data, and to the extent that it requires Meta to draw a legal conclusion in order to respond.   Meta further objects

3

that the phrases "principal tables and use[] cases" and "Healthcare Provider web-property" are vague and ambiguous.  Meta will construe the term "Healthcare Provider web-property" to refer to websites for entities covered by HIPAA or the CMIA.

(G)    Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

Pursuant to Dkt. 817 at 6–7 (III.2), Meta incorporates by reference its March 22, 2024 objections and supplemental response to Interrogatory No. 5, which requested that Meta identify the "repositories where Meta receives, re-directs, or stores data (including event-level and/or derived data) collected through or associated with the Meta Pixel for Medical Provider Web-Properties," and its February 24, 2025 objections and supplemental response to Interrogatory No. 12.

As for "the principal tables and uses cases through which sensitive information transmitted by Healthcare Provider web-properties to Meta via the Business Tools flows"—as described in Meta's responses and objections to plaintiffs' Interrogatory Nos. 7 and 8, which Meta incorporates by reference—Meta requires all third-party developers that use Meta's Business Tools to agree to the Business Tools Terms, under which developers specifically agree that they "will not share Business Tool Data with [Meta] that [they] know or reasonably should know is from or about children under the age of 13 or that includes health, financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)."  *See* PIXEL_HEALTH000421429.  Meta offers many resources to developers to help ensure that they comply with this contractual bar on sending sensitive data.  Moreover, as described in Meta's response to plaintiffs' Interrogatory No. 8, Meta has devoted significant time and effort to prevent the receipt, storage, and use of potentially sensitive information via the Business Tools, including the development, monitoring, and enhancement of integrity systems designed to detect and

Gibson, Dunn & Crutcher LLP

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

filter out potentially sensitive information, including potentially sensitive health information, before that information can be stored and used in Meta's advertising systems.

Importantly, it is likely that some of the data being filtered out is not actually sensitive. But to implement technical measures aimed at preventing the receipt and use of data that Meta does not want to receive (and contractually prohibits), Meta has designed its systems to err on the side of being overinclusive. In the ordinary course, Meta is not positioned to make a determination about whether any given data point is indeed sensitive, as that determination could require additional information about third parties that Meta may not possess. That is one reason why Meta's broader integrity efforts are designed to prevent the receipt and use of data that is potentially sensitive.

If any given Healthcare Provider web-property breached Meta's terms and sent "sensitive information" to Meta via the Business Tools, and if Meta's integrity systems designed to block or filter out that data from being stored or used did not detect that data as sensitive, then the data may have been treated in Meta's systems similar to other data received via the Business Tools—subject to the same privacy settings and controls that any user may apply, such as controls that allow users to opt-out of their off-Facebook activity being used for advertising purposes.

As described in Meta's Business Tools Terms, the principal use cases for data transmitted via the Business Tools are: (a) to match contact information to Meta user IDs; (b) to provide measurement and analytics services; (c) to deliver commercial and transactional messages; (d) to provide ad targeting services through custom audiences; and (e) to improve ad delivery, personalize features and content, and to improve, provide, and secure Meta's products. *See* PIXEL_HEALTH000421429; *see also* PIXEL_HEALTH000735582 (Meta's Privacy Policy).

As Meta has previously explained, Meta considers there to be six principal Hive tables that store Business Tool event data after Meta receives it: (1) ████████, (2) ████████, (3) ████████, (4) ████████, (5) ████████, and (6) ████████. If any given Healthcare Provider web-property breached Meta's terms and sent "sensitive information" to Meta via the Business Tools, and if Meta's integrity systems designed to block or filter out that data from being stored or used did not detect that data as potentially sensitive, then these tables could include

Gibson, Dunn &
Crutcher LLP

potentially "sensitive" data transmitted to Meta, depending on the data type, the developer's configuration of the Business Tools, and the user's ads settings.

However, as Meta has explained, there are millions of tables in Meta's Hive data warehouse. And, within Hive, numerous tables contain overlapping or duplicative subsets of data. The parties therefore previously undertook a protocol to trace the flow of potentially relevant Business Tool data from these six principal Hive tables downstream through Meta's systems (and then further downstream or upstream as requested by plaintiffs, subject to Meta's objections). *See* Dkt. 614. In total, the parties completed nine rounds of the protocol, which involved Meta identifying tables that potentially contained at-issue Business Tool data or data derived from such data. Meta incorporates pursuant to Rule 33(d) the productions Meta made pursuant to the protocol at Dkt. 614. To the extent that the parties disagree about whether a given Hive table qualifies as a "principal" table, plaintiffs have access to information concerning the tables in these productions, including information about the tables' data flow and what data fields they contain. *See* PIXEL_HEALTH000487249–PIXEL_HEALTH000487461; PIXEL_HEALTH000735690–PIXEL_HEALTH000735870; PIXEL_HEALTH000775983–PIXEL_HEALTH000776244; PIXEL_HEALTH000778052–PIXEL_HEALTH000780178; PIXEL_HEALTH000781627–PIXEL_HEALTH000781847; PIXEL_HEALTH000798427–PIXEL_HEALTH000798662; PIXEL_HEALTH000884539–PIXEL_HEALTH000884721; PIXEL_HEALTH000885357–PIXEL_HEALTH000885436; PIXEL_HEALTH000953475–PIXEL_HEALTH000953568.

Below Meta discusses, in the context of each of the principal use cases for Business Tool data, tables that could be considered "principal" tables related to those use cases during the Relevant Period.

(a) to match contact information to user IDs:

Meta may use hashed contact information transmitted with event data via the Business Tools to match events to Meta user IDs. *See* PIXEL_HEALTH000421429; PIXEL_HEALTH000873848. Matching may help increase the number of conversions attributed to ads run on Meta's products, allowing a business to understand the impact of their ads on conversion rates; decrease the cost per conversion by allowing Meta to better identify users likely to be interested in a particular ad; and increase the size of custom audiences. *See* PIXEL_HEALTH000873848. The principal tables that

Gibson, Dunn & Crutcher LLP

6

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

reflect matching activity for Business Tool data are ███████     ██████████ ███████████ and ██████ (the latter two of which have now been deprecated and folded into ████████ and ███████████). To illustrate, █████████ contains fields like ████████ and █████████████ that reflect information regarding how an event was matched to a user account. Other fields reflect the potential match keys transmitted with the event (e.g., the field █████████████) and which separable ID was matched (e.g., ████████████), among other fields. Another table called █████████████████████, which has now been deprecated and folded into █████████ and ████████, reflected identity matching information for offline events. Meta also stores information about the identity matching process from customer list uploads for data file custom audiences in a table called ██████████████████, from which Meta has produced data in this litigation.

     (b) to provide measurement and analytics services:

     Business Tool event data may also be used to provide measurement and analytics services, such as to prepare reports on behalf of advertisers on the impact of their advertising campaigns, including attributing conversions to on-platform impressions, and to generate analytics and insights about how people use advertisers' apps, websites, products, and services. *See* PIXEL_HEALTH000421429. These reports and analytics are primarily delivered to advertisers through Meta Events Manager and Meta Ads Manager—tools that allow advertisers to view certain aggregated and anonymized information regarding event data and manage their events, and to create and manage ads, respectively.

     As described in PIXEL_HEALTH000000064, which Meta incorporates by reference pursuant to Rule 33(d), Events Manager allows advertisers to "see the status of their pixel, e.g., which events they have set up, and how often those are firing." The Business Tool event data accessible in Events Manager comes from the principal tables ███████████ and ████████████. A now-deprecated table called ████████ previously was used for similar purposes. Meta also uses Saber, a system that manages and updates a large number of real time counters, to "power the counts in Events Manager." *Id.* The data flow diagram at PIXEL_HEALTH000000064 describes how Saber is ████████████ ████████████████████



Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████.” *Id.* To Meta's knowledge, Events Manager

3  data related to the Business Tools in these systems would duplicate, or be subsumed within, data related

4  to the Business Tools contained in Hive tables, including ███████████ and ███████████

5      PIXEL_HEALTH000000064 also shows data flows into Ads Manager, which is the starting

6  point for advertisers seeking to run ads on Meta's products. Ads Manager is a tool for creating ads,

7  managing where and when those ads run, and tracking ad campaign performance, including

8  conversions. Offsite events that might be attributed back to an ad on Meta's products (i.e., that could

9  potentially be classified as a conversion) are stored in ███████████████████, but the

10 event data in that table is the same as in ████████████. *See id.* Offsite events that are ultimately

11 attributed   back   to   an   ad   (i.e.,   conversions)   are   stored   in   a   table   called

12 ████████████████████████. *See id.* Data from this table is surfaced in Ads Manager;

13 a further table related to surfacing ads conversion information to advertisers in Ads Manager is called

14 ████████.

        (c) to deliver commercial and transactional messages:

16     Advertisers can use the Business Tools to send conversions information related to business

17 conversations in Messenger. The principal tables for Messenger-related data sent through Conversions

18 API are███████████ and ████████████████.

19     To the extent Meta's transparency efforts could be considered a use case for Business Tool data,

20 Meta allows users to download a copy of their information from Facebook ("Download Your

21 Information" or "DYI") and Instagram ("Download Your Data" or "DYD"). DYI/DYD data includes

22 information about the user's activity on Meta's products, such as photos the user has posted or things

23 the user has clicked on, as well as information sent to Meta via the Business Tools regarding activity

24 off of Facebook and Instagram that was matched to the user's account. Meta also has a separate tool

25 called Switchboard that it uses to respond to law enforcement requests. The data users may download

26 from Meta through DYI/DYD regarding the offsite activity matched to their accounts, and the similar

27 offsite activity data available in Switchboard, comes from a Hive table called ████████████ (which

28 contains data also included in other principal event data tables mentioned above).

Gibson, Dunn &
Crutcher LLP

8

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

(d) to provide ads targeting services through custom audiences:

Advertisers may provide Meta with event data to target ad campaigns to users who have interacted with their business by creating custom audiences. Custom audiences can be created from a variety of sources, such as customer lists uploaded by the advertiser to Meta, user interactions with the advertiser's on-platform content, or Business Tool event data. For that reason, the event data tables identified above are also principal tables as they pertain to custom audiences created using Business Tool event data. In order to generate custom audiences based on Business Tool data, Meta's systems use ZippyDB, specifically use case ▮▮▮▮▮▮, and pull data from a table called ▮▮▮▮▮▮▮▮▮ (which contains a subset of the data in the tables ▮▮▮▮▮ and ▮▮▮▮▮▮▮). The Up2X categories used in the delivery of ads involving custom audiences are ▮▮▮ and ▮▮▮▮▮. Data regarding the attributes of custom audiences generated by advertisers (including lookalike audiences) are stored in a principal table called ▮▮▮▮▮▮▮▮.

After an advertiser has made its audience selections, Meta delivers the ad using machine-learning models and real-time auctions. Once an ad request is received, the ad delivery process determines which ads are eligible to be shown to the user and uses a series of machine-learning models to predict which ads are most likely to provide positive and relevant experiences for the user and allow advertisers to achieve the business objectives they have chosen for their advertising. For each potential ad slot, Meta's system ranks the ads that are available to fill that slot, and the winning ad is displayed to the user.

(e) to improve ad delivery, personalize features and content, and to improve, provide, and secure Meta's products:

Business Tool event data is also used for two purposes related to providing and improving Meta's products: (1) to show ads and other sponsored or commercial content that are interesting and useful to users, and (2) to maintain the integrity of Meta's products, which include Facebook, Messenger, and Instagram.

*To show ads and other sponsored or commercial content that are interesting and useful to users:* Meta may use event data to personalize the content that it shows users (including ads), to

Gibson, Dunn & Crutcher LLP

9

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

1    determine the relevance of ads to users, and to improve the effectiveness of ad delivery.

2    PIXEL_HEALTH000421429.   As discussed above, conversions are an important input for ads

3    delivery, and principal tables related to ad conversions are identified above, including principal event

4    data tables.   To determine which ad will deliver the most value to users, Meta's machine learning

5    models consider ▮▮▮▮▮▮▮▮ called "features," in a dynamic manner to rank and ultimately

6    deliver ads to users.  Features can be based on many different types of information including ▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮

10       The principal table for generating features based on offsite data is ▮▮▮▮▮, as it is the

11   primary table containing Business Tools event data.   Meta understands plaintiffs are particularly

12   interested in the data flow associated with a table called ▮▮▮▮▮.   Although to Meta's

13   understanding ▮▮▮▮▮▮▮ is not necessarily a "principal" table for purposes of ads ranking

14   and delivery, Meta will briefly describe the data flow pertaining to ▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮.  For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮  This data is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which is then

21   processed and logged to a Hive table called ▮▮▮▮▮▮

22       A series of processors called ▮▮▮▮▮ then act on the ▮▮▮▮ data in

23   ▮▮▮▮▮ to parse the data for certain uses in Meta's ads systems.  ▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮.  PIXEL_HEALTH000661116.  Certain of these processors ▮▮▮▮▮▮▮▮

25   such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The

26   ▮▮▮▮ outputs are stored in ▮▮▮▮▮  To Meta's understanding, a table called

27   intent_pixel_gff_source was the predecessor to ▮▮▮▮▮.  Data in ▮▮▮▮▮ is

28   then ▮▮▮▮▮▮▮▮▮  The ▮▮▮▮▮▮▮ from this ▮▮▮ process

Gibson, Dunn &
Crutcher LLP

1  can be used to generate features and populate machine learning feature training tables, provided that

2  the data is ███████████████ being used in Meta's advertising systems. Features can then be

3  used in Meta's ads ranking models; features are served from Up2X and ZippyDB. Meta incorporates

4  pursuant to Rule 33(d) its November 27, 2024 letter regarding Up2X use cases, as well as its December

5  13, 2024 production of ZippyDB use cases (PIXEL_HEALTH000798688).

6  ████████████████████████████████████████████

7  ██████████ stage. ████████████████████████ present in ██████████.

8  For example, if the event is ██████████████████████████████████████

9  ████████████████████ Meta previously produced to plaintiffs the list of ██████████

10  and ██████████. PIXEL_HEALTH000878422.

11  Features currently are generated using a feature framework called ███ and features using that

12  framework can draw data from ██████████████ and ███ are older feature frameworks.

13  Features are stored in tables within the ███ framework, such as a table called

14  ████████████████████ That particular table is aggregated over multiple days into a table

15  called ██████████████████. The data in ████████████████████

16  is then transmitted to Up2X, where it may be used for ads ranking purposes.

17  *To maintain the integrity of Meta's products:* Meta's integrity team is responsible for Meta's

18  products, including the Business Tools, and part of that team's focus is monitoring for bugs or potential

19  issues and ensuring the Business Tools are functioning as designed. Meta's integrity efforts include

20  efforts to identify any potentially sensitive data transmitted to Meta via the Business Tools and to

21  prevent the transmission of that data or filter it out when it reaches Meta's systems. Again,

22  ████████████████████, and ██████████████ are principal tables related to Meta's

23  integrity efforts. For example, during the Relevant Period, there were fields in ██████████ related

24  to Meta's detection of potentially sensitive data, including fields named ██████████████ and

25  ████████████████████

26  Meta has also made available for inspection its Source Code and configuration repositories,

27  which includes Source Code and configuration files that reflect the flow of Business Tools data through

28  Meta's systems and its associated use. Meta incorporates by reference the documents cited above and

Gibson, Dunn &
Crutcher LLP

11

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

its Source Code and configuration files made available to plaintiffs pursuant to Rule 33(d). Meta reserves the right to supplement its objections and responses to this Interrogatory.

**INTERROGATORY NO. 13:**

Identify and describe all methodologies available to Meta engineers in the ordinary course of business to investigate data lineage for Meta Pixel, SDK, and other Business Tool data that Meta collects, Including the availability and abilities of the following:

    a. ▮▮▮▮▮▮▮▮ and any successor systems;

    b. the ability to use a ▮▮▮▮ to trace how a specific event flows through Meta's systems;

    c. the ability to use the ▮▮▮▮▮▮ tool or anything similar;

    d. the "discovery process" described in the publicly-available document at https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity, and the analysis/engineering Meta performed in support of the Off-Facebook Activity tool, similar to the question asked by the Hon. Virginia K. DeMarchi in Dkt. 580; and

    e. the current status of Meta's ability to track off-site Meta Pixel, SDK, and other Business tool data ingestion from end-to-end in Meta's systems, Including identifying the names of all such systems that can perform this or similar analyses, how they are used in the ordinary course of business, and whether there are applications or user interfaces available to Meta engineers to use them, similar to the question asked by the Hon. Virgina K. DeMarchi in Dkt. 580.

**RESPONSE TO INTERROGATORY NO. 13:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A) Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and phrases "abilities," ▮▮▮▮▮▮ "any successor systems," "anything similar," "track off-site Meta Pixel, SDK, and other Business tool data ingestion from end-to-end in Meta's systems," "similar to the question," "similar analyses," and "whether there are applications or user interfaces available to Meta engineers to use them."

Gibson, Dunn &
Crutcher LLP

(B)    Meta objects to this Interrogatory as overbroad, unduly burdensome, and improper discovery on discovery in that it seeks "all methodologies available to Meta engineers in the ordinary course of business to investigate data lineage for Meta Pixel, SDK, and other Business Tool data that Meta collects." *See Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Discovery into another party's discovery process is disfavored." (internal citation omitted)); *Uschold v. Carriage Servs., Inc.*, No. 17CV04424JSWEDL, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019 ("[D]iscovery on discovery . . . is not permissible.").

(C)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes sixteen discrete sub-parts (i.e., the availability and abilities of nine technologies:  (1) ████ (2) ████ (3) ████ (4) "any successor systems," (5) ████,] to trace how a specific event flows through Meta's systems," (6) ████████ (7) "anything similar, (8) "the 'discovery process' described in the publicly-available document at https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity," (9) "the analysis/engineering Meta performed in support of the Off-Facebook Activity tool," as well as "the current status of Meta's ability to track offsite . . . data ingestion from end-to-end in Meta's systems from three Business Tool groups: (1) "Meta Pixel," (2) "SDK," and (3) "other Business tool[s]," as well as "identifying the names of all such systems that can perform this" analysis, "identifying the names of all such systems that can perform . . . similar analyses," "how they are used in the ordinary course of business," and "whether there are applications or user interfaces available to Meta engineers to use them."

(D)    Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

The most comprehensive way to trace the full data lineage associated with Business Tool data received from a given developer is by reviewing the source code.  Although there are underlying lineage

Gibson, Dunn & Crutcher LLP

13

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

systems at Meta that attempt to track associations between tables—aspects of which can be accessed via Daiquery and related systems—Meta's data lineage frameworks operate at a higher level of generality (e.g., tracking overall table relationships) and are subject to many limitations. This lineage data can be thought of as "dependencies"—i.e., for a given table, on what other tables does it depend for data, in whole or in part.

Because Meta's lineage systems are limited, they ███████████████████████████ ████████████████████████████ or whether that data is relevant to this litigation. The only way to confirm whether a data source is relevant and non-duplicative of another data source is for ████████████████████████████████████████████████ ████████████████████████████████████████████████ Meta ██████████████████████████████████████████████ ████████████████████████████. Nor does Meta ██████████████████████ ████████████████████████████████████████████████ And table associations depend on ████████████████████████ ████████████████████████████████████████████████ ████████████████████.

Similarly, Meta cannot ████████████████████████████ to identify all Hive tables with that information. A ███████ is a unique identifier that, when present, can be used to correlate data in different sources that is related. An █████████████ is a unique identifier for an event or batch of events. PIXEL_HEALTH000300954. Whether or not ████████ (or ████████████) is included in a data source is an ad hoc decision, so whether such an ID can be used to correlate data in different sources is a case-by-case determination.

As Meta has explained previously, Daiquery is the most efficient way to use Meta's lineage systems, by querying them via Daiquery to produce ████████ or ████████ table information. The other tools or technologies referenced in this Interrogatory are either not as efficient or cannot be used to access table lineage data.[1] For example:

---

[1] Meta previously produced to plaintiffs documents concerning the "discovery process" undertaken as part of the process to develop the Off-Facebook Activity tool. Meta incorporates by reference these documents pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)



- ████████████████████████████ the same underlying table lineage data as Daiquery.

- ███ For the purpose of responding to this Interrogatory, Meta will construe the term ████ to refer to ████████████████████ is a framework that Meta previously used to ████████████████████████████ ████ was deprecated in 2022, ██████████████████████ █████████████████ ███ To the extent ██████████████ can be considered to have a successor framework, that successor framework is called ████████████ ███ Meta previously relied on one or more ███ table(s) when Meta ran queries using Daiquery to identify tables one level ████ or one level ████████ from other tables.

- ████ is a tool that ██████████████████████████ ████████████████ in data transmitted to Meta.  PIXEL_HEALTH000766632. Though a user identifier is not, on its own, sensitive data, Meta uses ██ to err on the side of overinclusion as part of its integrity efforts to identify any potentially sensitive data transmitted to Meta.  *Id.*  ██ labels include ██████████████ ███████████████████████, and ████████, as well as ████ ██████ terms such as ██████ and ████ ███. PIXEL_HEALTH000565826.

- ███ For the purpose of responding to this Interrogatory, Meta will construe the term ████ to refer to ██████████.  As its name suggests, the goal of ████████ ██████████████████████████████ ██████████████████████ PIXEL_HEALTH00029599.

---

from these documents will be substantially the same for plaintiffs as it would be for Meta.  See PIXEL_HEALTH000766433;    PIXEL_HEALTH000766361;    PIXEL_HEALTH000766369; PIXEL_HEALTH000766370.

Gibson, Dunn &
Crutcher LLP

DATED: May 1, 2025

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
        Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant Meta Platforms, Inc.*

Gibson, Dunn &
Crutcher LLP

16

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

# EXHIBIT 3

FILED UNDER SEAL PURSUANT
TO PROTECTIVE ORDER

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO (VKD) |
| This Document Relates To: | CLASS ACTION |
| All Actions | **DEFENDANT META PLATFORMS, INC.'S FIRST SET OF SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FOURTH SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:    FOUR**

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules of the U.S. District for the Northern District of California ("Local Rules"), hereby provides the following supplemental responses and objections (the "Supplemental Responses") to Plaintiffs' Fourth Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated December 27, 2024.

Meta provides these Supplemental Responses subject to and without waiving the responses and objections contained in its initial responses dated January 27, 2025 ("Initial Response"). Meta likewise provides these Supplemental Responses subject to the Preliminary Statement, General Objections,

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Objections to Definitions, and Objections to Instructions in its Initial Response and incorporates them by reference as if asserted herein.

### INTERROGATORIES

**INTERROGATORY NO. 15:**

Identify each source of Event-Level Data, ███████ Data, Crawled Data, or ███████ ███████ (except data for SubscribedButtonClick events) that You preserved and continue to preserve in connection with any pending litigation or investigation relating to the Meta Pixel that required you to preserve data. Your answer to this Interrogatory should include the fields, tables, or other Data Organization you preserved, the standard retention period for each data source, and the earliest date for which You have data from each data source.

**RESPONSE TO INTERROGATORY NO. 15:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions identified in its Initial Response as though fully set forth in this Supplemental Response. Meta further objects to this Interrogatory on the following additional grounds:

(A)     Meta objects to this Interrogatory on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation or in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client communications, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s).

(B)     Meta objects to this Interrogatory as vague and ambiguous in its use of the undefined terms and phrases "source," "preserved and continue to preserve," "pending litigation or investigation," and "required you to preserve data."

(C)     Meta objects to this Interrogatory as overbroad and unduly burdensome in that it asks Meta to "[i]dentify each source of Event-Level Data, ███████ Data, Crawled Data, or ███████ ███████ preserved in connection with "any pending litigation or investigation," without limitation as to time, scope, relevance, or otherwise.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(D)     Meta objects to this Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and is disproportionate to the needs of the case, including to the extent this Interrogatory seeks information that is wholly unrelated to this litigation and including to the extent this Interrogatory seeks information that does not relate to Healthcare Provider web-properties' transmission of allegedly sensitive health information to Meta and including to the extent this Interrogatory seeks the "standard retention period for each data source." Meta is not required to respond to Interrogatories that seek information that is not relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1); *see Wong v. Alameda Cnty.*, 2020 WL 6460530, at *2 (N.D. Cal. Nov. 3, 2020); *C & C Jewelry Mfg., Inc. v. West*, 2011 WL 768642, at *1 (N.D. Cal. Feb. 28, 2011).

(E)     Meta objects to this Interrogatory as argumentative to the extent it suggests Meta has or had an obligation to preserve information that is irrelevant to the claims in, or defenses to, this action.

(F)     Meta objects to this Interrogatory to the extent it suggests that Meta has or had an obligation to preserve duplicative information.

(G)     Meta objects to this Interrogatory as overbroad, unduly burdensome, and improper discovery on discovery in that it seeks "each source of Event-Level Data, ███████ Data, Crawled Data, or ████████████ (except data for SubscribedButtonClick events) that You preserved and continue to preserve in connection with any pending litigation or investigation relating to the Meta Pixel." *See Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Discovery into another party's discovery process is disfavored." (internal citation omitted)); *Uschold v. Carriage Servs., Inc.*, No. 17CV04424JSWEDL, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019 ("[D]iscovery on discovery . . . is not permissible.").

(H)     Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes at least twenty-four discrete sub-parts (i.e., "each source" of preserved (1) "Event-Level Data," (2) ███████ Data," (3) "Crawled Data," and (4) ████████████; every (5) "field[]," (6) "table[]," or (7) "other Data Organization" for each source of "Event-Level Data"; every (8) "field[]," (9) "table[]," or (10) "other Data Organization" for each source of ███████ Data"; every (11) "field[]," (12) "table[]," or (13) "other Data Organization" for each

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  source of "Crawled Data"; every (14) "field[]," (15) "table[]," or (16) "other Data Organization" for

2  each source of ███████████████ the "standard retention period" for each source of (17)

3  "Event-Level Data," (18) ██████████ Data," (19) "Crawled Data," and (20) ████████

4  █████████████ and the "earliest date for which You have data from each source" of (21) "Event-

5  Level Data," (22) ██████████████ (23) "Crawled Data," and (24) ██████████████

6  Meta objects that plaintiffs have already exceeded the number of interrogatories permitted under

7  Federal Rule of Civil Procedure 33(a)(1).

8      (I)     Meta objects to this Interrogatory to the extent it seeks information beyond that required

9  by the Court's April 11, 2025 order.  Meta is not required to respond to "discovery of every aspect of

10  Meta's preservation efforts."  Dkt. 969 at 8.  Meta will only provide the information the Court ruled

11  was permissible in the context of the parties' dispute regarding the deposition testimony sought by

12  plaintiffs pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  *See id.* (stating Meta must

13  provide "non-privileged information regarding the steps, if any, Meta took to preserve information

14  about health classifications and inferences for websites, apps, class members, and their

15  communications during the Class Period from the sources plaintiffs previously identified").  Meta will

16  construe the terms "health classifications and inferences" and "the sources plaintiffs previously

17  identified" to refer to the Hive tables and other data sources identified in plaintiffs' letters of January

18  13, 2025, January 22, 2025, and February 6, 2025.

19      (J)     Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks

20  information that is contained in documents that have been or are expected to be produced by Meta, and

21  the burden of deriving or ascertaining the information from those documents will be substantially the

22  same for plaintiffs as it would be for Meta.

