# EXHIBIT 11

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

Page 1

1                UNITED STATES DISTRICT COURT

2                          FOR THE

3                NORTHERN DISTRICT OF CALIFORNIA

4

     IN RE META PIXEL HEALTHCARE LITIGATION, ) Case No.
     3:22-cv-3580-WHO (VKD)

5    _____ )

6

7          VIDEOTAPED DEPOSITION OF GRAHAM MUDD

8                   Palo Alto, California

9                Wednesday, February 26, 2025

10

11

12            REPORTED BY: Derek L. Hoagland

13                   CSR No. 13445

14

15

16

17

18

19

20

21

22

23

24

25

Page 2

1                  UNITED STATES DISTRICT COURT

2                           FOR THE

3                 NORTHERN DISTRICT OF CALIFORNIA

4

   IN RE META PIXEL HEALTHCARE LITIGATION, ) Case No.
   3:22-cv-3580-WHO (VKD)

5   _____ )

6

7

8

9

10     Videotaped Deposition of GRAHAM MUDD, taken before Derek

11     L. Hoagland, a Certified Shorthand Reporter for the

12     State of California, commencing at 9:08 a.m., Wednesday,

13     February 26, 2025, at GIBSON DUNN, 310 University

14     Avenue, Palo Alto, California 94301.

15

16

17

18

19

20

21

22

23

24

25

```
                                                    Page 3

 1    APPEARANCES:
 2
 3    COUNSEL FOR PLAINTIFFS IN THE PUNITIVE CLASS
      COHEN MILSTEIN SELLERS & TOLL
 4    88 Pine Street
      14th Floor
 5    New York, New York 10005
      BY:   ERIC A. KAFKA, ESQ.
 6          212.220.2914
            ekafka@cohenmilstein.com
 7          -- and --
      BY:   JENNA WALDMAN, ESQ.
 8          202.408.4600
            jwaldman@cohenmilstein.com
 9          -- and --
      BY:   SHIREEN HAMDAN, PARALEGAL (Via Zoom)
10
      -- AND --
11
      TERRELL MARSHALL LAW GROUP PLLC
12    936 North 34th Street
      Suite 300
13    Seattle, Washington 98103
      BY:   RYAN TACK-HOOPER, ESQ. (Via Zoom)
14          206.816.6603
            rtack-hooper@terrellmarshall.com
15
16    COUNSEL FOR META AND THE WITNESS
      GIBSON DUNN & CRUTCHER LLP
17    One Embarcadero Center
      Suite 2600
18    San Francisco, California 94111
      BY:   ELIZABETH MCCLOSKEY, ESQ.
19          415.393.4622
            emccloskey@gibsondunn.com
20          -- and --
      BY:   MATTHEW REAGAN, ESQ.
21          415.393.8265
            mreagan@gibsondunn.com
22
23    ALSO PRESENT
      NIKKI SOKOL IN-HOUSE COUNSEL FOR META
24    SHIREEN HAMDAN
      CAMERON TUTTLE, VIDEOGRAPHER
25
```

Page 7

1   with the noticing attorney.

2        MR. KAFKA:  This is Eric Kafka for the

3   plaintiffs in the punitive class.  I'm with the law firm

4   of Cohen Milstein Sellers & Toll.  With me here in

5   person also is Jenna Waldman for the plaintiffs in the

6   punitive class.  She's also from the law firm of Cohen

7   Milstein Sellers & Toll.  I believe it's possible that

8   at some point today via Zoom that Shireen Hamdan, who is

9   a paralegal at my firm Cohen Milstein may join, and also

10  possible that Ryan Tack-Hooper who is an attorney also

11  representing the plaintiffs' punitive class from Terrell

12  Marshall may join.

13       MS. McCLOSKEY:  Elizabeth McCloskey of Gibson

14  Dunn, on behalf of defendant Meta and the witness,

15  Mr. Mudd.  With me is my colleague at Gibson Dunn, Matt

16  Reagan and also with us is Nikki Stitt-Sokol of Meta.

17       THE VIDEOGRAPHER:  Will the court reporter

18  please introduce yourself and administer the oath to the

19  witness.

20       THE REPORTER:  Yes.  My name is Derek Hoagland.

21       And per new rules, my CSR is 13445.

22       (Whereupon, the deponent is

23       duly sworn by the court reporter.)

