# EXHIBIT 28

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

CONFIDENTIAL

Page 1

1              UNITED STATES DISTRICT COURT

        FOR THE NORTHERN DISTRICT OF CALIFORNIA

2                 SAN FRANCISCO DIVISION

   ----------------------------------------X

3   IN RE

4   META PIXEL HEALTHCARE LITIGATION,

5                         Case No.:

                          3:22cv-3580-WHO-VKD

6   ----------------------------------------X

7

8                         DATE:  February 9, 2025

9                         TIME:  10:21 A.M.

10

11

12

13

14         VIDEOTAPED REALTIME DEPOSITION of the

15   Defendant, REBECCA REZA, taken by the Plaintiff,

16   pursuant to a Subpoena and to the Federal Rules of

17   Civil Procedure, held at the offices of Gibson Dunn,

18   200 Park Avenue, New York, New York 10166-0193,

19   before Karyn Chiusano, a Notary Public of the State

20   of New York.

21

22

23

24

25

CONFIDENTIAL

Page 3

1              F E D E R A L   S T I P U L A T I O N S

2

3

4      IT IS HEREBY STIPULATED AND AGREED by and between

5    the counsel for the respective parties herein that

6    the sealing, filing and certification of the within

7    deposition be waived; that the original of the

8    deposition may be signed and sworn to by the witness

9    before anyone authorized to administer an oath, with

10    the same effect as if signed before a judge of the

11    Court; that an unsigned copy of the deposition may

12    be used with the same force and effect as if signed

13    by the witness 30 days after service of the original

14    and one copy of same upon counsel for the witness.

15

16      IT IS FURTHER STIPULATED AND AGREED that all

17    objections, except as to form, are reserved to the

18    time of trial.

19

20                  *     *     *     *

21

22

23

24

25

CONFIDENTIAL

```
                                                      Page 2
 1     A P P E A R A N C E S:

 2

 3     COHEN MILSTEIN SELLERS & TOLL PLLC
         Attorneys for the Plaintiffs and the Putative Class
 4       88 Pine Street ~ 14th Floor
         New York, New York 10005
 5       BY: ERIC KAFKA, ESQ.
             CLAIRE TORCHIANA, ESQ.
 6       ekafka@cohenmilstein.com
         ctorchiana@cohenmilstein.com

 7

 8     GIBSON, DUNN & CRUTCHER LLP
         Attorneys for the Defendant
 9       Meta Platform
         200 Park Avenue
10       New York, New York 10166-0193
         BY: ELIZABETH McCLOSKEY, ESQ.
11           DARCY HARRIS, ESQ.
             LEESA HASPEL, ESQ.
12       emccloskey@gibsondunn.com
         dharris@gibsondunn.com
13       lhaspel@GibsonDunn.com

14     ALSO PRESENT:

15       PAUL BAKER, Videographer
         SHIREEN HAMDEN, Paralegal, (via videoconference)
16       CARRIE BODNER, ESQ., Meta
         BETH TERRELL, (via videoconference)

17

18

19                       *      *      *

20

21

22

23

24

25
```

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 28

1           MS. MCCLOSKEY:  Objection to form.

2           Vague.

3      A.    Yes.

4           This looks like an e-mail I would've

5    sent.

6      Q.    And you acknowledge you wrote this

7    e-mail; correct?

8           MS. MCCLOSKEY:  Object to form.

9      A.    I don't remember writing this e-mail,

10   but I assume that is correct.

11     Q.    And do you see where you wrote:

12          "In my role, I work with health clients

13   advertising on Facebook to give recommendations on

14   the Facebook ad strategy"?

15     A.    Yes.

16     Q.    And do you see where you wrote:

22          Do you see that?

23     A.    Yes.

24     Q.    And is it correct that when you were an

25   account manager you worked with health clients on

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 29

1     advertising on Facebook to give recommendations on

2     the Facebook ad strategy?

