Proposed Redacted Version of Exhibit 15 (Dkt. No. 1154-16)

# EXHIBIT 15

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:   (212) 351-4000
Facsimile:   (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:   (415) 393-8200
Facsimile:   (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 3:22-cv-03580-WHO (VKD)<br><br>CLASS ACTION<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:**   PLAINTIFFS

**RESPONDING PARTY:**    META PLATFORMS, INC.

**SET NO.:**    THREE

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules of the U.S. District for the Northern District of California ("Local Rules"), hereby provides the following responses and objections to Plaintiffs' Third Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated November 20, 2024, as follows:

## PRELIMINARY STATEMENT

1.   Meta's responses to the Interrogatories are made to the best of its current knowledge, information, belief, and understanding of the Interrogatories. Meta's factual and legal investigation of this matter is ongoing. Further, the parties have not engaged in any meet and confer regarding these

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

Interrogatories, many of which are overbroad or otherwise objectionable. Meta reserves the right to supplement or amend its responses in accordance with any agreement between the parties or should future investigation indicate that such supplementation or amendment is necessary.

2. Meta's responses to the Interrogatories are made solely for the purpose of and in relation to the above-captioned action. Each response is given subject to all appropriate objections (including, but not limited to, objections concerning privilege, competency, relevance, materiality, propriety, and admissibility). All objections are reserved and may be interposed at any time.

3. Meta's responses include only information that is within Meta's possession, custody, or control.

4. Meta incorporates by reference each and every general objection set forth below into each and every specific response. From time to time, a specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

5. Nothing contained in these Responses and Objections or provided in response to the Interrogatories consists of, or should be construed as, an admission relating to the accuracy, relevance, existence, or nonexistence of any alleged facts or information referenced in any Interrogatory.

## GENERAL OBJECTIONS

1. Meta generally objects to each Interrogatory, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties. Meta will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2. Meta generally objects to each Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action, is disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, including to the extent that any Interrogatory seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

Gibson, Dunn & Crutcher LLP

2

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

3. Meta generally objects to each Interrogatory to the extent the Interrogatory is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks information that is otherwise responsive to other specific Interrogatories, and including to the extent the Interrogatory exceeds the permissible number of interrogatories under the Federal Rules.

4. Meta generally objects to the Interrogatories, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production or identification of "every," "any" or "all" information concerning the subject matters referenced therein.

5. Meta generally objects to each Interrogatory to the extent that it embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1), and Meta generally objects that plaintiffs have already exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1) with their prior interrogatories in sets one and two, and thus all of the interrogatories in set three are improper and in violation of the Federal Rules.

6. Meta general objects to each Interrogatory to the extent it seeks information contained in documents that Meta or any other party or non-party has produced or is expected to produce in this litigation. Pursuant to Rule 33(d) of the Federal Rules, Meta refers plaintiffs to the information contained in those documents.

7. Meta generally objects to each Interrogatory, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

8. Meta generally objects to each Interrogatory to the extent the Interrogatory is premature.

**OBJECTIONS TO DEFINITIONS**

1. Meta objects to plaintiffs' definitions of "all" on the grounds that it would be unduly burdensome and disproportional to the needs of the case for Meta to identify "all" information responsive to the Interrogatory. Such definitions are overbroad and seek information that is not relevant to the subject matter of the litigation or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, and any attempt to respond would be unduly burdensome, expensive, and oppressive.

Gibson, Dunn & Crutcher LLP

3

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

2.      Meta objects to plaintiffs' definition of "Information" to the extent that plaintiffs purport to use this defined term to request the identification of documents that: (a) were prepared in anticipation of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws, and/or rules. Meta further objects to the extent that this definition purports to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable. Meta will construe this term in accordance with the Federal Rules and the Local Rules.

