Jason 'Jay' Barnes (admitted *pro hac vice*)
*jaybarnes@simmonsfirm.com*
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel: 212-784-6400
Fax: 212-213-5949

Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel: 310-854-4444
Fax: 310-854-0812

*Attorneys for Plaintiffs and the Proposed Classes*

Geoffrey Graber, State Bar No. 211547
*ggraber@cohenmilstein.com*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699

Beth E. Terrell, State Bar No. 178181
*bterrell@terrellmarshall.com*
**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.: 206-816-6603
Fax: 206-319-5450

Andre M. Mura, State Bar No. 298541
*amm@classlawgroup.com*
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.: 510-350-9700
Fax: 510-350-9701

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE META PIXEL HEALTHCARE LITIGATION

This Document Relates to:

All Actions.

**Case No. 3:22-cv-3580-WHO (VKD)**

CLASS ACTION

**PLAINTIFFS' STATEMENT IN SUPPORT OF THIRD PARTY MOTION TO UNSEAL**

Date: December 3, 2025
Time: 2:00 p.m.
Place: Public Zoom Hearing
Judge: Hon. William H. Orrick III

## I. INTRODUCTION

The non-party motion to unseal highlights two reasons why the Court should deny Meta's attempts to seal core facts in this case. First, this case involves matters of great public significance, including the fact that the Pixel remains active on [redacted] of healthcare provider domains in the United States. Second, there are hundreds of collateral state and federal cases for which continued secrecy about the Pixel stands in the way of rightful decisions of those cases.

## II. STATEMENT OF FACTS

In cases filed throughout the country about the Meta Pixel, Meta successfully moved to sever claims against Meta from claims against healthcare providers. As a result, the claims against Meta for the use of the Pixel on healthcare provider websites have been consolidated in front of this court, while the claims against the healthcare providers have proceeded in front of separate courts across the country. *See, e.g.*, Dkt. 139 (order severing claims against healthcare providers from this action); *Rose v. Meta Platforms, Inc.*, No. 3:23-cv-5500 (C.D. Cal.), Dkt. 25 (order granting joint stipulation to sever and transfer claims against Meta to this action while retaining claims against healthcare provider); Dkt. 366 (order relating *Rose* to this action). Public records show that there are hundreds of pending cases against healthcare providers in federal and state courts involving the Pixel.

For litigants in cases where Meta is not a defendant, knowledge about the Pixel is limited to Meta's public statements or what parties can obtain through third-party discovery. For the [redacted] healthcare provider domains where the Pixel is still firing events, knowledge is limited to Meta's public statements. See Barnes Decl. ¶ 4 (describing current Pixel activity).

However, Meta's public statements have been inaccurate. For example, in December 2022, this Court denied Plaintiffs' motion for preliminary injunctive relief, expressly stating that its denial was "based on Meta's evidence that it [was] doing all it can to minimize the problems raised by Plaintiffs." Dkt. 159 at 11. Specifically, the Court stated that Meta's Tobias Wooldridge had "explained that Meta designed its existing filtering mechanism to detect and filter out potentially sensitive data transmitted via the Pixel," which, according to Meta, were "the most effective and feasible methods' for Meta to detect and prevent the receipt of potentially sensitive information at scale." *Id.* at 31. Meta made similar claims to the public, its FTC auditor, Congress, and a state

attorney general. See Class Cert. Exhibits 14, 69-71, 81, 86.

But Meta's early defenses and public claims were not true.

When Meta intercepts a communication, it sends the data to an identity matching system to match the event to a Facebook user account. CC Ex. 13 at 14, Shafiq Rep. ¶¶ 102-115. The basic details of Meta's identity matching remain secret. For example, in *ERC*, the Court found that "Meta can match data to a Meta account '*only if* the visitor is logged into their Meta account at the time they are visiting the website.'" See *Doe v. Eating Recovery Center*, Dkt. No. 167-3 at 3. [redacted] Shafiq Rep. ¶¶ 80-84. Similarly, hospitals routinely insist that third-party cookie blockers prevent Meta from being able to match an event to a person's Facebook account. Barnes Decl. ¶ 2. [redacted] Shafiq Rep. ¶¶ 95-97.

