# Proposed Revised Redacted Version of Appendix Volume 7 (Dkt. No. 1251-8)

1   **GIBSON, DUNN & CRUTCHER LLP**     **LATHAM & WATKINS LLP**
    LAUREN R. GOLDMAN (*pro hac vice*)    ANDREW B. CLUBOK (*pro hac vice*)
2   lgoldman@gibsondunn.com              andrew.clubok@lw.com
    DARCY C. HARRIS (*pro hac vice*)      555 Eleventh St., NW, Suite 1000
3   dharris@gibsondunn.com               Washington, D.C. 20004-1304
    200 Park Avenue                      Telephone:   (202) 637-2200
4   New York, NY 10166-0193
    Telephone:   (212) 351-4000          MELANIE M. BLUNSCHI, SBN 234264
5   Facsimile:   (212) 351-4035          melanie.blunschi@lw.com
                                         KRISTIN I. SHEFFIELD-WHITEHEAD,
6   ELIZABETH K. MCCLOSKEY, SBN          SBN 304635
    268184                               kristin.whitehead@lw.com
7   emccloskey@gibsondunn.com            505 Montgomery Street, Suite 2000
    ABIGAIL A. BARRERA, SBN 301746       San Francisco, CA 94111
8   abarrera@gibsondunn.com              Telephone:   (415) 395-8129
    One Embarcadero Center, Suite 2600   Facsimile:   (415) 393-8095
9   San Francisco, CA 94111-3715
    Telephone:   (415) 393-8200
10  Facsimile:   (415) 393-8306

11

12  *Attorneys for Defendant Meta Platforms, Inc.*

13

14                  **UNITED STATES DISTRICT COURT**

15                 **NORTHERN DISTRICT OF CALIFORNIA**

16                      **SAN FRANCISCO DIVISION**

17   IN RE META PIXEL HEALTHCARE          Case No. 3:22-cv-03580-WHO
     LITIGATION
18                                        **APPENDIX OF EVIDENCE IN SUPPORT**
                                          **OF DEFENDANT META PLATFORMS,**
19   This Document Relates to             **INC.'S OPPOSITION TO PLAINTIFFS'**
                                          **MOTION FOR CLASS CERTIFICATION**
20   All Actions
                                          **VOLUME 7 – PAGE NOS. 1627-2399**
21

22                                        **FILED UNDER SEAL**

23
                                           Date:  April 22, 2026
24                                         Time:  2:00 p.m.
                                           Courtroom 2, 17th Floor
25
                                           Date Action Filed: June 17, 2022
26                                         Honorable William H. Orrick III

27

28

---

1

## APPENDIX INDEX

2

| Document | Page Numbers |
|---|---|
| **Volume 1** | |
| **Declaration of Tobias Wooldridge** | 1–17 |
| **Exhibit 1** – Meta's Business Tools Terms in effect from June 17, 2018 through December 9, 2025 | 25–75 |
| **Exhibit 2** – Meta's Customer List Custom Audiences Terms in effect from June 17, 2018 through December 9, 2025 | 76–85 |
| **Volume 2** | |
| **Exhibit 3** – Meta's Commercial Terms in effect from June 17, 2018 through December 9, 2025 | 86–128 |
| **Exhibit 4** – *About prohibited information* (PIXEL_HEALTH000735684) | 129–133 |
| **Declaration of Daniel Rampton** | 133–137 |
| **Declaration of Christopher Weil** | 138–142 |
| **Declaration of Abigail A. Barrera** | 143–173 |
| **Exhibit 5** – Excerpts from the deposition of Jenny Streets on March 25, 2025 | 176–183 |
| **Exhibit 6** – Excerpts from the deposition of Plaintiff Jane Doe IX on March 28, 2025 | 184–230 |
| **Exhibit 7** – Excerpts from the deposition of Plaintiff John Doe III on April 4, 2025 | 231–275 |
| **Exhibit 8** – Excerpts from the deposition of Plaintiff Jane Doe I on April 17, 2025 | 276–324 |
| **Exhibit 9** – Excerpts from the deposition of Plaintiff Jane Doe X on April 18, 2025 | 325–431 |
| **Exhibit 10** – Excerpts from the deposition of Plaintiff Jane Doe IV on April 22, 2025 | 432–475 |
| **Exhibit 11** – Excerpts from the deposition of Plaintiff Jane Doe V on April 30, 2025 | 476–554 |
| **Exhibit 12** – Excerpts from the deposition of Plaintiff John Doe II on May 1, 2025 | 555–598 |
| **Exhibit 13** – Excerpts from the deposition of plaintiffs' expert Hal Singer on October 24, 2025 | 599–605 |
| **Exhibit 14** – Excerpts from the deposition of plaintiffs' expert Kathleen Vohs on October 28, 2025 | 607–617 |
| **Exhibit 15** – Excerpts from the deposition of plaintiffs' expert Richard Smith on November 3, 2025 | 618–633 |
| **Exhibit 16** – Excerpts from the deposition of plaintiffs' expert Todd Zigrang on November 6, 2025 | 634–639 |
| **Exhibit 17** – Excerpts from the deposition of plaintiffs' expert Zubair Shafiq on November 19, 2025 | 640–648 |

i

| **Document** | **Page Numbers** |
|---|---|
| **Exhibit 18** – Meta's Terms of Service, effective April 19, 2018 (PIXEL_HEALTH000415905) | 649–664 |
| **Volume 3** | |
| **Exhibit 19** – Meta's Terms of Service, effective July 31, 2019 (PIXEL_HEALTH000414961) | 665–684 |
| **Exhibit 20** – Meta's Terms of Service, effective October 1, 2020 (PIXEL_HEALTH000416719) | 685–695 |
| **Exhibit 21** – Meta's Terms of Service, effective October 22, 2020 (PIXEL_HEALTH000416895) | 696–708 |
| **Exhibit 22** – Meta's Terms of Service, effective January 1, 2022 (PIXEL_HEALTH000418746) | 709–721 |
| **Exhibit 23** – Meta's Terms of Service, effective July 26, 2022 (PIXEL_HEALTH000419931) | 722–739 |
| **Exhibit 24** – Meta's Terms of Service, effective January 1, 2025 | 740–753 |
| **Exhibit 25** – Meta's Data Policy, effective September 29, 2016 (PIXEL_HEALTH000414004) | 754–759 |
| **Exhibit 26** – Meta's Data Policy, effective August 21, 2020 (PIXEL_HEALTH000416644) | 760–769 |
| **Volume 4** | |
| **Exhibit 27** – Meta's Data Policy, effective January 11, 2021 (PIXEL_HEALTH000417167) | 770–778 |
| **Exhibit 28** – Meta's Data Policy, effective January 4, 2022 (PIXEL_HEALTH000419237) | 779–788 |
| **Exhibit 29** – Meta's Privacy Policy, effective July 26, 2022 | 789–866 |
| **Exhibit 30** – Meta's Privacy Policy, effective January 1, 2023 | 867–944 |
| **Exhibit 31** – Meta's Privacy Policy, effective June 15, 2023 | 945–1044 |
| **Exhibit 32** – Meta's Privacy Policy, effective December 27, 2023 | 1045–1144 |
| **Exhibit 33** – Meta's Privacy Policy, effective June 26, 2024 | 1145–1245 |
| **Exhibit 34** – Meta's Privacy Policy, effective November 14, 2024 | 1246–1338 |
| **Exhibit 35** – Meta's Privacy Policy, effective June 16, 2025 | 1339–1371 |
| **Exhibit 36** – Meta's Cookies Policy, effective April 4, 2018 (PIXEL_HEALTH000415857) | 1372–1380 |
| **Exhibit 37** – Meta's Cookies Policy, effective October 5, 2020 (PIXEL_HEALTH000416815) | 1381–1386 |
| **Exhibit 38** – Meta's Cookies Policy, effective June 23, 2021 (PIXEL_HEALTH000418433) | 1387–1397 |
| **Exhibit 39** – Meta's Cookies Policy, effective January 4, 2022 (PIXEL_HEALTH000419230) | 1398–1404 |
| **Exhibit 40** – Meta's Cookies Policy, effective October 5, 2022 (PIXEL_HEALTH000421435) | 1405–1411 |
| **Volume 5** | |
| **Exhibit 41** – Meta's Cookies Policy, effective June 16, 2023 | 1412–1423 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 42** – Meta's Cookies Policy, effective December 12, 2023 | 1423–1438 |
| **Exhibit 43** – Zoomlite Meta Case Study (PIXEL_HEALTH001247780) | 1439–1443 |
| **Exhibit 44** – Braccialetti Aua Meta Case Study (PIXEL_HEALTH001247784) | 1444–1447 |
| **Exhibit 45** – Karla and Co. Meta Case Study (PIXEL_HEALTH001247787) | 1448–1452 |
| **Exhibit 46** – Partner AnalyticaHouse + Advertiser Ipekyol Meta Case Study (PIXEL_HEALTH001247796) | 1453–1456 |
| **Exhibit 47** – Partner Goodway Group + Advertiser TACORI Meta Case Study (PIXEL_HEALTH001247799) | 1457–1460 |
| **Exhibit 48** – Partner Roas Hunter + Advertiser Bruna Meta Case Study (PIXEL_HEALTH001247802) | 1461–1464 |
| **Exhibit 49** – Partner Yatter + Advertiser StreamYard Meta Case Study (PIXEL_HEALTH001247805) | 1465–1468 |
| **Exhibit 50** – Partner Apache Digital, Part of LLYC + Advertiser Havaianas Meta Case Study (PIXEL_HEALTH001247808) | 1469–1472 |
| **Exhibit 51** – Fossil Meta Case Study (PIXEL_HEALTH001247820) | 1473–1476 |
| **Exhibit 52** – Hyundai Motor America Meta Case Study (PIXEL_HEALTH001247823) | 1477–1480 |
| **Exhibit 53** – Wind Creek Bethlehem Meta Case Study (PIXEL_HEALTH001247829) | 1481–1484 |
| **Exhibit 54** – RIMOWA Meta Case Study (PIXEL_HEALTH001247832) | 1485–1488 |
| **Exhibit 55** – Partner Disruptive Digital + Advertiser Yardzen Meta Case Study (PIXEL_HEALTH001247835) | 1489–1492 |
| **Exhibit 56** – Chappell Digital Marketing + Oak & Eden Meta Case Study (PIXEL_HEALTH001247841) | 1493–1496 |
| **Exhibit 57** – Partner Elogia + Advertiser Sophie & Lucie Meta Case Study (PIXEL_HEALTH001247844) | 1497–1500 |
| **Exhibit 58** – Partner Adyogi + Advertiser Kushal's Fashion Jewelry Meta Case Study (PIXEL_HEALTH001247847) | 1501–1504 |
| **Exhibit 59** – Hourglass Cosmetics Meta Case Study (PIXEL_HEALTH001247850) | 1505–1508 |
| **Exhibit 60** – *About Core Setup* (PIXEL_HEALTH000876877) | 1509–1510 |
| **Volume 6** | |
| **Exhibit 61** – Data Use & Security Guide for Meta's Business Tools and Customer List Custom Audiences (PIXEL_HEALTH000626095) | 1514–1626 |
| **Volume 7** | |
| **Exhibit 62** – Email with subject line "Re: Your pixel's events are potentially violating Facebook's Business Tools Terms," dated September 14, 2020 (PIXEL_HEALTH000012725) | 1627–1632 |

iii

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 63** – Email with subject line "Re: Netsertive \| Pixel Event Flag," dated October 22, 2020 (PIXEL_HEALTH000154142) | 1633–1644 |
| **Exhibit 64** – Email with subject line "Your pixel's events are potentially violating Facebook's Business Tools Terms," dated October 22, 2020 (PIXEL_HEALTH000019003) | 1645–1647 |
| **Exhibit 65** – Email with subject line "Your pixel's events are potentially violating Facebook's Business Tools Terms," dated November 4, 2020 (PIXEL_HEALTH000003500) | 1648–1652 |
| **Exhibit 66** – Email with subject line "Re: Question on behalf of Client regarding Pixels," dated November 12, 2020 (PIXEL_HEALTH000013275) | 1653–1657 |
| **Exhibit 67** – Email with subject line "Your pixel's events are potentially violating Facebook's Business Tools Terms," dated November 18, 2020 (PIXEL_HEALTH000019168) | 1658–1661 |
| **Exhibit 68** – Email with subject line "Re: Urgent Q: Hashing," dated November 18, 2022 (PIXEL_HEALTH000507938) | 1662–1664 |
| **Exhibit 69** – 2020.08.04 "MBG: Signals Integrity Questions & Feedback" (PIXEL_HEALTH000216392) | 1665–1667 |
| **Exhibit 70** – 2023.09.25 "SHARING HEALTH DATA?" post in MBG: Pixel Questions & Feedback (PIXEL_HEALTH001238832) | 1668–1671 |
| **Exhibit 71** – 2023.10.16 post from Nick Coccia MBG: Pixel Questions & Feedback (PIXEL_HEALTH001238839) | 1672–1674 |
| **Exhibit 72 –** 2023.11.13 Post from Sinead Collins in MBG: Pixel Questions & Feedback (PIXEL_HEALTH001238841) | 1675–1679 |
| **Exhibit 73** – 2024.01.30 Post from Camille Peggs-Dargan in MBG: Pixel Questions & Feedback (PIXEL_HEALTH001238846) | 1680–1683 |
| **Exhibit 74** – 2024.08.29 Post from Emma Fabre in MBG: Signals Integrity Questions & Feedback (PIXEL_HEALTH001238751) | 1684–1686 |
| **Exhibit 75** – "MBG: Pixel Questions & Feedback" dated January 11 (PIXEL_HEALTH000218754) | 1687–1688 |
| **Exhibit 76** – "MBG: Pixel Questions & Feedback" dated April 6 (PIXEL_HEALTH000218946) | 1689–1690 |
| **Exhibit 77** – January 29 Post from Samantha Ellis in Third Party (3P) Additional Data Sharing Restrictions (PIXEL_HEALTH001238827) | 1691–1696 |
| **Exhibit 78** – Defendant Meta Platform, Inc.'s Meta's First Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, dated August 18, 2023 | 1697–1705 |
| **Exhibit 79** – Defendant Meta Platform, Inc.'s Meta's Third Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, dated October 27, 2023 | 1706–1714 |
| **Exhibit 80** – Defendant Meta Platform, Inc.'s Meta's Sixth Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, dated November 22, 2024 | 1715–1721 |

iv

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 81** – Defendant Meta Platform, Inc.'s Eighth Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, dated August 7, 2025 | 1722–1729 |
| **Exhibit 82** – Defendant Meta Platform, Inc.'s Meta's Ninth Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, dated October 31, 2025 | 1730–1737 |
| **Exhibit 83** – Defendant Meta Platform, Inc.'s Meta's Responses and Objections to Plaintiffs' Third Set of Interrogatories, dated December 20, 2024 | 1738–1754 |
| **Exhibit 84** – Plaintiff Jane Doe IV's Second Supplemental Responses and Objections to Meta Platforms, Inc.'s First Set of Interrogatories, dated October 29, 2024 | 1755–1815 |
| **Exhibit 85** – Plaintiff John Doe II's Second Supplemental Responses and Objections to Meta Platforms, Inc.'s First Set of Interrogatories, dated October 29, 2024 | 1816–1878 |
| **Exhibit 86** – Plaintiff Jane Doe I's Responses and Objections to Meta Platforms, Inc.'s Second Set of Interrogatories, dated January 6, 2025 | 1879–1892 |
| **Exhibit 87** – Plaintiff Jane Doe IV's Responses and Objections to Meta Platforms, Inc.'s Second Set of Interrogatories, dated January 6, 2025 | 1893–1906 |
| **Exhibit 88** – Plaintiff Jane Doe V's Responses and Objections to Meta Platforms, Inc.'s Second Set of Interrogatories, dated January 6, 2025 | 1907–1920 |
| **Exhibit 89** – Plaintiff Jane Doe IX's Responses and Objections to Meta Platforms, Inc.'s Second Set of Interrogatories, dated January 6, 2025 | 1921–1934 |
| **Exhibit 90** – Plaintiff Jane Doe X's Responses and Objections to Meta Platforms, Inc.'s Second Set of Interrogatories, dated January 6, 2025 | 1935–1948 |
| **Exhibit 91** – Plaintiff John Doe II's Responses and Objections to Meta Platforms, Inc.'s Second Set of Interrogatories, dated January 6, 2025 | 1949–1962 |
| **Exhibit 92** – Plaintiff John Doe III's Responses and Objections to Meta Platforms, Inc.'s Second Set of Interrogatories, dated January 6, 2025 | 1963–1976 |
| **Exhibit 93** – Plaintiff Jane Doe V's Third Supplemental Responses and Objections to Meta Platforms, Inc.'s First Set of Interrogatories, dated May 30, 2025 | 1977–2041 |
| **Exhibit 94** – Plaintiff Jane Doe IX's Amended Second Supplemental Responses and Objections to Meta Platforms, Inc.'s First Set of Interrogatories, dated May 30, 2025 | 2042–2103 |

