**LATHAM & WATKINS LLP**
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

Marissa Alter-Nelson (*pro hac vice*)
*marissa.alter-nelson@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1345

Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1.424.653.5500

**GIBSON, DUNN & CRUTCHER LLP**
Lauren R. Goldman (*pro hac vice*)
*lgoldman@gibsondunn.com*
Darcy C. Harris (*pro hac vice*)
*dharris@gibsondunn.com*
200 Park Avenue
New York, NY 10166
Telephone: +1.212.351.4000

Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (Bar No. 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: +1.415.393.8200

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE META PIXEL HEALTHCARE LITIGATION

This Document Relates To:

All Actions

Case No. 3:22-cv-3580-WHO

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' CLASS CERTIFICATION EXPERT I. GLENN COHEN, JD**

Date: June 10, 2026
Time: 2:00 p.m.
Court: Courtroom 2 —17th Floor
Hon. William H. Orrick

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................... 2

A. Professor Cohen's "Medical Ethics" Opinions Must Be Excluded Because They Are Offered To Interpret A Contract. ............................................ 2

B. Professor Cohen's Opinions That The Alleged Data Transmissions Violate HIPAA Must Be Excluded As Impermissible Legal Conclusions. ........................................................................................... 7

C. Professor Cohen's Opinions Must Be Excluded Because They Are Not Based On An Independent Evaluation Of The Facts. .................................. 11

III. CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

## CASES

*Accessories Mktg., Inc. v. Tek Corp.*,
2013 WL 1409887 (N.D. Cal. Apr. 2, 2013) .......... 12

*Allied World Nat'l Assurance Co. v. NHC, Inc.*,
2024 WL 4988992 (D. Haw. Dec. 5, 2024) .......... 4

*Baker v. Firstcom Music*,
2018 WL 2676636 (C.D. Cal. May 8, 2018) .......... 12, 14

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
2025 WL 2522375 (N.D. Cal. Sep. 2, 2025) .......... 12, 13

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) .......... 7, 8, 9

*Brown v. Google LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .......... 6

*Cal. Dep't of Toxic Substances Control v. NL Indus., Inc.*,
636 F. Supp. 3d 1092 (C.D. Cal. 2022) .......... 13

*Calhoun v. Google LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 5, 6

*Haas v. Travelex Ins. Servs. Inc.*,
679 F. Supp. 3d 962 (C.D. Cal. 2023) .......... 5

*Halbert v. County of San Diego*,
2011 WL 13356067 (S.D. Cal. June 27, 2011) .......... 6

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .......... 8

*Homyk v.ChemoCentryx, Inc.*,
2025 WL 1547625 (N.D. Cal. May 30, 2025) .......... 6

*In re Baby Food Prods. Liab. Litig.*,
2026 WL 559857 (N.D. Cal. Feb. 27, 2026) .......... 11, 14

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) .......... 1, 11, 12, 14

*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
2022 WL 1814440 (N.D. Cal. June 2, 2022) .......... 2, 8, 12

*KB Home v. Ill. Union Ins. Co.*,
2023 WL 3432139 (C.D. Cal. Mar. 28, 2023) .......... 4

*Koger v. Costco Wholesale Corp.*,
2023 WL 8188842 (N.D. Cal. Nov. 27, 2023) .......... 4

*Magallon v. Robert Half Int'l, Inc.*,
743 F. Supp. 3d 1237 (D. Or. 2024) .......... 4

*McHugh v. United Serv. Auto Ass'n*,
164 F.3d 451 (9th Cir. 1999) .......... 1, 2, 3, 6

*Monster Energy Co. v. Vital Pharms., Inc.*,
2022 WL 17218077 (C.D. Cal. Aug. 2, 2022) .......... 12

*Moussouris v. Microsoft Corp.*,
311 F. Supp. 3d 1223 (W.D. Wash. 2018) .......... 11

*Nationwide Transport Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) .......... 1, 9

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
655 F. Supp. 3d 1002 (S.D. Cal. 2023) .......... 13

*Powell v. Anheuser-Busch Inc.*,
2012 WL 12953439 (C.D. Cal. Sep. 24, 2012) .......... 11, 14

*Stone Creek Business Center, LLLP v. Stone Creek-Colorado LLC*,
2022 WL 4448854 (D. Colo. Sep. 23, 2022) .......... 2, 3, 6

*United States v. 87.98 Acres of Land*,
530 F.3d 899 (9th Cir. 2008) .......... 9

*United States v. Holmes*,
2021 WL 2035177 (N.D. Cal. May 21, 2021) .......... 8, 9, 10

*Villalpando v. Exel Direct Inc.*,
161 F. Supp. 3d 873 (N.D. Cal. 2016) .......... 11

*Washington v. GEO Grp., Inc.*,
2019 WL 6828723 (W.D. Wash. Dec. 13, 2019) .......... 5

**STATUTES**

Cal. Civ. Code § 1644 .......... 5

# I. INTRODUCTION

Plaintiffs' opposition tries to rewrite Professor Cohen's report and Meta's Motion in an effort to make his opinions easier to defend. But plaintiffs cannot escape the shortcomings that doom Professor Cohen's opinions, and they cannot avoid the law that requires his exclusion.

