**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

**LATHAM & WATKINS LLP**
ANDREW B. CLUBOK (*pro hac vice*)
andrew.clubok@lw.com
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200

MELANIE M. BLUNSCHI, SBN 234264
melanie.blunschi@lw.com
KRISTIN I. SHEFFIELD-WHITEHEAD, SBN 304635
kristin.whitehead@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8129
Facsimile: (415) 393-8095

*Attorneys for Defendant Meta Platforms, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE META PIXEL HEALTHCARE LITIGATION

This Document Relates To:

All Actions

Case No. 3:22-cv-3580-WHO

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF DRS. KATE BARASZ AND KATHLEEN VOHS**

Date: June 10, 2026
Time: 2:00 p.m.
Court: Courtroom 2, 17th Floor

Date Action Filed: June 17, 2022
Honorable William H. Orrick III

TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Do Not Show that Drs. Barasz and Vohs Employed Any Reliable Methodology. ..... 2

B. Drs. Barasz's and Vohs's Conclusions Are Speculative and Unreliable. ..... 4

C. Plaintiffs Fail To Show Drs. Barasz's and Vohs's Opinions Are Relevant. ..... 6

D. The Court Should Exclude Dr. Barasz's State-of-Mind Opinions. ..... 7

III. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

## Cases


*Brooks v. Thomson Reuters Corp.*,
2023 WL 5667884 (N.D. Cal. Aug. 9, 2023)....7

*Brown v. Google LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022)....3, 8

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)....7

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014)....3

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....6

*In re Google RTB Consumer Privacy Litig.*,
2024 WL 2242690 (N.D. Cal. Apr. 4, 2024)....8

*Highfields Cap. I, LP v. SeaWorld Ent., Inc.*,
2022 WL 1037210 (S.D. Cal. Apr. 6, 2022)....6

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liability Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022)....4, 8

*Krause-Pettai v. Unilever U.S., Inc.*,
696 F. Supp. 3d 916 (S.D. Cal. Sept. 30, 2023)....6

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020)....3

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liability Litig.*,
174 F. Supp. 3d 911 (D.S.C. 2016)....3, 4

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996)....3, 4

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024)....7

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010)....3

*Rodriguez v. Google LLC*,
2025 WL 1569361 (N.D. Cal. June 2, 2025)....8

*In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*,
2015 WL 5050214 (N.D. Ill. Aug. 25, 2015)....4

**Other Authorities**

Kelly Caine & Rima Hanania, *Patients Want Granular Privacy Control Over Health Information in Electronic Medical Records* .....5

Rebecca Baines et al., *Patient and Public Willingness to Share Personal Health Data for Third-Party or Secondary Uses: Systematic Review* .....5

*Society: Valuing Personal Data and Rebuilding Trust*, World Economic Forum at 31 (Jan. 2017), https://tinyurl.com/yv3xn6c6 .....5

## I. INTRODUCTION

Rule 702 requires plaintiffs to show it is more likely than not that Drs. Barasz's and Vohs's challenged opinions are based on sufficient facts or data, are the product of reliable principles and methods, and reflect a reliable application of those principles and methods to the facts of this case. Plaintiffs do not make any of these showings because they cannot: Drs. Barasz and Vohs applied no reliable methodology (as Dr. Barasz freely admitted), and instead offer only their subjective conclusions about what they believe "reasonable" consumers would or should think. Their opinions—really, bald assertions—are unreliable, unhelpful, and inadmissible.

*First*, plaintiffs fail to show that either expert used a reliable methodology. Dr. Barasz *admitted* she used no methodology, followed no protocol, conducted no primary data collection, and performed no case-specific study of Meta users' expectations. That is a textbook case for exclusion. Dr. Vohs fares no better: she relied on a black-box "narrative literature review" for which she preserved no search terms, no search results, and no defined inclusion or exclusion criteria. Plaintiffs do not dispute this; they instead invoke credentials and experience, but credentials and experience do not permit an expert to offer conclusions without a disclosed, reliable, and reproducible methodology.

