**LATHAM & WATKINS LLP**
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Andrew B. Clubok (*pro hac vice*)
*andrew.clubok@lw.com*
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

Marissa Alter-Nelson (*pro hac vice*)
*marissa.alter-nelson@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1345

Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1.424.653.5500

**GIBSON, DUNN & CRUTCHER LLP**
Lauren R. Goldman (*pro hac vice*)
*lgoldman@gibsondunn.com*
Darcy C. Harris (*pro hac vice*)
*dharris@gibsondunn.com*
200 Park Avenue
New York, NY 10166
Telephone: +1.212.351.4000

Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (Bar No. 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: +1.415.393.8200

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE META PIXEL HEALTHCARE LITIGATION

This Document Relates To:

All Actions

Case No. 3:22-cv-3580-WHO

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' CLASS CERTIFICATION EXPERT TODD A. ZIGRANG**

Date: June 10, 2026
Time: 2:00 p.m.
Court: Courtroom 2 —17th Floor
Hon. William H. Orrick

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Zigrang's Data Valuation Opinions Are Irrelevant And Unreliable .......... 1

1. Zigrang's failure to follow his stated methodology renders his data valuation opinions irrelevant and unreliable. .......... 2

2. Zigrang relies on assumptions and factual gaps, rather than actual analysis, for so-called comparable transactions. .......... 6

3. Zigrang fails to offer a classwide—or complete—methodology to measure actual damages. .......... 9

B. Zigrang's Profits Opinions, Original And Supplemental, Are Unreliable. .......... 11

1. Zigrang's profits models lack a causal connection to the alleged misconduct and make no attempt to apportion to allegedly unlawfully obtained profits. .......... 11

2. Zigrang's methodological flaws are driven by his lack of knowledge. .......... 14

3. Plaintiffs' discovery allegations are misplaced. .......... 15

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## CASES

*Accessories Mktg., Inc. v. Tek Corp.*,
2013 WL 1409887 (N.D. Cal. Apr. 2, 2013) .......... 5

*Brown v. Google*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .......... 2

*Cambridge Lane, LLC v. J-M Mfg. Co., Inc.*,
2025 WL 1843110 (C.D. Cal. Feb. 24, 2025) .......... 2

*Celador Int'l, Ltd. v. Walt Disney Co.*,
2008 WL 11342595 (C.D. Cal. Dec. 17, 2008) .......... 6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 9, 13

*Consumer Fin. Prot. Bureau v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) .......... 11, 13, 14, 15

*Contl. Retail, LLC v. Cnty. of Hennepin*,
801 N.W.2d 395 (Minn. 2011) .......... 2

*Cook Cnty. Bd. of Rev. v. Prop. Tax App. Bd.*,
894 N.E.2d 400 (Ill. App. 1st Dist. 2008) .......... 2

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 14

*Domingo ex rel. Domingo v. T.K.*,
289 F.3d 600 (9th Cir. 2002) .......... 7

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) .......... 2, 5

*Exxon Pipeline Co. v. Hill*,
788 So. 2d 1154 (La. 2001) .......... 2

*Grodzitsky v. Am. Honda Motor Co.*,
2017 WL 8943159 (C.D. Cal. Oct. 30, 2017), *aff'd*, 957 F.3d 979 (9th Cir. 2020) .......... 2, 3

*Guttner v. Pac. Steam Whaling Co.*,
96 F. 617 (N.D. Cal. 1899) .......... 14

*In re de Jong*,
588 FB.R. 879, 893-94 (B.A.P. 9th Cir. 2018), aff'd 793 F.App'x 659 (9th Cir. 2020) .......... 13

*In re Licursi*,
2018 WL 6584487 (Bankr. C.D. Cal. Dec. 12, 2018) .................................................... 2, 4, 6

*In re Meta Pixel Healthcare Litig.*,
2025 WL 1191684 (N.D. Cal. Apr. 24, 2025) .................................................................. 3

*In re Roundup Prods. Liab. Litig.*,
390 F. Supp. 3d 1102 (N.D. Cal. 2018), *aff'd on other grounds sub nom Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021)..................................................... 9

*Jones v. ConAgra Foods, Inc.*,
2014 WL 2702726 (N.D. Cal. June 13, 2014) ............................................................ 10, 11

*Khasin v. R. C. Bigelow, Inc.*,
2016 WL 1213767 (N.D. Cal. Mar. 29, 2016)............................................................. 12, 13

*Klein v. Meta Platforms, Inc.*,
766 F. Supp. 3d 956 (N.D. Cal. 2025) ....................................................................... 4, 5

*LeGrand v. Abbott Lab'ys*,
2025 WL 2323352 (N.D. Cal. Aug. 12, 2025) ............................................................... 11

*Lin v. KIA Motors Am., Inc.*,
2013 WL 12129608 (C.D. Cal. Jan. 22, 2013) ............................................................ 7, 8

*Liu v. Sec. & Exch. Comm'n*,
591 U.S. 71 (2020)............................................................................................................ 14

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024) ......................................................................................... 10

*Mission Viejo Florist, Inc. v. Orchard Supply Co.*,
LLC, 2019 WL 13045054 (C.D. Cal. Feb. 28, 2019) .......................................................... 13

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025) ..................................................................................... 10, 15

*Open Text S.A. v. Box, Inc.*,
2015 WL 349197 (N.D. Cal. Jan. 23, 2015).......................................................................... 8

*Opperman v. Kong Techs., Inc.*,
2017 WL 3149295 (N.D. Cal. July 25, 2017)........................................................................ 9