23      Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

24  discovery in this action, Meta responds as follows:

25      Meta has preserved a significant amount of data related to this matter, including billions of rows

26  of data associated with the Pixel IDs that plaintiffs previously identified as relevant.  Meta has already

27  produced billions of rows and more than ██████████ of data it preserved from the Relevant Time

28  Period, including PIXEL_HEALTH000781416 through PIXEL_HEALTH000781615,

Gibson, Dunn &
Crutcher LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   PIXEL_HEALTH0007818560 through PIXEL_HEALTH000798401, PIXEL_HEALTH000781848

2   through                    PIXEL_HEALTH000781855,                    PIXEL_HEALTH000885356,

3   PIXEL_HEALTH_CWD0000001           through        PIXEL_HEALTH_CWD0000001091,        and

4   PIXEL_HEALTH001184309 through PIXEL_HEALTH001184508.  Meta has also already produced

5   documents discussing the retention periods for third-party data.  *See* PIXEL_HEALTH000150656,

6   PIXEL_HEALTH000547064;        PIXEL_HEALTH000864297;        PIXEL_HEALTH000763462;

7   PIXEL_HEALTH000873578.  Meta incorporates by reference these documents pursuant to Rule 33(d)

8   of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from

9   these documents will be substantially the same for plaintiffs as it would be for Meta.

10           Meta previously identified the earliest dates for which Meta has classwide data for U.S. users

11  from the six principal Hive tables Meta previously identified.  Meta preserved data associated with the

12  tables ▆▆▆▆  and  ▆▆▆▆▆▆▆▆▆, and based on a reasonable investigation, the

13  earliest date classwide data for U.S. users is available for these tables is July 2, 2022.  Meta preserved

14  data associated with the table ▆▆▆▆▆, and based on a reasonable investigation, the earliest

15  date classwide data for U.S. users is available for this table is November 26, 2022.  Meta preserved

16  data associated with the table ▆▆▆▆, and based on a reasonable investigation, the earliest date

17  classwide data for U.S. users is available for this table is February 25, 2022.  Meta preserved data

18  associated with the table ▆▆▆▆▆▆ and based on a reasonable investigation, the earliest

19  date classwide data for U.S. users is available for this table is February 17, 2023.  Meta preserved data

20  associated with the table ▆▆▆▆▆, and based on a reasonable investigation, the earliest date

21  classwide data for U.S. users is available for this table is March 30, 2022.  Meta has made available for

22  inspection its Source Code and configuration repositories, which includes Source Code and

23  configuration files that indicate data retention periods and fields for each of the above tables.  Meta has

24  also produced the schemas for these tables: PIXEL_HEALTH000110510 ▆▆▆▆▆;

25  PIXEL_HEALTH000487394          (▆▆▆▆▆▆▆);          PIXEL_HEALTH000110512

26  (▆▆▆▆▆);  PIXEL_HEALTH000624741  (▆▆▆▆;  PIXEL_HEALTH000110508

27  (▆▆▆▆▆); and PIXEL_HEALTH000110502 (▆▆▆▆▆.  Meta incorporates

28  by reference these documents and its Source Code and configuration files made available to plaintiffs

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from the referenced documents and the Source Code will be substantially the same for plaintiffs as it would be for Meta.

Plaintiffs' letters of January 13, 2025, January 22, 2025, and February 6, 2025 listed certain Hive tables and data sources regarding which plaintiffs sought preservation information. Meta has preserved certain of the Hive tables included in those letters. Meta preserved data associated with the table ███████████████, and based on a reasonable investigation, the earliest date classwide data for U.S. users is available for this table is July 25, 2024. Meta preserved data associated with the table ███████████, and based on a reasonable investigation, the earliest date classwide data for U.S. users for the Pixel IDs for which Meta preserved data (including those previously identified by plaintiffs on June 21, 2023) is available for this table is September 6, 2024. Meta preserved data associated with the table ████████████████, and based on a reasonable investigation, the earliest date classwide data for U.S. users is available for this table is December 20, 2024. Meta preserved data associated with the table ███████████, and based on a reasonable investigation, the earliest date classwide data for U.S. users is available for this table is March 9, 2024. Meta has made available for inspection its Source Code and configuration repositories, which includes Source Code and configuration files that indicate data retention periods and fields for each of the above tables. Meta has also produced the schemas for these tables: PIXEL_HEALTH000487458 (█████████████████████████); PIXEL_HEALTH000300958 (████████████; PIXEL_HEALTH000735842 █████████████████); and PIXEL_HEALTH000487408 ███████████████. Meta incorporates by reference these documents and its Source Code and configuration files made available to plaintiffs pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from the referenced documents and the Source Code will be substantially the same for plaintiffs as it would be for Meta.

Plaintiffs' January 22, 2025 letter also refers to a table named ███████████████████ as a table regarding which plaintiffs sought preservation information. No such table appears to exist. To the extent plaintiffs intended to refer to the table

Gibson, Dunn & Crutcher LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

███████████████████████████████ Meta preserved data associated with that table, and based on a reasonable investigation, the earliest date classwide data for U.S. users is available for this table is August 7, 2024.  Meta has made available for inspection its Source Code and configuration repositories, which includes Source Code and configuration files that indicate the data retention period and fields for this table.  Meta has also produced the schema for this table: PIXEL_HEALTH000779470.  Meta incorporates by reference this document and its Source Code and configuration files made available to plaintiffs pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from the referenced document and the Source Code will be substantially the same for plaintiffs as it would be for Meta.

As Meta has previously explained, numerous tables within Hive contain overlapping or duplicative subsets of data reflecting the same events from the same entities, but many tables downstream from the six principal tables identified above offer permutations of the same events with only a small number of additional, appended fields.  Therefore, some or all of the data stored in the tables identified in plaintiffs' letters may also be stored in other tables Meta preserved.

Based on a reasonable investigation, Meta has not preserved the following Hive tables identified in plaintiffs' letters of January 13, 2025, January 22, 2025, and February 6, 2025 beyond their standard retention periods within Meta's systems:[1] ███████████████

███████████████████████     ███████████████

███████████████████         ███████████████

███████████████████████     ███████████████

███████████████████████     ███████████████

███████████████            ███████████████████████

███████████████████████     ███████████████

---

[1] The following tables listed in plaintiffs' letters appear not to exist: ███████████████████████
███████████████████████████████████████████
██████████████████████████████████████████
███████████████████   ████████████████████
███████████████████         ████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



1   █████████████████

2   ████████████████████████████████       ████████████████████

3   ███████████████████████             ██████████████████████████

4   ███████████████   █████████████   ███████████████████;  and

5   ██████████████.  Based on a reasonable investigation, Meta has not preserved the table

6   ██████████████ which appears to be empty and unused.  Based on a reasonable

7   investigation, the tables above do not contain relevant, unique data regarding "health classifications

8   and inferences for websites, apps, class members, and their communications during the Class Period

9   from the sources plaintiffs previously identified" (Dkt. 969 at 8) that would not be duplicative of or

10  subsumed within the data in other tables or data sources that Meta has preserved.  Meta has made

11  available for inspection its Source Code and configuration repositories, which includes Source Code

12  and configuration files that indicate data retention periods and fields for each of the above tables.  Meta

13  has also produced the schemas for many of these tables:  PIXEL_HEALTH000735737

14  ██████████████;   PIXEL_HEALTH000735843 (███████████████████████████);

15  PIXEL_HEALTH000735557 (████████████████████);   PIXEL_HEALTH000776162

16  (█████████████████████ PIXEL_HEALTH000779505 (███████████████████);

17  PIXEL_HEALTH000779463                    ████████████████████████████;

18  PIXEL_HEALTH000779182                    ████████████████████████████;

19  PIXEL_HEALTH000779431                    ████████████████████████████;

20  PIXEL_HEALTH000779185   ███████████████████;   PIXEL_HEALTH000779437

21  ██████████████████;                       PIXEL_HEALTH000781805

22  █████████████████████                     PIXEL_HEALTH000781833

23  █████████████████████);                   PIXEL_HEALTH000779355

24  ██████████████████;                       PIXEL_HEALTH000781718

25  ██████████████████;       and            PIXEL_HEALTH000781764

26  ██████████████████████████.   Meta incorporates by

27  reference these documents and its Source Code and configuration files made available to plaintiffs

28  pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

sought by plaintiffs from the referenced documents and the Source Code will be substantially the same for plaintiffs as it would be for Meta.

Based on a reasonable investigation, Meta has not preserved the following ZippyDB use cases identified in plaintiffs' letters of January 13, 2025, January 22, 2025, and February 6, 2025 beyond their standard retention periods within Meta's systems:[2] ██████████ ████████████ ██████████ ███████ ██████ ████████ ███████ ████████ ███████ ████████ ██████████████████ ███████ ████████ ██████ ████████ ███████ ████████ ████████████████ ████████ ██████ ████████ ███████ ████████ ██████ ████████ ████████ ████████ ███████ ██████████ ██████ ████████ ████████ ██████ ███████ ██████████████ and ████████████ Meta did not preserve these ZippyDB use cases because Meta determined based on a reasonable investigation that it would have been unduly burdensome to do so.  Nonetheless, based on an agreement between the parties, Meta produced exemplar data from ZippyDB at PIXEL_HEALTH001151446         through         PIXEL_HEALTH001161443,         and PIXEL_HEALTH001228455 through PIXEL_HEALTH001238454.  Meta incorporates by reference these documents pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from these documents will be substantially the same for plaintiffs as it would be for Meta.  As Meta has previously explained, ZippyDB use cases only ██████████ ████████████████████████. Meta has made available for inspection its Source Code and configuration repositories, which includes Source Code and configuration files that indicate data retention periods for each of the above use cases and additional information concerning the structure of values within ZippyDB.  Meta incorporates by reference its

---

[2]  The following ZippyDB use cases listed in plaintiffs' letters appear not to exist: ████████████ ████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Source Code and configuration files made available to plaintiffs pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from the Source Code will be substantially the same for plaintiffs as it would be for Meta.

Based on a reasonable investigation, Meta has not preserved the following Up2X categories identified in plaintiffs' letters of January 13, 2025, January 22, 2025, and February 6, 2025 beyond their standard retention periods within Meta's systems:[3] ███████████████

███████████            ████████████

███████████████            ███████████

█████████            █████████████████

████████████████

██████████████            ███████████

███████        ██████████        ██████████

████████████            ████████████████

████████            █████████████████

███████████            █████████████████

██████████            █████████████████

████████            ███████████████

████████            ████████████████

██████████        █████████████████

████████████████████

██████████████

████████████

████████            ███████████████

██████████            ████████████████

██████████            ████████████████

██████████████████

---

[33] The following Up2X categories listed in plaintiffs' letters appear not to exist: ████████████ and ████████            █████████████

Gibson, Dunn & Crutcher LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ████████████████████████    ██████████████████████████████

2  ████████████████████████ and ████████████████    Meta did not preserve these Up2X

3  categories because Meta determined based on a reasonable investigation that it would have been unduly

4  burdensome to do so.   Nonetheless, based on an agreement between the parties, Meta produced

5  exemplar data from Up2X at PIXEL_HEALTH000955135 through PIXEL_HEALTH001151445, and

6  PIXEL_HEALTH001255217 through PIXEL_HEALTH001284005.   Meta incorporates by reference

7  these documents pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining

8  the information sought by plaintiffs from these documents will be substantially the same for plaintiffs

9  as it would be for Meta.   As Meta has previously explained, Up2X categories only ███████████

10  ████████████████████████████████████████████████████    Meta has made available

11  for inspection its Source Code and configuration repositories, which includes Source Code and

12  configuration files that indicate data retention periods for each of the above categories and additional

13  information concerning the structure of values within Up2X.   Meta incorporates by reference its Source

14  Code and configuration files made available to plaintiffs pursuant to Rule 33(d) of the Federal Rules,

15  as the burden of deriving or ascertaining the information sought by plaintiffs from the Source Code

16  will be substantially the same for plaintiffs as it would be for Meta.

17      Meta reserves the right to supplement its objections and response to this Interrogatory.

18  **INTERROGATORY NO. 16:**

19      Identify any litigation hold(s) or other steps you took to preserve Event-Level Data, ███████

20  Data, Crawled Data, or ██████████████████ (except data for SubscribedButtonClick events) in

21  connection with any pending litigation or investigation relating to the Meta Pixel that required you to

22  preserve data. Your answer to this Interrogatory should include (i) the date(s) Meta issued any litigation

23  hold(s) or took steps to preserve data; (ii) the Meta employees who received the litigation hold(s) or

24  other communications instructing them to preserve data; (iii) the data sources and tables, fields, or other

25  Data Organization Meta employees were instructed to preserve; and (iv) the specific actions Meta

26  employees were instructed to take to effectuate the litigation hold(s).

27  **RESPONSE TO INTERROGATORY NO. 16:**

28      Meta restates and incorporates its Preliminary Statement, General Objections, Objections to

Definitions, and Objections to Instructions identified in its Initial Response as though fully set forth in this Supplemental Response. Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory on the grounds and to the extent it purports to request the identification and disclosure of any information, communication(s), or document(s) that were prepared in anticipation of litigation or in connection with any internal investigation conducted at the direction of counsel, constitute attorney work product, reveal privileged attorney-client communications, or are otherwise protected or immune from disclosure under any applicable privilege(s), law(s), or rule(s). *See* Order re March 21, 2025 Discovery Dispute, *E.H. v. Meta Platforms, Inc.*, No. 23-cv-04784-WHO (VKD) (N.D. Cal. Mar. 31, 2025).

(B)    Meta objects to this Interrogatory as vague and ambiguous in its use of the undefined phrases "other steps," "any pending litigation or investigation," "required you to preserve data," "steps to preserve data," "other communications," and "effectuate the litigation hold(s)."

(C)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it asks Meta to "[i]dentify any litigation hold(s) or other steps you took to preserve Event-Level Data, ███████ Data, Crawled Data, or ███████████ (except data for SubscribedButtonClick events) in connection with any pending litigation or investigation relating to the Meta Pixel that required you to preserve data," without limitation as to time, scope, relevance, or otherwise. *See* Order re March 21, 2025 Discovery Dispute, *E.H. v. Meta Platforms, Inc.*, No. 23-cv-04784-WHO (VKD) (N.D. Cal. Mar. 31, 2025).

(D)    Meta objects to this Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and is disproportionate to the needs of the case, including to the extent this Interrogatory seeks information that is wholly unrelated to this litigation and including to the extent this Interrogatory seeks information that does not relate to Healthcare Provider web-properties' transmission of allegedly sensitive health information to Meta. Meta is not required to respond to Interrogatories that seek information that is not relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1); *see Wong v. Alameda Cnty.*, 2020 WL 6460530, at *2 (N.D. Cal. Nov. 3, 2020); *C & C Jewelry Mfg., Inc. v. West*, 2011 WL 768642, at *1 (N.D. Cal. Feb. 28, 2011); Order re

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

March 21, 2025 Discovery Dispute, *E.H. v. Meta Platforms, Inc.*, No. 23-cv-04784-WHO (VKD) (N.D. Cal. Mar. 31, 2025).

(E)     Meta objects to this Interrogatory as argumentative to the extent it suggests Meta has or had an obligation to preserve information that is irrelevant to the claims in, or defenses to, this action.

(F)     Meta objects to this Interrogatory as overbroad, unduly burdensome, and improper discovery on discovery in that it asks Meta to "[i]dentify any litigation hold(s) or other steps you took to preserve Event-Level Data, ███████ Data, Crawled Data, or ████████████ (except data for SubscribedButtonClick events) in connection with any pending litigation or investigation relating to the Meta Pixel that required you to preserve data." *See Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Discovery into another party's discovery process is disfavored." (internal citation omitted)); *Uschold v. Carriage Servs., Inc.*, No. 17CV04424JSWEDL, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019 ("[D]iscovery on discovery . . . is not permissible."); Order re March 21, 2025 Discovery Dispute, *E.H. v. Meta Platforms, Inc.*, No. 23-cv-04784-WHO (VKD) (N.D. Cal. Mar. 31, 2025).

(G)     Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes at least fourteen discrete sub-parts (i.e., (1) the "dates" of, (2) the "employees who received," the (3) data sources, (4) tables, (5) fields, and (6) other Data Organization, included in, and (7) the specific actions required by any "litigation hold(s)"; and (8) the "dates" of, (9) the "employees who received," the (10) data sources, (11) tables, (12) fields, and (13) other Data Organization, included in, and (14) the specific actions required by any "other steps" or "other communications instructing [employees] to preserve data"). Meta objects that plaintiffs have already exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

(H)     Meta objects to this Interrogatory to the extent it seeks information beyond that required by the Court's April 11, 2025 order. Meta is not required to respond to "discovery of every aspect of Meta's preservation efforts." Dkt. 969 at 8. Meta will only provide the information the Court ruled was permissible in the context of the parties' dispute regarding deposition testimony sought by

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  plaintiffs pursuant to Rule 30(b)(6) of the Federal Rules Of Civil Procedure.  *See id.* (stating Meta must

2  provide "non-privileged information regarding the steps, if any, Meta took to preserve information

3  about health classifications and inferences for websites, apps, class members, and their

4  communications during the Class Period from the sources plaintiffs previously identified").  Meta will

5  construe the terms "health classifications and inferences" and "the sources plaintiffs previously

6  identified" to refer to the Hive tables and other data sources identified in plaintiffs' letters of January

7  13, 2025, January 22, 2025, and February 6, 2025.

8          Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

9  discovery in this action, Meta responds as follows with regard to the tables and data sources identified

10  as having been preserved in Meta's supplemental response to Interrogatory No. 15 above:

11          Meta's preservation efforts in this case have been diligent, extensive, and ongoing.  As Meta

12  has previously explained, including in the Declaration Of Qiwen ("Carrol") Xia In Support Of Meta's

13  Opposition To Plaintiffs' Motion For Sanctions, Dkt. 799-2, Meta's data warehouse (called "Hive")

14  consists of millions of individual data tables.  It is not uncommon for data in different tables to overlap

15  in full or in significant part.  Business Tool data may be logged in some form in ████████████

16  of individual tables, which could overlap in substantial part.  In addition, Meta's data systems are

17  dynamic.  Individual tables can change at any time—data fields can be added, removed, or renamed;

18  the data those fields contain can change; and tables can be created, combined, or discontinued as Meta's

19  business evolves.

20          Ascertaining which tables and fields have unique, potentially relevant data at a specific point

21  in time is an iterative and time-consuming process—and often requires the input of engineers who can

22  interpret source code.  Because of the volume of tables at Meta, it is often time consuming to understand

23  what a particular table does and whether the table has unique data not available elsewhere.  Each table

24  in Hive has an individual retention period that dictates how long such data stays in Meta's systems in

25  the ordinary course.  That retention period can be infinite or very short, depending on the purpose and

26  contents of the table and/or regulatory requirements.  Because the identification of tables for

27  preservation takes time, data may fall out of retention during the process described above.

28

Gibson, Dunn &
Crutcher LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Once tables are determined to contain potentially relevant and non-duplicative data, it may be possible for Meta to place them on legal hold in full. However, the feasibility of that approach will depend on the type of data contained within the table, the volume of data contained in the table, and how quickly it is growing. The size of certain tables at Meta can be extraordinary and/or can grow at extremely fast rates, such that placing them on hold could cause them to grow so large as to be disproportionately burdensome to preserve over the life of the matter, due to storage space and other limitations.

A partial solution to table preservation obstacles is to build what is called a "pipeline," which in this context means that a Meta engineer or data scientist writes code to assist with extracting only certain data—which counsel has identified as potentially relevant to litigation—from an existing table to create a new table that contains only that data. When Meta builds a pipeline in the ordinary course, the pipeline will often populate data as it comes in on a going-forward basis, as the source receives data. But if Meta wants to capture historical data, it must perform a second process called a "backfill." A backfill involves running the pipeline over a designated historical date period, which may depend on the table's retention setting. While backfilling allows Meta to capture historical data still within the retention period, it requires additional time and resources to accomplish. Building a pipeline and backfilling to capture historical data can take weeks or months to complete, depending on the size of the table and the amount of storage, compute, and human resources available.

Before the first complaint in this litigation was filed, Meta had already completed a preservation pipeline containing all United States data from a table called ███████████ This pipeline was originally built to effectuate preservation measures unrelated to claims in this case.

Similarly, before this case was filed, Meta placed on hold in its entirety a principal table related to offsite app event data called ███████

After further investigation, on September 29, 2022, Meta placed on hold two more voluminous tables in their entirety: ███████████ and a companion table called ███████████████

In January 2023, Meta determined that the tables called ███████████ and ████████████████ potentially contained additional Pixel data related to button clicks. Meta

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  therefore began the process of pipelining and backfilling those tables in January 2023, and it completed

2  those efforts on February 23, 2023.

3        In August 2024, Meta determined that the table called ███████████ potentially

4  contained unique, relevant data.  Meta therefore began the process of pipelining and backfilling that

5  table in August 2024, and it completed those efforts on October 11, 2024.

6        After further investigation, on August 23, 2024, Meta placed on hold a table called

7  ██████████████████████████ in its entirety.

8        After further investigation, on September 6, 2024, Meta placed on hold a table called

9  ███████████ in its entirety.

10        After further investigation, on September 20, 2024, Meta placed on hold a table called

11  ██████████████████ in its entirety.

12        After further investigation, on March 19, 2025, Meta placed on hold a table called

13  ███████████████████ in its entirety.

14        Meta incorporates by reference the Declaration Of Qiwen ("Carrol") Xia In Support Of Meta's

15  Opposition To Plaintiffs' Motion For Sanctions, Dkt. 799-2, pursuant to Rule 33(d) of the Federal

16  Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from this document

17  will be substantially the same for plaintiffs as it would be for Meta.

18

19

20  DATED: May 28, 2025                Respectfully submitted,

21                                        **GIBSON, DUNN & CRUTCHER LLP**

22                                  By: */s/ Lauren R. Goldman*

23                                     Lauren R. Goldman (*pro hac vice*)

24                                  *Attorneys for Defendant Meta Platforms, Inc.*

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**VERIFICATION**

I, Qiwen ("Carrol") Xia, a Senior Data Scientist at Meta Platforms, Inc. ("Meta"), am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing First Set of Supplemental Responses and Objections to Plaintiffs' Fourth Set of Interrogatories. The responses were prepared by Meta's counsel with assistance from Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing First Set of Supplemental Responses and Objections to Plaintiffs' Fourth Set Interrogatories are true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on May 28, 2025

Signed by:

*Qiwen Xia*

A705EDF159D44F1...

Gibson, Dunn &
Crutcher LLP

# EXHIBIT 7

Page 1

1

1          IN THE UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                 SAN FRANCISCO DIVISION
   _____
4
   IN RE: META PIXEL              )
5  HEALTHCARE LITIGATION          )
                                  )
6                                 )
                                  ) NO. 3:22-cv-3580-WHO
7  This document relates to:      )
                                  )
8  Case 3:22-cv-3580-WHO(Doe)     )
                                  )
9
   _____
10
               VIDEO-RECORDED DEPOSITION
11             UPON ORAL EXAMINATION OF
12                 TOBIAS WOOLDRIDGE
   _____
13
14
15                    8:45 A.M.
16                JANUARY 31, 2025
17          LOCATION: BELLEVUE, WASHINGTON
18
               **HIGHLY CONFIDENTIAL**
19
20
21
22
23
24
   REPORTED BY:  VICKY L. PINSON, RPR-CCR Washington 2559
25             California No. 9845; Oregon No. 16-0442

```
                                            Page 2

                                                2
 1                 A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFFS:
 4        JAY BARNES
          Simmons Hanly Conroy
 5        112 Madison Avenue
          New York, NY 10016-7416
 6        212.784.6400
          jaybarnes@simmonsfirm.com
 7
 8        ERIC S. JOHNSON
          Simmons Hanly Conroy
 9        One Court Street
          Alton, IL 62002
10        618.259.6275
          ejohnsonsimmonsfirm.com
11
12        RYAN TACK-HOOPER
          Terrell Marshall Law Group, PLLC
13        936 N. 34th Street, Ste 300
          Seattle, WA 98103
14        206.816.6603
          Ryan@terrellmarshall.com
15
16        BETH TERRELL
          Terrell Marshall Law Group, PLLC
17        936 N. 34th Street, Ste 300
          Seattle, WA 98103
18        206.816.6603
          Beth@terrellmarshall.com
19
20   FOR THE DEFENDANT:
21        ELIZABETH K. McCLOSKEY
          Gibson Dunn
22        One Embarcadero Center, Ste 2600
          San Francisco, CA 94111
23        415.393.4622
          Emccloskey@gibsondunn.com
24
25   Continuing on next page...
```

Page 3

3

```
 1              A P P E A R A N C E S
 2                  (Continued)
 3
 4    FOR THE DEFENDANTS:
 5         MATT BUONGIORNO
           Gibson Dunn
 6         2001 Ross Avenue, Ste 2100
           Dallas, TX 75201
 7         214.698.3204
           Mbuongiorno@gibsondunn.com
 8
 9         NIKKI STITT SOKOL
           Director and Associate General Counsel
10         Facebook Legal
           650.815.8154
11         nsokol@fb.com
12
           CARRIE BODNER (via remote connection)
13         Kirkland & Ellis, LLP
           601 Lexington Avenue, Fl 50
14         New York, NY 10022
           212.446.5912
15         Carrie.bodner@kirkland.com
16
17
18    ALSO PRESENT:
19         LORI TALBOTT, Video Specialist
20
21
22
23
24
25
```

*** HIGHLY CONFIDENTIA120**

1  it had a granular subcategorization within that.

2      Q.  Who would know that?

3            MS. MCCLOSKEY:  Object to form.  Calls for

4  speculation.

5      A.  I am not sure who specifically would know

6  that.  I would look at the code of that system to find

7  out.

8      Q.  And ████████    however, does have more

9  granular classifications than just health.  Correct?

10            MS. MCCLOSKEY:  Object to form.

11      A.  ███████████████████████  ████████

12  ████████████████████████

13      Q.  And ██████  classifies domains.  Correct?

14            MS. MCCLOSKEY:  Object to form.

15      A.  My familiarity with ████████  is primarily in

16  its usage to categorize ads.

17      Q.  The next is:  Spend associated with these

18  Pixels.  See ████████████.

19        Why are you looking at that table for this

20  project?

21            MS. MCCLOSKEY:  Object to form.

22      A.  I don't know why I was looking at it in this

23  particular context.

24      Q.  What's in that table, Mr. Wooldridge?

25      A.  I believe the primary piece of information in

Page 187

*** HIGHLY CONFIDENTIA187**

```
 1      Q.  Okay.  Is the data used in downstream
 2   advertising systems ██████████ first?
 3              MS. MCCLOSKEY:  Object to form.
 4      A.  Generally speaking, no.
 5      Q.  Okay.  Is data -- is the ██████████ -- is the
 6   ██████████ used for user features?
 7              MS. MCCLOSKEY:  Object to form.
 8      A.  It possibly could be.
 9      Q.  Is it used -- is the ██████████ used in
10   forming ██████████
11              MS. MCCLOSKEY:  Object to form.  Vague.
12      A.  At a very high level I understand there are
13   two systems with such names, but I am not an expert on
14   that.
15      Q.  By not an expert on that, let's define that a
16   little further.  Do you mean you're not an expert on
17   Meta's process of identifying ██████████ associated
18   with events collected through the Pixel or SDK?
19      A.  I am not familiar with systems that may be
20   described as ██████
21      Q.  Okay.  And are you also not familiar with
22   systems relating to the creation of user features that
23   are derived in whole or in part from data collected
24   through the Pixel and SDK?
25      A.  Only at a very high level.  That's one way to
```

Page 188

*** HIGHLY CONFIDENTIA188**

1   get me to not.