24  ///

25  ///

```
 1          MS. McCLOSKEY:  Object to form.  Calls for
 2   speculation.  Vague and ambiguous.
 3          THE DEPONENT:  Pixel one of the wit- -- can you
 4   repeat, please?
 5   BY MR. KAFKA:
 6   Q.     Could pixel data be used for online behavioral
 7   advertising?
 8          MS. McCLOSKEY:  Object to form.  Vague and
 9   ambiguous.  Calls for speculation.
10          THE DEPONENT:  Yes.  Yes, it could.
11   BY MR. KAFKA:
12   Q.     And what is the organic news feed ranking?
13          MS. McCLOSKEY:  Object to form.
14          THE DEPONENT:  So news feed was the sort of
15   primary content consumption, what we have -- surface
16   place on -- in the Facebook app, you know, where you
17   would see stories about friends and family and whatever
18   is going on in the world, and that -- those stories are
19   ranked by what, you know, sort of Facebook believes is
20   most interesting or engaging to you, was it -- does that
21   answer your question?  I am now sort of --
22   BY MR. KAFKA:
23   Q.     It does.  It does.
24   A.     Okay.
```

Page 87

[redacted]

3         MS. McCLOSKEY:  Object to form.  Vague and

4   ambiguous.

[redacted]

9   BY MR. KAFKA:

[redacted]

11        MS. McCLOSKEY:  Object to form.

12        THE DEPONENT:  I don't recall what the decision

[redacted]

15        (Exhibit No. 102 marked for identification.)

16   BY MR. KAFKA:

17   Q.     And Mr. Mudd, do you recognize the document

18   Bates labeled Pixel Health 000864790.  It is a series of

19   emails that you received in the course of your

20   employment at Facebook?

21   A.     Yeah.

22        MS. McCLOSKEY:  Object to form.

23        THE DEPONENT:  The numbers -- oh, those are

24   pages, yeah, I do.  I see that.  Yep.

25   ///

Page 88

1    BY MR. KAFKA:

2    Q.      And could you go to the email from Ura

3    Kostesich.  Do you know how to pronounce her name?

4    A.      I don't -- I don't even remember.

5    Q.      I am going to call her Ura K.

6    A.      Okay.

7    Q.      Can you go to the email from Ura K. at 864793?

8    A.      Yeah, I'm there.  Middle of the page, yeah.

9    Q.      And do you see that Ura K. Writes:



1    Q.       Okay.  She writes:

5             Do you see that?

6    A.       Mm-hmm.

7    Q.       It says:

19   A.       Okay.

20   Q.       And do you remember the issue that Ura K. was

21   talking about?

22   A.       I do.

23   Q.       Okay.  Let me go now to 792.  And here is

24   another email from Ura K. on February 21st which is two

25   days later.  And by the way, the subject here is "Re:

Page 90



```
 3          Do you see that?

 4    A.        Mm-hmm.
```



```
10    Q.        Okay.  And it says:
```



```
21          Do you see that?

22    A.        Mm-hmm.

23          MS. McCLOSKEY:  I just want to note that you

24    missed a couple words in there, but I don't know that it

25    changed the significance of the sentence.
```

Page 91

```
 1           MR. KAFKA:  Thank you.  Thank you, Counsel.

 2    BY MR. KAFKA:
```

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

```
 6           Do you see that?

 7    A.     I see that.

 8    Q.     And she writes:
```

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

```
13           Do you see that?

14    A.     Mm-hmm.

15    Q.     So does this refresh your recollection that you
```

███████████████████████████████████████████
███████████████████████████████████████████

```
18           MS. McCLOSKEY:  Object to form.  Assumes facts.

19           THE DEPONENT:  It -- it -- it's -- it doesn't --
```

███████████████████████████████████████████
███████████████████████████████████████████

```
23    BY MR. KAFKA:
```

███████████████████████████████████████████
███████████████████████████████████████████

Page 92

1          MS. McCLOSKEY:  Object to form.  Calls for

2    speculation.

6    lying about a conversation with you?

7    A.       No, I don't think so.  I don't have any reason

8    to believe that.

9    Q.       Thank you.

10          MR. KAFKA:  Let's go to the next exhibit then.

11          (Exhibit No. 103 marked for identification.)

12          THE DEPONENT:  Okay.  Any area you want me to

13   focus on?