3             A.      Yes.

17                          MS. MCCLOSKEY:  Object to form.

18                          Vague.

19                          Vague, including as to time.

20             A.      Yes; for a few months.

22                          MS. MCCLOSKEY:  Object to form.

23             A.      That would've been the team reporting

24     to Shayla, which would've included Julian Castañeda,

25     Sam Wei-Lin, Cole Bauer, Sofia Figueroa, David

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 30

1      Rodriguez and Hadiyah Grubish.

6                        MS. MCCLOSKEY:   Object to form.
7                        Vague and ambiguous.

16                       MS. MCCLOSKEY:   Object to form.

24                       MS. MCCLOSKEY:   Object to form.

Page 35

1          MS. TORCHIANA:  -- "6" on it?

2          MR. KAFKA:  No.

3          I -- I apologize.

4          I mean 6.

5          MS. TORCHIANA:  Oh, 6?  Okay.

6          MR. KAFKA:  Hold on.

7          MS. TORCHIANA:  Let's just keep going.

8          MR. KAFKA:  No, no, no, no.

9          Actually, it's -- it's my mistake.

10   Okay.

11      Q.    Who is Sydney Hammond?

12      A.    She was an account manager on one of

████████████████████████████

14      Q.    And it says here:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

19          MS. MCCLOSKEY:  I just want to note for

20   the record that that wasn't the whole sentence on

21   that was right there on this page.

22          MR. KAFKA:  Okay.  I'll read -- I'll

23   read -- I'll read the full sentence.

24      Q.    It says:

███████████████████████████████████████████

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 36

```
 4                    MS. MCCLOSKEY:  Object --
 5          Q.        -- to the best of your knowledge?
 6                    MS. McCLOSKEY:  -- object to form.
```

```
20                    MR. KAFKA:  And for the record, what's
21          been entered is two documents:  PIXEL_HEALTH348850
22          along with attached -- that -- that's just been
23          entered into the record, along with
24          PIXEL_HEALTH348849.
25          Q.        With respect to PIXEL_HEALTH348850 --
```

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

                                                        Page 133

1           Q.      And they were your client; right?

2                   MS. McCLOSKEY:  Object to form.

4           Q.      And in your review, you had discussed

6       right?

7                   MS. McCLOSKEY:  Object to form.

8                   Misstates the testimony.

9           A.      Am I allowed to look --

10          Q.      Yeah.

11          A.      -- back?

12                  What document was it?

13          Q.      Yeah.

14                  MR. KAFKA:  Well, you know what?  I'm

15      going to go strike the question, only because I

16      don't want to have to --

17                  THE WITNESS:  Okay.

18                  MR. KAFKA:  -- look back at -- so

19      strike the question.

20                  THE WITNESS:  All right.

21                  MR. KAFKA:  Well, withdrawn.

22          Q.      You write --

23                  MR. KAFKA:  Oh, sorry.

24          Q.      The e-mail states:

25                  "We have two types of events we can

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 134

1    implement, standard events and custom conversions,

4                    Do you see that?

5         A.    I see that sentence.

6         Q.    And it says:

7                "For optimizing for these conversion

8    events, we will be able to better target the people

9    we want and understand how Facebook is driving the

10   actions you want people to take."

11                So why is it that optimizing for those

12   conversion events would enable advertisers to better

13   target the people they want?

14                MS. McCLOSKEY:   Object to form.

15        A.    We sort of had this conversation

16   earlier regarding when you set up an ad in Ads

17   Manager, you have to choose things like objective

18   and what events you want to optimize for so that the

19   algorithm is working correctly.

20                So, you would want to optimize for the

21   event that you actually wanted -- or the action that

22   you actually wanted people to take, rather than

23   something different, where possible.

24        Q.    Okay.  And then, later on you write in

25   the second paragraph, second sentence:

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 135

 4              Do you see where the e-mail sent from
 5      your e-mail address states that?
 6                  MS. McCLOSKEY:  Object to form.
 7                  Misstates the testimony.
 8          A.      I see that sentence.
 9          Q.      Are you comfortable with that being an
10      e-mail from a Facebook Account Manager to a
11      healthcare client?
12                  MS. McCLOSKEY:  Object to form.
13          A.      As I've mentioned, events -- my
14      understanding is that the pixel and events could be
15      used in a compliant manner so long as that is
16      something that the advertiser has determined
17      internally themselves.
18              So this is an event that they would
19      decide is okay, then yes.
20                  I never make the final decision.
21                  MR. KAFKA:  Let's go to what we're
22      going to mark as 72.
23                  (Whereupon, Exhibit 72, E-mail Chain,
24      was marked for identification as of this date by the
25      Reporter.)

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 143

1      through source code"?

2            A.      Yes.  I see that.

3            Q.      Do you remember talking or

█████████████████████████████████████████

5      pixel events directly through source code?

6                  MS. McCLOSKEY:  Object to form.

7                  Vague.

8            A.      I remember this being a topic of

█████████████████████████████████████████

10     remember specific conversations with them.