3.      Meta objects to plaintiffs' definition of "Facebook," "Defendant," "Meta," "You," and "Your" and its inclusion of "its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions," as overbroad and unduly burdensome to the extent the terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent plaintiffs purport to use the terms to impose obligations on Meta that go beyond the requirements of the Federal Rules and the Local Rules. Meta further objects to this definition to the extent that plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including as to Meta's subsidiaries and products not at issue in this litigation. Meta will construe the terms "Defendant," "Facebook," "You," and "Your" as follows: Meta Platforms, Inc. and its officers and employees.

4.      Meta objects to plaintiffs' definition of "Healthcare Provider web-property" as overbroad, vague, and ambiguous, including because of its use of undefined terms like "health-related advertiser vertical," ▬▬▬▬▬▬▬ "taxonomic categorization," and "Filter," and undefined phrases like "has placed into a health-related advertiser vertical" and "flagged by the Filter as relating to health." Meta further objects to this definition to the extent it encompasses entities beyond the "Covered Entities" as defined in the operative complaint. Meta also objects to this term to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action or disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information. Meta will construe the term

Gibson, Dunn & Crutcher LLP

4

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

"Healthcare Provider web-property" to refer to the list of medical provider sites that plaintiffs sent on June 21, 2023.

5.      Meta objects to plaintiffs' definition of "Meta Pixel" and its inclusion of "customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions, and any other similar collection tools."  The partis have already agreed to the scope of tools relevant to this litigation and Meta will construe these terms in accordance with that agreement.

## OBJECTIONS TO INSTRUCTIONS

1.      Meta objects to plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

2.      Meta objects to Instruction No. 1 to the extent it seeks information in the possession of any individual(s), entit(ies), or any other person(s) over which Meta exercises no control.  Meta also objects to Instruction No. 1 to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including to the extent it seeks information about Meta's affiliated entities and products not at issue in this litigation.

3.      Meta objects to Instruction No. 3 to the extent it purports to include a time period beyond those ordered by Judge DeMarchi in her June 16, 2023 Order.  *See* Dkt. 276.  For purposes of this Interrogatory, Meta will construe the past tense to include the present tense and the present tense to include the past tense only to the extent that doing so is in accordance with the time periods established by Judge DeMarchi's June 16, 2023 Order.  *See* Dkt. 276.

4.      Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner."  Meta will construe undefined terms as it understands them.

## INTERROGATORIES

**INTERROGATORY NO. 12:**

Describe in detail how Meta used Information collected from Healthcare Provider web-properties, Including a description of: the flow of such data from end-to-end in Meta's systems with identification of each Scuba, Hive, ▌ up2x, or ZippyDB table, category, use case involved; any processors or internal services that are used to analyze, categorize, associate, or transform the data

5

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

(such as the ▉ in each such table or location; how Meta used this data when creating or determining ▉ and/or user features for advertising use; and how the resulting ▉ or features are used in Meta's advertising. Include examples from each such table, category, system, processor, or internal service. To the extent these descriptions vary by time, describe the changes during the relevant period and, to the extent Meta claims that any user, device, advertiser, regulatory, or other settings impact how data is used, describe such impacts during the relevant period.

**RESPONSE TO INTERROGATORY NO. 12:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A) Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and phrases "describe in detail," "Healthcare Provider web-properties," "processors or internal services," "associate," "transform," "creating or determining," ▉ "user features," "for advertising use," and "resulting ▉ or features."

(B) Meta objects to this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome in that it directs Meta to "describe in detail" "the flow of [Information collected from Healthcare Provider web-properties] from end-to-end in Meta's systems with identification of" "each such table or location" and "examples from" a list of broad, undefined technologies and data sources.

(C) Meta objects to this Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and is disproportionate to the needs of the case, including to the extent this Interrogatory seeks information that has nothing to do with Healthcare Provider web-properties transmission of allegedly sensitive health information to Meta.