[redacted] (Shafiq Rep. ¶ 103) [redacted] (CC Ex. 66, Wooldridge Dep. at 198:14-15) or [redacted], which was specifically [redacted] (CC Ex. 2, Hashmi ¶¶ 76-77). Instead, the Filter only [redacted], and [redacted] CC Ex. 17, 30(b)(6) Dep. at 98:17-100:13. [redacted] (Hashmi ¶¶ 99-100), [redacted]. Meta also [redacted]

[redacted] Hashmi ¶¶ 101-103. [redacted] Hashmi ¶¶ 104-105. Meta ultimately uses [redacted] Hashmi ¶¶ 108-110.

To put this in a real-world context, when a patient (1) went to www.hartfordhospital.org; (2) searched for "ulcerative colitis;" (3) clicked on a result to obtain information about such UC treatment, e.g. hartfordhospital.org/services/digestive-health/conditions-we-treat/colorectal-small-bowel-disorders/ulcerative-colitis; (4) clicked to "find a doctor;" (5) clicked to "schedule an appointment," and then (6) clicked a button that said "Click here to access MyChartPLUS," Meta would have [redacted]

| # | URL / Button Click Content | [redacted] | | [redacted] |
|---|---|---|---|---|
| 1 | hartfordhospital.org | [redacted] | | [redacted] |
| 2 | hartfordhospital.org/q=[REMOVED] | [redacted] | | [redacted] |
| 3 | /Conditions-We-Treat/…/Ulcerative-Colitis | [redacted] | | [redacted] |
| 4 | Click to Find a Doctor | [redacted] | | [redacted] |
| 5 | Click to schedule an appointment. | [redacted] | | [redacted] |
| 6 | Click here to access MyChartPLUS | [redacted] | | [redacted] |
| | | | [redacted] | [redacted] |

[redacted] The Expert Report of Richard Smith (filed Aug. 25, 2022) provides an example, in which "within two hours" of his communication about Ulcerative Colitis at hartfordhospital.org, he was served an ad about ulcerative colitis from a non-healthcare provider in his Facebook video feed. Dkt. 49, ¶¶ 189-190.

This is important information for the public, litigants in other cases, healthcare providers, Congress, Meta's FTC auditor, and other regulators to know about the Pixel. However, it appears that Meta did not produce this information in the *Eating Recovery Center* or *Meta Tax* cases. In *ERC*, the Court held that the Filter was not "an effort to understand[] the meaning of the communication," (*ERC* SJ Order at 9), but there is no mention of [redacted] Similarly, the pending motion for class certification and Meta's response in the *Meta Tax* case makes no mention of [redacted]. See *In re Meta Pixel Tax Filing Cases*, Case No. 5:22-cv-07557-PCP, Dkt. 218 (Plaintiffs' Motion for Class Certification); Dkt. 239 (Meta Opposition to Class Certification).

## III. ARGUMENT

The burden on a motion to seal documents related to a motion for class certification requires "sufficiently compelling reasons" to justify sealing that overcome the "strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *Davidson v. Apple, Inc.*, 2018 WL 11352097, at *2 (N.D. Cal. Dec. 17, 2018). "[A] litigant who might be embarrassed, incriminated, or exposed to litigation through dissemination of materials is not, without more, entitled to the court's protection." *Foltz*, 331 F.3d at 1136–37.

The non-party motion highlights how Meta has not met its heavy burden in two ways. *First*, this case involves significant public events. *Second*, there are hundreds of collateral cases in process for which the sealed information at issue is highly relevant and otherwise unattainable and maintaining the sealing of these records will prejudice the rightful decisions in those cases.

1. <u>This Case Involves Significant Public Events, Which Raises the Public Interest</u>

In most cases, the "strong presumption" is based on the general interest "for openness in a democratic society." *California ex. rel. Lockyer v. Safeway, Inc.*, 355 F.Supp.2d 1111, 1124 (C.D. Cal. 2025). However, the Ninth Circuit has also explained that the "strong presumption" is to "promot[e] the public's understanding of … significant public events." *Valley Broad. Co. v. U.S. Dist. Ct. for Dist. of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986). As such, "the interest in access to court proceedings in general may be asserted more forcefully when the litigation involves matters of significant public concern." *Cohen v. Trump*, 2016 WL 3036302, at *6 (S.D. Cal. May 27, 2016). It is also heightened when there is a "plethora [of] general public scrutiny." *Apple v. Samsung Elec. Co. Ltd*, 2012 WL 4936595, at *2 (N.D. Cal. Oct. 17, 2012). This includes cases that "inherently possess public significance" such as "a significant legal issue that will shape business practices in the future." *FTC v. AbbView Prods., LLC*, 713 F.3d 54, 71 (11th Cir. 2013).