v

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| **Document** | **Page Numbers** |
|---|---|
| **Exhibit 95** – Plaintiff Jane Doe X's Amended Second Supplemental Responses and Objections to Meta Platforms, Inc.'s First Set of Interrogatories, dated May 30, 2025 | 2104–2166 |
| **Exhibit 96** – Plaintiff John Doe III's Third Supplemental Responses and Objections to Meta Platforms, Inc.'s First Set of Interrogatories, dated May 30, 2025 | 2167–2228 |
| **Exhibit 97** – Plaintiff Jane Doe I's Third Supplemental Responses and Objections to Meta Platforms, Inc.'s First Set of Interrogatories, dated June 6, 2025 | 2229–2295 |
| **Exhibit 98** – MyChart Access Logs for Plaintiff John Doe II (PLTFS00001519) | 2296–2322 |
| **Exhibit 99** – Plaintiff Jane Doe X's Group Posts and Comments introduced as Exhibit 311 at Jane Doe X's Deposition (PLTFS00009722) | 2323–2335 |
| **Exhibit 100** – Excerpt from dismissed Plaintiff Jane Doe XI's Download Your Information/Download Your Data *Ads Preferences*, produced by Meta at PIXEL_HEALTH000300433 | 2336–2364 |
| **Exhibit 101** – Excerpt from Plaintiff Jane Doe IV's Download Your Information/Download Your Data Ads *Advertisers you've interacted with*, produced by Meta at PIXEL_HEALTH000300440 | 2365–2371 |
| **Exhibit 102** – Excerpt from Plaintiff Jane Doe XI's Download Your Information/Download Your Data *Advertisers you've interacted with*, produced by Meta at PIXEL_HEALTH000300435 | 2372–2374 |
| **Exhibit 103** – Excerpt from Plaintiff Jane Doe V's Download Your Information/Download Your Data *Advertisers you've interacted with*, produced by Meta at PIXEL_HEALTH000300439 | 2375–2379 |
| **Exhibit 104** – Excerpt from dismissed Plaintiff Jane Doe VI's Download Your Information/Download Your Data *Advertisers you've interacted with*, produced by Meta at PIXEL_HEALTH000300438 | 2380–2383 |
| **Exhibit 105** – July 16, 2015 Facebook Post from Plaintiff Jane Doe IV's Public Facebook Page, introduced as Exhibit 319 at Jane Doe IV's Deposition | 2384–2386 |
| **Exhibit 106** – November 9, 2016 Facebook Post from Plaintiff Jane Doe IV's Public Facebook Page, introduced as Exhibit 320 at Jane Doe IV's Deposition | 2387–2388 |
| **Exhibit 107** – September 10, 2015 Facebook Post from Plaintiff Jane Doe IV's Public Facebook Page, introduced as Exhibit 328 at Jane Doe IV's Deposition | 2389–2390 |
| **Exhibit 108** – March 23, 2021 Facebook Post from Plaintiff Jane Doe V's Public Facebook Page, introduced as Exhibit 418 at Jane Doe V's Deposition | 2391–2399 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Volume 8** | |
| **Exhibit 109** – Excerpt from Plaintiff Jane Doe V's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300439, introduced as Exhibit 419 at Jane Doe V's Deposition | 2400–2401 |
| **Exhibit 110** – Excerpt from Plaintiff Jane Doe V's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300439, introduced as exhibit 420 at Jane Doe V's Deposition | 2402–2403 |
| **Exhibit 111** – Excerpt from Plaintiff Jane Doe V's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300439, introduced as exhibit 421 at Jane Doe V's Deposition | 2404–2405 |
| **Exhibit 112** – Excerpt from Plaintiff Jane Doe V's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300439, introduced as Exhibit 422 at Jane Doe V's Deposition | 2406–2407 |
| **Exhibit 113** – March 15, 2016 Facebook Post from Plaintiff Jane Doe V's Public Facebook Page, introduced as Exhibit 423 at Jane Doe V's Deposition | 2408–2409 |
| **Exhibit 114** – Excerpt from Plaintiff Jane Doe V's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300439, introduced as Exhibit 424 at Jane Doe V's Deposition | 2410–2411 |
| **Exhibit 115** – August 22, 2018 Facebook Post from Plaintiff Jane Doe V's Public Facebook Page, introduced as Exhibit 425 at Jane Doe V's Deposition | 2412–2423 |
| **Exhibit 116** – August 23, 2018 Facebook Post from Plaintiff Jane Doe V's Public Facebook Page, introduced as Exhibit 426 at Jane Doe V's Deposition | 2424–2426 |
| **Exhibit 117** – December 12, 2019 Facebook Post from Plaintiff Jane Doe V's Public Facebook Page, introduced as Exhibit 427 at Jane Doe V's Deposition | 2427–2431 |
| **Exhibit 118** – Excerpt from Plaintiff Jane Doe V's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300439, introduced as Exhibit 428 at Jane Doe V's Deposition | 2432–2433 |
| **Exhibit 119** – August 8, 2023 Facebook Post from Plaintiff Jane Doe IX's Public Facebook Page, introduced as Exhibit 160 at Jane Doe IX's Deposition | 2434–2435 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 120** – Excerpt from Plaintiff Jane Doe IX's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300449, introduced as Exhibit 180 at Jane Doe IX's Deposition | 2436–2438 |
| **Exhibit 121** – Excerpt from Plaintiff Jane Doe X's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000688104 | 2439–2443 |
| **Exhibit 122** – Excerpt from Plaintiff John Doe III's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300442, introduced as Exhibit 253 at John Doe III's Deposition | 2444–2445 |
| **Exhibit 123** – Excerpt from Plaintiff John Doe III's Download Your Information/Download Your Data, produced by Meta at PIXEL_HEALTH000300442, introduced as Exhibit 254 at John Doe III's Deposition | 2446–2450 |
| **Exhibit 124** – John Doe II, ███████████████ | 2451–2456 |
| **Exhibit 125** – John Doe II, ████████████ | 2457–2459 |
| **Exhibit 126** – John Doe II, ███████████ | 2460–2461 |
| **Exhibit 127** – Declarations of Lisa Badeau (Brigham and Women's Hospital), Steven Singer (Dana-Farber Cancer Institute), and Misty Hathaway (Massachusetts General Hospital) submitted in support of Defendants' Opposition to Plaintiffs' Renewed Motion for a Preliminary Injunction in *Doe v. Partners Healthcare Sys., Inc.*, No. 1984CV01651 (Suffolk Super. Ct.) | 2462–2494 |
| **Exhibit 128** – Declaration of Darla Vote (Deaconess Illinois Red Bud Regional Hospital), dated June 2, 2025 | 2495–2498 |
| **Exhibit 129** – Declaration of Rob Suárez (BCBS CareFirst), dated May 5, 2025 | 2500–2502 |
| **Exhibit 130** – Declaration of Venkat R. Koshanam (Maryland Health Benefit Exchange), dated May 27, 2025 | 2503–2505 |
| **Exhibit 131** – Declaration of Kelsey Frederick (Abbeville General Hospital), dated May 29, 2025 | 2506–2511 |
| **Exhibit 132** – Declaration of Joseph Hanes (UW Health), dated May 30, 2025 | 2512–2524 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 133** – Declaration of Charles Gaddy (Atrium Health), dated June 3, 2025 | 2525–2528 |
| **Exhibit 134** – Declaration of Diana L. Richardson (Lawrence General Hospital), dated June 6, 2025 | 2529–2533 |
| **Exhibit 135** – Declaration of James LaCorte (Blue Cross Blue Shield of North Carolina), dated June 10, 2025 | 2534–2537 |
| **Exhibit 136** – Declaration of Melissa Watson (Providence Portland Medical Center), dated June 13, 2025 | 2538–2543 |
| **Exhibit 137** – Declaration of Jose Quiroz (Ray County Hospital and Healthcare), dated July 8, 2025 | 2544–2546 |
| **Exhibit 138 –** Cigna Online and Mobile Privacy Notice, revised August 2014 | 2547–2555 |
| **Exhibit 139** – Sharp Healthcare Terms of Use, November 20, 2021 | 2556–2559 |
| **Exhibit 140** – Brigham and Women's Hospital Privacy Policy, March 28, 2018 | 2560–2568 |
| **Exhibit 141** – Mount Sinai Privacy Policy, July 26, 2018 | 2569–2575 |
| **Exhibit 142** – Gilead Website Privacy Statement, last updated May 15, 2018 | 2576–2580 |
| **Exhibit 143** – Northwestern Medicine Digital Privacy Policy as of May 29, 2019, effective December 3, 2018 | 2581–2594 |
| **Exhibit 144** – BIDMC Website Terms and Conditions of Use, June 27, 2019 | 2595–2603 |
| **Exhibit 145** – Abbeville General Privacy Policy, May 3, 2020 | 2604–2608 |
| **Exhibit 146** – Adventist Health Website Privacy Policy, August 8, 2020 | 2609–2613 |
| **Exhibit 147** – Gilead Privacy Statement, updated April 30, 2021 | 2614–2627 |
| **Volume 9** | |
| **Exhibit 148** – BIDMC About Our Privacy Policy, September 22, 2022 | 2628–2631 |
| **Exhibit 149** – Essentia Health Website Privacy Policy & Terms of Use (Patient), effective September 28, 2022 | 2631–2640 |
| **Exhibit 150** – Gilead Privacy Statement, effective December 19, 2022 | 2641–2675 |
| **Exhibit 151** – Brigham and Women's Hospital Website Consent and Privacy Policy, last revised September 27, 2021 | 2676–2685 |
| **Exhibit 152** – Currax Pharmaceuticals LLC Privacy Policy, December 8, 2023 | 2686–2690 |
| **Exhibit 153** – Blue Cross Blue Shield of Illinois Website Terms of Use and Privacy Statement, last updated February 15, 2024 | 2691–2696 |
| **Exhibit 154** – Gilead Consumer Health Data Privacy Policy, effective March 12, 2024 | 2697–2705 |
| **Exhibit 155** – Southern Illinois Healthcare Digital Privacy Policy, effective January 31, 2024 | 2706–2714 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 156** – MetLife U.S. Cookie Policy, updated May 21, 2024 | 2715–2720 |
| **Exhibit 157** – Sutter Health's Privacy Policy, effective October 25, 2024 | 2721–2734 |
| **Exhibit 158** – Cigna Healthcare Website Privacy Notice, updated February 11, 2025 | 2735–2746 |
| **Exhibit 159** – Mount Sinai Privacy Policy, downloaded September 2, 2025 | 2747–2755 |
| **Exhibit 160** – Currax Pharmaceuticals LLC Privacy Policy, posted October 21, 2024 | 2756–2787 |
| **Exhibit 161** – Essentia Health Website Privacy Policy, September 26, 2020 | 2788–2791 |
| **Exhibit 162** – Email subject line "Update on Facebook / Meta Pixel," dated March 28, 2023, produced by non-party Adventist Health System/West at AdventistHealth_MetaSubp000040 | 2792–2793 |
| **Exhibit 163** – Email with subject line "RE: AH Website Security Inquiry – Meta Pixel," dated June 17, 2022, produced by non-party Adventist Health System/West at AdventistHealth_MetaSubp000047 | 2794–2799 |
| **Exhibit 164** – "Review potentially violating health ads" page from Adventist Health Pixel (Primary)'s Meta Business Account, produced by non-party Adventist Health System/West at AdventistHealth_MetaSubp001570 | 2800–2801 |
| **Exhibit 165** – Email titled "You've sent potentially violating health data to Meta," produced by non-party Adventist Health System/West at AdventistHealth_MetaSubp001571 | 2802–2803 |
| **Exhibit 166** – "Conversions API Gateway" on Adventist Health Pixel (Primary)'s Data Sources page, produced by non-party Adventist Health System/West at AdventistHealth_MetaSubp001693 | 2804–2805 |
| **Exhibit 167** – "Notice of a Privacy Matter" from Atrium Health, produced by non-party The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health at CMHA_000017 | 2806–2809 |
| **Volume 10** | |
| **Exhibit 168** – Blue Shield of California's Online and mobile privacy notice, effective March 15, 2022, produced by non-party California Physicians' Service dba Blue Shield of California at Blue Shield_000001 | 2810–2942 |
| **Volume 11** | |
| **Exhibit 169** – Email with the subject line "FW: BCBS NC/Meta," dated July 20, 2023, produced by non-party Blue Cross Blue Shield North Carolina at BCBSNC00075 | 2943–2947 |
| **Exhibit 170** – Email with the subject line "FW: BCBS NC/Meta" and dated July 24, 2023, produced by non-party Blue Cross Blue Shield North Carolina at BCBSNC00104 | 2948–2954 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 171** – "How It Works," produced by non-party Blue Cross Blue Shield North Carolina at BCBSNC00110 | 2955–2956 |
| **Exhibit 172** – *Costco Wholesale Corporation Your Privacy Rights*, last updated May 10, 2021, produced by non-party Costco Wholesale Company at COSTCO_META_SUBPOENA 000016 | 2957–2966 |
| **Exhibit 173** – *Currax Pharmaceuticals, LLC Global Privacy Policy*, dated October 21, 2024, produced by non-party Currax Pharmaceuticals, LLC at CUR0000039 | 2967–2970 |
| **Exhibit 174** – Email with subject "Re: Information in your data may go against Meta Business Tools Terms," dated October 11, 2023, produced by non-party Currax Pharmaceuticals, LLC at CUR0000188 | 2971–2974 |
| **Exhibit 175** – Email with subject line "Re: strike 2 and 3 subject," dated October 11, 2023, produced by non-party Currax Pharmaceuticals, LLC at CUR0000191 | 2975–2979 |
| **Exhibit 176** – *Agreement for Agency Services*, dated July 1, 2015, produced by non-party Humana Inc. at HUMANA_000018 | 2980–2998 |
| **Volume 12** | |
| **Exhibit 177** – *Agreement for Agency Services*, dated April 1, 2021, produced by non-party Humana Inc. at HUMANA_000036 | 2999–3034 |
| **Exhibit 178** – *Schedule 001*, dated May 3, 2021, produced by non-party Humana Inc. at HUMANA_000071 | 3035–3053 |
| **Exhibit 179** – April 1, 2025 responses of non-party NYC Health + Hospitals to Meta Platform, Inc.'s March 3, 2025 subpoena | 3054–3096 |
| **Exhibit 180** – Email with subject line "Re: ARS TECHNICA: Facebook is receiving sensitive medical information from hospital websites," dated June 17, 2022, produced by non-party The Ohio State University Wexner Medical System at OSU003172 | 3097–3099 |
| **Exhibit 181** – Email with subject line "Rush Copley Sent You Instructions on Setting up Facebook Pixel," dated July 25, 2016, produced by non-party Rush University System for Health at RUSH_000048 | 3100–3121 |
| **Exhibit 182** – Letter from WakeMed to its patients, dated October 2022, produced by non-party WakeMed Health & Hospitals for Health at WAKEMED 0080 | 3122–3124 |
| **Exhibit 183** – Adobe Analytics Webpage, downloaded November 20, 2025 | 3125–3130 |
| **Exhibit 184** – Google Analytics Tools & Solutions for Your Business, downloaded December 3, 2025 | 3131–3138 |
| **Exhibit 185** – LinkedIn Insight Tag, downloaded November 20, 2025 | 3139–3143 |
| **Exhibit 186** – June 8, 2018 Letter from Facebook to Chairman John Thune, downloaded December 3, 2025 | 3144–3373 |

| Document | Page Numbers |
|---|---|
| **Exhibit 187** – Adventist Health Men's Mental Health Campaign Ad Launched November 2025, downloaded December 3, 2025 | 3374–3376 |
| **Exhibit 188** – Kaiser Permanente Flu Shot Ads Launched November 2025, downloaded December 3, 2025 | 3377–3380 |
| **Exhibit 189** – U.S. Dep't of Health & Hum. Servs., *Use of Online Technologies by HIPAA Covered Entities and Business Associates* (last reviewed June 26, 2024), downloaded December 3, 2025 | 3381–3400 |
| **Exhibit 190** – "haleyandevan.com," downloaded December 7, 2025 | 3401–3407 |
| **Exhibit 191** – "ynotudesigns.com," downloaded December 7, 2025 | 3408–3411 |
| **Exhibit 192** – "zymology21.com," downloaded December 7, 2025 | 3412–3417 |
| **Exhibit 193** – "yoga-doc.com," downloaded December 7, 2025 | 3418–3423 |
| **Exhibit 194** – *On Health*, Houston Methodist, downloaded December 1, 2025 | 3424–3437 |
| **Exhibit 195** – *Health*, Johns Hopkins, downloaded December 1, 2025 | 3438–3441 |
| **Exhibit 196** – Massachusetts General Hospital home page, downloaded December 1, 2025 | 3442–3447 |
| **Exhibit 197** – *Mount Sinai Today*, downloaded December 1, 2025 | 3448–3457 |
| **Exhibit 198** – *Health Matters*, New York Presbyterian, downloaded December 1, 2025 | 3458–3465 |
| **Exhibit 199** – *Health Beat*, UPMC, downloaded December 1, 2025 | 3466–3471 |
| **Exhibit 200** – *About advanced matching for web*, Meta Business Help Center, downloaded December 1, 2025 | 3472–3478 |
| **Exhibit 201** – "atasteforlifewithzarela.com," March 17, 2022 | 3479–3486 |
| **Exhibit 202** – Sam Schechner, *You Give Apps Sensitive Personal Information.  Then They Tell Facebook*, The Wall Street Journal (Feb. 22, 2019) | 3487–3496 |
| **Exhibit 203** – Todd Feathers, *et al.*, *Facebook Is Receiving Sensitive Medical Information from Hospital Websites*, The Markup (June 16, 2022) | 3497–3503 |
| **Exhibit 204** – Brandon Vigliarolo, *Oops, web trackers may have leaked 3 million patients' info*, The Register (Oct. 20, 2022) | 3504–3507 |
| **Exhibit 205** – Jessica Lyons, *96% of US hospital websites share visitor info with Meta, Google, data brokers*, The Register (Apr. 11, 2024) | 3508–3512 |
| **Exhibit 206** – Brigette Hanaker, *Facebook may illegally learn some health information from users*, Top Class Actions (September 29, 2023) | 3513–3519 |
| **Exhibit 207** – January 16, 2024 Facebook post in a Facebook group titled "HIV SUPPORT GROUP," downloaded on December 1, 2025 | 3520–3526 |
| **Exhibit 208** – January 20, 2024 Facebook post in a Facebook group titled "Diabetes support group," downloaded on December 1, 2025 | 3527–3530 |
| **Exhibit 209** – May 7, 2024 Facebook post in a Facebook group titled "Kaiser Permanente SUCKS," downloaded on December 1, 2025 | 3531–3536 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 210** – August 29, 2024 Facebook post in a Facebook group titled "HUMANA INSURANCE SUCKS!!!," downloaded on December 1, 2025 | 3537–3540 |
| **Exhibit 211** – September 17, 2024 Facebook post in a Facebook group titled "Bariatric Surgery & Gastric Sleeve Support Group," downloaded on December 1, 2025 | 3541–3544 |
| **Exhibit 212** – April 21, 2025 Facebook post in a Facebook group titled "Weight Watchers New Plan 2025," downloaded on December 1, 2025 | 3545–3547 |
| **Exhibit 213** – October 11, 2025 Facebook post in a Facebook group titled "GallBladder and Gallstones Support Group," downloaded on December 1, 2025 | 3548–3550 |
| **Exhibit 214** – October 15, 2025 Facebook post in a Facebook group titled "POTS Syndrome Dysautonomia Support & Community Group!," downloaded on December 1, 2025 | 3551–3556 |
| **Exhibit 215** – October 28, 2025 Facebook post in a Facebook group titled "Pneumonectomy Support Group," downloaded on December 1, 2025 | 3557–3559 |
| **Exhibit 216** – November 1, 2025 Facebook post in a Facebook group titled "Spinal Fusion Back Surgery Support Group," downloaded on December 1, 2025 | 3560–3567 |
| **Exhibit 217** – November 16, 2025 Facebook post in a Facebook group titled "Medicare Questions and Answers," downloaded on December 1, 2025 | 3568–3570 |
| **Exhibit 218** – November 18, 2025 Facebook post in a Facebook group titled "Psoriasis and Psoriatic Arthritis Peer Support," downloaded on December 1, 2025 | 3571–3577 |
| **Exhibit 219** – Excerpt from event data that was associated with Plaintiff Jane Doe I's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000791266 | 3577–3593 |
| **Exhibit 220** – Excerpt from event data that was associated with Plaintiff Jane Doe V's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000791266 | 3594–3602 |
| **Exhibit 221** – Excerpt from event data that was associated with Plaintiff Jane Doe X's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000791266 | 3603–3635 |
| **Exhibit 222** – Excerpt from event data that was associated with Plaintiff John Doe II's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000791266 | 3636–3644 |
| **Exhibit 223** – Excerpt from event data that was associated with Plaintiff John Doe III's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000791266 | 3645–3653 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

| Document | Page Numbers |
|---|---|
| **Exhibit 224** – Excerpt from ads viewed data associated with Jane Doe I's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000781616 | 3654–3656 |
| **Exhibit 225** – Excerpt from ads viewed data associated with Jane Doe IV's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000781617 | 3657–3671 |
| **Exhibit 226** – Excerpt from ads viewed data associated with Jane Doe V's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000781619 | 3672–3680 |
| **Exhibit 227** – Excerpt from ads viewed data associated with Jane Doe X's Facebook and Instagram accounts, produced by Meta at PIXEL_HEALTH000781623 | 3681–3693 |
| **Volume 13** | |
| **Expert Report of On Amir** | 3694–3939 |
| **Expert Report of Paul Schwartz** | 3940-4017 |
| **Expert Report of John R. Hauser** | 4018-4137 |
| **Expert Report of Steven Tadelis** | 4138-4243 |
| **Expert Report of Georgios Zervas** | 4244-4477 |

APPENDIX OF EVIDENCE IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – CASE NO. 3:22-cv-03580-WHO

# EXHIBIT 62

A7-1627

Message

**From:**  Carolina Jeschke █████████████
**Sent:**  9/14/2020 2:40:18 AM
**To:**  Akhilesh Srivastava
**CC:**  Sandra Koers ████████████████  AdsToolsIntegrity [AdsToolsIntegrity@fb.com]
**Subject:**  Re: Your pixel's events are potentially violating Facebook's Business Tools Terms
**Attachments:**  image001.gif

Hi Akhilesh,

thank you for the details.
My client says that he does not transfer any personal data on this pixel, as he made all those changes two months ago.

Is there any level deeper that we can provide or clear guidance on next steps to help him find those events?
Do we experience any difficulties when clients work with Google tag manager (as in this case)?

Thank you for further assistance
Carolina

**Carolina Jeschke**
Industry Solution Manager Pharma DACH
Brahmsquartier | Caffamacherreihe 7 | 20355 Hamburg

---

**From:** Akhilesh Srivastava ████████████████
**Sent:** Saturday, September 12, 2020 2:02 AM
**To:** Carolina Jeschke ████████████████
**Cc:** Sandra Koers ████████████████  AdsToolsIntegrity <AdsToolsIntegrity@fb.com>
**Subject:** Re: Your pixel's events are potentially violating Facebook's Business Tools Terms

Hi Carolina,

As of September second week, we see that the client is sending sensitive data(Health, Phone, Email) to us through multiple events such as SubscribedButtonClick, PageView, OSQualified, OSCompleted etc.
It violates our Terms and recommended to stop sending.

Pixel ID:
806420912753854

Thank you!
**Akhilesh Srivastava** | Technical Program Manager
**FACEBOOK**

**A7-1628**

CONFIDENTIAL  PIXEL_HEALTH000012725

**From:** Carolina Jeschke ███████████████
**Date:** Friday, September 11, 2020 at 4:48 AM
**To:** AdsToolsIntegrity <AdsToolsIntegrity@fb.com>
**Cc:** Sandra Koers ████████████████
**Subject:** Fw: Your pixel's events are potentially violating Facebook's Business Tools Terms

HI Ads Tool Integrity team,

could you please provide more details on this system alert?
I talked to the client and they said they do not transfer any of those data for about two months now.

Could you please provide a detailed analysis and next steps to be compliant? Is there anything we are missing?

Thank you
Carolina



**Carolina Jeschke**
Industry Solution Manager Pharma DACH
Brahmsquartier | Caffamacherreihe 7 | 20355 Hamburg

---

**From:** Sandra Koers ███████████████████
**Sent:** Friday, September 11, 2020 7:35 AM
**To:** Carolina Jeschke ███████████████
**Subject:** WG: Your pixel's events are potentially violating Facebook's Business Tools Terms

---

**Von:** Facebook <notification@facebookmail.com>
**Gesendet:** Freitag, 11. September 2020 01:37
**An:** Sandra Koers ████████████████
**Betreff:** Your pixel's events are potentially violating Facebook's Business Tools Terms

Facebook

Hi,
Your pixel Euro's Pixel (Pixel ID: 806420912753854) has one or more events that have been identified as sending Facebook data that may be violating Facebook's Business Tools Terms:
can't share customer data with Facebook that includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law)."

**A7-1629**

To help protect Facebook users' privacy, the information we detected has been removed. If these events were used to create custom conversions or Custom Audiences, any ad sets optimizing on these custom conversions or targeting these Custom Audiences may be affected.

Our aim is to help advertisers efficiently achieve their business goals while also maintaining a good consumer experience for people on Facebook. Therefore we have Business Tools Terms which you accept by using our tools such as Pixel, SDK & APIs.

We recommend you remove these parameters from the event code as soon as possible:

Back Pain:

filter_event_name

Parkinson's Disease:

filter_event_name

COVID-19:

filter_event_name

Cardiovascular Disease:

filter_event_name

Heart Failure:

filter_event_name

_removed_:

SCID

OSQualified:

c

Macular degeneration:

filter_event_name

Healthy:

scid

scope

Atopic Dermatitis / Eczema:

file

TrueComplete:

gender

Ulcerative Colitis:

filter_event_name

NotSuitable:

indication

HomepageView:

gender

LessThan15:

file

cond

filters

scid

indication

gender

**A7-1630**

SCID

PIXEL_HEALTH000012727

height
pais
title
caps
ce
delivery
undefined:
gender
scope
CompleteRegistration:
indication
c
Migraine:
filter_event_name
Lung cancer:
filter_event_name
Psoriasis:
filter_event_name
PageView:
gender
caps
filters
scope
SCID
file
scale
commit
cond
indication
height
scid
SAge
pais
c
q
indications
pq
ref
ce
delivery
DidNotFit:
gender
OSCompleted:
indication
c

**A7-1531**

PIXEL_HEALTH000012728

You can email [AdsToolsIntegrity@fb.com](mailto:AdsToolsIntegrity@fb.com) if you have questions.

Thanks,

The Facebook Business Team

This message was sent to ███████████ your request.