***First***, plaintiffs concede that they use Professor Cohen to provide their preferred interpretation of Meta's Privacy Policy. Doing so contravenes well-settled law holding that expert testimony is inadmissible to prove the meaning of a contract. *See, e.g.*, *McHugh v. United Serv. Auto Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). Even if plaintiffs could get around this barrier, their new attempt to introduce Professor Cohen's opinions as relevant to common data-transmission practices in the healthcare industry also fails. Plaintiffs cannot establish that expert testimony about industry practices is relevant to this case, and they ignore that Professor Cohen never once addresses industry practices in his report (or his deposition).

***Second***, plaintiffs cannot save Professor Cohen's impermissible legal opinions that the data transmissions alleged in this case "violate" HIPAA. They go to great lengths to argue the uncontroversial principle that an expert may provide testimony to give background on a complex statutory or regulatory scheme. But they ignore that Professor Cohen goes far beyond any such background testimony—which is not even relevant here—to offer legal conclusions on HIPAA compliance. Interpreting the law is the role of the court, not an expert witness. *See Nationwide Transport Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008).

***Finally***, plaintiffs have no answer to the fact that Professor Cohen failed to conduct ***any*** independent analysis of the evidence in this case. They insist that Professor Cohen could permissibly rely on evidence gathered or analyzed by others. But as Meta demonstrated, the problem for plaintiffs is that Professor Cohen offered his opinions without conducting ***any*** independent evaluation of the evidence at all. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556-57 (C.D. Cal. 2014). Plaintiffs cannot avoid that shortcoming.

For each of these independent reasons, Professor Cohen's opinions should be excluded.

## II. ARGUMENT[1]

### A. Professor Cohen's "Medical Ethics" Opinions Must Be Excluded Because They Are Offered To Interpret A Contract.

Plaintiffs freely admit that they rely on Professor Cohen's "medical ethics" opinions to support their interpretation of the legal meaning of Meta's Privacy Policy. *See* Opposition to Motion to Exclude Professor Cohen ("Opp.") (Dkt. 1319-3) at 10 (maintaining that Professor Cohen's expertise is necessary "to evaluate whether healthcare providers comply with the . . . responsibilities Meta says the Privacy Policies require of them"); *id.* at 3 (asserting that "Professor Cohen's opinions are . . . relevant to whether Meta breached its Privacy Policies"); *see also id.* at 1, 8-9. Professor Cohen made the same admission during his deposition. *See* Mot. (Dkt. 1263-1) at 9 n.6 (citing Ex. 22 at 56:11-57:6, 60:15-61:20).

With this admission, plaintiffs give the game away. As this Court has noted, an expert opinion's admissibility depends on "what it comes in for." *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2022 WL 1814440, at *14 (N.D. Cal. June 2, 2022) (Orrick, J.). And expert testimony is plainly inadmissible when it is offered to "interpret" a contract. *See McHugh*, 164 F.3d at 454. Therefore, Professor Cohen's medical ethics opinions must be excluded because they are offered to establish the legal meaning of the Privacy Policy.

That is the central insight of *Stone Creek Business Center, LLLP v. Stone Creek-Colorado LLC*, 2022 WL 4448854 (D. Colo. Sep. 23, 2022), a case involving an expert whose testimony on ethics mirrors Professor Cohen's. The *Stone Creek* court excluded that expert's testimony about the code of ethics applicable to realtors because the plaintiff offered that testimony to determine the meaning of a contract, *id.* at *4-7—just as plaintiffs do with Professor Cohen's opinions here. Plaintiffs misrepresent *Stone Creek* by trying to distinguish it on the basis that ethical principles were not incorporated into the contract at issue in that case. *See* Opp. at 9. But the *Stone Creek* court made clear that expert testimony on ethics would be inappropriate ***even if*** ethical principles

---

[1] Capitalized terms not defined herein have the meaning given to them in Meta's Motion to Exclude Professor Cohen (Dkt. 1263-1). Unless otherwise noted, all emphasis is added and internal citations are omitted. Citations to "Ex." are to the exhibits accompanying the Omnibus Declaration of Melanie M. Blunschi in Support of Meta's Motions to Exclude Plaintiffs' Class Certification Experts (Dkt. 1262) and the concurrently filed Reply Omnibus Declaration of Melanie M. Blunschi.

were incorporated into the contract. As the court explained, if ethical standards were in fact "incorporated into the [contract], it is not clear why [the expert] would need to cite those standards, since the [contract] would reflect the standards already. Testimony on what those standards say or mean would be testimony about what the [contract] says or means, which would be contract interpretation." *See Stone Creek*, 2022 WL 4448854, at *7.