*Second*, plaintiffs fail to bridge the analytical gaps or cure the demonstrably false assumptions underlying the conclusions in the reports. As for Dr. Barasz, her attempt to tie her opinions to Meta rests on (1) her anecdotal review of two personal Facebook accounts (her own and her mother-in-law's) that she accessed in Europe, and (2) her *incorrect* assumption that a World Economic Forum survey was an "internal Meta survey." Plaintiffs do not address the first problem, and—conceding that Dr. Barasz misunderstood who conducted the survey—fail to rehabilitate the survey's relevance or Dr. Barasz's unsupported assertions that "Meta knows" how its users feel about privacy. Dr. Vohs fares no better: the cherry-picked literature she relied upon is insufficient to support her assertions about how consumers in this case would think and act, and neither she nor plaintiffs bridge that gap.

*Third*, plaintiffs fail to show that Drs. Barasz's or Vohs's opinions could advance this Court's class-certification analysis. Generalized testimony about privacy attitudes unmoored from the specific issues and facts of this case does not answer any of the specific issues before the Court. Plaintiffs respond that Drs. Barasz and Vohs provide opinions about the "average consumer," but those opinions

fail to account for numerous variations among consumers and their circumstances. The relevant question is not whether privacy matters in the abstract; it is whether these experts offer common proof that helps resolve the specific Rule 23 issues in this case. They do not.

*Fourth*, plaintiffs concede that Dr. Barasz may not offer legal or state-of-mind opinions; they merely argue that she does not do so. But her report shows otherwise—Dr. Barasz repeatedly offers assertions about what "Meta knew" and what "Meta appears to understand"—and those opinions must be excluded.

This Court should grant Meta's motion to exclude Dr. Barasz and Dr. Vohs.

## II. ARGUMENT

### A. Plaintiffs Do Not Show that Drs. Barasz and Vohs Employed Any Reliable Methodology.

Neither Dr. Barasz nor Dr. Vohs employed a reliable methodology under Rule 702. Mot. 6–9. Plaintiffs' opposition brief fails to show otherwise.

***Dr. Barasz.*** Dr. Barasz candidly admitted that she "didn't follow a protocol" to prepare her report or test her conclusions, and that she failed to use any methodology "per se" because "compiling opinions and a list of conclusions isn't really a methodology." Barasz Tr. 74:8–13, 79:14–21. Those admissions are fatal. A bedrock requirement under Rule 702 is a reliable methodology. By her own admission, Dr. Barasz lacked not just a reliable methodology but any methodology at all.

Plaintiffs contend that Dr. Barasz permissibly synthesized her academic experience, her prior research, and Meta-produced documents. Opp. 2–7. But none of that identifies any reliable methodology; there is no articulated, testable process that takes Dr. Barasz's review of general privacy literature and applies it to case-specific opinions about Meta users and Meta's tools. Nor can plaintiffs' *post hoc* claim of "synthesi[s]" make up for Dr. Barasz's own admitted lack of methodology—Rule 702 asks what methodology an expert *actually* used, and on that question Dr. Barasz's testimony is dispositive.

Plaintiffs' reliance on Dr. Barasz's purported "testing" of Meta's privacy tools (WAIST, DYI, and OFA) does not help them either. Opp. 3–4, 11–12. That "testing" amounted to nothing more than Dr. Barasz looking at these tools on her own and her mother-in-law's Facebook and Instagram accounts *from Europe*. Barasz Rep. ¶ 35; Barasz Tr. 273:4–9, 274:3–5, 296:3–9. Dr. Barasz employed no

methodology to account for variation by geography, time, account settings, or user characteristics, and she admitted her experience likely differed from class members' experiences. Barasz Tr. 273:16–74:5.

None of the cases plaintiffs cite (at 2–4) allowed expert opinions without a methodology. *Krommenhock v. Post Foods, LLC* did not involve an expert who admitted to having no methodology, as Dr. Barasz did here; rather, it found that the expert's opinions on consumer reactions to food labeling were grounded in years of category-specific marketing experience, review of internal consumer research, attendance at numerous product focus groups, and development of marketing plans for such products. 334 F.R.D. 552, 579–80 (N.D. Cal. 2020). *Primiano v. Cook* recognized that "[f]or scientific opinion, the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance" to ensure that "the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" 598 F.3d 558, 564 (9th Cir. 2010). *In re ConAgra Foods, Inc.* rejected a rigid, factor-by-factor checklist for a technical expert's opinion about genetic engineering, but when that expert separately opined on consumer understanding based on surveys, the court acknowledged the need to assess the reliability of the surveys. 302 F.R.D. 537, 554–56 (C.D. Cal. 2014). And *Brown v. Google LLC* cuts against plaintiffs: it *excluded* opinions "about the purported understandings and expectations of consumers," and emphasized that an expert cannot "merely impute his own opinions to those of a reasonable consumer." 2022 WL 17961497, at *10–13 (N.D. Cal. Dec. 12, 2022). None of these cases holds that an expert may invoke her own expertise to offer opinions untethered to any reliable methodology, as Dr. Barasz attempts to do here.