*Pitkin v. State Farm Fire & Cas. Co.*,
2025 WL 1939588 (N.D. Cal. July 15, 2025)........................................................................ 5

*Powell v. Anheuser-Busch Inc.*,
2012 WL 12953439 (C.D. Cal. Sep. 24, 2012)....................................................................... 5

*Rearden, LLC v. Walt Disney Pictures*,
152 F.4th 1058 (2025)........................................ 13

*Rodriguez v. Google*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024)........................................ 2

*S.E.C. v. Lawton*,
2011 WL 494888 (D. Minn. Feb. 7, 2011)........................................ 14

*SCI California Funeral Servcs., Inv. v. Five Bridges Found*,
203 Cal. App. 4th 549 (2012)........................................ 6

*Shum v. Intel Corp.*,
630 F. Supp. 2d 1063 (N.D. Cal. 2009)........................................ 14

*SpinMaster, Ltd. v. Zobmondo Ent., LLC*,
944 F. Supp. 2d 830 (C.D. Cal. 2012)........................................ 3

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
648 F. App'x 609 (9th Cir. 2016)........................................ 13, 15

*Villalpando v. Exel Direct, Inc.*,
161 F. Supp. 3d 873 (N.D. Cal. 2016)........................................ 6

*Werdebaugh v. Blue Diamond Growers*,
2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)........................................ 12

*Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co.*
225 U.S. 604 (1912)........................................ 14

**TREATISES**

Restatement (Second) of Torts § 911 (1979)........................................ 6

Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. g (2011)........................................ 11

## I. INTRODUCTION

Plaintiffs oppose the motion they wish Meta had filed, not the one that exposes why their damages expert cannot meet Rule 702's requirements. Ultimately, they fail to meet their burden to show that Todd Zigrang's opinions are both reliable and relevant to this litigation.

First, Zigrang's market approach opinion—attempting to identify the supposed per-month value of the data at issue—fails from the start because Zigrang concedes there is no market for the asset it purports to analyze. Plaintiffs' appeals to "proxies" and their insistence that Zigrang need not have examined source code are beside the point: the methodology he selected required him to understand the asset he was valuing; he never did. Plaintiffs further contend that Zigrang's so-called comparable transactions are well-founded, but the record tells a different story. He drew from unverified blog posts, vetted nothing, and never performed the analysis or adjustments that valuation standards demand. When "comparables" are not comparable, the market approach has not been reliably performed.

Second, Zigrang's disgorgement-related profits analyses also suffer from structural deficiencies that cannot be overcome by his supplemental report, which uses his original methodology but substitutes numbers from different documents. Thus, while plaintiffs attempt to recast Meta's Rule 702 and *Daubert* arguments as a dispute over inputs, they leave Meta's core arguments unanswered, mainly that Zigrang's models capture broad-based revenue with no demonstrated causal link or apportionment to the conduct and data at issue in this case. As to their purported discovery grievances—which Meta disagrees with—such grievances do not convert an unreliable method into a reliable one, and Zigrang's disgorgement opinions must be excluded.

## II. ARGUMENT[1]

### A. Zigrang's Data Valuation Opinions Are Irrelevant And Unreliable

Plaintiffs misleadingly characterize Meta's Motion as seeking to exclude Zigrang's opinions because data "has no value, or cannot be valued." Opp. (Dkt. 1319-6) at 1. Not so. Meta seeks to exclude Zigrang's data valuation opinions because he did not follow the core standards

---

[1] Capitalized terms not defined herein have the meaning given to them in the Motion (Dkt. 1263-4). Unless noted, emphasis is added, internal citations omitted, and citations to "Ex. __" are to the Omnibus Declaration of Melanie M. Blunschi (Dkt. 1262) and concurrently submitted declaration.

required by the methodology he purports to apply and instead relied on assumptions, unreliable sources, and fundamentally different transactions than are at issue. Plaintiffs' strawmen attacks fall flat and fail to satisfy their burden so exclusion is warranted based on any one of these errors. *See Grodzitsky v. Am. Honda Motor Co.*, 2017 WL 8943159, at *5 (C.D. Cal. Oct. 30, 2017), *aff'd*, 957 F.3d 979 (9th Cir. 2020) ("[I]t is critical that an expert's analysis be reliable at every step.").

**1. Zigrang's failure to follow his stated methodology renders his data valuation opinions irrelevant and unreliable.**

Expert opinions must be based on an accepted methodology, but "talismanic invocation" of an accepted methodology is not enough. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1054 (9th Cir. 2025). Exclusion is warranted when an expert acts "contrary to his own stated methodology." *See Cambridge Lane, LLC v. J-M Mfg. Co., Inc.*, 2025 WL 1843110 (C.D. Cal. Feb. 24, 2025). Here, Zigrang and plaintiffs selected the "market approach" to value the At-Issue Data. Zigrang Rpt. at 8-10. Having made that choice, Zigrang was bound to follow the valuation standards and principles that govern his methodology. *See Engilis*, 151 F.4th at 1053-54. His failure to do so dooms his opinions for at least two reasons.