2       Q.   Okay.   Ask you questions about user features

3   and ███████████████, and thank you for the forthright

4   answer.

5            Let's go back to page 2, if we could, of

6   Exhibit 2.   Row 22.   If you look at column X, and I'll

7   tell you we had to remove a bunch of columns from this

8   data because, as you know, these tables are very large,

9   and there would be no way to produce this in a document

10  if we did not cut it down to its core for these

11  questions.

12           But in column X, ████████████████████████████

13  ████████, it's highlighted in yellow?   Sorry, the row is

14  highlighted in yellow.   For Row 22 and then column X.

15      A.   I do see that.

16      Q.   ████████████████████████████████, Row 22?

17           MS. MCCLOSKEY:   Object to form.

18      A.   ████████████████████████████████████

19  ████████████████████████   with a couple of query

20  parameters named ████████████████ _████████████████.

21      Q.   And what does it mean to you that the search

22  text shows that it was removed here and it says

23  ████████████████  ████████████████?

24           MS. MCCLOSKEY:   Object to form.

25      A.   In this case it suggests that a filtering

Page 283

*** HIGHLY CONFIDENTIA283**

REPORTER'S CERTIFICATE

I VICKY L. PINSON, RPR-CCR, the undersigned Certified Court Reporter, authorized to administer oaths and affirmations in and for the states of Washington, Oregon and California, do hereby certify:

That the sworn testimony and/or proceedings, a transcript of which is attached, was given before me at the time and place stated therein; that the witness was duly sworn or affirmed to testify to the truth; that the testimony and/or proceedings were stenographically recorded by me and transcribed under my supervision.

That the foregoing transcript contains a full, true, and accurate record of all the testimony and/or proceedings occurring at the time and place stated in the transcript; that a review of which was requested.

That I am in no way related to any party to the matter, nor to any counsel, nor do I have any financial interest in the event of the cause.

WITNESS MY HAND AND DIGITAL SIGNATURE this 7th day of February, 2025.

_____

VICKY L. PINSON, RPR-CCR
Washington Certified Court Reporter, No. 2559
Oregon State Certified Court Reporter, No. 16-0442
California State Certified Court Reporter, No. 9845

# EXHIBIT 8

CONFIDENTIAL ATTORNEY EYES ONLY

Page 1

1             IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
2                   SAN FRANCISCO DIVISION

3    _____

                                 )
4    IN RE: META Pixel               )
     HEALTHCARE LITIGATION           )
5                                 )
                                 ) NO. 3:22-cv-3580-WHO
6    This document relates to:       )
     Case 3:22-cv-3580-WHO(Doe)      )
7                                 )
                                 )
8    _____

9
                   VIDEO-RECORDED DEPOSITION
10                UPON ORAL EXAMINATION OF
11                      ABHINAV ANAND
     _____
12
13
14                      9:04 A.M.
15                   APRIL 1, 2025
16           LOCATION: BELLEVUE, WASHINGTON
17
             ** ATTORNEYS' EYES ONLY **
18
19
20
21
22
23
24   REPORTED BY:  VICKY L. PINSON, RPR-CCR Washington 2559
                   California No. 9845; Oregon No. 16-0442
25

CONFIDENTIAL ATTORNEY EYES ONLY

```
                                                    Page 2
 1                   A P P E A R A N C E S
 2
      FOR THE PLAINTIFFS:
 3
              JAY BARNES
 4            Simmons Ha Conroy
              112 Madison Avenue
 5            New York, NY 10016-7416
              212.784.6400
 6            jaybarnes@simmonsfirm.com
 7            ERIC S. JOHNSON
              Simmons Ha Conroy
 8            One Court Street
              Alton, IL 62002
 9            618.259.6275
              ejohnsonsimmonsfirm.com
10
              RYAN TACK-HOOPER
11            Terrell Marshall Law Group, PLLC
              936 N. 34th Street, Ste 300
12            Seattle, WA 98103
              206.816.6603
13            Ryan@terrellmarshall.com
14
      FOR THE DEFENDANT:
15
              ELIZABETH K. McCLOSKEY
16            Gibson Dunn
              One Embarcadero Center, Ste 2600
17            San Francisco, CA 94111
              415.393.4622
18            Emccloskey@gibsondunn.com
19            MATT BUONGIORNO
              Gibson Dunn
20            2001 Ross Avenue, Ste 2100
              Dallas, TX 75201
21            214.698.3204
              Mbuongiorno@gibsondunn.com
22
              VERONICA NAUTS - Meta counsel
23
24    VIDEOGRAPHER:
              MICHAEL HEHENKAMP, Video Specialist
25
```

CONFIDENTIAL ATTORNEY EYES ONLY

Page 237

1    about the fact that the ████████████ and Meta's

2    ████████████████████████████████████████████████

3    ███████████████████████████████████████████████

4    ██████ ████████████████████████████████████████

5    ████████████████████████████

6              MS. MCCLOSKEY:  Can you break it up into

7    one question at a time?  Like, that's two dense

8    questions, and I think it would be helpful to ask one

9    question at a time.

10         Q.  (By Mr. Barnes)  Were you aware that Meta ran

11   processes over data that made it through the Pixel, and

12   assigned health terms to the data that had made it into

13   Meta's downstream systems?

14              MS. MCCLOSKEY:  Object to form.  Assumes

15   facts.  Calls for speculation.  Vague.

16         A.  Can you clarify the processes of Off-site

17   Signals Integrity?  Or the ones in Signals Integrity?

18         Q.  This is outside of Signals Integrity.  This

19   is -- the processors that I am referring to are

20   downstream in the ████████████

21         A.  No, I was not aware of the details.

22         Q.  Would the fact that Meta had a system to

23   ███████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████████

25   ██████ have been important to know to improve the

CONFIDENTIAL ATTORNEY EYES ONLY

Page 286

1                   REPORTER'S CERTIFICATE

2

3        I VICKY L. PINSON, RPR-CCR, the undersigned

4    Certified Court Reporter, authorized to administer

5    oaths and affirmations in and for the states of

6    Washington, Oregon and California, do hereby certify:

7        That the sworn testimony and/or proceedings, a

8    transcript of which is attached, was given before me at

9    the time and place stated therein; that the witness was

10   duly sworn or affirmed to testify to the truth; that

11   the testimony and/or proceedings were stenographically

12   recorded by me and transcribed under my supervision.

13       That the foregoing transcript contains a full,

14   true, and accurate record of all the testimony and/or

15   proceedings occurring at the time and place stated in

16   the transcript; that a review of which was requested.

17       That I am in no way related to any party to the

18   matter, nor to any counsel, nor do I have any financial

19   interest in the event of the cause.

20

     WITNESS MY HAND this 14th day of April, 2025.

21

22

23   _____

     VICKY L. PINSON, RPR-CCR

24   Washington Certified Court Reporter, No. 2559

     Oregon State Certified Court Reporter, No. 16-0442

25   California State Certified Court Reporter, No. 9845.

# EXHIBIT 9

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1                UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  SAN FRANCISCO DIVISION

4    _____

5    IN RE META PIXEL HEALTHCARE )

     LITIGATION                  )

6                                ) No. 3:22-cv-3580-WHO (VKD)

                                 )

7    _____

8

     VIDEO-RECORDED DEPOSITION UPON ORAL EXAMINATION OF

9

                        MANISH SINGHAL

10

     _____

11

12         *** CONFIDENTIAL, ATTORNEYS' EYES ONLY ***

13

14

15

16                       9:11 A.M.

17               WEDNESDAY, APRIL 2, 2025

18            10885 FOURTH STREET, SUITE 700

19                 BELLEVUE, WASHINGTON

20

21

22

23   Reported by:  Tami Lynn Vondran, CRR, RMR, CCR/CSR

24   WA CCR #2157; OR CSR #20-0477; CA CSR #14435

25   Job Number 7243728

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
                                              Page 2
 1              A P P E A R A N C E S
 2     FOR PLAINTIFFS AND THE PROPOSED CLASS:
 3              JASON "JAY" BARNES
                Simmons Hanly Conroy LLC
 4              112 Madison Avenue, 7th Floor
                New York, New York 10016
 5              212.784.6400
                jaybarnes@simmonsfirm.com
 6
                ERIC JOHNSON
 7              Simmons Hanly Conroy LLC
                One Court Street
 8              Alton, Illinois 62002
                618.693.3104
 9              ejohnson@simmonsfirm.com
10     RYAN TACK-HOOPER
                Terrell Marshall Law Group PLLC
11     936 North 34th Street, Suite 300
                Seattle, Washington 98103
12              206.816.6603
                rtack-hooper@terrellmarshall.com
13
       FOR THE DEFENDANTS:
14
                ELIZABETH KATHARINE MCCLOSKEY
15              Gibson, Dunn & Crutcher LLP
                One Embarcadero Center, Suite 2600
16              San Francisco, California 94111
                415.393.8200
17              emccloskey@gibsondunn.com
18              MATT BUONGIORNO
                Gibson Dunn & Crutcher LLP
19              811 Main Street, Suite 3000
                Houston, Texas 77002
20              214.698.3204
                mbuongiorno@gibsondunn.com
21
22     ALSO PRESENT:
23              TANIA GRANT, Videographer
                ADAM SWEETS, Videographer intern
24              VERONICA NAUTS, Meta in-house counsel
25
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 164

1          A.    Somewhere in Q1 2024.

2          Q.    (BY MR. BARNES)  You stated that your

3     hypothesis was that █████████████████████████

4     ██████████████████████████████████.

5               Why was that your hypothesis?

6               MS. McCLOSKEY:  Object to form.  Calls for

7     speculation.

8          A.    Because few more experiments were conducted

9     before that which showed these results.

10         Q.    (BY MR. BARNES)  So those prior experiments,

11    were they also ██████████████████████

12              MS. McCLOSKEY:  Object to form.  Vague and

13    ambiguous.

14         A.    I was not involved on those experiments.

15         Q.    (BY MR. BARNES)  Why is it the case that ████

16    ███████████████████████████████████████████

17    ████████████████? 

18              MS. McCLOSKEY:  Object to form.  Misstates the

19    testimony.

20         A.    I don't know how that -- like, systems were

21    ████████████████████████████

22         Q.    (BY MR. BARNES)  And what were those systems

23    ████████████████████████

24              MS. McCLOSKEY:  Object to form.  Calls for

25    speculation.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 165

1        A.   I don't know.

2        Q.   (BY MR. BARNES)   The other test you mentioned

3   was -- I think you said ████████████  ██████

4   ████████

5             Did I say that right?

6        A.   Correct.

7        Q.   What was the ████████████  ██████

8   ████████

9        A.   ████████████████████████████████████

10  ████████

11       Q.   ████████████████████████████████████

12  ████████████?

13       A.   ████████████████████████  and I only

14  remember the name of one.

15       Q.   What's the one you do remember?

16       A.   ████████    ██████.

17       Q.   ████████

18       A.   Yeah.

19       Q.   ████████

20            Are the other ████████████████████

21  ████████████

22            MS. McCLOSKEY:  Object to form.  Vague.

23       A.   I'm just not able to recall the names for

24  them.

25       Q.   (BY MR. BARNES)  I don't need you to recall

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 255

1                  REPORTER'S CERTIFICATE

2           I, TAMI LYNN VONDRAN, CCR, CSR, RMR, CRR, the

3     undersigned Certified Court Reporter authorized to

4     administer oaths and affirmations in and for the states

5     of Washington (2157), Oregon (20-0477), and California

6     (14435) do hereby certify:

7           That the sworn testimony and/or proceedings, a

8     transcript of which is attached, was given before me at

9     the time and place stated therein; that any and/or all

10    witness(es) were duly sworn to testify to the truth;

11    that the sworn testimony and/or proceedings were by me

12    stenographically recorded and transcribed under my

13    supervision.  That the foregoing transcript contains a

14    full, true, and accurate record of all the sworn

15    testimony and/or proceedings given and occurring at the

16    time and place stated in the transcript; that a review

17    of which was not requested; that I am in no way related

18    to any party to the matter, nor to any counsel, nor do I

19    have any financial interest in the event of the cause.

20          WITNESS MY HAND AND DIGITAL SIGNATURE this 14th

21    day of April, 2025.

22

23    TAMI LYNN VONDRAN, CRR, RMR

      Washington CCR #2157, Expires 10/6/2025

24    Oregon CSR #20-0477, Expires 9/30/2027

      California CSR #14435, Expires 10/31/2025

25

# EXHIBIT 10

CONFIDENTIAL

Page 1

1            UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4   IN RE META PIXEL HEALTHCARE   ) Case No.  3:22-cv-3580-WHO (VKD)

    LITIGATION                    )

5                                 )

                                  )
    _____  )

6                                 )

    This Document Relates to:     )

    All Actions.                  )
7
    _____  )

8

9     CONFIDENTIAL 30(b)(6) DEPOSITION OF PUSHKAR TRIPATHI

10                Palo Alto, California

11                Tuesday, May 13, 2025

12

13

14         REPORTED BY: Derek L. Hoagland

15              CSR No. 13445

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

Page 2

1            UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4  IN RE META PIXEL HEALTHCARE    ) Case No.  3:22-cv-3580-WHO (VKD)

   LITIGATION                     )

5                                 )

                                  )

   _____ )

6                                 )

   This Document Relates to:      )

7  All Actions.                   )

   _____ )

8

9

10

11  Videotaped 30(b)(6) Deposition of PUSHKAR TRIPATHI,

12  taken before Derek L. Hoagland, a Certified Shorthand

13  Reporter for the State of California, commencing at 9:42

14  a.m., Tuesday, May 13, 2025, at Gibson Dunn & Crutcher

15  LLP, 310 University Avenue, Palo Alto, California 94301.

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

```
                                                    Page 3

 1    APPEARANCES:
 2
 3    COUNSEL FOR PLAINTIFFS
      TERRELL MARSHALL LAW GROUP
 4    936 North 34th Street
      Suite 300
 5    Seattle, Washington 98103
      BY:  RYAN TACK-HOOPER, ESQ.
 6         206.816.6603
           rtack-hooper@terrellmarshal.com
 7
      -- AND --
 8
      SIMMONS HANLY CONROY
 9    One Court Street
      Alton, Illinois 62002
10    BY:  ERIC JOHNSON, ESQ.
           314.800.5378
11         ejohnson@simmonsfirm.com
12
      COUNSEL FOR META
13    GIBSON, DUNN & CRUTCHER LLP
      200 Park Avenue
14    New York, New York 10166-0193
      BY:  DARCY C. HARRIS, ESQ.
15         212.351.4000
           dharris@gibsondunn.com
16
      -- AND --
17
      GIBSON DUNN & CRUTCHER LLP
18    One Embarcadero Center
      Suite 2600
19    San Francisco, California 94111
      BY:  MATTHEW REAGAN, ESQ.
20         415.393.8265
           mreagan@gibsondunn.com
21
22    ALSO PRESENT
      CARRIE BODNER IN-HOUSE COUNSEL FOR META
23    SHAWNA HYNES, VIDEOGRAPHER
24
25
```

CONFIDENTIAL

Page 26

1    at Meta?

2           MS. HARRIS:  Object to form.  Vague.

3           THE DEPONENT:  Could you restate that.

4    BY MR. TACK-HOOPER:

5    Q.     Sure.  Was there part of it that wasn't clear,

6    or you just want to hear it again?

7    A.     I want to hear it again.

8    Q.     Are separate ████████████████████████

9    █████████████████████████████  to make user features

10   at Meta?

11          MS. HARRIS:  Object to form.  Vague.

12          THE DEPONENT:  I believe that is possible.

13          MR. TACK-HOOPER:  Could you give me an example

14   of where that is done?

15          MS. HARRIS:  Object to form.  Vague.  Outside

16   the scope.

17          THE DEPONENT:  Once again, I am not an expert in

18   how the features were built, but one may assume that you

19   could ████████████████████████████████████

20   ███████████████████.

21   BY MR. TACK-HOOPER:

22   Q.     Including ██████████████████.  Is that

23   right?

24   A.     Yes, ████████████████.

25          MS. HARRIS:  Object to form.  Vague.

CONFIDENTIAL

Page 27

```
 1          THE DEPONENT:  Again, I am not an expert in this

 2   part of the featurization flow.  I'm better prepared on

 3   the upstream  ████████████  stuff.

 4   BY MR. TACK-HOOPER:

 5   Q.     Got it.  Let me make sure I -- I understand your

 6   answer.

 7          I think you're saying the part that you're

 8   prepared on is essentially data that's -- that's already

 9   been  ██████████████████████████████████████████████████

10   ████████   Is that correct?

11          MS. HARRIS:  Object to form.  Misstates the

12   testimony.  Vague.

13          THE DEPONENT:  That's not what I said.  What I

14   am saying is that I don't understand the  ██████████

15   ████████████████████   ████████████████████████████

16   ████████████   ████████████████████████████

17   ████████████████████  ██████████████████████████████████

18   ████████████████████████████████████████████

19   BY MR. TACK-HOOPER:

20   Q.     Okay.  We'll come back to that.

21          Are you familiar with the  ████████████████?

22          MS. HARRIS:  Object to form.  Vague.

23          THE DEPONENT:  Could you define the context in

24   which the  ██████ -- you are referring to  ██████

25   ██████████
```

CONFIDENTIAL

Page 63

1          MS. HARRIS:  Object to form.  Vague.

2          THE DEPONENT:  I assume you're referring to had

3    ██████████████     on processor?

4          MR. TACK-HOOPER:  Yes, sir.

5          THE DEPONENT:  The ████████████████████████████

6    ██████████████████████████  ████████████████████████████

7    ████████████████████████████  ████████████████████████

8    ████████████████████████████████████████████

9    ████████████████████████  ████████████████████████████████

10   ████████████████████████████████.

11   BY MR. TACK-HOOPER:

12   Q.     And so if I understand from your testimony,

13   one -- at least one possible output of the model is just

14   the ██████████████████████████████████████████████

15   ██████████████████████████  Is that right?

16          MS. HARRIS:  Object to form.  Vague.  Assumes

17   facts.

18          THE DEPONENT:  As I recall, ███████████████████████

19   ████████████████████████████████████████████████.

20   BY MR. TACK-HOOPER:

21   Q.     Let me make sure I understand that.  And so it's

22   as if it might say there's ████████████████████████████

23   ██████████     ████████████████████████████████████████

24   ████████████████████████████████████████████

25   ██████████████████     Is that correct?

CONFIDENTIAL

Page 64

1          MS. HARRIS:  Object to form.  Vague.  Calls for

2     speculation.  Outside the scope.

3          THE DEPONENT:  Once again, I am basing this on

4     my personal understanding, not on the preparation that I

5     did for this testimony.  I worked on this area seven,

6     eight years ago, so some of the details would be very

7     fuzzy.

8          As I recall, ███████████████████████████████

9     ███████████████████████.  I don't recall what is the

10    subset of the category space it works on.

11    BY MR. TACK-HOOPER:

12    Q.     After it produces ████████████████████████

13    ████████████████████████████████████

14    █████████████████████████████████████████████

15    ████████████████████████████████████

16          MS. HARRIS:  Object to form.  Vague.  Compound.

17          THE DEPONENT:  Yeah, I think there is ████████

18    ████████████████████████████████████████  from

19    what I recall.

20          THE REPORTER:  Top cave?

21          THE DEPONENT:  ██████  ████████████████

22    BY MR. TACK-HOOPER:

23    Q.     Does the -- can the model also be configured to

24    █████████████████████████████████  in

25    high-dimensional space as compared to the other labeled

CONFIDENTIAL

Page 65

1    categories?

2           MS. HARRIS:  Object to form.  Vague.  Compound.

3    Outside the scope.

4           THE DEPONENT:  I'm not sure what you mean by

5    high-dimensional space for the representation.  Can you

6    explain?

7    BY MR. TACK-HOOPER:

8    Q.      Sure.  And we are outside my area of expertise,

9    absolutely.  So if I'm using a term wrong or something,

10   I will ask you to help me.  But my understanding is,

11   sometimes these models, what they ████████████████

12   ███████████████████████, and what that represents is a

13   ████████████████████████████████████████████████

14   █████████████████████████████████   ████████████

15   ███████████████████████████████████████████

16   ███████████████████████████████████.  And so

17   what I was trying to ask is whether that kind of ████████

18   █████████████████████████████████ model in the

19   context of the ██████████████

20           MS. HARRIS:  Object to form.  Vague.

21           THE DEPONENT:  Once again, I'm speaking from my

22   recollection of this area, not something I prepared for

23   this testimony.  I believe the explanation you provided

24   isn't completely accurate about what high-dimensional

25   representations could come out from a model.

CONFIDENTIAL

Page 66

1    BY MR. TACK-HOOPER:

2    Q.      You think it might be inaccurate just as to

3    models generally, not that it be wrong as to ▮▮▮▮▮▮▮▮,

4    just I misunderstood what a high-dimensional taxon is.

5    Is that right?

6            MS. HARRIS:  Object to form.  Vague.  Outside

7    the scope.

8            THE DEPONENT:  I don't have much to say on your

9    understanding of high-dimensional vectors.  But what I

10   would say is, the characterization.  Speaking generally

11   of models, not necessarily to ▮▮▮▮▮▮ of the output,

12   was not aligned with my understanding of how these

13   things work.

14   BY MR. TACK-HOOPER:

15   Q.      Well, let's just get your understanding,

16   briefly.

17           So in the context of outputs of machine learning

18   models, neural networks, what does a high-dimensional

19   vector represent?

20           MS. HARRIS:  Object to form.  Vague.  Outside

21   the scope.

22           THE DEPONENT:  I'm speaking of -- from my

23   understanding of general machine learning, not

24   necessarily represented to this testimony.  In that

25   context, high-dimensional vectors just represent inputs

CONFIDENTIAL

Page 67

1  that -- that could not be represented by a single

2  integer or a single float.  There is no inherent meaning

3  to one value in that vector to another value in that

4  vector.

5  BY MR. TACK-HOOPER:

6  Q.      When you say inherent meaning, what do you mean?

7          MS. HARRIS:  Object to form.  Vague.  Outside

8  the scope.

9          THE DEPONENT:  In high-dimensional vector, say

10  .7, .3, .85, .5, the number .7 at the first index does

11  not mean anything mathematically.  It Doesn't refer to

12  any probability.  It doesn't refer to any variable.  It

13  is just these numbers together represent a vector.  Each

14  value in that vector is kind of meaningless.

15  Q.      But it can be compared against the

16  high-dimensional vector of a known labeled piece of

17  data, right?

18          MS. HARRIS:  Object to form.  Vague.  Outside

19  the scope.

20          THE DEPONENT:  Once again, in the general sense

21  these could be compared, but it depends on what you mean

22  by the definition of comparing these vectors.  Like,

23  what does it mathematically mean to compare them?

24  BY MR. TACK-HOOPER:

25  Q.      Well, one thing you could do is find the

CONFIDENTIAL

Page 68

```
 1    high-dimensional vector with the least mean square
 2    distances between their dimensions, right?
 3            MS. HARRIS:  Object to form.  Vague.  Outside
 4    the scope.  Calls for speculation.
 5            THE DEPONENT:  Could you explain that again so
 6    I -- as I understand, we have one high-dimensional
 7    vector.
 8            MR. TACK-HOOPER:  Yeah.
 9            THE DEPONENT:  And then what -- what do we want
10    to do with it?
11    BY MR. TACK-HOOPER:
12    Q.    Let's take a step back, because I don't want to
13    get -- if I'm fundamentally misunderstanding, I don't
14    want to waste our time.
15            Is it right that sometimes the high-dimensional
16    vector outputs of machine learning models are used to
17    situate data within a semantic space to assess its
18    proximity to other -- say if it's words, to other words?
19            MS. HARRIS:  Object to form.  Vague.  Compound.
20    Outside the scope.  Calls for speculation.
21            THE DEPONENT:  So in the context of gender
22    machine learning models, there's times when the output
23    of a model is a high-dimensional vector, which can be
24    embedded into some -- some space, some high-dimensional
25    space.
```

CONFIDENTIAL

Page 69

1    BY MR. TACK-HOOPER:

2    Q.       And is that something that ██████████ does in

3    the context of ██████████

4              MS. HARRIS:  Object to form.  Vague.

5              THE DEPONENT:  I need to check the output of the

6    ██████████ category processor.  I'm unsure what --

7    whether the ██████████████████████████████████

8    This will need reading the code.

9    BY MR. TACK-HOOPER:

10   Q.       Okay.  Going back to the taxonomy, does the

11   taxonomy contain ██████████████████████████████?

12             MS. HARRIS:  Object to form.  Vague.  Outside

13   the scope.

14             THE DEPONENT:  I don't have a full recollection

15   of the taxonomy.  I need to look at the taxonomy.

16   BY MR. TACK-HOOPER:

17   Q.       That's not something you prepared for today.  Is

18   that right?

19             MS. HARRIS:  Object to form.  Argumentative.

20   Outside the scope.

21             THE DEPONENT:  I have not memorized the

22   taxonomy.  The taxonomy is ██████████████  There is no

23   way I remember it.

24   BY MR. TACK-HOOPER:

25   Q.       Respectably, the question wasn't whether you

CONFIDENTIAL

Page 70

1    memorized ███████████.  Do you recall if the ██████████

2    ████████████████████████████?

3            MS. HARRIS:  Object to form.  Vague.  Misstates

4    the testimony.

5            THE DEPONENT:  I'm not sure about this because

6    the taxonomy is extremely large and I don't have a legal

7    definition of what it means for it to be a node, to be a

8    ████████████.

9    BY MR. TACK-HOOPER:

10   Q.      Do you know what a medical condition is?

11           MS. HARRIS:  Object to form.  Vague.

12   Argumentative.  Outside the scope.

13           THE DEPONENT:  In what context are you referring

14   to a medical condition?

15   BY MR. TACK-HOOPER:

16   Q.      In the context of ████████████████████.

17           MS. HARRIS:  Object to form.  Vague.  Outside

18   the scope.

19           THE DEPONENT:  No.  I am not aware of how to

20   define a medical condition legally in the context of a

21   ████████████████.

22   BY MR. TACK-HOOPER:

23   Q.      Why are you saying legally?

24           MS. HARRIS:  Object to form.  Vague.

25           THE DEPONENT:  As I understand, a medical

CONFIDENTIAL

Page 72

1    BY MR. TACK-HOOPER:

2    Q.      Well, what does it mean to classify a Pixel

3    event with █████████████

4            MS. HARRIS:  Object to form.  Vague.

5            THE DEPONENT:  In the contest -- context of the

6    ████████████████████ named ██████████ category

7    processor, ███████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████

11   BY MR. TACK-HOOPER:

12   Q.      And is that input you just described all of the

13   ████████████████████████████████?

14           MS. HARRIS:  Object to form.  Vague.

15           THE DEPONENT:  I think it's a subset of fields.

16   I don't recall the names of all the fields that are

17   used.

18   BY MR. TACK-HOOPER:

19   Q.      Putting aside the names, do you -- can you tell

20   me conceptually what fields are used?