14   BY MR. KAFKA:

15   Q.       Yeah.  Could you look at page 430475.  And it

16   says -- today:

21          Do you see that?

22   A.       I do.

25          MS. McCLOSKEY:  Object to form.  Calls for

1        MS. McCLOSKEY:  Should we take a quick break?

2     It's been an hour.

3        MR. KAFKA:  That's fine.  Yeah.

4        THE VIDEOGRAPHER:  Okay.  We're going off the

5     record.  The time is 11:32 a.m.

6        (A recess transpires.)

7        THE VIDEOGRAPHER:  We're back on the record.

8     The time is 11:56 a.m.

9        MR. KAFKA:  Welcome back, Mr. Mudd.  We are

10    going to hand to you what's being marked as Exhibit 105.

11        (Exhibit No. 105 marked for identification.)

12    BY MR. KAFKA:

16        MS. McCLOSKEY:  Object to form.

17        THE DEPONENT:  It appears to be.

18    BY MR. KAFKA:

19    Q.    And do you see in the second paragraph, it

20    states:

2          Do you see that?

3    A.       I see that.

4    Q.       Do you remember this conversation at Facebook?

5            MS. McCLOSKEY:  Object to form.  Assumes facts.

6            THE DEPONENT:  Not specifically.

7    BY MR. KAFKA:

11           MS. McCLOSKEY:  Object to form.  Assumes facts.

12           THE DEPONENT:  I do remember those

13   conversations.

14   BY MR. KAFKA:

17           MS. McCLOSKEY:  Object to form.

19   BY MR. KAFKA:

20   Q.       Can you explain the difference between a

21   first-party cookie and a third-party cookie to me?

22           MS. McCLOSKEY:  Object to form.

23           THE DEPONENT:  Yes.  I will try.  A first-party

24   cookie would be set by the website that a user is at so

25   if I go to Nike.com, a Nike.com cookie would be

Page 101

1    considered a first-party cookie.

2            If Nike has pixels on its website from any

3    number of ad platforms, it's -- they -- if the browser

4    so allows, those -- those pixels could read a -- a

5    cookie from a different domain at that point, at that

6    moment, and that would be considered, in that case, a

7    third-party cookie because it wasn't from the domain

8    being visited.  Is that --

9    BY MR. KAFKA:

10   Q.      And do you see the next paragraph, it says:



19            MS. McCLOSKEY:  Object to form.

20            THE DEPONENT:  I don't recall taking a position.

21   I don't recall the specific discussion so I don't

22   remember what my position on it was, to be honest.

23   BY MR. KAFKA:

Page 102

1          MS. McCLOSKEY:   Object to form.



8          MS. McCLOSKEY:   Object to form.

14          MS. McCLOSKEY:   Object to form.

15      BY MR. KAFKA:

17          MS. McCLOSKEY:   Object to form.

25          MR. KAFKA:   Let's go to the next exhibit, which

Page 179

███████████████████████████████████████████████████

3          MS. McCLOSKEY:  Object to form.  Asked and
4    answered.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

15   BY MR. KAFKA:

███████████████████████████████████████████████████

17   A.      Okay.
18   Q.      Did you hear concerns in 2019 or around then --
19   A.      Mm-hmm.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

24          MS. McCLOSKEY:  Object to form.  Asked and
25    answered.  Vague.
26

1               THE DEPONENT:  Yes, I did.

2       BY MR. KAFKA:

3       Q.       And among industry, who did you hear those

4       concerns from, to the best of your recollection?

5               MS. McCLOSKEY:  Object to form.

6               THE DEPONENT:  It -- it would have been, you

7       know, agencies or industry bodies, you know, you can

8       imagine like trade groups and so forth; and it would

9       typically have happened after there was press.  They --

10      you know, they would ask us what's going on with this

11      issue that we see in the press, and so forth.

12      BY MR. KAFKA:

13      Q.       Do you remember any specific clients who raised

14      those concerns with you?

15              MS. McCLOSKEY:  Object to form.

16              THE DEPONENT:  I don't.

17      BY MR. KAFKA:

18      Q.       Okay.  And do you rem- -- and did you remember

19      any press who you discussed concerns about Facebook's

20      receipt of data that could indicate a person's health

21      status?

22              MS. McCLOSKEY:  Object to form.  Assumes facts.

23              THE DEPONENT:  There were -- there were press

24      articles that were sent to me, the Wall Street Journal

25      articles, with any question we've talked about.  I did

26

Page 181

1    dozens, probably hundreds of interviews with press over

2    the years, and I don't remember which ones were for this

3    issue specifically that.  You know, this is one of

4    dozens of issues, so I can't connect that dot

5    specifically.