11           Q.      Do you see where it states:

█████████████████████████████████████████

14           A.      Yes.

15           Q.      Do you have any reason to believe that

16     you did not write that sentence?

17                  MS. McCLOSKEY:  Object to form.

18                  Calls for speculation.

19           A.      No.

20           Q.      Can you read me the sentence after the

21     three-point list?

████████████████████████████████████████████

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 144

1          Q.     Did you write that?

2          A.     As I have stated:  I don't remember

3     writing it.

4          Q.     Do you have any reason to believe you

5     did not write it?

6                 MS. McCLOSKEY:  Object to form.

7          A.     No.

8          Q.     You would agree with me in that

9     sentence there's a recommendation; right?

10                MS. McCLOSKEY:  Object to form.

11                Vague.

12         A.     I -- I do see I say:

13                "I recommend implementing."

14         Q.     What do you see you recommended

15     implementing?

16    ████████████████████████████████████

17         Q.     Are you comfortable that -- with that

18    for the same reasons stated earlier today?

19                MS. McCLOSKEY:  Object to form.

20         A.     I am comfortable given, to my

21    understanding, Meta's Business Tools to be used in a

22    compliant manner, so long as the advertiser has made

23    the decision on the data that they can send back.

24                So if they've decided that that is an

25    appropriate event that they can use, then yes.

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 145

```
 1          Q.     So, you understood it was the
 2     advertiser's responsibility to determine if the data
 3     they sent you was HIPAA compliant; right?
 4               MS. McCLOSKEY:  Object to form.
 5          A.     My understanding is that the
 6     advertisers made the decision on what to send back
 7     and Meta had systems in place in the event that
 8     something was erroneously sent, but that it was on
 9     the advertiser to send -- to decide what data was
10     compliant based off of their own legal team's
11     assessment.
12          Q.     It was on the advertiser to require
13     that the data they sent over was HIPAA compliant;
14     right?
15               MS. McCLOSKEY:  Object to form.
16               Asked and answered.
17          A.     Meta did not want to receive any
18     health -- personal health information, and that was
19     up to the advertisers to ensure that that was not
20     sent and they were deciding what would be compliant.
21               MR. KAFKA:  Well, could -- can you --
22     can you just read back my question?
23               (Whereupon, the referred to Question
24     was read back by the Reporter:
25               "QUESTION:  It was on the advertiser to
```

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 146

```
 1    require that the data they sent over was HIPAA
 2    compliant; right?")
 3                 MS. McCLOSKEY:  Object to form.
 4         A.    Adver- --
 5                 MS. McCLOSKEY:  Asked and answered.
 6         A.    Yes.
 7                 I -- I believe I said that advertisers
 8    are the ones who have to make the decision as to
 9    what data they can and cannot send back based off of
10    their legal team's assessment.
11         Q.    Would you be comfortable if the
12    advertiser made the decision to track appointments
13    and send that to Facebook through the pixel?
14                 MS. McCLOSKEY:  Object to form.
15                 Calls for a legal conclusion.
16                 Vague and ambiguous.
17         A.    I was not on their legal team, so I
18    can't speak to those conversations.
19                 But from my standpoint, if they have
20    decided internally that that is an appropriate event
21    to use, I would be comfortable with that being used.
22         Q.    Was there any healthcare data that a
23    healthcare advertiser could have sent Facebook that
24    you would have been uncomfortable with?
25                 MS. McCLOSKEY:  Object to form.
```

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 207

1          Q.     Sitting -- sitting here now, would it

2     concern you that Facebook received events indicating

3     patient's status from any individual?

4               MS. McCLOSKEY:  Eric, you can keep

5     repeating the question, but it seems like the

6     witness is having some trouble understanding.  You

7     might want to clarify, given that you have had it

8     read back three times.

9               MR. KAFKA:  The question still stands.

10              MS. McCLOSKEY:  You can ask for

11     clarification if you need it.

12          A.     I'll speak for myself personally, which

13     is that, by my knowledge, advertisers would make the

14     decision as to whether the -- something being sent

15     back -- or data being sent back is compliant or not.

16     So if they have made the decision that patient

17     status is compliant, I would -- I would defer to

18     their judgment.

19               And I also understand, or believe,

20     rather, that data was looked at, at an aggregate.

21               So, I don't believe, to the best of my

22     knowledge, that there were individuals who would be

23     able to say or know what Rebecca's patient status

24     is.