(D) Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes at least twenty-two discrete sub-parts (i.e., "the flow of such data from end-to-end in Meta's systems with identification of each" "table, category, use case" for five technologies or data sources: (1) "Scuba," (2) "Hive," (3) ▉ (4) "up2x," or (5) "ZippyDB," as well as "any processors or internal services that are used to analyze, categorize, associate, or transform

Gibson, Dunn & Crutcher LLP

6

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

the data (such as the ▮▮▮▮▮) in each such table or location," "how Meta used this data when creating . . . ▮▮▮▮▮" "how Meta used this data when . . . determining ▮▮▮▮▮" "how Meta used this data when creating . . . user features," "how Meta used this data when . . . determining . . . user features," "how the resulting ▮▮▮ . . . are used in Meta's advertising," "how the resulting . . . features are used in Meta's advertising," as well as "examples" for five groups of technologies and data sources: (1) "table," (2) "category," (3) "system," (4) "processor," and (5) "internal service," as well as how each of the above "vary by time," "the changes during the relevant period," and the "impact [on] how data is used" of five types of settings: (1) "user," (2) "device," (3) "advertiser," (4) "regulatory," and (5) "other."  Meta objects that plaintiffs have already exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

(E)     Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

Meta incorporates by reference its response to Interrogatory Nos. 6, 7, 8, and 14.  Meta takes steps to prevent developers from sending sensitive data to it.  For example, a Business Tool may be placed in Core Setup, a set of data restrictions designed to prevent the transmission of certain types of event data altogether before it can even be sent via the Meta Pixel for website events or via the Facebook SDK for app events, remove it as soon as possible after it reaches Meta's servers when sent via Conversions API.  PIXEL_HEALTH000876877.  User or device settings may also impact the data transmitted to Meta via the Business Tools.  As explained in Meta's Cookies Policy, a user's browser or device may offer settings that allow the user to choose whether browser cookies are set and to delete them.  PIXEL_HEALTH000735564.

Events transmitted by a developer to Meta via the Business Tools that are not blocked or filtered out may then be stored in various systems and data warehouses, including Hive, Up2X, and ZippyDB.  Meta engineers may configure use cases for Up2X and ZippyDB, which may be grouped by subject

Gibson, Dunn & Crutcher LLP

7

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

1  matter. There are tens of thousands of use cases configured across Up2X and ZippyDB, as well as tens
2  of thousands of Hive tables where Business Tools data may be stored.
3        Once stored, event data may be processed by ███████████████████
4  ████████████████████████████████████████████████████████████████████
5  ████████████████████████████ PIXEL_HEALTH000661116. ████████████████
6  ████████████████████████████████████████████████████████████████████
7  ██████████████████████████████████. *Id.* ████████████████████████████
8  ████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████
10 ███████████ *Id.*
11       The flow of Business Tools data through Meta's systems is further illustrated in
12 PIXEL_HEALTH000000064. Meta has also made available for inspection its Source Code and
13 configuration repositories, which includes Source Code and configuration files that reflect the flow of
14 Business Tools data through Meta's systems and its associated use. Meta incorporates by reference its
15 Source Code and configuration files made available to plaintiffs pursuant to Rule 33(d) of the Federal
16 Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from the Source
17 Code will be substantially the same for plaintiffs as it would be for Meta.
18 **INTERROGATORY NO. 13:**
19       Identify and describe all methodologies available to Meta engineers in the ordinary course of
20 business to investigate data lineage for Meta Pixel, SDK, and other Business Tool data that Meta
21 collects, Including the availability and abilities of the following:
22     a.   ████████████████████████████████;
23     b.   the ability to use a ██████ to trace how a specific event flows through Meta's systems;
24     c.   the ability to use the ████████████ tool or anything similar;
25     d.   the "discovery process" described in the publicly-available document at
26         https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity, and the
27         analysis/engineering Meta performed in support of the Off-Facebook Activity tool, similar
28         to the question asked by the Hon. Virginia K. DeMarchi in Dkt. 580; and

Gibson, Dunn & Crutcher LLP

8

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

     e. the current status of Meta's ability to track off-site Meta Pixel, SDK, and other Business tool data ingestion from end-to-end in Meta's systems, Including identifying the names of all such systems that can perform this or similar analyses, how they are used in the ordinary course of business, and whether there are applications or user interfaces available to Meta engineers to use them, similar to the question asked by the Hon. Virgina K. DeMarchi in Dkt. 580.