Here, the Court has previously explained that "the public has an interest in privacy in general and health information in particular." Dkt. 159 at 27, 33. And there can be no reasonable dispute that the Pixel is a matter of "significant public concern," involving significant public scrutiny: Meta's conduct has drawn scrutiny from Congress, its FTC auditor, state Attorneys General, and the United States Department of Health and Human Services. *See, e.g.*, Dkt. 1176-2 at 12. The non-

party motion demonstrates that this case involves "significant public events" with inherent significance that will shape business practices of potentially every healthcare provider in the United States and impact the rights of millions of American patients. Meta's continued interception of Pixel data from healthcare provider domains in the United States shows this an ongoing issue for which public disclosure of the truth is vital.

2. Plaintiffs in Collateral Cases Should Have Access to the Important Discovery

The Ninth Circuit also "strongly favors access to discovery materials to the needs of parties engaged in collateral litigation," providing another reason for the Court to deny Meta's motions to seal. *Foltz*, 331 F.3d at 1131. The *ERC* case is just one of hundreds against healthcare providers regarding Pixel activity. Meta was initially a defendant in several of these—but claims against Meta were severed, related, and consolidated here while plaintiffs proceeded against the healthcare providers alone. Those plaintiffs have no plausible way of obtaining evidence, through Rule 45 alone, of Meta's secret [redacted].

In this case, it is no secret that discovery has been hard fought, involving numerous motions to compel; hundreds of hours of source code review; hundreds of RFPs; ten (and counting) 30(b)(1) depositions; and countless discovery conferences and letters. Plaintiffs submit that it would be impossible for any litigant to obtain this key information in a case where Meta is not a party. Barnes Decl. ¶ 4. Equally relevant, the class certification briefing in the *Meta Tax* case strongly suggests that Meta withheld [redacted] discovery in a case where it was a defendant.

Regardless of the case, Plaintiffs respectfully submit that other courts and litigants should have access to the same sets of facts about the Pixel. Meta's attempt to seal the core facts in this case significantly prejudices plaintiffs in other actions because it "threaten[s] to interfere with the rightful decision" of those collateral cases. See *Anheuser-Busch, Inc. v. Nat. Bev. Dist.*, 69 F.3d 337, 348 (9th Cir. 1995) (describing prejudice inquiry).[1] So too should healthcare providers have access to the truth about how the Pixel works, rather than the false and incomplete public statements that Meta makes. As such, Meta's motions to seal should be denied and the Non-Party motion granted.

[1] Although *Anheuser-Busch* analyzes prejudice in a different context (sanctions), the same logic applies for the Court to deny Meta's attempts to seal here.

DATED: November 18, 2025

Respectfully submitted,

By: */s/ Jason "Jay" Barnes*

**SIMMONS HANLY CONROY LLP**
Jason 'Jay' Barnes (admitted *pro hac vice*)
*jaybarnes@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel: 212-784-6400
Fax: 212-213-5949

By: */s/ Geoffrey Graber*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Geoffrey Graber, State Bar No. 211547
*ggraber@cohenmilstein.com*
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699

**GIBBS MURA LLP**
Andre M. Mura, State Bar No. 298541
*amm@classlawgroup.com*
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.: 510-350-9700
Fax: 510-350-9701

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel: 310-854-4444
Fax: 310-854-0812

**TERRELL MARSHALL LAW GROUP PLLC**
Beth E. Terrell, State Bar No. 178181
*bterrell@terrellmarshall.com*
936 North 34th Street, Suite 300
Seattle, WA 98103
Tel.: 206-816-6603
Fax: 206-319-5450

*Attorneys for Plaintiffs and the Proposed Classes*

**SIGNATURE ATTESTATION**

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.

*<u>/s/ Geoffrey Graber</u>*