Facebook Ireland Ltd., Attention: Community Operations, 4 Grand Canal Square, Dublin 2, Ireland



**A7-1632**

PIXEL_HEALTH000012729

# EXHIBIT 63

A7-1633

Message

| From: | Akhilesh Srivastava ██████████████ |
|---|---|
| Sent: | 10/22/2020 5:11:51 PM |
| To: | Bob Hamilton ████████████ |
| CC: | AdsToolsIntegrity [AdsToolsIntegrity@fb.com] |
| Subject: | Re: Netsertive | Pixel Event Flag |
| Attachments: | image001.gif |

Hi Bob,

We see that the client is sending following sensitive data to us. It is recommended to share it with them so that they stop sending it.

Also, here is the internal WIKI page for answering any follow up questions you might have.

| Pixel Id |
|---|
| Sensitive data type(s) |
| Event name(s) |
| Sensitive data place |
| Parameter/key(s) |
| sample URL(s) |
| (sensitive data is replaced with keyword _removed_ in the URL) |

| 329312007924774 |
|---|
| health_term |
| ViewContent |
| pixel_url_params |
| scid |
| https://dyaplasticsurgery.com/news-events/current-specials/?utm_source=LH&utm_medium=TargetedDisplay&utm_campaign=BrandAwareness&scid=_removed_&cid=3153972&tc=20102022 |

Thank you!

**Akhilesh Srivastava** | Technical Program Manager

# FACEBOOK

---

**From:** Bob Hamilton ████████████
**Date:** Wednesday, October 21, 2020 at 4:42 PM
**To:** AdsToolsIntegrity <AdsToolsIntegrity@fb.com>
**Subject:** Netsertive | Pixel Event Flag

Hey Ads Tools team!

I've received multiple emails, similar to the one below, regarding pixel data for my agency Netsertive. What information can I communicate to the client? What actions do they need to take in order to prevent any disciplinary action from our platform? Is the current pixel setup hindering their performance?

**A7** **1634**ss manager ID: ████████████

Please let me know!


Best Regards

----



**Bob Hamilton | Partner Manager**

████████████████████████████ **Chicago**

**Concierge Support | Product Updates | Agency Hub**

---

**From:** Facebook <notification@facebookmail.com>
**Sent:** Tuesday, October 20, 2020 11:07 AM
**To:** Bob Hamilton ████████████████
**Subject:** Your pixels' events are potentially violating Facebook's Business Tools Terms


Facebook

Hi,

Your pixels Facebook Pixel, HLTH, AUTO, Fort Bend Dental Assoc's Pixel, SCHWEIGER DERMATOLOGY's Pixel, OSF Healthcare's Pixel, Norton Healthcare, Inc.'s Pixel, Fort Bend Dental Richmond's Pixel, Cascade Eye and Skin Centers, P.C.'s Pixel, Riverside Continuing Care's Pixel, Aestheti Care MedSpa's Pixel and Forefront Dermatology (Monroeville Location)'s Pixel have one or more events that have been identified as sending Facebook data that may be violating Facebook's Business Tools Terms:

"You can't share customer data with Facebook that includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law)."

To help protect Facebook users' privacy, the information we detected has been removed. If these events were used to create custom conversions or Custom Audiences, any ad sets optimizing on these custom conversions or targeting these Custom Audiences may be affected.

Our aim is to help advertisers efficiently achieve their business goals while also maintaining a good consumer experience for people on Facebook. Therefore we have Business Tools Terms which you accept by using our tools such as Pixel, SDK & APIs.

We recommend you remove these parameters from the event code as soon as possible:

Facebook Pixel (pixel ID: 329312007924774)

ViewContent:
scid
acid
filters

**A7-1635**

PIXEL_HEALTH000154143

PageView:

scid

acid

filters

HLTH (pixel ID: 694566397378851)

lead:

file

filters

Lead:

scid

file

filters

ViewContent:

scid

filters

acid

fwp_conditions

polymer

file

plan

caps

gender

scope

Gender

start

Weight

Height

weight

commit

height

pq

input_-1

period

tagpath

clinic

searchfor

q

oq

keyword

qpvt

dqi

extension

**A7-1636**

PIXEL_HEALTH000154144

PageView:
scid
filters
gender
polymer
acid
file
scope
Gender
plan
caps
fwp_conditions
reserved
timer
ACID
start
center
Weight
Height
weight
commit
height
pq
kmkw
keyword
utm_keyword
searchfor
period
utm_adtype
tagpath
clinic
unified
input_-1
filter
specialty_all
LocationId
clinical_experience
query
alias_term
q
qpvt
ref
searchTerm
challenge
extension

**A7-1637**

ProviderId
taxonomy
highlightedQuery
return_url
as_q

View Injectables:
View Injectables

AUTO (pixel ID: 1710250939294688)

ViewContent:
filters
gender
d_keyword
awkwid
sd_digadkeyword
cs%3Aq

Lead:
filters
gender
s

PageView:
filters
gender
sd_digadkeyword
_dep_keyword
awkwid
fca_new_keyword
searchfor
KWNM

Fort Bend Dental Assoc's Pixel (pixel ID: 1259337154213947)

ViewContent:
commit
filters
clinic

PageView:
commit
filters
clinic

SCHWEIGER DERMATOLOGY's Pixel (pixel ID: 2229225060628353)

PageView:
filters
gender
scope

**A7-1638**

PIXEL_HEALTH000154146

searchfor

sbq

Lead:

filters

gender

scope

searchfor

sbq

pq

ViewContent:

filters

gender

scope

searchfor

sbq

pq

OSF Healthcare's Pixel (pixel ID: 818030695376100)

ViewContent:

scid

filters

plan

gender

scope

center

height

searchfor

commit

scale

keywords

sifi_kw

s

alias_term

oq

adv-specialties

clinical_experience

filter

unified

SearchPhrase

file

in_what

display

PageView:

scid

filters

**A7-1639**

PIXEL_HEALTH000154147

plan
gender
scope
center
height
searchfor
commit
scale
keywords
sifi_kw
s
alias_term
clinical_experience
filter
SearchPhrase
adv-specialties
file
u
in_what
display
unified
keyword

Lead:
gender
filters
plan
scid
s
adv-specialties
unified

Contact:
scid

Norton Healthcare, Inc.'s Pixel (pixel ID: 573202563201265)

Contact:
filters
reserved

PageView:
filters
Gender
s
reserved
file
scope
gender

**A7-1640**

PIXEL_HEALTH000154148

start
center
polymer
height
searchfor
unified
LocationId
specialty_all
specialty
filter
pq
clinical_experience
alias_term
oq
kw
display
in_what
query
challenge
u
q
ProviderId

Fort Bend Dental Richmond's Pixel (pixel ID: 1066168730240370)

ViewContent:
commit
filters
clinic

PageView:
commit
filters
clinic

Cascade Eye and Skin Centers, P.C.'s Pixel (pixel ID: 663284871083481)

Lead:
filters

ViewContent:
filters
gender

PageView:
filters
gender

Riverside Continuing Care's Pixel (pixel ID: 2392451087662998)

**A7-1641**

PIXEL_HEALTH000154149

Contact:
gender
start

ViewContent:
gender
filters
acid
polymer
plan
scope
start
access
height
specialty
searchfor
srchstring
srchString
oq
q
pq
as_q
s

PageView:
gender
filters
acid
polymer
plan
scope
start
access
height
specialty
searchfor
srchstring
searchTerm
oq
q
pq
srchString
as_q
s
searchKeyword

**A7-1642**

PIXEL_HEALTH000154150

Lead:
acid
scope
height

Purchase:
filters

Aestheti Care MedSpa's Pixel (pixel ID: 616253745557939)

PageView:
acid
pq
oq

ViewContent:
acid

Forefront Dermatology (Monroeville Location)'s Pixel (pixel ID: 383098202481242)

FindLocation:
filters

ViewContent:
filters
service_name
scope
ACCESS
searchfor
q
oq
pq
dqi

Lead:
filters
service_name
scope
ACCESS
searchfor
q
oq
pq
dqi

PageView:
filters
service_name
scope
ACCESS
searchfor

**A7-1643**

q
pq
oq
dqi

You can email AdsToolsIntegrity@fb.com if you have questions.

Thanks,
The Facebook Business Team

This message was sent t██████████ your request.
Facebook, Inc., Attention: Community Support, 1 Facebook Way, Menlo Park, CA 94025



**A7-1644**

PIXEL_HEALTH000154152

# EXHIBIT 64

A7-1645

Message

**From:** Facebook [notification@facebookmail.com]
**Sent:** 10/22/2020 12:48:08 PM
**To:** Rebecca Reza [rebeccareza@fb.com]
**Subject:** Your pixel's events are potentially violating Facebook's Business Tools Terms

 Facebook

Hi,

Your pixel Akron Children's - Primary Care (Pixel ID: 1729848013924972) has one or more events that have been identified as sending Facebook data that may be violating Facebook's Business Tools Terms:

"You can't share customer data with Facebook that includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law)."

To help protect Facebook users' privacy, the information we detected has been removed. If these events were used to create custom conversions or Custom Audiences, any ad sets optimizing on these custom conversions or targeting these Custom Audiences may be affected.

Our aim is to help advertisers efficiently achieve their business goals while also maintaining a good consumer experience for people on Facebook. Therefore we have Business Tools Terms which you accept by using our tools such as Pixel, SDK & APIs.

We recommend you remove these parameters from the event code as soon as possible:

Urgent Care:
filter_event_name

PageView:
filters
period
start
scope
height
category_name
reserved
filter
searchfor
hook
query
pq
q
caps

**A7-1646**

qpvt
oq

You can email [AdsToolsIntegrity@fb.com](mailto:AdsToolsIntegrity@fb.com) if you have questions.

Thanks,
The Facebook Business Team

This message was sent to **rebeccareza@fb.com** at your request.

Facebook, Inc., Attention: Community Support, 1 Facebook Way, Menlo Park, CA 94025



**A7-1647**

# EXHIBIT 65

A7-1648

Message
_____

**From:**      Facebook [notification@facebookmail.com]
**Sent:**      11/4/2020 10:31:06 AM
**To:**        Brayton Deckard ▇▇▇▇▇▇▇▇▇
**Subject:**   Your pixels' events are potentially violating Facebook's Business Tools Terms

 Facebook

Hi,

Your pixels Akron Children's - First-time Parents's Pixel, Akron Children's Hospital - General Surgery Pixel, Akron Children's - Primary Care, Akron Children's - Orthopedic Pixel and BW Pixel have one or more events that have been identified as sending Facebook data that may be violating Facebook's Business Tools Terms:

"You can't share customer data with Facebook that includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law)."

To help protect Facebook users' privacy, the information we detected has been removed. If these events were used to create custom conversions or Custom Audiences, any ad sets optimizing on these custom conversions or targeting these Custom Audiences may be affected.

Our aim is to help advertisers efficiently achieve their business goals while also maintaining a good consumer experience for people on Facebook. Therefore we have Business Tools Terms which you accept by using our tools such as Pixel, SDK & APIs.

We recommend you remove these parameters from the event code as soon as possible:

Akron Children's - First-time Parents's Pixel (pixel ID: 321551995106215)

Contact:
filters

PageView:
filters
period
start
scope
height
query
searchfor
category_name
reserved
filter
start

**A7-1649**

PIXEL_HEALTH000003500

caps
oq

Urgent Care:
filter_event_name

FindLocation:
scope

Akron Children's Hospital - General Surgery Pixel (pixel ID: 665932926899554)

Contact:
filters

PageView:
filters
period
start
scope
height
query
searchfor
filter
category_name
reserved
hook
caps
oq

Urgent Care:
filter_event_name

FindLocation:
scope

Akron Children's - Primary Care (pixel ID: 1729848013924972)

PageView:
filters
period
start
scope
height
category_name
reserved
filter
searchfor
hook
query

**A7-1650**
q

PIXEL_HEALTH000003501

caps
qpvt
oq

Urgent Care:
filter_event_name

Akron Children's - Orthopedic Pixel (pixel ID: 381656658701082)

PageView:
period
start
category_name
referrerPageUrl
filters

BW Pixel (pixel ID: 1761104590781153)

PageView:
filters
Gender
s
reserved
file
scope
gender
start
center
polymer
height
unified
LocationId
specialty_all
specialty
oq
challenge
pq
alias_term
searchfor
filter
display
in_what
clinical_experience
u
ProviderId
imgrefurl

**A7-1651**

Contact:
filters
reserved

You can email AdsToolsIntegrity@fb.com if you have questions.

Thanks,
The Facebook Business Team

This message was sent to ██████████ t your request.
Facebook, Inc., Attention: Community Support, 1 Facebook Way, Menlo Park, CA 94025



**A7-1652**

CONFIDENTIAL

# EXHIBIT 66

Message

**From:** Akhilesh Srivastav █████████████████

**Sent:** 11/12/2020 11:54:41 AM

**To:** Brittney Gordon ███████████

**CC:** AdsToolsIntegrity [AdsToolsIntegrity@fb.com]

**Subject:** Re: Question on behalf of Client regarding Pixels

**Attachments:** image001.png; image002.jpg

Brittney,

We see that the client is sending following sensitive data to us. It is recommended to share it with them so that they fix it from their side and stop sending it.

Note : The sensitive data could be at the URL parameter and in the URLs below if you observe the keyword _*removed*_  that is the place where client can have a look for the sensitive data.

| ds | data_source_id | event_name | ███████████ | sensitive_data_type | sensitive_data_place | filter_trace_id |
|---|---|---|---|---|---|---|
| 2020-11-11 | 1836078646653881 | PageView | healthNeedFilter | unknown | pixel_url_params | 110 |
| 2020-11-11 | 1836078646653881 | ViewContent | oq | health_term | pixel_url_params | 61 |
| 2020-11-11 | 1836078646653881 | ViewContent | healthNeedFilter | unknown | pixel_url_params | 110 |
| 2020-11-11 | 1836078646653881 | ViewCategory | healthNeedFilter | unknown | pixel_url_params | 110 |

| sensitive_data_context | event_trace_id | event_time | total_events |
|---|---|---|---|
| 258 | f1759449-25dc-4b19-ae79-c3b78f5814f2 | 1605153224.0074 | 67 |
| 258 | 041a14ab-9e18-4c9c-8dc0-5fb70ea7c66d | 1605116851.2489 | 1 |
| 258 | ee6d50ff-b069-43b3-ae6a-ad589580381c | 1605155622.0007 | 16 |
| 258 | f4311426-50f6-4c53-a239-0976d611fdcf | 1605153223.4038 | 64 |

| ███████████████████ |
|---|
| https://www.newchapter.com/products/?_bc_fsnf=_removed_&healthNeedFilter=_removed_ |
| https://www.newchapter.com/products/zyflamend-nighttime/?sku=6055&gclid=_removed_ |
| https://www.newchapter.com/products/vitamins/every-womans-one-daily-55-multivitamin/ |

**A7-1654**

| |
|---|
| https://www.newchapter.com/products/multivitamins/?gclid=_removed_&_bc_fsnf=1&healthNeedFilter=_removed_ |

| ███████████████ |
|---|
| https://www.newchapter.com/products/?_bc_fsnf=_removed_&healthNeedFilter=_removed_ |
| https://www.newchapter.com/products/zyflamend-nighttime/?sku=6055&gclid=_removed_ |
| https://www.newchapter.com/products/vitamins/every-womans-one-daily-55-multivitamin/ |
| https://www.newchapter.com/products/multivitamins/?gclid=_removed_&_bc_fsnf=1&healthNeedFilter=_removed_ |

| ███████████████ |
|---|
| https://www.newchapter.com/ |
| https://www.newchapter.com/products/zyflamend-nighttime/?sku=6055&gclid=_removed_ |
| https://www.newchapter.com/ |
| https://www.newchapter.com/products/multivitamins/?gclid=_removed_&_bc_fsnf=1&healthNeedFilter=_removed_ |

| ███████████████ |
|---|
| https://www.newchapter.com/products/ |
| http://www.google.com/search?q=_removed_&oq=_removed_&gs_l=mobile-heirloom-hp.1.0.0i457j0l4.3112.9319.0.11231.10.7.0.3.3.0.193.874.0j7.7.0....0...1c.1j4.34.mobile-heirloom-hp..0.10.973.Nl02VHNETXY |
| https://www.newchapter.com/products/multivitamins/?_bc_fsnf=1&sort=featured&healthNeedFilter=_removed_ |
| https://www.newchapter.com/products/multivitamins/?gclid=_removed_ |

Also, here is the internal WIKI page for answering any follow up questions you might have.

---

**From:** Brittney Gordon ████████████
**Date:** Thursday, November 12, 2020 at 10:40 AM
**To:** AdsToolsIntegrity <AdsToolsIntegrity@fb.com>
**Subject:** Question on behalf of Client regarding Pixels

Hi,
I am a Client Solutions Manager on Team P&G and have received several of the notes below for my managed brands. For this brand specifically, could you help me understand what exactly this issue is and why we are receiving this notice. What specific information is being transferred that violates our policy and how do I instruct my client to remove it?

Ad Account ID ████████████

Thanks!

 Facebook

**A7-1655**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Hi,

Your pixel New Chapter's Pixel (Pixel ID: 1836078646653881) has one or more events that have been identified as sending Facebook data that may be violating Facebook's Business Tools Terms:

"You can't share customer data with Facebook that includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law)."

To help protect Facebook users' privacy, the information we detected has been removed. If these events were used to create custom conversions or Custom Audiences, any ad sets optimizing on these custom conversions or targeting these Custom Audiences may be affected.

Our aim is to help advertisers efficiently achieve their business goals while also maintaining a good consumer experience for people on Facebook. Therefore we have Business Tools Terms which you accept by using our tools such as Pixel, SDK & APIs.

We recommend you remove these parameters from the event code as soon as possible:

ViewContent:
height
scid
searchfor
q
oq

PageView:
filters
commit
scope
polymer

ViewCategory:
filters
polymer

You can email AdsToolsIntegrity@fb.com if you have questions.

Thanks,
The Facebook Business Team

**A7-1656**
**Brittney Gordon** | Client Solutions Manager | Team P&G
Facebook | 225 Park Ave South, New York NY 10003

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

mobile: ████████



**A7-1657**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# EXHIBIT 67

A7-1658

Message
_____

**From:**    Facebook [notification@facebookmail.com]
**Sent:**    11/18/2020 3:49:37 PM
**To:**    Rebecca Reza [rebeccareza@fb.com]
**Subject:**    Your pixel's events are potentially violating Facebook's Business Tools Terms

 **Facebook**

Hi,

Your pixel Ohio Health's Pixel (Pixel ID: 200644734032211) has one or more events that have been identified as sending Facebook data that may be violating Facebook's Business Tools Terms:

"You can't share customer data with Facebook that includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law)."

To help protect Facebook users' privacy, the information we detected has been removed. If these events were used to create custom conversions or Custom Audiences, any ad sets optimizing on these custom conversions or targeting these Custom Audiences may be affected.

Our aim is to help advertisers efficiently achieve their business goals while also maintaining a good consumer experience for people on Facebook. Therefore we have Business Tools Terms which you accept by using our tools such as Pixel, SDK & APIs.

We recommend you remove these parameters from the event code as soon as possible:

Click to Register for Class or Event:
cne_filter_cat

Purchase:
filters
scope
gender
q

Schedule Appt Online Completion:
gender

Contact:
gender
filters
affiliation
q
qs
hosp

**A7-1659**
hosp

    PIXEL_HEALTH000019168

Learn More:

filters

gender

searchfor

scid

_t_q

q

u

pq

oq

H&V FAD Click - Main:

filters

Click to Call:

gender

filters

q

qs

hosp

affiliation

Click for Directions:

gender

filters

q

pq

Click to Find a Doctor:

gender

filters

scope

searchfor

affiliation

q

pq

hosp

oq

PageView:

gender

q

filters

scope

caps

scid

reserved

**A7-1660**

scale

start

PIXEL_HEALTH000019169

height
affiliation
hosp
pq
searchfor
qpvt
u
oq
qs
cne_filter_cat
cne_filter_loc
title
caption
locations
_t_q
aspxerrorpath
as_q
query
qq
sbq
+Reconstructive+Surgery
affl
cm_mmc
+Cardiac+Surgery
sc

Click to Schedule Online:
gender
filters
affiliation
searchfor
hosp

FindLocation:
scope

You can email AdsToolsIntegrity@fb.com if you have questions.

Thanks,
The Facebook Business Team

This message was sent to rebeccareza@fb.com at your request.
Facebook, Inc., Attention: Community Support, 1 Facebook Way, Menlo Park, CA 94025



**A7-1661**

PIXEL_HEALTH000019170

# EXHIBIT 68

A7-1662

---

**Message**

---

| | |
|---|---|
| **From**: | Brayton Deckard [/O=THEFACEBOOK/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=342051883B7F4C009638A6CA18322268-BRAYTONDECKA] |
| **Sent**: | 11/18/2022 12:23:11 PM |
| **To**: | ███████████████████ |
| **Subject**: | Re: Urgent Q: Hashing |
| **Attachments**: | launch_banner.png; image001.gif; Meta DUSG.pdf |

Hi Carolina,

I've attached Meta's Data Use & Security Guide that addresses hashing and its relationship with several process (Advanced Matching, Custom Audiences, etc) within. Let me know if this is helpful in answering your question. If there is anything not covered in the guide, I'd be happy to pass along those questions to our Legal team.

Thanks!

 **Meta**
**Brayton Deckard**
Account Manager | Health
607 W. 3rd St, Austin, TX 78701
[Meta](#) | Mobile ████████████████
Upcoming OOO/Office Closures: 11/24-11/27, 11/29-12/6, 12/16-1/2
For technical issues and/or possible bugs, please reach out directly to [Concierge](#).
Stay up-to-date on Facebook/Instagram news by [signing up for our weekly product emails](#).

---

**From:** Carolina Ocampo ██████████████████████
**Date:** Thursday, November 17, 2022 at 1:28 PM
**To:** Brayton Deckard ███████████████████████████
**Subject:** Urgent Q: Hashing

---

**This Message Is From an External Sender**

---

Hi Brayton,

Hoping you could help with this question: We currently hash our data as SHA256 prior to uploading custom audiences onto Facebook. Could this mean the data can be unhashed, or how is it matched to Facebook's data if we're uploading it hashed?