Here, just as in *Stone Creek*, plaintiffs use Professor Cohen's medical ethics analysis to provide the meaning of the Privacy Policy. Opp. at 1, 3, 8-10. And just as in *Stone Creek*, use of his expert testimony to "interpret" or "provide legal meaning" for a contract is improper. *See McHugh*, 164 F.3d at 454. Thus, Professor Cohen's ethics opinions must be excluded. *See id.*

Even if plaintiffs could get over this hurdle—and they cannot—their use of Professor Cohen suffers from other fundamental flaws. Plaintiffs claim that Professor Cohen's medical ethics analysis is necessary to interpret "industry norms"—a phrase that does not appear anywhere in the Privacy Policy or in Professor Cohen's report. *See* Opp. at 4-5, 8-10. Despite this, plaintiffs insist that "industry norms" are relevant because the Privacy Policy, as amended in July 2022, provided that Meta "requires" partners to have "the right" to send data to Meta.[2] *See id.* In particular, plaintiffs argue that the Privacy Policy's term "right" includes "industry norms." *See id.* But plaintiffs' only support for this argument is a few statements from the deposition testimony of Fred Leach, a Meta employee. *See id.* at 3-4. In his deposition, Mr. Leach made clear that he did not know "the specific reasons" for the July 2022 revision to the Privacy Policy and that he "was not involved" in it. Ex. 32 at 165:19-166:16. He noted instead that he ***believed*** that the move was intended to be "more inclusive of the responsibilities that partners would have to go beyond legal," suggesting that it might convey that advertisers sending data to Meta should "respect ***industry norms*** or other kinds of rights." Opp. at 4 n.1[3]; Ex. 32 at 51:2-7, 165:19-166:16. Based

---

[2] Before July 2022, this provision used the term "lawful rights" rather than "the right." *See* Mot. at 8 n.5.

[3] Plaintiffs rely on a misleading selection of Mr. Leach's deposition testimony. The final snippet of testimony that they cite addresses the terms that govern developers' use of Meta's Business Tools—not the Privacy Policy applicable to Meta users. *See* Opp. at 4 n.1; Ex. 32 at 94:13-24. Therefore, this part of Mr. Leach's testimony has no bearing on the interpretation of the Privacy Policy.

on these statements from Mr. Leach—at best, extrinsic evidence of Meta's subjective intent for the July 2022 Privacy Policy revision—plaintiffs maintain that the Privacy Policy incorporates "industry norms" and that Professor Cohen's ethical and HIPAA analysis is necessary to interpret those "industry norms." *See* Opp. at 4-5, 8-10. This argument fails for several reasons.

***First***, even assuming that Mr. Leach's testimony could establish that the Privacy Policy term "right" instead means "industry norms"—which Meta does not concede—plaintiffs cannot avoid that Professor Cohen's report is silent on "industry norms." As an initial matter, the "industry norms" at issue have nothing to do with medical ethics. In his deposition, Mr. Leach made clear that his reference to "industry norms" meant "the norms . . . ***of [an advertiser's] industry for what [data] they collect and what they send***." Ex. 32 at 47:17-24. And Professor Cohen provides no analysis whatsoever to explain the healthcare industry's common practices related ***to data transmission***.

Plaintiffs recognize this reality, conceding that "industry standards" are "not the focus" of Professor Cohen's opinions. Opp. at 4. But they do not recognize the obvious implication—because Professor Cohen never addresses industry norms,[4] his opinions cannot be admitted for that purpose. *See, e.g.*, *Allied World Nat'l Assurance Co. v. NHC, Inc.*, 2024 WL 4988992, at *2-4 (D. Haw. Dec. 5, 2024) (excluding expert report purportedly on "industry custom or practice" where "nothing in [the] report . . . appears to actually offer any opinions of that . . . variety"); Mot. at 10 n.7 (collecting additional cases reaching the same conclusion). Plaintiffs try to brush off Meta's authorities acknowledging that common-sense proposition, *see* Opp. at 5-6, but they do not engage with the relevant reasoning of those cases—that an expert's opinions cannot be admitted to prove industry standards where the expert does not address industry standards. *See* Mot. at 10 n.7 (citing *Magallon v. Robert Half Int'l, Inc.*, 743 F. Supp. 3d 1237, 1250 (D. Or. 2024); *KB Home v. Ill. Union Ins. Co.*, 2023 WL 3432139, at *3-5 (C.D. Cal. Mar. 28, 2023); *Koger v. Costco*

---

[4] Even if medical ethics norms were what Mr. Leach meant—they are not—Professor Cohen himself did not render a ***single*** opinion on what the "industry norms" are as they relate to medical ethics or compliance with any ethical rules (in fact, as discussed below, plaintiffs contend that hundreds of thousands of healthcare providers did not comply with ethical rules when sending information to Meta, which demonstrates that those so-called rules are far from a "norm").