***Dr. Vohs.*** Dr. Vohs's purported "methodology" fares no better. Plaintiffs say (at 8) that Dr. Vohs conducted a literature review, but as other courts have recognized, Rule 702 requires that a literature review must be "performed appropriately." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liability Litig.*, 174 F. Supp. 3d 911, 928–32 (D.S.C. 2016); *see also Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 596–98 (9th Cir. 1996). Plaintiffs dismiss those cases as "epidemiology" cases. Opp. 7–9. But the requirement that an expert conduct an appropriate and rigorous literature review are not field-specific: when a literature review is offered as the operative methodology, plaintiffs must show that it was transparent, reproducible, and governed by

testable criteria. *Lipitor*, 174 F. Supp. 3d at 929; *Lust*, 89 F.3d at 596. Dr. Vohs memorialized none of the information needed to make that showing. She could not identify her search terms, she kept no list of responsive articles, she used no defined inclusion or exclusion criteria beyond her own quick skim of titles and abstracts, and she searched through commercial search engines like Google and Safari rather than recognized research databases. Vohs Tr. 74:14–75:1, 76:16–77:12, 191:3–18, 250:25–51:12. That bears none of the hallmarks of a reliable literature review. *Lipitor*, 174 F. Supp. 3d at 929; *Lust*, 89 F.3d at 596.

Plaintiffs' reliance on *In re JUUL Labs, Inc.*, *Marketing Sales Practices & Products Liability Litigation*, 609 F. Supp. 3d 942 (N.D. Cal. 2022), and *In re Zimmer Nexgen Knee Implant Products Liability. Litigation*, 2015 WL 5050214 (N.D. Ill. Aug. 25, 2015), does not help them. *See* Opp. 8. In *JUUL*, the expert's challenged opinions were grounded in a disclosed body of research and an identifiable framework tied to the expert's review of the specific advertisements at issue in the case. 609 F. Supp. 3d at 1008–10. In *Zimmer*, the expert "identified the dates on which the [literature review] searches were run, the lists of articles selected for export from the databases searched, and the selected group of 331 'potentially relevant studies.'" 2015 WL 5050214, at *4–12 (citation omitted). Here, by contrast, Dr. Vohs memorialized no search protocol and articulated no method by which the Court can evaluate whether she selected the cited studies systematically or simply cherry-picked favorable materials.

**B. Drs. Barasz's and Vohs's Conclusions Are Speculative and Unreliable.**

In addition to the lack of any reliable methodology, Drs. Barasz's and Vohs's opinions lack the evidentiary grounding needed to support expert testimony. Their reports, instead, are riddled with analytical gaps and factually incorrect assumptions. *See* Mot. 10–14. Plaintiffs' opposition brief does not and cannot fix those fatal deficiencies.

***Dr. Barasz.*** Dr. Barasz's opinions rest on a factual assumption that all now agree is wrong: she incorrectly attributed a World Economic Forum survey to Meta. Plaintiffs argue that, this error notwithstanding, the survey could still be relevant because Meta was on the project steering committee, the draft was found in Meta's files, and survey participants reportedly used Facebook more than other social networks. Opp. 9–12. But these arguments do not fix the problem; they confirm it. Dr. Barasz

Gibson, Dunn & Crutcher LLP

testified that she relied on the survey because she believed Meta conducted it, assuming that it was "of [Meta's] own users" and that a "lower bar" thus applied. Barasz Tr. 89:13–91:18, 114:17–15:13. Plaintiffs now ask the Court to uphold her opinion on an entirely different theory that Dr. Barasz never advanced. But attorney rehabilitation cannot substitute for an expert's own reasoning, and nothing in Dr. Barasz's report explains why (or whether) plaintiffs' *post hoc* justifications would support her conclusions about Meta users.