***First, Zigrang cannot apply the market approach methodology while admitting there is no market for the asset being valued.*** Plaintiffs question why the ***market*** approach for determining fair ***market*** value requires that there, in fact, be a market. Opp. at 19-20. But Zigrang himself recognizes that the "Market Approach based methodology is premised on the foundation that reported prices of comparable data in the marketplace provide guidance to the value of the subject data"—i.e., the market approach is premised on a "marketplace." Zigrang Rpt. at 8; Mot. at 8. And while plaintiffs criticize Meta for citing only one decision to support this obvious requirement,[2] Opp. at 19-20, it is plaintiffs' burden to show reliability, and there is no support for the nonsensical idea that the market approach requires no market at all.[3]

---

[2] Cases analyzing use of the market approach all rest on this principle. *E.g.*, *In re Licursi,* 2018 WL 6584487, at *6 (Bankr. C.D. Cal. Dec. 12, 2018); *Exxon Pipeline Co. v. Hill*, 788 So. 2d 1154, 1162 (La. 2001); *Contl. Retail, LLC v. Cnty. of Hennepin*, 801 N.W.2d 395, 402 (Minn. 2011); *Cook Cnty. Bd. of Rev. v. Prop. Tax App. Bd.*, 894 N.E.2d 400, 481 (Ill. App. 1st Dist. 2008).

[3] Plaintiffs claim that courts have "repeatedly found damages models similar to Mr. Zigrang's . . . to be relevant and reliable" and that "value can be determined by examining proxies." Opp. at 18, 19. Their authorities, however, do not support this reach. Neither *Rodriguez v. Google* nor *Brown*

The problem for Zigrang, and plaintiffs, is that using the market approach to value an asset for which no market exists renders his application of this method both unreliable and irrelevant. Zigrang's assignment was to ***value specific-HIPAA data alleged to be at issue in this litigation***. Ex. 18 (Zigrang Dep.) at 117:22-118:11. But he and plaintiffs concede there is ***no market for that data***. *Id.* at 229:7-10; Opp. at 19 ("[T]here is no market specific to the At-Issue Data . . . .").

While plaintiffs try to avoid this problem by asserting their "claims do not require proof of a HIPAA violation," Opp. at 19, that question is not relevant to this Motion. Relevant here are the requirements of the valuation methodology selected and the asset (here, data) being valued through that method. Mot. at 7-8. Plaintiffs themselves chose to define the subject asset as "protected health information under HIPAA." Class Cert. Mot. at 10, 12-14, 21, 24. And even now plaintiffs double down on this definition: "Here, all of the Patient Status Button Clicks are protected by HIPAA and there would be a reasonable classwide inference that all Health Information communications are too." Opp. at 5; *see also id.* at 19 (discussing "the At-Issue Data in this case, all of which or at least the vast majority of which is HIPAA protected"). And because there is no market for HIPAA data, Zigrang cannot reliably apply the market approach to value that data.

Plaintiffs' attempt to lead the Court into a different result is misplaced. Plaintiffs claim that Meta's argument "would have any illegal or contraband item not subject to valuation because no legal market exists for that exact item." Opp. at 19. Not so. Multiple valuation methodologies are available in such circumstances, but the market approach is not one of them. Plaintiffs' example supports this. Opp. at 19. *SpinMaster, Ltd. v. Zobmondo Ent., LLC*, a disgorgement case, merely shows that other methodologies may be appropriate to value an illegal item, but does not support use of the market approach without an actual legal market. 944 F. Supp. 2d 830, 842 (C.D. Cal. 2012). It is black letter law that the valuation methodology selected must fit the facts and circumstances of the case. *Grodzitsky*, 2017 WL 8943159, at *2. Zigrang's attempt to contort the market approach to value HIPAA data for which there is no market fails on its own terms.

---

*v. Google* analyzed the expert's use of a market approach, and the data there was not alleged to be health data. *See* 2024 WL 38302 (N.D. Cal. Jan. 3, 2024); 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022). Their final citation is to a discovery order regarding document production, which said nothing about determining value through proxies. Opp. at 19 (citing *In re Meta Pixel Healthcare Litig.*, 2025 WL 1191684, at *1 (N.D. Cal. Apr. 24, 2025)).

***Second, Zigrang's admission that he does not know what specific asset he is valuing separately renders his market approach irrelevant and unreliable.*** Plaintiffs fail to address Meta's arguments, instead hiding behind claims that "Zigrang's analysis does not require personal examination of source code" (Meta never said it did) and he "relied on analyses of Plaintiffs' other experts and Plaintiffs' allegations" regarding the At-Issue Data. Opp. at 20-22. But Zigrang's *own methodology* required him to analyze the specific characteristics of the At-Issue Data to determine its value and identify comparable transactions. Mot. at 12; Zigrang Rpt. at 9-10.

To reliably apply the market approach methodology, one "must determine the nature of the [subject asset]." *In re Licursi,* 2018 WL 6584487, at *6 (Bankr. C.D. Cal. Dec. 12, 2018). Here, even plaintiffs concede "[i]t is undisputed" that Zigrang "did not personally 'reconcile' his understanding" of the At-Issue Data with the facts. Opp. at 21 n.6. And they must admit this because Zigrang repeatedly testified about his lack of personal knowledge:

> *Q. Did you in conducting your work in this case try to reconcile what health information is – you were actually valuing?*
> ***A. No. That's outside the scope of my engagement.***
> *****
> *Q. Have you seen any of the data underlying these categories of health information collected?*
> ***A. I have not, no.***
> *Q. Have you seen any examples or samples of the data in this case?*
> ***A. No.***

*E.g.*, Ex. 18 at 73:15-20, 120:6-11. Far from being "irrelevant," Opp. at 21 n.6, Zigrang's failure to understand the asset he purportedly valued constitutes a fundamental flaw in his application of the market approach.