21           MS. HARRIS:  Object to form.  Vague.  Outside

22   the scope.

23           THE DEPONENT:  Yes.  Conceptually, I think the

24   ██████████████████████ ███████████████████ ██████

25   ██████████████████████████████████████████████.

CONFIDENTIAL

Page 73

1    BY MR. TACK-HOOPER:

2    Q.      Do you know whether it includes ████████

3            MS. HARRIS:  Object to form.  Vague.

4            THE DEPONENT:  Yes, some fields from ████████

5    are also used when ████████████████████████

6    BY MR. TACK-HOOPER:

7    Q.      Do you know which fields from ████████ are not

8    used?

9            MS. HARRIS:  Object to form.  Vague.  Assumes

10   facts.

11           THE DEPONENT:  No, I don't know which fields

12   from ████████ are used and which aren't.

13   BY MR. TACK-HOOPER:

14   Q.      Is it your understanding that some are not used?

15           MS. HARRIS:  Object to form.  Vague.  Misstates

16   the testimony.

17           THE DEPONENT:  I don't have a recollection of

18   what is used and what's not and whether one of the sets

19   is empty.

20   BY MR. TACK-HOOPER:

21   Q.      Okay.  How would you determine that if someone

22   asked you to do it?

23   A.      Read the code.

24   Q.      Okay.  I want you to make an assumption so that

25   we can answer this next question.  Here is the

CONFIDENTIAL

Page 77

1    had the data that we thought would be useful.

2    BY MR. TACK-HOOPER:

3    Q.       And so do you have an understanding about why

4    that table that contains Pixel event data was chosen,

5    instead of other tables that contain Pixel event data?

6            MS. HARRIS:  Object to form.  Vague.

7            THE DEPONENT:  I don't have an understanding of

8    what are the other places where this data resides.  This

9    was the table which had the right granularity of data

10   for us to build on top of, and that's why this table was

11   chosen.

12   BY MR. TACK-HOOPER:

13   Q.       Was the word you used there "granularity"?

14   A.       Yes.

15   Q.       What I want to make sure I understand is where

16   the pipeline goes and, ideally, why it goes that way.

17   ████████████████████████████    ██████████████████████████

18   ████████████████████████████████████████████████████

19   █████████████████████████████?

20           MS. HARRIS:  Object to form.  Vague.  Misstates

21   the prior testimony.

22           ████████████████    ███████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████

25   ///

CONFIDENTIAL

Page 78

1    BY MR. TACK-HOOPER:

2    Q.      Can you give me an example?

3            MS. HARRIS:  Object to form.  Outside the scope.

4    Vague.

5            THE DEPONENT:  I don't have an example of a

6    feature of this nature.  All that I can state is that

7    such a feature could exist.

8    BY MR. TACK-HOOPER:

9    Q.      Well, I think I understand why it could exist.

10   An engineer could take the data from somewhere and build

11   a feature, right?

12           I guess my question is:  Are you aware of any

13   ██████████████████████████████████████████████████████

14   ████████████████████████████████████████████?

15           MS. HARRIS:  Object to form.  Vague.

16           THE DEPONENT:  I can't recall the -- the name or

17   the concept of such a feature off the top of my head.

18   BY MR. TACK-HOOPER:

19   Q.      Is it a fair assumption that most ██████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████████

22           MS. HARRIS:  Object to form.  Vague.  Assumes

23   facts.  Outside the scope.

24           THE DEPONENT:  No, that is not a fair

25   assumption, because to make that assumption, you would

CONFIDENTIAL

Page 85

1    referring to?

2            MS. HARRIS:  Object to form.  Vague.

3            THE DEPONENT:  Yes.  That is one of the ways in

4    which data might be filtered.

5    BY MR. TACK-HOOPER:

6    Q.      So let's start with to your understanding.  Is

7    that ███████████████████████████████████████████████████

8    ██████████████████████████████████?

9            MS. HARRIS:  Object to form.  Vague.  Compound.

10   Assumes facts.

11           THE DEPONENT:  What does it mean that the ████████

12   ████████████████████████████████████

13   BY MR. TACK-HOOPER:

14   Q.      I think, if I understood your testimony, you

15   said, ███████████████████████████████████████████████████

16   ███████████████████████    ████████████████████████████

17   ███████████████████████████████.  And so I'm trying

18   to understand the point in the intent pipeline in which

19   you're drawing the distinction between ████████

20   ████████████████████████████████    So do you mean it's

21   ███████████████████████████████████████████████████████

22   ███████████████████████████████████████████████████████

23   █████████████████████████████████

24           MS. HARRIS:  Object to form.  Compound.  Vague.

25   Misstates the prior testimony.

CONFIDENTIAL

Page 86

```
 1          THE DEPONENT:  ████████████████████████
 2   ████████████████████████████████████████████████
 3   ██████████  ████████████████████████████████
 4   BY MR. TACK-HOOPER:
 5   Q.      Is there a name for this filtering?
 6          THE DEPONENT:  I'm not aware of what the filter
 7   is called.
 8   BY MR. TACK-HOOPER:
 9   Q.      Where does it appear in the source code?
10          MS. HARRIS:  Object to form.  Vague.  Outside
11   the scope.
12          THE DEPONENT:  I'm not sure what the files --
13   files are called where this appears.
14   BY MR. TACK-HOOPER:
15   Q.      When was it implemented?
16          MS. HARRIS:  Object to form.  Vague.
17          THE DEPONENT:  ████████████████████████
18   ████████████████████████
19   BY MR. TACK-HOOPER:
20   Q.      And when did it start being applied to
21   production data?
22          MS. HARRIS:  Object to form.  Vague.
23          THE DEPONENT:  This ██████████████████████
24   ████████████████████████  ████████████  ████.
25   ///
```

CONFIDENTIAL

Page 87

1    BY MR. TACK-HOOPER:

2    Q.       Was it applied worldwide or only to some

3    countries?

4            MS. HARRIS:  Object to form.  Outside the scope.

5            THE DEPONENT:  I'm not sure --

6            MS. HARRIS:  Compound.

7            THE DEPONENT:  I'm not sure what was the scope

8    in which this filter was applied.

9    BY MR. TACK-HOOPER:

10   Q.       Did it apply in the United States?

11           MS. HARRIS:  Object to form.  Assumes facts.

12           THE DEPONENT:  I would be speculating, so I'm

13   not sure if -- what were the locales in which this was

14   applied.

15   BY MR. TACK-HOOPER:

16   Q.       Is it still applied today?

17   A.       Yes, I believe it is still -- this filter is

18   still functional.

19   Q.       Does the ████████████████████████████

20   ███████████████████████████████████████████?

21           MS. HARRIS:  Object to form.  Vague.  Assumes

22   facts.

23           THE DEPONENT:  What do you mean by ██████████

24   ████████████████████

25   ///

CONFIDENTIAL

Page 88

1    BY MR. TACK-HOOPER:

2    Q.      Well, so are you familiar with the effort at

3    Meta to ███████████████████████████████████████

4    ████████████████████

5            MS. HARRIS:  Object to form.  Vague.  Outside

6    the scope.

7            THE DEPONENT:  Yeah, I --

8            MS. HARRIS:  Compound.

9            THE DEPONENT:  I am vaguely familiar with this

10   area, but this is not something that I have prepared on.

11   BY MR. TACK-HOOPER:

12   Q.      Do you have an understanding about why Meta

13   wanted to classify events in that way?

14           MS. HARRIS:  Object to form.  Vague.

15   BY MR. TACK-HOOPER:

16   Q.      I'm sorry.  Classify features in that way?

17           MS. HARRIS:  Object to form.  Outside the scope.

18   Vague.

19           THE DEPONENT:  I don't have a full understanding

20   of what regulations were involved here.  Some of these

21   discussions were under privilege with the legal team, so

22   I need the input from counsel if you want to delve into

23   this further.

24           MS. HARRIS:  Yes, I would just instruct you not

25   to reveal anything that you learned through discussions

CONFIDENTIAL

Page 89

1    with counsel.

2    BY MR. TACK-HOOPER:

3    Q.     So -- so with that instruction in mind and

4    without revealing anything that you have learned from

5    your communications with counsel, do you have any

6    understanding about why Meta would want to distinguish

7    ███████████████████████████████████████████

8    ███████████████████████████████████████████

9    ████████?

10          MS. HARRIS:  Object to form.  Vague.  Compound.

11   Outside the scope.  And I will instruct you not to

12   reveal anything that you learned through discussions

13   with counsel.

14          THE DEPONENT:  Yeah.  To answer this question, I

15   will have to dive into what was discussed with counsel.

16   BY MR. TACK-HOOPER:

17   Q.     Okay.  In your understanding, if this ████████

18   ███████████████████████████████████████████

19   ████████████████████████████  ████████████

20   ████████████████████████████████████████████

21   █████████

22          MS. HARRIS:  Object to form.  Vague.

23          THE DEPONENT:  I don't know this in detail.  I

24   was only involved in the early parts of this effort, so

25   I don't understand the detail.

CONFIDENTIAL

Page 90

1    BY MR. TACK-HOOPER:

2    Q.      So I want to make sure I'm clear on your -- your

3    testimony.

4            Your sworn testimony today is that there is a

5    ███████████████████████████████████████████████████

6    ███████████████████████████████████████████████████

7    ████████████████████████████████████████████████████.

8    Is that correct?

9            MS. HARRIS:  Object to form.  Vague.  Misstates

10   the testimony.  Compound.

11           THE DEPONENT:  Yes.  This is not entirely

12   correct.  My understanding is that there is some

13   ██████████████████████████████████████████████████

14   ██████████████████████████.  I don't have a firm

15   understanding of ██████████████████████████████████

16   ████████████████████████████████████████████

17   ██████████

18   BY MR. TACK-HOOPER:

19   Q.      Who would have that understanding?

20           MS. HARRIS:  Object to form.  Outside the scope.

21           THE DEPONENT:  This would need somebody from the

22   team that worked on -- on -- on this type of filtering.

23   BY MR. TACK-HOOPER:

24   Q.      Who is that team?

25           MS. HARRIS:  Object to form.  Outside the scope.

CONFIDENTIAL

Page 91

1      THE DEPONENT:  So based on my personal

2  understanding, so I may be wrong about the names

3  involved, this would need somebody from the

4  responsibility and privacy team.

5  BY MR. TACK-HOOPER:

6  Q.      Are you aware of any of the names of people on

7  that team?

8      MS. HARRIS:  Object to form.  Outside the scope.

9      THE DEPONENT:  Once again, this is based on my

10 understanding of what folks are doing.  It is not

11 something I have prepared on.  Chua Hao Tang might know

12 more about this.

13 BY MR. TACK-HOOPER:

14 Q.      Can you spell the name for me please?

15 A.      C-h-u-a, H-a-o, T-a-n-g.

16 Q.      ████████████████████████████████████████████

17 █████████████████████████  ████████████████████████

18 ███████████████████████████████████████████████████

19 ███████████████████

20     MS. HARRIS:  Object to form.  Vague.  Compound.

21 Outside the scope.

22     THE DEPONENT:  I haven't prepared this, so my

23 understanding might be wrong.  As far as I understand,

24 ████████████████████████████████████████████████████

25 ///

CONFIDENTIAL

Page 92

1    BY MR. TACK-HOOPER:

2    Q.      Can you identify any part of the code base that

3    you know does call this filter process?

4              MS. HARRIS:  Object to form.  Vague.  Outside

5    the scope.

6              THE DEPONENT:  Unfortunately, I don't know of

7    where this is implemented in terms of files or parts of

8    the code base.  This will need an expert in this area.

9    BY MR. TACK-HOOPER:

10   Q.      Does ███████████████ call this filter?

11             MS. HARRIS:  Object to form.  Vague.

12             THE DEPONENT:  The aforementioned filters are

13   not mentioned in ███████████████, as far as I know.

14   BY MR. TACK-HOOPER:

15   Q.      What relationship, if any, did the creation of

16   this filter we've been discussing have to the

17   announcement that Meta would no longer advertise to

18   target users directly for sensitive interests?

19             MS. HARRIS:  Object to form.  Vague.  Assumes

20   facts.  Outside the scope.

21             THE DEPONENT:  I'm not exactly familiar with the

22   announcement here.  Could you provide more details?

23   BY MR. TACK-HOOPER:

24   Q.      Well, are you aware that there was a point at

25   which Meta announced that advertisers could no longer

CONFIDENTIAL

Page 97

```
 1          THE DEPONENT:  I don't have a firm understanding
 2   of how the featurization part works.  That was beyond
 3   the scope of what I prepared.
 4   BY MR. TACK-HOOPER:
 5   Q.      Okay.
 6   A.      Conceptually, it is possible for ██ ████████
 7   ████████████████████████████████████████████████████████
 8   ████████████
 9   Q.      Okay.  Do any of ████████████ processors use
10   the ████████████ column of ████████████████████?
11          MS. HARRIS:  Object to form.  Vague.  Outside
12   the scope.
13          THE DEPONENT:  This will need some digging to
14   understand whether this column is used in any of the
15   processors.  My understanding of the processors is at a
16   conceptual level.  I don't know which fields each
17   processors are using.
18   BY MR. TACK-HOOPER:
19   Q.      Will I get the same answer if I ask about
20   other -- other columns as well?
21   A.      Yes.  That's --
22          MS. HARRIS:  Object to form.  Vague.
23          THE DEPONENT:  It is, unfortunately, very hard
24   for me to remember which processor is using which
25   columns or if any columns are used in a processor at
```

CONFIDENTIAL

Page 98

1    all.

2    BY MR. TACK-HOOPER:

3    Q.      Okay.  Let's talk about ████████████████    Is

4    ████████████    the input for ████████████████

5            MS. HARRIS:  Object to form.  Vague.

6            THE DEPONENT:  Yes, ████████████  consumes

7    ████████████████

8    BY MR. TACK-HOOPER:

9    Q.      Are there other inputs to ████████████████

10           MS. HARRIS:  Object to form.  Assumes facts.

11           THE DEPONENT:  Yes.  There are ████████████  of

12   ████████████████

13   BY MR. TACK-HOOPER:

14   Q.      What is the other version?

15           MS. HARRIS:  Object to form.  Vague.  Assumes

16   facts.

17           THE DEPONENT:  ████████████████████████████

18   ████████████████████  ████████████████████████

19   ████████████████  ████████████████  ████████████████

20   ████████████████████████████.

21   ████████████████  ████████████  ████████████████████

22   ████████████████████████.

23   BY MR. TACK-HOOPER:

24   Q.      You just said in your answer that it consume --

25   ████████████████████████████

CONFIDENTIAL

Page 103

1            MS. HARRIS:  Object to form.  Vague.

2            THE DEPONENT:  ████████████████████████

3    ████████████████████████████   ███████████████

4    ████████████████████████████████████████████

5    ███████  ████████████████████   ████████████████

6    ██████████████   █████████████████████████████

7    ████████████████████████████████

8            MS. HARRIS:  We've been going for about an hour,

9    if there's another good breaking spot coming up.

10           MR. TACK-HOOPER:  Yeah, let's do this one little

11   segment, and then we'll take a break.

12           MS. HARRIS:  Yeah, sure.

13   BY MR. TACK-HOOPER:

14   Q.      Does the source code generate a score for users'

15   features?

16           MS. HARRIS:  Object to form.  Vague.

17           THE DEPONENT:  Which source codes -- code are

18   you referring to?

19   BY MR. TACK-HOOPER:

20   Q.      Are you familiar with the ████████████████

21   ██████

22           MS. HARRIS:  Object to form.  Vague.

23           THE DEPONENT:  Yes.  I have seen this ████████

24   ████████████████████████████████████████.

25   ///

CONFIDENTIAL

Page 104

1    BY MR. TACK-HOOPER:

2    Q.        And does that ███████████████████

3              MS. HARRIS:  Object to form.  Vague.

4              THE DEPONENT:  I recall it has a field relating

5    to ██████

6    BY MR. TACK-HOOPER:

7    Q.        Do you understand whether subscribe button click

8    events ██████████████████████████████████

9    ████████

10             MS. HARRIS:  Object to form.  Vague.  Outside

11   the scope.

12             THE DEPONENT:  No, I don't have an understanding

13   of how the ███████████████████████.

14   BY MR. TACK-HOOPER:

15   Q.        How are the ████████ used?

16             MS. HARRIS:  Object to form.  Vague.

17             THE DEPONENT: ████████████████████

18   ████████████████████████████████████████████

19   ███████████████████

20   BY MR. TACK-HOOPER:

21   Q.        Can you describe a little bit more about what

22   you mean by described the ███████████████████

23   ████████

24             MS. HARRIS:  Object to form.  Vague.

25             THE DEPONENT:  I will give a conceptual example

CONFIDENTIAL

Page 107

1          THE DEPONENT:  I believe that depends on where

2     the features are being used, and the question as stated

3     is too vague for me to answer.

4     BY MR. TACK-HOOPER:

5     Q.     Well, let's get it -- let's get it specific,

6     then, or try.

7          Are you familiar with the system called █████

8     ██████

9     A.     Yes.

10         MS. HARRIS:  Object to form.  Vague.

11         THE DEPONENT:  Yes, I am aware of ████████.

12    BY MR. TACK-HOOPER:

13    Q.     What is ████████

14    A.     ████████████████████████████████████████

15    ██████████████████

16    Q.     ████████████████████████████████████

17         MS. HARRIS:  Object to form.  Vague.  Outside

18    the scope.

19         THE DEPONENT:  This is not something I have

20    prepared, so I'm speaking from my understanding of how

21    that delivery flow works.

22    ████████████████████     ████████████████

23    ████████████████████████████████████

24    BY MR. TACK-HOOPER:

25    Q.     UP2X is a key value database, right?

CONFIDENTIAL

Page 110

1            THE DEPONENT:  Which system are we querying

2     here?

3     BY MR. TACK-HOOPER:

4     Q.      What systems does  ███████████  query?

5            MS. HARRIS:  Object to form.  Vague.  Outside

6     the scope.

7            THE DEPONENT:  It's hard for me to enumerate all

8     the systems that  ██████████  queries.

9     BY MR. TACK-HOOPER:

10    Q.      ███████████████████?

11           MS. HARRIS:  Object to form.  Asked and

12    answered.  Outside the scope.

13           THE DEPONENT:  ██████  ██████████████████████

14    BY MR. TACK-HOOPER:

15    Q.      ██████████████████  does it take the entire

16    value for a given  ██████  that it's querying or does it

17    search for certain information within that value?

18           MS. HARRIS:  Object to form.  Vague.  Compound.

19    Assumes facts.  Outside the scope.

20           THE DEPONENT:  █████████████████████

21    ███████████████  ██████████████████████  ████████

22    ██████████████████████.

23    BY MR. TACK-HOOPER:

24    Q.      Okay.  Once Pixel data is used to create a user

25    feature, is that user feature only available as an  ████████

CONFIDENTIAL

Page 132

1                    REPORTER'S CERTIFICATE

2

3     STATE OF CALIFORNIA          )    ss.

4     I, DEREK L. HOAGLAND, CSR #13445, State of California,

5     do hereby certify:

6     That prior to being examined, the witness named in the

7     foregoing proceeding was by me sworn to testify to the

8     truth, the whole truth and nothing but the truth;

9     That said proceeding was taken down by me by stenotype

10    at the time and place therein stated and thereafter

11    transcribed under my direction into computerized

12    transcription.

13    I further certify that I am not of counsel nor attorney

14    for nor related to the parties hereto, nor am I in any

15    way interested in the outcome of this action.

16    In compliance with section 8016 of the Business and

17    Professions Code, I certify under penalty of perjury

18    that I am a certified shorthand reporter with license

19    number 13445 in full force and effect.

20    Witness my hand this 27th day of May, 2025.

21

22

       _____

23               DEREK L. HOAGLAND, CSR #13445

24

25

# EXHIBIT 11

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

1          UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4                  ---oOo---

5

6

7    IN RE:

8    META PIXEL HEALTHCARE      No. 3:22-cv-3580-WHO (VKD)

9    LITIGATION

     _____/

10

11

         HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

12

13        30(b)(6) REMOTE VIDEOTAPED DEPOSITION OF

14                 MAYURKUMAR PATEL

15             MENLO PARK, CALIFORNIA

16             MONDAY, MAY 5, 2025

17

18

19

20

21    STENOGRAPHICALLY REPORTED BY:

22    ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

23    CSR LICENSE NO. 9830

24    JOB NO. 7341750

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 2

1              UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4                      ---oOo---

5

6

7      IN RE:

8      META PIXEL HEALTHCARE      No. 3:22-cv-3580-WHO (VKD)

9      LITIGATION

       _____/

10

11

12          30(b)(6) Videotaped Deposition of

13      Mayurkumar Patel, taken on behalf of Plaintiffs,

14      Pursuant to Notice, on Monday, May 5, 2025,

15      remotely at Latham & Watkins, Menlo Park,

16      California, beginning at 9:00 a.m., and ending at

17      12:30 p.m., before me, ANDREA M. IGNACIO, CSR, RPR,

18      CCRR, CRR, CLR ~ License No. 9830.

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 3

1    A P P E A R A N C E S:

2

3

4       FOR PLAINTIFFS AND THE PROPOSED CLASS:

5            SIMMONS HANLY CONROY LLC

6            By:  JASON "JAY" BARNES, Esq.

7            112 Madison Avenue, 7th Floor

8            New York, New York 10016

9            212.784.6400

10           jaybarnes@simmonsfirm.com

11

12   - and -

13

14           TERRELL MARSHALL LAW GROUP PLLC

15           By:  RYAN TACK-HOOPER, Esq.

16           936 North 34th Street, Suite 300

17           Seattle, Washington 98103

18           206.816.6603

19           rtack-hooper@terrellmarshall.com

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                          Page 4

 1   A P P E A R A N C E S:   (Cont.)

 2

 3

 4     FOR THE DEFENDANTS:

 5          GIBSON, DUNN & CRUTCHER LLP

 6          By:  DARCY HARRIS, Esq. - New York

 7               MATT REAGAN, San Francisco

 8               ELIZABETH KATHARINE MCCLOSKEY, Esq.  SF

 9          200 Park Avenue

10          New York, New York 10166

11          212.351.4000

12          dharris@gibsondunn.com

13

14

15     ALSO PRESENT:

16          Scott Slater, Videographer

17          Nikki Sokol, Meta in-house counsel

18

19                    ---oOo---

20

21

22

23

24

25
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                              Page 60
1   data from this table, which is ███████████ or
2   █████████    flows into ███████████████
3   ████████████  ███████████████████,
4   ████████████████████████████ -- and
5   down into █████████████    So it is still being
6   processed in the ████████.
7          MR. TACK-HOOPER:  Q.  And I certainly
8   understand that there are -- there are steps in the
9   data flow between the ██████ table and ███████
10  ███████    And I'm trying to avoid getting into the
11  weeds of those steps to the extent they don't matter
12  to us.
13         And so here's the way they matter to us
14  that I want to ask about:  Would any of those steps,
15  as to this data, have prevented this data from getting
16  to ███████████?
17         MS. HARRIS:  Object to form; vague.
18         THE WITNESS:  There may have been.  I'm --
19  I -- I wouldn't know personally.  I would have to go
20  investigate the code to see if there is any other form
21  of filtration.
22         MR. TACK-HOOPER:  Q.  I think you're telling
23  me, as you sit here today, you're not sure either way
24  ██████████████████████████████████████
25  ████████████████████; is that correct?
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 61

1          MS. HARRIS:  Object to form; vague; outside
2     the scope.
3          We've agreed to provide testimony on the
4     general data flow.
5          You can answer based on the agreed-upon scope
6     of testimony.
7          THE WITNESS:  Yeah, like I said, I would have
8     to go investigate the code to -- to be able to answer
9     your question.
10         MR. TACK-HOOPER:  Q.  And that's because you
11    don't know, as you sit here, without investigating the
12    code; is that right?
13         MS. HARRIS:  Object to form; outside the
14    scope.
15         THE WITNESS:  I wouldn't be to -- be able to
16    tell you right now with a certainty whether it does or
17    doesn't.
18         MR. TACK-HOOPER:  Q.  What would you be
19    investigating if you went and did that?
20         MS. HARRIS:  Object to form; outside the
21    scope.
22         We agreed to provide testimony about the
23    general data flow.
24         You can answer based on the agreed scope of
25    testimony.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 68

1    scope we've agreed to provide.

2           THE WITNESS:  Yeah, the other one, like I

3    mentioned, is there's investigation that I would have

4    to perform to be able to ascertain whether or not

5    these events made it to the -- ███████████████████

6           MR. TACK-HOOPER:  Okay.

7       Q   After these events, if they reached ████

8    ████████████████  the data would be processed and sent

9    to ████████████████; is that right?

10          MS. HARRIS:  Object to form; vague; improper

11   hypothetical; outside the scope.

12          You can answer based on the general data flow

13   scope we've agreed to provide.

14          THE WITNESS:  It may be.  I mean, I -- I

15   don't know for certain.  Again, I'd have to go

16   investigate the code to see if it did or didn't.

17          MR. TACK-HOOPER:  Q.  Take a step back so I

18   can understand that answer, because I don't -- I don't

19   fully understand it.