6    BY MR. KAFKA:

7    Q.      Do you remember if you spoke to the Wall Street

8    Journal about this issue?

9    A.      I don't think that I did, but I am not certain.



12   A.      Same doc?  We are in 112.

13   Q.      Yeah, 112.

14   A.      Okay.

26

Page 182

1   A.      So I am on -- in the table on the second page.

2   Where do you want to direct me to look for that?

3   Q.      Yeah, let's go to column B.

4   A.      Okay.

5   Q.      And it states:

███████████████████████████████████████████

8   A.      Oh.

███████████████████████████████████████████

11  A.      Yes, I see that.

███████████████████████████████████████████

14  A.      Okay.  Give me a sec.  Yes, I think that's

15  right.

16  Q.      And do you see in row 5 on page 2, it says:

███████████████████████████████████████████

19          Do you see that in Exhibit 112?

20          MS. McCLOSKEY:  Sorry.  Where is that Eric?

21          MR. KAFKA:  Row 5, near the top of the second

22  page of Exhibit 112.

23          MS. McCLOSKEY:  Row 5.  I see row 5 on -- oh, I

24  see.  Okay.  On the second page.

25

Page 183

```
 1   BY MR. KAFKA:

 2   Q.      Yeah.  So let me just ask it again, yeah.

 3           Do you see in Exhibit 112, on page 2, row 5, it

 4   says:
```

[black redaction block]

```
11   Q.      Okay.  And --

12           MS. McCLOSKEY:  I am -- object to form.  It's

13   not identical.
```

[black redaction block]

```
16   yeah.  So I mean, is that what you ^ --

17           MS. McCLOSKEY:  So misstates the evidence.

18           Yes, that's what I am taking issue --

19           MR. KAFKA:  Counsel, please, you can make an

20   objection prior to the witness testifying; but please

21   don't -- please don't do it afterwards.

22           MS. McCLOSKEY:  Well, I --

23           MR. KAFKA:  Okay.  Let me --

24           MS. McCLOSKEY:  I didn't catch that you had

25   misstated the evidence and so I didn't want the record

26
```

1    to reflect that the language was identical when it is

2    not identical.

3           MR. KAFKA:  Okay.  I didn't say "language."  I

4    said -- so -- so could the court reporter read back the

5    question.

6           (Pending question read.)

7           MS. McCLOSKEY:  Object to form.  Misstates the

8    evidence.

9           THE DEPONENT:  I -- I don't know the legal --

10   the legal technicality here.  What I am saying is the

11   words are not identically the same.  I believe that the

12   option that is being referred to is the same.

13   BY MR. KAFKA:

14   Q.      Thank you.

15           Now let's go to row 6.

16   A.      Okay.

17   Q.      It states:

18   ███████████████████████████████████████████████████

19   A.      Mm-hmm.

20   Q.      Do you see that on page 2 of Exhibit 112, at row

21   6?

22   A.      Yes.

23   Q.      And putting aside whether the precise language

24   is the same, would you agree with me that it's the same

25   option listed as option 3 in Exhibit 111?

26

Page 188

```
 1    A.        Yeah.

███████████████████████████████████████████████████

 3    A.        Yes.

 4    Q.        What does it mean?

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

11    generally?

12    A.        Yeah.

13              MS. McCLOSKEY:  Object to form.

14              THE DEPONENT:  That's correct.

15    BY MR. KAFKA:

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

19    A.        I don't see it in this document.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

23              MS. McCLOSKEY:  Where are you?

24              MR. KAFKA:  No. 6.

25              THE DEPONENT:  I don't see anything there.  I

26
```

Page 189

5    BY MR. KAFKA:

6    Q.     Okay.  So just to be clear:  You would only do

7    one or the other, right?

8    A.     I -- I mean, that is my take on this, so I

9    just -- it seems like you are inferring that there is

10   something missing here and I am not so sure that that's

11   the case, but I am -- you direct me however you like.

12   Q.     Well, Mr. Mudd, I guess what I -- for -- what I

13   just wanted to understand is -- actually I don't need to

14   ask anything else.