25               MR. KAFKA:  Let's go to what we are

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 224

1        Reporter.)

2              Q.      And do you recognize this series of

4        in the course of your employment at Facebook?

5                    MS. McCLOSKEY:  Object to form.

6              A.      Yes.  I see that.

12             A.      Yes.

13             Q.      And do you see where you respond on

14       February 17th, 2021:

18             A.      Yes.  I see that.

19             Q.      So, is it your recollection that BPM

23                    MS. McCLOSKEY:  Object to form.

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 225

████████████████████████████████████

4                    MR. KAFKA:  Let's move on to Control

5       Number -- I'm sorry, exhibit Number 86.

6                    (Whereupon, Exhibit 86, Reza E-mail,

7       was marked for identification as of this date by the

8       Reporter.)

9            Q.    And, Ms. Reza, do you see that

10      Exhibit 86 is an e-mail that you sent in the course

11      of your employment at Facebook?

12                    MS. McCLOSKEY:  Object to form.

13           A.    I don't remember the e-mail, but I do

14      see it coming from my work e-mail address.

15           Q.    Do you see Point 2 where -- well, let

16      me -- do you see Point 2 where it says:

████████████████████████████████████

20           A.    Yes.  I see that.

21           Q.    And do you see that you sent it on

22      February 4th, 2021?

23           A.    Yes.

24           Q.    Do you agree with that statement that

25      you sent to an advertiser?

CONFIDENTIAL
**CONFIDENTIAL ~ REBECCA REZA**

Page 226

1            MS. McCLOSKEY:  Object to the form.

2      A.     I think that follows the guidance that

3   I was provided, which is that the tools can be used

4   in a compliant manner but it is up to the advertiser

5   to determine --

6                THE COURT REPORTER:  I can't hear you.

7                THE WITNESS:  Where?

8                THE COURT REPORTER:  Just start over,

9   please.

10     A.     I think that follows the guidance that

11  I was provided that our Business Tools can be used

12  in a compliant manner, but it is up to the

13  advertiser to determine whether the data they are

14  sending back or how to send back data in a HIPAA

15  compliant manner.

16     Q.     And pursuant to that guidance, it was

17  your understanding that it was not Facebook's

18  obligation to determine the data they were being

19  sent was HIPAA compliant; correct?

20                MS. McCLOSKEY:  Object to form.

21                Calls for a legal conclusion.

22                Vague.

23     A.     I think there is two sides.

24                Simply because we have discussed the

25  filter before, that it is primarily and first up to

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | |
| | Case No. 22-cv-03580 |

### ERRATA SHEET FOR THE TRANSCRIPT OF THE FEBRUARY 9, 2025, DEPOSITION OF REBECCA REZA

| Page(s) | Line(s) | Change | Reason |
|---|---|---|---|
| 11 | 24 | | Mistranscription |
| 12 | 2 | | Mistranscription |
| 72 | 18 | | Typographical |
| 72 | 21 | | Typographical |
| 73 | 8 | | Typographical |
| 85 | 20 | | Mistranscription |
| 116 | 22 | | Mistranscription |
| 116 | 25 | | Mistranscription |
| 191 | 2 | | Correction |
| 197 | 23 | | Mistranscription |
| 204 | 21 | | Mistranscription |
| 210 | 2 | | Mistranscription |
| 228 | 3 | | Mistranscription |
| 229 | 7 | | Mistranscription |

## <u>CERTIFICATE OF DEPONENT</u>

I have read the foregoing transcript of my deposition and except for any corrections or changes noted on the errata sheet, I hereby subscribe to the transcript as an accurate record of the statements made by me.

_____          _____
Rebecca Reza                                                              Date

CONFIDENTIAL

Page 243

1            C E R T I F I C A T E
2

     STATE OF NEW YORK        )
3                           :  SS.:
     COUNTY OF NEW YORK       )

4

5          I, KARYN CHIUSANO, a Notary Public for and
6     within the State of New York, do hereby certify:
7          That the witness whose examination is
8     hereinbefore set forth was duly sworn and that such
9     examination is a true record of the testimony given
10    by that witness.
11         I further certify that I am not related to any
12    of the parties to this action by blood or by
13    marriage and that I am in no way interested in the
14    outcome of this matter.
15         IN WITNESS WHEREOF, I have hereunto set my hand
16    this 9th day of February, 2025.
17
18
19
                         KARYN CHIUSANO
20
21
22
23
24
25