**RESPONSE TO INTERROGATORY NO. 13:**

     Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

     (A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and phrases "abilities," ▮ "anything similar," "track off-site Meta Pixel, SDK, and other Business tool data ingestion from end-to-end in Meta's systems," "similar to the question," "similar analyses," and "whether there are applications or user interfaces available to Meta engineers to use them."

     (B)    Meta objects to this Interrogatory as overbroad, unduly burdensome, and improper discovery on discovery in that it seeks "all methodologies available to Meta engineers in the ordinary course of business to investigate data lineage for Meta Pixel, SDK, and other Business Tool data that Meta collects." *See Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Discovery into another party's discovery process is disfavored." (internal citation omitted)); *Uschold v. Carriage Servs., Inc.*, No. 17CV04424JSWEDL, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019) ("[D]iscovery on discovery . . . is not permissible.").

     (C)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes sixteen discrete sub-parts (i.e., the availability and abilities of nine technologies: (1) ▮ (4) "any successor systems," (5) ▮ to trace how a specific event flows through Meta's systems," (6) ▮ (7) "anything similar, (8) "the 'discovery process' described in the publicly-available document at

9

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity," (9) "the analysis/engineering Meta performed in support of the Off-Facebook Activity tool," as well as "the current status of Meta's ability to track offsite . . . data ingestion from end-to-end in Meta's systems from three Business Tool groups: (1) "Meta Pixel," (2) "SDK," and (3) "other Business tool[s]," as well as "identifying the names of all such systems that can perform this" analysis, "identifying the names of all such systems that can perform . . . similar analyses," "how they are used in the ordinary course of business," and "whether there are applications or user interfaces available to Meta engineers to use them."

(D)    Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

The most comprehensive way to trace the full data lineage associated with Business Tool data received from a given developer is by reviewing the source code. Although there are underlying lineage systems at Meta that attempt to track associations between tables—aspects of which can be accessed via Daiquery and related systems—Meta's data lineage frameworks operate at a higher level of generality (e.g., tracking overall table relationships) and are subject to many limitations. This lineage data can be thought of as "dependencies"—i.e., for a given table, on what other tables does it depend for data, in whole or in part.

Because Meta's lineage systems are limited, they cannot be used to determine the scope of the data contained within any particular Hive tables or whether that data is relevant to this litigation. The only way to confirm whether a data source is relevant and non-duplicative of another data source is for

Meta ███████████████████████████████████████████████████████████████
███████████████████████████████████████████ Nor does Meta ██████████
███████████████████████████████████████████████████████████████████

Gibson, Dunn & Crutcher LLP

10

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

1  And table associations depend on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
2  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
3  ▇▇▇▇▇▇▇▇▇▇▇

4  Similarly, Meta cannot ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to identify all Hive
5  tables with that information. A ▇▇▇▇ is a unique identifier that, when present, can be used to
6  correlate data in different sources that is related. An ▇▇▇▇▇▇ is a unique identifier for an event
7  or batch of events. PIXEL_HEALTH000300954. Whether or not ▇▇▇▇ (or ▇▇▇▇▇ is
8  included in a data source is an ad hoc decision, so whether such an ID can be used to correlate data in
9  different sources is a case-by-case determination.

10  As Meta has explained previously, Daiquery is the most efficient way to use Meta's lineage
11  systems, by querying them via Daiquery to produce upstream or downstream table information. The
12  other tools or technologies referenced in this Interrogatory are either not as efficient or cannot be used
13  to access table lineage data.[1] For example:

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ provides the same underlying table lineage data as Daiquery.