--
Carolina Ocampo
Senior Growth Marketing Manager
twill.health

**A7-1663**



## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**A7-1664**

PIXEL_HEALTH000507939

# EXHIBIT 69

A7-1665

# MBG: Signals Integrity Questions & Feedback

**Rebecca Reza** on August 4, 2020 at 10:42 AM
## Your pixel's events are potentially violating Facebook's Business Tools Terms Hi Team! Not sure if this is an integrity or pixel question, so feel free to move! I've gotten the attached email for 3 clients within the past half hour - is there something going on causing these to come through? I've gotten them for one hospital (pixel 1560987200878878), one eCommerce business (Pixel 3297690910788884), and one recruiting service (pixel 628893493932044). I've never received anything like this for these clients before, so that and the number of emails I got in a short time period is making me question whether they are accurate! Thanks!

Hi,

Your pixel Club Staffing's Pixel (Pixel ID: 628893493932044) has one or more events that have been identified as sending Facebook data that may be violating Facebook's Business Tools Terms:

"You can't share customer data with Facebook that includes health, financial or other categories of sensitive information (including any information defined as sensitive under applicable law)."

To help protect Facebook users' privacy, the information we detected has been removed. If these events were used to create custom conversions or Custom Audiences, any ad sets optimizing on these custom conversions or targeting these Custom Audiences may be affected.

Our aim is to help advertisers efficiently achieve their business goals while also maintaining a good consumer experience for people on Facebook. Therefore we have Business Tools Terms which you accept by using our tools such as Pixel, SDK & APIs.

We recommend you remove these parameters from the event code as soon as possible:

PageView:
scope
filters
gender

**Butterfly** on August 4, 2020 at 10:42 AM
Hi Rebecca Reza, thank you for posting. We're following up in T71147392. [View Butterfly Rule](https://fburl.com/butterfly/ddp7bzdj)
**Ravikumar Rajendran** on August 4, 2020 at 10:45 AM
cc: Andrew to add more context here!
**Andrew Lim** on August 4, 2020 at 10:48 AM
Rebecca We have recently updated our notification mechanisms to include emails for sensitive data violations detected on incoming pixel data. Previously, we did not send email notifications for these violations although we were already enforcing on this data when it was detected. Currently, for sensitive data categories, we detect and enforce on health data, which we have flagged in your client's incoming data. Please refer to this GMS hub post for more details: https://fburl.com/gmshub/va82kz29.
**Andrew Lim** on August 4, 2020 at 10:50 AM
cc Arjun
**Rebecca Reza** on August 5, 2020 at 8:47 AM
Andrew thanks for your reply! I am a bit confused, though, as 2 of the 3 that I received emails for are unrelated to health. One is an eCommerce business selling oils, soaps, etc., and the other recruits travel nurses (but no health info would be required). Any idea why they would be lumped in this?
**Andrew Lim** on August 5, 2020 at 9:14 AM
Rebecca Each of the pixels had data we detected as health being sent from a domain that was categorized as being a health domain under OFA policy (see https://fburl.com/wiki/exj6fioz). For pixel 628893493932044, the clubstaffing.com domain had been marked as a health domain by our human raters. Likewise for pixel 3297690910788884, the saje.com domain had been marked as a health domain by our human raters at the time of detection. The advertiser can continue sending these events but our enforcement will redact the values for the parameters detected to contain health data.
**Rebecca Reza** on August 5, 2020 at 9:55 AM
Andrew Lim Got it - so does this affect delivery/attribution at all? If yes, is there a way to see what parameters being passed back are the problem (I truly don't believe saje.com should be marked as health)?
**Andrew Lim** on August 5, 2020 at 10:01 AM
Rebecca it shouldn't affect delivery or attribution. I think saje.com has been more recently rated by our human reviewers as non-health, so I'll look at removing the enforcement. The parameters should be listed in the email. The actual violating values, however, are filtered out before logging so I can't provide those unfortunately.
**Rebecca Reza** on August 5, 2020 at 10:06 AM
Andrew Lim Thank you! For Saje it looks like it is page view, add to cart, and view content. Could you provide context on how the page view or content view might be passing back information we want to prevent? These are also included for the other two as well, so I'm curious!
**Andrew Lim** on August 5, 2020 at 11:40 AM
Rebecca There is PII detected in the URL query params for PageView and ContentView.
**Rebecca Reza** on August 5, 2020 at 11:41 AM
Andrew Lim Got it - do they also get a copy of the email I received, or do I need to pass along the info for them to remove the certain parameters?
**Andrew Lim** on August 5, 2020 at 11:46 AM
Rebecca For managed accounts, the email notification is only sent to the account manager, so you'll need to pass the information along.
**Rebecca Reza** on October 20, 2020 at 8:58 AM

**A7-1666**

Hi Team! Wanted to follow up on this with additional questions. 1. Do we have external comms for when the url is the issue (as opposed to the event setup)? 2. I'm receiving emails for pixels not owned by my clients (example: pixel 1503312269787647 - owned by an agency one of my clients uses; pixel 500050200578560 owned by an agency formerly used by my client). Can we update the emails to only get them for relevant pixels? Thanks! cc Ravikumar Rajendran

**Julian Castaneda** on October 20, 2020 at 10:10 AM

Hi team - +1 Rebecca's comment above. I've received 20+ emails in the last hour alone and would love to advise clients on how to address this. I'm also receiving emails for clients that are not tagged to my book of business (i.e. South Shore Health CRMID ███████████ and Great Expressions Dental Center CRMID ███████████████ is there a reason for that? Thank you!

**Ravikumar Rajendran** on October 20, 2020 at 3:17 PM

Rebecca, Thanks for reaching out. 1. We don't have any external comms / help center articles at this point around these violations. But, we are actively working on in-product notifications (read events manager diagnostics) that would include details on "what can the advertiser do" to fix the violations. For now, please refer to https://fburl.com/wiki/mb2qjqbt (specifically points #5 & #6 for helping to clarify on a case by case basis) cc: Akhilesh 2. The gap in mapping to the right account managers is something that we are actively working to fix as well (cc: Yunfeng Nidhi). But, in the mean time, please ignore / redirect the emails if you aren't the right POC. Thanks for understanding! Let me know if there are more questions!

**Ravikumar Rajendran** on October 20, 2020 at 3:17 PM

Julian, Please refer to my response above & let me know of any additional questions!

**Yumi Taguchi** on November 18, 2020 at 10:49 AM

Hi Ravikumar! Can you help to clarify potential performance impact of the violations? I see in the Health Data guidelines that "Any campaigns and their targeting parameters relying on this data could also be affected" - is it that performance comes to a full halt? I'd like to better understand this to clarify to my clients what the timeline should be to make changes. Thanks.

**A7-1667**

CONFIDENTIAL

PIXEL_HEALTH000216393

# EXHIBIT 70

A7-1668

## MBG: Pixel Questions & Feedback

🗃 Open group · 1,670 members    [Join] [···] [▣]

Posts    Files    More ▾

🔍 Search group...

---

**Irene Ocariz Sanchez**
September 25, 2023 · 🌐    ···

### SHARING HEALTH DATA?

Hi team, my client has received this email saying that they found that their pixel is sending health data and could be against our policies. The email mentions that this could affect the performance of their campaigns.

They are a service company for hiring homecarers for the elders, but they don´t share any health data with us through the pixel.

Does anyone have any insights towards this? What does the client have to do exactly?

Pixel ID: 976035317017842

Ad account ID: ███████████



4 comments    Seen by 305

👍 Like        💬 Comment        ↗ Share

**A7-1669**

---

CONFIDENTIAL    PIXEL_HEALTH001238832

 **Kenneth Oghenevwoke Edoka**
Hi **Irene Ocariz Sanchez**, Thanks for Posting!

I have checked the pixel ID: 976035317017842 and could can see in the events manager, potentially violating health data have been detected in 2 events that may not comply with our terms and policies.

Compliant data protects your users and keeps their information usable and beneficial for your business. To make sure you send us compliant data in the future, review our health data requirements.

To protect the privacy of your users, we haven't stored this data in our ad systems and you won't be able to view or use it. This may impact the performance of any ads optimizing on the affected events, including those in custom audiences or custom conversions.

The 2 events affected have been highlighted in events manager (See attached) and the potentially violating health data being sent is located for 2 of the affected events on URL Query Parameter: device for PageView and Contact at URL Query Parameter: Serv

The device and Serv are the URL parameter for the events where the potentially violating health data have been detected.

Kindly advise the client to review each event to determine if any potentially violating health data is being sent. If it is, then they should remove it.

See this HC article About Sensitive Health Information:
https://www.facebook.com/business/help/361948878201809...

I hope this clarifies. Let me know if you have any questions about this. Thank you.



1y     Like     Reply     **Mark as Answer**

 **Irene Ocariz Sanchez** 🔵
Hi Kenneth, the problem over here is that the client has reviewed these but they aren´t sending any. Can you please provide any insights? thanks

1y     Like     Reply     **Mark as Answer**

**A7-1670**

PIXEL_HEALTH001238833

**Irene Ocariz Sanchez** 🌐
**Kenneth Oghenevwoke Edoka** Here is their URL so you can check how they arent sending any health data. What can be done then??
https://hola.senniors.com/?utm_source=fads...

HOLA.SENNIORS.COM
Senniors ® | Cuidados a domicilio de personas mayores y dependientes

1y   Like   Reply   Mark as Answer   Edited

Reply to Kenneth Oghenevwoke Edoka...



**Alessandro Buccino**
Hey **Irene** how did you fix this in the end? My client is receiving the same alert without sending any data that is not allowed. Thanks!

1y   Like   Reply   Mark as Answer

Write a comment...

**A7-1671**

PIXEL_HEALTH001238834

# EXHIBIT 71

A7-1672



# MBG: Pixel Questions & Feedback

💼 Open group · 1,670 members

**Posts**   **Files**   **More** ▼

🔍 Search group...

**[ Join ]**   **···**   ▣

---

**Nick Coccia** uploaded a file.
October 16, 2023 · 📷

My client received the attached email saying "potentially violating personal data has been detected coming from the pixel: Mopar Pixel (ID: 587045499176177). Is this a legit email and if so, what do they need to do?

Mopar Pixel ID: 587045499176177

Mopar Ad Account: ████████████

> Hi Nicole,
>
> Potentially violating personal data has been detected coming from the pixel: Mopar Pixel (ID: 587045499176177). This information may not comply with Meta's terms and policies. To help protect Meta users' privacy, this information has been blocked and you will not be able to view or use it.
>
> This issue may impact the performance of any ads optimizing on affected events, including those used in Custom Audiences or custom conversions.
>
> To view more information, including which events are affected, the URL where these events occurred, where the potentially violation information was found and how to remove the information from your events, go to Events Manager.
>
> **Go to Events Manager**
>
> Regards,
> The Meta Business Team
>
> This message was sent to nic.r.scott@gmail.com. If you don't want to receive these emails from Meta in the future, please unsubscribe.
> Meta Platforms, Inc., Attention: Community Support, 1 Meta Way, Menlo Park, CA 94025

👍 1                                   2 comments   Seen by 195

👍 Like            💬 Comment            ↪ Share

---

**A7-1673**

CONFIDENTIAL                                                       PIXEL_HEALTH001238839



**Priyalata Pillay** ✔

Hi **Nick Coccia**,

Thanks for reaching out and apologies for the delay in response.

Meta TOS prohibits advertisers to send us sensitive data about users as plain text information along with their signal data. We have a system that detects and drops any sensitive data found in the signals being received by our systems. We are currently detecting the following categories of plain text information (this will be an expanding list):

First Name
Last Name
Date Of Birth
Password

Currently, we allow custom parameters as part of the pixel and app signals. More information here: https://developers.facebook.com/.../conversion-tracking.... Our system will detect the above sensitive data in the custom parameter section of the event traffic. Please note that we drop the sensitive data on receipt. This should have not have impact on running ads. Advertiser should fix their pixel events implementation to stop sending the keys which have sensitive data as part of custom parameters. If you look at the diagnostics tab (Events manager -> Data Sources -> Pixel -> Diagnostic ) it offers a solution to fix this.

Feel free to reach out if there are any other questions or concerns regarding this.

> **DEVELOPERS.FACEBOOK.COM**
> **Conversion Tracking - Meta Pixel - Documentation - Meta for Developers**

1y    Like    Reply    Mark as Answer

**Nick Coccia** 👤
⬤ **Priyalata Pillay** thanks so much for the info.

1y    Like    Reply    Mark as Answer

Reply to Priyalata Pillay...

Write a comment...

**A7-1674**

https://fb.workplace.com/groups/pixelquestionsandfeedback/permalink/25324253793863230/

2/2

CONFIDENTIAL

PIXEL_HEALTH001238840

# EXHIBIT 72

A7-1675



# MBG: Pixel Questions & Feedback

🗄 Open group · 1,670 members    **Join**    **···**

Posts    Files    More ▾

🔍 Search group...

---



**Sinead Collins**
November 13, 2023 · 👥    ···

**Review potentially violating health data - Incorrect warning on pixel - how to fix?**

HI team, similar to below reports - our client too has started to see an error message within events manager "Review potentially violating health data".

however there IS no health data being passed, the parameters being flagged are just normal parameters being passed back to enable their 3rd party reporting tool.

Therefore 2 Qs:
1) How do we fix this in order for this incorrect flags to be disabled?
2) Is there any neg performance or policy impact for the client just to ignore this incorrect warning?

piXel ID: 484173658451205

cc Luke Wilkins

**A7-1676**

                PIXEL_HEALTH001238841



 **Alessandro Buccino** ▶ MBG: Pixel Questions & Feedback

October 27, 2023 · 🏢

You've sent potentially violating health data to Meta

Hello team,

my client started receiving the attached alert even if they are not sending any potentially violating heath data - could you please help us understand why this is happening and how to fix?

Amplifon's Global Website Pixel (ID: 783242902039842)

Thanks!

**A7-1677**

CONFIDENTIAL

PIXEL_HEALTH001238842

11 events that may not comply with our

their information usable and beneficial for
liant data in the future, review our health

stored this data in our ad systems and you

Hi Alan,

Potentially violating health data has been detected coming from the pixel: Amplifon's Global Website Pixel (ID: 783242902039842). This information may not comply with Meta's terms and policies. To help protect Meta users' privacy, this information has been blocked and you will not be able to view or use it.

This issue may impact the performance of any ads optimizing on affected events, including those used in Custom Audiences or custom conversions.

To view more information, including which events are affected, the URL where these events occurred, where the potentially violation information was found and how to remove the information from your events, go to Events Manager.

👍 1                                    2 comments   Seen by 211

👍 Like              💬 Comment              ↪ Share

**Ramasamy Nalainthiran** ✔
Hi **Sinead Collins**

Thank you for reaching out ,

Facebook TOS prohibits advertisers to send us sensitive data about users as plain text information along with their signal data. We have a system that detects and drops any sensitive data found in the signals being received by our systems. We are currently detecting the following categories of plain text information (this will be an expanding list):
First Name
Last Name
Date Of Birth
Password

Currently, we allow custom parameters as part of the pixel and app signals. More information here: https://developers.facebook.com/.../conversion-tracking.... Our system will detect the above sensitive data in the custom parameter section of the event traffic.

Please note that we drop the sensitive data on receipt. This should have not have impact on running ads.
Advertiser should fix their pixel events implementation to stop sending the keys which have sensitive data as part of custom parameters.
If you look at the diagnostics tab (Events manager -> Data Sources -> Pixel -> Diagnostic ) it offers a solution to fix this.

Be aware that related issues may be slightly different depending on the info collected.

External Resource: https://www.facebook.com/business/help/1057016521436966...

Regards,
Nalain
PSA Analyst - BMM

**A7-1678**



DEVELOPERS.FACEBOOK.COM

**Conversion Tracking - Meta Pixel - Documentation - Meta for Developers**

1y  **Like  Reply  Mark as Answer**

**Sinead Collins**
**Ramasamy Nalainthiran** thank you, But none of these parameters/sensitive data are being passed back by the tools I can see. Are you saying you ARE able to see that the client is sending us back sensitive data? If so can you share with me exactly what that sensitive data is? Or link to where I can see it?

Thanks

1y  **Like  Reply  Mark as Answer**

Reply to Ramasamy Nalainthiran...

Write a comment...

**A7-1679**

PIXEL_HEALTH001238844

# EXHIBIT 73

A7-1680



## MBG: Pixel Questions & Feedback

Open group · 1,670 members

Posts    Files    More ▾

Search group...

Join    ···

**Camille Peggs-Dargan** ✓
January 30, 2024 · 💼

Hello Team,

My client received an email stating that they potentially sent violating health data to Meta. This is the exact message:

Potentially violating health data has been detected coming from the pixel: Albertsons - All Banners (ID: 932885930520326)

Can someone please investigate this for my client?

Thanks!

2 comments    Seen by 232

👍 Like        💬 Comment        ↗ Share

**Butterfly** 🤖
If this post is about Signals Integrity (team that informs advertisers that they may have sent people's potentially sensitive PII, UII, health, finance, or similar data) questions, please use the Move Bot to move the post to "MBG: Signals Integrity Feedback and Questions"
View Butterfly Rule

1y    Like    Reply    Mark as Answer

**A7-1681**



**Fang Zhe Ding**
Hi ✔ Camille Dargan,

Thanks for posting and apologies for the delays in response!

This is because the client will have to review the details of the diagnostic and determine if any potentially violating health data is being sent. They will need to remove any sensitive health data being sent to Facebook in order to resolve the problem.

We sanitize any information we deem as potentially violating terms. The events will not be dropped, only the fields containing sensitive information will be sanitized before getting processed. The potential impact of a delay in fixing such violation issues, the campaign will not be impacted unless the filtered data are used in Custom Audience and Custom Conversion.

Facebook TOS prohibits advertisers from sending us sensitive data about users as plain text information along with their signal data. We have a system that detects and drops any sensitive data found in the signals being received by our systems. We are currently detecting the following categories of plain text information (this will be an expanding list):
- First Name
- Last Name
- Date Of Birth
- Password
Currently, we allow custom parameters as part of the Pixel and app signals.

The client will have to review the details of the diagnostic and determine if any potentially violating health data is being sent. They will need to remove any sensitive health data being sent to Facebook in order to resolve the problem. Please note that we are not able to advise on website configuration settings, the client will need to speak with their developer.

If you click "See details" it will list the Potential Violation Details and next steps to take to address the warning. These steps are not something that we can help support, the client will have to do so themselves or through their web developer. Please note that we drop the sensitive data on receipt. This should not have an impact on running ads.

You may share the Help Center articles below with the client for reference purposes:
How to troubleshoot Meta Pixel error and warning messages in Meta Events Manager
https://www.facebook.com/business/help/490934944618455
About prohibited information
https://www.facebook.com/business/help/361948878201809

**A7-1682**

Kindly follow these instructions and feel free to reach out if you have any further questions. Thank you!



**FACEBOOK.COM**

How to troubleshoot Meta Pixel error and warning messages in Events Manager | Meta Business Help Center

1y   **Like**   **Reply**   **Mark as Answer**

Write a comment...

**A7-1683**

# EXHIBIT 74

A7-1684

# MBG: Signals Integrity Questions & Feedback

🗄 Open group · 276 members    [Join] [···] [▢]

**Posts**    Files    More ▾    🔍 Search group...

---

**Emma Fabre**
August 29, 2024 · 🏷    ···

Hi team,

My advertiser received an alert stating that their pixel might be sharing data containing sensitive health data.

Pixel ID: 597447468252565

We are quite unsure of where this is coming from: is it coming from specific events or parameters? Do we categorize the data by event or by the data source as a whole (pixel)?

Their pixel is being used on several domains so they'd like to know if they need to check only specific events or all events related to this pixel.

Thanks,

                                                            5 comments    Seen by 123

👍 Like          💬 Comment          ↗ Share

---

**Butterfly** 🤖
If this post is about Signals Integrity (team that informs advertisers that they may have sent people's potentially sensitive PII, UII, health, finance, or similar data) questions, please use the Move Bot to move the post to "MBG: Signals Integrity Feedback and Questions"
View Butterfly Rule

23w    Like    Reply

> **Emma Fabre** 👤
> #movebot MBG: Signals Integrity Questions & Feedback
> 23w    Like    Reply
>
> Reply to Butterfly...    🤖 📹 😊 </> 📎 ✨ 😊

---

**Move Bot**
Alrighty **Emma Fabre**, I moved this post from **MBG: Pixel Questions & Feedback** to **MBG: Signals Integrity Questions & Feedback**.

23w    Like    Reply

**A7-1685**

CONFIDENTIAL                                          PIXEL_HEALTH001238751

**Butterfly** 🦋
Hi **Emma Fabre**, thank you for posting. We're following up in T200270968.
View Butterfly Rule

23w  **Like**  **Reply**

**John Joshua Aragoncillo** ✓
Hi **Emma**,

Thanks for filing.

The Pixel is just JS code and anyone with dev tech knowledge can find it and pull it from a webpage and implement that JS on their own webpage. The sites listed in diagnostics have already been blocked so no action is needed for those domains. If we detect any Pixel fire coming from a prohibited domain, we drop that event and don't process it so we don't save that event/data.

The client may either set up an allow list or a block list. Please follow the below articles for more information.

Troubleshoot blocked website domains
https://www.facebook.com/business/help/286567199351533...

Manage Meta Pixel traffic permissions in Events Manager
https://www.facebook.com/business/help/278125336598935

Best practices for Meta Pixel traffic permissions
https://www.facebook.com/business/help/267505221173979

Feel free to reach back if you have further questions.



FACEBOOK.COM
**Troubleshoot Blocked Website Domains | Meta Business Help Center**

23w  **Like**  **Reply**



Write a comment...