*Wholesale Corp.*, 2023 WL 8188842, at *4 (N.D. Cal. Nov. 27, 2023); *Haas v. Travelex Ins. Servs. Inc.*, 679 F. Supp. 3d 962, 968 (C.D. Cal. 2023)).

Plaintiffs ultimately acknowledge that Professor Cohen "addresses the ethical framework" surrounding healthcare providers' use of digital analytics technologies—not industry practices. Opp. at 4. But abstracted ethical principles are not the same thing as industry norms. Plaintiffs recognize this when they note that "[c]ommon practices do not dictate the ethical analysis." *See id.*; *see also* Class Cert. Mot. (Dkt. 1154-3) at 23-24 (discussing "medical ethics" separately from "industry norms"). And they further admit this distinction when discussing the healthcare industry's purported "widespread noncompliance" with the ethical principles underlying Professor Cohen's analysis. *See* Opp. at 5. Plaintiffs lean on Professor Cohen's report to argue that hundreds of thousands of healthcare providers violate medical ethics by using commonplace analytics tools like Pixel code. *See, e.g.*, Class Cert. Mot. at 23. That makes clear that Professor Cohen is simply offering his own view of the abstracted medical ethical principles that he discusses in his report—not "industry norms" surrounding data transmission in the healthcare industry.

***Second***, plaintiffs' attempt to insert Professor Cohen's expert testimony to interpret the Privacy Policy is especially problematic for a contract, like this one, that is geared toward everyday Internet users. *See* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense . . . unless used by the parties in a technical sense . . . ."). Simply put, "[t]he contract does not require interpretation by expert witnesses." *Washington v. GEO Grp., Inc.*, 2019 WL 6828723, at *1 (W.D. Wash. Dec. 13, 2019) ("The contract uses common terms and the jury can interpret those terms without the assistance of an expert.").

Plaintiffs do not dispute that principle. In fact, they admit as much in their Class Certification Motion, where they argue that Meta's Privacy Policy must be interpreted "through the view of a 'reasonable user' with 'the level of sophistication attributable to the general public,' not someone with 'the skill of an experienced business lawyer' or a 'technical expert.'" *See* Class Cert. Mot. at 19 (quoting *Calhoun v. Google LLC*, 113 F.4th 1141, 1149, 1151 (9th Cir. 2024) (determining that a court erred in admitting expert testimony to interpret Google's privacy policy)); *see also* Reply in Support of Class Certification ("Class Cert. Reply") (Dkt. 1318) at 12.

According to plaintiffs, the "medical ethics standards that form the basis of Professor Cohen's opinions are [] outside the experience and understanding of the average juror." Opp. at 9. That is exactly why his opinions should not be admitted to prescribe the meaning of the Privacy Policy, a contract written for everyday Meta users—not medical ethics experts. *See Calhoun*, 113 F.4th at 1148-49.

***Finally***—and perhaps most fundamentally—Professor Cohen's ethics analysis cannot be admitted because it is plainly being offered to prove the meaning of a contract (as explained *supra*). *See* Opp. at 1, 3, 8-10; *supra* at 2-3. Assuming arguendo that the Privacy Policy incorporated industry standards and Professor Cohen's report actually spoke to industry standards, his medical ethics opinions would ***still*** be inadmissible because they are being offered to prove what the Privacy Policy requires—i.e., to explain the "responsibilities" that Meta's Privacy Policy purportedly "entail[s] for healthcare providers," *see* Opp. at 8-9.[5] *See McHugh*, 164 F.3d at 454; *Stone Creek*, 2022 WL 4448854, at *4-7; *supra* at 2-3.

In any case, even if plaintiffs could use Professor Cohen to interpret the Privacy Policy, they cannot rely on Professor Cohen to support their breach-of-contract claim for the pre-July 2022

---

[5] In their opposition, plaintiffs suggest that Professor Cohen's opinions may also bear some relevance to website visitors' "reasonable expectation of privacy." Opp. at 1, 3. But plaintiffs offered two experts related to consumer expectations and neither is Professor Cohen. Class Cert. Mot. at 20 (offering Drs. Kathleen Vohs and Kate Barasz for "patient privacy expectations" and "general consumer privacy expectations," respectively); *see also id.* at 26 (offering Dr. Vohs for consumer privacy expectations). Plaintiffs cannot now support Professor Cohen's opinions by passing him off as their ***third*** expert on this topic. *See Halbert v. County of San Diego*, 2011 WL 13356067, at *3 (S.D. Cal. June 27, 2011) (excluding cumulative expert testimony).