Indeed, plaintiffs' new rationale underscores the analytical gap. A survey of the general public is not transformed into an internal Meta survey merely because some, or even many, of its respondents used Facebook in the last six months. *See* Opp. 9; *Shaping the Future Implications of Digital Media for Society: Valuing Personal Data and Rebuilding Trust*, World Economic Forum at 31 (Jan. 2017), https://tinyurl.com/yv3xn6c6. Nor would an opportunity for Meta to share its belief that it *disagreed* with the survey's results, Opp. 9, convert an externally conducted survey into "Meta's own internal survey," which is how Dr. Barasz repeatedly described the survey to support her opinions, Barasz Rep. ¶¶ 12, 20–21, 33. Because Dr. Barasz relied heavily on the survey to opine that "Meta knew" users were uncomfortable with third-party data sharing and that "Meta appears to understand" the dynamics of privacy controls, her mistaken assumption that Meta authored, ran, and vetted the survey was thus foundational to her opinions. *Id.* ¶¶ 20–21, 33.

***Dr. Vohs.*** Dr. Vohs likewise lacks an evidentiary foundation for her opinions, and plaintiffs cannot bridge the gap between the sources she reviewed and the conclusions she purported to reach. Plaintiffs invoke two sources—a review of studies on patient and public willingness to share personal health data for third-party use and a study of patients using electronic-medical-record settings to assess data-sharing preferences—as support for Dr. Vohs's opinions. Opp. 11–13. Neither supplies a sufficient foundation for her opinions. The first merely concludes that there is "general, yet conditional" public support for sharing health data. Rebecca Baines et al., *Patient and Public Willingness to Share Personal Health Data for Third-Party or Secondary Uses: Systematic Review*, 26 J. Med. Internet Res. e50421 (2024). The second analyzed 30 patients' feelings about sharing their electronic health records and concluded that "privacy preferences and perceptions of sensitivity vary from person to person." Kelly Caine & Rima Hanania, *Patients Want Granular Privacy Control Over*

*Health Information in Electronic Medical Records*, 20 J. Am. Med. Inform. Ass'n 7, 7–15 (2013). Those sources illustrate context dependence and heterogeneity in consumers' privacy expectations; they do not license a sweeping assertion that all consumers would object to the specific conduct alleged here. And, notably, none of the articles Dr. Vohs cites mentions Meta or Facebook, none concerns healthcare-provider websites, none studies a social media company's collection of provider-patient communications, and none addresses the use of such communications for AI-model training. Vohs Tr. 183:13–87:5. General propositions that health information is sensitive or that people value privacy in their medical records are wholly inadequate to support Dr. Vohs's overbroad conclusions about how consumers would feel about the issues in this case, and Dr. Vohs never bridges the gap.

Nor is this mere fodder for cross-examination. *Contra* Opp. 13. Rule 702 sets a reliability floor, and Dr. Vohs's unsupported inferential leaps are exactly the kind of "analytical gap[s]" that require exclusion at the gate. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, 2022 WL 1037210, at *16, 18 (S.D. Cal. Apr. 6, 2022) (excluding expert who "merely reviewed statements, documents, testimony, and outside articles on the relevant subjects and reached his conclusions" without any expert analysis); *Krause-Pettai v. Unilever U.S., Inc.*, 696 F. Supp. 3d 916, 927 (S.D. Cal. 2023) ("[W]hile studies involving similar but not identical situations may be helpful, an expert must set forth the steps used to reach the conclusion that the research is applicable.").

**C. Plaintiffs Fail To Show Drs. Barasz's and Vohs's Opinions Are Relevant.**

Drs. Barasz's and Vohs's opinions are also unhelpful and irrelevant because they do not advance the Rule 23 issues before the Court: they purport to address general privacy attitudes among "average consumers," but fail to address the varied circumstances present here. *See* Mot. 14–15.