Moreover, even if Zigrang's chosen methodology did not require him to personally understand the asset being valued (it did), Zigrang's opinions are still unreliable because they are based entirely on unvalidated assumptions. *E.g.*, *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 961 (N.D. Cal. 2025). Plaintiffs try to escape this problem by claiming Zigrang understood the At-Issue Data "from the First Amended Complaint (Report at 4) and the other materials listed in Appendix B of his report," which resulted in a bulleted list of vague information categories that healthcare providers purportedly transmitted to Meta. Opp. at 21 (referring to Zigrang Rpt. at 6

for the list). This is, at best, factually misleading and legally insufficient. Zigrang's report cites only one source to support that list: page 84 of plaintiffs' complaint. Zigrang Rpt. at 6, n.8. Zigrang later admitted this was inaccurate, conceding the list was from plaintiffs' counsel, not just the complaint. Ex. 18 at 97:3-19, 106:21-107:24; Ex. 38 at 100:4-102:1, 102:16-104:14. Either way, Zigrang's testimony makes clear that he does not understand what was meant by the data categories listed. For example, two distinct types of data plaintiffs allege to be at issue are (i) diagnostic assessments, defined as "accessing/completing a health risk assessment/quiz," allegedly shared as button-click data, and (ii) "communication[s] or fact[s] identifying a doctor, condition, or treatment," allegedly shared as URL strings. Class Cert. Mot. at 2-3, 13 & n.5. Yet Zigrang confidently—but inaccurately—concluded that "[d]iagnostic assessments are conditions" and "could mean an X-ray"—far from a button click associated with a health quiz. Zigrang Dep. at 102:16-103:10. His fundamental misunderstanding of the data he purports to value undercuts the reliability of his conclusions. *Klein*, 766 F. Supp. 3d at 963. Plaintiffs also defend Zigrang's report by suggesting that Zigrang "relied on analyses of Plaintiffs' other experts" to learn about the At-Issue Data. Opp. at 21-22. But the only expert report Zigrang considered was that of Zubair Shafiq, which Zigrang considered solely as it relates to potential future measurement of device storage space and computing power with the _fbp cookie. Zigrang Rpt. at 23 n.51.

Even if plaintiffs were correct about the sources Zigrang relied on to understand the At-Issue Data, that would not be enough to save his opinions. As plaintiffs' own authorities show, expert opinions must be excluded where the expert "failed to sufficiently consider the relevant underlying facts." *See Powell v. Anheuser-Busch Inc.*, 2012 WL 12953439, at *6-7 (C.D. Cal. Sep. 24, 2012) (cited Opp. at 21). Similarly, *Pitkin v. State Farm Fire & Cas. Co.* and *Accessories Mktg., Inc. v. Tek Corp.* both explain that while experts need not "consider all possible relevant data," and they may rely on evidence gathered by others, they cannot offer opinions without conducting any independent evaluation of sufficient evidence. 2025 WL 1939588, at *6-9 (N.D. Cal. July 15, 2025); 2013 WL 1409887, at *1 (N.D. Cal. Apr. 2, 2013) (both cited Opp. at 21).

Put simply, an expert's opinion must rest on "sufficient factual grounds." *Engilis*, 151 F.4th at 1053-54. "[R]eliance upon data supplied by counsel, without independent verification by

the expert, is generally unreliable." *Celador Int'l, Ltd. v. Walt Disney Co.*, 2008 WL 11342595, at *10 (C.D. Cal. Dec. 17, 2008) (excluding damages expert).[4] Having acknowledged that Zigrang "accepted Plaintiffs' allegations" but viewed his duty to independently investigate facts as "outside the scope" of his work," Opp. at 21 n.6 (citing Kafka Ex. 12, Zigrang Dep. at 72:17:73-20), plaintiffs fail to meet their burden of showing Zigrang's opinions are relevant and reliable.

**2. Zigrang relies on assumptions and factual gaps, rather than actual analysis, for so-called comparable transactions.**

Plaintiffs admit that Zigrang does not use "direct" comparables. Opp. at 22. While they try to hide behind "the use of proxies" as "a standard practice in valuation when exact comparables are unavailable," Opp. at 22, the "standard" is different than they acknowledge: when an expert's "selected market comparables are not comparable at all [] th[at] lack of comparability completely undermines the reliability of this Market Approach valuation." *In re Licursi*, 2018 WL 6584487, at *7. Plaintiffs do not even attempt to dispute this and instead pivot to general statements about other methodologies not utilized here. Opp. at 22 (citing *SCI California Funeral Servcs., Inv. v. Five Bridges Found*, 203 Cal. App. 4th 549, 566 (2012), where the court explained that if "there is no relevant, comparable market, it may consider any valuation methodology that is just, equitable, and not inconsistent with California law"); *id.* at 22 (further citing the Restatement (Second) of Torts § 911 (1979) principle for situations "for which there is no market" —i.e., to which the market approach does not apply—and omitting the principle relevant to valuing market assets). But now is not the time for plaintiffs to select a new methodology. Having chosen the market approach, it was incumbent upon Zigrang to evaluate whether and how the "comparables" he chose were actually "comparable . . . in the marketplace," Mot. at 10-11, and then to make adjustments to account for those differences, *see, e.g.*, Ex. 21 at 2-4. He did neither. The reliability of Zigrang's market approach implementation is deficient at every turn.

**Assumed value of health data.** Plaintiffs suggest Zigrang's valuation is "conservative" based on the assumption that "health data ***may be*** more valuable than non-HIPAA data." Opp. at

---

[4] Plaintiffs point out irrelevant distinctions between this case and *Villalpando v. Exel Direct, Inc.*, 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016), noting that *Villalpando* prohibited an expert from offering legal conclusions. *See* Opp. at 21 n.7. But plaintiffs do not dispute that expert opinions require "underlying factual support"—the principle Meta cited *Villalpando* for. *See* Mot. at 9.