20          Am I right to understand that the data in ████

21   ████████████████  gets processed by the ████████████ and

22   then outputs based on that processing are sent to

23   ████████████████

24          MS. HARRIS:  Object to form; vague; outside

25   the scope.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 69

```
1          You can answer based on the general data flow
2     scope we've agreed to provide.
3          THE WITNESS:  I wouldn't be able to answer
4     that question for you to -- I would have to go look at
5     the code or any information that we have about it.  I
6     also believe that we've -- we have another witness
7     that will testify on               .
8          MR. TACK-HOOPER:  Okay.
9     Q    Do you understand where data goes after it
10    gets to
11         MS. HARRIS:  Object to form; vague; outside
12    the scope.
13         You can answer based on the general data flow
14    testimony we've agreed to provide.
15         THE WITNESS:  Again, I would have to do
16    investigations looking at the source code and lineage
17    information that we have available to us in order to
18    answer that question.
19         I also believe that we've provided written
20    responses for downstreams of these specific tables,
21    so...
22         MR. TACK-HOOPER:  Q.  But as you sit here,
23    you don't know the answer.  You'd have to investigate;
24    is -- is that what you're telling me?
25         MS. HARRIS:  Object to form; misstates the
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 102

1           CERTIFICATE OF STENOGRAPHIC REPORTER

2

3           I, ANDREA M. IGNACIO, hereby certify that the

4    witness in the foregoing deposition was by me sworn to

5    tell the truth, the whole truth, and nothing but the

6    truth in the within-entitled cause;

7           That said deposition was taken in shorthand

8    by me, a disinterested person, at the time and place

9    therein stated, and that the testimony of the said

10   witness was thereafter reduced to typewriting, by

11   computer, under my direction and supervision;

12          That before completion of the deposition,

13   review of the transcript [ ] was [x] was not

14   requested.  If requested, any changes made by the

15   deponent (and provided to the reporter) during the

16   period allowed are appended hereto.

17          I further certify that I am not of counsel or

18   attorney for either or any of the parties to the said

19   deposition, nor in any way interested in the event of

20   this cause, and that I am not related to any of the

21   parties thereto.

22   Dated: May 14, 2025

23

24   _____

25   ANDREA M.  IGNACIO, RPR, CRR, CCRR, CLR, CSR No. 9830

# EXHIBIT 12

Page 1

1                  UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN FRANCISCO DIVISION

4    IN RE META PIXEL HEALTHCARE    ) Case No.  3:22-cv-3580-WHO (VKD)

     LITIGATION                     )

5                                   )

                                    )
     _____
6                                   )

     This Document Relates to:      )

7    All Actions.                   )

     _____ )

8

9      CONFIDENTIAL VIDEOTAPED DEPOSITION OF SUKHESH MIRYALA

10                   San Francisco, California

11                   Wednesday, May 14, 2025

12

13

14              REPORTED BY: Derek L. Hoagland

15                     CSR No. 13445

16

17

18

19

20

21

22

23

24

25

Page 2

1                 UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                    SAN FRANCISCO DIVISION

4   IN RE META PIXEL HEALTHCARE   ) Case No.  3:22-cv-3580-WHO (VKD)

    LITIGATION                    )

5                                 )

                                  )
    _____ )

6                                 )

    This Document Relates to:     )

7   All Actions.                  )

    _____ )

8

9

10

11   Videotaped Deposition of SUKHESH MIRYALA, taken before

12   Derek L. Hoagland, a Certified Shorthand Reporter for

13   the State of California, commencing at 9:05 a.m.,

14   Wednesday, May 14, 2025, at Gibson Dunn & Crutcher LLP,

15   One Embarcadero Center, Suite 2600, San Francisco,

16   California 94111.

17

18

19

20

21

22

23

24

25

```
                                                    Page 3
1    APPEARANCES:
2    COUNSEL FOR PLAINTIFFS
     TERRELL MARSHALL LAW GROUP
3    936 North 34th Street
     Suite 300
4    Seattle, Washington 98103
     BY:   RYAN TACK-HOOPER, ESQ.
5          206.816.6603
           rtack-hooper@terrellmarshal.com
6
     -- AND --
7
     SIMMONS HANLY CONROY
8    One Court Street
     Alton, Illinois 62002
9    BY:  ERIC JOHNSON, ESQ.
          314.800.5378
10        ejohnson@simmonsfirm.com
11   COUNSEL FOR META
     GIBSON DUNN & CRUTCHER LLP
12   2001 Ross Avenue
     Dallas, Texas 75201-2199
13   BY:  ASHLEY ROGERS, ESQ.
          214.698.3316
14        arogers@gibsondunn.com
15   -- AND --
16   GIBSON DUNN & CRUTCHER LLP
     200 Park Avenue
17   New York, New York 10166
     BY:  DAVID CROWLEY-BUCK, ESQ.
18        212.351.2633
          dcrowleybuck@gibsondunn.com
19
     -- AND --
20
     GIBSON DUNN & CRUTCHER LLP
21   1900 Lawrence Street
     Suite 3000
22   Denver, Colorado 80202
     BY:  Natalie Hausknecht, ESQ.
23        303.298.5783
          nhausknecht@gibsondunn.com
24
     ALSO PRESENT
25   Carrie Bodner, in-house counsel for Meta
     Vinny Bezerra, Videographer
```

Page 19

1   database I'm talking about are?

2           MS. ROGERS:  Object to form.  Outside scope.

3           THE DEPONENT:  I am -- I'm here -- prepared to

4   talk about look-alike audiences, and -- and in terms of

5   the creation and certainly look-alike audiences, those

6   are -- you know, that's not -- I was not prepared to

7   come talk about user features.  I do believe we have

8   someone else prepared to come talk about that from the

9   team.

10  BY MR. TACK-HOOPER:

11  Q.      And so the part of it that I want you to tell me

12  about, though, is just the part of it that involves the

13  content of ████████████.  And the only thing you've

14  told me so far about the content of ████████████ is

15  that they are a ████████████████ and that you know

16  other things about them.  And so what I would like to

17  learn from you is just anything else you can tell me

18  about the content of those ████████ that relates to

19  what user information is contained in there.  Is there

20  anything else you can tell me about the content of the

21  ████████████ as to what information about users is

22  actually encoded in that ████████

23          MS. ROGERS:  Object to form.  Outside scope.

24          THE DEPONENT:  I came here prepared to talk

25  about look-alike audiences.  The ████████████ are

Page 20