15          Let's just, sitting here right now before we

16   look at any other documents, you don't recall which

18          MS. McCLOSKEY:  Object to form.

21          MR. KAFKA:  Okay.

26

1    BY MR. KAFKA:

11            MS. McCLOSKEY:  Object to form.  Calls for
12    speculation.

14            MR. KAFKA:  Thank you.
15            Could we go to the next exhibit.  This is going
16    to be Exhibit No. 113.
17            THE DEPONENT:  Done with this thing?
18            MR. KAFKA:  Done.  Not unless you want to see it
19    again.  It hurts my eyes.
20            (Exhibit No. 113 marked for identification.)
21    BY MR. KAFKA:
22    Q.    Take -- take your time to review the document.
23    A.    Okay.  Thanks.
24            Okay.  I think at a high level, I have got it.
25    Q.    Okay.  Let's go -- just for the record, this
26

Page 198

1    A.      Yes.

2    Q.      And you wrote:

6    A.      Yes.

7    Q.      And can you read for me the last paragraph in

8    your November 6, 2019, 7:33 a.m. email?

9    A.      Yes.

22    A.      I see that.

23    Q.      And do you see that you wrote at 8:12 a.m.,

25    A.      Yes.

26

Page 199

```
 1   Q.      And now do you see that Hiral wrote:
```

█████████████████████████████████████████████

```
 5   A.      Mm-hmm.
```

█████████████████████████████████████████████

```
13          MS. McCLOSKEY:  Object to form.  Calls for
14   speculation.
```

█████████████████████████████████████████████

```
16   BY MR. KAFKA:
17   Q.      Do you have any reason to believe that's
18   incorrect?
19          MS. McCLOSKEY:  Object to form.  Calls for
20   speculation.
21          THE DEPONENT:  I don't have any reason to
22   believe it's incorrect.
23   BY MR. KAFKA:
```

█████████████████████████████████████████████

```
26
```

Page 200

1        MS. McCLOSKEY:  Object to form.  Calls for

2   speculation.  Lacks foundation.  Vague.

3        THE DEPONENT:  I would only be speculating.  I

4   don't know.

5   BY MR. KAFKA:

8        MS. McCLOSKEY:  Object to form.  Calls for

9   speculation.  Vague and ambiguous.

17  BY MR. KAFKA:

20        MS. McCLOSKEY:  Object to form.

26

Page 229

1    it.

2    Q.      Okay.  It doesn't -- you are the custodian, I

3    don't --

4    A.      That's fair.

5    Q.      An author -- okay.  So let's -- let me can this:

6    Have you seen this document before?

7    A.      I don't remember it.

8    Q.      It says on the first page, which is 484.

9    A.      Okay.

████████████████████████████████████████

12    A.      Okay.

13    Q.      And then it says "Scheduled for MZ review,

14    April 20th."  So does that mean that this issue was

15    scheduled for review with Mark Zuckerberg?

16         MS. McCLOSKEY:  Object to form.  Calls for

17    speculation.

18         THE DEPONENT:  That would be my guess.

19    BY MR. KAFKA:

20    Q.      Well, do you recall if there was a meeting with

████████████████████████████████████████

23         MS. McCLOSKEY:  Object to form.  Calls for

24    speculation.

25         THE DEPONENT:  I don't recall the date.  I

26

Page 230

1  recall the topic of the discussion, and I do recall it

2  going to Mark.  It may have been April, I don't know.

3  It may have been April, I don't know.

4  BY MR. KAFKA:

5  Q.      Do you believe it was in 2021?

6          MS. McCLOSKEY:  Object to form.

7          THE DEPONENT:  Yes.

8  BY MR. KAFKA:

9  Q.      And did you participant in an in-person

10  discussion regarding this issue with Mr. Zuckerberg?

11          MS. McCLOSKEY:  Object to form.

12          THE DEPONENT:  I don't think it was in person.

13  I think this was during COVID.

14  BY MR. KAFKA:

15  Q.      Okay.  This gets to some of my earlier about

16  the -- the -- so putting aside whether it was Zoom --

17  A.      Ah, okay.  Sorry.

18  Q.      -- or -- or in person -- no, that's fair, in

19  person or telephone call, do you believe that you

20  participated in a meeting that Mark Zuckerberg attended

23          MS. McCLOSKEY:  Object to form.

24          THE DEPONENT:  Yes.

25

 1    BY MR. KAFKA:

 2    Q.      And who do you recall -- well, do you believe

 3    that meeting was on Zoom?

 4    A.      That's my recollection.  Yeah, I -- I am quite

 5    certain that that's the case.  I can't imagine we were

 6    in person at that point in time.

 7    Q.      And who do you recall attending that meeting?

 8    A.      I am really hazy here.

 9            MS. McCLOSKEY:  Object to form.  Calls for

10    speculation.