- ▇▇▇▇ For the purpose of responding to this Interrogatory, Meta will construe the term ▇▇▇▇ to refer to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is a framework that Meta previously used to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ was deprecated in 2022, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. To the extent ▇▇▇▇▇▇▇▇▇▇ can be considered to have a successor framework, that successor framework is Daiquery.

- ▇▇▇▇ is a tool that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in data transmitted to Meta. PIXEL_HEALTH000766632. Though a user identifier is not, on its own, sensitive data, Meta uses ▇▇ to err on the

---

[1] Meta previously produced to plaintiffs documents concerning the "discovery process" undertaken as part of the process to develop the Off-Facebook Activity tool. Meta incorporates by reference these documents pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from these documents will be substantially the same for plaintiffs as it would be for Meta. See PIXEL_HEALTH000766433; PIXEL_HEALTH000766361; PIXEL_HEALTH000766369; PIXEL_HEALTH000766370.

11

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

1  side of overinclusion as part of its integrity efforts to identify any potentially sensitive
2  data transmitted to Meta. *Id.* ▉ labels include ▉
3  ▉, and ▉, as
4  well as health category terms such as health and blood type.
5  PIXEL_HEALTH000565826.
6  • ▉ For the purpose of responding to this Interrogatory, Meta will construe the term
7  ▉ to refer to ▉. As its name suggests, the goal of ▉
8  ▉
9  ▉ PIXEL_HEALTH00029599.

**INTERROGATORY NO. 14:**

Describe all details about the creation and implementation of Core Setup, described in the Meta Business Help Center at https://www.facebook.com/business/help/124742407297678, Including the design process, when and whether Meta imposed Core Setup on healthcare providers and how (including how it selected health-related web-properties on which to impose Core Setup) and the impact of Core Setup on Meta's collection and use of Information from Healthcare Provider web-properties Including any impact on the Filter, ▉, up2x, ▉ user features, Hive tables with ▉ or user features, ▉ categorizations, ▉, ZippyDB, ▉ crawlers used to derive ▉ categories or ▉ for web-properties or pages; the SDK, CAPI, Custom Audiences, Lookalike Audiences, and any server-to-server transmissions.

**RESPONSE TO INTERROGATORY NO. 14:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A) Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and phrases "design process," "imposed," "Filter," ▉ "user features," ▉ ▉ "derive," ▉ and "any server-to-server transmissions."

Gibson, Dunn & Crutcher LLP

12

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

(B)     Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks "all details about the creation and implementation of Core Setup."

(C)     Meta objects that this Interrogatory is duplicative of the recently-served Request for Production 251(1).[2]

(D)     Meta objects to that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes thirty-one discrete sub-parts (i.e., "the design process" for Core Setup," "when and whether Meta imposed Core Setup on healthcare providers," "how" "Meta imposed Core Setup on healthcare providers," "how it selected health-related web-properties on which to impose Core Setup," "the impact of Core Setup on Meta's collection and use of Information from Healthcare Provider web-properties," and "any impact" on twenty-six technologies or data sources: (1) "the Filter," (2) ██████, (3) ██████, (4) ██████, (5) "up2x," (6) ██████, 7) "user features," (8) "Hive tables with ██████ (9) "Hive tables with . . . user features," (10) ██████ (11) ██████ (12) "ZippyDB," (13) ██████ (14) "crawlers used to derive ██████ . . . categories . . . for web-properties," (15) "crawlers used to derive ██████ . . . categories . . . for . . . pages," (16) "crawlers used to derive ██████ for web-properties," (17) "crawlers used to derive ██████ for . . . pages," (18) "crawlers used to derive . . . ██████ categories . . . for web-properties," (19) "crawlers used to derive . . . ██████ categories . . . for . . . pages," (20) "crawlers used to derive . . . ██████ for web-properties," (21) "crawlers used to derive . . . ██████ for . . . pages," (22) "the SDK," (23) "CAPI," (24) "Custom Audiences," (25) "Lookalike Audiences," (26) "any server-to-server transmissions").