**A7-1686**

PIXEL_HEALTH001238752

# EXHIBIT 75

A7-1687

# MBG: Pixel Questions & Feedback

**Alex Eiter** on January 11 at 3:51 AM
## Incorrect Pixel Health Data Flag ## Hi team, My client MAYD (Pixel ID 388089996677933, BM ▮▮▮▮▮▮▮▮▮▮▮ is receiving the potentially violating health data flag in their events manager (see below). However, they've checked and the parameter that is being flagged is "platform" which is not sending health data. Could you let me know how this flag can be removed? There is no appeal function in Events Manager for this? Many thanks, Alex



**Bojja Siphala** on January 11 at 10:38 AM
Hi Alex Eiter, Thanks for posting. We sanitize any information we deem as potentially violating terms. The events will not be dropped, only the fields containing sensitive information will be sanitized before getting processed. The potential impact of a delay in fixing such violation issues, the campaign will not be impacted unless the filtered data are used in Custom Audience and Custom Conversion. The client will have to review the details of the diagnostic and determine if any potentially violating health data is being sent. They will need to remove any sensitive health data being sent to Facebook in order to resolve the problem. If you click "See details" it will list the Potential Violation Details and next steps to take to address the warning. These steps are not something that we can help support, the client will have to do so themselves or through their web developer. I will share you two help center articles where you can view some useful information along with solution for this issue. Troubleshoot Facebook pixel error and warning messages: https://www.facebook.com/business/help/490934944618455... For best practices: https://developers.facebook.com/.../conversion.../parameters

**Alex Eiter** on January 12 at 1:44 AM
Hi Bojja thanks for your reply. So if they have fixed this - the message will disappear on its own in a few days? In Events Manager last time a potentially violating info was sent was 10. January.

**Jeremy Koss** on March 28 at 10:22 AM
We would love your feedback on these alerts in order for us to understand more of how to close knowledge gaps and make this more user friendly. Would you mind filling out this survey https://www.internalfb.com/butterfly/form/507809331531159

**A7-1688**

# EXHIBIT 76

A7-1689

# MBG: Pixel Questions & Feedback

**Conrad Gibson** on April 6 at 9:01 AM
## Pixel Violation for Health Data We believe that our partner's pixel ID has been incorrectly restricted for PII (potentially related to health data) as the campaign is focused around Diabetes awareness. We tried to escalate this for additional support, but were directed to post here for further information. Partner name: The Advertising Council Pixel ID: 341950056293848? CC: Patrick Savoia

> **Khairul Anwar Md Noor** on April 6 at 9:37 PM
> Hi Conrad Thank you for posting! Facebook TOS prohibits advertisers to send us sensitive data about users as plain text information along with their signal data. We have a system that detects and drops any sensitive data found in the signals being received by our systems. We are currently detecting the following categories of plain text information (this will be an expanding list): First Name Last Name Date Of Birth Password Phone Number SSN Email Currently, we allow custom parameters as part of the pixel and app signals. More information here: https://developers.facebook.com/docs/facebook-pixel/implementation/conversion-tracking#parameters. Our system will detect the above sensitive data in the custom parameter section of the event traffic. Please note that we drop the sensitive data on receipt. This should not have impact on running ads. Advertiser should fix their pixel events implementation to stop sending the keys which have sensitive data as part of custom parameters. Advertiser may check the diagnostic tab for the fix. You may wish to read on the following article: https://www.facebook.com/business/help/1057016521436966 Let me know if you have any questions about this though please be aware I may not be able to confirm all details since this requires further investigation. Thank you! Have a great day! Thank you!
>
> **OutOfOffice Bot** on April 6 at 9:37 PM
> I'm sorry but Conrad Gibson is currently out of the office. His message is: I am out of the office returning Monday, April 10th. For urgent items please @notify otherwise I'll be in touch Monday. Cheers, Conrad
>
> **Samantha Weiss** on April 7 at 5:44 AM
> cc: Gunjan PaliwalStephanie Castillo
>
> **Stephanie Castillo** on April 7 at 8:40 AM
> Timely! Thanks for tagging. This is great info to surface.

**A7-1690**

# EXHIBIT 77

A7-1691



## Third Party (3P) Additional Data Sharing Restrictions & En...

🗄 Open group · 469 members · [Join] · [...] · [⊟]

**Posts**    **Files**    **More ▾**    🔍 Search group...

---

**Samantha Ellis**
January 29 at 9:36 AM · ~~T213877159 assigned to James Qian~~ · 🔒    •••

**JPMORGAN CHASE PIXEL ID: 3182946712002934 FLAG**

- Hi Team! My client JPMorgan Chase received an email that their data is being blocked due to violating data restrictions, specifically health care and wellness related products or services. However there are no specifics alerts in events manager nor were they on the impact list

- When I click into settings>manage data sources> I do see Walgreens is listed as a domain at the pixel, which would explain the alert. However when I go to overview and look at website, Walgreens isn't listed.

- Can the team help explain why Walgreens would be flagged as a restricted domain even though it appears the pixel isn't on the site? Any information I can pass along to my client would be appreciated



**A7-1692**

PIXEL_HEALTH001238827



**Websites**

This dataset is installed on 20 websites. View the total events being received from each website this dataset is installed on.

| Domain | Total Events |
|---|---|
| www.chase.com | 2.5M |
| secure.chase.com | 983.3K |
| homelendingadvisor.chase.com | 267.3K |
| secure05b.chase.com | 216 |
| secure04ea.chase.com | 66 |
| secure09ea.chase.com | 55 |
| secure07b.chase.com | 50 |
| secure07a.chase.com | 40 |

Close

source categories
gories of your data sources. We can use the data source's category to help us determine and restrict certain kinds of information you can share thro
This categorization can help ensure that the data you send to Meta is consistent with our Meta Business Tool Terms. For more information, including
applied to your data source, select View details. About the restrictions

| | Source | Category | Status | |
|---|---|---|---|---|
| | Website | Health & wellness provider | - | View |

👍 1                                          20 comments    Seen by 155

| 👍 Like | 💬 Comment | ↪ Share |

**Butterfly** 🦋
This post has been synced to T213877159: [Third Party (3P) Additional Data Sharing Restrictions & Enforcement Q&A] ## JPMOrgan Chase Pixel ID: 3182946712002934 Flag as tracking task.

2w   Like   Reply

**Butterfly** 🦋
Thank you for posting in the [Signals] : Data Sharing Restrictions; support by adpolicy@ & XFN, **Samantha**. A task has been created and the Adpolicy@ team will respond to your question in the task. Please leave the task up for grabs so it is triaged correctly.
View Butterfly Rule

2w   Like   Reply

**James Qian**
**Samantha Ellis**, they are not in scope to have any events blocked. Whatever is happening is not due to this enforcement. Can you please open a support ticket to get support looking at this asap?

1w   Like   Reply

**Samantha Ellis** 🔵
**James Qian** sure thing- should i submit an xfn request in CRM?

1w   Like   Reply

**James Qian**
**Samantha Ellis** Jeremy Koss?

1w   Like   Reply

**A7-1693**

Reply to Samantha Ellis...

Reply to James Qian...

**Jeremy Koss**

Is the main question why walgreens is appearing in the 'data source category' UI but the client doesn't actually have the pixel on that webpage?

The Meta Pixel is a piece of code that's made up of the base code and your pixel ID. When you add your pixel to your website, your pixel ID is public information. This means that other people can find your pixel ID, add it to the pixel base code and put it on their own website.

They should set up an allowlist (which will filter out from unwanted domains to prevent any of this information from potentially used downhill in production) so they don't end up in a situation where a fake, or non affiliated, website flags their whole pixel - if this has already been done then there would be no impact.

About Facebook Pixel Traffic Permissions
https://www.facebook.com/business/help/572690630080597
Manage Facebook Pixel Traffic Permissions in Events Manager
https://www.facebook.com/business/help/278125336598935
Best Practices for Facebook Pixel Traffic Permissions
https://www.facebook.com/business/help/267505221173979



FACEBOOK.COM
**About Meta Pixel traffic permissions | Meta Business Help Center**

1w    Like    Reply

**Samantha Ellis**
**Jeremy Koss** Thanks for the response. I also thought this was the case, as we've seen this with a few other pixels for the client and they have implemented allow lists for those pixels. However, the email notification the clients got alerting them of this was specific to the "Additional sharing restrictions and enforcement." Does that make a difference? Also, if the pixel is on walgreens, is there a reason it wouldn't show up on the websites of the pixel event overview page?

1w    Like    Reply    Edited

**Samantha Ellis**
**Jeremy Koss** any thoughts to my additional question?

1w    Like    Reply

**Samantha Ellis**
**Jeremy Koss** sorry to re-ping just hoping clarify before i respond to the client

**A7-1694**

1w  Like  Reply

 Reply to Samantha Ellis...

 **Mark Logan**
**Jeremy Koss** allowlist aside, how does this interaction work with idea of one categorized domain being the majority of traffic and applying the restrictions to the other non-categorized domains?

In this scenario if Walgreens is the majority of traffic could it screw up the other actual domains utilizing the pixel?

1w  Like  Reply

 **Mark Logan**
Hi **Sean** - interested in your thoughts on the above.

If a client has NOT established an allowlist/blocklist, could a pixel that was 'maliciously' put on another, unrelated but categorized website have the true intended domain impacted by the same restrictions due to how we're handling one pixel with multiple domains? (**https://fb.workplace.com/.../posts/892818382830537/...**)

6d  Like  Reply

 **Sean Sharma**
**Mark Logan** If they do not set up an allowlist/blocklist, they can potentially have core setup applied to the entire dataset due to the unrelated domain (if it's a large portion of their traffic compared to the real domain), but the other domain will not be affected by more-impacting restrictions (e.g., standard event blocking or full blocking)

6d  Like  Reply  Edited

 **Mark Logan**
**Sean Sharma** That's great to hear but contrary to what was previously communicated.

So there is never a scenario where a non-categorized domain would receive "mid-to-low" or "full" restrictions due to it being underneath the same pixel as a categorized domain? Regardless of traffic volume.

6d  Like  Reply

 **Sean Sharma**
**Mark Logan** there wouldn't be a scenario where a non-categorized domain would receive "mid-to-low" or "full" restrictions due to it being underneath the same pixel as a categorized domain but we still *strongly* recommend to set it up.

6d  Like  Reply                                                                ❤️

 **Mark Logan**
**Sean Sharma** Roger, thank you!

6d  Like  Reply

**A7-1695**

PIXEL_HEALTH001238830



**Jeremy Koss**
**Sean Sharma** - can you comment on this?

1w  Like  Reply

**Samantha Ellis**
**Sean Sharma** any thoughts?

1w  Like  Reply

**Samantha Ellis**
**Jeremy Koss Sean Sharma** bumping this again. The client is asking about the alert and I would love to respond with proper guidance. Thank you

1w  Like  Reply

**Sean Sharma**
**Samantha Ellis** The appeals window is cumulative so if a domain comes in at any point in their pixels lifespan then it will show up there. I suggest setting up an allowlist/blocklist if they do not want to see the domain.

1w  Like  Reply                                          2 👍

**Samantha Ellis**
**Sean Sharma** Appreciate you confirming. Thank you

1w  Like  Reply

Reply to Samantha Ellis...

Reply to Jeremy Koss...

Write a comment...

**A7-1696**

CONFIDENTIAL                                          PIXEL_HEALTH001238831

# EXHIBIT 78

A7-1697

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  GIBSON, DUNN & CRUTCHER LLP
   LAUREN R. GOLDMAN (*admitted pro hac vice*)
2  lgoldman@gibsondunn.com
   DARCY C. HARRIS (*admitted pro hac vice*)
3  dharris@gibsondunn.com
   200 Park Avenue
4  New York, NY 10166
   Telephone:    (212) 351-4000
5  Facsimile:    (212) 351-4035

6  ELIZABETH K. MCCLOSKEY, SBN 268184
   emccloskey@gibsondunn.com
7  ABIGAIL A. BARRERA, SBN 301746
   abarrera@gibsondunn.com
8  555 Mission Street, Suite 3000
   San Francisco, CA 94105
9  Telephone    (415) 393-4622
   Facsimile    (415) 801-7389
10
   ANDREW M. KASABIAN, SBN 313210
11 333 South Grand Avenue
   Los Angeles, CA 90071 USA
12 Telephone    (213) 229-7311
   Facsimile    (213) 229-6311
13 akasabian@gibsondunn.com

14 *Attorneys for Defendant Meta Platforms, Inc.*

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

15

16           **UNITED STATES DISTRICT COURT**
         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17                **SAN FRANCISCO DIVISION**

18 IN RE META PIXEL HEALTHCARE     Case No. 3:22-cv-03580-WHO
   LITIGATION
                                  CLASS ACTION
19 This Document Relates To:
                                  **DEFENDANT META PLATFORMS, INC.'S**
20 All Actions                    **FIRST SET OF SUPPLEMENTAL**
                                  **RESPONSES AND OBJECTIONS TO**
21                                **PLAINTIFFS' FIRST SET OF**
                                  **INTERROGATORIES**
22

23       **PROPOUNDING PARTY:  PLAINTIFFS**

24       **RESPONDING PARTY:    META PLATFORMS, INC.**

25       **SET NO.:    ONE**

26       Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), by

27 and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

28 Rules") 26 and 33, and the Civil Local Rules of the U.S. District Court for the Northern District of

**A7-1698**

Gibson, Dunn &
Crutcher LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

California ("Local Rules"), hereby provides the following supplemental responses and objections to Plaintiffs' First Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated February 9, 2023.

Meta provides these Supplemental Responses subject to and without waiving the responses and objections contained in its initial responses dated March 20, 2023 ("Initial Response"). Meta likewise provides these Supplemental Responses subject to the Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period in its Initial Response and incorporates them by reference as if asserted herein.

**INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify All Web-Properties with a HIPAA Notice that contained the Meta Pixel during the Relevant Time Period.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period identified in its Initial Response as though fully set forth in this Response. Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order, and will further supplement this response as appropriate. *See* Dkt. 276. Meta further objects to this Interrogatory on the following additional grounds raised in its Initial Response:

(A) Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable by plaintiffs from other sources.

(B) Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant to the claims in, or defenses to, this action and/or is disproportionate to the needs of the case. Meta has already stated that it does not have information within its possession, custody, or control regarding any entity's HIPAA status or the presence of a HIPAA notice on an entity's website, Meta does not have any systematic way to identify which entities that deployed the Pixel are covered by HIPAA, and Meta does not internally classify Meta Pixel users in a way that would enable Meta to identify "Web-Properties with a HIPAA Notice," and the Court denied

**A7-1699**

Gibson, Dunn &
Crutcher LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of

2  HIPAA coverage on providers' websites in order to respond to this interrogatory.  Dkt. 278 at 2.  In

3  accordance with the Court's June 16, 2023 decision, Meta's responses hereto, which concern

4  classifications within Meta that may, but do not necessarily, include entities covered by HIPAA, does

5  not render those entities relevant to this litigation.

6          (C)      Meta objects to this Interrogatory to the extent it calls for the disclosure of

7  confidential, proprietary, or trade secret information.  To the extent Meta responds with information

8  implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the

9  protective order entered in this case.

10         Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

11  discovery in this action, Meta responds as follows:

12         Meta incorporates its supplemental responses to Interrogatory No. 3 as if fully set forth herein.

13         Meta restates that it does not have information identifying "Web-Properties with a HIPAA

14  Notice," as defined in this Interrogatory, within its possession, custody, or control.  The Court denied

15  plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of

16  HIPAA coverage on providers' websites in order to respond to this Interrogatory.  Dkt. 278 at 2.

17         However, in accordance with the Court's June 16, 2023 order (Dkt. 278) and the discussions at

18  the May 23, 2023 discovery conference, Meta provides the following information regarding Meta's

19  internal health-related data and classifications that may, but do not necessarily, include entities that are

20  covered by HIPAA:  (1) the volume of websites classified as health-related in connection with Meta's

21  health-related integrity filtering process (as referenced in the Wooldridge Declaration (Dkt. 77-4 at ¶

22  8)), (2) the volume of websites that have been identified by Meta's health-related integrity filtering

23  system as sending potentially sensitive data, and (3) information regarding Meta's internal sales-related

24  classifications.  Meta reiterates that these data points and classifications are likely both underinclusive

25  and overbroad, the inclusion of an entity within these internal data points and classifications does not

26  mean that the entity is relevant to this litigation, and Meta provides this information solely "to facilitate

27  the identification of information responsive to Interrogatories Nos. 1 and 3."  Dkt. 278 at 2.

28         Regarding the first category, Meta states that, as of August 16, 2023, there were over 1.3 million

**A7-1700**

Gibson, Dunn &
Crutcher LLP

3

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

websites classified as health-related in connection with Meta's integrity filtering process.  Websites within the second category would be included in the first category.

Regarding the third category, Meta states that Meta's sales teams have internally classified certain advertisers into Meta-defined "verticals," "sub-verticals," and specialties for business accounting and management purposes.  These sales classifications are not based on Meta Pixel use.  Meta's sales verticals, sub-verticals, and specialties are organized according to the industry or sector to which an advertiser belongs.  The classifications are based on a combination of different information sources and processes—including at various times and in certain cases, human review during the sales onboarding process and descriptors of the advertiser's business that the advertiser self-selects when creating a Meta account.  Not all advertisers have received such classifications, and not all Pixel users have received such classifications.

For the purposes of responding to this Interrogatory, Meta is producing herewith a document bearing bates number PIXEL_HEALTH000000355, that contains all of Meta's sales verticals and sub-verticals, and Meta is identifying in the below chart the health-related sales verticals and sub-verticals that in its judgment may—but do not necessarily—include HIPAA-covered entities.

| Meta Sales Sub-Verticals That May Include HIPAA-Covered Entities | |
|---|---|
| Meta Sales Vertical | Meta Sales Sub-Vertical |
| Healthcare, Pharmaceuticals, and Biotech | Clinical Trials |
| Healthcare, Pharmaceuticals, and Biotech | Counseling & Psychotherapy |
| Healthcare, Pharmaceuticals, and Biotech | Health Systems and Practitioners |
| Healthcare, Pharmaceuticals, and Biotech | Health Tech |
| Healthcare, Pharmaceuticals, and Biotech | Medical Devices, Supplies, and Equipment |
| Healthcare, Pharmaceuticals, and Biotech | MedSpa, Elective Surgeries, Alternative Medicine |
| Healthcare, Pharmaceuticals, and Biotech | Non-Prescription |
| Healthcare, Pharmaceuticals, and Biotech | Prescription |

A7-1701

Gibson, Dunn &
Crutcher LLP

| Meta Sales Sub-Verticals That May Include HIPAA-Covered Entities | |
|---|---|
| Healthcare, Pharmaceuticals, and Biotech | Residential, Long-term Care Facilities and Outpatient Care Centers |
| Non-Profit | Chronic Conditions & Medical Causes[1] |

Meta states that in late 2019, Meta revised its sales classifications. Prior to that time, Meta had a "Pharmaceutical/Health" sub-vertical under a "Consumer Packaged Goods" vertical and a "Family & Health" sub-vertical under a "Professional Services" vertical that could have—but did not necessarily—include HIPAA-covered entities. When Meta revised its sales classifications in late 2019, "Pharmaceutical/Health" and "Family & Health" were merged into the "Healthcare, Pharmaceuticals, and Biotech" vertical identified above, and Meta categorized the advertisers therein into new sub-verticals. As part of Meta's changes to its sales classifications in late 2019, Meta retroactively classified advertisers into the sub-verticals listed in the table from as early as Q1 2018 through Q4 2019.

To provide a sense of the scale, the below chart identifies, by quarter, the approximate number of U.S.-based advertisers that Meta's sales teams classified in any of the above sub-verticals from Q1 2018 through Q2 2022 (January 1, 2018 through June 30, 2022). Because this information is kept on a quarterly basis, some advertisers may be classified in multiple quarters:

| Quarter | Approximate Number of Advertisers (non-unique) |
|---|---|
| Q2 2022 | 25,373 |
| Q1 2022 | 26,756 |
| Q4 2021 | 29,260 |
| Q3 2021 | 30,888 |
| Q2 2021 | 17,756 |
| Q1 2021 | 12,069 |
| Q4 2020 | 14,167 |

---

[1] The "Chronic Conditions & Medical Causes" sub-vertical is now part of the "Charitable" sub-vertical.

A7-1702

Gibson, Dunn & Crutcher LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| Quarter | Approximate Number of Advertisers (non-unique) |
|---------|-----------------------------------------------|
| Q3 2020 | 11,582 |
| Q2 2020 | 11,937 |
| Q1 2020 | 11,971 |
| Q4 2019 | 1,091 |
| Q3 2019 | 6,179 |
| Q2 2019 | 5,614 |
| Q1 2019 | 4,831 |
| Q4 2018 | 3,991 |
| Q3 2018 | 4,765 |
| Q2 2018 | 4,464 |
| Q1 2018 | 3,839 |

**INTERROGATORY NO. 3:**

Identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period identified in its Initial Response as though fully set forth in this Response. Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order, and will further supplement this response as appropriate. *See* Dkt. 276. Meta further objects to this Interrogatory on the following additional grounds raised in its Initial Response:

(A)    Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable by plaintiffs from other sources.

A7-1703

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant to the claims in, or defenses to, this action and/or is disproportionate to the needs of the case.  Meta has already stated that it does not have information within its possession, custody, or control regarding any entity's HIPAA status or the presence of a HIPAA notice on an entity's website, Meta does not have any systematic way to identify which entities that deployed the Pixel are covered by HIPAA or the CMIA, and Meta does not internally classify Meta Pixel users in a way that would enable Meta to identify "Medical Provider Web-Properties," as defined by plaintiffs, and the Court denied plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of HIPAA or CMIA coverage on providers' websites in order to respond to this Interrogatory.  Dkt. 278 at 2.

(C)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information.  To the extent Meta responds with information implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the protective order entered in this case.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

Meta incorporates by reference the information provided in the Supplemental Response to Interrogatory No. 1 above, and restates its objection that this Interrogatory is overbroad and unduly burdensome given the information provided in the Supplemental Response to Interrogatory No. 1.