More importantly, Professor Cohen offers no opinions on website visitors' expectations, nor does his report provide any basis to suggest that he is qualified to opine in this area. *See Brown v. Google LLC*, 2022 WL 17961497, at *11 (N.D. Cal. Dec. 12, 2022); Cohen Rpt. (Dkt. 1154-7). In fact, the medical ethics and health law credentials that plaintiffs invoke to support Professor Cohen's opinions, *see* Opp. at 9-11, demonstrate why his opinions cannot be relevant to ordinary website visitors' expectations of privacy: If Professor Cohen's substantial credentials are required to understand the ethical principles and regulatory structure outlined in his report, an ordinary website visitor cannot be expected to have that same familiarity. Therefore, his sources could not have influenced that website visitor's expectations of privacy, and Professor Cohen's opinions are irrelevant if offered for that purpose. On the other hand, if plaintiffs' characterization is inaccurate, and Professor Cohen's opinions are ***not*** "outside the experience and understanding of the average juror," *see id.* at 9, then his opinions are likewise inadmissible. *See Homyk v.ChemoCentryx, Inc.*, 2025 WL 1547625, at *12 (N.D. Cal. May 30, 2025) ("[E]xpert testimony is inadmissible if it addresses lay matters which a jury is capable of understanding and deciding without the expert's help."); Class Cert. Reply at 13 (asserting, without citation, that "[a]ll consumers know [HIPAA] exists to protect their rights as patients—even if they are not law professors").

Class Period because their argument is tied to the July 2022 Privacy Policy revision. *See* Opp. at 4-5, 8-10; *see also* Class Cert. Mot. at 13 (noting that plaintiffs' proposed Class Period begins on June 17, 2018). Of course, plaintiffs also cannot rely on Professor Cohen's opinions to support their breach-of-contract claim, whether pre- or post-2022, by the Prescription Drug Information Class or the Patient Device Intrusion Class because Professor Cohen's report expressly excludes "prescription drug companies," *see* Cohen Rpt. ¶ 9 n.7, and does not address the Patient Device Intrusion Class, *see generally id.*

**B. Professor Cohen's Opinions That The Alleged Data Transmissions Violate HIPAA Must Be Excluded As Impermissible Legal Conclusions.**

Plaintiffs spend much of their opposition defending the proposition that experts may reference sources of law, "so long as they are using those rules as context" for an otherwise admissible opinion. *See* Opp. at 10-12. There is no question that Professor Cohen goes far beyond this undisputed legal principle by offering repeated ***affirmative*** determinations that the alleged data transmissions at issue in this case actually "violate" HIPAA. *See* Mot. at 12; Cohen Rpt. ¶¶ 24, 105, 112, 117, 141. Therefore, his legal opinions in that regard must be excluded.

Plaintiffs never address the well-established rule that experts may not opine that challenged conduct violated a particular statute or regulation. *See* Mot. at 10-11. This rule serves the critical functions of preventing experts from misleading the factfinder, supplying a party with an unearned supplementary brief, or invading the exclusive province of the court to interpret the law. *Id.* In fact, plaintiffs' own authorities support this rule. Plaintiffs cite to *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2019 WL 1369007 (S.D. Cal. Mar. 26, 2019), which held (as plaintiffs point out) that an expert may not offer an opinion on whether or not a party "complied with [applicable] regulations." *See* Opp. at 12. The *Bona Fide* court recognized a "limited exception" to the rule against offering expert testimony on the law for an expert who provides "background and generalized testimony" about a "relevant regulatory framework" that the jury would find "complex and confusing." 2019 WL 1369007, at *13. However, the court made crystal-clear that experts cannot go further to offer an opinion on whether challenged conduct complies with the law. *See id.* at *13-15 (noting that courts "routinely exclude experts from testifying on ***compliance*** with regulatory or industry standards—i.e., legal explanations and conclusions"). Accordingly, the

*Bona Fide* court excluded an expert's testimony on whether a party complied with particular statutes and regulations. *Id.* at *15.

The court in *United States v. Holmes*, 2021 WL 2035177 (N.D. Cal. May 21, 2021)—another authority plaintiffs cite, Opp. at 11—drew a similar distinction. The *Holmes* court noted that an expert could mention applicable regulations while opining on industry standards, but it made clear that the expert would be "precluded from testifying that [a company] ***violated*** [those] regulations." 2021 WL 2035177, at *4. Plaintiffs' remaining authorities support the same rule—while generalized expert testimony offered to provide background on a complicated regulatory scheme may be acceptable, an expert determination that the challenged conduct violated that law is inappropriate. *See* Opp. at 10-11 (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004) (allowing "references to . . . statutory provisions" where the expert never reached a "legal conclusion"); *In re Juul Labs*, 2022 WL 1814440, at *14 (noting that an expert may identify regulations as part of an opinion on industry standards but determining that "plaintiffs should not solicit expert opinions that a defendant violated specific laws or regulations . . . where that opinion touches an ultimate issue in a particular case")).