Plaintiffs' response misses the point. They say that the reasonable-expectation-of-privacy standard is objective, and that heterogeneity among consumers does not make the view of the "average consumer" irrelevant. Opp. 14–17. But their problem is two-fold. First, as Dr. Amir explains, a statistical average says *nothing* about the beliefs of "average" consumers unless beliefs tend to cluster around that average—which neither Dr. Barasz nor Dr. Vohs explore. *See* Dkt. 1251-14 ¶¶ 63, 71. In other words, if consumers respond to a consumer survey in which they are asked to categorize their

response as between 1 and 100, and the respondents evenly respond with "1" and "100," it makes little sense to say the "average" or "reasonable" consumer thinks 50. Indeed, *no* consumer in that example responded with "50," even if that represents the statistical average of all results. Second, there is a mismatch between generic privacy expectations and whether class members maintain a reasonable expectation of privacy in the specific circumstances at issue in this case. Drs. Barasz and Vohs do not even purport to opine on whether putative class members across hundreds of thousands of websites and apps, multiple Business Tools, different disclosures, and different healthcare contexts shared a common expectation of privacy. The generalized opinion that some people are more or less protective of different types of information does not establish a common answer to whether users interacting with thousands of distinct websites (in countless different ways), each of which has distinct disclosures, had any shared expectation about Meta's alleged receipt and use of the data at issue here.

Dodging, plaintiffs argue that the reports will be relevant at the merits stage (if a class is certified). Opp. 16. But the question before the Court is class certification, and some potential down-the-road relevance at a future phase of the case does not show the reports are helpful *now*. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1031 (9th Cir. 2024) (finding courts must ensure "expert evidence is useful in evaluating whether class certification requirements have been met").

Finally, the cases plaintiffs rely on do not support their position. *Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024), did not even address the admissibility of expert testimony. And *Brooks v. Thomson Reuters Corporation*, 2023 WL 5667884 (N.D. Cal. Aug. 9, 2023), simply rejected a *qualifications* challenge to a marketing professor opining about consumer behavior. *Id.* at *8. As plaintiffs admit, *see* Opp. 2, Meta is not challenging Drs. Barasz's or Vohs's qualifications.

**D. The Court Should Exclude Dr. Barasz's State-of-Mind Opinions.**

Plaintiffs agree that state-of-mind opinions are impermissible, and assure the Court that Dr. Barasz "will not so testify." Opp. 18. That confirms that the state-of-mind opinions in Dr. Barasz's report—including assertions about what "Meta knew" and what "Meta appears to understand," Barasz Rep. ¶¶ 20–21, 33; *see* Mot. 15–16—should be excluded.

To defend those statements, plaintiffs say Dr. Barasz is merely providing "factual context" or a "segue" to expert opinions. Opp. 16–17. But Dr. Barasz's report draws conclusions about corporate

knowledge and understanding, and state-of-mind assertions are not permissible simply because they are framed as "context" or a "segue." If all Dr. Barasz meant to provide was a neutral factual observation about certain documents, then the offending language should be stricken.

The authorities plaintiffs attempt to distinguish are directly on point. *Brown v. Google, LLC* excluded opinions about Google's intent and motivations. 2022 WL 17961497, at *10, *12–13. *In re Google RTB Consumer Privacy Litigation* likewise excluded an expert opinion that Google "underst[oo]d[]" its disclosures did not comport with societal norms and knowingly gave users a false expectation of control. 2024 WL 2242690, at *4 (N.D. Cal. Apr. 4, 2024). And *Rodriguez v. Google LLC* excluded testimony that Google was more concerned with managing user impressions than respecting user privacy and that its privacy efforts were aimed at building user trust rather than delivering real protection. 2025 WL 1569361, at *3 (N.D. Cal. June 2, 2025). Dr. Barasz's opinions about Meta's state of mind are similar to the statements that were excluded in these cases.

Plaintiffs' reliance on *In re JUUL Labs, Inc.* does not help them either. There, this Court concluded a marketing expert's opinions about JUUL's intent were supported by contemporaneous marketing records and sales data specific to JUUL's campaigns and therefore were not excludable wholesale at that stage. 609 F. Supp. 3d at 1007 n.50. Here, by contrast, Dr. Barasz's state-of-mind inferences rest on a misidentified World Economic Forum survey, selective consumer-expectation materials, and generalized commentary about transparency tools. If anything, *JUUL Labs* highlights the absence of a sufficient foundation here.

## III. CONCLUSION

The Court should exclude Drs. Barasz's and Vohs's reports and testimony.

DATED: April 21, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

*Attorneys for Defendant Meta Platforms, Inc.*

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Melanie M. Blunschi, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: April 21, 2026

LATHAM & WATKINS LLP

By: */s/ Melanie M. Blunschi*
Melanie M. Blunschi