22. But this unquantified assumption lacks support and conflicts with Zigrang's sources. *See* Zigrang Rpt., App'x B at entry 5 (Ex. 20). Indeed, Zigrang relied on an expert report from separate litigation—given to him by plaintiffs' counsel—where that expert used the market approach to value browsing data separately from medical information and concluded that medical information was valued at $0.27—more than an order of magnitude ***lower*** than the $5.44 found there for browsing data. Ex. 20 at 10, 16.[5] Notably, that source shows health data is ***less*** valuable than browsing data. Plaintiffs offer nothing more than Zigrang's *ipse dixit* to suggest otherwise—and an expert's unsupported assertions must be disregarded. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) ("[N]othing . . . requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.").

**Unreliable and unverified sources.** With no answer for Zigrang's reliance on anecdotal, unverified sources, plaintiffs instead try to deflect by arguing that he "drew from a variety of sources, including Meta's own market research programs"[6] and "used his experience and expertise to vet all sources." Opp. at 22-23. Neither argument helps them.

The fact that Zigrang drew his transactions from a "variety" of unreliable and unverified sources is no defense at all. Meta specifically called attention to Zigrang's reliance on blog posts from random bloggers at Side Hustle Nation, Millennial Money Man, and WebFx for nine transactions, and unverified news articles for another three—meaning at least 12 of Zigrang's 25 purportedly comparable transactions are based on inherently unreliable sources. Mot. at 11 (Transaction Nos. 4, 7, 8, 10, 11, 12, 13, 16, 17); *see also* Mot. at 12 n.8 (Transaction Nos. 1, 2, 3); *see Lin v. KIA Motors Am., Inc.*, 2013 WL 12129608, at *5 (C.D. Cal. Jan. 22, 2013) (striking "testimony concerning internet blogs" as "not the type of information an expert would rely upon").

---

[5] In his deposition, Zigrang speculated that he might have a citation in his report to support health information having higher value than general browsing information. Opp. at 22 (citing Kafka Ex. 12, Zigrang Dep. at 148:7-13). He does not. His report only compares health data with a "credit card number on the black market." Zigrang Rpt. at 10 (citing a single blog post inapplicable here).

[6] While plaintiffs criticize Meta for allegedly "omit[ting]s from its Motion" the fact that Zigrang's transactions included several former Facebook research programs, Opp. at 23, the reason for this is self-evident: Zigrang looked at primary sources for those transactions, so they do not belong in a discussion about blog posts. Meta, however, did highlight other flaws with Zigrang's inclusion of these former research programs, namely, ignoring differences in data volume and frequency and applying non-cash values as if paid in cash, Mot. at 13-15, for which plaintiffs have no response.

That one of these 12 transactions was excluded as an outlier, Opp. at 23 (discussing Transaction No. 4), does not save Zigrang's opinions, especially when exclusion was not based on any supposed vetting of sources, *see* Zigrang Rpt. at 11 (providing that transactions were excluded as outliers only if "outside of one standard deviation of the mean").[7]

Zigrang's own testimony puts the lie to plaintiffs' bold assertion that he "used his experience and expertise to vet all sources":

| **Plaintiffs' Claim (Opp. at 23)** | **Zigrang's Testimony (Ex. 18 at 210:16-211:7)** |
|---|---|
| "But Mr. ***Zigrang used his experience and expertise to vet all sources*** . . . ." | Q. I assume you didn't look at underlying terms and conditions, didn't speak to Caden, and ***didn't do anything to vet the information*** in the Side Hustle article about Caden; correct?<br><br>A. ***That's correct.*** |

Zigrang repeatedly testified that he did *not* vet his sources. *See, e.g.*, Ex. 18 at 206:14-207:14 (Q. You vetted that information? A. No. . . .); *id.* at 170:3-172:1, 181:1-182:25, 206:14-207:11; Ex. 38 at 191:1-192:21.

**<u>Invisible pillars cannot hold up an opinion.</u>** Plaintiffs assert that Zigrang used pillars and "homogenous badges of comparability to ensure the comparable transactions meet the criteria he sets forth for inclusion." Opp. at 23 (citing Kafka Ex. 12, Zigrang Dep. at 151:7-153:10). But Zigrang never "set forth" any criteria for deciding whether or which transactions were comparable, either in his report or at his deposition. His opinions cannot be written in "invisible ink" and warrant exclusion for that reason alone. *Compare Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015) (excluding expert opinion that did not "spell[] out the steps" from the data to the conclusion), *with* Zigrang Rpt. at 9 (listing "four main pillars" with no analysis of their application to the At-Issue Data or any of the so-called comparables).

**<u>Further differences rendering Zigrang's "comparables" uncomparable.</u>** Plaintiffs devote a single paragraph to responding to all of the ways that Zigrang's 25 transactions are not

---

[7] Zigrang's use of "SavvyConnect" (Transaction No. 7) illustrates why courts exclude expert opinions based on unreliable blog posts. *See Lin v. KIA Motors Am., Inc.*, 2013 WL 12129608, at *5. While Zigrang relied on a Millennial Money Man blog post to assign a monthly rate of $15, Zigrang Rpt. at Schedule 1, the other expert report Zigrang considered looked to SavvyConnect's own website for a monthly rate of $5, Ex. 20 at 7—far below Zigrang's unverified $15 amount.

comparable to the facts here. Opp. at 23-24; *see* Mot. at 14-16 (explaining that proxies priced irrelevant data like survey responses, time spent online, and online shopping habits; did not account for volume and frequency of data collected; used the maximum possible payouts; and converted non-cash remuneration to cash without a discount). But this attempt to avoid deficiencies in Zigrang's implementation of the market approach by ignoring both hard facts and case law shows there is no response to justify Zigrang's looking so far into left field. For example:

- <u>Data volume and frequency.</u> Plaintiffs assert with no support that "differences in data volume and frequency do not undermine comparability because market research programs typically compensate participants on a flat monthly basis, regardless of how much or how often they browsed." Opp. at 24. But 15 of Zigrang's transactions varied compensation amounts on this basis. Mot. at 14 (Transaction Nos. 1, 2, 3, 4, 6, 9, 12, 13, 16, 19, 20, 21, 23, 24, 25).
- <u>Transactions for data sharing.</u> Plaintiffs argue that Zigrang "document[s] real world transactions where individuals received compensation from companies, like Meta, for sharing their browsing data." Opp. at 22. This is demonstrably false: Four transactions were people paying companies—the exact opposite of what Zigrang purports to measure. Mot. at 15-16 (Transaction Nos. 14, 15, 17, 22). At least six more involve a company paying for some activity other than (or in addition to) sharing browsing data. Mot. at 13 (Transaction Nos. 1, 2, 3, 4, 18, 25).

Plaintiffs wave these errors away, arguing that none "is sufficient to warrant exclusion." Opp. at 23. But while "experts sometimes make mistakes," "in combination, the problems with [an expert's] testimony [can] lead the Court to conclude that his opinion is not sufficiently reliable to be admissible." *See In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1146 (N.D. Cal. 2018), *aff'd on other grounds sub nom Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021). These errors, alone and in combination, warrant exclusion of Zigrang's valuation opinions.

### 3. Zigrang fails to offer a classwide—or complete—methodology to measure actual damages.

Even more fundamentally at this stage of the litigation, Zigrang fails to offer a complete classwide damages methodology for any of the proposed classes.

***Zigrang's model fails to fit the facts applicable to each proposed class, as required.*** "[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Therefore, Zigrang's proposed damages model fails because "it does not comport with Plaintiffs' theory of liability." *Opperman v. Kong Techs., Inc.*, 2017 WL 3149295, at *12 (N.D. Cal. July 25, 2017).

Plaintiffs claim that Zigrang's valuation model survives despite his failure to differentiate between the three classes he purports to address because "the core injury (the unauthorized collection of health data while using the Internet) is consistent across the Classes." Opp. at 24. Of course, because the market approach methodology is inappropriate for HIPAA data—as plaintiffs defined the asset to be valued—Zigrang has not offered a workable methodology for any proposed class, let alone all three. *Supra* Section II.A.1. Moreover, Zigrang himself admitted the alleged injury to each proposed class is different (or at least that differences cannot be ruled out without analysis, which he has not done). *See* Ex. 18 at 223:15-224:1, 228:18-229:19. But he never took these differences into account and there's no indication that he could fix his methodology to do so.

***Zigrang offers only an incomplete damages methodology.*** While a not-yet-fully-executed model is allowed, "[m]erely gesturing at a model or describing a general method" is not. *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024). Zigrang's valuation methodology falls into the latter category because he never explains how he (or anyone else) could ever complete the final step, which he says requires multiplying the value of the At-Issue Data "by the number of months in which a Class Member visited a Healthcare Partner's website that contained the Meta Collection Tools and used the Healthcare Partner's web properties." Zigrang Rpt. at 11.[8]

Plaintiffs argue that this final step "is simple math and the inputs are within Meta's possession," Opp. at 25, and try to analogize to *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 864-65 (9th Cir. 2025), where the expert had "designed [a] survey methodology and identified target respondent populations" but had not yet "collected" the data. But the problem here is different and deeper. Neither Zigrang nor plaintiffs have explained ***how***—or even ***if***—the final damages calculation based on his analysis could possibly be completed.

The myriad unanswered questions regarding this calculation are more analogous to *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 (N.D. Cal. June 13, 2014). The *Jones* court excluded an expert's damages model where the analysis was "vague and abstract" and failed to "determine[]

---

[8] This articulation reveals that Zigrang's model does not fit plaintiffs' theories for the additional reason that plaintiffs' proposed class definitions are based on Facebook users whose class-specific data was "*obtained*" or "*acquired by* Meta," Class Cert. Mot. at 13—not based on a person's website visit alone as Zigrang articulates, Zigrang Rpt. at 11.

whether the data [necessary to complete his model] exists." *Id.* at *20. The same criticisms apply to Zigrang, defeating plaintiffs' attempt to distinguish this case. *See* Opp. at 25. Zigrang's only insight is that this analysis is "not [his] lane." *See* Ex. 18 at 111:10-23. And plaintiffs' Class Certification Reply makes clear that they have no answers but hope the Court looks past this hole until a later stage. There, plaintiffs admit that their allegations extend only to "HIPAA-covered healthcare providers" or "prescription drug companies." Class Cert. Reply at 3, 8. But they do not propose any viable classwide method for determining what domains are included or excluded.[9] Similarly, there is no classwide method for determining who was a "patient" of what healthcare provider at what time, who had a prescription for the drug website visited prior to such visit, or who visited a website for their own needs or on behalf of someone else on any given date, all of which change the number-of-months component of the missing calculation. With so many open questions, Zigrang's damages model is "not sufficiently developed to meet [plaintiffs'] burden of showing that common questions predominate." *Jones*, 2014 WL 2702726, at *20; *see also LeGrand v. Abbott Lab'ys*, 2025 WL 2323352, at *6 (N.D. Cal. Aug. 12, 2025).