```
 1   created upstream of that.  And -- yeah, and user -- I do
 2   believe we have folks that are prepared to come talk
 3   about --
 4             (Simultaneous speakers.)
 5   BY MR. TACK-HOOPER:
 6   Q.      You might be surprised.
 7           So putting aside the scope of your preparation
 8   and testimony, is there anything else you can tell me
 9   about the content of ███████████      as it relates to
10   the kind of user information that is represented in
11   them?
12             MS. ROGERS:  Object to form.  Outside scope.
13             THE DEPONENT:  As I said, I came here prepared
14   to talk about look-alike audiences.  We don't create
15   ██████████████      as part of that process, and I do
16   believe we have folks that are prepared to come talk on
17   that subject.
18   BY MR. TACK-HOOPER:
19   Q.      Okay.  I'm going to understand your answer to
20   mean you don't know anything more that you can tell me,
21   but correct me if that's not right.
22             MS. ROGERS:  Object to form.  Mischaracterizes
23   prior testimony.  Outside scope.
24   BY MR. TACK-HOOPER:
25   Q.      Are you familiar with a service called ██████
```

Page 47

1                      REPORTER'S CERTIFICATE

2

3    STATE OF CALIFORNIA              )    ss.

4    I, DEREK L. HOAGLAND, CSR #13445, State of California,

5    do hereby certify:

6    That prior to being examined, the witness named in the

7    foregoing proceeding was by me sworn to testify to the

8    truth, the whole truth and nothing but the truth;

9    That said proceeding was taken down by me by stenotype

10   at the time and place therein stated and thereafter

11   transcribed under my direction into computerized

12   transcription.

13   I further certify that I am not of counsel nor attorney

14   for nor related to the parties hereto, nor am I in any

15   way interested in the outcome of this action.

16   In compliance with section 8016 of the Business and

17   Professions Code, I certify under penalty of perjury

18   that I am a certified shorthand reporter with license

19   number 13445 in full force and effect.

20   Witness my hand this   31st of May  , 2025.

21

22                    _____
                      DEREK L. HOAGLAND, CSR #13445
23

24

25

# EXHIBIT 13

FILED UNDER SEAL PURSUANT
TO PROTECTIVE ORDER

# EXHIBIT 14

FILED UNDER SEAL PURSUANT
TO PROTECTIVE ORDER

# EXHIBIT 15

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

TRENTON J. VAN OSS (*pro hac vice*)
tvanoss@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    (202) 955-8500
Facsimile:    (202) 467-0539

COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAMERON J. CLARK (SBN 313039)
cclark@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, on behalf of himself and all other similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | CASE NO. 3:22-cv-3580-WHO<br><br>**<u>PUTATIVE CLASS ACTION</u>**<br><br>**DEFENDANT META PLATFORMS, INC.'S INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)** |

Gibson, Dunn & Crutcher LLP

Defendant Meta Platforms, Inc. ("Meta"), by and through its undersigned counsel, submits its Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. These Initial Disclosures are preliminary in nature and based upon information that Meta has acquired to date. Meta reserves the right to add to and/or amend these Initial Disclosures as appropriate and necessary as Plaintiffs' claims are clarified and as additional information becomes available.

Meta submits the following disclosures without waiving any applicable privilege, protection, doctrine, defense, or right, including without limitation the attorney-client privilege, the work-product doctrine, and all other privileges, protections, doctrines, defenses, and/or rights against discoverability, admissibility, or any other issue, recognized under the laws of all relevant jurisdictions. Meta expressly reserves the right to object to the production and/or introduction into evidence of any document or evidence described herein, or to the testimony by any of the witnesses disclosed herein, on the basis of privilege, relevance, or otherwise, as appropriate. Meta reserves the right to call any witness or present any exhibit or item at trial not identified here, but identified through discovery or investigation during this action.

In addition to the individuals and documents listed below, Meta reserves the right to seek and use discoverable information from individuals and entities identified in any other party's disclosures to support its claims or defenses. Meta also incorporates by reference all individuals identified in the initial disclosures of the other parties in this action, to the extent such individuals are not already listed herein.

## I.     INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Pursuant to Rule 26(a)(1)(A)(i), the following list sets forth, in alphabetical order, the name and contact information of those individuals that Meta presently has reason to believe are likely to have discoverable information that Meta may use to support its claims and/or defenses. By indicating the general subject matter of information an individual may possess, Meta does not limit its right to call that individual to testify concerning other subjects. In making these disclosures, Meta does not waive its right to object, pursuant to the applicable Local and Federal Rules, to the deposition testimony of the individuals listed below. Meta anticipates that further individuals may be identified when discovery proceeds and Plaintiffs' claims are clarified.

**Dinkar Jain** (San Francisco, California)

Mr. Jain is a Director of Product Management at Meta.  He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's tools that allow advertisers to target their advertising campaigns.  Mr. Jain may be contacted through Meta's counsel of record in this action.

**Jane Doe I** (Maryland)

Jane Doe I is a named Plaintiff in this action.  She may have information relating to the claims and defenses at issue in this action, including but not limited to her use of MedStar Health, Inc.'s patient portal and her use of any features, apps, technologies, software, or services offered by Meta ("Meta Products").

**Jane Doe II** (Wisconsin)

Jane Doe II is a named Plaintiff in this action.  She may have information relating to the claims and defenses at issue in this action, including but not limited to her use of Rush University System for Health's patient portal and her use of Meta Products.

**Jin Yamamoto** (Seattle, Washington)

Mr. Yamamoto is a Manager for Technical Program Management at Meta.  He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's matching of data sent to Meta via the Meta Pixel to existing Meta users.  Mr. Yamamoto may be contacted through Meta's counsel of record in this action.

**John Doe** (Maryland)

John Doe is a named Plaintiff in this action.  He may have information relating to the claims and defenses at issue in this action, including but not limited to his use of MedStar Health, Inc.'s patient portal and his use of Meta Products.

**John Doe II** (Vermont)

John Doe is a named Plaintiff in this action.  He may have information relating to the claims and defenses at issue in this action, including but not limited to his use of UK Healthcare's patient portal and his use of Meta Products.

**MedStar Health, Inc.** (Columbia, Maryland)

MedStar Health, Inc. ("Medstar") is a healthcare organization in the United States. Medstar may have information relating to the claims and defenses at issue in this action, including but not limited to John Doe's and Jane Doe I's use of Medstar's patient portal and Medstar's use of the Meta Pixel and Meta's advertising tools.

**Rush University System for Health** (Chicago, Illinois)

Rush University System for Health ("Rush") is a healthcare system associated with Rush University in the United States. Rush may have information relating to the claims and defenses at issue in this action, including but not limited to Jane Doe II's use of Rush's patient portal and Rush's use of the Meta Pixel and Meta's advertising tools.

**Tobias Wooldridge** (Seattle, Washington)

Mr. Wooldridge is a Software Engineer at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to the Meta Pixel code, deployment, and code or product changes. Mr. Wooldridge may be contacted through Meta's counsel of record in this action.

**UK HealthCare** (Lexington, Kentucky)

UK HealthCare ("UKH") is a healthcare system associated with the University of Kentucky in the United States. UKH may have information relating to the claims and defenses at issue in this action, including but not limited to John Doe II's use of UKH's patient portal and UKH's use of the Meta Pixel and Meta's advertising tools.

\* \* \* \* \* \*

Meta's investigation of Plaintiffs' claims continues, and Meta anticipates that further individuals may be identified as Plaintiffs' claims are clarified and as additional information becomes available. Meta reserves the right to identify additional individuals at a later date, including any witness identified in any other party's Rule 26 disclosures and/or any witness identified in any party's discovery responses in this action. Further, the foregoing list does not include expert witnesses, and Meta reserves the right to designate such experts pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and to call these witnesses at any trial of this action.

DEFENDANT META PLATFORMS, INC.'S INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22:CV-3580-WHO

Gibson, Dunn &
Crutcher LLP

## II.   DOCUMENTS

Pursuant to Rule 26(a)(1)(A)(ii), below is a description, by category, of documents, electronically stored information, and tangible things that are in the possession, custody, or control of Meta that it may use to support its defenses in this matter based upon Meta's understanding of Plaintiffs' claims and allegations.

1. Documents concerning Plaintiffs' use of Meta Products.

2. Documents concerning Plaintiffs' use of the Internet, including but not limited to the websites they accessed, the applications they used, and the actions they took on those websites and/or apps during the time period relevant to this action.

3. Documents relating to any communications between Plaintiffs and Meta.

4. Documents concerning Meta's delivery of ads to Plaintiffs.

5. Documents concerning Meta Pixel, including but not limited to how it is used, made available to developers, and the type of data that it has access to.

6. Public statements by Meta—including but not limited to Meta Help Center, Meta for Business, and Meta for Developers pages—regarding its provision of Meta Business Tools, including Meta Pixel.

7. Documents concerning public statements by Meta regarding Meta's tools that allow advertisers to target their advertising campaigns based on data sent via Meta Pixel.

8. Documents relating to any communications between Medstar and Meta.

9. Documents relating to any communications between Rush and Meta.

10. Documents relating to any communications between UKH and Meta.

11. Documents concerning Medstar's use of Meta Pixel during the time period relevant to this action.

12. Documents concerning Rush's use of Meta Pixel during the time period relevant to this action.

13. Documents concerning UKH's use of Meta Pixel during the time period relevant to this action.

14. Documents concerning Medstar's use of Meta's tools that allow advertisers to target

their advertising campaigns based on data sent via Meta Pixel, during the time period relevant to this action.

15. Documents concerning Rush's use of Meta's tools that allow advertisers to target their advertising campaigns based on data sent via Meta Pixel, during the time period relevant to this action.

16. Documents concerning UKH's use of Meta's tools that allow advertisers to target their advertising campaigns based on data sent via Meta Pixel, during the time period relevant to this action.

17. Documents concerning Plaintiffs' contractual relationships with Medstar, Rush, and UKH and all applicable terms of use and privacy policies pertaining to the use of Medstar, Rush, and UKH's websites and patient portals.

18. Documents and communications between Plaintiffs and Medstar, Rush, and UKH.

19. Documents that disclosed Meta's use of data sent via Meta Pixel, including but not limited to Facebook's Data Policy and Terms of Service, in effect during the time period relevant to this action.

20. Meta's Advertising Policies, Business Tools Terms, Commercial Terms, Cookies Policy, Custom Audiences Terms, Customer List Custom Audiences Terms, Developer Policies, Offline Conversion Terms, Platform Policy, Platform Terms, Self-Serve Ad Terms, and Terms of Service, in effect during the time period relevant to this action.

21. Documents relating to damages allegedly sustained and/or claimed by Plaintiffs, and the lack of any damages and/or injury.

22. Other documents relating to the claims at issue in this action, including but not limited to the variability surrounding Plaintiffs' and putative class members' claims and anticipated attempt to secure classwide remedies.

Meta anticipates that additional documents will be obtained from Plaintiffs and possibly from third parties. Meta reserves the right to supplement this list to reflect additional documents upon Plaintiffs' clarification of their claims and as additional information becomes available.

Meta makes these Initial Disclosures without waiving any of its objections to the timing of discovery (including Meta's position that discovery should be stayed pending a decision on its forthcoming motion to dismiss) and the admissibility of any information disclosed under the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and/or the Local Rules of this Court. By identifying the foregoing categories, Meta does not concede the relevance of specific categories of documents, and it specifically reserves all applicable privileges and protections, including attorney-client privilege and/or work product doctrine.

## III. DAMAGES

Pursuant to Rule 26(a)(1)(A)(iii), Meta denies that Plaintiffs or any putative class members have sustained any damages. At the present time, Meta has not asserted any claims for damages. Meta reserves the right to seek any and all remedies in this litigation to which it may be entitled.

## IV. INSURANCE AGREEMENTS

Pursuant to Rule 26(a)(1)(A)(iv), Meta is unaware at this time of the existence of any relevant agreement under which an insurance company may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

\* \* \* \* \*

Meta reserves the right to supplement and correct these Initial Disclosures to include information hereafter acquired based upon its continued investigation and further clarification of Plaintiffs' claims, discovery, trial preparation, and analysis.

Dated: September 21, 2022

GIBSON, DUNN & CRUTCHER LLP

By: _____*/s/ Lauren Goldman*_____
Lauren Goldman

Attorneys for Defendant META PLATFORMS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of September, 2022, I caused the foregoing document to be served via electronic mail to counsel for Plaintiffs, Paul R. Kiesel, Jeffrey A. Koncius, Nicole Ramirez, Jason 'Jay' Barnes, An Troung, Eric Johnson, Jennifer Paulson, Stephen M. Gorny, Amy Gunn, Elizabeth S. Lenivy, and Beth E. Terrell.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 21, 2022          By:          _/s/ Lauren Goldman_
                                                  Lauren Goldman

DEFENDANT META PLATFORMS, INC.'S INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22:CV-3580-WHO

Gibson, Dunn &
Crutcher LLP

# EXHIBIT 22

**SIMMONS HANLY CONROY LLC**
112 MADISON AVENUE, 7TH FL
NEW YORK, NY 10016

**KIESEL LAW LLP**
8648 WILSHIRE BOULEVARD
BEVERLY HILLS, CA 90211-2910

**GIBBS LAW GROUP LLP**
1111 BROADWAY, STE. 2100
OAKLAND, CA 94607

**COHEN MILSTEIN SELLERS & TOLL PLLC**
110 NEW YORK AVENUE NW, 5TH FL
WASHINGTON, DC 20005

**TERRELL MARSHALL LAW GROUP PLLC**
936 NORTH 34TH ST., STE. 300
SEATTLE, WA 98103

**March 8, 2025**

**VIA ELECTRONIC MAIL**

GIBSON, DUNN & CRUTCHER LLP
Lauren Goldman
lgoldman@gibsondunn.com

Re:    *In re Meta Pixel Healthcare Litigation*
        Dinkar Jain Related Issues

Dear Counsel:

Because Meta has asserted that it cannot produce Dinkar Jain for deposition, Plaintiffs ask that Meta identify the person most likely to have Jain's level of knowledge relating to the ▮▮▮ and Intent Pipelines at Meta. We understand that Meta intends to designate someone on these topics for Plaintiffs' 30(b)(6) topics and ask that Meta do so as soon as possible.

In addition, we ask that Meta run the following search terms across that designee's custodial files and the Meta custodial files. In the chart below, we identify each requested search terms and the number of hits associated with them in Meta's current production. As you will see, these terms should not present a substantial burden. Thus, we ask that Meta produce these soon so that they will be available for the 30(b)(6) deposition.

| Search Term(s) | Hits | Jain |
|---|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮ | ▮ | ▮ |
| ▮▮▮▮▮▮▮▮ | ▮ | ▮ |



These terms appear in (1) the 30(b)(6) topics for which Mr. Jain would have possessed the most knowledge; (2) ▋▋▋▋▋▋▋▋ table outputs; or (3) intent pipeline data sources. When run as a single query that de-dups documents that hit upon multiple terms and only returns PDFs, email, Excel, and PowerPoints; it returns 413 documents (excluding UP2X and Daiquery documents).

Plaintiffs further request that Meta state, in writing, whether it represents Mr. Jain in his *personal* capacity, and if not, provide the last known contact information for Mr. Jain, or, in the event that he has separate personal counsel, contact information for his personal counsel.

Sincerely,
Jay Barnes

cc: Counsel of record

# EXHIBIT 23

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600,
San Francisco, CA 94111
Telephone:     (415) 393-8200
Facsimile:     (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates to:<br><br>All Actions. | CASE NO. 3:22-cv-3580-WHO (VKD)<br><br>CLASS ACTION<br><br>**DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)**<br><br>The Honorable William H. Orrick |

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22:CV-3580-WHO (VKD)

Defendant Meta Platforms, Inc. ("Meta"), by and through its undersigned counsel, submits its Supplemental Initial Disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure.  Meta supplements its disclosures based upon the information currently and reasonably available to it.  Meta reserves the right to add to and/or amend these Supplemental Initial Disclosures as appropriate and necessary as plaintiffs' claims are clarified and as additional information becomes available.

Meta submits the following disclosures without waiving any applicable privilege, protection, doctrine, defense, or right, including without limitation the attorney-client privilege, the work-product doctrine, and all other privileges, protections, doctrines, defenses, and/or rights against discoverability, admissibility, or any other issue, recognized under the laws of all relevant jurisdictions.  Meta expressly reserves the right to object to the production and/or introduction into evidence of any document or evidence described herein, or to the testimony by any of the witnesses disclosed herein, on the basis of privilege, relevance, or otherwise, as appropriate.  Meta reserves the right to call any witness or present any exhibit or item at trial not identified here, but identified through discovery or investigation during this action.

In addition to the individuals and documents listed below, Meta reserves the right to seek and use discoverable information from individuals and entities identified in any other party's disclosures to support its claims or defenses.  Meta also incorporates by reference all individuals identified in its Initial Disclosures and the initial disclosures of the other parties in this action, to the extent such individuals are not already listed herein.

## I.   INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Pursuant to Rule 26(a)(1)(A)(i), the following list sets forth the name and contact information of those individuals that Meta presently has reason to believe are likely to have discoverable information that Meta may use to support its claims and/or defenses.  By indicating the general subject matter of information an individual may possess, Meta does not limit its right to call that individual to testify concerning other subjects.  In making these disclosures, Meta does not waive its right to object, pursuant to the applicable Local and Federal Rules, to the deposition testimony of the individuals listed below.  Meta anticipates that further individuals may be identified as discovery proceeds and plaintiffs' claims are clarified.

Gibson, Dunn &
Crutcher LLP

**Tobias Wooldridge** (Seattle, Washington)

Mr. Wooldridge is a Software Engineer at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to the Meta Pixel code, deployment, and code or product changes. Mr. Wooldridge may be contacted through Meta's counsel of record in this action.

**Jin Yamamoto** (Seattle, Washington)

Mr. Yamamoto is a Manager for Technical Program Management at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's matching of data sent to Meta via the Meta Pixel to existing Meta users. Mr. Yamamoto may be contacted through Meta's counsel of record in this action.

**Matthew Baczyk** (New York, New York)

Mr. Baczyk is a Director of Sales at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's Business Tools, how advertisers utilize the Business Tools, Meta's signals integrity systems, and Meta's policies applicable to advertisers and developers. Mr. Baczyk may be contacted through Meta's counsel of record in this action.

**Amlesh Jayakumar** (Menlo Park, California)

Mr. Jayakumar is a Signals Engineer at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's signals integrity systems, the Meta Pixel code, deployment, and code or product changes. Mr. Jayakumar may be contacted through Meta's counsel of record in this action.

**Fred Leach** (Menlo Park, California)

Mr. Leach is a Vice President of Product Management at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's Business Tools, how advertisers utilize the Business Tools, Meta's signals integrity systems, Meta's policies applicable to advertisers and developers, and the measurement of the effectiveness of advertising at Meta. Mr. Leach may be contacted through Meta's counsel of record in this action.

Gibson, Dunn &
Crutcher LLP

**Goksu Nebol-Perlman** (London, England)

Ms. Nebol-Perlman is a Vice President of Product Marketing, Monetization at Meta.  She may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's product development, Meta's Business Tools, how advertisers utilize the Business Tools, and Meta's policies applicable to advertisers and developers.  Ms. Nebol-Perlman may be contacted through Meta's counsel of record in this action.

**Erin Ott** (New York, New York)

Ms. Ott is a Director of Health, Sales at Meta.  She may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's management of accounts for health-related advertisers.  Ms. Ott may be contacted through Meta's counsel of record in this action.

**Jenny Streets** (New York, New York)

Ms. Streets is a Group Lead – CPG, Financial Services and Health at Meta.  She may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's management of accounts for health-related advertisers.  Ms. Streets may be contacted through Meta's counsel of record in this action.

**John Doe II** (North Carolina)

John Doe is a named plaintiff in this action.  He may have information relating to the claims and defenses at issue in this action, including but not limited to his use of WakeMed Health & Hospitals' patient portal, Blue Cross Blue Shield North Carolina State's web-properties, MetLife Insurance's web-properties, and his use of Meta Products.

**John Doe III** (Oregon)

John Doe III is a named plaintiff in this action.  He may have information relating to the claims and defenses at issue in this action, including but not limited to his use of Providence Portland Medical Center's patient portal, Kaiser Permanente's patient portal, and his use of Meta Products.

**Jane Doe I** (Wisconsin)

Jane Doe I is a named plaintiff in this action.  She may have information relating to the claims and defenses at issue in this action, including but not limited to her use of Rush University System for Health's patient portal, Northwestern Medicine's patient portal, Kaiser Permanente's patient portal,

Gibson, Dunn & Crutcher LLP

1  Blue Cross Blue Shield of Illinois's web-properties, United Healthcare's web-properties, and her use
2  of Meta Products.

3  **Jane Doe IV** (Maryland)

4  Jane Doe IV is a named plaintiff in this action.  She may have information relating to the claims
5  and defenses at issue in this action, including but not limited to her use of Kaiser Permanente's patient
6  portal, Maryland Health Connection's patient portal, the pharmaceutical web-property identified in the
7  Complaint, and her use of Meta Products.

8  **Jane Doe V** (Maryland)

9  Jane Doe V is a named plaintiff in this action.  She may have information relating to the claims
10 and defenses at issue in this action, including but not limited to her use of MedStar Health's patient
11 portal, Cigna's patient portal, Blue Cross Blue Shield Carefirst's patient portal, and her use of Meta
12 Products.

13 **Jane Doe VI** (California)

14 Jane Doe VI is a named plaintiff in this action.  She may have information relating to the claims
15 and defenses at issue in this action, including but not limited to her use of Kaiser Permanente's patient
16 portal and her use of Meta Products.

17 **Jane Doe VII** (California)

18 Jane Doe VII is a named plaintiff in this action.  She may have information relating to the claims
19 and defenses at issue in this action, including but not limited to her use of Kaiser Permanente's patient
20 portal, Blue Cross Blue Shield of California's patient portal, and her use of Meta Products.

21 **Jane Doe IX** (California)

22 Jane Doe IX is a named plaintiff in this action.  She may have information relating to the claims
23 and defenses at issue in this action, including but not limited to her use of Kaiser Permanente's patient
24 portal, and her use of Meta Products.

25 **Jane Doe X** (California)

26 Jane Doe X is a named plaintiff in this action.  She may have information relating to the claims
27 and defenses at issue in this action, including but not limited to her use of Adventist Health's patient
28 portal and her use of Meta Products.

1       **Jane Doe XI** (California)

2       Jane Doe XI is a named plaintiff in this action.  She may have information relating to the claims

3 and defenses at issue in this action, including but not limited to her use of Sutter Health's patient portal

4 and her use of Meta Products.

5       **Adventist Health** (Roseville, California)

6       Adventist Health ("Adventist") is a healthcare system in the United States.  Adventist may have

7 information relating to the claims and defenses at issue in this action, including but not limited to any

8 of named plaintiffs' use of Adventist's patient portal or web properties, and Adventist's use of the Meta

9 Pixel and Meta's advertising tools.

10       **Blue Cross Blue Shield of California** (Oakland, California)

11       Blue Cross Blue Shield of California ("BCBS California") is a health insurance company in the

12 United States.  BCBS California may have information relating to the claims and defenses at issue in

13 this action, including but not limited to any of named plaintiffs' use of BCBS California's patient portal

14 or web properties and BCBS California's use of the Meta Pixel and Meta's advertising tools.

15       **Blue Cross Blue Shield CareFirst** (Baltimore, Maryland)

16       Blue Cross Blue Shield Care First ("BCBS CareFirst") is a health insurance company in the

17 United States.  BCBS CareFirst may have information relating to the claims and defenses at issue in

18 this action, including but not limited to any of named plaintiffs' use of BCBS CareFirst's patient portal

19 or web properties and BCBS CareFirst's use of the Meta Pixel and Meta's advertising tools.

20       **Blue Cross Blue Shield of Illinois** (Chicago, Illinois)

21       Blue Cross Blue Shield of Illinois ("BCBS Illinois") is a health insurance company in the

22 United States.  BCBS Illinois may have information relating to the claims and defenses at issue in this

23 action, including but not limited to any of named plaintiffs' use of BCBS Illinois's patient portal or

24 web properties and BCBS Illinois's use of the Meta Pixel and Meta's advertising tools.

25       **Blue Cross Blue Shield North Carolina** (Durham, North Carolina)

26       Blue Cross Blue Shield North Carolina ("BCBS NC") is a health insurance company in the

27 United States.  BCBS NC may have information relating to the claims and defenses at issue in this

28 action, including but not limited to any of named plaintiffs' use of BCBS NC's patient portal or web-

Gibson, Dunn &
Crutcher LLP

properties, and BCBS NC's use of the Meta Pixel and Meta's advertising tools.

**The Cigna Group** (Bloomfield, Connecticut)

The Cigna Group ("Cigna") is a health insurance company in the United States. Cigna may have information relating to the claims and defenses at issue in this action, including but not limited to any of named plaintiffs' use of Cigna's patient portal or web properties, and Cigna's use of the Meta Pixel and Meta's advertising tools.

**Gilead** (Foster City, California)

Gilead is a pharmaceutical manufacturer in the United States.  Gilead may have information relating to the claims and defenses at issue in this action, including but not limited to any of named plaintiffs' use of the pharmaceutical web-property identified in the Complaint, and Gilead's use of the Meta Pixel and Meta's advertising tools.

**Kaiser Permanente** (Oakland, California)

Kaiser Permanente ("Kaiser") is a healthcare system in the United States.  Kaiser may have information relating to the claims and defenses at issue in this action, including but not limited to any of named plaintiffs' use of Kaiser's patient portal or web properties, and Kaiser's use of the Meta Pixel and Meta's advertising tools.

**Maryland Health Connection** (Lanham, Maryland)

Maryland Health Connection ("MHC") is a healthcare system in the United States.  MHC may have information relating to the claims and defenses at issue in this action, including but not limited to any of named plaintiffs' use of MHC's patient portal or web properties and MHC's use of the Meta Pixel and Meta's advertising tools.

**MedStar Health, Inc.** (Columbia, Maryland)

MedStar Health, Inc. ("Medstar") is a healthcare system in the United States.  Medstar may have information relating to the claims and defenses at issue in this action, including but not limited to any of named plaintiffs' use of Medstar's patient portal or web properties, and Medstar's use of the Meta Pixel and Meta's advertising tools.

**MetLife Insurance** (New York, New York)

MetLife Insurance ("MetLife") is an insurance company in the United States.  MetLife may

7

DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

Gibson, Dunn &
Crutcher LLP

1  have information relating to the claims and defenses at issue in this action, including but not limited to

2  any of named plaintiffs' use of MetLife's web properties, and MetLife's use of the Meta Pixel and

3  Meta's advertising tools.

4  **Northwestern Medicine** (Chicago, Illinois)

5  Northwestern Medicine is a healthcare system in the United States.  Northwestern Medicine

6  may have information relating to the claims and defenses at issue in this action, including but not

7  limited to any of named plaintiffs' use of Northwestern Medicine's patient portal or web properties,

8  and Northwestern Medicine's use of the Meta Pixel and Meta's advertising tools.

9  **Providence Portland Medical Center** (Portland, Oregon)

10  Providence Portland Medical Center ("Providence") is a healthcare system in the United States.

11  Providence may have information relating to the claims and defenses at issue in this action, including

12  but not limited to any of named plaintiffs' use of Providence's patient portal or web properties, and

13  Providence's use of the Meta Pixel and Meta's advertising tools.

14  **Rush University System for Health** (Chicago, Illinois)

15  Rush University System for Health ("Rush") is a healthcare system associated with Rush

16  University in the United States.  Rush may have information relating to the claims and defenses at issue

17  in this action, including but not limited to any of named plaintiffs' use of Rush's patient portal or web

18  properties, and Rush's use of the Meta Pixel and Meta's advertising tools.

19  **Sutter Health** (Sacramento, California)

20  Sutter Health ("Sutter") is a healthcare system in the United States.  Sutter may have

21  information relating to the claims and defenses at issue in this action, including but not limited to any

22  of named plaintiffs' use of Sutter's patient portal or web properties, and Sutter's use of the Meta Pixel

23  and Meta's advertising tools.

24  **United Healthcare** (Minnetonka, Minnesota)

25  United Healthcare is an insurance company in the United States.  United Healthcare may have

26  information relating to the claims and defenses at issue in this action, including but not limited to any

27  of named plaintiffs' use of United Healthcare's web-properties, and United Healthcare's use of the

28  Meta Pixel and Meta's advertising tools.

Gibson, Dunn &
Crutcher LLP

8

DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

**WakeMed Health & Hospitals** (Raleigh, North Carolina)

WakeMed Health & Hospitals ("WakeMed") is a healthcare system in the United States. WakeMed may have information relating to the claims and defenses at issue in this action, including but not limited to any of named plaintiffs' use of WakeMed's patient portal and WakeMed's use of the Meta Pixel and Meta's advertising tools.

* * * * * *

Meta's investigation of plaintiffs' claims continues, and Meta anticipates that further individuals may be identified as plaintiffs' claims are clarified and as additional information becomes available. Meta reserves the right to identify additional individuals at a later date, including any witness identified in any other party's Rule 26 disclosures and/or any witness identified in any party's discovery responses in this action. Further, the foregoing list does not include expert witnesses, and Meta reserves the right to designate such experts pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and to call these witnesses at any trial of this action.

## II.    DOCUMENTS

Pursuant to Rule 26(a)(1)(A)(ii), below is a description, by category, of documents, electronically stored information, and tangible things that are in the possession, custody, or control of Meta that it may use to support its defenses in this matter based upon Meta's understanding of plaintiffs' claims and allegations.

1.   Documents concerning plaintiffs' use of Meta Products.

2.   Documents concerning plaintiffs' use of the Internet, including but not limited to the websites they accessed, the applications they used, and the actions they took on those websites and/or apps during the time period relevant to this action.

3.   Documents relating to any communications between plaintiffs and Meta.

4.   Documents concerning Meta's delivery of ads to plaintiffs.

5.   Documents concerning Meta Pixel, including but not limited to how it is used, made available to developers, and the type of data that it has access to.

6.   Public statements by Meta—including but not limited to Meta Help Center, Meta for Business, and Meta for Developers pages—regarding its provision of Meta Business

Gibson, Dunn & Crutcher LLP

Tools, including Meta Pixel.

7. Documents concerning public statements by Meta regarding Meta's tools that allow advertisers to target their advertising campaigns based on data sent via Meta Pixel.

8. Documents relating to any communications between any of the entities allegedly used by plaintiffs as identified in the operative Complaint and in their responses and supplemental responses to Meta's interrogatories (the "Plaintiff Entities") and Meta.

9. Documents concerning any Plaintiff Entity's use of Meta Pixel during the time period relevant to this action.

10. Documents concerning any Plaintiff Entity's use of Meta's tools that allow advertisers to target their advertising campaigns based on data sent via Meta Pixel, during the time period relevant to this action.

11. Documents concerning plaintiffs' contractual relationships with any Plaintiff Entity and all applicable terms of use and privacy policies pertaining to the use of their web-properties or patient portals.

12. Documents and communications between plaintiffs and the Plaintiff Entities.

13. Documents that disclosed Meta's use of data sent via Meta Pixel, including but not limited to Facebook's Data Policy and Terms of Service in effect during the time period relevant to this action.

14. Meta's Advertising Policies, Business Tools Terms, Commercial Terms, Cookies Policy, Custom Audiences Terms, Customer List Custom Audiences Terms, Developer Policies, Offline Conversion Terms, Platform Policy, Platform Terms, Self-Serve Ad Terms, and Terms of Service in effect during the time period relevant to this action.

15. Documents relating to damages allegedly sustained and/or claimed by plaintiffs, and the lack of any damages and/or injury.

16. Other documents relating to the claims at issue in this action, including but not limited to the variability surrounding plaintiffs' and putative class members' claims and anticipated attempt to secure classwide remedies.

17. Portions of Meta's Source Code.

Gibson, Dunn & Crutcher LLP

Meta anticipates that additional documents will be obtained from plaintiffs and possibly from third parties. Meta reserves the right to supplement this list to reflect additional documents upon plaintiffs' clarification of their claims and as additional information becomes available.

Meta makes these Supplemental Initial Disclosures without waiving any of its objections to the timing of discovery and the admissibility of any information disclosed under the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and/or the Local Rules of this Court. By identifying the foregoing categories, Meta does not concede the relevance of specific categories of documents, and it specifically reserves all applicable privileges and protections, including attorney-client privilege and/or work product doctrine.

* * * * *

Meta reserves the right to supplement and correct these Supplemental Initial Disclosures to include information hereafter acquired based upon its continued investigation and further clarification of plaintiffs' claims, discovery, trial preparation, and analysis.

Dated: April 2, 2025

GIBSON, DUNN & CRUTCHER LLP

By:        */s/Lauren Goldman*
                Lauren Goldman

*Attorneys for Defendant Meta Platforms, Inc.*

DEFENDANT META PLATFORMS, INC.'S SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

Gibson, Dunn &
Crutcher LLP

# EXHIBIT 28

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600,
San Francisco, CA 94111
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | CASE NO. 3:22-cv-3580-WHO (VKD) |
| This Document Relates to: | CLASS ACTION |
| All Actions. | **DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)** |
| | The Honorable William H. Orrick |

Defendant Meta Platforms, Inc. ("Meta"), by and through its undersigned counsel, submits its Fifth Supplemental Initial Disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure. Meta supplements its disclosures based upon the information currently and reasonably available to it. Meta reserves the right to add to and/or amend these Fifth Supplemental Initial Disclosures as appropriate and necessary as plaintiffs' claims are clarified and as additional information becomes available.

Meta submits the following disclosures without waiving any applicable privilege, protection, doctrine, defense, or right, including without limitation the attorney-client privilege, the work-product doctrine, and all other privileges, protections, doctrines, defenses, and/or rights against discoverability, admissibility, or any other issue, recognized under the laws of all relevant jurisdictions. Meta expressly reserves the right to object to the production and/or introduction into evidence of any document or evidence described herein, or to the testimony by any of the witnesses disclosed herein, on the basis of privilege, relevance, or otherwise, as appropriate. Meta reserves the right to call any witness or present any exhibit or item at trial not identified here, but identified through discovery or investigation during this action.