11            THE DEPONENT:  I definitely remember Dan Levy

12    was there.  Or Levy.  I don't remember anyone else.  Oh,

13    no, that's not true.  I remember Alex Schultz was there.

14    BY MR. KAFKA:

15    Q.      So on the Zoom, there was you, Mark Zuckerberg,

16    Dan Levy, and Alex Schultz?

17    A.      And a number of others, I just don't recall the

18    specifics.  It's like less of a memory when you are not

19    in person; you know what I mean?

20    Q.      No, I get it.

21    A.      Like squares on a TV.

22    Q.      But do you remember if there were attorneys at

23    the meeting?

24    A.      I don't recall.

25    Q.      Okay.  And you state, oh, no I'm sorry, not you

26

Page 232

1    state.  It states in the document:

6              Do you see that?

7              MS. McCLOSKEY:  Object to form.

8              THE DEPONENT:  Yes, I see that.

9    BY MR. KAFKA:

10   Q.    And do you see where it says:

11             "The strategy (as we wrote at the Feb 2020 board

12   meeting, full text in the appendix) 1" -- let me back

13   up.

14             Do you see where that's written?

15   A.    I see it.

16   Q.    Are you aware of a -- of a February 2020

18   was discussed?

19             MS. McCLOSKEY:  Object to form.  Calls for

20   speculation.

21             THE DEPONENT:  I wasn't in the room.  So I don't

22   know what was discussed.  I think we previously reviewed

23   a document that was prepared for that meeting.  I --

24   that's -- that's pretty much the extent of my knowledge.

25

Page 233

1   BY MR. KAFKA:

2   Q.      And other than the members of the board of

3   directors, can you identify anyone else who attended

4   that meeting?

5           MS. McCLOSKEY:  Object to form.  Misstates the

6   testimony.  The witness hasn't testified that the board

7   of director members were all there.

8           THE DEPONENT:  I don't -- I don't know who was

9   in the room.

10  BY MR. KAFKA:

11  Q.      And I know this is an obvious question; but Mark

12  Zuckerberg is a member of the Facebook board of

13  directors, right?

14          MS. McCLOSKEY:  Object to form.

15          THE DEPONENT:  That's correct.

16  BY MR. KAFKA:

17  Q.      Let me go to the bottom of page 485 which is

18  really the second page.

19  A.      Sorry, I was distracted.  Where would you like

20  me?

21  Q.      This is the bottom of page 485, which is the

22  second base -- page.

23  A.      Okay.  Got it.

24  Q.      And it says there:

26

1    think I would have said it was very important.

2    BY MR. KAFKA:

3    Q.    Okay.  And then it says:

9              Do you see that?

10   A.     I see it.

11   Q.     And you were familiar with this potential plan

12   in 2021?

13             MS. McCLOSKEY:  Object to form.  Vague and

14   ambiguous.

15             THE DEPONENT:  Did you say "April"?

16   BY MR. KAFKA:

17   Q.     In 2021?

18   A.     Yes.

19   Q.     I am not going to get hung up on the month.  And

20   then do you see where it says -- hold on, let me skip a

21   few pages.  I am going to go now to -- could you go to

22   the page that ends in 11025.

23   A.     Yep.

24   Q.     And do you see it says:

26

Page 242

 5          Do you see that?

 6    A.    Yes.

 7    Q.    And you are aware that that was a recommendation

 8    that Facebook was considering making to Mark Zuckerberg

 9    in 2021?

10          MS. McCLOSKEY:  Object to form.  Lacks

11    foundation.  Calls for speculation.

12          THE DEPONENT:  Yeah.  Yeah.

13    BY MR. KAFKA:

14    Q.    And sitting -- before we look at any other

15    documents, do you know if that recommendation was made

16    to him?