(E)     Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

---

[2] The tenth set of Requests for Production included nine RFPs numbered "251." For the purposes of this objection, the referenced RFP is the first RFP numbered "251."

13

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

Gibson, Dunn & Crutcher LLP

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

In Q3 2023, Meta began a limited launch of an enhancement referred to as "Core Setup," that is designed to prevent the transmission of certain types of event data altogether before it can even be sent via the Meta Pixel for website events or Facebook SDK for app events, and remove it as soon as possible after it reaches Meta's servers when sent via Conversions API. Core Setup is a "set of data restrictions that can be applied to a Meta Business Tool by [a developer] or by Meta." PIXEL_HEALTH000876877. A developer can turn on the Core Setup data restrictions themselves through an option in Meta Events Manager. *Id.*; *see also* PIXEL_HEALTH000873919. "While not a substitute for [a developer's] own compliance mechanisms, core setup's data restrictions can help prevent the sharing of information that may not be allowed under [the] Meta Business Tools Terms." PIXEL_HEALTH000876877.

Meta may turn on the Core Setup data restrictions for a Business Tool if Meta "has determined that the data source falls under a data source category that requires core setup's data restrictions." *Id.* Meta works to categorize data sources, such as websites and apps, based on the topics related to the data source and the products and/or services provided. PIXEL_HEALTH000876879. Certain categories come with restrictions, including health and wellness if the data source "[i]s associated with medical conditions, specific health statuses, or provider/patient relationships (for example, a patient portal or wellness tracker for depression)." PIXEL_HEALTH000876878. "When a data source is categorized under a category with restrictions, [Meta] may limit or fully restrict the ability to share event data with us via the Meta Business Tools." *Id.* Developers can review the categories assigned to their data sources in Meta Event Manager, and can request a review if they believe their data sources have not been categorized accurately. PIXEL_HEALTH000876879.

In addition, with the launch of Meta's "Business Tools Responsibility Program" in Q2 2024, an advertiser's Meta Business Tools ID(s) may be enrolled automatically in Core Setup if the advertiser repeatedly sends data that meets Meta's potentially sensitive data detection thresholds. As discussed in Meta's response to Interrogatory No. 8, during the Relevant Time Period, when Meta's integrity systems detected and filtered out potentially sensitive health information sent by advertisers via the

Gibson, Dunn & Crutcher LLP

14

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

Business Tools, Meta notified third-party advertisers accordingly (1) via email; and (2) in Meta's developer dashboard, Events Manager. A developer who has received multiple notifications that the data they are sharing potentially goes against the Meta Business Tools Terms may have Core Setup's data restrictions turned on for their Business Tool(s). *Id.*

Core Setup restricts the transmission of custom parameters. If a developer's parameter is not on Meta's list of standard parameters—fields Meta has predefined for advertisers to include with their events (available at https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/custom-data)—it is considered a custom parameter. PIXEL_HEALTH000876877. Core Setup also restricts and prevents the transmission of anything in a URL following the domain. For example, the URL https://jaspersmarket.com/clothes/summer/dresses?item=10 would be shortened to "https://jaspersmarket.com/". *Id.* If a Business Tool has Core Setup's data restrictions applied, "Custom audiences may not work as expected if they rely on custom parameters or anything in a URL after the domain." *Id.* For example, Core Setup may restrict the availability of custom audiences that rely on custom parameters or URLs in their rules.

DATED: December 20, 2024

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant Meta Platforms, Inc.*

Gibson, Dunn & Crutcher LLP

15

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

**VERIFICATION**

I, Tobias Wooldridge, a software engineer at Meta Platforms, Inc. ("Meta"), am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Responses and Objections to Plaintiffs' Third Set of Interrogatories. The responses were prepared by Meta's counsel with assistance from Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Responses and Objections to Plaintiffs' Third Set Interrogatories are true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on December 20, 2024

*Tobias Wooldridge*
_____

Gibson, Dunn & Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)