A7-1704

Gibson, Dunn &
Crutcher LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

DATED: August 18, 2023

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant*

A7-1705

Gibson, Dunn &
Crutcher LLP

# EXHIBIT 79

A7-1706

1   GIBSON, DUNN & CRUTCHER LLP            COOLEY LLP
    LAUREN R. GOLDMAN (*admitted pro hac vice*)   MICHAEL G. RHODES, SBN 116127
2   lgoldman@gibsondunn.com                rhodesmg@cooley.com
    DARCY C. HARRIS (*admitted pro hac vice*)   KYLE C. WONG, SBN 224021
3   dharris@gibsondunn.com                 kwong@cooley.com
    200 Park Avenue                        CAROLINE A. LEBEL, SBN 340067
4   New York, NY 10166                     clebel@cooley.com
    Telephone:    (212) 351-4000           3 Embarcadero Center, 20th Floor
5   Facsimile:    (212) 351-4035           San Francisco, CA 94111-4004
                                           Telephone:   (415) 693-2000
6   ELIZABETH K. MCCLOSKEY, SBN 268184     Facsimile:   (415) 693-2222
    emccloskey@gibsondunn.com
7   ABIGAIL A. BARRERA, SBN 301746
    abarrera@gibsondunn.com
8   555 Mission Street, Suite 3000
    San Francisco, CA 94105
9   Telephone    (415) 393-4622
    Facsimile    (415) 801-7389
10
    ANDREW M. KASABIAN, SBN 313210
11  333 South Grand Avenue
    Los Angeles, CA 90071 USA
12  Telephone    (213) 229-7311
    Facsimile    (213) 229-6311
13  akasabian@gibsondunn.com

14  *Attorneys for Defendant Meta Platforms, Inc.*

15

16              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
17                 SAN FRANCISCO DIVISION

18  IN RE META PIXEL HEALTHCARE          Case No. 3:22-cv-03580-WHO
    LITIGATION
19                                       CLASS ACTION
    _____
    This Document Relates To:            **DEFENDANT META PLATFORMS, INC.'S**
20                                       **THIRD SET OF SUPPLEMENTAL**
    All Actions                          **RESPONSES AND OBJECTIONS TO**
21                                       **PLAINTIFFS' FIRST SET OF**
                                         **INTERROGATORIES**
22

23      **PROPOUNDING PARTY:  PLAINTIFFS**

24      **RESPONDING PARTY:    META PLATFORMS, INC.**

25      **SET NO.:    ONE**

26          Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), by

27  and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal

28  Rules") 26 and 33, and the Civil Local Rules of the U.S. District Court for the Northern District of

**A7-1707**

Gibson, Dunn &
Crutcher LLP

California ("Local Rules"), hereby provides the following supplemental responses and objections (the "Supplemental Responses") to Plaintiffs' First Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated February 9, 2023.

Meta provides these Supplemental Responses subject to and without waiving the responses and objections contained in its initial responses dated March 20, 2023 ("Initial Response") and its First and Second Sets of Supplemental Responses and Objections dated August 18, 2023.  Meta likewise provides these Supplemental Responses subject to the Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period in its Initial Response and incorporates them by reference as if asserted herein.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify All Web-Properties with a HIPAA Notice that contained the Meta Pixel during the Relevant Time Period.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:  (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY)

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period identified in its Initial Response as though fully set forth in this Response.  Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order, and will further supplement this response as appropriate.  *See* Dkt. 276.  Meta further objects to this Interrogatory on the following additional grounds raised in its Initial Response:

(A)    Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable by plaintiffs from other sources.

(B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant to the claims in, or defenses to, this action and/or is disproportionate to the needs of the case.  Meta has already stated that it does not have information within its possession, custody, or control regarding any entity's HIPAA status or the presence of a HIPAA notice on an entity's website, Meta does not have any systematic way to identify which entities that deployed the

Pixel are covered by HIPAA, and Meta does not internally classify Meta Pixel users in a way that would enable Meta to identify "Web-Properties with a HIPAA Notice," and the Court denied plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of HIPAA coverage on providers' websites in order to respond to this Interrogatory.  Dkt. 278 at 2.  In accordance with the Court's June 16, 2023 decision, Meta's responses hereto, which concern classifications within Meta that may, but do not necessarily, include entities covered by HIPAA, does not render those entities relevant to this litigation.

(C)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information.  To the extent Meta responds with information implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the protective order entered in this case.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

Meta incorporates its Supplemental Response to Interrogatory No. 3 as if fully set forth herein.

Meta restates that it does not have information identifying "Web-Properties with a HIPAA Notice," as defined in this Interrogatory, within its possession, custody, or control.  The Court denied plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of HIPAA coverage on providers' websites in order to respond to this Interrogatory.  Dkt. 278 at 2.

However, in accordance with the Court's June 16, 2023 order (Dkt. 278) and the discussions at the May 23, 2023 discovery conference, Meta provides the following information regarding Meta's internal health-related data and classifications that may, but do not necessarily, include entities that are covered by HIPAA:  (1) the volume of websites classified as health-related in connection with Meta's health-related integrity filtering process (as referenced in the Wooldridge Declaration (Dkt. 77-4 at ¶ 8)), which includes websites that have been identified by Meta's health-related integrity filtering system as sending potentially sensitive data, and (2) information regarding Meta's internal sales-related classifications.  Meta reiterates that these data points and classifications are likely both underinclusive and overbroad, the inclusion of an entity within these internal data points and classifications does not mean that the entity is relevant to this litigation, and Meta provides this information solely "to facilitate

the identification of information responsive to Interrogatories Nos. 1 and 3." Dkt. 278 at 2.

Regarding the first category, Meta states that, as of August 16, 2023, there were over 1.3 million websites classified as health-related in connection with Meta's integrity filtering process. Meta supplements its response with <u>Exhibit 1</u> which is a list of the websites classified as health-related in connection with Meta's integrity filtering process as of August 16, 2023. Meta reiterates that the inclusion of an entity in Exhibit 1 does not mean that the entity is relevant to this litigation.

Regarding the second category, Meta states that Meta's sales teams have internally classified certain advertisers into Meta-defined "verticals," "sub-verticals," and specialties for business accounting and management purposes. These sales classifications are not based on Meta Pixel use. Meta's sales verticals, sub-verticals, and specialties are organized according to the industry or sector to which an advertiser belongs. The classifications are based on a combination of different information sources and processes—including at various times and in certain cases, human review during the sales onboarding process and descriptors of the advertiser's business that the advertiser self-selects when creating a Meta account. Not all advertisers have received such classifications, and not all Pixel users have received such classifications.

For the purposes of responding to this Interrogatory, Meta previously produced a list of Meta's sales verticals and sub-verticals, and Meta identified in the below chart the health-related sales verticals and sub-verticals that in its judgment may—but do not necessarily—include HIPAA-covered entities.

At plaintiffs' request, Meta has included in this chart two additional verticals and sub-verticals: (1) Insurance / Health Insurance, and (2) Retail / Grocery, Drug, and Convenience. Meta reiterates its position that such classifications do not necessarily include HIPAA-covered entities.

| Meta Sales Sub-Verticals That May Include HIPAA-Covered Entities | |
|---|---|
| Meta Sales Vertical | Meta Sales Sub-Vertical |
| Healthcare, Pharmaceuticals, and Biotech | Clinical Trials |
| Healthcare, Pharmaceuticals, and Biotech | Counseling & Psychotherapy |
| Healthcare, Pharmaceuticals, and Biotech | Health Systems and Practitioners |

Gibson, Dunn & Crutcher LLP

| Meta Sales Sub-Verticals That May Include HIPAA-Covered Entities | |
|---|---|
| Healthcare, Pharmaceuticals, and Biotech | Health Tech |
| Healthcare, Pharmaceuticals, and Biotech | Medical Devices, Supplies, and Equipment |
| Healthcare, Pharmaceuticals, and Biotech | MedSpa, Elective Surgeries, Alternative Medicine |
| Healthcare, Pharmaceuticals, and Biotech | Non-Prescription |
| Healthcare, Pharmaceuticals, and Biotech | Prescription |
| Healthcare, Pharmaceuticals, and Biotech | Residential, Long-term Care Facilities and Outpatient Care Centers |
| Non-Profit | Chronic Conditions & Medical Causes[1] |
| Insurance | Health Insurance |
| Retail | Grocery, Drug, and Convenience |

Meta states that in late 2019, Meta revised its sales classifications. Prior to that time, Meta had a "Pharmaceutical/Health" sub-vertical under a "Consumer Packaged Goods" vertical and a "Family & Health" sub-vertical under a "Professional Services" vertical that could have—but did not necessarily—include HIPAA-covered entities. When Meta revised its sales classifications in late 2019, "Pharmaceutical/Health" and "Family & Health" were merged into the "Healthcare, Pharmaceuticals, and Biotech" vertical identified above, and Meta categorized the advertisers therein into new sub-verticals. As part of Meta's changes to its sales classifications in late 2019, Meta retroactively classified advertisers into the sub-verticals listed in the table from as early as Q1 2018 through Q4 2019.

Meta supplements its response with Exhibit 2 and Exhibit 3 which are lists of the U.S.-based advertisers that had Pixel fires between Q1 2018 and Q2 2022 that were classified in the verticals and sub-verticals listed in the above chart. Exhibit 2 includes the advertisers classified in the verticals and sub-verticals identified by Meta. Exhibit 3 includes the advertisers classified in the verticals and sub-verticals identified by plaintiffs. Meta reiterates that the inclusion of an advertiser in Exhibit 2 or Exhibit 3 does not mean that the advertiser is relevant to this litigation.

---

[1] The "Chronic Conditions & Medical Causes" sub-vertical is now part of the "Charitable" sub-vertical.

Gibson, Dunn & Crutcher LLP

**INTERROGATORY NO. 3:**

Identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period identified in its Initial Response as though fully set forth in this Response. Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order, and will further supplement this response as appropriate. *See* Dkt. 276. Meta further objects to this Interrogatory on the following additional grounds raised in its Initial Response:

(A)    Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable by plaintiffs from other sources.

(B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant to the claims in, or defenses to, this action and/or is disproportionate to the needs of the case. Meta has already stated that it does not have information within its possession, custody, or control regarding any entity's HIPAA status or the presence of a HIPAA notice on an entity's website, Meta does not have any systematic way to identify which entities that deployed the Pixel are covered by HIPAA or the CMIA, and Meta does not internally classify Meta Pixel users in a way that would enable Meta to identify "Medical Provider Web-Properties," as defined by plaintiffs, and the Court denied plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of HIPAA or CMIA coverage on providers' websites in order to respond to this Interrogatory. Dkt. 278 at 2.

(C)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information. To the extent Meta responds with information implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the protective order entered in this case.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

A7-1712

Meta incorporates by reference the information provided in the Supplemental Response to Interrogatory No. 1 above.

DATED: October 27, 2023                    Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: _/s/ Lauren R. Goldman_
    Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant*

A7-1713

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Manish Singhal, a Software Engineer at Meta, am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Third Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories. The responses were prepared by Meta's counsel with assistance from Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Third Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories is true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on October 27, 2023

_____

Manish Singhal

# EXHIBIT 80

A7-1715

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94105
Telephone     (415) 393-4622
Facsimile     (415) 801-7389

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO |
| | CLASS ACTION |
| This Document Relates To:<br><br>All Actions | DEFENDANT META PLATFORMS, INC.'S SIXTH SET OF SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:    ONE**

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules of the U.S. District Court for the Northern District of California ("Local Rules"), hereby provides the following supplemental responses and objections (the "Supplemental Responses") to Plaintiffs' First Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated February 9, 2023.

Meta provides these Supplemental Responses subject to and without waiving the responses and objections contained in its initial responses dated March 20, 2023 ("Initial Response") and its First through Fifth Sets of Supplemental Responses and Objections dated August 18, 2023, October 27, 2023, December 21, 2023, and March 22, 2024. Meta likewise provides these Supplemental Responses subject to the Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period in its Initial Response and incorporates them by reference as if asserted herein.

## INTERROGATORIES

### INTERROGATORY NO. 3:

Identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3: (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY)

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period identified in its Initial Response as though fully set forth in this Response. Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order, and will further supplement this response as appropriate. *See* Dkt. 276. Meta further restates and incorporates its response to Interrogatory No. 1 as stated in both its Initial Response and Supplemental Responses. Meta further objects to this Interrogatory on the following additional grounds raised in its Initial Response:

(A) Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable by plaintiffs from other sources.

(B) Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant to the claims in, or defenses to, this action and/or is disproportionate to the needs of the case. Meta has already stated that it does not have information within its possession, custody, or control regarding any entity's HIPAA status, Meta does not have any systematic way to identify which entities that deployed the Pixel are covered by HIPAA or the CMIA, and Meta does not internally classify Meta Pixel users in a way that would enable Meta to identify "Medical Provider

Web-Properties," as defined by plaintiffs, and the Court denied plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of HIPAA or CMIA coverage on providers' websites in order to respond to this Interrogatory. Dkt. 278 at 2.

(C)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information. To the extent Meta responds with information implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the protective order entered in this case.

In accordance with the Court's November 12, 2024 order (Dkt. 685), Meta supplements its response to Interrogatory No. 3 as follows. Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

With respect to Meta's internal health-related data and classifications that may, but do not necessarily, include entities that are covered by HIPAA, Meta previously provided, among other information, (1) the lists of the U.S.-based advertisers that had Pixel fires between Q1 2018 and Q2 2022 that were classified in potentially health-related sales verticals and sub-verticals identified by Meta and the plaintiffs (PIXEL_HEALTH000735430 and PIXEL_HEALTH000735431), and (2) the list of U.S.-based entities managed by the Meta US1-Health team for whom Meta received data from a pixel potentially associated with the entity during the periods from Q4 2018 through Q3 2019, and Q2 2020 through Q2 2023 (PIXEL_HEALTH000735435).

Meta reiterates that the inclusion of an advertiser on these lists does not mean that the advertiser is relevant to this litigation.

Regarding (1), Meta undertook a process to identify Pixel IDs and URLs, to the extent the information was available, for the entities previously identified in Meta's interrogatory responses that were categorized within the following sales verticals and sub-verticals: (1) Healthcare, Pharmaceuticals, and BioTech / Counseling & Psychotherapy, (2) Healthcare, Pharmaceuticals, and BioTech / Health Systems and Practitioners, (3) Healthcare, Pharmaceuticals, and BioTech / Prescription, and (4) Insurance / Health Insurance. To identify URLs, Meta first identified the Pixel IDs associated with the entities described above; Meta then searched within its systems for the URLs, as of August 2024, reflected in data that was transmitted to Meta via the Pixel connected to those

Pixel IDs. The URLs provided may or may not reflect historic URLs associated with the applicable Pixel IDs.

Accordingly, Meta produced the document bearing bates number PIXEL_HEALTH000735433, which included Pixel IDs and URLs, to the extent the information was available, associated with the previously-identified U.S.-based advertisers that had Pixel fires between Q1 2018 and Q2 2022 that were classified in the four aforementioned sales verticals and sub-verticals. Meta reiterates that the inclusion of an advertiser in PIXEL_HEALTH000735433 does not necessarily mean that the advertiser is relevant to this litigation.

Regarding (2), Meta undertook a process to identify Pixel IDs and URLs for these previously-identified entities managed by the US1-Health team. To identify URLs, Meta first identified the Pixel IDs associated with the entities described above; Meta then searched within its systems for the URLs, as of August 2024, reflected in data that was transmitted to Meta via the Pixel connected to those Pixel IDs. The URLs provided may or may not reflect historic URLs associated with the applicable Pixel IDs.

Meta produced PIXEL_HEALTH000735435 which listed the previously-identified U.S.-based entities managed by the Meta US1-Health team for whom Meta received data from a pixel potentially associated with the entity during the periods from Q4 2018 through Q3 2019, and Q2 2020 through Q2 2023, and that included Pixel IDs and URLs, to the extent that information was available. Meta reiterates that the inclusion of an entity in PIXEL_HEALTH000735435 does not necessarily mean that the entity is relevant to this litigation.

In addition, Meta agreed to undertake a process to identify the applications ("apps") classified as health-related in connection with Meta's health-related integrity filtering process. Meta reiterates that this list is likely both underinclusive and overbroad, the inclusion of an entity within this internal list does not mean that the application is relevant to this litigation, and Meta provided this information solely "to facilitate the identification of information responsive to Interrogatories Nos. 1 and 3." Dkt. 278 at 2.

Meta produced a document bearing bates number PIXEL_HEALTH000735434, which included the apps classified as health-related as of August 2024 in connection with Meta's health-

Gibson, Dunn &
Crutcher LLP

4

1   related integrity filtering process. This document includes the Application Name, App ID, and related

2   URL from the Apple Store and/or Google Play Store, to the extent such information was available.

3   The URLs included in this document are the URLs, as of August 2024, that are associated with the

4   App IDs in Meta's systems. These URLs may or may not reflect historic URLs associated with those

5   App IDs.  Meta reiterates that the inclusion of an app in PIXEL_HEALTH000735434 does not

6   necessarily mean that the app is relevant to this litigation.

7         Further, Meta agreed to undertake a process to identify apps that Meta's MegaTaxon

8   taxonomy classified in the "Health & Medical" category and/or subcategories within the "Health &

9   Medical" category.  Meta produced a document bearing bates number PIXEL_HEALTH000778051

10  reflecting this information. For plaintiffs' ease of reference, Meta also appended to this data the

11  Application Name and URL as of September 2024 from the Apple Store and/or Google Play Store

12  associated with each App ID, to the extent such information was available in Meta's systems.  These

13  URLs may or may not reflect historic URLs associated with the App IDs.  Meta reiterates that the

14  inclusion of an app in PIXEL_HEALTH000778051 does not mean that the app is relevant to this

15  litigation, and this list of apps is likely both underinclusive and overbroad.

16

17

18  DATED: November 22, 2024                Respectfully submitted,

19                                            GIBSON, DUNN & CRUTCHER LLP

20                                            By:  */s/ Lauren R. Goldman*

21                                               Lauren R. Goldman (*pro hac vice*)

22                                            *Attorneys for Defendant*

23

24

25

26

27

**A7-1720**

28

**VERIFICATION**

I, Manish Singhal, a Software Engineer at Meta, am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Sixth Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories. The responses were prepared by Meta's counsel with assistance from Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Sixth Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories is true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on November 22, 2024



A7-1721

Gibson, Dunn &
Crutcher LLP

# EXHIBIT 81

A7-1722

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone     (415) 393-4622
Facsimile     (415) 801-7389

*Attorneys for Defendant Meta Platforms, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S EIGHTH SET OF SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |
| All Actions | |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:     META PLATFORMS, INC.**

**SET NO.:     ONE**

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules of the U.S. District Court for the Northern District of California ("Local Rules"), hereby provides the following supplemental responses and objections (the "Supplemental Responses") to Plaintiffs' First Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated February 9, 2023.

A7-1723

Gibson, Dunn &
Crutcher LLP

1

Meta provides these Supplemental Responses subject to and without waiving the responses and objections contained in its initial responses dated March 20, 2023 ("Initial Response") and its First through Seventh Sets of Supplemental Responses and Objections. Meta likewise provides these Supplemental Responses subject to the Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period in its Initial and Supplemental Responses and incorporates them by reference as if asserted herein.

## INTERROGATORIES

### INTERROGATORY NO. 3:

Identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3: (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY)

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period identified in its Initial Response as though fully set forth in this Response. Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order. *See* Dkt. 276. Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable by plaintiffs from other sources.

(B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant to the claims in, or defenses to, this action and/or is disproportionate to the needs of the case. Meta has already stated that it does not have information within its possession, custody, or control regarding any entity's HIPAA status, Meta does not have any systematic way to identify which entities that deployed the Pixel are covered by HIPAA or the CMIA, and Meta does not internally classify Meta Pixel users in a way that would enable Meta to identify "Medical Provider Web-Properties," as as defined by plaintiffs, and the Court denied plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of HIPAA or CMIA coverage on providers' websites in order to respond to this Interrogatory. Dkt. 278 at 2. In accordance with the

Court's June 16, 2023 decision, Meta's responses hereto, which include classifications of entities that may, but do not necessarily, include entities covered by HIPAA, does not render those entities relevant to this litigation.

(C)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information.  To the extent Meta responds with information implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the protective order entered in this case.

(D)    Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, subject to any ongoing discovery in this action, and in accordance with the Court's November 12, 2024 order (Dkt. 685), Meta supplements its response to Interrogatory No. 3 as follows:

Meta incorporates its responses to Interrogatory Nos. 1 and 2.  As Meta has repeatedly explained, Meta does not maintain information that categorizes entities that send data via the Business Tools as HIPAA- and/or CMIA-covered.  Nonetheless, Meta has produced a significant amount of information that would allow plaintiffs to identify entities potentially relevant to their claims, including the following:

- A list of the websites classified as health-related in connection with Meta's health-related integrity filtering process as of August 16, 2023, *see* PIXEL_HEALTH000735429.

- A list of apps classified as health-related as of August 2024 in connection with Meta's health-related integrity filtering process, *see* PIXEL_HEALTH000735434.

- Lists of the U.S.-based advertisers that had Pixel fires between Q1 2018 and Q2 2022 that were classified in potentially health-related sales verticals and sub-verticals identified by Meta and plaintiffs, *see* PIXEL_HEALTH000735430 and

A7-1725

Gibson, Dunn &
Crutcher LLP

3

PIXEL_HEALTH000735431, and the Pixel IDs and URLs, to the extent the information was available, associated with those advertisers, *see* PIXEL_HEALTH000735433.

- A list of United States-based entities managed by the Meta US1-Health team for whom Meta received data from a Pixel potentially associated with the entity during the periods from Q4 2018 through Q3 2019, and Q2 2020 through Q2 2023, *see* PIXEL_HEALTH000735432, and the Pixel IDs and URLs, to the extent that information was available, associated with those entities, *see* PIXEL_HEALTH000735435.

- A document reflecting apps that Meta's MegaTaxon taxonomy predicted to be classified in the "Health & Medical" category and/or subcategories within the "Health & Medical" category, *see* PIXEL_HEALTH000778051.

- Results of queries for the following sentence: "THIS NOTICE DESCRIBES HOW MEDICAL INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED AND HOW YOU CAN GET ACCESS TO THIS INFORMATION," which comes from the HIPAA regulations at 45 CFR 164.520(b)(1)(i), in two Hive tables: (1) █████████████████ and (2) ████████████████████, *see* PIXEL_HEALTH000878421 and PIXEL_HEALTH000878423.