Here, Professor Cohen falls on the wrong side of that line. Indeed, Professor Cohen goes far beyond simply providing "background and generalized testimony" about HIPAA. *See Bona Fide*, 2019 WL 1369007, at *13. Instead, his report is full of affirmative determinations that the alleged data transmissions at issue actually violate the statute. *See* Mot. at 12; Cohen Rpt. ¶ 24; *id.* at ¶ 105 ("This principle is also reflected in the AMA and ANA's codes of conduct and ***the HIPAA Privacy Rule—each of which Health Care Providers violate*** . . . ."); *id.* at ¶ 112 ("Health Care Providers' use of the Meta Collection Tools in the manner alleged here ***plainly violates data minimization obligations set out by*** the AMA and ***HIPAA***."); *id.* at ¶ 117 ("[T]he transmissions to Meta . . . ***fall squarely outside the bounds of*** both AMA's professional guidance and ***HIPAA's de-identification provision***."); *id.* at ¶ 141 ("Meta constitutes a business associate for which no

BAA was entered into, ***in violation of the HIPAA Privacy Rule.***"). Those opinions must be excluded.[6] *See Bona Fide*, 2019 WL 1369007, at *13-15; *Holmes*, 2021 WL 2035177, at *4.

Plaintiffs try to avoid this outcome by suggesting that Professor Cohen's legal conclusions are appropriate because "[p]laintiffs do not assert a claim against Meta for violating HIPAA." Opp. at 10-11. But expert testimony on whether challenged conduct violates the law must be excluded even where that law does not directly govern the claims at issue in a lawsuit. That is exactly what happened in *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051 (9th Cir. 2008), a case addressed by plaintiffs, *see* Opp. at 11. The expert in *Nationwide* opined that a party violated a statutory provision that did not directly govern the *Nationwide* plaintiffs' tort claims, and the Ninth Circuit affirmed the district court's determination to exclude that testimony. *See* 523 F.3d at 1056, 1058-59. Plaintiffs suggest that that exclusion was appropriate because the *Nationwide* expert was addressing an "ultimate legal conclusion" in that case. *See* Opp. at 11. But if that is true for the *Nationwide* expert, it must be true for Professor Cohen as well. Professor Cohen offers legal conclusions on HIPAA, a statute that does not directly govern plaintiffs' claims in this lawsuit—just as the expert in *Nationwide* opined on a statute that did not directly govern the tort claims at issue in that case. Plaintiffs' attempt to distinguish *Nationwide* thus fails. And Professor Cohen's legal conclusions on statutory and regulatory compliance must be excluded for the same reasons that the *Nationwide* expert's legal conclusions on statutory compliance were excluded—an expert cannot opine on whether challenged conduct violates the law, regardless of whether that law independently controls a claim in the litigation. *See Nationwide*, 523 F.3d at 1056, 1058-59.

The same thing happened in *Bona Fide* and *Holmes* (both cited by plaintiffs, *see* Opp. at 11-12). In *Bona Fide*, the court excluded expert testimony related to "statutory" and "regulatory" requirements, even though no statute or regulation directly governed the plaintiff's breach-of-contract claim. 2019 WL 1369007, at *13-15. And in *Holmes*, the court explained that the expert

[6] Particularly problematic is that plaintiffs have not explained the relevance of Professor Cohen's legal conclusion that ***Meta*** (as opposed to healthcare providers) violated HIPAA by failing to enter into a Business Associate Agreement, *see* Cohen Rpt. ¶¶ 24, 141. This determination must be excluded because it is irrelevant to plaintiffs' claims, as well as an impermissible legal conclusion. *See* Mot. at 3 n.3; *United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).

would be prohibited from testifying that a company violated certain regulations, even while recognizing that the "applicable law in this case" would not include those regulations and the jury would not be "asked to decide whether [the defendants] violated" them. 2021 WL 2035177, at *4. So, while HIPAA does not independently govern any of plaintiffs' claims, Professor Cohen's opinions that the alleged data transmissions in this case violated HIPAA must be excluded.

In any case, plaintiffs misrepresent their own theory of the case when they suggest that they do not rely on HIPAA to prove their claims. Their Reply in Support of Class Certification reveals that they consider establishing a HIPAA violation to be a shortcut to establishing liability. *See* Class Cert. Reply at 12-13 (explaining the many ways that plaintiffs assert "HIPAA is relevant" to consent and noting their position that HIPAA "can set the standard" in "the right circumstance"); *id.* at 15 (asserting that a purpose "to violate HIPAA" establishes the Electronic Communications Privacy Act's crime-tort exception); *id.* at 3, 13 (arguing that Meta "import[ed] HIPAA standards into its contract promises" and that the Privacy Policy "incorporate[s] HIPAA"); *see also* Mot. at 13 (explaining the many ways plaintiffs use HIPAA to support their arguments in the Class Certification Motion). Plaintiffs cannot invoke HIPAA to establish key elements of their claims while simultaneously suggesting that HIPAA compliance does not represent an ultimate legal issue in this case.