### B. Zigrang's Profits Opinions, Original And Supplemental, Are Unreliable.

Zigrang's disgorgement-related profits models, both in his original and supplemental reports, fail to measure a reasonable approximation of profits from the alleged misconduct, rely on unfounded assumptions, and are untethered from the facts and theories of this case.

#### 1. Zigrang's profits models lack a causal connection to the alleged misconduct and make no attempt to apportion to allegedly unlawfully obtained profits.

Plaintiffs complain that "the law does not require Plaintiffs to prove causation with mathematical precision" because they must "only establish a reasonable approximation." Opp. at 8. As plaintiffs' citations make clear, however, reasonable approximation requires that profits be *causally related* to the alleged misconduct and separate from lawfully generated profits. Opp. at 6 (citing *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016)); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. g (2011) (Apportionment is

---

[9] While plaintiffs may suggest that their expert Shafiq offered a methodology to identify such entities, Shafiq himself admits his method could not make final determinations because it would need further human review. Shafiq Rpt. ¶ 75.

necessary when the "net profit in question has been realized in part as a result of the wrong to the claimant and in part from the defendant's legitimate activities—so that some part, at least, of the defendant's profit would have been realized in the absence of the wrong."). But Zigrang's models fail to even attempt that. Plaintiffs' own descriptions of Zigrang's bound approaches reveal this fatal flaw: plaintiffs describe Zigrang's lower bound model as calculating "the amount of total advertising revenue generated by Meta in the U.S. in its healthcare provider and prescription drug advertising verticals." *Id.* at 7. They similarly describe the upper bound as calculating "the amount of overall health advertising revenue attributed to 'offsite' tracking generated on U.S.-based 'health' domains"—or more tellingly still, the supplemental report's "Upper Bound Direct Revenue Calculation of profits." *Id.* at 8. Omitted from each of these descriptions—and from each of the actual calculations—is any connection to the alleged misconduct, as required. *See Khasin v. R. C. Bigelow, Inc.*, 2016 WL 1213767, at *3-4 (N.D. Cal. Mar. 29, 2016).

Zigrang himself admitted in his deposition that he should apportion Meta's profits between At-Issue and other data, Ex. 18 at 288:17-289:9, but he did not do so in either report. Zigrang's supplemental upper bound model, now based on revenue totals for Megataxon classifications identified by plaintiffs' counsel as being health-related, converts the total to a U.S. monthly figure but does nothing to apportion *lawful* from allegedly *unlawful* conduct. Zigrang Supp. Rpt. at 5-7. Like his original models, Zigrang's supplemental report models attribute *all revenue* from those segments to the At-Issue Data, despite the uncontroverted fact that Meta generates advertising revenue, including from health advertisers, from a complex auction system that utilizes a high volume of *lawfully obtained* data for targeting and delivery of ads. Tadelis Rpt. at Section VI.B. Without any attempt to apportion Meta's lawfully obtained advertising revenue from allegedly unlawful revenue from the At-Issue Data, Zigrang's profits models remain unreliably overbroad and "incapable of isolating the damages attributable to [Meta's] alleged wrongdoing." *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *11 (N.D. Cal. Dec. 15, 2014).

Plaintiffs aver that various of Meta's authorities are inapposite because the facts or legal claims are slightly different, Opp. at 15, while missing the thread that connects these cases to the present one: courts exclude expert damages models that, like Zigrang's, sweep in revenue without

a causal connection to the alleged wrong. Like the experts in these cases, Zigrang calculates revenue not attributable to the conduct at issue, *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 614 (9th Cir. 2016); Zigrang lacks knowledge of the very system whose revenues he purports to measure, *Rearden, LLC v. Walt Disney Pictures*, 152 F.4th 1058, 1078 (2025); Zigrang calculates damages based on broader (here, all health-labeled) revenue rather than the products (or data) at issue, *Mission Viejo Florist, Inc. v. Orchard Supply Co.*, LLC, 2019 WL 13045054, at *2-3 (C.D. Cal. Feb. 28, 2019); and Zigrang seeks the full amount of Meta's health advertising revenue rather than the increment attributable to the alleged wrong, *Khasin*, 2016 WL 1213767, at *3. Plaintiffs' attempt at case-by-case distinctions misses the forest for the trees.

Plaintiffs' remaining attempts to recharacterize Meta's arguments about the lack of causal connection in Zigrang's models likewise fail. ***First***, plaintiffs argue that Meta's Motion amounts to a claim that "Mr. Zigrang used the wrong inputs for his Profits Models." Opp. at 9. But the issue here is not one of inputs; it is a disgorgement methodology that fails to isolate allegedly unlawful profits and thus cannot meet *Daubert*'s reliability standard. Without such apportionment, Zigrang's profits damages model "does not even attempt" to "measure only those damages attributable" to plaintiffs' theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

***Second***, plaintiffs recast the law's requirement that reasonable apportionment of profits be causally connected to the alleged violation as a "mitigation" defense. Opp. at 16-17. But none of plaintiffs' cited case law supports this, *id.*, because it is plaintiffs who bear the burden of offering such reasonable approximation, *Gordon,* 819 F.3d at 1195. Plaintiffs instead attack a strawman by invoking the principle that thieves "should not be permitted to reduce their liability for the sale of a stolen item by arguing that" they could have profited equally without wrongdoing. Opp. at 16. Their case law, however, shows only that when a defendant's revenue is generated *wholly* by the alleged wrong, there is nothing to apportion. *See In re de Jong*, 588 FB.R. 879, 893-94 (B.A.P. 9th Cir. 2018), aff'd 793 F.App'x 659 (9th Cir. 2020) (defendant grazed his entire herd on his

neighbor's property rather than his own) (cited Opp. at 16).[10] This is indisputably not true here, and plaintiffs cannot rewrite the law to fit the present facts.