In addition to the individuals and documents listed below, Meta reserves the right to seek and use discoverable information from individuals and entities identified in any other party's disclosures to support its claims or defenses. Meta also incorporates by reference all individuals identified in its Initial Disclosures and the initial disclosures of the other parties in this action, to the extent such individuals are not already listed herein.

## I.   INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Pursuant to Rule 26(a)(1)(A)(i), the following list sets forth the name and contact information of those individuals that Meta presently has reason to believe are likely to have discoverable information that Meta may use to support its claims and/or defenses. By indicating the general subject matter of information an individual may possess, Meta does not limit its right to call that individual to testify concerning other subjects. In making these disclosures, Meta does not waive its right to object, pursuant to the applicable Local and Federal Rules, to the deposition testimony of the individuals listed below. Meta anticipates that further individuals may be identified as discovery proceeds and plaintiffs'

2

Gibson, Dunn & Crutcher LLP

claims are clarified.

**Robert Sherman** (Washington, D.C.)

Mr. Sherman is the Vice President of Public Policy and Deputy Chief Privacy Officer at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's privacy- and policy-related decisions regarding the Business Tools, data received by Meta via the Business Tools, and Meta's ads targeting system. Mr. Sherman may be contacted through Meta's counsel of record in this action.

**Tobias Wooldridge** (Seattle, Washington)

Mr. Wooldridge is a Software Engineer at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to the Meta Pixel code, deployment, and code or product changes. Mr. Wooldridge may be contacted through Meta's counsel of record in this action.

**Jin Yamamoto** (Seattle, Washington)

Mr. Yamamoto is a Manager for Technical Program Management at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's matching of data sent to Meta via the Meta Pixel to existing Meta users. Mr. Yamamoto may be contacted through Meta's counsel of record in this action.

**Matthew Baczyk** (New York, New York)

Mr. Baczyk is a Director of Sales at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's Business Tools, how advertisers utilize the Business Tools, Meta's signals integrity systems, and Meta's policies applicable to advertisers and developers. Mr. Baczyk may be contacted through Meta's counsel of record in this action.

**Amlesh Jayakumar** (Menlo Park, California)

Mr. Jayakumar is a Signals Engineer at Meta. He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's signals integrity systems, the Meta Pixel code, deployment, and code or product changes. Mr. Jayakumar may be contacted through Meta's counsel of record in this action.

3

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22:CV-3580-WHO (VKD)

**Fred Leach** (Menlo Park, California)

Mr. Leach is a Vice President of Product Management at Meta.  He may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's Business Tools, how advertisers utilize the Business Tools, Meta's signals integrity systems, Meta's policies applicable to advertisers and developers, and the measurement of the effectiveness of advertising at Meta.  Mr. Leach may be contacted through Meta's counsel of record in this action.

**Goksu Nebol-Perlman** (London, England)

Ms. Nebol-Perlman is a Vice President of Product Marketing, Monetization at Meta.  She may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's product development, Meta's Business Tools, how advertisers utilize the Business Tools, and Meta's policies applicable to advertisers and developers.   Ms. Nebol-Perlman may be contacted through Meta's counsel of record in this action.

**Erin Ott** (New York, New York)

Ms. Ott is a Director of Health, Sales at Meta.  She may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's management of accounts for health-related advertisers.  Ms. Ott may be contacted through Meta's counsel of record in this action.

**Jenny Streets** (New York, New York)

Ms. Streets is a Group Lead – CPG, Financial Services and Health at Meta.  She may have information relating to the claims and defenses at issue in this action, including but not limited to Meta's management of accounts for health-related advertisers.  Ms. Streets may be contacted through Meta's counsel of record in this action.

**John Doe II** (North Carolina)

John Doe is a named plaintiff in this action.  He may have information relating to the claims and defenses at issue in this action, including but not limited to his use of WakeMed Health & Hospitals' patient portal, Blue Cross Blue Shield North Carolina State's web-properties, MetLife Insurance's web-properties, and his use of Meta Products.

**John Doe III** (Oregon)

John Doe III is a named plaintiff in this action.  He may have information relating to the claims

4

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

1   and defenses at issue in this action, including but not limited to his use of Providence Portland Medical

2   Center's patient portal, Kaiser Permanente's patient portal, and his use of Meta Products.

3   **Jane Doe I** (Wisconsin)

4   Jane Doe I is a named plaintiff in this action.  She may have information relating to the claims

5   and defenses at issue in this action, including but not limited to her use of Rush University System for

6   Health's patient portal, Northwestern Medicine's patient portal, Kaiser Permanente's patient portal,

7   Blue Cross Blue Shield of Illinois's web-properties, United Healthcare's web-properties, and her use

8   of Meta Products.

9   **Jane Doe IV** (Maryland)

10  Jane Doe IV is a named plaintiff in this action.  She may have information relating to the claims

11  and defenses at issue in this action, including but not limited to her use of Kaiser Permanente's patient

12  portal, Maryland Health Connection's patient portal, the pharmaceutical web-property identified in the

13  Complaint, and her use of Meta Products.

14  **Jane Doe V** (Maryland)

15  Jane Doe V is a named plaintiff in this action.  She may have information relating to the claims

16  and defenses at issue in this action, including but not limited to her use of MedStar Health's patient

17  portal, Cigna's patient portal, Blue Cross Blue Shield Carefirst's patient portal, and her use of Meta

18  Products.

19  **Jane Doe VI** (California)

20  Jane Doe VI is a named plaintiff in this action.  She may have information relating to the claims

21  and defenses at issue in this action, including but not limited to her use of Kaiser Permanente's patient

22  portal and her use of Meta Products.

23  **Jane Doe VII** (California)

24  Jane Doe VII is a named plaintiff in this action.  She may have information relating to the claims

25  and defenses at issue in this action, including but not limited to her use of Kaiser Permanente's patient

26  portal, Blue Cross Blue Shield of California's patient portal, and her use of Meta Products.

27  **Jane Doe IX** (California)

28  Jane Doe IX is a named plaintiff in this action.  She may have information relating to the claims

Gibson, Dunn &
Crutcher LLP

and defenses at issue in this action, including but not limited to her use of Kaiser Permanente's patient portal, and her use of Meta Products.

**Jane Doe X** (California)

Jane Doe X is a named plaintiff in this action. She may have information relating to the claims and defenses at issue in this action, including but not limited to her use of Adventist Health's patient portal and her use of Meta Products.

**Jane Doe XI** (California)

Jane Doe XI is a named plaintiff in this action. She may have information relating to the claims and defenses at issue in this action, including but not limited to her use of Sutter Health's patient portal and her use of Meta Products.

**Kelsey Frederick** (Louisiana)

Ms. Frederick is a Marketing Coordinator at Vermilion Parish Hospital Service District No. 2 d/b/a Abbeville General Hospital. She may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Abbeville General Hospital's use or non-use of Meta Business Tools. Ms. Frederick may be contacted through Jack M. Stolier.

**Rob Suárez** (Maryland)

Mr. Suárez is VP, Chief Information Security Officer at Group Hospitalization and Medical Services, Inc. d/b/a CareFirst of Maryland, Inc. d/b/a BCBS CareFirst. He may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning BCBS CareFirst's use or non-use of the Meta Pixel. Mr. Suárez may be contacted through Valerie Sirota.

**Tamara Cannida-Gunter** (Maryland)

Ms. Cannida-Gunter is Director of Consumer Assistance and Operations at Maryland Health Benefit Exchange. She may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Maryland Health Benefit Exchange's collection of health information. Ms. Cannida-Gunter may be contacted through Nicole Quigley.

**Venkat R. Koshanam** (Maryland)

Mr. Koshanam is Chief Information Officer at Maryland Health Benefit Exchange. He may

6

Gibson, Dunn &
Crutcher LLP

have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Maryland Health Benefit Exchange's use or non-use of Meta Business Tools.  Mr. Koshanam may be contacted through Nicole Quigley.

**Cynthia Bero** (Massachusetts)

Ms. Bero is Vice President within the Information Systems Department at Partners HealthCare. She may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Mass General Brigham d/b/a Brigham & Women's Hospital's use or non-use of Meta Business Tools.  Ms. Bero may be contacted through Christopher Iaquinto.

**Jim Vint** (Massachusetts)

Mr. Vint is Senior Managing Director at Ankura Consulting Group, LLC.  He may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Mass General Brigham d/b/a Brigham & Women's Hospital's use or non-use of Meta Business Tools.  Mr. Vint may be contacted through Christopher Iaquinto.

**Lisa Badeau** (Massachusetts)

Ms. Badeau is Chief Marketing Officer for Brigham & Women's Hospital.  She may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Mass General Brigham d/b/a Brigham & Women's Hospital's use or non-use of Meta Business Tools. Ms. Badeau may be contacted through Christopher Iaquinto.

**Steven Singer** (Massachusetts)

Mr. Singer is Senior Vice President, Chief Communications Officer at Dana-Farber Cancer Institute.  He may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Mass General Brigham d/b/a Brigham & Women's Hospital's use or non-use of Meta Business Tools.  Mr. Singer may be contacted through Christopher Iaquinto.

**Misty Hathaway** (Massachusetts)

Ms. Hathaway is the Chief Marketing Officer for Massachusetts General Hospital.  She may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Mass General Brigham d/b/a Brigham & Women's Hospital's use or non-use of Meta Business Tools.  Ms. Hathaway may be contacted through Christopher Iaquinto.

7

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

**Aimee Reker** (Massachusetts)

Ms. Reker is the Principal Consultant at Leveret Marketing, LLC.  She may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning Mass General Brigham d/b/a Brigham & Women's Hospital's use or non-use of Meta Business Tools. Ms. Reker may be contacted through Christopher Iaquinto.

**Joseph Hanes** (Wisconsin)

Mr. Hanes is Corporate Counsel at University of Wisconsin Hospitals and Clinics Authority d/b/a UW Health.  He may have information relating to the claims and defenses at issue in this action, including but not limited to matters concerning UW Health's use or non-use of the Meta Business Tools.

**Employee(s) of Vermilion Parish Hospital Service District No. 2 d/b/a Abbeville General Hospital** (Abbeville, Louisiana)

One or more employees of Vermilion Parish Hospital Service District No. 2 d/b/a Abbeville General Hospital ("Abbeville"), a healthcare system in Abbeville, Louisiana.  The specific identities of the employees are not yet known, but they will be Abbeville employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Abbeville's patient portal or web properties, and any use by Abbeville of the Meta Business Tools and Meta's advertising tools.  Abbeville employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Abbeville may be contacted through Jack M. Stolier, 909 Poydras Street, Suite 2600, New Orleans, Louisiana 70112, jstolier@sullivanstolier.com.

**Employee(s) of Adena Health System** (Chillicothe, Ohio)

One or more employees of Adena Health System ("Adena Health"), a healthcare system in Chillicothe, Ohio.  The specific identities of the employees are not yet known, but they will be Adena Health employees that have information relating to the claims and defenses at issue in this action,

Gibson, Dunn &
Crutcher LLP

including but not limited to any plaintiffs' (including putative class members') use of Adena Health's patient portal or web properties, and any use by Adena Health of the Meta Business Tools and Meta's advertising tools.  Adena Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Adena Health may be contacted through Christopher Dean, 600 Superior Avenue, Suite 2100, Cleveland, Ohio 44114, cdean@mcdonaldhopkins.com.

**Employee(s) of Adventist Health** (Roseville, California)

One or more employees of Adventist Health ("Adventist"), a healthcare system in Roseville, California.  The specific identities of the employees are not yet known, but they will be Adventist employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Adventist's patient portal or web properties, and any use by Adventist of the Meta Business Tools and Meta's advertising tools. Adventist employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Adventist may be contacted through Kristine Argentine, 233 S. Wacker Drive, Suite 8000, Chicago, Illinois 60606-6448, KArgentine@seyfarth.com.

**Employee(s) of Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health** (Charlotte, North Carolina)

One or more employees of Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health, a healthcare system in Charlotte, North Carolina.  The specific identities of the employees are not yet known, but they will be Atrium Health employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Atrium Health's patient portal or web properties, and any use by Atrium Health of the Meta Business Tools and Meta's advertising tools.  Atrium Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments

9

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Atrium Health may be contacted through Preetha Rini, 434 Fayetteville Street, Suite 1600, Raleigh, North Carolina, prini@robinsonbradshaw.com.

**Employee(s) of AVALA Hospital, Imaging Center and Therapy** (Covington, Louisiana)

One or more employees of AVALA Hospital, Imaging Center and Therapy ("AVALA"), a healthcare system in Covington, Louisiana. The specific identities of the employees are not yet known, but they will be AVALA employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of AVALA's patient portal or web properties, and any use by AVALA of the Meta Business Tools and Meta's advertising tools. AVALA employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. AVALA may be contacted through Matthew A. Sherman, 1 Galleria Blvd., Suite 110, Metairie, Louisiana 70001, mas@chehardy.com.

**Employee(s) of Beth Israel Deaconess Medical Center, Inc. d/b/a Beth Israel Deaconess Hospital** (Boston, Massachusetts)

One or more employees of Beth Israel Deaconess Medical Center, Inc. d/b/a Beth Israel Deaconess Hospital ("BIDMC"), a healthcare system in Boston, Massachusetts. The specific identities of the employees are not yet known, but they will be BIDMC employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of BIDMC's patient portal or web properties, and any use by BIDMC of the Meta Business Tools and Meta's advertising tools. BIDMC employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. BIDMC may be contacted through David Quinn Gacioch, 200 Clarendon Street, Floor 58, Boston, Massachusetts 02116-5021, dgacioch@mwe.com.

Gibson, Dunn & Crutcher LLP

**Employee(s) of Blue Shield of California** (Oakland, California)

One or more employees of Blue Shield of California, a health insurance company in Oakland, California.  The specific identities of the employees are not yet known, but they will be Blue Shield of California employees that  have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Blue Shield of California's patient portal or web properties, and any use by Blue Shield of California  of the Meta Business Tools and Meta's advertising tools.  Blue Shield of California employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Blue Shield of California may be contacted through James F. Monagle, 500 Capitol Mall, Suite 2350, Sacramento, California 95814, jmonagle@mullen.law.

**Employee(s) of Blue Cross Blue Shield CareFirst** (Baltimore, Maryland)

One or more employees of Blue Cross Blue Shield Care First ("BCBS CareFirst"), a health insurance company in Baltimore, Maryland.  The specific identities of the employees are not yet known, but they will be BCBS CareFirst employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of BCBS CareFirst's patient portal or web properties, and any use by BCBS CareFirst of the Meta Business Tools and Meta's advertising tools.  BCBS CareFirst employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  BCBS CareFirst may be contacted through Valerie Sirota, 875 Third Avenue, New York, New York 10022, Valerie.Sirota@troutman.com.

**Employee(s) of Blue Cross Blue Shield of Illinois** (Chicago, Illinois)

One or more employees of Blue Cross Blue Shield of Illinois ("BCBS Illinois"), a health insurance company in Chicago, Illinois.  The specific identities of the employees are not yet known, but they will be BCBS Illinois employees that have information relating to the claims and defenses at

Gibson, Dunn & Crutcher LLP

1    issue in this action, including but not limited to any plaintiffs' (including putative class members') use

2    of BCBS Illinois's patient portal or web properties, and any use by BCBS Illinois of the Meta Business

3    Tools and Meta's advertising tools. BCBS Illinois employee(s) may also offer additional information,

4    including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the

5    subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition

6    to any other forthcoming motions, including for summary judgment. BCBS Illinois may be contacted

7    through Jonathan I. Detrixhe, 101 Second Street, Suite 1800, San Francisco, California 94105,

8    JDetrixhe@ReedSmith.com.

9            **Employee(s) of Blue Cross Blue Shield North Carolina** (Durham, North Carolina)

10           One or more employees of Blue Cross Blue Shield North Carolina ("BCBS NC"), a health

11   insurance company in Durham, North Carolina. The specific identities of the employees are not yet

12   known, but they will be BCBS NC employees that have information relating to the claims and defenses

13   at issue in this action, including but not limited to any plaintiffs' (including putative class members')

14   use of BCBS NC's patient portal or web properties, and any use by BCBS NC of the Meta Business

15   Tools and Meta's advertising tools. BCBS NC employee(s) may also offer additional information,

16   including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the

17   subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition

18   to any other forthcoming motions, including for summary judgment. BCBS NC may be contacted

19   through David Carpenter, One Atlantic Center, 1201 West Peachtree Street, Suite 4900, Atlanta,

20   Georgia 30309, David.Carpenter@alston.com.

21           **Employee(s) of Blue Cross Blue Shield Texas** (Richardson, Texas)

22           One or more employees of Blue Cross Blue Shield Texas ("BCBS TX"), a health insurance

23   company in Richardson, Texas. The specific identities of the employees are not yet known, but they

24   will be BCBS TX employees that have information relating to the claims and defenses at issue in this

25   action, including but not limited to any plaintiffs' (including putative class members') use of BCBS

26   TX's patient portal or web properties, and any use by BCBS TX of the Meta Business Tools and

27   Meta's advertising tools. BCBS TX employee(s) may also offer additional information, including

28   declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of

Gibson, Dunn &
Crutcher LLP

which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  BCBS TX may be contacted through Jonathan I. Detrixhe, 101 Second Street, Suite 1800, San Francisco, California 94105, JDetrixhe@ReedSmith.com.

**Employee(s) of Boone County Health Center** (Albion, Nebraska)

One or more employees of Boone County Health Center ("Boone"), a healthcare system in Albion, Nebraska.  The specific identities of the employees are not yet known, but they will be Boone employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Boone's patient portal or web properties, and any use by Boone of the Meta Business Tools and Meta's advertising tools.  Boone employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Boone may be contacted through Kenneth Hartman, 1700 Farnam Street, Suite 1500, Omaha, Nebraska 68102-2068, khartman@bairdholm.com.

**Employee(s) of The Cigna Group** (Bloomfield, Connecticut)

One or more employees of The Cigna Group ("Cigna"), a health insurance company in Bloomfield, Connecticut.  The specific identities of the employees are not yet known, but they will be Cigna employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Cigna's patient portal or web properties, and any use by Cigna of the Meta Business Tools and Meta's advertising tools.  Cigna employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Cigna may be contacted through Anthony D. Phillips, 345 California Street, Suite 2200, San Francisco, California 94104, adphillips@foxrothschild.com.

**Employee(s) of Connally Memorial Medical Center** (Floresville, Texas)

One or more employees of Connally Memorial Medical Center ("Connally"), a healthcare

13

Gibson, Dunn &
Crutcher LLP

system in Floresville, Texas.  The specific identities of the employees are not yet known, but they will be Connally employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Connally's patient portal or web properties, and any use by Connally of the Meta Business Tools and Meta's advertising tools.  Connally employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Connally may be contacted through Robert Spurck, 5608 Parkcrest Drive, Suite 200, Austin, Texas 78731, rspurck@reedclaymon.com.

**Employee(s) of Costco Wholesale Corporation** (Issaquah, Washington)

One or more employees of Costco Wholesale Corporation ("Costco"), an international chain of membership warehouses with its principal place of business in Issaquah, Washington.  The specific identities of the employees are not yet known, but they will be Costco employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Costco's membership portal or web properties, and any use by Costco of the Meta Business Tools and Meta's advertising tools.  Costco employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Costco may be contacted through Kristin Asai, 601 Southwest 2nd Avenue, Suite 1800, Portland, Oregon 97204, Kristin.Asai@hklaw.com.

**Employee(s) of Prairie du Chien Memorial Hospital Association, Inc. d/b/a Crossing Rivers Health** (Prairie Du Chien, Wisconsin)

One or more employees of Prairie du Chien Memorial Hospital Association, Inc. d/b/a Crossing Rivers Health ("CRH"), a healthcare system in Prairie Du Chien, Wisconsin. The specific identities of the employees are not yet known, but they will be CRH employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of CRH's patient portal or web properties, and any use by CRH of the

14

Gibson, Dunn & Crutcher LLP

Meta Business Tools and Meta's advertising tools. CRH employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. CRH may be contacted at 37868 US Hwy 18 Prairie du Chien, Wisconsin 53821.

**Employee(s) of Currax Pharmaceuticals LLC** (Brentwood, Tennessee)

One or more employees of Currax Pharmaceuticals LLC ("Currax"), a pharmaceutical manufacturer in Brentwood, Tennessee. The specific identities of the employees are not yet known, but they will be Currax employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Currax's product Contrave, and any use by Currax of the Meta Business Tools and Meta's advertising tools through the Contrave patient portal or web properties. Currax employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Currax may be contacted through Leonard L. Gordon, 151 West 42nd Street, 49th Floor, New York, New York 10036, LLGordon@Venable.com.

**Employee(s) of Prime Healthcare Services d/b/a Dallas Medical Center** (Ontario, California)

One or more employees of Dallas Medical Center ("Prime"), a healthcare system in Ontario, California. The specific identities of the employees are not yet known, but they will be Prime employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Prime's patient portal or web properties, and any use by Prime of the Meta Business Tools and Meta's advertising tools. Prime employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Prime may be contacted through Raymond O. Aghaian, 1900

15

Gibson, Dunn & Crutcher LLP

Avenue of the Stars, Suite 2700, Los Angeles, California 90067, raghaian@bakerlaw.com.

**Employee(s) of Diley Ridge Medical Center** (Canal Winchester, Ohio)

One or more employees of Diley Ridge Medical Center ("Diley Ridge"), a healthcare system in Canal Winchester, Ohio.  The specific identities of the employees are not yet known, but they will be Diley Ridge employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Diley Ridge's patient portal or web properties, and any use by Diley Ridge of the Meta Business Tools and Meta's advertising tools.  Diley Ridge employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Diley Ridge may be contacted through Ralph Sitler III, 20555 Victor Parkway, Livonia, Michigan 48152, Ralph.Sitler@trinity-health.org.

**Employee(s) of Dimmit Regional Hospital** (Carrizo Springs, Texas)

One or more employees of Dimmit Regional Hospital ("Dimmit"), a healthcare system in Carrizo Springs, Texas.  The specific identities of the employees are not yet known, but they will be Dimmit employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Dimmit's patient portal or web properties, and any use by Dimmit of the Meta Business Tools and Meta's advertising tools.  Dimmit employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Dimmit may be contacted through Matthew Duke, 110 E. Houston Street, 7th Floor #35, San Antonio, Texas 78205, duke@thesouthtexasbusinesslawyers.com.

**Employee(s) of Ed Fraiser Memorial Hospital** (Macclenny, Florida)

One or more employees of Ed Fraiser Memorial Hospital ("Ed Fraiser"), a healthcare system in Macclenny, Florida.  The specific identities of the employees are not yet known, but they will be Ed Fraiser employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Ed Fraiser's

16

patient portal or web properties, and any use by Ed Frasier of the Meta Business Tools and Meta's advertising tools. Ed Fraiser employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Ed Fraiser may be contacted at 159 North 3rd Street, Macclenny, Florida 32063.

### Employee(s) of Essentia Health (Duluth, Minnesota)

One or more employees of Essentia Health, a healthcare system in Duluth, Minnesota. The specific identities of the employees are not yet known, but they will be Essentia Health employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Essentia Health's patient portal or web properties, and any use by Essentia Health of the Meta Business Tools and Meta's advertising tools. Essentia Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Essentia Health may be contacted through Justin O'Neill Kay, 320 South Canal Street, Suite 3300, Chicago, Illinois 60606, justin.kay@faegredrinker.com.

### Employee(s) of Garnet Health (Middletown, New York)

One or more employees of Garnet Health, a healthcare system in Middletown, New York. The specific identities of the employees are not yet known, but they will be Garnet Health employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Garnet Health's patient portal or web properties, and any use by Garnet Health of the Meta Business Tools and Meta's advertising tools. Garnet Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Garnet Health may be contacted through David A. Carney, 127 Public Square, Suite 2000, Cleveland, Ohio 44114-1214, dcarney@bakerlaw.com.

17

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

**Employee(s) of MercyOne Genesis Health System** (Davenport, Iowa)

One or more employees of MercyOne Genesis Health System ("MercyOne"), a healthcare system in Davenport, Iowa. The specific identities of the employees are not yet known, but they will be MercyOne employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of MercyOne's patient portal or web properties, and any use by MercyOne of the Meta Business Tools and Meta's advertising tools. MercyOne employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. MercyOne may be contacted through Ralph Sitler III, 20555 Victor Parkway, Livonia, Michigan 48152, Ralph.Sitler@trinity-health.org.

**Employee(s) of Gilead Sciences, Inc.** (Foster City, California)

One or more employees of Gilead Sciences, Inc. ("Gilead"), a pharmaceutical manufacturer in Foster City, California. The specific identities of the employees are not yet known, but they will be Gilead employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of the pharmaceutical web-property identified in the Complaint, and any use by Gilead of the Meta Business Tools and Meta's advertising tools. Gilead employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Gilead may be contacted through Edward McNicholas, 2099 Pennsylvania Avenue, NW, Washington, D.C. 20006, Edward.McNicholas@ropesgray.com.

**Employee(s) of Harvard Pilgrim Health Care, Inc.** (Canton, Massachusetts)

One or more employees of Harvard Pilgrim Health Care ("Harvard Pilgrim"), associated with Point32Health, a healthcare system in Canton, Massachusetts. The specific identities of the employees are not yet known, but they will be Harvard Pilgrim employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

class members') use of Harvard Pilgrim's patient portal or web properties, and any use by Harvard Pilgrim of the Meta Business Tools and Meta's advertising tools. Harvard Pilgrim employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Harvard Pilgrim may be contacted through Benjamin Mack, 1 Wellness Way, Canton, Massachusetts 02021, Benjamin.Mack@point32health.org.

**Employee(s) of HealthPartners** (Bloomington, Minnesota)

One or more employees of HealthPartners, a healthcare system in Bloomington, Minnesota. The specific identities of the employees are not yet known, but they will be HealthPartners employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of HealthPartners's patient portal or web properties, and any use by HealthPartners of the Meta Business Tools and Meta's advertising tools. HealthPartners employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. HealthPartners may be contacted through Elizabeth Scully, 1050 Connecticut Ave N.W., Suite 1100, Washington, DC 20036-5403, escully@bakerlaw.com.

**Employee(s) of Hospital Sisters Health System** (Springfield, Illinois)

One or more employees of Hospital Sisters Health System ("HSHS"), a healthcare system in Springfield, Illinois. The specific identities of the employees are not yet known, but they will be HSHS employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of HSHS's patient portal or web properties, and any use by HSHS of the Meta Business Tools and Meta's advertising tools. HSHS employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. HSHS may be contacted through Ryan T. Schultz, 200 W. Madison

19

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

1    Street, Suite 3000, Chicago, Illinois 60606, rschultz@foxswibel.com.

2        **Employee(s) of Humana Inc.** (Louisville, Kentucky)

3        One or more employees of Humana Inc. ("Humana"), a health insurance company in Louisville,

4    Kentucky.  The specific identities of the employees are not yet known, but they will be Humana

5    employees that have information relating to the claims and defenses at issue in this action, including

6    but not limited to any plaintiffs' (including putative class members') use of Humana's membership

7    portal or web properties, and any use by Humana of the Meta Business Tools and Meta's advertising

8    tools.  Humana employee(s) may also offer additional information, including declarations and/or

9    testimony, in response to plaintiffs' arguments for class certification, the subject of which would

10   depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming

11   motions, including for summary judgment.  Humana may be contacted through Benjamin E. Waldin,

12   224 South Michigan Avenue, Suite 1100, Chicago, Illinois 60604, bwaldin@EimerStahl.com.

13       **Employee(s) of Integris Health, Inc.** (Oklahoma City, Oklahoma)

14       One or more employees of Integris Health, Inc. ("INTEGRIS"), a healthcare system in

15   Oklahoma City, Oklahoma.  The specific identities of the employees are not yet known, but they will

16   be INTEGRIS employees that have information relating to the claims and defenses at issue in this

17   action, including but not limited to any plaintiffs' (including putative class members') use of

18   INTEGRIS's patient portal or web properties, and any use by INTEGRIS of the Meta Business Tools

19   and Meta's advertising tools.  INTEGRIS employee(s) may also offer additional information, including

20   declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of

21   which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other

22   forthcoming motions, including for summary judgment.  INTEGRIS may be contacted through Lisa A.

23   Houssiere, 811 Main Street, Suite 1100, Houston, Texas 77002-6111, lhoussiere@bakerlaw.com.

24       **Employee(s) of Hawaii Permanente Medical Group, Inc.** (Honolulu, Hawaii)

25       One or more employees of Hawaii Permanente Medical Group, Inc. ("HPMG"), a healthcare

26   system in Honolulu, Hawaii.  The specific identities of the employees are not yet known, but they will

27   be HPMG employees that have information relating to the claims and defenses at issue in this action,

28   including but not limited to any plaintiffs' (including putative class members') use of HPMG's patient

Gibson, Dunn &
Crutcher LLP

portal or web properties, and any use by HPMG of the Meta Business Tools and Meta's advertising tools. HPMG employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. HPMG may be contacted through Tenaya Rodewald, 1540 El Camino Real, Suite 120, Menlo Park, California 94025, trodewald@sheppardmullin.com.

**Employee(s) of Kaiser Foundation Health Plan, Inc.** (Oakland, California)

One or more employees of Kaiser Foundation Health Plan, Inc. ("Kaiser"), a healthcare system with its principal place of business in Oakland, California. The specific identities of the employees are not yet known, but they will be Kaiser employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Kaiser's patient portal or web properties, and any use by Kaiser of the Meta Business Tools and Meta's advertising tools. Kaiser employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Kaiser may be contacted through Tenaya Rodewald, 1540 El Camino Real, Suite 120, Menlo Park, California 94025, trodewald@sheppardmullin.com.

**Employee(s) of Kentfield Hospital San Francisco** (San Francisco, California)

One or more employees of Kentfield Hospital San Francisco ("Kentfield"), a healthcare system in San Francisco, California. The specific identities of the employees are not yet known, but they will be Kentfield employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Kentfield's patient portal or web properties, and any use by Kentfield of the Meta Business Tools and Meta's advertising tools. Kentfield employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Kentfield may be contacted through Cassandra Castro,

5258 Pirrone Ct., Salida, California 95368, ccastro1@americanam.org.

**Employee(s) of Lawrence General Hospital** (Lawrence, Massachusetts)

One or more employees of Lawrence General Hospital ("LGH"), a healthcare system in Lawrence, Massachusetts. The specific identities of the employees are not yet known, but they will be LGH employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of LGH's patient portal or web properties, and any use by LGH of the Meta Business Tools and Meta advertising tools. LGH employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. LGH may be contacted through Brian P. Mulcahy, 28 State Street, Boston, Massachusetts 02109-1775, bmulcahy@hinckleyallen.com.

**Employee(s) of Legacy Health** (Portland, Oregon)

One or more employees of Legacy Health, a healthcare system in Portland, Oregon. The specific identities of the employees are not yet known, but they will be Legacy Health employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Legacy Health's patient portal or web properties, and any use by Legacy Health of the Meta Business Tools and Meta's advertising tools. Legacy Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Legacy Health may be contacted through Teresa C. Chow, 1900 Avenue of the Stars, Suite 2700, Los Angeles, CA 90067-4301, tchow@bakerlaw.com.

**Employee(s) of Little Rock Orthopedic and Spine Surgeons d/b/a Arkansas Surgical Hospital** (North Little Rock, Arkansas)

One or more employees of Little Rock Orthopedic and Spine Surgeons d/b/a Arkansas Surgical Hospital, LLC ("Arkansas Surgical Hospital"), a healthcare system in North Little Rock, Arkansas. The specific identities of the employees are not yet known, but they will be Arkansas Surgical Hospital

22

Gibson, Dunn & Crutcher LLP

employees that  have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Arkansas Surgical Hospital's patient portal or web properties, and any use by Arkansas Surgical Hospital of the Meta Business Tools and Meta advertising tools.  Arkansas Surgical Hospital employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Arkansas Surgical Hospital may be contacted through Lynda M. Johnson, 400 West Capitol Avenue, Suite 2000, Little Rock, Arkansas 72201-3522, ljohnson@fridayfirm.com.

**Employee(s) of Loring Hospital** (Sac City, Iowa)

One or more employees of Loring Hospital, a healthcare system in Sac City, Iowa.  The specific identities of the employees are not yet known, but they will be Loring Hospital employees that  have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Loring Hospital's patient portal or web properties, and any use by Loring Hospital of the Meta Business Tools and Meta advertising tools.  Loring Hospital employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Loring Hospital may be contacted at 211 Highland Avenue, Sac City, Iowa 50583.

**Employee(s) of Main Line Health, Inc.** (Radnor, Pennsylvania)

One or more employees of Main Line Health Inc. ("MLH"), a healthcare system in Radnor, Pennsylvania.  The specific identities of the employees are not yet known, but they will be MLH employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of MLH's patient portal or web properties, and any use by MLH of the Meta Business Tools and Meta's advertising tools.  MLH employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the

23

Gibson, Dunn &

Crutcher LLP

substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  MLH may be contacted through Aimee L. Kumer, 240 N. Radnor Chester Road, Radnor, Pennsylvania 19087, KumerA@mlhs.org.

**Employee(s) of Maryland Health Benefit Exchange** (Lanham, Maryland)

One or more employees of Maryland Health Benefit Exchange, a healthcare system in Lanham, Maryland.  The specific identities of the employees are not yet known, but they will be Maryland Health Benefit Exchange employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Maryland Health Benefit Exchange patient portal or web properties, and any use by Maryland Health Benefit Exchange of the Meta Business Tools and Meta's advertising tools.  Maryland Health Benefit Exchange employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Maryland Health Benefit Exchange may be contacted through Nicole Quigley, 750 E. Pratt Street, 6th Floor, Baltimore, Maryland 21202, nicole.quigley@maryland.gov.

**Employee(s) of Mass General Brigham Inc. d/b/a Brigham and Women's Hospital** (Boston, Massachusetts)

One or more employees of Mass General Brigham Inc. d/b/a Brigham and Women's Hospital ("Mass General Brigham"), a healthcare system in Boston, Massachusetts.  The specific identities of the employees are not yet known, but they will be Mass General Brigham employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Mass General Brigham's patient portal or web properties, and any use by Mass General Brigham of the Meta Business Tools and Meta's advertising tools.  Mass General Brigham employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Mass General Brigham may be contacted

through Christopher Iaquinto, 10 St. James Avenue, 11th Floor, Boston, Massachusetts 02116, christopher.iaquinto@hklaw.com.