17          MS. McCLOSKEY:  Object to form.

18          THE DEPONENT:  Yes, it was.

19    BY MR. KAFKA:

20    Q.    Okay.  Let's go to 030.

21    A.    030.  Do you see it states that:

26

Page 247

```
 1   A.      I mean, I have no idea.

 2   Q.      Do you see there's a -- if you go to 325,

 3   there's an email from Jill Barzilay on June 8th, 2021,

 4   to you, Graham Mudd.

 5           Do you see that?

 6   A.      Uh-huh.
```

███████████████████████████████████████████████████

```
 8   A.      Uh-huh.

 9   Q.      It says, "Hi, Graham.  Great seeing you

10   yesterday."  And who's Jill Barzilay?

11   A.      She was in product marketing, she didn't report

12   to me but, you know, she was on a sort of sister team of

13   mine, to mine.

14   Q.      Okay.  It says:
```

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

```
21           Related -- actually strike that.

22           Do you see the paragraph I just read that ends
```

█████████████████████████████████

```
24   A.      Uh-huh.  Yeah.

25   Q.      And then, could you read me your response to

26
```

Page 248

1    Ms. Barzilay on June 8th, 2021, at 12:33 p.m.?

2    A.      At 12:33, correct?

3    Q.      12:33, correct, yes.

4    A.      Okay.  Sorry.

9    Q.      Okay.  Now, we discussed that you attended a

10   Zoom meeting with Mark Zuckerberg and other Facebook

11   employees in 2021 --

12   A.      Mm-hmm.

15           Do you recall what decision was made in that

16   meeting?

17           MS. McCLOSKEY:  Object to form.

26

Page 249

1  likely going to check in with him again, and so forth,

2  and so I -- that's kind of my -- my recollection of it.

3  BY MR. KAFKA:

4  Q.      And when you say "check in with him again," you

5  mean check in with Mark Zuckerberg again, correct?

6          MS. McCLOSKEY:  Object to form.

7          THE DEPONENT:  My assumption was that before

8  a -- the full sort of trigger was pulled on that kind of

9  decision, that that's the kind of thing that we would.

10  I don't recall if we did.

11  BY MR. KAFKA:

12  Q.      And when you left Facebook in 2022 --

13  A.      Uh-huh.

17          MS. McCLOSKEY:  Object to form.

22  BY MR. KAFKA:

23  Q.      Well, let me put it this way:  When you left

26

2          MS. McCLOSKEY:  Object to form.  Vague and

3    ambiguous.

4          THE DEPONENT:  Across the board?  If that's what

5    you are asking, no.

6    BY MR. KAFKA:

8    discussed earlier, was that implemented in 2022?

9          MS. McCLOSKEY:  Object to form.

10          THE DEPONENT:  No, not wholly.

11    BY MR. KAFKA:

12    Q.     And is that proposal, to your knowledge, been

13    implemented today wholly at Facebook?

14          MS. McCLOSKEY:  Object to form.  Calls for

15    speculation.

16          THE DEPONENT:  I don't believe so, but I don't

17    know.

18    BY MR. KAFKA:

24    Q.     Do you think it should have been implemented

25    already at Facebook?

26

Page 251

1      MS. McCLOSKEY:  Object to form.  Calls for

2   speculation.  Vague.

3      THE DEPONENT:  I think if -- I can't make a call

4   on timing for this.  I believe the industry is in a

5   state of transition and that the right place for it to

6   end and maybe the sort of stable equilibrium is that

7   place.  It's a massive change for this industry, for

8   Facebook, and for everybody else.

9      The reason I started the company I did was

10  because I wanted to build technologies that would move

11  us in that direction, so obviously I believed that

12  that's the end state that we should and that I want us

13  to selfishly and, you know, for other -- and because I

14  think that's the right end state.

15     But as I said, it's a massive undertaking, a

16  massive change; and I don't know that I could say it

20  could it happen in next year, the year after that, five

21  years from now, I hope so.

22  BY MR. KAFKA:

23  Q.     Do you remember anything that Mark Zuckerberg

26

Page 252

1    A.      I don't.

2    Q.      Do you remember what his view was at that

█████████████████████████████████████████████

4           MS. McCLOSKEY:  Object to form.  Calls for

5    speculation.  Vague and ambiguous.

6           THE DEPONENT:  Specifically, no.  I mean, we

█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████

11   don't remember his specific reaction or his opinion.

12   BY MR. KAFKA:

13   Q.      And do you know Mark Zuckerberg's current

█████████████████████████████████████████████
█████████████████████████████████████████████

16   A.      No idea.

17          MS. McCLOSKEY:  Object.  Object to form.  Calls

18   for speculation.