- A list of CatKit classifications for entities that Meta was able to link with the Pixel IDs in the lists identified by plaintiffs in their March 12, 2025 email, *see* PIXEL_HEALTH001238455.

- A list of domains and apps enrolled in Core Setup classified as health-related as of April 2025, *see* PIXEL_HEALTH001373343.[1]

- A list of domains, *see* PIXEL_HEALTH001373341, and a list of apps, *see* PIXEL_HEALTH001373339, classified as health-related as of May 4, 2025 under Meta's "SAE" taxonomy.

---

[1] Meta also produced a list of all Pixel IDs and app IDs enrolled in Core Setup, which includes Pixel IDs for which the developer opted in to Core Setup, *see* PIXEL_HEALTH001373344. Meta also previously produced documents identifying advertisers in Core Setup, which includes classifications of advertisers as, for example, "Healthcare, Pharmaceuticals, and Biotech" or "Health Insurance." *See* PIXEL_HEALTH000885209 and PIXEL_HEALTH000909601.

Gibson, Dunn & Crutcher LLP

A7-1726

- A list of domains, *see* PIXEL_HEALTH001373342, and a list of apps, *see* PIXEL_HEALTH001373340, classified as health-related as of May 4, 2025 under Meta's "RDTT" taxonomy,[2] and more detailed model leaf node predictions and human rater classifications under the RDTT taxonomy for those domains and apps, to the extent any existed, *see* PIXEL_HEALTH001379743 and PIXEL_HEALTH001379744. As noted previously, the column ████████████ in PIXEL_HEALTH001379743 and PIXEL_HEALTH001379744 reflects the confidence score associated with the model's prediction of the applicability of each RDTT leaf node category to the domain or app, and does not contain final assigned classifications. The information in the column ████████████ been converted to reflect the names of the leaf node categories, rather than the ID numbers that are used in this system in the regular course of Meta's business.

  o A document reflecting domains Meta identified by using the publicly available list published by the Centers for Medicaid Services ("CMS") that Meta understands lists hospital and non-hospital providers of Medicare and Medicaid services, *see* PIXEL_HEALTH001254917.[3] Meta also produced an earlier version of this document, *see* PIXEL_HEALTH001238456.

  o Recreated PixelMapper outputs for the period from February 17, 2023 to April 28, 2023, which reflect certain classifications of sessionized events, not domains or apps, generated by PixelMapper's processors, including MegaTaxon classifications, *see* PIXEL_HEALTH_CWD00001092 through PIXEL_HEALTH_CWD00002551.

---

[2] These classifications include patient portals classifications; this information is reflected in the classification "PATIENT_PORTAL" for domains and apps in the documents Meta produced. In plaintiffs' June 12 and July 18, 2025 letters, plaintiffs also asked that Meta "state the purpose of the list" produced in PIXEL_HEALTH001226742. As previously explained, this document was accessed via a hyperlink included in a previously produced document titled "Impact analysis of proactive blocking of URL." *See* PIXEL_HEALTH000490311; *see also* March 28, 2025 production email. The list produced in PIXEL_HEALTH001226742 was created as part of the previously identified process to block events that fire from URLs that included variations of "patient portal" or common patient portal names such as "mychart" in the URL.

[3] Plaintiffs' June 3, June 10, June 12, June 20, and July 18, 2025 letters refer to a "table/field" called "fdic_cmis_pixel" and request information about this "table/field." Based on a reasonable investigation, the tool pictured in PIXEL_HEALTH001331900 is deprecated, and Meta has not identified any information indicating that "fdic_cmis_pixel" reflected information different from the information in PIXEL_HEALTH001254917.

A7-1727

Gibson, Dunn &
Crutcher LLP

Meta incorporates by reference these documents pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from these documents will be substantially the same for plaintiffs as it would be for Meta. Meta reiterates that the inclusion of an entity (or an associated Pixel ID, app ID, domain/URL, or app) on these lists does not mean that the entity is relevant to this litigation or is covered by HIPAA or the CMIA.

Meta reserves the right to supplement its objections and response to this Interrogatory.

DATED: August 7, 2025                              Respectfully submitted,

                                                  GIBSON, DUNN & CRUTCHER LLP


                                                  By:  */s/ Lauren R. Goldman*
                                                       Lauren R. Goldman (*pro hac vice*)

                                                  *Attorneys for Defendant*

A7-1728

**VERIFICATION**

I, Manish Singhal, a Software Engineer at Meta Platforms, Inc. ("Meta"), am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Eighth Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories. The responses were prepared by Meta's counsel with assistance from Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Eighth Set of Supplemental Responses and Objections to Plaintiffs' First Set Interrogatories are true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on August 7, 2025

Signed by:

Manish Singhal

C634111517C84A3...

A7-1729

Gibson, Dunn &
Crutcher LLP

7

# EXHIBIT 82

A7-1730

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*admitted pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone     (415) 393-4622
Facsimile     (415) 801-7389

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL HEALTHCARE LITIGATION | Case No. 3:22-cv-03580-WHO |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S NINTH SET OF SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |
| All Actions | |

**PROPOUNDING PARTY:  PLAINTIFFS**

**RESPONDING PARTY:    META PLATFORMS, INC.**

**SET NO.:    ONE**

Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules of the U.S. District Court for the Northern District of California ("Local Rules"), hereby provides the following supplemental responses and objections (the "Supplemental Responses") to Plaintiffs' First Set of Interrogatories (each an "Interrogatory," and together, the "Interrogatories"), dated February 9, 2023.

Gibson, Dunn &
Crutcher LLP

1

Meta provides these Supplemental Responses subject to and without waiving the responses and objections contained in its initial responses dated March 20, 2023 ("Initial Response") and its First through Eighth Sets of Supplemental Responses and Objections. Meta likewise provides these Supplemental Responses subject to the Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period in its Initial and Supplemental Responses and incorporates them by reference as if asserted herein.

## INTERROGATORIES

**INTERROGATORY NO. 3:**

Identify all Medical Provider Web-Properties on which the Meta Pixel is or has been deployed and the time period during which the Meta Pixel was deployed on each Web-Property.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:** (**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**)

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, Objections to Instructions, and Objections to Relevant Time Period identified in its Initial Response as though fully set forth in these Supplemental Responses. Meta construes the Relevant Time Period in accordance with Judge DeMarchi's June 16, 2023 order. *See* Dkt. 276. Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory to the extent it seeks information equally or more readily obtainable by plaintiffs from other sources.

(B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant to the claims in, or defenses to, this action and/or is disproportionate to the needs of the case. Meta has already stated that it does not have information within its possession, custody, or control regarding any entity's HIPAA status, Meta does not have any systematic way to identify which entities that deployed the Pixel are covered by HIPAA or the CMIA, and Meta does not internally classify Meta Pixel users in a way that would enable Meta to identify "Medical Provider Web-Properties," as defined by plaintiffs, and the Court denied plaintiffs' request for an order compelling Meta to undertake the burden of searching for indicia of HIPAA or CMIA coverage on

Docusign Envelope ID: 93782504-E3D2-48D5-89B8-E68500640B5E

providers' websites in order to respond to this Interrogatory.  Dkt. 278 at 2.  In accordance with the Court's June 16, 2023 decision, Meta's responses hereto, which include classifications of entities that may, but do not necessarily, include entities covered by HIPAA, do not render those entities relevant to this litigation.

(C)    Meta objects to this Interrogatory to the extent it calls for the disclosure of confidential, proprietary, or trade secret information.  To the extent Meta responds with information implicating confidential, proprietary, or trade secret information, Meta does so in accordance with the protective order entered in this case.

(D)    Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, subject to any ongoing discovery in this action, Meta supplements its response to Interrogatory No. 3 as follows:

Meta incorporates its responses to Interrogatory Nos. 1 and 2.  As Meta has repeatedly explained, Meta does not maintain information that categorizes entities that send data via their use of the Business Tools as HIPAA- and/or CMIA-covered.  Nonetheless, Meta has produced a significant amount of information that would allow plaintiffs to identify entities potentially relevant to their claims, including a list of domains, *see* PIXEL_HEALTH001373342, and a list of apps, *see* PIXEL_HEALTH001373340, classified as health-related as of May 4, 2025 under Meta's Restricted Data & Topics Taxonomy ("RDTT").  Meta incorporates by reference these documents pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from these documents will be substantially the same for plaintiffs as it would be for Meta.  Meta reiterates that the inclusion of an entity (or an associated Pixel ID, app ID, domain/URL, or app) on these lists does not mean that the entity is relevant to this litigation or is covered by HIPAA or the CMIA.

Since at least 2019, Meta's Signals Integrity team has classified sources of Business Tool data

A7-1733

using a model that predicts the applicability of the categories in a taxonomy. Among other things, these classifications are used to determine whether to block or filter out Business Tool data that Meta receives out of Meta's systems. The taxonomy used by Signals Integrity for these purposes has changed over time. Meta's current version of the RDTT went into production for Signals Integrity source classification purposes in January 2025. This is the latest and current version of the taxonomy used for source classification for Signals Integrity purposes. The current version of the RDTT supplemented the previous version of the taxonomy, and it was designed to allow for more granular classifications through the inclusion of "leaf nodes" grouped under broader categories. For example, the previous version of the taxonomy as used by the Signals Integrity team included only one broad health-related classification: "HEALTH." Meta produced a list of domains, *see* PIXEL_HEALTH001373341, and a list of apps, *see* PIXEL_HEALTH001373339, classified as health-related as of May 4, 2025 using this previous version of the taxonomy.

With the current version of the RDTT, Signals Integrity now uses four new health-related categories: "GENERAL_HEALTH_AND_WELLNESS," "SPECIALIST_HEALTHCARE," "PATIENT_PORTAL," and "ADDICTION_AND_SELF_HARM." The current version of the RDTT as used by Signals Integrity also introduced more granular leaf nodes within each of those categories—for example, "Health Coverage" and "Healthcare Reference and Research" are leaf nodes grouped under the "GENERAL_HEALTH_AND_WELLNESS" category, and "Blood Donation" is a leaf node grouped under the "SPECIALIST_HEALTHCARE" category. *See* PIXEL_HEALTH001374882. However, for Signals Integrity source classification purposes, the level of information used in production is at the category-level and not the more granular leaf-node-level.

Meta's source classifications under the current version of the RDTT for Signals Integrity purposes are generally persistent and additive, so once a source like a domain or app is assigned a health-related classification under the current version of the RDTT, that classification persists in Meta's Signals Integrity systems; Business Tool data associated with that domain or app that is sent to Meta after that health-related classification is assigned may be blocked or filtered out by Meta's Signals Integrity systems going forward. The classifications Meta uses for Signals Integrity purposes are

stored in the tables domain_classification_sot and app_classification_sot.

When Meta receives Business Tool data associated with a new web domain or app, Meta first uses crawlers to crawl the website or app store page associated with the data source. These crawlers crawl the homepage of the domain of the URL associated with the event data received. For example, if Meta receives a Pixel fire associated with the URL https://topic.example.com/page, the crawlers will crawl the homepage at https://topic.example.com. These crawlers extract certain content from the HTML code, including the title of the page, the description of the page, and the body content of the page. The crawlers do not process images and do not visit subpages.

The extracted content is then processed by the model, which generates outputs in the form of a confidence score on how applicable each of the leaf nodes in the current version of the RDTT is to the domain or app. For purposes of determining whether to block or filter Business Tool data associated with the domain or app out of Meta's systems as health-related, Meta's Signals Integrity systems classify the domain or app under a particular category if the sum of all leaf node confidence scores under that particular category is greater than a preset threshold. For example, if the sum of the confidence scores associated with leaf nodes under the "SPECIALIST_HEALTHCARE" category exceed the threshold for that category, Meta would ultimately apply a classification of "SPECIALIST_HEALTHCARE" to that data source. If applicable, Meta's Signals Integrity systems may classify the domain or app under multiple categories. Meta previously produced these more detailed leaf node predictions under the current version of the RDTT for domains and apps, to the extent any existed. *See* PIXEL_HEALTH001379743 and PIXEL_HEALTH001379744. The column ███████████████████ in PIXEL_HEALTH001379743 and PIXEL_HEALTH001379744 reflects the confidence score associated with the model's prediction of the applicability of each RDTT leaf node to the domain or app.[1]

Classifications under the current version of the RDTT of domains and apps through the process described above are perpetually maintained in the Signals Integrity system so that associated Business Tool data may be blocked or filtered out of Meta's systems, unless a review of the classification is

---

[1]  The information in the column ████████████████ has been converted to reflect the names of the leaf node categories, rather than the ID numbers that are used in this system in the regular course of Meta's business.

triggered, such as when an appeal is submitted. For example, assume a domain receives a health-related RDTT classification through the process described above, resulting in certain Business Tool data associated with that domain being blocked or filtered out of Meta's systems. If the advertiser believes their data source is not in scope of a health-related classification, the advertiser may submit an appeal to Meta to reassess the classification. Multiple human reviewers (called "raters") independently review the domain of the URL associated with the event data received and determine which, if any, of the leaf nodes in the current version of the RDTT is the appropriate classification of that domain. The leaf node(s) suggested by the human reviewers are then used to determine whether it is appropriate to continue applying a health-related classification to the domain and, if so, which classification.

Meta reserves the right to supplement its objections and response to this Interrogatory.

DATED: October 31, 2025                     Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant*

A7-1736

Gibson, Dunn &
Crutcher LLP

**VERIFICATION**

I, Amirreza Saghafian, a Research Scientist at Meta Platforms, Inc. ("Meta"), am authorized to make this Verification on behalf of Meta. I have read Meta's foregoing Ninth Set of Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories. The responses were prepared by Meta's counsel with assistance from Meta's employees. My understanding is that these responses and information are based on records and information currently available. To the extent I do not have personal knowledge, I have relied on others to gather the information. Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Ninth Set of Supplemental Responses and Objections to Plaintiffs' First Set Interrogatories is true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on October 31, 2025

Signed by:

*Amirreza Saghafian*
BD3E396B86DA43F...

Gibson, Dunn &
Crutcher LLP

A7-1737

7

# EXHIBIT 83

A7-1738

1  **GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*admitted pro hac vice*)   ELIZABETH K. MCCLOSKEY, SBN 268184
2  lgoldman@gibsondunn.com                emccloskey@gibsondunn.com
DARCY C. HARRIS (*admitted pro hac vice*)   ABIGAIL A. BARRERA, SBN 301746
3  dharris@gibsondunn.com                 abarrera@gibsondunn.com
200 Park Avenue                        One Embarcadero Center, Suite 2600
4  New York, NY 10166                     San Francisco, CA 94111
Telephone:    (212) 351-4000           Telephone:    (415) 393-8200
5  Facsimile:    (212) 351-4035           Facsimile:    (415) 393-8306

6  *Attorneys for Defendant Meta Platforms, Inc.*

7

8                    **UNITED STATES DISTRICT COURT**
9            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                        **SAN FRANCISCO DIVISION**
10

11  IN RE META PIXEL HEALTHCARE          Case No. 3:22-cv-03580-WHO (VKD)
LITIGATION
12                                         CLASS ACTION
   ————————————————————————
13  This Document Relates To:            **DEFENDANT META PLATFORMS, INC.'S**
                                       **RESPONSES AND OBJECTIONS TO**
14  All Actions                          **PLAINTIFFS' THIRD SET OF**
                                       **INTERROGATORIES**
15

16  ————————————————————————

17     **PROPOUNDING PARTY:  PLAINTIFFS**

18     **RESPONDING PARTY:    META PLATFORMS, INC.**

19     **SET NO.:      THREE**

20         Defendant Meta Platforms, Inc. ("Meta"), by and through the undersigned attorneys, and

21  pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and the Civil Local Rules

22  of the U.S. District for the Northern District of California ("Local Rules"), hereby provides the

23  following responses and objections to Plaintiffs' Third Set of Interrogatories (each an "Interrogatory,"

24  and together, the "Interrogatories"), dated November 20, 2024, as follows:

25                      **PRELIMINARY STATEMENT**

26         1.     Meta's responses to the Interrogatories are made to the best of its current knowledge,

27  information, belief, and understanding of the Interrogatories. Meta's factual and legal investigation of

28  this matter is ongoing. Further, the parties have not engaged in any meet and confer regarding these

A7-1739

Gibson, Dunn &
Crutcher LLP

Interrogatories, many of which are overbroad or otherwise objectionable. Meta reserves the right to supplement or amend its responses in accordance with any agreement between the parties or should future investigation indicate that such supplementation or amendment is necessary.

2. Meta's responses to the Interrogatories are made solely for the purpose of and in relation to the above-captioned action. Each response is given subject to all appropriate objections (including, but not limited to, objections concerning privilege, competency, relevance, materiality, propriety, and admissibility). All objections are reserved and may be interposed at any time.

3. Meta's responses include only information that is within Meta's possession, custody, or control.

4. Meta incorporates by reference each and every general objection set forth below into each and every specific response. From time to time, a specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

5. Nothing contained in these Responses and Objections or provided in response to the Interrogatories consists of, or should be construed as, an admission relating to the accuracy, relevance, existence, or nonexistence of any alleged facts or information referenced in any Interrogatory.

## GENERAL OBJECTIONS

1. Meta generally objects to each Interrogatory, including the Definitions and Instructions, on the grounds and to the extent that it purports to impose obligations beyond those imposed or authorized by the Federal Rules, the Federal Rules of Evidence, the Local Rules, the Court's standing orders, any other applicable federal or state law, and any agreements between the parties. Meta will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules and other applicable rules or laws.

2. Meta generally objects to each Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action, is disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, including to the extent that any Interrogatory seeks information for any time period outside that which is relevant to the claims or defenses asserted in this action.

A7-1740

Gibson, Dunn &
Crutcher LLP

2

3.    Meta generally objects to each Interrogatory to the extent the Interrogatory is vague, ambiguous, unreasonably cumulative, or duplicative, including to the extent it seeks information that is otherwise responsive to other specific Interrogatories, and including to the extent the Interrogatory exceeds the permissible number of interrogatories under the Federal Rules.

4.    Meta generally objects to the Interrogatories, including the Definitions and Instructions, to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome, including to the extent that they call for the production or identification of "every," "any" or "all" information concerning the subject matters referenced therein.

5.    Meta generally objects to each Interrogatory to the extent that it embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1), and Meta generally objects that plaintiffs have already exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1) with their prior interrogatories in sets one and two, and thus all of the interrogatories in set three are improper and in violation of the Federal Rules.

6.    Meta general objects to each Interrogatory to the extent it seeks information contained in documents that Meta or any other party or non-party has produced or is expected to produce in this litigation.  Pursuant to Rule 33(d) of the Federal Rules, Meta refers plaintiffs to the information contained in those documents.

7.    Meta generally objects to each Interrogatory, Definition, and Instruction to the extent that it seeks information outside of Meta's possession, custody, or control.

8.    Meta generally objects to each Interrogatory to the extent the Interrogatory is premature.

## OBJECTIONS TO DEFINITIONS

1.    Meta objects to plaintiffs' definitions of "all" on the grounds that it would be unduly burdensome and disproportional to the needs of the case for Meta to identify "all" information responsive to the Interrogatory.  Such definitions are overbroad and seek information that is not relevant to the subject matter of the litigation or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information, and any attempt to respond would be unduly burdensome, expensive, and oppressive.

A7-1741

Gibson, Dunn & Crutcher LLP

3

2.     Meta objects to plaintiffs' definition of "Information" to the extent that plaintiffs purport to use this defined term to request the identification of documents that: (a) were prepared in anticipation of litigation; (b) constitute attorney work product; (c) reveal privileged attorney-client communications; or (d) are otherwise protected from disclosure under any applicable privileges, laws, and/or rules.  Meta further objects to the extent that this definition purports to impose obligations that go beyond the requirements of the Federal Rules and the Local Rules, as applicable.  Meta will construe this term in accordance with the Federal Rules and the Local Rules.

3.     Meta objects to plaintiffs' definition of "Facebook," "Defendant," "Meta," "You," and "Your" and its inclusion of "its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, and parents, as well as their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions," as overbroad and unduly burdensome to the extent the terms are meant to include any individual(s), entit(ies), or any other person(s) over which Meta exercises no control and to the extent plaintiffs purport to use the terms to impose obligations on Meta that go beyond the requirements of the Federal Rules and the Local Rules. Meta further objects to this definition to the extent that plaintiffs purport to use this defined term to seek information that is not relevant to the claims and defenses in this action, including as to Meta's subsidiaries and products not at issue in this litigation.  Meta will construe the terms "Defendant," "Facebook," "You," and "Your" as follows: Meta Platforms, Inc. and its officers and employees.

4.     Meta objects to plaintiffs' definition of "Healthcare Provider web-property" as overbroad, vague, and ambiguous, including because of its use of undefined terms like "health-related advertiser vertical," "Megataxon," "catkit," "taxonomic categorization," and "Filter," and undefined phrases like "has placed into a health-related advertiser vertical" and "flagged by the Filter as relating to health."  Meta further objects to this definition to the extent it encompasses entities beyond the "Covered Entities" as defined in the operative complaint.  Meta also objects to this term to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action or disproportionate to the needs of the case, or is of such marginal relevance that its probative value is outweighed by the burden imposed on Meta in having to provide such information.  Meta will construe the term

Gibson, Dunn &
Crutcher LLP

4

"Healthcare Provider web-property" to refer to the list of medical provider sites that plaintiffs sent on June 21, 2023.

5.      Meta objects to plaintiffs' definition of "Meta Pixel" and its inclusion of "customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions, and any other similar collection tools." The partis have already agreed to the scope of tools relevant to this litigation and Meta will construe these terms in accordance with that agreement.

**OBJECTIONS TO INSTRUCTIONS**

1.      Meta objects to plaintiffs' "Instructions" to the extent they impose obligations that go beyond the requirements of the Federal Rules and the Local Rules.