Professor Cohen himself recognizes that these very same legal conclusions are improper. During his deposition, Professor Cohen repeatedly refused to state that the alleged data transmissions at issue in this case violate HIPAA, acknowledging that that opinion would represent an impermissible legal conclusion. *See* Mot. at 13-14; *e.g.*, Ex. 22 at 371:17-24 ("I think if the question is has HIPAA been violated in a case, that is an ultimate legal conclusion that a Court will make a determination of."); *id.* at 147:12-148:16, 144:22-146:17, 155:20-156:1, 172:6-25. That defeats plaintiffs' brazen assertion that Professor Cohen's "deposition testimony is consistent with his report." *See* Opp. at 12; *compare* Cohen Rpt. ¶¶ 24, 105, 112, 117, 141 (rendering affirmative opinions that HIPAA was violated), *with* Ex. 22 at 147:12-148:16, 144:22-146:17, 155:20-156:1, 172:6-25, 371:17-24 (refusing to endorse those determinations). And it shows that

even Professor Cohen does not stand behind the legal conclusions that pervade his report. Those conclusions must be excluded.

**C. Professor Cohen's Opinions Must Be Excluded Because They Are Not Based On An Independent Evaluation Of The Facts.**

Plaintiffs do not dispute that Professor Cohen failed to conduct any independent analysis of the evidence. Opp. at 6-8. Nor could they credibly do so after Professor Cohen admitted as much in his deposition. *See* Mot. at 5; Ex. 22 at 166:12-16 ("Q: You haven't conducted any empirical analysis of what type of data were collected and transmitted for each proposed class member in this case, correct? A: I have not personally."). That failure to engage with the evidence in order to confirm that his opinions align with the facts requires Professor Cohen's exclusion, because an expert may not "offer opinions without a full understanding or knowledge of the facts." *See Powell v. Anheuser-Busch Inc.*, 2012 WL 12953439, at *6-7 (C.D. Cal. Sep. 24, 2012).[7]

Because they cannot explain what work Professor Cohen did to personally engage with the evidence to ensure that his report reflects reality, plaintiffs try to salvage his opinions by insisting that "experts may base opinions on facts, data, or analyses supplied by others" and claiming that Professor Cohen's reliance on their "computer science experts" is enough. Opp. at 6. It is true that an expert may "rely on the opinions of others." *In re ConAgra*, 302 F.R.D. at 556. But that reliance is permissible only if the "record demonstrates that the expert conducted an independent evaluation of that evidence." *Id.* The problem with Professor Cohen's opinions is that they are not based on any "independent evaluation" of any facts, data, or analyses at all. *See id.*; *In re Baby Food Prods. Liab. Litig.*, 2026 WL 559857, at *13 (N.D. Cal. Feb. 27, 2026) ("An expert cannot blindly accept data without assessing its reliability prior to incorporating it into [his] analysis.");

[7] Plaintiffs emphasize factual distinctions between this case and the ones Meta identified to support the common-sense proposition that expert opinions must be tied to the facts of a case. *See* Opp. at 7-8. But they cannot dispute the principle that animates these decisions—that an expert's opinions must be excluded where the expert did not independently engage with the evidence to ensure that the opinions he offers reflect the facts. *See Powell*, 2012 WL 12953439, at *6-7 (excluding expert opinion where the expert "failed to sufficiently consider the relevant underlying facts"); *Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016) (experts may not provide opinions "without underlying factual support"); *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1244-47 (W.D. Wash. 2018) (excluding expert opinion where the expert did not conduct any independent evaluation to ensure a representative sample of data); *In re ConAgra*, 302 F.R.D. at 556-57 (excluding expert opinion where the expert repeated other experts' conclusions without having "independently tested or evaluated the results").

*Baker v. Firstcom Music*, 2018 WL 2676636, at *2 (C.D. Cal. May 8, 2018) ("[E]xperts are expected to verify the reliability of the data underlying their conclusions independently . . . ."). Plaintiffs do not (nor could they) cite any authority to support that an expert can offer opinions without conducting an independent evaluation of the evidence he relies on (whether that evidence consists of record evidence, data that the expert personally gathered, or analyses from other experts) to confirm that the opinions he offers are tied to the actual facts of the case.[8]

And Professor Cohen's report provides no basis to support that it is adequately grounded in his "independent evaluation" of the evidence. *See In re ConAgra*, 302 F.R.D. at 556. Instead, Professor Cohen proceeds based entirely on assumptions that go to the core of the class certification questions that his opinion is offered to support—whether the websites at issue in this case are healthcare providers (Professor Cohen assumes they are, Cohen Rpt. ¶ 9 n.7); whether the putative class members are all patients of the healthcare providers whose websites they visited (Professor Cohen assumes they are, *id.* ¶ 15); and whether the data at issue actually reflects health information (Professor Cohen assumes it does, *id.* ¶¶ 90-92). But Professor Cohen never explains what analysis (if any) of the evidence he undertook to confirm that it was reasonable for him to make those assumptions. *See Monster Energy Co. v. Vital Pharms., Inc.*, 2022 WL 17218077, at *21 (C.D. Cal. Aug. 2, 2022) (excluding expert opinion where the expert's "principal conclusions" rested on assumptions "without independent analysis"). His failure to do any work to confirm that his assumptions are justified is especially problematic given his repeated recognition during his deposition that his opinions might not extend to many fact patterns directly presented by this case. *See* Mot. at 6-7.