*Shum v. Intel Corp.*, 630 F. Supp. 2d 1063 (N.D. Cal. 2009), is instructive. There, the plaintiff sought to disgorge half of the purchase price Intel paid to acquire co-defendant LightLogic based on his allegation that the price included the value of patents he developed with LightLogic's founder so should be split between them. *Id.* at 1080-81. The court disagreed, faulting plaintiff's failure to separate the value of the patented technology from lawfully developed assets that were "wholly independent of the value of the [at-issue] patents." *Id.* at 1081. Because the "only apportionment numbers offered at the trial were from conclusory statements of the experts [that] were not derived from or founded upon any evidence of the respective value of the assets," plaintiffs had failed to meet their burden of "appropriate apportionment." *Id.* Like in *Shum*, Meta operates a lawful advertising business: "[t]here is nothing inherently unlawful about" offering "source code" like pixel code "to health care providers." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal. 2024). And like the *Shum* expert who failed to adequately isolate the value of the patented technology, Zigrang sweeps in all of Meta's advertising revenue from broad health-related verticals and Megataxon classifications without any effort to isolate the value from the At-Issue Data within such health classifications. The At-Issue Data is a small subset of the many signals in Meta's ads systems, Tadelis Rpt. ¶ 141; Zervas Rpt. ¶ 114, and Zigrang has not even attempted the necessary apportionment.

**2. Zigrang's methodological flaws are driven by his lack of knowledge.**

---

[10] Plaintiffs' other citations do the same. *See* Opp. at 16-17; *id.* at 11-12; *e.g., Gordon*, 819 F.3d at 1195 (alleging a pervasively fraudulent scheme with every dollar from deceptive marketing) (cited Opp. at 12). These cases reinforce the rule Meta invokes: "Disgorgement [] must be tied to the amount of gains derived from unlawful, as opposed to lawful, conduct." *S.E.C. v. Lawton*, 2011 WL 494888, at *3 (D. Minn. Feb. 7, 2011) (cited Opp. at 17); *see Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co.* 225 U.S. 604, 615 (1912) (plaintiff must first "give evidence tending to separate or apportion the defendant's profits . . . between the patented feature and the unpatented features") (cited Opp. at 11); *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 91-92 (2020) (cited Opp. at 16). And disgorgement does not reach profits absent a causal connection. *Guttner v. Pac. Steam Whaling Co.*, 96 F. 617, 622 (N.D. Cal. 1899) (applying the rule so an employer was liable only for "the value of . . . property tortiously taken" within the scope of agency rather than the full value of property taken that lacked a causal connection) (cited Opp. at 17).

Zigrang's failure to apportion is not merely an oversight; it is a direct consequence of his admitted ignorance of how Meta's ads revenue is generated. Zigrang concedes he has no understanding of digital advertising, health advertising, or Meta's ads delivery system, and made no effort to educate himself about how Meta generates revenue or allegedly derives value from the At-Issue Data. Ex. 18 at 257:15-261:18, 264:20-266:6. An expert who does not understand how Meta's revenue is generated cannot reliably apportion revenue related thereto.

Zigrang's lack of knowledge is evident in both of his reports. In all of his bound models, he simply totals broad revenue categories despite having no independent knowledge of what those categories encompass—what they measure, how they are generated, or whether they bear any relationship to the entities or data actually at issue in this case—having done *no work* to verify the information himself, and having *no basis* to conclude that the revenue captured was generated by the At-Issue Data rather than by Meta's lawful activity. Ex. 18 at 67:1-23; Zigrang Supp. Rpt. at 5-7. Zigrang plainly made no attempt at a "reasonable approximation" of wrongful profits. His models are sets of unreliable assumptions dressed up as calculations, and they should be excluded. *See ThermoLife Int'l, LLC*, 648 F. App'x at 614 (excluding expert's damages opinion because his causation assumption was not "based on sufficient facts or data").

**3. Plaintiffs' discovery allegations are misplaced.**

Plaintiffs raise another red herring by arguing Zigrang was unable to compute his Middle Bound Estimate due to a lack of inputs, for which they blame Meta. Opp. at 17-18. The parties agree that a class certification damages model need not be fully executed—but it must be reliable and able to calculate classwide damages. *Noohi*, 146 F.4th at 863-64. But none of Zigrang's profits models are reliable or able to calculate classwide damages, including because they fail to make a "reasonable approximation of profits causally connected to the violation." *Gordon*, 819 F.3d at 1195. That is not a problem of missing inputs; it is a problem of missing methodology.

## III. CONCLUSION

For the foregoing reasons and those in the Motion, the Court should exclude Todd A. Zigrang's Opinions.

Dated: May 5, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By /s/ *Marissa Alter-Nelson*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Andrew B. Clubok (*pro hac vice)*
*andrew.clubok@lw.com*
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

Marissa Alter-Nelson (*pro hac vice*)
*marissa.alter-nelson@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: + 1.212.906.1200

Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1.424.653.5500

**GIBSON, DUNN & CRUTCHER LLP**
Lauren R. Goldman (*pro hac vice*)
*lgoldman@gibsondunn.com*
Darcy C. Harris (*pro hac vice*)
*dharris@gibsondunn.com*
200 Park Avenue
New York, NY 10166
Telephone: +1.212.351.4000

Elizabeth K. McCloskey (Bar No. 268184)
*emccloskey@gibsondunn.com*
Abigail A. Barrera (Bar No. 301746)
*abarrera@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: +1415.393.8200

*Attorneys for Defendant Meta Platforms, Inc.*