### Employee(s) of MedStar Health, Inc. (Columbia, Maryland)

One or more employees of MedStar Health, Inc. ("MedStar"), a healthcare system in Columbia, Maryland. The specific identities of the employees are not yet known, but they will be MedStar employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of MedStar's patient portal or web properties, and any use by MedStar of the Meta Business Tools and Meta's advertising tools. MedStar employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. MedStar may be contacted through Jacob H. Lisogorsky, 411 Theodore Fremd Avenue, Suite 206S, Rye, New York 10580, jlisogorsky@mullen.law.

### Employee(s) of MetLife Insurance (New York, New York)

One or more employees of MetLife Insurance ("MetLife"), an insurance company in New York, New York. The specific identities of the employees are not yet known, but they will be MetLife employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' use of MetLife's web properties, and any use by MetLife of the Meta Business Tools and Meta's advertising tools. MetLife employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. MetLife may be contacted through Glen Silverstein, 630 Third Avenue, New York, New York 10017, gsilverstein@leaderberkon.com.

### Employee(s) of Mount Sinai Health System, Inc. (New York, New York)

One or more employees of Mount Sinai Health System, Inc. ("Mount Sinai"), a healthcare system in New York, New York. The specific identities of the employees are not yet known, but they will be Mount Sinai employees that have information relating to the claims and defenses at issue in this

action, including but not limited to any plaintiffs' (including putative class members') use of Mount Sinai's patient portal or web properties, and any use by Mount Sinai of the Meta Business Tools and Meta's advertising tools. Mount Sinai employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Mount Sinai may be contacted through David A. Carney, 127 Public Square, Suite 2000, Cleveland, Ohio, 44114-1214, dcarney@bakerlaw.com.

**Employee(s) of North Kansas City Hospital** (North Kansas City, Missouri)

One or more employees of North Kansas City Hospital ("NKCH"), a healthcare system in North Kansas City, Missouri. The specific identities of the employees are not yet known, but they will be NKCH employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of NKCH's patient portal or web properties, and any use by NKCH of the Meta Business Tools and Meta advertising tools. NKCH employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. NKCH may be contacted through Nicholas J. Pontzer at 75 S. Clinton Avenue, Suite 510, Rochester, New York 14604, npontzer@mullen.law.

**Employee(s) of North Memorial Health** (Robbinsdale, Minnesota)

One or more employees of North Memorial Health, a healthcare system in Robbinsdale, Minnesota. The specific identities of the employees are not yet known, but they will be North Memorial Health employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of North Memorial Health's patient portal or web properties, and any use by North Memorial Health of the Meta Business Tools and Meta's advertising tools. North Memorial Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. North Memorial

26

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

Health may be contacted through Maliya G. Rattliffe, 60 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402, mrattliffe@fredlaw.com.

**Employee(s) of Eastern Maine Healthcare Systems d/b/a Northern Light Health** (Brewer, Maine)

One or more employees of Eastern Maine Healthcare Systems d/b/a Northern Light Health ("Northern Light"), a healthcare system in Brewer, Maine. The specific identities of the employees are not yet known, but they will be Northern Light employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Northern Light's patient portal or web properties, and any use by Northern Light of the Meta Business Tools and Meta's advertising tools. Northern Light employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Northern Light may be contacted through Carrie H. Dettmer Slye, 312 Walnut Street, Suite 3200, Cincinnati, Ohio 45202-4074, cdettmerslye@bakerlaw.com.

**Employee(s) of Northwestern Medicine** (Chicago, Illinois)

One or more employees of Northwestern Medicine, a healthcare system in Chicago, Illinois. The specific identities of the employees are not yet known, but they will be Northwestern Medicine employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Northwestern Medicine's patient portal or web properties, and any use by Northwestern Medicine of the Meta Business Tools and Meta's advertising tools. Northwestern Medicine employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Northwestern Medicine may be contacted through Amanda Harvey, 1452 Hughes Road, Suite 200, Grapevine, Texas 76051, aharvey@mullen.law.

**Employee(s) of New York City Health and Hospitals Corporation d/b/a NYC Health +**

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

**Hospitals** (New York, New York)

One or more employees of New York City Health and Hospitals Corporation d/b/a NYC Health + Hospitals ("NYC Health"), a healthcare system in New York, New York. The specific identities of the employees are not yet known, but they will be NYC Health employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of NYC Health's patient portal or web properties, and any use by NYC Health of the Meta Business Tools and Meta advertising tools. NYC Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. NYC Health may be contacted through Stephanie P. Schneider, 50 Water Street, 17th Floor, New York, New York 10004, Stephanie.Schneider@nychhc.org.

**Employee(s) of The Ohio State University Wexner Medical Center** (Columbus, Ohio)

One or more employees of The Ohio State University Wexner Medical Center ("OSUWMC"), a healthcare system associated with Ohio State University in Columbus, Ohio. The specific identities of the employees are not yet known, but they will be OSUWMC employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of OSUWMC patient portal or web properties, and any use by OSUWMC of the Meta Business Tools and Meta advertising tools. OSUWMC employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. OSUWMC may be contacted through Aneca Lasley, 250 West Street, Suite 700, Columbus, Ohio 43215, aneca.lasley@icemiller.com.

**Employee(s) of Providence Portland Medical Center** (Portland, Oregon)

One or more employees of Providence Portland Medical Center ("Providence"), a healthcare system in Portland, Oregon. The specific identities of the employees are not yet known, but they will be Providence employees that have information relating to the claims and defenses at issue in this

action, including but not limited to any plaintiffs' (including putative class members') use of Providence's patient portal or web properties, and any use by Providence of the Meta Business Tools and Meta's advertising tools.  Providence employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Providence may be contacted through Daniel M. Glassman, 1 Park Plaza, Twelfth Floor, Irvine, California 92614, Dan.Glassman@klgates.com.

**Employee(s) of Ray County Hospital and Healthcare** (Richmond, Missouri)

One or more employees of Ray County Hospital and Healthcare ("Ray County"), a healthcare system Richmond, Missouri.  The specific identities of the employees are not yet known, but they will be Ray County employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Ray County's patient portal or web properties, and any use by Ray County of the Meta Business Tools and Meta's advertising tools.  Ray County employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Ray County may be contacted through Scott T. Jansen, 7700 Forsyth Blvd., Suite 1800, St. Louis, Missouri 63105, sjansen@atllp.com.

**Employee(s) of Red Bud Regional Hospital** (Red Bud, Illinois)

One or more employees of Red Bud Regional Hospital ("Red Bud"), a healthcare system in Red Bud, Illinois.  The specific identities of the employees are not yet known, but they will be Red Bud employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Red Bud's patient portal or web properties, and any use by Red Bud of the Meta Business Tools and Meta's advertising tools.  Red Bud employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Red Bud may be contacted through Matthew A. Reid, 426

29

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

W. Lancaster Avenue, Suite 200, Devon, Pennsylvania 19333, mreid@mullen.law.

**Employee(s) of Rush University System for Health** (Chicago, Illinois)

One or more employees of Rush University System for Health ("Rush"), a healthcare system associated with Rush University in Chicago, Illinois. The specific identities of the employees are not yet known, but they will be Rush employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Rush's patient portal or web properties, and any use by Rush of the Meta Business Tools and Meta's advertising tools. Rush employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Rush may be contacted through Michael Jervis, 426 W. Lancaster Avenue, Suite 200, Devon, Pennsylvania 19333, mjervis@mullen.law.

**Employee(s) of Sarah Bush Lincoln Health Center** (Mattoon, Illinois)

One or more employees of Sarah Bush Lincoln Health Center ("Sarah Bush Lincoln"), a healthcare system in Mattoon, Illinois. The specific identities of the employees are not yet known, but they will be Sarah Bush Lincoln employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Sarah Bush Lincoln's patient portal or web properties, and any use by Sarah Bush Lincoln of the Meta Business Tools and Meta's advertising tools. Sarah Bush Lincoln employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Sarah Bush Lincoln may be contacted through David A. Carney, 127 Public Square, Suite 2000, Cleveland, Ohio 44114-1214, dcarney@bakerlaw.com.

**Employee(s) of Sharp HealthCare** (San Diego, California)

One or more employees of Sharp HealthCare ("Sharp"), a healthcare system in San Diego, California. The specific identities of the employees are not yet known, but they will be Sharp employees that have information relating to the claims and defenses at issue in this action, including

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

but not limited to any plaintiffs' (including putative class members') use of Sharp's patient portal or web properties, and any use by Sharp of the Meta Business Tools and Meta's advertising tools.  Sharp employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Sharp may be contacted through Gabe P. Wright, 600 West Broadway, Suite 1500, San Diego, California 92101, GWright@hahnlaw.com.

**Employee(s) of Southern Illinois Healthcare Enterprises, Inc. d/b/a Southern Illinois Healthcare** (Carbondale, Illinois)

One or more employees of Southern Illinois Healthcare Enterprises, Inc. d/b/a Southern Illinois Healthcare ("SIHE"), a healthcare system in Carbondale, Illinois.  The specific identities of the employees are not yet known, but they will be SIHE employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of SIHE's patient portal or web properties, and any use by SIHE of the Meta Business Tools and Meta's advertising tools.  SIHE employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  SIHE may be contacted through Erin Bolan Hines, 123 North Wacker Drive, Suite 1800, Chicago, Illinois 60606, EBolanHines@cozen.com.

**Employee(s) of Starcom Mediavest Group, Inc. d/b/a Spark Foundry** (Chicago, Illinois)

One or more employees of Starcom Mediavest Group, Inc. d/b/a Spark Foundry ("Spark Foundry"), a global media agency in Chicago, Illinois.  The specific identities of the employees are not yet known, but they will be Spark Foundry employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Humana's membership portal or web properties, and any use by Humana of the Meta Business Tools and Meta's advertising tools.  Spark Foundry employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class

31

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Spark Foundry may be contacted through Jeane Thomas, 1001 Pennsylvania Avenue, NW, Washington, DC 20004, jthomas@crowell.com.

**Employee(s) of SSM Health Care Corporation** (Saint Louis, Missouri)

One or more employees of SSM Health Care Corporation ("SSM Health"), a healthcare system in Saint Louis, Missouri.  The specific identities of the employees are not yet known, but they will be SSM Health employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of SSM Health's patient portal or web properties, and any use by SSM Health of the Meta Business Tools and Meta's advertising tools.  SSM Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  SSM Health may be contacted through David A. Carney, 127 Public Square, Suite 2000, Cleveland, Ohio 44114-1214, dcarney@bakerlaw.com.

**Employee(s) of Sutter Health** (Sacramento, California)

One or more employees of Sutter Health ("Sutter"), a healthcare system in Sacramento, California.  The specific identities of the employees are not yet known, but they will be Sutter employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Sutter's patient portal or web properties, and any use by Sutter of the Meta Business Tools and Meta's advertising tools.  Sutter employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  Sutter may be contacted through Stephen C. Steinberg, 1100 Sansome Street, San Francisco, California 94111, ssteinberg@bartkopavia.com.

**Employee(s) of Tallahassee Memorial Healthcare, Inc.** (Tallahassee, Florida)

One or more employees of Tallahassee Memorial Healthcare, Inc. ("TMH"), a healthcare

Gibson, Dunn & Crutcher LLP

system in Tallahassee, Florida. The specific identities of the employees are not yet known, but they will be TMH employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of TMH's patient portal or web properties, and any use by TMH of the Meta Business Tools and Meta's advertising tools. TMH employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. TMH may be contacted through Julie Singer Brady, 200 South Orange Avenue, Suite 2300, Orlando, Florida 32801, JSingerBrady@bakerlaw.com.

**Employee(s) of Reading Behavioral Healthcare, LLC d/b/a Tower Behavioral Health.** (West Reading, Pennsylvania)

One or more employees of Reading Behavioral Healthcare, LLC d/b/a Tower Behavioral Health ("Tower Health"), a healthcare system in West Reading, Pennsylvania. The specific identities of the employees are not yet known, but they will be Tower Health employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of Tower Health's patient portal or web properties, and any use by Tower Health of the Meta Business Tools and Meta's advertising tools. Tower Health employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment. Tower Health may be contacted at Reading Hospital PO Box 16052 Reading, Pennsylvania 19612-6052.

**Employee(s) of Tucson Medical Center** (Tucson, Arizona)

One or more employees of Tucson Medical Center ("TMC"), a healthcare system in Tucson, Arizona. The specific identities of the employees are not yet known, but they will be TMC employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of TMC's patient portal or web properties, and any use by TMC of the Meta Business Tools and Meta's advertising tools. TMC employee(s) may

33

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  TMC may be contacted through Casie D. Collignon, 1801 California Street, Suite 4400, Denver, Colorado 80202-2662, ccollignon@bakerlaw.com.

**Employee(s) of United Healthcare** (Minnetonka, Minnesota)

One or more employees of United Healthcare, an insurance company in Minnetonka, Minnesota.  The specific identities of the employees are not yet known, but they will be United Healthcare employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of United Healthcare's web-properties, and any use by United Healthcare of the Meta Business Tools and Meta's advertising tools.  United Healthcare employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  United Healthcare may be contacted through Maxwell Pritt, 44 Montgomery Street, 41st Floor, San Francisco, California 94104, mpritt@bsfllp.com.

**Employee(s) of University of Toledo d/b/a University of Toledo Medical Center** (Toledo, Ohio)

One or more employees of University of Toledo d/b/a University of Toledo Medical Center ("UTMC"), a healthcare system in Toledo, Ohio.  The specific identities of the employees are not yet known, but they will be UTMC employees that have information relating to the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including putative class members') use of UTMC's patient portal or web properties, and any use by UTMC of the Meta Business Tools and Meta's advertising tools.  UTMC employee(s) may also offer additional information, including declarations and/or testimony, in response to plaintiffs' arguments for class certification, the subject of which would depend on the substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions, including for summary judgment.  UTMC may be contacted through Stacy A. Cole, One East 4th Street, Suite 1400, Cincinnati, Ohio 45202, SCole@KMKLAW.com.

Gibson, Dunn &
Crutcher LLP

1   **Employee(s) of University of Wisconsin Hospitals and Clinics Authority d/b/a UW Health**

2   (Madison, Wisconsin)

3       One or more employees of University of Wisconsin Hospitals and Clinics Authority d/b/a UW

4   Health ("UW Health"), a healthcare system in Madison, Wisconsin.  The specific identities of the

5   employees are not yet known, but they will be UW Health employees that have information relating to

6   the claims and defenses at issue in this action, including but not limited to any plaintiffs' (including

7   putative class members') use of UW Health's patient portal or web properties, and any use by UW

8   Health of the Meta Business Tools and Meta's advertising tools.  UW Health employee(s) may also

9   offer additional information, including declarations and/or testimony, in response to plaintiffs'

10  arguments for class certification, the subject of which would depend on the substance of plaintiffs'

11  motion, and in support of or opposition to any other forthcoming motions, including for summary

12  judgment.  UW Health may be contacted through Joe Hanes, 7974 UW Health Court, Middleton,

13  Wisconsin 53562, JHanes@uwhealth.org.

14      **Employee(s) of WakeMed Health & Hospitals** (Raleigh, North Carolina)

15      One or more employees of WakeMed Health & Hospitals ("WakeMed"), a healthcare system

16  in Raleigh, North Carolina.  The specific identities of the employees are not yet known, but they will

17  be WakeMed employees that have information relating to the claims and defenses at issue in this action,

18  including but not limited to any plaintiffs' (including putative class members') use of WakeMed's

19  patient portal, and any use by WakeMed of the Meta Business Tools and Meta's advertising tools.

20  WakeMed employee(s) may also offer additional information, including declarations and/or testimony,

21  in response to plaintiffs' arguments for class certification, the subject of which would depend on the

22  substance of plaintiffs' motion, and in support of or opposition to any other forthcoming motions,

23  including for summary judgment.  WakeMed may be contacted through Elizabeth Sims Hedrick, 301

24  Hillsborough Street, Suite 1120, Raleigh, North Carolina 27603, EHedrick@foxrothschild.com.

25                                    * * * * * *

26      Meta's investigation of plaintiffs' claims continues, and Meta anticipates that further

27  individuals may be identified as plaintiffs' claims are clarified and as additional information becomes

28  available.  Meta reserves the right to identify additional individuals at a later date, including any witness

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22-CV-3580-WHO (VKD)

identified in any other party's Rule 26 disclosures and/or any witness identified in any party's discovery responses in this action. Further, the foregoing list does not include expert witnesses, and Meta reserves the right to designate such experts pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and to call these witnesses at any trial of this action.

## II.   DOCUMENTS

Pursuant to Rule 26(a)(1)(A)(ii), below is a description, by category, of documents, electronically stored information, and tangible things that are in the possession, custody, or control of Meta that it may use to support its defenses in this matter based upon Meta's understanding of plaintiffs' claims and allegations.

1. Documents concerning plaintiffs' use of Meta Products.

2. Documents concerning plaintiffs' use of the Internet, including but not limited to the websites they accessed, the applications they used, and the actions they took on those websites and/or apps during the time period relevant to this action.

3. Documents relating to any communications between plaintiffs and Meta.

4. Documents concerning Meta's delivery of ads to plaintiffs.

5. Documents concerning Meta Pixel, including but not limited to how it is used, made available to developers, and the type of data that it has access to.

6. Public statements by Meta—including but not limited to Meta Help Center, Meta for Business, and Meta for Developers pages—regarding its provision of Meta Business Tools, including Meta Pixel.

7. Documents concerning public statements by Meta regarding Meta's tools that allow advertisers to target their advertising campaigns based on data sent via Meta Pixel.

8. Documents relating to any communications between any of the entities allegedly used by plaintiffs as identified in the operative Complaint and in their responses and supplemental responses to Meta's interrogatories (the "Plaintiff Entities") and Meta.

9. Documents concerning any Plaintiff Entity's use of Meta Pixel during the time period relevant to this action.

10. Documents concerning any Plaintiff Entity's use of Meta's tools that allow advertisers

36

Gibson, Dunn &
Crutcher LLP

to target their advertising campaigns based on data sent via Meta Pixel, during the time period relevant to this action.

11. Documents concerning plaintiffs' contractual relationships with any Plaintiff Entity and all applicable terms of use and privacy policies pertaining to the use of their web-properties or patient portals.

12. Documents and communications between plaintiffs and the Plaintiff Entities.

13. Documents that disclosed Meta's use of data sent via Meta Pixel, including but not limited to Facebook's Data Policy and Terms of Service in effect during the time period relevant to this action.

14. Meta's Advertising Policies, Business Tools Terms, Commercial Terms, Cookies Policy, Custom Audiences Terms, Customer List Custom Audiences Terms, Developer Policies, Offline Conversion Terms, Platform Policy, Platform Terms, Self-Serve Ad Terms, and Terms of Service in effect during the time period relevant to this action.

15. Documents relating to damages allegedly sustained and/or claimed by plaintiffs, and the lack of any damages and/or injury.

16. Other documents relating to the claims at issue in this action, including but not limited to the variability surrounding plaintiffs' and putative class members' claims and anticipated attempt to secure classwide remedies.

17. Portions of Meta's Source Code.

Meta anticipates that additional documents will be obtained from plaintiffs and possibly from third parties. Meta reserves the right to supplement this list to reflect additional documents upon plaintiffs' clarification of their claims and as additional information becomes available.

Meta makes these Supplemental Initial Disclosures without waiving any of its objections to the timing of discovery and the admissibility of any information disclosed under the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and/or the Local Rules of this Court. By identifying the foregoing categories, Meta does not concede the relevance of specific categories of documents, and it specifically reserves all applicable privileges and protections, including attorney-client privilege and/or work product doctrine.

\* \* \* \* \*

Meta reserves the right to supplement and correct these Supplemental Initial Disclosures to include information hereafter acquired based upon its continued investigation and further clarification of plaintiffs' claims, discovery, trial preparation, and analysis.

Dated: June 4, 2025                                GIBSON, DUNN & CRUTCHER LLP

                                                   By:    _/s/Lauren Goldman_
                                                          Lauren Goldman

                                                   *Attorneys for Defendant Meta Platforms, Inc.*

DEFENDANT META PLATFORMS, INC.'S FIFTH SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO
FED. R. CIV. P. 26(a)(1)
CASE NO. 3:22:CV-3580-WHO (VKD)

Gibson, Dunn &
Crutcher LLP

# EXHIBIT "B"

Jason 'Jay' Barnes (admitted *pro hac vice*)
 *jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLP**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.:    212-784-6400
Fax:    212-213-5949

Jeffrey A. Koncius, State Bar No. 189803
 *koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel.:    310-854-4444
Fax:    310-854-0812

Beth E. Terrell, State Bar No. 178181
 *bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP
PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.:    206-816-6603
Fax:    206-319-5450

Geoffrey Graber, State Bar No. 211547
 *ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel.:    202-408-4600
Fax:    202-408-4699

Andre M. Mura, State Bar No. 298541
 *amm@classlawgroup.com*
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.:    510-350-9700
Fax:    510-350-9701

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | **Case No. 3:22-cv-3580-WHO (VKD)** |
| This Document Relates to: | <u>CLASS ACTION</u> |
| All Actions. | **DECLARATION OF JEFFREY A. KONCIUS IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN** |
| | Date:    August 13, 2025<br>Time:    2:00 p.m.<br>Place:    Courtroom 2 – 17th Floor<br>Judge:    Hon. William H. Orrick III |

### **DECLARATION OF JEFFREY A. KONCIUS**

I, Jeffrey A. Koncius declare as follows:

1.     I am an attorney duly admitted to practice before this Court and am a member in good standing of the State Bar of California.

2.     I am a partner at the law firm of Kiesel Law LLP, who, along with the law firms Simmons Hanly Conroy LLP, Cohen Milstein Sellers & Toll, PLLC, Terrell Marshall Law Group, PLLC, and Gibbs Mura LLP, represent Plaintiffs in the above-captioned matter.

3.     I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

4.     I participated in multiple phone calls with Kevin Chambers at Latham & Watkins regarding Mr. Jain sitting for his deposition.

5.     On May 1, 2025, Mr. Chambers sent an email to me that stated Mr. Jain was "leaving for India tomorrow" but willing to sit for his deposition "wherever he is":

---

**RE: Meta Pixel : Deposition of Dinkar Jain**

**K**  Kevin.Chambers@lw.com          ↩ Reply   ↩ Reply All   → Forward   ✉   •••
    To  Jeffrey A. Koncius                              Thu 5/1/2025 11:55 AM
    Cc  Nicole Ramirez Jones; Jessica Mendez

Sorry for delay.  Here is what I know:

Dinkar can be available this month but is leaving for India tomorrow to deal with a severely ill parent and cannot ensure that he will be back in the states before your deadline (but he will make himself available for a day's dep wherever he is).  If you want to do a virtual deposition, he wants me to be with him in the same room, which could mean India (which I am not super thrilled about, but so be it).  You'll need to consider whether the juice is worth the squeeze on that – assuming that you'd have to foot the bill (or maybe it's the other party; I'm not sure).

Please let me know how you'd like to proceed.

---

Attached hereto as Exhibit "1" is a true and correct copy of an email I received from Kevin Chambers on May 1, 2025.

6.     Subsequent phone calls between Mr. Chambers and me about the deposition occurred and on a call on May 12, 2025, Mr. Chambers reiterated that until recently, Mr. Jain had been in the San Francisco area. My partner Nicole Ramirez Jones was also on this call.

1       7.    On May 14, 2025, Mr. Chambers sent me the following email:

Jain

K    Kevin.Chambers@lw.com    ↩ Reply    ↩ Reply All    → Forward    ⬜ ···
To  Jeffrey A. Koncius    Wed 5/14/2025 3:34 PM

Hey Jeffrey:

I am confirming that Dinkar is in India on a one way ticket. I didn't pry into the state of his personal affairs, but I don't have confidence that he'll be returning before your deadline.

I have not been able to connect with Meta's counsel on the question of who would foot the bill for counsel to fly to India to prep and defend him, but he is willing to be deposed from India voluntarily despite being out of the jurisdiction (whether a virtual deposition or if you decide to go there in person). I would suggest that you reach out to opposing counsel and explain the circumstances and that you'd like for him to be deposed. I think it best to leave it to you both to hash out the administrative details since you intimated that there has been back and forth about how long he's been designated, etc. But, again, Dinkar will voluntarily appear while out of the jurisdiction if you require it. Obviously, if I'm making a trip to India, we'll need to sort that out soon.

kAC

14    Attached hereto as Exhibit "2" is a true and correct copy of an email I received from Kevin Chambers

15    on May 14, 2025.

16       8.    On May 16, 2025, Mr. Chambers sent me an email which confirmed that Mr. Jain

17    had left his employment with Meta in January 2023:

RE: Jain

K    Kevin.Chambers@lw.com    ↩ Reply    ↩ Reply All    → Forward    ⬜ ···
To  Jeffrey A. Koncius    Fri 5/16/2025 11:15 AM
Cc  Nicole Ramirez Jones

January 2023. Thanks.

From: Jeffrey A. Koncius <Koncius@kiesel.law>
Sent: Friday, May 16, 2025 2:04 PM
To: Chambers, Kevin (DC) <Kevin.Chambers@lw.com>
Cc: Nicole Ramirez Jones <ramirezjones@kiesel.law>
Subject: Re: Jain

Just following up on the date when he left Meta? Thanks.

Jeff

DECLARATION OF JEFFREY A. KONCIUS IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

1  Attached hereto as Exhibit "3" is a true and correct copy of an email I received from Kevin

2  Chambers on May 16, 2025.

3      9.    On May 21, 2025, I took the deposition in New York City of a 30(b)(6) witness for

4  Meta which was defended by Gibson Dunn attorneys. At the conclusion of that deposition I, along

5  with my co-counsel Eric Kafka of Cohen Milstein Sellers & Toll PLLC, spoke with Darcy Harris

6  of Gibson Dunn and asked whether Meta would be willing to pay for Mr. Jain's attorney to go to

7  India. Ms. Harris suggested, among other things, that Plaintiffs were not able to take Mr. Jain's

8  deposition as it would be over the 12 deposition limit, unless Plaintiffs were willing to forgo

9  deposing an already noticed deponent. We replied that Plaintiffs would not be willing to forgo a

10  deposition unless we were certain that Meta would allow Mr. Jain's deposition to go forward.

11      10.    On May 22, 2025, I sent an email to Mr. Chambers to let him know that counsel had

12  spoken about Mr. Jain being deposed and were awaiting Meta's confirmation that Mr. Jain's

13  deposition could go forward:



21  Attached hereto as Exhibit "4" is a true and correct copy of an email I sent to Kevin Chambers on

22  May 22, 2025.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

DECLARATION OF JEFFREY A. KONCIUS IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

1    11.    On May 28, 2025, Mr. Chambers sent me an email in which he changed course:

---

**RE: Jain**

| | | ↩ Reply | ↩ Reply All | → Forward | 🗂 | ⋯ |

**K**  Kevin.Chambers@lw.com
To  Jeffrey A. Koncius
Cc  Nicole Ramirez Jones

Wed 5/28/2025 10:22 AM

Jeffrey/Nicole:

Hope you're well.

As we previously discussed, Dinkar is in India tending to a sick relative and will not be back in the jurisdiction before what you told me was the end of discovery (5/30). I have not heard about any agreement on a remote deposition or extension, and I am out of the country until Friday evening, so I think this is a moot issue at this stage.

I also wanted to clarify an item raised by Meta's counsel: to the extent that Dinkar is willing to be deposed remotely, it is "willingness" only insofar as it is a better alternative to being dragged back to the States to appear in person. But he is by no means eager or excited to be deposed and in fact would prefer not to be deposed at all—particularly if discovery is supposed to be over at this point.

Thanks,
Kevin

---

Attached hereto as Exhibit "5" is a true and correct copy of an email I received from Kevin Chambers on May 28, 2025.

12.    On May 28, 2025, I sent an email to Mr. Chambers:

---

**RE: Jain**

| | | ↩ Reply | ↩ Reply All | → Forward | 🗂 | ⋯ |

**JK**  Jeffrey A. Koncius
To  Kevin.Chambers@lw.com
Cc  Nicole Ramirez Jones

Wed 5/28/2025 3:19 PM

Kevin—

Thanks for this. The discovery deadline was extended to June after we initially engaged with you. And, assuming Meta is going to pay your bill, we expect we will want to move forward with the deposition virtually as discussed. We hope to get that nailed down with Meta's counsel shortly.

Jeff

---

Attached hereto as Exhibit "6" is a true and correct copy of an email I sent to Kevin Chambers on May 28, 2025.

Case No. 3:22-cv-3580-WHO (VKD)

DECLARATION OF JEFFREY A. KONCIUS IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

1    13.    Mr. Chambers responded the same day with the following:

2

RE: Jain

Kevin.Chambers@lw.com                    ↩ Reply    ↩ Reply All    → Forward    [icon]  ...
To  Jeffrey A. Koncius                                              Wed 5/28/2025 4:51 PM
Cc  Nicole Ramirez Jones

If/When you get the court to sign off and have proposed dates, reach out.

Take care,
Kevin

9    Attached hereto as Exhibit "7" is a true and correct copy of an email I received from Kevin

10    Chambers on May 28, 2025.

11    14.    On May 29, 2025, Meta's counsel at Gibson Dunn took the position that Plaintiffs

12    could not depose Mr. Jain because they had "already noticed all twelve of the fact depositions to

13    which [they] are entitled pursuant to Judge DeMarchi's order (Dkt. 850)."

RE: Meta : Dinkar Jain issue

Harris, Darcy C. <DHarris@gibsondunn.com>        ↩ Reply    ↩ Reply All    → Forward    [icon]  ...
To  Jeffrey A. Koncius                                              Thu 5/29/2025 5:56 PM
Cc  Nicole Ramirez Jones; McCloskey, Elizabeth K.

Counsel,

As we set out in the CMC statement filed on Tuesday (and in our prior correspondence on April 14 in response to your letter of the same date), Meta does not agree that plaintiffs can depose Mr. Jain. Plaintiffs have already noticed all twelve of the fact depositions to which you are entitled pursuant to Judge DeMarchi's order (Dkt. 850). In addition, even if you had not reached your maximum number of fact depositions, Meta is not aware of any efforts by plaintiffs to comply with the necessary procedures to depose a non-party who is located outside the country. To the extent you have represented to Mr. Jain's counsel that fact discovery in this matter is being extended through June, as you know, that is not accurate.

If there is anything further to discuss, let us know.

Thanks,

Darcy

25    Attached hereto as Exhibit "8" is a true and correct copy of an email I received from Darcy Harris

26    on May 29, 2025.

27    / / /

28    / / /

DECLARATION OF JEFFREY A. KONCIUS IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

1      15.    On May 30, 2025, Plaintiffs responded by requesting that Meta work in good faith

2    with Plaintiffs to schedule the deposition.

3    ┌─────────────────────────────────────────────────────────────────────────────────────────────┐

     RE: Meta : Dinkar Jain issue

4    JK   Jeffrey A. Koncius                                    ← Reply   ← Reply All   → Forward   ···
          To  Harris, Darcy C.                                                        Fri 5/30/2025 12:01 PM
5         Cc  Nicole Ramirez Jones; McCloskry, Elizabeth K.; Jay Barnes (jaybarnes@simmonsfirm.com); ekafka@cohenmilstein.com

6    Darcy—

7    You may recall that Mr. Jain was in Meta's initial disclosures, and was then listed by us as an individual that we wanted to
     depose. You then produced Mr. Jain's custodial file and despite his leaving Meta in early 2023 you never indicated he would not
8    be produced. Then, recently, we were told by you to reach out to his counsel at Latham which we did and engaged in many
     discussions with him about Mr. Jain appearing for his deposition which he was willing to do by video. It now appears that only
9    after learning of these developments, did Meta contact Mr. Jain's counsel, resulting in a changed position for Mr. Jain's
     willingness to sit for a deposition.

10   We do not think the chronology of events will be received well by the Court especially in light of the spoliation that has occurred
     and Mr. Jain's intimate knowledge relating to what was spoliated. We ask that you re-consider your position and work
11   cooperatively to schedule a deposition for Mr. Jain as it appeared we were on our way to doing.

     Jeff
12   └─────────────────────────────────────────────────────────────────────────────────────────────┘

13   Attached hereto as Exhibit "9" is a true and correct copy of an email I sent to Darcy Harris on May

14   30, 2025.

15          I declare under penalty of perjury under the laws of the United States that the foregoing is

16   true and correct.

17          Executed on June 30, 2025, at Beverly Hills, California.

18

19                                          /s/ Jeffrey A. Koncius
                                            Jeffrey A. Koncius
20

21

22

23

24

25

26

27

28
                                                7                    Case No. 3:22-cv-3580-WHO (VKD)
     DECLARATION OF JEFFREY A. KONCIUS IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM
     FACT DISCOVERY DEADLINE TO OBTAIN DEPOSITION TESTIMONY OF DINKAR JAIN

# EXHIBIT "1"

| | |
|---|---|
| **From:** | Kevin.Chambers@lw.com |
| **To:** | Jeffrey A. Koncius |
| **Cc:** | Nicole Ramirez Jones; Jessica Mendez |
| **Subject:** | RE: Meta Pixel : Deposition of Dinkar Jain |
| **Date:** | Thursday, May 1, 2025 11:55:03 AM |
| **Attachments:** | image001.png |

Sorry for delay.  Here is what I know:

Dinkar can be available this month but is leaving for India tomorrow to deal with a severely ill parent and cannot ensure that he will be back in the states before your deadline (but he will make himself available for a day's dep wherever he is).  If you want to do a virtual deposition, he wants me to be with him in the same room, which could mean India (which I am not super thrilled about, but so be it).  You'll need to consider whether the juice is worth the squeeze on that – assuming that you'd have to foot the bill (or maybe it's the other party; I'm not sure).

Please let me know how you'd like to proceed.

**From:** Jeffrey A. Koncius <Koncius@kiesel.law>
**Sent:** Wednesday, April 30, 2025 1:11 PM
**To:** Chambers, Kevin (DC) <Kevin.Chambers@lw.com>
**Cc:** Nicole Ramirez Jones <ramirezjones@kiesel.law>; Jessica Mendez <jmendez@kiesel.law>
**Subject:** Re: Meta Pixel : Deposition of Dinkar Jain

Kevin—

Following up on our call, thanks, and hoping to move this forward.

Jeff

Kiesel Law LLP
Jeffrey A. Koncius, Partner
8648 Wilshire Boulevard
Beverly Hills, CA 90211
310.854.4444 (main)
310.228.6929 (direct)
310.854.0812 (fax)

**From:** Jeffrey A. Koncius
**Sent:** Thursday, April 24, 2025 5:11:52 PM
**To:** Kevin.Chambers@lw.com <Kevin.Chambers@lw.com>
**Cc:** Nicole Ramirez Jones <ramirezjones@kiesel.law>; Jessica Mendez <jmendez@kiesel.law>
**Subject:** RE: Meta Pixel : Deposition of Dinkar Jain

Kevin—

# EXHIBIT "2"

| | |
|---|---|
| **From:** | Kevin.Chambers@lw.com |
| **To:** | Jeffrey A. Koncius |
| **Subject:** | Jain |
| **Date:** | Wednesday, May 14, 2025 3:34:19 PM |

Hey Jeffrey:

I am confirming that Dinkar is in India on a one way ticket. I didn't pry into the state of his personal affairs, but I don't have confidence that he'll be returning before your deadline.

I have not been able to connect with Meta's counsel on the question of who would foot the bill for counsel to fly to India to prep and defend him, but he is willing to be deposed from India voluntarily despite being out of the jurisdiction (whether a virtual deposition or if you decide to go there in person). I would suggest that you reach out to opposing counsel and explain the circumstances and that you'd like for him to be deposed. I think it best to leave it to you both to hash out the administrative details since you intimated that there has been back and forth about how long he's been designated, etc. But, again, Dinkar will voluntarily appear while out of the jurisdiction if you require it. Obviously, if I'm making a trip to India, we'll need to sort that out soon.


kAC

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.