19          THE DEPONENT:  No idea.

20          MR. KAFKA:  With that, I have no further

21   questions.  I do want to say I guess two things.  First

22   of all, there was a folder referenced about -- and we

23   will talk about this later -- about signal documents we

24   believe should have been produced, and I also believe

25   that this document that was withheld on privilege,

26

Page 262

REPORTER'S CERTIFICATE

1

2

3     STATE OF CALIFORNIA              )    ss.

4     I, DEREK L. HOAGLAND, CSR #13445, State of California,

5     do hereby certify:

6     That prior to being examined, the witness named in the

7     foregoing proceeding was by me sworn to testify to the

8     truth, the whole truth and nothing but the truth;

9     That said proceeding was taken down by me by stenotype

10    at the time and place therein stated and thereafter

11    transcribed under my direction into computerized

12    transcription.

13    I further certify that I am not of counsel nor attorney

14    for nor related to the parties hereto, nor am I in any

15    way interested in the outcome of this action.

16    In compliance with section 8016 of the Business and

17    Professions Code, I certify under penalty of perjury

18    that I am a certified shorthand reporter with license

19    number 13445 in full force and effect.

20    Witness my hand this 13th day of March, 2025.

21

22                         DEREK L. HOAGLAND, CSR #13445

23

24

25

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | |
| | Case No. 22-cv-03580 |

### ERRATA SHEET FOR THE TRANSCRIPT OF THE FEBRUARY 26, 2025, DEPOSITION OF GRAHAM MUDD

| Page(s) | Line(s) | Change | Reason |
|---------|---------|--------|--------|
| 11 | 18 | | Mistranscription |
| 14 | 4 | | Mistranscription |
| 15 | 5 | | Mistranscription |
| 17 | 18 | | Typographical |
| 19 | 7-8 | | Typographical |
| 21 | 13 | | Mistranscription |
| 26 | 12 | | Mistranscription |
| 43 | 1 | | Mistranscription |
| 49 | 2 | | Mistranscription |
| 51 | 5 | | Typographical |
| 51 | 5 | | Typographical |
| 51 | 6 | | Typographical |
| 51 | 12 | | Typographical |
| 63 | 5 | | Typographical |
| 63 | 7 | | Typographical |
| 81 | 21 | | Typographical |

| 88 | 2-3 | | Typographical |
|----|-----|---|---------------|
| 88 | 5 | | Typographical |
| 88 | 7 | | Typographical |
| 88 | 9 | | Typographical |
| 88 | 11 | | Typographical |
| 88 | 15 | | Typographical |
| 88 | 17 | | Typographical |
| 88 | 18 | | Typographical |
| 89 | 20 | | Typographical |
| 89 | 224 | | Typographical |
| 91 | 3 | | Typographical |
| 92 | 5 | | Mistranscription |
| 94 | 18 | | Mistranscription |
| 120 | 12 | | Mistranscription |
| 120 | 15 | | Mistranscription |
| 120 | 20 | | Mistranscription |
| 121 | 5 | | Mistranscription |
| 123 | 16 | | Mistranscription |
| 129 | 25 | | Mistranscription |
| 130 | 10 | | Mistranscription |
| 134 | 2 | | Mistranscription |
| 159 | 1 | | Mistranscription |
| 159 | 9 | | Mistranscription |
| 159 | 24 | | Mistranscription |

| 173 | 3 | | Mistranscription |
|---|---|---|---|
| 173 | 23-24 | | Typographical |
| 174 | 3 | | Typographical |
| 194 | 20 | | Typographical |
| 196 | 25 | | Mistranscription |
| 198 | 19 | | Typographical |
| 202 | 20-21 | | Typographical |
| 203 | 22 | | Mistranscription |
| 205 | 13 | | Typographical |
| 205 | 18 | | Typographical |
| 206 | 1-2 | | Mistranscription |
| 207 | 1 | | Typographical |
| 207 | 11 | | Typographical |
| 211 | 6 | | Mistranscription |
| 212 | 16 | | Mistranscription |
| 217 | 23 | | Mistranscription |
| 224 | 8 | | Mistranscription |
| 223 | 20 | | Typographical |
| 224 | 5 | | Typographical |

| 225 | 15 | | Typographical |
| 226 | 10 | | Typographical |
| 227 | 9-10 | | Typographical |
| 242 | 22-243:2 | | Mistranscription |
| 244 | 2-6 | | Mistranscription |

## **CERTIFICATE OF DEPONENT**

I have read the foregoing transcript of my deposition and except for any corrections or changes noted on the errata sheet, I hereby subscribe to the transcript as an accurate record of the statements made by me.

Signed by:

*Graham Mudd*

1C9B6FE6B516459

Graham Mudd

28-Apr-2025 | 7:04 PM BST
_____
Date

4