2.      Meta objects to Instruction No. 1 to the extent it seeks information in the possession of any individual(s), entit(ies), or any other person(s) over which Meta exercises no control. Meta also objects to Instruction No. 1 to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and disproportionate to the needs of the case, including to the extent it seeks information about Meta's affiliated entities and products not at issue in this litigation.

3.      Meta objects to Instruction No. 3 to the extent it purports to include a time period beyond those ordered by Judge DeMarchi in her June 16, 2023 Order. *See* Dkt. 276. For purposes of this Interrogatory, Meta will construe the past tense to include the present tense and the present tense to include the past tense only to the extent that doing so is in accordance with the time periods established by Judge DeMarchi's June 16, 2023 Order. *See* Dkt. 276.

4.      Meta objects to Instruction No. 4 as vague and ambiguous regarding its explanation that undefined terms "shall be construed in an ordinary, common-sense manner." Meta will construe undefined terms as it understands them.

**INTERROGATORIES**

**INTERROGATORY NO. 12:**

Describe in detail how Meta used Information collected from Healthcare Provider web-properties, Including a description of: the flow of such data from end-to-end in Meta's systems with identification of each Scuba, Hive, Thrift, up2x, or ZippyDB table, category, use case involved; any processors or internal services that are used to analyze, categorize, associate, or transform the data

A7-1743

Gibson, Dunn &
Crutcher LLP

5

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

(such as the Pixel Mapper) in each such table or location; how Meta used this data when creating or determining user intents and/or user features for advertising use; and how the resulting intents or features are used in Meta's advertising. Include examples from each such table, category, system, processor, or internal service. To the extent these descriptions vary by time, describe the changes during the relevant period and, to the extent Meta claims that any user, device, advertiser, regulatory, or other settings impact how data is used, describe such impacts during the relevant period.

**RESPONSE TO INTERROGATORY NO. 12:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A)     Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and phrases "describe in detail," "Healthcare Provider web-properties," "processors or internal services," "associate," "transform," "creating or determining," "user intents," "user features," "for advertising use," and "resulting intents or features."

(B)     Meta objects to this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome in that it directs Meta to "describe in detail" "the flow of [Information collected from Healthcare Provider web-properties] from end-to-end in Meta's systems with identification of" "each such table or location" and "examples from" a list of broad, undefined technologies and data sources.

(C)     Meta objects to this Interrogatory to the extent it seeks information that is irrelevant to the claims in, or defenses to, this action and is disproportionate to the needs of the case, including to the extent this Interrogatory seeks information that has nothing to do with Healthcare Provider web-properties transmission of allegedly sensitive health information to Meta.

(D)     Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes at least twenty-two discrete sub-parts (i.e., "the flow of such data from end-to-end in Meta's systems with identification of each" "table, category, use case" for five technologies or data sources: (1) "Scuba," (2) "Hive," (3) "Thrift," (4) "up2x," or (5) "ZippyDB," as well as "any processors or internal services that are used to analyze, categorize, associate, or transform

**A7-1744**

Gibson, Dunn & Crutcher LLP

6

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

the data (such as the Pixel Mapper) in each such table or location," "how Meta used this data when creating . . . user intents," "how Meta used this data when . . . determining user intents," "how Meta used this data when creating . . . user features," "how Meta used this data when . . . determining . . . user features," "how the resulting intents . . . are used in Meta's advertising," "how the resulting . . . features are used in Meta's advertising," as well as "examples" for five groups of technologies and data sources: (1) "table," (2) "category," (3) "system," (4) "processor," and (5) "internal service," as well as how each of the above "vary by time," "the changes during the relevant period," and the "impact [on] how data is used" of five types of settings: (1) "user," (2) "device," (3) "advertiser," (4) "regulatory," and (5) "other."  Meta objects that plaintiffs have already exceeded the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1).

(E)  Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

Meta incorporates by reference its response to Interrogatory Nos. 6, 7, 8, and 14.  Meta takes steps to prevent developers from sending sensitive data to it.  For example, a Business Tool may be placed in Core Setup, a set of data restrictions designed to prevent the transmission of certain types of event data altogether before it can even be sent via the Meta Pixel for website events or via the Facebook SDK for app events, remove it as soon as possible after it reaches Meta's servers when sent via Conversions API.  PIXEL_HEALTH000876877.  User or device settings may also impact the data transmitted to Meta via the Business Tools.  As explained in Meta's Cookies Policy, a user's browser or device may offer settings that allow the user to choose whether browser cookies are set and to delete them.  PIXEL_HEALTH000735564.

Events transmitted by a developer to Meta via the Business Tools that are not blocked or filtered out may then be stored in various systems and data warehouses, including Hive, Up2X, and ZippyDB.  Meta engineers may configure use cases for Up2X and ZippyDB, which may be grouped by subject

Gibson, Dunn & Crutcher LLP

7

1    matter. There are tens of thousands of use cases configured across Up2X and ZippyDB, as well as tens

2    of thousands of Hive tables where Business Tools data may be stored.

3        Once stored, event data may be processed by transformer technologies such as "PixelMapper."

4    PixelMapper transforms, extracts, or enriches portions of the data in ways that may be useful for ads

5    delivery and/or ads feature training. PIXEL_HEALTH000661116. PixelMapper uses various

6    processors, including MegaTaxon and MegaEntity, and certain of these processors extract aspects of

7    the data that are indicative of user intent. *Id.* These processors may have hundreds of thousands of

8    categories used to classify data. Those intent elements, once extracted, are fed into "user summarizers,"

9    which are used to identify per-user "intent" factors that can help deliver ads or generate features in ads

10    ranking models. *Id.*

11        The flow of Business Tools data through Meta's systems is further illustrated in

12    PIXEL_HEALTH000000064. Meta has also made available for inspection its Source Code and

13    configuration repositories, which includes Source Code and configuration files that reflect the flow of

14    Business Tools data through Meta's systems and its associated use. Meta incorporates by reference its

15    Source Code and configuration files made available to plaintiffs pursuant to Rule 33(d) of the Federal

16    Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from the Source

17    Code will be substantially the same for plaintiffs as it would be for Meta.

18    **<u>INTERROGATORY NO. 13</u>:**

19        Identify and describe all methodologies available to Meta engineers in the ordinary course of

20    business to investigate data lineage for Meta Pixel, SDK, and other Business Tool data that Meta

21    collects, Including the availability and abilities of the following:

22        a. DEPA, Bii, AAG, and any successor systems;

23        b. the ability to use a trace_id to trace how a specific event flows through Meta's systems;

24        c. the ability to use the Data Lineage UI tool or anything similar;

25        d. the "discovery process" described in the publicly-available document at

26        https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity, and the

27        analysis/engineering Meta performed in support of the Off-Facebook Activity tool, similar

28        to the question asked by the Hon. Virginia K. DeMarchi in Dkt. 580; and

**A7-1746**

8

e. the current status of Meta's ability to track off-site Meta Pixel, SDK, and other Business tool data ingestion from end-to-end in Meta's systems, Including identifying the names of all such systems that can perform this or similar analyses, how they are used in the ordinary course of business, and whether there are applications or user interfaces available to Meta engineers to use them, similar to the question asked by the Hon. Virgina K. DeMarchi in Dkt. 580.

## RESPONSE TO INTERROGATORY NO. 13:

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response.  Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and phrases "abilities," "DEPA," "AAG," "any successor systems," "anything similar," "track off-site Meta Pixel, SDK, and other Business tool data ingestion from end-to-end in Meta's systems," "similar to the question," "similar analyses," and "whether there are applications or user interfaces available to Meta engineers to use them."

(B)    Meta objects to this Interrogatory as overbroad, unduly burdensome, and improper discovery on discovery in that it seeks "all methodologies available to Meta engineers in the ordinary course of business to investigate data lineage for Meta Pixel, SDK, and other Business Tool data that Meta collects."  *See Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Discovery into another party's discovery process is disfavored." (internal citation omitted)); *Uschold v. Carriage Servs., Inc.*, No. 17CV04424JSWEDL, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019 ("[D]iscovery on discovery . . . is not permissible.").

(C)    Meta objects that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes sixteen discrete sub-parts (i.e., the availability and abilities of nine technologies:  (1) "DEPA," (2) "Bii," (3) "AAG," (4) "any successor systems," (5) "trace_id[,] to trace how a specific event flows through Meta's systems," (6) "the Data Lineage UI tool," (7) "anything similar, (8) "the 'discovery process' described in the publicly-available document at

A7-1747

Gibson, Dunn &
Crutcher LLP

9

https://engineering.fb.com/2019/08/20/core-infra/off-facebook-activity," (9) "the analysis/engineering Meta performed in support of the Off-Facebook Activity tool," as well as "the current status of Meta's ability to track offsite . . . data ingestion from end-to-end in Meta's systems from three Business Tool groups: (1) "Meta Pixel," (2) "SDK," and (3) "other Business tool[s]," as well as "identifying the names of all such systems that can perform this" analysis, "identifying the names of all such systems that can perform . . . similar analyses," "how they are used in the ordinary course of business," and "whether there are applications or user interfaces available to Meta engineers to use them."

(D)    Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

Subject to and without waiving the foregoing objections, and subject to the ongoing nature of discovery in this action, Meta responds as follows:

The most comprehensive way to trace the full data lineage associated with Business Tool data received from a given developer is by reviewing the source code. Although there are underlying lineage systems at Meta that attempt to track associations between tables—aspects of which can be accessed via Daiquery and related systems—Meta's data lineage frameworks operate at a higher level of generality (e.g., tracking overall table relationships) and are subject to many limitations. This lineage data can be thought of as "dependencies"—i.e., for a given table, on what other tables does it depend for data, in whole or in part.

Because Meta's lineage systems are limited, they cannot be used to determine the scope of the data contained within any particular Hive tables or whether that data is relevant to this litigation. The only way to confirm whether a data source is relevant and non-duplicative of another data source is for a Meta engineer or data scientist to undertake a manual review of the source code over time to understand what data is flowing into the data source, and then to inspect the underlying data itself. Meta cannot search across its entire data warehouse to identify all tables containing Pixel data associated with a particular developer's Pixel ID. Nor does Meta maintain a lineage of tables that store Pixel data sent from covered medical providers or tables that contain "sensitive health information."

A7-1748

Gibson, Dunn &
Crutcher LLP

10

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

And table associations depend on only one common field at minimum—for example, a table would be identified as one level downstream from offsite_signals, even if it pulls only a subset of a single field from offsite_signals.

Similarly, Meta cannot search all tables in Hive at once for a given trace_id to identify all Hive tables with that information. A trace_id is a unique identifier that, when present, can be used to correlate data in different sources that is related. An event_trace_id is a unique identifier for an event or batch of events. PIXEL_HEALTH000300954. Whether or not trace_id (or event_trace_id) is included in a data source is an ad hoc decision, so whether such an ID can be used to correlate data in different sources is a case-by-case determination.

As Meta has explained previously, Daiquery is the most efficient way to use Meta's lineage systems, by querying them via Daiquery to produce upstream or downstream table information. The other tools or technologies referenced in this Interrogatory are either not as efficient or cannot be used to access table lineage data.[1]  For example:

- *Data Lineage UI.*  Data Lineage UI provides the same underlying table lineage data as Daiquery.

- *DEPA.*  For the purpose of responding to this Interrogatory, Meta will construe the term "DEPA" to refer to Dependency Analytics. Dependency Analytics is a framework that Meta previously used to track associations between objects, such as tables. Dependency Analytics was deprecated in 2022, and most or all of the tables related to Dependency Analytics were deprecated around that time. To the extent Dependency Analytics can be considered to have a successor framework, that successor framework is Daiquery.

- *Bii.*  Bii is a tool that "periodically scans tables and applies heuristics to identify the presence of user identifiers" in data transmitted to Meta. PIXEL_HEALTH000766632. Though a user identifier is not, on its own, sensitive data, Meta uses Bii to err on the

---

[1] Meta previously produced to plaintiffs documents concerning the "discovery process" undertaken as part of the process to develop the Off-Facebook Activity tool. Meta incorporates by reference these documents pursuant to Rule 33(d) of the Federal Rules, as the burden of deriving or ascertaining the information sought by plaintiffs from these documents will be substantially the same for plaintiffs as it would be for Meta. See PIXEL_HEALTH000766433;    PIXEL_HEALTH000766361;    PIXEL_HEALTH000766369; PIXEL_HEALTH000766370.

A7-1749

Gibson, Dunn &
Crutcher LLP

11

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

side of overinclusion as part of its integrity efforts to identify any potentially sensitive data transmitted to Meta. *Id.* Bii labels include PII category terms such as address, email, phone number, IP address, GPS, social security number, and access token, as well as health category terms such as health and blood type. PIXEL_HEALTH000565826.

- *AAG.* For the purpose of responding to this Interrogatory, Meta will construe the term "AAG" to refer to AI Artifact Graph. As its name suggests, the goal of AI Artifact Graph was to create diagrams of "an end-to-end lineage of artifacts such as data sources, features and machine learning models across Facebook." PIXEL_HEALTH00029599.

**INTERROGATORY NO. 14:**

Describe all details about the creation and implementation of Core Setup, described in the Meta Business Help Center at https://www.facebook.com/business/help/124742407297678, Including the design process, when and whether Meta imposed Core Setup on healthcare providers and how (including how it selected health-related web-properties on which to impose Core Setup) and the impact of Core Setup on Meta's collection and use of Information from Healthcare Provider web-properties Including any impact on the Filter, Pixel Mapper, url-website-events, parsed-pixel-events, up2x, user intents, user features, Hive tables with user intents or user features, Megataxon categorizations, Intent Aggregation, ZippyDB, memcache, crawlers used to derive Megataxon or Megaentity categories or intents for web-properties or pages; the SDK, CAPI, Custom Audiences, Lookalike Audiences, and any server-to-server transmissions.

**RESPONSE TO INTERROGATORY NO. 14:**

Meta restates and incorporates its Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions as though fully set forth in this Response. Meta further objects to this Interrogatory on the following additional grounds:

(A)    Meta objects to this Interrogatory as vague and ambiguous in its use of the terms and phrases "design process," "imposed," "Filter," "user intents," "user features," "Megataxon," "Intent Aggregation," "memcache," "derive," "Megaentity," and "any server-to-server transmissions."

A7-1750

Gibson, Dunn & Crutcher LLP

12

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

(B)    Meta objects to this Interrogatory as overbroad and unduly burdensome in that it seeks "all details about the creation and implementation of Core Setup."

(C)    Meta objects that this Interrogatory is duplicative of the recently-served Request for Production 251(1).[2]

(D)    Meta objects to that this Interrogatory embeds multiple discrete parts and sub-parts that count against the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a)(1). In particular, this Interrogatory includes thirty-one discrete sub-parts (i.e., "the design process" for Core Setup," "when and whether Meta imposed Core Setup on healthcare providers," "how" "Meta imposed Core Setup on healthcare providers," "how it selected health-related web-properties on which to impose Core Setup," "the impact of Core Setup on Meta's collection and use of Information from Healthcare Provider web-properties," and "any impact" on twenty-six technologies or data sources: (1) "the Filter," (2) "Pixel Mapper," (3) "url-website-events," (4) "parsed-pixel-events," (5) "up2x," (6) "user intents," (7) "user features," (8) "Hive tables with user intents," (9) "Hive tables with . . . user features," (10) "Megataxon categorizations," (11) "Intent Aggregation," (12) "ZippyDB," (13) "memcache," (14) "crawlers used to derive Megataxon . . . categories . . . for web-properties," (15) "crawlers used to derive Megataxon . . . categories . . . for . . . pages," (16) "crawlers used to derive Megataxon . . . intents for web-properties," (17) "crawlers used to derive Megataxon . . . intents for . . . pages," (18) "crawlers used to derive . . . Megaentity categories . . . for web-properties," (19) "crawlers used to derive . . . Megaentity categories . . . for . . . pages," (20) "crawlers used to derive . . . Megaentity . . . intents for web-properties," (21) "crawlers used to derive . . . Megaentity . . . intents for . . . pages," (22) "the SDK," (23) "CAPI," (24) "Custom Audiences," (25) "Lookalike Audiences," (26) "any server-to-server transmissions").

(E)    Meta objects to this Interrogatory under Rule 33(d) of the Federal Rules because it seeks information that is contained in documents that have been or are expected to be produced by Meta, and the burden of deriving or ascertaining the information from those documents will be substantially the same for plaintiffs as it would be for Meta.

A7-1751

Gibson, Dunn &
Crutcher LLP

---

[2] The tenth set of Requests for Production included nine RFPs numbered "251." For the purposes of this objection, the referenced RFP is the first RFP numbered "251."

13

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

1    Subject to and without waiving the foregoing objections, and subject to the ongoing nature of

2    discovery in this action, Meta responds as follows:

3    In Q3 2023, Meta began a limited launch of an enhancement referred to as "Core Setup," that

4    is designed to prevent the transmission of certain types of event data altogether before it can even be

5    sent via the Meta Pixel for website events or Facebook SDK for app events, and remove it as soon as

6    possible after it reaches Meta's servers when sent via Conversions API.  Core Setup is a "set of data

7    restrictions that can be applied to a Meta Business Tool by [a developer] or by Meta."

8    PIXEL_HEALTH000876877.  A developer can turn on the Core Setup data restrictions themselves

9    through an option in Meta Events Manager.  *Id.*; *see also* PIXEL_HEALTH000873919.  "While not a

10   substitute for [a developer's] own compliance mechanisms, core setup's data restrictions can help

11   prevent the sharing of information that may not be allowed under [the] Meta Business Tools Terms."

12   PIXEL_HEALTH000876877.

13   Meta may turn on the Core Setup data restrictions for a Business Tool if Meta "has determined

14   that the data source falls under a data source category that requires core setup's data restrictions."  *Id.*

15   Meta works to categorize data sources, such as websites and apps, based on the topics related to the

16   data source and the products and/or services provided.  PIXEL_HEALTH000876879.  Certain

17   categories come with restrictions, including health and wellness if the data source "[i]s associated with

18   medical conditions, specific health statuses, or provider/patient relationships (for example, a patient

19   portal or wellness tracker for depression)."  PIXEL_HEALTH000876878.  "When a data source is

20   categorized under a category with restrictions, [Meta] may limit or fully restrict the ability to share

21   event data with us via the Meta Business Tools."  *Id.*  Developers can review the categories assigned

22   to their data sources in Meta Event Manager, and can request a review if they believe their data sources

23   have not been categorized accurately.  PIXEL_HEALTH000876879.

24   In addition, with the launch of Meta's "Business Tools Responsibility Program" in Q2 2024,

25   an advertiser's Meta Business Tools ID(s) may be enrolled automatically in Core Setup if the advertiser

26   repeatedly sends data that meets Meta's potentially sensitive data detection thresholds.  As discussed

27   in Meta's response to Interrogatory No. 8, during the Relevant Time Period, when Meta's integrity

28   systems detected and filtered out potentially sensitive health information sent by advertisers via the

A7-1752

Gibson, Dunn &
Crutcher LLP

14

Business Tools, Meta notified third-party advertisers accordingly (1) via email; and (2) in Meta's developer dashboard, Events Manager.  A developer who has received multiple notifications that the data they are sharing potentially goes against the Meta Business Tools Terms may have Core Setup's data restrictions turned on for their Business Tool(s).  *Id.*

Core Setup restricts the transmission of custom parameters.  If a developer's parameter is not on Meta's list of standard parameters—fields Meta has predefined for advertisers to include with their events (available at https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/custom

-data)—it is considered a custom parameter.  PIXEL_HEALTH000876877.  Core Setup also restricts and prevents the transmission of anything in a URL following the domain.  For example, the URL https://jaspersmarket.com/clothes/summer/dresses?item=10 would be shortened to "https://jaspersmarket.com/".  *Id.*  If a Business Tool has Core Setup's data restrictions applied, "Custom audiences may not work as expected if they rely on custom parameters or anything in a URL after the domain."  *Id.*  For example, Core Setup may restrict the availability of custom audiences that rely on custom parameters or URLs in their rules.

DATED: December 20, 2024

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

By: /s/ Lauren R. Goldman
    Lauren R. Goldman (*pro hac vice*)

*Attorneys for Defendant Meta Platforms, Inc.*

A7-1753

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-cv-03580-WHO (VKD)

**VERIFICATION**

I, Tobias Wooldridge, a software engineer at Meta Platforms, Inc. ("Meta"), am authorized to make this Verification on behalf of Meta.  I have read Meta's foregoing Responses and Objections to Plaintiffs' Third Set of Interrogatories.  The responses were prepared by Meta's counsel with assistance from Meta's employees.  My understanding is that these responses and information are based on records and information currently available.  To the extent I do not have personal knowledge, I have relied on others to gather the information.  Subject to the foregoing, in accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the factual information provided in the foregoing Responses and Objections to Plaintiffs' Third Set Interrogatories are true and correct based upon a reasonable inquiry at this time made by Meta.

Executed on December 20, 2024

_Tobias Wooldridge_
_____

Gibson, Dunn &
Crutcher LLP

DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
THIRD SET OF INTERROGATORIES – CASE NO. 3:22-CV-03580-WHO (VKD)

# EXHIBIT 84

A7-1755

# EXHIBIT 85

A7-1816

# EXHIBIT 86

A7-1879

# EXHIBIT 87

A7-1893

# EXHIBIT 88

A7-1907

# EXHIBIT 89

A7-1921

# EXHIBIT 90

A7-1935

# EXHIBIT 91

A7-1949

# EXHIBIT 92

A7-1963

# EXHIBIT 93

A7-1977

# EXHIBIT 94

A7-2042

# EXHIBIT 95

A7-2104

# EXHIBIT 96

A7-2167

# EXHIBIT 97

A7-2229

# EXHIBIT 98

A7-2296

# EXHIBIT 99

A7-2323

# EXHIBIT 100

# EXHIBIT 101

A7-2365

# EXHIBIT 102

A7-2372

# EXHIBIT 103

A7-2375

# EXHIBIT 104

A7-2380

# EXHIBIT 105

A7-2384

# EXHIBIT 106

A7-2387

# EXHIBIT 107

A7-2389

# EXHIBIT 108

A7-2391