---

[8] The cases plaintiffs cite stand for the straightforward proposition that an expert can rely on evidence gathered by others. *See Accessories Mktg., Inc. v. Tek Corp.*, 2013 WL 1409887, at *1 & n.4 (N.D. Cal. Apr. 2, 2013); *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, 2025 WL 2522375, at *10 (N.D. Cal. Sep. 2, 2025). They do not suggest that an expert can proceed without conducting any independent evaluation of the evidence whatsoever. And in *In re Juul Labs, Inc. Marketing, Sales Practices & Products Liability Litigation*, 2022 WL 1814440 (N.D. Cal. June 2, 2022), this Court made the context-specific determination that a marketing expert appropriately relied on the "established" principle that "if you increase distribution, you increase sales." *Id.* at *21. That decision does not stand for the principle that an expert can offer opinions that lack any connection to the evidence in a case.

In fact, only a handful of the paragraphs in Professor Cohen's report even reference the facts. Paragraphs 90-92 are the only paragraphs that purport to connect Professor Cohen's abstracted ethics summary to this case. Cohen Rpt. ¶¶ 90-92. These paragraphs supposedly outline the "two categories of information" that Professor Cohen states that he "examined." *Id.* But they do not provide any citations to identify the source of that information.[9] *See id.* If in fact Professor Cohen relied on another expert to identify or interpret this data, that reliance is not "explicitly stated" and cannot support his opinion. *See* Opp. at 6 (citing *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, 2025 WL 2522375, at *10 (N.D. Cal. Sep. 2, 2025)). And of course, the report's assertion that Professor Cohen "examined" this data conflicts with his deposition testimony—Professor Cohen affirmed under oath that he did not personally conduct any analysis of the data allegedly transmitted in this case. Ex. 22 at 166:12-19.

Instead, rather than delving into the facts, Professor Cohen devotes his report to pages and pages of recitation of lofty ethical principles and quotations from ethics codes and HIPAA. But to be useful for any purpose in this case, this "broader and prophylactic" analysis (as plaintiffs put it, Opp. at 7) must be tied to the facts. Professor Cohen's failure to demonstrate that he did anything to independently engage with the evidence to confirm that his assumptions accurately reflect the facts is a fundamental flaw that requires his exclusion. It goes far beyond "an argument that an expert should have addressed different evidence" or a quibble with the "factual basis of an expert opinion," which plaintiffs argue should go to weight rather than admissibility. Opp. at 8 (citing *Cal. Dep't of Toxic Substances Control v. NL Indus., Inc.*, 636 F. Supp. 3d 1092, 1131 (C.D. Cal. 2022); *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1033 (S.D. Cal. 2023)). Instead, this defect undermines every aspect of Professor Cohen's opinions. Because Professor Cohen offered his opinions without conducting any "independent evaluation" of the evidence to confirm the reliability of his underlying factual assumptions, his opinions must be excluded as

---

[9] In their opposition, plaintiffs assert that Professor Cohen "relied upon . . . his own review of exemplar intercepted data and remediated *parsed_pixel_event* data." Opp. at 6. It appears that plaintiffs may be referencing the so-called "Remediated Parsed_Pixel_Event Exemplars" listed in Appendix B to Professor Cohen's report. But Professor Cohen never cites to these materials in his report, so it is unclear how (or if) they support his analysis.

fundamentally unreliable. *See In re ConAgra*, 302 F.R.D. at 556; *Powell*, 2012 WL 12953439, at *6-7; *In re Baby Food Prods.*, 2026 WL 559857, at *2; *Baker*, 2018 WL 2676636, at *2.

## III. CONCLUSION

For the foregoing reasons and those in the Motion, Meta respectfully requests that the Court exclude Professor I. Glenn Cohen's opinions and testimony in full.

Dated: April 21, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By <u>*/s/ Melanie M. Blunschi*</u>
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Andrew B. Clubok (*pro hac vice)*
*andrew.clubok@lw.com*
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

Marissa Alter-Nelson (*pro hac vice*)
*marissa.alter-nelson@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: + 1.212.906.1200

Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1.424.653.5500

**GIBSON, DUNN & CRUTCHER LLP**
Lauren R. Goldman (*pro hac vice*)
*lgoldman@gibsondunn.com*
Darcy C. Harris (*pro hac vice*)
*dharris@gibsondunn.com*
200 Park Avenue
New York, NY 10166

Telephone: +1.212.351.4000

Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (Bar No. 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: +1415.393.8200

*Attorneys for Defendant Meta Platforms, Inc.*